IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

DAVID A. NAPOLI, D.C. )
d/b/a NAPOLI CHIROPRACTIC CENTER, and )
all others similarly situated, )
)
    Plaintiffs, ) C.A. No. 00-6061
) Judge Ferguson
v. ) Magistrate Judge Snow
)
ALLSTATE INSURANCE COMPANY, and )
MEDVIEW SERVICES, INC., )
)
    Defendants. )

### RULE 12.1 CIVIL RICO CASE STATEMENT

NOW COMES Plaintiff, DAVID NAPOLI D.C. d/b/a NAPOLI CHIROPRACTIC CENTER ("DR. NAPOLI") and all others similarly situated, by and through their attorneys, GOLD, ROSENFELD & COULSON, a partnership of professional and limited liability corporations, GOGEL, PHILLIPS & GARCIA, LLP, and KOPELMAN & BLANKMAN, a professional association, and pursuant to local Rule 12.1 sets forth the following Civil Rico case statement, responding, sequentially, to the numbered requests that local rule mandates:

    1.    The unlawful conduct on the part of Allstate Insurance Company ("ALLSTATE") and MedView Services Inc. ("MEDVIEW") is allegedly in violation of 18 U.S.C. §§ 1962 (a), (c) and (d).

    2.    The defendants to the present suit and their respective misconduct and basis of liability are as follows:

        a. Defendant ALLSTATE obtained healthcare provider discounts in violation of

1



Florida Statutes and without consideration to plaintiff and members of the putative class. ALLSTATE also applied these illegally obtained discounts to Florida Automobile Personal Injury ("PIP") bills sent to it by Florida healthcare providers.

   b. MEDVIEW aided ALLSTATE by providing it the names of its preferred providers as well as their discounts. MEDVIEW received compensation from ALLSTATE for the names and discounts belonging to these healthcare providers; all in violation of their contracts with these providers and Florida Statutes.

3. At the present time, no other wrongdoers are known to plaintiff other than the above named defendants, their officers and employees, however, investigation continues.

4. DR. NAPOLI and the putative class were injured by not being paid the correct amount of their PIP bills each time ALLSTATE mailed them a payment and Explanation of Benefit ("EOB") deducting the illegally obtained discount.

5. a. In carrying out the overt acts and fraudulent scheme described above, ALLSTATE engaged in, inter alia, conduct in violation of federal laws, including 18 U.S.C. §§1341, 1343, 1346, §1951(b)(2), §1952(a), § 1954, and §1961 et seq., as detailed below.

   Section 1961(1) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)." The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 15 U.S.C. §1346.

2

18 U.S.C. §§1341, 1343 and 1346.

For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, ALLSTATE, in violation of 18 U.S.C. §1341 and §1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed  ALLSTATE, in violation of 18 U.S.C. §§1343 and 1346, also transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts. In this manner, ALLSTATE, knowingly, violated obligations of MEDVIEW to DR. NAPOLI and others similarly situated to provide "honest services." ALLSTATE knowingly induced MEDVIEW to deprive DR. NAPOLI and others similarly situated of "honest services." ALLSTATE falsely and fraudulently represented to DR. NAPOLI and the purported class that; (i) ALLSTATE's payments to DR. NAPOLI were for the amount "billed" for the reasonable value of their service and, (ii) that ALLSTATE was entitled to a PPO discount for DR. NAPOLI and the putative class under a system that legitimately provides education, marketing and economic incentives intended to "steer" more patients and to provide other benefits to healthcare providers. ALLSTATE failed, however, to disclose to DR. NAPOLI and the purported class that its EOBs were based upon illegal discounts designed to maximize profits on discounts illegally obtained through DR. NAPOLI's proprietary information. ALLSTATE thus failed to disclose material facts regarding ALLSTATE's internal policies and practices specifically designed to reduce or limit the level of payment to DR. NAPOLI and the putative class  To accomplish the scheme of stealing healthcare provider discounts and reducing payments to healthcare

providers, ALLSTATE also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§1341, 1343, and 1346.

