**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

| | | |
|---|---|---|
| DAVID A. NAPOLI, D.C. <br> d/b/a NAPOLI CHIROPRACTIC CENTER, <br> and all others similarly situated, | ) <br> ) <br> ) | |
| | ) | **CASE NO.: 00-CV-6061** |
| Plaintiffs, | ) <br> ) | |
| | ) | **JUDGE FERGUSON** |
| v. | ) <br> ) | **MAGISTRATE JUDGE SNOW** |
| ALLSTATE INSURANCE COMPANY, and <br> MEDVIEW SERVICES, INC., | ) <br> ) | |
| | ) | |
| Defendants. | ) <br> ) | |

---

**DEFENDANT, ALLSTATE INSURANCE COMPANY'S
ANSWER AND DEFENSES TO COUNTS II AND III
OF CLASS ACTION COMPLAINT**

Defendant, Allstate Insurance Company, through its undersigned counsel, and for its Answer and Defenses to Counts II and III of the Plaintiffs' Class Action Complaint ("Complaint")[1] states as follows:

**THE PARTIES**

1.     DR. NAPOLI is a licensed chiropractor who resides in the Southern District of the State of Florida and has his principal place of business at 5700 Stirling Road, Suite 9, Hollywood, Florida.

ANSWER:    Allstate lacks sufficient information to admit or deny the allegations made and contained in Paragraph 1.

---

[1]    Allstate has concurrently moved to dismiss Counts IV, V, VI and VII of the Complaint. Count I of the Complaint does not involve Allstate.



2.     ALLSTATE is an insurance company incorporated under the laws of the State of Illinois with a principal place of business located at 2775 Sanders Road, Northbrook, Illinois. ALLSTATE transacts business in the Southern District of Florida.

ANSWER:     Allstate admits the allegations made and contained in Paragraph 2.

3.     MEDVIEW is a business entity incorporated under the laws of the State of Michigan with a principal place of business in Michigan.  Companies such as MEDVIEW are sometimes referred to as Brokers or Managed Care Companies in the healthcare industry.  They are hereinafter referred to as "middlemen."  Middleman MEDVIEW contracts with healthcare providers, such as DR. NAPOLI, for the purpose of uniting healthcare providers with insurance companies.    Middleman MEDVIEW  may also administer healthcare claims submitted by healthcare providers to insurance companies.    The contracts entered into with healthcare providers by middleman MEDVIEW require the healthcare  providers to accept fees for services at discounted rates from insurance companies.  Healthcare providers, by definition, include, but are not limited to, physicians, chiropractors, hospitals, pharmacies, and other healthcare facilities. After contracting with healthcare providers, middleman MEDVIEW, in turn, develops contractual arrangements with insurance companies for the purpose of coordinating and arranging for the delivery of healthcare services to insureds.  Insurance companies benefit by paying healthcare providers at discounted rates.  Healthcare providers benefit by becoming a part of the network of healthcare providers that is supposed to be marketed to insurance companies and their insureds through the use of directories and marketing tools, thus increasing the healthcare providers' volume of business referrals.  Such healthcare providers are recognized as "preferred providers."  The insurance policies sold by the insurance companies to their insureds

2

are recognized as "preferred provider policies." The combination of all parties to this endeavor is recognized as a Preferred Provider Organization ("PPO").

ANSWER:    Allstate lacks sufficient information to admit or deny the allegations made and contained in Paragraph 3.

4.    DR. NAPOLI entered into a contract with middleman MEDVIEW under which he agreed to provide his services to individuals insured by certain insurance companies for a discount from his normal fees. That contract is attached as Exhibit 1. Thereafter, ALLSTATE began applying DR. NAPOLI's MEDVIEW contractual discount to DR. NAPOLI's medical bills applicable to his patients who were injured in automobile accidents and covered by a Florida ALLSTATE personal injury protection automobile insurance policy.

ANSWER:    Allstate admits, on information and belief, the allegations made and contained in the first two sentences of Paragraph 4, and specifically states that Allstate is expressly listed as a "Payor" on the last page of Exhibit 1 to the Complaint. Allstate further states that with regard to certain claimants covered by a Florida ALLSTATE personal injury protection automobile insurance policy, Allstate was informed and reasonably believed, based on its contractual agreement with Medview's successor-in-interest, CNN Managed Care, Inc. ("CCN"), that the Medview contractual discount with Dr. Napoli was applicable, and based thereon, paid  medical bills submitted by Dr. Napoli for such claimants utilizing such discount. Allstate denies the remaining allegations made and contained in Paragraph 4.

