UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

DAVID A. NAPOLI, D.C.  )
d/b/a NAPOLI CHIROPRACTIC CENTER,  )
and all others similarly situated,  )
)
)   CASE NO.: 00-CV-6061
Plaintiffs,  )
)   JUDGE FERGUSON
v.  )
)   MAGISTRATE JUDGE SNOW
ALLSTATE INSURANCE COMPANY, and  )
MEDVIEW SERVICES, INC.,  )
)
Defendants.  )
_____)

### DEFENDANT, ALLSTATE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS IV, V, VI AND VII

In this case, plaintiff claims that Allstate did not have any contractual right to apply a discount to his invoices for services rendered to certain of Allstate's insureds. Plaintiff's cynical efforts to recast this simple claim as complex federal RICO and antitrust violations, as well as other statutory violations, are insufficient as a matter of pleading and substance. Accordingly, Counts IV, V, VI and VII should be dismissed.

### Factual Background

Plaintiff, Dr. Napoli, is a chiropractor doing business as Napoli Chiropractic Center. (Complaint, ¶ 1.) He had a contract with Medview Services, Inc. ("Medview") (id., Exh. 1), under which he agreed to a discount from his standard rates for services rendered to individuals insured by certain insurance companies. (Id., ¶ 4.) In return, Medview agreed to perform various services to process claims for insurance coverage benefits to be paid to plaintiff for his services. (Id., Exh. 1, pp. 2-3.) Additionally, Medview agreed:



> to make good faith efforts, within reasonable budgetary constraints, to market [plaintiff's] services to existing and potential Third Party Payors, including but not limited to, business entities such as insurance companies, employers and union trust funds provided, however, MedView does not guarantee to [plaintiff] any minimum number of MedView Subscriber patients.

(Id., Exh. 1, p. 3.) Allstate is expressly listed as "Payor" on plaintiff's agreement with Medview. (Id., Exh. 1 (Exhibit C thereto, p. 2).)

Allstate Florida automobile insurance policies include personal injury protection ("PIP") coverage pursuant to Florida law. Under PIP coverage, Allstate agrees to pay 80% of reasonable charges for necessary medical treatment provided to a covered insured who suffers injury in an automobile accident. (Id., ¶ 11.) Although Fla. Stat. § 627.736(10) authorizes insurers to offer PIP coverage through a "preferred provider" network, Allstate does not sell such preferred provider PIP policies in Florida. (Id., ¶¶ 13-14.) Allstate's insureds have an absolute right to choose their medical service providers. (Id., ¶ 11.)

Allstate has properly entered into agreements with certain health care providers under which they agree on the "reasonable" amounts which would be charged for various medical services. Such agreements are referred to in the "Explanation of Benefits" ("EOB") which accompanies Allstate's payment reducing a provider's bill to such an agreed "reasonable" amount. (See Id., ¶ 27 (alleging "Exhibit 2 [to the Complaint] represents sample EOBs ...") As the EOB (Exhibit 2) expressly states:

> FEE REIMBURSEMENTS ARE BASED ON THIS MEDICAL SERVICE PROVIDER'S AGREEMENTS WITH CCN. THE PATIENT'S RESPONSIBILITY IS LIMITED TO THE DIFFERENCE BETWEEN THE AMOUNT PAID BY ALLSTATE (AS SHOWN BELOW) AND THE CCN

CONTRACTED FEE, WHICH APPEARS IN THE BILLED AMOUNT COLUMN.[1]

Plaintiff asserts that over the past two years, he has provided medical care to Allstate insureds entitled to PIP benefits for which he submitted medical bills to Allstate. (Id., ¶¶ 21, 24.) He admits that he received reduced payments from Allstate for such bills based upon the discounted rate agreement he had with Medview. (Id., ¶ 25, 27.)

Of course, plaintiff was aware of the amounts he billed for services he provided to Allstate insureds. By comparing the amounts of the checks he received from Allstate to his own books and records, as well as from the face of the EOBs, plaintiff knew or should have known whether Allstate had paid the amounts reflected on his original invoices or some discounted rate. Yet, there is no allegation in the Complaint that plaintiff inquired about or raised any objection or question of any kind with Allstate concerning the amounts he was paid prior to filing this lawsuit. Nor has plaintiff alleged that he questioned the applicability of the CCN discount to his bills, as stated on the face of the EOBs.

