UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | |
|---|---|
| DAVID A. NAPOLI, D.C.<br>d/b/a NAPOLI CHIROPRACTIC CENTER,<br>and all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, and<br>MEDVIEW SERVICES, INC.,<br><br>   Defendants. | CASE NO.: 00-CV-6061<br><br>JUDGE FERGUSON<br><br>MAGISTRATE JUDGE SNOW<br><br>Allstate Insurance Company's<br>Reply Memorandum In<br>Support Of Its Motion To<br>Dismiss Counts IV, V, VI<br>And VII |

This case is a simple disagreement over the amount of payments made by Allstate Insurance Company ("Allstate") to plaintiff for medical services rendered to Allstate personal injury protection ("PIP") claimants. Plaintiff concedes that he had agreed with a third party, Medview Services, Inc. ("Medview") to accept certain reduced rates for his services when he rendered them to individuals insured by certain insurance companies. (Complaint, ¶ 4.) Allstate was informed and reasonably believed, based on its contractual agreement with Medview's successor-in-interest, CNN Managed Care, Inc. ("CCN"), that the Medview contractual discount with plaintiff was applicable to Allstate PIP claimants treated by plaintiff, and based thereon, paid medical bills submitted by plaintiff for such claimants utilizing such discount. (Allstate Answer, ¶ 4.)

Plaintiff also concedes that Allstate openly disclosed that its payments to plaintiff included this discount. On the "Explanation of Benefits" ("EOB") which accompanies Allstate's payment to a provider (see Complaint, ¶ 27 (alleging "Exhibit 2 [to the Complaint] represents sample EOBs ..."), Allstate expressly told plaintiff:



> FEE REIMBURSEMENTS ARE BASED ON THIS MEDICAL SERVICE PROVIDER'S AGREEMENTS WITH CCN. THE PATIENT'S RESPONSIBILITY IS LIMITED TO THE DIFFERENCE BETWEEN THE AMOUNT PAID BY ALLSTATE (AS SHOWN BELOW) AND THE CCN CONTRACTED FEE, WHICH APPEARS IN THE BILLED AMOUNT COLUMN.

(Complaint, Exh. 2.)

There is no "secret;" nothing was hidden from plaintiff by Allstate when it paid his bills. There is no fraud, no RICO and no antitrust case here. This is a simple commercial dispute regarding the parties' respective contractual rights. Accordingly, Counts IV, V, VI and VII should be dismissed.

## Argument

Notwithstanding plaintiff's protests, there simply is nothing inherently fraudulent or otherwise wrongful with agreements which medical care providers enter into in which they agreed to accept negotiated, reduced rates for their services in certain circumstances. As one commentator has stated:

> While many providers have expressed outrage against what they have variously characterized as unethical to fraudulent behavior on the part of network organizations, the reality is that all too often the provider has signed an agreement without the proper due diligence as to the value to be received. "Contracting provider beware" may well be the watchphrase for hospitals in the 1990s.

Dickerson, Preferred Provider Organizations vs. Non-Directed Networks: A Provider Dilemma, Federation of American Health Systems (1998).[1] This is a case about the contractual rights which apply to plaintiff and Allstate, nothing more.

---

[1] See also Somers, What You And Your Physician Client Need To Know About Managed Care Contracts Part 2, 42 NO. 3 Prac. Law. 15 (1996)("Silent PPO ... labels a not-too-unusual situation. ... Not understanding the contract, the care provider thought it applied only to care for payor A's covered persons. In reality the contract [allowed] payor A to sell to other payors the right to use payor A's network of contracting care providers under the same terms and conditions (for example, pay discounts) as payor A had bargained with them.").

