UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

DAVID A. NAPOLI, D.C., d/b/a
NAPOLI CHIROPRACTIC CENTER,
and all others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and MEDVIEW SERVICES, INC.

      Defendants.

CASE NO.: 00-6061-CIV
JUDGE: FERGUSON
MAGISTRATE: SNOW

___

**MEMORANDUM IN SUPPORT OF DEFENDANT MEDVIEW'S
MOTION TO DISMISS COUNT I OF CLASS ACTION COMPLAINT**

Defendant, MedView Services, Inc. ("MedView"), pursuant to Local Rule 7.1, files this memorandum in support of its motion to dismiss the class action complaint

**A.  The facts as alleged.**

As alleged in the complaint, Plaintiff is a chiropractor practicing in Broward County, Florida.  Plaintiff and MedView entered into a "Participating Health Care Professional Agreement" ("the Agreement") on March 25, 1993. [Complaint, Exhibit 1] MedView, according to the Agreement, is engaged in the business of developing contractual arrangements with insurance companies, employers, third party administrators and similar entities. [Agreement, Recital A] These entities are known collectively as "payors" or "third party payors." [Agreement, Recital A; Art. 1, ¶E] Nowhere does the Agreement state that these payors cannot include automobile insurers. MedView develops these arrangements for the purpose of coordinating and arranging for



the delivery of discounted heath care services to "subscribers," i.e., patients entitled to receive health care services under group contracts, workers compensation contracts "or any other programs with provisions for health care services". [Agreement, Art. 1, ¶¶A and G]

In return for Plaintiff's agreement to discount his fees, MedView (among other things) agrees to market Plaintiff's services to "existing or potential" payors which expressly include "but [are] not limited to business entities such as insurance companies, employers and union trust funds." [Agreement, Art. 7, ¶A] Importantly, however, the Agreement expressly *disclaims* any obligation on the part of Medview to provide any particular level of increased patient traffic -- the upside of what the complaint terms "steerage". [Agreement, Art. 7, ¶A]

Exhibit "C" to the Agreement is a list of "payors" together with the states in which the payor relationship was then established. [Agreement, Exhibit "C"] Exhibit C clearly lists "Allstate (FL)" as a payor.

The Agreement also contains a confidentiality provision, obliging the parties to refrain from disclosing Plaintiff's discounted fee arrangement except as required by the parties' performance under the Agreement. [Agreement, Art. 9 ¶C] Despite the express listing of Allstate as a payor, Plaintiff now claims -- almost seven years after the Agreement listed Allstate as a payor -- that Allstate should not be an "existing [or] potential" payor "such as insurance companies" to whom Medview could disclose information. [Agreement, Art. 7 ¶A] It is a claim that is facially at odds with the clear language of the Agreement.

Accordingly, MedView moves this Court to dismiss Count I of Plaintiff's Class Action Complaint for its failure to state a claim for which relief can be granted.

**B.     This Court can decide Plaintiff's claims on a motion to dismiss.**

At the pleading stage, the court is to accept the well-pled allegations of the complaint as true. *Harris v. Menendez*, 817 F.2d 737, 739 (11th Cir. 1987); *Digiro v. Pall Aeropower Corp.*, 19 F. Supp. 2d 1304, 1306 (M.D. Fla. 1998). However, Rule 12(b)(6) does not require the district court to accept as true the plaintiff's conclusions of law. *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426 (11th Cir. 1985). Instead, the court reached its own conclusions as to legal issues, *Solis-Ramirez*, 758 F.2d at 1429, and the appropriate construction of a contract is considered a question of law for the Court. *Broward County v. LaPointe*, 685 So.2d 889, 892 (Fla. App. 1996).

A complaint should be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kissimmee River Valley Sportsmans Ass'n. v. City of Lakeland*, 60 F. Supp.2d 1289, 1290 (M.D. Fla. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)). If, after construing the Agreement, this Court concludes the facts as alleged by Plaintiff cannot constitute a breach of a claim for damages, Plaintiff's complaint can be dismissed on a 12(b)(6) motion. *See Broward County*, 685 So.2d at 892; *Kissimmee*, 60 F.Supp. at 1290. If no construction of the factual allegations of a complaint will support a cause of action, dismissal of the complaint is appropriate. *Id.* at 1291.

