UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO: 00-CIV-6061-FERGUSON/SNOW

DR. PAUL ZIDEL, and all others similarly situated,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, and
COMMUNITY CARE NETWORK, INC., d/b/a CCN

    Defendants.

## AMENDED CLASS ACTION COMPLAINT

NOW COMES Plaintiff, PAUL ZIDEL, M.D. ("DR. ZIDEL") and all others similarly

situated, by and through his attorneys, GOLD & COULSON, a partnership of professional and

limited liability corporations, PHILLIPS & GARCIA, LLP, and KOPELMAN & BLANKMAN, a

professional association, and complaining of Defendants Allstate Insurance Company

("ALLSTATE") and Community Care Network, Inc., d/b/a CCN ("CCN"), states as follows:

### THE PARTIES

1.    DR. ZIDEL is a licensed physician with a speciality of orthopedic surgery who

resides in the Southern District of the State of Florida and has his principal place of business at

301 N.W. 84th Avenue, Plantation, Florida.

1



2.    ALLSTATE is an insurance company incorporated under the laws of the State of

Illinois with a principal place of business located at 2775 Sanders Road, Northbrook, Illinois.

ALLSTATE transacts business in the Southern District of Florida.

3.    Defendant CCN is an entity with a principal place of business in San Diego,

California, is a citizen of the State of California, operates a national preferred provider

organization and transacts business in the Southern District of California.

## FACTUAL BACKGROUND

### The Payment of Medical Expenses Under Florida Automobile Insurance Policies and Florida Statutes § 627.736 (5)

4.    With respect to the payment of accident related medical expenses, the standard and

uniform language in ALLSTATE Florida's Automobile policies ("Policy") states in pertinent part

that the ALLSTATE must pay 80% of all reasonable and necessary accident related medical

expenses.

5.    The ALLSTATE automobile Policy is a typical indemnity insurance policy under

which ALLSTATE is required to indemnify claimants for eighty (80%) percent of the full cost of

their reasonable and necessary medical bills up to a defined limit.  Under the Policy, a claimant has

the absolute right and freedom to choose his or her medical providers.  Within Policy limits,

medical providers have the unrestricted right to be reimbursed 80% of their reasonable and

necessary accident related medical expenses.

6.    The State of Florida's PIP statute directly addresses a health care provider's right

to be paid for reasonable charges.  Florida Statutes § 627.736 (5) states:

Any physician, hospital, clinic, or other person or institution lawfully rendering treatment
to an injured person for bodily injury covered by personal injury protection insurance may

2

charge only a reasonable amount for the products, services, and accommodations rendered,....

Fla. Stat. § 627.736 (5)(1992).

7.    Florida statutes permit an automobile insurance company to designate certain

medical providers (preferred providers) *if* the automobile insurer establishes a legitimate preferred

provider organization ("PPO") network by satisfying the strict requirements of Florida Statutes §

627.736 (10)(1992) which states as follows:

(10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463. *The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policy-holder or applicant, it must also offer a non-preferred provider policy. The insurer shall provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.* (emphasis added)

ALLSTATE has never provided "an option to an insured to use a preferred provider at the time

of purchase of the policy for personal injury protection benefits..." ALLSTATE has never

provided "each policy holder with a current roster of preferred providers in the county in which

the insured resides at the time of purchase of such policy..." ALLSTATE has never made a list of

preferred providers "available for public inspection during regular business hours at the principal

office..." of ALLSTATE within the State of Florida. ALLSTATE has never offered a preferred

policy of automobile insurance to its insureds.

### DR. ZIDEL'S Preferred Provider Agreement with CCN

8.      On December 13, 1999, DR. ZIDEL executed a "Community Care Network, Inc.,

Professional Care Provider Agreement" ("PPA") with CCN to become a CCN preferred provider.

The PPA is attached hereto as Exhibit 1. The PPA states "whereas, CCN intends to execute

contracts which (sic) Payor Organizations which offer a preferred provider or exclusive provider

health care coverage plan to Beneficiaries or Claimants." ALLSTATE never sold or offered its

insureds a preferred provider or exclusive provider health care coverage plan. DR. ZIDEL signed

no agreement with CCN at any time before December 13, 1999.

### The Illegitimate Discounting of DR. ZIDEL's Accident Related Medical Bills Based on CCN PPO Discounts either *before* or *after* December 13, 1999.

9.      Both before and after December 13, 1999, ALLSTATE had not offered a PPO

policy of insurance to its automobile insureds. Moreover, ALLSTATE never offered its Florida

automobile insureds premium reductions as an economic incentive to use preferred providers.

10.      DR. ZIDEL's PPA with CCN did not authorize the application of his discounts by

automobile insurers or discount brokers who could not increase DR. ZIDEL's patient volume.

Importantly, ¶s 19.01 and 19.02 of Exhibit 1 specifically prohibit disclosure of these discounts.

