UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CNN

Defendants.
_____/

## RULE 12.1 CIVIL RICO CASE STATEMENT

Plaintiff DR. PAUL ZIDEL ("DR. ZIDEL"), on behalf of himself and all others similarly

situated, by his undersigned counsel, pursuant to local Rule 12.1, sets forth the following Civil Rico

Case Statement, responding sequentially to the numbered requests that local rule mandates:

1.    The unlawful conduct on the part of Defendants ALLSTATE INSURANCE

COMPANY ("ALLSTATE") and COMMUNITY CARE NETWORK, INC. ("CCN") is allegedly

in violation of 18 U.S.C. §§ 1962 (a), (c) and (d).

2.    The Defendants to the present suit and their respective misconduct and the basis of

liability are as follows:

a.    ALLSTATE obtained healthcare provider discounts in violation of Florida

Statutes and without consideration to DR. ZIDEL and members of the putative class. ALLSTATE

also applied these illegally obtained discounts to Florida Automobile Personal Injury Protection

("PIP") bills sent to it by Florida healthcare providers.

b.    CCN aided ALLSTATE by providing it the names of its preferred providers as well as information as to their discounted rates. CCN received compensation from ALLSTATE for the names and information as to the discounted rates relating to these healthcare providers in violation of their contracts with these providers, their insureds and Florida Statutes.

3.    At the present time, no other wrongdoers are known to DR. ZIDEL other than the above named Defendants, their officers and employees, however, investigation continues.

4.    DR. ZIDEL and the putative class were injured by not being paid the correct amount of their PIP bills each time ALLSTATE mailed them a payment and Explanation of Benefit ("EOB") deducting the illegally obtained discount.

5.    a.    In carrying out the overt acts and fraudulent scheme described above, ALLSTATE engaged in, inter alia, conduct in violation of federal laws, including 18 U.S.C. §§1341, 1343, 1346, §1951(b)(2), §1952(a), § 1954, and §1961 et seq., as detailed below.

Section 1961(l) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)." The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. §1346.

2

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

## 18 U.S.C. §§1341, 1343 and 1346

For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, ALLSTATE, in violation of 18 U.S.C. § § 1341 and 1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed. ALLSTATE, in violation of 18 U.S.C. §§1343 and 1346, also transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts.

In this manner, ALLSTATE, knowingly, violated obligations of CCN to DR. ZIDEL and others similarly situated to provide "honest services." ALLSTATE knowingly induced CCN to deprive DR. ZIDEL and the class of "honest services." ALLSTATE falsely and fraudulently represented to DR. ZIDEL and the class that; (i) ALLSTATE's payments to DR. ZIDEL and the class were for the amount "billed" for the reasonable value of their services and, (ii) that ALLSTATE was entitled to a PPO discount for DR. ZIDEL and the class under a system that legitimately provides education, marketing and economic incentives intended to "steer" more patients and to provide other benefits to healthcare providers. ALLSTATE failed, however, to disclose to DR. ZIDEL and the class that its EOBs were based upon the use of illegal discounts designed to maximize profits. ALLSTATE's EOB's and general business practice was to falsely represent that

7091-00100 298963.1                                    3



ALLSTATE was legally entitled to pay PIP claims at discounted rates. ALLSTATE thus failed to disclose material facts regarding ALLSTATE's internal policies and practices specifically designed to reduce or limit the level of payment to DR. ZIDEL and the class. To accomplish the scheme of stealing information relating to healthcare provider discounts and reducing payments to healthcare providers, ALLSTATE also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§1341, 1343, and 1346.

ALLSTATE intentionally and knowingly deceived DR. ZIDEL and the class for the purpose of financial gain. ALLSTATE either knew or recklessly disregarded the fact that the illegal discounts described above were material. DR. ZIDEL and the class have been injured in their business or property by ALLSTATE's overt acts and racketeering activities in amounts to be determined at trial.

