

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Civil Action No. 00-CIV-6061 FERGUSON/SNOW

| | |
|---|---|
| DR. PAUL ZIDEL and All Others Similarly Situated, | § § § |
| Plaintiffs, | § § |
| v. | § § |
| ALLSTATE INSURANCE COMPANY and COMMUNITY CARE NETWORK, INC. d/b/a CCN, | § § § § |
| Defendants. | § |

## CCN'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

Community Care Network, Inc. d/b/a CCN ("CCN") moves the Court to enter an order compelling arbitration and staying this litigation and states as follows:

### I.
### INTRODUCTION

Plaintiff's Amended Class Action Complaint (the "Complaint") asserts a variety of claims against CCN, all of which arise from his contractual relationship with CCN. That contract contains an arbitration clause. Despite demanding arbitration on these issues many months ago, and despite requesting and receiving numerous documents in connection therewith, plaintiff has now inexplicably abandoned his contractual duty to arbitrate and initiated the instant litigation



against CCN. Because this dispute is subject to a mandatory arbitration agreement, CCN asks the Court to compel plaintiff to stay this litigation and to instead arbitrate his claims.

## II.
## FACTUAL BACKGROUND

1.    CCN develops and markets health care service provider networks. CCN maintains and markets provider networks in 48 of the 50 states. *See* Declaration of Dave Cowan attached hereto as Exhibit A. There are approximately 368,000 healthcare providers and facilities who are members of CCN's network. *See id.* CCN forms its networks by recruiting health care service providers to join the networks. *See id.* Members of CCN's networks agree to discount their usual and customary charges for health care services provided to CCN' clients' insureds or beneficiaries. CCN markets the network to entities that provide health care benefits to large numbers of individuals, such as insurance companies, employers, third-party administrators, in the network's operating area. *See id.* CCN provides its network members with a variety of services, including marketing and administrative support. *See id.* CCN's network providers routinely conduct business with CCN's national headquarters in San Diego and CCN's regional offices. *See id.*

2.    On August 1, 1998, Dr. Paul Zidel, a hand surgeon, became a member of the CCN network by executing the "Community Care Network Inc. Professional Care Provider Agreement" (the "Contract"). A true and correct copy of the Contract is attached hereto as Exhibit B.

3.    The Contract contains the following arbitration clause:

The sole and exclusive remedy for the resolution of any and all demands, disputes, claims or lawsuits shall be binding arbitration, as the parties do not want the delay or expense of lawsuits. The parties shall mutually agree to the appointment of an impartial arbitrator within 30 days of the written request for the

2

appointment of any arbitrator by any party. The arbitrator must be familiar with the health care industry. In the event that mutual agreement cannot be obtained, then the American Arbitration Association shall appoint an arbitrator who is familiar with the health care industry if one can be located; and if one cannot be located, then another arbitrator shall be appointed. All arbitration proceedings shall be conducted in accord with the rules of the American Arbitration Association and the award shall be binding, final and conclusive on the parties. Any party may enforce the award rendered by the arbitrator in any court of competent jurisdiction.

Contract at ¶ 12.02. (Emphasis added.)

4.  The Contract also contain a choice-of-law provision that states "[t]his Agreement shall be construed and enforced in accordance with the laws of the state of Florida as amended from time to time subject to any applicable federal law." Contract at ¶ 16.01.

## II.
## ARGUMENT AND AUTHORITIES

### A.  The Federal Arbitration Act.

#### 1.  The Scope of the F.A.A.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, is applicable to all "written provision[s] in . . . a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The phrase "involving commerce" has been interpreted broadly to extend "expansively as coinciding with that of the Commerce Clause." *See Allied-Bruce Terminix Cos., Inc. v. Casarotto*, 513 U.S. 265, 274 (1995), *citing Perry v. Thomas*, 482 U.S. 483, 490 (1987) (the Act "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the commerce clause"). CCN operates a statewide and nationwide network of physicians and health care providers and provides access to those networks to national insurance companies, employers and other third parties seeking to provide health care for their employees or beneficiaries. *See* Exhibit A. CCN's principal place of business is in San Diego, California. *See id.* CCN transacts

3

business with both its network providers and its clients across state lines. *See id.* CCN provides assistance, support and materials to each of its physicians throughout the provider network; in fact, the Contract at issue here is between citizens of different states. *See id.* CCN also provides these same benefits to its clients, which are located in many states across the nation. *See id.* By virtue of CCN's interstate activities, the Contract necessarily "involves commerce." *See Allied-Bruce*, 513 U.S. at 269. Because the Contract involves interstate commerce, the FAA governs this proceeding to compel arbitration. *See* 9 U.S.C. § 2; *Allied-Bruce*, 513 U.S. at 272-73.

