IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-CIV-6061-FERGUSON/SNOW

DR. PAUL ZIDEL, and all others similarly situated,

Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, and COMMUNITY CARE NETWORK, INC., d/b/a CCN,

Defendants.

00 NOV 20 AM 10:08
CLERK U.S. DIST. CT.
S.D. OF FLA.-FTL

**DEFENDANT, ALLSTATE INSURANCE COMPANY'S**
**MOTION TO DISMISS COUNTS II, III, IV, V, VI, and VII**

Defendant, Allstate Insurance Company ("Allstate"), hereby moves this honorable Court for entry of an Order pursuant to Rules 8, 9 and 12(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 8, 9, and 12, dismissing Counts II, III, IV, V, VI, and VII of Plaintiffs' Amended Class Action Complaint ("Complaint")[1] and states as follows:

**Introduction**

1. This case is a simple disagreement over the amount of payments made by Allstate Insurance Company ("Allstate") for medical services rendered by plaintiff to personal injury protection ("PIP") claimants.[2]

[1] Count I of the Complaint is not directed to and does not purport to allege claims against Allstate and thus is not addressed in this Motion to Dismiss.

[2] Plaintiff is one of several doctors who are engaged together in the practice of medicine under the names "Park Place Therapeutic Center" and "Park Place Orthopaedics & Rehabilitation" (collectively the "Park Place Doctors"). The Park Place Doctors previously brought an action against Allstate to recover PIP payments which they alleged were improperly discounted. The United States District Court for the Southern District of Florida subsequently granted Allstate's Motion to dismiss, concluding that Florida Statute §627.736(10) does not allow a private cause of action to be asserted against Allstate.

88

2. Although nothing was hidden from plaintiff or misrepresented when Allstate paid his bills, he has asserted fraud, RICO and antitrust claims based solely on prejorative, conclusory assertions. However, this is a simple commercial dispute regarding contractual rights.

3. Notwithstanding plaintiff's protests, there is nothing inherently fraudulent or wrongful about agreements by which medical care providers agree to accept negotiated, reduced rates for their services in certain circumstances, even in the absence of "patient steering" requirements. First Health Group Corp. v. United Payors & United Providers, Inc., 95 F. Supp. 2d 845, 846-47, 849-50 (N.D. Ill. 2000) (a "PPO does not have a fixed definition which includes a steering requirement").[3]

4. In First Health, the Court recognized:

> For the past five years or so there has been an ongoing struggle between PPOs providing steering or directing ("directed PPOs"), and organizations providing services similar or somewhat similar to those of defendant. Those who contend that a non-directed PPO is not a PPO refer to such organizations as "silent PPOs," a pejorative term.

95 F. Supp. 2d at 849.

---

[3] "Steering" refers to a contractual term present in some, but not all, PPO arrangements. As a report to Congress summarized: "A PPO is a group of providers who agree to provide medical services to the subscribers of an insurance carrier at a lesser cost than would have been otherwise charged .... In recent years, a new variation of the PPO concept appeared. This variation is known as a 'non-directed' PPO as distinguished from the traditional PPO which has become known as a 'directed' PPO. The terms 'directed' and 'non-directed' are references to the steerage or lack of steerage of patients. As explained above, in a traditional directed PPO arrangement, subscribers are steered to the PPO to take advantage of the lower costs. In a non-directed PPO, even though the medical providers have agreed to charge a lower fee, the contracts the PPOs enter into do not require that the carrier's subscribers be steered to them. In some non-directed PPOs, the [provider] may benefit from this arrangement as a result of prompt payments or advances. In other non-directed PPO arrangements; the benefits to the provider may be less clear. In the case of both the directed and non-directed PPOs the terms of the arrangement are committed to a contract between the parties... ." First Health, 95 F. Supp. at 850.

5. Although plaintiff's Amended Complaint wields the accusation of "silent PPO" as if it were a self-proving indictment against Allstate and CCN, his presumption of defendants' "guile" is unwarranted and cannot support the claims he asserts:

> Concurrent with the evolution of non-directed PPOs, a new term, "silent PPO" became commonplace. The term "silent PPO" means different things to different people. Initially, the term "silent PPO" was merely a reference to a non-directed PPO where the contract was "silent" with regard to steerage of patients to the provider's facilities. However, in more recent times, the term has acquired a more restrictive meaning. As a result, to some people, "silent PPO describes a scheme used to obtain illegal discounts for payors who are not entitled to them. In discussions with interested parties and in industry literature, the terms "fraud," "illicit," "manipulation," "falsely," "unethical" and "scheme" are used to describe silent PPOs. Consequently, the term "silent PPO" has come to mean an unethical and/or illegal practice, and the term has been loosely extended to encompass non-directed PPOs. ...
>
> Our review has disclosed that substantial savings have been and can be achieved by both directed and non-directed PPOs. We further have found that these savings can be achieved in an ethical manner, in that we found no evidence ... that "silent PPOs" were a factor or that provider discounts were otherwise taken on the basis of any schemes to victimize medical providers. ... We conclude that substantial sums can be saved through directed and non-directed PPO arrangements. (Office of the Inspector General, Office of Personnel Management, Rep. No. 99-00-97-054, Report on the Use of Silent PPOs in the Federal Employees Health Benefits Program 20-23)

Id. at 850.[4]

6. Although plaintiff would ask this Court to believe otherwise, the contractual rights which apply to plaintiff and Allstate are the only things at issue here, nothing more. Cf.

---

[4] A Senate analysis similarly concluded: "The incentives may include an agreement to steer patients to the provider, in the case of so-called 'directed PPOs,' or they may include financial incentives such as prepayment or prompt payment in the case of so-called 'non-directed PPOs.' Both directed and non-directed PPOs provide legitimate and valuable benefits to health care providers, carriers and patients. (Senate Committee on Governmental Affairs, S.Rep.No. 257, 105th Cong, Sess. 3 (1998))." Id. at 851.

HCA Health Services of Georgia v. Employers Health Ins. Co., 22 F. Supp. 2d 1390 (N.D. Ga. 1998)(determining whether discounts applied were appropriate based on the terms of the applicable contract).[5]

**Factual Background**

7. Plaintiff Paul Zidel, M.D. ("Dr. Zidel") is an orthopedic surgeon practicing in the State of Florida. (Complaint, ¶1.) Dr. Zidel does not dispute that he (and Park Place) had agreed with Community Care Network, Inc. ("CCN") to accept certain negotiated rates for his services when rendered to individuals insured by certain insurance companies. (Id., ¶¶3,8.)

8. Allstate Florida automobile insurance policies include personal injury protection ("PIP") coverage pursuant to Florida law. Under PIP coverage, Allstate agrees to pay 80% of reasonable charges for necessary medical treatment provided to a covered insured who suffers injury in an automobile accident. (Id., ¶¶5-6.) Although Fla. Stat. §627.736(10) authorizes insurers to offer PIP coverage through a "preferred provider" network, Allstate does not sell such preferred provider PIP policies in Florida. (Id., ¶¶7, 9.) Allstate's insureds have an "absolute right and freedom" to choose their medical service providers. (Id., ¶5.)

9. Allstate has properly entered into agreements pursuant to which certain health care providers have agree upon the "reasonable" amounts which they would be paid for various medical services. Where they apply, such agreements are referenced on the "Explanation of Benefits" ("EOB") form which accompanies Allstate's payment of a provider's bill. (See id., ¶¶24-25, 55(d)-(f)(alleging Exhibit 3 to the Complaint represents such a form).)

