UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

DR. PAUL ZIDEL, and all others similarly situated,

Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, and COMMUNITY CARE NETWORK, INC., d/b/a CCN

Defendants.

CASE NO.: 00-CV-6061

JUDGE FERGUSON

MAGISTRATE JUDGE SNOW

NIGHT BOX
FILED
JAN 11 2001
CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

**ALLSTATE INSURANCE COMPANY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant, Allstate Insurance Company ("Allstate"), hereby moves this honorable Court for entry of an Order pursuant to Rules 8, 9 and 12(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 8, 9, and 12, dismissing Plaintiffs' Second Amended Class Action Complaint ("Complaint") and states as follows:

**Introduction**

1. This case remains a simple disagreement over the amount of payments made by Allstate Insurance Company ("Allstate") for medical services rendered by plaintiff to personal injury protection ("PIP") claimants.[1]

[1] Plaintiff is one of several doctors who are engaged together in the practice of medicine under the names "Park Place Therapeutic Center" and "Park Place Orthopaedics & Rehabilitation" (collectively the "Park Place Doctors"). The Park Place Doctors previously brought an action against Allstate to recover PIP payments which they alleged were improperly discounted. Case No. 00-CIV-6269-Dimitrouleas. The United States District Court for the Southern District of



2. Although nothing was hidden from plaintiff or misrepresented when Allstate paid his bills, he has asserted fraud, RICO and statutory claims based solely on prejorative, conclusory assertions. However, at worst this is a simple commercial dispute regarding contractual rights.

3. Notwithstanding plaintiff's protests, there is nothing inherently fraudulent or wrongful about agreements by which medical care providers agree to accept negotiated, reduced rates for their services in certain circumstances, even in the absence of "patient steering" requirements. First Health Group Corp. v. United Payors & United Providers, Inc., 95 F. Supp. 2d 845, 846-47, 849-50 (N.D. Ill. 2000) (a "PPO does not have a fixed definition which includes a steering requirement").[2]

4. In First Health, the Court recognized:

> For the past five years or so there has been an ongoing struggle between PPOs providing steering or directing ("directed PPOs"), and organizations providing services similar or somewhat similar to those of defendant. Those who contend that a non-directed PPO is not a PPO refer to such organizations as "silent PPOs," a pejorative term.

95 F. Supp. 2d at 849.

---

Florida subsequently granted Allstate's Motion to dismiss, concluding that Florida Statute §627.736(10) does not allow a private cause of action to be asserted against Allstate.

[2] "Steering" refers to a contractual term present in some, but not all, PPO arrangements. As a report to Congress summarized: "A PPO is a group of providers who agree to provide medical services to the subscribers of an insurance carrier at a lesser cost than would have been otherwise charged .... In recent years, a new variation of the PPO concept appeared. This variation is known as a 'non-directed' PPO as distinguished from the traditional PPO which has become known as a 'directed' PPO. The terms 'directed' and 'non-directed' are references to the steerage or lack of steerage of patients. As explained above, in a traditional directed PPO arrangement, subscribers are steered to the PPO to take advantage of the lower costs. In a non-directed PPO, even though the medical providers have agreed to charge a lower fee, the contracts the PPOs enter into do not require that the carrier's subscribers be steered to them. In some non-directed PPOs, the [provider] may benefit from this arrangement as a result of prompt payments or advances. In other non-directed PPO arrangements, the benefits to the provider may be less

5. Although plaintiff's Second Amended Complaint continues to wield the accusation of "silent PPO" as if it were a self-proving indictment, his presumption of Allstate's "guile" is unwarranted and cannot support the claims he asserts:

> Concurrent with the evolution of non-directed PPOs, a new term, "silent PPO" became commonplace. The term "silent PPO" means different things to different people. Initially, the term "silent PPO" was merely a reference to a non-directed PPO where the contract was "silent" with regard to steerage of patients to the provider's facilities. However, in more recent times, the term has acquired a more restrictive meaning. As a result, to some people, "silent PPO describes a scheme used to obtain illegal discounts for payors who are not entitled to them. In discussions with interested parties and in industry literature, the terms "fraud," "illicit," "manipulation," "falsely," "unethical" and "scheme" are used to describe silent PPOs. Consequently, the term "silent PPO" has come to mean an unethical and/or illegal practice, and the term has been loosely extended to encompass non-directed PPOs. ...
>
> Our review has disclosed that substantial savings have been and can be achieved by both directed and non-directed PPOs. We further have found that these savings can be achieved in an ethical manner, in that we found no evidence ... that "silent PPOs" were a factor or that provider discounts were otherwise taken on the basis of any schemes to victimize medical providers. ... We conclude that substantial sums can be saved through directed and non-directed PPO arrangements. (Office of the Inspector General, Office of Personnel Management, Rep. No. 99-00-97-054, Report on the Use of Silent PPOs in the Federal Employees Health Benefits Program 20-23)

Id. at 850.[3]

---

clear. In the case of both the directed and non-directed PPOs the terms of the arrangement are committed to a contract between the parties... ." First Health, 95 F. Supp. at 850.

