UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

DR. PAUL ZIDEL, and all others )
similarly situated, )
) CASE NO.: 00-CV-6061
Plaintiffs, )
) JUDGE FERGUSON
v. )
) MAGISTRATE JUDGE SNOW
ALLSTATE INSURANCE COMPANY, and ) NIGHT BOX
COMMUNITY CARE NETWORK, INC., ) FILED
d/b/a CCN )
) JAN 1 1 2001
Defendants. )
) CLARENCE MADDOX
_____ ) CLERK, USDC / SDFL / FTL'



### MEMORANDUM OF LAW IN SUPPORT OF ALLSTATE INSURANCE COMPANY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

This case remains nothing more than a simple disagreement over the amount of payments made by Allstate Insurance Company ("Allstate") for medical services rendered by plaintiff to personal injury protection ("PIP") claimants. Plaintiff does not dispute that he (and Park Place) had agreed with Community Care Network ("CCN") to accept certain reduced rates for his services when he rendered them to individuals insured by insurance companies who had contracted with CCN. Allstate reasonably believed, based on its contractual agreement with CCN, that CCN's negotiated rates with plaintiff and Park Place were available to Allstate PIP claimants. Allstate thus paid bills submitted by plaintiff for Allstate claimants utilizing those negotiated rates. Furthermore, Allstate openly disclosed that its payments were based on the CCN negotiated rates on the "Explanation of Benefits" ("EOB"), which accompanied Allstate's payment. There was nothing "secret." Nothing was hidden from plaintiff or misrepresented

when Allstate paid plaintiff's bills. There is no fraud, no RICO and no statutory case here. This is at worst a simple commercial dispute regarding contractual rights.[1]

## Argument

This action contends Allstate did not pay the amounts plaintiff billed for medical services he rendered to certain patients. In no way could plaintiff allege, however, that Allstate thus committed a fraud upon him or otherwise engaged in a predicate, criminal offense. Plaintiff has failed, therefore, to state a civil RICO claim. Nor could he properly maintain such a claim as a class action. In addition, plaintiff has failed to state a claim based on unjust enrichment or breach of contract. Finally, plaintiff's attempt to allege a claim under the Section 627.736(10) of the PIP statute is barred by res judicata and, in all events, fails as a matter of law because no private cause of action is created by that statute.

Plaintiff bases his grave accusations of deceitful conduct on a purported parade of horrors, which he calls a "silent PPO." His rhetorical rage does not, however, constitute a cognizable allegation of any claim. There is nothing inherently fraudulent or wrongful about agreements by which medical care providers agree to accept negotiated rates for their services in certain circumstances, even in the absence of patient steering requirements. First Health Group Corp. v. United Payors & United Providers, Inc., 95 F. Supp. 2d 845, 846-47, 849-50 (N.D. Ill. 2000) (a "PPO does not have a fixed definition which includes a steering requirement"). Though plaintiff would ask this Court to believe otherwise, the contractual rights which apply to plaintiff and Allstate are the only things at issue here, nothing more, and they do not support any of the claims plaintiff asserts. Cf., HCA Health Serv. of Georgia v. Employers Health Ins. Co., 22 F.

---

[1] Dr. Zidel is one of several doctors who are engaged together in the practice of medicine as "Park Place Therapeutic Center" and "Park Place Orthopaedics & Rehabilitation" (collectively "Park Place Doctors"). The Park Place Doctors previously sued Allstate to recover PIP payments which they alleged were improperly discounted (the "Park Place Doctors Action"). Case No. 00-CIV-6269-Dimitrouleas. The Park Place Doctors alleged that Allstate's payments were made in amounts "substantially less than [Allstate] is statutorily and contractually obligated to pay," and improperly based upon their agreement with CCN. By Order dated April 14, 2000, the district court granted Allstate's Motion to dismiss, concluding that Florida Statute §627.736(10) does not allow a private cause of action to be asserted against Allstate. On November 22, 2000, the Park Place Doctors Action was voluntarily dismissed on the express

Supp. 2d 1390 (N.D. Ga. 1998)(whether discounts applied were appropriate is based on the terms of the applicable contract).

## I.    Count I Fails To Adequately Allege Unjust Enrichment

In order to state a claim for unjust enrichment, plaintiff must allege that (1) it conferred a benefit on the defendant, who has knowledge thereof, (2) the defendant voluntarily accepted and retained the benefit, and (3) it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. E.g., Peoples National Bank of Commerce v. First Union Nat'l Bank of Florida, N.A., 667 So.2d 876, 879 (Fla. 3rd DCA 1996). Dr. Zidel fails to allege that he has conferred any recognizable benefit upon Allstate. To the contrary, he alleges (1) he treated certain patients who were insured by Allstate and (2) Allstate has not compensated him "fully" for those treatments.[2] Because he cannot identify any"benefit" conferred upon Allstate, plaintiff's allegations are inadequate to plead unjust enrichment and Count I of the Second Amended Complaint must be dismissed.

In addition, plaintiff's unjust enrichment claim is barred by Florida's economic loss doctrine. That rule provides that "parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of [the] breach of contract." Jones v. Childers, 18 F.3d 899, 904 (11th Cir. 1994). The doctrine is based on the notion that "contract principles are more appropriate than tort principles for resolving economic loss claims." Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 901 (Fla. 1987).

---

condition that Dr. Zidel remain bound by the Order which dismissed his Section 627.736(10) claim.

[2] In its Order denying a Motion to remand the Park Place Doctors Action, the district court concluded, among other things, that Dr. Zidel was practicing and billing collectively with other members of Park Place and that a general agreement existed between Park Place and CCN prior to December, 1999. Any suggestion in the Second Amended Complaint that CCN negotiated rates cannot apply to Plaintiff's bills before December 13, 1999 is thus directly contrary to the express determination of the district court in the Park Place Doctors Action. Moreover, that suggestion would be inconsistent with the specific allegations of the Second Amended Complaint. See paragraph 22 ("At all times material herein, DR. ZIDEL was a party to an agreement pursuant to which he agreed to provide his services to CCN PPO Subscribers.").

3

Dr. Zidel seeks to recover economic damages based on Allstate's reduction of the amount paid for his services, purportedly in violation of Allstate's contract with its insureds. Dr. Zidel has alleged that Allstate's conduct constitutes breach of contract, for which he allegedly has a contractual remedy. Consequently, the economic loss rule bars plaintiff's purported equitable claim for unjust enrichment. See Anthony Distributors, Inc. v. Miller Brewing Co., 904 F. Supp. 1363, 1368 (M.D. Fla. 1995)(applying the economic loss rule to bar a claim for unjust enrichment). See also AFM Corp. v. Southern Bell, 515 So.2d 180, 181-82 (Fla. 1987) (if the facts surrounding breach of contract and tort claims are "interwoven," the economic loss doctrine applies to preclude recovery of tort damages).

Indeed, Allstate's obligation under Florida law is to only pay for medical charges which are "reasonable, related and necessary." As a result, plaintiff's claims can constitute nothing more than an assertion that the amount Allstate actually paid was not "reasonable." Even if true, and it could be proven, those allegations would at most give rise to a claim for breach of contract, for which an adequate legal remedy would be available.

Finally, Dr. Zidel cannot allege a claim for unjust enrichment because he cannot allege he has no adequate remedy at law. Where a complaint on its face shows that adequate legal remedies may exist, equitable remedies are not available. See H.L. McNorton v. Pan Am. Bank of Orlando, 387 So.2d 393, 399 (Fla. 5th DCA 1980). "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." Gary v. D. Agustini & Asociados, S.A., 865 F.Supp. 818 (S.D.Fla.1994) (quoting Bowleg v. Bowe, 502 So.2d 71, 72 (Fla. 3d DCA 1987)). The basis for plaintiff's unjust enrichment claim is the tangible benefit purportedly derived when Allstate reduced the amount of his bills. Dr. Zidel does not and cannot allege his contractual remedy is inadequate. Therefore, Dr. Zidel has failed to state a viable claim for unjust enrichment and Count I must be dismissed.[3]

---

[3] Martinez v. Weyerhaeuser Mortg. Co., 959 F.Supp. 1511, 1518-18 (S.D. Fla.1996) (dismissing unjust enrichment claim for failure to allege an adequate remedy at law did not exist); D. Agustini & Asociados, 865 F.Supp. at 827 (dismissing unjust enrichment claim where plaintiff sought contractual remedy). See also Poe v. Estate of Levy, 411 So.2d 253, 256 (Fla. 4th DCA 1982)(alleged express agreement precluded quasi-contract claim); Cross v. Strader Constr. Corp.,

## II.    Count II Fails To Adequately Allege Breach Of Contract

As plaintiff concedes in his Second Amended Complaint, Allstate is contractually and statutorily obligated only to pay "reasonable" amounts for services rendered to persons covered under Allstate insurance policies. While plaintiff complains bitterly that Allstate "improperly applied" the rates plaintiff agreed to accept under the CCN contracts, he nevertheless fails to allege any factual foundation for the conclusion that those rates were not in fact reasonable. Indeed, the Second Amended Complaint is devoid of any express allegation that the amounts paid by Allstate to plaintiff were not reasonable amounts for the services rendered. At a basic level, therefore, plaintiff has failed to allege that Allstate did not properly discharge its obligation to pay reasonable amounts for covered services. Consequently, plaintiff has failed to allege a breach of contract claim and Count II must be dismissed. See Industrial Medicine Publishing Co. v. Colonial Press of Miami, Inc., 181 So.2d 19 (Fla. 3rd DCA 1965)(breach of contract claim must allege breach of specific duty).

## III.    Count III Fails To Properly Allege A RICO Claim And Must Be Dismissed

The self-serving conclusion alleged by plaintiff, that a "silent PPO" is "illegitimate," "fraudulent," and "unlawful" is hollow rhetoric, inadequate to establish a RICO violation. There is nothing inherently fraudulent or deceptive about a non-directed network. The only question, therefore, is whether plaintiff has actually pleaded a viable RICO claim. He has not.

### A.    RICO Claims Are Not Proper for Class Action Treatment.

Assuming, arguendo, that plaintiff otherwise could adequately plead each element of a claim under RICO, Count III still must be dismissed. Plaintiff's RICO claims, which sound in mail and wire fraud, are not appropriate for class action treatment because they require individualized showings of misrepresentation, reliance, injury and damages. See Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir.1996)(RICO claims based on mail and wire fraud are not appropriate for class treatment because, even "if it could be shown that the appellants were engaged in a scheme to defraud and made misrepresentations to further that scheme, the plaintiffs would still have to show, on an individual basis, that they relied on the

---

768 So. 2d 465 (Fla. 2nd DCA 2000)(breach of contract and quantum meruit are mutually

5

misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages"); Pelletier v. Zweifel, 921 F.2d 1465, 1498-1500 (11th Cir. 1991); Gibbs Properties Corp. v. CIGNA Corp., 196 F.R.D. 430 (M.D. Fla. 2000)(claim that insurers violated RICO through fraudulent scheme to charge excessive premiums was not appropriate for class treatment because thousands of "mini trials" would be necessary to establish reliance). Cf. Fickler v. Am. South Corp., 176 F.R.D. 583 (M.D. Fla. 1997)(denying class certification of securities fraud claims because a fraud class action cannot be certified when individual reliance will be an issue). See also Gloria v. Allstate Country Mut. Ins. Co., Civ. No. SA-99-CA-676-PM, slip op. (W.D. Tex., Sept. 29, 2000) (holding in a case challenging PIP payment reductions that RICO actions are "inappropriate" for class action treatment) (copy attached).

