FILED BY _____ D.C

2001 JAN 25  AM 9: 49

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-CIV-6061-FERGUSON/SNOW

| | |
|---|---|
| DR. PAUL ZIDEL, and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ALLSTATE INSURANCE COMPANY, | ) ) |
| Defendant / Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| COMMUNITY CARE NETWORK, INC., d/b/a CCN, | ) ) ) |
| Third-Party Defendant. | ) ) |

## ALLSTATE INSURANCE COMPANY'S THIRD-PARTY
## COMPLAINT AGAINST COMMUNITY CARE NETWORK, INC. d/b/a CCN

Defendant, Allstate Insurance Company ("Allstate"), by its counsel, for its third-party complaint against Community Care Network, Inc., d/b/a/ CCN ("CCN"), states as follows:

### Jurisdiction and Venue

1.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

1

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because third party defendant is subject to personal jurisdiction in this District.

### The Parties

3. Allstate is an insurance company incorporated under the laws of the State of Illinois with a principal place of business located at 2775 Sanders Road, Northbrook, Illinois. Allstate transacts business in the Southern District of Florida.

4. CCN is a corporation incorporated under the laws of the State of California.

5. CCN's corporate headquarters, and principal place of business, is located in San Diego, California. CCN maintains a regional headquarters located in Tampa, Florida. CCN transacts business in the Southern District of Florida

### Background

6. CCN is a national organization that develops and markets health care service provider networks.

7. CCN contracts with physicians, hospitals and other health care providers to form provider networks for group health, workers' compensation and automobile insurance.

8. CCN maintains and markets provider networks in more than forty states and the District of Columbia. CCN claims approximately 368,000 healthcare providers and facilities are members of CCN's networks.

9. Members of CCN's provider networks agree to accept less than their usual and customary charges for health care services provided to CCN's client's insureds and beneficiaries.

2

10. CCN markets its networks to entities that provide health care benefits to large numbers of individuals, such as insurance companies, employers, and third-party administrators, in the networks' operating areas.

11. CCN claims to have the largest total enrollment of any provider network organization in the nation, with approximately 32 million people utilizing CCN's network services.

12. CCN also claims to manage the nation's largest directly-contracted, auto-specific provider network, with more than 224,000 provider locations in forty states.

13. During all relevant times, CCN represented to Allstate that CCN had in place in Florida a network of providers who had agreed to provide medical care services to individuals insured by CCN's clients at contractual rates lower than the providers' usual and customary charges.

14. During all relevant times, CCN represented to Allstate that CCN's contracts with its Florida network of providers permitted CCN to extend the agreed-upon network pricing to automobile insurance companies, generally, and specifically to claimants entitled to benefits under Allstate's automobile insurance personal injury protection benefits ("PIP") coverage.

15. During all relevant times, CCN represented to Allstate that CCN had the legal authority and the ability to create a network provider and repricing services program for Allstate within CCN's provider network in the State of Florida.

16. On or about February 1, 1999, reasonably relying upon the various representations of CCN, Allstate entered into an agreement with CCN for network provider and repricing services for the period from February 1, 1999 through August 31, 1999, with regard to

3

Allstate's Florida automobile insurance PIP coverage (the "CCN Agreement"). The effective period for the CCN Agreement was subsequently extended through February 28, 2000.

17.   The CCN Agreement required CCN to provide Allstate with CCN's "Most Favored Customer Pricing" from CCN's network of providers, for services provided to individuals entitled to PIP benefits under Allstate's Florida automobile insurance policies.

18.   The CCN Agreement required Allstate to pay CCN for CCN's repricing services.

19.   Pursuant to the CCN Agreement, when an Allstate insured was treated by a CCN network provider for injuries suffered in an accident involving a motor vehicle, Allstate would be entitled to the CCN network rates agreed-upon between CCN and the provider.

20.   The CCN Agreement required Allstate to refer bills for medical services provided to individuals entitled to PIP benefits under Allstate's Florida automobile insurance policies to CCN for review.

21.   CCN was required to make a determination for each bill as to whether the services billed had been rendered by a provider who had a contract with CCN which authorized use by Allstate of the CCN network rates as agreed-upon between CCN and the provider.

22.   After making such determination, CCN would advise Allstate of each charge which was payable by Allstate at a CCN contractual rate by reducing the billed amount on each such bill in accordance with the applicable CCN rate and returning the adjusted bill, along with an Explanation of Review ("EOR"), to Allstate.

