UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

      Defendants.

_____/



## PLAINTIFFS' MOTION TO LIMIT
## COMMUNICATIONS BETWEEN DEFENDANT
## COMMUNITY CARE NETWORK AND POTENTIAL CLASS MEMBERS

PLEASE TAKE NOTICE that Plaintiffs DR. PAUL ZIDEL and SALVATORE D.

LARUSSO, D.C. ("LARUSSO"), on behalf of themselves and all others similarly situated, ("Class

Plaintiffs"), by their undersigned counsel, pursuant to Federal Rule of Civil Procedure 23, shall move

this Court for the entry of an Order limiting communications between Defendant COMMUNITY

CARE NETWORK, INC. ("CCN") and potential class members. For all the reasons set forth herein,

Class Plaintiffs respectfully submit that the instant Motion should be granted in all respects.

### PROCEDURAL BACKGROUND

Plaintiffs, DR. PAUL ZIDEL and SALVATORE D. LARUSSO, D.C., have filed class

actions in this Court on behalf of a class of similarly situated medical providers challenging the

application of preferred provider discounts contained in their Preferred Provider Organization

("PPO") contracts to Florida automobile insurance Personal Injury Protection ("PIP") medical

7090-00100 326128 1



ATLAS PEARLMAN

expense claims. Plaintiffs' actions are among fifteen related class actions recently consolidated by this Court.[1] The Plaintiffs in all of the related actions have alleged that various Florida automobile insurance companies[2] have been misappropriating preferred provider discounts contained in at least three different PPOs: the Beech Street PPO; the MedView Services, Inc. PPO[3]; and the CCN PPO.

Plaintiffs have alleged that the Defendant auto insurers and the Defendant PPOs have engaged in a massive conspiracy to misappropriate the discounts contained in their PPO contracts and apply them to automobile insurance PIP claims without providing the requisite marketing and financial incentives inherent in the PPO contract. Defendants' conduct is a violation of the RICO Act, Section 627.736, Florida Statutes and the PPO contracts.

The first of these class actions was filed on January 12, 2000. Since that time a number of the Defendants filed various motions to dismiss and motions to stay discovery. During the pendency of its decision on the Motions to Dismiss, this Court ordered a stay of discovery. On February 8, 2001, Plaintiffs filed a Motion to Consolidate All Related Actions. At a status conference held on May 14, 2001, this Court announced its decision that all Motions to Dismiss were denied (except as to Plaintiffs' Lanham Act claims), and that the stay of discovery was lifted. The Court also orally granted Plaintiffs' Motion to Consolidate. To date, written orders have not been issued by the Court.

---

[1] This Court orally granted Plaintiffs' Motion to Consolidate at a status conference on May 14, 2001. To date, a written order has not been issued.

[2] The insurance company Defendants in the related cases include Allstate Insurance Company. Progressive Insurance Company, Liberty Mutual Ins. Co., Florida Farm Bureau Ins. Co., Hartford Ins. Co., Nationwide Ins. Co., Metropolitan Prop. & Cas. Ins. Co., Deerbrook Ins. Co., Superior Ins. Co., and Fidelity & Cas. Co. of New York.

[3] CCN has been sued by LARUSSO, as the successor-in-interest of MedView Services, Inc.

2

ATLAS PEARLMAN

Since the May 14, 2001 status conference, counsel for the Plaintiffs and counsel for a majority of the Defendants conducted a scheduling conference in order to prepare a proposed Case Management Order. Plaintiffs' counsel has been eager to proceed with discovery. Despite this Court's oral ruling that the stay of discovery was lifted, Defendants have resisted Plaintiffs' attempts and refused to proceed with discovery until a written order is issued.

In the meantime, CCN has circulated two separate letters[4] to its preferred providers (who are both members of the Plaintiffs' putative class and potential witnesses) in which CCN condemns PIP lawsuits challenging wrongful PPO reductions as "spurious litigation" motivated by lawyers' greed for attorneys' fees. The letters, on their face, are directly aimed at "chilling" CCN's preferred providers from participating in PIP litigation through economic intimidation. Plaintiffs contend that these letters, which are the subject of the instant Motion, are misleading communications with putative class members and potential witnesses that will result in irreparable harm to Plaintiffs' actions.

