## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### Civil Action No. 00-CIV-6061 FERGUSON/SNOW

| | |
|---|---|
| DR. PAUL ZIDEL and all others<br>similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>    Defendant/Third-Party Plaintiff,<br><br>v.<br><br>COMMUNITY CARE NETWORK, INC.,<br>d/b/a CCN,<br><br>    Third-Party Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

NIGHT BOX
FILED

AUG 20 2001

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## CCN'S RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION TO LIMIT COMMUNICATIONS

Third-Party Defendant, CCN Managed Care, Inc. ("CCN") hereby responds in opposition

to Plaintiffs' Motion to Limit Communications Between CCN and Potential Class Members

("Motion to Limit"). [1]

### INTRODUCTORY STATEMENT

Plaintiff's motion is, colloquially put, an exercise in apples and oranges. Plaintiff relies

entirely on a case -- Kleiner v. First National Bank of Atlanta -- addressing a comprehensive

---

[1] The introductory sentence of Plaintiffs' Motion states that it is raised on behalf of Plaintiff Zidel and Salvatore D. LaRusso ("LaRusso"), a named class plaintiff in a separate purported class action. To the extent Plaintiffs' counsel intended to raise the Motion in the LaRusso action as well, CCN incorporates its Response therein.



scheme to coerce members of a certified class to opt out of that class, and which involved deceptive oral communications secretly employed in violation of a direct court order to the contrary.    The allegedly offending conduct here, on the other hand, simply comprises communications by a network operator to members of its network concerning contractual requirements of network membership.  No class has been certified.  No order precluding such communications has been issued.  The communications were in writing and entirely truthful. And perhaps most importantly, *the communications at issue were in no way tied to the instant litigation or any claims asserted against CCN*, let alone intended to solicit opt-outs from the (here, non-existent) class.  Indeed, Plaintiff has not asserted any claim at all against CCN in this case;  CCN's presence is solely due to the third-party claim filed against it by co-defendant Allstate.  Accordingly, not only is the relief sought unwarranted by the conduct alleged, but the Plaintiff does not even have standing to complain about it in this case.  For these reasons, the Court should summarily deny Plaintiffs' motion.[2]

## STATEMENT OF FACTS

CCN contracted with medical "providers" (e.g. doctors) throughout the state to form a healthcare network, which is then made available to CCN's clients -- insurance companies, third-party administrators for self-insured employers. and other "payors" who pay medical claims. Pursuant to their contracts with CCN, which are known as "provider agreements", the network providers agree to discount their fees for patients insured by CCN's clients.  Among other things,

---

[2] CCN also adopts the arguments raised in Allstate's Memorandum of Law in Opposition to Plaintiffs' Motion to Limit Communications with CCN Providers and Other Relief.

these agreements require the providers to follow specific procedures to resolve disputes concerning their participation in the network, ultimately culminating in binding arbitration.[3]

In violation of this contractual provision, a number of network providers -- including the plaintiff in at least one of the other class actions before this court -- have been filing individual state court actions against CCN's payor clients, challenging the application of PPO discounts under Florida Statute section 627.736.[4] CCN is not a party to these individual state court cases, nor can CCN be liable under the Florida statute at issue in those cases. Nevertheless, CCN is concerned that its network providers are suing its clients, and are doing so without adhering to their contractual dispute resolution procedures. Accordingly, CCN communicated with its network to (i) counsel against filing sate court actions against CCN's clients, and (ii) remind the providers of their contractual dispute resolution obligations in the event they insist on pursuing the payor clients. These are the communications at issue in Plaintiff's motion.

It bears emphasizing that the claims which have been asserted against CCN's payor clients in the state court litigation are not claims made against CCN, nor can they be made against CCN. The Florida statute at issue in those claims regulates insurance companies but not companies such as CCN. Accordingly, the communications at issue neither reference the instant class action nor the claims being asserted against CCN in this action. As discussed below, this differentiates the communications at issue here from those in cases cited by the Plaintiff, such as Kleiner, where the communications addressed the class claims and were intended to encourage

---

[3] CCN initially invoked the arbitration clause in this case, following which Plaintiff voluntarily dismissed all claims against CCN. Now that Allstate has brought CCN back into the case with its third-party claim, CCN will again move to compel arbitration of all claims as soon as the consolidation issues are resolved.

