UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

      Defendants.
_____/



## PLAINTIFFS' CONSOLIDATED REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO LIMIT COMMUNICATIONS

Plaintiffs DR. PAUL ZIDEL and SALVATORE D. LARUSSO, D.C. ("LARUSSO"), on

behalf of themselves and all others similarly situated ("Class Plaintiffs"), by their undersigned

counsel, hereby submit their Consolidated Reply Memorandum of Law in support of their Motion

to Limit Communications between Defendant COMMUNITY CARE NETWORK and potential

class members ("Motion to Limit"). For all the reasons set forth herein and in their Motion to Limit,

Class Plaintiffs respectfully submit that the Motion to Limit should be granted in all respects.

### PRELIMINARY STATEMENT

On or about July 30, 2001, Class Plaintiffs served their Motion to Limit. The Motion to

Limit seeks an order from this Court which precludes further communications between Defendant

COMMUNITY CARE NETWORK, INC. ("CCN") and potential class members relating to the

claims asserted in this class action. Inexplicably, despite the fact that the Motion was not directed

7090-00100 329195.1



to Defendant ALLSTATE INSURANCE COMPANY ("ALLSTATE"), on or about August 10, 2001, ALLSTATE served its Memorandum in Opposition to Plaintiff's Motion to Limit Communications with CCN Providers and Other Relief ("ALLSTATE Opposition"). On or about August 16, 2001, Defendant LIBERTY MUTUAL INSURANCE COMPANY served its Notice of Joinder in ALLSTATE's Opposition Memorandum. On or about August 20, 2001, CCN served its Response in Opposition to Plaintiffs' Motion to Limit Communications ("CCN Opposition").

It is obvious from the ALLSTATE Opposition and the CCN Opposition that in addition to opposing the Motion to Limit, ALLSTATE and CCN once again attempt to argue that the Complaints should be dismissed, that these matters should not be consolidated, and that discovery should be stayed. On or about May 14, 2001, this Court orally denied the pending Motions to Dismiss as to all claims, except the Lanham Act claims. After hearing argument from counsel, this Court also orally ruled that the Motion to Consolidate would be granted. Finally, this Court specifically stated on the record that the stay of discovery was being lifted. These rulings are reflected in the civil minutes (dk. 148).

Despite the fact that counsel for ALLSTATE was in attendance at the May 14, 2001 status conference, ALLSTATE's opposition states that the Motion to Dismiss was not ruled on and "no ruling has yet been made by the Court on the Motion." (ALLSTATE Opposition at p. 3). ALLSTATE further states that this Court indicated it might grant some form of consolidation but that "this case is not consolidated with any other matter." (ALLSTATE Opposition at p. 4). Finally, ALLSTATE asserts that the discovery stay has not been lifted. (ALLSTATE Opposition at p. 4 fn. 3). ALLSTATE's position is directly contrary to this Court's rulings. Although this Court has not

7090-00100 329195.1

2



entered written orders on the Motions to Dismiss, Motion to Consolidate, and lifting the discovery stay, this Court's oral rulings were quite clear. Accordingly, ALLSTATE should not be entitled to readdress these issues under the guise of responding to a Motion directed to a party other than ALLSTATE.

## ARGUMENT

## I.    FEDERAL RULE OF CIVIL PROCEDURE 23 PROVIDES A BASIS TO LIMIT COMMUNICATIONS BEFORE CLASS CERTIFICATION IS DETERMINED.

ALLSTATE and CCN incorrectly assert that this Court cannot limit communications before class certification is granted. ALLSTATE and CCN conveniently failed to disclose to this Court the numerous cases decided subsequent to Kleiner v. First National Bank of Atlanta, 751 F. 2d 1193 (11th Cir. 1985) and In re School Asbestos Litigation, 842 F.2d 671 (3d Cir. 1988) which have held that courts have the authority to limit communications with potential class members before class certification is determined. See Jenifer, T/A v. Delaware Solid Waste Authority, 1999 WL 117762 (D. Del. February 25, 1999); Burrell v. Crown Central Petroleum, Inc., 176 F.R.D. 239 (E.D. Tex. 1997); Hampton Hardware, Inc. v. Cotter & Co., Inc., 156 F.R.D. 630 (N.D. Tex. 1994). In Hampton Hardware, "[t]he court held that the effect of a defendant attempting to influence potential plaintiffs not to join an embryonic class action would be just as damaging to the purposes of Rule 23 as a defendant that influences members of an already certified class to opt out." Burrell, 176 F.R.D. at 243 (citation omitted).

