UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

SALVATORE D. LARUSSO, D.C. d/b/a FAMILY
CHIROPRACTIC CENTER, on behalf of himself
and all others similarly situated,

     Plaintiff,

                          CASE NO. 01-8108-CIV-FERGUSON

vs.

NATIONWIDE MUTUAL INSURANCE
COMPANY,

     Defendant.

_____/

## AMENDED CLASS ACTION COMPLAINT

Plaintiff SALVATORE D. LARUSSO, D.C. d/b/a FAMILY CHIROPRACTIC CENTER

("DR. LARUSSO") on behalf of himself and all others similarly situated, by his undersigned

counsel, sues Defendant NATIONWIDE MUTUAL INSURANCE COMPANY ("NATIONWIDE"),

and alleges as follows:

7090-00100 334427.1



CASE NO. 00-6061-CIV-FERGUSON/SNOW

## THE PARTIES

1.      DR. LARUSSO is a licensed chiropractor who is a citizen of the State of Florida and who has his principal place of business at 13860 Wellington Trace, Suite 13, West Palm Beach, Florida.

2.      NATIONWIDE is an insurance company incorporated under the laws of the State of Ohio with its principal place of business located at One Nationwide Plaza, Columbus, Ohio. NATIONWIDE provides automobile insurance throughout the State of Florida and transacts business in the Southern District of Florida.

## JURISDICTION AND VENUE

3.      Non-Party Beech Street Corporation ("Beech Street") is a business entity incorporated under the laws of the State of California with its principal place of business in Irvine, California. Beech Street operates a national preferred provider organization, but is not registered to do business in Florida.

4.      Non-party ADP Integrated Medical Solutions, Inc. ("ADP") is a business entity incorporated under the laws of the State of Maryland, with its principal place of business in Bethesda, Maryland.  ADP is in the business of developing software driven insurance cost containment products used in the claims review process by property and casualty insurers to reduce payments made on insurance medical expense claims.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

2

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

6.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§ 1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq.
(the "RICO Act").

7.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 (b) and (c)
because a substantial part of the events or omissions giving rise to the claims occurred in this District
and because Defendant is subject to personal jurisdiction in this District.

## BACKGROUND

8.    NATIONWIDE's standard Florida Automobile Insurance Policy (hereinafter the
"Policy") provides Personal Injury Protection ("PIP") benefits to its insureds.

9.    With respect to payment of accident related medical expenses under PIP,
NATIONWIDE's policy of insurance states in pertinent part that NATIONWIDE must pay eighty
(80%) percent of all reasonable and necessary accident related medical expenses.

10.    NATIONWIDE's Policy is a typical Florida indemnity insurance policy under which
NATIONWIDE is required to indemnify claimants for eighty (80%) percent of the full cost of their
reasonable and necessary medical bills up to a defined limit.

11.    Under the Policy, an insured has the absolute right and freedom to choose his or her
medical providers.

12.    Within Policy limits, medical providers have the unrestricted right to be reimbursed
eighty (80%) percent of their reasonable and necessary accident related medical expenses.

13.    The State of Florida's PIP statute directly addresses a health care provider's right to
be paid for reasonable charges.  Section 627.736(5), Florida Statutes ("Section 627.736") states:

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered ...

14.    Florida statutes permit an automobile insurance company to designate certain medical providers as preferred providers *if* the automobile insurer establishes a legitimate preferred provider organization ("PPO") network by satisfying the strict requirements of Section 627.736(10) which provides as follows:

(10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section.  If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits.  If the insurer offers a preferred provider policy to a policy-holder or applicant, it must also offer a non-preferred provider policy.  The insurer shall provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

15.    NATIONWIDE has not offered its insureds preferred policies for PIP automobile insurance. As such, any medical provider who treated or treats a NATIONWIDE insured under a NATIONWIDE PIP auto insurance policy is not a "preferred provider."  Therefore, in accordance with the above quoted statute, "the medical benefits provided by the insurer shall be as required by this section." (emphasis added).  The medical benefits "required" are 80% of "all reasonable and necessary treatment, expenses..."



CASE NO. 00-6061-CIV-FERGUSON/SNOW

16.     Companies such as Beech Street are sometimes referred to as "brokers" or "managed care companies" in the health care industry.  Beech Street contracts with health care providers, such as DR. LARUSSO, for the purpose of uniting health care providers with commercial payors to coordinate and arrange for the delivery of health care services to the payors' legitimate subscribers. Beech Street may also administer health care claims submitted by health care providers to insurance companies.

17.     The contracts entered into with health care providers by Beech Street require the health care providers to accept fees for services to subscribers at discounted rates from payors.

18.     Health care providers, by definition, include, but are not limited to, physicians, chiropractors, hospitals, pharmacies, and other health care facilities.

19.     Payors benefit by paying health care providers at discounted rates.

20.     Health care providers benefit by becoming part of the network of health care providers that are supposed to be marketed by payors to their subscribers and insureds through the use of directories and marketing tools, thus increasing the health care providers' volume of business referrals. Such health care providers are recognized as "preferred providers."

21.     The insurance policies sold or provided by the payors to their subscribers are recognized as "preferred provider policies."

22.     The combination of all parties to this endeavor is recognized as a Preferred Provider Organization.

23.     At all times material herein, DR. LARUSSO entered into a contract under which he agreed to provide his services to Beech Street PPO Subscribers.  As consideration for this increased



CASE NO. 00-6061-CIV-FERGUSON/SNOW

volume, DR. LARUSSO agreed to discount his normal fees. Thereafter, NATIONWIDE began applying DR. LARUSSO's Beech Street contractual discount to DR. LARUSSO's medical bills for his patients who were injured in automobile accidents and covered by a Florida NATIONWIDE PIP Policy.

24.     Section 627.736(10), provides a means for NATIONWIDE to participate in such a PPO and offer a preferred provider policy for personal injury protection automobile insurance to its insureds after it enters into contracts with health care providers.

25.     NATIONWIDE never became a legitimate participant in DR. LARUSSO's PPO and never complied with the requirements of the Section 627.736(10).

