UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

SALVATORE D. LARUSSO, D.C. d/b/a FAMILY
CHIROPRACTIC CENTER, on behalf of himself
and all others similarly situated,

     Plaintiff,          CASE NO. 01-8111-CIV-FERGUSON

vs.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

     Defendant.

_____/

## AMENDED CLASS ACTION COMPLAINT

Plaintiff SALVATORE D. LARUSSO, D.C. d/b/a FAMILY CHIROPRACTIC CENTER

("DR. LARUSSO") on behalf of himself and all others similarly situated, by his undersigned

counsel, sues Defendant HARTFORD INSURANCE COMPANY OF THE MIDWEST

("HARTFORD"), and alleges as follows:

7090-00100 334423.1



CASE NO. 00-6061-CIV-FERGUSON/SNOW

## THE PARTIES

1.      DR. LARUSSO is a licensed chiropractor who is a citizen of the State of Florida and who has his principal place of business at 13860 Wellington Trace, Suite 13, West Palm Beach, Florida.

2.      HARTFORD is an insurance company incorporated under the laws of the State of Indiana with its principal place of business located at Hartford Plaza, Hartford, Connecticut. HARTFORD provides automobile insurance throughout the State of Florida and transacts business in the Southern District of Florida.

## JURISDICTION AND VENUE

3.      Non-Party COMMUNITY CARE NETWORK, INC. a/k/a CCN MANAGED CARE, INC. ("CCN") is a business entity incorporated under the laws of the State of California with its principal place of business in Nashville, Tennessee. CCN is not registered to do business in Florida. In or about January, 1998, CCN and Medview Services, Inc. merged.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

5.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq. (the "RICO Act").



CASE NO. 00-6061-CIV-FERGUSON/SNOW

6.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because HARTFORD is subject to personal jurisdiction in this District.

## BACKGROUND

7.    HARTFORD's standard Florida Automobile Insurance Policy (hereinafter the "Policy") provides Personal Injury Protection ("PIP") benefits to its insureds.

8.    With respect to payment of accident related medical expenses under PIP, HARTFORD's policy of insurance states in pertinent part that HARTFORD must pay eighty (80%) percent of all reasonable and necessary accident related medical expenses.

9.    HARTFORD's Policy is a typical Florida indemnity insurance policy under which HARTFORD is required to indemnify claimants for eighty (80%) percent of the full cost of their reasonable and necessary medical bills up to a defined limit.

10.    Under the Policy, an insured has the absolute right and freedom to choose his or her medical providers.

11.    Within Policy limits, medical providers have the unrestricted right to be reimbursed eighty (80%) percent of their reasonable and necessary accident related medical expenses.

12.    The State of Florida's PIP statute directly addresses a health care provider's right to be paid for reasonable charges. Section 627.736(5), Florida Statutes ("Section 627.736") states:

> Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered ...



CASE NO. 00-6061-CIV-FERGUSON/SNOW

13.    Florida statutes permit an automobile insurance company to designate certain medical providers as preferred providers *if* the automobile insurer establishes a legitimate preferred provider organization ("PPO") network by satisfying the strict requirements of Section 627.736(10) which provides as follows:

> (10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policy-holder or applicant, it must also offer a non-preferred provider policy. The insurer shall provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

14.    HARTFORD has not offered its insureds preferred policies for PIP automobile insurance. As such, any medical provider who treated or treats a HARTFORD insured under a HARTFORD PIP auto insurance policy is not a "preferred provider." Therefore, in accordance with the above quoted statute, "the medical benefits provided by the insurer <u>shall</u> be as <u>required</u> by this section." (emphasis added). The medical benefits "required" are 80% of "all reasonable and necessary treatment, expenses..."

15.    Companies such as CCN are sometimes referred to as "brokers" or "managed care companies" in the health care industry. CCN contracts with health care providers, such as DR.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

LARUSSO, for the purpose of uniting health care providers with commercial payors to coordinate and arrange for the delivery of health care services to the payors' legitimate subscribers. CCN may also administer health care claims submitted by health care providers to insurance companies.

16.     The contracts entered into with health care providers by CCN require the health care providers to accept fees for services to subscribers at discounted rates from payors.

17.     Health care providers, by definition, include, but are not limited to, physicians, chiropractors, hospitals, pharmacies, and other health care facilities.

18.     Payors benefit by paying health care providers at discounted rates.

19.     Health care providers benefit by becoming part of the network of health care providers that are supposed to be marketed by payors to their subscribers and insureds through the use of directories and marketing tools, thus increasing the health care providers' volume of business referrals. Such health care providers are recognized as "preferred providers."

20.     The insurance policies sold or provided by the payors to their subscribers are recognized as "preferred provider policies."

21.     The combination of all parties to this endeavor is recognized as a Preferred Provider Organization.

22.     At all times material herein, DR. LARUSSO entered into a contract with CCN under which he agreed to provide his services to CCN PPO Subscribers. As consideration for this increased volume, DR. LARUSSO agreed to discount his normal fees. Thereafter, HARTFORD began applying DR. LARUSSO's CCN contractual discount to DR. LARUSSO's medical bills for


ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

his patients who were injured in automobile accidents and covered by a Florida HARTFORD PIP Policy.

23.     Section 627.736(10), provides a means for HARTFORD to participate in such a PPO and offer a preferred provider policy for personal injury protection automobile insurance to its insureds after it enters into contracts with health care providers.

