# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 00-CIV-6061-FERGUSON/SNOW (Consolidated)
### Referred to Magistrate Judge Snow

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

      Defendant.



## DEFENDANT ALLSTATE INSURANCE COMPANY'S
## ANSWER TO SECOND AMENDED CLASS ACTION COMPLAINT

Defendant, Allstate Insurance Company ("ALLSTATE"), by and through its attorneys,

and for its Answer to Plaintiff, Dr. Paul Zidel's ("DR. ZIDEL") Second Amended Class Action

Complaint ("Complaint") states as follows:

### THE PARTIES

1. DR. ZIDEL is a licensed physician with a speciality in orthopedic surgery who
resides in the Southern District of Florida and has his principal place of business at 301 N. W.
84th Avenue, Plantation, Florida.

ANSWER:    ALLSTATE lacks sufficient information to admit or deny the allegations made

        and contained in Paragraph 1.

2. ALLSTATE is an insurance company incorporated under the laws of the State of
Illinois with a principal place of business located at 2775 Sanders Road, Northbrook, Illinois.
ALLSTATE transacts business in the Southern District of Florida.

ANSWER:    ALLSTATE admits the allegations made and contained in Paragraph 2.



3.    Non-Party COMMUNITY CARE NETWORK, INC. ("CCN") is a business entity incorporated under the laws of the State of California with its principal place of business in Nashville, Tennessee. CCN is not registered to do business in Florida.

ANSWER:    ALLSTATE lacks sufficient information to admit or deny the allegations made

and contained in Paragraph 3.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

ANSWER:    ALLSTATE admits the allegations made and contained in Paragraph 4.

5.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq. (the "RICO Act").

ANSWER:    ALLSTATE admits that the allegations made and contained in paragraph 5 of

the Second Amended Class Action Complaint purport to allege that subject

matter jurisdiction over this action exists pursuant to 28 U.S.C. § 1331, but

denies such allegations.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because ALLSTATE is subject to personal jurisdiction in this District.

ANSWER:    ALLSTATE admits the allegations made and contained in Paragraph 6.

## BACKGROUND

7.    ALLSTATE'S standard Florida Automobile Insurance Policy (hereinafter the "Policy") provides Personal Injury Protection ("PIP") benefits to its insureds.

ANSWER:    ALLSTATE states that the Policy speaks for itself.  ALLSTATE denies the

allegations made and contained in Paragraph 7 to the extent that they are

inconsistent with the foregoing.

2

8.    With respect to payment of accident related medical expenses under PIP, ALLSTATE's policy of insurance states in pertinent part that ALLSTATE must pay eighty (80%) percent of all reasonable and necessary accident related medical expenses.

ANSWER:    ALLSTATE states that the Policy speaks for itself.  ALLSTATE denies the

allegations made and contained in Paragraph 8 to the extent that they are

inconsistent with the foregoing.

9.    ALLSTATE'S Policy is a typical Florida indemnity insurance policy under which ALLSTATE is required to indemnify claimants for eighty (80%) percent of the full cost of their reasonable and necessary medical bills up to a defined limit.

ANSWER:    ALLSTATE states that the Policy speaks for itself.  ALLSTATE denies the

allegations made and contained in Paragraph 9 to the extent that they are

inconsistent with the foregoing.

10.    Under the Policy, an insured has the absolute right and freedom to choose his or her medical providers.

ANSWER:    ALLSTATE admits the allegations made and contained in Paragraph 10.

11.    Within Policy limits, medical providers have the unrestricted right to be reimbursed eighty (80%) percent of their reasonable and necessary accident related medical expenses.

ANSWER:    ALLSTATE states that the Policy speaks for itself.  ALLSTATE denies the

allegations made and contained in Paragraph 11 to the extent that they are

inconsistent with the foregoing.

12.    The State of Florida's PIP statute directly addresses a health care provider's right to be paid for reasonable charges.  Section 627.736(5), Florida Statutes ("Section 627.736") states:

> Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered . . .

3

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 12 to the

extent that they are inconsistent with the foregoing.

13.    Florida statutes permit an automobile insurance company to designate certain medical providers as preferred providers if the automobile insurer establishes a legitimate preferred provider organization ("PPO") network by satisfying the strict requirements of Section 627.736(10) which provides as follows:

> (10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section.  If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policy-holder or applicant, it must also offer a non-preferred provider policy. The insurer shall provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 13 to the

extent that they are inconsistent with the foregoing.

14.    ALLSTATE has not offered its insureds preferred policies for PIP automobile insurance. As such, any medical provider who treated or treats an ALLSTATE insured under an ALLSTATE PIP auto insurance policy is not a "preferred provider."  Therefore, in accordance with the above quoted statute, "the medical benefits provided by the insurer shall be as required by this section." (emphasis added). The medical benefits "required" are eighty (80%) percent of "all reasonable and necessary treatment, expenses..."

4

ANSWER:    ALLSTATE admits the allegations made and contained in the first sentence of

Paragraph 14, states that all applicable statutory provisions speak for themselves,

denies such allegations to the extent they are inconsistent with such statutory

provisions, and denies the remaining allegations made and contained in

Paragraph 14.


15.    Companies such as CCN are sometimes referred to as "brokers" or "managed care companies" in the health care industry. CCN contracts with health care providers, such as DR. ZIDEL, for the purpose of uniting health care providers with commercial payors to coordinate and arrange for the delivery of health care services to the payors' legitimate subscribers. CCN may also administer health care claims submitted by health care providers to insurance companies.

ANSWER:    ALLSTATE states that CCN contracts with health care providers speak for

themselves, and denies the remaining allegations made and contained in

Paragraph 15 to the extent they are inconsistent with the foregoing.


16.    The contracts entered into with health care providers by CCN require the health care providers to accept fees for services to subscribers at discounted rates from payors.

ANSWER:    ALLSTATE states that CCN contracts with health care providers speak for

themselves, and denies the allegations made and contained in Paragraph 16 to

the extent that they are inconsistent with the foregoing.


17.    Health care providers, by definition, include, but are not limited to, physicians, chiropractors, hospitals, pharmacies, and other health care facilities.

ANSWER:    ALLSTATE admits the allegations made and contained in Paragraph 17.


18.    Payors benefit by paying health care providers at discounted rates.

ANSWER:    ALLSTATE affirmatively states that, inter alia, reduced medical costs benefit

insureds by making their limited amount of personal injury protection benefits

5

cover a larger amount of medical bills and by reducing their co-payment amount.

ALLSTATE denies the allegations made and contained in Paragraph 18 to the

extent that they are inconsistent with the foregoing.

19.    Health care providers benefit by becoming part of the network of health care providers that are supposed to be marketed by payors to their subscribers and insureds through the use of directories and marketing tools, thus increasing the health care providers' volume of business referrals. Such health care providers are recognized as "preferred providers."

ANSWER:    ALLSTATE admits that the "benefit" alleged in Paragraph 19 may accrue to

health care providers under certain contractual arrangements, denies that such

"benefit" is the sole benefit which health care providers may receive in

connection with any network arrangement for which they may contract, and deny

the allegations made and contained in Paragraph 19 to the extent that they are

inconsistent with the foregoing.

20.    The insurance policies sold or provided by the payors to their subscribers are recognized as "preferred provider policies."

ANSWER:    ALLSTATE lacks sufficient information to admit or deny the allegations made

and contained in Paragraph 20.

21.    The combination of all parties to this endeavor is recognized as a Preferred Provider Organization ("PPO").

ANSWER:    ALLSTATE lacks sufficient information to admit or deny the allegations made

and contained in Paragraph 21.

22.    At all times material herein, DR. ZIDEL was a party to an agreement pursuant to which he agreed to provide his services to CCN PPO Subscribers. As consideration for this increased volume, DR. ZIDEL agreed to discount his normal fees. Thereafter, ALLSTATE began applying DR. ZIDEL's CCN contractual discount to DR. ZIDEL's medical bills for his patients who were injured in automobile accidents and covered by a Florida ALLSTATE PIP Policy.

6

ANSWER:    With respect to the first and second sentences of Paragraph 22, ALLSTATE

states that the contract speaks for itself and lacks sufficient information to admit

or deny the allegations made and contained in Paragraph 22.  ALLSTATE

admits that Allstate applied CCN contractual discounts to Dr. Zidel's medical

bills for his patients who were injured in automobile accidents and covered by a

Florida Allstate PIP Policy pursuant to Allstate's agreement with CCN and

denies the remainder of the allegations made and contained in the last sentence

Paragraph 22 to the extent that they are inconsistent with the foregoing..

23.    Section 627.736(10), provides a means for ALLSTATE to participate in such a
PPO and offer a preferred provider policy for personal injury protection automobile insurance
to its insureds after it enters into contracts with health care providers.

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 23 to the

extent that they are inconsistent with the foregoing.

24.    ALLSTATE never became a legitimate participant in DR. ZIDEL's PPO and
never complied with the requirements of the Section 627.736(10).

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 24.

25.    Nevertheless, ALLSTATE has taken discounts on health care providers' bills as
if it were a legitimate participant in DR. ZIDEL's PPO and had complied with Section 627.736
by offering a preferred provider policy of personal injury protection automobile insurance to its
insureds, none of which was done by ALLSTATE.

ANSWER:    ALLSTATE affirmatively states that, as of February 1999, it began applying

CCN discounts to medical bills submitted by health care providers who had

contracted with CCN, and that Allstate did not offer a preferred provider policy.

ALLSTATE denies the remaining allegations made and contained in Paragraph

25 to the extent that they are inconsistent with the foregoing.


