UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-06061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly
situated,
    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,
    Defendants.
_____/

SALVATORE D. LARUSSO, D.C.,
d/b/a FAMILY CHIROPRACTIC
CENTER, on behalf of himself and all
others similarly situated,
    Plaintiff,

v.                                  CASE NO: 01-8108-CV-Ferguson/Snow

NATIONWIDE MUTUAL INSURANCE
COMPANY,
    Defendant.
_____/

### DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS

    Defendant, Nationwide Mutual Insurance Company(hereinafter "Nationwide"), by and through its undersigned attorneys, hereby moves this Court to compel arbitration of all claims brought by the named plaintiff, or, in the alternative, to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The moving defendant incorporates herein by reference its Memorandum of Law.

    1.    On October 10, 2001, Salvatore D. Larusso, D.C. d/b/a Family Chiropractic




Center (Larusso) served an Amended Complaint replacing Nationwide Mutual Insurance Company for Nationwide Insurance Company of America as the defendant in this action.

2. Larusso alleges that Nationwide improperly paid its charges at Preferred Provider Organization (PPO) rates.

3. In paragraph 23 of its Amended Complaint, Larusso states that "[a]t all times material herein, DR. LARUSSO entered into a contract under which he agreed to provide his services to Beech Street PPO subscribers."

4. Larusso failed to attach a copy of its provider contract with the Beech Street PPO. That provider contract is attached hereto as Exhibit "A" and incorporated by reference herein.

5. Larusso's provider contract contains an arbitration clause which specifically states:

   **Any dispute arising over the terms and conditions of this agreement which the parties are unable to resolve themselves shall be submitted, upon the motion of any party, to arbitration under the appropriate rules of the AAA.** (See attached at Exhibit "A", Article XIV, ¶ 14.2).

6. As a "payor" as defined in Larusso's provider contract, NATIONWIDE is a third party beneficiary of that contract. (See attached at Exhibit "A", Article I, ¶ 1.5).

7. The rights and obligations of the parties are governed by Larusso's provider contract.

WHEREFORE, as arbitration is the sole means of dispute resolution, NATIONWIDE requests this court enter an Order Compelling Arbitration or otherwise Dismiss the Plaintiff's Complaint.

Respectfully submitted,

FOWLER WHITE BOGGS BANKER, P.A.
Post Office Box 1438
Tampa, Florida 33601
813/228-7411
813/229-8313 (telecopier)
Trial Counsel for Defendant

_Katherine C Lake_
W. Donald Cox, FBN 096535
Katherine C. Lake, FBN 066941

and

James C. Haggerty
Swartz, Campbell & Detweiler
1601 Market Street, 34th Floor
Philadelphia, PA 19103
215-564-5190
215-299-4301 (telecopier)

### CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing to be served by U.S. mail this 24th day of October, 2001, to the persons on the attached service list.

_Katherine C Lake_
Attorney

KCL\NATIONW\LARUSSO\PLD\DISMISS2-MOT

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 10/18/01)

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Eric Lee, Esq.
lee@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@gpandg.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 1611
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

7090-00100 318823.1

**Counsel for Beech Street and ADP**

TEW, CARDENAS,et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL  32202
(904) 798-3200
(904) 798-3207 Facsimile

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Nationwide**

7090-00100 318823.1

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lola M. Swaby, Esq.
lswaby@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Jeffrey M. Klein, Esq.
Jklein@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS
& ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

**Counsel for Prudential**

7090-00100 318823.1

## PREFERRED PROVIDER AGREEMENT

THIS AGREEMENT is made and entered into by and between BEECH STREET CORPORATION, a Georgia corporation located at 5201 W. Kennedy Blvd., Suite 531, Tampa, Florida 33609 ("Beech Street"), and "Provider" identified, located, and effective as listed on the last page of this Agreement.

