## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-06061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly
situated,
      Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,
      Defendants.

_____/

SALVATORE D. LARUSSO, D.C.,
d/b/a FAMILY CHIROPRACTIC
CENTER, on behalf of himself and all
others similarly situated,
      Plaintiff,

E.                         CASE NO: 01-8108-CV-Ferguson/Snow

NATIONWIDE MUTUAL INSURANCE
COMPANY,
      Defendant.

_____/

## DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS

### I.    STATEMENT OF RELEVANT FACTS

The named Plaintiff, Salvatore D. LaRusso (hereinafter "LaRusso"), is an individual and a

chiropractor doing business as "Family Chiropractic Center" in West Palm Beach, Florida.

(Complaint at caption and ¶1.) The named Defendant is "Nationwide Mutual Insurance Company";

and Plaintiff alleges that he is "an insurance company incorporated under the laws of the State of

Ohio." (Complaint at caption and ¶2.)

LaRusso proposes to represent a class of "others similarly situated," defined as follows:

> all Florida health care providers whose bills for medical services rendered to patients covered by NATIONWIDE's personal injury protection automobile **insurance policies** were discounted by NATIONWIDE **based upon a purported** Beech Street Services, Inc. Preferred Provider Organization reduction.

(Complaint at ¶ 77.) (Emphasis added.) As discussed below, the class definition contains no temporal parameters; and it is unclear whether the underlying PIP-insured patients of the healthcare providers are limited to Florida insureds and/or insurance coverage subject only to Florida law. The Complaint as a whole contains 200 paragraphs with five separate causes of action. The causes of action are: 1) Unjust Enrichment; 2) Third-Party Beneficiary Breach of Contract; 3) RICO Act Violations; 4) Declaratory Judgement; and 5) Violation of Florida Statutes Section 627.736.

LaRusso's claims (and those of the proposed class of healthcare providers) are based upon the alleged contracts of insurance between the patients and the named Ohio insurance company, "Nationwide Mutual Insurance Company." However, LaRusso does not identify any patient in the Complaint itself; he only attaches an explanation of reimbursement that identifies a policyholder and a claimant. LaRusso also fails to attach any contract of insurance. On the contrary, and somewhat in spite of his significant reliance on the contract of insurance, LaRusso merely attaches Exhibit "1" to the Complaint. Exhibit "1" is referred to as a "sample of an EOB [explanation of benefits][1] received by DR. LARUSSO illustrating the illegal discount."[2] (Complaint at ¶ 67.) Moreover,

---

[1]    In fact, Exhibit 1 is not an Explanation of Benefits but rather an "Explanation of Reimbursement."

[2]    The single Exhibit "1" to the Complaint indicates that the insured who purchased the Nationwide policy of insurance was Joseph M. Geiger. The date of the accident is given as July 12, 1999, and the treatment date for three procedures as October 18, 1999. Both Exhibit "1" to the Complaint and the Complaint indicate that LaRusso billed a total of $147.50 for the three procedures of October 18,1999. (Complaint at ¶68.) Neither the EOB Exhibit nor the Complaint indicates when the bill was submitted. Further, the Exhibit indicates that a payment in the amount of $71.46 was "recommended;" it does not state what payment was made, nor when any payment was made. The Complaint fails to specifically state what payment was made to LaRusso for the October 18, 1999 treatment; it only indicates that the payment made to LaRusso "resulted in the misappropriation of $46.54 from DR. LARUSSO." (Complaint at ¶ 71.) Doing the simple math, this seems to represent an allegation that the

2

LaRusso fails to allege or attach an assignment of benefits vesting him (or any of the proposed class of health care providers) with standing to sue pursuant the insurance contract.

The Complaint does not indicate what the usual and customary charges were for the procedures outlined in Exhibit "1," nor whether they were more or less than the $147.50 billed for Geiger. The Complaint does not indicate what the usual and customary charges were for the procedures provided by LaRusso for other claimants he treated, or whether his other charges were more or less than the usual and customary charges for which the contract provided an 80% payment. LaRusso fails to allege anything with regard to the charges of the would-be class members either; and he does not allege that the policies of insurance for all the underlying insured claimant/patients were identical for all claimants or for all periods of time. Indeed, in his Complaint LaRusso fails to present any time period for the claims of either the proposed class or himself.

