IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**CASE NO. 00-6061-CIV-FERGUSON/SNOW (Consolidated)**
**Referred to Magistrate Judge Snow**

THE CHIROPRACTIC CENTRE, INC., )
On behalf of itself and all others )
similarly situated, )
                              )
    Plaintiff, )
                              )
v. )
                              )
SUPERIOR INSURANCE COMPANY, )
                              )
    Defendant. )
_____ )

**NIGHT BOX
FILED**

OCT 3 1 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## MEMORANDUM OF LAW IN SUPPORT OF SUPERIOR'S MOTION TO DISMISS

Defendant, Superior Insurance Company ("Superior"), by and through its undersigned counsel, pursuant to Local Rule 7.1(C), submits the following memorandum of law in support of its Motion to Dismiss, and states as follows:

**I.**     **THE COURT LACKS JURISDICTION TO HEAR THIS CASE BECAUSE PLAINTIFF HAS IMPROPERLY COMBINED A MERITLESS FEDERAL RICO COUNT WITH ITS STATE LAW CLAIMS**

    **A.**     **The RICO Allegations Are The Only Basis Alleged For Federal Jurisdiction**

Paragraph 4 of the Complaint makes clear that the alleged basis of jurisdiction in this case derives from the federal issues raised under the RICO count. There are no allegations of diversity of citizenship or federal issues other than RICO. Dismissal of the RICO count requires a dismissal of the entire complaint for lack of subject matter jurisdiction. See *Hardy v. Birmingham Board of Education*, 954 F.2d 1546 (11th Cir. 1992)





(holding that it was error to exercise pendant jurisdiction of state law claims where federal law issues were dismissed before trial.)

**B.    The Complaint Fails to State a Cause of Action for Civil RICO**

Four elements of an action for civil RICO liability are (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity. *See Langford v. Rite Aid of Alabama, Inc.*, 231 F. 3d 1308 (11th Cir. 2000). The pattern that must be proved is two "predicate acts" of racketeering activity within a ten year period. *Id*. Racketeering activity is defined as including any act indictable under a list of criminal offenses among which Federal mail and wire fraud are included. *Langford*, 231 F. 3d at 1312 *citing 18 U.S.C. § 1961(5)*. To properly plead civil RICO, a party must allege the acts of racketeering with enough specificity to show that there is probable cause the crimes were committed. That determination is only possible if the factual basis of the predicate acts is set out with specificity. *Banco de Desarrollo Agropecuario, S.A. v. Gibbs*, 640 F. Supp. 1168 (S.D. Fla. 1986). Because of the potential for abuse, RICO allegations are subjected to extra scrutiny. *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001); *Bill Buck Chevrolet v. GTE Florida, Inc.*, 54 F.Supp.2d 1147 (M.D. Fla. 1999).

**1)    The Complaint Does Not Adequately Plead Mail Fraud**

With respect to mail fraud, Plaintiffs allege that the mailing of Explanationof Benefit forms ("EOBs") by Superior, identifying discounts taken by Superior from the amounts charged by medical providers, amounted to mail fraud. Mail fraud occurs when a person (1) intentionally participates in a scheme to defraud another out of money or property, and (2) uses the mail in furtherance of that scheme. *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir.

2001), *citing Pelletier v. Zweifel*, 921 F. 2d 1465 (11th Cir. 1991). Mail fraud generally requires an intent to defraud, meaning that the perpetrator of a scheme must anticipate reliance by the intended victim on misrepresentations by the tortfeasor committing mail fraud. *Pelletier*, 1921 F. 2d at 1499. While generally in criminal prosecutions for mail fraud actual reliance or injury is not required, private plaintiffs must show that they were injured as a proximate result of the violation. *Byrne*, 261 F.3d at 1110. Essentially, this means that a plaintiff must have been the target of the scheme to defraud and relied to its detriment on the misrepresentations made in furtherance of the scheme. *Id.* In the Eleventh Circuit, recoverable damages must be caused directly by a predicate act (*i.e.*, by reliance upon misrepresentations) rather than by the indirect effect of the predicate act. *Id.*

>           a.    **The EOBs Do Not Show That Superior Made Misrepresentations That Were Intended to Induce Reliance on the Part of Plaintiffs.**

In the present case, the EOBs do not form a sufficient basis for the mail fraud alleged in the complaint. To show intentional participation in a scheme to defraud, a plaintiff must show that there were misrepresentations "intended and reasonably calculated to deceive persons of ordinary prudence and comprehension." *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998). As recognized by this Court in its September 28, 2001 Omnibus Order, the kind of allegations asserted here do not establish any false statements. Plaintiff also must be able to prove a reasonable person would have relied upon the misrepresentations. *Beck*, 162 F.3d at 1095 citing *United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir. 1996). The EOBs at issue neither contain misrepresentations

nor are they reasonably calculated to deceive the recipients. This is evident on the face of the attachments to the Complaint. The EOB attached to the Complaint, clearly identifies the basis upon which Superior submitted payment for less than the total amount billed, namely the Sun Health contract with Plaintiffs. The EOB contains separate columns that specifically identify the amounts that Plaintiffs billed, the amounts of the contractual reduction, and the amount allowed. (See Complaint Exhibit 1.) This does not misrepresent anything. To the contrary, Superior explained the reduction and identified the basis for it. The EOB shows that Superior dealt openly and honestly with the class representative Plaintiff. Plaintiffs (as parties to this contract with Sun Health) would have had an opportunity to review the contract to determine the accuracy of Superior's interpretation of the contractual rights. Therefore, Superior did not engage in misrepresentations intended to deceive Plaintiffs, regardless of whether Superior was in fact entitled to the PPO discount.

