IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

DR. PAUL ZIDEL, on behalf of himself     CASE NO. 00-6061-CIV-FERGUSON/SNOW
and all others similarly situated,

      Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, and
COMMUNITY CARE NETWORK, INC.,
d/b/a CCN,

      Defendants.
_____/

SALVATORE LARUSSO D.C.       CASE NO. 01-8110-CIV-FERGUSON/SNOW
d/b/a FAMILY CHIROPRACTIC CENTER,
on behalf of himself and all others similarly situated,

      Plaintiff,

v.

FLORIDA FARM BUREAU CASUALTY
INSURANCE COMPANY,

      Defendant.
_____/

FILED by _____ D.C.

NOV 2 9 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## FLORIDA FARM BUREAU'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION DENYING MOTION TO COMPEL ARBITRATION

### INTRODUCTION

Pursuant to 28 U.S.C. Section 636(b)(1)(C) and Southern District of Florida Local Rule

4(a)(1), Defendant Florida Farm Bureau Casualty Insurance Company ("Florida Farm Bureau" or

"the Company") files these Objections to the Report and Recommendation of Magistrate Judge

Snow denying its Motion to Compel Arbitration. The Magistrate based her opinion on a finding

that the arbitration agreement in question was unenforceable under *Florida* law. But this finding is at odds with well established federal law holding that the Federal Arbitration Act pre-empts state laws restricting the enforceability of arbitration agreements. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1 (1984). Accordingly, the Magistrate's recommendation is contrary to law, and the Court should not adopt it.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. Section 636(b)(1)(C), this Court must undertake a *de novo* review of those portions of the Report and Recommendation ("Report") to which a party objects. *Lynch v. Silcox*, No. 01-8800-CIV, 2001 WL 1200656 (S.D. Fla. Oct. 4, 2001) at *2. Those portions of the Report not objected to are subject to review under a clear error standard. *Id.*

## BACKGROUND

This is a purported class action lawsuit in which the sole named Plaintiff, Dr. Salvatore Larusso ("Larusso"), attempts to plead violations of the federal Racketeering Influenced Corrupt Organizations (RICO) statute as well as a variety of state law causes of action against Florida Farm Bureau. The gist of the Complaint is Larusso's dissatisfaction with the amounts Florida Farm Bureau reimbursed him for providing medical treatment to the Company's policy holders who had been in car accidents.

Larusso's Complaint is based in large part on Florida Farm Bureau's standard automobile insurance policy with its insureds ("the Policy"). *See* Complaint at ¶¶ 7-11 (describing the requirements of Florida Farm Bureau's Policy with respect to reimbursing policy holders for reasonable and necessary medical expenses). Count II of the Complaint alleges that Larusso is a third-party beneficiary of the Policy and that Florida Farm Bureau has breached the Policy by not paying Larusso the required amounts for treatment of insureds. *Id.* at ¶¶ 93-100. The Complaint

also alleges that the transactions in this case affected interstate commerce. *Id.* at ¶¶ 104, 107, 116, 125, 132, 139, 154.

Our Motion to Compel Arbitration ("Motion") was based on a clause in the Policy requiring health care providers who accept an assignment of benefits from policy holders to arbitrate any claims against the Company involving medical expenses:

> If a provider of medical supplies or services has agreed to accept assignment of personal injury protection benefits:
>
> 1. Any claims dispute, involving medical expenses, between that provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code.

Policy at 15.[1] In his response to our Motion, Larusso did not contest the fact that he accepted an assignment of personal injury protection benefits under the Policy. We explained that because Larusso accepted an assignment of benefits, and because he alleged he was a third-party beneficiary of the Policy, he was bound by the arbitration clause in the Policy requiring him to arbitrate these claims.

## THE REPORT AND RECOMMENDATION

In her Report, the Magistrate found in accord with well settled Florida and federal law that (1) Larusso was a third-party beneficiary of the policy, and thus was subject to the requirements of the arbitration clause, and (2) Florida Farm Bureau had not waived its right to compel arbitration by filing a Motion to Dismiss the Complaint. We agree with those findings, and do not object to those portions of the Report.

---

[1] We attached a copy of Florida Farm Bureau's Policy in effect from 1993 through 1999 to our Motion, and for the Court's convenience we attach it here as Exhibit A. We did not attach the Policy in effect since 2000 to the Motion primarily because Larusso attached as his only exhibit to the Complaint a bill from 1997 allegedly showing the Company's improper payment policy. However, the current Policy (attached as Exhibit B to this memorandum) contains the same language. *See* Current Policy at 17. The Magistrate attached significance to the fact that the old Policy rather than the current one was attached to our Motion, but this distinction is irrelevant.

We object, however, to the Magistrate's conclusion that there was no valid agreement to arbitrate in this case. The Magistrate based that finding on the Florida Supreme Court's opinion in *Nationwide Mutual Fire Ins. Co. v. Pinnacle Medical, Inc.*, 753 So. 2d 55 (Fla. 2000). In *Pinnacle*, the Florida Supreme Court struck down Florida Statute §627.736(5) as violating the Florida Constitution. The statute did not specifically mandate arbitration, but required insurers such as Florida Farm Bureau to insert provisions in their insurance policies stating that health care providers who accepted an assignment of benefits had to arbitrate claims concerning benefits. Report at 4-5. The Magistrate, without any basis in Florida law to support her conclusion, found that *Pinnacle* went further than invalidating the statute, and also "struck down all statutorily-mandated arbitration clauses in PIP insurance contracts." Report at 7. She therefore held that the arbitration agreement in the Policy was not a valid agreement to arbitrate.

## OBJECTIONS

### I. Summary of the Argument

The Magistrate's Report is wrong because *Pinnacle* did not, and indeed ***could*** not under federal law, strike down a valid contractual agreement to arbitrate such as the one in this case. The United States Supreme Court has held that federal law preempts state laws that purport to restrict the enforceability of arbitration clauses in contracts affecting interstate commerce. *Southland Corp. v. Keating*, 465 U.S. 1 (1984).

### II. *Pinnacle* Did Not And Could Not Invalidate The Contractual Agreement To Arbitrate

#### A. The Magistrate Misinterpreted *Pinnacle*

We start with the proposition (which Larusso did not contest, and which the Magistrate found) that by accepting an assignment of benefits from policy holders, Larusso assumed the rights and obligations of the Policy, including the obligation to arbitrate these claims. The only

4

remaining question is whether the arbitration agreement in the Policy requiring health care providers who accepted an assignment of benefits to arbitrate is valid. The Magistrate said no, based on *Pinnacle.*

But the Magistrate misinterpreted *Pinnacle.* That case merely invalidated the state statute requiring insurers to insert the arbitration agreement into their policies. It did not hold that the resulting contractual agreements to arbitrate in the policies were themselves invalid. In making her finding, the Magistrate either overlooked or disregarded Florida case law stating that *Pinnacle* did not invalidate arbitration agreements such as the one at issue here.

For example, in *Livingston v. State Farm Mut. Automobile Ins. Co.*, 774 So. 2d 716 (Fla. 2d DCA 2000), the court found that *Pinnacle* did not address whether health care providers had contractually agreed to arbitrate when they accepted an assignment of benefits. The Magistrate's response to *Livingston* was that its language was *dicta* because the case was decided solely on the basis of the statute's validity. However, that doesn't change the fact that the *dicta* is right – Pinnacle did ***not*** address the issue of whether contractual agreements to arbitrate are valid even without the statute. And it does not change the fact that no other Florida court has contradicted the "dicta" in *Livingston.*

Furthermore, the Magistrate did not address the fact that two pre-*Pinnacle* decisions held that contractual arbitration agreements in insurance policies provided a basis ***separate and independent*** from the statute for courts to compel health care providers to arbitrate claims concerning medical bills. *Orion Ins. Co. v. Magnetic Imaging Sys., Inc.*, 696 So. 2d 475 (Fla. 3d DCA 1997); *Fortune Ins. Co. v. U.S.A. Diagnostics, Inc.*, 684 So. 2d 208 (Fla. 4th DCA 1996). In short, there is no basis in Florida law for the Magistrate's conclusion that *Pinnacle* invalidated arbitration clauses such as the one at issue here.

B. *The Federal Arbitration Act Preempts* <u>Pinnacle</u> *And Makes The Arbitration Clause Valid*

Contrary to the Magistrate's finding, ***federal*** law, not Florida law, governs the enforceability of the contractual arbitration agreement in the Policy. The Federal Arbitration Act, 9 U.S.C. Section 2 *et seq.* ("the FAA"), provides that a "written provision in any contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any ***contract***." 9 U.S.C. § 2 (emphasis added). As the United States Supreme Court has held, the FAA creates "a body of ***federal substantive law*** of arbitrability, applicable to ***any arbitration agreement*** within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (emphasis added). More specifically, the Supreme Court held that the FAA established "a liberal federal policy favoring arbitration agreements, ***not withstanding any state substantive or procedural policies to the contrary.***" *Id.* at 24 (emphasis added). *See also Southland*, 465 U.S. at 10-11; *.MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) (reversing District Court's order denying petition to compel arbitration because third-party beneficiary of contract had right to compel arbitration). As a matter of federal law, any doubts concerning the scope of arbitration or whether to require arbitration must be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25.[2]

---

[2] As a practical matter, a resort to Florida law reveals no different standard by which to judge the enforceability of the arbitration agreement here. Under Florida law, arbitration is a favored means of dispute resolution, and courts indulge every reasonable presumption to uphold arbitration agreements. *Roe v. Amica Mut. Ins. Co.*, 533 So. 2d 279 (Fla. 1988); *Sharpe v. Lytal & Reiter, Clark, Sharpe, Roca, Fountain, Williams*, 702 So. 2d 622 (Fla. 4th DCA 1997). Arbitration agreements should be given the broadest possible interpretation in order to accomplish the purpose of resolving controversies outside of the courts. *Ocwen Fin. Corp. v. Holman*, 769 So. 2d 481 (Fla. 4th DCA 2000). Any doubts concerning the scope of arbitration agreements should be resolved in favor of arbitration. *Berman v. Alamo Rent A Car, Inc.*, 717 So. 2d 165 (Fla. 4th DCA 1998).

6

The *only* limitations on the enforceability of arbitration provisions under the FAA are that the arbitration agreement (1) must be part of a written contract "evidencing a transaction involving commerce," and (2) may be invalidated on grounds that exist for revoking contracts *generally*, such as fraud in the inducement, or a contract of adhesion. *Southland*, 465 U.S. at 10-11. *The FAA is not subject to any other state law limitations. Id.* at 11.

Neither of the two exceptions is present here. First, Larusso himself alleges that the transactions in this case – payment of medical bills stemming from insurance policies – involve interstate commerce. Complaint at ¶¶ 104, 107, 116, 125, 132, 139, 154. Thus, the policy is a written contract "evidencing a transaction involving commerce." *See also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) (phrase "evidencing a transaction involving commerce" interpreted broadly to reach the limits of Congress' power under the Commerce Clause).

Second, Larusso has not alleged any defenses to the arbitration agreement applicable to contracts *generally*. All he alleges is that the arbitration agreement in the Policy is no longer valid under *Pinnacle* – a conclusion with which the Magistrate agreed. But both Larusso and the Magistrate are wrong, because federal law does not allow states to impose restrictions on the enforceability of contractual agreements to arbitrate. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1 (1984).

In *Southland*, the U.S. Supreme Court reversed a decision of the California Supreme Court that had invalidated arbitration agreements covering claims under the California Franchise Investment Law. The California high court had upheld the state law requiring such claims to be presented in a judicial forum, rather than through arbitration. But the U.S. Supreme Court held that Congress, in enacting the FAA, had "declared a national policy favoring arbitration and *withdrew the power of the states to require a judicial forum* for the resolution of claims which

the contracting parties agreed to resolve by arbitration." *Id.* at 10 (emphasis added). Thus, the FAA pre-empts the ability of states to "undercut the enforceability of arbitration agreements." *Id.* at 16. Any state law that purports to restrict the enforceability of arbitration agreements violates the Supremacy Clause of the U.S. Constitution, the Court held. *Id.* This holding includes judicial decisions as well as statutes. *See, e.g., Perry v. Thomas,* 482 U.S. 483 (1987).

Employing the same reasoning, federal courts have repeatedly and uniformly struck down state statutes purporting to restrict the enforceability of arbitration agreements and compelled arbitration under the FAA. *Allied-Bruce,* 513 U.S. at 272 (reaffirming *Southland*); *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681 (1997) (striking down Montana statute requiring arbitration clauses to be underlined and in capital letters because it violated the FAA and upholding arbitration agreement governed by the FAA); *S+L+H S, P.A., v. Miller-St. Nazianz, Inc.,* 988 F.2d 1518 (7th Cir. 1993) (invalidation of arbitration clause under state fair dealership law preempted by FAA); *Osterneck v. Merrill Lynch,* 841 F.2d 508 (3d Cir. 1988 (FAA preempted provision in Pennsylvania securities act precluding enforcement of arbitration clause covering claims arising under that state law); *Haluska v. RAF Fin. Corp.,* 875 F. Supp. 825, 829 (N.D. Ga. 1994) (FAA preempted provision in Georgia Minimum Wage Law requiring judicial forum for claims made under that law); *Securities Indus. Ass'n v. Lewis,* 751 F. Supp. 205 (S.D. Fla. 1990) (provision of Florida's Securities Investor Protection Act invalidating arbitration agreements that did not provide for an independent, nonindustry arbitration forum was preempted by the FAA).

As Judge Spellman explained in the *Lewis* opinion: "[t]he principles set forth in the above cited Supreme Court cases have been consistently applied to invalidate state statutes, regulations

and *case law* that threatened to interfere with the ability of contracting parties to freely enter into arbitration agreements." 751 F. Supp. at 207 (emphasis added).

Thus it is clear that even if *Pinnacle* purported to invalidate arbitration agreements otherwise enforceable under the FAA, such as the one in question here, it could not do so without running afoul of *Southland* and its progeny. The FAA quite simply would preempt any attempt by the Florida Supreme Court to invalidate contractual arbitration agreements such as the one in this case. Consequently, the ***most*** that *Pinnacle* could have validly done would have been to invalidate the state law mandating arbitration; *Pinnacle* could not legitimately invalidate any contractual arbitration provisions.