ALLSTATE intentionally and knowingly deceived DR. NAPOLI and the purported class for the purpose of financial gain. ALLSTATE either knew or recklessly disregarded that the illegal discounts described above were material. DR. NAPOLI and the purported class have, therefor, been injured in their business or property by ALLSTATE's overt acts and racketeering activities in amounts to be determined at trial.

## 18 U.S.C. §1951(b)(2)

During the relevant times, and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, ALLSTATE, and MEDVIEW, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. §1951. ALLSTATE unlawfully attempted to and/or did induce MEDVIEW to cause DR. NAPOLI and numerous other healthcare providers to part with various property interests to which ALLSTATE was and is not entitled, including the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy. ALLSTATE's conduct induced MEDVIEW to provide it with the names of healthcare providers and their discounts, and exploited a fear of economic loss and/or loss of business by DR. NAPOLI and others similarly situated in violation of 18 U.S.C. §1951(b)(2). In furtherance of the scheme or artifice to defraud and obtain money by false pretenses from DR. NAPOLI, and the purported class, ALLSTATE communicated with MEDVIEW to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which

4

ALLSTATE was not entitled through the exploitation of healthcare providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts. ALLSTATE either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by DR. NAPOLI and the purported class and yet secure it tangible property rights to which it is not entitled.

ALLSTATE's overt acts and fraudulent and extortionate racketeering activity has and continues to defraud DR. NAPOLI, and the members of the purported class, of money, has and continues to unlawfully influence and interfere with the relationship of middleman MEDVIEW and DR. NAPOLI and the purported class, as well as interfering with the fiduciary relationship between DR. NAPOLI and members of the purported class and their patients. DR. NAPOLI and the purported class have, therefor, been injured in their business or property by ALLSTATE's overt acts and racketeering activities in amounts to be determined at trial.

### 18 U.S.C. §1952(a).

During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud DR. NAPOLI and the purported class, ALLSTATE, its employees, agents and others, on numerous occasions did travel and caused others not named to travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. §1952(a).

### PATTERN OF RACKETEERING ACTIVITY

ALLSTATE has engaged in a "pattern of racketeering activity" as defined in Section 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of

5

racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including DR. NAPOLI and the purported class. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by ALLSTATE, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. §1961(5).

### 18 U.S.C. §§1962(a), (c), and (d) and 18 U.S. §1964.

DR. NAPOLI's claim for relief also arises under 18 U.S.C. §1964 (c) of RICO and seeks to recover actual and treble damages for ALLSTATE's violations of 18 U.S.C. §§1962(c) and for its violations of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

### Section 1962(c) claim.

Section 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1961(3) of RICO states that "person" includes any individual or entity capable of holding a legal or beneficial interest in property. Section 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

For purposes of DR. NAPOLI's Section 1962(c) claim, the persons consist of ALLSTATE and middleman MEDVIEW. The enterprise is an association in fact consisting of ALLSTATE and

6

middleman MEDVIEW in terms of control by middleman MEDVIEW over physicians, medical specialists, medical laboratories, hospitals, healthcare clinics, pharmacies, home healthcare agencies, and other miscellaneous healthcare providers; all of which have the purpose of providing healthcare services to an ALLSTATE insured under ALLSTATE's PIP policies. This Section 1962(c) enterprise is distinct from ALLSTATE and includes many persons who are not employees of ALLSTATE and many entities that are not owned by ALLSTATE. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

ALLSTATE is associated with middleman MEDVIEW in the Section 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described. DR. NAPOLI and the purported class members are directly and proximately injured both by this pattern of activity and by ALLSTATE's conduct and participation.