5.    There would be nothing improper with ALLSTATE gaining access to middleman MEDVIEW's data base of preferred providers containing DR. NAPOLI's name and his discounts and applying these discounts *if* ALLSTATE became a legitimate participant in the PPO to which DR. NAPOLI and other healthcare providers similarly situated belonged. In fact, Florida

3

Personal Injury Protection Statute, §627.736(10)(1992), provides a means for ALLSTATE to participate in such a PPO and offer a preferred provider policy of personal injury protection automobile insurance to its insureds after it enters into contracts with healthcare providers. However, ALLSTATE never became a legitimate participant in DR. NAPOLI's PPO and never complied with the requirements of the Florida statute as set forth in paragraph 13, *infra*. Nevertheless, ALLSTATE has taken discounts on healthcare providers' bills as if it were a legitimate participant in DR. NAPOLI's PPO and had complied with the aforesaid Florida statute by offering a preferred provider policy of personal injury protection automobile insurance to its insureds: none of which was done by ALLSTATE.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 5.

6.    This unlawful practice (called a "silent PPO") causes ALLSTATE to enjoy substantial savings and profits by paying out less in benefits which in turn causes DR. NAPOLI and those similarly situated to suffer financial loss, without any consideration from ALLSTATE for these discounts.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 6.

### JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

ANSWER:    Allstate admits the allegations made and contained in Paragraph 7.

8.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S. § 1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq.

4

("RICO"); 18 U.S.C. §§ 1341, 1343, 1346, 1951, 1952 and 1953, and 15 U.S. C. §§ 1, 2 and 13 (the Sherman Anti Trust Act).

ANSWER:     Allstate admits the allegations made and contained in Paragraph 8.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District; and because Defendants are subject to personal jurisdiction in this District.

ANSWER:     Allstate admits the allegations made and contained in Paragraph 9.

## BACKGROUND

10.     With respect to payment of accident related medical expenses, ALLSTATE's standard Florida Automobile Policy of insurance states in pertinent part that:

> **Part III - Personal Injury Protection Coverage VA**
>
> Allstate will pay to or on behalf of the injured person the following benefits.   Payments will be made only when bodily injury, sickness, disease or death is caused by an accident arising form the use of a motor vehicle as a motor vehicle. (1) Medical expenses: 80% of all reasonable and necessary treatment expenses incurred...

ANSWER:     Allstate states that the insurance policy speaks for itself.   Allstate denies the allegations of Paragraph 10 to the extent that they are inconsistent with the foregoing.

11.     ALLSTATE's Policy is a typical Florida indemnity insurance policy under which ALLSTATE  is required to indemnify insureds for eighty (80%) percent of the full cost of their reasonable and necessary medical bills up to a defined limit.   Under the Policy, an insured has the absolute right and  freedom to choose his or her medical providers.   Within Policy limits, medical providers have the unrestricted right to be reimbursed 80% of their reasonable accident related medical expenses.

ANSWER:    Allstate states that the insurance policy speaks for itself.    Allstate admits the

allegations made and contained in the second sentence of Paragraph 11.    Allstate denies the

allegations of Paragraph 11 to the extent that they are inconsistent with the foregoing.

12.    The State of Florida's PIP statute directly addresses a health care provider's right

to be paid for reasonable charges.    Florida Statutes § 627.736 (5) states:

> Any physician, hospital, clinic, or other person or institution
> lawfully rendering treatment to an injured person for bodily injury
> covered by personal injury protection insurance may charge only a
> reasonable amount for the products, services, and accommodations
> rendered,...

Fla. Stat. § 627.736(5)(1992).

ANSWER:    Allstate states that all applicable statutory provisions speak for themselves.

Allstate denies the allegations of Paragraph 12 to the extent that they are inconsistent with the

foregoing.