## Argument

At its core, this action contends that Allstate failed to pay the proper amounts which plaintiff billed for medical services he rendered to various patients. In no way does or could plaintiff allege that, as a result of these circumstances, Allstate has committed a fraud upon him or otherwise engaged in any predicate, criminal offense. Plaintiff has failed, as a matter of law,

---

[1]   "CCN" refers to CCN Managed Care, Inc., which Allstate understood was a successor-in-interest to Medview and Medview's contractual arrangements with providers like plaintiff. Allstate was informed and reasonably believed, based on its contractual agreement with CCN, that the Medview contractual discount agreement with plaintiff was applicable, and based thereon, paid medical bills submitted by plaintiff for such claimants utilizing such discount. (See Answer and Defenses to Counts II and III of the Plaintiffs' Class Action Complaint, ¶ 4.)

therefore, to allege a civil RICO claim. Nor could he properly maintain such a claim, if adequately pleaded, as a class action. In addition, plaintiff has failed to allege, even remotely, a factual or legal basis for any manner of federal antitrust claim. Finally, plaintiff's attempt to state a claim under Section 627.736(10) of the Florida PIP statute fails as a matter of law because no private cause of action is contained in the statute and, even if one were implied, plaintiff would lack standing to pursue it.

### I.     Count IV Fails To Properly Allege A RICO Claim And Must Be Dismissed

#### A.     Count IV Fails To Allege Any Claim For Fraud Or Other RICO Violation For Which Relief May Be Granted.

Plaintiff's RICO claims, alleged en mass in Count IV, should be dismissed for failure to adequately state a claim under Fed.R.Civ.P. 12(b)(6). Despite generously sprinkling the word "fraud" throughout its complaint and citing a litany of federal criminal statutes, plaintiff has not remotely alleged that Allstate engaged in racketeering activity for purposes of RICO. See Bill Buck Chevrolet, Inc. v. GTE Florida, Inc., 54 F. Supp. 2d 1127, 1132 (M.D. Fla. 1999)("claims under RICO must be subjected to scrutiny due to their potential abuse by civil litigants"). Plaintiff's complaint does not allege a single fact reflecting criminal or fraudulent conduct by Allstate. It does not identify an act, a date, a place, or a method by which Allstate sought to accomplish any such offenses. Plaintiff only alleges that over a period of two years, Allstate applied a discount to bills for services he rendered. However, he admits that Allstate provided documentation to him with Allstate's checks which expressly stated that Allstate had applied contractual discounts to plaintiff's bills. Plaintiff knew when he received a payment for an amount that was less than his invoice. He nevertheless accepted Allstate's payments without question or complaint. Those transactions, as alleged by plaintiff, are so far removed from the

purposes of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 et seq., as to make Count IV ludicrous on its face.

       **1.**      **Count IV Fails to State a Claim under 18 U.S.C. § 1962(a).**

Plaintiff fails to plead a claim under 18 U.S.C. § 1962(a) because he has not and cannot establish that he was harmed as a result of investment activity by Allstate. Plaintiff only alleges that he was injured in his property, without alleging any connection between Allstate's investment and his alleged injury. Neither injury resulting from predicate racketeering acts nor mere reinvestment of alleged racketeering proceeds into a business activity is adequate, however, to state a claim under § 1962(a). See, e.g., Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 779 n. 6 (7th Cir. 1994)("the majority of circuits hold that the use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate racketeering acts is inadequate"). See also cases cited at Motion, ¶12. Because he has alleged injury only from purported predicate acts, and not from the investment-use of the converted funds, plaintiff's effort to pursue a §1962(a) claim must be dismissed.

       **2.**      **Count IV Fails to State a Claim under 18 U.S.C. § 1962(c).**

       **(a)**      **No "Enterprise" Is Pleaded.**

Plaintiff's apparent attempt in Count IV to plead a claim under § 1962(c) likewise fails as a matter of law because recovery is available under §1962(c) only for a person who is victimized by the employees or associates of an interstate enterprise that is conducted through a pattern of racketeering activity. See Bill Buck Chevrolet, Inc. v. GTE Florida, supra.