2

I. **THE SUBSTANCE OF PLAINTIFF'S ALLEGATIONS, TAKEN AS TRUE, IS PROPERLY EXAMINED ON A MOTION TO DISMISS.**

If the facts alleged in the Complaint fail to state a claim for a statutory violation, as in this case, a motion to dismiss is proper and should be granted. See Sutton v. Eastern Viavi Co., 138 F.2d 959, 960 (7th Cir. 1943) (a complaint which pleads facts insufficient to show that alleged wrong has been committed, or which omits some averment necessary to establish the wrong, does not state a claim for relief and must be dismissed.) As Allstate demonstrated in its Motion to Dismiss and supporting memorandum, plaintiff failed to plead adequately the legal basis for the claims he purports to assert in Counts IV, V, VI and VII. Tacitly acknowledging this fact, plaintiff instead argues that he need not meet that burden because Allstate is "sophisticated" and should be able to "figure out" what he intends to assert. Plaintiff further contends that Allstate's attempt to "argue the merits" of his claims is not appropriate for a motion to dismiss. Not surprisingly, plaintiff offers no support for these novel propositions; in fact they are contrary to the letter and spirit of the rules of civil procedure. In fact, plaintiff acknowledges that the legal sufficiency of the allegations in his complaint is properly tested by this motion: "in order to withstand a motion to dismiss, a complaint must allege facts sufficiently, setting forth the essential elements of the cause of action." (Opp. Memo., p. 2.)

II. **PLAINTIFF HAS NOT ADEQUATELY PLEADED A RICO CLAIM.**

Plaintiff's conclusory assertions that "a 'silent PPO' is a well-known abuse.... [and] is an unlawful and fraudulent undertaking" (Opp. Memo., p. 3), are woefully inadequate to constitute the proper pleading of a RICO claim. Regardless of how he wishes to characterize "silent PPOs," the question raised by Allstate's motion to dismiss Count IV is whether plaintiff has adequately pleaded predicate racketeering acts, has pleaded facts establishing an actionable conspiracy; has pleaded facts demonstrating an actionable RICO enterprise; and has pleaded a

3

pattern of improper conduct. Plaintiff's response does not and cannot explain away those pleading deficiencies

### 1. Count IV Fails to State a Claim under 18 U.S.C. § 1962(a).

Plaintiff does not question that under 18 U.S.C. § 1962(a) he must plead that he was harmed as a result of investment activity by Allstate. See, e.g., Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 779 n. 6 (7th Cir. 1994). Plaintiff concedes he only alleges that Allstate did not pay the full amount he claims was due on his bills. (Opp. Memo., pp. 11-12.) The mere reinvestment of alleged racketeering proceeds, as plaintiff alleges here, is not sufficient to allege a claim under Section 1962(a). Id. ; Brittingham v. Mobil Corp., 943 F.2d 297, 305 (3d Cir. 1991). Because he does not allege any connection between an investment by Allstate and his alleged injury, he fails to state a claim under § 1962(a).

### 2. Count IV Fails to State a Claim under 18 U.S.C. § 1962(c).
#### (a) No "Enterprise" Is Pleaded.

Plaintiff's own authorities acknowledge that "[a]n enterprise 'must be more than a group of people who get together to commit a "pattern of racketeering activity,"'... and more than a group of associated businesses that 'are operated in concert' under the control of one family. 'The hallmark of an enterprise is a "structure."'" Richmond v. Nationwide Cassel L.P., 52 F.3d 640 (7th Cir. 1995)(citations omitted). His complaint alleges no such thing. He alleges that Allstate applies a discount to his bills which he agreed to with Medview. He alleges nothing which establishes that any "structure," "operated in concert" by any separate "enterprise" separate in any way from Allstate or Medview.

#### (b) No Fraud Alleged Giving Rise to a "Pattern" of "Racketeering Offenses".

At the heart of this matter is the simple fact that the complaint does not contain pleaded facts which would allow this Court to conclude that Allstate defrauded plaintiff or otherwise

4

committed predicate racketeering offenses in any way. There is no deceitful conduct pleaded.[2] None of Allstate's pleaded actions were concealed in any way from plaintiff. Allstate's alleged statements, moreover, were not false. Nor has plaintiff alleged that he relied in any meaningful way to his detriment upon any alleged misstatement by Allstate.

In fact, plaintiff concedes that Allstate told him exactly what it was doing and why. Plaintiff does not contest that when Allstate applied a discount to plaintiff's bills, Allstate accompanied the payment with an EOB which expressly stated that the discount had been used. Nor does plaintiff contest that he possessed information with which to independently ascertain both that a discount had been taken and the amount of the reduction. Plaintiff cites to no case law, nor could he, which held that payment of a bill in a reduced amount, based on an asserted contractual right, where that payment was accompanied by a written explanation that such a contractual discount was so applied can somehow constitute fraud.