    **C.    Plaintiff's allegations of breach fail to state a claim for which relief can be granted.**

The Agreement allows MedView to market Plaintiff's discounted services to payors. Plaintiff alleges that MedView breached the Agreement in the following specific ways:

> (a) by selling the volume discounts of [Plaintiff] and the purported class to Allstate, which is not a legitimate Third Party payor, for a fee and with knowledge that the discounts would be applied to automobile personal injury protection medical expense claims and not claims of subscribers as stated in the contract;
>
> (b) by selling the volume discounts of [Plaintiff] and the purported class to Allstate which applied the discounts retrospectively and could not provide an increase in patient volume for [Plaintiff] and the purported class;
>
> (c) by failing to offer adequate and meaningful consideration for discounts of Florida automobile personal injury protection medical expense claims;
>
> (d) by disclosing confidential compensation and discount information to Allstate; and,
>
> (e) by violating the duty of good faith and fair dealing inherent in its Preferred Provider Agreements . . . .

[Complaint, ¶ 44] Accordingly, Plaintiff's claim for breach against MedView turns on a single question -- did the Agreement give MedView the ability to treat Allstate as an

existing or potential payor? MedView submits that this question can be answered in the affirmative as a matter of law simply by reference to the clear wording of the Agreement.

### D.  MedView did not breach any provisions of the Agreement.

The Agreement is simple, both in what it says and in what it does not say. First, the Agreement states:

> MedView develops contractual arrangements with Payors, which include employers, *insurance carriers,* third party administrators and other similar entities for the purpose of coordinating and arranging the delivery of health care services to Subscribers. Certain of those arrangements relate solely to workers' compensation programs, while other arrangements *relate generally to programs for the provision of health care services.*

[Agreement, Recitals, ¶A] (emphasis added). The Agreement defines "Health Care Services" as:

> . . . those health care services . . . which [Plaintiff] customarily provides to its patients, and which are, for each respective *Subscriber,* services for which certain benefits are available under a Group Contract or Workers' Compensation Contract or *any other program with provisions for health care services.*

[Agreement, Art. 1, ¶A] (emphasis added). The Agreement defines "Subscriber" as "a person who is entitled to receive certain benefits with respect to Health Care Services." [Agreement, ¶G.] *Nowhere* does the Agreement say that the payors cannot be automobile insurers, *nowhere* does it say that the health care services at issue cannot be provided

under an automobile PIP insurance policy, and *nowhere* does it say that Subscribers cannot be those persons entitled to receive health care benefits under PIP policies.

The Agreement defines "Third Party Payor" as "an *insurance company*, [an] employer, [a] third party administrator, or other business entity which has contracted with MedView to pay for Health Care Services rendered by [Plaintiff] to MedView insured employees." [Agreement, ¶E] (emphasis added). The Agreement makes no provision for limiting the kinds of insurance companies which can qualify as Third Party Payors. What it does do, however, is *expressly* list Allstate -- the insurer whom Medview allegedly should not have treated as an existing or potential payor -- as one of the Florida payors.

Under the Agreement, MedView "agree[d] to make good faith efforts . . . to market [Plaintiff's] services to existing and potential Third Party Payors, *including but not limited to*, business entities such as *insurance companies*, employers and union trust funds . . . ." [Agreement, Art. 7, ¶A] (emphasis added). In connection with MedView's duties, Plaintiff authorized MedView to disclose the discount rate payable to Plaintiff under the Agreement "as may be required in order to carry out the terms of [the Agreement.]" [Agreement, Art. 9, ¶C] (express language of ¶C bars disclosure "except . . . to carry out the terms"). Plaintiff alleges essentially that Allstate could not be a "legitimate" Third Party Payor. [Complaint, ¶42] However, Plaintiff's allegations ignore the clear language set forth above, require an improper construction of the Agreement, and impose duties and require consideration that does not exist in the Agreement. MedView addresses each of Plaintiff's allegations of breach separately below.

### 1. MedView did not breach the Agreement by "selling" Allstate's discounted services.

Paragraph 44(a) of Plaintiff's Complaint alleges that MedView breached the Agreement "by selling the volume discounts of [Plaintiff] . . . to Allstate, which is not a legitimate Third Party Payor, for a fee and with knowledge that the discounts would be applied to automobile personal injury protection medical expense claims and not claims of Subscribers as stated in the Contract[.]" [Complaint, ¶44(a)] After taking away the superfluous and conclusory portions of this allegation, it merely alleges that MedView breached the Agreement because Allstate discounted Plaintiff's fees for services rendered to certain patients.