Increased patient volume was the consideration for DR. ZIDEL's discounts under Exhibit 1.

11.      Despite these known facts, CCN allowed ALLSTATE access to all of CCN's

preferred provider's confidential and proprietary discount rates knowing that ALLSTATE did not

offer or sell it's insureds preferred provider policies as contemplated under Exhibit 1.

4

12.     With CCN's consent, its database of preferred provider discounts was loaded into software and applied to all bills submitted to ALLSTATE.

### The Defendants' Operation of a Silent PPO

13.     In the healthcare industry, the above described scheme designed to wrongfully discount medical provider bills is called a "Silent PPO." A Silent PPO is the illegitimate sale of PPO rates to indemnity insurers, such as automobile insurers, who do not offer a PPO policy, whose insureds do not even know of the existence of the PPO, whose insureds do not select to treat with a PPO preferred provider and where no legitimate mechanism (i.e. an in-network and out-of-network plan design) exists to increase preferred provider patient volume.

14.     In essence, under the Silent PPO scheme, medical providers receive nothing for steep discounts and the indemnity insurers, such as ALLSTATE and the PPO's such as CCN split millions in savings shaved off of insurance medical expense claims.

15.     The Defendants all had knowledge of the illegal nature of this Silent PPO discounting scheme. Silent PPO discounting schemes have been the subject of widespread discussion in the insurance and managed care industries with many major medical associations denouncing the practice.

16.     Defendant CCN had direct knowledge of the illegitimate nature of Silent PPOs. CCN drafted the PPA, executed the PPA with DR. ZIDEL and had express knowledge of its provisions. ALLSTATE also has such knowledge. Exhibit 2 attached hereto is even an admission by ALLSTATE of its taking an illegal discount from DR. ZIDEL.

17.     Under the ALLSTATE Silent PPO scheme, CCN licensed, leased or otherwise provided its discount database to ALLSTATE.

5

18.     Armed with the CCN preferred provider database of discounts, ALLSTATE systematically processed Florida medical expense claims through automated PPO re-pricing and applied discounts to bills submitted by medical providers. At no time did DR. ZIDEL have a contract with ALLSTATE before, or after, December 13, 1999, authorizing CCN discounts to be taken on his automobile related medical bills.

19.     ALLSTATE routinely and systematically used CCN's re-pricing product in conjunction with the CCN preferred provider discounts to reduce millions of dollars of medical bills. The discounts were routinely and systematically applied despite the fact that a preferred provider policy was not offered by ALLSTATE and despite the fact that claimants were not referred, steered or directed to preferred providers.

20.     As part of Defendants' Silent PPO scheme, CCN was paid a percentage of the ALLSTATE discount savings and/or a per transaction fee for processing claims for ALLSTATE. From February of 1999 through March of 2000, this Silent PPO scheme has saved ALLSTATE millions of dollars.

21.     At all times material herein, in the course of his medical practice, DR. ZIDEL provided medical care to patients who had been injured in automobile accidents and who were entitled to personal injury protection benefits from ALLSTATE.

22.     At no time prior to their treatment with DR. ZIDEL did this class of patients receive any marketing materials, including, but not limited to, publications identifying DR. ZIDEL's name, address and available services, from ALLSTATE. At no time did ALLSTATE comply with the requirements of Fla. Stat. § 627.736 (10).

23.     At no time prior to their treatment with DR. ZIDEL did ALLSTATE encourage

6

these patients to use DR. ZIDEL's medical services.

24.     From February of 1999 through March of 2000, Defendants have routinely and systemically applied DR. ZIDEL's CCN preferred provider rates to numerous automobile medical expense claims and accordingly, ALLSTATE has routinely and systemically issued DR. ZIDEL, via the United States mail, Explanation of Benefit forms identifying CCN discounts with accompanying checks for the reduced amounts.

25.     After taking the illegal discounts on DR. ZIDEL's bills as described in the preceding paragraphs, as well as those of other healthcare providers, ALLSTATE routinely printed out EOBs showing the discounts. It then forwarded the EOBs and reduced payment checks to the preferred providers in purported full satisfaction of ALLSTATE's obligations. (Exhibit 3 attached is a form reflecting these discounts.)

26.     It was and is the custom and practice of ALLSTATE to discount thousands of preferred provider automobile medical expense claims in this manner in violation of its policies with its insureds and in violation of the Florida personal injury protection statute.

27.     DR. ZIDEL and those similarly situated have been economically damaged and have suffered monetary losses as a result of the conduct of ALLSTATE.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1), because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

7

§1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq.

("RICO"); 18 U.S.C. §§1341, 1343,1346, 1951, 1952 and 1953, and 15 U.S.C. §§ 1,2, and 13

(the Sherman Anti Trust Act).