## 18 U.S.C. §1951(b)(2)

During the relevant times and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, ALLSTATE and CCN, on numerous occasions, aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. §1951. ALLSTATE unlawfully attempted to and/or did induce CCN to cause DR. ZIDEL and numerous other healthcare providers to part with various property interests to which ALLSTATE was and is not entitled, including the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy. ALLSTATE's



conduct induced CCN to provide it with the names of healthcare providers and their discounts, and exploited a fear of economic loss and/or loss of business by DR. ZIDEL and the class in violation of 18 U.S.C. §1951(b)(2). In furtherance of the scheme or artifice to defraud and obtain money by false pretenses from DR. ZIDEL and the class, ALLSTATE communicated with CCN to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which ALLSTATE was not entitled through the exploitation of healthcare providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts. ALLSTATE either knew or recklessly disregarded that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by DR. ZIDEL and the class and yet secure it tangible property rights to which it is not entitled.

ALLSTATE's overt acts and fraudulent and extortionate racketeering activity has and continues to defraud DR. ZIDEL and the class of money, has and continues to unlawfully influence and interfere with the relationship of CCN and DR. ZIDEL and the class, as well as interfering with the fiduciary relationship between DR. ZIDEL and members of the class and their patients. DR. ZIDEL and the class have been injured in their business or property by ALLSTATE's overt acts and racketeering activities in amounts to be determined at trial.

## 18 U.S.C. §1952(a)

During the relevant times and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud DR. ZIDEL and the class, ALLSTATE, its employees, agents and others, on numerous occasions, did travel and caused others not named to


ATLAS PEARLMAN
ATTORNEYS AT LAW

travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. §1952(a).

## PATTERN OF RACKETEERING ACTIVITY

ALLSTATE has engaged in a "pattern of racketeering activity" as defined in Section 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including DR. ZIDEL and the class. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by ALLSTATE, were related to each other and amount to and pose a threat of continued racketeering activity and thus, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. §1961(5).

## 18 U.S.C. §§1962(a), (c), and (d) and 18 U.S. §1964

DR. ZIDEL's and the class's claim for relief also arises under 18 U.S.C. §1964 (c) of RICO and seeks to recover actual and treble damages for ALLSTATE's and CCN's violations of 18 U.S.C. §§1962(c) and for its violations of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

## Section 1962(c) claim

Section 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

6



through a pattern of racketeering activity or collection of unlawful debt." Section 1961(3) of RICO states that "person" includes any individual or entity capable of holding a legal or beneficial interest in property. Section 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

For purposes of DR. ZIDEL's and the class's Section 1962(c) claim, the persons consist of ALLSTATE and CCN. The enterprise is an association in fact consisting of ALLSTATE and CCN in terms of control by CCN over physicians, medical specialists, medical laboratories, hospitals, healthcare clinics, pharmacies, home healthcare agencies, and other miscellaneous healthcare providers; all of which have the purpose of providing healthcare services to an ALLSTATE insured under ALLSTATE's PIP policies. This Section 1962(c) enterprise is distinct from ALLSTATE and includes many persons who are not employees of ALLSTATE and many entities that are not owned by ALLSTATE. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

ALLSTATE is associated with CCN in the Section 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described. DR. ZIDEL and the class members are directly and proximately injured both by this pattern of activity and by ALLSTATE's conduct and participation.

## Section 1962(d) Claim

This claim for relief also arises under 18 U.S.C. §1964(c) of RICO and seeks to recover actual and treble damages for ALLSTATE's violation of 18 U.S.C. §1962(d) by conspiring to violate

ATLAS PEARLMAN

18 U.S.C. §1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Section 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Section 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

For purposes of the claim of a conspiracy in violation of Section 1962(d) to violate Section 1962(a), the persons under the latter subsection consist of ALLSTATE and CCN and the enterprise consists of ALLSTATE and its investment division, wherein, according to ALLSTATE's website, it has created "a high-quality investment portfolio that consistently achieves excellent returns." In 1998, according to ALLSTATE's website, operating income was $2.6 billion while total net income including *capital gains* was a "record" $3.3 billion. At all times relevant, CCN and ALLSTATE's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(a). The ALLSTATE investment division was and continues to be the investment beneficiary of additional monies realized from ALLSTATE's overt acts and fraudulent and extortionate scheme or activities to defraud DR. ZIDEL and the class of money and to deprive them of their intangible right of honest services from CCN.



ALLSTATE sells insurance nationwide. Assets generated from ALLSTATE's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars. ALLSTATE derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(a). This use or investment injures DR. ZIDEL and the class members because it permits that enterprise to continue, expand, and increase its revenue and to affect healthcare providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described.