**2.    The Court Should Compel Arbitration And Stay These Proceedings**.

Courts are to honor and enforce arbitration provisions agreed to by the parties. *See* 9 U.S.C. §§ 3-4; *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1984) ("By its terms the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). CCN's motion to compel arbitration thus requires but a simple, two-part analysis -- (1) did the parties agree in writing to arbitrate their disputes; and (2) do the claims raised fall within the scope of the arbitration provision. *See AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649-50 (1986).

   **a.    *The parties agreed in writing to arbitrate disputes.***

As described above, the Contract contains a provision requiring the parties to arbitrate any disputes. "[A]rbitration agreements are no more than contracts to which the usual rules of contract interpretation apply," and "when the parties clearly and unmistakably intended to refer a dispute to arbitration, their will must be respected." *Singer v. Smith Barney Shearson*, 926 F. Supp. 183, 187 (S.D. Fla. 1996). The pertinent part of paragraph 12.02 states "[t]he <u>sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration</u> as the parties

4

do not want the delay or expense of lawsuits." Contract at ¶ 12.02 (emphasis added). The arbitration clause is in writing, signed by the parties, and demonstrates their intent to arbitrate any disputes arising between them.

### b. *This dispute is subject to the Contract's arbitration clause.*

It is presumed that claims arising out of a contract that includes an arbitration provision should be arbitrated. *See AT&T Tech.*, 475 U.S. at 650. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). This presumption of arbitrability stems from a strong federal policy favoring arbitration of disputes. *See e.g., Southland Corp. v. Keating*, 465 U.S. 1, 9 (1984) (enacting the FAA "Congress declared a national policy favoring arbitration"); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). All doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration; "the parties' intentions control, but those intentions are generously construed as to the issues of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626; *see AT&T Tech*, 475 U.S. at 650; *Moses*, 460 U.S. at 24-5.

The Agreement expressly provides for arbitration of "any demands, disputes, claims or lawsuits" between the parties. Contract at ¶ 12.02. The plain language of this provision is broad and covers all claims asserted by plaintiff against CCN, all of which relate directly to the Contract and the parties' contractual relationship. The applicability of the arbitration clause to the claims asserted herein cannot be legitimately challenged by plaintiff, who initially demanded arbitration of this dispute before (apparently) abandoning his request in favor of this litigation. *See* Letter from Lawrence M. Kopelman to Community Care Network/CCC dated May 3, 2000, attached hereto as

5

Exhibit C. Thus, the claims asserted in the Complaint are subject to the Contract's arbitration clause and CCN's motion must be granted.

**B.    The Florida Arbitration Code.**

The Florida Arbitration Code (the "FAC") also requires that this dispute be referred to arbitration. The Contract's choice-of-law provision makes Florida law applicable to the Contract, and the terms of the FAC apply here. The FAC provides that parties "may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them" and that the agreement to arbitrate shall be "valid, enforceable and irrevocable." § 682.02, Fla. Stat. When presented with a motion to compel arbitration, a court "is limited to determining (1) whether a valid written arbitration agreement exists containing an arbitration clause, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636 (Fla. 1999); *see Piercy v. School Board of Wash. Cty.*, 576 So.2d 806, 807 (Fla. 1st DCA 1991); *Gale Group, Inc. v. Westinghouse Elec. Corp.*, 683 So.2d 661, 662-63 (Fla. 5th DCA 1996). Because the instant dispute satisfies all of these requirements, CCN's motion should be granted.

**1.    The Contract contains a valid arbitration clause.**

The Contract's arbitration clause meets the requirements for validity in Florida. The clause satisfies all requirements to constitute a binding contractual agreement, and demonstrates the parties' "intent to submit a dispute to a third party for resolution." *Piercy*, 683 So.2d at 663; *see Larry Kent Homes, Inc. v. Empire of Am., FSA*, 474 So.2d 868 (Fla. 5th DCA 1985). The Contract requires that "[t]he sole and exclusive remedy for the resolution of any and all demands, disputes, claims or lawsuits shall be binding arbitration as the parties do not want the delay or expense of lawsuits."

Contract at ¶ 12.02. Because the arbitration clause is mutually binding and shows that the parties intended to arbitrate future disputes between them, the Contract's clause is valid and enforceable.