10. Plaintiff asserts that he has provided medical care to certain Allstate insureds who were entitled to PIP benefits from Allstate. He admits that the payments he later received from

[5] As one commentator summarized: "While many providers have expressed outrage against what they have variously characterized as unethical to fraudulent behavior on the part of network organizations, the reality is that all too often the provider has signed an agreement without the proper due diligence as to the value to be received." Dickerson, Preferred Provider Organizations vs. Non-Directed Networks: A Provider Dilemma, Federation of American Health Systems (1998).

Allstate for such bills were computed based upon the negotiated rate agreement he had with CCN. (Id., ¶¶12, 24.)

11. Plaintiff was fully aware of the amounts that he had billed for services he provided to Allstate insureds. Thus, by comparing the amounts of the checks he received from Allstate to his own books and records, as well as from the face of the EOBs, therefore, plaintiff knew or should have known whether Allstate had paid the amounts reflected on his original invoices or some discounted rate.

**I. Count II Fails To Allege A Claim For Unjust Enrichment**

12. Dr. Zidel's attempt to assert a claim for unjust enrichment fails because he has not alleged any facts which remotely indicate that he conferred a benefit upon Allstate, only that he provided services to Allstate's insureds. Furthermore, any such unjust enrichment action is barred, as a matter of law, by the economic loss doctrine. In addition, Dr. Zidel cannot allege a viable unjust enrichment claim because he has an adequate remedy at law.

**II. Count III Fails To Adequately Allege A Breach Of Contract Claim**

13. Allstate is contractually and statutorily obligated only to pay reasonable amounts for covered services rendered by providers to persons covered under Allstate insurance policies. Plaintiff fails to allege that the rates he was paid by Allstate in connection with services rendered to Allstate's insureds were not reasonable. Consequently, plaintiff has failed to allege a breach of contract claim against Allstate and Count III must be dismissed.

**III. Count IV Fails To Properly Allege A RICO Claim And Must Be Dismissed**

14. Count IV of the Complaint, styled "RICO," is, as a matter of law, flawed and should be dismissed in accordance with Federal Rules 8, 9, and 12. See Delfrate v. Letts, 1996 WL 420880 (M.D. Fla. Mar. 25, 1996)(courts should impose stringent RICO pleading requirements "due to [RICO's] potential for abuse by civil litigants"); Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir. 1988), cert. denied, 488 U.S. 852 (1988)(one of the purposes of Rule 9(b)'s heightened pleading requirement is to derail "strike suits" in which the threat of RICO liability is used in business or personal disputes unrelated to racketeering).

15. In all events, the alleged RICO claims, which sound in mail and wire fraud,[6] are inappropriate for class action treatment because they require individualized showings of misrepresentation, reliance, injury and damages. E.g., Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir.1996). See Gloria v. Allstate Country Mut. Ins. Co., Civ. Action No. SA-99-CA-676-PM, slip op. (W.D. Tex., Sept. 29, 2000)(holding in a case challenging PIP payment reductions, inter alia, that RICO actions are "inappropriate" for class action treatment)(copy attached).

16. Count IV fails to meet the requirements of Rule 8. Rule 8(a)(2) requires that a complaint contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, Rule 8(e)(1) states that each "averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). In Count IV, Dr. Zidel has improperly intertwined a prolix, vague, internally contradictory and incomprehensible claim which purports to be based on several sections of the RICO statutes, including 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). Plaintiff's abstruse pleading and commingling of theories, in and of themselves, thus require dismissal of Count IV.

17. Additionally, Count IV is not pleaded with particularity and thus fails to meet the requirements of Fed. R. Civ. P. 9(b). Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380 (11th Cir. 1997) (Rule 9 is thus satisfied only where the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud'").

18. Count IV also fails, as a matter of law, to state a claim for which relief can be granted and thus must be dismissed under Rule 12(b)(6).

---

[6] Although the Complaint contains oblique references to the Travel Act and to extortion (¶¶ 67, 79, 77) there are absolutely no facts pleaded which remotely support any such claims.

a. Plaintiff's attempt to plead a claim under 18 U.S.C. § 1962(a) fails because he has not and cannot establish that he was harmed as a result of investment activity by Allstate. See, e.g., Viacom, 20 F.3d at 779 n. 6.

b. Plaintiff's attempt to plead a claim under § 1962(c) fails as a matter of law because he has not set forth any allegations regarding a structure, continuity, or common course of conduct of any alleged improper associations and thus fails to allege a necessary enterprise. See Bill Buck Chevrolet, Inc. v. GTE Florida, 54 F. Supp. 2d 1127 (M..D. Fla. 1999).

c. Plaintiff, likewise, has not alleged sufficiently any predicate racketeering offenses, let alone a pattern of racketeering activities. As a result, plaintiff's attempt to pursue a §1962(c) claim also must be dismissed. See, e.g., Bill Buck Chevrolet, 54 F.Supp.2d at 1135.

d. Plaintiff also has failed to properly allege a §1962(d) claim because he has not properly pled substantive RICO violation and, thus, plaintiff has not and cannot properly plead RICO conspiracy. See Callanan v. United States, 881 F.2d 229, 235 (6th Cir. 1989).

## IV. Count V Fails To Allege An Antitrust Claim And Must Be Dismissed

19. Plaintiff's purported antitrust claims are barred by the McCarran-Ferguson Act. 5 U.S.C. § 1012. McCarran-Ferguson was enacted to preserve the states' power to regulate the business and expressly exempts insurer activities from the antitrust laws under circumstances such as are presented here. See American Hospital & Life Ins. Co. v. Federal Trade Comm'n, 243 F.2d 719, 723 (5th Cir. 1957), aff'd sub nom, FTC v. National Cas. Co., 357 U.S. 560 (1958); Uniforce Temp. Personnel, Inc. v. Nat'l Council on Compensation Ins., 87 F.3d 1296, 1299 (11th Cir. 1996).

20. Count V also fails to meet the requirements of Rule 8 because it commingles multiple purported antitrust theories and fails to a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

21. Moreover, plaintiff points to alleged "price discrimination" as the basis for his purported anti-trust claims. However, 15 U.S.C. § 13, which applies only to price discrimination concerning "commodities" does not cover insurance. Uniforce Temporary Personnel, Inc. v. National Council on Compensation Ins., Inc., 892 F. Supp. 1503, 1513 n.12 (S.D. Fla. 1995),

aff'd 87 F.3d 1296 (11th Cir. 1996). As a result, to the extent plaintiff's claim in Count V is based on §13 of the Clayton Act, it must be dismissed.