[3] A Senate analysis similarly concluded: "The incentives may include an agreement to steer patients to the provider, in the case of so-called 'directed PPOs.' or they may include financial incentives such as prepayment or prompt payment in the case of so-called 'non-directed PPOs.' Both directed and non-directed PPOs provide legitimate and valuable benefits to health care providers, carriers and patients. (Senate Committee on Governmental Affairs, S.Rep.No. 257, 105th Cong. Sess. 3 (1998))." Id. at 851.

6. Although plaintiff would ask this Court to believe otherwise, the contractual rights which apply to plaintiff and Allstate are the only things at issue here, nothing more, and they do not support any of the claims plaintiff asserts. Cf. HCA Health Services of Georgia v. Employers Health Ins. Co., 22 F. Supp. 2d 1390 (N.D. Ga. 1998)(determining whether discounts applied were appropriate based on the terms of the applicable contract).[4]

**Factual Background**

7. Plaintiff Paul Zidel, M.D. ("Dr. Zidel") is an orthopedic surgeon practicing in the State of Florida. (Second Amended Complaint, ¶ 1.) Dr. Zidel does not dispute that he (and Park Place) had agreed with Community Care Network, Inc. ("CCN") to accept certain negotiated rates for his services when rendered to individuals insured by certain insurance companies. (Id., ¶¶ 15, 22.)

8. Allstate Florida automobile insurance policies include personal injury protection ("PIP") coverage pursuant to Florida law. Under PIP coverage, Allstate agrees to pay 80% of reasonable charges for necessary medical treatment provided to a covered insured who suffers injury in an automobile accident. (Id., ¶¶ 8-9.) Although Fla. Stat. §627.736(10) authorizes insurers to offer PIP coverage through a "preferred provider" network, Allstate does not sell such preferred provider PIP policies in Florida. (Id., ¶¶ 13-14.) Allstate's insureds have an "absolute right and freedom" to choose their medical service providers. (Id., ¶ 10.)

---

[4] As one commentator summarized: "While many providers have expressed outrage against what they have variously characterized as unethical to fraudulent behavior on the part of network organizations, the reality is that all too often the provider has signed an agreement without the proper due diligence as to the value to be received." Dickerson, Preferred Provider Organizations vs. Non-Directed Networks: A Provider Dilemma, Federation of American Health Systems (1998).

9. Allstate has properly entered into agreements pursuant to which certain health care providers agreed in advance on the "reasonable" amounts which they would be paid for various medical services. Where they apply, such agreements are referenced on the "Explanation of Benefits" ("EOB") form which accompanies Allstate's payment of a provider's bill. (See id., ¶¶ 46-47, 99(f).)

10. Plaintiff asserts that he has provided medical care to certain Allstate insureds who were entitled to PIP benefits from Allstate. He admits that the payments he later received from Allstate for such bills were computed based upon the negotiated rate agreement he had with CCN. (Id., ¶¶ 49, 60.)

11. Plaintiff was fully aware of the amounts that he had billed for services he provided to Allstate insureds. Thus, by comparing the amounts of the checks he received from Allstate to his own books and records, as well as from the face of the EOBs, plaintiff knew or should have known whether Allstate had paid the amounts reflected on his original invoices or some discounted rate.

**I. Count I Fails To Allege A Claim For Unjust Enrichment.**

12. Dr. Zidel's attempt to assert a claim for unjust enrichment fails because he has not alleged any facts which remotely indicate that he conferred any real benefit upon Allstate, only that he provided services to Allstate's insureds. Furthermore, any such unjust enrichment action is barred, as a matter of law, by the economic loss doctrine. In addition, Dr. Zidel cannot allege a viable unjust enrichment claim because he has an adequate remedy at law.

**II. Count II Fails To Adequately Allege A Breach Of Contract Claim.**

13. Allstate is contractually and statutorily obligated only to pay reasonable amounts for covered services rendered by providers to persons covered under Allstate insurance policies.

Plaintiff fails to allege facts which support his conclusion that the rates he was paid by Allstate in connection with services rendered to Allstate's insureds were not reasonable. Consequently, plaintiff has failed to allege a breach of contract claim against Allstate and Count II of the Second Amended Complaint must be dismissed.

**III. Count III Fails To Properly Allege A RICO Claim And Must Be Dismissed.**

14. Count III of the Second Amended Complaint, styled "RICO," is, as a matter of law, flawed and should be dismissed in accordance with Federal Rules 8, 9, and 12. See Delfrate v. Letts, 1996 WL 420880 (M.D. Fla. Mar. 25, 1996)(courts should impose stringent RICO pleading requirements "due to [RICO's] potential for abuse by civil litigants"); Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1003 (2d Cir. 1988), cert. denied, 488 U.S. 852 (1988)(one of the purposes of Rule 9(b)'s heightened pleading requirement is to derail "strike suits" in which the threat of RICO liability is used in business or personal disputes unrelated to racketeering).

15. In all events, the alleged RICO claims, which sound in mail and wire fraud,[5] are inappropriate for class action treatment because they require individualized showings of misrepresentation, reliance, injury and damages. E.g., Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir.1996). See Gloria v. Allstate Country Mut. Ins. Co., Civ. Action No. SA-99-CA-676-PM, slip op. (W.D. Tex., Sept. 29, 2000)(holding in a case challenging PIP payment reductions, inter alia, that RICO actions are "inappropriate" for class action treatment).