**B.    Count III Fails To Allege Any Claim For Fraud Or Other RICO Violation**

Plaintiff's RICO claims, alleged en mass, should be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Despite generously sprinkling the word "fraud" throughout the complaint and citing a litany of criminal statutes,<sup>4</sup> plaintiff has not remotely alleged that Allstate engaged in racketeering activity. See Bill Buck Chevrolet, Inc. v. GTE Florida, Inc., 54 F. Supp. 2d 1127, 1132 (M.D. Fla. 1999)("claims under RICO must be subjected to scrutiny due to their potential abuse by civil litigants").

Plaintiff does not allege a single fact reflecting criminal or fraudulent conduct by Allstate. He does not identify an act, a date, a place, or a method by which Allstate sought to accomplish any such offenses. Plaintiff only alleges that Allstate applied a discount to bills for services he rendered. However, he admits that Allstate provided documentation to him with Allstate's checks which expressly stated that Allstate had applied the contractual CCN rate to plaintiff's bills. Plaintiff knew what amount he had billed and, thus, knew when he received a payment from Allstate for an amount that was less than his invoice. He nevertheless accepted Allstate's payments without question or complaint. Those transactions, as alleged by plaintiff, are so far

---

exclusive).

<sup>4</sup> Although the Second Amended Complaint contains oblique references to the Travel Act and to extortion, there are no facts pleaded which could remotely support a bona fide claim under either theory.

6

removed from the purposes of the federal Racketeer Influenced and Corrupt Organizations Act,
18 U.S.C. §1961 et seq., as to make Count III ludicrous on its face.

### 1.     Count III Fails to State a Claim under 18 U.S.C. § 1962(a).

Plaintiff fails to plead a claim under 18 U.S.C. § 1962(a) because he has not and cannot
establish that he was harmed as a result of investment activity by Allstate. Plaintiff only alleges
that he was injured in his property, without alleging any connection between Allstate's
investment and his alleged injury. Neither injury resulting from predicate racketeering acts nor
mere reinvestment of alleged racketeering proceeds into a business activity is adequate, however,
to state a claim under § 1962(a). Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771,
779 n. 6 (7th Cir. 1994)("the majority of circuits hold that the use or investment of the
racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate
racketeering acts is inadequate"); Fogie v. THORN Americas, Inc., 190 F.3d 889, 895 (8th Cir.
1999); Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co., 981 F.2d 429, 437 (9th Cir.1992)
("a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to
show that he or she was injured by the use or investment of racketeering income"); Ouaknine v.
MacFarlane, 897 F.2d 75, 82 (2d Cir.1990); Craighead v. E.F. Hutton & Co., 899 F.2d 485, 494
(6th Cir.1990); Rose v. Bartle, 871 F.2d 331, 356-58 (3d Cir.1989); Grider v. Texas Oil & Gas
Corp., 868 F.2d 1147, 1149 (10th Cir. 1989). See also Brittingham v. Mobil Corp., 943 F.2d
297, 305 (3d Cir.1991) ("If [reinvestment] were to suffice, the use-or- investment injury
requirement would be almost completely eviscerated when the alleged pattern of racketeering is
committed on behalf of a corporation... . Over the long term, corporations generally reinvest their
profits, regardless of source."). Because he has alleged injury only from predicate acts, and not
from the investment-use of the converted funds, plaintiff's §1962(a) claim fails.

### 2.     Count III Fails to State a Claim under 18 U.S.C. § 1962(c).

#### (a)     No "Enterprise" Is Pleaded.

Plaintiff's attempt to plead a claim under § 1962(c) also fails. Recovery is available
under §1962(c) only for a person who is victimized by the employees or associates of an
interstate enterprise that is conducted through a pattern of racketeering activity. See Bill Buck

7

Chevrolet, Inc., 54 F. Supp. 2d at 1132.    Proper pleading of an enterprise requires allegations of "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir. 1990).  See United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524 (1981).  Moreover, an enterprise:

> must be more than a group of people who get together to commit a "pattern of racketeering activity"...and more than a group of associated businesses that "are operated in concert" under the control of one family.    The hallmark of an enterprise is "structure."   There must be "a structure and goals separate from the predicate acts themselves"....An enterprise can be formal or informal; there need not be much structure, but the enterprise must have some continuity and some differentiation of the roles within it.

Richmond v. Nationwide Cassel, L.P., 52 F.3d 640, 645 (7th Cir. 1995)(citations omitted).[5]

Plaintiff has not set forth any meaningful allegations regarding structure, continuity, or common course of conduct of any alleged associations.   Consequently, plaintiff has failed to adequately allege a RICO enterprise and his RICO claims should be dismissed on that basis alone.  E.g., Arenson v. Whitehall Conv. and Nursing Home, Inc., 880 F. Supp. 1202, 1209 (N.D. Ill. 1995) (dismissing RICO claim because plaintiffs had alleged little more than the statutory language and had not supported that conclusory statement with facts).

### (b)    No "Pattern" of "Racketeering Offenses" Is Alleged.

Plaintiff also fails to allege sufficiently predicate racketeering offenses, let alone a pattern of racketeering activities. Racketeering activity is limited to those offenses set forth in 18 U.S.C. §1961(1).  The RICO statute is not to be used as a means to create federal cases out of garden-

---

[5] See Marshall v. Atlanta, 195 B.R. 156, 168 (N.D. Ga. 1996)(the "existence of an enterprise consisting of an association with a common purpose and continuity of structure, distinct from the pattern of racketeering in which it allegedly has been engaged, must be alleged"); Bill Buck Chevrolet, 54 F. Supp. 2d at 1135; Emery v. American General Finance, Inc., 134 F.3d 1321, 1324 (7th Cir. 1998)("The firm must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate appearing) firm and uses the firm as the instrument of his criminality").

8

variety commercial disputes and fraud claims in the absence of racketeering activity. Banco Latino Int'l v. Gomez Lopez, 95 F. Supp. 2d 1327, 1333 (S.D. Fla. 2000)[6]

Plaintiff's efforts to establish mail fraud and wire fraud are insufficient. "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991). A RICO complaint based on mail fraud or wire fraud must allege the content of each representation and identify, by specific pleading, the acts of each individual charged. See Graue Mill Development Corp. v. Colonial Bank & Trust Co., 927 F.2d 988 (7th Cir. 1991); Ray v. Karris, 780 F.2d 636 (7th Cir. 1985); R.E. Davis Chem. Corp. v. Nalco Chemical Co., 757 F.Supp. 1499 (N.D. Ill. 1990). When multiple actors are alleged to be part of a scheme, each must be informed of the specific acts committed. P&P Marketing, Inc. v. Ditton, 746 F. Supp. 1354 (N.D. Ill. 1990). Each mailing or wire transmission alleged must be "in furtherance of the scheme." Jepson Inc. v. Makuta Corp., 34 F.3d 1321 (7th Cir. 1994). Furthermore, to establish mail fraud or wire fraud, a plaintiff must plead and prove "that the defendant held the requisite mens era ... a conscious knowing intent to defraud" (Pelletier, 921 F.2d at 1499) and a "RICO plaintiff's allegations of scienter cannot be 'merely conclusory and unsupported by any factual allegations.'" Republic of Panama v. BOCCI Holdings, 119 F.3d 935, 949 (11th Cir. 1997); Bill Buck Chevrolet, 54 F. Supp. 2d at 1132-33.

---

[6] See Robert Suris Gen. Contractor Corp. v. New Metropolitan Fed. Sav. and Loan Assn., 873 F.2d 1401, 1404 (11th Cir. 1989)("'Plaintiff has taken a simple breach of contract or garden-variety fraud claim and attempted to boot-strap it into a 'federal case' by couching the allegations in [RICO] statutory language. This is not the purpose for which RICO was enacted.'"); Hunter v. J. Craig Constr. Co., 51 F.3d 275, 1995 WL 141359 (7th Cir. Mar. 30, 1995)("The purpose of [the RICO pleading] requirements is to weed out garden variety fraud allegations and prevent RICO from being misused as a tool wherewith a disgruntled party may exact disproportionate vengeance against his partners or associates when their business dealings turn sour"); Mendelovitz v. Vosicky, 40 F.3d 182, 187 (7th Cir. 1994)(a "garden variety business fraud masquerading as a RICO claim" is "just not the proper vehicle" for redress); S.I.G. Food Serv. Assoc. v. Mann, 27 F.3d 569, 1994 WL 260754 (7th Cir. June 14, 1994)("we must be careful to distinguish plain 'garden-variety fraud' from a 'pattern of racketeering activity' with sufficient continuity and relationship between the predicate acts to satisfy the RICO statute").

The essence of plaintiff's claims is that Allstate paid amounts which were less than that billed by plaintiff for medical treatments to Allstate PIP insureds. Neither the mailings nor any alleged action, however, constituted or included a misrepresentation. To the contrary, the payments were accompanied by a document expressly explaining that CCN negotiated rates were applied by Allstate -- hardly fraudulent conduct or conduct indicative of fraudulent intent. There is simply nothing pleaded, beyond mere conclusory statements, upon which scienter can be based. Because the alleged mailings and transmissions served no purpose in a fraud or in a fraudulent inducement of plaintiff to provide services, they do not support a mail or wire fraud scheme. See United States v. Maze, 414 U.S. 395, 94 S. Ct. 645 (1974); United States v. Altman, 48 F.3d. 96 (2d Cir. 1995); United States v. Keane, 522 F.2d 534 (7th Cir. 1975). And, as a result, the §1962(c) claim also must be dismissed. See, e.g., Richmond, 52 F.3d at 645; Bill Buck Chevrolet, 54 F. Supp. 2d at 1135; Gomez Lopez, 95 F. Supp. 2d at 1333.

In all events, even if racketeering activity were properly alleged, it did not occur in a "pattern" as required by the RICO statute. Sections 1962(a), (c), and (d) require a plaintiff to allege a "pattern" of racketeering in order to state a RICO claim. H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 245, 109 S. Ct. 2893 (1989); H.G. Galli more, Inc. v. Abdul, 652 F. Supp. 437, 440 (N.D. Ill. 1987). In order to establish such a pattern, plaintiff must allege at least two predicate acts which are related and continuous. H.J., 492 U.S. at 239; Bill Buck Chevrolet, 54 F.Supp. 2d at 1134. See Vicom, 20 F.3d at 779. There also must be an implicit future threat of criminal activity. Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1022 (7th Cir.1992).

The complaint fails to allege any pattern. A claim arising out of a single contract is insufficient to comply with the pattern requirement. Skycom Corp. v. Telstar Corp., 813 F.2d 810 (7th Cir. 1987). The single claim alleged by this one plaintiff, asserting the sole injury to be nonpayment of an alleged debt, also bring this complaint outside the scope of RICO's pattern requirement. Lapin Enterprises, Inc. v. Lee, 803 F.2d 322 (7th Cir. 1986).