23.   Thereafter, in reliance upon CCN's determination that each such bill was payable at a CCN contractual rate, Allstate then would pay each such provider based upon the CCN network pricing provided to Allstate by CCN.

4

24. Additionally, Allstate would provide any PIP claimants who inquired regarding possible referrals to medical providers with an "800" number from which the claimants could obtain information about providers who participated in the CCN network.

25. For a period from approximately March, 1999, through February 28, 2000, CCN reviewed and repriced bills for services rendered to individuals entitled to PIP benefits under Allstate's Florida automobile insurance policies.

26. By returning a repriced bill to Allstate, CCN represented to Allstate that CCN had all necessary legal and contractual authority to authorize Allstate to pay such bills at the stated CCN network rate.

27. CCN knew that Allstate would make payments to network providers in reliance upon the EORs sent to Allstate by CCN.

28. Allstate in fact did make payments to network providers in reliance upon the EORs sent to Allstate by CCN. Allstate accompanied each payment with an Explanation of Benefits form ("EOB") which indicated that the amount paid by Allstate was based on the CCN network rates and that the patient only should be required to make its co-payment at 20% of the same contractual rate. A copy of each EOB was sent by Allstate to the pertinent insured or coverage beneficiary as well.

29. Among the bills submitted to CCN were certain invoices tendered to Allstate for services rendered by Dr. Zidel to individuals entitled to PIP coverage benefits under Allstate Florida automobile policies.

30. CCN repriced bills for services provided by Dr. Zidel to Allstate's PIP insureds, based upon CCN network rates, and then returned the repriced bills to Allstate, along with EORs.

5

31. In reasonable reliance upon CCN's submissions to Allstate, Allstate made payments on those bills for Dr. Zidel's services, based on CCN network rates.

32. Dr. Zidel has alleged in this action, among other things, that CCN was not authorized by contract to apply CCN network rates to bills for services he provided to insureds and beneficiaries of automobile insurers.

33. Dr. Zidel also has alleged in this action, that:

    a.   CCN knew that it was not permitted under the terms of CCN's contract with Dr. Zidel to enter into a contract with Allstate to provide network provider and repricing services for individuals entitled to benefits under Allstate PIP coverage;

    b.   CCN's agreement with Allstate was "illegal"; and

    c.   CCN breached its agreement with Dr. Zidel and other providers by entering into the CCN Agreement and applying the CCN network rates to bills for insureds and beneficiaries receiving benefits under Allstate PIP coverage.

34. In accordance with the terms of the CCN Agreement, Allstate has paid compensation to CCN for its repricing services, in an amount based on the cost benefit to Allstate of CCN's application of network rates to bills for services rendered by network providers to Allstate PIP claimants.

35. At various times, Allstate received inquiries from service providers concerning their participation in the CCN network and/or application of CCN network pricing to services rendered to claimants receiving benefits under Allstate PIP coverage.

36. Upon receipt of any such question, Allstate requested verification from CCN that the provider was properly a participant in the program and that the charges at issue were correctly repriced. In any circumstance where CCN could not reconfirm upon inquiry that a bill

6

was appropriately repriced, Allstate would attempt to correct the error by making additional payment(s) to the provider(s) in question.

37. Allstate incurred significant costs to process inquiries from providers and to verify the appropriateness of payments made on bills that had been repriced by CCN. CCN acknowledged its responsibility for many repricing errors and has reimbursed, in part, the resulting incremental costs incurred by Allstate.

38. By its terms, the CCN Agreement concluded as of March, 2000. Accordingly, Allstate ceased at that time to submit provider's bills to CCN for review or repricing, and also ceased to make payments to providers on the basis of CCN's network rates.

### Count I - Common Law Indemnity

39. Allstate repeats and realleges Paragraphs 1 through 38 as Paragraph 39 of Count I.

40. Allstate acted in good faith and in reasonable reliance upon the representations of CCN both when Allstate entered into the CCN Agreement and when Allstate made payments to providers based on the network pricing applied by CCN.

41. CCN owed a duty to Allstate to ensure that it had the right and authority to apply its network pricing to bills for services rendered to insureds and beneficiaries receiving benefits under Allstate PIP coverage before entering into the CCN Agreement.

42. CCN also owed a duty to Allstate to ensure that it had the right and authority to apply its network pricing to bills for services rendered by specific providers before applying CCN's network rates to bills submitted to CCN by Allstate.

43. To the extent that plaintiffs prevail in their assertion in this action that CCN was not authorized and lacked legal authority to apply network rates to services provided to

7

individuals entitled to PIP benefits from Allstate, then CCN also breached its obligations and duties to Allstate.