In addition to the two foregoing letters, on July 20, 2001, CCN unilaterally terminated its agreement with LARUSSO.[5] In its termination letter, CCN informed LARUSSO that he must notify all new and existing CCN Beneficiaries or Claimants that he is no longer a CCN preferred provider, and that he must transfer any of those patients who so desire to other appropriate CCN preferred providers.

_____

[4] A true and correct copy of the letters are attached hereto as Exhibits "1" and "2."

[5] A true and correct copy is attached hereto as Exhibit "3."

3

ATLAS PEARLMAN

## FACTUAL BACKGROUND

At issue are a series of false and misleading letters sent by CCN to preferred providers who are members of the putative class since this Court's May 14, 2001 status conference at which the Court announced its denial of all Motions to Dismiss (except as to Plaintiffs' counts under the Lanham Act), lifted the stay of discovery, and granted Plaintiffs' Motion to Consolidate. Sometime in the last weeks of June, 2001, CCN mailed the first of these communications to its preferred providers. Claiming that there has been a "significant amount of misinformation being spread" by personal injury lawyers who are offering to file "spurious [PIP] lawsuits" challenging PPO reductions on behalf of its preferred providers, in its June, 2001 letter, CCN declares in bold typeface that these lawsuits "actually place providers in the position of advocating higher health care costs for patients and potentially violating their PPO contracts."

The letter's author, Joseph M. Manheim, Senior V.P. of Operations for CCN, then claims that the "primary challenge that is being made by these personal injury PIP lawyers is whether, under Florida Statute 627.736(10), insurers must write special 'PPO policies' as described in the statute in order to utilize managed care networks to discount participating providers' fees." Mr. Manheim then boldly states what purports to be his legal opinion (despite the fact that he does not appear to be an attorney) that "nothing in subsection (10), or, for that matter, anywhere else in the PIP statute, prohibits insurers from utilizing managed care networks to reduce the cost of PIP claims."

On page two of the June, 2001 letter, Mr. Manheim addresses the motivation of "these spurious claims" and purports to place them in their "proper context." According to CCN, the lawyers bringing lawsuits challenging the wrongful application of CCN's PPO discounts are

"motivated . . . because of their ability to seek attorneys' fees under the statute." "[M]ore importantly," according to CCN "these personal injury PIP lawyers are placing providers in a position that is antagonistic with the interests of their patients. By agreeing to allow these lawyers to file PIP lawsuits on their behalf, **providers are advocating for their patients to pay more for health care services**. This is inconsistent both with the Florida legislature's intention of effectuating broad coverage for insureds, and with the fundamental principles of the doctor-patient relationship." (emphasis in original).

Subsequently, beginning in July, 2001, CCN then began publishing letters to preferred providers who have been challenging the application of the CCN discount to PIP auto insurance claims. The letter purports to be a "**Notice of CCN/Provider Contract Obligations re Bill Disputes**." (See attached Exhibit 2). One of CCN's letters dated July 13, 2001 (Exhibit 2) was sent to CCN preferred provider, Martin Hale, M.D. It is clear from the letter's reference line, that it was sent in conjunction with a patient treated by Dr. Hale[6] who was injured in an auto accident and whose PIP medical bills were reduced by the application of a CCN PPO discount. Plaintiffs' counsel has confirmed that this type of "form letter" has been sent out by CCN to other CCN preferred providers who have been challenging the application of the CCN PPO discount to their automobile PIP insurance claims.

In this letter, CCN again protests the legal sufficiency of PIP lawsuits challenging the wrongful application of PPO discounts, accuses lawyers who bring PIP lawsuits of being motivated solely by greed, and threatens that preferred providers who participate in such lawsuits are

---

[6] The patient's name has been redacted from the copy of the letter attached as Exhibit "2."