[4] It appears that many of these individual state court actions were commenced by the same counsel prosecuting the instant motion. In other words, it appears that the instant motion was actually filed in this case to gain an advantage in other cases, which are planned to be filed in state court and to which CCN will not even be a party.

3

class members to opt out of the class. Any claim that the communications at issue here are analogous to those in Kleiner is simply absurd.

## ARGUMENT

Plaintiffs complain of two letters CCN sent to its network providers which (i) remind then providers of their contractual dispute resolution procedures, and (ii) counsel against filing individual state court litigation against CCN's payor clients on grounds which have not been and cannot be asserted against CCN in the instant (putative) class action. The letters do not even reference the instant class action, let alone suggest or encourage the network providers to opt out of the as yet uncertified class. Nevertheless, based on nothing more than a conclusory indictment of the letters as "misleading and coercive," Plaintiff's counsel suggest that these letters warrant both precluding further communication between CCN and its network and allowing Plaintiff's counsel -- at CCN's expense -- to submit their own misleading propaganda directly to that network. It is a position that is as incredible in its lack of factual and legal support as it is startling in the boldness of its request for relief.

## I.    Plaintiff's motion requires a determination which this Court has no basis to make on the current record.

CCN concedes that the Court has the discretion to "enter appropriate orders governing the conduct of counsel and parties", that may include restrictions or guidelines governing communications between parties and class members. However, this discretion is not unlimited. Gulf Oil Co. v. Bernard, 452 U.S. 89, 100-01 (1981). The Supreme Court has specifically held that such orders involve "serious restraints on expression." Id. at 104. The Court also noted that "[t]his fact, at minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses." Id.

4

Moreover, the Court may not simply accept representations by Plaintiffs' counsel as a

basis on which to enter what is in effect injunctive relief. Rather, the Court must make findings

based on record evidence, and weigh the demonstrated need for the relief against the interference

with the rights of the other party to communicate:

> [A]n order limiting communications between parties and potential class members
> should be based on a clear record and specific findings that reflect a weighing of
> the need for a limitation and the potential interference with the rights of the
> parties. Only such a determination can ensure that the court is furthering, rather
> than hindering, the policies embodied in the Federal Rules of Civil Procedure,
> especially Rule 23. In addition, such a weighing -- identifying the potential
> abuses being addressed -- should result in a carefully drawn order that limits
> speech as little as possible, consistent with the rights of the parties under the
> circumstances.

Id. at 101-02. Here, Plaintiff's motion presents nothing more than assertions by counsel, and

asks this Court to simply take their word for the fact that the communications at issue are part of

an allegedly nefarious scheme such as that in Kleiner. That is an insufficient basis on which to

limit CCN's right to communicate with the members of its provider network.

## II.    Plaintiff's legal analysis is logically bankrupt, relying on caselaw which has absolutely no application to the facts at issue.

Plaintiffs rely almost exclusively on Kleiner v. First National Bank of Atlanta, 751 F.2d

1193 (11th Cir. 1985) and, to a lesser extent, In re School Asbestos Litigation, 842 F.2d. 671 (2d

Cir. 1988). However, Plaintiffs' analysis ignores critical distinctions between those cases and

the case at bar. These distinctions are critical, and fatally flaw Plaintiff's analysis.

First, Kleiner and School Asbestos each involved communication between parties and a

certified class. Indeed, the School Asbestos opinion overruled the lower court's order to the

extent it regulated communications that were not directed to the plaintiff class. School Asbestos,

842 F.2d at 683. Here, no class has been certified. Plaintiff bases his argument on no more than

the *hope* that a class will be certified. If no class is certified then the prior restraint on CCN's ability to communicate with its network -- which the Supreme Court cautions should be employed judiciously even in appropriate circumstances -- will have been for naught.

Second, Kleiner involved communications with certified class members that were directed to the class claims themselves, i.e. they were intended to encourage or solicit opt-out requests. See School Asbestos, 842 F.2d at 682 and n.23 (Kleiner involved blatant misconduct that sought to affect class members' decisions to participate in litigation). It was the potential impairment of the class action vehicle, i.e. the threat to the impartiality of opt-out determinations by the class members, that justified the relief imposed. Kleiner, 751 F.2d at 1203 (the communications with the plaintiff class sabotaged the goal of informed consent by urging opt-out decisions based on a one-sided presentation). *Here, the communications at issue do not even address the class actions, or the claims asserted against CCN in the class actions.* They address completely separate litigation against CCN's clients, filed in a different court on grounds that cannot be asserted against CCN, in this case or anywhere else. How then can these communications possibly be viewed as opt-out solicitations, as in Kleiner? How could they possibly impair the fairness or efficacy of *this* litigation against CCN? The answer is, simply put, that they cannot.[5] The conditions that justified the relief imposed in the cases cited by Plaintiff not only do not exist here -- they *cannot* exist here.