Clearly, Rule 23 can be utilized before a class action is certified to limit ex parte communications. Otherwise, Defendants would be free to conduct ex parte communications before class certification that they would be precluded from conducting after class certification. Such a

7090-00100 329195.1

3

CASE NO. 00-6061-CIV-FERGUSON/SNOW
result would not make sense. If defendants were allowed to conduct such activities, defendants would immediately undertake an ex parte communication scheme in order to coerce, threaten, and influence potential class members. Once these communications take place, the damage is done. The potential class members have been affected by the ex parte communications and are more likely to avoid the litigation and avoid becoming a class member than they would have if no such communications took place and their information relating to the class action was limited to a court-sanctioned class certification notice.

Taking ALLSTATE's and CCN's position to the extreme, CCN could theoretically threaten its providers with termination (a threat carried out by CCN on LARUSSO) if they participated in a class action. Once class certification is granted, most providers would avoid becoming class members based on the prior threats of termination. Such a scenario is clearly contrary to the purposes of Rule 23 and demonstrates how ALLSTATE's and CCN's positions are unfounded.

## II. THERE IS CLEAR EVIDENCE THAT CCN'S LETTERS CONTAIN MISREPRESENTATIONS AND ARE DIRECTED TO POTENTIAL CLASS MEMBERS.

Despite Defendants' refusal to recognize that this Court lifted the stay of discovery and Defendants' refusal to take part in any discovery, CCN asserts that the record does not clearly demonstrate the need for a limitation on its communications with potential class members. CCN does not contend that it did not send the letters attached to the Motion to Limit as Exhibits "1" and "2." Instead, CCN asserts that the communications are factually accurate and not directed to potential class members. These assertions are entirely misplaced. Even a cursory review of the two

7090-00100 329195.1    4



letters demonstrates that they are factually inaccurate, threaten CCN providers, and are directed to potential class members.

CCN's June, 2001 letter (Exhibit "2") which is directed to providers and payors conveniently fails to advise the providers and payors that numerous courts have granted summary judgment in favor of providers for the improper reduction of their bills by insurance companies. The June letter then incredibly misrepresents a class action settlement as being a decision on the improper reduction of providers' claims. In Del Gardo v. Allstate Insurance Company, Broward Circuit Court Case No. 95-13760-04, the Court denied ALLSTATE's Motion to Dismiss, denied ALLSTATE's Motion for Judgment on the Pleadings, and granted class certification for a class of insureds based on ALLSTATE's illegal reduction of PIP benefits under Section 627.736(10), Florida Statutes. After class certification, ALLSTATE settled the class action with the insureds by agreeing to repay any and all amounts paid by the insureds which exceeded the amounts the insureds were required to pay.

The Order entered in the Del Gardo action, as part of the settlement, only relates to situations in which ALLSTATE entered into agreements with healthcare providers to charge reduced rates. It does not relate to situations where the insurance company does not enter into an agreement with a healthcare provider.[1] In addition, the Final Judgment entered in the Del Gardo settlement specifically states: "Neither this Final Judgment nor the Settlement Stipulation nor the fact of settlement, nor the settlement proceedings, nor any related document shall be used as an admission of any actual or potential fault or omission by any person or be offered or received in evidence as

---

[1] A true and correct copy of the Order is attached hereto as Exhibit "1."


ATLAS PEARLMAN
ATTORNEYS AT LAW

an admission, concession, presumption, or influence against any party in any proceeding."[2]
Accordingly, CCN's statement that several Florida courts have agreed with their position is a blatant
misrepresentation and a misuse of the Del Gardo settlement.

CCN's correspondence not only threatens providers, it advises providers to avoid seeking
legal advice. Based on these letters alone, when this matter is ultimately certified as a class action,
many providers will feel threatened if they remain in the class and may decide to opt out of the class.
"Actual harm need not be proven to justify an order limiting class contacts. Rather, an order limiting
contacts is justified upon a finding of 'a likelihood of serious abuses.' That the interest provided in
Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contact."
Hampton Hardware, Inc., 156 F.R.D. 630 at 633 (citing In re School Asbestos Litigation, 842 F.2d
at 671). Here, it is clear that the interests of Rule 23 have been and will be hindered as a result of
CCN's communications. This is a sufficient finding upon which to base an order limiting contacts.