26.     Nevertheless, NATIONWIDE has taken discounts on health care providers' bills as if it were a legitimate participant in DR. LARUSSO's PPO and had complied with Section 627.736 by offering a preferred provider policy of personal injury protection automobile insurance to its insureds, none of which was done by NATIONWIDE.

27.     This unlawful practice (called a "Silent PPO") allows NATIONWIDE to enjoy substantial savings and profits by paying out less in benefits which in turn causes DR. LARUSSO and those similarly situated to suffer financial loss, without any consideration from NATIONWIDE for these discounts.

28.     NATIONWIDE, Beech Street and middleman ADP have collectively engaged in the previously described "Silent PPO" scheme to reduce benefits paid on auto injury claims.

7090-00100 334427.1                                6

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

29.     The "Silent PPO" scheme has emerged primarily in the context of indemnity plans. Indemnity insurers, such as NATIONWIDE, obtain access to PPO networks of preferred providers and their discounts. NATIONWIDE takes advantage of these discounts.

30.     NATIONWIDE is not, however, entitled to take advantage of these legitimate PPO discounts under the terms and conditions of its Florida automobile insurance policies, the Florida PIP statutes, and the Beech Street PPA contract with DR. LARUSSO.

31.     NATIONWIDE has not established the statutory prerequisites to be entitled to these PPO discounts.

32.     This Silent PPO scheme contains none of the legitimate steerage mechanisms required by legitimate PPOs. Legitimate steerage mechanisms include creating financial incentives for steering insureds to preferred providers such as lower premiums or lower co-payments, providing education and marketing information to insureds about preferred providers in the network, and printing and distributing preferred provider identification cards.

33.     By using the Silent PPO scheme, NATIONWIDE enjoys substantial savings by paying PIP benefits without the attendant expense of establishing a legitimate PPO network.

34.     Legitimate managed care companies and insurers have knowledge of the illegality of such schemes. The American Association of Preferred Providers has denounced such practices and the American Medical Association has issued an "Action Alert Kit" to its members educating them about Silent PPO schemes.

35.     The Defendants all had knowledge of the illegal nature of this Silent PPO discounting scheme. Silent PPO discounting schemes have been the subject of widespread discussion in the



CASE NO. 00-6061-CIV-FERGUSON/SNOW

insurance and managed care industries with many major medical associations denouncing the practice. NATIONWIDE knew of the purpose and requirements of Florida Statutes § 627.736 (10)(1992), as they had offered a PPO Endorsement, discontinued the endorsement but continued to take PPO discounts. Moreover, an adjuster and an expert witness working for NATIONWIDE have given testimony as to the suspect nature of taking PPO discounts where a PPO Endorsement was not sold to an insured.

36.    Defendant Beech Street had direct knowledge of the illegitimate nature of Silent PPOs. Beech Street drafted the PPA, executed the PPA with DR. LARUSSO and had express knowledge of its provisions. Moreover, Beech Street has issued letters to providers discussing the Silent PPO issue, and Beech Street is a member of the American Association of Preferred Provider Organizations which prohibits Silent PPO practices.

37.    Under NATIONWIDE's Silent PPO scheme, Beech Street licensed, leased or otherwise provided its discount database to ADP. ADP incorporated the Beech Street preferred provider discounts into its existing cost containment software product - a product specifically designed to "re-price" medical bills based on preferred provider rates for non-managed care lines of insurance such as property and casualty insurance.

38.    Armed with the Beech Street preferred provider database of discounts, ADP licensed, leased or otherwise sold its PPO re-pricing, software to NATIONWIDE. NATIONWIDE, or ADP on their behalf, systematically processed all Florida medical expense claims through ADP's automated PPO re-pricing product and applied discounts to bills where the medical provider's tax identification number on the bill matched a tax identification number in ADP's database. At no time

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

did DR. LARUSSO have a contract with ADP or NATIONWIDE authorizing discounts to be taken on his medical bills.

39.     NATIONWIDE routinely and systematically used ADP's re-pricing product in conjunction with the Beech Street preferred provider discounts to reduce millions of dollars of medical bills.  The discounts were routinely and systematically applied despite the fact that a preferred provider policy was not offered by NATIONWIDE and despite the fact that claimants were not referred steered or directed to preferred providers.

40.     As part of the Defendants' Silent PPO scheme, Beech Street and ADP were paid a percentage of NATIONWIDE's PPO discount savings and/or a per transaction fee for processing claims for NATIONWIDE.

41.     Without complying with the statutory prerequisites for the establishment of an automobile insurance PPO network, NATIONWIDE has systematically discounted medical providers' PIP medical expenses by utilizing PPO discounts.

42.     NATIONWIDE has illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any steerage or other meaningful consideration for such discounts.

## FACTS AS TO PLAINTIFF

43.     At all times material herein, DR. LARUSSO was a party to a "Preferred Provider Agreement" ("PPA") with Beech Street to be a participating health care preferred medical provider (hereinafter referred to as a "Beech Street Preferred Provider").

ATLAS PEARLMAN
P.A.
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

44. Pursuant to the PPA Agreement, DR. LARUSSO agreed to become a member of Beech Street's "Health Benefits Network" (i.e. employer/employee based group or individual health plan related payors). LARUSSO's agreement does not allow Beech Street to allow automobile insurers or PPO discount brokers with automobile insurer clients access to LARUSSO's preferred provider rates.

45. DR. LARUSSO's agreement does not allow Beech Street to allow automobile insurers or PPO discount brokers with automobile insurer clients access to DR. LARUSSO's rates.

46. NATIONWIDE had not offered a PPO endorsement to its automobile insureds. Moreover, NATIONWIDE never offered its Florida automobile insureds premium reductions as an economic incentive to use preferred providers.

47. DR. LARUSSO's PPA with Beech Street did not authorize the application of his discounts by automobile insurers or discount brokers who could not increase DR. LARUSSO's patient volume. Increased patient volume was the consideration for DR. LARUSSO's discounts under the PPA.

48. Despite these known facts, Beech Street allowed NATIONWIDE access to all of Beech Street's preferred provider's confidential and proprietary discount rates knowing that NATIONWIDE and ADP were not proper payors under the PPA and could not increase preferred provider patient volume as promised by Beech Street.