24.     HARTFORD never became a legitimate participant in DR. LARUSSO's PPO and never complied with the requirements of the Section 627.736(10).

25.     Nevertheless, HARTFORD has taken discounts on health care providers' bills as if it were a legitimate participant in DR. LARUSSO's PPO and had complied with Section 627.736 by offering a preferred provider policy of personal injury protection automobile insurance to its insureds, none of which was done by HARTFORD.

26.     This unlawful practice (called a "Silent PPO") allows HARTFORD to enjoy substantial savings and profits by paying out less in benefits which in turn causes DR. LARUSSO and those similarly situated to suffer financial loss, without any consideration from HARTFORD for these discounts.

27.     HARTFORD and middleman CCN have collectively engaged in the previously described "Silent PPO" scheme to reduce benefits paid on auto injury claims.

28.     The "Silent PPO" scheme has emerged primarily in the context of indemnity plans. Indemnity insurers, such as HARTFORD, obtain access to PPO networks of preferred providers and their discounts.  HARTFORD takes advantage of these discounts.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

29.    HARTFORD is not, however, entitled to take advantage of these legitimate PPO discounts under the terms and conditions of its Florida automobile insurance policies, the Florida PIP statutes, and the CCN PPO contract with DR. LARUSSO.

30.    HARTFORD has not established the statutory prerequisites to be entitled to these PPO discounts.

31.    This Silent PPO scheme contains none of the legitimate steerage mechanisms required by legitimate PPOs. Legitimate steerage mechanisms include creating financial incentives for steering insureds to preferred providers such as lower premiums or lower co-payments, providing education and marketing information to insureds about preferred providers in the network, and printing and distributing preferred provider identification cards.

32.    By using the Silent PPO scheme, HARTFORD enjoys substantial savings by paying PIP benefits without the attendant expense of establishing a legitimate PPO network.

33.    Legitimate managed care companies and insurers have knowledge of the illegality of such schemes. The American Association of Preferred Providers has denounced such practices and the American Medical Association has issued an "Action Alert Kit" to its members educating them about Silent PPO schemes.

34.    Without complying with the statutory prerequisites for the establishment of an automobile insurance PPO network, HARTFORD has systematically discounted medical providers' PIP medical expenses by utilizing PPO discounts.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

35.     HARTFORD has illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any steerage or other meaningful consideration for such discounts.

## FACTS AS TO PLAINTIFF

36.     At all times material herein, DR. LARUSSO was a party to a contract with CCN, as successor by merger with Medview, to be a participating health care preferred medical provider (hereinafter referred to as a "CCN Preferred Provider").

37.     CCN agreed to market DR. LARUSSO's name, address and available services in CCN's information materials for distribution to Subscribers and to existing and potential Payors.

38.     DR. LARUSSO's agreement does not allow CCN to allow automobile insurers or PPO discount brokers with automobile insurer clients access to DR. LARUSSO's preferred provider rates.

39.     HARTFORD had not offered a PPO endorsement to its automobile insureds. Moreover, HARTFORD never offered its Florida automobile insureds premium reductions as an economic incentive to use preferred providers.

40.     DR. LARUSSO's PPO contract with CCN did not authorize the application of his discounts by automobile insurers or discount brokers who could not increase DR. LARUSSO's patient volume.

41.     Despite these known facts, CCN allowed HARTFORD access to all of CCN's preferred provider's confidential and proprietary discount rates knowing that HARTFORD was not a proper payor and would not increase preferred provider patient volume.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

42.    With CCN's consent, its database of preferred provider discounts was loaded into HARTFORD's software and applied to all bills submitted to HARTFORD by CCN preferred providers such as DR. LARUSSO.

43.    The term "Subscriber" is defined in the CCN PPO contract as "a person who is entitled to receive certain benefits with respect to Health Care Services."

44.    The term "Health Care Services" means "those health care services that the HCP is licensed, equipped and staffed to provide, and which HCP customarily provides to its patients, and which are, for each respective Subscriber, services for which certain benefits are available under a Group Contract or Worker's Compensation Contract or any other program with provisions for health care services."

45.    In exchange for CCN's anticipated effort to increase his patient volume, DR. LARUSSO agreed with CCN to provide health care services to Subscribers of such Payors at a rate lower than DR. LARUSSO would normally accept for the same health care services.

46.    HARTFORD obtained access to CCN's database that contained the identities of all of CCN's Preferred Providers, as well as the discounted fees that these health care providers were willing to accept for medical services.

47.    At no time did HARTFORD have a written contract with DR. LARUSSO or other health care providers in Florida wherein health care providers agreed with HARTFORD to discount charges for their medical services to patients injured in automobile accidents who were insured for PIP coverage by HARTFORD.

7090-00100 334423.1

9

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

48.    By virtue of HARTFORD's access to the discounted rates in the agreements between CCN, DR. LARUSSO, and the class, HARTFORD began to systematically apply PPO discounts.

49.    CCN and/or HARTFORD have mailed explanation of benefit forms ("EOBs") that indicated the application of a discount based upon the CCN Preferred Provider Agreements.

50.    These EOBs state that HARTFORD is entitled to such discounts.

51.    Under this scheme, HARTFORD has been reaping huge savings while violating Florida law and providing no consideration whatsoever to health care providers, including DR. LARUSSO, for the right to apply such discounts.