26.    This unlawful practice (called a "Silent PPO") allows ALLSTATE to enjoy substantial savings and profits by paying out less in benefits which in turn causes DR. ZIDEL and those similarly situated to suffer financial loss, without any consideration from ALLSTATE for these discounts.

ANSWER:    ALLSTATE objects to the characterization of its activities as a "Silent PPO".

ALLSTATE denies the allegations made and contained in Paragraph 26.


27.    ALLSTATE and middleman CCN have collectively engaged in the previously described "Silent PPO" scheme to reduce benefits paid on auto injury claims.

ANSWER:    ALLSTATE objects to the characterization of its activities as a "Silent PPO".

ALLSTATE denies the allegations made and contained in Paragraph 27.


28.    The "Silent PPO" scheme has emerged primarily in the context of indemnity plans. Indemnity insurers, such as ALLSTATE, obtain access to PPO networks of preferred providers and their discounts. ALLSTATE takes advantage of these discounts.

ANSWER:    ALLSTATE objects to the characterization of its activities as a "Silent PPO".

ALLSTATE denies the allegations made and contained in Paragraph 28.


29.    ALLSTATE is not, however, entitled to take advantage of these legitimate PPO discounts under the terms and conditions of its Florida automobile insurance policies, the Florida PIP statutes, and the CCN PPO contract with DR. ZIDEL.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 29.


30.    ALLSTATE has not established the statutory prerequisites to be entitled to these PPO discounts.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 30.


31.    This Silent PPO scheme contains none of the legitimate steerage mechanisms required by legitimate PPOs. Legitimate steerage mechanisms include creating financial incentives for steering insureds to preferred providers such as lower premiums or lower co-

payments, providing education and marketing information to insureds about preferred providers in the network, and printing and distributing preferred provider identification cards.

ANSWER:   ALLSTATE objects to the characterization of its activities as a "Silent PPO".

ALLSTATE denies the allegations made and contained in Paragraph 31.


32.   By using the Silent PPO scheme, ALLSTATE enjoys substantial savings by paying PIP benefits without the attendant expense of establishing a legitimate PPO network.

ANSWER:   ALLSTATE objects to the characterization of its activities as a "Silent PPO".

ALLSTATE denies the allegations made and contained in Paragraph 32.


33.   Legitimate managed care companies and insurers have knowledge of the illegality of such schemes.  The American Association of Preferred Providers has denounced such practices and the American Medical Association has issued an "Action Alert Kit" to its members educating them about Silent PPO schemes.

ANSWER:   ALLSTATE lacks sufficient information to admit or deny the allegations made

and contained in Paragraph 33.


34.   Without complying with the statutory prerequisites for the establishment of an automobile insurance PPO network, ALLSTATE has systematically discounted medical providers' PIP medical expenses by utilizing PPO discounts.

ANSWER:   ALLSTATE denies the allegations made and contained in Paragraph 34.


35.   ALLSTATE has illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any steerage or other meaningful consideration for such discounts.

ANSWER:   ALLSTATE denies the allegations made and contained in Paragraph 35.


## FACTS AS TO PLAINTIFF


36.   On or about December 13, 1999, DR. ZIDEL entered into an agreement with CCN whereby he became a participating health care preferred medical provider (hereinafter referred to as a "CCN Preferred Provider").

ANSWER:     ALLSTATE states that the contract speaks for itself and denies the allegations

made and contained in Paragraph 36 to the extent that they are inconsistent with

the foregoing.

37.     On December 13, 1999, DR. ZIDEL executed a "Community Care Network, Inc., Professional Care Provider Agreement" ("PPA") with CCN to become a CCN preferred provider.  The PPA is attached hereto as Exhibit 1.  Pursuant to the PPA agreement, DR. ZIDEL agreed to become a provider for CCN "Payor organizations which offer a preferred provider or exclusive provider health care coverage plan to beneficiaries or claimants".  DR. ZIDEL's December 13, 1999 agreement does not allow CCN to allow automobile insurers or PPO discount brokers with automobile insurer clients access to DR. ZIDEL's preferred provider rates.  DR. ZIDEL signed no agreement with CCN of any kind before December 13, 1999.

ANSWER:     ALLSTATE states that Exhibit 1 speaks for itself, and denies any allegations to

the extent that they are inconsistent with the foregoing.  ALLSTATE denies the

remaining allegations made and contained in Paragraph 37.

**The Illegitimate Discounting of DR. ZIDEL's Accident Related Medical Bills Based on CCN PPO Discounts either before or after December 13,1999.**

38.     Both before and after December 13, 1999, ALLSTATE had not offered a PPO endorsement to its automobile insureds.  Moreover, ALLSTATE never offered its Florida automobile insureds premium reductions as an economic incentive to use preferred providers.

ANSWER:     ALLSTATE states that it has not offered or sold a preferred provider PIP

coverage in Florida pursuant to Fla. Stat. § 627.736(10) and denies the remaining

allegations made and contained in Paragraph 38.

39.     DR. ZIDEL's PPA with CCN did not authorize the application of his discounts by automobile insurers or discount brokers who could not increase DR. ZIDEL's patient volume.  Importantly, ¶s 19.01 and 19.02 of Exhibit 1 specifically prohibit disclosure of same.  Increased patient volume was the consideration for DR. ZIDEL's discounts under Exhibit 1.

ANSWER:     ALLSTATE states that Exhibit 1 speaks for itself.  ALLSTATE denies the

allegations made and contained in Paragraph 39 to the extent that they are

inconsistent with the foregoing.

40.    Despite these known facts, CCN allowed ALLSTATE access to all of CCN's preferred provider's confidential and proprietary discount rates knowing that ALLSTATE was not a proper payor under Exhibit 1 and could not increase preferred provider patient volume.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 40.


41.    With CCN's consent, its database of preferred provider discounts was loaded into ALLSTATE's software and applied to all bills submitted to the ALLSTATE by CCN preferred providers such as DR. ZIDEL.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 41.


42.    In exchange for CCN's anticipated effort to increase his patient volume, DR. ZIDEL agreed with CCN to provide health care services to Subscribers of such Payors at a rate lower than DR. ZIDEL would normally accept for the same health care services.

ANSWER:    ALLSTATE states that Dr. Zidel's contract with CCN speaks for itself and

denies the allegations made and contained in Paragraph 42 to the extent that they

are inconsistent with the foregoing..


43.    ALLSTATE obtained access to CCN's database that contained the identities of all of CCN's Preferred Providers, as well as the discounted fees that these health care providers were willing to accept for medical services.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 43.


44.    At no time did ALLSTATE have a written contract with DR. ZIDEL or other health care providers in Florida wherein health care providers agreed with ALLSTATE to discount charges for their medical services to patients injured in automobile accidents who were insured for PIP coverage by ALLSTATE.

ANSWER:    ALLSTATE admits that ALLSTATE did not have such a written contract with

Dr. Zidel at any time and denies the remaining allegations made and contained in

Paragraph 44.


45.    By virtue of ALLSTATE's access to the discounted rates in the agreements between CCN, DR. ZIDEL, and the class, ALLSTATE began to systematically apply PPO discounts.

ANSWER:    ALLSTATE affirmatively states that, as of February 1999, pursuant to its

agreement with CCN, ALLSTATE paid medical bills involving personal injury

protection benefits claimants who were treated by health care providers who had

contracted with CCN based on the rates for such providers which CCN informed

ALLSTATE applied. ALLSTATE denies the allegations made and contained in

Paragraph 45 to the extent that they are inconsistent with the foregoing.

46.    CCN and/or ALLSTATE have mailed explanation of benefit forms ("EOBs")
that indicated the application of a discount based upon the CCN Preferred Provider Agreements.

ANSWER:    ALLSTATE affirmatively states that, as of February 1999, ALLSTATE began

applying CCN discounts to medical bills involving personal injury protection

benefits claimants who were treated by CCN providers and that it issued EOB

forms, via United States mail. ALLSTATE denies the allegations made and

contained in Paragraph 46 to the extent that they are inconsistent with the

foregoing.

47.    These EOBs state that ALLSTATE is entitled to such discounts.

ANSWER:    The EOBs speak for themselves and denies the allegations of Paragraph 47 to the

extent that they are inconsistent with the foregoing.

48.    Under this scheme, ALLSTATE has been reaping huge savings while violating
Florida law and providing no consideration whatsoever to health care providers, including DR.
ZIDEL, for the right to apply such discounts.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 48.

49.    At all times material herein, in the course of his medical practice, DR. ZIDEL
provided medical care to patients who had been injured in automobile accidents and who were
entitled to PIP benefits from ALLSTATE. DR. ZIDEL routinely received an assignment of
benefits from his patients.

ANSWER:    ALLSTATE lacks sufficient information to admit or deny the allegations made

and contained in Paragraph 49.


50.    At no time prior to their treatment with DR. ZIDEL did this class of patients receive any marketing materials, including, but not limited to, publications identifying DR. ZIDEL's name, address and available services, from ALLSTATE.

ANSWER:    ALLSTATE states that it did not provide written materials to individual personal

injury protection claimants which identify DR. ZIDEL'S name, address and

available services and denies the remainder of the allegations of Paragraph 50.


51.    At no time did ALLSTATE comply with the requirements of Section 627.736(10).

ANSWER:    ALLSTATE states that the requirement of Section 627.736(10) are inapplicable

to the policies of insurance issued by ALLSTATE and denies the remainder of

the allegations of Paragraph 51.


52.    At no time prior to their treatment with DR. ZIDEL did ALLSTATE encourage these patients to use DR. ZIDEL's medical services.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 52.