WHEREAS, Beech Street operates a Preferred Provider Program and has or will enter into agreements with Payors (as defined below);

WHEREAS, Provider desires to participate in Beech Street's Preferred Provider Program subject to the terms and conditions hereof;

In consideration for the mutual covenants and agreements set forth herein, the sufficiency of which is hereby acknowledged, the parties agree as follows:

### ARTICLE I
### DEFINITIONS

For the purposes of this Agreement, the following definitions shall apply:

1.1  BENEFITS - Dollar amount payable for a Covered Service after application of deductibles and co-insurance under the Beneficiary Agreements or Plan which covers the Preferred Patient, subject to all terms and provisions of such Beneficiary Agreement or Plan.

1.2  COVERED SERVICE(S) - Any health care service provided by Provider to a Preferred Patient for which Benefits are available under the Beneficiary Agreement or Plan which covers the Preferred Patient.

1.3  BENEFICIARY AGREEMENT OR PLAN - A contract, policy or other document or a workers' compensation plan under which a Payor is obligated to provide Benefits to Beneficiaries for Covered Services.

1.4  PREFERRED PATIENT OR BENEFICIARY - An individual who is entitled to Benefits and who on the date health care services are rendered has satisfied the eligibility requirements and effective date provisions of a Beneficiary Agreement or Plan.

1.5  PAYOR - An employer, insurance carrier, third party administrator, health care service plan, trust, non-profit hospital service plan, any governmental unit or any other entity which has an obligation to provide Benefits to a Beneficiary and which has entered into an agreement with Beech Street to participate in its Preferred Provider Program.

1.6  PAYOR AGREEMENT - An instrument between a Payor and Beech Street or its authorized representative which provides for Beech Street providers, including Provider pursuant to the Agreement, to render Covered Services to Beneficiaries.

1.7  PROVIDER - An individual practitioner, group practice, IPA, or professional corporation rendering medical services.

### ARTICLE II
### PROVIDER SERVICES

2.1  Provider hereby represents and warrants that Provider listed on Attachment I (Application) hereto is and shall for the duration of their participation in this Agreement remain licensed to practice medicine in the State in which services will be provided.

c1194B/872/F4
4/21/94

2.2    Provider agrees to provide Covered Services to Preferred Patients, as may be medically necessary, when requested by such Preferred Patients, so long as such Covered Services are customarily provided by Provider and Provider has the present capacity to provide them to such Preferred Patient.

2.3    Provider shall provide Covered Services to a Preferred Patient in the same manner in which it provides said services to all other individuals receiving services from Provider, subject to any limitations in a Beneficiary Agreement or Plan.

2.4    Provider agrees to participate in Beech Street's Utilization Review Program, as described in Article V of this Agreement.

2.5    Provider agrees to refer Preferred Patients to Beech Street's contract hospitals and physicians and other health care providers where appropriate. Beech Street will periodically provide Provider with current lists of its contract hospitals, physicians and other health care providers.

2.6    Provider agrees to participate in Beech Street's Payor's return to work programs, if Provider agrees to accept reimbursement set forth in Exhibit B. The programs are intended to reduce the "lost work" time of the employee.

2.7    Provider agrees to provide Beech Street sixty (60) days' advance written notice of all additions, deletions, or modifications to Attachment I, to include but not limited to name, address, phone number, tax identification number, hospital affiliation, board certification status, liability coverage, and practice limitations. Furthermore, the same notification shall be applied to any provider changes to the group practice on a monthly basis.

2.8    Provider agrees not to limit or close their practice to any Beech Street Beneficiary.

## ARTICLE III
## PAYOR LIST/BENEFICIARY INFORMATION

3.1    Beech Street shall periodically provide Provider with a current list of Payors who have executed agreements with Beech Street.

3.2    The Payor Agreements shall require Payor to maintain adequate information so that Provider may contact Payor and ascertain: (1) whether a particular patient is a Preferred patient; (2) a description of the Benefits under the applicable Beneficiary Agreement or Plan; and (3) the identification of a responsible party which will verify eligibility for Benefits.