With regard to the individual Counts of the Complaint, plaintiff makes the following allegations. At Count I (Unjust Enrichment) and Count II (Third-Party Beneficiary Breach of Contract), plaintiff claims the status of a third-party beneficiary to a contract of insurance between Nationwide and its insureds. Yet, LaRusso fails to allege that Nationwide's insured assigned their benefits to it. LaRusso also fails to attach an assignment of benefits from the assignor, Mr. Geiger, or any other prospective member of the patient class.

At Count III (RICO Act Violations), LaRusso claims that Nationwide (acting with Beech Street and ADP) engaged in a pattern of racketeering activity. This included an allegedly continuous scheme and artifice to defraud the providers through mail and wire fraud and extortion. However, LaRusso fails to allege when the individual misrepresentations took place, or how or when he or the

---

"recommended payment" of $71.46 in Exhibit "1" to the Complaint was made and accepted by LaRusso.

individual would-be class members relied upon the misrepresentations.

Count IV (Declaratory Judgment) asks this Court to declare that Nationwide has breached its insurance contracts by imposing a limitation on benefits not contained in the policies. It is unclear just what the limitation would be, given the lack of allegations regarding what the usual and customary charges would be and the contradictory position regarding what percentage of a billed amount should be paid.

Count V (Violation of Florida Statutes §627.736) is effectively a claim for statutory 10% penalties on monies not paid within 30 days of billing.[3]  Plaintiff alleges:

> 185. NATIONWIDE, as part of its general business practice, has been paying medical benefits at eighty (80%) percent of preferred provider rates.
>
> 187. Since NATIONWIDE did not offer a preferred provider policies [sic], NATIONWIDE was required to pay eighty (80%) percent of all reasonable and necessary medical expenses.
>
> 194. Accordingly, an outstanding balance remains on all automobile insurance PIP medical expense claims that NATIONWIDE has reduced **based on Beech Street preferred provider discounts**.

(Complaint at ¶¶ 185, 187 and 194.) (Emphasis added.)

## II.    STANDARD OF REVIEW

### A.    Motion to Compel Arbitration

Arbitration is a favored means of dispute resolution, and Florida courts should indulge "every reasonably presumption to uphold" arbitration proceedings. See, e.g., Roe v. Amica Mut. Ins. Co., 533 So. 2d 279, 281 (Fla. 1988); Beaver Coaches, Inc. v. Rebels Nationwide R.V. Sales, Inc., 543 So. 2d 359, 362 (Fla. 1st DCA 1989); Arrieta v. Volkswagen Ins. Co., 343 So. 2d 1918, 1921 (Fla.

---

[3]    "All overdue payments [those paid beyond 30 days after billing] shall bear interest at a rate of 10 percent per year." § 627.736(c), Fla. Stat. (1999).

3d DCA 1977). Florida courts have ruled that "[t]he trial court's role when considering Motions to Compel Arbitration is limited to determining (1) whether a valid written agreement exists, (2) whether an arbitratable issue exists, and (3) whether the right to arbitration was waived." Piercy v. School Bd., 576 So. 2d 806, 807 (Fla. 1st DCA 1991). Similarly, the United States Supreme Court held that a court is only to determine if the parties agreed to arbitrate and whether the dispute falls within the scope of the arbitration agreement. AT&T Tech Inc. v. Communications Workers of America, 475 U.S. 643 (1986).

When in doubt, a court should resolve a dispute in favor of arbitration. See Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Regency Group, Inc. v. McDaniels, 647 So. 2d 192 (Fla. 1st DCA 1994); Ronbeck Constr. Co., Inc. v. Savannah Club Corp., 592 So. 2d 344 (Fla. 4th DCA 1992); Beaver Coaches, Inc., 543 So. 2d at 362; Arrieta, 343 So. 2d at 921. When the right to arbitrate is properly asserted, failure to submit a cause to arbitration departs from the essential requirements of law. Grillo v. Raymond James & Assoc., Inc., 524 So. 2d 1121, 1122 (Fla. 2d DCA 1988); Vic Potamkin Chevrolet, Inc. v. Bloom, 386 So. 2d 286 (Fla. 3d DCA 1980).