Generally, fraud requires misrepresentation of fact, as distinguished from opinion. See *Baker v. United States Automobile Assoc.,* 661 So.2d 128 (Fla. 1st DCA 1995), *citing Thor Bear, Inc. v. Crocker Mizner Park, Inc.,* 648 So.2d 168 (Fla. 4th DCA 1994). The EOB statements regarding the Sun Health PPO discount are not factual statements because there is no specific reference to language claimed to exist in the Sun Health contract, nor is there an allegation that the statements refer to non-existent documents. Therefore, the EOB statement that the payment was reduced per the Sun Health contract is merely an interpretation of the contract or statement of opinion rather than a statement of fact. Superior's simple identification of its belief that the Sun Health contract supported its actions in paying reduced bills could not have been reasonably calculated to deceive.

-4-

### b.    The EOBs Did Not and Could Not Induce Detrimental Reliance by Plaintiffs

Plaintiffs' Complaint fails to allege reliance on the EOBs or specify the loss proximately caused. Plaintiffs do not state how Plaintiffs were injured as a proximate result of relying upon the alleged misstatements of Superior. While there is a general allegation of proximate cause, the Complaint does not allege with <u>any</u> specificity how Plaintiffs were injured as a result of the alleged mail fraud. Plaintiffs' Complaint fails to allege any detrimental reliance on the allegedly fraudulent EOBs. Plaintiffs do not allege that they released their rights to recover payments based upon the statements. In fact, Plaintiffs are seeking recovery of the reductions in other counts of the Complaint, verifying that Plaintiffs have not taken any detrimental actions in reliance upon the EOB statements that Superior is entitled to the reduced rates.

The Complaint, ¶ 111(h), also alleges damage to claimants because the EOBs "falsely decreased a claimants deductible" exposing claimants to further liability. However, Plaintiffs cannot seek recovery for fraud aimed at another. *Pelletier v. Zweifel*, 921 F.2d 1465,1499 (11th Cir. 1991).

### c.    The Fraud Allegations Lack Specificity

In a case with similar allegations brought under the Michigan no-fault statute, the Sixth Circuit rejected RICO allegations against insurers using review companies to determine reasonable medical fees required to be paid under the statute. *Advocacy Organization for Patients and Providers v. Auto Club Insurance Association*, 176 F.3d 315 (6th Cir. 1999). The allegations were that statements about the use of review companies to discount bills were misrepresentations because the insurers claimed the fees paid were

reasonable.   Michigan law only entitled the medical providers to receive reasonable amounts.   The court held that plaintiff's allegations that discounts were taken to reduce reasonable fees  were legal conclusions without facts to show reasonableness.  As a result, the Complaint did not sufficiently plead mail fraud as a predicate act.  *Id.*   Similarly, in the present case, Plaintiffs' blanket allegations regarding Superior having no contractual right to reduced rates are legal conclusions containing insufficient facts to establish fraud as a predicate act.

Because of the potential for abuse, RICO allegations are subjected to extra scrutiny. *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001).  In *Byrne*, the Eleventh Circuit Court of Appeals affirmed a dismissal of RICO claims where the plaintiff tried to turn a simple medical malpractice case into a RICO action by alleging various acts of mail and wire fraud.   Defendants allegedly used experimental medical treatments without consent or disclosure that the methods were not approved. *Byrne*, 261 F.3d at 1088. Plaintiff in that case alleged that the defendants engaged in fraudulent billing by incorrectly identifying the number and specific type of medical personnel providing services, and by submitting forms to insurance companies that incorrectly notated patients that had pre-paid. *Byrne*, 261 F.3d at 1108-15.   The court  noted that the fraudulent billing allegations did not specify how the plaintiff was injured by the alleged deception.  *Id.*  Similarly, Plaintiffs' Complaint fails to specify how Plaintiffs were injured by the allegedly false EOBs.  Plaintiffs use of RICO allegations have improperly turned this ordinary contract dispute into a strained contention of fraud.