The Florida Supreme Court was free, as it did, to strike down a state statute ***requiring*** insurers to put arbitration provisions in insurance policies as violating the state constitution. But it was not free to go any further and invalidate arbitration agreements in the policy, regardless of whether the agreements were put there as a result of the statute. It is logical to presume, however, that the Florida Supreme Court was not attempting to invalidate the arbitration agreements. Had it meant to do so, it certainly could have said so directly. And the Florida Supreme Court certainly was aware of *Southland* and its progeny. Had it meant to invalidate arbitration agreements in insurance policies, the court would have had to try to explain why that decision did not violate *Southland* and the FAA. But the fact that *Pinnacle* doesn't even ***mention*** *Southland* is conclusive evidence that it was confining its holding to striking down the ***statute only***.

The only logical interpretation of *Pinnacle* under *Southland* is that Pinnacle invalidated §627.736(5) of the Florida Statutes, but not contractual agreements to arbitrate such as the one at issue here. Thus, the Court should not adopt the Magistrate's recommendation, which was based

solely on her conclusion that *Pinnacle* invalidated the arbitration agreement at issue, and should grant our motion to compel arbitration.

The Court should also disregard the Magistrate's conclusion that state law, rather than federal law, governs whether the arbitration agreement in this case is valid. *See* Report at 3 n.2. As the discussion immediately above makes clear, the FAA governs this decision. The Magistrate's reference to *Eassa Props. v. Shearson Lehman Bros., Inc.*, 851 F.2d 1301 (11th Cir. 1988) is misplaced. *Eassa* involved a challenge to an arbitration agreement on the grounds that the general partner of the partnership lacked the authority to sign the agreement in the first place. In other words, it involved the type of challenge to an arbitration agreement on grounds applicable to *any* contract anticipated in Section 2 of the FAA and *Southland*. Such a challenge is, of course, decided by resort to general state contract law, as the Eleventh Circuit found in *Eassa*. But that situation is distinct from the one here, where state law only purports to restrict the enforceability of the arbitration clause. State law does *not* govern in that instance:

> We agree, of course, that a party may assert general contract defenses such as fraud to avoid enforcement of an arbitration agreement. We conclude, however, that the defense to arbitration found in the California Franchise Investment Law is not a ground that exists in law or equity "for the revocation of *any* contract" but merely a ground that exists for revocation of arbitration provisions ... .

*Southland*, 465 U.S. at 16 n.11. Clearly, the FAA governs the resolution of this matter.

## CONCLUSION

The Magistrate's Report is contrary to law insofar as it finds that Florida law does not validate the agreement to arbitrate in this case. The Court should (1) adopt the Magistrate's finding that Larusso is a third-party beneficiary of the Policy, (2) adopt the Magistrate's finding that Florida Farm Bureau did not waive its right to arbitrate, and (3) **not** adopt the finding that

Florida law invalidates the agreement to arbitrate in this case.    The Court should compel arbitration as required by the FAA and grant our Motion.

Respectfully submitted,

HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
(305) 374-8500
(305) 789-7799 (fax)
Attorneys for the Defendant

By: _____
Gregory Baldwin
Florida Bar No. 527394
Robert K. Levenson
Florida Bar No. 0089771

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing memorandum was served by U.S. Mail on all counsel on the attached service list, this 29th day of November, 2001.

_____
HOLLAND & KNIGHT LLP

MIA1 #1093178 v2

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 11/29/01)

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Eric Lee, Esq.
lee@atlaslaw.com
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
Suite 1700
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Lawrence M. Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
Suite 200
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995
(941) 435-1269

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK &
CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue
Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
jmq@tewlaw.com
(305)539-2495
Thomas C. Tew, Esq.
tt@tewlaw.com
(305) 539-2106
Joseph A. DeMaria, Esq.
jad@tewlaw.com
(305) 539-2440
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL  32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934-Facsimile

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934-Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

BUTLER BURNETTE PAPPAS
Lauren D. Levy, Esq.
llevy@bbplaw.com
Alfred I. DuPont Building
169 East Flagler Street, Suite 1300
Miami, Florida 33131
(305) 416-9998
(305-416-6848-Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Jeffrey M. Klein, Esq.
Jklein@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

MIA1 #1090605 v1

# FLORIDA FARM BUREAU INSURANCE COMPANIES

## FLORIDA FARM BUREAU CASUALTY INSURANCE COMPANY
## FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY

### Post Office Box 147030, Gainesville, Florida 32614-7030

# Personal Auto Policy

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED IN THE DECLARATIONS OF YOUR POLICY.



THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE AND ENDORSE-
MENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

**EXHIBIT**

**A**

BJP8054(0)-X-E(Ed. 12-89)(Rev. 6-93)

FFB· 00027

# FLORIDA FARM BUREAU CASUALTY INSURANCE COMPANY
## (A STOCK INSURANCE COMPANY)
### OR
## FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY
### (A STOCK INSURANCE COMPANY)

---

## YOUR PERSONAL AUTO POLICY—QUICK REFERENCE

**DECLARATIONS PAGE**

Your Name and Address
Your Auto or Trailer

Policy Period
Coverages and Amounts of Insurance

| | Beginning On Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| PART A — LIABILITY COVERAGE | 1 |
| Insuring Agreement | |
| Supplementary Payments | |
| Exclusions | |
| Limit of Liability | |
| Out of State Coverage | |
| Financial Responsibility | |
| Other Insurance | |
| PART B — DIVISION I | 3 |
| MEDICAL PAYMENTS COVERAGE | |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| DIVISION II | 4 |
| MOTOR VEHICLE DEATH INDEMNITY | |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| PART C — UNINSURED MOTORISTS COVERAGE | 5 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| Arbitration | |

| | Beginning On Page |
|---|---|
| PART D — COVERAGE FOR DAMAGE TO YOUR AUTO | 7 |
| Insuring Agreement | |
| Transportation Expenses | |
| Exclusions | |
| Limit of Liability | |
| Payment of Loss | |
| No Benefit to Bailee | |
| Other Sources of Recovery | |
| Appraisal | |
| PART E — DUTIES AFTER AN ACCIDENT OR LOSS | 9 |
| PART F — GENERAL PROVISIONS | 9 |
| Bankruptcy | |
| Changes | |
| Fraud | |
| Legal Action Against Us | |
| Our Right to Recover Payment | |
| Policy Period and Territory | |
| Termination | |
| Transfer of Your Interest in This Policy | |
| Two or More Auto Policies | |
| Non-Joinder Clause | |
| ENDORSEMENTS | 12 |
| Personal Injury Protection | |

Copyright, Insurance Services Office, Inc., 1988

FFB-00028

# PERSONAL AUTO POLIC

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

   1. The "named insured" shown in the Declarations; and

   2. The spouse if a resident of the same household.

B. "We", "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

   1. Under a written agreement to that person; and

   2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

   1. Private passenger auto; or

   2. Pickup or van.

   It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

   1. Any vehicle shown in the Declarations.

   2. Any of the following types of vehicles on the date you become the owner:

      a. a private passenger auto; or

      b. a pickup or van that:

         (1) has a Gross Vehicle Weight of 11,000 lbs. or less; and

         (2) is not used for the delivery or transportation of goods and materials unless such use is:

            (a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

            (b) for farming or ranching.

      This provision (J.2.) applies only if:

      a. you acquire the vehicle during the policy period;

      b. you ask us to insure it within 30 days after you become the owner; and

      c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

      If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

      If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

   3. Any "trailer" you own.

   4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

      a. breakdown;          d. loss; or

      b. repair;             e. destruction.

      c. servicing;

      This provision (J.4.) does not apply to Coverage for Damage to Your Auto.

## PART A—LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage", except punitive damages, for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

   1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

1

FFB-00029

3. For "your covered au     any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

## SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

## EXCLUSIONS

A. We do not provide Liability Coverage for any person:

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that person.

3. For "property damage" to property:
   a. rented to;
   b. used by; or
   c. in the care of;
   that person.
   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the

a. sel
b. repairing;
c. servicing;
d. storing; or
e. parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

a. you;
b. any "family member"; or
c. any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

a. private passenger auto;
b. pickup or van that you own; or
c. "trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:
   a. is an insured under a nuclear energy liability policy; or
   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. American Nuclear Insurers;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

10. For "bodily injury" sustained by:
   a. you;
   b. your spouse;
   c. your children; or
   d. a member of your household if that person is related by blood, marriage, foster relationship, or adoption, or the person for whose use of the automobile the "insured" is legally responsible.

11. While any vehicle is being used or is in preparation for any prearranged or organized race, speed contest, tractor-pull, or similar sporting event.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than "your covered auto", which is:
   a. owned by you; or
   b. furnished or available for your regular use.

2

**3.** Any vehicle, other than "your covered auto", which is:

**a.** owned by any "family member"; or

**b.** furnished or available for the regular use of any "family member".

However, this exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

**a.** owned by a "family member"; or

**b.** furnished or available for the regular use of a "family member".

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the auto accident.

**B.** We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

**1.** A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

**2.** A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. However, we will provide primary insurance for a vehicle you do not own if the vehicle is leased by you under a written lease agreement and you have agreed to provide coverage for your operation of the vehicle.

---

## PART B—MEDICAL PAYMENTS COVERAGE

### DIVISION I

### INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

**1.** Caused by accident; and

**2.** Sustained by an "insured".

We will pay only those expenses incurred within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member":

**a.** while "occupying"; or

**b.** as a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a "trailer" of any type.

**2.** Any other person while "occupying" "your covered auto".

### EXCLUSIONS

We do not provide Medical Payments Coverage for any person for "bodily injury":

**1.** Sustained while "occupying" any motorized vehicle having fewer than four wheels.

**2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

**3.** Sustained while "occupying" any vehicle located for use as a residence or premises.

**4.** Occuring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

**5.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

**a.** owned by you; or

**b.** furnished or available for your regular use.

FFB-00031

**6.** Sustained while "occupying", or when struck by, any vehicle (other than your covered auto") which is:

    **a.** owned by any "family member"; or

    **b.** furnished or available for the regular use of any "family member".

However, this exclusion (6.) does not apply to you.

**7.** Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

**8.** Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

    **a.** private passenger auto;

    **b.** pickup or van that you own; or

    **c.** "trailer" used with a vehicle described in a. or b. above.

**9.** Caused by or as a consequence of:

    **a.** discharge of a nuclear weapon (even if accidental);

    **b.** war (declared or undeclared);

    **c.** civil war;

    **d.** insurrection; or

    **e.** rebellion or revolution.

**10.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    **a.** nuclear reaction;

    **b.** radiation; or

    **c.** radioactive contamination.

**11.** While any vehicle is being used or is in preparation for any prearranged or organized race, speed contest, tractor-pull, or similar sporting event.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

    **1.** "Insureds";

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations; or

    **4.** Vehicles involved in the accident.

**B.** Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Part A or Part C.

**C.** No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or Part C.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicab  nits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## DIVISION II

## MOTOR VEHICLE DEATH INDEMNITY COVERAGE

## INSURING AGREEMENT

**A.** We will pay $5,000 in the event of death of an "insured". The death must result directly and independently of all other causes from "bodily injury" caused by an auto accident.

**B.** "Insured" as used in this part means you and any "family member"

    **1.** while "occupying"; or

    **2.** as a pedestrian when struck by;

    a motor vehicle designed for use mainly on public roads or a "trailer" of any type; or

    **3.** while "occupying" a farm tractor or farm machinery while upon public roads.

## EXCLUSIONS

This insurance does not apply:

**1.** to death sustained in the course of employment by any person while engaged

    **a.** in duties incidental to the operation, loading or unloading of, or as an assistant on a public or livery conveyance; or

    **b.** in duties incidental to the repair or servicing of automobiles.

**2.** to suicide, sane or insane, or to attempt thereat;

**3.** to death due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incidental to any of the foregoing.

## LIMIT OF LIABILITY

**A.** The number of individuals covered for Death Indemnity Coverage shall be limited to one person for each motor vehicle insured for Medical Payments Coverage under this policy.

**B.** We will pay $5,000 per deceased, regardless of the number of motor vehicles insured with us. However, if at the time of the accident, the deceased was wearing a seat belt or the vehicle was equipped with a manufacturer installed passive restraint device in an operative condition, this amount will be doubled. The police accident report must indicate that the seat belt or passive retraint device was in use at the time of the accident. Any payments made under Part B, Medical Payments Coverage, Division I, will be deducted.

**C.** We will pay the surviving spouse if a resident of the same household at the time of the accident. If the deceased was a minor, we will pay either parent who was a resident of the same household. Otherwise, we will pay the deceased insured's estate.

**D.** We shall have the right to have an autopsy made where it is not forbidden by law.

4

## PART C—UNINSURED MOTORISTS COVERAGE—NON-STACKED

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:

   a. you or any "family member";

   b. a vehicle which you or any "family member" are "occupying"; or

   c. "your covered auto".

   If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member", unless it is a "your covered auto" to which Part A of the policy applies and liability coverage is excluded for any person other than you or any "family

member" for damages sustained in the accident by you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying" any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a "trailer" of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" claim without our consent.

   However, this exclusion (A.2.) does not apply:

   a. If such settlement does not prejudice our right to recover payment; or

   b. To a settlement made with the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle".

3. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (A.3.) does not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

C. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

### LIMIT OF LIABILITY

A. When the "insured" is "occupying" "your covered auto" at the time of the accident:

1. The limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to that "your covered auto" is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in that accident; and

2. Subject to this limit for each person, the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to that "your covered auto" is our maximum limit of liability for all damages for "bodily injury" resulting from that accident.

FFB-00033

auto" at the time of the ___ident.

1. The highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to any of "your covered autos" is our maximum limit of liability for all damages, including damages for care, loss for services or death, arising out of "bodily injury" sustained by any one person in that accident; and

2. Subject to this limit for each person, the highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to any of "your covered autos" is our maximum limit of liability for all damages for "bodily injury" resulting from that accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

C. Any insurance afforded under this coverage shall apply over and above any amounts available to an "insured" because of the "bodily injury":

1. From or on behalf of persons or organizations who may be legally responsible.
   This includes all sums paid under Part A.
2. Under any of the following:
   a. workers' compensation law;
   b. disability benefits law or similar law;
   c. no-fault coverage; or
   d. automobile medical payments coverage.

D. Any payment under this coverage will reduce any amount that person is entitled to recover for the same element of loss under Part A of the policy.