### Section 1962(d) Claim

This claim for relief also arises under 18 U.S.C. §1964(c) of RICO and seeks to recover actual and treble damages for ALLSTATE's violation of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Section 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Section 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

7

For purposes of the claim of a conspiracy in violation of Section 1962(d) to violate Section 1962(a), the persons under the latter subsection consist of ALLSTATE and MEDVIEW and the enterprise consists of ALLSTATE and its investment division, wherein, according to ALLSTATE's website, it has created "a high-quality investment portfolio that consistently achieves excellent returns." In 1998, according to ALLSTATE's website, operating income was $2.6 billion while total net income including *capital gains* was a "record" $3.3 billion. At all times relevant, middleman MEDVIEW and ALLSTATE's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(a). The ALLSTATE investment division was and continues to be the investment beneficiary of additional monies realized from ALLSTATE's overt acts and fraudulent and extortionate scheme or activities to defraud DR. NAPOLI and the purported class of money and to deprive them of their intangible right of honest services from middleman MEDVIEW.

ALLSTATE sells insurance nationwide. Assets generated from ALLSTATE's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars. ALLSTATE derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(a). This use or investment injures DR. NAPOLI and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect healthcare providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described.

As demonstrated in detail above, ALLSTATE has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require DR. NAPOLI and the purported class

8

to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud DR. NAPOLI and the class of money, and to unlawfully interfere with their physician-patient relationship. ALLSTATE's pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by ALLSTATE's inducement to middleman MEDVIEW to allow ALLSTATE to defraud DR. NAPOLI and the purported class. The nature of these acts of ALLSTATE constitutes material misrepresentations that give rise to an inference that ALLSTATE knew it was violating the objective of 18 U.S.C. §1962(d) by violating 18 U.S.C. §§1962(a) and (c), through its ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

  b. The dates of the predicate acts are those dates wherein MEDVIEW provided the discounts to ALLSTATE. The exact dates ALLSTATE obtained these discounts are unknown at present but will be uncovered in discovery. Sample dates wherein ALLSTATE took advantage of these illegal discounts are demonstrated by the attached EOBs.

  c. Not applicable.

  d. No.

  e. See ¶ 5a. above.

  f. These predicate acts amount to and pose a threat of continued criminal activity in that they are presently ongoing and will continue unless the relief sought in this case is granted.

6. See ¶ 5a. above.

7. They have merged into one entity: the "SILENT PPO" described in ¶5a. above resulting in the theft of discounts from plaintiff and the putative class and resulting in the loss of millions of dollars by members of the putative class.

8. The racketeering/criminal activity as described in 5a. above explains how this activity

9

differs from the usual and daily activities of the enterprise.

9. ALLSTATE has reaped millions of dollars by not paying healthcare providers the proper amount of their bills and MEDVIEW has received benefits in the form of compensation paid by ALLSTATE.

10. See paragraph 5a above.

11. a. The exact amount of income to ALLSTATE and MEDVIEW derived from this scheme is unknown at present but is in the millions of dollars.

b. ALLSTATE, each time it took advantage of its stolen discount and did not properly pay the healthcare provider.

c. Each time ALLSTATE invested the payments it saved by participating in this unlawful scheme or used these savings to enhance the net worth of ALLSTATE, it permitted the continued operation of this enterprise.

d. Plaintiff and the putative class were injured by being denied the correct payments on their PIP bills which would have generated millions of dollars in additional revenue to them.

e. ALLSTATE and MEDVIEW are both liable persons and components of the enterprise.

12. Not applicable.

13. See ¶5a. above.

14. See ¶5a. above.

15. Loss of revenue to Plaintiff and the putative class as a result of not receiving proper compensation.

16. See ¶5a. above.

17. Samples of the dollar amounts lost by DR. NAPOLI and the putative class are reflected

in the attached EOB's. As to the savings received by ALLSTATE over the years as a result of its victimizing DR. NAPOLI and the class, records of same are in the possession of ALLSTATE and can be easily determined through discovery. Both defendants would be liable for these amounts.

DATED: February 14, 2000

Respectfully submitted

By: _____
ARTHUR GOLD, ESQ.
GOLD, ROSENFELD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street, Ste 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778
 Facsimile (312)372-5231

By: _____
DOUGLAS A. BLANKMAN, ESQ.
KOPELMAN & BLANKMAN, P.A.
Nationsbank Tower, Suite 1611
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
Facsimile (954) 462-6899


CARLIN PHILLIPS, ESQ.
GOGEL, PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
Facsimile (508) 998-0919