13.    As set forth in paragraph 5 above, Florida statutes permit an automobile insurance

company to designate certain medical providers (preferred providers) *if* the automobile insurer

establishes a legitimate preferred provider organization ("PPO") network by satisfying the strict

requirements of Florida Statutes § 627.736 (10)(1992) which states as follows:

> (10) An insurer may negotiate and enter into contracts with
> licensed health care providers for the benefits described in this
> section, referred to in this section as "preferred providers," which
> shall include health care providers licensed under chapters 458,
> 459, 460, 461 and 463. *The insurer may provide an option to an
> insured to use a preferred provider at the time of purchase of the
> policy for personal injury protection benefits, if the requirements
> of this subsection are met. If the insured elects to use a provider
> who is not a preferred provider, whether the insured purchased a
> preferred provider policy or a non-preferred provider policy, the
> medical benefits provided by the insurer shall be as required by
> this section. If the insured elects to use a provider who is a
> preferred provider, the insurer may pay medical benefits in excess
> of the benefits required by this section and may waive or lower the*

6

> *amount of any deductible that applies to such medical benefits. If*
> *the insurer offers a preferred provider policy to a policy-holder or*
> *applicant, it must also offer a non-preferred provider policy. The*
> *insurer shall provide each policy-holder with a current roster of*
> *preferred providers in the county in which the insured resides at*
> *the time of purchase of such policy, and shall make such list*
> *available for public inspection during regular business hours at*
> *the principal office of the insurer within the state.* (emphasis
> added).

ANSWER:     Allstate states that all applicable statutory provisions speak for themselves.
Allstate denies the allegations of Paragraph 13 to the extent that they are inconsistent with the
foregoing.

14.     ALLSTATE has not offered its insureds preferred policies of personal injury
protection automobile insurance.  As such, any medical provider who treated or treats an
ALLSTATE insured under an ALLSTATE personal injury protection automobile insurance
policy is not a "preferred provider."  Therefore in accordance with the above quoted statute, "the
medical benefits provided by the insurer shall be as *required* by this section." (emphasis added)
The medical benefits "required" are 80% of all reasonable and necessary treatment, expenses..."
etc.  The statute mandates that this 80% be paid: not 80% of an illegitimately taken ALLSTATE
discounted amount.

ANSWER:     Allstate admits the allegations made and contained in the first and second
sentences of paragraph 14, states that all applicable statutory provisions speak for themselves,
and denies the remaining allegations made and contained in Paragraph 14.

15.     In the present action, ALLSTATE and middleman MEDVIEW have collectively
engaged in the previously described "Silent PPO" scheme to reduce benefits paid on auto injury
claims.  The "Silent PPO" scheme has emerged primarily in the context of indemnity plans.
Indemnity insurers, such as ALLSTATE, obtain access to PPO networks of preferred providers

7

and their discounts.    ALLSTATE takes advantage of these discounts.    ALLSTATE is not, however, entitled to take advantage of these legitimate PPO discounts under the terms and conditions of its Florida automobile insurance policies and Florida statutes.    It has not established the statutory mechanism to be entitled to these PPO discounts.    This Silent PPO scheme contains none of the legitimate steerage mechanisms required by legitimate PPOs. Legitimate steerage mechanisms include financial incentives for steering insureds to preferred providers, lower premiums, educating and marketing information for insureds about preferred providers in the network, and printing and distributing preferred provider identification cards. By using the Silent PPO scheme, ALLSTATE enjoys substantial savings by paying out less in personal injury protection benefits without the attendant expense of establishing a legitimate PPO network.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 15.

16.    Legitimate managed care companies and insurers have knowledge of the illegality of such schemes.    The American Association of Preferred Providers has denounced such practices and the American Medical Association has issued an "Action Alert Kit" to its members educating them about Silent PPO schemes.    Without complying with the statutory requirements for the establishment of an automobile insurance PPO network, ALLSTATE has systematically discounted medical providers' PIP medical expenses by utilizing PPO discounts.    ALLSTATE has illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any "steerage" or other meaningful consideration for such discounts. As stated, ALLSTATE has not complied with Florida statutes so as to be in a position to take these discounts.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 16.

8

## FACTS AS TO PLAINTIFF

17.    On March 25, 1993, DR. NAPOLI entered into a contract with middleman MEDVIEW to be a participating health care preferred medical provider (hereinafter referred to as a "MEDVIEW Preferred Provider") and middleman MEDVIEW agreed to market DR. NAPOLI's services to existing and potential insurance companies and their insureds and DR. NAPOLI agreed to reduce his bills.  (Exhibit 1 attached.)