Proper pleading of an enterprise requires allegations of "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical

or consensual decision-making." Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir. 1990). See United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524 (1981). Moreover, an enterprise:

> must be more than a group of people who get together to commit a "pattern of racketeering activity"...and more than a group of associated businesses that "are operated in concert" under the control of one family. The hallmark of an enterprise is "structure." There must be "a structure and goals separate from the predicate acts themselves"....An enterprise can be formal or informal; there need not be much structure, but the enterprise must have some continuity and some differentiation of the roles within it.

Richmond v. Nationwide Cassel, L.P., 52 F.3d 640, 645 (7th Cir. 1995)(citations omitted).2/

Plaintiff has not set forth any allegations regarding a structure, continuity, or common course of conduct of any alleged improper associations. Consequently, plaintiff has failed to adequately allege a RICO enterprise and his RICO claims should be dismissed on that basis alone. E.g., Arenson v. Whitehall Convalescent and Nursing Home, Inc., 880 F. Supp. 1202, 1209 (N.D. Ill. 1995) (dismissing RICO claim in part because plaintiffs had alleged little more than the statutory language regarding participation in the conduct of an enterprise's affairs and had not supported that conclusory statement with facts).

(b)   **No "Pattern" of "Racketeering Offenses" Is Alleged.**

Plaintiff fails to allege sufficiently any predicate racketeering offenses, let alone a pattern of racketeering activities. Racketeering activity is limited to those offenses set forth in 18 U.S.C.

---

2/   See Marshall v. Atlanta, 195 B.R. 156, 168 (N.D. Ga. 1996)(the "existence of an enterprise consisting of an association with a common purpose and continuity of structure, distinct from the pattern of racketeering in which is allegedly has been engaged, must be alleged"); Bill Buck Chevrolet , 54 F. Supp. 2d at 1135; Emery v. American General Finance, Inc., 134 F.3d 1321, 1324 (7th Cir. 1998)("The firm must be shown to use its agents of affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate appearing) firm and uses the firm as the instrument of his criminality").

6

§1961(1). The RICO statute is not to be used as a means to create federal cases out of garden-variety commercial disputes and fraud claims in the absence of racketeering activity.[3]

Plaintiff's efforts to establish acts of mail fraud and wire fraud are insufficient. "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991). A RICO complaint predicated on mail fraud or wire fraud must allege the content of each fraudulent representation and identify, by specific pleading, the acts of each individual charged in the scheme. See Graue Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago, 927 F.2d 988 (7th Cir. 1991); Ray v. Karris, 780 F.2d 636 (7th Cir. 1985); R.E. Davis Chemical Corp. v. Nalco Chemical Co., 757 F.Supp. 1499 (N.D. Ill. 1990). When multiple actors are alleged to be part of the scheme, each must be informed of the specific acts committed. P&P Marketing, Inc. v. Ditton, 746 F. Supp. 1354 (N.D. Ill. 1990). Moreover, each mailing or wire transmission alleged must be "in furtherance of the scheme." Jepson Inc. v. Makuta Corp., 34 F.3d 1321 (7th Cir. 1994). Furthermore, to establish mail fraud

---

[3] See Robert Suris General Contractor Corp. v. New Metropolitan Federal Savings and Loan Assn., 873 F.2d 1401, 1404 (11th Cir. 1989)("Plaintiff has taken a simple breach of contract or garden-variety fraud claim and attempted to boot-strap it into a 'federal case' by couching the allegations in [RICO] statutory language. This is not the purpose for which RICO was enacted."). See also Hunter v. J. Craig Construction Co., 51 F.3d 275, 1995 WL 141359 (7th Cir. Mar. 30, 1995)("The purpose of [the RICO pleading] requirements is to weed out garden variety fraud allegations and prevent RICO from being misused as a tool wherewith a disgruntled party may exact disproportionate vengeance against his partners or associates when their business dealings turn sour"); Mendelovitz v. Vosicky, 40 F.3d 182, 187 (7th Cir. 1994)(a "garden variety business fraud masquerading as a RICO claim" is "just not the proper vehicle" for redress); S.I.G. Food Services Associates v. Mann, 27 F.3d 569, 1994 WL 260754 (7th Cir. June 14, 1994)("in all civil RICO actions, we must be careful to distinguish plain 'garden-variety fraud' from a 'pattern of racketeering activity' with sufficient continuity and relationship between the predicate acts to satisfy the RICO statute"); Oak Park Trust and Savings Bank v. Village of Inverness, 1998 WL 341831 (N.D. Ill. June 22, 1998)("This is a garden-variety fraud claim -- nothing more, nothing less [and] not the type of extensive racketeering activity which Congress intended to be governed by RICO.")

or wire fraud, a plaintiff must plead and prove "that the defendant held the requisite mens rea ... a conscious knowing intent to defraud"(Pelletier, 921 F.2d at 1499) and a "RICO plaintiff's allegations of science cannot be 'merely conclusory and unsupported by any factual allegations.'" Republic of Panama v. BOCCI Holdings, 119 F.3d 935, 949 (11th Cir. 1997); Bill Buck Chevrolet, 54 F. Supp. 2d at 1132-33.