Plaintiff's claims that other courts have "condemned" this "illegal scheme" are false. In HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co., 22 F. Supp. 2d 1390 (N.D. Ga. 1998), for example, the Court considered an ERISA claim, in which the insurer was alleged to have received secret discounts from medical care providers which it did not disclose to its insureds. Because those insureds were unaware of the discounts provided to the insurer on claims, they made larger than necessary co-payments based on full, non-discounted rates. Contrary to plaintiffs' implication, the court did not address, let alone hold that non-directed discount arrangements are unlawful or wrongful in any way. Instead, the Court concluded that the insurer, as an ERISA fiduciary, was under those circumstances improperly benefitting from its discount arrangement to the detriment of its insureds in violation of ERISA.

---

2      Nor do plaintiffs remotely identify any pleaded facts which in any way could

It is important to note that not only is ERISA inapplicable here, but the factual circumstances presented are quite different from those in HCA. Unlike Employers, Allstate was not receiving a "secret" discount. Allstate's reduction was fully disclosed on the face of the EOB which accompanied its payments, to both its insureds and to providers like plaintiff. Unlike the insureds in HCA, Allstate's insureds were not put in the position of making unnecessarily large co-payments because their EOBs plainly stated that Allstate's insureds are responsible only for the "difference between the amount paid by Allstate ... and the CCN contracted rate which appears in the 'billed amount' column." Consequently, the wrongful acts which Employers was deemed to have committed in HCA are simply not present here.[3]

---

support a claim for "extortion under fear of economic harm, and the Travel Act."

[3] Likewise, the other decisions proffered by plaintiff similarly failed to hold that conduct comparable to that alleged in this case was wrongful or otherwise formed the basis for a RICO claim, and accordingly, they also are inapplicable here. In Mitzan v. Medview Services, Inc., 1999 Mass. Super Lexis 279 (1999), the court allowed claims against an auto insurer to proceed on breach of contract grounds and on a specific statutory claim under Massachusetts law regulating an insurer's use of prices based on a provider's contract with other medical care services, HMOs or PPOs. The court did not hold that there was something inherently fraudulent or wrongful with the application of discounted rates by an insurer pursuant to contract. In HCA Health Services of Virginia v. Metropolitan Life Ins. Co., 957 F.2d 120, 122 (4th Cir. 1991), there was no condemnation of any illegal or fraudulent scheme. Rather, the trial court rejected certain hospitals' challenges to Metropolitan's establishment of a PPO network on the grounds that it did not comply with certain Virginia statutory criteria. When the hospitals sought to withdraw their appeal, the Fourth Circuit held that Metropolitan no longer had standing to pursue its ERISA preemption cross-appeal. Ball Memorial Hosp. v. Mutual Hospital Ins. Co., 784 F.2d 1325 (7th Cir. 1986), did not consider any comparable situation. In that case, a group of Indiana hospitals brought antitrust and state law statutory claims against Blue Cross and Blue Shield (the "Blues") seeking to prevent the Blues from creating a PPO network. The Seventh Circuit held that the trial court correctly refused to issue a preliminary injunction against the Blues. Gavin North Sherwood Chiropractic Clinic v. Bower, 838 F. Supp. 274 (M.D. La. 1993), was an action in which chiropractors sought to force a PPO to list them as preferred providers based on a Louisiana statute. Ryan v. VHA Enterprise, Inc., 1990 WL 58969 (S.D.N.Y. 1990), had nothing to do with the issues here. That was an action to enjoin an insurer's purchase of a health care organization on grounds of alleged securities law violations. Plaintiffs also refer to a slip opinion

### 3. Count IV Fails to State a Claim under 18 U.S.C. § 1962(d).

Plaintiff similarly offer no support whatsoever for his cavalier and off-handed dismissal of the fact that no RICO conspiracy can be pleaded in the absence of a bona fide RICO claim. The fact that he has failed entirely to plead a sustainable RICO claim, however, absolutely dooms his effort to state a claim under Section 1962(d). See Callahan v. United States, 881 F.2d 229, 235 (6th Cir.1989).