Plaintiff's allegation contains three essential terms -- "volume discounts," "Third Party Payor," and "Subscribers." "Third Party Payor" and "Subscribers" are defined terms in the Agreement. The term "volume discounts" does not appear in the Agreement.

#### a. Volume Discounts

The term "volume discounts" does not appear in the Agreement. In fact, the Agreement only mentions patient volume to expressly state that "MedView does not guarantee to [Plaintiff] any minimum number of MedView Subscriber patients." [Agreement, Art. 7, ¶A.] However, Plaintiff uses the term "volume discounts" repeatedly to attempt to impose a nonexistent duty on MedView -- a duty to directly connect each Payor that discounted Plaintiff's services to an increase in patient volume. [*See* Complaint, ¶42] ("MedView agreed to market its Preferred Providers to legitimate "Third Party Payors" to increase patient volume in exchange for volume discounts").

This Agreement does not impose any duty or requirement for piecemeal consideration, whereby each Payor or potential Payor must be tied to an increase in

patient volume. Instead, the Agreement simply imposes on MedView the general duty to market Plaintiff's services to Payors in exchange for the right to discount those services. [*See* Agreement, Art. 5, ¶A; Art. 7, ¶A] Plaintiff makes no allegation that Medview shirked that duty.

### b. Third Party Payor

Plaintiff's argument hinges on his interpretation of the contractually defined term "Third Party Payor." The Agreement defines "Third Party Payor" as an *insurance company*, employer, third party administrator, or other business entity which has contracted with MedView to pay for health care services rendered by [Plaintiff] to MedView insured employees." [Agreement, Art. 1, ¶E] (emphasis added).[1]

Plaintiff claims that Allstate is not a "legitimate" Third Party Payor because patients treated under Allstate's PIP coverage are not "MedView insured employees" and thus are not "[S]ubscribers." [*See* Complaint, ¶44(a)] This claim is belied by principles of contract interpretation. It cannot support a claim for relief.

### i. *Plaintiff's construction ignores grammatical principles of contract interpretation.*

Plaintiff asks this Court to read the phase "which has contracted with MedView to pay for health care services rendered by [Plaintiff] to MedView insured employees" to apply not just to "other business entities," which appears in the same clause, but also to "insurance companies," "employers," and "third party administrators." [*See* Complaint, ¶44(a)] Under Plaintiff's construction, Payors can only be those entities who have "contracted with MedView to pay for health care services . . . to MedView insured

---

[1] Payor and Third Party Payor are interchangeable terms in the contract. This Brief uses the term Payor when possible.

employees." [*See* Agreement, Art. 1, ¶E] In other words, according to Plaintiff, Payors can only be insurers of employees.

This construction defies well-accepted principles of contract interpretation. "A grammatical construction of contracts generally requires that one construe a relative or qualifying phrase as referring to its nearest antecedent." *Seabreeze Restaurant, Inc. v. Paumgardhen*, 639 So.2d 69, 70 (Fla. App. 1994). Under this principle, the phrase "which has contracted . . ." must be read to modify "other business entity." *Id*. It does not effect "insurance company," "employer," or "third party administrator." *See also United States v. Correa*, 750 F.2d 1475, 1481 (11th Cir. 1985) (qualifying phrases applied to the phrase immediately preceding and not to more remote phrases under statutory construction "doctrine of the last antecedent"). Moreover, the separation of each type of entity by commas also defeats plaintiff's interpretation. *See Gulf Mississippi Marine Corp. v. Continental Ins. Co.*, 566 F.2d 956 (5th Cir. 1978) (modifying clause in contract related to both preceding phrases *in the absence of a comma separating the phrases*). Thus, the definition in the Agreement does not and, according to black-letter principles of construction, cannot limit Payors to entities that "pay for Health Care Services rendered ... to insured employees" as Plaintiff claims. Since the definition includes other entities such as insurance companies, then Allstate can be a Payor, with whom Medview was entitled to communicate concerning Plaintiff.

      ii. *Construing the Agreement as a whole defeats Plaintiff's interpretation.*

Courts should ascertain the intention of the parties to a contract by considering the entire agreement. *Torcise v. Perez*, 319 So. 2d 41, 42 (Fla. App. 1975). In the case at

bar, the entirety of Agreement establishes an intent to include within the definition of Payor entities other than insurers of employees.