    30.    Venue is proper in this District pursuant to 28 U.S.C. §1391 (b) and (c) because a

substantial part of the events or omissions giving rise to the claims occurred in this District; and

because Defendants are subject to personal jurisdiction in this District.

## CLASS ACTION ALLEGATIONS

    31.    DR. ZIDEL brings this action on behalf of a class of all other persons similarly

situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. DR. ZIDEL seeks to

certify the following class:

> all Florida healthcare providers whose bills for medical services rendered to
> patients covered by ALLSTATE's personal injury protection automobile insurance
> policies were discounted by ALLSTATE based upon a purported CCN reduction
> pursuant to a signed CCN Agreement.

    32.    DR. ZIDEL also seeks to certify a subclass comprised of the following persons:

> "All Florida healthcare providers whose bills for medical services rendered to
> patients covered by ALLSTATE's personal injury protection automobile insurance
> polices were discounted by ALLSTATE based upon a purported CCN reduction at
> a time when no CCN agreement was in effect with these Florida healthcare
> providers.

    33.    There are questions of law and fact that are common to all members of the

purported class, which questions predominate over any question affecting only individual class

members. [Fed. R. Civ. P. 23 (a)(2)].

8

34.    The principal common issues include the following:

a.    whether ALLSTATE violated Fla Stat. § 627.736, et seq. by paying personal injury protection medical expense claims at Preferred Provider rates;

b.    whether ALLSTATE's processing of the PPO discounts is permissible under state law or federal law;

c.    whether DR. ZIDEL and those similarly situated are entitled to compensatory, statutory, or punitive damages against ALLSTATE because of its illegal conduct.

35.    In this case there is no question as to the identification of class members because the class is comprised of all healthcare providers whose medical bills were discounted by ALLSTATE based on CCN Preferred Provider discounts.  There is also no issue as to the amount of the class members' damages because the amounts of the discounts are contained in ALLSTATE's and/or CCN's computer systems, and on the EOBs and checks mailed by ALLSTATE to DR. ZIDEL and the members of the purported class. [Fed. R. Civ. P. 23 (a)(3)].

36.    DR. ZIDEL's claims are typical of the claims of all the members of the purported class because all claims are based on the same legal and remedial theories.

37.    DR. ZIDEL will fairly and adequately protect the interests of all purported class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.  DR. ZIDEL is similarly situated with, and has suffered similar injuries as, the members of the purported class that he seeks to represent.  DR. ZIDEL feels that he has been wronged, wishes to obtain redress of the wrong and wants ALLSTATE stopped from perpetrating its scheme and continuing to profit from the misapplication of the PPO volume discounts.  To that end, DR. ZIDEL has retained counsel experienced in class action cases and

9

health care litigation. Neither DR. ZIDEL, nor counsel, have any interest that may cause them to not vigorously pursue this action. [Fed. R. Civ. P. 23 (a) (4)].

38.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

a.    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

b.    concentration of the litigation concerning this matter in this Court is desirable;

c.    the claims of the representative Plaintiff, DR. ZIDEL, are typical of the claims of the members of the purported class;

d.    a failure of justice will result from the absence of a class action; and

e.    the purported class and the difficulties likely to be encountered in the management of this class action are not great.

39.    The purported class is so numerous as to make it impracticable to join all members of the class as plaintiffs. ALLSTATE has discounted thousands of medical bills based on Preferred Provider Volume discounts. Many medical providers may not even be aware of ALLSTATE's sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of individual litigation. In contrast, on a class-wide basis, ALLSTATE has saved millions of dollars by accessing the discounts of Preferred Providers. [Fed. R. Civ. P. 23 (a)(1)].

## CAUSES OF ACTION

10

## COUNT I - BREACH OF CONTRACT AS TO
## CCN

DR. ZIDEL incorporates paragraphs 1- 39 as if fully set forth herein and further states as follows:

40.    DR. ZIDEL, and a portion of the purported class that he seeks to represent, entered into Preferred Provider Agreements with CCN to become CCN Preferred Providers. Pursuant to the Preferred Provider Agreements, CCN agreed to market its Preferred Providers to legitimate "Payors" which offer preferred provider policies to their insureds. At all times material hereto, CCN knew that ALLSTATE did not offer it's insureds a preferred provider policy.

41.    The CCN Preferred Provider Agreement forbids the disclosure of the compensation of DR. ZIDEL and the purported class members except under limited circumstances.