As demonstrated in detail above, ALLSTATE has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require DR. ZIDEL and the class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud DR. ZIDEL and the class of money, and to unlawfully interfere with their physician-patient relationship. ALLSTATE's pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by ALLSTATE's inducement to CCN to allow ALLSTATE to defraud DR. ZIDEL and the class. The nature of these acts of ALLSTATE constitutes material misrepresentations that give rise to an inference that ALLSTATE knew it was violating the objective of 18 U.S.C. §1962(d) by violating 18 U.S.C. §§1962(a) and (c), through its



ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

      b.    The dates of the predicate acts are those dates wherein CCN provided the discounted rates to ALLSTATE. The exact dates ALLSTATE obtained these discounted rates are unknown at present but will be uncovered in discovery.

      c.    Not applicable.

      d.    No.

      e.    See Paragraph 5a above.

      f.    These predicate acts amount to and pose a threat of continued criminal activity in that they are presently ongoing and will continue unless the relief sought in this case is granted.

6.    See Paragraph 5a above.

7.    They have merged into one entity: the "SILENT PPO" described in Paragraph 5a. above resulting in the theft of discounts from DR. ZIDEL and the class and resulting in the loss of millions of dollars by members of the class.

8.    The racketeering/criminal activity as described in Paragraph 5a above explains how this activity differs from the usual and daily activities of the enterprise.

9.    ALLSTATE has reaped millions of dollars in income by not paying healthcare providers the proper amount of their bills and CCN has received benefits in the form of compensation paid by ALLSTATE.

10.    See Paragraph 5a above.

11.

ATLAS PEARLMAN

a.    The exact amount of income to ALLSTATE and CCN derived from this scheme is unknown at present but is in the millions of dollars.

b.    ALLSTATE, each time it took advantage of its stolen discount and did not properly pay the healthcare provider.

c.    Each time ALLSTATE invested the payments it saved by participating in this unlawful scheme or used these savings to enhance the net worth of ALLSTATE, it permitted the continued operation of this enterprise.

d.    DR. ZIDEL and the class were injured by being denied the correct payments on their PIP bills which would have generated millions of dollars in additional revenue to them.

e.    ALLSTATE and CCN are both liable persons and components of the enterprise.

12.    Not applicable.

13.    See Paragraph 5a above.

14.    See Paragraph 5a above.

15.    Loss of revenue to DR. ZIDEL and the class as a result of not receiving proper compensation.

16.    See Paragraph 5a above.

17.    As to the savings received by ALLSTATE as a result of its victimizing DR. ZIDEL and the class, records of same are in the possession of ALLSTATE and can be easily determined through discovery. Both defendants would be liable for these amounts.

11



Respectfully submitted,

ATLAS PEARLMAN, P.A.
Co-counsel for Plaintiff
DR. PAUL ZIDEL
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200

By: _____

    ERIC LEE
Florida Bar No. 961299

**Co-Counsel for Plaintiff**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporation
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

GOGEL, PHILLIPS & GARCIA
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 1611
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 (facsimile)

12



CASE NO. 00-6061-CIV-FERGUSON/SNOW

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

mail this _8th_ day of November, 2000 upon: all individuals on the attached service list.

ERIC LEE



## SERVICE LIST
**(Zidel v. Allstate Insurance Company et al. Case No. 00-6061-Civ-Ferguson/Snow)**

### ATTORNEYS FOR ALLSTATE

David B. Shelton, Esq.
dshelton@rumberger.com
RUMBERGER, KIRK & CALDWELL
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

Peter J. Valeta, Esq.
ROSS & HARDIES
150 N. Michigan Avenue
Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

### ATTORNEYS FOR COMMUNITY CARE NETWORK

William W. Deem, Esq.
(904)798-2615
wwdeem@mwbb.com
Jeb T. Nranham, Esq.
(904)798-2671
jbranham@mcguirewoods.com
MCQUIRE WOODS BATTLE
& BOOTHE, LLP
50 N. Laura Street
Suite 5300
Jacksonville, Florida 32202
(904)798-3207 Facsimile

### ATTORNEYS FOR PLAINTIFFS

GOLD & COULSON
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 1611
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

7091-00100 294101.1