### 2. The claims asserted in the Complaint are subject to arbitration.

The Complaint asserts that CCN breached the terms of the Contract and claims that the discounting of plaintiff's fees pursuant to the Contract unjustly enriched CCN. *See* Complaint at ¶¶ 40-46. Both of these claims are based on the Contract and are subject to the broad language of the Contract's arbitration clause. *See* Contract at ¶ 12.02. Again, plaintiff's initial decision to arbitrate this conflict belies any argument that his claims do not fall within the arbitration clause's scope. *See* Exhibit C. Any doubts about the scope of the arbitration clause must be resolved in CCN's favor; "[a]rbitration is a favored means of dispute resolution and courts should resolve doubts concerning the scope of such agreements in favor of arbitration." *Stinson-Head, Inc. v. City of Sanibel*, 661 So.2d 119, 120 (Fla. 2nd DCA 1995); *see Regency Group, Inc. v. McDaniels*, 647 So.2d 192, 193 (Fla. 1st DCA 1994); *Royal Carribean Cruises v. Universal Employment Agency*, 664 So.2d 1107, 1108 (Fla. 3rd DCA 1995); *Federal Vending, Inc. v. Steak & Ale of Fla.*, 687 So.2d 1366, 1368 (Fla. 4th DCA 1997). Because the scope of the Contract's arbitration clause is broad enough to encompass the claims asserted by plaintiff, CCN's motion should be granted.

### 3. CCN has not waived its right to arbitrate.

CCN was just recently named as a party to this suit. CCN's record activities have thus far been limited to those necessary to avoid default and to preserve its rights. Specifically, CCN's only substantive filing is motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which must be filed before other pleadings and was filed contemporaneously with this motion. "[W]hen a contract requires arbitration of all claims between the parties, this provision is not waived by the

7

filing of a motion to set aside a judgment or a motion to dismiss." *Monsour v. Balk*, 705 So. 2d 968, 970 (Fla. 2nd DCA 1998). CCN did not initiate this litigation, has not conducted any discovery, and has taken no affirmative action inconsistent with its right to insist on the arbitration of this dispute. Because CCN's right to arbitration is not waived, its motion should be granted.

Since this dispute involves commerce and is subject to a written arbitration agreement between the parties, the Federal Arbitration Act requires that the Court grant CCN's motion and compel arbitration and stay this litigation. Alternatively, should the Court find that the Florida Arbitration Code applies, the same result is warranted. The Court should grant CCN's motion, stay this litigation as against CCN, and compel plaintiff to participate in arbitration.

DATED: November 13, 2000.

Respectfully submitted,

McGuireWoods LLP

By: _____
William W. Deem
Florida Bar No. 0512834
William E. Adams, Jr.
Texas Bar No. 00796104
50 North Laura Street, Suite 3300
Jacksonville, Florida 32205
(904) 798-3200
(904) 798-3207 Facsimile

COUNSEL FOR COMMUNITY
CARE NETWORK, INC. d/b/a CCN

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished by U.S. Mail on November 13, 2000, to the following:

Lawrence Kopelman, Esq.
Kopelman & Blankman
National Towers, Suite 1611
1 Financial Plaza
Fort Lauderdale, FL 33394
**Attorneys for Plaintiff**

Eric Lee, Esq.
Atlas Pearlman, P.A.
Marc J. Browner, D.C.
350 East Las Olas Blvd., Suite 1700
Fort Lauderdale, FL 33301
**Attorneys for Plaintiff**

Gold & Coulson
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
**Attorneys for Plaintiff**

Phillips & Garcia
13 Ventura Drive
North Dartmout, MA 02747
**Attorneys for Plaintiff**

David B. Shelton, Esq.
Rumberger, Kirk & Caldwell
Signature Plaza, Suite 300
201 South Orange Avenue
Orlando, FL 32801
**Attorneys for Allstate**

Peter J. Valeta, Esq.
Ross & Hardies
150 N. Michigan Avenue., Suite 2500
Chicago, IL 60601
**Attorneys for Allstate**

Attorney

\\COM\37244.1

9

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Civil Action No. 00-CIV-6061 FERGUSON/SNOW

| | |
|---|---|
| DR. PAUL ZIDEL and All Others Similarly Situated, | § § § |
| Plaintiffs, | § § |
| v. | § § |
| ALLSTATE INSURANCE COMPANY and COMMUNITY CARE NETWORK, INC. d/b/a CCN, | § § § § |
| Defendants. | § |

## DECLARATION OF DAVE COWAN

I, Dave Cowan, hereby declare and state as follows:

1. My name is Dave Cowan. I am over 18 years of age and am fully competent to make this declaration. I have personal knowledge of all facts stated herein and state that they are true and correct.

2. I am Sr. Vice President, Eastern Region for CCN Managed Care, Inc. ("CCN") and have been so employed for 11 years. CCN's principal place of business is located in San Diego, California. CCN has 40 offices across the country and employs approximately 1500 people nationwide.