22. Plaintiff also fails to allege a violation of Section 1 of the Sherman Act because:

a. Plaintiff does not allege, as is required on the face of Section 1 of the statute, a contract, combination or conspiracy in restraint of trade of commerce. Six Twenty-nine Productions, Inc. v. Rollins Telecasting, Inc., 365 F.2d 478, 484 (5th Cir. 1966 (Fla)) ("The essential element in a Section 1 violation, not found in Section 2 cases, is the existence of some kind of contract, combination or conspiracy.").

b. Plaintiff's allegations speak only to the actions of Allstate, which cannot be in a contract, combination or conspiracy with itself. Id. ("It is fundamental that at least two independent business entities are required for violation of Section 1 ...").

c. Plaintiff makes no effort to plead the manner in which Allstate's alleged actions actually restrained trade, settling instead for the inadequate conclusory statement in Paragraph 101 that "said price discrimination practices constitute a restraint upon commerce and trade." See Gregoris Motors v. Nissan Motor Corp. in USA, 630 F. Supp. 902, 908 (E.D.N.Y. 1986) ("The allegations of anti-competitive effect as to plaintiff individually and to any market as a whole are no more than conclusory. As 'the absence of a sufficient allegation of anticompetitive effects is fatal to the existence of the cause of action.' Havoco of American, Ltd. v. Shell Oil Co., 626 F.2d 549, 554 (7th Cir. 1980), the first cause of action for violation of §1 of the Sherman Act must be dismissed.").

23. As a result, plaintiff has failed to plead a violation of Section 1 and all claims contained in Count V which are based upon Section 1 of the Sherman Act must be dismissed.

24. Plaintiff also fails to allege a violation of Section 2 of the Sherman Act. Section 2 of the Sherman Act only applies to monopolization. Plaintiff does not even use the word "monopoly" in his Complaint, let alone allege a specific interest on the part of Allstate to attempt or conspire to monopolize anything. See Double D Spotting Service, Inc. v. Supervalu, Inc., 136 F.3d 554, 560 (8th Cir.1998) ("Section 2 of the Sherman Act requires a plaintiff to **plead** and prove that the defendant (1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining it as a result of a superior product, business acumen, or historical accident." (internal citations omitted; emphasis added)). Thus,

plaintiff's failure to plead the existence of a "monopoly" requires all claims based upon Section 2 of the Sherman Act be dismissed.

**V. Count VI Fails To State A Viable Claim And Must Be Dismissed**

25. Count VI, styled "Declaratory Judgment," in effect asks this Court to declare that Allstate's conduct, as alleged in connection with the various and sundry theories asserted elsewhere in the Complaint, is "wrong." That claim is, at best, redundant, provides no basis for independent declaratory relief against Allstate, and must be dismissed. See Fed.R.Civ.P. 12(f).

**VI. Count VII Fails To Allege Any Cognizable Violation Of The Florida PIP Statute**

26. Dr. Zidel cannot plead a viable claim under Florida Statute §627.736(10). In a prior action to which Dr. Zidel was a party, case number 00-CIV-6269-DIMITROULEAS, the United States District Court for the Southern District of Florida dismissed claims brought against Allstate pursuant to Subsection (10) because the statute does not allow for a private cause of action against Allstate. That decision not only demonstrates the proper treatment for the claim, but also is conclusively binding on Dr. Zidel. E.g., Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990)(the doctrine of res judicata precludes a subsequent suit on claims which were raised, or which could have been raised, in a prior suit). Dr. Zidel's attempt to reassert claims under Subsection 10 is thus barred by res judicata and Count VII must be dismissed.

WHEREFORE, for the foregoing reasons, Allstate Insurance Company respectfully requests that this Court enter an Order dismissing Counts II, III, IV, V, VI, and VII of the Amended Class Action Complaint, with prejudice.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to counsel on the attached service list this 17TH day of November, 2000.

PETER J. VALETA
Florida Bar No. 327557
ROSS & HARDIES
150 North Michigan Ave., Suite 2500
Chicago, Illinois 60601
Telephone: (312) 750-3619
Telecopier: (312) 750-8600
Attorneys for Allstate Insurance Company

DAVID B. SHELTON
Florida Bar No. 0710539
Rumberger, Kirk & Caldwell
P.O. Box 1873
Orlando, Florida 32802
Telephone: (407) 839-4511
Telecopier: (407) 841-2133
Attorneys for Allstate Insurance Company

SERVICE LIST

Douglas A. Blankman, Esquire
Kopelman & Blankman, P.A.
One Financial Plaza, Suite 1611
Ft. Lauderdale, FL 33394
Attorney for Plaintiff

Arthur Gold, Esquire
Gold, Rosenfeld & Coulson
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
Attorney for Plaintiff

Carlin Phillips, Esquire
Gogel, Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA 02747
Attorney for Plaintiff

Eric Lee
Atlas Pearlman, P.A.
350 East Las Olas Blvd., Suite 1700
Fort Lauderdale, FL 33301
Attorney for Plaintiff

William W. Deem, Esquire
McGuire, Woods, Battle & Boothe, LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Attorney for Defendant, CCN

FILED
SEP 2 9 2000
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ____________ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

PETER GLORIA and DAVID PEREZ, §
§
Plaintiffs, §
vs. § CIVIL ACTION NO. SA-99-CA-676-PM
§
ALLSTATE COUNTY MUTUAL §
INSURANCE COMPANY and §
ALLSTATE PROPERTY AND §
CASUALTY COMPANY, §
§
Defendants. §

**ORDER**

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and Appendix C, Rule 1(I) of the Local Rules for the Assignment of Duties to United States Magistrates, in the Western District of Texas, the following order is entered.

**I. JURISDICTION**

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

**II. PROCEDURAL HISTORY**

Plaintiffs Peter Gloria and David Perez commenced this class action in the 57th District Court of Bexar County, Texas against defendant Allstate County Mutual Insurance Company on June 4, 1999, alleging violations under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., the Texas Insurance Code art. 21.21, and the Texas

Deceptive Practices Act ("DTPA") as well as breach of contract and fraud.[1] Because of the RICO claim, defendant removed the case to the District Court on June 25, 1999.[2] Defendant subsequently moved to dismiss the case because plaintiffs lacked standing.[3] Alternatively, defendant moved to transfer the case, under the first-to-file doctrine, to the Circuit Court of Cook County, Illinois, County Department, Chancery Division, where two substantially similar consolidated cases had previously been filed, or to stay the proceeding pending the outcome of a motion for nationwide class certification in the Illinois cases.[4] The parties then filed and the District Court granted a joint motion to stay proceedings until the Illinois cases were resolved.[5] On March 16, 2000, the District Court denied as moot defendant's motion to dismiss or in the alternative to transfer or stay.[6] Upon notice that the proceedings in Illinois had been resolved,[7] the District Court on April 13, 2000, ordered the stay lifted.[8] Defendant then moved for reconsideration of its motion to dismiss and the District Court Clerk received defendant's motion

---

[1] Docket no. 1, attachment (Original Complaint).

[2] Docket no. 1.

[3] Docket no. 2.

[4] Id.

[5] Docket nos. 4 and 6.

[6] Docket no. 7.

[7] See docket no. 10, exhibit 1. On March 21, 2000, the Illinois state court denied the motion for nationwide class certification in the consolidated cases, certifying instead only an Illinois class of Allstate insureds alleging essentially the same complaints as are at issue in this case.

[8] Docket no. 9.

to dismiss and/or strike the class allegations.[9] Plaintiffs responded to these motions and defendant replied.[10]

On May 8, 2000, plaintiffs filed their motion to certify a class action and the District Court Clerk received plaintiffs' first amended complaint which added factual allegations in support of their claims and which abandoned the fraud claim.[11] On May 16, 2000, defendant moved to stay the class certification proceedings pending a ruling on the motions to dismiss.[12] The parties stipulated that defendant's motions to dismiss the original complaint would apply to the first amended complaint.[13]

Plaintiffs' second amended complaint was filed on July 7, 2000,[14] and proceedings on defendant's pending motions to dismiss the original and first amended complaints were ordered stayed pending the filing of a motion to dismiss plaintiffs' second amended complaint.[15] The second amended complaint added defendant Allstate Property and Casualty Company[16] and

---

[9] Docket nos. 10 and 13, attachment. Defendant's motion to dismiss or to strike the class action was ordered filed on September 9, 2000.