16. Count III fails to meet the requirements of Rule 8. Rule 8(a)(2) requires that a complaint contain only a "short and plain statement of the claim showing that the pleader is

[5] Although the Complaint contains oblique references to the Travel Act and to extortion (¶¶ 129, 131) there are absolutely no facts pleaded which remotely support any such claims.

entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, Rule 8(e)(1) states that each "averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). In Count III, Dr. Zidel has improperly intertwined a prolix, vague, internally contradictory and incomprehensible claim which purports to be based on several sections of the RICO statutes, including 18 U.S.C. § 1962(a), 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). Plaintiff's abstruse pleading and commingling of theories, in and of themselves, thus require dismissal of Count III.

17. Additionally, Count III is not pleaded with particularity and thus fails to meet the requirements of Fed. R. Civ. P. 9(b). Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380 (11th Cir. 1997) (Rule 9 is thus satisfied only where the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud'").

18. Count III also fails, as a matter of law, to state a claim for which relief can be granted and thus must be dismissed under Rule 12(b)(6).

a. Plaintiff's attempt to plead a claim under 18 U.S.C. § 1962(a) fails because he has not and cannot establish that he was harmed as a result of investment activity by Allstate. See, e.g., Viacom, 20 F.3d at 779 n. 6.

b. Plaintiff's attempt to plead a claim under § 1962(c) fails as a matter of law because he has not set forth any factual allegations regarding a structure, continuity, or common course of conduct of any alleged improper associations and thus fails to allege a necessary enterprise. See Bill Buck Chevrolet, Inc. v. GTE Florida, 54 F. Supp. 2d 1127 (M..D. Fla. 1999).

c. Plaintiff, likewise, has not alleged sufficiently any predicate racketeering offenses, let alone a pattern of racketeering activities. As a result, plaintiff's attempt to pursue a §1962(c) claim also must be dismissed. See, e.g., Bill Buck Chevrolet, 54 F.Supp.2d at 1135.

d. Plaintiff also has failed to properly allege a §1962(d) claim because he has not properly pled substantive RICO violation and, thus, plaintiff has not and cannot properly plead RICO conspiracy. See Callanan v. United States, 881 F.2d 229, 235 (6th Cir. 1989).

## IV. Count IV Fails To State A Viable Claim And Must Be Dismissed.

19. Count IV, styled "Declaratory Judgment," in effect asks this Court to declare that Allstate's conduct, as alleged in connection with the various and sundry theories asserted elsewhere in the Second Amended Complaint, is "wrong." That claim is, at best, redundant, provides no basis for independent declaratory relief against Allstate, and must be dismissed. See Fed.R.Civ.P. 12(f).

## V. Count V Fails To Allege Any Cognizable Violation Of The Florida PIP Statute.

20. Dr. Zidel cannot plead a viable claim under Florida Statute §627.736(10). In a prior action to which Dr. Zidel was a party, case number 00-CIV-6269-DIMITROULEAS, the United States District Court for the Southern District of Florida dismissed claims brought against Allstate pursuant to Subsection (10) because the statute does not allow for a private cause of action against Allstate. That decision not only demonstrates the proper treatment for the claim, but also is conclusively binding on Dr. Zidel. E.g., Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990)(the doctrine of res judicata precludes a subsequent suit on claims which were raised, or which could have been raised, in a prior suit). Dr. Zidel's attempt to reassert claims under Subsection 10 is thus barred by res judicata and Count V must be dismissed.

WHEREFORE, for the foregoing reasons, Allstate Insurance Company respectfully requests that this Court enter an Order dismissing the Second Amended Class Action Complaint, with prejudice.

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to the attorneys on the attached list, this 11th day of January, 2001.

PETER J. VALETA
Florida Bar No. 327557
ROSS & HARDIES
150 North Michigan Ave., Suite 2500
Chicago, Illinois 60601
Telephone: (312) 750-3619
Telecopier: (312) 920-7241
Attorneys for Defendant

DAVID B. SHELTON
Florida Bar No. 0710539
RUMBERGER, KIRK & CALDWELL
P.O. Box 1873
Orlando, Florida 32802
Telephone: (407) 839-4511
Telecopier: (407) 841-2133
Attorneys for Defendant

SERVICE LIST

Douglas A. Blankman, Esquire
Kopelman & Blankman, P.A.
One Financial Plaza, Suite 1611
Ft. Lauderdale, FL 33394
Attorney for Plaintiff

Arthur Gold, Esquire
Gold, Rosenfeld & Coulson
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
Attorney for Plaintiff

Carlin Phillips, Esquire
Gogel, Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA 02747
Attorney for Plaintiff

Eric Lee
Atlas Pearlman, P.A.
350 East Las Olas Blvd., Suite 1700
Fort Lauderdale, FL 33301
Attorney for Plaintiff

William W. Deem, Esquire
McGuire, Woods, Battle & Boothe, LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Attorney for Defendant,
CCN, Inc.