Furthermore, the requirement that the pattern have "continuity" is also missing from the complaint. A scheme that has a single finite goal, is designed to be short-lived and has no threat of future criminal conduct does not satisfy the continuity prong of the pattern requirement. See

10

Short v. Belleville Shoe Mfg.co., 908 F.2d 1385 (7th Cir. 1990); Olive Can Co., Inc. v. Martin, 906 F.2d 1147 (7th Cir. 1990). Continuity can be either "open-ended" or "closed-ended." Open-ended continuity involves acts which occur over a shorter period of time but pose a threat of continuing criminal activity. V.S. Investors v. V.S. Management, Inc., 1994 WL 722035, at *2 (N.D. Ill. Dec. 29, 1994). In order to show open-ended continuity, a plaintiff must demonstrate: (1) a specific threat of repetition; (2) that the predicate acts or offenses are part of an ongoing entity's regular way of doing business; or (3) that the defendant operates a long-term association that exists for criminal purposes. Midwest, 976 F.2d at 1023. Closed-ended continuity is shown by a "series of related predicate acts 'extending over a substantial period of time'" now concluded. V.S. Investors, 1994 WL 722035, at *2 (quoting McDonald v. Schnecken, 18 F.3d 491, 497 (7th Cir. 1994)). In assessing allegations of closed-ended continuity, courts consider: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. Vicom, 20 F.3d at 780. See H.J., 492 U.S. at 239; Bill Buck Chevrolet, 54 F.Supp. 2d at 1134. And, courts do "not look favorably on many instances of mail and wire fraud to form a pattern." Midwest, 976 F.2d at 1025. See also Olive Can, 906 F.2d at 1151; V.S. Investors, 1994 WL 722035, at *5.

Plaintiff has not, however, alleged either closed or open-ended continuity. The Complaint contains no allegations demonstrating that there is a specific threat of repetition; that the alleged predicate acts or offenses are part of Allstate's regular way of doing business; or that Allstate operates a long-term association that exists for criminal purpose. Plaintiff includes only the bare allegation that Defendants' alleged policy and practices would continue unless halted by this Court. This unsupported contention does not satisfy a showing of continuity. See, e.g., Midwest, 976 F.2d at 1023.

### 3.    Count III Fails to State a Claim under 18 U.S.C. § 1962(d).

Plaintiff also has failed to properly allege a §1962(d) claim. A plaintiff asserting a violation of §1962(d) must allege that the "conspirators agreed to participate directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity." United States

11

v. Castro, 89 F.3d 1443, 1451 (11th Cir. 1996). A RICO conspiracy cannot be charged, therefore, in the absence of a properly pled substantive RICO violation. Plaintiff has failed to adequately allege RICO predicate acts, failed to allege an enterprise, and failed to allege a pattern of racketeering activity. As a result, plaintiff has not and cannot properly plead RICO conspiracy under §1962(d). See Callahan v. United States, 881 F.2d 229, 235 (6th Cir.1989).

## C.   Count III Fails To Allege Any Cognizable Claim Of Fraud.

Simply put, the Second Amended Complaint, like its predecessors, fails to plead facts which would lead anyone to conclude that Allstate defrauded plaintiff or otherwise committed predicate racketeering offenses. There is no deceitful conduct by Allstate pleaded. None of Allstate's alleged actions were concealed in any way. Allstate's alleged statements, moreover, were not false. Nor has plaintiff alleged that he relied in any meaningful way to his detriment upon any alleged misstatement by Allstate.

In fact, there is no disputing the fact that Allstate told plaintiff exactly what it was doing and why. Allstate accompanied payments with an EOB which expressly stated that the CCN rates had been applied. Moreover, plaintiff cannot contest that he possessed information with which to independently ascertain both that the negotiated rates had been applied and the amount of the reduction -- his own billing records. There is no law which holds that payment of a bill in a reduced amount, based on an asserted contractual right, where that payment was accompanied by a written explanation, can somehow constitute fraud.

Count III thus does not allege any "circumstances constituting fraud ... with particularity" and fails to meet the requirements of Fed. R. Civ. P. 9(b).[7] Rule 9(b) "serves an important

---

[7] Rule 9 is satisfied only where the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud.'" Brooks, 116 F.3d at 1380-81; Vicom, 20 F.3d at 776; Harrison Enterprises, Inc. v. Moran, 1999 W.L. 1211753 (S.D. Fla., Aug. 30, 1999). Moreover, "'Cryptic statements' suggesting fraud are not enough; '[mere allegations of fraud.... averments to conditions of mind, or references to plans or schemes are too conclusional to satisfy the particularity requirements no matter how many times such accusations are repeated.' " Graue Mill, 927 F.2d at 992; Haddock v. Lamna, 775 F.2d 441, 444 (1st Cir. 1985). Additionally, in a fraud case involving multiple actors, "'the

12

purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants against spurious charges of immoral and fraudulent behavior.' " Durham v. Business Management Associates, 847 F.2d 1505, 1511 (11th Cir. 1988). In addition, this rule applies with equal force regardless of whether a plaintiff attempts to plead mail fraud, wire fraud or any other fraudulent conduct as a predicate act for a RICO claim. Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364 (11th Cir. 1997). See also United States v. Cramer, 609 F.2d 126, 128 (5th Cir.1980)(explaining that the mail fraud statute "does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract"); McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 (1st Cir. 1990)("a breach of contract [does not] in itself constitute a scheme to defraud" under mail and wire fraud statutes).

The Second Amended Complaint alleges none of these critical details with particularity. Indeed, the allegations make it clear that plaintiff was not misled and could not reasonably have relied upon any alleged misstatement by Allstate. See Pelletier, 921 F.2d at 1499-1500 (when the alleged predicate act is mail or wire fraud, the plaintiff must have been the target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme); Johnson Enter.of Jacksonville, Inc. v. FAL Group, Inc., 162 F.3d 1290, 1318 (11th Cir. 1998)(misrepresentations made to someone other than the plaintiff will not support RICO claim based on mail or wire fraud); Petrol, Ltd. v. Radulovic, 764 So.2d 878 (Fla. 5th DCA 2000)(failure to properly allege reliance on alleged misstatements warranted dismissal of both fraud and RICO claims). Instead, the Second Amended Complaint contains only cryptic

---

complaint should inform each [actor] of the nature of his alleged participation in the fraud.'" Vicom, 20 F.3d at 778 (quoting Divider v. Acadian Extractive Indus., Inc. 822 F.2d 1242, 1247 (2d Cir.1987)); Brooks, 116 F.3d at 1380 (quoting Vicom). Courts routinely have rejected complaints that lump multiple actors together without specifying the actions taken by each of them. See, e.g., Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of complaint that was "bereft of any detail concerning who was involved in each allegedly fraudulent activity" and "lumped] all the defendants together and [did] not specify who was involved in what activity."). See also Design Time, Inc. v. Synthetic Diamond Technology, Inc., 674 F. Supp. 1564, 1569 (N.D. Ind. 1987).

and conclusory allegations charging Allstate with vague and unsubstantiated acts of conspiracy, fraud and racketeering. Those allegations are insufficient as a matter of law.

Plaintiff has also failed to articulate with particularity the predicate acts underlying his alleged RICO violations. "A RICO claim predicated on mail or wire fraud must sketch out both the scheme to defraud and how the mail or wires furthered that scheme...A plaintiff must identify the mailings and the role they played in the fraud." Biegnet v. Wilson, 642 F. Supp. 768, 770 (N.D. Ill. 1986). See In re Cascade Int'l Secs. Litigation, 840 F. Supp. 1558, 1582 (S.D. Fla. 1993)("To maintain a RICO action, at a minimum, the plaintiffs must allege sufficient facts with enough specificity to show probable cause that the predicate acts were committed"); Bill Buck Chevrolet, supra; Harrison Enterprises, supra.

Plaintiff's flimsy mail and wire fraud allegations simply do not meet that standard. Plaintiff fails to allege how the mailings and wires could be fraudulent or used to facilitate a fraud. The Second Amended Complaint states only that Allstate sent an EOB reflecting the reductions which plaintiff contends should not have been taken. At no point in the chain of alleged events, however, did Allstate make a material misstatement or omission of fact upon which plaintiff could or did rely. Plaintiff, therefore, cannot meet the requirements of Rule 9(b).

## D.    In All Events, Count III Is Not a "Short and Plain Statement of the Claim Showing That the Pleader Is Entitled to Relief."

Rule 8(a)(2) requires that a complaint contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, Rule 8(e)(1) states that each "averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). Under Rule 8, a complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." Wade v. Hopper, 993 F.2d 1246, 1249 (7th Cir.1993).

Plaintiff has improperly intertwined a prolix, vague, internally contradictory and incomprehensible claim which purports to be based on several sections of the RICO statutes, including 18 U.S.C. § 1962(a), 1962(c) and 1962(d). Plaintiff's abstruse pleading and commingling of theories, thus fails to meet the requirements of Rule 8. Fed. R. Civ. P. 8. See

14

also Rule 12.1(1), Gen. Rules of the Southern District of Florida ("If you allege violations of more than one subsection of § 1962 [each] should be pled as a separate RICO claim.").

## IV.   Count IV Fails To State A Viable Claim And Must Be Dismissed.

Count IV, styled "Declaratory Judgment," in effect asks this Court to declare that Allstate's conduct, as alleged in connection with the various and sundry theories asserted elsewhere in the Complaint, is "wrong." Count IV, is, at best, redundant, provides no basis for independent declaratory relief against Allstate, and must be dismissed. See Fed.R.Civ.P. 12(f).

## V.   Count V Fails To Allege Any Cognizable Violation Of The Florida PIP Statute

Dr. Zidel cannot plead a viable claim under Florida Statute §627.736(10). In the Park Place Doctors Action, the district court dismissed claims brought against Allstate by Dr. Zidel and others pursuant to Subsection (10). In its order, a copy of which is attached hereto, the district court correctly concluded the statute does not allow for a private cause of action against Allstate. Op. at p. 6. The decision in the Park Place Doctors Action is conclusively binding on Dr. Zidel, who was a party to that case. See Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990)(the doctrine of res judicata precludes a subsequent suit on claims which were raised, or which could have been raised, in a prior suit); Aquatherm Indus., Inc. v. Florida Power & Light Co., 84 F.3d 1388, 1394-95 (11th Cir. 1996)(Florida law requires plaintiffs to "raise all available claims involving the same circumstances in one action"); Tuma v. Dade County Public Schools, 989 F. Supp. 1471, 1473 n.2 (S.D. Fla. 1998)(res judicata means previous parties to an action, including those in privity with them, are barred from relitigating issues that were or could have been raised in the initial action). Dr. Zidel's attempt to reassert claims under Subsection 10 is thus barred by res judicata and Count V must be dismissed.[8]

Even if it were not conclusively binding, the decision in the Park Place Doctors Action illustrates the proper analysis for this claim. The statute is a regulatory provision, subject to enforcement by the Commissioner of Insurance, and does not authorize any private right of

---

[8] As noted above, the Park Place Doctors Action was voluntarily dismissed subject to the express condition that Dr. Zidel remain bound by the Order dismissing his claim under Section 627.736(10). See supra, fn 1.