44. Any damages suffered by Dr. Zidel, or by any other member of the putative class, as a result of the application of network rates by CCN to bills tendered to CCN by Allstate, arise directly and exclusively through the fault of CCN and CCN is responsible for any such damages.

45. To the extent that plaintiff or members of the putative class are entitled to any recovery from Allstate with regard to such repriced bills, therefore, CCN is liable for such claims, and Allstate is entitled to indemnity from CCN.

46. As an additional element of damages, Allstate also is entitled to recover costs and expenses resulting from correcting payment of such CCN repriced bills, including but not limited to, its reasonable attorneys' fees incurred in defending claims as to which Allstate is entitled to indemnity from CCN.

### Count II - Breach of Contract

47. Allstate repeats and realleges Paragraphs 1 through 46 as Paragraph 47 of Count II.

48. The CCN Agreement obligated CCN to make available to Allstate CCN's network pricing from CCN's network of providers.

49. Pursuant to the CCN Agreement, when an individual entitled to PIP benefits was treated by a CCN network provider for injuries suffered in an accident involving a motor vehicle, Allstate was to be provided by CCN with the network rates agreed-upon between CCN and the provider.

8

50. The CCN Agreement required Allstate to refer bills for medical services provided to individuals entitled to PIP benefits under Allstate's Florida automobile insurance policies to CCN for review. CCN was obligated to make a determination for each such bill whether the services had been rendered by a provider who had a contract with CCN which authorized use by Allstate of the CCN network rates. Only after making the necessary determination, was CCN to reprice the bill in accordance with the CCN network rates.

51. By returning a repriced bill to Allstate, CCN represented to Allstate that CCN had all necessary legal and contractual authority to authorize Allstate to pay such bills at the stated CCN network rate.

52. According to the complaints filed in this action, CCN improperly repriced and returned to Allstate bills for services rendered to Allstate's PIP insureds. In particular, plaintiff has alleged that the providers' contracts with CCN did not authorize application of network pricing to services rendered to insureds and beneficiaries of automobile insurance.

53. In accordance with the terms of the CCN Agreement, Allstate has paid compensation to CCN for its repricing services, in an amount based on the cost benefit to Allstate of CCN's application of network rates to bills for services rendered by network providers to Allstate PIP claimants.

54. To the extent that plaintiffs prevail in their assertion in this action that CCN was not authorized and lacked legal authority to apply network pricing to services provided to individuals entitled to PIP benefits from Allstate, and to the extent that it is determined that plaintiff or other members of the class suffered damages as a result of CCN's improper

9

application of network rates to their bills, then CCN has breached the CCN Agreement, its contract with Allstate.

55.  Allstate would thus be entitled to recover from CCN any damages resulting from CCN's breach of the CCN Agreement. Allstate's damages would include, without limitation, the amount of all payments made by Allstate to CCN, the amount of any award to Dr. Zidel or any other member of the putative class in consequence of the application by CCN of network rates to bills tendered to CCN by Allstate, the amount by which Allstate's business reputation and goodwill have been impaired, the amount of additional costs and expenses incurred by Allstate, including but not limited to reasonable attorneys' fees, and the amount of profits lost by Allstate.

### Count III - Unjust Enrichment

### (Alternative to Count II)

56.  Allstate repeats and realleges Paragraphs 1 through 55 as Paragraph 56 of Count III.

57.  The purpose for the CCN Agreement was to make available to Allstate and its PIP insureds CCN's the benefits of network pricing from CCN's network of providers.

58.  Pursuant to the CCN Agreement, when an individual entitled to PIP benefits was treated by a CCN network provider for injuries suffered in an accident involving a motor vehicle, Allstate was to be provided by CCN with the network rates agreed-upon between CCN and the provider.

59.  In accordance with the terms of the CCN Agreement, Allstate has paid compensation to CCN for its repricing services, in an amount based on the cost benefit to

10

Allstate of CCN's application of network rates to bills for services rendered by network providers to Allstate PIP claimants.

60. CCN has accepted payments from Allstate in exchange for CCN's repricing services, which CCN knew were based on the extent of the cost benefit to Allstate of CCN's application of network rates to bills for services rendered by network providers to Allstate PIP claimants.

61. To the extent that plaintiffs prevail in their assertion in this action that CCN was not authorized and lacked legal authority to apply network pricing to services provided to Allstate, and that the agreement between CCN and Allstate was "illegal" and unenforceable, then the CCN Agreement failed to achieve its intended purpose, CCN should not have received any payments pursuant to the CCN Agreement and Allstate has received no value in exchange for the payments it made to CCN.