ATLAS PEARLMAN

advocating a position that is directly at odds with his or her patients. In the guise of being a reminder to its preferred providers of "several of [their] contractual obligations to CCN," in paragraph one, CCN again takes the opportunity to denounce "these legal challenges [as] meritless, and sincerely hopes that you do not plan to participate in proliferating this litigation, which is prompted primarily by these lawyers' motivation for attorneys' fees."

CCN then cites a section of the CCN PPO contract that prohibits preferred providers from balance billing patients unless permitted to do so by the insuring agreement. In paragraphs three and four of the letter, CCN provides yet two other legal interpretations of the CCN agreement by claiming: 1) that before a provider can file litigation, he or she must meet and confer with CCN in an effort to resolve the matter because, according to CCN, "a challenge by you to a Payor's reduction of your bill in accordance with the fee schedule incorporated into your Agreement is a dispute arising under the Agreement," and, 2) that the only remedy available to providers under the agreement is arbitration, not litigation. CCN fails to disclose, however, that the main contention underlying PPO PIP lawsuits is that auto insurers **are not** legitimate Payors under the CCN contract and are therefore, not even entitled to the PPO discount.

The CCN letter concludes by warning that "by agreeing to allow these lawyers to file PIP lawsuits on their behalf, providers are advocating for their patients to pay more for health care services. This is inconsistent both with the Florida legislature's intention of effectuating broad coverage for insureds, and with the fundamental principles of the doctor-patient relationship." (emphasis in original). Moreover, CCN expresses its "hope that you choose to decline these lawyers' advances, rather than proliferating this spurious litigation."



On July 20, 2001, CCN then goes one step further in its campaign of economic heavy-handedness aimed at its preferred providers when it unilaterally terminated its PPO contract with LARUSSO. (See Exhibit 3). In the letter to LARUSSO, CCN informs him that under section 3.03 of the agreement, he "shall exercise best efforts to notify all new and existing Beneficiaries or Claimants that the Provider is no longer a CCN preferred provider." CCN then states that "[f]or Beneficiaries or Claimants under [his] care that so desire, [he] shall transfer them to other appropriate CCN Providers."

## ARGUMENT

"'[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.' Rule 23 specifically empowers district courts to issue orders to prevent abuse of the class action process." In re School Asbestos Litigation, 842 F.2d 671, 679-80 (3d. Cir. 1988) (citing Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981)). Misleading communications should be curtailed immediately because "[t]he damage from misstatements could well be irreparable." Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1203 (11th Cir. 1985) (citing Zarate v. Younglove, 86 F.R.D. 80, 90 n. 13 (C.D. Cal. 1980)). As the Eleventh Circuit has stated:

When confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests. Such conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule.

A unilateral communication scheme, moreover, is ripe with potential for concern. "If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive."

ATLAS PEARLMAN

\*    \*    \*

Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging the exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable. Concomitant, a solicitations scheme relegates the essential supervision of the court to the status of an "afterthought."

Kleiner, 751 F.2d 1193, 1202-03 (citations omitted) (footnotes omitted).

In entering an order limiting communications between parties and potential class members, the order must be based "on a clear record and specific findings that reflect a weighing of the need for limitation and the potential interference with the rights of the parties." Gulf Oil, 452 U.S. at 101. Since an order circumscribing communications naturally touches on first amendment concerns, the Gulf Oil Court reasoned that good cause must exist to enter an order limiting communications. As stated in Kleiner:

In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a "heightened sensitivity" for first amendment concerns. In ascertaining the existence of good cause, four criteria are determinative: the severity and the likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order.