It is crucial that the case authority cited by Plaintiff's motion be considered in the context in which those orders were issued. None of the factors warranting the very extreme relief imposed in those cases, and sought here, is present in the case at bar. Any claim that those cases support the relief sought by the motion at bar is simply nonsense.

---

[5] In fact, the putative class has not even asserted any claim against CCN in the case at bar. CCN is merely a third-party defendant, responding to claims by defendant Allstate.

6

**III.    CCN's letters are in fact accurate.**

Plaintiffs can point to no factual misrepresentation in CCN's letters because none exists. The bulk of CCN's July 13, 2001 letter (Exhibit One to Plaintiffs' Motion) simply reminds CCN's network members of various contract obligations contained in the CCN provider agreements, including their obligation to follow the agreement's dispute resolution procedures before suing CCN's payor clients. Faced with the wholesale disregard of these contractual obligations by a growing number of its providers, CCN took reasonable steps to remind its providers and its payors of their obligations. Plaintiffs have not and cannot allege that this portion of the correspondence is in any way misleading. Indeed, it appears that some of the Plaintiffs in this case are also involved in bringing the state court claims against CCN's clients. It is believed that the instant motion was filed precisely because the letters were *not* misleading, and demonstrated to those lawyers' potential clients in other cases that they are precluded from filing those cases.

The balance of CCN's July 13, 2001 letter and its June 2001 letter (Exhibit Two to Plaintiffs' Motion) offer CCN's opinion regarding the claims asserted in the state court actions. CCN has a constitutionally protected right to comment upon the propriety and wisdom of the claims being asserted in these other, individual state court actions. It is true that such speech can, in appropriate circumstances, be limited in order to protect the viability of a certified class action. See School Asbestos, 842 F.2d at 683 (district court has the discretion to regulate communications that threaten the integrity of the class action). As shown, however, the communications at issue do not address the class claims at all, but rather unrelated state court litigation against CCN's payor clients. Accordingly, Plaintiff's proposed prior restraint is neither warranted nor permissible.    Id. at 683-84 (reversing prior restraint to the extent the

communications were not directed at class members and posed no threat to the fairness or integrity of the class action).

## IV.    Plaintiffs' request to send a "curative letter" would be an extreme and unwarranted remedy.

Plaintiffs' proposed remedy includes not only the preclusion of further communication between CCN and its network, but also permission for Plaintiff to send -- at CCN's expense and with the Court's imprimatur -- a "curative letter" to the network. Plaintiffs' request should be discounted by the Court for what it appears to be -- a back-door attempt by Plaintiffs to solicit clients for additional state court litigation, and an attempt to curry favor with the putative class in this case.

Moreover, Plaintiffs' proposed "curative letter" would itself be materially misleading. For example, Plaintiff hopes to include statements to the effect that "courts have already determined that PPO reductions are illegal" and that "the Eleventh Circuit has found that the improper use of PPO reductions damages insureds as well as healthcare providers." However, the courts that Plaintiff alleges have already determined "that PPO reductions are illegal" are four Florida county courts, handling relatively small claims in cases in which CCN was not a party. Those rulings -- which are against insurance carriers and are based on Florida Statute section 627.736 -- run directly contrary to the law of the instant case.[6]  In any event, the CCN letters themselves note that *"[i]t should be emphasized that none of the appellate courts in Florida have rendered a decision concerning this issue."* (emphasis in original). It is telling that Plaintiff does not challenge the accuracy of that statute.

Plaintiff's intended reference to the Eleventh Circuit is flawed as well. That case did not even relate to the type of action that Plaintiffs have asserted in the pending class actions. In

---

[6] See attached Order of Judge Dimitrouleas dated April 14, 2000.