CCN's assertion that the letters do not relate to the class actions, but instead relate to certain
state court actions, is entirely disingenuous. Even if the letters were addressed to state court actions
and potential state court actions, those same providers are potential class members in this action.
In addition, the letters, in a very general fashion, state: "Many of you have learned about the recent
challenges being made by Florida personal injury lawyers to the use of managed care networks in
connection with automobile personal injury protection ("PIP") insurance claims." (Exhibit "2").
Thus, the letters relate to the precise claims being asserted in these class actions. Although the letters
conveniently do not specifically refer to the class actions, they are being sent to potential class

---

[2] A true and correct copy of the Final Judgment is attached hereto as Exhibit "2."

ATLAS PEARLMAN
ATTORNEYS AT LAW

members and contain misrepresentations relating to the claims asserted in the class actions. Having

received a letter such as one of those sent by CCN, a healthcare provider will now think twice before

participating in this class action relating to the illegal reduction of PIP claims for the use of purported

managed care networks. One cannot read these letters without coming to that inescapable

conclusion. Since the letters will have an effect on potential class members, the ex parte

communications clearly hinder the interests of Rule 23 and CCN should be precluded from sending

future correspondence relating to the claims asserted in this class action.

## III.    A CURATIVE LETTER, APPROVED BY THE COURT, IS NECESSARY TO RECTIFY THE DAMAGE DONE BY CCN'S LETTERS.

Contrary to CCN's assertion, Class Plaintiffs have no desire to solicit clients for state court

litigation. Class Plaintiffs desire to send a curative letter, approved by this Court, which clarifies

CCN's misstatements. Class Plaintiffs would even be satisfied with a curative letter, approved by

the Court, sent by CCN to its providers which corrects its previous ex parte misrepresentations.

Faced with this Court's oral ruling on May 14, 2001, that the Motions to Dismiss would be

denied and that the matters would be consolidated, CCN chose to undertake a course of action

designed to affect potential class members. It is interesting and telling that CCN's purported need

to "advise its providers of their responsibilities" and to "inform them of CCN's position" were

undertaken after this Court's oral ruling on May 14, 2000. CCN and the insurance carriers have been

involved in litigation relating to violations of Section 627.736(10), Florida Statutes, for years. In

fact, the Del Gardo class action began in 1995. Despite the fact that there had been numerous state

court matters relating to these issues and the fact that this action itself was filed a year and a half ago,

CCN suddenly felt obligated to "advise its providers of their responsibilities" just weeks after this

7090-00100 329195.1                                7

ATLAS PEARLMAN
ATTORNEYS AT LAW

Court's oral ruling. The timing, wording, and threatening nature of the letters sent by CCN establish

CCN's covert effort to undermine this class actions by preemptively threatening and misinforming

potential class members. These actions should be immediately enjoined and rectified by this Court.

## CONCLUSION

For all the reasons set forth herein, Plaintiffs DR. PAUL ZIDEL and SALVATORE D.

LARUSSO, D.C., respectfully request that this Court enter an Order limiting Defendant

COMMUNITY CARE NETWORK, INC.'s communications with potential class members, ordering

that a curative letter be sent, ordering that all costs incurred in sending the curative letter be borne

by Defendant COMMUNITY CARE NETWORK, INC., and awarding such other and further relief

as this Court may deem just and proper.

Respectfully submitted,

ATLAS PEARLMAN, P.A.
Lead Counsel for Plaintiff
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

By: _____
JAN DOUGLAS ATLAS
Florida Bar No. 226246

By: _____
ERIC LEE
Florida Bar No. 961299

By: _____
ROBIN CORWIN CAMPBELL
Florida Bar No. 327931

8

CASE NO. 00-6061-CIV-FERGUSON/SNOW

**Co-Counsel for Plaintiff**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporation
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 1611
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

mail this 27th day of August, 2001 upon: all individuals on the attached service list.