49. With Beech Street's consent, its database of preferred provider discounts was loaded into NATIONWIDE's software and applied to all bills submitted to the NATIONWIDE by Beech Street preferred providers such as DR. LARUSSO.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

50.    In exchange for Beech Street's anticipated effort to increase his patient volume, DR. LARUSSO agreed with Beech Street to provide health care services to Subscribers of such Payors at a rate lower than DR. LARUSSO would normally accept for the same health care services.

51.    NATIONWIDE obtained access to Beech Street's database that contained the identities of all of Beech Street's Preferred Providers, as well as the discounted fees that these health care providers were willing to accept for medical services.

52.    At no time did NATIONWIDE have a written contract with DR. LARUSSO or other health care providers in Florida wherein health care providers agreed with NATIONWIDE to discount charges for their medical services to patients injured in automobile accidents who were insured for PIP coverage by NATIONWIDE.

53.    By virtue of NATIONWIDE's access to the discounted rates in the agreements between Beech Street, DR. LARUSSO, and the class, NATIONWIDE began to systematically apply PPO discounts.

54.    ADP,    Beech Street and/or NATIONWIDE    have mailed explanation of reimbursement forms ("EOBs") that indicated the application of a discount based upon the Beech Street Preferred Provider Agreements.

55.    These EOBs state that NATIONWIDE is entitled to such discounts.

56.    Under this scheme, NATIONWIDE has been reaping huge savings while violating Florida law and providing no consideration whatsoever to health care providers, including DR. LARUSSO, for the right to apply such discounts.



57.     Under NATIONWIDE's Silent PPO scheme, Beech Street licensed, leased or otherwise provided its discount database to ADP. ADP incorporated the Beech Street preferred provider discounts into its existing cost containment software product - a product specifically designed to "re-price" medical bills based on preferred provider rates for non-managed care lines of insurance such as property and casualty insurance.

58.     At all times material herein, in the course of his medical practice, DR. LARUSSO provided medical care to patients who had been injured in automobile accidents and who were entitled to PIP benefits from NATIONWIDE.

59.     At no time prior to their treatment with DR. LARUSSO did this class of patients receive any marketing materials, including, but not limited to, publications identifying DR. LARUSSO's name, address and available services, from NATIONWIDE.

60.     At no time did NATIONWIDE comply with the requirements of Section 627.736(10).

61.     At no time prior to their treatment with DR. LARUSSO did NATIONWIDE encourage these patients to use DR. LARUSSO's medical services.

62.     After providing medical treatment to these patients, DR LARUSSO submitted medical bills for reasonable and necessary accident related medical expenses to NATIONWIDE for payment.

63.     Upon receipt of the medical bills submitted by DR. LARUSSO for payment under the PIP portion of the NATIONWIDE Automobile Policy, NATIONWIDE discounted DR. LARUSSO's and other class members' bills by using the Beech Street PPO discounted rates claiming that NATIONWIDE was entitled to said discount.



64.    Beech Street was paid a percentage of NATIONWIDE's discount savings on each PIP medical expense claim.

65.    DR. LARUSSO and other class members have received no consideration from NATIONWIDE for the discounts taken.

66.    NATIONWIDE could not provide such consideration because NATIONWIDE failed to offer its insureds a PPO automobile insurance policy compliance with the Florida PIP statute.

67.    NATIONWIDE's illegal activity is demonstrated by Exhibit "1" attached hereto. Exhibit "1" represents a sample of an EOB received by DR. LARUSSO illustrating the illegal discount.

68.    DR. LARUSSO billed NATIONWIDE $147.50.  NATIONWIDE then paid less than the amount billed by DR. LARUSSO.

69.    NATIONWIDE was supposed to pay eighty (80%) percent of the billed amount.

70.    NATIONWIDE paid only 80% of the reduced amount as its full obligation under the insured's automobile insurance policy.

71.    This example resulted in the misappropriation of $46.54 from DR. LARUSSO.

72.    NATIONWIDE routinely and systematically applied the Beech Street PPO discounted rates to PIP medical expense claims.

73.    At the time NATIONWIDE implemented its PPO discounting scheme, it knew it was violating Florida law.

74.    After taking the illegal discounts on DR. LARUSSO's and the class' bills, as described above, NATIONWIDE routinely printed out EOBs showing the discounts.  It then



forwarded the EOBs and reduced payment checks to the health care providers in purported full satisfaction of the health care providers' medical charges.

75.     It was and is the custom and practice of NATIONWIDE to discount thousands of automobile medical expense claims in this manner in violation of its policies with its insureds and in violation of Florida's PIP statutes.

76.     DR. LARUSSO and those similarly situated have been economically damaged and have suffered monetary losses as a result of the conduct of NATIONWIDE.

## CLASS ACTION ALLEGATIONS

77.     DR. LARUSSO brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated. The class is defined to include:

> all Florida health care providers whose bills for medical services rendered to patients covered by NATIONWIDE's personal injury protection automobile insurance policies were discounted by NATIONWIDE based upon a purported Beech Street Services, Inc. Preferred Provider Organization reduction.

78.     There are questions of law and fact that are common to all members of the class, which questions predominate over any question affecting only individual class members.

79.     The principal common issues include the following:

(a)     whether NATIONWIDE violated Section 627.736, Florida Statutes, by paying personal injury protection medical expense claims at discounted Preferred Provider rates;

(b)     whether NATIONWIDE's processing of the PPO discounts is permissible under state law or federal law;



CASE NO. 00-6061-CIV-FERGUSON/SNOW

(c)    whether DR. LARUSSO and those similarly situated are entitled to compensatory, statutory, or punitive damages against NATIONWIDE because of its illegal conduct; and

(d)    whether DR. LARUSSO and the class are entitled to an injunction preventing the continued disclosure and/or use of their discounts by NATIONWIDE and the application of these discounts to automobile personal injury protection medical expense claims.

80.    The class is comprised of all health care providers whose medical bills were discounted by NATIONWIDE based on Beech Street Preferred Provider discounts.

81.    The amounts of the discounts are contained in NATIONWIDE's computer systems and on the EOBs and checks mailed by NATIONWIDE to DR. LARUSSO and the members of the class.