52.    At all times material herein, in the course of his medical practice, DR. LARUSSO provided medical care to patients who had been injured in automobile accidents and who were entitled to PIP benefits from HARTFORD.

53.    At no time prior to their treatment with DR. LARUSSO did this class of patients receive any marketing materials, including, but not limited to, publications identifying DR. LARUSSO's name, address and available services, from HARTFORD.

54.    At no time did HARTFORD comply with the requirements of Section 627.736(10).

55.    At no time prior to their treatment with DR. LARUSSO did HARTFORD encourage these patients to use DR. LARUSSO's medical services.

56.    After providing medical treatment to these patients, DR LARUSSO submitted medical bills for reasonable and necessary accident related medical expenses to HARTFORD for payment.



57.     Upon receipt of the medical bills submitted by DR. LARUSSO for payment under the PIP portion of the HARTFORD Automobile Policy, HARTFORD discounted DR. LARUSSO's and other class members' bills by using the CCN PPO discounted rates claiming that HARTFORD was entitled to said discount.

58.     CCN was paid a percentage of HARTFORD's discount savings on each PIP medical expense claim.

59.     DR. LARUSSO and other class members have received no consideration from HARTFORD for the discounts taken.

60.     HARTFORD could not provide such consideration because HARTFORD failed to offer its insureds a PPO automobile insurance policy compliance with the Florida PIP statute.

61.     HARTFORD's illegal activity is demonstrated by Exhibit "1" attached hereto. Exhibit "1" represents a sample of an EOB received by DR. LARUSSO illustrating the illegal discount.

62.     DR. LARUSSO billed HARTFORD $330.00. HARTFORD then improperly reduced the amount billed by DR. LARUSSO.

63.     Since this patient had a medical expense option, HARTFORD was supposed to pay one hundred (100%) percent of the billed amount.

64.     HARTFORD paid only a reduced amount as its full obligation under the insured's automobile insurance policy.

65.     This example resulted in the misappropriation of $68.32 from DR. LARUSSO.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

66.    HARTFORD routinely and systematically applied the CCN PPO discounted rates to PIP medical expense claims for at least two years.

67.    At the time HARTFORD implemented its PPO discounting scheme, it knew it was violating Florida law.

68.    After taking the illegal discounts on DR. LARUSSO's and the class' bills, as described above HARTFORD routinely printed out EOBs showing the discounts. It then forwarded the EOBs and reduced payment checks to the health care providers in purported full satisfaction of the health care providers' medical charges.

69.    It was and is the custom and practice of HARTFORD to discount thousands of automobile medical expense claims in this manner in violation of its policies with its insureds and in violation of Florida's PIP statutes.

70.    DR. LARUSSO and those similarly situated have been economically damaged and have suffered monetary losses as a result of the conduct of HARTFORD.

## CLASS ACTION ALLEGATIONS

71.    DR. LARUSSO brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated. The class is defined to include:

> all Florida health care providers whose bills for medical services rendered to patients covered by HARTFORD's personal injury protection automobile insurance policies were discounted by HARTFORD based upon a purported CCN Preferred Provider Organization reduction.

72.    There are questions of law and fact that are common to all members of the class, which questions predominate over any question affecting only individual class members.

73.    The principal common issues include the following:

ATLAS PEARLMAN
P.A.
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

(a)     whether HARTFORD violated Section 627.736, Florida Statutes by paying personal injury protection medical expense claims at discounted Preferred Provider rates;

(b)     whether HARTFORD's processing of the PPO discounts is permissible under state law or federal law;

(c)     whether DR. LARUSSO and those similarly situated are entitled to compensatory, statutory, or punitive damages against HARTFORD because of its illegal conduct; and

(d)     whether DR. LARUSSO and the class are entitled to an injunction preventing the continued disclosure and/or use of their discounts by HARTFORD and the application of these discounts to automobile personal injury protection medical expense claims.

74.     The class is comprised of all health care providers whose medical bills were discounted by HARTFORD based on CCN Preferred Provider discounts.

75.     The amounts of the discounts are contained in HARTFORD's computer systems and on the EOBs and checks mailed by HARTFORD to DR. LARUSSO and the members of the class.

76.     DR. LARUSSO's claims are typical of the claims of all members of the class because the claims are based on the same legal and remedial theories.

77.     DR. LARUSSO will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

78.     DR. LARUSSO is similarly situated with, and has suffered similar injuries as, the members of the class that he seeks to represent.



79.     DR. LARUSSO has retained counsel experienced in class action cases and health care litigation.

80.     Neither DR. LARUSSO, nor counsel, have any interest that may cause them to not vigorously pursue this action.

81.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

     (a)     the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

     (b)     concentration of the litigation concerning this matter in this Court is desirable;

     (c)     the claims of the representative Plaintiff are typical of the claims of the members of the class;

     (d)     a failure of justice will result from the absence of a class action; and

     (e)     the class and the difficulties likely to be encountered in the management of this class action are not great.

82.     The class is so numerous as to make it impracticable to join all members of the class as plaintiffs.

83.     HARTFORD has discounted thousands of medical bills based on CCN Preferred Provider discounted rates.  Many health care providers may not even be aware of HARTFORD's sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of pursuing individual litigation.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

84.    In contrast, on a class-wide basis, HARTFORD has saved millions of dollars by accessing and utilizing the discounted rates of health care Providers.