53.    After providing medical treatment to these patients, DR ZIDEL submitted medical bills for reasonable and necessary accident related medical expenses to ALLSTATE for payment.

ANSWER:    From time to time, ALLSTATE received medical bills from Dr. Zidel for

payment.    ALLSTATE lacks sufficient information to admit or deny the

remaining allegations made and contained in Paragraph 53.


54.    Upon receipt of the medical bills submitted by DR. ZIDEL for payment under the PIP portion of the ALLSTATE Automobile Policy, ALLSTATE discounted DR. ZIDEL's and other class members' bills by using the CCN PPO discounted rates claiming that ALLSTATE was entitled to said discount.

ANSWER:　　From time to time, pursuant to its agreement with CCN, ALLSTATE paid medical bills involving personal injury protection benefits claimants who were treated by health care providers who had contracted with CCN based on the rates for such providers which CCN informed ALLSTATE applied. ALLSTATE lacks sufficient information to admit or deny the remaining allegations made and contained in Paragraph 54.

55.　　CCN was paid a percentage of ALLSTATE's discount savings on each PIP medical expense claim.

ANSWER:　　ALLSTATE states that, pursuant to its agreement with CCN, ALLSTATE paid CCN based on the difference between billed and CCN rates. ALLSTATE denies the remaining allegations made and contained in Paragraph 55.

56.　　DR. ZIDEL and other class members have received no consideration from ALLSTATE for the discounts taken.

ANSWER:　　ALLSTATE denies the allegations made and contained in Paragraph 56.

57.　　ALLSTATE could not provide such consideration because ALLSTATE failed to offer its insureds a PPO automobile insurance policy incompliance with the Florida PIP statute.

ANSWER:　　ALLSTATE denies the allegations made and contained in Paragraph 57.

58.　　ALLSTATE routinely and systematically applied the CCN PPO discounted rates to PIP medical expense claims.

ANSWER:　　ALLSTATE affirmatively states that, as of February 1999, pursuant to its agreement with CCN, ALLSTATE paid medical bills involving personal injury protection benefits claimants who were treated by health care providers who had contracted with CCN based on the rates for such providers which CCN informed

ALLSTATE applied. ALLSTATE denies the allegations made and contained in

Paragraph 58 to the extent that they are inconsistent with the foregoing.

59.    At the time ALLSTATE implemented its PPO discounting scheme, it knew it was violating Florida law.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 59.

60.    After taking the illegal discounts on DR. ZIDEL's and the class' bills, as described above, ALLSTATE routinely printed out EOBs showing the discounts. It then forwarded the EOBs and reduced payment checks to the health care providers in purported full satisfaction of the health care providers' medical charges.

ANSWER:    The EOBs speak for themselves and denies the allegations of Paragraph 60 to the

extent that they are inconsistent with the foregoing. ALLSTATE denies the

remainder of the allegations made and contained in Paragraph 60.

61.    It was and is the custom and practice of ALLSTATE to discount thousands of automobile medical expense claims in this manner in violation of its policies with its insureds and in violation of Florida's PIP statutes.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 61.

62.    DR. ZIDEL and those similarly situated have been economically damaged and have suffered monetary losses as a result of the conduct of ALLSTATE.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 62.

## CLASS ACTION ALLEGATIONS

63.    DR. ZIDEL brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated. The class is defined to include:

> all Florida health care providers whose bills for medical services
> rendered to patients covered by ALLSTATE's personal injury
> protection automobile insurance policies were discounted by
> ALLSTATE based upon a purported CCN Services, Inc. Preferred
> Provider Organization reduction.

15

ANSWER:    ALLSTATE admits that the allegations of Paragraph 63 purport to allege that

this action is brought pursuant to Fed.R.Civ. P. 23 on behalf of a purported class,

but denies that this is a proper class action.

64.    There are questions of law and fact that are common to all members of the class, which questions predominate over any question affecting only individual class members.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 64.

65.    The principal common issues include the following:

(a)    whether ALLSTATE violated Section 627.736, Florida Statutes by paying personal injury protection medical expense claims at discounted Preferred Provider rates;

(b)    whether ALLSTATE's processing of the PPO discounts is permissible under state law or federal law;

(c)    whether DR. ZIDEL and those similarly situated are entitled to compensatory, statutory, or punitive damages against ALLSTATE because of its illegal conduct; and

(d)    whether DR. ZIDEL and the class are entitled to an injunction preventing the continued disclosure and/or use of their discounts by ALLSTATE and the application of these discounts to automobile personal injury protection medical expense claims.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 65.

66.    The class is comprised of all health care providers whose medical bills were discounted by ALLSTATE based on CCN Preferred Provider discounts.

ANSWER:    ALLSTATE states that the purported alleged class definition speaks for itself, denies that such a class can be properly certified, and denies the allegations to the extent that they are inconsistent with that definition.

67.    The amounts of the discounts are contained in ALLSTATE's computer systems and on the EOBs and checks mailed by ALLSTATE to DR. ZIDEL and the members of the class.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 67.

68.    DR. ZIDEL's claims are typical of the claims of all members of the class because the claims are based on the same legal and remedial theories.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 68.

16

69.    DR. ZIDEL will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

ANSWER:    ALLSTATE lacks sufficient information to admit or deny the allegations made

and contained in Paragraph 69.

70.    DR. ZIDEL is similarly situated with, and has suffered similar injuries as, the members of the class that he seeks to represent.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 70.

71.    DR. ZIDEL has retained counsel experienced in class action cases and health care litigation.

ANSWER:    ALLSTATE admits that DR. ZIDEL has retained counsel, but lacks sufficient

information to admit or deny the remaining allegations made and contained in

Paragraph 71.

72.    Neither DR. ZIDEL, nor counsel, have any interest that may cause them to not vigorously pursue this action.

ANSWER:    ALLSTATE lacks sufficient information to admit or deny the allegations made

and contained in Paragraph 72.

73.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

(a)    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;
(b)    concentration of the litigation concerning this matter in this Court is desirable;
(c)    the claims of the representative Plaintiff are typical of the claims of the members of the class;
(d)    a failure of justice will result from the absence of a class action; and
(e)    the class and the difficulties likely to be encountered in the management of this class action are not great.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 73.

74.     The class is so numerous as to make it impracticable to join all members of the class as plaintiffs.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 74.

75.     ALLSTATE has discounted thousands of medical bills based on CCN Preferred Provider discounted rates.  Many health care providers may not even be aware of ALLSTATE's sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of pursuing individual litigation.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 75.

76.     In contrast, on a class-wide basis, ALLSTATE has saved millions of dollars by accessing and utilizing the discounted rates of health care Providers.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 76.

## AS AND FOR A FIRST
## CAUSE OF ACTION
### (Unjust Enrichment)

77.     DR. ZIDEL repeats and realleges each and every allegation contained in Paragraphs "1" through "76" above as if set forth fully herein.

ANSWER:     ALLSTATE restates and incorporates by reference its responses to Paragraphs 1-

76 as if fully set forth herein.

78.     DR. ZIDEL and the class conferred benefits upon ALLSTATE by providing health care services to individuals insured by ALLSTATE.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 78.

79.     DR. ZIDEL and the class billed ALLSTATE the reasonable value for these services.

ANSWER:     From time to time, ALLSTATE received medical bills from DR. ZIDEL for

payment.   ALLSTATE lacks sufficient information to admit or deny the

remaining allegations made and contained in Paragraph 79.

80.     ALLSTATE improperly paid these bills at reduced rates.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 80.


81.    ALLSTATE has provided no consideration to DR. ZIDEL and the class for the retention of the discounts by ALLSTATE.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 81.


82.    ALLSTATE has reaped the benefit of substantial monetary savings on PIP claims by wrongfully and illegally applying the CCN PPO discounted rates to Florida PIP medical expense claims.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 82.


83.    ALLSTATE had knowledge that it reaped said financial benefits to the detriment of DR. ZIDEL and the members of the class by voluntarily accepting and retaining said benefits.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 83.


84.    Such savings constitute unjust enrichment for ALLSTATE and it would be inequitable under the circumstances for ALLSTATE to retain the benefits received from DR. ZIDEL and the members of the class without paying the full value thereof to DR. ZIDEL and the class members.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 84.


**Affirmative Defenses to Count I**
**First Defense**

1.    Count I fails to state a claim for which relief may be granted.

**Second Defense**

1.    ALLSTATE falls within the definition of "Payor" in Exhibit A to the Complaint.

### Third Defense

1.     DR. ZIDEL knew, or should have known, that with regard to certain claimants covered by a Florida ALLSTATE personal injury protection automobile insurance policy, ALLSTATE was informed and reasonably believed, based on its contractual agreement with Medview's successor-in-interest, CNN Managed Care, Inc. ("CCN"), that it was entitled to apply the Medview contractual discount with DR. ZIDEL.

### Fourth Defense

1.     DR. ZIDEL provided medical treatment to certain patients and submitted medical bills to ALLSTATE for payment thereafter.

2.     The medical bills which DR. ZIDEL submitted to ALLSTATE were prepared by DR. ZIDEL and/or his agents and/or employees.

3.     As a result, DR. ZIDEL knew, or should have known, at all times the amount of the payments which he was expecting to receive from ALLSTATE with regard to such bills.

4.     On those occasions when DR. ZIDEL received payments from ALLSTATE with regard to such bills, he knew or should have known whether or not ALLSTATE had made payment based on the amount which he had billed or had made payment of a different amount, including payments which factored in an additional discount or reduction.