3.3    Beech Street shall notify Payor or Payor's Plan administrators that Provider has agreed to participate in the Beech Street Preferred Provider Program and to provide Covered Services for a set fee under the terms of this Agreement.

## ARTICLE IV
## COMPENSATION AND BILLING

4.1    Provider agrees to submit claims to Beech Street or Payor on standard billing forms for Covered Services provided to Preferred Patients no later than forty-five (45) days following the provision or completion of such Covered Services. In the event Provider is unable to submit claims within the time specified herein because of circumstances beyond his control, the time for submission of such claims shall be extended as reasonably necessary, but not to exceed 180 days, from the date such claims would be required to be submitted in the absence of such circumstances. Provider agrees to accept assignment from Beneficiaries on such claims for Benefits.

4.2    The Payor Agreements shall require Payor to pay claims of Provider for Covered Services provided to Preferred Patients in a timely manner in accordance with the terms of this Agreement. Payor will have no obligation to make payments for services determined not to be Covered Services pursuant to the utilization review program (as

c1194B/872/F4
4/21/94

2

described in Article V below) or for services rendered in a manner which does not comply with the utilization review program. Beech Street shall have no responsibility for the payment of such claims from its funds.

4.3  So long as this Agreement remains in effect, Provider agrees to accept as payment in full for Covered Services provided by Provider on behalf of Preferred Patients the lesser of billed charges or the amounts set forth in Exhibit A (Health Benefits) and/or Exhibit B (workers' compensation) attached hereto. The dollar amounts listed in Exhibit A as payment in full for Covered Services provided under this Agreement include payments, co-payments, and deductibles for which the Preferred Patient is responsible, and Provider agrees not to require the Preferred Patient to pay any amount over that specified. "Payment in full" is further defined as the total amount to be received for Covered Services by Provider from the Preferred Patient, and any other source (such as, for example, supplementary insurance plans), and shall not exceed the amount specified in Exhibit A. The dollar amounts listed in Exhibit B represent payment in full for all workers' compensations medical services.

4.4  Provider shall be entitled to bill and collect from a Preferred Patient that amount specified in a Beneficiary Agreement or Plan as Preferred Patient's deductible and co-insurance amounts, as well as Provider's usual and customary charges for non-covered services provided to a Preferred Patient.

## ARTICLE V
## UTILIZATION REVIEW

5.1  Beech Street's Utilization Review Program shall apply to all Covered Services rendered under this Agreement. The scope of the Utilization Review Program, which is set forth more fully in Exhibit C, generally includes but is not limited to:

(a)  Pre-admission Evaluation of non-emergency admissions;

(b)  Continued Stay Review for inpatient hospitalizations;

(c)  Discharge Planning to an appropriate level of care on a timely basis; and

(d)  Second Surgical Opinions and Outpatient Surgery.

5.2  Provider agrees to provide Beech Street or Payor or both with information and documentation relating to Covered Services subject to the above or other types of reviews as set forth in the Exhibit C in a timely fashion.

5.3  Provider may appeal a Utilization Review decision to the extent and in the manner set forth in Exhibit C.

5.4  Subject to the afore-described rights of appeal, Provider agrees that, for purposes of determining its obligation to compensate Provider, Payor may but is not required to rely upon the Utilization Review decision. Provider agrees that such decision in no way alters its responsibility to make an independent professional judgment regarding the care of the Beneficiary.

5.5  Provider agrees to comply with the Utilization Review Procedures as set forth in Exhibit C as revised from time to time. Provider agrees that unless remedied within twenty (20) days of the date of notice by Beech Street or Payor, the failure of any individual physician members of Provider to follow such Utilization Review Procedures, shall constitute a material breach of this Agreement and is cause for immediate termination of the participation of such individual physician member of Provider in this Agreement; provided, however, that the termination of the participation of such individual Provider member shall not affect the participation of other physician members of Provider under this Agreement, and this Agreement shall continue in full force and effect with respect to such other physician members, subject to any other right of termination under this Agreement.

c1194B/B72/F4
9/9/94                                    3

## ARTICLE VI
## INSURANCE

6.1 During the term of this Agreement and during any time period in which Provider is providing continued services under Article II hereof, Provider agrees to maintain general and professional liability (malpractice) insurance from a reputable insurance company or coverage under a legally established insurance trust or self-funded plan in the minimum amount of $250,000 for each claim and $750,000 for aggregate claims. Provider agrees to provide satisfactory evidence of such insurance or other coverage to Beech Street upon request. Provider agrees to provide written notice to Beech Street of the cancellation or proposed cancellation of such liability insurance or coverage.