## B.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that dismissal of a claim is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir. 1994) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984)). On a motion to dismiss, the court must accept as true all facts alleged and draw all inferences therefrom in the light most favorable to the non-moving party. Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). Rule 12(b)(6) is not designed to strike inartistic pleadings or to provide a more

5

definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and the attachments thereto. Brooks v. Blue Cross and Blue Shield of Florida., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997).

In deciding a motion to dismiss, a district court may consider exhibits attached to the complaint. "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." Watson v. Bally Mfg. Corp., 844 F. Supp. 1533, 1535 n. 1 (S.D. Fla. 1993), aff'd, 84 F.3d 438 (11th Cir. 1996), (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (1990)).

More importantly for this matter (where the Plaintiff has failed to attach copies of the policies of insurance upon which he so heavily relies), where a plaintiff has referred to certain documents in the complaint that are "central to the plaintiff's claim," the Court "may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require the conversion of the motion into a motion for summary judgment." Brooks, 116 F.3d at 1369.

## III.   **ARGUMENT**

### A.   **Arbitration Is The Proper Forum For This Cause.**

This Court must yield its jurisdiction to arbitration because arbitration is the proper forum for this cause. LaRusso contracted with the Beech Street Corporation PPO, and that contract contains an arbitration clause. Nationwide is a third party beneficiary of that contract because Nationwide is a defined "payor" which LaRusso and Beech Street specifically intended to benefit from and be burdened by the contract. See Deanna Constr. Co. v. Sarasota Entertainment Corp., 563 So. 2d 150,

151 (Fla. 2d DCA 1990); Health Application Systems, Inc. v. Hartford Life & Accident Ins. Co., 381 So. 2d 294, 298 (Fla., 1st DCA 1980). As a third party beneficiary, Nationwide is entitled to arbitrate any disputes arising from LaRusso's contract with Beech Street. See Blanchard v. Central Park Lodges, Inc., 2001 WL 1104293 at *2 (Fla. 2d DCA Sept. 21, 2001); Tartell v. Chera, 668 So. 2d 1105, 1106 (Fla. 4th DCA 1996). An arbitration clause is binding upon third party beneficiaries, and, therefore, third party beneficiaries may invoke such clauses. Zac Smith & Co., Inc. v. Moonspinner Condominium Assoc., Inc., 472 So. 2d 1324, 1325 (Fla. 1st DCA 1985); Anderson-Parrish Assoc., Inc. v. City of St. Petersburg Beach, 468 So. 2d 507 (Fla. 2d DCA 1985). The arbitration clause is properly before the Court, it requires arbitration of all disputes, and Nationwide has not waived its right to arbitrate.

As stated above, the Court needs to determine only: (1) whether a valid arbitration agreement exists, (2) whether an arbitratable issue exists, and (3) whether the right to arbitration was waived. Piercy, 576 So. 2d at 807. Because LaRusso admits that he signed the provider contract (Complaint at ¶23), Nationwide need only address the other two elements of arbitration. These are treated in separate paragraphs below.

The arbitration clause determines the issues subject to arbitration. McDaniels, 647 So. 2d at 193. When in doubt about the scope of an arbitration clause, public policy requires the Court to find in favor of arbitration. Id. at 193-94. LaRusso's provider contract in this case specifically requires arbitration of "any dispute arising over the terms and conditions of this Agreement which the parties are unable to resolve themselves shall be submitted, upon the motion of any party, to arbitration under the appropriate rules of the AAA." (See LaRusso provider contract at Article XIV, ¶14.2, attached as Exhibit "A" to Nationwide's Motion and incorporated by reference herein). Each allegation within LaRusso's Amended Complaint is subject to arbitration because each of the five

7

counts arise out of LaRusso's agreement with the Beach Street PPO network. The central issue in this cause is whether Nationwide's insured were entitled to LaRusso's services at the Beech Street PPO rate.[4]

Nationwide has not waived its right to arbitrate because it has not engaged in conduct inconsistent with its right to arbitrate. See Grillo, 524 So. 2d at 1122. Nationwide moved to dismiss LaRusso's original complaint because, among other reasons, that Complaint named the wrong Nationwide company as a defendant. LaRusso voluntarily amended his complaint and properly named Nationwide Mutual Insurance Company. Nationwide's first responsive pleading is this Motion to Compel Arbitration or, in the alternative, to Dismiss the Claim. Nationwide has engaged in no discovery or otherwise litigated this action. Wieneke v. Raymond, James & Assoc., Inc., 495 So. 2d 869, 869-70 (Fla. 2d DCA 1986); Piercy v. School Board, 576 So. 2d 806, 808 (Fla. 1st DCA 1991). Accordingly, Nationwide has not waived its right to arbitrate.