### 2)    The Complaint Does Not Adequately Plead Wire Fraud

The elements of wire fraud are the same as mail fraud except for the use of the wires rather than mail. *Pelletier,* 921 F.2d at 1498.  Plaintiffs' wire fraud allegations are much less specific than the mail fraud allegations and should be subject to dismissal for lack of specificity. Federal Rule of Civil Procedure 9(b) requires fraud pleadings  to be made with particularity.  Plaintiffs must allege: 1) the precise statements, documents or misrepresentations made; 2) the time, place, and person responsible for the statement; 3) the content and manner in which the statements mislead the Plaintiff(s); and 4) what the defendants gained by the alleged fraud.  *In Re: Managed Care Litigation*, 135 F.Supp.2d 1253 (S.D. 2001), citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.* 116 F.3d 1364 (11th Cir. 1997).  In the present case, there are no allegations of the substance of the misrepresentations made by use of the wires.   Also, there are no allegations of the time of such misrepresentations, the person(s) to whom the representations were made, or the reliance of Plaintiffs upon misrepresentations.

Further, paragraph 131 alleges that "Superior knowingly induced NHRI, HCO and/or Sun Health to deprive TCCI and others similary situated of "honest services." The entities alleged to have been induced in this paragraph are not plaintiffs in this suit.  It is well settled that plaintiffs cannot sue on the basis of fraudulent inducement of others.   See *Pelletier*, 921 F.2d at 1499 (stating that plaintiff must have been a target of a scheme to defraud and relied to his detriment on misrepresentations made in furtherance of that scheme).

### 3)    Plaintiffs' Allegations Do Not Establish Extortion

Plaintiffs also allege violation of 18 U.S.C. § 1951(b)(2). This statute refers to extortion. Section 1951 prohibits the obstruction, delay, or affecting of commerce by robbery or extortion or the conspiracy or theat of physical violence in furtherance of a plan in violation of this section. *18 U.S.C. § 1951(a)*. Plaintiffs complaint alleges Superior violated the statute by threatening "the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy." *Complaint, ¶ 137.* However, the statute defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right." *18 U.S.C. § 1951(b)(2).* Plaintiffs have failed to allege that Superior obtained property, or that the property was obtained by inducing consent through wrongful threats.

The alleged property interests of (1) freedom from fraud, and (2) protecting patient privacy rights are simply not property as envisioned by the statute. While intangible rights have been held to be property, there is still an element of wealth that must be shown. See *United States v. Tropiano*, 418 F.2d 1069 (2nd Cir. 1969) (holding that [property] includes, in a broad sense, any valuable right considered as a source or element of wealth). Providing patients with privacy is an obligation, not property. Fulfilling a legal obligation to provide patients with privacy is not a source of wealth. Similarly, the alleged right to be free from fraud is in no way a property right or element of wealth. In order to violate this so called right, Plaintiffs must prove that a fraud occurred. Therefore, because fraud has already been alleged, this allegation is redundant. Superior could not be independently

liable for extortion based upon violating a right to be free from fraud without showing fraud.

While money could be property, the facts alleged indicate that no money was obtained by the alleged threats of economic loss. Plaintiffs never gave Superior any money. Neither did they part with any claim of entitlement to money. While the complaint adds a lot of inflammatory language about "schemes," Plaintiffs' allegations are simply that Superior paid less than the amount billed by the class representative Plaintiff and other medical providers. There are no allegations that the alleged underpayment caused Plaintiffs to consent to depart with any property or property interest. The possession of property never changed hands and Plaintiffs never signed any legal releases to any property.

In addition, Plaintiffs have not alleged facts showing that property was obtained with consent and induced by wrongful threats, Plaintiffs have failed to plead a cause of action for extortion. The victim's state of mind as induced by wrongful threats is an essential element to establish extortion. *Callanan v. U.S.*, 223 F.2d 171 (8th Cir. 1955), cert. denied, 350 U.S. 802. To show culpability, the following elements must be established: 1) whether the victim was fearful; 2) whether the fear was reasonable; and 3) whether the defendant made use of that fear. *Callanan*, 223 F.2d at 174. In the present case, the complaint does not establish that Plaintiffs were reasonably fearful or that Superior exploited that fear to obtain property. Plaintiffs simply make the conclusory allegation of fear of economic loss. However, there are no facts showing that the fear was reasonable or exploited by Superior. While Plaintiffs are likely to claim that they had a "fear" of not being paid the sums they billed, the simple fear of non-performance on a contract is not a fear of economic loss as contemplated in the extortion statute. See *In re Managed Care*

-9-

*Litigation*, 135 F.Supp.2d 1253 (S.D. Fla. 2001), citing *Robert Suris General Contractor Corp. v. New Metropolitan Federal Savings and Loan Ass'n*, 873 F.2d 1401,1405 ( "[A] successful extortion theory requires that "the fear of economic loss is separate and distinct from performance on the contract" and the claim cannot be maintained when the "only fear of economic loss is that which accompanies any party to a contract when he suspects that compliance and compensation may not be forthcoming."). Plaintiffs conclusory allegations of fear of economic loss clearly do not refer to anything more than allegations that they feared that payment of medical bills would not be forthcoming. Therefore, the Complaint fails to state a cause of action for Extortion.