E. In no event will an "insured" be entitled to receive duplicate payment for the same element of loss.

## OTHER INSURANCE

If there is other applicable similar insurance available under this policy or any other policy:

1. Any recovery for damages sustained by you or any "family member":
   a. while occupying a vehicle owned by you or any "family member" may equal, but not exceed, the limit of liability for Uninsured Motorists Coverage applicable to that vehicle;
   b. while occupying a vehicle not owned by you or any "family member" may equal, but not exceed, the sum of:
      (1) the limit of liability for Uninsured Motorists Coverage applicable to the vehicle you or any "family member" were occupying at the time of the accident; and
      (2) the highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you or any "family member";

but not exceed, the highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you or any "family member".

2. Any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

## ARBITRATION

A. If we and an "insured" do not agree:
   1. Whether that person is legally entitled to recover damages under this coverage; or
   2. As to the amount of damages;
   then the matter may be:
   1. Mediated, in accordance with the Mediation provision contained in Part F of the policy, if the damages resulting from "bodily injury" are for $10,000 or less;
   2. Arbitrated; or
   3. Decided by a court of competent jurisdiction.
   If either party demands mediation, the mediation must be completed before arbitration can occur.

B. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

C. Each party will:
   1. Pay the expenses it incurs; and
   2. Bear the expenses of the third arbitrator equally.

D. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:
   1. Whether the "insured" is legally entitled to recover damages; and
   2. The amount of damages.

## FLORIDA ARBITRATION ACT

If we and an "insured" agree to arbitration, the Florida Arbitration Act will not apply.

## ADDITIONAL DUTY

A person seeking Uninsured Motorists Coverage under Section 2. of the definition of "uninsured motor vehicle" must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

6

FFB- 00034

**PART F—GENERAL PROVISIONS**

The following is added to the Our Right To Recover Payment provision in Part F.

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under Paragraph A. with respect to coverage under Section 2. of the definition of "uninsured motor vehicle" if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "uninsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

2. We also have a right to recover advance payment.

---

## PART D—COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

We will pay under Other Than Collision Coverage for the cost of repairing or replacing the damaged windshield on "your covered auto" without a deductible. We will pay only if the Declarations indicates that Other Than Collision Coverage applies.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

We will not subtract the deductible amount if "your covered auto" is a private passenger auto, pickup or van, and collides with another private passenger auto, pickup or van, insured with us.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because if its:

a. breakdown;
b. repair;
c. servicing;
d. loss; or
e. destruction.

**TRANSPORTATION EXPENSES**

In addition we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto". This applies only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of the total theft of a "non-owned auto". This applies only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

We will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

a. wear and tear;
b. freezing;
c. mechanical or electrical breakdown or failure; or
d. road damage to tires.

This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

a. radioactive contamination;
b. discharge of any nuclear weapon (even if accidental);
c. war (declared or undeclared);
d. civil war;
e. insurrection; or
f. rebellion or revolution.

4. Loss to:

FFB-00035

**a.** any electronic equipment designed for the reproduction of sound, including, but not limited to:

    **(1)** radios and stereos;

    **(2)** tape decks; or

    **(3)** compact disc players;

**b.** any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

    **(1)** citizens band radios;

    **(2)** telephones;

    **(3)** two-way mobile radios;

    **(4)** scanning monitor receivers;

    **(5)** television monitor receivers;

    **(6)** video cassette recorders;

    **(7)** audio cassette recorders; or

    **(8)** personal computers;

**c.** tapes, records, discs, or other media used with equipment described in a. or b.; or

**d.** any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

**a.** equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in "your covered auto" or any "non-owned auto"; or

**b.** any other electronic equipment that is:

    **(1)** necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

    **(2)** an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

**5.** Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities because you or any "family member":

  **a.** engaged in illegal activities; or

  **b.** failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto".

**6.** Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

  **a.** acquire during the policy period; and

  **b.** ask us to insure within 30 days after you become the owner.

**7.** Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**8.** Loss to:

  **a.** awnings or cabanas; or

  **b.** equipment designed to create additional living facilities.

**9.** Loss to equipment designed or used for the detection or location of radar.

**10.** Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

  **a.** special carpeting and insulation, furniture or bars;

  **b.** facilities for cooking and sleeping;

  **c.** height-extending roofs; or

  **d.** custom murals, paintings or other decals or graphics.

**11.** Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

  **a.** selling;    **d.** storing; or

  **b.** repairing;    **e.** parking;

  **c.** servicing;

vehicles designed for use on public highways. This includes road testing and delivery.

**12.** Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer".

**13.** Loss to any vehicle which occurs while being used or is in preparation for any prearranged or organized race, speed contest, tractor-pull, or similar sporting event.

## LIMIT OF LIABILITY

**A.** Our limit of liability for loss will be the lesser of the:

  **1.** Actual cash value of the stolen or damaged property; or

  **2.** Amount necessary to repair or replace the property.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

  **1.** You; or

  **2.** The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

FFB- 00036

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand appraisal of the loss. Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in Part F of the policy. The mediation must be completed before a demand for appraisal can be made.

B. In the event of a demand for appraisal, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

C. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E—DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonbly require:

    a. to physical exams by physicians we select. We will pay for these exams.

    b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F—GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

FFB·00037

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

**A.** **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cellation is to take effect.

2. The named insured:

   a. May not cancel this policy, if this policy provides Personal Injury Protection and Liability Coverage, during the first 60 days immediately following the date of issuance or renewal unless:

   (1) "Your covered auto" has been totally destroyed so that it is no longer operable on the roads of Florida; or

   (2) The named insured transfers ownership of "your covered auto"; or

   (3) The named insured obtains other insurance on "your covered auto"; or

   (4) The named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.

   b. May cancel for any reason after this policy is in effect for 60 days.

3. If this is a new policy, we will not cancel for nonpayment of premium during the first 60 days following the date of issuance. However, we may cancel if a check used to pay us is dishonored for any reason.

4. After this policy is in effect for 60 days, we will cancel only:

   a. For nonpayment of premium; or

   b. If your driver's license or that of:

   (1) Any driver who lives with you; or

   (2) Any driver who customarily uses "your covered auto";

   has been suspended or revoked. This must have occurred during:

   (1) The policy period; or

   (2) The 180 days immediately preceding the original effective date of the policy; or

   c. If the policy was obtained through material misrepresentation or fraud.

5. Except as provided in Section **6.**, we may cancel by mailing by registered or certified mail or United States Post Office proof of mailing to the named insured shown in the Declarations at the address shown in the policy:

   a. At least 10 days notice if cancellation is for nonpayment of premium; or

   b. At least 45 days notice in all other cases.

6. In the event we determine that you have been charged an incorrect premium for coverage requested in your application for insurance, we shall immediately mail you notice of any additional premium due us. If within 15 days of the notice of additional premium due (or a longer time period as specified in the notice), you fail to either:

   a. Pay the additional premium and maintain this policy in full force under its original terms; or

   b. Cancel this policy and demand a refund of any unearned premium;

FFB-00038

then this policy shall be cancelled effective 15 days from the date of the notice (or a longer time period as specified in the notice).

**B. Nonrenewal.** If we decide not to renew or continue this policy we will mail advance notice to the named insured shown in the Declarations at the address shown in this policy at least 45 days before the end of the policy period. Notice will be mailed by registered or certified mail or United States Post Office proof of mailing. If the policy period is other than 1 year, we will have the right not to renew or continue it only at each anniversary of its original effective date.

We will not refuse to renew or continue this policy solely because:

1. You were convicted of one or more traffic violations which did not involve an accident or cause revocation or suspension of your driving privilege unless you have been convicted of, or plead guilty to:

   a. Two such traffic violations within an 18 month period;

   b. Three or more such traffic violations within a 36 month period; or

   c. Exceeding the lawful speed limit by more than 15 miles per hour; or

2. You have had only one accident if we have insured "your covered auto" for a period of at least 5 years immediately preceding the renewal date.

**C. Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## NON-JOINDER CLAUSE

No person, firm, or corporation claiming to be a third-party beneficiary and not designated as an "insured" herein shall have the right to bring an action against us directly prior to first obtaining a judgment against an "insured" for a cause of action covered by this policy.

## MEDIATION

In any claim filed with us for:

1. Loss resulting from "bodily injury" in an amount of $10,000 or less;

2. "Property damage"; or

3. Loss to "your covered auto" or any "non-owned auto";

either party may demand mediation of the claim, prior to taking legal action, by filing a written request with the Department of Insurance on a form which may be obtained from the Department. The request must state:

1. Why mediation is being requested; and

2. The issues in dispute which are to be mediated.

Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

The Department shall randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference, which will be held within 45 days of the request for mediation. The conference may be held by telephone, if feasible.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed. Participants must:

1. Have authority to make a binding decision; and

2. Mediate in good faith.

Costs of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.

FFB-00039

**IN WITNESS WHEREOF, THE COMPANY** has caused this policy to be signed by its President and Secretary, and countersigned on the Declarations page by a duly authorized representative the Company.

*L. E. McMullion Jr.*    Secretary          *Carl B. Loop Jr.*    President

## PP 05 54 (Ed. 02 93)
# PERSONAL INJURY PROTECTION COVERAGE—FLORIDA

With respect to Personal Injury Protection Coverage, the provisions of the policy apply unless modified herein.

### SCHEDULE

| Benefits | Limit of Liability |
|---|---|
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Replacement Services | No specific dollar amount |
| Accidental Death | $ 5,000 |
| Maximum Limit For The Total Of All Personal Injury Protection Benefits | $10,000 |

The insurance for **PERSONAL INJURY PROTECTION** is subject to optional deductibles and limitations as indicated in the Declarations.

### COVERAGE LIMITATION SCHEDULE

1. Work loss for "named insured" does not apply.
2. Work loss for "named insured" and dependant "family member" does not apply.
3. Coverage reduced by military benefits for "named insured" and dependent "family member".

## I. DEFINITIONS

The Definitions section is amended as follows:

**A.** For purposes of this coverage, a "motor vehicle" shall be deemed to be owned by a person if that person:

   1. Holds the legal title to such vehicle.

   2. Is a debtor having the right to possession, if such vehicle is the subject of a security agreement.

   3. Is a lessee having the right to possession, if such vehicle is the subject of a lease which:

      **a.** Has an option to purchase; and

      **b.** Is for a period of at least 6 months.

   4. Is a lessee having the right to possession, if such vehicle is the subject of a lease which:

      **a.** Does not have an option to purchase;

      **b.** Is for a period of at least 6 months; and

      **c.** Requires the lessee to secure insurance.

**B.** The following definitions are replaced:

   1. "Family member" means a person related to the "named insured" by blood, marriage or adoption who is usually a resident of the "named insured's" household. This includes a ward or foster child.

   2. "Occupying" means:

      **a.** In or upon;

      **b.** Entering into; or

      **c.** Alighting from.

   3. "Your covered auto" means a "motor vehicle" owned by the "named insured" and for which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and either;

      **a.** A premium is charged; or

      **b.** It is a trailer, other than a mobile home, designed for use with a "motor vehicle".

**C.** The following definitions are added:

   1. "Motor vehicle" means:

      **a.** Any self-propelled vehicle with 4 or more wheels which is:

         **(1)** Designed; and

         **(2)** Required to be licensed;

         for use on Florida highways.

      **b.** Any trailer or semi-trailer designed for use with such vehicle.

      However, "motor vehicle" does not include:

      **a.** Any motor vehicle which is:

         **(1)** Used in mass transit or public school transportation;

         **(2)** Designed to transport more than 5 passengers (excluding the operator); and

         **(3)** Owned by a:

            **(a)** Municipality;

12

FFB-00040

(b) Tran    or public school transportation, authority; or

(c) Political subdivision of the state.

    b. A mobile home.

  2. "Named insured" means:

    a. The person named in the Declarations; or

    b. That person's spouse, if a resident of the same household.

  3. "Pedestrian" means a person who is not "occupying" a self-propelled vehicle.

D. "Insured" as used in this endorsement means:

  1. The "named insured" or any "family member" while:

    a. "Occupying" a "motor vehicle"; or

    b. A "pedestrian" struck by a "motor vehicle".

  2. Any other person while:

    a. "Occupying" "your covered auto"; or

    b. A "pedestrian" struck by "your covered auto".

## II. PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT

A. We will pay, in accordance with the Florida Motor Vehicle No-Fault Law, personal injury protection benefits to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the ownership, maintenance or use of a "motor vehicle".

B. Subject to the limits shown in the Schedule or Declarations, personal injury protection benefits consist of the following:

  1. Medical expenses. 80% of reasonable expenses for:

    a. Necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services; and

    b. Prosthetic devices.

  This includes necessary remedial treatment and services recognized and permitted under state law for an "insured" who relies upon spiritual means through prayer alone for healing in accordance with that "insured's" religious beliefs.

  2. Work loss. With respect to the period of disability of an "insured", 60% of any loss of income and earning capacity from that "insured's" inability to work due to "bodily injury". However, work loss does not include any loss after an "insured's" death.

  3. Replacement services. With respect to the period of disability of an "insured", all expenses reasonably incurred in obtaining ordinary and necessary services from others instead of those that the "insured" would have performed, without income, for the benefit of his household had he not sustained "bodily injury".

  4. Accidental death. A death benefit.

EXCLUSI   S

A. We do not provide Personal Injury Protection Coverage for any person:

  1. While operating "your covered auto" without the "named insured's" express or implied consent.

  2. If that person's conduct contributed to his "bodily injury" under any of the following circumstances:

    a. Intentionally causing "bodily injury" to himself; or

    b. While committing a felony.

  3. Other than the "named insured", if that person owns a "motor vehicle" for which security is required under the Florida Motor Vehicle No-Fault Law.

  4. Other than the "named insured" or any "family member", who is entitled to personal injury protection benefits from a person who owns a "motor vehicle" which is not a "your covered auto" under this policy, or from that vehicle owner's policy.

  5. Who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

B. We do not provide Personal Injury Protection Coverage for:

  1. The "named insured" or any "family member" while "occupying" a "motor vehicle" which is:

    a. Owned by the "named insured"; and

    b. Not a "your covered auto" under this policy.

  2. Any "pedestrian", other than the "named insured" or any "family member" who is not a legal resident of Florida.

### LIMIT OF LIABILITY

A. The limits of liability shown in the Schedule or Declarations for Personal Injury Protection Coverage are the most we will pay to or for each "insured" injured in any one accident, regardless of the number of:

  1. "Insureds";

  2. Policies or bonds applicable;

  3. Vehicles involved; or

  4. Claims made.

The maximum limit of liability for the total of all personal injury protection benefits shown in the Schedule or Declarations is the total aggregate limit for personal injury protection benefits available, to or for each "insured" injured in any one accident, from all sources combined, including this policy.