ANSWER:    Allstate states that Exhibit 1 speaks for itself, and lacks sufficient information to admit or deny the remaining allegations made and contained in Paragraph 17.

18.    DR. NAPOLI authorized MEDVIEW to "identify and publish [his] name, address and available services" in MEDVIEW's information materials for distribution to insurance companies' insureds.  In exchange for this anticipated marketing to increase his patient volume, DR. NAPOLI agreed with MEDVIEW to provide health care services to insureds of such insurance companies at a rate lower than DR. NAPOLI would normally accept for the same healthcare services provided to patients who were not insured by insurance companies who had legitimately qualified to be a part of this PPO.

ANSWER:    Allstate states that Exhibit 1 speaks for itself, and lacks sufficient information to admit or deny the remaining allegations made and contained in Paragraph 18.

19.    ALLSTATE has obtained middleman MEDVIEW's database that contained the identities of all MEDVIEW's Preferred Providers, as well as the discounted fees that these medical providers were willing to accept for medical services.  At no time did ALLSTATE have a written contract with DR. NAPOLI or other medical providers in the State of Florida wherein medical providers agreed with ALLSTATE to discount charges for their medical services to

9

patients injured in automobile accidents who were insured for personal injury protection coverage by ALLSTATE.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 19.

20.    By virtue of ALLSTATE's access to discounts in agreements between middleman MEDVIEW and DR. NAPOLI, and those similarly situated, as well as ALLSTATE's access to the discounts negotiated between middleman MEDVIEW and other healthcare providers, ALLSTATE began to systematically apply PPO discounts.  MEDVIEW and/or ALLSTATE have mailed explanation of benefit forms ("EOBs") that indicated the application of a discount based upon the MEDVIEW Preferred Provider Agreements.  These EOBs state that ALLSTATE is entitled to such discounts.  Under this scheme, ALLSTATE has been reaping huge savings while violating Florida law and providing no consideration whatsoever to healthcare providers, including DR. NAPOLI, for the right to apply such discounts.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 20.

21.    At all times material herein, in the course of his medical practice, DR. NAPOLI provided medical care to patients who had been injured in automobile accidents and who were entitled to personal injury protection benefits from ALLSTATE.

ANSWER:    Allstate admits the allegations made and contained in Paragraph 21.

22.    At no time prior to their treatment with DR. NAPOLI did this class of patients receive any marketing materials, including, but not limited to, publications identifying DR. NAPOLI's name, address and available services, from ALLSTATE.  At no time did ALLSTATE comply with the requirements of Fla. Stat. § 627.736 (10).

ANSWER:    Allstate states that it has not provided written materials to individual personal injury protection claimants which identify Dr. Napoli's name, address and available services.

Allstate states the requirements of Fla. Stat. § 627.736 (10) are inapplicable to the policies of insurance issued by Allstate. Allstate denies the remaining allegations made and contained in Paragraph 22.

23. At no time prior to their treatment with DR. NAPOLI did ALLSTATE encourage these patients to use DR. NAPOLI's medical services.

ANSWER: Allstate states that when requested by certain personal injury protection benefits claimants, Allstate would identify medical care providers, including Dr. Napoli, with regard to whom claimants covered by Allstate policies would be entitled to reduced rates for medical care service, and denies the allegations made and contained in Paragraph 23 to the extent they are inconsistent with the foregoing.

24. After providing medical treatment to these patients, DR. NAPOLI submitted medical bills for reasonable and necessary accident related medical expenses to ALLSTATE for payment.

ANSWER: Allstate admits that Dr. Napoli submitted medical bills to Allstate for payment after providing medical treatment to certain patients and denies the remaining allegations of Paragraph 24.

25. Upon receipt of the medical bills submitted by DR. NAPOLI for payment under the personal injury protection portion of the ALLSTATE Automobile Policy, ALLSTATE and/or MEDVIEW discounted DR. NAPOLI's and other class members' bills with the MEDVIEW PPO discount claiming that ALLSTATE was entitled to said discount; which it was not.

ANSWER: Allstate denies the allegations made and contained in Paragraph 25.

26. As stated, DR. NAPOLI and other class members have received no consideration from ALLSTATE for the discounts taken. ALLSTATE could not provide such consideration

because ALLSTATE failed to offer its insureds a PPO network in compliance with the Florida personal injury protection statute.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 26.