The essence of plaintiff's claims is that Allstate paid amounts which were less than that billed by plaintiff for medical treatments to Allstate PIP insureds. Neither the mailings nor any action by Allstate alleged by plaintiff, however, constituted or included an actionable misrepresentation or omission. To the contrary, plaintiff admits in his allegations that the payments were accompanied by a document expressly explaining the discounts applied by Allstate --hardly fraudulent conduct or conduct indicative of fraudulent intent. There is simply nothing pleaded, beyond mere conclusory statements, upon which science can be based. Because the alleged mailings and transmissions served no purpose in a fraud or in a fraudulent inducement of plaintiff to provide services, they do not support a mail or wire fraud scheme. See United States v. Maze, 414 U.S. 395, 94 S. Ct. 645 (1974); United States v. Altman, 48 F.3d. 96 (2nd Cir. 1995); United States v. Keane, 522 F.2d 534 (7th Cir. 1975). And, as a result, plaintiff's attempt to pursue a §1962(c) claim also must be dismissed. See, e.g., Richmond, 52 F.3d at 645; Bill Buck Chevrolet, 54 F. Supp. 2d at 1135.

In all events, even if racketeering activity were properly alleged, it did not occur in a "pattern" as required by the RICO statute. Sections 1962(a), (c), and (d) require a plaintiff to allege a "pattern" of racketeering in order to state a RICO claim. H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 245, 109 S. Ct. 2893 (1989); H.G. Galli more, Inc. v. Abdul, 652 F. Supp. 437, 440 (N.D. Ill. 1987). In order to establish such a pattern, moreover, plaintiff must

allege at least two predicate acts which are related and continuous. H.J., 492 U.S. at 239; Bill Buck Chevrolet, 54 F.Supp. 2d at 1134. See Vicom, 20 F.3d at 779. In addition, there must be an implicit future threat of criminal activity. Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1022 (7th Cir. 1992).

Plaintiff's complaint fails to reveal any pattern at all. A claim arising out of a single contract is insufficient to comply with the pattern requirement. Skycom Corp. v. Telstar Corp., 813 F.2d 810 (7th Cir. 1987). The short duration of the scheme alleged in the complaint, only two years or less, is another factor mitigating against the pattern. E.g., Sutherland v. O'MALLEY, 882 F.2d 1196, 1205 (7th Cir. 1989); Miller v. Locks, 1992 WL 329313 (N.D. Ill. Nov. 5, 1992) (ten years held insufficient). The single claim alleged by this one plaintiff asserting the sole injury to be nonpayment of an alleged debt also brings this complaint outside the scope of RICO's pattern requirement. Lapin Enterprises, Inc. v. Lee, 803 F.2d 322 (7th Cir. 1986).

Furthermore, the requirement that the pattern have "continuity" is also missing from the complaint. A scheme that has a single finite goal, is designed to be short-lived and has no threat of future criminal conduct does not satisfy the continuity prong of the pattern requirement. See Short v. Belleville Shoe Mfg.co., 908 F.2d 1385 (7th Cir. 1990); Olive Can Co., Inc. v. Martin, 906 F.2d. 1147 (7th Cir. 1990). Continuity is either "open-ended" or "closed-ended." Open-ended continuity involves acts which occur over a shorter period of time but pose a threat of continuing criminal activity. V.S. Investors v. V.S. Management, Inc., 1994 WL 722035, at *2 (N.D. Ill. Dec. 29, 1994). In order to show open-ended continuity, a plaintiff must demonstrate: (1) a specific threat of repetition; (2) that the predicate acts or offenses are part of an ongoing entity's regular way of doing business; or (3) that the defendant operates a long-term

association that exists for criminal purposes. <u>Midwest</u>, 976 F.2d at 1023. Closed-ended continuity is shown by a "series of related predicate acts 'extending over a substantial period of time'" now concluded. <u>V.S. Investors</u>, 1994 WL 722035, at *2 (quoting <u>McDonald v. Schnecken</u>, 18 F.3d 491, 497 (7th Cir. 1994)). In assessing allegations of closed-ended continuity, courts consider: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. <u>Vicom</u>, 20 F.3d at 780. See <u>H.J.</u>, 492 U.S. at 239; <u>Bill Buck Chevrolet</u>, 54 F.Supp. 2d at 1134.