### 4. Class Action Treatment Is Inappropriate.

Plaintiff also failed to offer meaningful support for his efforts to treat any alleged RICO claims as class action claims. The slip opinion decision in Morse v. Bankers Life & Casualty Co., (No. 99 C 0193, N.D. Ill., ___) is inapposite. Aside from the fact that is it contrary to decisions by the Eleventh Circuit, which clearly hold that claims sounding in mail and wire fraud are inappropriate for class action treatment because they require individualized showings of misrepresentation, reliance, injury and damages, see Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir.1996); cf. Fickler v. Am South Corp., 176 F.R.D. 583 (M.D. Fla. 1997), there was no discussion of the propriety of a RICO class action.[4]

### 5. The Flawed Form Of The Complaint Also Requires Dismissal

It is beyond reasoned controversy that a plaintiff must plainly, concisely and separately plead claims so that the legal sufficiency of each claim asserted can be tested. Fed. R. Civ. P. 8, 9, 12. Fraud must be pleaded with "particularity." Fed. R. Civ. P. 9. Contrary to plaintiff's suggestion, moreover, pleadings are to be scrutinized more carefully, not less so, where a

---

in Southeast Physical Therapy Services, Inc. v. Healthcare Value Mortgage, Inc. but fail to offer a citation to the decision and did not attach a copy to their brief.

[4] Moreover the factual nature of that case is distinct. That court held that a class could be certified, limited to purchasers of a single prescription drug under a single insurer's

plaintiff purports to assert fraud or RICO claims. <u>Durham v. Business Management Associates</u>, 847 F.2d 1505, 1511 (11th Cir. 1988)(Rule 9(b) "serves and important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants against spurious charges of immoral and fraudulent behavior.' "). In addition, this rule applies with equal force regardless of whether a plaintiff attempts to plead mail fraud, wire fraud or any other fraudulent conduct as a predicate act for a RICO claim. <u>Brooks v. Blue Cross and Blue Shield of Florida, Inc.</u>, 116 F.3d 1364 (11th Cir. 1997).

Counts IV in particular fails to meet these pleading requirements. It simply does not contain a plain and concise statement of a single claim in violation of Rule 8. Instead, Count IV, as plaintiff concedes, is a misguided effort to assert intertwined allegations supporting several claims under several different sections of the RICO statute. Count IV is thus improperly pleaded and must be dismissed for that reason as well.[5]

## II. **Plaintiff Has Not Adequately Pleaded Any Antitrust Claim**

Plaintiff concedes, as he must, that he has failed entirely to plead a claim of monopolization under Section 2 of the Sherman Act. Plaintiff cannot, moreover, bolster his claim under Section 2. He has not pleaded, and he points to no such allegations, which establish the requisite conspiracy to restrain trade. The adverse impact alleged must be on competition, not on any individual competitor or on plaintiff's business. See <u>Westman Comm. Co. v. Hobart Int'l, Inc.</u>, 796 F.2d 11216, 1220 (10th Cir. 1986). The conclusory statement alleged in the complaint,"said price discrimination practices constitute a restraint upon commerce and trade", is insufficient without supporting facts pleaded. See <u>Gregoris Motors v. Nissan Motor Corp. in</u>

---

policy, because all claims simply arose from that insurer's actions in classifying that prescription for purposes of payment. No individual issues such as reliance were presented.

USA, 630 F. Supp. 902, 908 (E.D.N.Y. 1986) ("The allegations of anti-competitive effect as to plaintiff individually and to any market as a whole are no more than conclusory. As 'the absence of a sufficient allegation of anticompetitive effects is fatal to the existence of the cause of action,' Havoco of American, Ltd. v. Shell Oil Co., 626 F.2d 549, 554 (7th Cir. 1980), the first cause of action for violation of §1 of the Sherman Act must be dismissed."). As a result, plaintiff also has failed, as a matter of law, to plead a violation of Section 1.[6]

### III. Plaintiff Cannot State a Claim for Alleged Violations of Section 627.736(10).

Allstate demonstrated in its Motion to Dismiss and supporting memorandum that (1) no private cause of action is available for violations of Section 627.736(10) and (2) even if an action were possible, this plaintiff, as a medical care provider, would not have standing to bring such a claim because he is not part of the group which the statute seeks to protect (i.e., insureds). Plaintiff does not address the substance of those issues and his responsive arguments, and sole cited authority, are irrelevant, entirely.[7]

---

[5] For the same reasons, the allegations of Count V are fatally flawed and must be dismissed as well.