The very first sentence of the Agreement states that "MedView develops contractual arrangements with Payors, *which include* employers, *insurance carriers*, third party administrators and other similar entities . . . ." [Agreement, Recitals, ¶A] (emphasis added). There is no limitation with respect to insured employees or employee groups. Under Article 7, "MedView agree[d] . . . to market [Plaintiff's] services to existing and potential Third Party Payors, including, *but not limited to*, business entities such as *insurance companies*, employers and union trust funds . . . ." [Agreement, Art. 7, ¶A] (emphasis added). Finally, in Art. 5, Plaintiff agreed to "accept as compensation in full for [his] services, the amounts described in Exhibit A." [Agreement, Art. 5, ¶A.] Exhibit A provides that Plaintiff "agrees to accept 80% of [his] usual and customary fees" for "Group Health Benefits Plans and/or *any Program Providing Health Care Services*[.]" [Agreement, Exhibit A] (emphasis added).

Thus the Agreement expressly states in four different places that Payors include a broad range of entities, and specifically lists insurance companies. [Agreement, Recitals ¶A; Art., ¶E; Art. 7 ¶A; Exhibit A, through Art. 5, ¶A] Indeed, Exhibit A specifically lists Allstate as a Payor. [Agreement, Exhibit A] Plaintiff's reading of the Agreement implicitly requires that the definition of Payor be limited to insurers of employees. A fair reading of the entire Agreement, however, shows that such a limitation makes no sense.

       *iii.*  *Plaintiff's interpretation causes conflict in the Agreement.*

  Courts "strongly disfavor" contractual interpretations that cause separate provisions to conflict with each other. *See Maccaferri Gabions, Inc. v. Dynateria, Inc.*, 91 F.3d 1431, 1440 (11th Cir. 1996); *see also Seebreeze Restaurant*, 639 So.2d at 70 ("provisions of a contract . . . should be construed so as to be reconciled, if possible"). Plaintiff's interpretation of the Agreement limits the definition of Payor to entities that pay for "Health Care Services rendered . . . to insured employees." In other words, Plaintiff limits Payors to insurers of employees. [Agreement, Art. 1, ¶E; *see* Complaint, ¶¶44(a) and (b)] This restrictive interpretation causes the definition of Payor to conflict with the broad meaning given to Payor in Recitals, ¶A; Article 7, ¶A; and Exhibit A through Article 5, ¶A.

  Plaintiff's definition of Payor also conflicts with the Agreement's definition of a Subscriber. The Agreement defines a Subscriber broadly as "a person who is entitled to receive certain benefits with respect to Health Care Services." [Agreement, Art. 1, ¶G] If, as Plaintiff claims, Payors can only be insurers of employees, then Subscribers can only be insured employees. However, the broad definition of Subscriber shows that the parties intended a correspondingly broad definition of Payor. Limiting Payors to insurers of employees thus directly conflicts with the Agreement's express, broad definition of Subscriber by limiting the latter term to insured employees. The more appropriate construction, to avoid conflict and validate the broad definition of Subscriber, is that neither the term Payors nor Subscribers is limited by a requirement that the insured be employees. *See Maccaferri Gabions*, 91 F.3d at 1440; *Seebreeze Restaurant*, 639 So.2d at 70.

11

Since a broad definition of Payor -- i.e., the definition that is actually in the Agreement -- includes insurance companies like Allstate, MedView cannot be said to have breached the Agreement and Plaintiff's Complaint fails to state a claim.

      iv. *Plaintiff's interpretation does not give effect to all parts of the Agreement.*

Courts should prefer interpretations of contracts that give reasonable meanings and effect to all of the parts of the contract. *Maccaferri Gabions*, 91 F.3d at 1439 (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed. Cir. 1983)); *Seebreeze Restaurant*, 639 So.2d at 70 ("'interpretation which gives . . . effective meaning to all of the terms is preferred'"). Plaintiff's construction of the Agreement limits the definition of Payor to insurers of employees. If Plaintiff's interpretation is correct, then the definition would not need to include insurance companies, employers, and third party administrators as it does. Instead, Payor would have been defined only as "business entities which have contracted with MedView to pay for health care services rendered by [Plaintiff] to MedView insured employees." [*See* Agreement, Art. 1, ¶E]

The specific inclusion of insurance companies, employers and third party administrators in the definition of "Payor" discloses an intent to include in the definition of Payors entities other than insurers of employees. Plaintiff's definition would effectively force this Court to strike out and render ineffective significant portions of the definition. Plaintiff's definition would also nullifies the other provisions of the Agreement that refer to a broad definition of Payor, such as Recitals, ¶A; Article 7, ¶A; and Exhibit A through Article 5, ¶A. Additionally, Plaintiff's definition would effectively replace the Agreement's definition of Subscriber with "insured employee," rendering yet another provision of the contract ineffective. [*See* Complaint, ¶44(a)] Since reading the

12

definition of "Payor" broadly, as it is drafted, preserves the entire Agreement, the Court should construe the definition of Payor to include insurance companies like Allstate and dismiss Plaintiff's Complaint.