42.    CCN has breached its Preferred Provider Agreements in the following manners:

a.    by selling the volume discounts of DR. ZIDEL and the purported class to ALLSTATE, which is not a legitimate Payor, for a fee and with knowledge that the discounts would be applied to automobile personal injury protection medical expense claims and not claims of subscribers as stated in the contract because ALLSTATE did not offer or sell to it's insureds preferred provider or exclusive provider health care coverage plans;

b.    by selling the volume discounts of DR. ZIDEL and the purported class to ALLSTATE which applied the discounts retrospectively and could not provide an increase in patient volume for DR. ZIDEL and the purported class;

c.    by failing to offer adequate and meaningful consideration for discounts of

11

Florida automobile personal injury protection medical expense claims;

      d.    by disclosing confidential compensation and discount information to

ALLSTATE; and,

      e.    by violating the duty of good faith and fair dealing inherent in its Preferred

Provider Agreements through the following acts or failures to act:

      (1)    by disclosing the volume discounts of DR. ZIDEL and the purported class
to ALLSTATE;

      (2)    by allowing ALLSTATE to use the volume discounts without providing
consideration therefor; and

      (3)    by allowing the volume discounts to be applied to Florida automobile
insurance personal injury protection claims in violation of Florida law and
the ALLSTATE automobile insurance policy.

43.    As a direct and proximate result of this breach of contract as alleged, DR. ZIDEL
and the members of the purported class have suffered damages.

WHEREFORE, DR. ZIDEL and the purported class demand the following relief:

a) that judgment be entered against Defendant CCN in the amount of damages

incurred with interest, reasonable attorneys' fees, and costs; and

b) that this Court order such other relief as it deems just and proper.

## COUNT II

### UNJUST ENRICHMENT-ALLSTATE AND CCN

DR. ZIDEL, and those similarly situated, reallege paragraphs 1-43 as if fully set forth

herein and further state:

44.     No consideration has flowed from CCN to DR. ZIDEL and the putative class for the discounted payments made by ALLSTATE to DR. ZIDEL and the putative class.

45.     ALLSTATE has benefitted by receiving substantial savings at the expense of DR. ZIDEL and the putative class and CCN has benefitted by receiving compensation from ALLSTATE for allowing ALLSTATE to receive data creating these illegal discounts.

46.     Such savings constitute unjust enrichment for ALLSTATE and CCN.

WHEREFORE, DR. ZIDEL and the putative class ask that:

a) judgment be entered against ALLSTATE and CCN for the amount of savings realized by ALLSTATE and CCN through this unjust enrichment;

b) reasonable attorneys fees and costs;

c) such other and further relief as this Court deems appropriate.

## COUNT III - THIRD PARTY BENEFICIARY BREACH OF CONTRACT-ALLSTATE

DR. ZIDEL incorporates paragraphs 1 - 46 as if fully set forth herein and further states:

47.     ALLSTATE and its insureds who purchased its Florida personal injury protection automobile insurance policy entered into a contract of insurance. That contract provided that in the event the insured was involved in an automobile accident, ALLSTATE would pay on the insured's behalf to medical providers eighty (80%) percent of all reasonable and necessary medical expenses.

48.     DR. ZIDEL and the other members of the purported class are intended third party beneficiaries of these ALLSTATE insurance agreements. DR. ZIDEL and the members of the

13

putative class were to receive 80% of these reasonable and necessary medical expenses under these policies and under the Florida personal injury protection statute: not 80% of a CCN Preferred Provider discounted rate.

49.     As a result, DR. ZIDEL and the putative class members have suffered damages directly and proximately caused by ALLSTATE's breach of its insurance agreements with its insureds: DR. ZIDEL and the putative class being third party beneficiaries of those insurance agreements.

WHEREFORE, DR. ZIDEL and the members of the class that he seeks to represent demand the following relief:

a) that this Court enjoin ALLSTATE and all persons or entities acting in concert or participation therewith from any further reductions of DR. ZIDEL's and the purported class members' personal injury protection medical expense claims based on CCN PPO discounts;

b) that judgment be entered against ALLSTATE in the amount of DR. ZIDEL's and the purported class members' damages incurred, with interest, reasonable attorneys' fees, and costs; and,

c) that the Court order such other relief as it deems just and proper.

## COUNT IV - RICO

DR. ZIDEL reallege paragraphs 1 through 49 as if fully set forth herein and further states as follows:

50.     ALLSTATE, acting with CCN, formed an enterprise consisting of an association-in-fact. The "association in fact" is known as a "silent PPO."

14

51.    ALLSTATE, with the knowing or grossly negligent cooperation of CCN,
participated, directly and indirectly, in the activities of this enterprise through a pattern of
racketeering activity, as more fully set forth below.

52.    The activities of this enterprise affected commerce.

53.    The pattern of racketeering activity consisted of multiple acts of mail and wire
fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

54.    The pattern of racketeering activity has been continuous, and, on information and
belief, will continue into the future.