3. CCN develops and markets health care service provider networks. CCN maintains and markets provider networks in 48 states and the District of Columbia. There are approximately 368,000 health care providers and facilities who are members of CCN's network. CCN forms its networks by recruiting health care service providers to join the networks. Members of CCN's networks agree to discount their usual and customary charges for health care services provided to

CCN' clients' insureds or beneficiaries. CCN markets the network to entities that provide health care benefits to large numbers of individuals, such as insurance companies, employers, third-party administrators, in the network's operating area. CCN provides its network members with a variety of services, including marketing and administrative support. CCN's network providers routinely conduct business with CCN's national headquarters in San Diego and CCN's regional offices.

4.  CCN's clients are typically large companies that operate in several states or -- as is the case with Allstate Insurance Company -- have nationwide operations. CCN's clients provide heath care benefits to approximately 32 million individuals across the country. As with its network providers, CCN provides its clients with a variety of administrative, marketing and other services. CCN's clients transact business with both CCN's national headquarters and our regional offices.

5.  A true and correct copy of the Community Care Network, Inc. Provider Agreement between CCN and Paul Zidel, M.D. is attached as Exhibit B to CCN's Motion to Compel Arbitration and Stay Litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 13, 2000.

*[signature]*

## COMMUNITY CARE NETWORK, INC. PROFESSIONAL CARE PROVIDER AGREEMENT

This PROFESSIONAL CARE PROVIDER AGREEMENT ("Agreement") is made and entered into by and between Community Care Network, Inc. d.b.a. CCN, and  Paul Zidel, M.D. , a Hand Surgeon  (hereinafter referred to as "Provider"):

### RECITALS

WHEREAS, CCN intends to execute contracts which Payor organizations which offer a preferred provider or exclusive provider health care coverage plan to Beneficiaries or Claimants; and

WHEREAS, Provider desires to make their services available to Beneficiaries or Claimants of Payors with whom CCN contracts; and

WHEREAS, CCN and Provider share the common goals of establishing a health care delivery system committed to the advancement of quality patient care, and developing innovative approaches to delivery of quality medical services in an efficient and cost-effective manner;

NOW THEREFORE, in consideration of the mutual covenants, terms and conditions herein contained, it is agreed by and between the parties hereto as follows:

### 1. DEFINITIONS

1.01   **"Beneficiary"** or **"Claimant"** is a person as defined in the applicable Insuring Agreement and who may be entitled to Health Care Services or Benefits.

1.02   **"CCN-Affiliated Health Plan"** is the health care plan offered, sponsored, administered or insured by Payor to provide coverage for Health Care Services or Benefits pursuant to the terms and conditions of this Agreement.

1.03   **"Claims Administrator"** is the Payor or the organization with the Payor has contracted to administer and process claims for the CCN-Affiliated Health Plan.

1.04   **"Health Care Services or Benefits"** shall be any and all covered medical services or benefits for such services rendered or provided to a Beneficiary or Claimant under an Insuring Agreement.

1.05   **"Insuring Agreement"** is the contract, certificate, policy, plan document, or any other legally enforceable instrument issued or sponsored by a Payor under which a Beneficiary or Claimant may be entitled to or receive Health Care Services or Benefits.

1.06   **"Payor"** is an employer, insurance carrier, claims administrator, health care service plan, trust, nonprofit facility service plan, any governmental unit or any other entity which has an obligation to provide Health Care Services or Benefits to a Beneficiary or Claimant.

1.07   **"Payor Agreement"** is an instrument between a Payor and CCN or its authorized representative which provides for CCN providers, including Provider pursuant to this Agreement, to render Health Care Services or Benefits at Reimbursement Amounts determined and established by CCN and such Payor.

1.08   **"Provider"** means the Provider who is duly licensed by the State of  Florida  to provide Health Care Services or Benefits.

**EXHIBIT B**

1.09  **"Reimbursement Amounts"** are the amounts payable to Provider for Health Care Services or Benefits rendered or provided to a Beneficiary or Claimant pursuant to Payor Agreements between CCN and the respective Payors. Such Reimbursement Amounts shall be established by CCN and Payors as specified in Exhibit A attached hereto and incorporated herein or as established by any state regulatory agency, whichever is less. Providers shall not individually or collectively with other providers determine or establish such Reimbursement Amounts.

1.10  **"Utilization Review"** means the function performed by organization(s) or entity(ies) selected by Payors to review and recommend to Payors whether Health Care Services or Benefits provided, or to be provided, are Medically Necessary.

## 2. HEALTH CARE SERVICES OR BENEFITS

2.01  Provider hereby agrees to provide Health Care Services or Benefits to Beneficiaries or Claimants as set forth in Insuring Agreements, at the Reimbursement Amounts determined and established by CCN through Payor Agreements with Payors, which Payor Agreements are incorporated herein by reference. Such Reimbursement Amounts are set forth in Exhibit A attached hereto and incorporated herein.