[10] Docket nos. 14, 15, and 19.

[11] Docket nos. 16 and 15, attachment, respectively. Plaintiffs' first amended complaint was ordered filed on September 5, 2000.

[12] Docket no. 20.

[13] Docket no. 24.

[14] Docket no. 29.

[15] Docket no. 28.

[16] The defendants will be referred to collectively as "Allstate."

antitrust claims pursuant to 15 U.S.C. §§ 1 and 13.[17] On August 2, 2000, Allstate moved to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)[18] and 12(b)(6)[19] and to strike or dismiss the class action allegations pursuant to 12(f).[20] Plaintiffs have responded to these motions[21] and Allstate has replied.[22] On September 5, 2000, the Court entered an order which provided that further consideration of plaintiffs' motion to certify a class would not be undertaken until after resolution of the pending motions to dismiss.[23] On September 12, 2000, the parties filed a stipulation stating that Allstate's motions to dismiss the second amended complaint filed on August 2, 2000, are the motions the Court should address and that all motions to dismiss filed prior to August 2 should be considered moot.[24] The stipulation further provides that the, "Parties agree the Sherman antitrust violations alleged are limited to violations of Section 1" and "that the Robinson-Patman Act does not apply."[25]

---

[17] Docket no. 29.

[18] Docket no. 34.

[19] Docket no. 32.

[20] Docket no. 36.

[21] These responses and one joint appendix originally were tendered to the Court with a joint motion to seal. On September 22, 2000, the Court entered an order, docket no. 54, which sealed portions of the responses and appendix and required plaintiffs to file redacted copied for the public record "within seven (7) calendar days" of the date of the Order. The Court has reviewed the unredacted copies -- tendered in the sealed record -- in preparing this Order.

[22] Docket nos. 61, 62, 63.

[23] Docket no. 43.

[24] Docket no. 50.

[25] Id. The Sherman antitrust violation alleged is pursuant to 15 U.S.C. § 1. The abandoned claim was an alleged violation of 15 U.S.C. § 13.

In sum, the pleadings for the Court's consideration are plaintiffs' second amended complaint,[26] Allstate's motions to dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(f),[27] and plaintiffs' responses.[28] The claims remaining at issue are those alleging violations of RICO; the Sherman antitrust Act, 15 U.S.C. §1; the Texas Insurance Code art. 21.21; and the DTPA; as well as the claim for breach of contract.

## III. FACTUAL BACKGROUND

As will be discussed more completely in Section V, when considering motions to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6), the Court is required to construe plaintiffs' factual allegations as true. Rule 12(b)(1) and (6) motions admit all well-pleaded facts in the complaint which it challenges.[29] Thus, in the spirit of Rules 12(b)(1) and (6), the Court sets forth the following narration of facts which are taken as true or admitted. The policy at issue provides:

Plaintiffs allege that at times during 1997 and 1998, they were provided personal injury protection ("PIP") and medical payments ("Medpay") coverage under their Texas personal automobile insurance policies issued by Allstate.[30] Allegedly, the PIP and Medpay coverage entitled plaintiffs to payment of the full amount of their medical expenses.[31] However, plaintiffs

---

[26] Docket no. 29.

[27] Docket nos. 34, 32, and 36, respectively.

[28] See note 21 above.

[29] Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995); Warfield v. Fidelity & Deposit Co., 904 F.2d 322, 326 (5th Cir. 1990).

[30] Docket no. 29 at 2.

[31] Id.

also allege that the PIP and Medpay provisions provide that the insureds would be paid their "reasonable expenses" incurred for "necessary medical treatment."[32] The policies at issue provide in relevant part that:

> PART BI-MEDICAL PAYMENTS COVERAGE
>
> INSURING AGREEMENT
>
> A. We will pay reasonable expenses incurred for necessary medical and funeral services because of bodily injury:
>
> 1. Caused by accident and
> 2. Sustained by a covered person.
>
> PART B2-PERSONAL INJURY PROTECTION COVERAGE
>
> INSURING AGREEMENT
>
> A. We will pay Personal Injury Protection benefits because of bodily injury:
>
> 1. *resulting from a motor vehicle accident and*
> 2. sustained by a covered person.
>
> Our payment will only be for losses or expenses incurred within three years from the date of the accident.
>
> B. Personal Injury Protection benefits consist of:
>
> 1. Reasonable expenses incurred for necessary medical and funeral services."[33]

---

[32] Id.

[33] Docket no. 29, exhibit, Texas Personal Auto Policy at 314, 316. The Court notes that unless rejected by the insured, the PIP coverage set forth above is required by the Texas Insurance Code which provides:

> "Personal injury protection" consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of the named insured's motor vehicle including a guest occupant, up to an amount of $2,500 for each such person for payment of all reasonable

The policy also provides that for each of these coverages the "liability shown in the Declarations for this coverage is our maximum limit of liability."[34]

Plaintiffs allege that at various times during 1997 and 1998, they have submitted medical expenses to Allstate for payment under their PIP coverage.[35] According to plaintiffs' allegations, Allstate wrongfully reduced the medical bills to an amount lower than 100% of the expenses actually charged.[36] Allegedly, Allstate accomplished this reduction by using a computerized cost-containment program which included an inaccurate fee schedule to reduce the medical expenses on a systematic basis.[37] Plaintiffs allege that this conduct was designed to reduce the insureds' PIP and Medpay benefits.[38] Allstate allegedly uses an internal fee schedule code (A1 or other similar code) "which is a designation that a medical charge exceeds the reasonable amount for the procedure in the region where the service was provided."[39]

Plaintiffs further allege that Allstate through the use of a computer data base developed by National Biosystems -- also known as ADP Integrated Medical Solutions, Inc. or IMS -- systematically reduces medical charges to "the 85th percentile" without considering the condition

---

expenses arising from the accident and incurred within three years from the date thereof[.] TEX. INS. CODE ANN. art. 5.06-3(b) (Vernon 1981).

[34] Id. at 315, 317. The Declarations showing liability limits are not part of the record.

[35] Docket no. 29 at 2.

[36] Id.

[37] Docket no. 29 at 2.

[38] Id.

[39] Id. at 2-3.

or age or the patient or the special certifications or qualifications of the provider.[40] Plaintiffs contend that Allstate has made such reductions without utilizing any relevant or legitimate data with which to compare medical charges in the region where the services were provided and that Allstate does not consider the usual and customary fees of similar medical providers in the geographic area.[41] Plaintiffs allege Allstate has not disclosed that it relies on a third party service for an internal medical fee schedule by which to evaluate the reasonableness of medical charges.[42]

Allstate allegedly refuses to explain the rationale for the reductions and will not disclose its criteria for determining the reductions.[43] According to plaintiffs' allegations, Allstate's position that a charge is not reasonable or customary may be stated in an explanation of benefits or in a letter sent to the insured.[44] One such letter written to plaintiffs' counsel regarding a claim from plaintiff Peter Gloria provides:

> I recently received a medical bill from CRAIG HONER for treatment your client received following the auto accident that occurred on the date shown above. Based on our review of the information submitted, I have sent a check to the health care provider for an amount less than the billed charges along with an Explanation of Benefits. Enclosed is a copy for your records.[45]
>
> Your client's policy provides benefits for reasonable expenses for necessary

[40] Id. at 3.