15

action. See Florida Stat. §624.155 (expressly providing that private civil actions may be brought against insurers for violations of several enumerated statutory sections, not including §627.736(10)). Nor is there any basis upon which to conclude that the legislature intended to provide for an implied private cause of action.[9]

In the Park Place Doctors Action, the district court dismissed claims brought against Allstate by Zidel and others pursuant to Subsection (10). The district court held that the statute regulates those insurers who offer a "preferred provider" policy, but does not require any insurer to do so. Op. at p. 5. Since Allstate does not offer a "preferred provider" policy, the court correctly concluded the statute does not apply to Allstate. Id. In addition, the court held that the statute is not intended to benefit medical providers, that medical providers are not within the class of persons the statute was enacted to protect, and that the provider's allegations of a violation of the statute did not state a cause of action. Op. at p. 6. Consequently, the Court correctly concluded that no private right to bring such a cause of action exists. Id. As a result, plaintiff's claim fails and Count VII must be dismissed. See also Murthy v. N. Sintha Corp., 644 So.2d 983, 985-86 (Fla. 1994)(no private cause of action may be maintained where neither a statute on its face nor the legislative history reveal an intent by the legislature to provide for a private right of action).

## Conclusion

As one commentator has stated, while "many providers have expressed outrage against what they have variously characterized as unethical to fraudulent behavior on the part of network organizations, the reality is that all too often the provider has signed an agreement without the proper due diligence as to the value to be received. 'Contracting provider beware' may well be

---

[9] The provisions of Florida Statute §627.736(10) govern conduct in the sale of insurance policies by insurance companies to their insureds. The purpose of §627.736(10) is to protect insureds from harm as a result of actions by insurance companies deemed inappropriate. Plaintiff is not an insured and thus is not in the class of persons the statute would be deemed to have intended to protect. Consequently, to the extent that any private right of action were determined to exist under the statute, it would not be available to plaintiff. See Fischer v. Metcalf, 543 So.2d 785, 788 (3d DCA 1989)(noting that a private cause of action is to be implied, if at all, only for a plaintiff who is "one of the class for whose especial benefit the statute was enacted").

16

the watchphrase for hospitals in the 1990s." Dickerson, Preferred Provider Organizations vs. Non-Directed Networks: A Provider Dilemma, Federation of American Health Systems (1998). Plaintiff's claims amount to nothing more than a simple payment dispute. For the foregoing reasons, therefore, Allstate Insurance Company respectfully requests that this Court enter an Order dismissing the Second Amended Class Action Complaint, with prejudice.

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to the attorneys on the attached list, this $\frac{11^{th}}{}$ day of January, 2001.

PETER J. VALETA
Florida Bar No. 327557
ROSS & HARDIES
150 North Michigan Ave., Suite 2500
Chicago, Illinois 60601
Telephone: (312) 750-3619
Telecopier: (312) 920-7241
Attorneys for Defendant

DAVID B. SHELTON
Florida Bar No. 0710539
RUMBERGER, KIRK & CALDWELL
P.O. Box 1873
Orlando, Florida 32802
Telephone: (407) 839-4511
Telecopier: (407) 841-2133
Attorneys for Defendant

SERVICE LIST

Douglas A. Blankman, Esquire
Kopelman & Blankman, P.A.
One Financial Plaza, Suite 1611
Ft. Lauderdale, FL  33394
Attorney for Plaintiff

Arthur Gold, Esquire
Gold, Rosenfeld & Coulson
11 S. LaSalle Street, Suite 2500
Chicago, IL  60603
Attorney for Plaintiff

Carlin Phillips, Esquire
Gogel, Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA  02747
Attorney for Plaintiff

Eric Lee
Atlas Pearlman, P.A.
350 East Las Olas Blvd., Suite 1700
Fort Lauderdale, FL  33301
Attorney for Plaintiff

William W. Deem, Esquire
McGuire, Woods, Battle & Boothe, LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL  32202
Attorney for Defendant,
CCN, Inc.

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

SEP 2 9 2000

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                DEPUTY CLERK

PETER GLORIA and DAVID PEREZ,      §
                                   §
            Plaintiffs,            §
                                   §
vs.                                §   CIVIL ACTION NO. SA-99-CA-676-PM
                                   §
ALLSTATE COUNTY MUTUAL             §
INSURANCE COMPANY and              §
ALLSTATE PROPERTY AND              §
CASUALTY COMPANY,                  §
                                   §
            Defendants.            §

## ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to

trial by the undersigned United States Magistrate Judge and consistent with the authority vested

in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and

Appendix C, Rule 1(f) of the Local Rules for the Assignment of Duties to United States

Magistrates, in the Western District of Texas, the following order is entered.

## I. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## II. PROCEDURAL HISTORY

Plaintiffs Peter Gloria and David Perez commenced this class action in the 57th District

Court of Bexar County, Texas against defendant Allstate County Mutual Insurance Company on

June 4, 1999, alleging violations under the Racketeering Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961, et seq., the Texas Insurance Code art. 21.21, and the Texas

1

Deceptive Practices Act ("DTPA") as well as breach of contract and fraud.[1] Because of the RICO claim, defendant removed the case to the District Court on June 25, 1999.[2] Defendant subsequently moved to dismiss the case because plaintiffs lacked standing.[3] Alternatively, defendant moved to transfer the case, under the first-to-file doctrine, to the Circuit Court of Cook County, Illinois, County Department, Chancery Division, where two substantially similar consolidated cases had previously been filed, or to stay the proceeding pending the outcome of a motion for nationwide class certification in the Illinois cases.[4] The parties then filed and the District Court granted a joint motion to stay proceedings until the Illinois cases were resolved.[5] On March 16, 2000, the District Court denied as moot defendant's motion to dismiss or in the alternative to transfer or stay.[6] Upon notice that the proceedings in Illinois had been resolved,[7] the District Court on April 13, 2000, ordered the stay lifted.[8] Defendant then moved for reconsideration of its motion to dismiss and the District Court Clerk received defendant's motion

---

[1] Docket no. 1, attachment (Original Complaint).

[2] Docket no. 1.

[3] Docket no. 2.

[4] Id.

[5] Docket nos. 4 and 6.

[6] Docket no. 7.

[7] See docket no. 10, exhibit 1. On March 21, 2000, the Illinois state court denied the motion for nationwide class certification in the consolidated cases, certifying instead only an Illinois class of Allstate insureds alleging essentially the same complaints as are at issue in this case.

[8] Docket no. 9.

2

to dismiss and/or strike the class allegations.[9] Plaintiffs responded to these motions and defendant replied.[10]

On May 8, 2000, plaintiffs filed their motion to certify a class action and the District Court Clerk received plaintiffs' first amended complaint which added factual allegations in support of their claims and which abandoned the fraud claim.[11] On May 16, 2000, defendant moved to stay the class certification proceedings pending a ruling on the motions to dismiss.[12] The parties stipulated that defendant's motions to dismiss the original complaint would apply to the first amended complaint.[13]

Plaintiffs' second amended complaint was filed on July 7, 2000,[14] and proceedings on defendant's pending motions to dismiss the original and first amended complaints were ordered stayed pending the filing of a motion to dismiss plaintiffs' second amended complaint.[15] The second amended complaint added defendant Allstate Property and Casualty Company[16] and

---

[9] Docket nos. 10 and 13, attachment. Defendant's motion to dismiss or to strike the class action was ordered filed on September 9, 2000.

[10] Docket nos. 14, 15, and 19.

[11] Docket nos. 16 and 15, attachment, respectively. Plaintiffs' first amended complaint was ordered filed on September 5, 2000.

[12] Docket no. 20.

[13] Docket no. 24.

[14] Docket no. 29.

[15] Docket no. 28.

[16] The defendants will be referred to collectively as "Allstate."

3

antitrust claims pursuant to 15 U.S.C. §§ 1 and 13.[17] On August 2, 2000, Allstate moved to

dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)[18]

and 12(b)(6)[19] and to strike or dismiss the class action allegations pursuant to 12(f).[20] Plaintiffs

have responded to these motions[21] and Allstate has replied.[22] On September 5, 2000, the Court

entered an order which provided that further consideration of plaintiffs' motion to certify a class

would not be undertaken until after resolution of the pending motions to dismiss.[23] On

September 12, 2000, the parties filed a stipulation stating that Allstate's motions to dismiss the

second amended complaint filed on August 2, 2000, are the motions the Court should address

and that all motions to dismiss filed prior to August 2 should be considered moot.[24] The

stipulation further provides that the, "Parties agree the Sherman antitrust violations alleged are

limited to violations of Section 1" and "that the Robinson-Patman Act does not apply."[25]

---

[17] Docket no. 29.

[18] Docket no. 34.

[19] Docket no. 32.

[20] Docket no. 36.

[21] These responses and one joint appendix originally were tendered to the Court with a joint motion to seal. On September 22, 2000, the Court entered an order, docket no. 54, which sealed portions of the responses and appendix and required plaintiffs to file redacted copied for the public record "within seven (7) calendar days" of the date of the Order. The Court has reviewed the unredacted copies – tendered in the sealed record – in preparing this Order.

[22] Docket nos. 61, 62, 63.

[23] Docket no. 43.

[24] Docket no. 50.

[25] Id. The Sherman antitrust violation alleged is pursuant to 15 U.S.C. § 1. The abandoned claim was an alleged violation of 15 U.S.C. § 13.

4

In sum, the pleadings for the Court's consideration are plaintiffs' second amended complaint,[26] Allstate's motions to dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(f).[27] and plaintiffs' responses.[28] The claims remaining at issue are those alleging violations of RICO; the Sherman antitrust Act, 15 U.S.C. §1; the Texas Insurance Code art. 21.21; and the DTPA; as well as the claim for breach of contract.

## III. FACTUAL BACKGROUND

As will be discussed more completely in Section V, when considering motions to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6), the Court is required to construe plaintiffs' factual allegations as true. Rule 12(b)(1) and (6) motions admit all well-pleaded facts in the complaint which it challenges.[29] Thus, in the spirit of Rules 12(b)(1) and (6), the Court sets forth the following narration of facts which are taken as true or admitted. The policy at issue provides:

Plaintiffs allege that at times during 1997 and 1998, they were provided personal injury protection ("PIP") and medical payments ("Medpay") coverage under their Texas personal automobile insurance policies issued by Allstate.[30] Allegedly, the PIP and Medpay coverage entitled plaintiffs to payment of the full amount of their medical expenses.[31] However, plaintiffs

---

[26] Docket no. 29.

[27] Docket nos. 34, 32, and 36, respectively.

[28] See note 21 above.

[29] Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995); Warfield v. Fidelity & Deposit Co., 904 F.2d 322, 326 (5th Cir. 1990).

[30] Docket no. 29 at 2.

[31] Id.

5

also allege that the PIP and Medpay provisions provide that the insureds would be paid their

"reasonable expenses" incurred for "necessary medical treatment."[32] The policies at issue

provide in relevant part that:

### PART B1-MEDICAL PAYMENTS COVERAGE

#### INSURING AGREEMENT

A.    We will pay reasonable expenses incurred for necessary medical and
      funeral services because of bodily injury:

      1.    Caused by accident and
      2.    Sustained by a covered person.

### PART B2-PERSONAL INJURY PROTECTION COVERAGE

#### INSURING AGREEMENT

A.    We will pay Personal Injury Protection benefits because of bodily injury:

      1.    resulting from a motor vehicle accident and
      2.    sustained by a covered person.