62. Under those circumstances, even if CCN is not deemed to have breached the CCN Agreement, the purpose of the CCN Agreement nevertheless is commercially frustrated and CCN would be unjustly enriched to the extent of the value of payments it received from Allstate.

63. In the event it is determined that the CCN Agreement is "illegal" or unenforceable, or contractual remedies otherwise are not available to Allstate, moreover, Allstate would lack a sufficient remedy at law.

64. As a result, it would be inequitable for CCN to retain the value of payments it received from Allstate, and all consideration paid by Allstate to CCN should be returned to Allstate.

### Count IV - Negligent Misrepresentation

65. Allstate repeats and realleges Paragraphs 1 through 64 as Paragraph 65 of Count IV.

66. CCN made a series of representations to Allstate, with the intent and expectation that Allstate reasonably rely thereon, to the effect that CCN had the legal and contractual authority and ability to make available to Allstate and its PIP insureds the benefits of network pricing from CCN's network of providers in Florida.

67. Allstate had a right to justifiably rely upon the truth of CCN's representations.

68. Allstate, in fact, reasonably relied in good faith upon the representations made by CCN and Allstate was induced thereby to enter into the CCN Agreement.

69. In accordance with the CCN Agreement, Allstate made payments to providers based on the CCN network pricing applied to bills by CCN, Allstate made payments to CCN and Allstate incurred other costs and expenses which Allstate would not otherwise have incurred.

70. To the extent that plaintiffs prevail in their assertion in this action that CCN was not authorized and lacked legal authority to apply network pricing to services provided to Allstate's PIP claimants, then Allstate was induced through negligent misrepresentations by CCN to enter into the CCN Agreement.

71. Allstate would thus be entitled to recover from CCN any resulting damages including, without limitation, the amount of all payments made by Allstate to CCN, the amount of any award to Dr. Zidel or any other member of the putative class in consequence of the application by CCN of network rates to bills tendered to CCN by Allstate, the amount by which Allstate's business reputation and goodwill have been impaired, the amount of additional costs

12

and expenses incurred by Allstate, including but not limited to reasonable attorneys' fees, and the amount of profits lost by Allstate.

WHEREFORE, Allstate requests this honorable Court to enter judgment in its favor and against CCN as follows:

A. awarding a judgment against CCN and in favor of Allstate in the amount of any judgment obtained by plaintiff and/or the putative class in this action;

B. awarding a judgment against CCN and in favor of Allstate in the amount of Allstate's additional damages including, without limitation, the amount of all payments made by Allstate to CCN, the amount by which Allstate's business reputation and goodwill have been impaired, the amount of additional costs and expenses incurred by Allstate, including but not limited to reasonable attorneys' fees, and the amount of profits lost by Allstate;

C. awarding to Allstate its reasonable attorneys' fees and costs to the fullest extent permitted by law; and

D. awarding any and all such further and additional relief as this Court may determine to be just and equitable.

ALLSTATE INSURANCE COMPANY

By: *[signature]*

One of Its Attorneys

13

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to counsel on the service list this 26th day of January, 2001.

PETER J. VALETA
Florida Bar No. 327557
ROSS & HARDIES
150 North Michigan Ave., Suite 2500
Chicago, Illinois 60601
Telephone: (312) 750-3619
Telecopier: (312) 750-8600
Attorneys for Allstate Insurance Company

DAVID B. SHELTON
Florida Bar No. 0710539
Rumberger, Kirk & Caldwell
P.O. Box 1873
Orlando, Florida 32802
Telephone: (407) 839-4511
Telecopier: (407) 841-2133
Attorneys for Allstate Insurance Company

SERVICE LIST

Douglas A. Blankman, Esquire
Kopelman & Blankman, P.A.
One Financial Plaza, Suite 1611
Ft. Lauderdale, FL 33394
Attorney for Plaintiff

Arthur Gold, Esquire
Gold, Rosenfeld & Coulson
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
Attorney for Plaintiff

Carlin Phillips, Esquire
Gogel, Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA 02747
Attorney for Plaintiff

Eric Lee
Atlas Pearlman, P.A.
350 East Las Olas Blvd., Suite 1700
Fort Lauderdale, FL 33301
Attorney for Plaintiff

William W. Deem, Esquire
McGuire, Woods, Battle & Boothe, LLP
50 N. Laura Street, Suite 3300
Jacksonville, FL 32202
Attorney for CCN