751 F.2d at 1205-06 (citations omitted).

Based on Kleiner, good cause clearly exists in the present case to warrant this Court entering an order limiting communications between CCN and potential class members because the potential harm to Plaintiffs' cause of action is irreparable. The letters mailed by CCN have been sent to potential class members and witnesses who are involved in an ongoing business relationship as preferred providers in CCN's PPO network, and who are "financially tied" to CCN. Indeed,

membership in the CCN PPO offers preferred providers the possibility of an increased volume of patients. Any threat to that good standing membership is a threat to a preferred provider's patient base. When an ongoing business relationship is involved, a unilateral communications scheme "is ripe with potential for coercion." Id. at 1202. Both CCN letters are clearly aimed at economically chilling its preferred providers from participating in PIP litigation by playing on fears that such litigation is directly "antagonistic with the interests of their patients" and that "by agreeing to allow these lawyers to file PIP lawsuits on their behalf, providers are advocating for their patients to pay more for health care services." (See Ex. 1, p. 2, ¶ 3; Ex. 2, p. 1, ¶ 6).

An example of the economic power that CCN wields over its preferred providers (and its potential for economic coercion) can be seen in its termination of LARUSSO on July 20, 2001. For no apparent reason, other than presumably LARUSSO's willingness to participate in this "spurious litigation," CCN has unilaterally terminated LARUSSO's membership in its network and then reminded him of his obligation to steer away any existing CCN patient to other "appropriate CCN Provider(s)." (Ex. 3, ¶ 2).

In addition to the intimidating nature of CCN's correspondence, both letters are replete with misleading statements and legal mischaracterizations. For example, CCN sets forth its position that the proliferation of this "spurious litigation" is meritless, but fails to advise the potential class members and witnesses of numerous critical facts. The letters fail to advise the potential class members of the existence of the federal class action lawsuits, fail to advise that this Court has denied motions to dismiss the claims, that the main claim asserted is for violations of the Racketeer Influence and Corrupt Organizations Act, and that this Court has granted the consolidation of fifteen

9

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

class actions. The letters also fail to advise the potential class members of all relevant facts regarding the litigation surrounding the use of PPO networks in connection with automobile PIP claims.

The letter indicates that: "CCN believes that these legal challenges are meritless" and that CCN hopes that its preferred providers "choose to decline these lawyers' advances, rather than proliferating this spurious litigation." (Ex. 2, p. 2, ¶ 1). CCN makes these unilateral statements without advising the potential class members that four (4) Florida state courts have already entered summary judgment against insurance companies finding that their utilization of PPO rates when paying PIP claims is illegal as a matter of law.[7] Such omissions clearly cause CCN's correspondence to be misleading and deceptive.

CCN's letters further state that the lawsuits contesting the PPO reductions "are placing providers in a position that is antagonistic with the interests of their patients . . ." This statement is not only coercive in nature, but it is also directly contrary to the law in this Circuit. In HCA Health Services of Georgia v. Employees Health Ins. Co., 240 F.3d 982 (11th Cir. 2001), the Eleventh Circuit discussed, at length, how the improper use of PPO reductions not only damages healthcare providers, but also damages their insured patients. Accordingly, CCN's false statements to potential class members is clearly designed to be coercive and threatening. CCN's letters will result in severe harm to the interests of potential class members.

---

[7] See Arcadia Chiropractic Clinic, Inc. v. Allstate Ins. Co., Case No. 00-0168 CZ DeSoto County, Florida; Arcadia Chiropractic Clinic v. Progressive Express Ins. Co., Case No. 00-0166 CZ, DeSoto County, Florida; Dr. Jeffrey M. Schebovsky v. Peachtree Cas. Inc. Co., Case No. CCO 99-9723 DIV 71, Orange County, Florida; David W. Ice v. Progressive Bayside Ins. Co., Case No. 98-12491-COCE-53, Broward County, Florida.

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

At the very heart of Plaintiffs' cases are the allegations that the Defendants have actively participated in a conspiracy that is violative of the RICO Act. Notably, "racketeering activity" includes any act which is indictable under Title 18, United State Code, Sections 1503 (relating to obstruction of justice) and 1512 (relating to tampering with a witness, victim or informant). See 18 U.S.C. § 1961(1)(B). Section 1503 makes it punishable for anyone who "by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice . . ." 18 U.S.C. § 1503(a). Likewise, Section 1512 provides that "[w]hoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person with intent to - (1) influence, delay, or prevent the testimony of any person in an official proceeding. . ." shall be punished by a fine or imprisonment. 18 U.S.C. § 1512(b)(1). Plaintiffs submit that CCN's misleading and coercive communications with its preferred providers rise to the very level of conduct prohibited by these Sections.