8

HCA Health Services of Georgia v. Employers Health Insurance Company, 240 F.3d 982 (11th Cir. 2001), the court confronted what was alleged to be a true "silent PPO" -- a claim that the network administrator ("Company A") leased its network to another network company ("Company B"), whose payor clients then discounted the provider's fees. See First Health Group Corp. v. United Payors and United Providers, Inc., 95 F. Supp. 2d 845, 850 (N. D. Ill. 2000) (discussing difference between a "non-directed" PPO and a "silent PPO," which involves the sale of network names and discount information to secondary market vendors). Central to the Eleventh Circuit's ruling was the allegation that the providers agreed to discount their fees for Company A's clients, but not those of Company B. HCA Health Services of Georgia, 240 F.3d at 996-999. That allegation is not present in the case at bar, and Plaintiff's intended citation to this case would thus be misleading.

In short, it is difficult to imagine a more misleading communication with proposed class members than that espoused in Plaintiff's motion. Even assuming CCN's letters were improper, which as shown above they were not, Plaintiffs' proposed "curative letter" is an unwarranted and inappropriate remedy.

## CONCLUSION

CCN's providers are subject to contractual obligations that limit their ability to sue CCN's payor clients. As it is constitutionally entitled to do, CCN reminded its network of this fact, and counseled against suing its clients in state court. In stark contrast to the cases Plaintiff cites, none of these communications pertained to -- or even referenced -- the instant class litigation, or to claims that are asserted against CCN in this litigation. None of these communications solicited opt out decisions or otherwise sought to impair the viability of the class vehicle. Indeed, CCN has not been sued by the Plaintiff in this case. Accordingly, these

9

communications cannot be enjoined by this Court, nor is there any basis for Plaintiff's proposed

"curative" communications to the as yet non-existent class.

For all the foregoing reasons, CCN respectfully requests that the Court deny Plaintiffs'

Motion in its entirety.

McGuireWoods LLP

By: _____

William W. Deem,
Florida Bar No. 0512834
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
Telephone:    (904) 798-3200
Facsimile:     (904) 798-3207
wdeem@mcguirewoods.com

ATTORNEYS FOR CCN MANAGED
CARE, INC.

## CERTIFICATE OF SERVICE

I certify that that a copy of the foregoing have been furnished by U.S. Mail on this 20th

day of August, 2001, to all counsel listed on the attached service list.

_____

Attorney

\\COM:73820.1

10

**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**

**Co-Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Eric Lee, Esq.
lee@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
350 East Las Olas Boulevard,
Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

**Co-Counsel for Plaintiffs**

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

**Co-Counsel for Plaintiffs**

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@gpandg.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

**Co-Counsel for Plaintiffs**

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 1611
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Co-Counsel for Plaintiffs**

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Co-Counsel for Plaintiffs**

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995
(941) 435-1269 Facsimile

**Counsel for Allstate**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS REBAK KELLOGG
LEHMAN DEMARIA TAGUE
RAYMOND & LEVINE, L.L.P.
Thomas Tew, Esquire
(305) 539-2106
tt@tewlaw.com
Joseph A. DeMaria, Esquire
(305) 539-2440
jad@tewlaw.com
Mindy L. Pallot, Esquire
mlp@tewlaw.com
(305)536-8432
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esquire
fanania@anania-law.com
Donald A. Blackwell, Esquire
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCQUIRE, WOODS, et al.
William W. Deem, Esquire
wdeem@mcguirewoods.com
William E. Adams, Esquire
badams@mcguirewoods.com
Curt Caywood, Esquire
ccaywood@mcguirewoods.com
3300 Bank of America Tower
50 N. Laura Street
Jacksonville, Florida 32202
(904)798-3200
(904)798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE
Katherine C. Lake, Esquire
klake@fowlerwhite.com
Bruce A. Aebel, Esquire
baebel@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813)228-7411
(813)229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esquire
haggerty@scdlaw.com
1601 Market Street, 34th Floor
Philadelphia, Pennsylvania 19103-2316
(215)299-4314
(215)299-4301 Facsimile

## Counsel for Florida Farm Bureau

HOLLAND & KNIGHT, LLP
Gregory A. Baldwin, Esquire
gbaldwin@hklaw.com
Robert K. Levenson, Esquire
rlevenson@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305)374-8500
(305)789-7799 Facsimile

## Counsel for Liberty Mutual

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esquire
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, Florida 33131
(305)374-5600
(305)374-5095 Facsimile

## Counsel for Hartford, Metropolitan, Integon

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, Florida 33131
(305)374-5600
(305)374-5095 Facsimile