ERIC LEE



**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Eric Lee, Esq.
lee@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@gpandg.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 1611
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard
Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 254-6327 Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

ATLAS PEARLMAN

**Counsel for Beech Street and ADP**

TEW, CARDENAS,et al.
Thomas Tew, Esq.
(305) 539-2106
tt@tewlaw.com
Joseph A. DeMaria, Esq.
(305) 539-2440
jad@tewlaw.com
Mindy L. Pallot, Esquire
(305)536-8432
mlp@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Center
Post Office Box 4099
Jacksonville, FL 32202-4099
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile



**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lola M. Swaby, Esq.
lswaby@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS
& ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile



IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. 95-13760-04

JOHN DEL GARDO and MICHELLE    CLASS REPRESENTATION
DEL GARDO, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,
and ALLSTATE INDEMNITY
COMPANY,

      Defendants.
_____/

## ORDER REGARDING PIP CLAIM PROCEDURES

THIS CAUSE is before the Court pursuant to Rule 1.220(e) of the Florida Rules of Civil Procedure, upon a Stipulation and Agreement of Settlement entered into by and between the Class and Defendant ALLSTATE INSURANCE COMPANY and ALLSTATE INDEMNITY COMPANY (collectively "ALLSTATE").

WHEREAS, the Court having heard argument of Counsel, and having reviewed all of the submissions presented with respect to the proposed Settlement between the Class and ALLSTATE, in connection with the entry of the Final Judgment and Order Approving Settlement in this matter, and

WHEREAS, the Court has determined that Final Judgment and Order Approving Settlement in this matter is to be entered, and

WHEREAS, under the terms of the Final Judgment and Order Approving Settlement in this matter, this Court further indicates its intention to enter an Order Regarding PIP Claim Procedures, and

1


EXHIBIT "1"

WHEREAS, this Court has been fully advised by the parties hereto with regard to the applicable law under Florida Statutes, § 627.736 (10), and

WHEREAS, this Court finds that certain PIP claim procedures proposed by ALLSTATE, as reflected below are in compliance with and do not violate the applicable requirements of Florida Statutes, § 627.736 (10), it is hereby

ORDERED, ADJUDGED AND DECREED that:

1. ALLSTATE's practice of entering into agreements with health care providers to charge reduced rates for services rendered by such providers to PIP claimants under ALLSTATE automobile insurance policies does not violate the requirements of Florida Statutes, § 627.736 (10), under the conditions set forth in this Order;

2. ALLSTATE is authorized and has agreed to provide information to PIP claimants at the time they submit their PIP claim to ALLSTATE that ALLSTATE has entered into agreements with certain health care providers to charge reduced rates for services rendered by such providers to PIP claimants under ALLSTATE automobile insurance policies, which reduced rates shall be applicable with regard to services rendered to such ALLSTATE PIP claimants at least until such time as their applicable ALLSTATE PIP benefits are exhausted;

3. ALLSTATE PIP claimants may also be informed by ALLSTATE at the time they submit their PIP claim to ALLSTATE of the identity of those certain health care providers which have agreed to charge reduced rates for services rendered by such providers to PIP claimants under ALLSTATE automobile insurance policies, provided that those claimants are also informed that the decision to obtain treatment from such providers is strictly by voluntary choice, that the claimant may choose to change health care providers at any time without regard to whether or not the substitute provider selected was party to an agreement with ALLSTATE to charge reduced rates for services rendered to PIP claimants under ALLSTATE automobile insurance policies; and

4. ALLSTATE PIP claimants who obtain treatment from health care providers who are parties to agreements to charge reduced rates for services rendered by such providers under

2

ALLSTATE automobile insurance policies must be informed by ALLSTATE that their bills from such providers are subject to agreed, reduced rates and that he or she is only responsible for payment of 20% of the charges for those services based on the such reduced rates with regard to services rendered to such ALLSTATE PIP claimants at least until such time as their applicable ALLSTATE PIP benefits are exhausted.

5.    The notices attached as Exhibits "A," "B" and "C" hereto provide, in form and substance, adequate notice regarding the ALLSTATE business practices which are the subject of this Order.

DONE and ORDERED THIS _____ day of _____, 1999.

_____
HONORABLE PATRICIA COCALIS
CIRCUIT COURT JUDGE

Copies furnished:
Larry Kopelman, Esq.
Eric Lee, Esq.
David Shelton, Esq.