82.    DR. LARUSSO's claims are typical of the claims of all members of the class because the claims are based on the same legal and remedial theories.

83.    DR. LARUSSO will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

84.    DR. LARUSSO is similarly situated with, and has suffered similar injuries as, the members of the class that he seeks to represent.

85.    DR. LARUSSO has retained counsel experienced in class action cases and health care litigation.



86.    Neither DR. LARUSSO, nor counsel, have any interest that may cause them to not vigorously pursue this action.

87.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

(a)    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

(b)    concentration of the litigation concerning this matter in this Court is desirable;

(c)    the claims of the representative Plaintiff are typical of the claims of the members of the class;

(d)    a failure of justice will result from the absence of a class action; and

(e)    the class and the difficulties likely to be encountered in the management of this class action are not great.

88.    The class is so numerous as to make it impracticable to join all members of the class as plaintiffs.

89.    NATIONWIDE has discounted thousands of medical bills based on Beech Street Preferred Provider discounted rates. Many health care providers may not even be aware of NATIONWIDE's sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of pursuing individual litigation.

90.    In contrast, on a class-wide basis, NATIONWIDE has saved millions of dollars by accessing and utilizing the discounted rates of health care providers.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

## AS AND FOR A FIRST
## CAUSE OF ACTION
### (Unjust Enrichment)

91.     DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "90" above, with the same force and effect as if set forth fully herein.

92.     DR. LARUSSO and the class conferred benefits upon NATIONWIDE by providing health care services to individuals insured by NATIONWIDE.

93.     DR. LARUSSO and the class billed NATIONWIDE the reasonable value for these services.

94.     NATIONWIDE improperly paid these bills at reduced rates.

95.     NATIONWIDE has provided no consideration to DR. LARUSSO and the class for the retention of the discounts by NATIONWIDE.

96.     NATIONWIDE has reaped the benefit of substantial monetary savings on PIP claims by wrongfully and illegally applying the Beech Street PPO discounted rates to Florida PIP medical expense claims.

97.     NATIONWIDE had knowledge that it reaped said financial benefits to the detriment of DR. LARUSSO and the members of the class by voluntarily accepting and retaining said benefits.

98.     Such savings constitute unjust enrichment for NATIONWIDE and it would be inequitable under the circumstances for NATIONWIDE to retain the benefits received from DR. LARUSSO and the members of the class without paying the full value thereof to DR. LARUSSO and the class members.



## AS AND FOR A SECOND
## CAUSE OF ACTION
### (Third-Party Beneficiary Breach of Contract)

99.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "90" above, with the same force and effect as if set forth fully herein.

100.    NATIONWIDE and its insureds who purchased its Florida PIP automobile insurance policy entered into a contract of insurance.

101.    NATIONWIDE's contract provided that in the event an insured was involved in an automobile accident, NATIONWIDE would pay, on the insured's behalf, eighty (80%) percent of all reasonable and necessary medical expenses incurred.

102.    DR. LARUSSO and the other members of the class provided medical services to NATIONWIDE insureds who were injured in automobile accidents.

103.    DR. LARUSSO and the members of the class are intended third-party beneficiaries of NATIONWIDE's automobile insurance agreements.

104.    DR. LARUSSO and the members of the class were to be paid eighty (80%) percent of all reasonable and necessary medical expenses incurred and billed.

105.    NATIONWIDE breached the agreement by improperly paying medical expenses at reduced rates.

106.    As a result, DR. LARUSSO and the putative class members have suffered damages directly and proximately caused by NATIONWIDE's breach of its insurance agreements with its insureds.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

### AS AND FOR A THIRD
### CAUSE OF ACTION
### (RICO Act Violations)

107.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "90" above, with the same force and effect as if set forth fully herein.

108.    NATIONWIDE, acting with Beech Street and discount broker ADP, middleman ADP formed an association-in-fact enterprise designed to reduce payments made to Beech Street preferred providers on all Florida PIP medical expense claims submitted to NATIONWIDE. The "association-in- fact" is known as a "silent PPO."

109.    NATIONWIDE, with the knowing or grossly negligent cooperation of Beech Street and middleman Beech Street, participated, directly and indirectly, in the activities of this enterprise through a pattern of racketeering activity, as more fully set forth below.

110.    The activities of this enterprise affected commerce.

111.    The pattern of racketeering activity consisted of multiple acts of mail and wire fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

112.    The pattern of racketeering activity has been continuous for at least two years, and, on information and belief, will continue into the future.

113.    In furtherance of the pattern of racketeering activity, NATIONWIDE has engaged in a continuous scheme and artifice to defraud DR. LARUSSO, and those similarly situated, of money as follows:

(a)    Beech Street solicited DR. LARUSSO by mail to join its PPO network. Beech Street mailed its marketing and preferred provider agreements to potential preferred providers



CASE NO. 00-6061-CIV-FERGUSON/SNOW

through use of the United States Mails. Beech Street entered into a PPA with DR. LARUSSO and class members which did not authorize the disclosure, sale, lease or license of preferred provider discounts to NATIONWIDE or ADP;

(b)     Beech Street entered into an agreement with ADP (hereinafter referred to as a "Lease Agreement") whereby its disclosed, leased and/or licensed the use of the confidential, proprietary Beech Street preferred provider database to ADP in a secondary market transaction;

(c)     In exchange for providing ADP access to said discounts, Beech Street agreed to receive a fee from ADP based on a percentage of anticipated insurance company savings and/or based on a flat fee structure each time a discount would be applied;

(d)     As a PPO broker in the PPO discount secondary black market, ADP entered into a broker agreement (hereinafter referred to as a "Broker Agreement") with NATIONWIDE which allowed for the disclosure and lease and/or license of the Beech Street preferred provider database to NATIONWIDE;

(e)     ADP incorporated the Beech Street database into its PPO re-pricing insurance cost containment software and thereafter applied, or allowed NATIONWIDE to apply, Beech Street preferred provider discounts to medical expense claims submitted to NATIONWIDE by Beech Street preferred providers;

(f)     ADP, which is based in Maryland, NATIONWIDE and Beech Street transferred claim information, medical bills, EOBs, compensation information and documentation and other documentation and information necessary to carry out this scheme via the United States mails and/or by wire;

7090-00100 334427.1

20



(g)    After computer application of the discounts, ADP and NATIONWIDE printed Explanation of Benefit forms ("EOBs") on ADP's form EOBs which indicated the PPO discount and the reduced amount owed after application of the discount;

(h)    Accompanying the EOB is often an additional form summarizing a claimant's insurance benefits (hereinafter "Summary Benefit Form") also indicating that a PPO discount was applied;

(i)    By use of the United States mail, ADP and NATIONWIDE, with the consent and knowledge of Beech Street, thereafter transmitted or caused to be transmitted said EOBs, Summary Benefit Forms, and reduced claim checks to medical providers and persons insured by NATIONWIDE.  Samples of such an EOB is attached hereto as Exhibit "1."