## AS AND FOR A FIRST
## CAUSE OF ACTION
### (Unjust Enrichment)

85.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "84" above, with the same force and effect as if set forth fully herein.

86.    DR. LARUSSO and the class conferred benefits upon HARTFORD by providing health care services to individuals insured by HARTFORD.

87.    DR. LARUSSO and the class billed HARTFORD the reasonable value for these services.

88.    HARTFORD improperly paid these bills at reduced rates.

89.    HARTFORD has provided no consideration to DR. LARUSSO and the class for the retention of the discounts by HARTFORD.

90.    HARTFORD has reaped the benefit of substantial monetary savings on PIP claims by wrongfully and illegally applying the CCN PPO discounted rates to Florida PIP medical expense claims.

91.    HARTFORD had knowledge that it reaped said financial benefits to the detriment of DR. LARUSSO and the members of the class by voluntarily accepting and retaining said benefits.

92.    Such savings constitute unjust enrichment for HARTFORD and it would be inequitable under the circumstances for HARTFORD to retain the benefits received from DR.



LARUSSO and the members of the class without paying the full value thereof to DR. LARUSSO and the class members.

## AS AND FOR A SECOND
## CAUSE OF ACTION
### (Third-Party Beneficiary Breach of Contract)

93.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "84" above, with the same force and effect as if set forth fully herein.

94.    HARTFORD and its insureds who purchased its Florida PIP automobile insurance policy entered into a contract of insurance.

95.    HARTFORD's contract provided that in the event an insured was involved in an automobile accident, HARTFORD would pay, on the insured's behalf, eighty (eighty (80%) percent) percent of all reasonable and necessary medical expenses incurred.

96.    DR. LARUSSO and the other members of the class provided medical services to HARTFORD insureds who were injured in automobile accidents.

97.    DR. LARUSSO and the members of the class are intended third-party beneficiaries of HARTFORD's automobile insurance agreements.

98.    DR. LARUSSO and the members of the class were to be paid eighty (80%) percent of all reasonable and necessary medical expenses incurred and billed.

99.    HARTFORD breached the agreement by improperly paying medical expenses at reduced rates.

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

100.    As a result, DR. LARUSSO and the putative class members have suffered damages directly and proximately caused by HARTFORD's breach of its insurance agreements with its insureds.

**AS AND FOR A THIRD**
**CAUSE OF ACTION**
**(RICO Act Violations)**

101.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "84" above, with the same force and effect as if set forth fully herein.

102.    HARTFORD, acting with middleman CCN, formed an association-in-fact enterprise designed to reduce payments made to CCN preferred providers on all Florida PIP medical expense claims submitted to HARTFORD. The "association- in- fact" is known as a "silent PPO."

103.    HARTFORD, with the knowing or grossly negligent cooperation of middleman CCN, participated, directly and indirectly, in the activities of this enterprise through a pattern of racketeering activity, as more fully set forth below.

104.    The activities of this enterprise affected commerce.

105.    The pattern of racketeering activity consisted of multiple acts of mail and wire fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

106.    The pattern of racketeering activity has been continuous for at least two years, and, on information and belief, will continue into the future.

107.    In furtherance of the pattern of racketeering activity, HARTFORD has engaged in a continuous scheme and artifice to defraud DR. LARUSSO, and those similarly situated, of money as follows:

7090-00100 334423.1

17



CASE NO. 00-6061-CIV-FERGUSON/SNOW

(a)     CCN entered into an agreement with HARTFORD under which CCN disclosed, leased, sold and/or licensed the use of the confidential, proprietary CCN preferred provider database that included DR. LARUSSO's and class members' identity and preferred provider discount information.

(b)     In exchange for providing HARTFORD with access to the identities of its preferred providers and their preferred provider discount rates CCN agreed to receive a fee consisting of a percentage of the savings realized by HARTFORD for each CCN preferred provider discount applied to Florida PIP medical expense claims including those of DR. LARUSSO and the members of the purported class.

(c)     The identities of the CCN preferred providers and their preferred provider discount information were then used by HARTFORD in a computerized system to take illegitimate discounts on Florida PIP medical expense claims submitted by DR. LARUSSO and members of the class for medical services performed by DR. LARUSSO and those similarly situated on HARTFORD insureds who were not, and could not be, legitimate Subscribers under the CCN preferred provider contract;

(d)     After computer application of the CCN preferred provider discounts to Florida PIP medical expense claims, HARTFORD then printed EOBs that falsely represented that HARTFORD was entitled to apply the CCN PPO discount to Florida PIP medical expense claims. Based on the application of the CCN PPO discount, HARTFORD then reduced Florida PIP medical expense claims by such amounts.  Copies of such an EOB is attached as Exhibit 1;



CASE NO. 00-6061-CIV-FERGUSON/SNOW

(e)    By use of the United States mail, HARTFORD, with the knowledge and consent of CCN, transmitted said EOBs and reduced claims checks to medical providers such as DR. LARUSSO and the members of the class, to HARTFORD insureds, and/or to HARTFORD insureds' attorneys;

(f)    Said EOBs falsely represented that HARTFORD was entitled to apply the CCN PPO discounts to Florida PIP medical expense claims submitted by DR. LARUSSO and members of the class;

(g)    HARTFORD engaged in interstate telephone calls and/or computer communications with middleman CCN to transmit information that was false and to exchange fees and compensation essential to the association-in-fact.