5.     Instead of making inquiry of ALLSTATE or otherwise alerting ALLSTATE to the fact that he was claiming that ALLSTATE was not paying such bills at the proper rates, DR. ZIDEL accepted and acquiesced to such payments without complaint for a period of approximately two years before instituting this lawsuit.

20

6.      As a result, DR. ZIDEL'S claim for unjust enrichment is barred by the equitable doctrine of laches.

### Fifth Defense

1.      DR. ZIDEL provided medical treatment to certain patients and submitted medical bills to ALLSTATE for payment thereafter.

2.      The medical bills which DR. ZIDEL submitted to ALLSTATE were prepared by DR. ZIDEL and/or his agents and/or employees.

3.      As a result, DR. ZIDEL knew, or should have known, at all times the amount of the payments which he was expecting to receive from ALLSTATE with regard to such bills.

4.      On those occasions when DR. ZIDEL received payments from ALLSTATE with regard to such bills, he knew or should have known whether or not ALLSTATE had made payment based on the amount which he had billed or had made payment of a different amount, including payments which factored in an additional discount or reduction.

5.      Instead of making inquiry of ALLSTATE or otherwise alerting ALLSTATE to the fact that he was claiming that ALLSTATE was not paying such bills at the proper rates, DR. ZIDEL accepted and acquiesced to such payments without complaint for a period of approximately two years before instituting this lawsuit.

6.      As a result, DR. ZIDEL'S claims are barred by the doctrines of waiver and estoppel.

WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an Order dismissing Count I of the Complaint with prejudice.

## AS AND FOR A SECOND
## CAUSE OF ACTION
### (Third-Party Beneficiary Breach of Contract)

85. DR. ZIDEL repeats and realleges each and every allegation contained in Paragraphs "1" through "76" above as if set forth fully herein.

ANSWER:    ALLSTATE restates and incorporates by reference its responses to Paragraphs 1-76 as if fully set forth herein.

86.    ALLSTATE and its insureds who purchased its Florida PIP automobile insurance policy entered into a contract of insurance.

ANSWER:    ALLSTATE admits that allegations made and contained in Paragraph 86.

87.    ALLSTATE'S contract provided that in the event an insured was involved in an automobile accident, ALLSTATE would pay, on the insured's behalf, eighty (80%) percent of all reasonable and necessary medical expenses incurred.

ANSWER:    ALLSTATE states that the contract speaks for itself. ALLSTATE denies the allegations made and contained in Paragraph 87 to the extent that they are inconsistent with the foregoing.

88.    DR. ZIDEL and the other members of the class provided medical services to ALLSTATE insureds who were injured in automobile accidents.

ANSWER:    From time to time, ALLSTATE received medical bills from DR. ZIDEL for payment. ALLSTATE lacks sufficient information to admit or deny the remaining allegations made and contained in Paragraph 88.

89.    DR. ZIDEL and the members of the class are intended third-party beneficiaries of ALLSTATE's automobile insurance agreements.

ANSWER:    Paragraph 89 states a legal conclusion to which no response is required, and ALLSTATE denies the remaining allegations of Paragraph 89..

90.     DR. ZIDEL and the members of the class were to be paid 80% of all reasonable and necessary medical expenses incurred and billed.

ANSWER:     ALLSTATE's Policy and the Florida PIP statute set forth ALLSTATE's

obligations with regard to PIP claims and ALLSTATE denies the allegations in

Paragraph 90 to the extent that they are inconsistent with those obligations, and

denies the remaining allegations made and contained in Paragraph 90.


91.     ALLSTATE breached the agreement by improperly paying medical expenses at reduced rates.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 91.


92.     As a result, DR. ZIDEL and the putative class members have suffered damages directly and proximately caused by ALLSTATE's breach of its insurance agreements with its insureds.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 92.


WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an

Order dismissing Count II of the Complaint.


### Affirmative Defenses to Count II
### First Defense

1.     Count II fails to state a claim for which relief may be granted.

### Second Defense

1.     ALLSTATE falls within the definition of "Payor" in Exhibit A to the Complaint.


### Third Defense

1.     DR. ZIDEL knew, or should have known, that with regard to certain claimants

covered by a Florida ALLSTATE personal injury protection automobile insurance policy,

ALLSTATE was informed and reasonably believed, based on its contractual agreement with Medview's successor-in-interest, CNN Managed Care, Inc. ("CCN"), that it was entitled to apply the Medview contractual discount with DR. ZIDEL.

### Fourth Defense

1.      DR. ZIDEL provided medical treatment to certain patients and submitted medical bills to ALLSTATE for payment thereafter.

2.      The medical bills which DR. ZIDEL submitted to ALLSTATE were prepared by DR. ZIDEL and/or his agents and/or employees.

3.      As a result, DR. ZIDEL knew, or should have known, at all times the amount of the payments which he was expecting to receive from ALLSTATE with regard to such bills.

4.      On those occasions when DR. ZIDEL received payments from ALLSTATE with regard to such bills, he knew or should have known whether or not ALLSTATE had made payment based on the amount which he had billed or had made payment of a different amount, including payments which factored in an additional discount or reduction.

5.      Instead of making inquiry of ALLSTATE or otherwise alerting ALLSTATE to the fact that he was claiming that ALLSTATE was not paying such bills at the proper rates, DR. ZIDEL accepted and acquiesced to such payments without complaint for a period of approximately two years before instituting this lawsuit.

6.      As a result, DR. ZIDEL'S claim for third party beneficiary breach of contract is barred by the equitable doctrine of laches.

## Fifth Defense

1.     DR. ZIDEL provided medical treatment to certain patients and submitted medical bills to ALLSTATE for payment thereafter.

2.     The medical bills which DR. ZIDEL submitted to ALLSTATE were prepared by DR. ZIDEL and/or his agents and/or employees.

3.     As a result, DR. ZIDEL knew, or should have known, at all times the amount of the payments which he was expecting to receive from ALLSTATE with regard to such bills.

4.     On those occasions when DR. ZIDEL received payments from ALLSTATE with regard to such bills, he knew or should have known whether or not ALLSTATE had made payment based on the amount which he had billed or had made payment of a different amount, including payments which factored in an additional discount or reduction.

5.     Instead of making inquiry of ALLSTATE or otherwise alerting ALLSTATE to the fact that he was claiming that ALLSTATE was not paying such bills at the proper rates, DR. ZIDEL accepted and acquiesced to such payments without complaint for a period of approximately two years before instituting this lawsuit.

6.     As a result, DR. ZIDEL'S claims are barred by the doctrines of waiver and estoppel.

WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an Order dismissing Count II of the Complaint with prejudice.

## AS AND FOR A THIRD
## CAUSE OF ACTION
### (RICO Act Violations)

93. DR. ZIDEL repeats and realleges each and every allegation contained in Paragraphs "1" through "76" above as if set forth fully herein.

ANSWER:    ALLSTATE restates and incorporates by reference its responses to Paragraphs 1-

76 as if fully set forth herein.


94.    ALLSTATE, acting with middleman CCN, formed an association-in-fact enterprise designed to reduce payments made to CCN preferred providers on all Florida PIP medical expense claims submitted to ALLSTATE. The "association-in-fact" is known as a "silent PPO."

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 94.


95.    ALLSTATE, with the knowing or grossly negligent cooperation of middleman CCN, participated, directly and indirectly, in the activities of this enterprise through a pattern of racketeering activity, as more fully set forth below.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 95.


96.    The activities of this enterprise affected commerce.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 96.


97.    The pattern of racketeering activity consisted of multiple acts of mail and wire fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 97.


98.    The pattern of racketeering activity has been continuous for at least two years, and, on information and belief, will continue into the future.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 98.


99.    In furtherance of the pattern of racketeering activity, ALLSTATE and CCN have engaged in a continuous scheme and artifice to defraud DR. ZIDEL, and those similarly situated, of money as follows:

(a)    CCN solicited DR. ZIDEL and all other members of the class by mail to join its PPO network. CCN mailed its marketing materials and preferred provider agreements to potential preferred providers, including DR. ZIDEL, through the United States mails.

(b)    At all times material herein, CCN entered into a **preferred** provider agreement with DR. ZIDEL and the members of the class that did not authorize the disclosure, sale, lease or license of the preferred provider discounts contained under the agreement to ALLSTATE which was not, and could not, be without offering a PPO auto insurance policy, a legitimate payor under the agreement.

(c)    CCN entered into an agreement with ALLSTATE under which CCN disclosed, leased, sold and/or licensed. the use of the confidential, proprietary CCN preferred provider database that included DR. ZIDEL's and class members' identity and preferred provider discount information.

(d)    In exchange for providing ALLSTATE with access to the identities of its preferred providers and their preferred provider discount rates CCN agreed to receive a fee consisting of a percentage of the savings realized by ALLSTATE for each CCN preferred provider discount applied to Florida PIP medical expense claims including those of DR. ZIDEL and the members of the purported class.