## ARTICLE VII
## INDEPENDENT RELATIONSHIP

7.1 Nothing in this Agreement shall be construed or be deemed to create a relationship between or among Provider, Payor and Beech Street of employer and employee or principal and agent, or any relationship other than that of independent parties contracting with each other solely for the purpose of carrying out the provisions of this Agreement. Neither party shall be liable to third parties for the acts or omissions of the agents, representatives or employees of the other party.

7.2 Nothing in this Agreement is intended to create (nor shall it be construed to create) any right in Beech Street or Payor to intervene in any manner with the method or means by which Provider renders professional services and professional judgment to a Preferred Patient.

## ARTICLE VIII
## INSPECTION OF RECORDS

8.1 Provider shall maintain, with respect to each Preferred Patient receiving Provider services pursuant to a Beneficiary Agreement or Plan, a single standard medical record in such form, containing such information, and preserved for such time period(s) as are required by applicable State and Federal law and regulations promulgated thereunder.

8.2 It is understood that the medical records referred to in Section 8.1 above shall be, and remain, the property of Provider and shall not be removed or transferred from Provider except in accordance with applicable State and Federal law and regulations promulgated thereto. To the extent permitted by law, in accordance with procedures required by law, and upon receipt of twenty-four (24) hours prior written notice from Beech Street and/or Payor, Provider shall permit Beech Street and/or Payor to inspect and make copies of said records. Beech Street and/or Payor shall reimburse Provider for all costs incurred by Provider as a result of such record inspection and duplication. The Payor Agreement shall require Payor to obtain a valid written release from the Preferred Patient (or his or her legal representative) authorizing Beech Street and/or Payor to obtain his or her medical records.

## ARTICLE IX
## PROMOTION AND LISTING OF PROVIDER

9.1 Beech Street and/or Payor may list the name, address and telephone number and medical specialty of Provider in Beech Street's and/or Payor roster of participating health care providers and hospitals and in Beech Street's and/or Payor's marketing materials.

9.2 Should this Agreement be terminated, Beech Street and/or Payor will remove the Provider's name, address, telephone number and medical specialty from updated rosters.

c1194B/872/F4
4/21/94

4

## ARTICLE X
## PROPRIETARY RIGHTS

10.1 Each of the parties to this Agreement reserves the right to control the use of any of its symbols, trademarks and service marks presently existing or hereafter established. Each party agrees that it will not use such words, symbols, trademarks, service marks or other devices in advertising, promotional materials or otherwise, and that it will not advertise or display such devices without the prior written consent of the other party and will cease any and all such usage immediately upon termination of this Agreement. In addition, each party agrees that any such signs, displays, literature or material furnished by the other party to it remains the property of the other party and shall be returned to it upon demand or the termination of this Agreement.

## ARTICLE XI
## TERM OF AGREEMENT

11.1 Unless otherwise terminated as provided in Article V, Article XIII, or this Article XI, this Agreement shall continue in force for a period of one (1) year from the effective date shown on page eight (8) and shall be automatically renewable for additional one (1) year terms.

11.2 This Agreement may be terminated by either party without cause upon ninety (90) days written notice to the other party. Should this Agreement be terminated, Provider agrees to continue to provide Covered Services to existing Beneficiaries until care is transferred to another participating provider (not to exceed beneficiary plan year). Covered Services rendered to Beneficiaries during this period shall continue to be compensated in accordance with the provisions of Article IV at the rates which are in effect at the time the Covered Services are rendered.