Nationwide adopts the arguments and reasoning of CCN Managed Care, Inc. regarding whether the federal or state Arbitration acts will apply to this cause. The Plaintiff has alleged, as a basis for jurisdiction, that he, Nationwide and Beech Street are located in separate states. (Complaint at caption and ¶¶ 1, 2 & 3.) Accordingly, interstate commerce has been used to contract, bill, adjust and receive payment. The Federal Arbitration Act is applicable to this cause.

Finally, the law is well settled: A valid arbitration provision divests a trial court of its jurisdiction over the merits of a dispute. See Feather Sound Country Club, Inc. v. Barber, 567 So. 2d 10 (Fla. 2d. DCA 1990) ; Modern Health Care Services, Inc. v. Puglisi, 597 So. 2d 930, 931 (Fla. 3d DCA 1992); Gersh v. Concept House, Inc., 291 So. 2d 258 (Fla. 3d DCA 1974). Permitting the

---

[4]   LaRusso acknowledges that Nationwide paid his services at the PPO rate. (Complaint at ¶26 and Exhibit "1".)

8

Plaintiffs to litigate this dispute would constitute a departure from essential requirements of law. Grillo v. Raymond James and Associates, Inc., 524 So. 2d 1121 (Fla. 2d DCA 1988); Chemstar Corp. v. Stark, 634 So. 2d 794, 795 (Fla. 3d DCA 1994) ; North American Van Lines v. Collyer, 616 So. 2d. 177, 178 (Fla. 5th DCA 1991); Vic Potamkin Chevrolet, Inc. v. Bloom. 286 So. 2d 286, 287 (Fla. 3d DCA 1980). Accordingly, this Court should divest itself of jurisdiction and dismiss the Plaintiff's complaint pending the arbitration proceedings.

**B.    Plaintiff Fails To Allege Or Attach An Assignment Of Benefits.**

LaRusso fails to either allege or attach an assignment of benefits. Without an assignment of benefits from Nationwide's insured, LaRusso lacks standing, capacity to sue and is not the real party in interest to this dispute. See Oglesby v. State Farm Mut. Auto. Ins. Co., 781 So. 2d 469 (Fla. 5th DCA 2001); State Farm Mut. Auto. Ins. Co. v. Ray, 556 So. 2d 811, 812 (Fla. 5th DCA 1990). Moreover, LaRusso fails to state that all proposed members of the heath care provider class accepted assignments from each of the proposed patient class members.

**C.    Plaintiff Fails To State A Claim For Unjust Enrichment.**

To prevail on a claim of unjust enrichment, plaintiffs must have conferred a benefit upon the defendant. More specifically, under Florida law the elements of a cause of action for unjust enrichment are: 1) the plaintiff has conferred a benefit upon the named defendant; 2) the named defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4)the circumstances are such that it would be inequitable for the named defendant to retain the benefit without paying for it. Swindell v. Crowson, 712 So. 2d 1162, 1163 (Fla. 2d DCA 1998); Greenfield v. Manor Care, Inc., 705 So. 2d 926, 930 (Fla. 4th DCA 1997); Turner v. Fitzsimmons, 673 So. 2d 532, 536 (Fla. 1st DCA 1996).

The phrase "unjust enrichment" is generally used in the law to characterize the result or effect

9

of a failure to make restitution of property or benefits received under such circumstances as to give rise to a legal or an equitable obligation to account for said property or benefits. Lowry v. Lowry, 463 So. 2d 540, 541 (Fla. 2d DCA 1985) (citing 66 Am.Jur.2d, Restitution and Implied Contracts at 3 (1973)). It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution for benefits received, retained, or otherwise appropriated, where it is proper that such restitution be made. Id.