### 4) The Complaint Does Not Plead A Violation of the Travel Act

Plaintiffs' third RICO allegation comes under 18 U.S.C. § 1952(a) which prohibits travel in interstate or foreign commerce or use of the mail or any facility in interstate or foreign commerce to: (1) distribute the proceeds of any unlawful activity; or (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry-on, or facilitate the promotion, and establishment, or carrying on, of any unlawful activity. The complaint alleges interstate travel in an attempt to commit mail fraud. See Complaint ¶143. However, mail fraud is not "unlawful activity" as defined in the statute. See 18 U.S.C. § 1952(b). Therefore, interstate travel in furtherance of mail fraud is not an independent grounds for liability, and cannot be a predicate act for RICO liability.

Further, the Complaint alleges interstate travel, but makes no specific allegations of what travel was made in furtherance of unlawful activity, what unlawful activity Superior engaged in, or how the interstate travel furthered this activity. Plaintiffs have not sufficiently pled a violation of this section. RICO claims are subjected to scrutiny because

-10-

of their potential for abuse by civil litigants. *Bill Buck Chevrolet, Inc. v. GTE Florida, Inc.*, 54 F. Supp. 2d 1127 (M.D. Fla. 1999). At a minimum Plaintiffs should be required to specify what unlawful activity was accomplished through interstate travel.

### 5)    The Complaint Fails To State A Claim Under 18 U.S.C. § 1962

Plaintiffs also allege RICO liability based upon 18 U.S.C. § 1962. Complaint ¶¶ 147-170. Subsection (d) addresses a conspiracy to violate subsection (a), (b), or (c). The common thread of all the subsections is that each applies to a pattern of racketeering activity. As already discussed, Plaintiffs' allegations of mail fraud, wire fraud and extortion are insufficient. There are no additional allegations of predicate crimes which could establish racketeering, let alone a pattern of racketeering. Therefore, the Complaint fails to state a cause of action under section 1962.

## II.    THE COMPLAINT INAPPROPRIATELY PLEADS RICO AS A CLASS ACTION

Plaintiffs' RICO allegations are premised on allegations of mail fraud, wire fraud, and extortion. Because reliance upon misrepresentations is an element of mail fraud, Plaintiffs' allegations of mail and wire fraud will require individualized showings of misrepresentation, reliance, injury, and damages. Because of this need for individual determinations, RICO allegations based on fraud have been held to be inappropriate as class actions. See *Andrews v. AT&T*, 95 F.3d 1014 (11 Cir. 1996); *Gibbs Properties Corp v. Cigna Corp.*, 196 F.R.D. 430 (M.D. Fla. 2000). Individual questions of law or fact will predominate over common issues. Therefore, the present lawsuit is improperly plead as a class action and should be dismissed.

III.    **PLAINTIFFS' COMPLAINT FAILS TO STATE A CAUSE OF ACTION UNDER THE PIP STATUTE**

Plaintiffs' Complaint incorrectly alleges that Florida Statutes § 627.736(10) is the exclusive method for an insurer to make payment of medical benefits at a preferred provider rate. Section 726.736(10) provides:

> An insurer may negotiate and enter into contracts with licensed healthcare providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include healthcare providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of the subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, they must also offer a non-preferred provider policy. The insurer shall provide each policyholder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

*Florida Statutes § 627.736(10)*

A.    **Florida Statutes Section 627.736(10) Does Not Prohibit Insurers From Paying Medical Benefits Based Upon Preferred Provider Rates**

This section does not address the relationship between medical providers and insurers. The statute governs the relationship between insurers and insureds when an insurer offers a "preferred provider" policy of insurance. Specifically, the statute provides

-12-

options to <u>insureds</u> when an insurance company offers incentives to use preferred providers.

Plaintiffs' Complaint asserts that a so-called "silent PPO" violates the statute. It does not. There is nothing in the statute prohibiting valid preferred provider agreements from being enforced. Nothing in the statute prohibits cost containment measures from being enforced outside the statutory scheme. *See Mitzan v. Med View Services, Inc.*, 1999 Mass. Super. LEXIS 279 (Mass. 1999). The *Mitzan* court dealt with a similar argument regarding "silent PPO" allegations in conjunction with the Massachusetts no-fault statute. The court stated "the absence of express authorization in the statute for cost containment programs does not lead inevitably to the conclusion that the use of such programs violates the statute." *Mitzan* at p.30. The Massachusetts statute provided PIP benefits for similar purposes as the Florida statute.

In Florida, the PIP statute goes beyond silence and expressly permits cost containment agreements as shown in the first sentence of subsection (10). The word "may" is used to express that insurers are permitted to enter into contracts with healthcare providers. The word "may" generally is permissive and does not make a statute exclusive. *Joshua v. City of Gainesville*, 768 So. 2d 432 (Fla. 2000); *In Re: TACP,* 609 So. 2d 588 (Fla. 1992). Looking further at the language, the latter sentences of subsection (10) clearly show that the statute regulates the insured – insurer relationship and <u>not</u> the insurer – medical provider or insured – medical provider relationships.