B. Any amounts payable under this coverage shall be reduced by any amounts paid or payable for the same elements of loss under any of the following:

  1. Workers' compensation laws; or

  2. Medicaid.

C. The amount of any deductible shown in the

FFB-00041

Schedule or Declarations shall be deducted from the lesser of:

1. The total amount otherwise payable under this coverage for:

   a. Medical expenses;

   b. Work loss; and

   c. Replacement services;

   to or for each "insured" to whom the deductible applies; or

2. The limits of liability shown in the Schedule or Declarations.

The total amount otherwise payable means the benefits payable for medical expenses, work loss and replacement services after the application of any percentage limitation.

Accidental death is not subject to a deductible.

**OTHER INSURANCE**

**A.** No one will be entitled to receive duplicate payments for the same elements of loss under this or any other insurance. If an "insured" receives personal injury protection benefits from another insurer, that insurer shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses of processing the claim.

**B.** If an "insured" sustains "bodily injury" while:

1. "Occupying"; or

2. Struck by a "motor vehicle" rented or leased under a rental or lease agreement;

the personal injury protection benefits afforded under the lessor's policy shall be primary.

This provision (**B.**) does not apply if the rental or lease agreement states otherwise in bold type on the face of the agreement.

**COORDINATION OF MILITARY BENEFITS**

If the Schedule or Declarations indicates that the Coordination of Military Benefits option applies to the "named insured" or any dependent "family member", any amounts payable under this coverage shall be reduced by any benefits payable by the federal government to:

1. Active or retired military personnel; or

2. Their dependent "family members".

If such military benefits are not available at the time of loss, we shall have the right to recompute and charge the appropriate premium.

**III. PART E — DUTIES AFTER AN ACCIDENT OR LOSS**

Part E is replaced by the following:

**DUTIES AFTER AN ACCIDENT OR LOSS**

A person seeking Personal Injury Protection Coverage must:

**A.** In the event of an accident, provide prompt written notice of loss to us or our authorized agent.

**B.** Promptly forward to us a copy of the:

1. Summons and complaint; or

2. Other process;

served in connection with any legal action that person takes against a third party to recover damages for "bodily injury".

**C.** Promptly give us written proof of claim, under oath if required. Such proof shall include:

1. Full details of the nature and extent of the injuries and treatment received and contemplated; and

2. Any other information which may assist us in determining the amount due and payable.

**D.** Submit as often as we reasonably require to mental or physical exams. We will:

1. Pay for these exams; and

2. Forward a copy of the medical report to that person if requested.

If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent personal injury protection benefits.

**IV. PART F — GENERAL PROVISIONS**

Part F is amended as follows:

**A.** Paragraph A. of the Legal Action Against Us provision is replaced by the following:

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against us until 30 days after the required notice of loss and reasonable proof of claim has been filed with us.

**B.** Paragraph B. of the Policy Period And Territory provision is replaced by the following:

**POLICY PERIOD AND TERRITORY**

**B.** The policy territory is:

1. Florida.

2. The United States of America, its territories or possessions or Canada.

This provision (**B.2.**) applies only to:

The "named insured" or any "family member" while "occupying" a "motor vehicle"; or, while a pedestrian, through being struck by a "motor vehicle" outside the State of Florida but within the United States of America, its territories or possessions or Canada.

**C.** The Our Right To Recover Payment provision is replaced by the following:

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another we shall, to the extent of our payment, be subrogated to that right. That person shall:

1. Execute and deliver instruments and papers and do whatever else is necessary to secure our rights; and

14

2. Do nothing after loss to prejudice these rights.

**B.** If we make a payment under this coverage and the person to or for whom payment was made sustained "bodily injury" while:

1. "Occupying"; or
2. A "pedestrian" struck by;

a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, we shall, to the extent of our payment, be entitled to reimbursement from the person who owns such motor vehicle or that person's insurer.

**C.** The following provisions are added:

**ARBITRATION**

If a provider of medical services or supplies has agreed to accept assignment of personal injury protection benefits:

1. Any claims dispute, involving medical expenses, between that provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code.
2. The prevailing party shall be entitled to attorney's fees and costs.

**PAYMENT OF CLAIMS**

If a person seeking Personal Injury Protection Coverage is charged with committing a felony, we shall withhold benefits until, at the trial level:

1. The prosecution makes a formal entry on the record that it will not prosecute the case against that person;
2. The charge is dismissed; or
3. That person is acquitted.

**MODIFICATION OF POLICY COVERAGES**

1. Any coverage provided under Part B or Part C of this policy shall be excess over any personal injury protection benefits paid or payable.
2. Regardless of whether the limits for personal injury protection benefits have been exhausted, any coverage provided under

B shall pay the amount of any claim medical expenses payable under this coverage which exceeds the 80% limitation for medical expenses.

3. No coverage is provided under Part B for the amount of any applicable deductible under this coverage.

**PROVISIONAL PREMIUM**

1. In the event of any change in the:

   a. Rules;
   b. Rates;
   c. Rating plan;
   d. Premiums; or
   e. Minimum premiums;

   applicable to this coverage, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law which provide for the exemption of persons from tort liability, the premium shown in the Declarations for any coverage under:

   a. Part A;
   b. Part B; or
   c. Part C;

   of this policy shall be deemed to be provisional and subject to recomputation.

2. If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to the "named insured", in accordance with the Florida Motor Vehicle No-Fault Law, with respect to insurance provided under a previous policy.

3. If the final recomputed premium exceeds the premium shown in the Declarations, the "named insured" shall pay us:

   a. The excess amount; and
   b. The amount of any return premium previously credited or refunded.

---

**PP 03 05 (Ed. 8-86)**

**LOSS PAYABLE CLAUSE**

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

FFB--00043

THE FOLLOWING ENDORSEMENTS APPLY ONLY IF COVERAGE IS INDICATED AS APPLICABLE IN THE DECLARATIONS

**PP 03 02 (Ed. 12-89)**

## EXTENDED TRANSPORTATION EXPENSES

The provisions and exclusions that apply to Part D—Coverage for Damage to Your Auto also apply to this endorsement except as changed by this endorsement.

**A. EXTENDED TRANSPORTATION EXPENSES COVERAGE**

When there is a loss to a "your covered auto" described in the Declarations for which a specific premium charge indicates that Extended Transportation Expenses Coverage is afforded, or to a "non-owned auto", we will pay, without application of a deductible, up to $15 per day to a maximum of $450 for:

1. Transportation expenses incurred by you.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto".

This coverage applies only if:

1. "Your covered auto" or the "non-owned auto" is withdrawn from use for more than 24 hours; and

2. The loss is caused by "collision" or is otherwise covered under Part D of this policy.

However, this coverage does not apply when there is a total theft of "your covered auto" or a "non-owned auto". Such coverage is provided under Part D of this policy.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

**B. INCREASED LIMITS TRANSPORTATION EXPENSES COVERAGE**

When there is a loss to a "your covered auto" described in the Declarations for which a specific premium charge indicates that Increased Limits Transportation Expenses Coverage is afforded, or to a "non-owned auto":

1. Coverage for Extended Transportation Expenses Coverage provided under this endorsement is increased to $30 per day up to a maximum of $900. All other provisions of Extended Transportation Expenses Coverage apply.

2. Coverage for Transportation Expenses Coverage provided under Part D of this policy is increased to $30 per day up to a maximum of $900.

---

**PP 03 03 (Ed. 4-86)**

## TOWING AND LABOR COSTS COVERAGE

We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

---

**PP 03 13 (Ed. 12 89)**

## COVERAGE FOR AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT AND TAPES, RECORDS, DISCS AND OTHER MEDIA

The provisions and exclusions that apply to Part D—Coverage for Damage to Your Auto, other than Exclusion 4., also apply to coverage provided by this endorsement except as modified herein.

**INSURING AGREEMENT**

We will pay, without application of a deductible, for direct and accidental loss to any electronic equipment that receives or transmits audio, visual or data signals and is not designed solely for the reproduction of sound. This coverage applies only if the equipment is permanently installed in "your covered auto" at the time of the loss.

We will also pay, without application of a deductible, for direct and accidental loss to:

1. Any accessories used with electronic equipment

permanently installed in "your covered auto" and not designed solely for the reproduction of sound; and

2. Tapes, records, discs or other media if they are:

a. your property or that of a "family member"; and

b. in "your covered auto" at the time of the loss.

**EXCLUSION**

We will not pay, under this endorsement, for any electronic equipment that is:

1. Necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

2. Both:

a. an integral part of the same unit housing any sound reproducing equipment designed solely for the

16

reproduction of sound —The sound reproducing equipment is permanently installed in "your covered auto"; and

b. permanently installed in the opening of the dash or console of "your covered auto". This opening must be normally used by the manufacturer for the installation of a radio.

**LIMIT OF LIABILITY**

With respect to coverage under this endorsement, the Limit of Liability provision of Part D is replaced by the following:

1. Our limit of liability for the total of all losses to audio, visual or data electronic equipment and any accessories used with this equipment, as a result of any one occurrence shall be the lesser of the:

   a. stated amount shown in the Declarations;
   b. actual cash value of the stolen or damaged property; or
   c. amount necessary to repair or replace the property.

2. Our limit of liability for the total of all losses to tapes, records, discs or other media, as a result of any one occurrence shall be the lesser of:

   a. $200;
   b. the actual cash value of the stolen or damaged property; or
   c. the amount necessary to repair or replace the property.

If coverage for audio, visual or data electronic equipment and accessories used with the equipment is purchased, the limit of liability applicable for losses to tapes, records, discs or other media is in addition to the limit of liability applicable to audio, visual or data electronic equipment and any accessories used with the equipment.

3. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

---

**PP 03 23 (Ed. 12 89)**

## MISCELLANEOUS TYPE VEHICLE ENDORSEMENT

This coverage is subject to all the provisions of the policy with respect to the "miscellaneous type vehicles" and coverages described in the Declarations except as modified as follows:

**I. DEFINITIONS**

The Definitions Section is amended as follows:

A. For the purpose of the coverage provided by this endorsement, "miscellaneous type vehicle" means:

   1. A motor home, motorcycle or other similar type vehicle, all terrain vehicle, dune buggy or golf cart.
   2. A private passenger auto owned jointly by 2 or more:
      a. relatives, other than husband and wife; or
      b. resident individuals.

B. The definition of "your covered auto" is replaced by the following:

"Your covered auto" means:

   1. Any "miscellaneous type vehicle" shown in the Declarations.
   2. Any of the following types of vehicles on the date you become the owner:
      a. a private passenger auto;
      b. a pickup or van that:
         (1) has a Gross Vehicle Weight of less than 10,000 lbs.; and
         (2) is not used for the delivery or transportation of goods and materials unless such use is:
            (a) incidental to your "business" of maintaining or repairing furnishings or equipment; or
            (b) for farming or ranching.
      c. any "miscellaneous type vehicle" of the same type shown in the Declarations.

This provision applies only if:

   a. you acquire the vehicle during the policy period;
   b. you ask us to insure it within 30 days after you become the owner; and
   c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one of the same type shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any of the same type shown in the Declarations, it will have the broadest coverage we now provide for any vehicle of that type shown in the Declarations.

   3. Any "trailer".
   4. Any "miscellaneous type vehicle" or auto you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

      a. breakdown;
      b. repair;
      c. servicing;
      d. loss; or
      e. destruction.

      This provision (4.) does not apply to Coverage for Damage to Your Auto.

FFB- 00045

Part A is amended as fo... s:

**A.** The definition of "insured" is replaced by the following:

"Insured" means:

1. You or any "family member" for the ownership, maintenance or use of "your covered auto".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

**B.** The Exclusions Section is amended as follows:

1. Exclusion B.1. is replaced by the following:

We do not provide Liability Coverage for the ownership, maintenance or use of any motorized vehicle having fewer than four wheels. However, this exclusion (B.1.) does not apply to a motorized vehicle having fewer than four wheels if it is insured for Liability Coverage under this endorsement.

2. The following exclusion applies under Section A to any vehicle for which the Declarations indicates that the passenger hazard is excluded:

We do not provide Liability Coverage for any person for "bodily injury" to any person while "occupying" the described "miscellaneous type vehicle".

## III. PART B—MEDICAL PAYMENTS COVERAGE

Exclusion 1. of Part B is replaced by the following:

We do not provide Medical Payments Coverage for any person for "bodily injury" sustained while "occupying" any motorized vehicle having fewer than four wheels.

However, this exclusion (B.1.) does not apply to a motorized vehicle having fewer than four wheels if it is insured for Medical Payments Coverage under this endorsement.

## IV. PART D—COVERAGE FOR DAMAGE TO YOUR AUTO

Part D is amended as follows:

**A.** The following is added to the definition of "non-owned auto":

3. Any motor home, motorcycle or other similar type vehicle, all terrain vehicle, dune buggy or golf cart you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

| | |
|---|---|
| a. breakdown; | d. loss; or |
| b. repair; | e. destruction. |
| c. servicing; | |

**B.** With respect to the Stated Amount Coverage(s) shown as applicable to a vehicle described in the Declarations, the Limit of Liability provision is replaced by the following:

**LIMIT OF LIABILITY**

Our limit of liability for loss will be the lesser of the:

1. Stated amount shown in the Declarations;

2. Actual cash value of the stolen or damaged property; or

3. Amount necessary to repair or replace the property.

Our payment for loss will be reduced by any applicable deductible shown in the Declarations.

An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

---

**PP 03 28 (Ed. 8-86)**
**MISCELLANEOUS TYPE VEHICLE AMENDMENT**
**(MOTOR HOMES)**

**WARNING**

THE THE COVERAGE PROVIDED BY THIS POLICY WITH RESPECT TO A MOTOR HOME THAT YOU OWN:

- DOES NOT PROVIDE LIABILITY, MEDICAL PAYMENTS OR PHYSICAL DAMAGE COVERAGE WHILE THE MOTOR HOME IS RENTED OR LEASED TO ANY ORGANIZATION, OR ANY PERSON OTHER THAN YOU. YOU MAY PURCHASE THIS COVERAGE FOR AN ADDITIONAL PREMIUM.