27.    ALLSTATE's illegal activity is demonstrated by Exhibits 2 and 3 attached. Exhibit 2 represents sample EOBs received by DR. NAPOLI illustrating the illegal discount. Exhibit 2 attached illustrates ALLSTATE's version of the "billed amount." This "billed amount" is 80% of what DR. NAPOLI actually billed ALLSTATE. ALLSTATE depicts the "billed amount" as the full amount charged by the medical provider thus overtly concealing the illegal discount. It then pays 80% of the illegally discounted charge as its full obligation under the insured's automobile insurance policy.

ANSWER:    Allstate specifically denies that Exhibit 3 is an "EOB" issued or sent by Allstate or which relates to any claim which is related to any Allstate personal injury protection benefits claimant, and denies the remaining allegations made and contained in Paragraph 27.

28.    ALLSTATE has been applying MEDVIEW PPO discounts to personal injury protection medical expense claims for at least two years. At no time relevant hereto has ALLSTATE established or in any way offered a PPO network to its automobile insureds or otherwise attempted to comply with Florida Stat. § 627.736(10).

ANSWER:    Allstate denies the allegations made and contained in Paragraph 28.

29.    At the time ALLSTATE implemented its PPO discounting scheme, it knew it was violating Florida law.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 29.

30.     As stated, ALLSTATE's discounting scheme contains none of the steerage mechanisms associated with legitimate PPOs.  The scheme lacks marketing, as well as financial incentives for selecting preferred providers.

ANSWER:     Allstate denies the allegations made and contained in Paragraph 30.

31.     After taking the illegal discounts on DR. NAPOLI's bills as described in the preceding paragraphs, as well as those of other healthcare providers, ALLSTATE routinely printed out EOBs showing the discounts.  It then forwarded the EOBs and reduced payment checks to the preferred providers in purported full satisfaction of the preferred providers' medical charges.

ANSWER:     Allstate denies the allegations made and contained in Paragraph 31.

32.     It was and is the custom and practice of ALLSTATE to discount thousands of preferred provider automobile medical expense claims in this manner in violation of its policies with its insureds and in violation of the Florida personal injury protection statute.

ANSWER:     Allstate denies the allegations made and contained in Paragraph 32.

33.     DR. NAPOLI and those similarly situated have been economically damages and have suffered monetary losses as a result of the conduct of ALLSTATE.

ANSWER:     Allstate denies the allegations made and contained in Paragraph 33.

## CLASS ACTION ALLEGATIONS

34.     DR. NAPOLI brings this action on behalf of a class of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The purported class is defined to include:

> all Florida healthcare providers whose bills for medical services rendered to patients covered by ALLSTATE's personal injury protection automobile insurance policies were discounted by

ALLSTATE based upon a purported MedView Preferred Provider Organization reduction.

ANSWER:    Paragraph 34 states a legal conclusion to which no response is required.

35.    There are questions of law and fact that are common to all members of the purported class, which questions predominate over any question affecting only individual class members. [Fed.R.Civ.P.23(a)(2)].

ANSWER:    Allstate denies the allegations made and contained in Paragraph 35.

36.    The principal common issues include the following:

a.    whether ALLSTATE violated Fla Stat, §627.736, et seq. by paying personal injury protection medical expense claims at Preferred Provider rates,

b.    whether ALLSTATE's processing of the PPO discounts is permissible under state law or federal law;

c.    whether DR. NAPOLI and those similarly situated are entitled to compensatory, statutory, or punitive damages against ALLSTATE because of its illegal conduct..

d.    whether DR. NAPOLI and the purported class are entitled to an injunction preventing the continued disclosure of their discounts to ALLSTATE and the application of these discounts to automobile personal injury protection medical expense claims.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 36.

37.    In this case there is no question as to the identification of class members because the class is comprised of all healthcare providers whose medical bills were discounted by ALLSTATE based on MEDVIEW Preferred Provider discounts. There is also no issue as to the amount of the class members' damages because the amounts of the discounts are contained in

14

ALLSTATE's computer systems, and on the EOBs and checks mailed by ALLSTATE to DR. NAPOLI and the members of the purported class.  [Fed. R. Civ. P. 23 (a)(3)].