Plaintiff has clearly failed to allege open-ended continuity. The Complaint contains no allegations demonstrating: that there is a specific threat of repetition; that the alleged predicate acts or offenses are part of Allstate's regular way of doing business; or that Allstate operates a long-term association that exists for criminal purpose. Plaintiff includes only the bare allegation that Defendants' alleged policy and practices would continue unless halted by this Court. This unsupported contention does not satisfy a showing of open-ended continuity. <u>See, e.g.</u>, <u>Midwest</u>, 976 F.2d at 1023.

Nor has plaintiff sufficiently alleged closed-ended continuity. First, the inquiry into the length of time over which the alleged predicate acts occurred has been called "the single most important aspect of the closed-ended continuity analysis...." <u>Vicom</u>, 20 F.3d at 781. Plaintiff merely claims that the alleged "policy and practice" occurred over two years. However, plaintiff fails to allege when the specific, alleged <u>predicate acts</u> occurred, how long they continued or when they ended. Moreover, even if the predicate acts occurred over the two year period, courts have found a lack of continuity for alleged schemes lasting far longer than that. <u>See, e.g.</u>, <u>Miller</u>, <u>supra</u> (ten years). Indeed, courts do "not look favorably on many instances of mail and wire

fraud to form a pattern." Midwest, 976 F.2d at 1025. See also Olive Can, 906 F.2d at 1151; V.S. Investors, 1994 WL 722035, at *5.

3. **Count IV Fails to State a Claim under 18 U.S.C. § 1962(d).**

Plaintiff also has failed to properly allege a §1962(d) claim because a RICO conspiracy cannot be charged in the absence of a properly pled substantive RICO violation. Plaintiff has failed to adequately allege RICO predicate acts, failed to allege an enterprise, failed to allege a pattern of racketeering activity and he has suffered no RICO injury. As a result, plaintiff has not and cannot properly plead RICO conspiracy under §1962(d). See Callahan v. United States, 881 F.2d 229, 235 (6th Cir.1989).

4. **RICO Claims Are Not Proper for Class Action Treatment.**

In all events, because the alleged RICO claims sound in mail and wire fraud, they are inappropriate for class action treatment because they require individualized showings of misrepresentation, reliance, injury and damages, and thus must be dismissed on that basis as well. See Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir.1996)(RICO claims predicated on mail fraud and wire fraud deemed inappropriate for class treatment because, even "if it could be shown that the appellants were engaged in a scheme to defraud and made misrepresentations to further that scheme, the plaintiffs would still have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages"); Pelletier, 921 F.2d at 1498-1500. cf. Fickler v. Am south Corp., 176 FRAT 583 (M.D. Fla. 1997)(citing the advisory committee notes to Rule 23(b)(3) and denying class certification of securities fraud claims because a fraud class action cannot be certified when individual reliance will be an issue).

### B.     Count IV Fails To Allege Any Cognizable Claim Of Fraud.

There is simply no claim of fraud alleged by Count IV. It does not allege any "circumstances constituting fraud ... with particularity" and thus fails to meet the requirements of Fed. R. Civ. P. 9(b). Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants against spurious charges of immoral and fraudulent behavior.' " Durham v. Business Management Associates, 847 F.2d 1505, 1511 (11th Cir. 1988). In addition, this rule applies with equal force regardless of whether a plaintiff attempts to plead mail fraud, wire fraud or any other fraudulent conduct as a predicate act for a RICO claim. Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364 (11th Cir. 1997). See also United States v. Cramer, 609 F.2d 126, 128 (5th Cir. 1980)(explaining that the mail fraud statute "does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract"); McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 (1st Cir. 1990)("a breach of contract [does not] in itself constitute a scheme to defraud" under mail and wire fraud statutes).