[6] The effect of Allstate's actions, under the antitrust laws, must be viewed in light of "its effect on consumers, not on competitors." Westman Comm. Co., 796 F.2d at 1220. The effect of Allstate's access to contractually reduced pricing is in fact in the best interest of the consumers, allowing for more services to be covered within the limits of the policy benefits and proportionately reducing the amounts required to be paid by insureds as co-payments. That pro-consumer effect is in keeping with the "purpose of the antitrust laws [which] is the promotion of consumer welfare ...." Id. The decision relied upon by plaintiffs, Forsyth v. Humana, Inc., is neither factually nor legally on point with the circumstances presented here, and thus does not compel a different result.

[7] The case of Colonial Penn Ins. Co. v. Magnetic Imaging Systems, Inc., 694 So.2d 852 (Fla. App. 3d DCA 1997), is not on point. Colonial involved a different type of claim (for interest due on late-paid benefits) under a different statutory provision (§627.736(4)). Plaintiff's complaint does not remotely assert a claim for interest due on late-payments of PIP benefits under Section 627.736(4), however. Nor does the imputation of a private right of action into that section demonstrate a basis for doing so, here. The claimants there were among those directly contemplated to be protected by the statutory provision, unlike this case.

Plaintiff proffers no authority which supports his effort to maintain an action under Section 627.736(10). Moreover, even assuming that such a claim can be maintained, Allstate has not violated Fla. Stat. §627.736(10), as a matter of law. Plaintiff has not and cannot allege that Allstate requires any insured person to use only medical services provided by a specific, limited group of doctors. Allstate is not required by the statute, moreover, to offer a "preferred provider" policy to its insureds and does not violate the statute when it pays medical care providers based on reduced rates which those providers have agreed to accept. Consequently, no basis exists, as a matter of law, to hold that Allstate has violated §627.736(10).

### Conclusion

Plaintiff has not successfully contradicted the legal precedent and analysis which demonstrates that, as a matter of law, they have failed to allege cognizable claims in Counts IV, V, VI and VII of their complaint. Accordingly, as a matter of law, those counts of the complaint fails to state a claim upon which relief can be granted and must be dismissed. For all of the foregoing reasons, and for the reasons stated in its Motion to Dismiss and memorandum, Allstate respectfully prays that this Court dismiss with prejudice Counts IV, V, VI and VII.

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to the attorneys on the attached list, this 17TH day of March, 2000.

| | |
|---|---|
| PETER J. VALETA | DAVID B. SHELTON |
| Florida Bar No. 327557 | Florida Bar No. 0710539 |
| ROSS & HARDIES | RUMBERGER, KIRK & CALDWELL |
| 150 North Michigan Ave., Suite 2500 | P.O. Box 1873 |
| Chicago, Illinois 60601 | Orlando, Florida 32802 |
| Telephone: (312) 750-3619 | Telephone: (407) 839-4511 |
| Telecopier: (312) 920-7241 | Telecopier: (407) 841-2133 |
| Attorneys for Defendant | Attorneys for Defendant |

<u>SERVICE LIST</u>

Douglas A. Blankman, Esquire
Kopelman & Blankman, P.A.
One Financial Plaza, Suite 1611
Ft. Lauderdale, FL  33394
Attorney for Plaintiff

Arthur Gold, Esquire
Gold, Rosenfeld & Coulson
11 S. LaSalle Street, Suite 2500
Chicago, IL  60603
Attorney for Plaintiff

Carlin Phillips, Esquire
Gogel, Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA  02747
Attorney for Plaintiff

William W. Deem, Esquire
McGuire, Woods, Battle & Boothe, LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL  32202
Attorney for Defendant,
Medview Services, Inc.