2. **Allstate's failure to pay Plaintiff's entire fee for services is not a breach by MedView.**

Paragraph 44(b) of Plaintiff's Complaint alleges that MedView breached its Agreement with Plaintiff "by selling the volume discounts of [Plaintiff] and the purported class to Allstate which applied the discounts retrospectively and could not provide an increase in patient volume for [Plaintiff] and the purported class." [Complaint ¶44(b)] MedView addressed the allegations relating to volume discounts and patient volume in the discussion of Plaintiff's ¶44(a) allegations *supra*. This leaves Plaintiff's allegations regarding retroactive application of discounts as the only remaining issue in ¶44(b).

Much like volume discounts and patient volume, Plaintiff's allegations of "retroactive discounts" have no foundation in the Agreement. The Agreement does not address the subject of when discounts must be applied. Once again, Plaintiff tries to create a duty out of whole cloth so he can argue that MedView breached it. Plaintiff cannot state a claim for relief based on MedView's alleged breach of a nonexistent contractual provision concerning when Payors apply discounts.

3. **MedView has no duty to provide separate consideration for Allstate's discounts.**

Paragraph 44(c) of Plaintiff's Complaint alleges that MedView breached its Agreement with Plaintiff "by failing to offer adequate and meaningful consideration for discounts of Florida automobile personal injury protection medical expense claims[.]" [Complaint, ¶44(c)]  As explained *supra*, MedView provided consideration for the

Agreement by promising to market Plaintiff's services to Payors, and Plaintiff provided consideration by granting MedView the right to allow Payors to discount Plaintiff's claims. The Agreement does not require piecemeal consideration whereby MedView must deliver a benefit to Plaintiff that directly connects to each individual Payor that discounts his services. Plaintiff cannot state a claim based on an alleged failure by MedView to provide a form of consideration that only exists in his Complaint. That will not withstand even a motion to dismiss.

### 4. MedView had the right to disclose Plaintiff's compensation information to Allstate.

Paragraph 44(d) of Plaintiff's Complaint alleges that MedView breached its Agreement with Plaintiff "by disclosing confidential compensation and discount information to Allstate[.]" The Agreement gives MedView the right to disclose Plaintiff's compensation (discount rate) "as may be required in order to carry out the terms of [the Agreement]." [Agreement, Art. 9, ¶C] The Agreement obligated MedView to market Plaintiff's services to Payors. MedView could not complete this process without disclosing Plaintiff's compensation to participating Payors. In other words, the Agreement required MedView to disclose Plaintiff's compensation to participating Payors in order for MedView to carry out its duties.

Thus, the question of whether MedView breached the Agreement by disclosing Plaintiff's compensation to Allstate turns upon whether Allstate is a Payor under the Agreement. Exhibit "C" to the Agreement clearly lists Allstate as a Payor. Moreover, if this Court determines that the contractual definition of Payor includes insurance carriers, then, as a matter of law, MedView did not breach the Agreement by disclosing

compensation information to Allstate, *see supra*, and Plaintiff has failed to state a claim for disclosure of his compensation information.

### 5. Plaintiff cannot state a claim for a violation of the duty of good faith without stating an independent claim for breach.

Plaintiff's final allegation of breach, contained in ¶44(e), alleges that MedView breached the Agreement:

> by violating the duty of good faith and fair dealing inherent in its Preferred Provider Agreements through the following acts or failures to act:
>
> (1) by disclosing the volume discounts of [Plaintiff] and the purported class to Allstate;
>
> (2) by allowing Allstate to use the volume discounts without providing consideration therefor, and
>
> (3) by allowing the volume discounts to be applied to Florida automobile insurance personal injury protection claims in violation of Florida law and the Allstate automobile insurance policy

[Complaint, ¶44(e)]

Under Florida law, "a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Hospital Corp. of Am. v. Florida Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. App. 1998). Moreover, this District follows the rule that "the implied covenant of good faith and fair dealing is not actionable absent a breach of the contract's express terms." *Burger King v. Holder*, 844 F. Supp. 1528, 1530 (S.D. Fla. 1993). As explained *supra*, MedView's disclosure of compensation information to

Allstate does not constitute a breach of the Agreement. Thus, ¶¶44(e)(1) and (2) fail to state a claim for which relief can be granted.