55.    In furtherance of the pattern of racketeering activity, ALLSTATE has engaged in a
continuous scheme and artifice to defraud DR. ZIDEL, and those similarly situated, of money as
follows:

a.    ALLSTATE obtained proprietary discount information belonging to DR. ZIDEL,
and others similarly situated from CCN;

b.    this discount information was then used by ALLSTATE to take illegitimate
discounts on medical bills of persons insured by ALLSTATE, for medical services
performed by DR. ZIDEL and those similarly situated;

c.    ALLSTATE, on information and belief, compensated CCN for this proprietary
information;

d.    ALLSTATE transmitted or caused to be transmitted EOBs to persons insured by
ALLSTATE. A sample of a discount is attached to this Complaint under Exhibit
3.

e.    these EOBs falsely represented that ALLSTATE was entitled to a PPO discount

15

and   ALLSTATE actually took these discounts;

f.     ALLSTATE caused these EOBs to be deposited in the mail to be delivered by the United States Postal Service;

g.     ALLSTATE engaged in interstate telephone calls and/or computer communications with CCN to transmit information that was false, in that the discount was taken and the discriminatorily reduced amount was sent to medical providers.

56.     Specifically, for the purpose of executing this scheme and artifice to defraud, ALLSTATE caused to be deposited and to be delivered by the United States Postal Service, according to the directions thereon, EOBs.

57.     Also, for the purpose of executing this scheme and artifice to defraud, ALLSTATE caused to be transmitted by wire communication in interstate commerce, information reflected in sample Exhibits attached, as well as other similar documents.

58.     ALLSTATE's conduct gives rise to claims under 18 U.S.C. §1964(a) of RICO and permits the recovery of treble damages against ALLSTATE for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. §1962(a) in violation of 18 U.S.C. §1962(d) and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. §1962(a) within the meaning of 18 U.S.C. §2.

59.     DR. ZIDEL and the purported class members are "persons" within the meaning of 18 U.S.C. §1964(c).

60.     At all times relevant hereto, DR. ZIDEL and class members were and are "persons" within the meaning of 18 U.S.C. §1961(3).

16

61.    With respect to the activities alleged herein, ALLSTATE acted at all times with malice toward the class, intent to engage in the conduct complained of for the benefit of itself and with knowledge that such conduct constituted unlawfulness. Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which ALLSTATE is subject, the same amounting to actionable wantonness.

62.    With respect to the activities alleged herein, ALLSTATE, with the cooperation of CCN, aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§1962(a) and (c). ALLSTATE operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment. In furtherance of this scheme, ALLSTATE interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests to which ALLSTATE was and is not entitled through the exploitation of discount rates to which it is not entitled.

63.    With respect to the overt acts and activities alleged herein, ALLSTATE communicated and conspired with CCN to violate 18 U.S.C. §§1962(a) and (c), all in violation of 18 U.S.C. §1962(d). ALLSTATE communicated with CCN so it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses, and to deprive class members of the intangible right of honest payment. ALLSTATE communicated with CCN so it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which ALLSTATE is not or was not entitled through the exploitation of a proprietary discount rate.

17

64.     The numerous predicate acts of mail and wire fraud, and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by ALLSTATE to defraud DR. ZIDEL, and the purported class, of money and property interests under false pretenses; to deprive DR. ZIDEL, and the purported class, of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and, to place ALLSTATE's financial interests over the confidential records of DR. ZIDEL and the purported class so that ALLSTATE could make greater profits. DR. ZIDEL, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

65.     As stated in the allegation in paragraph 8, *supra*, prior to December 13, 1999, DR. ZIDEL had no agreement with CCN of any kind relative to discounts.

66.     Nevertheless, ALLSTATE intentionally took discounts from DR. ZIDEL and other medical providers similarly situated who did not even have contracts with CCN.

## A. RACKETEERING ACTIVITIES

67.     In carrying out the overt acts and fraudulent scheme described above, ALLSTATE engaged in inter alia, conduct in violation of federal laws, including 18 U.S.C. §§1341 and 1343, 18 U.S.C. §§1341 and 1346, 18 U.S.C. §§1343 and 1346, 18 U.S.C. §1951(b)(2), 18 U.S.C. §1952(a), 18 U.S.C. § 1954, and 18 U.S.C. §1961 et seq., as stated below.

68.     Section 1961(l) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ...

18

Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

69. The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. §1346.

### 1. 18 U.S.C. §§1341 and 1346, and 18 U.S.C. §§1343 and 1346

70. For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, ALLSTATE, in violation of 18 U.S.C. §1341 and §1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.

71. For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, ALLSTATE, in violation of 18 U.S.C. §§1343 and 1346, transmitted in interstate

19

commerce by wire, telephone, or computer transmissions, information regarding illegal discounts. In this manner, ALLSTATE, knowingly, was violating obligations of CCN to DR. ZIDEL and others similarly situated to provide "honest services." ALLSTATE knowingly induced CCN to deprive DR. ZIDEL and others similarly situated of "honest services."