2.02  Provider agrees to accept the Reimbursement Amounts in Exhibit A as payment in full for Health Care Services or Benefits provided, to Beneficiaries or Claimants. Provider shall look solely to the Payor for payment of any and all compensation due for Health Care Services or Benefits and shall not bill or otherwise collect or attempt to collect from Beneficiaries or Claimants any charges except and unless required or permitted to do so by the applicable Insuring Agreement. The foregoing restriction shall not apply to deductibles, co-payments or co-insurance which may be collected by Provider in accordance with the provisions of the applicable Insuring Agreement, nor to services or benefits rendered to Beneficiaries or Claimants which are not covered by the applicable Insuring Agreement. Provider expressly covenants and agrees that CCN shall not be responsible or liable for, nor does CCN guarantee any payments to Provider for, any services rendered by Provider to Beneficiary or Claimant. 

2.03  Payor Agreements shall require Payors to make payments due from Payor to Provider within thirty (30) days of receipt by Payor of complete billings having sufficient information to reprice and/or adjudicate claim unless, within this thirty (30) day period, Provider is given written notice of Payor's inability to pay the claim because it is not complete, or there are issues related to coordination of benefits, subrogation, medical necessity or similar review. If a Payor fails to make timely payments, CCN shall review the applicable Payor Agreement and take appropriate action as specified in the CCN Administrative Manual for Participating Providers.

## 3. TERM; TERMINATION

3.01  Following the effective date set forth herein, this Agreement shall be continued for consecutive annual terms thereafter, unless otherwise terminated.

3.02  This Agreement may be terminated by either party upon ninety (90) days written notice to the other party.

3.03  Provider agrees that if the Agreement is terminated, Provider shall exercise best efforts to notify all Beneficiaries or Claimants who are under Provider's care or seek services from Provider that Provider is no longer a CCN preferred provider. For those Beneficiaries or Claimants under Provider's care who so desire, Provider shall transfer the Beneficiaries or Claimants to other appropriate CCN Provider(s).

3.04  Following termination of this Agreement, CCN shall notify Beneficiaries or Claimants of such termination through the regular periodic updating of CCN Provider listings for Beneficiaries or Claimants.

3.05  Notwithstanding Section 3.02, CCN may terminate or suspend this Agreement, at CCN's option, immediately upon the occurrence of any of the following events:

A) Provider fails to meet or fulfill CCN credentialing criteria;

B) Provider has made a material misrepresentation to CCN;

C) Provider's DEA certificate is revoked, restricted, or suspended;

D) Provider commits any act or engages in any conduct for which Provider's license may be revoked or suspended by the licensing authorities of the state in which the Provider is located (whether or not such licensing authorities revoke or suspend such license);

E) Whenever Provider is prohibited from participation in any federal or state healthcare entitlement program;

F) Provider's performance in providing Health Care Services or Benefits is unsatisfactory for reasons including but not limited to Provider disability and Provider inability to achieve CCN quality assurance standards. CCN shall make such determinations reasonably and in good faith. In such instances, Provider shall have the right to appeal CCN's determination;

G) Provider fails to maintain insurance coverage as required by CCN hereunder;

H) Provider fraudulently submits a claim for services; or

I) Provider ceases to maintain unrestricted active or courtesy admitting privileges at participating hospitals as may be required by CCN.

3.06 Provider shall notify CCN immediately upon the occurrence of any circumstances, including those set forth above, which would render this Agreement terminable by CCN.

3.07 Termination to this Agreement shall not affect any rights or obligations hereunder which shall have previously accrued, or shall thereafter arise with respect to any occurrence prior to termination, and such rights and obligations shall continue to be governed by the terms of this Agreement.

3.08 Either party to this Agreement has the right to terminate upon at least thirty (30) days prior written notice of such termination to the other party if the party to whom such notice is given materially breaches any provision of this Agreement. The party claiming the right to terminate shall set forth in the notice of termination the facts underlying its claims of breach and cite the relevant sections of this Agreement that are claimed to have been breached. Remedy of such breach to the satisfaction of the other party within thirty (30) days of the receipt of such notice shall revive this Agreement for the remaining portion of its then-current term, subject to any other rights of termination contained in this Agreement.

## 4. AUTHORIZATION TO CONTRACT

4.01 Provider authorizes CCN to act on its behalf to contract for the provision of Health Care Services or Benefits, at Reimbursement Amounts as set forth on Exhibit A.

4.02 Provider further authorizes CCN or other Claims Administrator, to coordinate and transmit billings to Payors for payment, on behalf of Provider.