[41] Id.

[42] Id.

[43] Id. at 4.

[44] Docket no. 29 at 4.

[45] The Explanation of Benefits is not part of the record.

> *medical and funeral services because of bodily injury caused by an auto accident.* We review all bills to ensure that the treatment and charges meet these criteria. Based on our review of information available to us, not all of the treatment or charges appear to meet these requirements.
>
> We are committed to the protection of our customers' interests. The provider may seek further review with us should there be disagreement with out evaluation. In the event that we are unable to reach an agreement with the provider, we intend to defend and, if necessary, indemnify our customer up to policy limits against actions that health care providers may take. We will also consider any other appropriate measures to protect our customer should the health care provider decide to pursue collection efforts for the unpaid portion of the bill that is causally related to the accident.[46]

Plaintiffs allege that this letter is an example of Allstate's intentionally vague and deceptive representations and that insureds are deceived into believing that Allstate is complying with the Texas Personal Automobile Policy and the Texas Department of Insurance when it is not.[47]

Plaintiffs contend they believe, to the best of their knowledge as lay persons, that the treatment by their providers and the resulting charges were necessary and reasonable.[48] Plaintiffs further contend that they agreed to compensate their doctors for all medical treatment rendered to them arising out of their accidents and that they are subject to liability for the unpaid balance of their bills.[49] According to plaintiffs' allegations, Allstate's practice of reducing medical charges "*interferes and conflicts with the physician-patient relationship and places the patient in a tug-of-*war between the insurance company and the medical provider."[50] Allegedly, Allstate's practice

---

[46] Docket no. 29, exhibit letter from Veronica McCullough.

[47] Id. at 5.

[48] Docket no. 29 at 5.

[49] Id.

[50] Id.

also causes Texas insureds to be subject to credit damage.[51]

Specifically, plaintiffs allege that plaintiff Gloria presented Allstate with allegedly reasonable medical charges of $5,849.50 and that Allstate allegedly reduced these charges by $334.40.[52] Gloria admits that he received from Allstate the full PIP coverage of $2,500.[53] Plaintiffs also contend that plaintiff Perez presented Allstate with allegedly reasonable medical charges of $2,241.00 and that Allstate allegedly reduced these charges by $65.[54] Plaintiffs allege that Allstate reduced the presented medical charges because the amounts were unreasonably high for plaintiffs' geographical region which Allstate did not identify.[55]

Plaintiffs have brought this class action, individually and on behalf of all similarly situated Allstate insureds, alleging that Allstate systematically, wrongfully, and improperly reduced medical bills for services provided to the insureds covered under the PIP and Med-Pay provisions of their personal automobile insurance policies.[56] As stated above plaintiffs federal claims allege violations of RICO and of the Sherman antitrust Act; their state claims allege violations of Texas Insurance Code and the DTPA as well as breach of contract.

Allstate has moved to dismiss pursuant to Rule 12(b)(1) arguing that the Court lacks

---

[51] Id.

[52] Docket no. 29 at 8.

[53] Id.

[54] Id.

[55] Id.

[56] Docket no. 29 at 1.

jurisdiction because plaintiffs have no standing to bring their claims.[57] In addition, Allstate has moved to dismiss plaintiffs' antitrust claim pursuant to Rule 12(b)(6) arguing that plaintiff has failed to state a claim against Allstate for antitrust violations.[58] Finally, Allstate has moved to strike or dismiss plaintiffs' class action allegations pursuant to Rule 12(f) arguing that plaintiffs' claims are "inherently unsuitable" for a class action.[59]

## IV. ISSUES

1. Whether plaintiffs have standing to assert their claims.

2. Whether plaintiffs have stats a cause of action for antitrust violations.

3. Whether plaintiffs allegations are inherently unsuitable for class action treatment.

## V. STANDARDS FOR MOTIONS TO DISMISS

### A. Fed. R. Civ. P. 12(b)(1)

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure permit a party to challenge the subject matter jurisdiction of the district court to hear a case.[60] Lack of subject matter jurisdiction may be found in one of three instances: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[61] The burden of

---

[57] Docket no. 34.

[58] Docket no. 32.

[59] Docket nos. 36 and 37.

[60] FED.R.CIV.P. 12(b)(1).

[61] Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.), cert. denied 454 U.S. 897 (1981); see Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.[62] Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.[63]

A facial attack on subject matter jurisdiction requires the court to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction.[64] Such an attack is valid if from the face of the pleadings, the court can determine it lacks subject matter jurisdiction.[65] In examining a Rule 12(b)(1) motion, the district court is also empowered to consider undisputed matters of fact reflected in the record.[66] Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his or her claim that would entitle him or her to relief.[67] "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[68]

When a Rule 12(b)(1) motion is filed with a Rule 12(b)(6) motion, the court should always consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

---

[62] McDaniel v. United States, 899 F.Supp. 305, 307 (E.D. Tex. 1995), aff'd, 102 F.3d 551 (5th Cir. 1996).

[63] Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.), cert. denied 449 U.S. 953 (1980).

[64] Venture I, Inc. v. Orange County, Tex., 947 F.Supp. 271, 276 n. 7 (E.D. Tex. 1996).

[65] Id.

[66] Williamson, 645 F.2d at 413.

[67] Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).

[68] Id. (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir.1996)).

merits.[69] This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the court lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.[70] A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).[71]

**B. Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6), Fed. R. Civ. P., plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[72] When considering a motion to dismiss for failure to state a claim, all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff.[73] The United States Supreme Court has elaborated:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously

---

[69] Hitt v. Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

[70] Id.

[71] Home Builders Ass'n of Miss., 143 F.3d at 1010.

[72] Kaiser Aluminum & Chem. Sales, Inc. v. Avondale, 677 F.2d 1045, 1050 (5th Cir.), cert. denied, 459 U.S. 1105, 103 S.Ct. 729 (1982) (quoted in Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc., 864 F.Supp. 14, 15 (W.D. Tex. 1993), affirmed, 30 F.3d 627 (5th Cir. 1994)).

[73] Fernandez-Montez v. Allied Pilots Assoc., 987 F.2d 278, 284 (5th Cir. 1993). See Capital Parks, Inc., 30 F.3d at 629 ("A court's decision to dismiss for failure to state a claim may be upheld 'only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.' Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986).") See also O'Quinn v. Manuel, 773 F.2d 605, 608 (5th Cir. 1985).

> insupportable. On the contrary, if as a matter of law "it is clear that no relief could be proved consistent with the allegations," a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.[74]

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[75] Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.[76] This is a rigorous standard, but subsumed within it is the requirement that a plaintiff state its case with enough clarity to enable the court and the opposing party to determine whether a claim is alleged.[77]

C. Fed. R. Civ. P. 12(f)

Rule 12(f) provides that a party may move to have stricken from pleadings "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[78] As with other Rule 12 motions to dismiss, a Rule 12(f) motion to strike is generally disfavored.[79] When considering a Rule 12(f) motion to strike, the Court construes all factual allegations opposed as

---

[74] Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 2232 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)).