      Our payment will only be for losses or expenses incurred within three
      years from the date of the accident.

B.    Personal Injury Protection benefits consist of:

      1.    Reasonable expenses incurred for necessary medical and funeral
            services.[33]

---

[32] Id.

[33] Docket no. 29, exhibit, Texas Personal Auto Policy at 314, 316. The Court notes that
unless rejected by the insured, the PIP coverage set forth above is required by the Texas
Insurance Code which provides:
     "Personal injury protection" consists of provisions of a motor vehicle liability
     policy which provide for payment to the named insured in the motor vehicle
     liability policy and members of the insured's household, any authorized operator
     or passenger of the named insured's motor vehicle including a guest occupant, up
     to an amount of $2,500 for each such person for payment of all reasonable

6

The policy also provides that for each of these coverages the "liability shown in the Declarations for this coverage is our maximum limit of liability."[34]

Plaintiffs allege that at various times during 1997 and 1998, they have submitted medical expenses to Allstate for payment under their PIP coverage.[35] According to plaintiffs' allegations, Allstate wrongfully reduced the medical bills to an amount lower than 100% of the expenses actually charged.[36] Allegedly, Allstate accomplished this reduction by using a computerized cost-containment program which included an inaccurate fee schedule to reduce the medical expenses on a systematic basis.[37] Plaintiffs allege that this conduct was designed to reduce the insureds' PIP and Medpay benefits.[38] Allstate allegedly uses an internal fee schedule code (A1 or other similar code) "which is a designation that a medical charge exceeds the reasonable amount for the procedure in the region where the service was provided."[39]

Plaintiffs further allege that Allstate through the use of a computer data base developed by National Biosystems -- also known as ADP Integrated Medical Solutions, Inc. or IMS -- systematically reduces medical charges to "the 85th percentile" without considering the condition

---

expenses arising from the accident and incurred within three years from the date thereof[.] TEX. INS. CODE ANN. art. 5.06-3(b) (Vernon 1981).

[34] Id. at 315, 317. The Declarations showing liability limits are not part of the record.

[35] Docket no. 29 at 2.

[36] Id.

[37] Docket no. 29 at 2.

[38] Id.

[39] Id. at 2-3.

7

or age or the patient or the special certifications or qualifications of the provider.[39] Plaintiffs

contend that Allstate has made such reductions without utilizing any relevant or legitimate data

with which to compare medical charges in the region where the services were provided and that

Allstate does not consider the usual and customary fees of similar medical providers in the

geographic area.[41] Plaintiffs allege Allstate has not disclosed that it relies on a third party service

for an internal medical fee schedule by which to evaluate the reasonableness of medical

charges.[42]

Allstate allegedly refuses to explain the rationale for the reductions and will not disclose

its criteria for determining the reductions.[43] According to plaintiffs' allegations, Allstate's

position that a charge is not reasonable or customary may be stated in an explanation of benefits

or in a letter sent to the insured.[44] One such letter written to plaintiffs' counsel regarding a claim

from plaintiff Peter Gloria provides:

> I recently received a medical bill from CRAIG HONER for treatment your client
> received following the auto accident that occurred on the date shown above.
> Based on our review of the information submitted, I have sent a check to the
> health care provider for an amount less than the billed charges along with an
> Explanation of Benefits. Enclosed is a copy for your records.[45]

Your client's policy provides benefits for reasonable expenses for necessary

---

[40]  Id. at 3.

[41]  Id.

[42]  Id.

[43]  Id. at 4.

[44]  Docket no. 29 at 4.

[45]  The Explanation of Benefits is not part of the record.

8

> medical and funeral services because of bodily injury caused by an auto accident.
> We review all bills to ensure that the treatment and charges meet these criteria.
> Based on our review of information available to us, not all of the treatment or
> charges appear to meet these requirements.
>
> We are committed to the protection of our customers' interests. The provider may
> seek further review with us should there be disagreement with out evaluation. In
> the event that we are unable to reach an agreement with the provider, we intend to
> defend and, if necessary, indemnify our customer up to policy limits against
> actions that health care providers may take. We will also consider any other
> appropriate measures to protect our customer should the health care provider
> decide to pursue collection efforts for the unpaid portion of the bill that is causally
> related to the accident.[46]

Plaintiffs allege that this letter is an example of Allstate's intentionally vague and deceptive

representations and that insureds are deceived into believing that Allstate is complying with the

Texas Personal Automobile Policy and the Texas Department of Insurance when it is not.[47]

Plaintiffs contend they believe, to the best of their knowledge as lay persons, that the

treatment by their providers and the resulting charges were necessary and reasonable.[48] Plaintiffs

further contend that they agreed to compensate their doctors for all medical treatment rendered to

them arising out of their accidents and that they are subject to liability for the unpaid balance of

their bills.[49] According to plaintiffs' allegations, Allstate's practice of reducing medical charges

"interferes and conflicts with the physician-patient relationship and places the patient in a tug-of-

war between the insurance company and the medical provider."[50] Allegedly, Allstate's practice

---

[46] Docket no. 29, exhibit letter from Veronica McCullough.

[47] Id. at 5.

[48] Docket no. 29 at 5.

[49] Id.

[50] Id.

9

also causes Texas insureds to be subject to credit damage.[51]

Specifically, plaintiffs allege that plaintiff Gloria presented Allstate with allegedly reasonable medical charges of $5,849.50 and that Allstate allegedly reduced these charges by $334.40,[52] Gloria admits that he received from Allstate the full PIP coverage of $2,500.[53] Plaintiffs also contend that plaintiff Perez presented Allstate with allegedly reasonable medical charges of $2,241.00 and that Allstate allegedly reduced these charges by $65.[54] Plaintiffs allege that Allstate reduced the presented medical charges because the amounts were unreasonably high for plaintiffs' geographical region which Allstate did not identify.[55]

Plaintiffs have brought this class action, individually and on behalf of all similarly situated Allstate insureds, alleging that Allstate systematically, wrongfully, and improperly reduced medical bills for services provided to the insureds covered under the PIP and Med-Pay provisions of their personal automobile insurance policies.[56] As stated above plaintiffs federal claims allege violations of RICO and of the Sherman antitrust Act; their state claims allege violations of Texas Insurance Code and the DTPA as well as breach of contract.

Allstate has moved to dismiss pursuant to Rule 12(b)(1) arguing that the Court lacks

---

[51] Id.

[52] Docket no. 29 at 8.

[53] Id.

[54] Id.

[55] Id.

[56] Docket no. 29 at 1,

10

jurisdiction because plaintiffs have no standing to bring their claims.[57] In addition, Allstate has moved to dismiss plaintiffs' antitrust claim pursuant to Rule 12(b)(6) arguing that plaintiff has failed to state a claim against Allstate for antitrust violations.[58] Finally, Allstate has moved to strike or dismiss plaintiffs' class action allegations pursuant to Rule 12(f) arguing that plaintiffs' claims are "inherently unsuitable" for a class action.[59]

### IV. ISSUES

1.  Whether plaintiffs have standing to assert their claims.

2.  Whether plaintiffs have state a cause of action for antitrust violations.

3.  Whether plaintiffs allegations are inherently unsuitable for class action treatment.

### V. STANDARDS FOR MOTIONS TO DISMISS

#### A.  Fed. R. Civ. P. 12(b)(1)

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure permit a party to challenge the subject matter jurisdiction of the district court to hear a case.[60] Lack of subject matter jurisdiction may be found in one of three instances: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[61] The burden of

---

[57] Docket no. 34.

[58] Docket no. 32.

[59] Docket nos. 36 and 37.

[60] FED.R.CIV.P. 12(b)(1).

[61] Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.), cert. denied 454 U.S. 897 (1981); see Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

11

proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.[62] Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.[63]

A facial attack on subject matter jurisdiction requires the court to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction.[64] Such an attack is valid if from the face of the pleadings, the court can determine it lacks subject matter jurisdiction.[65] In examining a Rule 12(b)(1) motion, the district court is also empowered to consider undisputed matters of fact reflected in the record.[66] Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his or her claim that would entitle him or her to relief.[67] "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[68]

When a Rule 12(b)(1) motion is filed with a Rule 12(b)(6) motion, the court should always consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

---

[62] McDaniel v. United States, 899 F.Supp. 305, 307 (E.D. Tex. 1995), aff'd, 102 F.3d 551 (5th Cir. 1996).

[63] Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.), cert. denied 449 U.S. 953 (1980).

[64] Venture I, Inc. v. Orange County, Tex., 947 F.Supp. 271, 276 n. 7 (E.D. Tex. 1996).

[65] Id.

[66] Williamson, 645 F.2d at 413.

[67] Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).

[68] Id. (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir.1996)).

12

merits.[69] This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the court lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.[70] A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).[71]

**B.    Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6), Fed. R. Civ. P., plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[72] When considering a motion to dismiss for failure to state a claim, all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff.[73] The United States Supreme Court has elaborated:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously

---

[69] Hitt v. Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

[70] Id.

[71] Home Builders Ass'n of Miss., 143 F.3d at 1010.

[72] Kaiser Aluminum & Chem. Sales, Inc. v. Avondale, 677 F.2d 1045, 1050 (5th Cir.), cert. denied, 459 U.S. 1105, 103 S.Ct. 729 (1982) (quoted in Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc., 864 F.Supp. 14, 15 (W.D. Tex. 1993), affirmed, 30 F.3d 627 (5th Cir. 1994)).

[73] Fernandez-Montez v. Allied Pilots Assoc., 987 F.2d 278, 284 (5th Cir. 1993). See Capital Parks, Inc., 30 F.3d at 629 ("A court's decision to dismiss for failure to state a claim may be upheld 'only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.' Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986).") See also O'Quinn v. Manuel, 773 F.2d 605, 608 (5th Cir. 1985).

insupportable. On the contrary, if as a matter of law "it is clear that no relief could be proved consistent with the allegations," a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.[74]

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[75] Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.[76] This is a rigorous standard, but subsumed within it is the requirement that a plaintiff state its case with enough clarity to enable the court and the opposing party to determine whether a claim is alleged.[77]

**C.    Fed. R. Civ. P. 12(f)**

Rule 12(f) provides that a party may move to have stricken from pleadings " any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[78] As with other Rule 12 motions to dismiss, a Rule 12(f) motion to strike is generally disfavored.[79] When considering a Rule 12(f) motion to strike, the Court construes all factual allegations opposed as

---

[74] Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 2232 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)).

[75] Conley, 355 U.S. at 45-46, 78 S.Ct. at 102.

[76] Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1250 (5th Cir. 1997); Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); Fernandez-Montes, 987 F.2d at 284.

[77] Elliott v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[78] FED. R. CIV. P. 12(f).

[79] Kaiser Aluminum, 677 F.2d at 1057.