There are presently fifteen class actions before this Court based on the illegal use of PPO reductions by insurance companies when paying PIP claims. CCN is one of the PPO networks utilized by the insurance companies to reduce PIP claims. Despite the Court's rulings at the May 14, 2001 status conference, the Defendants have resisted Plaintiffs' attempts to proceed with discovery. Yet during this time, CCN has jumped at the opportunity to undertake a campaign of communications with its preferred providers that is clearly a pre-emptive effort to undermine the claims asserted by Plaintiffs by condemning the litigation as spurious and meritless, and by pitting healthcare providers who attempt to exercise their Constitutionally protected legal rights to challenge

ATLAS PEARLMAN

the Defendants' conduct against the healthcare providers' patients. Ultimately, CCN is attempting to do nothing more than limit its potential liability through the dissemination of coercive and misleading communications urging potential Class Members and witnesses to refuse to participate in the litigation. Such conduct should be immediately limited by this Court.

In accordance with Kleiner, Plaintiffs request that this Court enter an Order precluding CCN from directly or indirectly communicating with any potential class member and witness to discuss, address, or otherwise comment on the use of PPO reductions when paying PIP claims. As part of its Order, this Court should permit Plaintiffs' counsel to send a curative letter in a form to be approved by this Court to all potential Class Members that were sent the CCN correspondence which advises of the pendency of these class actions, advises that courts have already determined that PPO reductions are illegal, and advising that the Eleventh Circuit has found that the improper use of PPO reductions damages insureds as well as the healthcare providers. Further, Plaintiffs request that the Court allow Plaintiffs counsel to immediately conduct depositions of all CCN representatives, employees and agents, involved in the preparation and dissemination of the letters at issue. Such an Order specifically and precisely addresses the harm being caused by CCN's conduct. The Order should enjoin CCN's conduct during the pendency of these proceedings.

Finally, there is no less onerous alternative available. CCN's actions must be stopped and an effort must be made to cure the harm done. In addition, since the CCN correspondence requests that the providers contact CCN within five business days, it is unknown as to what additional misrepresentations and coercive statements have been made to the potential class members during oral communications. Accordingly, good cause exists to issue an Order as requested above.

12



CASE NO. 00-6061-CIV-FERGUSON/SNOW

## CONCLUSION

For all the reasons set forth herein, Plaintiffs DR. PAUL ZIDEL and SALVATORE D.

LARUSSO, D.C., on behalf of themselves and all others similarly situated, respectfully request that

this Court enter an Order limiting Defendant COMMUNITY CARE NETWORK, INC.'s

communications with potential Class Members, ordering that a curative letter be sent by Class

Plaintiffs' counsel, ordering that all costs incurred in sending the curative letter be borne by

Defendant COMMUNITY CARE NETWORK, INC. and awarding such other and further relief as

this Court deems just and proper.

Respectfully submitted,

ATLAS PEARLMAN, P.A.
Lead Counsel for Plaintiff
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

By: _____
JAN DOUGLAS ATLAS
Florida Bar No. 226246

By: _____
ERIC LEE
Florida Bar No. 961299

By: _____
ROBIN CORWIN CAMPBELL
Florida Bar No. 327931

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

**Co-Counsel for Plaintiff**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporation
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 1611
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

mail this 30th day of July, 2001 upon: all individuals on the attached service list.