## Counsel for Prudential

SHEA & GARDNER
John D. Aldock, Esquire
jaldock@sheagardner.com
(202) 828-2140
Richard M. Wyner, Esquire
Rwyner@sheagardner.com
(202) 828-2188
Jeffrey M. Klein, Esquire
jklein@sheagardner.com
(202) 828-4301
M. David Dobbins, Esquire
ddobbins@sheagardner.com
202) 828-2184
1800 Massachusetts Avenue, N.W.
Washington, DC 20036
202-828-2000
202-828-2195 (Facsimile)

BUTLER BURNETTE PAPPAS
Kathy Johnson Maus
Kmaus@bbplaw.com
Eric Zivitz
Ezivitz@bbplaw.com
3520 Thomasville Road
Suite 102
Tallahassee, Florida 32308.3469
850.894.4111
850.894.4999 (Facsimile)

## Counsel for Superior

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esquire
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, Florida 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**
CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esquire
dfriedman@csglaw.com
Brian P. Knight, Esquire
bknight@csglaw.com
3440 Hollywood Blvd., 2nd Floor
Holly wood, Florida 33021
(954) 961-1400
(954) 967-8577 (Facsimile)

\\COM:74107 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6269-CIV-DIMITROULEAS

DRS. MARTIN MAY, ALAN LAZAR,
MARTIN HALE, JOEL RUSH, PAUL ZIDEL,
RICHARD LINN, RICHARD BERKOWITZ,
DOUGLAS STRINGHAM, ANDREW
ELLOWITZ, ALAN NOVICK, DEBRA WEISS,
and NEIL SCHECHTER,

Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,

Defendant.

_____/

ADD  1 7 2000

ORLANDO LAW OFFICES OF
Rumberger, Kirk & Caldwell
Professional Association

## ORDER ON MOTION TO REMAND
## AND MOTION TO DISMISS

THIS CAUSE is before the Court upon Plaintiffs', Drs. Martin May, Alan Lazar, Martin

Hale, Joel Rush, Paul Zidel, Richard Linn, Richard Berkowitz, Douglas Stringham, Andrew

Ellowitz, Alan Novick, Debra Weiss and Neil Schechter Motion for Remand, filed herein on

March 14, 2000 and Defendant, Allstate Insurance Company's Motion to Dismiss, filed herein

on March 1, 2000. The Court has carefully reviewed the motions and is otherwise fully advised

in the premises.

### I. BACKGROUND

Plaintiffs are doctors, who practice under the names "Park Place Therapeutic Center" and

"Park Place Orthopaedics & Rehabilitation." As this entity, they submit claims to Allstate for

payment on behalf of persons insured by Allstate for personal injury protection benefits, and

receive payments from Allstate.

1

Defendant, Allstate, sells automobile insurance policies in Florida which contain personal injury protection, pursuant to Florida law. Under the PIP coverage, Allstate agrees to pay 80% of reasonable charges for necessary medical treatment provided to covered insured who suffer injury in an automobile accident. Plaintiffs claim that the amount that they have received, pursuant to bills they have sent to Defendant, of work they have done on Defendant's insureds, is "substantially less than [Allstate] is statutorily and contractually obligated to pay."

On January 21, 2000, Plaintiffs filed a two Count Complaint in the Circuit Court, Seventeenth Judicial Circuit, in and for Broward County, Florida. The action was timely removed. The Complaint is for: 1) Declaratory Relief; and 2) Breach of Contract.

Plaintiffs seek remand to State Court, arguing that the amount of PIP benefits paid to Plaintiffs pursuant to illegally obtained discounts by Defendant, compared to the amounts that should have been paid, can not be determined with certainty. They could potentially exceed or fall below the necessary jurisdictional amount, and therefore Defendants cannot provide, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requirement. Defendant counters this argument by stating that Plaintiffs are engaged together in the practice of medicine, submit the claims together, and receive payments together. Defendant submits the Explanation of Medical Bill Payments and Health Insurance Claim Forms as evidence that Plaintiffs are engaged in a united practice of medicine.

Defendant next moves to dismiss this action. It argues that Plaintiffs do not allege that Allstate offers "preferred provider" PIP coverage under the policy. The insured are entitled to choose the health care provider they want, on their own. Plaintiffs claim that Defendant pays PIP claims for medical benefits at 80% of "preferred provider" rates. Defendant argues that it is not required to offer a "preferred provider" policy to its insured and therefore, has not failed to pay

2

PIP benefits as required by § 627.736, Florida Statutes. Defendant also argues that the Complaint does not establish that it breached an obligation under the PIP coverage or § 627.736(10), Florida Statutes, by paying medical benefits at a "reasonable" rate, if it is less than what Plaintiffs request. Defendant's last argument is that there is no private cause of action permitted for violations of § 627.736(10). In sum, Defendant claims Plaintiffs do not state a claim.