**A TRUE COPY**

3

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO. 95-13760-04

CLASS REPRESENTATION

JOHN DEL GARDO and MICHELLE
DEL GARDO, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,
and ALLSTATE INDEMNITY
COMPANY,

        Defendants.
_____/

## FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT

THIS CAUSE is before the Court pursuant to Rule 1.220(e) of the Florida Rules of Civil Procedure, upon a Stipulation and Agreement of Settlement entered into by and between the Class and Defendants ALLSTATE INSURANCE COMPANY and ALLSTATE INDEMNITY COMPANY (collectively "ALLSTATE").

WHEREAS, this class action was brought on behalf of all ALLSTATE automobile insurance policyholders who paid premiums for personal injury protection benefits on policies in existence from October 1, 1991 through October 15, 1995.

WHEREAS, this class action was also brought on behalf of all individuals who actually incurred medical expenses due to bodily injury, sickness, or disease or death caused by an accident arising from the use of a motor vehicle as a motor vehicle, who made a claim under the PIP section of an ALLSTATE policy and whose expenses were paid by ALLSTATE at reduced rates, either directly or indirectly pursuant to an agreement or contract which were paid by

1

EXHIBIT "2"

ALLSTATE under the PIP section of ALLSTATE's automobile policies for all policies in effect from October 1, 1991 through October 15, 1995;

WHEREAS, this Court has previously certified a class in this action for the class period from October 1, 1991 through October 1, 1995;

WHEREAS, by order dated February 26, 1999 the Court determined for settlement purposes that this Action is appropriately certified as a Class, and preliminarily certified this Action as a Class consisting of all ALLSTATE automobile insurance policyholders who paid premiums for personal injury protection benefits on policies in existence from October 10, 1991 through April 11, 1999 ("Class");

WHEREAS, by order dated February 26,1999, the Court determined for settlement purposes that this Action is appropriately certified as a class, and preliminarily certified this action as a class consisting of all individuals who actually incurred medical expenses due to bodily injury, sickness, or disease or death caused by an accident arising from the use of a motor vehicle as a motor vehicle, who made a claim under the PIP section of an ALLSTATE policy and whose expenses were paid at reduced rates, either directly or indirectly pursuant to an agreement by contract which were paid by ALLSTATE under the PIP section of ALLSTATE's automobile policies for all policies in effect from October 1, 1991 through April 11, 1999 ("Claimant Class");

WHEREAS, by order dated February 26, 1999, the Court granted Plaintiffs leave, pursuant to the stipulation of the parties, to file an Amended Class Action Complaint which included all individuals comprising the Class and Claimant Class;

WHEREAS, on February 26, 1999, the Plaintiffs and ALLSTATE entered into a Stipulation and Agreement of Settlement (the "Settlement") which is subject to approval of this Court;

WHEREAS, members of the Class have received notice of the Settlement of the Class's claims and have been advised of Class members' right to appear at the Settlement Hearing in support of or in opposition to the Settlement, and of the right of Class members to elect to be

2

excluded from the Settlement. Class members have also received notice of Class Counsel's petition for an award of attorneys' fees. expenses and incentive awards to the Class Plaintiffs in the Action; and

WHEREAS, the Court having heard argument of Counsel, and having reviewed all of the submissions presented with respect to the proposed Settlement between the Class, Claimant Class and ALLSTATE, and the Court having determined that the Settlement is fair, adequate and reasonable and that it is in the best interests of the Class and Claimant Class to consummate the Settlement in accordance with the provisions of the Settlement Stipulation, and having considered the petition of Class Counsel for an award of fees. reimbursement of expenses, and incentive awards to the Class Plaintiffs in the Action and, having reviewed the affidavits, schedules and exhibits submitted in support thereof, it is hereby

ORDERED, ADJUDGED AND DECREED that:

A.     The Court has subject matter jurisdiction over this action.

B.     The Court incorporates herein by reference the definitions set forth in the Settlement Stipulation to the extent not in conflict with this Order.

C.     Notice to the Class required by Rule 1.220(d)(2) of the Florida Rules of Civil Procedure has been given in an adequate and sufficient manner, constituting the best notice practicable, complying in all respects with such Rules and due process, including, but not limited to, the form of actual notice published in accordance with the Settlement Stipulation.