(j)    Said EOBs and Summary Benefit Forms falsely represented that the NATIONWIDE and ADP were entitled to apply a Beech Street PPO discount to the claim;

(k)    Said EOBs and Summary Benefit Forms falsely claimed the "AMOUNT OWED" to be less than the amount actually owed and also falsely decreased a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount;

(l)    Said EOBs also falsely stated that the discounted amount is "considered payment in full" and that all "appeals" regarding the PPO reductions must be taken up with the PPO, not ADP or the insurer;

(m)    The Defendants engaged in interstate telephone calls, computer communications, and/or wire communications and transactions to transmit information that was false and to exchange fees and compensation essential to the scheme.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

114.    In the above described manner, NATIONWIDE was able to gain access to managed care contract rates for application to Florida PIP medical expense claims without providing any consideration to DR. LARUSSO or members of the purported class, and without ever entering into a managed care agreement with any medical providers.

115.    This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars has directly caused monetary damages to DR. LARUSSO and members of the class.

116.    NATIONWIDE's, Beech Street's and ADP's conduct gives rise to claims under 18 U.S.C. § 1964(a) of RICO and permits the recovery of treble damages against NATIONWIDE for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

117.    DR. LARUSSO and the class members are "persons" within the meaning of 18 U.S.C. § 1964(c).

118.    At all times relevant hereto, DR. LARUSSO and class members were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

119.    With respect to the activities alleged herein, NATIONWIDE, Beech Street and ADP acted at all times with malice toward the class, intent to engage in the conduct complained of for their own benefit and with knowledge that such conduct constituted unlawful activity. Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which NATIONWIDE, Beech Street and ADP are subject, the same amounting to actionable wantonness.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

120.    With respect to the activities alleged herein, NATIONWIDE, Beech Street and ADP aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c).

121.    NATIONWIDE operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

122.    In furtherance of this scheme, NATIONWIDE, Beech Street and ADP interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests, to which NATIONWIDE and Beech Street are not entitled, through the exploitation of discount rates.

123.    With respect to the overt acts and activities alleged herein, NATIONWIDE communicated and conspired with Beech Street and middleman ADP to violate 18 U.S.C. §§ 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).

124.    NATIONWIDE communicated with Beech Street and middleman ADP so that it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

125.    NATIONWIDE communicated with Beech Street and middleman ADP so that it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which NATIONWIDE, Beech Street and ADP were not entitled, through the exploitation of a proprietary discount rate.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

126.    The numerous predicate acts of mail and wire fraud and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by NATIONWIDE, Beech Street and ADP to defraud DR. LARUSSO and the purported class of money and property interests under false pretenses; to deprive DR. LARUSSO and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and to place NATIONWIDE's, Beech Street's and ADP's financial interests over the confidential records of DR. LARUSSO and the class so that NATIONWIDE, Beech Street and ADP could make greater profits.

127.    DR. LARUSSO, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

## A.    RACKETEERING ACTIVITIES.

128.    In carrying out the overt acts and fraudulent scheme described above, NATIONWIDE and Beech Street engaged in *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 961 et seq., as stated below.

129.    Section 1961(l) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

130.    The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain



CASE NO. 00-6061-CIV-FERGUSON/SNOW

unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§ 1341 and 1343,

respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or

artifice' includes a scheme or artifice to deprive another of the intangible right of honest services."

18 U.S.C. § 1346.

### 1. 18 U.S.C. §§ 1341 and 1346, and 18 U.S.C. §§ 1343 and 1346

131.    For the purpose of executing and/or attempting to execute its scheme to defraud and

to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to

execute its scheme or artifice to deprive another of the intangible right of honest services,

NATIONWIDE, Beech Street and ADP, in violation of 18 U.S.C. § 1341 and § 1346, placed in

United States Post Offices and/or in authorized repositories for mail, matter, matters and things to

be sent or delivered by the United States Postal Service, and received matters and things therefrom

and knowingly caused to be delivered by mail those matters and things according to the directions

thereon or at the place at which they were directed to be delivered by the persons to whom they were

addressed.

132.    For the purpose of executing and/or attempting to execute its scheme to defraud and

to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to

execute its scheme or artifice to deprive another of the intangible right of honest services,

NATIONWIDE, Beech Street and ADP, in violation of 18 U.S.C. §§ 1343 and 1346, transmitted in

interstate commerce by wire, telephone, or computer transmissions, information regarding illegal

discounts. In this manner, NATIONWIDE, was knowingly violating obligations of Beech Street and

middleman ADP to DR. LARUSSO and others similarly situated to provide "honest services."


ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

133.    NATIONWIDE knowingly induced Beech Street and middleman ADP to deprive DR. LARUSSO and others similarly situated of "honest services."

134.    In those matters and things sent or delivered by the United States Postal Service referred to above, NATIONWIDE, Beech Street and ADP falsely and fraudulently represented to DR. LARUSSO and the class that:

(a)    NATIONWIDE's payments were for the amount "billed" for the reasonable value of the services, and

(b)    that NATIONWIDE was entitled to a PPO discount for DR. LARUSSO and the class under a system that legitimately provides education, marketing and economic incentives intended to "steer" more patients  and to provide other benefits to health care providers. NATIONWIDE failed, however, to disclose to DR. LARUSSO and the class that its EOBs were based upon illegal discounts designed to maximize profits on discounts illegally obtained  through DR. LARUSSO's proprietary information.  NATIONWIDE thus failed to disclose material facts regarding NATIONWIDE's internal policies and practices specifically designed to reduce or limit the level of payment discussed in detail above.