108.    In the above described manner, HARTFORD was able to gain access to managed care contract rates for application to Florida PIP medical expense claims without providing any consideration to DR. LARUSSO or members of the purported class, and without ever entering into a managed care agreement with any medical providers.

109.    This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars has directly caused monetary damages to DR. LARUSSO and members of the class.

110.    HARTFORD's and CNN's conduct gives rise to claims under 18 U.S.C. § 1964(a) of RICO and permits the recovery of treble damages against HARTFORD for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) and

ATLAS PEARLMAN

for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

111.    DR. LARUSSO and the class members are "persons" within the meaning of 18 U.S.C. § 1964(c).

112.    At all times relevant hereto, DR. LARUSSO and class members were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

113.    With respect to the activities alleged herein, HARTFORD and CCN acted at all times with malice toward the class, intent to engage in the conduct complained of for their own benefit and with knowledge that such conduct constituted unlawful activity.  Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which HARTFORD and CCN are subject, the same amounting to actionable wantonness.

114.    With respect to the activities alleged herein, HARTFORD and CCN aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c).

115.    HARTFORD operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

116.    In furtherance of this scheme, HARTFORD and CCN interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests, to which HARTFORD and CCN are not entitled, through the exploitation of discount rates.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

117.    With respect to the overt acts and activities alleged herein, HARTFORD communicated and conspired with middleman CCN to violate 18 U.S.C. §§ 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).

118.    HARTFORD communicated with middleman CCN so that it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

119.    HARTFORD communicated with middleman CCN so that it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which HARTFORD and CCN were not entitled, through the exploitation of a proprietary discount rate.

120.    The numerous predicate acts of mail and wire fraud and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by HARTFORD and CCN to defraud DR. LARUSSO and the purported class of money and property interests under false pretenses; to deprive DR. LARUSSO and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and to place HARTFORD's and CCN's financial interests over the confidential records of DR. LARUSSO and the class so that HARTFORD and CCN could make greater profits.

121.    DR. LARUSSO, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

21



CASE NO. 00-6061-CIV-FERGUSON/SNOW

### A.    RACKETEERING ACTIVITIES.

122.    In carrying out the overt acts and fraudulent scheme described above, HARTFORD and CCN engaged in *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 961 et seq., as stated below.

123.    Section 1961(l) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

124.    The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§ 1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

### 1.    18 U.S.C. §§ 1341 and 1346, and 18 U.S.C. §§ 1343 and 1346

125.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, HARTFORD and CCN, in violation of 18 U.S.C. § 1341 and § 1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered



by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.

126.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, HARTFORD and CCN, in violation of 18 U.S.C. §§ 1343 and 1346, transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts. In this manner, HARTFORD, was knowingly violating obligations of middleman CCN to DR. LARUSSO and others similarly situated to provide "honest services."

127.    HARTFORD knowingly induced middleman CCN to deprive DR. LARUSSO and others similarly situated of "honest services."

128.    In those matters and things sent or delivered by the United States Postal Service referred to above, HARTFORD and CCN falsely and fraudulently represented to DR. LARUSSO and the class that:

(a)    HARTFORD's payments were for the amount "billed" for the reasonable value of the services, and

(b)    that HARTFORD was entitled to a PPO discount for DR. LARUSSO and the class under a system that legitimately provides education, marketing and economic incentives intended to "steer" more patients  and to provide other benefits to health care providers. HARTFORD failed, however, to disclose to DR. LARUSSO and the class that its EOBs were based



CASE NO. 00-6061-CIV-FERGUSON/SNOW

upon illegal discounts designed to maximize profits on discounts illegally obtained through DR. LARUSSO's proprietary information. HARTFORD thus failed to disclose material facts regarding HARTFORD's internal policies and practices specifically designed to reduce or limit the level of payment discussed in detail above.

129.    With respect to its unlawful activities described above, HARTFORD also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§ 1341, 1343, and 1346.

130.    HARTFORD intentionally and knowingly deceived DR. LARUSSO and the purported class referred to above for the purpose of financial gain. HARTFORD either knew, or recklessly disregarded, that the illegal discounts described above were material.

131.    DR. LARUSSO and the class have been injured in their business or property by HARTFORD's overt acts and racketeering activities in amounts to be determined at trial.

### 2.    18 U.S.C. § 1951(b)(2)

132.    During the relevant times and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, HARTFORD and middlemen CCN, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. § 1951.

133.    HARTFORD unlawfully attempted to and/or did induce middleman CCN to cause DR. LARUSSO and numerous other health care providers to part with various property interests to



which HARTFORD was and is not entitled, including the intangible property right of health care providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy.

134.    HARTFORD's conduct induced middleman CCN to provide it with the names of health care providers and their discounts and exploited a fear of economic loss and/or loss of business by DR. LARUSSO and others similarly situated in violation of 18 U.S.C. § 1951(b)(2).

135.    In furtherance of the scheme or artifice to defraud to obtain money by false pretenses from DR. LARUSSO and the class, HARTFORD communicated with middleman CCN to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which HARTFORD was not entitled through the exploitation of health care providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts.