(e)    The identities of the CCN preferred providers and their preferred provider discount information were then used by ALLSTATE in a computerized system to take illegitimate discounts on Florida PIP medical expense claims submitted by DR. ZIDEL and members of the class for medical services performed by DR. ZIDEL and those similarly situated on ALLSTATE insureds who were not, and could not be, legitimate Subscribers under the CCN preferred provider contract;

(f)    After computer application of the CCN preferred provider discounts to Florida PIP medical expense claims, ALLSTATE then printed EOBs that falsely represented that ALLSTATE was entitled to apply the CCN PPO discount to Florida PTP medical expense claims. Based on the application of the CCN PPO discount, ALLSTATE then reduced Florida PIP medical expense claims by such amounts. Copies of such an EOB is attached as Exhibit 1;

(g)    By use of the United States mail, ALLSTATE, with the knowledge and consent of CCN, transmitted said EOBs and reduced claims checks to medical providers such as DR. ZIDEL and the members of the class, to ALLSTATE insureds, and/or to ALLSTATE insureds' attorneys;

(h)    Said EOBs falsely represented that ALLSTATE was entitled to apply the CCN PPO discounts to Florida PIP medical expense claims submitted by DR. ZIDEL and members of the class;

(i)    ALLSTATE engaged in interstate telephone calls and/or computer communications with middleman CCN to transmit information that was false and to exchange fees and compensation essential to the association-in-fact.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 99.

100.    In the above described manner, ALLSTATE was able to gain access to managed care contract rates for application to Florida PIP medical expense claims without providing any consideration to DR. ZIDEL or members of the purported class, and without ever entering into a managed care agreement with any medical providers.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 100.

101.    This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars has directly caused monetary damages to DR. ZIDEL and members of the class.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 101.

102.    ALLSTATE's and CCN's conduct gives rise to claims under 18 U.S.C. § 1964(a) of RICO and permits the recovery of treble damages against the Defendants for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 102.

103.    DR. ZIDEL and the class members are "persons" within the meaning of 18 U.S.C. §1964(c).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 103.

104.    At all times relevant hereto, DR. ZIDEL and class members were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 104.

105.    With respect to the activities alleged herein, ALLSTATE and CCN acted at all times with malice toward the class, intent to engage in the conduct complained of for their own benefit and with knowledge that such conduct constituted unlawful activity. Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which ALLSTATE and CCN are subject, the same amounting to actionable wantonness.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 105.

106.    With respect to the activities alleged herein, ALLSTATE and CCN aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§1962(a) and (c).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 106.

107.    ALLSTATE and CCN operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 107.

108.    In furtherance of this scheme, ALLSTATE and CCN interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests, to which ALLSTATE and CCN are not entitled, through the exploitation of discount rates.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 108.

109.    With respect to the overt acts and activities alleged herein, ALLSTATE communicated and conspired with middleman CCN to violate 18 U.S.C. §§ 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 109.

110.    ALLSTATE communicated with middleman CCN so that it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 110.

111.    ALLSTATE communicated with middleman CCN so that it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which ALLSTATE is not or was not entitled, through the exploitation of a proprietary discount rate.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 111.

112.   The numerous predicate acts of mail and wire fraud and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by ALLSTATE and CCN to defraud DR. ZIDEL and the purported class of money and property interests under false pretenses; to deprive DR. ZIDEL and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and to place ALLSTATE's and CCN's financial interests over the confidential records of DR. ZIDEL and the class so that ALLSTATE and CCN could make greater profits.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 112.


113.   DR. ZIDEL, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 113.


## A.  RACKETEERING ACTIVITIES.

114.   In carrying out the overt acts and fraudulent scheme described above, ALLSTATE and CCN engaged in *inter alia* conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 961 et seq., as stated below.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 114.


115.   Section 1961(l) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code...Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 115.


116.   The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud."  The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations, under 18 U.S.C. §§ 1341 and 1343, respectively, now reads in its entirety as follows:  "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. §1346.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 116.

**1.  18 U.S.C. §§ 1341 and 1346, and 18 U.S.C. §§ 1343 and 1346**

117.   For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, ALLSTATE and CCN, in violation of 18 U.S.C. § 1341 and § 1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 117.


118.   For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, ALLSTATE and CCN, in violation of 18 U.S.C. §§1343 and 1346, transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts. In this manner, ALLSTATE, was knowingly violating obligations of middleman CCN to DR. ZIDEL and others similarly situated to provide "honest services."

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 118.


119.   ALLSTATE knowingly induced middleman CCN to deprive DR. ZIDEL and others similarly situated of "honest services."

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 119.


120.   In those matters and things sent or delivered by the United States Postal Service referred to above, ALLSTATE and CCN falsely and fraudulently represented to DR. ZIDEL and the class that:

(a)    ALLSTATE's payments were for the amount "billed" for the reasonable value of the services, and

(b)    that ALLSTATE was entitled to a PPO discount for DR. ZIDEL and the class under a system that legitimately provides education. marketing and economic incentives intended to "steer" more patients and to provide other benefits to health care providers. ALLSTATE failed, however, to disclose to DR. ZIDEL and the class that its EOBs were based upon illegal discounts designed to maximize profits on discounts illegally obtained through DR. ZIDEL's proprietary information. ALLSTATE thus

failed to disclose material facts regarding ALLSTATE's internal policies and practices specifically designed to reduce or limit the level of payment discussed in detail above.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 120.


121.     With respect to its unlawful activities described above, ALLSTATE and CCN also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§ 1341, 1343, and 1346.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 121.


122.     ALLSTATE and CCN intentionally and knowingly deceived DR. ZIDEL and the purported class referred to above for the purpose of financial gain. ALLSTATE and CCN either knew, or recklessly disregarded, that the illegal discounts described above were material.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 122.


123.     DR. ZIDEL and the class have been injured in their business or property by ALLSTATE's and CCN's overt acts and racketeering activities in amounts to be determined at trial.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 123.


### 2.     18 U.S.C. § 1951(b)(2)

124.     During the relevant times and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, ALLSTATE and middlemen CCN, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. § 1951.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 124.


125.     ALLSTATE unlawfully attempted to and/or did induce middleman CCN to cause DR. ZIDEL and numerous other health care providers to part with various property interests to which ALLSTATE was and is not entitled, including the intangible property right of health care providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 125.

126.    ALLSTATE'S conduct induced middleman CCN to provide it with the names of health care providers and their discounts and exploited a fear of economic loss and/or loss of business by DR. ZIDEL and others similarly situated in violation of 18 U.S.C. § 1951(b)(2).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 126.


127.    In furtherance of the scheme or artifice to defraud to obtain money by false pretenses from DR. ZIDEL and the class, ALLSTATE communicated with middleman CCN to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which ALLSTATE was not entitled through the exploitation of health care providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 127.


128.    ALLSTATE either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by DR. ZIDEL and the class.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 128.


129.    ALLSTATE'S and CCN'S overt acts and fraudulent and extortionate racketeering activities has and continues to defraud DR. ZIDEL and the members of the class, of money, has and continues to unlawfully influence and interfere with the relationship of middleman CCN and DR. ZIDEL and the purported class, as well as interfering with the fiduciary relationship between DR. ZIDEL, and members of the purported class and their patients.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 129.


130.    DR. ZIDEL and the purported class have, therefor, been injured in their business or property by ALLSTATE's overt acts and racketeering activities in amounts to be determined at trial.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 130.


### 3.    U.S.C. § 1952(a).

131.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud DR. ZIDEL and the purported class, ALLSTATE and CCN, their employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in interstate commerce in order to

attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. §1952(a).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 131.


132.    ALLSTATE'S and CCN'S overt acts and fraudulent racketeering activity has and continues to defraud DR. ZIDEL and the class of money.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 132.


## B.  PATTERN OF RACKETEERING ACTIVITY.

133.    ALLSTATE and CCN have engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including DR. ZIDEL and the class.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 133.


134.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by ALLSTATE and CCN, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 134.


## C.  RICO VIOLATIONS OF 18 U.S.C. §§ 1962 (d).

135.    DR. ZIDEL's claim for relief also arises under 18 U.S.C. § 1964 (c) of RICO and seeks to recover actual and treble damages for ALLSTATE's and CCN's violations of 18 U.S.C. §§ 1962(c) and for its violations of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 135.


### 1.  Section 1962(c) claim.

136.    DR. ZIDEL repeats and realleges each and every allegation contained in Paragraphs "1" through "76" as if fully set forth herein.

ANSWER:    ALLSTATE restates and incorporates by reference its responses to Paragraphs 1-

76 as is fully set forth herein.


137.    18 U.S.C. § 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 137 to the

extent that they are inconsistent with the foregoing.


138.    18 U.S.C. § 1961(3) of RICO states that a "person" includes any individual or entity capable of holding a legal or beneficial interest in property.

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 138 to the

extent that they are inconsistent with the foregoing.


139.    18 U.S.C. § 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 139 to the

extent that they are inconsistent with the foregoing.


140.    For purposes of this 18 U.S.C. § 1962(c) claim, the persons consist of ALLSTATE and middleman CCN. The enterprise is an association in fact consisting of ALLSTATE and middleman CCN by virtue of its control over physicians, medical specialists, medical laboratories, hospitals, health care clinics, pharmacies, home health care agencies, and other miscellaneous health care providers, all of which have the purpose of providing health care services to ALLSTATE insureds making PIP claims under ALLSTATE's automobile insurance policies.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 140.


141.    This 18 U.S.C. § 1962(c) enterprise is distinct from ALLSTATE and includes many persons who are not employees of ALLSTATE and many entities that are not owned by ALLSTATE. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 141.


142.    ALLSTATE is associated with middleman CCN in the 18 U.S.C. § 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described herein. DR. ZIDEL and the purported class members are directly and proximately injured both by this pattern of activity and by ALLSTATE's conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 142.


### 2.    Section 1962(d) Claim.

143.    DR. ZIDEL repeats and realleges each and every allegation contained in Paragraphs "1" through "76" as if fully set forth herein.

ANSWER:    ALLSTATE restates and incorporates by reference its responses to Paragraphs 1-

76 as if fully set forth herein.