11.3 Either party may terminate this Agreement in the event of a material breach of this Agreement by the other party, by providing written notice of termination to such other party at least thirty (30) days prior to the effective date of termination, such notice to include a description of the facts underlying the claim that the other party is in breach of this Agreement. Remedy of such breach in a manner satisfactory to the party giving notice within twenty (20) days of the receipt of such notice shall revive the Agreement in effect for the remaining term, subject to any other rights of termination contained in this Agreement.

11.4 If the license of a Provider member is suspended, nullified or revoked by the appropriate agency of any state in which he or she renders services pursuant to this Agreement or if the insurance of such Provider member is canceled, Provider member's participation under this Agreement shall be terminated automatically, without notice, effective as of the date such license is suspended, revoked or nullified or the date such insurance is canceled; the termination of the participation of such Provider member shall not affect the participation of any other Provider member of Provider under this Agreement and this Agreement shall continue in full force and effect as to such other physician members, subject to any other rights of termination under the Agreement.

11.5 Following termination of this Agreement, Beech Street shall provide notice to Payors of such termination through the regular periodic updating of Beech Street information to Payors.

11.6 Provider agrees that following termination of this Agreement, Provider shall notify Beneficiaries seeking services that Provider is no longer under contract with Beech Street to provide Covered Services, except to the extent set forth in Section 11.2 above. Provider also agrees to notify Beneficiaries of any additional charges for which they may be responsible as a result of the termination of this Agreement.

11.7 Provider and Beech Street shall remain liable for any obligations or liabilities arising from activities carried on by such party or its agents, servants, or employees during the period this Agreement shall have been in effect.

c1194B/872/F4
4/21/94

5

11.6   As of the date of termination of this Agreement, pursuant to any provision of this Article XI or of this Agreement, it shall be considered of no further force or effect whatsoever and each of the parties shall be relieved and discharged from all duties and obligations hereof, except as provided in Section 11.2 and 11.5 - 11.7.

ARTICLE XII
RELATIONSHIP TO OTHER CONTRACTS

12.1   Nothing in this Agreement shall prevent Provider from negotiating with or doing business with any insurance carrier or other payor of health care services.

12.2   Nothing in this Agreement shall prevent Beech Street and/or Payor from negotiating or doing business with any other Provider in connection with its program or for any other reason.

12.3   It is understood by the parties of this Agreement that Provider may be a member of one or more PPOs.

ARTICLE XIII
GENERAL PROVISIONS

13.1   Notice.  Any notice required to be given pursuant to the terms and provisions hereof shall be in writing and shall be either personally delivered or sent by certified or registered mail, return receipt requested, postage prepaid, addressed to the party to receive the notice at the address set forth on page one (1) of this Agreement or such other address as may be provided in writing to the other party, and if sent by registered or certified mail, return receipt requested, such notice shall have been deemed to have been delivered to the party to whom it was addressed on the third business day after the day on which it was mailed to such party at such address.

13.2   Modifications.  It is the express intention of both Beech Street and Provider that the terms of this totally integrated writing shall comprise the entire Agreement between the parties and it shall not be subject to rescission, modification, or waiver except as defined in a subsequent written instrument executed by both parties hereto.

13.3   Assignability.  This Agreement or any duty or obligation of performance hereunder may not be assigned, in whole or in part by Provider without the prior written consent of Beech Street. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors and assigns.

13.4   Severability.  The invalidity or unenforceability of any terms or provisions hereof shall in no way affect the validity or enforceability of any other term or provision.

13.5   Business Interruption.  In the event the operations of Provider or any substantial portion thereof are interrupted by war, fire, insurrection, labor troubles, riots, the elements, earthquakes, acts of God, or, without limiting the foregoing, any other cause beyond Provider's power, the provisions of this Agreement (each such provision hereof as Provider is thereby rendered incapable of performing) shall be suspended for the duration of such interruption. Nothing contained herein shall be construed to limit or reduce Payor's obligation to pay Provider for services rendered to a Preferred Patient prior to or subsequent to an event described herein. If a substantial part of the services which Provider has agreed to provide hereunder are interrupted for a period in excess of thirty (30) days, Beech Street shall have the right to terminate this Agreement upon ten (10) days prior written notice to Provider.