However, plaintiff has conferred **nothing** on the named defendant; and he would fail to state a cause of action for unjust enrichment against any insurer. The cause of action in this case simply cannot be maintained. LaRusso only conferred a benefit on the claimant/patient he treated. Under Florida law any conferral of a benefit must be done **directly**, in order to establish a claim for unjust enrichment. See Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A., 667 So. 2d 876, 879 (Fla. 3d DCA 1996)( holding that the "plaintiff. . . did not allege that it had directly conferred a benefit on the defendants . . ."); see also Huntsman Packaging Corp. v. Kerry Packaging Corp., 992 F. Supp. 1439, 1446 (M.D. Fla.1998). The only direct benefit conferred by the named plaintiff was the medical service conferred on Mr. Geiger. Any retention of monies by an insurer is not the equivalent of a direct conferral of a benefit by the physician on the insurer. Indeed, it is not even an indirect conferral of a benefit, and the damages demanded by the plaintiff make this clear. Wherefore, Count I of the Complaint should be dismissed with prejudice.

D.    **Plaintiff Presents Only Claims For Damages Based On Alleged Breach Of The <u>Contracts Of Insurance, And The Equity Claims Should Be Dismissed.</u>**

Florida law does not generally permit a party to pursue a cause of action on an express contract at the same time that he pursues a cause of action for unjust enrichment. <u>Solutec Corp. v. Young & Lawrence Assoc., Inc.</u>, 243 So. 2d 605 (Fla. 4th D.C.A. 1971). Indeed, proof of an express contract between parties to a contract defeats a claim for unjust enrichment because the contractual remedy is already available. <u>Id.</u>

Both federal and Florida law do permit pleading in the alternative. <u>See</u> Fed. R. Civ. P. 8(a)(1). However, in the instant action LaRusso must plead and establish his rights based on a contract for PIP coverage; otherwise, he could have **no** claims whatsoever. Paradoxically, LaRusso's unjust enrichment claim (that he conferred a benefit not on Mr. Geiger, but on the insurer defendant), presumes the existence and validity of the PIP coverage to be paid to LaRusso. Therefore, the plaintiff simultaneously (not in the alternative) argues that his claims are all a function of rights arising from the contract of insurance which covers Mr. Geiger. The pleadings therefore allege, if not admit, that adequate remedies at law are available. The basis for plaintiff's unjust enrichment claim is the tangible benefit of medical treatment he conferred upon the claimant, Mr. Geiger. Assuming <u>arguendo</u> that defendant's conduct constituted a breach of an insurance contract, LaRusso has a contractual remedy.

More importantly, LaRusso fails to allege that his alleged contractual remedies are inadequate. Therefore, he has failed to state a claim for the equity Counts I and IV. <u>See</u> <u>Martinez v. Weyerhaeuser Mortgage Co.</u>, 959 F. Supp. 1511, 1518-19 (S.D. Fla. 1996) ("Because Plaintiffs fail to allege that an adequate remedy at law does not exist, and the Court is not convinced that this is clear from the face of the Amended Complaint, Count III fails to state a claim for unjust enrichment

11

and will be dismissed from the Amended Complaint").

Wherefore, this Court should dismiss both the unjust enrichment and declaratory judgment counts. The declaratory judgment demands for relief are inappropriate because money damages are available. See Gary v. D. Agustini & Asociados, S.A., 865 F. Supp. 818, 827 (S.D. Fla. 1994).

**E.    Plaintiff Fails To State A Claim For Breach Of Contract**.

Plaintiff has failed to plead sufficient facts to support a breach of contract claim. He clearly admits that an insurer can pay 80% of the reasonable and necessary medical expenses incurred; however, he fails to allege facts to support any allegation that the monies actually paid to him were indeed less than 80% of the reasonable and necessary medical expenses. Plaintiff's charges are not per se the reasonable and necessary dollar figure. Wherefore Count II for breach of contract should be dismissed with prejudice.

**F.    Plaintiff Fails To State A Claim For RICO Violations**.

**1.    Plaintiff fails to meet the specificity requirements of Federal Rule 9(b).**

Count III is a proposed cause of action for RICO violations. To state a civil claim under RICO, a claimant must allege: "(1) that a person (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985). A "pattern" under R.I.C.O. "requires at least two acts of racketeering activity" within a ten year period, or multiple predicates within a single scheme that amounted to criminal activity. 18 U.S.C. § 1961(5); see also H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S. Ct. 2893, 2899, 106 L. Ed. 2d 195 (1989). Further, a civil RICO claimant must prove conduct that is indictable, and offenses that are punishable under various criminal statutes. Sedima, 473 U.S. at

12

488, 105 S. Ct. at 3280. Plaintiff has failed to meet any of these prerequisites; and at a minimum he has failed to do so with prerequisite specificity. Especially given plaintiff's mail and wire fraud civil RICO claims, he must plead his case with the same particularity as a pleading of fraud, and that plaintiff has failed to state his allegations with such specificity as required by Federal Rule of Civil Procedure 9(b).