Viewing the statute in light of the concerns raised in *Mitzan* is helpful. In *Mitzan*, none of the defendants steered the insureds to preferred providers, but rather applied

-13-

retroactive discounts in cases where the insureds chose preferred providers. *Mitzan*, 1999 Mass. Super. LEXIS 279 at pg. 30. The court stated that:

> [N]either Medview, Concentra and IntraCorp or the automobile insurers in any way restricted PIP insureds' choice of provider or course of medical treatment or even attempted to influence it through steerage to certain providers; rather, they applied discounts retroactively in cases where PIP insureds fortuitously chose to seek treatment from the chiropractors.

The preceding quote shows that the *Mitzan* court rejected the precise interpretation of the law raised by Plaintiffs' Complaint, namely that the PIP statute prevents an insurer from being entitled to contractual preferred rates where an insured on his/her own choose a preferred provider but did not purchase a preferred provider insurance policy.

The *Mitzan* court also discussed the issue of preferred provider policies. The court noted that endorsements offering lower premiums in exchange for restrictive provider options was not prohibited as it would not interfere with an insured's choice of medical provider because the insured was given an option at the outset of the policy. *Mitzan* at pg. 31.

The Florida PIP statute addresses both issues as well. First, insureds cannot be steered to preferred providers because the statute prevents insurance companies from forcing insureds to use preferred providers. Secondly, the PIP statute does not interfere with choice. The Florida statute has codified the concerns of choice raised by the Massachusetts Court in *Mitzan*. Specifically, the statute regulates the insured–insurer relationship, by preventing the insurer from offering only preferred provider policies. The statue accomplishes that goal by requiring the insurer to give a choice to the insured at the outset of the policy.

-14-

The intended class to be protected by the statute (i.e. insureds) are well protected. Nothing about an insured's voluntary decision to seek treatment from preferred providers alters these protections. Indeed, the rate reductions by contract outside the realm of section 627.736(10), do not inhibit the insured's freedom of choice nor the statutory protections against steerage.

A preferred provider agreement cannot by itself violate § 627.736(10). An insurer is not required by statute to have preferred provider policies. The statute only says that, if an insurer does offer the preferred provider policy, a second option of non-preferred provider policies must be offered also. *See May v. Allstate Insurance Co.*, Case No. 00-6269-CIV-DIMITROULEAS (S.D. Fla. April 13, 2000)(unpublished order)(attached as Exhibit "A"). The statute does not prohibit preferred rates for insurers by contract beyond the statutory plan.

Additionally, enforcement of preferred provider contracts is consistent with the purpose of the PIP statute. The purpose of the PIP statute is to benefit the insured motorist and not medical providers. *See Florida Statutes § 627.731.* That section of the statute provides that:

> The purpose of ss. 627.730-627.7405 is to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits, for motor vehicles required to be registered in this state and, with respect to motor vehicle accidents, a limitation on the right to claim damages for pain, suffering, mental anguish, and inconvenience.

Nowhere in this section does the Legislature indicate that financial well being of medical providers is a purpose of the statute.

**B.    The PIP Statute Does Not Provide A Private Cause Of Action In Favor Of Medical Providers**

Legislative intent is the primary factor in determining whether a cause of action exists where a statute does not expressly provide for one. *Murthy v. N. Sinha Corp.*, 644 So.2d 983 (Fla. 1994). There are three factors for determining whether the legislature intended a statute to benefit a party: 1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; 2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; and 3) whether judicial implication is consistent with the underlying purposes of the legislative scheme. *Fisher v. Metcalf*, 542 So.2d 785 (Fla. 3rd DCA 1989). Medical providers are not in the class of persons for whose special benefit the statute was enacted. *May v. Allstate Insurance Co.*, Case No. 00-6269-CIV-DIMITROULEAS (S.D. Fla. April 13, 2000)(unpublished order)(attached as Exhibit "A"); But see *Shebovsky d/b/a South Orange Chiropractic Center v. Peachtree Casualty Insurance Company*, 8 Fla.L.Weekly Sup. 246 (Fla. 9th Jud. Ct. 2000).

We believe *Shebovsky* to be wrongly decided. *Shebovsky* has construed the PIP statute in favor of medical providers. That construction will harm the insured because the insured's 20% share of the bill will increase in order to pay the medical providers beyond the discounted rates. Therefore, the *Shebovsky* decision suggests a statutory interpretation favoring the medical provider at the insured's expense.