- DOES NOT COVER ANY PHYSICAL DAMAGE LOSS YOU INCUR IF YOUR MOTOR HOME IS FRAUDULENTLY ACQUIRED BY ANY PERSON OR ORGANIZATION WHILE IT IS IN THEIR CARE.

The provisions that apply to the Miscellaneous Type Vehicle endorsement apply to this endorsement except as modified below:

**I.** Except with respect to the coverages and motor homes shown in the Declarations where a specific premium for Motor Home Rental Coverage is charged, the following additional exclusions apply to any motor home which is "your coverd auto".

**A. Liability Coverage Exclusion**

We do not provide Liability Coverage for the ownership, maintenance or use of any motor home while rented or leased to any organization, or any person other than you. However, this exclusion (I.A.) does not apply up to the financial responsibility limits of any compulsory insurance law applicable to the state in which "your covered auto" is principally garaged.

FFB-00046

**B. Medical Payments Coverage Exclusion**

We do not provide Medical Payments Coverage for any person for "bodily injury" sustained while "occupying" the motor home while it is rented or leased to any organization, or any person other than you.

**C. Damage to Your Auto Exclusion**

We will not pay for loss to the motor home or its "covered property" which occurs while the motor home is rented or leased to any organization, or any person other than you.

**II.** The following additional exclusion also applies to any motor home which is "your covered auto" regardless of any other coverage which may be afforded b this endorsement:

**Damage To Your Auto Exclusion**

We will not pay for loss to the motor home or its "covered property" due to fraudulent acquisition by any person or organization, which occurs while the motor home is:

a.  rented to;

b.  used by; or

c.  in the care of;

that person or organization.

---

**PP 03 19 (Ed. 8-86)**

**ADDITIONAL INSURED - LESSOR**

Any liability and any required no-fault coverages afforded by this policy for "your leased auto" also apply to the lessor named in the Declarations as an additional insured. This insurance is subject to the following additional provisions:

1.  We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

    a.  you or any "family member", or

    b.  any other person except the lessor or any employee or agent of the lessor using "your leased auto".

2.  "Your leased auto" means:

    a.  an auto shown in the Declarations which you

lease for a continuous period of at least six months under a written agreement which requires you to provide primary insurance for the lessor, and

b.  any substitute or replacement auto furnished by the lessor named in the Declarations.

3.  If we terminate this policy, notice will also be mailed to the lessor.

4.  The lessor is not responsible for payment of premiums.

5.  The designation of the lessor as an additional insured shall not operate to increase our limits of liability.

FFB- 00047

# FLORIDA FARM BUREAU INSURANCE COMPANIES

## FLORIDA FARM BUREAU CASUALTY INSURANCE COMPANY
## FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY

Post Office Box 147030, Gainesville, Florida 32614-7030



EXHIBIT
B

# Personal Auto Policy

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED IN THE DECLARATIONS OF YOUR POLICY.



THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE AND ENDORSE-
MENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THIS POLICY.

BJP8054 (0) -X - E (Ed. 06-98) (Rev. 12-99)                                    FFB-00001

**FLORIDA FARM BUREAU CASUALTY INSURANCE COMPANY**
(A STOCK INSURANCE COMPANY)
OR
**FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY**
(A STOCK INSURANCE COMPANY)

## YOUR PERSONAL AUTO POLICY—QUICK REFERENCE

**DECLARATIONS PAGE**

Your Name and Address
Your Auto or Trailer

Policy Period
Coverages and Amounts of Insurance

| | Beginning On Page | | | Beginning On Page |
|---|---|---|---|---|
| AGREEMENT | 1 | PART D — COVERAGE FOR DAMAGE TO YOUR AUTO | | 8 |
| DEFINITIONS | 1 | Insuring Agreement | | |
| | | Transportation Expenses | | |
| PART A — LIABILITY COVERAGE | 2 | Exclusions | | |
| | | Limit of Liability | | |
| Insuring Agreement | | Payment of Loss | | |
| Supplementary Payments | | No Benefit to Bailee | | |
| Exclusions | | Other Sources of Recovery | | |
| Limit of Liability | | Appraisal | | |
| Out of State Coverage | | | | |
| Financial Responsibility | | | | |
| Other Insurance | | PART E — DUTIES AFTER AN ACCIDENT OR LOSS | | 11 |
| PART B — DIVISION I | 4 | | | |
| MEDICAL PAYMENTS COVERAGE | | PART F — GENERAL PROVISIONS | | 11 |
| | | Bankruptcy | | |
| Insuring Agreement | | Changes | | |
| Exclusions | | Fraud | | |
| Limit of Liability | | Legal Action Against Us | | |
| Other Insurance | | Our Right to Recover Payment | | |
| | | Policy Period and Territory | | |
| DIVISION II | 5 | Termination | | |
| MOTOR VEHICLE DEATH INDEMNITY | | Transfer of Your Interest | | |
| | | in This Policy | | |
| Insuring Agreement | | Two or More Auto Policies | | |
| Exclusions | | Non-Joinder Clause | | |
| Limit of Liability | | | | |
| | | ENDORSEMENTS | | 14 |
| PART C — UNINSURED MOTORISTS COVERAGE | 5 | | | |
| | | Personal Injury Protection | | |
| Insuring Agreement | | | | |
| Exclusions | | | | |
| Limit of Liability | | | | |
| Other Insurance | | | | |
| Arbitration | | | | |

FFB-00002

Copyright, Insurance Services Office, Inc., 1997

# PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

  1. The "named insured" shown in the Declarations; and

  2. The spouse if a resident of the same household.

  If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

  1. The end of 90 days following the spouse's change of residency;

  2. The effective date of another policy listing the spouse as a named insured; or

  3. The end of the policy period.

B. "We", "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

  1. Under a written agreement to that person; and

  2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

  1. Private passenger auto; or

  2. Pickup or van.

  It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

  1. Any vehicle shown in the Declarations.

  2. A "newly acquired auto".

  3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

  a. breakdown;     d. loss; or

  b. repair;        e. destruction.

  c. servicing;

  This provision (J.4.) does not apply to Coverage For Damage To Your Auto.

K. "Newly acquired auto":

  1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

  a. a private passenger auto; or

  b. a pickup or van, for which no other insurance policy provides coverage, that:

    (1) Has a Gross Vehicle Weight of 14,000 lbs. or less; and

    (2) is not used for the delivery or transportation of goods and materials unless such use is:

      (a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

      (b) for farming or ranching.

  2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

  a. For any coverage provided in this policy except Coverage for Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

  If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

1

FFB-00003

b. Collision Coverage for a newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

**(1)** 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

**(2)** four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a "newly

acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

**(1)** 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

**(2)** four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

---

# PART A — LIABILITY COVERAGE

## INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage", except punitive damages, for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

**2.** Any person using "your covered auto".

**3.** For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

**4.** For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (**B.4.**) applies only if the person or organization does not own or hire the auto or "trailer".

## SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

**1.** Up to $250 for the cost of bail bonds required because of an accident, including related traffic law

violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

**2.** Premiums on appeal bonds and bonds to release attachments in any suit we defend.

**3.** Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

**4.** Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

**5.** Other reasonable expenses incurred at our request.

## EXCLUSIONS

**A.** We do not provide Liability Coverage for any "insured":

**1.** Who intentionally causes "bodily injury" or "property damage".

**2.** For "property damage" to property owned or being transported by that "insured".

**3.** For "property damage" to property:

**a.** rented to;

**b.** used by; or

**c.** in the care of;

that "insured".

This Exclusion (**A.3.**) does not apply to "property damage" to a residence or private garage.

**4.** For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (**A.4.**) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

FFB-00004

2

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (**A.5.**) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   **a.** selling;            **d.** storing; or

   **b.** repairing          **e.** parking;

   **c.** servicing;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (**A.6.**) does not apply to the ownership, maintenance or use of "your covered auto" by:

   **a.** you;

   **b.** any "family member"; or

   **c.** any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion **A.6.**

   This Exclusion (**A.7.**) does not apply to the maintenance or use of a:

   **a.** private passenger auto;

   **b.** pickup or van; or

   **c.** "trailer" used with a vehicle described in **a.** or **b.** above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**A.8.**) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":

   **a.** is an insured under a nuclear energy liability policy; or

   **b.** would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   **a.** Nuclear Energy Liability Insurance Association;

   **b.** Mutual Atomic Energy Liability Underwriters; or

   **c.** Nuclear Insurance Association of Canada.

10. For "bodily injury" sustained by:

    **a.** you;

    **b.** your spouse;

    **c.** your children; or

    **d.** a member of your household if that person is related by blood, marriage, foster relationship, or adoption, or the person for whose use of the automobile the "insured" is

legally responsible.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

   **a.** has fewer than four wheels; or

   **b.** is designed mainly for use off public roads.

   This Exclusion (**B.1.**) does not apply":

   **a.** while such vehicle is being used by an "insured" in a medical emergency;

   **b.** to any "trailer"; or

   **c.** to any non-owned golf cart.

2. Any vehicle, other than "your covered auto", which is:

   **a.** owned by you; or

   **b.** furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

   **a.** owned by any "family member"; or

   **b.** furnished or available for the regular use of any "family member".

   However, this Exclusion (**B.3.**) does not apply to you while you are maintaining or "occupying" any vehicle which is:

   **a.** owned by a "family member"; or

   **b.** furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

   **a.** competing in; or

   **b.** practicing or preparing for;

   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the au  ccident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **B** or Part **C** of this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

**1.** A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

**2.** A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

However, we will provide primary insurance for a vehicle you do not own if:

**1.** The vehicle is leased by you under a written rental or lease agreement; and

**2.** The face of the rental or lease agreement contains, in at least 10-point type, the following language:

The valid and collectible liability insurance of any authorized rental or leasing driver is primary for the limits of liability coverage required by FLA. STAT. SECTION 324.021(7).

---

# PART B — MEDICAL PAYMENTS COVERAGE

---

## DIVISION I

## INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

**1.** Caused by accident; and

**2.** Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member":

**a.** while "occupying"; or

**b.** as a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a "trailer" of any type.

**2.** Any other person while "occupying" "your covered auto".

## EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

**1.** Sustained while "occupying" any motorized vehicle having fewer than four wheels.

**2.** Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (**2.**) does not apply to a share-the-expense car pool.

**3.** Sustained while "occupying" any vehicle located for use as a residence or premises.

**4.** Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

**5.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

**a.** owned by you; or

**b.** furnished or available for your regular use.

**6.** Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

**a.** owned by any "family member"; or

**b.** furnished or available for the regular use of any "family member".

However, this Exclusion (**6.**) does not apply to you.

**7.** Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**7.**) does not apply to a "family member" using "your covered auto" which is owned by you.

**8.** Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (**8.**) does not apply to "bodily injury" sustained while "occupying" a:

**a.** private passenger auto;

**b.** pickup or van that you own; or

**c.** "trailer" used with a vehicle described in **a.** or **b.** above.

**9.** Caused by or as a consequence of:

**a.** discharge of a nuclear weapon (even if accidental);

FFB· 00006

**b.** war (declared or undeclare

**c.** civil war;

**d.** insurrection; or

**e.** rebellion or revolution.

**10.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

**a.** nuclear reaction;

**b.** radiation; or

**c.** radioactive contamination.

**11.** Any vehicle, located inside a facility designed for racing, for the purpose of:

**a.** competing in; or

**b.** practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **C** of this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## DIVISION II

## MOTOR VEHICLE DEATH INDEMNITY COVERAGE

## INSURING AGREEMENT

**A.** We will pay $5,000 in the event of death of an "insured". The death must result directly and independently of all other causes from "bodily injury" caused by an auto accident.

**B.** "Insured" used in this part means you and any "family me  er":

**1.** While "occupying"; or

**2.** As a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a "trailer" of any type; or

**3.** While "occupying" a farm tractor or farm machinery while upon public roads.

## EXCLUSIONS

This insurance does not apply to:

**1.** Death sustained in the course of employment by any person while engaged:

**a.** in duties incidental to the operation, loading or unloading of, or as an assistant on a public or livery conveyance; or

**b.** in duties incidental to the repair or servicing of automobiles;

**2.** Suicide, sane or insane, or to attempt threat;

**3.** Death due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incidental to any of the foregoing.

## LIMIT OF LIABILITY

**A.** The number of individuals covered for Death Indemnity Coverage shall be limited to one person for each motor vehicle insured for Medical Payments Coverage under this policy.

**B.** We will pay $5,000 per deceased, regardless of the number of motor vehicles insured with us. However, if at the time of the accident, the deceased was wearing a seat belt or the vehicle was equipped with a manufacturer installed passive restraint device in an operative condition, this amount will be doubled. The police accident report must indicate that the seat belt or passive restraint device was in use at the time of the accident. Any payments made under Part **B**, Medical Payments Coverage, Division I, will be deducted.

**C.** We will pay this benefit to:

**1.** The executor or administrator of the deceased;

**2.** Any of the deceased's relatives by blood or legal adoption or connection by marriage; or

**3.** Any person appearing to us to be equitably entitled to such benefit.

**D.** We shall have the right to have an autopsy made where it is not forbidden by law.

---

## PART C — UNINSURED MOTORISTS COVERAGE — NON-STACKED

---

## INSURING AGREEMENT

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

**1.** Sustained by an "insured"; and

**2.** Caused by accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

FFB-00007

B. "Insured" as used in this Part    ans:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

C. "Uninsured motor vehicle" means a land motor vehicle or "trailer" of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:

   a. you or any "family member";

   b. a vehicle which you or any "family member" are "occupying"; or

   c. "your covered auto".

If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member", unless it is a "your covered auto" to which Part **A** of the policy applies and liability coverage is excluded for any person other than you or any "family member" for damages sustained in the accident by you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily i    y" sustained:

1. By an "insured" while "occupying" any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a "trailer" of any type used with that vehicle.

2. By any "family member" while "occupying" any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorist Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.

   However, this Exclusion (**B.1.**) does not apply:

   a. if such settlement does not prejudice our right to recover payment; or

   b. to a settlement made with the insurer of a vehicle described in Section **2.** of the definition of "uninsured motor vehicle".

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (**B.2.**) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (**B.3.**) does not apply to a "family member" using your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any:

1. Insurer or self-insurer under any of the following or similar law:

   a. workers' compensation law; or

   b. disability benefits law.