ANSWER:    Allstate denies the allegations made and contained in Paragraph 37.

38.    DR. NAPOLI's claims are typical of the claims of all the members of the purported class because all claims are based on the same legal and remedial theories.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 38.

39.    DR. NAPOLI will fairly and adequately protect the interests of all purported class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein. DR. NAPOLI is similarly situated with, and has suffered similar injuries as, the members of the purported class that he seeks to represent. DR. NAPOLI feels that he has been wronged, wishes to obtain redress of the wrong and wants ALLSTATE stopped from perpetrating its scheme and continuing to profit from the misapplication of the PPO volume discounts. To that end, DR. NAPOLI has retained counsel experienced in class action cases and health care litigation. Neither DR. NAPOLI, nor counsel, have any interest that may cause them to not vigorously pursue this action. (Fed. R. Civ. P. 23 (a) (4)].

ANSWER:    Allstate lacks sufficient information to admit or deny the allegations made and contained in Paragraph 39.

40.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

a.    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

b.    concentration of the litigation concerning this matter in this Court is desirable;

15

       c.     the claims of the representative Plaintiff, DR. NAPOLI, are typical of the claims of the members of the purported class;

       d.     a failure of justice will result from the absence of a class action; and

       e.     the purported class and the difficulties likely to be encountered in the management of this class action are not great.

ANSWER:     Allstate denies the allegations made and contained in Paragraph 40.

     41.    The purported class is so numerous as to make it impracticable to join all members of the class as plaintiffs. ALLSTATE has discounted thousands of medical bills based on Preferred Provider Volume discounts. Many medical providers may not even be aware of ALLSTATE's sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of individual litigation. In contrast, on a class-wide basis, ALLSTATE has saved millions of dollars by accessing the discounts of Preferred Providers. (Fed. R. Civ. P. 23 (a)(1)].

ANSWER:     Allstate denies the allegations made and contained in Paragraph 41.

## CAUSES OF ACTION

## COUNT I - BREACH OF CONTRACT AS TO MEDVIEW

     DR. NAPOLI incorporates paragraphs 1- 41 as if fully set forth herein and further states as follows:

ANSWER:     Count I is not directed to Allstate and, as such, Allstate makes no answer hereto.

     42. DR. NAPOLI, and the purported class that he seeks to represent, entered into Preferred Provider Agreements with middleman MEDVIEW to become MEDVIEW Preferred Providers. Pursuant to the Preferred Provider Agreements, MEDVIEW agreed to market its

Preferred Providers to legitimate "Third Party Payors" to increase Preferred Provider patient volume in exchange for volume discounts of *twenty percent (20%)* on subscriber (insured's) medical bills. The MEDVIEW Preferred Provider Agreement defines Third Party Payors as including business entities such as insurers, employers and third party administrators who pay for healthcare services rendered to *insured employees*. (Exhibit 1)

ANSWER:    Count I is not directed to Allstate and, as such, Allstate makes no answer hereto.

43.    The MEDVIEW Preferred Provider Agreement forbids the disclosure of the compensation of DR. NAPOLI and the purported class members except under limited circumstances.

ANSWER:    Count I is not directed to Allstate and, as such, Allstate makes no answer hereto.

44.    MEDVIEW has breached its Preferred Provider Agreements in the following manners:

     a.    by selling the volume discounts of DR. NAPOLI and the purported class to ALLSTATE, which is not a legitimate Third Party Payor, for a fee and with knowledge that the discounts would be applied to automobile personal injury protection medical expense claims and not claims of subscribers as stated in the contract;

     b.    by selling the volume discounts of DR. NAPOLI and the purported class to ALLSTATE which applied the discounts retrospectively and could not provide an increase in patient volume for DR. NAPOLI and the purported class;

     c.    by failing to offer adequate and meaningful consideration for discounts of Florida automobile personal injury protection medical expense claims;

17

        d.     by disclosing confidential compensation and discount information to ALLSTATE; and,

        e.     by violating the duty of good faith and fair dealing inherent in its Preferred Provider Agreements through the following acts or failures to act:

(1)    by disclosing the volume discounts of DR. NAPOLI and the purported class to ALLSTATE;

(2)    by allowing ALLSTATE to use the volume discounts without providing consideration therefor; and

(3)    by allowing the volume discounts to be applied to Florida automobile insurance personal injury protection claims in violation of Florida law and the ALLSTATE automobile insurance policy.