Rule 9 is thus satisfied only where the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud.'" Brooks, 116 F.3d at 1380; see Vicom, 20 F.3d at 776. Moreover, "'Cryptic statements' suggesting fraud are not enough; '[mere allegations of fraud..., averments to conditions of mind, or references to plans or schemes are too conclusional to satisfy the particularity requirements no

matter how many times such accusations are repeated.'" Graue Mill, 927 F.2d at 992; Haddock v. Lamna, 775 F.2d 441, 444 (1st Cir. 1985).

Additionally, in a fraud case involving multiple actors, "'the complaint should inform each [actor] of the nature of his alleged participation in the fraud.'" Vicom, 20 F.3d at 778 (quoting Divider v. Acadian Extractive Indus., Inc. 822 F.2d 1242, 1247 (2nd Cir.1987)); Brooks, 116 F.3d at 1380 (quoting Vicom). Courts routinely have rejected complaints that lump multiple actors together without specifying the actions taken by each of them. See, e.g., Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of complaint that was "bereft of any detail concerning who was involved in each allegedly fraudulent activity" and "lumped] all the defendants together and [did] not specify who was involved in what activity."). See also Design Time, Inc. v. Synthetic Diamond Technolo-gy, Inc., 674 F. Supp. 1564, 1569 (N.D. Ind. 1987).

Count IV alleges none of these critical details with particularity; indeed, the express allegations of the complaint make it clear that plaintiff was not misled and could not reasonably have relied upon any alleged misstatement by Allstate because, <u>as plaintiff admits the payments he received from Allstate were accompanied by a document expressly explaining the discounts applied</u>. See Pelletier, 921 F.2d at 1499-1500 (when the alleged predicate act is mail or wire fraud, the plaintiff must have been the target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme); Johnson Enterprises of Jacksonville, Inc. v. FAL Group, Inc., 162 F.3d 1290, 1318 (11th Cir. 1998)(misrepresentations made to someone other than the plaintiff will not support RICO claim based on mail or wire fraud). Instead, Count IV contains only cryptic and conclusory allegations purporting to charge Allstate with vague and unsubstantiated acts of conspiracy, fraud, racketeering and extortion. Those allegations are simply insufficient as a matter of law.

Count IV further improperly fails to distinguish between the conduct of Allstate, Medview and other, unnamed, actors. As such, Count IV fails to plead with sufficient particularity and must be dismissed on this basis as well. E.g., Sears, 912 F.2d at 893 (affirming dismissal of complaint that was "bereft of any detail concerning who was involved in each allegedly fraudulent activity" and "lumped] all the defendants together and [did] not specify who was involved in what activity.").

Plaintiff has also failed to articulate with particularity the predicate acts underlying his alleged RICO violations. "A RICO claim predicated on mail or wire fraud must sketch out both the scheme to defraud and how the mail or wires furthered that scheme...A plaintiff must identify the mailings and the role they played in the fraud." Biegnet v. Wilson, 642 F. Supp. 768, 770 (N.D. Ill. 1986). See In re Cascade Int'l Secs. Litigation, 840 F. Supp. 1558, 1582 (S.D. Fla. 1993)("To maintain a RICO action, at a minimum, the plaintiffs must allege sufficient facts with enough specificity to show probable cause that the predicate acts were committed."); Bill Buck Chevrolet, supra.

Plaintiff's flimsy mail and wire fraud allegations do not meet that standard. The Complaint states only that Allstate sent an EOB which reflected reductions to the amounts billed by plaintiff which plaintiff contends should not have been taken. (Compl., ¶ 20.) Plaintiff fails, however, to allege how these mailings and wires could be fraudulent or could be used to facilitate a fraud upon plaintiff. Plaintiff had in his control the precise information -- namely the amounts of his original invoices -- which necessarily informed him that the amounts paid by Allstate differed from the amounts he had billed. Further, Allstate issued and sent to plaintiff an EOB which expressly stated that the amount paid by Allstate was adjusted from the amount billed by plaintiff based on rates contractually agreed to by plaintiff in his contract with CCN.

(Compl., ¶¶ 20, 24, 25, 27, 31.) At no point in the chain of alleged events, therefore, did Allstate make a material misstatement or omission of fact upon which plaintiff reasonably could rely. Based on the circumstances alleged, therefore, plaintiff simply cannot establish fraud sufficient to meet the requirements of Rule 9(b).[4]

### C. In All Events, Count IV Is Not a "Short and Plain Statement of the Claim Showing That the Pleader Is Entitled to Relief."