Finally, ¶44(e)(3) fails to state a claim for two reasons. First, it makes no allegation of a breach of the Agreement between MedView and Plaintiff. Second, Florida law does not recognize an "independent cause of action for breach of a duty to obey laws other than as may be included in the terms of a contract." *Hospital Corp. of Am.*, 710 So.2d at 574-75. Thus, even assuming *arguendo* that MedView's conduct violates a law, it does not provide a cause of action. Like all of the other allegations in Plaintiff's Complaint, ¶44(e)(3) fails to state a claim for which relief can be granted.

**E.     Plaintiff does not claim damages caused by MedView's alleged breach.**

Plaintiff alleges that Allstate, fraudulently and without justification, paid only 80% of his bills for services rendered to Allstate PIP insureds. [*See* Complaint, ¶¶42-99] Other than RICO and Antitrust damages, Plaintiff only claims damages based on the 20% discount that Allstate applied to Plaintiff's bills, and Plaintiff claims that Allstate's failure to pay was unjustified and wrongful. [*See* Complaint, ¶¶46-51] Plaintiff makes no allegation that MedView's disclosure of compensation information to Allstate caused any independent harm. [*See* Complaint, ¶45] Therefore, in plain terms, what Plaintiff alleges is that Allstate failed to pay all of the money that it owed, and *those* are the damages it seeks. [*See* Complaint, ¶¶49-51]

Under Florida law, any alleged breach must proximately cause the damages claimed. *Olin's, Inc. v. Avis Rental Car Sys., Inc.*, 172 So.2d 250 (Fla. App. 1965). Here, Plaintiff alleges MedView breached the Agreement by selling compensation information to Allstate. [Complaint, ¶44] However, Plaintiff does not allege that the disclosure of

the information itself caused any damages. [*See* Complaint, ¶¶42-45] In other words, Plaintiff does not allege that MedView somehow forced Plaintiff to accept a lesser amount than it claims to have been owed; it claims that Allstate simply failed to pay in full and, in this very action, is seeking to recover those amounts from Allstate. Without an independent allegation against MedView for damages other than the money Plaintiff claims Allstate failed to pay, his Complaint fails to allege damages caused by MedView's alleged breach. Thus, it fails to state a claim for which relief can be granted.

**F.    Conclusion.**

Plaintiff's construction of the Agreement asks this Court to ignore settled principles of contract interpretation and to put terms in the Agreement that do not exist. Moreover, Plaintiff failed to allege a claim for damages against MedView. Accordingly, Plaintiff's Complaint fails to state a claim against MedView for which relief can be granted, and this Court should grant MedView's Motion to Dismiss.

McGUIRE, WOODS, BATTLE & BOOTHE LLP

BY: *William W. Deem by JTS*
William W. Deem, Esq.
Fla. Bar No.: 0512834
50 North Laura Street
Suite 3300
Jacksonville, Florida 32202
(904) 798-3200
(904) 798-3207 (fax)

ATTORNEYS FOR MEDVIEW SERVICES, INC.

## CERTIFICATE OF SERVICE

    I certify that a copy of the foregoing has been furnished by U.S. Mail on this 29 day of March, 2000, to the following:

Douglas A. Blankman, Esq.  
Kopelman & Blankman, P.A.  
Nationsbank Tower, Suite 1611  
One Financial Plaza  
Fort Lauderdale, FL 33394  
**Attorneys for Plaintiff**

Arthur Gold, Esq.  
Gold, Rosenfeld & Coulson  
11 S. LaSalle Street, Suite 2500  
Chicago, IL 60603  
**Attorneys for Plaintiff**

Carlin Phillips, Esq.  
Gogel, Phillips & Garcia, LLP  
13 Ventura Drive,  
North Dartmouth, MA 02747.  
**Attorneys for Plaintiff**

David Shelton, Esq.  
Rumberger, Kirk & Caldwell  
Signature Plaza, Suite 300  
Post Office Box 1873  
Orlando, FL 32802-1873  
**Attorneys for Allstate**

_____  
Attorney

\\JAC\2615\Columbia HCA\Napoli\plead\Dismiss Motion WWD.doc