72.     In those matters and things sent or delivered by the United States Postal Service referred to above, ALLSTATE falsely and fraudulently represented to DR. ZIDEL and the purported class that; (i) ALLSTATE's payments to DR. ZIDEL were for the amount "billed" for the reasonable value of his service and, (ii) that ALLSTATE was entitled to a PPO discount for DR. ZIDEL and the putative class under a system that legitimately provides education, marketing and economic incentives intended to "steer" more patients and to provide other benefits to healthcare providers. ALLSTATE failed, however, to disclose to DR. ZIDEL and the purported class that its EOBs were based upon illegal discounts designed to maximize profits on discounts illegally obtained through DR. ZIDEL's proprietary information. ALLSTATE thus failed to disclose material facts regarding ALLSTATE's internal policies and practices specifically designed to reduce or limit the level of payment discussed in detail above.

73.     With respect to its unlawful activities described above. ALLSTATE also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§1341, 1343, and 1346.

74.     ALLSTATE intentionally and knowingly deceived DR. ZIDEL and the purported class referred to above for the purpose of financial gain. ALLSTATE either knew or recklessly disregarded that the illegal discounts described above were material.

20

75.     DR. ZIDEL and the purported class have, therefor, been injured in their business or property by ALLSTATE's overt acts and racketeering activities in amounts to be determined at trial.

## 2. 18 U.S.C. §1951(b)(2)

76.     During the relevant times, and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, ALLSTATE, and middlemen CCN, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. §1951. ALLSTATE unlawfully attempted to and/or did induce CCN to cause DR. ZIDEL and numerous other healthcare providers to part with various property interests to which ALLSTATE was and is not entitled, including the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy. ALLSTATE's conduct induced CCN to provide it with the names of healthcare providers and their discounts, and exploited a fear of economic loss and/or loss of business by DR. ZIDEL and others similarly situated in violation of 18 U.S.C. §1951(b)(2). In furtherance of the scheme or artifice to defraud and obtain money by false pretenses from DR. ZIDEL, and the purported class, ALLSTATE communicated with CCN to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which ALLSTATE was not entitled through the exploitation of healthcare providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts. ALLSTATE either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to

21

exploit fear of economic loss or loss of business by DR. ZIDEL and the purported class and yet secure it tangible property rights to which it is not entitled.

77.    ALLSTATE's overt acts and fraudulent and extortionate racketeering activity has and continues to defraud DR. ZIDEL, and the members of the purported class, of money, has and continues to unlawfully influence and interfere with the relationship of CCN and DR. ZIDEL and the purported class, as well as interfering with the fiduciary relationship between DR. ZIDEL, and members of the purported class and their patients.

78.    DR. ZIDEL and the purported class have, therefor, been injured in their business or property by ALLSTATE's overt acts and racketeering activities in amounts to be determined at trial.

### 3. 18 U.S.C. §1952(a).

79.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud DR. ZIDEL and the purported class, ALLSTATE, its employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. §1952(a).

80.    ALLSTATE's overt acts and fraudulent racketeering activity has and continues to defraud DR. ZIDEL and the purported class of money.

### B. PATTERN OF RACKETEERING ACTIVITY

81.    ALLSTATE has engaged in a "pattern of racketeering activity" as defined in Section 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for

22

at least two such acts of racketeering activity, as described above, within the past ten years. Each

such act of racketeering activity was related, had similar purposes, involved the same or similar

participants and methods of commission, and had similar results impacting upon similar victims,

including DR. ZIDEL and the purported class.

82.    The multiple acts of racketeering activity committed and/or conspired to or aided

and abetted by ALLSTATE, as described above, were related to each other and amount to and

pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of

racketeering activity," as defined in 18 U.S.C. §1961(5).

## C. RICO VIOLATIONS OF 18 U.S.C. §§1962 (d).

83.    DR. ZIDEL's claim for relief also arises under 18 U.S.C. §1964 (c) of RICO and

seeks to recover actual and treble damages for ALLSTATE's violations of 18 U.S.C. §§1962(c)

and for its violations of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

### 1. Section 1962(c) claim.

DR. ZIDEL reasserts and realleges paragraphs 1 through 83 of this Complaint as though

fully set forth herein and further states as follows:

84.    Section 1962(c) of RICO provides that "it shall be unlawful for any person

employed by or associated with any enterprise engaged in, or the activities of which affect

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Section 1961(3) of RICO states that "person" includes any individual or entity capable of holding

a legal or beneficial interest in property. Section 1961(4) of RICO defines enterprise to include

"any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18U.S.C. §1961(4).

85.     For purposes of this Section 1962(c) claim, the persons consist of ALLSTATE and CCN. The enterprise is an association in fact consisting of ALLSTATE and CCN in terms of control by CCN over physicians, medical specialists, medical laboratories, hospitals, healthcare clinics, pharmacies, home healthcare agencies, and other miscellaneous healthcare providers; all of which have the purpose of providing healthcare services to an ALLSTATE insured under ALLSTATE's personal injury protection policies. This Section 1962(c) enterprise is distinct from ALLSTATE and includes many persons who are not employees of ALLSTATE and many entities that are not owned by ALLSTATE. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

86.     ALLSTATE is associated with CCN in the Section 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described herein. DR. ZIDEL and the purported class members are directly and proximately injured both by this pattern of activity and by ALLSTATE's conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. §1964(c).