## 5. COVENANTS OF PROVIDER

Provider covenants and agrees to the following:

5.01 To make available and render as appropriate Health Care Services or Benefits to Beneficiaries or Claimants which Provider is qualified by law to provide, which are medically necessary and consistent with the prevailing standards of quality of care generally accepted in their respective medical communities;

5.02 To comply with the requirements of all laws and regulations applicable to Provider's business and profession and ensure that all licenses, permits, authorizations and approvals required for that business and profession be maintained in effect for Provider as well as personnel employed or supervised by Provider, or acting on Provider's behalf;

5.03 To participate in and remain compliant with but not limited to CCN's and/or Payor's credentialing and recredentialing, medical management, utilization review quality assurance program, and which may be amended from time to time. Provider agrees to provide any and all reasonable requested data and records in support of such programs;

5.04 To obtain and maintain throughout the term of this Agreement medical staff membership and active or courtesy privileges for the performance of Provider's duties hereunder at participating hospitals, if necessary for the rendition of Health Care Services or Benefits to Beneficiaries or Claimants;

5.05 To provide prompt availability and accessibility of Health Care Services or Benefits to Beneficiaries or Claimants in the same manner and quality as to all other patients;

5.06 To maximize the utilization of services that are alternatives to inpatient hospitalization and innovative delivery modes that promote more cost-efficient health care, which are consistent with Provider's professional judgment;

5.07 Except in an emergency and/or when medical necessity dictates, to admit Beneficiaries or Claimants, in each instance in which hospitalization is required, to a hospital contracting with CCN unless a Beneficiary or Claimant specifically requests otherwise after having been notified by Provider that the requested hospital is not a CCN hospital;

5.08 To obtain from each Beneficiary or Claimant a written assignment of benefits, an authorization to provide Health Care Services or Benefits to Beneficiary or Claimant and release of Beneficiary's or Claimant's medical records. If a Beneficiary or Claimant refuses to provide such evidence of assignment, Provider may seek payment from the Beneficiary or Claimant directly with such payment limited to the Reimbursement Amounts defined in this Agreement;

5.09 To refer Beneficiaries or Claimants, in each instance in which referral is required, to other CCN Providers, unless Provider, in his/her professional judgment, determines that the Beneficiary's or Claimant's needs require otherwise and Beneficiary or Claimant so agrees after having been notified by Provider that the proposed provider is not a CCN Provider;

5.10 To permit CCN's representatives, including but not limited to utilization review committee members, and Payor representatives, upon reasonable advance written notice, to inspect specific aspects of the Health Care Services or Benefits provided to Beneficiaries or Claimants by Provider in response to concerns related to a Beneficiary or Claimant, or Payor;

5.11 To coordinate and transmit billings to Payors for payment, if required, in a format commonly used in the community and approved by CCN;

5.12 To provide Health Care Services or Benefits pursuant to all Payor Agreements executed between CCN and Payors;

5.13 To cooperate with Payors in expediting the return to work of ill or injured employed Beneficiaries or Claimants, consistent with Provider's professional judgment; and

5.14 To establish and maintain a reasonable and fair procedure for resolving Beneficiary or Claimant grievances.

...

## 6. COVENANTS OF CCN

*CCN covenants and agrees to the following:*

6.01  To accept sole responsibility for filing reports, obtaining approvals and complying with applicable laws and regulations of state, federal and other regulatory agencies having jurisdiction over CCN, provided however, that Provider agrees to cooperate by providing CCN with any information and assistance reasonably required in connection therewith;

6.02  To abide by a policy of non-interference with the professional relationship between any Beneficiary or Claimant and Provider;

6.03  To provide Provider periodically with an up-to-date list of Payors who have executed Payor Agreements with CCN specifying the respective Insuring Agreements pertaining thereto; and

6.04  To establish and maintain a reasonable and fair procedure for resolving Beneficiary or Claimant or Provider grievances.

## 7. RECORDS

7.01  CCN and Provider shall maintain records and procedures, as shall reasonably be required to accurately account for all Health Care Services and Benefits provided pursuant to this Agreement. Such records shall be kept in accordance with generally accepted accounting principles and recognized standards of professional practice.

7.02  CCN and Provider shall have the mutual right, upon request, to inspect and copy, upon reasonable advance notice and during normal business hours or at such other times as may be agreed upon, relevant accounting and administrative books and records, as they pertain to this Agreement. Such information shall be provided to each party hereto pursuant to procedures designed to protect the confidentiality of patient medical records in accordance with applicable legal requirements and recognized standards of professional practice.

7.03  CCN and Provider shall each maintain records with respect to any matters necessary for the proper administration of this Agreement.