[75] Conley, 355 U.S. at 45-46, 78 S.Ct. at 102.

[76] Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1250 (5th Cir. 1997); Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); Fernandez-Montes, 987 F.2d at 284.

[77] Elliott v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[78] FED. R. CIV. P. 12(f).

[79] Kaiser Aluminum, 677 F.2d at 1057.

true.[80]

## V. ARGUMENTS AND CONCLUSIONS OF LAW

### A. Plaintiffs' standing to bring their federal claims

Plaintiffs have alleged that Allstate violated 18 U.S.C. § 1962(c) by unlawfully participating in an association-in-fact enterprise with IMS through a pattern of racketeering activity in the form of mail and wire fraud, subjecting plaintiffs to liability for unpaid medical bills.[81] Plaintiffs also allege that Allstate violated the antitrust laws, specifically 15 U.S.C. § 1, by conspiring and/or contracting with IMS to illegally fix or restrain the amounts Allstate would pay as reimbursement for health care expenses incurred by its insureds.[82] Relying on Rule 12(b)(1), Defendants have moved to dismiss the RICO and Sherman antitrust claims arguing that plaintiffs failed to invoke the Court's jurisdiction because they lack standing to bring their claims. In particular, Allstate argues that plaintiffs have not alleged any actual or threatened injury resulting from Allstate's alleged conduct.

Standing is jurisdictional under Article III of the Constitution, and plaintiffs lacking standing may not litigate their claims in federal court.[83] The constitutional minimum of standing includes three elements: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable

---

[80] See id at 1047, 1060.

[81] Docket no. 29 at 15-17.

[82] Docket no. 29 at 13-15.

[83] Meadowbriar Home for Children v. Gunn, 81 F.3d 521, 529 (5th Cir. 1996).

decision.[84] The party invoking federal jurisdiction bears the burden of establishing these elements.[85] "The litigant must clearly and specifically set forth facts sufficient to satisfy these Article III standing requirements."[86] Each element should be supported in the same manner as any other matter on which the plaintiff has the burden of proof.[87] Thus, "[a]t the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'"[88] However, dismissal is appropriate at the pleadings stage "if the complaint itself shows a bar to relief -- when this happens it is 'beyond doubt' that no set of facts will allow plaintiff to prevail."[89]

"Injury-in-fact" is an invasion of a legal right that is "(a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"[90] "Particularized" means the injury affects the plaintiff in an individual and personal way.[91] "Allegations of possible future injury do not satisfy the standing requirement of Article III. A threatened injury must be 'certainly

---

[84] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992).

[85] Lujan, 504 U.S. at 561, 112 S.Ct. at 2136.

[86] Whitmore v. Arkansas, 495 U.S. 149,155, 110 S.Ct. 1717, 1723 (1990).

[87] Id.

[88] Lujan, 504 U.S. at 561, 112 S.Ct. at 2137 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990)).

[89] Mahone v. Addicks Util. Dist. of Harris County, 836 F.2d 921, 926 (5th Cir. 1988) (citing Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986)).

[90] Lujan, 504 U.S. at 560, 112 S.Ct. at 2136.

[91] Id., 504 U.S. at 561 n.1, 112 S.Ct. at 2136 n.1.

impending' to constitute injury-in-fact.'"[92]

Even accepting plaintiffs' allegations in the second amended complaint as true, the Court concludes that plaintiffs have failed to state an injury-in-fact. Plaintiffs contend that because of Allstate's allegedly illegal RICO conduct, plaintiffs "have suffered damages and liability to the extent of their unpaid bills plus interest."[93] Plaintiffs also have pleaded that they "are subject to legal liability for the unpaid balance of their bills."[94] What plaintiffs have pleaded is the possibility that at some time in the future their "property" will be injured by Allstate's determination of reasonable medical expenses.[95] That the harm is not imminent or actual is

---

[92] Whitmore, 495 U.S. at 158, 110 S.Ct. at 1724-25 (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308-09 (1979) (citations omitted)). To have standing under Sherman antitrust and RICO laws, a private plaintiff must be "injured in his business or property." 15 U.S.C. § 15(a) (1997); 18 U.S.C. § 1964(c) (2000). Under the Sherman antitrust laws, a private plaintiff must also establish that the injury is an antitrust injury. Doctor's Hosp. of Jefferson, Inc. v. Southeast Medical Alliance, 123 F.3d 301, 305 (5th Cir. 1997.

[93] Docket no. 29 at 16.

[94] Docket no. 29 at 5.

[95] The parties have cited several state court decisions in support of their arguments. LaMothe v. Auto Club Ins. Ass'n, 543 N.W.2d 42, 44 (Mich. App. Ct. 1995, pet. denied) and McGill v. Automobile Ass'n of Mich., 526 N.W.2d 12, 14 (Mich. App. Ct. 1994), cited by Allstate, support the conclusions reached here. In each of these cases, the insurance company reduced the medical charges to what the company determined was a reasonable rate and agreed to defend, indemnify, and/or protect the insureds from future liability because of the reductions. The Michigan Appeals Court found that because the plaintiffs failed to assert factual allegations of actual or threatened injury, they failed to plead a case or controversy. Plaintiffs rely on Puritt v. Allstate, 672 N.E.2d 353, 356 (Ill. App. Ct. 1996, pet. denied) in which the Illinois Appeals Court reversed a finding that the insureds lacked standing. The court concluded the insureds did not have to wait for lawsuits to be filed or collection attempts to be made before there was injury-in-fact. However, the Illinois state law action in Puritt is factually distinct from the case at issue because Puritt alleged that he paid the balance not paid by Allstate. Id. at 354. In addition, a health care provider, who was not paid the full amount charge for the services provided, was included as a plaintiff. Id.

particularly obvious in light of plaintiffs' allegations that Allstate's allegedly illegal conduct occurred in 1997 and 1998 and, even though the fact that plaintiffs' twice amended their complaint, the amended complaint contains essentially the same general allegations regarding possible injury as the original complaint filed in June 1999. There are no allegations that a health care provider who was not fully reimbursed by Allstate has challenged the determination of what are reasonable expenses, billed plaintiffs for balance, threatened to sue for the balance, or threatened to resort to a collection agency for payment of the balance. Moreover, plaintiffs do not allege that Allstate has failed to fulfill its promise to defend and indemnify plaintiffs in the event of any legal action brought against them or that Allstate failed to protect plaintiffs from collection attempts. As to plaintiff Gloria, the Court is particularly puzzled by the apparent lack of injury. It appears from the second amended complaint that, in addition to making assurances to defend, Allstate paid Gloria the maximum PIP benefits due under the policy. Even if Gloria were correct that Allstate's method of calculating payment is incorrect, Gloria's PIP benefits would still not exceed $2,500. In sum, because plaintiffs have alleged speculative rather than actual or threatened liability for the unpaid balance of their medical bills, plaintiffs lack standing to bring their RICO claims.[36]

---

[36] See Price v. Pinnacle Brands, Inc., 138 F.3d 602, 606 (5th Cir. 1998) (because pleadings failed to show tangible financial loss to plaintiffs, "plaintiffs' conclusional allegations, unaccompanied by assertions of even general fact to show injury, fail to satisfy the RICO standing requirement); In Re Taxable Mun. Bond Sec. Litig., 51 F.3d 518, 522 (5th Cir. 1995) (no standing because plaintiff failed to establish eligibility for loan program); see also Maio v. Aetna, Inc., 221 F.3d 472, 475 (3rd Cir. 2000) (no RICO injury when "predicated exclusively on the possibility that future events might occur, rather than on the actual occurrence of those events and their present effect on the value of the health care insurance appellants received"); Mira v. Nuclear Measurements Corp., 107 F.3d 466, 474 (7th Cir. 1997) ("plaintiffs have failed to establish that they or the plan suffered an injury (i.e., economic loss) as a result of the defendant's conduct).