14

true.[80]

## V. ARGUMENTS AND CONCLUSIONS OF LAW

### A.    Plaintiffs' standing to bring their federal claims

Plaintiffs have alleged that Allstate violated 18 U.S.C. § 1962(c) by unlawfully

participating in an association-in-fact enterprise with IMS through a pattern of racketeering

activity in the form of mail and wire fraud, subjecting plaintiffs to liability for unpaid medical

bills.[81] Plaintiffs also allege that Allstate violated the antitrust laws, specifically 15 U.S.C. § 1,

by conspiring and/or contracting with IMS to illegally fix or restrain the amounts Allstate would

pay as reimbursement for health care expenses incurred by its insureds.[82] Relying on Rule

12(b)(1), Defendants have moved to dismiss the RICO and Sherman antitrust claims arguing that

plaintiffs failed to invoke the Court's jurisdiction because they lack standing to bring their

claims. In particular, Allstate argues that plaintiffs have not alleged any actual or threatened

injury resulting from Allstate's alleged conduct.

Standing is jurisdictional under Article III of the Constitution, and plaintiffs lacking

standing may not litigate their claims in federal court.[83] The constitutional minimum of standing

includes three elements: (1) an injury-in-fact; (2) a causal connection between the injury and the

conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable

---

[80] See id. at 1047, 1060.

[81] Docket no. 29 at 15-17.

[82] Docket no. 29 at 13-15.

[83] Meadowbriar Home for Children v. Gunn, 81 F.3d 521, 529 (5th Cir. 1996).

15

decision.[44] The party invoking federal jurisdiction bears the burden of establishing these elements.[45] "The litigant must clearly and specifically set forth facts sufficient to satisfy these Article III standing requirements."[46] Each element should be supported in the same manner as any other matter on which the plaintiff has the burden of proof.[47] Thus, "[a]t the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'"[48] However, dismissal is appropriate at the pleadings stage "if the complaint itself shows a bar to relief -- when this happens it is 'beyond doubt' that no set of facts will allow plaintiff to prevail."[49]

"Injury-in-fact" is an invasion of a legal right that is "(a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"[50] "Particularized" means the injury affects the plaintiff in an individual and personal way.[51] "Allegations of possible future injury do not satisfy the standing requirement of Article III. A threatened injury must be 'certainly

---

[44] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992).

[45] Lujan, 504 U.S. at 561, 112 S.Ct. at 2136.

[46] Whitmore v. Arkansas, 495 U.S. 149,155, 110 S.Ct. 1717, 1723 (1990).

[47] Id.

[48] Lujan, 504 U.S. at 561, 112 S.Ct. at 2137 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990)).

[49] Mahone v. Addicks Util. Dist. of Harris County, 836 F.2d 921, 926 (5th Cir. 1988) (citing Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986)).

[50] Lujan, 504 U.S. at 560, 112 S.Ct. at 2136.

[51] Id., 504 U.S. at 561 n.1, 112 S.Ct. at 2136 n.1.

16

'impending' to constitute injury-in-fact."[92]

Even accepting plaintiffs' allegations in the second amended complaint as true, the Court concludes that plaintiffs have failed to state an injury-in-fact. Plaintiffs contend that because of Allstate's allegedly illegal RICO conduct, plaintiffs "have suffered damages and liability to the extent of their unpaid bills plus interest."[93] Plaintiffs also have pleaded that they "are subject to legal liability for the unpaid balance of their bills."[94] What plaintiffs have pleaded is the possibility that at some time in the future their "property" will be injured by Allstate's determination of reasonable medical expenses.[95] That the harm is not imminent or actual is

---

[91] Whitmore, 495 U.S. at 158, 110 S.Ct. at 1724-25 (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308-09 (1979) (citations omitted)). To have standing under Sherman antitrust and RICO laws, a private plaintiff must be "injured in his business or property." 15 U.S.C. § 15(a) (1997); 18 U.S.C. § 1964(c) (2000). Under the Sherman antitrust laws, a private plaintiff must also establish that the injury is an antitrust injury. Doctor's Hosp. of Jefferson, Inc. v. Southeast Medical Alliance, 123 F.3d 301, 305 (5th Cir. 1997).

[93] Docket no. 29 at 16.

[94] Docket no. 29 at 5.

[95] The parties have cited several state court decisions in support of their arguments. LaMothe v. Auto Club Ins. Ass'n, 543 N.W.2d 42, 44 (Mich. App. Ct. 1995, pet. denied) and McGill v. Automobile Ass'n of Mich., 526 N.W.2d 12, 14 (Mich. App. Ct. 1994), cited by Allstate, support the conclusions reached here. In each of these cases, the insurance company reduced the medical charges to what the company determined was a reasonable rate and agreed to defend, indemnify, and/or protect the insureds from future liability because of the reductions. The Michigan Appeals Court found that because the plaintiffs failed to assert factual allegations of actual or threatened injury, they failed to plead a case or controversy. Plaintiffs rely on Puritt v. Allstate, 672 N.E.2d 353, 356 (Ill. App. Ct. 1996, pet. denied) in which the Illinois Appeals Court reversed a finding that the insureds lacked standing. The court concluded the insureds did not have to wait for lawsuits to be filed or collection attempts to be made before there was injury-in-fact. However, the Illinois state law action in Puritt is factually distinct from the case at issue because Puritt alleged that he paid the balance not paid by Allstate. Id. at 354. In addition, a health care provider, who was not paid the full amount charge for the services provided, was included as a plaintiff. Id.

17

particularly obvious in light of plaintiffs' allegations that Allstate's allegedly illegal conduct

occurred in 1997 and 1998 and, even though the fact that plaintiffs' twice amended their

complaint, the amended complaint contains essentially the same general allegations regarding

possible injury as the original complaint filed in June 1999. There are no allegations that a health

care provider who was not fully reimbursed by Allstate has challenged the determination of what

are reasonable expenses, billed plaintiffs for balance, threatened to sue for the balance, or

threatened to resort to a collection agency for payment of the balance. Moreover, plaintiffs do

not allege that Allstate has failed to fulfill its promise to defend and indemnify plaintiffs in the

event of any legal action brought against them or that Allstate failed to protect plaintiffs from

collection attempts. As to plaintiff Gloria, the Court is particularly puzzled by the apparent lack

of injury. It appears from the second amended complaint that, in addition to making assurances

to defend, Allstate paid Gloria the maximum PIP benefits due under the policy. Even if Gloria

were correct that Allstate's method of calculating payment is incorrect, Gloria's PIP benefits

would still not exceed $2,500. In sum, because plaintiffs have alleged speculative rather than

actual or threatened liability for the unpaid balance of their medical bills, plaintiffs lack standing

to bring their RICO claims.[36]

---

[36] See Price v. Pinnacle Brands, Inc., 138 F.3d 602, 606 (5th Cir. 1998) (because
pleadings failed to show tangible financial loss to plaintiffs, "plaintiffs' conclusional allegations,
unaccompanied by assertions of even general fact to show injury, fail to satisfy the RICO
standing requirement); In Re Taxable Mun. Bond Sec. Litig., 51 F.3d 518, 522 (5th Cir. 1995)
(no standing because plaintiff failed to establish eligibility for loan program); see also Maio v.
Aetna, Inc., 221 F.3d 472, 475 (3rd Cir. 2000) (no RICO injury when predicated exclusively on
the possibility that future events might occur, rather than on the actual occurrence of those events
and their present effect on the value of the health care insurance appellants received"); Mira v.
Nuclear Measurements Corp., 107 F.3d 466, 474 (7th Cir. 1997) ("plaintiffs have failed to
establish that they or the plan suffered an injury (i.e., economic loss) as a result of the
defendant's conduct).

As to plaintiffs' antitrust claims, plaintiffs allege that Allstate's conduct limited reimbursement that would be paid for covered medical services, limited the type of medical services that would be covered, and discouraged insureds from seeking needed medical services that were unaffordable other than through the insurance policy with Allstate.[77] With respect to limiting reimbursement to reasonable charge for necessary medical services, the foregoing discussion of plaintiffs' failure to allege injury-in-fact in their RICO claim applies as well to the antitrust claims. Plaintiffs have not alleged that they suffered an actual or threatened injury because of Allstate's limited reimbursement of medical charges. With respect to plaintiffs' other alleged antitrust injuries -- limiting medical services and discouraging insureds from seeking needed medical service -- plaintiffs generally allege only that Allstate's conduct "interferes and conflicts with the physician-patient relationship and places the patient in a tug-of war between the insurance company and the medical provider."[78] There are no specific factual allegations suggesting that either plaintiff received limited medical services, did not seek medical services, or suffered any conflict or interference in a relationship with their health care provider because of Allstate's conduct. Thus, plaintiffs have failed to allege an actual or threatened injury that would entitle them to bring a Sherman antitrust claim against Allstate.

In sum, plaintiffs have failed to state an injury-in-fact. Although plaintiffs generally allege that they have been injured and suffered damages, their supporting allegations which describe the injury and harm set forth a possible injury they could suffer in the future and not a

---

[77] Docket no. 29 at 14.

[78] Id. at 5.

19

"certainly impending" injury or an actual injury already suffered."[99] Therefore, Allstate's Rule

12(b)(1) motion to dismiss for lack of subject matter jurisdiction is granted, and plaintiffs'

federal RICO and Sherman antitrust claims are dismissed.

**B.    Have plaintiffs stated a Sherman antitrust claim**

Allstate has moved to dismiss plaintiffs' Sherman antitrust claim pursuant to Rule

12(b)(6).[100]  In particular, Allstate argues that plaintiffs have failed to state an antitrust injury, an

essential element of an antitrust claim.[101]

To pursue an antitrust claim, plaintiff must show: "(1) injury in fact, an injury to the

plaintiff proximately caused by the defendant's conduct; (2) antitrust injury; and (3) proper

plaintiff status, which assures that other parties are not better situated to bring suit."[102] An

antitrust injury is an

> injury of the type the antitrust laws were intended to prevent and that flows from
> that which makes the defendants' acts unlawful. The injury should reflect the
> anticompetitive effect either of the violation or the anticompetitive acts made
> possible by the violation.  It should in short be "the type of loss that the claimed

---

[99]  See Lewis v. Casey, 518 U.S. 343, 357, 116 S.Ct. 2174, 2183 (1996) ("That a suit may
be a class action ... adds nothing to the question of standing, for even named plaintiffs who
represent a class 'must allege and show that they personally have been injured, not that injury has
been suffered by other, unidentified members of the class to which they belong and which they
purport to represent.' " Citing Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40, n. 20,
96 S.Ct. 1917, 1925, n. 20 (1976), quoting Warth v. Seldin, 422 U.S. 490, 502, 95 S.Ct. 2197,
2207 (1975)).

[100]  Docket no. 32.

[101]  Docket no. 33 at 2-4.

[102]  Doctor's Hosp., 123 F.3d at, 305.