ERIC LEE

14

ATLAS PEARLMAN

**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Eric Lee, Esq.
lee@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@gpandg.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 1611
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

ATLAS PEARLMAN

**Counsel for Beech Street and ADP**

TEW, CARDENAS,et al.
Thomas Tew, Esq.
(305) 539-2106
tt@tewlaw.com
Joseph A. DeMaria, Esq.
(305) 539-2440
jad@tewlaw.com
Mindy L. Pallot, Esquire
(305)536-8432
mlp@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Center
Post Office Box 4099
Jacksonville, FL 32202-4099
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile



**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lola M. Swaby, Esq.
lswaby@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS
& ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

ATLAS PEARLMAN



July 13, 2001

Martin Hale                          Via U.S. Mail. Certified with Return Receipt
301 NW 84th Avenue                  7000 1670 0004 8258 2932
Plantation, FL 33324

<u>Notice of CCN/Provider Contract Obligations re Bill Disputes</u>

Dear Dr. Hale:

You may have learned about the recent challenges being made by Florida personal injury lawyers to the use of managed care networks in connection with automobile personal injury protection ("PIP") insurance claims. In fact, you may have been solicited to file lawsuits against insurers who are payors in CCN's network. CCN believes that these legal challenges are meritless, and sincerely hopes that you do not plan to participate in proliferating this litigation, which is prompted primarily by these lawyers' motivation for attorneys' fees. Nonetheless, we would like to remind you of several of your contractual obligations to CCN.

First, under Section 2.02 of your Professional Care Provider Agreement (the "Agreement"), a copy of which is enclosed for your convenience, you have agreed not to balance bill patients. Specifically, your contract with CCN states that, "Provider shall look solely to the Payor for payment of any and all compensation due for Health Care Services or Benefits <u>and shall not bill or otherwise collect or attempt to collect from Beneficiaries or Claimants any charges</u> except and unless required or permitted to do so by the applicable insuring Agreement."

Next, under Section 12.01, you agree "to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement." A challenge by you to a Payor's reduction of your bill in accordance with the fee schedule incorporated into your Agreement is a dispute arising under the Agreement. Therefore, before pursuing the matter, you must first meet and confer with CCN in an effort to resolve the matter.

Moreover, you have explicitly agreed in Section 12.02 of the Agreement that "[t]he sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits <u>shall be binding arbitration....</u>" That means that, in the event you dispute a Payor's reduction of your bill in accordance with your Agreement, you have agreed not to file a lawsuit, but rather to arbitrate the dispute in accordance with the provisions of Section 12.02.

Finally, it is CCN's position that its Payors are third party beneficiaries of your Agreement. Thus, Payors are entitled to the benefit of Section 12.02 requiring arbitration of all disputes arising under the Agreement. Any such disputes with Payors should therefore be pursued in arbitration, and not in court.

Personal injury PIP lawyers who solicit health care providers to sue concerning the application of their discount rates are placing providers in a position that is antagonistic with the interests of their patients: by agreeing to allow these lawyers to file PIP lawsuits on their behalf, <u>providers are advocating for their patients to pay more for health care services</u>. This is inconsistent both with the Florida legislature's intention of effectuating broad coverage for insureds, and with the fundamental

Exhibit "1"

principles of the doctor-patient relationship. We hope that you choose to decline these lawyers' advances, rather than proliferating this spurious litigation.

Please contact me within five (5) business days so that I may answer any questions you may have and to resolve this pending issue. I may be reached at the following number: (800) 633-8033 extension 3260.

Sincerely,

Susan Deal
Network Specialist


Enclosure: CCN/Provider Contract



June 2001

Dear Providers and Payors:

**Florida providers are being contacted by personal injury attorneys offering to sue insurers on their behalf at no cost over what they contend are illegal PPO reductions on auto PIP claims.**

**Please read this letter to learn more about these spurious lawsuits that actually place providers in the position of advocating higher health care costs for patients and potentially violating their PPO contracts.**

Many of you have learned about the recent challenges being made by Florida personal injury lawyers to the use of managed care networks in connection with automobile personal injury protection ("PIP") insurance claims. There has been a significant amount of misinformation being spread by these lawyers, and we are writing to you in order to clarify these issues.