Plaintiffs, in their two page response, argue that they strongly disagree with Defendant's arguments in the dismissal motion, and aver that they do state a claim.

## II. DISCUSSION

### A. Remand

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (11th Cir. 1996). Federal Jurisdiction should be found, unless it appears within "a legal certainty that the claim is really for less than the jurisdictional amount." Id. at 1356. However, "[w]here a plaintiff has made an unspecified demand for damages, a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer. Id. at 1356-57; See Gafford v. General Electric Company, 997 F.2d 150, 160 (6th Cir. 1993).

Plaintiffs claim that the amount of controversy in this action can only be determined by calculating the amount of PIP benefits paid individually, to Plaintiffs. However, Plaintiffs are engaged together in the practice of medicine under two names, "Park Place Therapeutic Center" and "Park Place Orthopaedics & Rehabilitation." Plaintiffs submit forms to receive payment, and receive payment collectively. The Health Insurance Claim Forms, submitted by Defendant,

3

shows that the I.D. Number of Referring Physician contains the same tax number on each sheet.

Additionally, in the space marked "Physician's, Supplier's Billing Name...," Park Place

Therapeutic Center is noted on each form. On the Explanation of Medical Bill Payment,

submitted by Defendant, in the space marked, "Treatment Rendered By," is the name Park Place

Therapeutic Center. "[W]hen several plaintiffs unite to enforce a single title or right, in which

they have a common and undivided interest, it is enough if their interests collectively equal the

jurisdictional amount." Troy Bank of Troy, Indiana v. G.A. Whitehead & Company, 222 U.S.

39, 40-41 (1911). The aggregate amount of the reduction of payments clearly exceeds the

$75,000 threshold necessary to confer jurisdiction on this Court.

## B. Dismiss

It is long settled that a complaint should not be dismissed unless it appears beyond a

doubt that the plaintiff could prove no set of facts in support of his claim which would entitle

him to relief. Conley v. Gibson, 355 U.S. 41 (1957). The allegations of the claim must be taken

as true and must be read to include any theory on which the plaintiff may recover. See Linder v.

Portocarrero, 963 F.2d 332, 334-336 (11th Cir.1992) (citing Robertson v. Johnston, 376 F.2d 43

(5th Cir.1967)). There must be a showing that the plaintiff has no claim before granting a motion

to dismiss. June Vernon and Delroy Vernon v. Medical Management Associates of Margate,

Inc., 912 F.Supp. 1549 (S.D.Fla. 1996).

Defendant's first argument is that the Complaint fails to allege a breach of contract or

violation of § 627.736. Plaintiffs allege in their Complaint, that Allstate pays PIP claims for

medical benefits at 80% of "preferred provider" rates. However, Plaintiffs fail to define

"preferred provider" rates, nor do they allege that such rates were not reasonable. Plaintiffs

claim, then, that because Allstate does not provide an option to insureds to purchase a "preferred

4

provider" policy for PIP benefits, it breached its contracts of insurance with its insureds and violated § 627.736(10) by paying at those rates. Therefore, Plaintiffs' only allegation is that Allstate is paying certain health care providers reduced rates which those providers have agreed to accept for medical services covered under the Allstate PIP contracts.

Plaintiffs, in the Complaint, claim that Defendant's standard policy does not comply with § 627.736(1)(a), which necessitates a party to have personal injury protection of "[e]ighty percent of all reasonable expenses for necessary medical..." Plaintiffs claim that they provided medical treatment, and were paid less than what is statutorily and contractually obligated to pay. However, Plaintiff's claims are not based on this Florida Statute.

Plaintiffs also argue that Defendant refers to Plaintiffs actions as "preferred providers," and such designation is improper. § 627.736(10), Florida Statutes, states in pertinent part, "(10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as 'preferred providers,' which shall include health care providers...The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits..." Plaintiffs attached the insurance policy to the Complaint. The Court may consider the policy for purposes of a motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997); Smith Barney, Inc. v. Scanlon, 180 F.R.D. 444, 446 (S.D.Fla. 1998). Such consideration of a document attached to Plaintiff's complaint does not convert the motion to dismiss into a motion for summary judgment. Id. The policy does not contain the term "preferred providers," and Plaintiffs are not the parties the statute is meant to protect. Additionally, the statute does not state that Defendant must offer a "preferred providers" plan, but only regulates those parties that choose to do so.