D.     The Class and Claimant Class are hereby certified for settlement purposes pursuant to Florida Rules of Civil Procedure 1.220(d)(1) and (e). The members of the Class and Claimant Class are, as described above (except for any persons who opted out of the classes and who did not elect to opt into the Claimant Class). Atlas, Pearlman, Trop & Borkson, P.A., and Kopelman & Blankman, P.A., are designated as Class Counsel. For settlement purposes the Court finds that Class Plaintiffs, John Del Gardo and Michelle Del Gardo, fairly and adequately represent the Class and Claimant Class. Persons who have timely filed requests for exclusion

3

from the Class or Claimant Class pursuant to Florida Rule of Civil Procedure 11.220(d)(2) are not Class or Claimant Class members.

E.      The proposed Settlement, as provided for in the Stipulation and Agreement of Settlement, dated February 26, 1999, and as described in the Notice to the Class attached thereto, is in all respects fair, adequate, reasonable and in the best interests of the Class, and is approved.

F.      Plaintiffs, Class Members, Claimant Class Members and ALLSTATE shall consummate the Settlement according to the terms of the Settlement Stipulation.

G.      Claimant Class members who submit a timely Proof of Claim in connection with the Settlement in this action shall, to the extent approved by the Claims Administrators, participate in the Settlement. Persons who have timely requested exclusion from the Class as required by the Order dated  February 26, 1999, shall not participate in the proceeds of the Settlement or receive any benefit thereunder, and are not bound by this Order.

H.      Plaintiff and each and every Class member and Claimant Class member are permanently barred and enjoined from asserting Released Claims against ALLSTATE and ALLSTATE is permanently barred and enjoined from asserting Released Claims against Plaintiffs, and the Class and the Claimant Class, as those terms are defined in the Stipulation, which is hereby incorporated herein.

I.      All claims in this action by the Class or Claimant Class against ALLSTATE are dismissed with prejudice and on the merits. This is a final judgment disposing of all claims that have been asserted in this action as defined in the Stipulation.

J.      Jurisdiction is retained as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement and this Final Judgment, including processing and allowing claims, and final distribution to Claimant Class members.

K.      Neither this Final Judgment nor the Settlement Stipulation are an admission or concession by any party of any actual or potential fault, omission, liability or wrongdoing.. This Final Judgment is not a finding as to the validity or invalidity of any claims in this litigation or of any wrongdoing by ALLSTATE. Neither this Final Judgment nor the Settlement Stipulation nor

4

the fact of settlement, nor the settlement proceedings, nor any related document shall be used as an admission of any actual or potential fault or omission by any person or be offered or received in evidence as an admission, concession, presumption or inference against any party in any proceeding, except that the Settlement Stipulation and any Orders entered in connection therewith may be offered and received in connection with proceedings as may be necessary to consummate or enforce the Settlement Stipulation, or in any proceeding in which issues are presented which pertain to ALLSTATE's compliance with the Settlement or with any Orders which may have been entered at any time in connection with this Settlement

L.    Class Counsel are awarded a sum of $310,000.00 as an award of legal fees, and $9,203.74 as reimbursement of costs and out-of-pocket expenses, for services rendered by Class Counsel prior to the entry of the Notice Order preliminarily approving the settlement, which shall be paid together with accrued interest as provided by the Stipulation. The Class Plaintiffs are each awarded $1,000 as incentive awards. In awarding the fee the Court has considered specifically: (a) the substantial benefit Class Counsel conferred upon the Class members; (b) the contingency risk factor, whereby Plaintiffs' counsel took the serious risk of recovering no payment at all; (c) the time and effort expended, which is set forth in Plaintiffs' counsel's affidavit; (d) the efficient manner in which this case was handled; and (e) the experience and expertise of all counsel involved and the complexity of the issues presented. The Court observes that Plaintiffs' counsel's lodestar (the time expended multiplied by their normal hourly rate) is enhanced by a multiplier of 2.5, and that this multiplier is appropriate and justified in this case. ALLSTATE is ordered to pay $319,203.74 to class counsel.

M.    This Court reserves jurisdiction to award attorneys' fees and expenses incurred by Class Counsel during the administration of the claim procedure.

DONE and ORDERED THIS ___ day of _____, 1999.

_____
HONORABLE  PATRICIA  COCALIS
CIRCUIT COURT JUDGE

**PATRICIA W. COCALIS**

Copies furnished:
Larry Kopelman, Esq.
Eric Lee, Esq.
David Shelton, Esq.

**A TRUE COPY**

6