135.    With respect to its unlawful activities described above, NATIONWIDE also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§ 1341, 1343, and 1346.

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

136.    NATIONWIDE intentionally and knowingly deceived DR. LARUSSO and the purported class referred to above for the purpose of financial gain. NATIONWIDE either knew, or recklessly disregarded, that the illegal discounts described above were material.

137.    DR. LARUSSO and the class have been injured in their business or property by NATIONWIDE's overt acts and racketeering activities in amounts to be determined at trial.

### 2.    18 U.S.C. § 1951(b)(2)

138.    During the relevant times and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, NATIONWIDE, Beech Street and middlemen ADP, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. § 1951.

139.    NATIONWIDE unlawfully attempted to and/or did induce Beech Street and middleman ADP to cause DR. LARUSSO and numerous other health care providers to part with various property interests to which NATIONWIDE was and is not entitled, including the intangible property right of health care providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy.

140.    NATIONWIDE's conduct induced Beech Street and middleman ADP to provide it with the names of health care providers and their discounts and exploited a fear of economic loss and/or loss of business by DR. LARUSSO and others similarly situated in violation of 18 U.S.C. § 1951(b)(2).



141.    In furtherance of the scheme or artifice to defraud to obtain money by false pretenses from DR. LARUSSO and the class, NATIONWIDE communicated with middleman Beech Street to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which NATIONWIDE was not entitled through the exploitation of health care providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts.

142.    NATIONWIDE either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by DR. LARUSSO and the class.

143.    NATIONWIDE's, Beech Street's and ADP's overt acts and fraudulent and extortionate racketeering activities has and continues to defraud DR. LARUSSO and the members of the class, of money, has and continues to unlawfully influence and interfere with the relationship of Beech Street and middleman ADP and DR. LARUSSO and the purported class, as well as interfering with the fiduciary relationship between DR. LARUSSO, and members of the purported class and their patients.

144.    DR. LARUSSO and the purported class have, therefor, been injured in their business or property by NATIONWIDE's overt acts and racketeering activities in amounts to be determined at trial.

### 3. 18 U.S.C. § 1952(a).

145.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud DR. LARUSSO and the purported class,

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

NATIONWIDE, Beech Street and ADP and their respective employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. § 1952(a).

146.    NATIONWIDE's, Beech Street's and ADP's overt acts and fraudulent racketeering activity has and continues to defraud DR. LARUSSO and the class of money.

### B.    PATTERN OF RACKETEERING ACTIVITY.

147.    NATIONWIDE, Beech Street and ADP have engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including DR. LARUSSO and the class.

148.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by NATIONWIDE, Beech Street and ADP, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

### C.    RICO VIOLATIONS OF 18 U.S.C. §§ 1962 (d).

149.    DR. LARUSSO's claim for relief also arises under 18 U.S.C. § 1964 (c) of RICO and seeks to recover actual and treble damages for NATIONWIDE's , Beech Street's and ADP's


ATLAS PEARLMAN

violations of 18 U.S.C. §§ 1962(c) and for its violations of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

## 1. Section 1962(c) claim.

150.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "90" above, with the same force and effect as if set forth fully herein.

151.    18 U.S.C. § 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

152.    18 U.S.C. § 1961(3) of RICO states that a "person" includes any individual or entity capable of holding a legal or beneficial interest in property.

153.    18 U.S.C. § 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

154.    For purposes of this 18 U.S.C. § 1962(c) claim, the persons consist of NATIONWIDE, Beech Street and middleman ADP. The enterprise is an association-in-fact consisting of NATIONWIDE, Beech Street and middleman ADP by virtue of its control over physicians, medical specialists, medical laboratories, hospitals, health care clinics, pharmacies, home health care agencies, and other miscellaneous health care providers, all of which have the purpose of providing health care services to NATIONWIDE's insureds making PIP claims under NATIONWIDE's automobile insurance policies.



155.    This 18 U.S.C. § 1962(c) enterprise is distinct from NATIONWIDE and includes many persons who are not employees of NATIONWIDE and many entities that are not owned by NATIONWIDE. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

156.    NATIONWIDE is associated with middleman Beech Street in the 18 U.S.C. § 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described herein. DR. LARUSSO and the purported class members are directly and proximately injured both by this pattern of activity and by NATIONWIDE's conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

### 2.    Section 1962(d) Claim.

157.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "90" above, with the same force and effect as if set forth fully herein.

158.    This claim for relief also arises under 18 U.S.C. § 1964(c) of RICO and seeks to recover actual and treble damages for NATIONWIDE's, Beech Street's and ADP's violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

159.    18 U.S.C. § 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."



160.    18 U.S.C. § 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

161.    For purposes of the claim of a conspiracy in violation of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a), the persons under the latter subsection consist of NATIONWIDE and middleman Beech Street and the enterprise consists of NATIONWIDE and its investment division, which further profits from the ill-gotten gains.

162.    At all times relevant herein, Beech Street, middleman ADP's and NATIONWIDE's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a).

163.    The NATIONWIDE investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud DR. LARUSSO and the purported class of money and to deprive them of their intangible right of honest services from middleman Beech Street.

164.    NATIONWIDE sells insurance nationwide. Assets generated from NATIONWIDE's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars.

165.    NATIONWIDE derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or



CASE NO. 00-6061-CIV-FERGUSON/SNOW

indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a).

166.    This use or investment injures DR. LARUSSO and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect health care providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described herein.

167.    As demonstrated in detail above, NATIONWIDE has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require DR. LARUSSO and the purported class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud DR. LARUSSO and the class of money, and to unlawfully interfere with their physician-patient relationship.

168.    NATIONWIDE's pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by NATIONWIDE's inducement to Beech Street and middleman ADP to allow NATIONWIDE to defraud DR. LARUSSO and the purported class.

169.    The nature of the above described acts of NATIONWIDE constitutes material misrepresentations that give rise to an inference that NATIONWIDE knew it was violating the objective of 18 U.S.C. § 1962(d) by violating 18 U.S.C. §§ 1962(a) and (c), through its ongoing



fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

170.    As a direct and proximate result of NATIONWIDE's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate IS U.S.C. §§ 1962(a) and (c), DR. LARUSSO and the class have been and are continuing to be injured in their business or property.