136.    HARTFORD either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by DR. LARUSSO and the class.

137.    HARTFORD's and CCN's overt acts and fraudulent and extortionate racketeering activities has and continues to defraud DR. LARUSSO and the members of the class, of money, has and continues to unlawfully influence and interfere with the relationship of middleman CCN and DR. LARUSSO and the purported class, as well as interfering with the fiduciary relationship between DR. LARUSSO, and members of the purported class and their patients.



138.    DR. LARUSSO and the purported class have, therefor, been injured in their business or property by HARTFORD's overt acts and racketeering activities in amounts to be determined at trial.

### 3. 18 U.S.C. § 1952(a).

139.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud DR. LARUSSO and the purported class, HARTFORD and CCN and their respective employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. § 1952(a).

140.    HARTFORD's and CCN's overt acts and fraudulent racketeering activity has and continues to defraud DR. LARUSSO and the class of money.

### B.    PATTERN OF RACKETEERING ACTIVITY.

141.    HARTFORD and CCN have engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including DR. LARUSSO and the class.

142.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by HARTFORD and CCN, as described above, were related to each other and amount to and



CASE NO. 00-6061-CIV-FERGUSON/SNOW

pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

## C.    RICO VIOLATIONS OF 18 U.S.C. §§ 1962 (d).

143.    DR. LARUSSO's claim for relief also arises under 18 U.S.C. § 1964 (c) of RICO and seeks to recover actual and treble damages for HARTFORD's and CCN's violations of 18 U.S.C. §§ 1962(c) and for its violations of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

### 1.  Section 1962(c) claim.

144.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "84" above, with the same force and effect as if set forth fully herein.

145.    18 U.S.C. § 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

146.    18 U.S.C. § 1961(3) of RICO states that a "person" includes any individual or entity capable of holding a legal or beneficial interest in property.

147.    18 U.S.C. § 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

148.    For purposes of this 18 U.S.C. § 1962(c) claim, the persons consist of HARTFORD and middleman CCN.   The enterprise is an association in fact consisting of HARTFORD and

7090-00100 334423.1                                27



CASE NO. 00-6061-CIV-FERGUSON/SNOW

middleman CCN by virtue of its control over physicians, medical specialists, medical laboratories, hospitals, health care clinics, pharmacies, home health care agencies, and other miscellaneous health care providers, all of which have the purpose of providing health care services to HARTFORD's insureds making PIP claims under HARTFORD's automobile insurance policies.

149.    This 18 U.S.C. § 1962(c) enterprise is distinct from HARTFORD and includes many persons who are not employees of HARTFORD and many entities that are not owned by HARTFORD. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

150.    HARTFORD is associated with middleman CCN in the 18 U.S.C. § 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described herein. DR. LARUSSO and the purported class members are directly and proximately injured both by this pattern of activity and by HARTFORD's conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

### 2.    Section 1962(d) Claim.

151.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "84" above, with the same force and effect as if set forth fully herein.

152.    This claim for relief also arises under 18 U.S.C. § 1964(c) of RICO and seeks to recover actual and treble damages for HARTFORD's and CCN's violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c). Section 1962(d) of RICO provides that it "shall



CASE NO. 00-6061-CIV-FERGUSON/SNOW

be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

153.    18 U.S.C. § 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

154.    18 U.S.C. § 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

155.    For purposes of the claim of a conspiracy in violation of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a), the persons under the latter subsection consist of HARTFORD and middleman CCN and the enterprise consists of HARTFORD and its investment division, which further profits from the ill-gotten gains.

156.    At all times relevant herein, middleman CCN's and HARTFORD's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a).

157.    The HARTFORD investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud DR. LARUSSO and the purported class of money and to deprive them of their intangible right of honest services from middleman CCN.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

158.    HARTFORD sells insurance nationwide. Assets generated from HARTFORD's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars.

159.    HARTFORD derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a).

160.    This use or investment injures DR. LARUSSO and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect health care providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described herein.

161.    As demonstrated in detail above, HARTFORD has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require DR. LARUSSO and the purported class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud DR. LARUSSO and the class of money, and to unlawfully interfere with their physician-patient relationship.

162.    HARTFORD's pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about



by HARTFORD's inducement to middleman CCN to allow HARTFORD to defraud DR. LARUSSO and the purported class.

163.    The nature of the above described acts of HARTFORD constitutes material misrepresentations that give rise to an inference that HARTFORD knew it was violating the objective of 18 U.S.C. § 1962(d) by violating 18 U.S.C. §§ 1962(a) and (c), through its ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

164.    As a direct and proximate result of HARTFORD's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate IS U.S.C. §§ 1962(a) and (c), DR. LARUSSO and the class have been and are continuing to be injured in their business or property.

165.    Pursuant to 18 U.S.C. § 1964(c), DR. LARUSSO is entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

166.    HARTFORD has sought to and has engaged in the commission of and continues to commit overt acts and the aforesaid described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by HARTFORD from such pattern of racketeering activity, to-wit:

(a)    multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

(b)    multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

7090-00100 334423.1    31

CASE NO. 00-6061-CIV-FERGUSON/SNOW

(c)    multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

(d)    multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

(e)    multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and

(f)    multiple instances of violations of 18 U.S.C. § 1954.

167.    HARTFORD's violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting HARTFORD's illegal acts constituting a pattern of racketeering activity is fashioned and imposed by this Court.

### AS AND FOR A FOURTH
### CAUSE OF ACTION
#### (Declaratory Judgment)

168.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "84" above, with the same force and effect as if set forth fully herein.