144.    This claim for relief also arises under 18 U.S.C. § 1964(c) of RICO and seeks to recover actual and treble damages for ALLSTATE's and CCN's violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 144.


145.    18 U.S.C. § 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 145 to the

extent that they are inconsistent with the foregoing.

146.    18 U.S.C. § 1962(a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 146 to the

extent that they are inconsistent with the foregoing.

147.    For purposes of the claim of a conspiracy in violation of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a), the persons under the latter subsection consist of ALLSTATE and middleman CCN and the enterprise consists of ALLSTATE and its investment division, which further profits from the ill-gotten gains.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 147.

148.    At all times relevant herein, middleman CCN and ALLSTATE's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 148.

149.    The ALLSTATE investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud DR. ZIDEL and the purported class of money and to deprive them of their intangible right of honest services from middleman CCN.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 149.

150.    ALLSTATE sells insurance nationwide. Assets generated from ALLSTATE's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars.

ANSWER:    ALLSTATE admits the allegations made and contained in the first sentence of

Paragraph 150. ALLSTATE denies the remainder of the allegations made in

Paragraph 150.

151.    ALLSTATE derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 151.

152.    This use or investment injures DR. ZIDEL and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect health care providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described herein.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 152.

153.    As demonstrated in detail above, ALLSTATE has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require DR. ZIDEL and the purported class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud DR. ZIDEL and the class of money, and to unlawfully interfere with their physician-patient relationship.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 153.

154.    ALLSTATE'S pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by ALLSTATE's inducement to middleman CCN to allow ALLSTATE to defraud DR. ZIDEL and the purported class.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 154.

155.    The nature of the above described acts of ALLSTATE constitutes material misrepresentations that give rise to an inference that ALLSTATE knew it was violating the objective of 18 U.S.C. § 1962(d) by violating 18 U.S.C. §§ 1962(a) and (c), through its ongoing

fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 155.


156.     As a direct and proximate result of ALLSTATE's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate IS U.S.C. §§ 1962(a) and (c), DR. ZIDEL and the class have been and are continuing to be injured in their business or property.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 156.


157.     Pursuant to 18 U.S.C. § 1964(c), DR. ZIDEL is entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 157.


158.     ALLSTATE has sought to and has engaged in the commission of and continues to commit overt acts and the aforesaid described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by ALLSTATE from such pattern of racketeering activity, to-wit:

> (a)     multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;
> (b)     multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;
> (c)     multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;
> (d)     multiple instances of extortion violations of 18 U.S.C. § 1951 (b)(2);
> (e)     multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and
> (f)     multiple instances of violations of 18 U.S.C. § 1954.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 158.


159.     ALLSTATE'S violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting ALLSTATE's illegal acts constituting a pattern of racketeering activity is fashioned and imposed by this Court.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 159.

## Affirmative Defenses to Count III
## First Defense

1.    Count III fails to state a claim for which relief may be granted.

WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an

Order dismissing Count III of the Complaint with prejudice.

## AS AND FOR A FOURTH
## CAUSE OF ACTION
### (Declaratory Judgment)

160.    DR. ZIDEL repeats and realleges each and every allegation contained in Paragraphs "1" through "76" above as if set forth fully herein.

ANSWER:    ALLSTATE restates and incorporates by reference its responses to Paragraphs 1-

76 as if fully set forth herein.

161.    As previously alleged, ALLSTATE has improperly taken advantage of discounts to which it is not entitled for all the reasons that have been set forth in the previous paragraphs of this Complaint.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 161.

162.    ALLSTATE has taken these discounts in breach of the terms and conditions of their automobile insurance policies. Said policies are indemnity policies that do not provide for preferred provider benefits or the application of preferred provider rates.

ANSWER:    ALLSTATE denies the allegations made and contained in the first sentence of

Paragraph 162.    With respect to the second sentence of Paragraph 162,

ALLSTATE states that the policies speak for themselves.    ALLSTATE denies

the allegations made and contained in the second sentence of Paragraph 162 to

the extent that they are inconsistent with the foregoing.

163.    By using CCN's preferred provider rates to limit the payment of DR. ZIDEL's and class members' PIP medical bills, ALLSTATE has imposed a limitation on benefits that is not contained in their automobile insurance policies. DR. ZIDEL and the class members are intended third-party beneficiaries of said insurance policies and are entitled to a declaration that

40

ALLSTATE's payments of their PIP medical bills at preferred provider rates is a breach of the applicable insurance contracts.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 163.


164.    DR. ZIDEL on behalf of himself, and others similarly situated, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, ask this Court to declare that ALLSTATE has breached its insurance contracts by imposing a limitation on benefits not contained in said policies.

ANSWER:    ALLSTATE denies that DR. ZIDEL is entitled to any relief pursuant to 28

U.S.C. § 2201.


### AS AND FOR A FIFTH
### CAUSE OF ACTION
### (Violation of Section 627.736, Florida Statutes)

165.    DR. ZIDEL repeats and realleges each and every allegation contained in Paragraphs " 1" through "76" above as if set forth fully herein.

ANSWER:    ALLSTATE restates and incorporates by reference its responses to Paragraphs 1-

76 as if fully set forth herein.


166.    At all times material herein, DR. ZIDEL and the members of the class that he seeks to represent presented or had presented on their behalf reasonable and necessary medical charges to ALLSTATE for treatment of patients entitled to PIP medical expense benefits pursuant to a Florida automobile insurance policy issued by ALLSTATE.

ANSWER:    From time to time, ALLSTATE received medical bills from DR. ZIDEL for

payment.    ALLSTATE lacks sufficient information to admit or deny the

remaining allegations made and contained in Paragraph 166.


167.    Pursuant to Section 627.736, Florida Statutes:

(1)    **Required benefits.** Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle,

subject to the provisions of subsection (2) and paragraph (4)(d), to a limit of $10,000 of loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:

     (a)    Medical benefits. Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through a prayer alone for healing, in accordance with his religious beliefs.

. . .

**(4)**    **Benefits; when due.**

. . .

     (g)    It is a violation of the insurance code for an insurer to fail to timely provide benefits as required by this section with such frequency as to constitute a general business practice.

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

               ALLSTATE denies the allegations made and contained in Paragraph 167 to the extent that they are inconsistent with the foregoing.

168.    Effective October 1, 1991, as amended, effective October 1, 1992, Section 627.736(10), Florida Statutes provides:

     An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section referred to in this section as "preferred providers" which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a nonpreferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, it must also offer a nonpreferred provider policy. The insurer shall provide each policyholder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such

list available for public inspection during regular business hours at the principal office of the insurer within the state.

ANSWER:     ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 168 to the

extent that they are inconsistent with the foregoing.

169.   Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section." (Emphasis added).

ANSWER:     ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 169 to the

extent that they are inconsistent with the foregoing.

170.   Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider who is a preferred provider, the insurance may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits." (Emphasis added).

ANSWER:     ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 170 to the

extent that they are inconsistent with the foregoing.

171.   In violation of the foregoing provisions of Section 627.736, ALLSTATE has implemented a policy and has conducted itself in a manner with such frequency as to constitute a general business practice whereby ALLSTATE has paid and continues to pay medical benefits at a rate less than the reasonable and necessary rate.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 171.

172.   ALLSTATE, as part of its general business practice, has been paying medical benefits at 80% of preferred provider rates.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 172.

173.    At all times material hereto, ALLSTATE did not offer preferred provider policies.

ANSWER:    ALLSTATE admits the allegations made and contained in Paragraph 173.

174.    Since ALLSTATE did not offer preferred provider policies, ALLSTATE was required to pay 80% of all reasonable and necessary medical expenses.

ANSWER:    ALLSTATE's Policy and the Florida PIP statute set forth ALLSTATE's

obligations with regard to PIP claims and ALLSTATE denies the allegations in

Paragraph 174 to the extent that they are inconsistent with those obligations.

ALLSTATE denies the remaining allegations made and contained in Paragraph

174.

175.    If ALLSTATE issued and sold preferred provider policies, ALLSTATE would then be entitled to pay medical benefits in excess of the benefits required and may waive or lower the amounts of any deductible that applies to such medical benefits.

ANSWER:    The Florida PIP statute speaks for itself and, to the extent that the allegations of

Paragraph 175 are inconsistent therewith, they are denied.  ALLSTATE denies

the allegations made and contained in Paragraph 175.

176.    By paying PIP benefits at a preferred provider rate, ALLSTATE has significantly reduced its payments and obligations under PIP policies throughout the State of Florida.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 176.

177.    ALLSTATE'S actions are in direct violation of Section 627.736.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 177.

178.    ALLSTATE has wrongfully reduced DR. ZIDEL's and the class members' PIP medical expense claims based on CCN preferred provider discounts.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 178.

179.   ALLSTATE is not entitled to said CCN preferred provider discounts. ALLSTATE has failed to offer insureds a PPO endorsement and also failed to otherwise comply with the requirements of Section 627.736(10).

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 179.

180.   Despite this failure, ALLSTATE has reduced and continues to reduce PIP automobile insurance medical expense claims of DR. ZIDEL and the purported class members by accessing and applying CCN preferred provider discounts.

ANSWER:    ALLSTATE affirmatively states that, as of February 1999, pursuant to its

agreement with CCN, ALLSTATE paid medical bills involving personal injury

protection benefits claimants who were treated by health care providers who had

contracted with CCN based on the rates for such providers which CCN informed

ALLSTATE applied.  ALLSTATE denies the allegations made and contained in

Paragraph 180 to the extent that they are inconsistent with the foregoing.