13.6   Waiver.  The waiver by either Beech Street and/or Payor or Provider of one or more defaults on the part of the other shall not be construed to operate as a waiver of any subsequent defaults.

13.7   Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same agreement.

c1194B/872/F4
4/21/94

6

## ARTICLE XIV
## ARBITRATION

Except as provided in Exhibit C with respect to Utilization Review if the parties hereto cannot settle grievances or disputes between or among themselves in an informal and expeditious fashion, such parties agree to use the following procedures for resolving disputes:

14.1   Should the parties, prior to submitting a dispute to arbitration, desire to utilize other impartial dispute settlement techniques such as mediation, fact-finding, etc. a joint request for such services may be made to the American Arbitration Association ("AAA"), or the parties may initiate such other procedures as they may mutually agree upon at such time.

14.2   Any dispute arising over the terms and conditions of this Agreement which the parties are unable to resolve themselves shall be submitted, upon the motion of any party, to arbitration under the appropriate rules of the AAA.

14.3   All such arbitration proceedings shall be administered by the AAA, and the parties agree that the decision of the arbitrator therein shall be final and binding as to each of them.

14.4   In all cases submitted to AAA, the parties agree to share equally the AAA administrative fee as well as the arbitrator's fee, if any, unless otherwise assessed by the arbitrator. The administrative fee shall be advanced by the initiating party subject to final apportionment by the arbitrator in his award.

14.5   The parties agree that the arbitrator's decision may be enforced in any court having jurisdiction thereof by the filing of a petition to enforce such decision. Cost of filing may be recovered by the party which initiates such action to have an award enforced.

## ARTICLE XV
## INDEMNIFICATION

Each party hereto indemnify to hold each other (including its officers, agents, and employees) harmless against any and all claims, demands, damages, liabilities, and costs incurred by the other party, including reasonable attorney's fees resulting from any act or omission by or under the direction of the indemnifying party or its employees or agents relating to the subject matter of this Agreement.

c1194B/872/F4
4/21/94                                                7

## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have executed this Agreement as of the effective date signed by Beech Street, unless otherwise amended and agreed upon by both parties, for the following services:

☑ Exhibit A
Health Benefits Network Membership

☑ Exhibit B
Worker' Compensation Network Membership

If neither box is checked, your application will be considered for both networks.

Provider

Print Name: _Family Chiropractic Center_

Address: _6319 S. Dixie Hwy W Palm Beach FL 33405_

Phone Number: _407 586 3294_

Tax ID Number: _59-2096357_

Signature: [signed]

Date: _12/1/95_

---

**FOR BSI USE ONLY**

☐   _F4 WC 0010_                _12/11/95_
                                Effective Date

[signed] MD
Lester ~~Sacks~~, ~~M.D.~~, ~~Ph.D.~~ / William Thompson, MD
Sr. V.P. Medical Affairs

Date

01194B/872/F4
9/9/94                          8

## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have executed this Agreement as of the effective date signed by Beech Street, unless otherwise amended and agreed upon by both parties, for the following services:

☐  ☐

Exhibit A                          Exhibit B
Health Benefits Network Membership      Worker' Compensation Network Membership

**If neither box is checked, your application will be considered for both networks.**

Provider
_SALVATORE D. LaRusso D.C. / Family Chiro Center_
Print Name

_13860 #13 Wellington Tr. #13_
_Wellington FL_    Address _33414_

_(407) 793-4200_                _65-04,305-05_
Phone Number                    Tax ID Number

_[signature]_                   _11/22/95_
Signature                        Date

---

**FOR BSI USE ONLY**

---

☐

_[signature] MD_                 Effective Date
Medical Director


Date

c1194B/872/F4
9/9/94                                      8