The courts in the Eleventh Circuit have continually supported the notion that "fulfillment of the particularity standard requires the complaint to give defendants fair notice of the nature of the claim, notice of the grounds the claim rests on, and [that the complaint] must be based on a reasonable belief that a wrong has been committed." Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc. 719 F. Supp. 1072, 1073 (M.D. Fla. 1989) (citing Zuckerman v. Franz, 573 F. Supp. 351, 355-56 (S.D. Fla. 1983)). The Court in Dah Chong also held that to satisfy Rule 9(b), a plaintiff would have to pled and provide "sufficient identification of the circumstances constituting fraud so an adequate answer may be prepared." Id. Further, the Eleventh Circuit has held that "allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity . . ." Durham v. Business Management Associates, 847 F.2d 1505, 1512 (11th Cir. 1988). However, plaintiff has failed to provide such sufficient identification of the circumstances constituting fraud. The Complaint provides absolutely no information regarding allegations of date, time or place. On the contrary, as the Court will note, no dates, time or places are provided.

Further, the proposed class definition nor the allegations of the Complaint contain or propose any temporal parameters whatsoever. There is no proposed class period; it is apparently infinite. The EOB attached to the Complaint is not dated; and with regard to the single, one-and-only billing/payment for Mr. Geiger described in the Complaint, LaRusso fails to allege when the bill was submitted, or when the payment was made to (and accepted) by him.

13

Nowhere in the Complaint does he allege when he became aware of the alleged wrongful acts of the named defendant and unnamed co-conspirators.

Further, it is unclear from the Complaint whether the claims at issue are limited to those based only on underlying claims and treatment of **Florida** insureds. The class definition only limits the class to Florida healthcare providers; it does not state that their claims are limited to treatments provided to or for Florida insureds. Defendant can guess that it is so limited, based on the Count V allegations of violation of Section 627.736, Florida Statutes; however, a defendant should not be forced to guess or presume.

Plaintiff has failed to sufficiently plead the fraud aspects of his RICO claims, and they should be dismissed. At a minimum, plaintiff should be compelled to amend his Complaint to, among other things, describe the mail and wire fraud as to date, time and place so that the defendant could prepare an adequate defense.

### 2. **Plaintiff fails to plead facts to show a pattern of racketeering activity.**

By way of further argument, plaintiff has failed to state a claim for racketeering activities and/or for any "scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute [a] scheme or artifice to deprive another of the intangible right of honest services." (See Complaint at ¶¶ 131 and 132.) With regard to "false or fraudulent pretenses," Nationwide incorporates its arguments above regarding Rule 9(b) specificity. Plaintiff fails to sufficiently state the fraudulent pretenses, let alone when they were made or to whom they were made. Further, plaintiff has failed to plead facts to support a claim that the payment made to him (even assuming it were less than that provided for under a valid contract ) deprived LaRusso of "honest services."

Subsection "C" of Count III of the Complaint is merely labeled: "RICO VIOLATIONS OF

14

18 U.S.C. §§ 1962(d)." The double § would seem to indicate claimed violation of multiple sections of § 1962; and this is consistent with the numbered subsections 1 ("Section 1962(c) claim") and 2 ("Section 1962(d) Claim.") of Subsection "C".

Section 1962(c) and (d) of RICO require a showing that the defendant engaged in a "pattern of racketeering activity."[5] To satisfy RICO's "pattern of racketeering activity" requirement, a plaintiff must allege: 1) that the defendant committed two or more federal criminal offenses, often referred to as "predicate acts," within a ten year time span;[6] 2) that those predicate acts are related to one another; and 3) that those predicate acts demonstrate a continuing nature of criminal conduct. See, e.g., H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239-43, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989); Sedima, supra, 473 U.S. at 496-97; Jones v. Childers, 18 F.3d 899, 910-11 (11th Cir. 1994). The second and third prongs above (relationship of the predicate acts and continuing nature of the criminal conduct) comprise the so-called relationship plus continuity test. H.J. Inc., supra, 492 U.S. at 239-43.