-16-

IV.    **PLAINTIFFS' ARE NOT ENTITLED TO BRING A CLAIM FOR UNJUST ENRICHMENT BECAUSE THEY HAVE NOT SHOWN THAT THEIR LEGAL REMEDY IS INADEQUATE**

An unjust enrichment theory is equitable in nature, and not available where there is an adequate legal remedy. *Gary v. D. Agustini & Asociados, S.A.*, 865 F.Supp. 818 (S.D. Fla. 1994)(applying Florida Law). Where the face of a complaint shows that legal remedies may exist, equitable remedies are not available. *H.L. McNorton v. Pan Am. Bank of Orlando*, 387 So.2d 393 (Fla. 5th DCA 1980). Plaintiffs have not shown that their legal remedies are inadequate. Therefore, the equitable remedy of unjust enrichment is not proper in this case.

The elements of a cause of action for unjust enrichment are: (1) that plaintiff has conferred a benefit on defendant, who has knowledge thereof; (2) Defendant voluntarily accepts and retains benefit conferred; and (3) circumstances are such that it would be inequitable for defendant to retain the benefit without paying the value thereof to plaintiff. *Hillman Construction Corp. v. Winer*, 636 So. 2d 576 (Fla. 4th DCA 1996); *Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So. 2d 710 (Fla. 2d DCA 1988). Plaintiffs allege that a benefit was conferred indirectly to Superior by way of the rendering of services to Superior's insureds. Complaint ¶ 90. A cause of action for unjust enrichment requires a direct benefit to be conferred. See *Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998). Because the Complaint does not allege a direct benefit, it fails to state a cause of action for unjust enrichment.

## V.    NO ASSIGNMENT OF BENEFITS IS ALLEGED OR ATTACHED

Without an assignment of benefits from Superior's insureds, TCCI lacks standing to bring this suit because TCCI is not the real party in interest. See *Oglesby v. State Farm Mutual Auto Insurance Co.*, 781 So.2d 469 (Fla. 5th DCA 2001); *State Farm Mutual Auto Insurance Co. v. Ray*, 556 So.2d 811 (Fla. 5th DCA 1990). The Complaint fails to allege or attach an assignment of benefits on behalf of TCCI or any other members of the proposed class.

WHEREFORE, Superior Insurance Company respectfully requests this Court enter an order dismissing Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and grant all further relief this Court deems just and proper.

BUTLER BURNETTE PAPPAS LLP

ALAN J. NISBERG, ESQ.
Florida Bar No.: 0961639
Bayport Plaza, Suite 1100
6200 Courtney Campbell Causeway
Tampa, Florida  33607-5946
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
Attorneys for Defendant
Superior Insurance Company

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished by U. S. Mail on October 29, 2001, to all counsel listed on the attached service list.

Alan J. Nisberg, Esq.

-18-

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 10/26/01)

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Eric Lee, Esq.
lee@atlaslaw.com
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
Suite 1700
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
Suite 200
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK &
CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS,et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL  32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Jeffrey M. Klein, Esq.
Jklein@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6269-CIV-DIMITROULEAS

DRS. MARTIN MAY, ALAN LAZAR,
MARTIN HALE, JOEL RUSH, PAUL ZIDEL,
RICHARD LINN, RICHARD BERKOWITZ,
DOUGLAS STRINGHAM, ANDREW
ELLOWITZ, ALAN NOVICK, DEBRA WEISS,
and NEIL SCHECHTER,

      Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,

      Defendant.

_____/

## ORDER ON MOTION TO REMAND
## AND MOTION TO DISMISS

    THIS CAUSE is before the Court upon Plaintiffs', Drs. Martin May, Alan Lazar, Martin

Hale, Joel Rush, Paul Zidel, Richard Linn, Richard Berkowitz, Douglas Stringham, Andrew

Ellowitz, Alan Novick, Debra Weiss and Neil Schechter Motion for Remand, filed herein on

March 14, 2000 and Defendant, Allstate Insurance Company's Motion to Dismiss, filed herein

on March 1, 2000. The Court has carefully reviewed the motions and is otherwise fully advised

in the premises.

## I. BACKGROUND

    Plaintiffs are doctors, who practice under the names "Park Place Therapeutic Center" and

"Park Place Orthopaedics & Rehabilitation." As this entity, they submit claims to Allstate for

payment on behalf of persons insured by Allstate for personal injury protection benefits, and

receive payments from Allstate.

1



Defendant, Allstate, sells automobile insurance policies in Florida which contain personal injury protection, pursuant to Florida law. Under the PIP coverage, Allstate agrees to pay 80% of reasonable charges for necessary medical treatment provided to covered insured who suffer injury in an automobile accident. Plaintiffs claim that the amount that they have received, pursuant to bills they have sent to Defendant, of work they have done on Defendant's insureds, is "substantially less than [Allstate] is statutorily and contractually obligated to pay."

On January 21, 2000, Plaintiffs filed a two Count Complaint in the Circuit Court, Seventeenth Judicial Circuit, in and for Broward County, Florida. The action was timely removed. The Complaint is for: 1) Declaratory Relief; and 2) Breach of Contract.