2. Governmental body or agency.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. When the "insured" is "occupying" "your covered auto" at the time of the accident:

1. The limit of liability for Uninsured Motorists Coverage stated in the Declarations for each person applicable to that "your covered auto" is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in that accident; and

2. Subject to this limit for each person, the limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to that "your covered auto" is our maximum limit of liability for all damages for "bodily injury" resulting from that accident.

B. When the "insured" is not "occupying" "your covered auto" at the time of the accident:

1. The highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for

FFB-00008

each person applicable to a. , of "your covered autos" is our maximum limit of liability for all damages, including damages for care, loss for services or death, arising out of "bodily injury" sustained by any one person in that accident; and

2. Subject to this limit for each person, the highest limit of liability for Uninsured Motorists Coverage stated in the Declarations for each accident applicable to any of "your covered autos" is our maximum limit of liability for all damages for "bodily injury" resulting from that accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

C. No one will be entitled to received duplicate payments for the same elements of loss under this coverage and:

1. Part A of this policy;

2. No-fault coverage; or

3. Automobile medical payments coverage.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment had been made by or on behalf of persons or organizations who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Worker's compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages sustained by you or any "family member":

a. while occupying a vehicle owned by you or any "family member" may equal, but not exceed, the limit of liability for Uninsured Motorists Coverage applicable to that vehicle;

b. while occupying a vehicle not owned by you or any "family member" may equal, but not exceed, the sum of:

(1) the limit of liability for Uninsured Motorists Coverage applicable to the vehicle you or any "family member" were occupying at the time of the accident; and

(2) the highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you or any "family member";

c. while not occupying any vehicle may equal, but not exceed, the highest limit of liability for

Uninsu  Motorist Coverage applicable to any one vehicle under any one policy affording coverage to you or any "family member".

2. Any insurance we provide with respect to a vehicle you do not own will be excess over any other collectible insurance providing such coverage on a primary basis.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this coverage; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle" then the matter may be:

1. Mediated, in accordance with the Mediation provision contained in Part F of the policy, if the damages resulting from "bodily injury" are for $10,000 or less;

2. Decided by a court of competent jurisdiction; or

3. Arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

If either party demands mediation. the mediation must be completed before arbitration can occur.

B. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

C. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

D. Unless both parties agree otherwise. arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages.

## FLORIDA ARBITRATION CODE

If we and an "insured" agree to arbitration, the Florida Arbitration Code will not apply.

## ADDITIONAL DUTY

A person seeking Uninsured Motorists Coverage under Section 2. of the definition of "uninsured motor vehicle" must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle" and allow us

FFB- 00009

30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

## PART F - GENERAL PROVISIONS

The following is added to the Our Right To Recover Payment provision in Part F.

## OUR RIGHT TO RECOVER PAYMENT

Our rights do not apply under Paragraph **A.** with respect to coverage under Section **2.** of the definition of "uninsured motor vehicle" if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "uninsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

2. We also have a right to recover advance payment.

---

# PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

## INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

We will pay under Other Than Collision Coverage for the cost of repairing or replacing the damaged windshield on "your covered auto" without a deductible. We will pay only if the Declarations indicates that Other Than Collision Coverage applies.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.

We will not subtract the deductible amount if "your covered auto" is a private passenger auto, pickup or van, and collides with another private passenger auto, pickup or van, insured with us.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   a. breakdown;    d. loss; or

   b. repair;    e. destruction.

   c. servicing;

## TRANSPORTATION EXPENSES

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

   a. other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto; or

   b. "collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

   a. other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto"; or

   b. "collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

However, the most we will pay for any expenses for loss of use is $20 per day.

FFB-00010

B.  If the loss is caused by:

1.  A total theft of "your covered auto" or a "nonowned auto", we will pay only expenses incurred during the period:

    a.  beginning 48 hours after the theft; and

    b.  ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

2.  Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

C.  Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

## EXCLUSIONS

We will not pay for:

1.  Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2.  Damage due and confined to:

    a.  wear and tear;

    b.  freezing;

    c.  mechanical or electrical breakdown or failure; or

    d.  road damage to tires.

    This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3.  Loss due to or as a consequence of:

    a.  radioactive contamination;

    b.  discharge of any nuclear weapon (even if accidental);

    c.  war (declared or undeclared);

    d.  civil war;

    e.  insurrection; or

    f.  rebellion or revolution.

4.  Loss to any electronic equipment designed for the reproduction of sound and any accessories used with such equipment. This includes but is not limited to:

    a.  radios and stereos;

    b.  tape decks; or

    c.  compact disc players.

    This Exclusion (4.) does not apply to equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

    a.  the equipment is permanently installed in "your covered auto" or any "non-owned auto"; or

    b.  the equipment is:

        (1)  removable from a housing unit which is permanently installed in the auto;

(2)  signed to be solely operated by use of the power from the auto's electrical system; and

(3)  in or upon "your covered auto" or any "non-owned auto" at the time of loss.

5.  Loss to any electronic equipment that receives or transmits audio, visual or data signals and any accessories used with such equipment. This includes but is not limited to:

    a.  citizens band radios;

    b.  telephones;

    c.  two-way mobile radios;

    d.  scanning monitor receivers;

    e.  television monitor receivers;

    f.  video cassette recorders;

    g.  audio cassette recorders; or

    h.  personal computers.

    This Exclusion (5.) does not apply to:

    a.  any electronic equipment that is necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

    b.  a permanently installed telephone designed to be operated by use of the power from the auto's electrical system and any accessories used with the telephone.

6.  Loss to tapes, records, discs or other media used with equipment described in Exclusions 4. and 5.

7.  Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities because you or any "family member":

    a.  engaged in illegal activities; or

    b.  failed to comply with Environmental Protection Agency or Department of Transportation standards.

    This exclusion (7.) does not apply to the interests of Loss Payees in "your covered auto".

8.  Loss to:

    a.  a "trailer", camper body, or motor home, which is not shown in the Declarations; or

    b.  facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

        (1)  cooking dining, plumbing or refrigeration facilities;

        (2)  awnings or cabanas; or

        (3)  any other facilities or equipment used with a "trailer", camper body or motor home.

    This Exclusion (8.) does not apply to a:

    a.  "trailer", and its facilities or equipment, which you do not own; or

    b.  "trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

        (1)  acquire during the policy period; and

FFS-00011

**(2)** ask us to insure within 30 days after you become the owner.

9. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

10. Loss to equipment designed or used for the detection or location of radar or laser.

11. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   **a.** special carpeting or insulation;

   **b.** furniture or bars;

   **c.** height-extending roofs; or

   **d.** custom murals, paintings or other decals or graphics.

   This Exclusion (11.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   **a.** selling;               **d.** storing; or

   **b.** repairing;          **e.** parking;

   **c.** servicing;

   vehicles designed for use on public highways. This includes road testing and delivery.

13. Any vehicle, located inside a facility designed for racing, for the purpose of:

   **a.** competing in; or

   **b.** practicing or preparing for;

   any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

   **a.** you; or

   **b.** any "family member":

   if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

   1. Actual cash value of the stolen or damaged property; or

   2. Amount necessary to repair or replace the property with other property of like kind and quality.

   However, the most we will pay for loss to:

   1. Any "non-owned auto" which is a "trailer" is $500; or

   2. Equipment designed solely for the reproduction of sound, including any accessories used with

such equipment, which is installed in locations not used by the auto manufacturer for installation of such equipment or accessories, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property, we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax, incurred by the insured, for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand Mediation of the dispute in accordance with the Mediation provision contained in Part F of the policy. The mediation must be completed before a demand for appraisal can be made.

B. In the event of a demand for appraisal, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   1. Pay its chosen appraiser; and

   2. Bear the expenses of the appraisal and umpire equally.

C. We do not waive any of our rights under this policy by agreeing to an appraisal.

FFB-00012

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical exams by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Report a hit and run accident to the police within 24 hours and to us within 30 days.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F — GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

FFB-00013

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy, and the person to or for whom payment is made recovers damages from another, that person shall:

    **1.** Hold in trust for us the proceeds of the recovery; and

    **2.** Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

    **1.** During the policy period as shown in the Declarations; and

    **2.** Within the policy territory.

**B.** The policy territory is:

    **1.** The United States of America, its territories or possessions;

    **2.** Puerto Rico; or

    **3.** Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

**A. Cancellation.** This policy may be cancelled during the policy period as follows:

    **1.** The named insured shown in the Declarations may cancel by:

        **a.** returning this policy to us; or

        **b.** giving us advance written notice of the date cancellation is to take effect.

    **2.** The named insured:

        **a.** may not cancel this policy, if this policy provides Personal Injury Protection and Liability Coverage, during the first 60 days immediately following the date of issuance or renewal unless:

            **(1)** "your covered auto" has been totally destroyed so that it is no longer operable on the roads of Florida; or

            **(2)** the named insured transfers ownership of "your covered auto"; or

            **(3)** the named insured obtains other insurance on "your covered auto"; or

            **(4)** the named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.

        **b.** may cancel for any reason after this policy is in effect for 60 days.

    **3.** If this is a new policy, we will not cancel for nonpayment of premium during the first 60 days

following the date of issuance. However, we may cancel if a check used to pay us is dishonored for any reason.

    **4.** After this policy is in effect for 60 days, we will cancel only:

        **a.** for nonpayment of premium; or

        **b.** if your driver's license or that of:

            **(1)** any driver who lives with you; or

            **(2)** any driver who customarily uses "your covered auto";

        has been suspended or revoked. This must have occurred during:

            **(1)** the policy period; or

            **(2)** the 180 days immediately preceding the original effective date of the policy; or

        **c.** if the policy was obtained through material misrepresentation or fraud.

    **5.** Except as provided in Section **6.**, we may cancel by mailing by registered or certified mail or United States Post Office proof of mailing to the named insured shown in the Declarations at the address shown in the policy:

        **a.** at least 10 days notice if cancellation is for non-payment of premium; or

        **b.** at least 45 days notice in all other cases.

    **6.** In the event we determine that you have been charged an incorrect premium for coverage requested in your application for insurance, we shall immediately mail you notice of any additional premium due us. If within 15 days of the notice of additional premium due (or a longer time period as specified in the notice), you fail to either:

        **a.** pay the additional premium and maintain this policy in full force under its original terms; or

        **b.** cancel this policy and demand a refund of any unearned premium;

    then this policy shall be cancelled effective 15 days from the date of the notice (or a longer time period as specified in the notice).

**B. Nonrenewal.** If we decide not to renew or continue this policy, we will mail advance notice to the named insured shown in the Declarations at the address shown in this policy at least 45 days before the end of the policy period. Notice will be mailed by registered or certified mail or United States Post Office proof of mailing. Subject to this notice requirement, if the policy period is:

    **1.** Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

    **2.** 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

    **3.** 1 year or longer, we will have the right not to renew or continue this policy at each anniversary

FFB-00014

of its original effective date.

We will not refuse to renew or continue this policy solely because:

1. You were convicted of one or more traffic violations which did not involve an accident or cause revocation or suspension of your driving privilege unless you have been convicted of, or plead guilty to:

   a. two such traffic violations within an 18 month period;

   b. three or more such traffic violations within a 36 month period; or

   c. exceeding the lawful speed limit by more than 15 miles per hour; or

2. You have had an accident. However, we may refuse to renew or continue this policy if, at the time of nonrenewal, you have had two or more at-fault accidents, or three or more accidents regardless of fault, within the current 3-year period.

C. **Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. **Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## COUNTY FARM BUREAU MEMBERSHIP

Membership in your county Farm Bureau Agricultural Organization is a condition precedent or prerequisite to your ability to apply for and to renew this insurance. Failure to maintain membership in your county Farm Bureau Agricultural Organization will result in nonrenewal.

Any dues paid or payable to your county Farm Bureau Agricultural Organization are solely in consideration of membership in that organization. Such membership dues are not insurance premiums and therefore, are not in consideration of insurance provided by this policy.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same house at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## NON-JOINDER CLAUSE

No person, firm or corporation claiming to be a third-party beneficiary and not designated as an "insured" herein shall have the right to bring an action against us directly prior to first obtaining a judgment against an "insured" for a cause of action covered by this policy.

## MEDIATION

In any claim filed with us for:

1. Loss resulting from "bodily injury" in an amount of $10,000 or less;

2. "Property damage"; or

3. Loss to "your covered auto" or any "non-owned auto";

either party may demand mediation of the claim, prior to taking legal action, by filing a written request with the Department of Insurance on a form which may be obtained from the Department. The request must state:

1. Why mediation is being requested; and

2. The issues in dispute which are to be mediated.

Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

The Department shall randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference, which will be held within 45 days of the request for mediation. The conference may be held by telephone, if feasible.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed. Participants must:

1. Have authority to make a binding decision; and

2. Mediate in good faith.

Costs of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.

FFB-00015

IN WITNESS WHEREOF, THE COMPANY has caused this policy to be signed by its President and Secretary, and countersigned on the Declarations page by a duly authorized representative of the Company.

_L. E. McMullion Jr_  Secretary    _Carl B. Loop Jr._  President

---

PAP 05 54 06 99

# PERSONAL INJURY PROTECTION COVERAGE—FLORIDA

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

| Benefits | Limit of Liability |
|---|---|
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Replacement Services | No specific dollar amount |
| Accidental Death | $5,000 |
| Maximum Limit For The Total Of All Personal Injury Protection Benefits | $10,000 |

The insurance for **PERSONAL INJURY PROTECTION COVERAGE** is subject to optional deductibles and limitations as indicated in the Declarations.

### COVERAGE LIMITATION SCHEDULE

1. Work loss for the "named insured" does not apply.
2. Work loss for the "named insured" and any dependent "family member" does not apply.
3. Coverage reduced by military benefits for the "named insured" and any dependent "family member".

## I.  DEFINITIONS

The **Definitions** section is amended as follows:

A. For the purposes of this endorsement, a "motor vehicle" shall be deemed to be owned by a person if that person:
   1. Holds the legal title to such vehicle.
   2. Is a debtor having the right to possession, if such vehicle is the subject of a security agreement.
   3. Is a lessee having the right to possession, if such vehicle is the subject of a lease which:
      a. has an option to purchase; and
      b. is for a period of at least 6 months.
   4. Is a lessee having the right to possession, if such vehicle is the subject of a lease which:
      a. does not have an option to purchase;
      b. is for a period of at least 6 months; and
      c. requires the lessee to secure insurance.