<u>ANSWER</u>:    Count I is not directed to Allstate and, as such, Allstate makes no answer hereto.

    45.    As a direct and proximate result of this breach of contract as alleged, DR. NAPOLI and the members of the purported class have suffered damages.

<u>ANSWER</u>:    Count I is not directed to Allstate and, as such, Allstate makes no answer hereto.

**COUNT II**

**<u>UNJUST ENRICHMENT - ALLSTATE</u>**

    DR. NAPOLI, and those similarly situated, reallege paragraphs 1-45 as if fully set forth herein and further state:

<u>ANSWER</u>:    Allstate restates and incorporates by reference its responses to paragraphs 1-45 as if fully set forth herein.

    46.    No consideration has flowed from ALLSTATE to DR. NAPOLI and the putative class for the discounted payments made by ALLSTATE to DR. NAPOLI and the putative class.

18

ANSWER:    Allstate denies the allegations made and contained in Paragraph 46.

47.    ALLSTATE has benefitted by receiving substantial savings at the expense of DR. NAPOLI and the putative class.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 47.

48.    Such savings constitute unjust enrichment for ALLSTATE.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 48.

WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an Order dismissing Count II of the Complaint.

<b><u>Affirmative Defenses to Count II</u></b>

**First Defense**

1.    Count II fails to state a claim for which relief may be granted.

**Second Defense**

1.    Allstate is expressly listed as a "Payor" on the last page of Exhibit 1 to the Complaint.

**Third Defense**

1.    Dr. Napoli knew, or should have known, that with regard to certain claimants covered by a Florida ALLSTATE personal injury protection automobile insurance policy, Allstate was informed and reasonably believed, based on its contractual agreement with Medview's successor-in-interest, CNN Managed Care, Inc. ("CCN"), that it was entitled to apply the Medview contractual discount with Dr. Napoli.

**Fourth Defense**

1.    Dr. Napoli provided medical treatment to certain patients and submitted medical bills to Allstate for payment thereafter.

2.     The medical bills which Dr. Napoli submitted to Allstate were prepared by Dr. Napoli and/or his agents and/or employees.

3.     As a result, Dr. Napoli knew, or should have known, at all times the amount of the payments which he was expecting to receive from Allstate with regard to such bills.

4.     On those occasions when Dr. Napoli received payments from Allstate with regard to such bills, he knew or should have known whether or not Allstate had made payment based on the amount which he had billed or had made payment of a different amount, including payments which factored in an additional discount or reduction.

5.     Instead of making inquiry of Allstate or otherwise alerting Allstate to the fact that he was claiming that Allstate was not paying such bills at the proper rates, Dr. Napoli accepted and acquiesced to such payments without complaint for a period of approximately two years before instituting this lawsuit.

6.     As a result, Dr. Napoli's claim for unjust enrichment is barred by the equitable doctrine of laches.

WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an Order dismissing Count II of the Complaint with prejudice, with an award of taxable costs.

## COUNT III - THIRD PARTY BENEFICIARY BREACH OF CONTRACT-ALLSTATE

DR. NAPOLI incorporates paragraphs 1 - 48 as if fully set forth herein and further states:

ANSWER:     Allstate restates and incorporates by reference its responses to paragraphs 1-48 as if fully set forth herein.

49.     ALLSTATE and its insureds who purchased its Florida personal injury protection automobile insurance policy entered into a contract of insurance. That contract provided that in the event the insured was involved in an automobile accident, ALLSTATE would pay on the

20

insured's behalf to medical providers eighty (80%) percent of all reasonable and necessary medical expenses.

ANSWER:    Allstate states that the insurance policy speaks for itself.  Allstate denies the allegations of Paragraph 49 to the extent that they are inconsistent with the foregoing.

50.    DR. NAPOLI and the other members of the purported class are intended third party beneficiaries of these ALLSTATE insurance agreements. DR. NAPOLI and the members of the putative class were to receive 80% of these reasonable and necessary medical expenses under these policies and under the Florida personal injury protection statute: not 80% of a MEDVIEW Preferred Provider discounted rate.

ANSWER:    Allstate states that the first sentence of paragraph 50 asserts a purported legal conclusion as to which no answer is required, and denies the remaining allegations made and contained in Paragraph 50.