Rule 8(a)(2) requires that a complaint contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, Rule 8(e)(1) states that each "averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). Under Rule 8, a complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." Wade v. Hopper, 993 F.2d 1246, 1249 (7th Cir.1993).

In Count IV, plaintiff has improperly intertwined a prolix, vague, internally contradictory and incomprehensible claim which purports to be based on several sections of the RICO statutes, including 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). Plaintiff's abstruse pleading and commingling of theories, in and of themselves, thus fail to meet the requirements of Rule 8 and require dismissal of Count IV. Fed. R. Civ. P. 8. See also Rule 12.1(1), General Rules of the Southern District of Florida ("If you allege violations of more than one subsection of § 1962 [each] should be pled as a separate RICO claim.").

---

[4] Plaintiff likewise offers no basis whatsoever for his bizarre claim of extortionate activities by Allstate. Plaintiff does not offer any specific conduct, circumstances or statements which remotely could constitute extortion in violation of 18 U.S.C. § 1951 (b)(2). Plaintiff offers, instead, citations to and quotations from statutes and conclusions unsupported by facts.

**II.     Count V Fails To Properly Allege An Antitrust Claim And Also Must Be Dismissed**

**A.     Count V Violates F.R.Civ.P. 8.**

In Count V, plaintiff purports to combine claims arising under the Clayton Act as well as Sections 1 and 2 of the Sherman Act. Like Count IV, therefore, plaintiff's abstruse pleading and commingling of antitrust theories, in and of themselves, fail to meet the requirements of Rule 8 and require dismissal of Count V. Fed. R. Civ. P. 8(a)(2).

**B.     Count V Also Should Be Dismissed under Fed. R. Civ. P. 12 (b)(6).**

First and foremost, plaintiff points to alleged "price discrimination" as the basis for his purported anti-trust claims. However, 15 U.S.C. § 13, that portion of the Clayton Act known as the Robinson-Patman Act, applies specifically to price discrimination concerning "commodities." Insurance services are not considered "commodities" and thus not covered by the Robinson-Patman Act. Uniforce Temporary Personnel, Inc. v. National Council on Compensation Insurance, Inc., 892 F. Supp. 1503, 1513 n.12 (S.D. Fla. 1995), aff'd 87 F.3d 1296 (11th Cir. 1996); citing Freeman v. Chicago Title & Trust Co., 505 F.2d 527, 530 (7th Cir. 1974). As a result, to the extent plaintiff's claim in Count V is based on §13 of the Clayton Act, it fails as a matter of law to state a viable claim and must be dismissed.

Plaintiff likewise fails as a matter of law to allege a violation of Section 1 of the Sherman Act. Firstly, plaintiff does not allege, as is required on the face of Section 1 of the statute, a contract, combination or conspiracy in restraint of trade of commerce. Six Twenty-nine Productions, Inc. v. Rollins Telecasting, Inc., 365 F.2d 478, 484 (5th Cir. 1966 (Fla)) ("The essential element in a Section 1 violation, not found in Section 2 cases, is the existence of some kind of contract, combination or conspiracy."). Secondly, plaintiff's allegations speak only to the alleged actions of Allstate, which, quite simply, cannot be in a contract, combination or

conspiracy with itself. Id. ("It is fundamental that at least two independent business entities are required for violation of Section 1 ..."). And thirdly, plaintiff makes no effort to plead the manner in which Allstate's alleged actions actually restrained trade, settling instead for the inadequate, conclusory statement that "said price discrimination practices constitute a restraint upon commerce and trade." See Gregoris Motors v. Nissan Motor Corp. in USA, 630 F. Supp. 902, 908 (E.D.N.Y. 1986) ("The allegations of anti-competitive effect as to plaintiff individually and to any market as a whole are no more than conclusory. As 'the absence of a sufficient allegation of anticompetitive effects is fatal to the existence of the cause of action,' Havoco of American, Ltd. v. Shell Oil Co., 626 F.2d 549, 554 (7th Cir. 1980), the first cause of action for violation of §1 of the Sherman Act must be dismissed."). As a result, plaintiff has failed, as a matter of law, to plead a violation of Section 1 and all claims contained in Count V which are based upon Section 1 of the Sherman Act must be dismissed.