### 2.     Section 1962(d) Claim.

DR. ZIDEL reasserts and realleges paragraphs 1 through 86 of this Complaint as though fully set forth herein and further states:

87.     This claim for relief also arises under 18 U.S.C. §1964(c) of RICO and seeks to recover actual and treble damages for ALLSTATE's violation of 18 U.S.C. §1962(d) by

24

conspiring to violate 18 U.S.C. §1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

88.     Section 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4).

89.     Section 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

90.     For purposes of the claim of a conspiracy in violation of Section 1962(d) to violate Section 1962(a), the persons under the latter subsection consist of ALLSTATE and CCN and the enterprise consists of ALLSTATE and its investment division, wherein, according to ALLSTATE's website, it has created "a high-quality investment portfolio that consistently achieves excellent returns." In 1998, according to ALLSTATE's website, operating income was $2.6 billion while total net income including *capital gains* was a "record" $3.3 billion.

91.     At all times relevant herein, CCN and ALLSTATE's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(a). The ALLSTATE investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud DR. ZIDEL and the purported class of money and to deprive them of their intangible

25

right of honest services from CCN.

92.    ALLSTATE sells insurance nationwide. Assets generated from ALLSTATE's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars.

93.    ALLSTATE derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(a). This use or investment injures DR. ZIDEL and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect healthcare providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described herein.

94.    As demonstrated in detail above, ALLSTATE has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require DR. ZIDEL and the purported class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud DR. ZIDEL and the class of money, and to unlawfully interfere with their physician-patient relationship.

95.    ALLSTATE's pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by ALLSTATE's inducement to CCN to allow ALLSTATE to defraud DR. ZIDEL and

26

the purported class.

96.     The nature of the above described acts of ALLSTATE constitutes material misrepresentations that give rise to an inference that ALLSTATE knew it was violating the objective of 18 U.S.C. §1962(d) by violating 18 U.S.C. §§1962(a) and (c), through its ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

97.     As a direct and proximate result of ALLSTATE's overt acts and predicate acts in furtherance of violating 18 U.S.C. §1962(d) by conspiring to violate IS U.S.C. §§1962(a) and (c), DR. ZIDEL and the class have been and are continuing to be injured in their business or property. Pursuant to 18 U.S.C. §1964(c), DR. ZIDEL is entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

98.     ALLSTATE has sought to and has engaged in the commission of and continues to commit overt acts and the aforesaid described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by ALLSTATE from such pattern of racketeering activity, to-wit:

    a.     multiple instances of mail and wire fraud violations of 18 U.S.C. §§1341 and 1343;

    b.     multiple instances of mail fraud violations of 18 U.S.C. §§1341 and 1346;

    c.     multiple instances of wire fraud violations of IS U.S.C. §§1343 and 1346;

    d.     multiple instances of extortion violations of 18 U.S.C. §1951(b)(2);

    e.     multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. §1952(a); and

27

f.    multiple instances of violations of 18 U.S.C. §1954.

99.    ALLSTATE's violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting ALLSTATE's illegal acts constituting a pattern of racketeering activity is fashioned and imposed by this Court.

WHEREFORE, DR. ZIDEL and the members of the class that he seeks to represent demand the following relief:

a) that this Court enjoin ALLSTATE and the aforesaid entities acting in concert or participation therewith from any further reductions of DR. ZIDEL's and the purported class members' PIP medical expense claims based on CCN PPO discounts;

b) that judgment be entered against ALLSTATE in the amount of DR. ZIDEL's and the purported class members' damages incurred, with interest, reasonable attorneys' fees, and costs; and,

c) that the Court grant such other relief as it deems just and proper.

## COUNT V - VIOLATION OF THE
## SHERMAN ANTI-TRUST ACT 15 U.S.C. §1, §2, AND § 13

DR. ZIDEL incorporates paragraphs 1 through 99 of this Complaint as if fully set forth herein and further states:

100.    ALLSTATE has discriminated in its payments to DR. ZIDEL, and members of the purported class by taking the illegal discounts as described in the preceding paragraphs while at the same time paying the *full* amount of personal injury protection bills submitted by other medical providers not belonging to the CCN PPO whose discounts ALLSTATE was not able to

28

obtain.

101.    ALLSTATE's acts as described in the preceding paragraphs of this Complaint violate 15 U.S.C. §1, §2, and §13 in that said price discrimination practices constitute a restraint upon commerce and trade.