7.04  Upon termination of this Agreement, Provider agrees to cooperate with Beneficiaries or Claimants and subsequent Providers with respect to the orderly and prompt transfer of medical records of Beneficiaries or Claimants. This Agreement does not preclude Provider from assessing reasonable charges for the expense of transferring such records if appropriate.

7.05  CCN shall have access to provider records for four (4) years from the date on which Provider supplied or provided Health Care Services or Benefits documented in such records, regardless of when the Agreement has been terminated.

## 8. INSURANCE REQUIREMENTS

8.01  **Professional Liability Insurance.** Provider shall carry professional liability insurance or an equivalent program of self-insurance in minimum amounts as specified and amended from time to time in the CCN Administrative Manual for Participating Providers. Provider shall notify CCN of cancellation or material modification of the coverage under such professional liability insurance at least thirty (30) days prior to any cancellation or modification. Certificates of insurance evidencing Provider's professional liability insurance coverage shall be provided to CCN no later than thirty (30) days following execution of this Agreement.

8.02  **General Liability Insurance.** Provider shall also maintain a policy or program of comprehensive general liability insurance, covering Provider's acts or failure to act, with minimum coverage as specified and amended from time to time in the CCN Administrative Manual for Participating Providers.

8.03  **Extended Insurance.** In the event Provider terminates this Agreement for any reason whatsoever, or if Provider changes insurance carriers, Provider agrees to maintain malpractice insurance coverage in the amount required under Section 8.01 of this Agreement for all Health Care Services or Benefits provided to Beneficiaries or Claimants until the statutes of limitation expire for the filing of malpractice claims pertaining to those Health Care Services or Benefits. Such insurance coverage may take the form of an "occurrence" policy covering claims made for services rendered no matter when the claims are filed, ongoing "claims made" insurance covering all claims filed during the period when the insurance is in force, or "tail insurance" coverage if the Provider cancels his/her "claims made" coverage.

### 9. ADMINISTRATIVE MANUAL

9.01  Provider agrees to comply with the requirements and procedures set forth in the Administrative Manual for Participating Providers ("Administrative Manual") which CCN shall provide for use by Provider, and the provisions of the Administrative Manual (as it may be amended by CCN in its sole discretion from time to time) are incorporated herein by this reference. CCN will distribute the Administrative Manual or any amendments to the Administrative Manual to Provider at least thirty (30) days prior to implementation or amendment. Notwithstanding Section 10.01 of this Agreement, any such amendment shall be effective thirty (30) days after such amendment has been distributed to Provider. The Administrative Manual shall cover administration of this Agreement, Utilization Review/Quality Assurance Program, minimum professional and general liability insurance requirements for Provider, billing and accounting requirements for services rendered hereunder, and other matters as deemed necessary by CCN.

### 10. AMENDMENT

10.01  This Agreement or any part hereof, may be amended only by CCN at any time during the term of this Agreement with thirty (30) days prior written notice to the provider by CCN. Provider shall have thirty (30) days after Provider receives written notice of such notice to provide CCN with written notice rejecting the amendment. Failure of Provider to provide such written notice to CCN shall constitute Provider's acceptance of said amendment. Except as provided above, any other amendment or modification of this Agreement shall be in writing and executed by each party hereto.

### 11. ASSIGNMENT

11.01  No assignment or delegation of the rights, duties or obligations hereunder shall be made without the mutual written consent of the parties hereto. Notwithstanding the foregoing, CCN retains the right to assign this Agreement or delegate its performance hereunder in whole or in part, without Provider's consent, to any entity with which CCN or its parent company or any of its subsidiaries is affiliated.

### 12. DISPUTE RESOLUTION AND ARBITRATION

12.01  CCN and Provider agree to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement.

12.02  The sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration as the parties do not want the delay or expense of lawsuits. The parties shall mutually agree to the appointment of an impartial arbitrator within 30 days of the written request for the appointment of an arbitrator by any party. The arbitrator must be familiar with the health care industry. In the event that mutual agreement cannot be obtained, then the American Arbitration Association shall appoint an arbitrator who is familiar with the health care industry if one can be located; and, if one cannot be located, then another arbitrator shall be appointed. All arbitration proceedings shall be conducted in accord with the rules of the American Arbitration Association and the award shall be binding, final and conclusive on the parties. Any party may enforce the award rendered by the arbitrator in any court of competent jurisdiction.

12.03   In the event of any dispute as to the interpretation of any provision in this Agreement, there shall not be any inference made for or against either party by reason of such party proposing or modifying any provision.

### 13. INDEPENDENT CONTRACTOR

13.01   Provider, in furnishing Health Care Services or Benefits pursuant to this Agreement, does so as an independent contractor. Neither Provider nor CCN shall be construed to be the agent, employee, or representative of the other, except as specified in this Agreement.