As to plaintiffs' antitrust claims, plaintiffs allege that Allstate's conduct limited reimbursement that would be paid for covered medical services, limited the type of medical services that would be covered, and discouraged insureds from seeking needed medical services that were unaffordable other than through the insurance policy with Allstate.[97] With respect to limiting reimbursement to reasonable charge for necessary medical services, the foregoing discussion of plaintiffs' failure to allege injury-in-fact in their RICO claim applies as well to the antitrust claim. Plaintiffs have not alleged that they suffered an actual or threatened injury because of Allstate's limited reimbursement of medical charges. With respect to plaintiffs' other alleged antitrust injuries -- limiting medical services and discouraging insureds from seeking needed medical service -- plaintiffs generally allege only that Allstate's conduct "interferes and conflicts with the physician-patient relationship and places the patient in a tug-of war between the insurance company and the medical provider."[98] There are no specific factual allegations suggesting that either plaintiff received limited medical services, did not seek medical services, or suffered any conflict or interference in a relationship with their health care provider because of Allstate's conduct. Thus, plaintiffs have failed to allege an actual or threatened injury that would entitle them to bring a Sherman antitrust claim against Allstate.

In sum, plaintiffs have failed to state an injury-in-fact. Although plaintiffs generally allege that they have been injured and suffered damages, their supporting allegations which describe the injury and harm set forth a possible injury they could suffer in the future and not a

---

[97] Docket no. 29 at 14.

[98] Id. at 5.

"certainly impending" injury or an actual injury already suffered.[99] Therefore, Allstate's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is granted, and plaintiffs' federal RICO and Sherman antitrust claims are dismissed.

**B. Have plaintiffs stated a Sherman antitrust claim**

Allstate has moved to dismiss plaintiffs' Sherman antitrust claim pursuant to Rule 12(b)(6).[100] In particular, Allstate argues that plaintiffs have failed to state an antitrust injury, an essential element of an antitrust claim.[101]

To pursue an antitrust claim, plaintiff must show: "(1) injury in fact, an injury to the plaintiff proximately caused by the defendant's conduct; (2) antitrust injury; and (3) proper plaintiff status, which assures that other parties are not better situated to bring suit."[102] An antitrust injury is an

> injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or the anticompetitive acts made possible by the violation. It should in short be "the type of loss that the claimed

---

[99] See Lewis v. Casey, 518 U.S. 343, 357, 116 S.Ct. 2174, 2183 (1996) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' " Citing Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 1925, n. 20 (1976), quoting Warth v. Seldin, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207 (1975)).

[100] Docket no. 32.

[101] Docket no. 33 at 2-4.

[102] Doctor's Hosp., 123 F.3d at, 305.

violations . . . would be likely to cause."[103]

The Supreme Court in Blue Shield of Virginia, v. McCready,[104] discussed allegations that set forth a private cause of action for antitrust violations. The Court explained

> McCready charges Blue Shield with a purposefully anticompetitive scheme. She seeks to recover as damages the sums lost to her as the consequence of Blue Shield's attempt to pursue that scheme. She alleges that Blue Shield sought to induce its subscribers into selecting psychiatrists over psychologists for the psychotherapeutic services they required, and that the heart of its scheme was the offer of a Hobson's choice to the subscribers. Those subscribers were compelled to choose between visiting a psychologist and forfeiting reimbursement, or receiving reimbursement by forgoing treatment by the practitioner of their choice.[105]

The Court further noted that "[a]lthough McCready was not a competitor of the conspirators, the injury she suffered was inextricably intertwined with the injury the conspirators sought to inflict on psychologists and the psychotherapy market.[106]

Assuming for argument's sake that plaintiffs have alleged injury from Allstate's conduct, plaintiffs have not alleged any anticompetitive effect of Allstate's acts or how any anticompetitive acts were made possible by Allstate's conduct. As stated above Plaintiffs' allege that Allstate's conspiracy and/or contract with IMS was a scheme to fix or restrain the amount of reimbursement due for medical services, limit the type of medical services, and discourage the use of needed medical services. These allegations do not specify any specific market that

---

[103] Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 697 (1977) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 125, 89 S.Ct. 1562, 1577 (1969)) (emphasis added).

[104] 457 U.S. 465, 483, 102 S.Ct. 2540, 2550 (1982).

[105] Id.

[106] McCready, 457 U.S. at 484, 102 S.Ct. at 2551.

Allstate targeted for injury by its relationship with IMS or that plaintiffs were in someway injured by any anticompetitive acts targeted at some market. Plaintiffs do not allege that they were required to forego treatment by any specific health care provider in favor of another. Their allegations merely state that Allstate reviewed their medical expenses and reduced them to what Allstate determined was a reasonable rate. If a health care provider concluded that Allstate's decision was incorrect, it would be free to pursue collection efforts against the policy holder -- which Allstate would then defend -- or against Allstate directly. Plaintiffs have not alleged either has occurred.

Therefore, because plaintiffs failed to allege an antitrust injury, they have not stated a cause of action under the Sherman Antitrust Act. Allstate's Rule 12(b)(6) motion to dismiss is granted and plaintiffs' Sherman antitrust claim is dismissed.

**C. Should plaintiffs' class action allegations related to federal claims be stricken**

Defendants have moved under Rule 12(f) to strike plaintiffs' class action allegations arguing that plaintiffs have not pleaded facts sufficient to demonstrate that the prerequisites of Federal Rule of Civil Procedure 23 are met.[107] Rule 23 requires that the *representatives must suffer the same injuries as the class members they seek to represent*.[108] Because plaintiffs allege only that they wish to represent other similar to them and in light of the Court's conclusion that plaintiffs lack standing to bring the federal claims because they have not alleged injury-in-fact, the proposed class would appear to lack standing as well since "similar" class members would

---

[107] Docket nos. 36 and 37 at 2.

[108] Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625-26, 117 S.Ct. 2231, 2251 (1997) (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896 (1977)).

not have suffered actual injury.