20

violations . . . would be likely to cause."[117]

The Supreme Court in <u>Blue Shield of Virginia, v. McCready,</u>[118] discussed allegations that

set forth a private cause of action for antitrust violations. The Court explained

> McCready charges Blue Shield with a purposefully anticompetitive scheme. She
> seeks to recover as damages the sums lost to her as the consequence of Blue
> Shield's attempt to pursue that scheme. She alleges that Blue Shield sought to
> induce its subscribers into selecting psychiatrists over psychologists for the
> psychotherapeutic services they required, and that the heart of its scheme was the
> offer of a Hobson's choice to the subscribers. Those subscribers were compelled
> to choose between visiting a psychologist and forfeiting reimbursement, or
> receiving reimbursement by forgoing treatment by the practitioner of their
> choice.[119]

The Court further noted that "[a]lthough McCready was not a competitor of the conspirators, the

injury she suffered was inextricably intertwined with the <u>injury the conspirators sought to inflict</u>

<u>on psychologists and the psychotherapy market.</u>[120]

Assuming for argument's sake that plaintiffs have alleged injury from Allstate's conduct,

plaintiffs have not alleged any anticompetitive effect of Allstate's acts or how any

anticompetitive acts were made possible by Allstate's conduct. As stated above Plaintiffs' allege

that Allstate's conspiracy and/or contract with IMS was a scheme to fix or restrain the amount of

reimbursement due for medical services, limit the type of medical services, and discourage the

use of needed medical services. These allegations do not specify any specific market that

---

[117] <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 489, 97 S.Ct. 690, 697
(1977) (quoting <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395 U.S. 100, 125, 89 S.Ct.
1562, 1577 (1969)) (emphasis added).

[118] 457 U.S. 465, 483, 102 S.Ct. 2540, 2550 (1982).

[119] <u>Id.</u>

[120] <u>McCready</u>, 457 U.S. at 484, 102 S.Ct. at 2551.

21

Allstate targeted for injury by its relationship with IMS or that plaintiffs were in someway injured by any anticompetitive acts targeted at some market. Plaintiffs do not allege that they were required to forego treatment by any specific health care provider in favor of another. Their allegations merely state that Allstate reviewed their medical expenses and reduced them to what Allstate determined was a reasonable rate. If a health care provider concluded that Allstate's decision was incorrect, it would be free to pursue collection efforts against the policy holder -- which Allstate would then defend -- or against Allstate directly. Plaintiffs have not alleged either has occurred.

Therefore, because plaintiffs failed to allege an antitrust injury, they have not stated a cause of action under the Sherman Antitrust Act. Allstate's Rule 12(b)(6) motion to dismiss is granted and plaintiffs' Sherman antitrust claim is dismissed.

### C.    Should plaintiffs' class action allegations related to federal claims be stricken

Defendants have moved under Rule 12(f) to strike plaintiffs' class action allegations arguing that plaintiffs have not pleaded facts sufficient to demonstrate that the prerequisites of Federal Rule of Civil Procedure 23 are met.[107] Rule 23 requires that the representatives must suffer the same injuries as the class members they seek to represent.[108] Because plaintiffs allege only that they wish to represent other similar to them and in light of the Court's conclusion that plaintiffs lack standing to bring the federal claims because they have not alleged injury-in-fact, the proposed class would appear to lack standing as well since "similar" class members would

---

[107] Docket nos. 36 and 37 at 2.

[108] Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625-26, 117 S.Ct. 2231, 2251 (1997) (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896 (1977)).

not have suffered actual injury.

Conclusory class allegations, such as those pleaded by plaintiffs here, have been deemed suitable for dismissal early in the case.[109] When plaintiffs' allegations are analyzed in light of the prerequisites of Rule 23, plaintiffs have not alleged common issues that predominate. Instead, issues such as whether a particular provider's charge was reasonable and/or necessary for a particular treatment for a particular injury in a particular location must be determined on an individualized basis. Each putative plaintiff would be required to prove entitlement to benefits under the terms of the policy[110] and that the medical expenses were reasonable and the services were necessary.[111] Moreover, even if plaintiffs prove the computerized evaluation of the PIP claims was flawed the parties and the Court still will need to analyze each charge on every claim for reasonableness and necessity. Finally, courts have found that class actions are not appropriate in antitrust or RICO cases when individualized questions of injury predominate.[112]

---

[109] See In Re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996) ("Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic fact to indicate that each requirement of the rule is fulfilled."); Cook County College Teachers Union v. Byrd, 456 F.2d 882, 885 (7th Cir.) ("[The Union] was obliged in its complaint to allege facts bringing the action within the appropriate requirements of the Rule"), cert. denied, 409 U.S. 848 (1972); Minority Police Officers Ass'n v. city of South Bend, 555 F.Supp. 921, 924 (N.D. Ind.) ("Specific facts must be alleged sufficient to meet the requirements of the rule, as mere repetition of the rule or loosely defined classwide allegations are insufficient"), aff'd in part, appeal dismissed on other grounds, 721 F.2d 197 (7th Cir. 1983); see also Doctor v. Seaboard Coast Line R.R. Co., 540 F.2d 699, 706-10 (4th Cir. 1976) (denying class certification because plaintiff provided no facts about the existence of alleged class);.

[110] Western Alliance Ins. Co. v. Northern Ins. Co., 176 F.3d 825, 828 (5th Cir. 1999).

[111] Tex.Ins.Code art. 5.06-3(b).

[112] See Alabama v. Blue Bird Body, 573 F.2d 309, 327-28 (5th Cir. 1978) (fact that each putative plaintiff had to prove conspiracy in particular geographical area and payment of "supracompetive" price which depended on quality and price of bus precluded antitrust class

23

In sum, plaintiffs are not adequate class representative because they lack standing and have no cause of action. In addition, their class allegations do not allege facts suggesting that common issues, other than Allstate's allegedly flawed computerized reductions in medical expenses, predominate. Therefore, to the extent the Court has jurisdiction to address plaintiffs' class allegations, when plaintiffs' lack of standing -- and when the purported class would appear to lack standing as well -- Allstate's motion to strike the class allegations is _granted_ as to the federal claims and the class allegations as to the federal claims are _stricken_.

## VI. STATE CLAIMS

Having determined that the Court lacks jurisdiction over plaintiffs' federal claims because plaintiffs lack standing to bring them, the Court must now determine how to dispose of plaintiffs' state law claims. The 28 U.S.C. §1367 provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution.[113]

In this case, the Court dismisses plaintiffs' federal claims for lack of standing, requisite of

---

action); Windham v. American Brands, Inc., 565 F.2d 59, 65 (4th Cir. 1977) (crux of antitrust action "is injury, individual injury. While a case may present a common question of violation, the issues of injury and damage remain the critical issues in such a case and are always strictly individualized."), cert. denied, 435 U.S. 968 (1978); In Re Beef Indust. Antitrust Litig., 1986 WL 8890, at *1 (S. D. Tex. June 3, 1986) ("critical issues of injury and damage are inherently individualized" unless subject to mechanical or formula calculation); Abernathy v. Bausch & Lomb, Inc., 97 F.R.D. 470, 474-75 (N.D. Tex. 1983) (because proof of actual anticompetitive injury in private antitrust cases is highly individualistic, courts generally find antitrust " claims ill-suited for maintenance as class actions") (citations omitted); Kahler v. Firstplus Fin, Inc., 248 B.R. 60, 77 (Bankr. N. D. Tex. 2000) (RICO class action not proper because "each member would have to prove legal causation").

[113] 28 U.S.C. 1367(a).

24

jurisdiction under Article III. Therefore, because the Court did not have original jurisdiction over plaintiffs' federal claims , it may not exercise the supplemental jurisdiction provided by section 1367. Thus, plaintiffs' state claims, including the allegations for a state class action, under the Texas Insurance Code article 21.21 and the DTPA as well as the claim for breach of contract are dismissed without prejudice to filing in state court.

## VII. CONCLUSION

Because plaintiffs lack standing to bring their federal claims such that the Court lacks jurisdiction, Allstate's Rule 12(b)(1) motion[114] is GRANTED and plaintiffs' RICO and Sherman antitrust claims are DISMISSED. Assuming that plaintiffs' second amended complaint alleges injury and standing, Allstate's Rule 12(b)(6) motion to dismiss plaintiffs' Sherman antitrust claim[115] is GRANTED on the ground that plaintiffs have failed to state a claim upon which relief may be granted and their antitrust claim is DISMISSED. As plaintiffs have failed to adequately allege the prerequisites of a federal class action, Allstate's Rule 12(f) motion to strike the federal class action allegations[116] is GRANTED and plaintiffs' class action allegations related to RICO and Sherman antitrust violations are STRICKEN. In light of the Court's disposition of plaintiffs' federal class action allegations, plaintiffs' motion to certify a class action[117] are DISMISSED as moot.

Because no federal claim remains in this lawsuit, plaintiffs' state claims under the Texas

---

[114] Docket no. 34.

[115] Docket no. 32.

[116] Docket no. 36.

[117] Docket no. 16.

25

Insurance Code article 21.21 and the DTPA as well as the claims for breach of contract are

DISMISSED without prejudice to re-filing in state court, as may be permitted by state law and

procedure. Plaintiffs' class action allegations related to the state claims are also DISMISSED

without prejudice to re-filing in state court.

The Clerk shall enter judgment accordingly and providing that each side shall bear its

own costs.

IT IS SO ORDERED.

SIGNED and ENTERED this 29 day of September, 2000.

Pamela A. Mathy
United States Magistrate Judge

26

AO 460 (Rev. 5/85) Judgment in a Civil Case

**FILED**

# United States District Court
## Western District of Texas

SEP 2 9 2000

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

PETER GLORIA and DAVID PEREZ

Plaintiffs

### JUDGMENT IN A CIVIL CASE

v.

ALLSTATE COUNTY MUTUAL INSURANCE
COMPANY and ALLSTATE PROPERTY AND      **CASE NUMBER:**      SA-99-CV-676 PM
CASUALTY COMPANY

Defendants

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

that because plaintiffs lack standing to bring their federal claims such that the Court lacks jurisdiction, Allstate's Rule 12(b)(1) motion is granted and plaintiffs' RICO and Sherman antitrust claims are dismissed. Assuming that plaintiffs' second amended complaint alleges injury and standing, Allstate's Rule 12(b)(6) motion to dismiss plaintiff's Sherman antitrust claim is granted on the ground that plaintiffs have failed to state a claim upon which relief may be granted and their antitrust claim is dismissed. As plaintiffs have failed to adequately allege the prerequisites of a federal class action, Allstate's Rule 12(f) motion to strike the federal class action allegations is granted and plaintiffs' class action allegation related to RICO and Sherman antitrust violations are stricken. In light of the Court's disposition of plaintiffs' federal class action allegations, plaintiffs' motion to certify a class action are dismissed as moot. Because no federal claim remains in this lawsuit, plaintiffs' state claims under the Texas Insurance Code article 21.21 and the DTPA as well as the claims for breach of contract are dismissed without prejudice to re-filing in state court, as may be permitted by state law and procedure. Plaintiffs' class action allegations related to the state claims are also dismissed without prejudice to re-filing in state court.

| September 29, 2000 | William G. Putnicki |
|---|---|
| *Date* | *Clerk* |

Kathy Cavazos
*(By) Deputy Clerk*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6269-CIV-DIMITROULEAS

DRS. MARTIN MAY, ALAN LAZAR,
MARTIN HALE, JOEL RUSH, PAUL ZIDEL,
RICHARD LINN, RICHARD BERKOWITZ,
DOUGLAS STRINGHAM, ANDREW
ELLOWITZ, ALAN NOVICK, DEBRA WEISS,
and NEIL SCHECHTER,

Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,

Defendant.