The primary challenge that is being made by these personal injury PIP lawyers is whether, under Florida Statute 627.736(10), insurers must write special "PPO policies" as described in the statute in order to utilize managed care networks to discount participating providers' fees. **Despite some representations being made by these lawyers, nothing in subsection (10), or, for that matter, anywhere else in the PIP statute, prohibits insurers from utilizing managed care networks to reduce the cost of PIP claims. In fact, several Florida courts have agreed with this position.** For example, in *Del Gardo v. Allstate Insurance Co.*, Broward Circuit Court Case No. 95-13760-04, a class action lawsuit, the court ruled explicitly that an insurer's practice of entering into agreements with health care providers to charge reduced rates for services rendered by such providers to PIP claimants does not violate the requirements of Florida Statute § 627.736(10).

**It should be emphasized that none of the appellate courts in Florida have rendered a decision concerning this issue.** Any rulings that have been issued, including orders that some personal injury PIP lawyers have been disseminating, are from trial courts which have little precedential or authoritative value. CCN is confident that, in the event that an appellate court does address this issue, it will agree with CCN's position and support the use of managed care networks in PIP cases. The practice of offering insureds an opportunity to voluntarily treat with providers who have agreed to discount their fees is entirely consistent with the Florida legislature's expressed intention of effectuating broad coverage for insureds.

1507 North Falkenburg Road • Tampa, Florida • 33619 • 813-63 3-5282

Exhibit "a"

Finally, CCN has learned that some Florida personal injury lawyers have been making unscrupulous and false statements concerning the legality of using managed care networks to reduce PIP claims. Some of these lawyers have disseminated provider solicitation letters discussing trial court orders that may appear to support their position. These lawyers claim that managed care reductions in PIP are illegal, and they offer to sue insurers will out cost to providers. **(CCN has learned that in some cases, PIP lawyers are discouraging providers from dropping these lawsuits by threatening to pursue them for accrued attorneys' fees).**

These spurious claims must be considered in the proper context. First, personal injury PIP lawyers are highly motivated to challenge PIP payments because of their ability to seek attorneys' fees under the statute. They also face little downside since the statute does not permit insurers the reciprocal ability to seek their fees in cases where they prevail.

Second, and perhaps more importantly, these personal injury PIP lawyers are placing providers in a position that is antagonistic with the interests of their patients. By agreeing to allow these lawyers to file PIP lawsuits on their behalf, **providers are advocating for their patients to pay more for health care services.** This is inconsistent both with the Florida legislature's intention of effectuating broad coverage for insureds, and with the fundamental principles of the doctor-patient relationship.

We trust that this letter has provided you with a more complete understanding of the challenges being made by some lawyers in Florida, as well as an appreciation for the less than noble motivation behind them. CCN personally welcomes any questions you may have concerning this matter. Please contact Susan Deal at 813 630.3260.

Very truly yours,

Joseph M. Manheim,
Senior Vice President, Operations
**CCN Managed Care, Inc.**

JMM/ahs



**CERTIFIED MAIL**

July 20, 2001

Salvatore D. Larusso
13860 Wellington Trace #13
Wellington, FL 33414

Dear Dr. Larusso:

In accordance with section 3.02 of the CCN Professional Care Provider Agreement, this letter serves as written notice that the Agreement between Salvatore D. Larusso and CCN is hereby terminated effective Ocotber 19, 2001.

Please be aware that section 3.03 of the Agreement states that if the Agreement is terminated, the Provider shall exercise best efforts to notify all new and existing Beneficiaries or Claimants that the Provider is no longer a CCN preferred provider. For those Beneficiaries or Claimants under Provider's care that so desire, Provider shall transfer them to other appropriate CCN Provider(s).

If you have any questions, please feel free to call me at (800) 633-8033 Extension 3260.

Sincerely,

Susan Deal
CCN, Network Specialist

1507 North Falkenburg Road • Tampa FL 33619 • 813-623-5282 • Fax 813-620-4971

Exhibit "3"