5

Defendant argues that the statute was not enacted to benefit medical providers, and therefore, does not allow Plaintiffs to rely on it as their basis for damages. In Fischer v. Metcalf, the Third District Court of Appeals discussed three criteria[1] which are pertinent to whether the legislature intended a statute to benefit a party. They are, "1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; 2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; and 3) whether judicial implication is consistent with the underlying purposes of the legislative scheme." Fischer v. Metcalf, 543 So.2d 785, 788 (Fla. 3rd DCA 1989); See Cort v. Ash, 422 U.S. 66 (1975).

§ 627.736, Florida Statutes, was not enacted to benefit medical providers. Plaintiffs are not the class whose especial benefit the statute was enacted. The statute was enacted to protect insureds from harm as a result of accidents with other drivers, and actions by insurance companies. The statute was not enacted to ensure that medical providers received what they felt was a reasonable wage. The legislature did not imply, nor can it be inferred, that the medical providers were the parties the statute was enacted to protect. The Court cannot infer that the Legislature intended to protect the medical providers with the enactment of § 627.736. "Legislative intent, rather than duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." Murthy v. N. Sinha Corp., 644 So.2d 983, 985 (Fla. 1994). Plaintiffs claim for relief based on Defendant's alleged violation of § 627.736, Florida, Statutes, does not allege a cause of action.

---

[1] Out of a four part test.

6

The remaining issue is whether Plaintiffs may sue Defendant for paying them what they do not deem to be reasonable rates, as preferred providers. However, the term preferred provider is not mentioned in the insurance policy and Defendant's actions do not resemble the statute's definition of the term preferred provider. Therefore, Plaintiffs claim is based on being intended third party beneficiaries to Defendant's insurance policies. Plaintiffs are not in direct contractual privity with Defendant. "[T]he term 'privity' is a word of art derived from the common law of contracts and used to describe the relationship with persons who are parties to a contract." Espinosa v. Sparber, et al., 612 So.2d 1378, 1380 (Fla. 1993). Usually only parties to a contract may collect on the contract. However, "an intended third party beneficiary of a contract may recover damages from the contracting parties if they breach the contract." Jacobson v. Heritage Quality Construction Co., Inc., 604 So.2d 17, 18 (Fla. 4th DCA 1992). "Essential to the right of a third party beneficiary of a contract to maintain an action for its breach is a clear intent and purpose of the contract to directly and substantially benefit the third party." Thompson v. Commerical Union Insurance Company of N.Y., 250 So.2d 259, 262 (Fla. 1971). The insurance policies between Defendant and the insureds are clear in their intent to directly and substantially benefit Plaintiffs[2]. Plaintiffs, in the present action, "must plead the contract which was expressly for (their) benefit and one under which it clearly appears that (they were) a beneficiary." Weimar v. Yacht Club Point Estates, Inc., 223 So.2d 100, 102 (Fla. 4th DCA 1969). Plaintiffs properly pled that they were intended third party beneficiaries to defeat the motion to dismiss.

## III. CONCLUSION

Plaintiffs did not, nor could they, properly plead a cause of action under § 627.736(1)(a)

---

[2] Although this benefit is not the main crux of the insurance policy.

7

and (10) as the basis of Defendant's liability. The statute does not delineate that there exists such a cause of action exists, nor is the statute drafted to benefit medical providers. Plaintiffs do state a cause of action for breach of contract, in that they are the intended third party beneficiaries to the insurance policy, but not on the basis that they were improperly treated as preferred providers.

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand is hereby **DENIED**;

2. Defendant's Motion to Dismiss is hereby **GRANTED**; in part. Motion to Dismiss Count I is hereby Granted; Count I is dismissed with prejudice. Motion to Dismiss Count II is hereby **GRANTED**; Count II dismissed without prejudice, with leave to amend in accordance with this Order. An Amended Complaint shall be filed within then days of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this ____ day of April, 2000.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Peter Valeta, Esq.
Lawrence Kopelman, Esq.
David B. Shelton, Esq.

8