171.    Pursuant to 18 U.S.C. § 1964(c), DR. LARUSSO is entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

172.    NATIONWIDE has sought to and has engaged in the commission of and continues to commit overt acts and the aforesaid described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by NATIONWIDE from such pattern of racketeering activity, to-wit:

      (a)      multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

      (b)      multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

      (c)      multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

      (d)      multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

      (e)      multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and

      (f)      multiple instances of violations of 18 U.S.C. § 1954.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

173.    NATIONWIDE's violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting NATIONWIDE's illegal acts constituting a pattern of racketeering activity is fashioned and imposed by this Court.

## AS AND FOR A FOURTH
## CAUSE OF ACTION
### (Declaratory Judgment)

174.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "90" above, with the same force and effect as if set forth fully herein.

175.    As previously alleged, NATIONWIDE has improperly taken advantage of discounts to which it is not entitled for all the reasons that have been set forth in the previous paragraphs of this Complaint.

176.    NATIONWIDE has taken these discounts in breach of the terms and conditions of their automobile insurance policies. Said policies are indemnity policies that do not provide for preferred provider benefits or the application of preferred provider rates.

177.    By using Beech Street's preferred provider rates to limit the payment of DR. LARUSSO's and class members' PIP medical bills, NATIONWIDE has imposed a limitation on benefits that is not contained in their automobile insurance policies. DR. LARUSSO and the class members are intended third-party beneficiaries of said insurance policies and are entitled to a declaration that NATIONWIDE's payments of their PIP medical bills at preferred provider rates is a breach of the applicable insurance contracts.

WHEREFORE, DR. LARUSSO on behalf of himself, and others similarly situated, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, ask this Court to declare that



NATIONWIDE has breached its insurance contracts by imposing a limitation on benefits not contained in said policies and award Plaintiff and the class actual damages, interest thereon, attorneys' fees and costs.

**AS AND FOR A FIFTH**
**<u>CAUSE OF ACTION</u>**
**(Violation of Section 627.736, Florida Statutes)**

178.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "90" above, with the same force and effect as if set forth fully herein.

179.    At all times material herein, DR. LARUSSO and the members of the class that he seeks to represent presented or had presented on their behalf reasonable and necessary medical charges to NATIONWIDE for treatment of patients entitled to PIP medical expense benefits pursuant to a Florida automobile insurance policy issued by NATIONWIDE.

180.    Pursuant to Section 627.736, Florida Statutes:

(1)    **Required benefits.** Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(d), to a limit of $10,000 of loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:

(a)    Medical benefits.  Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services.  Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through a prayer alone for healing, in accordance with his religious beliefs.

. . .

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

**(4)    Benefits; when due.**

. . .

(g)    It is a violation of the insurance code for an insurer to fail to timely provide benefits as required by this section with such frequency as to constitute a general business practice.

181.    Effective October 1, 1991, as amended, effective October 1, 1992, Section 627.736(10), Florida Statutes provides:

An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section referred to in this section as "preferred providers" which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a nonpreferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, it must also offer a nonpreferred provider policy. The insurer shall provide each policyholder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

182.    Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, <u>the medical benefits provided by the insurer shall be as required by this section</u>." (Emphasis added).

183.    Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider who is a preferred provider, the insurance may pay medical benefits <u>in excess of the</u>



ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits." (Emphasis added).

184.    In violation of the foregoing provisions of Section 627.736, NATIONWIDE has implemented a policy and has conducted itself in a manner with such frequency as to constitute a general business practice whereby NATIONWIDE has paid and continues to pay medical benefits at a rate less than the reasonable and necessary rate.

185.    NATIONWIDE, as part of its general business practice, has been paying medical benefits at eighty (80%) percent of preferred provider rates.

186.    At all times material hereto, NATIONWIDE did not offer preferred provider policies.

187.    Since NATIONWIDE did not offer a preferred provider policies, NATIONWIDE was required to pay eighty (80%) percent of all reasonable and necessary medical expenses.

188.    If NATIONWIDE issued and sold preferred provider policies, NATIONWIDE would then be entitled to pay medical benefits in excess of the benefits required and may waive or lower the amounts of any deductible that applies to such medical benefits.

189.    By paying PIP benefits at a preferred provider rate, NATIONWIDE has significantly reduced its payments and obligations under PIP policies throughout the State of Florida.

190.    NATIONWIDE's actions are in direct violation of Section 627.736, Florida Statutes.

191.    NATIONWIDE has wrongfully reduced DR. LARUSSO's and the class members' PIP medical expense claims based on Beech Street preferred provider discounts.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

192.    NATIONWIDE is not entitled to said Beech Street preferred provider discounts. NATIONWIDE has failed to offer insureds a PPO endorsement and also failed to otherwise comply with the requirements of Section 627.736(10), Florida Statutes.

193.    Despite this failure, NATIONWIDE has reduced and continues to reduce PIP automobile insurance medical expense claims of DR. LARUSSO and the purported class members by accessing and applying Beech Street preferred provider discounts.

194.    Accordingly, an outstanding balance remains on all automobile insurance PIP medical expense claims that NATIONWIDE has reduced based on Beech Street preferred provider discounts.

195.    Pursuant to Section 627.736(4)(b): "Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."

196.    Pursuant to Section 627.736(c): "All overdue payments shall bear interest at the rate of 10 percent per year."

197.    NATIONWIDE has failed to pay the full amount of the reasonable and necessary medical expense billed by DR. LARUSSO and the class members within 30 days after NATIONWIDE was furnished with written notice of the reasonable and necessary amount of the medical expense.

198.    NATIONWIDE has failed to pay interest on the remaining balances owed to DR. LARUSSO and the class members.



199.    By reducing DR. LARUSSO's and the purported class members' legitimate medical expenses by the application of Beech Street preferred provider discount rates, NATIONWIDE has violated Section 627.736, Florida Statutes.

200.    As a result of NATIONWIDE's failure to comply with Section 627.736, Florida Statutes, DR. LARUSSO and the members of the purported class have suffered damages.