169.    As previously alleged, HARTFORD has improperly taken advantage of discounts to which it is not entitled for all the reasons that have been set forth in the previous paragraphs of this Complaint.

170.    HARTFORD has taken these discounts in breach of the terms and conditions of their automobile insurance policies. Said policies are indemnity policies that do not provide for preferred provider benefits or the application of preferred provider rates.

171.    By using CCN's preferred provider rates to limit the payment of DR. LARUSSO's and class members' PIP medical bills, HARTFORD has imposed a limitation on benefits that is not contained in their automobile insurance policies. DR. LARUSSO and the class members are


ATLAS PEARLMAN

intended third-party beneficiaries of said insurance policies and are entitled to a declaration that HARTFORD's payments of their PIP medical bills at preferred provider rates is a breach of the applicable insurance contracts.

## AS AND FOR A FIFTH
## CAUSE OF ACTION
### (Violation of Section 627.736, Florida Statutes)

172.    DR. LARUSSO repeats and realleges each and every allegation contained in Paragraphs "1" through "84" above, with the same force and effect as if set forth fully herein.

173.    At all times material herein, DR. LARUSSO and the members of the class that he seeks to represent presented or had presented on their behalf reasonable and necessary medical charges to HARTFORD for treatment of patients entitled to PIP medical expense benefits pursuant to a Florida automobile insurance policy issued by HARTFORD.

174.    Pursuant to Section 627.736, Florida Statutes:

(1)    **Required benefits.** Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(d), to a limit of $10,000 of loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:

(a)    Medical benefits. Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through a prayer alone for healing, in accordance with his religious beliefs.

. . .

ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

**(4)      Benefits; when due.**

. . .

(g)      It is a violation of the insurance code for an insurer to fail to timely provide benefits as required by this section with such frequency as to constitute a general business practice.

175.    Effective October 1, 1991, as amended, effective October 1, 1992, Section

627.736(10), Florida Statutes provides:

An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section referred to in this section as "preferred providers" which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a nonpreferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, it must also offer a nonpreferred provider policy. The insurer shall provide each policyholder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

176.    Pursuant to Section 627.736(10), Florida Statutes:  "If the insured elects to use a

provider who is not a preferred provider, whether the insured purchased a preferred provider policy

or a non-preferred provider policy, <u>the medical benefits provided by the insurer shall be as required</u>

<u>by this section.</u>"  (Emphasis added).

177.    Pursuant to Section 627.736(10), Florida Statutes:  "If the insured elects to use a

provider who is a preferred provider, the insurance may pay medical benefits <u>in excess of the</u>

ATLAS PEARLMAN

<u>benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits</u>." (Emphasis added).

178.    In violation of the foregoing provisions of Section 627.736, HARTFORD has implemented a policy and has conducted itself in a manner with such frequency as to constitute a general business practice whereby HARTFORD has paid and continues to pay medical benefits at a rate less than the reasonable and necessary rate.

179.    HARTFORD, as part of its general business practice, has been paying medical benefits at eighty (80%) percent of preferred provider rates.

180.    At all times material hereto, HARTFORD did not offer preferred provider policies.

181.    Since HARTFORD did not offer a preferred provider policies, HARTFORD was required to pay eighty (80%) percent of all reasonable and necessary medical expenses.

182.    If HARTFORD issued and sold preferred provider policies, HARTFORD would then be entitled to pay medical benefits in excess of the benefits required and may waive or lower the amounts of any deductible that applies to such medical benefits.

183.    By paying PIP benefits at a preferred provider rate, HARTFORD has significantly reduced its payments and obligations under PIP policies throughout the State of Florida.

184.    HARTFORD's actions are in direct violation of Section 627.736, Florida Statutes.

185.    HARTFORD has wrongfully reduced DR. LARUSSO's and the class members' PIP medical expense claims based on CCN preferred provider discounts.

186.    HARTFORD is not entitled to said CCN preferred provider discounts. HARTFORD has failed to offer insureds a PPO endorsement and also failed to otherwise comply with the requirements of Section 627.736(10), Florida Statutes.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

187.    Despite this failure, HARTFORD has reduced and continues to reduce PIP automobile insurance medical expense claims of DR. LARUSSO and the purported class members by accessing and applying CCN preferred provider discounts.

188.    Accordingly, an outstanding balance remains on all automobile insurance PIP medical expense claims that HARTFORD has reduced based on CCN preferred provider discounts.

189.    Pursuant to Section 627.736(4)(b): "Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."

190.    Pursuant to Section 627.736(c): "All overdue payments shall bear interest at the rate of 10 percent per year."

191.    HARTFORD has failed to pay the full amount of the reasonable and necessary medical expense billed by DR. LARUSSO and the class members within 30 days after HARTFORD was furnished with written notice of the reasonable and necessary amount of the medical expense.

192.    HARTFORD has failed to pay interest on the remaining balances owed to DR. LARUSSO and the class members.

193.    By reducing DR. LARUSSO's and the purported class members' legitimate medical expenses by the application of CCN preferred provider discount rates, HARTFORD has violated Section 627.736, Florida Statutes.

194.    As a result of HARTFORD's failure to comply with Section 627.736, Florida Statutes, DR. LARUSSO and the members of the purported class have suffered damages.