181.   Accordingly, an outstanding balance remains on all automobile insurance PIP medical expense claims that ALLSTATE has reduced based on CCN preferred provider discounts.

ANSWER:    ALLSTATE denies the allegations made and contained in Paragraph 181.

182.   Pursuant to Section 627.736(4)(b): "Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."

ANSWER:    ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 182 to the

extent that they are inconsistent with the foregoing.

183.   Pursuant to Section 627.736(c): "All overdue payments shall bear interest at the rate of 10 percent per year."

ANSWER:     ALLSTATE states that all applicable statutory provisions speak for themselves.

ALLSTATE denies the allegations made and contained in Paragraph 183 to the

extent that they are inconsistent with the foregoing.

184.     ALLSTATE has failed to pay the full amount of the reasonable and necessary medical expense billed by DR. ZIDEL and the class members within 30 days after ALLSTATE was furnished with written notice of the reasonable and necessary amount of the medical expense.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 184.

185.     ALLSTATE has failed to pay interest on the remaining balances owed to DR. ZIDEL and the class members.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 185.

186.     By reducing DR. ZIDEL`s and the purported class members` legitimate medical expenses by the application of CCN preferred provider discount rates, ALLSTATE has violated Section 627.736.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 186.

187.     As a result of ALLSTATE`s failure to comply with Section 627.736, DR. ZIDEL and the members of the purported class have suffered damages.

ANSWER:     ALLSTATE denies the allegations made and contained in Paragraph 187.

### Affirmative Defenses to Count V
### First Defense

1.     Count V fails to state a claim for which relief may be granted.

### Second Defense

1.     Count V is barred by the doctrine of res judicata.

2.     In May v. Allstate Insurance Company, Case No. 00-6269-Civ-Dimitrouleas

(S.D. Fla. April 4, 2000), the court dismissed similar claims alleged against ALLSTATE under

§ 627.736(10). In its Order, a copy of which is attached hereto as Exhibit A, the <u>May</u> court interpreted the statute and determined that it does not allow for a private cause of action to be asserted against Allstate.

3. First, the court held that § 627.736(10) does not require an insurer to offer a "preferred provider" policy, and it only regulates those insurers which offer such a policy. Opinion at page 5. Since Allstate does not offer a "preferred provider" policy, the court reasoned, the statute does not apply to Allstate. <u>Id</u>.

4. In addition, the court held that § 627.736(10) is not intended to benefit medical providers, that medical providers are not within the class of persons the statute was enacted to protect, and that the provider's allegations of a violation of the statute cannot state a cause of action. Opinion at page 6.

5. Finally, the Order dismissing the statutory violation claim expressly states that the claim is dismissed with prejudice as to DR. ZIDEL.

WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an Order dismissing Count V of the Complaint with prejudice.

### Affirmative Defenses All Counts Seeking Punitive Damages

1. Any award of punitive damages would violate the United States and Florida State Constitution, relevant United States Supreme Court and state court precedents, and relevant state statutes.

WHEREFORE, Allstate Insurance Company respectfully requests this Court to enter an Order dismissing the punitive damages claims made in the Complaint with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to counsel on the attached service list this 22nd day of October, 2001.

DAVID B. SHELTON

| | |
|---|---|
| PETER J. VALETA | DAVID B. SHELTON |
| Florida Bar No. 327557 | Florida Bar No. 0710539 |
| ROSS & HARDIES | Rumberger, Kirk & Caldwell |
| 150 North Michigan Ave., Suite 2500 | P.O. Box 1873 |
| Chicago, Illinois 60601 | Orlando, Florida 32802 |
| Telephone: (312) 750-3619 | Telephone: (407) 839-4511 |
| Telecopier: (312) 750-8600 | Telecopier: (407) 841-2133 |
| Attorneys for Allstate Insurance Company | Attorneys for Allstate Insurance Company |

## SERVICE LIST

**Co-Lead Counsel for Plaintiffs**

Jan Douglas Atlas, Esq.
Eric Lee, Esq.
Robin Corwin Campbell, Esq.
ATLAS PEARLMAN, P.A.
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301

Arthur S. Gold, Esq.
GOLD & COULSON
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603

Andrew Garcia, Esq.
Carlin Phillips, Esq.
PHILLIPS & GARCIA
13 Ventura Drive
North Darthmouth, MA 02747

Larry Kopelman, Esq.
Douglas Blankman, Esq.
KOPELMAN & BLANKMAN, P.A
Bank of America Tower
One Financial Plaza, Suite 1611
Fort Lauderdale, FL 33394

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
230 East Davis Boulevard
Tampa, FL 33606

Richard Bokor, Esq.
RICHARD BOKOR, P.A.
230 East Davis Boulevard
Tampa, FL 33606

Casey Fundaro, Esq.
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407

**Counsel for Allstate, Fidelity and Casualty, Continental, Deerbrook**

David B. Shelton, Esq.
RUMBERGER, KIRK & CALDWELL
Signature Plaza, Suite 300
201 South Orange Avenue (3280¹)
Post Office Box 1873
Orlando, Florida 32802-1873

Peter J. Valeta, Esq.
ROSS & HARDIES
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601

**Counsel for Beech Street and ADP**

Thomas Tew, Esq.
Joseph A. DeMaria, Esq.
John M. Quaranta, Esquire
TEW, CARDENAS, et al.
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336

**Counsel for Progressive**

Francis Anania, Esq.
Donald A. Blackwell, Esq.
ANANIA, BANDKLAYDER, et al.
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131

**Counsel for CCN**

William W. Deem, Esq.
William E. Adams, Esq.
MCGUIRE WOODS, LLP
3300 Bank of America Center
50 N. Laura Street
Jacksonville, FL 32202-4099

**Counsel for Nationwide**

Katherine C. Lake, Esq.
FOWLER, WHITE, et al.
Post Office Box 1438
Tampa, FL 33601

James C. Haggerty, Esq.
SWARTZ CAMPBELL DETWEILER
1601 Market Street, 34th Floor
Philadelphia, PA 19103-2316

**Counsel for Florida Farm Bureau**

Robert K. Levenson, Esquire
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3000
Miami, FL 33131

**Counsel for Liberty Mutual**

Mark Shapiro, Esq.
AKERMAN, SENTERFITT et al.
SunTrust International Center. 28th Floor
One Southeast Third Avenue
Miami, FL 33131

**Counsel for Hartford, Metropolitan, Integon**

Marcy Levine Aldrich, Esq.
AKERMAN, SENTERFITT et al.
SunTrust International Center, 28th Floor
One Southeast Third Avenue
Miami, FL 33131

**Counsel for Metropolitan**

Jeffrey P. Lennard, Esquire
SONNENSCHEIN, NATH & ROSENTHAL
8000 Sears Tower
Chicago, IL 60606

**Counsel for Prudential**

John D. Aldock, Esquire
Jeffrey M. Klein, Esquire
Michael Isenman, Esquire
SHEA & GARDNER
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

Kathy Johnson Maus
Lola M. Swaby
BUTLER BURNETTE PAPPAS
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308-3469

**Counsel for Superior**

Alan J. Nisberg, Esquire
BUTLER BURNETT PAPPAS
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607

**Counsel for American International**

Dale L. Friedman, Esquire
Brian P. Knight, Esquire
CONROY, SIMBERG, GANNON,
KREVANS & ABEL, P.A.
3440 Hollywood Blvd., 2nd Floor
Hollywood, FL 33021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6269-CIV-DIMITROULEAS

DRS. MARTIN MAY, ALAN LAZAR,
MARTIN HALE, JOEL RUSH, PAUL ZIDEL,
RICHARD LINN, RICHARD BERKOWITZ
DOUGLAS STRINGHAM, ANDREW
ELLOWITZ, ALAN NOVICK, DEBRA WEISS,
and NEIL SCHECHTER,

       Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,

       Defendant.

_____/



## ORDER ON MOTION TO REMAND
## AND MOTION TO DISMISS

     THIS CAUSE is before the Court upon Plaintiffs', Drs. Martin May, Alan Lazar, Martin

Hale, Joel Rush, Paul Zidel, Richard Linn, Richard Berkowitz, Douglas Stringham, Andrew

Ellowitz, Alan Novick, Debra Weiss and Neil Schechter Motion for Remand, filed herein on

March 14, 2000 and Defendant, Allstate Insurance Company's Motion to Dismiss, filed herein

on March 1, 2000. The Court has carefully reviewed the motions and is otherwise fully advised

in the premises.

## I. BACKGROUND

     Plaintiffs are doctors, who practice under the names "Park Place Therapeutic Center" and

"Park Place Orthopaedics & Rehabilitation." As this entity, they submit claims to Allstate for

payment on behalf of persons insured by Allstate for personal injury protection benefits, and

receive payments from Allstate.

1

EXHIBIT "A"

Defendant, Allstate, sells automobile insurance policies in Florida which contain personal injury protection, pursuant to Florida law. Under the PIP coverage, Allstate agrees to pay 80% of reasonable charges for necessary medical treatment provided to covered insured who suffer injury in an automobile accident. Plaintiffs claim that the amount that they have received, pursuant to bills they have sent to Defendant, of work they have done on Defendant's insureds, is "substantially less than [Allstate] is statutorily and contractually obligated to pay."

On January 21, 2000, Plaintiffs filed a two Count Complaint in the Circuit Court, Seventeenth Judicial Circuit, in and for Broward County, Florida. The action was timely removed. The Complaint is for: 1) Declaratory Relief; and 2) Breach of Contract.