Each element is missing from plaintiff's Complaint. The plaintiff has failed to allege anything more than that he was paid less than what he alleges he should have been paid pursuant to a **contract** of insurance **to which the named plaintiff was not a party**. Plaintiff does not allege that the check he received or the EOB disguised or misrepresented either what was billed or what was paid; and

---

[5]     For instance, § 1962(c) makes it illegal "for any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. @ 1962(c).

[6]     Section 1961 of RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity," the first which occurred after the act became effective and the second within ten years of the first. 18 U.S.C. § 1961(5). In turn, "racketeering activity" is defined as the commission of any of an enumerated list of federal crimes (18 U.S.C. @ 1961(1)), which are called "predicate offenses." Jones, 18 F.3d at 910. At least two predicate offenses are necessary for a "pattern of racketeering activity," however, two predicate offenses are not enough, by themselves, to meet the pattern of racketeering activity test. Id. Rather, the predicate offenses also must satisfy the relationship and continuity test discussed below.

15

allegations regarding the EOB are contradicted by the EOB itself. For instance, at Paragraphs 113

(j) and (k) and (l) of the Complaint, the plaintiff alleges:

(j) Said EOBs and Summary Benefit Forms falsely represented that the [sic] NATIONWIDE and ADP were entitled to apply a Beech Street PPO discount to the claim;

(k) Said EOBs and Summary Benefit Forms falsely claimed the "AMOUNT OWED" to be less than the amount actually owed and also **falsely decreased** a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount.

(l) Said EOBs also falsely stated that the discounted amount is "considered payment in full" and that all "appeals" regarding the PPO reductions must be taken up with a the PPO, not ADP or the insurer.

(Complaint at ¶¶ 113(j), (k) and (l).) (Emphasis added.)

These statements are simply and clearly contradicted by Exhibit "1" of plaintiff's Complaint. No "Summary Benefit Form" is attached to LaRusso's Complaint. However, the explanation of reimbursement attached as Exhibit "1" to the Complaint contains absolutely no statement that any amount is an "amount owed." The language simply is not in the very document plaintiff attaches to the Complaint, and on which he relies. On the contrary, the attached form notes a "Recommend Payment." Also, there is absolutely no reference to the underlying claimant's deductible, let alone any indication that the deductible was "falsely decreased." There is also no indication that Nationwide and ADP claimed any entitlement to a false Beech Street discount. On the contrary, the attached Exhibit "1" to the Complaint merely notes, at the bottom of the form page, that ADP has a copyright. It does note that the charges presented exceeded "the Beech Street fee amount." (See Exhibit "1" to plaintiff's Complaint.) However, as stated herein throughout, plaintiff has failed to alleged that the "recommend payment" was less than the 80% admittedly permitted by the contract of insurance.

It is neither a defendant's nor a court's responsibility to **guess** just what a plaintiff claims a defendant did in support of any claims, let alone RICO claims. Here plaintiff LaRusso contradicts

16

his own factual allegations, and to the extent that the plaintiff alleges that any "predicate act" is based upon the EOB, such claims cannot support the RICO prerequisites to state a cause of action in this matter; and the RICO claims should be dismissed. He has failed to plead sufficient facts to satisfy RICO's "pattern of racketeering activity" requirement.

Neither Nationwide or the Court can identify facts to support allegations of two or more federal criminal offenses within a ten year time span. Indeed, times and dates are lacking from the allegations of the Complaint. Further, plaintiff fails to allege facts to demonstrate a continuing nature of criminal conduct. Even if one assumed misconduct in the payment to LaRusso, he has only plead facts regarding one charge and one payment. This is simply not enough, especially given that plaintiff has failed to plead or present facts to support any duty or rights owed to him. He has failed to establish even any contractual rights in any way. He failed to attach a contract, and the contract regarding the single patient referred to is with an insurer other than the named Defendant. Having failed to establish any duty or contractual rights, a Rule 12(b)(6) dismissal is appropriate. See Langford v. Rite Aid of Alabama, Inc., 231 F.3d 1303 (11th Cir. 2000). Wherefore, Count III should be dismissed in its entirety, and with prejudice.