Plaintiffs seek remand to State Court, arguing that the amount of PIP benefits paid to Plaintiffs pursuant to illegally obtained discounts by Defendant, compared to the amounts that should have been paid, can not be determined with certainty. They could potentially exceed or fall below the necessary jurisdictional amount, and therefore Defendants cannot provide, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional requirement. Defendant counters this argument by stating that Plaintiffs are engaged together in the practice of medicine, submit the claims together, and receive payments together. Defendant submits the Explanation of Medical Bill Payments and Health Insurance Claim Forms as evidence that Plaintiffs are engaged in a united practice of medicine.

Defendant next moves to dismiss this action. It argues that Plaintiffs do not allege that Allstate offers "preferred provider" PIP coverage under the policy. The insured are entitled to choose the health care provider they want, on their own. Plaintiffs claim that Defendant pays PIP claims for medical benefits at 80% of "preferred provider" rates. Defendant argues that it is not required to offer a "preferred provider" policy to its insured and therefore, has not failed to pay

2

PIP benefits as required by § 627.736, Florida Statutes. Defendant also argues that the Complaint does not establish that it breached an obligation under the PIP coverage or § 627.736(10), Florida Statutes, by paying medical benefits at a "reasonable" rate, if it is less than what Plaintiffs request. Defendant's last argument is that there is no private cause of action permitted for violations of § 627.736(10). In sum, Defendant claims Plaintiffs do not state a claim.

Plaintiffs, in their two page response, argue that they strongly disagree with Defendant's arguments in the dismissal motion, and aver that they do state a claim.

## II. DISCUSSION

### A. Remand

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (11th Cir. 1996). Federal Jurisdiction should be found, unless it appears within "a legal certainty that the claim is really for less than the jurisdictional amount." Id. at 1356. However, "[w]here a plaintiff has made an unspecified demand for damages, a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer. Id. at 1356-57; See Gafford v. General Electric Company, 997 F.2d 150, 160 (6th Cir. 1993).

Plaintiffs claim that the amount of controversy in this action can only be determined by calculating the amount of PIP benefits paid individually, to Plaintiffs. However, Plaintiffs are engaged together in the practice of medicine under two names, "Park Place Therapeutic Center" and "Park Place Orthopaedics & Rehabilitation." Plaintiffs submit forms to receive payment, and receive payment collectively. The Health Insurance Claim Forms, submitted by Defendant,

shows that the I.D. Number of Referring Physician contains the same tax number on each sheet.

Additionally, in the space marked "Physician's, Supplier's Billing Name...," Park Place

Therapeutic Center is noted on each form.  On the Explanation of Medical Bill Payment,

submitted by Defendant, in the space marked, "Treatment Rendered By," is the name Park Place

Therapeutic Center.  "[W]hen several plaintiffs unite to enforce a single title or right, in which

they have a common and undivided interest, it is enough if their interests collectively equal the

jurisdictional amount."  Troy Bank of Troy, Indiana v. G.A. Whitehead & Company, 222 U.S.

39, 40-41 (1911).  The aggregate amount of the reduction of payments clearly exceeds the

$75,000 threshold necessary to confer jurisdiction on this Court.

### B. Dismiss

It is long settled that a complaint should not be dismissed unless it appears beyond a

doubt that the plaintiff could prove no set of facts in support of his claim which would entitle

him to relief.  Conley v. Gibson, 355 U.S. 41 (1957).  The allegations of the claim must be taken

as true and must be read to include any theory on which the plaintiff may recover.  See Linder v.

Portocarrero, 963 F.2d 332, 334-336 (11th Cir.1992) (citing Robertson v. Johnston, 376 F.2d 43

(5th Cir.1967)).  There must be a showing that the plaintiff has no claim before granting a motion

to dismiss.  June Vernon and Delroy Vernon v. Medical Management Associates of Margate,

Inc., 912 F.Supp. 1549 (S.D.Fla. 1996).

Defendant's first argument is that the Complaint fails to allege a breach of contract or

violation of § 627.736.  Plaintiffs allege in their Complaint, that Allstate pays PIP claims for

medical benefits at 80% of "preferred provider" rates.  However, Plaintiffs fail to define

"preferred provider" rates, nor do they allege that such rates were not reasonable.  Plaintiffs

claim, then, that because Allstate does not provide an option to insureds to purchase a "preferred

4

provider" policy for PIP benefits, it breached its contracts of insurance with its insureds and violated § 627.736(10) by paying at those rates. Therefore, Plaintiffs' only allegation is that Allstate is paying certain health care providers reduced rates which those providers have agreed to accept for medical services covered under the Allstate PIP contracts.

Plaintiffs, in the Complaint, claim that Defendant's standard policy does not comply with § 627.736(1)(a), which necessitates a party to have personal injury protection of "[e]ighty percent of all reasonable expenses for necessary medical..." Plaintiffs claim that they provided medical treatment, and were paid less than what is statutorily and contractually obligated to pay. However, Plaintiff's claims are not based on this Florida Statute.