B. The following definitions are replaced:
   1. "Family member" means a person related to the "named insured" by blood, marriage or adoption who is usually a resident of the "named insured's" household. This includes a ward or foster child.
   2. "Occupying" means:
      a. in or upon;
      b. entering into; or
      c. alighting from.
   3. "Your covered auto" means a "motor vehicle" owned by the "named insured" and for which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and either:
      a. A premium is charged; or
      b. It is a trailer, other than a mobile home, designed for use with a "motor vehicle".

C. The following definitions are added:
   1. "Motor vehicle" means:
      a. any self-propelled vehicle with 4 or

14

FFB-00016

more wheels which is:

**(1)** designed; and

**(2)** required to be licensed;

for use on Florida highways.

**b.** any trailer or semi-trailer designed for use with such vehicle.

However, "motor vehicle" does not include:

**a.** any motor vehicle which is:

**(1)** used in mass transit other than public school transportation;

**(2)** designed to transport more than 5 passengers (excluding the operator); and

**(3)** owned by a:

**(a)** municipality;

**(b)** transit authority; or

**(c)** political subdivision of the state.

**b.** a mobile home.

**2.** "Named insured" means:

**a.** the person named in the Declarations; or

**b.** That person's spouse, if a resident of the same household.

**3.** "Pedestrian" means a person who is not "occupying" a self-propelled vehicle.

**D.** "Insured" as used in this endorsement means:

**1.** The "named insured" or any "family member" while:

**a.** "occupying" a "motor vehicle"; or

**b.** a "pedestrian" struck by a "motor vehicle".

**2.** Any other person while:

**a.** "occupying" "your covered auto"; or

**b.** a "pedestrian" struck by "your covered auto".

## II. PERSONAL INJURY PROTECTION COVERAGE

**INSURING AGREEMENT**

**A.** We will pay, in accordance with the Florida Motor Vehicle No-Fault Law, personal injury protection benefits to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the ownership, maintenance or use of a "motor vehicle".

**B.** Subject to the limits shown in the Schedule or Declarations, personal injury protection benefits consist of the following:

**1.** Medical expenses. 80% of reasonable expenses for:

**a.** necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services; and

**b.** prosthetic devices.

This includes necessary remedial treatment and services recognized and permitted under state law for an "insured" who relies upon spiritual means through prayer alone for healing in accordance with that "insured's" religious beliefs.

**2.** Work loss. With respect to the period of disability of an "insured", 60% of any loss of income and earning capacity from that "insured's" inability to work due to "bodily injury". However, work loss does not include any loss after an "insured's" death.

**3.** Replacement services. With respect to the period of disability of an "insured", all expenses reasonably incurred in obtaining ordinary and necessary services from others instead of those that the "insured" would have performed, without income, for the benefit of his household had he not sustained "bodily injury".

**4.** Accidental death. A death benefit.

## EXCLUSIONS

**A.** We do not provide Personal Injury Protection Coverage for any "insured":

**1.** While operating "your covered auto" without the "named insured's" express or implied consent.

**2.** If that "insured's" conduct contributed to his "bodily injury" under any of the following circumstances:

**a.** intentionally causing "bodily injury" to himself; or

**b.** while committing a felony.

**3.** Other than the "named insured", if that "insured" owns a "motor vehicle" for which security is required under the Florida Motor Vehicle No-Fault Law.

**4.** Other than the "named insured" or any "family member", who is entitled to personal injury protection benefits from a person who owns a "motor vehicle" which is not a "your covered auto" under this policy, or from that vehicle owner's policy.

**5.** Who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

**B.** We do not provide Personal Injury Protection Coverage for:

**1.** The "named insured" or any "family member" while "occupying" a "motor vehicle" which is:

**a.** owned by the "named insured"; and

**b.** not a "your covered auto" under this policy.

**2.** Any "pedestrian", other than the "named insured" or any "family member" who is not a legal resident of Florida.

## LIMIT OF LIABILITY

**A.** The limits of liability shown in the Schedule or

15

Declarations for Personal Injury Protection Coverage are the most we will pay to or for each "insured" injured in any one accident, regardless of the number of:

1. "Insureds";
2. Policies or bonds applicable;
3. Vehicles involved; or
4. Claims made.

The maximum limit of liability for the total of all personal injury protection benefits shown in the Schedule or Declarations is the total aggregate limit for personal injury protection benefits available, to or for each "insured" injured in any one accident, from all sources combined, including this policy.

B. Any amounts payable under this coverage shall be reduced by any amounts paid or payable for the same elements of loss under any workers' compensation law.

C. The amount of any deductible shown in the Schedule or Declarations shall be deducted from the lesser of:

1. The total amount otherwise payable under this coverage for:
   a. medical expenses;
   b. work loss; and
   c. replacement services;
   to or for each "insured" to whom the deductible applies; or
2. The limits of liability shown in the Schedule or Declarations.

The total amount otherwise payable means the benefits payable for medical expenses, work loss and replacement services after the application of any percentage limitation.

Accidental death is not subject to a deductible.

## OTHER INSURANCE

A. No one will be entitled to receive duplicate payments for the same elements of loss under this or any other insurance. If an "insured" receives personal injury protection benefits from another insurer, that insurer shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses of processing the claim.

B. If an "insured" sustains "bodily injury" while:

1. "Occupying"; or
2. Struck by a "motor vehicle" rented or leased under a rental or lease agreement;

the personal injury protection benefits afforded under the lessor's policy shall be primary.

This provision (**B.**) does not apply if the face of the rental or lease agreement contains, in at least 10-point type, the following language:

The valid and collectible personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of personal injury protection coverage required by FLA. STAT. SECTION 627.736.

## COORDINATION OF MILITARY BENEFITS

If the Schedule or Declarations indicates that the Coordination of Military Benefits option applies to the "named insured" or any dependent "family member", any amounts payable under this coverage shall be reduced by any benefits payable by the federal government to:

1. Active or retired military personnel; or
2. Their dependent "family members".

If such military benefits are not available at the time of loss, we shall have the right to recompute and charge the appropriate premium.

III. **PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

Part **E** is replaced by the following:

### DUTIES AFTER AN ACCIDENT OR LOSS

A person seeking Personal Injury Protection Coverage must:

A. In the event of an accident, provide prompt written notice of loss to us or our authorized agent.

B. Promptly forward to us a copy of the:

1. Summons and complaint; or
2. Other process;

served in connection with any legal action that person takes against a third party to recover damages for "bodily injury".

C. Promptly give us written proof of claim, under oath if required. Such proof shall include:

1. Full details of the nature and extent of the injuries and treatment received and contemplated; and
2. Any other information which may assist us in determining the amount due and payable.

D. Submit as often as we reasonably require to mental or physical exams.

We will:

1. Pay for these exams; and
2. Forward a copy of the medical report to that person if requested.

If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent personal injury protection benefits.

IV. **PART F—GENERAL PROVISIONS**

Part **F** is amended as follows:

A. Paragraph **A.** of the **Legal Action Against Us** provision is replaced by the following:

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against us

FFB-00018

until 30 days after the required notice of loss and reasonable proof of claim has been filed with us.

**B.** Paragraph **B.** of the **Policy Period And Territory** provision is replaced by the following:

**POLICY PERIOD AND TERRITORY**

**B.** The policy territory is:

    **1.** Florida.

    **2.** The United States of America, its territories or possessions or Canada.

    This provision (**B.2.**) applies only to:

    The "named insured" or any "family member" while "occupying" a "motor vehicle"; or, while a pedestrian, through being struck by a "motor vehicle" outside the State of Florida but within the United States of America, its territories or possessions or Canada.

**C.** The **Our Right To Recover Payment** provision is replaced by the following:

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another we shall, to the extent of our payment, be subrogated to that right. That person shall:

    **1.** Execute and deliver instruments and papers and do whatever else is necessary to secure our rights; and

    **2.** Do nothing after loss to prejudice these rights.

**B.** If we make a payment under this coverage and the person to or for whom payment was made sustained "bodily injury" while:

    **1.** "Occupying"; or

    **2.** A "pedestrian" struck by:

    a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, we shall, to the extent of our payment, be entitled to reimbursement from the person who owns such motor vehicle or that person's insurer.

**D.** The following provisions are added:

**ARBITRATION**

If a provider of medical services or supplies has agreed to accept assignment of personal injury protection benefits:

**1.** Any claims dispute, involving medical expenses, between that provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code.

**2.** The prevailing party shall be entitled to attorney's fees and costs as follows:

    **a.** if the arbitration is greater than the sum of the amount we offer at arbitration plus fifty percent of the difference between:

        **(1)** the amount of the claim asserted by the provider at arbitration; and

        **(2)** the amount we offer at arbitration; then the provider is the prevailing party.

    **b.** if the arbitration award is less than the sum of the amount we offer at arbitration plus fifty percent of the difference between:

        **(1)** the amount of the claim asserted by the provider at arbitration; and

        **(2)** the amount we offer at arbitration; then we are the prevailing party.

**3.** If neither **a.** nor **b.** above applies, there is no prevailing party and each side is responsible for its own attorney's fees and costs.

The amount of the offer or claim at arbitration is the amount of the last written offer or claim made at least thirty days prior to arbitration.

**PAYMENT OF CLAIMS**

If a person seeking Personal Injury Protection Coverage is charged with committing a felony, we shall withhold benefits until, at the trial level:

**1.** The prosecution makes a formal entry on the record that it will not prosecute the case against that person;

**2.** The charge is dismissed; or

**3.** That person is acquitted.

**MODIFICATION OF POLICY COVERAGES**

**1.** Any coverage provided under Part **B** or Part **C** of this policy shall be excess over any personal injury protection benefits paid or payable.

**2.** Regardless of whether the limits for personal injury protection benefits have been exhausted, any coverage provided under Part **B** shall pay the amount of any claim for medical expenses payable under this coverage which exceeds the 80% limitation for medical expenses.

**3.** No coverage is provided under Part **B** for the amount of any applicable deductible under this coverage.

**PROVISIONAL PREMIUM**

**1.** In the event of any change in the:

    **a.** rules;

    **b.** rates;

    **c.** rating plan;

    **d.** premiums; or

    **e.** minimum premiums;

    applicable to this coverage, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law which provide for the exemption of persons from tort liability, the premium shown in the Declarations for any coverage under:

    **a.** Part **A**;

    **b.** Part **B**; or

    **c.** Part **C**;

FFB: 00019

of this policy shall be deemed to be provisional and subject to recomputation.

2. If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to the "named insured", in accordance with the Florida Motor Vehicle No-Fault Law, with respect to insurance

provided under a previous policy.

3. If the final recomputed premium exceeds the premium shown in the Declarations, the "named insured" shall pay us:

   a. The excess amount; and

   b. The amount of any return premium previously credited or refunded.

---

### PP 03 05 08 86
## LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

---

# THE FOLLOWING ENDORSEMENTS APPLY ONLY IF COVERAGE IS INDICATED AS APPLICABLE IN THE DECLARATIONS

### PP 03 02 06 98
## OPTIONAL LIMITS TRANSPORTATION EXPENSES COVERAGE

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**OPTIONAL LIMITS TRANSPORTATION EXPENSES COVERAGE**

When there is a loss to a "your covered auto" described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Limits Transportation Expenses Coverage is afforded, or to a "non-owned auto":

Coverage for Transportation Expenses provided under Part D of this policy is increased to the limits shown in the Schedule or in the Declarations.

---

### PP 03 03 04 86
## TOWING AND LABOR COSTS COVERAGE

We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

---

### PP 03 13 06 98
## COVERAGE FOR EXCESS SOUND REPRODUCING EQUIPMENT, AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT, AND TAPES, RECORDS, DISCS AND OTHER MEDIA

Coverage is provided where a premium and Limit of Liability is shown for this coverage.

**NOTICE**

The amount shown in the Schedule or in the Declarations is not necessarily the amount you will

receive at the time of loss or damage for the described property. PLEASE refer to the Limit of Liability Provisions below.

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

FFB-00020

I. **INCREASED LIMITS FOR EXCESS SOUND REPRODUCING EQUIPMENT**

The following is added to Paragraph **A.** of the Limit of Liability provision of Part **D**:

In the event of a loss to a "non-owned auto", or to a "your covered auto" shown in the Schedule or in the Declarations for which **Increased Limits For Excess Sound Reproducing Equipment** applies:

The most we will pay for loss to equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is installed in locations not used by the auto manufacturer for installation of such equipment or accessories, is increased from $1,000 to the amount shown in the Schedule or in the Declarations.

II. **COVERAGE FOR AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT**

A. Exclusion **5.** of Part **D** - Coverage For Damage To Your Auto does not apply to the extent that coverage is provided under this endorsement for audio, visual and data electronic equipment.

B. In the event of a loss to a to a "non-owned auto", or to a "your covered auto" shown in the Schedule or in the Declarations for which **Coverage For Audio, Visual And Data Electronic Equipment** applies, we will pay, without application of a deductible, for direct and accidental loss to:

1. Any electronic equipment that receives or transmits audio, visual or data signals and is not designed solely for the reproduction of sound; and

2. Any accessories used with such equipment.

**Coverage for Audio, Visual and Data Electronic Equipment** applies only if:

1. The equipment is permanently installed in the auto; or

2. The equipment is:

   a. removable from a housing unit which is permanently installed in the auto;

   b. designed to be solely operated by use of the power from the auto's electrical system; and

   c. in or upon "your covered auto" or any "non-owned auto" at the time of the loss.

C. **Coverage For Audio, Visual And Data Electronic Equipment** does not apply to equipment or accessories that are excluded from coverage under Exclusion **4.** of Part **D.**

D. With respect to **Coverage For Audio, Visual And Data Electronic Equipment**, the **Limit of Liability** provision of Part **D** is replaced by the following:

**LIMIT OF LIABILITY**

1. Our limit of liability for the total of all losses to audio, visual or data electronic equipment and any accessories used with the equipment, as a result of any one occurrence shall be the lesser of the:

   a. amount shown in the Schedule or in the Declarations;

   b. actual cash value of the stolen or damaged property; or

   c. amount necessary to repair or replace the property with other property of like kind and quality.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

III. **COVERAGE FOR TAPES, RECORDS DISCS AND OTHER MEDIA**

A. Exclusion **6.** of Part **D** - Coverage For Damage To Your Auto does not apply to the extent that coverage is provided under this endorsement for tapes, records, discs or other media.