51.    As a result, DR. NAPOLI and the putative class members have suffered damages directly and proximately caused by ALLSTATE's breach of its insurance agreements with its insureds: DR. NAPOLI and the putative class being third party beneficiaries of those insurance agreements.

ANSWER:    Allstate denies the allegations made and contained in Paragraph 51.

## **Affirmative Defenses to Count III**

### **First Defense**

1.    Count III fails to state a claim for which relief may be granted.

### **Second Defense**

1.    Allstate is expressly listed as a "Payor" on the last page of Exhibit 1 to the Complaint.

**Third Defense**

1.      Dr. Napoli knew, or should have known, that with regard to certain claimants covered by a Florida ALLSTATE personal injury protection automobile insurance policy, Allstate was informed and reasonably believed, based on its contractual agreement with Medview's successor-in-interest, CNN Managed Care, Inc. ("CCN"), that it was entitled to apply the Medview contractual discount with Dr. Napoli.

**Fourth Defense**

1.      Dr. Napoli provided medical treatment to certain patients and submitted medical bills to Allstate for payment thereafter.

2.      The medical bills which Dr. Napoli submitted to Allstate were prepared by Dr. Napoli and/or his agents and/or employees.

3.      As a result, Dr. Napoli knew or should have known at all times the amount of the payments which he was expecting to receive from Allstate with regard to such bills.

4.      On those occasions when Dr. Napoli received payments from Allstate with regard to such bills, he knew or should have known whether or not Allstate had made payment based on the amount which he had billed or had made payment of a different amount, including payments which factored in an additional discount or reduction.

5.      Instead of making inquiry of Allstate or otherwise alerting Allstate to the fact that he was claiming that Allstate was not paying such bills at the proper rates, Dr. Napoli accepted and acquiesced to such payments without complaint for a period of approximately two years before instituting this lawsuit.

6.      As a result, Dr. Napoli's claim for breach of contract is barred by waiver and/or estoppel.

22

**Fifth Defense**

1.    Plaintiff lacks standing to assert the claims alleged in Count III of the Complaint.

WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an Order dismissing Count III of the Complaint with prejudice, with an award of taxable costs.

## COUNT IV - RICO

ALLSTATE has filed a motion to dismiss Count IV, and therefore makes no answer to paragraphs 52-99 of the Complaint.

## COUNT V - VIOLATION OF THE
## SHERMAN ANTI-TRUST ACE 15 U.S.C. §1, §2, AND § 3

ALLSTATE has filed a motion to dismiss Count V, and therefore makes no answer to paragraphs 100-102 of the Complaint.

## COUNT VI -DECLARATORY JUDGMENT

ALLSTATE has filed a motion to dismiss Count VI, and therefore makes no answer to paragraphs 103-105 of the Complaint.

## COUNT VII - VIOLATION OF FLORIDA STATUTE 627.736(10)

ALLSTATE has filed a motion to dismiss Count VII, and therefore makes no answer to paragraphs 106-110 of the Complaint.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to Douglas A. Blankman, Esquire, Kopelman & Blankman, P.A., One Financial Plaza, Suite 1611, Ft. Lauderdale, FL  33394, Carlin Phillips, Esquire, Gogel, Phillips & Garcia, LLP, 13 Ventura Drive, North Dartmouth, MA  02747 and Arthur Gold, Esquire, Gold, Rosenfeld & Coulson, 11 S. LaSalle Street, Suite 2500, Chicago, IL  60603, this 23rd day of February, 2000.

|  |  |
|---|---|
| PETER J. VALETA | LORI J. CALDWELL |
| Florida Bar No. 327557 | Florida Bar No. 0268674 |
| ROSS & HARDIES | DAVID B. SHELTON |
| 150 North Michigan Ave., Suite 2500 | Florida Bar No. 0710539 |
| Chicago, Illinois 60601 | RUMBERGER, KIRK & CALDWELL |
| Telephone: (312) 750-3619 | A Professional Association |
| Telecopier: (312) 920-7241 | Post Office Box 1873 |
|  | Orlando, Florida  32802-1873 |
| Attorneys for Allstate Insurance Company | Telephone:  (407) 839-4511 |
|  | Telecopier:  (407) 841-2133 |
|  |  |
|  | Attorneys for Allstate Insurance Company |