Plaintiff also fails to allege a violation of Section 2 of the Sherman Act. Section 2 of the Sherman Act only applies to monopolization. Plaintiff does not even use the word "monopoly" in his Complaint, let alone allege a specific interest on the part of Allstate to attempt or conspire to monopolize anything. See Double D Spotting Service, Inc. v. Supervalu, Inc., 136 F.3d 554, 560 (8th Cir. 1998) ("Section 2 of the Sherman Act requires a plaintiff to **plead** and prove that the defendant (1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining it as a result of a superior product, business acumen, or historical accident." (internal citations omitted; emphasis added)). Thus, plaintiff's failure to plead the existence of a "monopoly" requires all claims based upon Section 2 of the Sherman Act be dismissed.

### III. Count VI Fails To State A Viable Claim And Must Be Dismissed.

Count VI, styled "Declaratory Judgment," in effect asks this Court to declare that Allstate's conduct, as alleged in connection with the various and sundry theories asserted elsewhere in the Complaint, is "wrong." Count VI, is, at best, redundant, provides no basis for independent declaratory relief against Allstate, and must be dismissed. See Fed.R.Civ.P. 12(f).

### IV. Count VII Fails To Allege Any Cognizable Violation Of The Florida PIP Statute

Plaintiff attempts in Count VII to plead a claim under the Florida Statute §627.736(10), which is a regulatory provision subject to enforcement by the Commissioner of Insurance. Section 627.736(10) does not expressly authorize any private right of action for violations of the statute. See Florida Stat. §624.155 (expressly providing that private civil actions may be brought against insurers for violations of several enumerated statutory sections, not including §627.736(10)). Nor is there any basis upon which to conclude that the legislature intended otherwise to provide for an implied private cause of action. Consequently, no such cause of action exists and, as a result, Count VII must be dismissed. See, e.g., Murthy v. N. Sintha Corp., 644 So.2d 983, 985-86 (Fla. 1994)(no private cause of action may be maintained where neither a statute on its face nor the legislative history reveal an intent by the legislature to provide for a private right of action).

Furthermore, the provisions of Florida Statute §627.736(10) govern conduct in the sale of insurance policies by insurance companies to their insureds. The purpose of §627.736(10) is to protect insureds from harm as a result of actions by insurance companies deemed inappropriate. Plaintiff is not an insured and thus is not in the class of persons the statute would be deemed to have intended to protect. Consequently, to the extent that any private right of action were determined to exist under the statute, it would not be available to plaintiff. See Fischer v.

Metcalf, 543 So.2d 785, 788 (Fla. 3rd DCA 1989)(noting that a private cause of action is to be implied, if at all, only for a plaintiff who is "one of the class for whose especial benefit the statute was enacted").  As a result, even if a claim otherwise could be asserted by an Allstate insured, plaintiff lacks standing and his effort to pursue such a claim must be dismissed.

WHEREFORE, for the foregoing reasons, Allstate Insurance Company respectfully requests that this Court enter an Order dismissing Counts IV, V, VI and VII of the Class Action Complaint, with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to Douglas A. Blankman, Esquire, Kopelman & Blankman, P.A., One Financial Plaza, Suite 1611, Ft. Lauderdale, FL 33394, Carlin Phillips, Esquire, Gogel, Phillips & Garcia, LLP, 13 Ventura Drive, North Dartmouth, MA 02747 and Arthur Gold, Esquire, Gold, Rosenfeld & Coulson, 11 S. LaSalle Street, Suite 2500, Chicago, IL 60603, this 23rd day of February, 2000.

PETER J. VALETA  
Florida Bar No. 327557  
ROSS & HARDIES  
150 North Michigan Ave., Suite 2500  
Chicago, Illinois 60601  
Telephone: (312) 750-3619  
Telecopier: (312) 920-7241  

Attorneys for Allstate Insurance Company

LORI J. CALDWELL  
Florida Bar No. 0268674  
DAVID B. SHELTON  
Florida Bar No. 0710539  
RUMBERGER, KIRK & CALDWELL  
A Professional Association  
Post Office Box 1873  
Orlando, Florida 32802-1873  
Telephone: (407) 839-4511  
Telecopier: (407) 841-2133  

Attorneys for Allstate Insurance Company