102.    As a result of ALLSTATE's violations of the Sherman Anti-Trust Act, DR. ZIDEL and those similarly situated are entitled to actual and treble damages.

WHEREFOR, DR. ZIDEL and the members of the class that he seeks to represent demand the following relief:

a) that this Court enjoin ALLSTATE and the aforesaid entities acting in concert or participation therewith from any further reductions of DR. ZIDEL's and the purported class members' personal injury protection medical expense claims based on CCN PPO discounts;

b) that judgment be entered against ALLSTATE for treble the amount of DR. ZIDEL's and the purported class members' actual damages incurred, with interest, reasonable attorneys' fees, and costs; and,

c) that the Court grant such other relief as it deems just and proper.

## COUNT VI - DECLARATORY JUDGMENT

DR. ZIDEL incorporates paragraphs 1 through 102 of this complaint as if fully set forth herein and further states as follows:

103.    As previously alleged, ALLSTATE has improperly taken advantage of discounts to which it is not entitled for all the reasons that have been set forth in the previous paragraphs of this complaint.

29

104.    ALLSTATE's conduct is similar to other types of conduct by insurance companies and/or third party payors in the healthcare industry who engage in a silent PPO without benefit to the healthcare providers.

105.    This illegal conduct demands a declaration that ALLSTATE's purchasing discounts of healthcare providers without consideration flowing to the healthcare providers should not be countenanced.

WHEREFORE, Plaintiff, DR. ZIDEL on behalf of himself, and others similarly situated, pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, ask this Court to declare that the conduct of ALLSTATE as outlined in the preceding paragraphs of this complaint constitutes a basis to recover monies from discounts improperly taken by ALLSTATE.

### COUNT VII - VIOLATION OF FLORIDA STATUTE 627.736(10)

DR. ZIDEL incorporates paragraphs 1-105 of this Complaint as if fully set forth herein and further states as follows:

106.    At all times material herein, DR. ZIDEL and the members of the class that he seeks to represent presented or had presented on their behalf reasonable and necessary medical charges to ALLSTATE for treatment of patients entitled to PIP medical expense benefits pursuant to Florida aautomobile insurance policies issued by ALLSTATE.

107.    ALLSTATE has wrongfully claimed CCN PPO discounts on the medical expenses referred to in the preceding paragraph.

108.    ALLSTATE is not entitled to said CCN PPO discounts. ALLSTATE has failed to comply with the personal injury protection statute's requirements for establishing an automobile

insurance PPO network. Despite this failure, ALLSTATE has reduced and continues to reduce the personal injury protection medical expense claims of DR. ZIDEL and the purported class members by accessing the aforesaid entities' databases of CCN Preferred Provider volume discounts.

109.    Accordingly, an outstanding balance remains on all PIP medical expenses that ALLSTATE has reduced based on CCN Preferred Provider volume discounts. By reducing DR. ZIDEL's and the purported class members' legitimate PIP medical expenses by application of MEDVIEW PPO discounts, ALLSTATE has violated Fla. Stat. § 627.736(10).

110.    As a result of ALLSTATE's failure to comply with Fla. Stat. § 627.736(10), DR. ZIDEL and the members of the purported class have suffered damages and irreparable harm.

WHEREFOR, DR. ZIDEL and the members of the class that he seeks to represent demand the following relief:

a) that this Court enjoin ALLSTATE and all persons or entities acting in concert or participation therewith from any further reductions of DR. ZIDEL's and the purported class members' PIP medical expense claims based on CCN PPO discounts;

b) that judgment against ALLSTATE be entered in the amount of DR. ZIDEL and the purported class members' damages incurred, including an award of punitive damages, with interest, reasonable attorneys' fees per § 627.428 and costs; and

c) that the Court order such other relief as it deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS CONTAINED HEREIN.

31

Respectfully submitted

By: _____
By one of Dr. Zidel's attorneys

Arthur S. Gold, Esq.
GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street, Ste 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 (facsimile)
#5231

Carlin Phillips, Esq.
PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 (facsimile)

Lawrence Kopelman, Esq.
KOPELMAN & BLANKMAN
A Professional Association
One Financial Plaza
Suite 1611
Bank of America Building
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 (facsimile)
C:\WP51\ASG\NAPOLI\COMPLA2 amd

32

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail to counsel on the attached list on June 30, 2000.

_____
Attorney

SERVICE LIST

Mr. David B. Shelton
Rumberger, Kirk & Caldwell
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

PHILLIPS & GARCIA
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN
A Professional Association
One Financial Plaza
Suite 1611
Bank of America Building
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 (facsimile)

ROSS & HARDIES
Peter J. Valeta
Attorneys for Allstate
150 N. Michigan Avenue
Suite 2500
Chicago, IL 60601
(312) 750-3619  (312) 920-7241 Facsimile

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

PLEASE REFER TO COURT FILE