13.02   Nothing contained herein shall be construed to prevent Provider from independently operating or participating in any other agreement or in providing health care services independent of this Agreement.

### 14. WAIVER

14.01   The waiver by either party of any breach of any provision of this Agreement or warranty or representation herein set forth shall not be construed as a waiver of any subsequent breach of the same or any other provision.

### 15. SEVERABILITY

15.01   If any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions herein shall remain in full force and effect and shall in no way be affected, impaired, or invalidated as a result of such decision.

### 16. GOVERNING LAW

16.01   This Agreement shall be construed and enforced in accordance with the laws of the State of _Florida_ as amended from time to time subject to any applicable federal law.

### 17. INDEMNIFICATION

17.01   Each party to this Agreement agrees to indemnify and hold harmless the other party and its directors, officers, employees and agents against any and all liability and expense, including defense costs and legal fees as they are incurred in connection with claims or demands for damages of any nature whatsoever including, but not limited to, bodily injury, death, personal injury or property damage arising from or caused by the indemnifying party's acts or failure to act or the acts or failure to act of its directors, officers, employees or agents.

### 18. NOTICES

18.01   Any notice required or permitted to be given pursuant to this Agreement shall be in writing and shall either be personally delivered or sent by registered or certified mail with the United States Postal Service, return receipt requested, postage prepaid, addressed to such party at its respective last known address.

### 19. CONFIDENTIALITY

19.01   The parties hereto shall maintain the confidentiality of any and all medical, financial and administrative records which shall be in their possession and control, and such information shall only be released or disseminated pursuant to the valid written authorization of the other party, Beneficiary or Claimant or as and when permitted under applicable law.

19.02   CCN and Provider shall hold any and all proprietary and confidential information in the strictest confidence and shall not voluntarily or involuntarily, sell, transfer, publish, display or otherwise make available to others any portion of the other party's proprietary and confidential information. Provider acknowledges that this Agreement, Amendments, and Exhibits hereto are deemed proprietary and confidential. Provider agrees that the terms of 19.02 shall survive this Agreement for a period of two (2) years.

IN WITNESS THEREOF, the parties hereto have executed this Agreement by their duly authorized officers, and it shall be effective as of the 1st day of __August__, 1998.

**PROVIDER**                                                **CCN**

**FEDERAL TAX IDENTIFICATION #:**

65-0435831

_____                         _____
Signature                                                   Signature

Paul Zidel, M.D.                                            Gavin Meshad
Please print name                                           Please print Vice President, Southeast Region

M.D.                                                        _____
Title                                                       Title

12/13/98                                                    8-1-98
Date                                                        Date

**LAW OFFICES OF**
**KOPELMAN & BLANKMAN**
A PROFESSIONAL ASSOCIATION

NATIONSBANK TOWER, SUITE 1611
ONE FINANCIAL PLAZA
FORT LAUDERDALE, FLORIDA 33394

LAWRENCE M. KOPELMAN
DOUGLAS A. BLANKMAN

TELEPHONE
(954)462-6855
FAX (954)462-6899

May 3, 2000

Community Care Network/CCN
1507 N. Falkenburg Road
Tampa, Florida 33619

RE: Park Place Therapeutic Center and Drs. Martin May, Alan Lazar, Martin Hale, Joel Rush, Paul Zidel, Richard Linn, Richard Berkowitz, Douglas Stringham, Andrew Ellowitz, Alan Novick, Debra Weiss and Neil Schechter

To Whom It May Concern:

Pursuant to Section 11.01 of the Community Care Network, Inc., Professional Care Provider Agreement entered into with Park Place Therapeutic Center on June 5, 1998 and further, pursuant to Section 12.02 of the Community Care Network, Inc., Professional Care Provider Agreement entered into with the above named medical providers, this letter shall serve as a written request for arbitration to resolve the disputes and demands set forth in my letter dated April 5, 2000.

Specifically, it is hereby alleged that Community Care Network has breached the terms and conditions of its agreements with the above referenced claimants by failing to execute contracts with Payor Organizations which offer Preferred Provider or Exclusive Provider Healthcare Coverage Plans to its beneficiaries and/or claimants.

Pursuant to the aforementioned agreements, we have thirty (30) days from the date of this request to mutually agree to the appointment of an impartial arbitrator. Kindly contact me upon receipt of this letter so that we may discuss the appointment of said arbitrator.

Very truly yours,

Lawrence M. Kopelman

LMK/cjl
CM-RRR

cc: Matthew S. Nelles, Esquire
Via: Fax & U.S. Mail

EXHIBIT C