Conclusory class allegations, such as those pleaded by plaintiffs here, have been deemed suitable for dismissal early in the case.[109] When plaintiffs' allegations are analyzed in light of the prerequisites of Rule 23, plaintiffs have not alleged common issues that predominate. Instead, issues such as whether a particular provider's charge was reasonable and/or necessary for a particular treatment for a particular injury in a particular location must be determined on an individualized basis. Each putative plaintiff would be required to prove entitlement to benefits under the terms of the policy[110] and that the medical expenses were reasonable and the services were necessary.[111] Moreover, even if plaintiffs prove the computerized evaluation of the PIP claims was flawed the parties and the Court still will need to analyze each charge on every claim for reasonableness and necessity. Finally, courts have found that class actions are not appropriate in antitrust or RICO cases when individualized questions of injury predominate.[112]

---

[109] See In Re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996) ("Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic fact to indicate that each requirement of the rule is fulfilled."); Cook County College Teachers Union v. Byrd, 456 F.2d 882, 885 (7th Cir.) ("[The Union] was obliged in its complaint to allege facts bringing the action within the appropriate requirements of the Rule"), cert. denied, 409 U.S. 848 (1972); Minority Police Officers Ass'n v. city of South Bend, 555 F.Supp. 921, 924 (N.D. Ind.) ("Specific facts must be alleged sufficient to meet the requirements of the rule, as mere repetition of the rule or loosely defined classwide allegations are insufficient"), aff'd in part, appeal dismissed on other grounds, 721 F.2d 197 (7th Cir. 1983); see also Doctor v. Seaboard Coast Line R.R. Co., 540 F.2d 699, 706-10 (4th Cir. 1976) (denying class certification because plaintiff provided no facts about the existence of alleged class);.

[110] Western Alliance Ins. Co. v. Northern Ins. Co., 176 F.3d 825, 828 (5th Cir. 1999).

[111] TEX.INS.CODE art. 5.06-3(b)..

[112] See Alabama v. Blue Bird Body, 573 F.2d 309, 327-28 (5th Cir. 1978) (fact that each putative plaintiff had to prove conspiracy in particular geographical area and payment of "supracompetive" price which depended on quality and price of bus precluded antitrust class

In sum, plaintiffs are not adequate class representative because they lack standing and have no cause of action. In addition, their class allegations do not allege facts suggesting that common issues, other than Allstate's allegedly flawed computerized reductions in medical expenses, predominate. Therefore, to the extent the Court has jurisdiction to address plaintiffs' class allegations, when plaintiffs' lack of standing -- and when the purported class would appear to lack standing as well -- Allstate's motion to strike the class allegations is granted as to the federal claims and the class allegations as to the federal claims are stricken.

## VI. STATE CLAIMS

Having determined that the Court lacks jurisdiction over plaintiffs' federal claims because plaintiffs lack standing to bring them, the Court must now determine how to dispose of plaintiffs' state law claims. The 28 U.S.C. §1367 provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution.[113]

In this case, the Court dismisses plaintiffs' federal claims for lack of standing, requisite of

---

action); Windham v. American Brands, Inc., 565 F.2d 59, 65 (4th Cir. 1977) (crux of antitrust action "is injury, individual injury. While a case may present a common question of violation, the issues of injury and damage remain the critical issues in such a case and are always strictly individualized."), cert. denied, 435 U.S. 968 (1978); In Re Beef Indust. Antitrust Litig., 1986 WL 8890, at * 1 (S. D. Tex. June 3, 1986) ("critical issues of injury and damage are inherently individualized" unless subject to mechanical or formula calculation); Abernathy v. Baush & Lomb, Inc., 97 F.R.D. 470, 474-75 (N.D. Tex. 1983) (because proof of actual anticompetitive injury in private antitrust cases is highly individualistic, courts generally find antitrust " claims ill-suited for maintenance as class actions") (citations omitted); Kahler v. Firstplus Fin. Inc., 248 B.R. 60, 77 (Bankr. N. D. Tex. 2000) (RICO class action not proper because "each member would have to prove legal causation").

[113] 28 U.S.C. 1367(a).

jurisdiction under Article III. Therefore, because the Court did not have original jurisdiction over plaintiffs' federal claims, it may not exercise the supplemental jurisdiction provided by section 1367. Thus, plaintiffs' state claims, including the allegations for a state class action, under the Texas Insurance Code article 21.21 and the DTPA as well as the claim for breach of contract are dismissed without prejudice to filing in state court.

## VII. CONCLUSION

Because plaintiffs lack standing to bring their federal claims such that the Court lacks jurisdiction, Allstate's Rule 12(b)(1) motion[114] is **GRANTED** and plaintiffs' RICO and Sherman antitrust claims are **DISMISSED**. Assuming that plaintiffs' second amended complaint alleges injury and standing, Allstate's Rule 12(b)(6) motion to dismiss plaintiffs' Sherman antitrust claim[115] is **GRANTED** on the ground that plaintiffs have failed to state a claim upon which relief may be granted and their antitrust claim is **DISMISSED**. As plaintiffs have failed to adequately allege the prerequisites of a federal class action, Allstate's Rule 12(f) motion to strike the federal class action allegations[116] is **GRANTED** and plaintiffs' class action allegations related to RICO and Sherman antitrust violations are **STRICKEN**. In light of the Court's disposition of plaintiffs' federal class action allegations, plaintiffs' motion to certify a class action[117] are **DISMISSED** as moot.

Because no federal claim remains in this lawsuit, plaintiffs' state claims under the Texas

---

[114] Docket no. 34.

[115] Docket no. 32.

[116] Docket no. 36.

[117] Docket no. 16.

Insurance Code article 21.21 and the *DTPA* as well as the claims for breach of contract are **DISMISSED** without prejudice to re-filing in state court, as may be permitted by state law and procedure. Plaintiffs' class action allegations related to the state claims are also **DISMISSED** without prejudice to re-filing in state court.

The Clerk shall enter judgment accordingly and providing that each side shall bear its own costs.

**IT IS SO ORDERED.**

**SIGNED and ENTERED this** 29 **day of September, 2000.**

**Pamela A. Mathy**
**United States Magistrate Judge**

AO 450 (Rev. 5/85) Judgment in a Civil Case

FILED

# United States District Court
# Western District of Texas

SEP 29 2000

CLERK, U.S. DISTRICT COURT WESTERN DISTRICT OF TEXAS BY DEPUTY CLERK

PETER GLORIA and DAVID PEREZ

Plaintiffs

v.

ALLSTATE COUNTY MUTUAL INSURANCE COMPANY and ALLSTATE PROPERTY AND CASUALTY COMPANY

Defendants

JUDGMENT IN A CIVIL CASE

CASE NUMBER: SA-99-CV-676 PM

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

***IT IS ORDERED AND ADJUDGED***

that because plaintiffs lack standing to bring their federal claims such that the Court lacks jurisdiction, Allstate's Rule 12(b)(1) motion is granted and plaintiffs' RICO and Sherman antitrust claims are dismissed. Assuming that plaintiffs' second amended complaint alleges injury and standing, Allstate's Rule 12(b)(6) motion to dismiss plaintiff's Sherman antitrust claim is granted on the ground that plaintiffs have failed to state a claim upon which relief may be granted and their antitrust claim is dismissed. As plaintiffs have failed to adequately allege the prerequisites of a federal class action, Allstate's Rule 12(f) motion to strike the federal class action allegations is granted and plaintiffs' class action allegation related to RICO and Sherman antitrust violations are stricken. In light of the Court's disposition of plaintiffs' federal class action allegations, plaintiffs' motion to certify a class action are dismissed as moot. Because no federal claim remains in this lawsuit, plaintiffs' state claims under the Texas Insurance Code article 21.21 and the DTPA as well as the claims for breach of contract are dismissed without prejudice to re-filing in state court, as may be permitted by state law and procedure. Plaintiffs' class action allegations related to the state claims are also dismissed without prejudice to re-filing in state court.

September 29, 2000
Date

William G. Putnicki
Clerk

Kathy Cavazos
(By) Deputy Clerk

65