_____/



## ORDER ON MOTION TO REMAND
## AND MOTION TO DISMISS

THIS CAUSE is before the Court upon Plaintiffs', Drs. Martin May, Alan Lazar, Martin

Hale, Joel Rush, Paul Zidel, Richard Linn, Richard Berkowitz, Douglas Stringham, Andrew

Ellowitz, Alan Novick, Debra Weiss and Neil Schechter Motion for Remand, filed herein on

March 14, 2000 and Defendant, Allstate Insurance Company's Motion to Dismiss, filed herein

on March 1, 2000. The Court has carefully reviewed the motions and is otherwise fully advised

in the premises.

### I. BACKGROUND

Plaintiffs are doctors, who practice under the names "Park Place Therapeutic Center" and

"Park Place Orthopaedics & Rehabilitation." As this entity, they submit claims to Allstate for

payment on behalf of persons insured by Allstate for personal injury protection benefits, and

receive payments from Allstate.

1

Defendant, Allstate, sells automobile insurance policies in Florida which contain personal

injury protection, pursuant to Florida law. Under the PIP coverage, Allstate agrees to pay 80%

of reasonable charges for necessary medical treatment provided to covered insured who suffer

injury in an automobile accident. Plaintiffs claim that the amount that they have received,

pursuant to bills they have sent to Defendant, of work they have done on Defendant's insureds, is

"substantially less than [Allstate] is statutorily and contractually obligated to pay."

On January 21, 2000, Plaintiffs filed a two Count Complaint in the Circuit Court,

Seventeenth Judicial Circuit, in and for Broward County, Florida. The action was timely

removed. The Complaint is for: 1) Declaratory Relief; and 2) Breach of Contract.

Plaintiffs seek remand to State Court, arguing that the amount of PIP benefits paid to

Plaintiffs pursuant to illegally obtained discounts by Defendant, compared to the amounts that

should have been paid, can not be determined with certainty. They could potentially exceed or

fall below the necessary jurisdictional amount, and therefore Defendants cannot provide, by the

preponderance of the evidence, that the amount in controversy exceeds the jurisdictional

requirement. Defendant counters this argument by stating that Plaintiffs are engaged together in

the practice of medicine, submit the claims together, and receive payments together. Defendant

submits the Explanation of Medical Bill Payments and Health Insurance Claim Forms as

evidence that Plaintiffs are engaged in a united practice of medicine.

Defendant next moves to dismiss this action. It argues that Plaintiffs do not allege that

Allstate offers "preferred provider" PIP coverage under the policy. The insured are entitled to

choose the health care provider they want, on their own. Plaintiffs claim that Defendant pays PIP

claims for medical benefits at 80% of "preferred provider" rates. Defendant argues that it is not

required to offer a "preferred provider" policy to its insured and therefore, has not failed to pay

2

PIP benefits as required by § 627.736, Florida Statutes. Defendant also argues that the Complaint does not establish that it breached an obligation under the PIP coverage or § 627.736(10), Florida Statutes, by paying medical benefits at a "reasonable" rate, if it is less than what Plaintiffs request. Defendant's last argument is that there is no private cause of action permitted for violations of § 627.736(10). In sum, Defendant claims Plaintiffs do not state a claim.

Plaintiffs, in their two page response, argue that they strongly disagree with Defendant's arguments in the dismissal motion, and aver that they do state a claim.

## II. DISCUSSION

### A. Remand

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (11th Cir. 1996). Federal Jurisdiction should be found, unless it appears within "a legal certainty that the claim is really for less than the jurisdictional amount." Id. at 1356. However, "[w]here a plaintiff has made an unspecified demand for damages, a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer. Id. at 1356-57; See Gafford v. General Electric Company, 997 F.2d 150, 160 (6th Cir. 1993).

Plaintiffs claim that the amount of controversy in this action can only be determined by calculating the amount of PIP benefits paid individually, to Plaintiffs. However, Plaintiffs are engaged together in the practice of medicine under two names, "Park Place Therapeutic Center" and "Park Place Orthopaedics & Rehabilitation." Plaintiffs submit forms to receive payment, and receive payment collectively. The Health Insurance Claim Forms, submitted by Defendant,

3

shows that the I.D. Number of Referring Physician contains the same tax number on each sheet.

Additionally, in the space marked "Physician's, Supplier's Billing Name...," Park Place

Therapeutic Center is noted on each form. On the Explanation of Medical Bill Payment,

submitted by Defendant, in the space marked, "Treatment Rendered By," is the name Park Place

Therapeutic Center. "[W]hen several plaintiffs unite to enforce a single title or right, in which

they have a common and undivided interest, it is enough if their interests collectively equal the

jurisdictional amount." Troy Bank of Troy, Indiana v. G.A. Whitehead & Company, 222 U.S.

39, 40-41 (1911). The aggregate amount of the reduction of payments clearly exceeds the

$75,000 threshold necessary to confer jurisdiction on this Court.

## B. Dismiss

It is long settled that a complaint should not be dismissed unless it appears beyond a

doubt that the plaintiff could prove no set of facts in support of his claim which would entitle

him to relief. Conley v. Gibson, 355 U.S. 41 (1957). The allegations of the claim must be taken

as true and must be read to include any theory on which the plaintiff may recover. See Linder v.

Portocarrero, 963 F.2d 332, 334-336 (11th Cir.1992) (citing Robertson v. Johnston, 376 F.2d 43

(5th Cir.1967)). There must be a showing that the plaintiff has no claim before granting a motion

to dismiss. June Vernon and Delroy Vernon v. Medical Management Associates of Margate,

Inc., 912 F.Supp. 1549 (S.D.Fla. 1996).

Defendant's first argument is that the Complaint fails to allege a breach of contract or

violation of § 627.736. Plaintiffs allege in their Complaint, that Allstate pays PIP claims for

medical benefits at 80% of "preferred provider" rates. However, Plaintiffs fail to define

"preferred provider" rates, nor do they allege that such rates were not reasonable. Plaintiffs

claim, then, that because Allstate does not provide an option to insureds to purchase a "preferred

4

provider" policy for PIP benefits, it breached its contracts of insurance with its insureds and violated § 627.736(10) by paying at those rates. Therefore, Plaintiffs' only allegation is that Allstate is paying certain health care providers reduced rates which those providers have agreed to accept for medical services covered under the Allstate PIP contracts.

Plaintiffs, in the Complaint, claim that Defendant's standard policy does not comply with § 627.736(1)(a), which necessitates a party to have personal injury protection of "[e]ighty percent of all reasonable expenses for necessary medical..." Plaintiffs claim that they provided medical treatment, and were paid less than what is statutorily and contractually obligated to pay. However, Plaintiff's claims are not based on this Florida Statute.

Plaintiffs also argue that Defendant refers to Plaintiffs actions as "preferred providers," and such designation is improper. § 627.736(10), Florida Statutes, states in pertinent part, "(10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as 'preferred providers,' which shall include health care providers...The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits..." Plaintiffs attached the insurance policy to the Complaint. The Court may consider the policy for purposes of a motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997); Smith Barney, Inc. v. Scanlon, 180 F.R.D. 444, 446 (S.D.Fla. 1998). Such consideration of a document attached to Plaintiff's complaint does not convert the motion to dismiss into a motion for summary judgment. Id. The policy does not contain the term "preferred providers," and Plaintiffs are not the parties the statute is meant to protect. Additionally, the statute does not state that Defendant must offer a "preferred providers" plan, but only regulates those parties that choose to do so.

5

Defendant argues that the statute was not enacted to benefit medical providers, and therefore, does not allow Plaintiffs to rely on it as their basis for damages. In Fischer v. Metcalf, the Third District Court of Appeals discussed three criteria[1] which are pertinent to whether the legislature intended a statute to benefit a party. They are, "1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; 2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; and 3) whether judicial implication is consistent with the underlying purposes of the legislative scheme." Fischer v. Metcalf, 543 So.2d 785, 788 (Fla. 3rd DCA 1989); See Cort v. Ash, 422 U.S. 66 (1975).

§ 627.736, Florida Statutes, was not enacted to benefit medical providers. Plaintiffs are not the class whose especial benefit the statute was enacted. The statute was enacted to protect insureds from harm as a result of accidents with other drivers, and actions by insurance companies. The statute was not enacted to ensure that medical providers received what they felt was a reasonable wage. The legislature did not imply, nor can it be inferred, that the medical providers were the parties the statute was enacted to protect. The Court cannot infer that the Legislature intended to protect the medical providers with the enactment of § 627.736. "Legislative intent, rather than duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." Murthy v. N. Sinha Corp., 644 So.2d 983, 985 (Fla. 1994). Plaintiffs claim for relief based on Defendant's alleged violation of § 627.736, Florida, Statutes, does not allege a cause of action.

---

[1] Out of a four part test.

6

The remaining issue is whether Plaintiffs may sue Defendant for paying them what they do not deem to be reasonable rates, as preferred providers. However, the term preferred provider is not mentioned in the insurance policy and Defendant's actions do not resemble the statute's definition of the term preferred provider. Therefore, Plaintiffs claim is based on being intended third party beneficiaries to Defendant's insurance policies. Plaintiffs are not in direct contractual privity with Defendant. "[T]he term 'privity' is a word of art derived from the common law of contracts and used to describe the relationship with persons who are parties to a contract." Espinosa v. Sparber, et al., 612 So.2d 1378, 1380 (Fla. 1993). Usually only parties to a contract may collect on the contract. However, "an intended third party beneficiary of a contract may recover damages from the contracting parties if they breach the contract." Jacobson v. Heritage Quality Construction Co., Inc., 604 So.2d 17, 18 (Fla. 4th DCA 1992). "Essential to the right of a third party beneficiary of a contract to maintain an action for its breach is a clear intent and purpose of the contract to directly and substantially benefit the third party." Thompson v. Commerical Union Insurance Company of N.Y., 250 So.2d 259, 262 (Fla. 1971). The insurance policies between Defendant and the insureds are clear in their intent to directly and substantially benefit Plaintiffs[2]. Plaintiffs, in the present action, "must plead the contract which was expressly for (their) benefit and one under which it clearly appears that (they were) a beneficiary." Weimar v. Yacht Club Point Estates, Inc., 223 So.2d 100, 102 (Fla. 4th DCA 1969). Plaintiffs properly pled that they were intended third party beneficiaries to defeat the motion to dismiss.

## III. CONCLUSION

Plaintiffs did not, nor could they, properly plead a cause of action under § 627.736(1)(a)

---

[2] Although this benefit is not the main crux of the insurance policy.

7

and (10) as the basis of Defendant's liability. The statute does not delineate that there exists such a cause of action exists, nor is the statute drafted to benefit medical providers. Plaintiffs do state a cause of action for breach of contract, in that they are the intended third party beneficiaries to the insurance policy, but not on the basis that they were improperly treated as preferred providers.

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand is hereby **DENIED**;

2. Defendant's Motion to Dismiss is hereby **GRANTED**; in part. Motion to Dismiss Count I is hereby Granted; Count I is dismissed with prejudice. Motion to Dismiss Count II is hereby **GRANTED**; Count II dismissed without prejudice, with leave to amend in accordance with this Order. An Amended Complaint shall be filed within then days of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this ___ day of April, 2000.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Peter Valeta, Esq.
Lawrence Kopelman, Esq.
David B. Shelton, Esq.

8