WHEREFORE, DR. LARUSSO and the class demand the following relief:

(a)    As to the First Cause of Action, compensatory damages;

(b)    As to the Second Cause of Action, compensatory damages;

(c)    As to the Third Cause of Action, compensatory damages, punitive damages, and injunctive relief;

(d)    As to the Fourth Cause of Action, a declaration that NATIONWIDE's insurance practices are improper;

(e)    As to the Fifth Cause of Action, compensatory damages;

(f)    Attorneys' fees and costs where applicable;

(g)    A trial by jury on all issues so triable; and

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

(h)    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

ATLAS PEARLMAN, P.A.
Co-Counsel for Plaintiff
SALVATORE D. LARUSSO, D.C.
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

By: _____
    JAN DOUGLAS ATLAS
    Florida Bar No. 226246


By: _____
    ERIC LEE
    Florida Bar No. 961299


By: _____
    ROBIN CORWIN CAMPBELL
    Florida Bar No. 327931


**Co-Counsel for Plaintiff**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporation
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

7090-00100 334427.1

41



CASE NO. 00-6061-CIV-FERGUSON/SNOW

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 1611
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

facsimile to KATHERINE C. LAKE, ESQ., Fowler, White, et al., Post Box 1438, Tampa, FL 33601

and by mail this 10th day of October, 2001 upon: all individuals on the attached service list.

_____
ERIC LEE



**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**
(Updated 10/03/01)

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Eric Lee, Esq.
lee@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@gpandg.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 1611
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

ATLAS PEARLMAN

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
5300 Bank of America Center
Post Office Box 4099
Jacksonville, FL 32202-4099
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

ATLAS PEARLMAN
ATTORNEYS AT LAW

Counsel for:
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lola M. Swaby, Esq.
lswaby@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS
& ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

ATLAS PEARLMAN
ATTORNEYS AT LAW

Explanation of Reimbursement

MEDICAL BILL AUDITING UNIT
PO BOX 147017
GAINESVILLE, FL 32614-7017

**NATIONWIDE INSURANCE**
Nationwide is on your side

─── Claim Information ───

| | | | |
|---|---|---|---|
| Claim Number: | 7709H 2955370712199901001 | Region: | GULFRO |
| Policyholder: | GEIGER, JOSEPH M | District: | PIP EAST |
| Claimant: | GEIGER, JOSEPH M | Claims Rep: | RUBERTM |
| Date of Loss: | 07/12/1999 | Party: | First |
| Updated: | 10/26/1999 | Bill No: | 17 |
| | | Audited: | 10/26/1999 |

─── Provider Information ───

LARUSSO DC, SALVATORE D
S. D. LARUSSO, DC PA
13860 WELLINGTON TRACE
WELLINGTON, FL 33414

| | |
|---|---|
| Place of Service ZIP: | 33414 |
| Jurisdiction State: | |
| Payee EIN: | 65-0430505 |
| Specialty: | 35 - CHIROPRACTICS (DC) |
| Patient Account Number: | GEIJOS24-00 |

─── Diagnosis ───

| Seq# | ICD-9 | Description |
|---|---|---|
| 1 | 839.00 | CLOSED DISLOCATION, CERVICAL VERTEBRA, UNSPECIFIED |
| 2 | 839.21 | CLOSED DISLOCATION, THORACIC VERTEBRA |
| 3 | 839.20 | CLOSED DISLOCATION, LUMBAR VERTEBRA |
| 4 | 839.42 | CLOSED DISLOCATION, SACRUM |

─── Item Detail ───

| Item | Date | POS | CPT-Mod | Description | Units | Charge | Recommend Payment | Reason Code |
|---|---|---|---|---|---|---|---|---|
| 1 | 10/18/99 | 11 | 98941 | CHIROPRACTIC MANIPULATION | | 72.50 | 44.19 | EXBECH |
| 2 | 10/18/99 | 11 | 97140 | MANUAL THERAPY | | 42.50 | 29.31 | EXBECH |
| 3 | 10/18/99 | 11 | 97010 | HOT OR COLD PACKS THERAPY | | 32.50 | 15.82 | EXBECH |
| | | | | Totals for Bill | | 147.50 | 89.32 | |
| | | | | PATIENT'S RESPONSIBILITY | | | -17.86 | |
| | | | | Totals less Deductions | | | 71.46 | |

─── Reason Code Description ───

| Reason Code - Item | Description |
|---|---|
| EXBECH - | Charge exceeds the Beech Street fee amount for this procedure in the region where the service was provided. |

Copyright (c) 1993 ADP Integrated Medical Solutions, Inc.          17 - 1
NATIONWIDE MUTUAL INSURANCE COMPANY
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
NATIONWIDE LIFE INSURANCE COMPANY
NATIONWIDE GENERAL INSURANCE COMPANY
NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY
HOME OFFICE  COLUMBUS, OHIO

EXHIBIT  "1"

Explanation of Reimbursement

```
┌──────────────────────────── Claim Information ────────────────────────────┐
│ Claim Number:    7709H 295537071219901001        Region:     GULFRO        │
│ Policyholder:    GEIGER, JOSEPH M                 District:   PIP EAST      │
│ Claimant:        GEIGER, JOSEPH M                 Claims Rep: RUBERTM       │
│ Date of Loss:    07/12/1999                       Party:      First        │
│ Updated:         10/26/1999                       Bill No:    17           │
│                                                   Audited:    10/26/1999    │
└────────────────────────────────────────────────────────────────────────────┘
┌──────────────────────────────── PPO Text ─────────────────────────────────┐
│ PPO Providers: Please note that pursuant to your contract with the PPO, the│
│ contracted amount is to be considered payment in full. Appeals regarding   │
│ PPO reductions and other questions about your contract are to be addressed │
│ with the PPO directly. Your contract with the PPO explains your recourse   │
│ in the event of a dispute. Please refer to your network contract for       │
│ information about the dispute resolution process that applies.             │
│ Thank you in advance for your cooperation.                                 │
└────────────────────────────────────────────────────────────────────────────┘
```

Copyright (c) 1993 ADP Integrated Medical Solutions, Inc.          17 - 2