WHEREFORE, DR. LARUSSO and the class demand the following relief:


ATLAS PEARLMAN

CASE NO. 00-6061-CIV-FERGUSON/SNOW

(a)    As to the First Cause of Action, compensatory damages;

(b)    As to the Second Cause of Action, compensatory damages;

(c)    As to the Third Cause of Action, compensatory damages, punitive damages, and injunctive relief;

(d)    As to the Fourth Cause of Action, a declaration that HARTFORD's insurance practices are improper;

(e)    As to the Fifth Cause of Action, compensatory damages;

(f)    Attorneys' fees and costs where applicable;

(g)    A trial by jury on all issues so triable; and

(h)    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

ATLAS PEARLMAN, P.A.
Co-Counsel for Plaintiff
SALVATORE D. LARUSSO, D.C.
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

By: _____
    JAN DOUGLAS ATLAS
    Florida Bar No. 226246

By: _____
    ERIC LEE
    Florida Bar No. 961299

By: _____
    ROBIN CORWIN CAMPBELL
    Florida Bar No. 327931



CASE NO. 00-6061-CIV-FERGUSON/SNOW

**Co-Counsel for Plaintiff**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporation
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 1611
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

facsimile to MARCY LEVINE ALDRICH, ESQ., Akerman, Senterfitt & Eidson, P.A., SunTrust

International Center, 28th Floor, One Southeast Third Avenue, Miami, FL 33131-1704 and by mail

this 10th day of October, 2001 upon: all individuals on the attached service list.

ERIC LEE


ATLAS PEARLMAN
ATTORNEYS AT LAW

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 10/03/01)

### Co-Lead Counsel for Plaintiffs

ATLAS PEARLMAN, P.A.
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Eric Lee, Esq.
lee@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@gpandg.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 1611
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

### Co-Counsel for Plaintiffs

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

ATLAS PEARLMAN

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
5300 Bank of America Center
Post Office Box 4099
Jacksonville, FL 32202-4099
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

ATLAS PEARLMAN

Counsel for:
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lola M. Swaby, Esq.
lswaby@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS
& ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

ATLAS PEARLMAN

261.68    7/2/97

**BILL REVIEW REPORT**
--------------------

MedView Bill Number :  122219                                      Process Date : 6/23/97

Carrier : HARTFORD LIABILITY - FLORIDA          Claim # : 575 AF 06968    Adjustor : LDT T6
          93121-S.E. PERSONAL LINES             Policy # :
Employer :                                      Division :

                                                Patient    : DESMOND MAHON
Provider : SALVATORE D. LARUSSO  D.C.           Claimant/   : DESMOND & WILMA MAHON
           FAMILY CHIROPRACTIC CENTER           Insured      13546 COLUMBUS AVE
           13860 WELLINGTON TR #13                           WELLINGTON BEACH, FL  33414
           WELLINGTON, FL  33414                             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

Taxid   : 65-0430505                            Pat Acct # :
                                                Injury Date : 1/15/97

| Dates of Service | Procedure | Description | Units | Provider Charge | Coding Review | U & C Allowance | PPO Allowance | Status/Exp. Codes |
|---|---|---|---|---|---|---|---|---|
| 6/07/97- 6/07/97 | 99271-25 | CONFIRM CONSULT L1 PROB FOC H&E STRTFWD ME | 1.00 | 90.00 | 90.00 | | 72.00 | AP RC HQ001 |
| 6/07/97- 6/07/97 | 98941- | CHIRO MANIP SPINAL 3 OR 4 REGIONS | 1.00 | 65.00 | 65.00 | 62.10 | 49.68 | AP RU |
| 6/07/97- 6/07/97 | 97250- | MYOFASCIAL RELEASE/SOFT TISSUE MOBIL. 1 OR | 1.00 | 35.00 | 35.00 | | 28.00 | AP RC |
| 6/07/97- 6/07/97 | 97010- | PHYSICAL MEDICINE TX TO 1 AREA; HOT/COLD P | 1.00 | 30.00 | 30.00 | | 24.00 | AP RC |
| 6/09/97- 6/09/97 | 98942- | CHIROPRACTIC MANIPULATION SPINAL, 5 REGION | 1.00 | 75.00 | 75.00 | | 60.00 | AP RC |
| 6/09/97- 6/09/97 | 97250- | MYOFASCIAL RELEASE/SOFT TISSUE MOBIL. 1 OR | 1.00 | 35.00 | 35.00 | | 28.00 | AP RC |

103.6

                    Total Provider Charges :    330.00
                    Total Excluded Charges :      0.00
                         Total Reduction :       68.32

                          Client Savings :       68.32


                    Provider Payment Allowance :    261.68

        *** Repriced according to MedView PPO ***

Diagnosis Code(s) :
839.00 DISLOC CERV VERT NOS-CL
839.21 DISLOC THORACIC VERT-CL
723.1  CERVICALGIA
729.1  MYALGIA AND MYOSITIS NOS

Key to Explanation Codes :
RC   REDUCTION ACCORDING TO % CHARGES

RU   REDUCTION % U & C

HQ001 Pay for this service if it was significant and separately

        QUESTIONS ABOUT REVIEW CONTACT MEDVIEW (813)623-5282

                    CONTINUED ON NEXT PAGE

                          Page 1

**EXHIBIT "1"**

1507 N. FALKENBURG RD. • TAMPA, FLORIDA 33619 • 813-623-5282 • 1-800-633-8033

PLF03780001