Plaintiffs seek remand to State Court, arguing that the amount of PIP benefits paid to Plaintiffs pursuant to illegally obtained discounts by Defendant, compared to the amounts that should have been paid, can not be determined with certainty. They could potentially exceed or fall below the necessary jurisdictional amount, and therefore Defendants cannot provide, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requirement. Defendant counters this argument by stating that Plaintiffs are engaged together in the practice of medicine, submit the claims together, and receive payments together. Defendant submits the Explanation of Medical Bill Payments and Health Insurance Claim Forms as evidence that Plaintiffs are engaged in a united practice of medicine.

Defendant next moves to dismiss this action. It argues that Plaintiffs do not allege that Allstate offers "preferred provider" PIP coverage under the policy. The insured are entitled to choose the health care provider they want, on their own. Plaintiffs claim that Defendant pays PIP claims for medical benefits at 80% of "preferred provider" rates. Defendant argues that it is not required to offer a "preferred provider" policy to its insured and therefore, has not failed to pay

2

PIP benefits as required by § 627.736, Florida Statutes. Defendant also argues that the Complaint does not establish that it breached an obligation under the PIP coverage or § 627.736(10), Florida Statutes, by paying medical benefits at a "reasonable" rate, if it is less than what Plaintiffs request. Defendant's last argument is that there is no private cause of action permitted for violations of § 627.736(10). In sum, Defendant claims Plaintiffs do not state a claim.

Plaintiffs, in their two page response, argue that they strongly disagree with Defendant's arguments in the dismissal motion, and aver that they do state a claim.

## II. DISCUSSION

### A. Remand

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (11th Cir. 1996). Federal Jurisdiction should be found, unless it appears within "a legal certainty that the claim is really for less than the jurisdictional amount." Id. at 1356. However, "[w]here a plaintiff has made an unspecified demand for damages, a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer. Id. at 1356-57; See Gafford v. General Electric Company, 997 F.2d 150, 160 (6th Cir. 1993).

Plaintiffs claim that the amount of controversy in this action can only be determined by calculating the amount of PIP benefits paid individually, to Plaintiffs. However, Plaintiffs are engaged together in the practice of medicine under two names, "Park Place Therapeutic Center" and "Park Place Orthopaedics & Rehabilitation." Plaintiffs submit forms to receive payment, and receive payment collectively. The Health Insurance Claim Forms, submitted by Defendant,

3

shows that the I.D. Number of Referring Physician contains the same tax number on each sheet.

Additionally, in the space marked "Physician's, Supplier's Billing Name...," Park Place

Therapeutic Center is noted on each form. On the Explanation of Medical Bill Payment,

submitted by Defendant, in the space marked, "Treatment Rendered By," is the name Park Place

Therapeutic Center. "[W]hen several plaintiffs unite to enforce a single title or right, in which

they have a common and undivided interest, it is enough if their interests collectively equal the

jurisdictional amount." Troy Bank of Troy, Indiana v. G.A. Whitehead & Company, 222 U.S.

39, 40-41 (1911). The aggregate amount of the reduction of payments clearly exceeds the

$75,000 threshold necessary to confer jurisdiction on this Court.

### B. Dismiss

It is long settled that a complaint should not be dismissed unless it appears beyond a

doubt that the plaintiff could prove no set of facts in support of his claim which would entitle

him to relief. Conley v. Gibson, 355 U.S. 41 (1957). The allegations of the claim must be taken

as true and must be read to include any theory on which the plaintiff may recover. See Linder v.

Portocarrero, 963 F.2d 332, 334-336 (11th Cir.1992) (citing Robertson v. Johnston, 376 F.2d 43

(5th Cir.1967)). There must be a showing that the plaintiff has no claim before granting a motion

to dismiss. June Vernon and Delroy Vernon v. Medical Management Associates of Margate,

Inc., 912 F.Supp. 1549 (S.D.Fla. 1996).

Defendant's first argument is that the Complaint fails to allege a breach of contract or

violation of § 627.736. Plaintiffs allege in their Complaint, that Allstate pays PIP claims for

medical benefits at 80% of "preferred provider" rates. However, Plaintiffs fail to define

"preferred provider" rates, nor do they allege that such rates were not reasonable. Plaintiffs

claim, then, that because Allstate does not provide an option to insureds to purchase a "preferred

4

provider" policy for PIP benefits, it breached its contracts of insurance with its insureds and violated § 627.736(10) by paying at those rates. Therefore, Plaintiffs' only allegation is that Allstate is paying certain health care providers reduced rates which those providers have agreed to accept for medical services covered under the Allstate PIP contracts.

Plaintiffs, in the Complaint, claim that Defendant's standard policy does not comply with § 627.736(1)(a), which necessitates a party to have personal injury protection of "[e]ighty percent of all reasonable expenses for necessary medical..." Plaintiffs claim that they provided medical treatment, and were paid less than what is statutorily and contractually obligated to pay. However, Plaintiff's claims are not based on this Florida Statute.

Plaintiffs also argue that Defendant refers to Plaintiffs actions as "preferred providers," and such designation is improper. § 627.736(10), Florida Statutes, states in pertinent part, "(10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as 'preferred providers,' which shall include health care providers...The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits..." Plaintiffs attached the insurance policy to the Complaint. The Court may consider the policy for purposes of a motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997); Smith Barney, Inc. v. Scanlon, 180 F.R.D. 444, 446 (S.D.Fla. 1998). Such consideration of a document attached to Plaintiff's complaint does not convert the motion to dismiss into a motion for summary judgment. Id. The policy does not contain the term "preferred providers," and Plaintiffs are not the parties the statute is meant to protect. Additionally, the statute does not state that Defendant must offer a "preferred providers" plan, but only regulates those parties that choose to do so.

5

Defendant argues that the statute was not enacted to benefit medical providers, and therefore, does not allow Plaintiffs to rely on it as their basis for damages. In <u>Fischer v. Metcalf</u>, the Third District Court of Appeals discussed three criteria[1] which are pertinent to whether the legislature intended a statute to benefit a party. They are, "1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; 2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; and 3) whether judicial implication is consistent with the underlying purposes of the legislative scheme." <u>Fischer v. Metcalf</u>, 543 So.2d 785, 788 (Fla. 3rd DCA 1989); See <u>Cort v. Ash</u>, 422 U.S. 66 (1975).

§ 627.736, Florida Statutes, was not enacted to benefit medical providers. Plaintiffs are not the class whose especial benefit the statute was enacted. The statute was enacted to protect insureds from harm as a result of accidents with other drivers, and actions by insurance companies. The statute was not enacted to ensure that medical providers received what they felt was a reasonable wage. The legislature did not imply, nor can it be inferred, that the medical providers were the parties the statute was enacted to protect. The Court cannot infer that the Legislature intended to protect the medical providers with the enactment of § 627.736. "Legislative intent, rather than duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." <u>Murthy v. N. Sinha Corp.</u>, 644 So.2d 983, 985 (Fla. 1994). Plaintiffs claim for relief based on Defendant's alleged violation of § 627.736, Florida, Statutes, does not allege a cause of action.

---

[1] Out of a four part test.

6

The remaining issue is whether Plaintiffs may sue Defendant for paying them what they do not deem to be reasonable rates, as preferred providers. However, the term preferred provider is not mentioned in the insurance policy and Defendant's actions do not resemble the statute's definition of the term preferred provider. Therefore, Plaintiffs claim is based on being intended third party beneficiaries to Defendant's insurance policies. Plaintiffs are not in direct contractual privity with Defendant. "[T]he term 'privity' is a word of art derived from the common law of contracts and used to describe the relationship with persons who are parties to a contract." Espinosa v. Sparber, et al., 612 So.2d 1378, 1380 (Fla. 1993). Usually only parties to a contract may collect on the contract. However, "an intended third party beneficiary of a contract may recover damages from the contracting parties if they breach the contract." Jacobson v. Heritage Quality Construction Co., Inc., 604 So.2d 17, 18 (Fla. 4th DCA 1992). "Essential to the right of a third party beneficiary of a contract to maintain an action for its breach is a clear intent and purpose of the contract to directly and substantially benefit the third party." Thompson v. Commerical Union Insurance Company of N.Y., 250 So.2d 259, 262 (Fla. 1971). The insurance policies between Defendant and the insureds are clear in their intent to directly and substantially benefit Plaintiffs[2]. Plaintiffs, in the present action, "must plead the contract which was expressly for (their) benefit and one under which it clearly appears that (they were) a beneficiary." Weimar v. Yacht Club Point Estates, Inc., 223 So.2d 100, 102 (Fla. 4th DCA 1969). Plaintiffs properly pled that they were intended third party beneficiaries to defeat the motion to dismiss.

## III. CONCLUSION

Plaintiffs did not, nor could they, properly plead a cause of action under § 627.736(1)(a)

---

[2] Although this benefit is not the main crux of the insurance policy.

7

and (10) as the basis of Defendant's liability. The statute does not delineate that there exists such

a cause of action exists, nor is the statute drafted to benefit medical providers. Plaintiffs do state

a cause of action for breach of contract, in that they are the intended third party beneficiaries to

the insurance policy, but not on the basis that they were improperly treated as preferred

providers.

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand is hereby **DENIED**;

2. Defendant's Motion to Dismiss is hereby **GRANTED**; in part. Motion to Dismiss

Count I is hereby Granted; Count I is dismissed with prejudice. Motion to Dismiss Count II is

hereby **GRANTED**; Count II dismissed without prejudice, with leave to amend in accordance

with this Order. An Amended Complaint shall be filed within then days of this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this _14_ day of

April, 2000.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Peter Valeta, Esq.
Lawrence Kopelman, Esq.
David B. Shelton, Esq.