**G.    Plaintiff Fails to State A Claim for Violation of Section 627.736, Florida Statutes.**

The only cause of action available under § 627.736 is a 10% penalty for late payments as defined. Again, there was no contractual obligation on or duty by the named defendant, as it is not the insurer of the underlying PIP claimant/patient identified by the LaRusso.

By way of further response, presently before the Honorable Circuit Court of the 11th Circuit in and for Dade County is the matter of Magnetic Imaging Systems I, Ltd., vs. Nationwide Mutual Fire Insurance Company, Case No. 95-10189 CA (11). The plaintiff in said matter has brought similar claims, that is, for payment of claims and interest penalties under Florida Statutes section

17

627.736; and the instant plaintiff, LaRusso could be a class member in the <u>Magnetic</u> matter.

By way of further argument, the "rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action." <u>Department of Agriculture and Consumer Servs. v. Mid-Florida Growers, Inc.</u>, 570 So. 2d 892, 901 (Fla. 1990). As the Supreme Court explained in Mid-Florida Growers:

> The rule against splitting causes of action is predicated on the following basic policy considerations: (1) finality in court cases promotes stability in the law; (2) multiple lawsuits arising out of a single incident are costly to litigants and an inefficient use of judicial resources; and (3) multiple lawsuits cause substantial delay in the final resolution of disputes.

<u>Id</u>. (citations omitted); <u>see</u> <u>Alvarez v. Nestor Salesco, Inc.</u>, 695 So. 2d 941, 942 (Fla. 4th DCA 1997) (quoting <u>Gaynon v. Statum</u>, 151 Fla. 793, 10 So. 2d 432, 433 (1942)).

> These rationales for the rule derive from two Latin maxims: "<u>interest rei publicae ut sit finis lituum</u>," ("It concerns the state that there be an end of lawsuits") and "<u>nemo debet bis vexari pro una et eadam causa</u>" ("No one should be twice harassed for the same cause"). U.S. Gypsum Co. v. Columbia Cas. Co., 124 Fla. 633, 169 So. 532, 539 (1936) (Ellis, J., dissenting) overruled in part by Strazzulla v. Hendrick, 177 So. 2d 1 (Fla. 1965); BLACK'S LAW DICTIONARY 814, 1037 (6th ed. 1990) .

<u>Tucker v. Palm Beach Nightclub Enterprises, Inc.</u>, 743 So.2d 108, 110, n.3 (Fla. 4th DCA 1999).

In the <u>Magnetic Imaging</u> matter Nationwide has already litigated the Florida statute raised in this matter. To the extent that they could have been addressed in the <u>Magnetic Imaging</u> matter, they should have; however, they were not, and plaintiff in this action is barred from raising the matter. Wherefore, Count V of plaintiff's Complaint should be dismissed in its entirety.

## IV.    CONCLUSION

Based on the foregoing arguments, Nationwide respectfully requests that the Court compel arbitration of this dispute. Alternatively Nationwide seeks dismissal of the claims based on the arguments above.

Respectfully submitted,

FOWLER WHITE BOGGS AND BANKER, P.A.
Post Office Box 1438
Tampa, Florida  33601
813/228-7411
813/229-8313 (telecopier)
Trial Counsel for Defendant

_Katherine C. Lake_
W. Donald Cox, FBN 096535
Katherine C. Lake, FBN 066941


     and

James C. Haggerty
Swartz, Campbell & Detweiler
1601 Market Street, 34th Floor
Philadelphia, PA 19103
215/564-5190
215/299-4301 (telecopier)

## CERTIFICATE OF SERVICE

    I hereby certify that I have caused a copy of the foregoing to be served by U.S. Mail this 24th day of October,  2001, to the persons on the attached service list.

_Katherine C. Lake_
Attorney

KCL\NATIONWIDE\LARUSSO\PLD\DISMISS2-MEM

19

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 10/18/01)

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Eric Lee, Esq.
lee@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@gpandg.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 1611
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS,et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 Facsimile

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Nationwide**

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lola M. Swaby, Esq.
lswaby@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Jeffrey M. Klein, Esq.
Jklein@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS
& ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

**Counsel for Prudential**