Plaintiffs also argue that Defendant refers to Plaintiffs actions as "preferred providers," and such designation is improper. § 627.736(10), Florida Statutes, states in pertinent part, "(10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as 'preferred providers,' which shall include health care providers...The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits..." Plaintiffs attached the insurance policy to the Complaint. The Court may consider the policy for purposes of a motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997); Smith Barney, Inc. v. Scanlon, 180 F.R.D. 444, 446 (S.D.Fla. 1998). Such consideration of a document attached to Plaintiff's complaint does not convert the motion to dismiss into a motion for summary judgment. Id. The policy does not contain the term "preferred providers," and Plaintiffs are not the parties the statute is meant to protect. Additionally, the statute does not state that Defendant must offer a "preferred providers" plan, but only regulates those parties that choose to do so.

5

Defendant argues that the statute was not enacted to benefit medical providers, and therefore, does not allow Plaintiffs to rely on it as their basis for damages. In <u>Fischer v. Metcalf</u>, the Third District Court of Appeals discussed three criteria[1] which are pertinent to whether the legislature intended a statute to benefit a party. They are, "1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; 2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; and 3) whether judicial implication is consistent with the underlying purposes of the legislative scheme." <u>Fischer v. Metcalf</u>, 543 So.2d 785, 788 (Fla. 3rd DCA 1989); <u>See</u> <u>Cort v. Ash</u>, 422 U.S. 66 (1975).

§ 627.736, Florida Statutes, was not enacted to benefit medical providers. Plaintiffs are not the class whose especial benefit the statute was enacted. The statute was enacted to protect insureds from harm as a result of accidents with other drivers, and actions by insurance companies. The statute was not enacted to ensure that medical providers received what they felt was a reasonable wage. The legislature did not imply, nor can it be inferred, that the medical providers were the parties the statute was enacted to protect. The Court cannot infer that the Legislature intended to protect the medical providers with the enactment of § 627.736. "Legislative intent, rather than duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." <u>Murthy v. N. Sinha Corp.</u>, 644 So.2d 983, 985 (Fla. 1994). Plaintiffs claim for relief based on Defendant's alleged violation of § 627.736, Florida, Statutes, does not allege a cause of action.

---

[1] Out of a four part test.

The remaining issue is whether Plaintiffs may sue Defendant for paying them what they do not deem to be reasonable rates, as preferred providers. However, the term preferred provider is not mentioned in the insurance policy and Defendant's actions do not resemble the statute's definition of the term preferred provider. Therefore, Plaintiffs claim is based on being intended third party beneficiaries to Defendant's insurance policies. Plaintiffs are not in direct contractual privity with Defendant. "[T]he term 'privity' is a word of art derived from the common law of contracts and used to describe the relationship with persons who are parties to a contract." Espinosa v. Sparber, et al., 612 So.2d 1378, 1380 (Fla. 1993). Usually only parties to a contract may collect on the contract. However, "an intended third party beneficiary of a contract may recover damages from the contracting parties if they breach the contract." Jacobson v. Heritage Quality Construction Co., Inc., 604 So.2d 17, 18 (Fla. 4th DCA 1992). "Essential to the right of a third party beneficiary of a contract to maintain an action for its breach is a clear intent and purpose of the contract to directly and substantially benefit the third party." Thompson v. Commerical Union Insurance Company of N.Y., 250 So.2d 259, 262 (Fla. 1971). The insurance policies between Defendant and the insureds are clear in their intent to directly and substantially benefit Plaintiffs[2]. Plaintiffs, in the present action, "must plead the contract which was expressly for (their) benefit and one under which it clearly appears that (they were) a beneficiary." Weimar v. Yacht Club Point Estates, Inc., 223 So.2d 100, 102 (Fla. 4th DCA 1969). Plaintiffs properly pled that they were intended third party beneficiaries to defeat the motion to dismiss.

### III. CONCLUSION

Plaintiffs did not, nor could they, properly plead a cause of action under § 627.736(1)(a)

---

[2] Although this benefit is not the main crux of the insurance policy.

7

and (10) as the basis of Defendant's liability. The statute does not delineate that there exists such

a cause of action exists, nor is the statute drafted to benefit medical providers. Plaintiffs do state

a cause of action for breach of contract, in that they are the intended third party beneficiaries to

the insurance policy, but not on the basis that they were improperly treated as preferred

providers.

Accordingly, it is

ORDERED AND ADJUDGED as follows:

1. Plaintiff's Motion to Remand is hereby DENIED;

2. Defendant's Motion to Dismiss is hereby GRANTED; in part. Motion to Dismiss

Count I is hereby Granted; Count I is dismissed with prejudice. Motion to Dismiss Count II is

hereby GRANTED; Count II dismissed without prejudice, with leave to amend in accordance

with this Order. An Amended Complaint shall be filed within then days of this Order.

DONE AND ORDERED in Chambers at Fort Lauderdale, Florida, this ⁄⁄ day of

April, 2000.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Peter Valeta, Esq.
Lawrence Kopelman, Esq.
David B. Shelton, Esq.

8