B. We will also pay, without application of a deductible, for direct and accidental loss to tapes, records, discs or other media if they are:

1. Owned by you or any "family member"; and

2. In or upon "your covered auto" or any "non-owned auto" at the time of the loss.

C. With respect to **Coverage For Tapes, Records, Discs and Other Media**, the **Limit of Liability** provision of Part **D** is replaced by the following:

**LIMIT OF LIABILITY**

1. Our limit of liability for the total of all losses to tapes, records, discs or other media, as a result of any one occurrence shall be the lesser of:

   a. $200;

   b. the actual cash value of the stolen or damaged property; or

   c. the amount necessary to repair or replace the property with other property of like kind and quality.

If increased limits for excess sound reproducing equipment or coverage for audio, visual and data electronic equipment is purchased, the limit of liability applicable for losses to tapes, records, discs or other media under this endorsement is in addition to any limits of liability applicable to excess sound

19

FFB-00021

reproducing equipment or audio, visual or data electronic equipment, and any accessories used with either equipment.

2. An adjustment for depreciation and physical condition will be made in deter-

mining actual cash value in the event of a total loss.

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

---

PAP 03 23  06 98

## MISCELLANEOUS TYPE VEHICLE ENDORSEMENT

NOTICE

**For the Collision and Other Than Collision Coverages, the amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of loss or damage for the described property. PLEASE refer to the Limit of Liability Provisions below.**

With respect to the "miscellaneous type vehicles" and coverages described in the Schedule or in the Declarations, the provisions of the policy apply unless modified by this endorsement.

### I.  DEFINITIONS

The **Definitions** Section is amended as follows:

A. For the purpose of the coverage provided by this endorsement "miscellaneous type vehicle" means a motor home, motorcycle or other similar type vehicle, all terrain vehicle, dune buggy or golf cart.

B. The definition of "your covered auto" is replaced by the following:

"Your covered auto" means:

1. Any "miscellaneous type vehicle" shown in the Schedule or in the Declarations.

2. A "newly acquired auto".

3. Any "trailer".

4. Any "miscellaneous type vehicle" or auto you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. loss; or

   e. destruction.

This provision (4.) does not apply to Coverage For Damage To Your Auto.

C. Paragraph 1. of the definition of "Newly acquired auto" is replaced by the following:

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

   a. a private passenger auto;

   b. a pickup or van, for which no other insurance policy provides coverage, that:

      (1) has a Gross Vehicle Weight of 14,000 lbs. or less; and

      (2) is not used for the delivery or transportation of goods and materials unless such use is:

         (a) incidental to your "business"

of installing, maintaining or repairing furnishings or equipment; or

      (b) for farming or ranching; or

   c. any "miscellaneous type vehicle" of the same type shown in the Schedule or in the Declarations.

### II.  PART A - LIABILITY COVERAGE

Part A is amended as follows:

A. The definition of "insured" is replaced by the following:

"Insured" means:

1. You or any "family member" for the ownership, maintenance or use of "your covered auto".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

B. The **Exclusions** Section is amended as follows:

1. Exclusion B.1. is replaced by the following:

   We do not provide Liability Coverage for the ownership, maintenance or use of any vehicle which:

   a. has fewer than four wheels; or

   b. is designed mainly for use off public roads.

   This exclusion (B.1.) does not apply:

   a. while such vehicle is being used by an "insured" in a medical emergency; or

   b. to any "trailer"; or

   c. to a vehicle insured for Liability Coverage under this endorsement.

2. The following exclusion applies under Part A to any vehicle for which the Schedule or Declarations indicates that the passenger hazard is excluded:

FFB-00022

We do not provide Liability Coverage for any "insured" for Bodily Injury" to any "insured" while "occupying" the described "miscellaneous type vehicle".

## III. PART B - MEDICAL PAYMENTS COVERAGE

Exclusion **1.** of Part **B** is replaced by the following:

We do not provide Medical Payments Coverage for any "insured" for "bodily injury" sustained while "occupying" any motorized vehicle having fewer than four wheels. However, this exclusion (**1.**) does not apply to a motorized vehicle having fewer than four wheels if it is insured for Medical Payments Coverage under this endorsement.

## IV. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

Part D is amended as follows:

**A.** The following is added to the Insuring Agreement:

We will pay for direct and accidental loss to facilities or equipment designed to be used with a "your covered auto" shown in the Schedule or in the Declarations which is a motor home, while such facilities or equipment is in or attached to the motor home. Facilities or equipment include but are not limited to:

1. Cooking, dining, plumbing, or refrigeration facilities;

2. Awnings or cabanas; or

3. Any other facilities or equipment designed to be used with a motor home.

**B.** The following is added to the definition of "non-owned auto":

3. Any motor home, motorcycle or other similar type vehicle, all terrain vehicle, dune buggy or golf cart you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

**a.** breakdown;     **d.** loss; or

**b.** repair;     **e.** destruction.

**c.** servicing;

**C.** The **Exclusion** Section is amended as follows:

1. Exclusion **8.** does not apply to:

a. any "miscellaneous type vehicle", shown in the Schedule or in the Declarations, which is a motor home; and

b. facilities or equipment designed to be used with the described motor home while in or attached to the motor home.

2. The following exclusions are added:

a. we will not pay for loss to:

(1) clothing or luggage;

(2) business or office equipment; or

(3) articles which are sales samples or used in exhibitions.

b. this coverage does not apply to furnishings or equipment that are excluded from coverage under Exclusions **4.**, **5.**, **6.**, **10.** or **11.** of Part **D.**

**D.** With respect to the Coverage(s) shown as applicable to a vehicle described in the Schedule or in the Declarations, the **Limit Of Liability** provision is replaced by the following:

**LIMIT OF LIABILITY**

**A.** Our limit of liability for loss will be the lesser of the:

1. Amount shown in the Schedule or in the Declarations;

2. Actual cash value of the stolen or damaged property; or

3. Amount necessary to repair or replace the property with other property of like kind and quality.

Our payment for loss will be reduced by any applicable deductible shown in the Schedule or in the Declarations. If loss to more than one "your covered auto" results from the same "collision" only the highest applicable deductible will apply.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

---

**PP 03 28  06 98**

# MISCELLANEOUS TYPE VEHICLE AMENDMENT (MOTOR HOMES)

**WARNING**
THE COVERAGE PROVIDED BY THIS POLICY WITH RESPECT TO A MOTOR HOME THAT YOU OWN:
- **DOES NOT PROVIDE LIABILITY, MEDICAL PAYMENTS OR PHYSICAL DAMAGE COVERAGE WHILE THE MOTOR HOME IS RENTED OR LEASED TO ANY ORGANIZATION, OR ANY PERSON OTHER THAN YOU. YOU MAY PURCHASE THIS COVERAGE FOR AN ADDITIONAL PREMIUM.**
- **DOES NOT COVER ANY PHYSICAL DAMAGE LOSS YOU INCUR IF YOUR MOTOR HOME IS FRAUDULENTLY ACQUIRED BY ANY PERSON OR ORGANIZATION WHILE IT IS IN THEIR CARE.**

With respect to the coverage provided by this endorsement, the provisions of the Miscellaneous Type Vehicle Endorsement apply unless modified by this endorsement.

FFB-00023

I. Except with respect to the coverages and motor homes shown in the Schedule or Declarations where a specific premium for Motor Home Rental Coverage is charged, the following additional exclusions apply to any motor home which is "your covered auto".

### A. Part A - Liability Coverage Exclusion

We do not provide Liability Coverage for the ownership, maintenance or use of any motor home while rented or leased to any organization, or any "insured" other than you. However, this exclusion (II.A.) does not apply up to the financial responsibility limits of any compulsory insurance law applicable to the state in which "your covered auto" is principally garaged.

### B. Part B - Medical Payments Coverage Exclusion

We do not provide Medical Payments Coverage for any "insured" for "bodily injury" sustained while "occupying" the motor home while it is rented or leased to any organization

or any "insured" other than you.

### C. Part D - Coverage For Damage To Your Auto Exclusion

We will not pay for loss to the motor home or its facilities or equipment which occurs while the motor home is rented or leased to any organization, or person other than you.

II. The following additional exclusion also applies to any motor home which is "your covered auto" regardless of any other coverage which may be afforded by this endorsement:

Part D - Coverage for Damage To Your Auto Exclusion

We will not pay for loss to the motor home or its facilities or equipment due to fraudulent acquisition by any person or organization, which occurs while the motor home is:

a. rented to;

b. used by; or

c. in the care of;

that person or organization.

---

PP 03 19 08 06

## ADDITIONAL INSURED—LESSOR

... liability and any required no-fault coverages provided of this policy for "your leased auto" also apply to any person named in the Declarations as an additional insured. This insurance is subject to the following additional provisions:

1. We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

   a. you or any "family member", or

   b. any other person except the lessor or any employee or agent of the lessor using "your leased auto".

2. "Your leased auto" means:

   a. an auto shown in the Declarations which you lease for a continuous period of at least six months under a written agreement that requires you to provide primary insurance for the lessor; and

   b. any substitute or replacement auto furnished by the lessor named in the Declarations.

3. If we terminate this policy, notice will also be mailed to the lessor.

4. The lessor is not responsible for payment of premiums.

5. The designation of the lessor as an additional insured shall not operate to increase our limits of liability.

---

PAP 03 34 06 98

## JOINT OWNERSHIP COVERAGE

I. DEFINITIONS

The Definitions Section is amended as follows:

A. For the purpose of the coverage provided by this endorsement, "you" and "your" refer to two or more:

1. Individuals, other than husband and wife, residing in the same household; or

2. "Non-resident relatives";

who jointly own:

1. A private passenger auto; or

2. A pickup or van that:

   a. has a Gross Vehicle Weight of 14,000 lbs. or less; and

   b. is not used for the delivery or transportation of goods and materials unless such use is:

   (1) incidental to your "business" of installing, maintaining, or repairing furnishings or equipment; or

   (2) for farming or ranching.

B. The definition of "your covered auto" is replaced by the following:

"Your covered auto" means:

1. Any vehicle shown in the Schedule or in the Declarations.

2. A "newly acquired auto".

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. breakdown;

   b. repair;

FFB-00024

c.   servicing;

d.   loss; or

e.   destruction.

This provision (**4.**) does not apply to Coverage For Damage To Your Auto.

**C.**   The following definition is added:

"Non-resident relatives" means two or more persons related by blood, marriage or adoption

who · ie in separate households. This includes a ward or foster child.

**II.   PART A - LIABILITY COVERAGE**

The following exclusion is added to Part **A:**

We do not provide Liability Coverage for the ownership, maintenance or use of any vehicle, other than "your covered auto" by any:

1.   "Non-resident relative"; or

2.   "Family member" of a "non-resident relative".

---

PP 03 07 06 98

# TRAILER/CAMPER BODY COVERAGE
## (MAXIMUM LIMIT OF LIABILITY)

**NOTICE**

The amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of loss or damage for the described property. PLEASE refer to the Limit Of Liability provision below.

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**A.**   For the purpose of the coverage provided by this endorsement, "your covered auto" means a "trailer" or camper body.

**B.**   Exclusion **8.** of Part D—Coverage For Damage To Your Auto does not apply to coverage provided by this endorsement.

**C.**   We will pay for direct and accidental loss to:

1.   A "trailer" or camper body described in the Schedule or in the Declarations; and

2.   Facilities or equipment designed to be used with the described "trailer" or camper body while in or attached to the "trailer" or camper body. Facilities or equipment include but are not limited to:

a.   Cooking, dining, plumbing, or refrigeration facilities;

b.   Awnings or cabanas; or

c.   Any other facilities or equipment designed to be used with a "trailer" or camper body.

We will pay for loss caused by:

1.   Other than "collision" only if the Schedule or Declarations indicates that Other Than Collision coverage is provided for that "trailer" or camper body.

2.   "Collision" only if the Schedule or Declarations indicates that Collision coverage is provided for that "trailer" or camper body.

**D.**   The following exclusions are added:

1.   We will not pay for loss to:

a.   Clothing or luggage;

b.   Business or office equipment; or

c.   Articles which are sales samples or used in exhibitions.

2.   This coverage does not apply to furnishings or equipment that are excluded from coverage under exclusions **4.**, **5.**, **6.**, **10.** or **11.** of Part D.

**E.**   With respect to coverage under this endorsement, the Limit Of Liability provision of Part D is replaced by the following:

**LIMIT OF LIABILITY**

Our limit of liability for loss will be the lesser of the:

1.   Amount shown in the Schedule or in the Declarations;

2.   Actual cash value of the stolen or damaged property; or

3.   Amount necessary to repair or replace the property with other property of like kind and quality.

Our payment for loss will be reduced by any applicable deductible shown in the Schedule or in the Declarations. If loss to more than one "your covered auto" results from the same "collision", only the highest applicable deductible will apply. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

FFB· 00025

PP 03 08 06 94

## COVERAGE FOR DAMAGE TO YOUR AUTO
### (Maximum Limit of Liability)

**NOTICE:** The amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of loss or damage for the described property. PLEASE refer to the Limit Of Liability provision below.

With respect to the Coverage(s) shown as applicable to a vehicle described in the Schedule or in the Declarations, the Limit Of Liability provision in Part **D** is replaced by the following:

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:

    **1.** Amount shown in the Schedule or in the Declarations.

    **2.** Actual cash value of the stolen or damaged property; or

    **3.** Amount necessary to repair or replace the property with other property of like kind and quality.

Our payment for loss will be reduced by any applicable deductible shown in the Schedule or in the Declarations. If loss to more than one "your covered auto" results from the same "collision," only the highest applicable deductible will apply.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

---

PP 03 18 06 98

## CUSTOMIZING EQUIPMENT COVERAGE

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

A. Exclusion **11.** of Part **D**—Coverage For Damage To Your Auto does not apply to coverage provided by this endorsement.

B. With respect to a vehicle for which the Schedule or Declarations indicates that Customizing Equipment Coverage applies, we will pay for direct and accidental loss to custom furnishings or equipment including, but not limited to:

    **1.** Special carpeting or insulation;

    **2.** Furniture or bars;

    **3.** Height-extending roofs; or

    **4.** Custom murals, paintings, or other decals or graphics.

C. This coverage does not apply to furnishings or equipment that are excluded from coverage under Exclusions **4.**, **5.**, **6.**, **8.** or **10.** of Part **D**.

FFB-00026