IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

DR. PAUL ZIDEL, on behalf of himself     CASE NO. 00-6061-CIV-FERGUSON/SNOW
and all others similarly situated,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, and
COMMUNITY CARE NETWORK, INC.,
d/b/a CCN,

    Defendants.
_____/

SALVATORE LARUSSO D.C.     CASE NO. 01-8110-CIV-FERGUSON/SNOW
d/b/a FAMILY CHIROPRACTIC CENTER,
on behalf of himself and all others similarly situated,

    Plaintiff,

v.

FLORIDA FARM BUREAU CASUALTY
INSURANCE COMPANY,

    Defendant.
_____/

FILED by ___ D.C.
DEC 7 2001
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

### FLORIDA FARM BUREAU'S REPLY IN SUPPORT OF
### ITS MOTION TO DISMISS THE COMPLAINT

Defendant Florida Farm Bureau Casualty Insurance Company ("Florida Farm Bureau") files its Reply in Support of its Motion to Dismiss the Complaint ("Motion"), and states:

#### I. The Court Should Strike The Response As Untimely

As a threshold matter, the Court should strike the Plaintiff's Response to our Motion as untimely because it was filed and served *six months* after it was due. We filed our Motion on April 16, 2001. Per agreement with the Plaintiff's attorney, the Response was due to be served



and filed on May 21, 2001. On May 14, 2001, the Court held a status hearing on this and several related cases, which the Court ultimately consolidated. At that hearing, the Court orally denied motions to dismiss in some of the consolidated cases, but specifically stated it was reserving ruling on Florida Farm Bureau's Motion to Dismiss, as well as its Motion to Compel Arbitration. That ruling was reduced to writing in the Court's Omnibus Order of September 28, 2001, in which the Court specifically listed which motions it was denying. Ours was not among them, but was instead referred to the Magistrate for a Report and Recommendation.

Nonetheless, the Plaintiff has persisted since May in maintaining the fiction that the Court denied our Motion at the May 14 hearing, and that he therefore was not obligated to respond – even after the September 28 Omnibus Order made it clear the Court had *not* denied our Motion. But the Plaintiff suddenly decided to file his Response on November 21, 2001. Coincidentally, eight days earlier in her Report and Recommendation on our Motion to Compel Arbitration, Magistrate Judge Snow noted that "***Believing*** that the Court orally had denied Farm Bureau's motion to dismiss the instant complaint, the plaintiff did not file a response after the May 14 hearing." Report and Recommendation at 3 n.1 (emphasis added).[1] The Court should not reward the Plaintiff for his delay by considering his extremely untimely response. It should strike the Response and grant our Motion as unopposed.

## II. The Plaintiff Did Not Respond To Our Arguments To Dismiss The State Law Claims

In the event the Court decides to consider the Response, the Plaintiff has given the Court no reason to deny our Motion. In the first place, the Plaintiff did not directly respond to any of the numerous arguments we raised as to why the Court should dismiss his state law claims

---

[1] The Plaintiff brazenly misrepresents the Magistrate's position in his Response. The Plaintiff claims the Magistrate "notes" that he did not file a Response because the Court *had* orally denied our Motion to Dismiss. Response at 2. As the exact quote above makes clear, the Magistrate noted nothing of the kind. She only noted that the Plaintiff *believed* the Court had denied our Motion.

2

alleging unjust enrichment, breach of a third-party contract, violation of Florida Statute Section 627.736(10), and seeking a declaratory judgment.

At the beginning of his Response, the Plaintiff claims that in other memoranda opposing other motions to dismiss in the consolidated cases, he "fully addressed the issues once again raised by Florida Farm Bureau," without specifying what arguments in our Motion or which claims in the Complaint the other responses purportedly address. He simply cites to the other memoranda and incorporates them into the instant Response, apparently wanting us and the Court to figure out how each response supposedly answers each of our arguments.

That is, frankly, an impossible task. The consolidated cases are not "identical" as the Plaintiff claims. Each has its own unique set of facts.[2] The counts alleged against each Defendant are different in every case, and in contrast to the Plaintiff's allegation, the arguments in each motion to dismiss are not the same. Accordingly, there is no way to tell by referring to the other responses the Plaintiff cites which of our arguments he is purporting to address. The simple fact is the Plaintiff did not respond to any of our arguments as to why the Court should dismiss Counts I, II, IV, and V – the state law claims. We stand on those arguments here, and the Court should dismiss those counts of the Complaint.

### III. The Plaintiff Improperly Attempts To Amend His Complaint In His Response

As we explained in our Motion, the Complaint boils down to the Plaintiff's dissatisfaction with the amounts Florida Farm Bureau reimbursed him for providing medical treatment to the Company's policy holders who had been in car accidents. Throughout the Complaint and in the only exhibit attached to it, the Plaintiff alleges that Florida Farm Bureau improperly paid him only 80% of his reasonable and necessary medical expenses incurred in

---

[2] We note the Court did not consolidate these cases for trial, but only for discovery and docket management purposes.

3

treating insureds. *See, e.g.,* Complaint at ¶¶ 61-64, Exhibit 1 to the Complaint. Yet as the Plaintiff himself acknowledges in his Complaint, *by law* Florida Farm Bureau is only required to pay 80% of the Plaintiff's reasonable and necessary medical expenses. *See, e.g.,* Complaint at ¶¶ 8, 9, 11, 14. Therefore, as we pointed out in our Motion, the Plaintiff has not alleged any damages on the face of the Complaint.

In his Response, the Plaintiff claims he was alleging something different than he actually alleges in his Complaint. The Plaintiff now says what he was really claiming in his Complaint was that (1) in the one example he gave, Florida Farm Bureau should have paid him 100% of his reasonable and necessary costs, and (2) in other instances, Florida Farm Bureau improperly discounted his bills by 20% and *then* paid him 80% of the discounted rate.[3]

While that may be what the Plaintiff now wants to allege in his Complaint, it most certainly is not what he *actually* alleged. It is well settled law that a Plaintiff may not attempt to amend his Complaint by explaining or adding allegations in his response to a motion to dismiss. *Harrell v. United States*, 13 F.3d 232 (7th Cir. 1993); *Thomason v. Nachtrieb*, 888 F.2d 1202 (7th Cir. 1989); *Ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173 (3d Cir. 1988).

Accordingly, the Court should restrict its consideration to the allegations the Plaintiff *actually* made in the Complaint, not those he very much belatedly attempts to add here. At the very least, if the Court is inclined to consider the new allegations, it should require the Plaintiff to properly amend his Complaint so that we can properly respond to the additional claims.

---

[3] The Plaintiff, of course, doesn't give any examples of this supposed improper discounting. He merely tries to piggyback onto the one example in the Complaint, and allege that Florida Farm Bureau *would have* discounted that bill by 20% and then paid 80% of the discounted rate if it had the opportunity. This argument is preposterous. The Plaintiff now apparently is trying to make his Complaint stick using *hypothetical* situations, instead of alleging *facts*. Furthermore, in asking the Court to consider this hypothetical discounted bill, the Plaintiff is asking the Court to consider matters outside the four corners of the Complaint. This is, of course, impermissible in ruling on a motion to dismiss.

### IV. The Plaintiff Has Not Alleged Any Predicate Acts To Sustain A RICO Claim

Count III, alleging violations of the RICO Act, 18 U.S.C. § 1961 *et seq.*, is the only claim alleging a federal question and entitling the Plaintiff to invoke the jurisdiction of this Court. As we explained in great detail in our Motion to Dismiss, the Plaintiff has failed to allege the necessary "predicate acts" to show that Florida Farm Bureau engaged in any "pattern of racketeering activity." *See Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311-12 (11th Cir. 2000). Nothing in the Response changes that conclusion. The Complaint on its face fails to allege any of the racketeering activities complained of – fraud, extortion, and interstate travel.[4]

#### A. The Complaint Does Not Allege **Fraud**

The Plaintiff's mail and wire fraud allegations fail at a very fundamental level: they do not allege *fraud*. The allegations are based on the Plaintiff's claim that Florida Farm Bureau *failed to disclose* that its payments to him were based on allegedly illegal preferred provider discounts. Complaint at ¶ 128. But the Complaint *on its face* contradicts itself on this crucial point when it admits that the Explanation of Benefits ("EOB") forms Florida Farm Bureau sent to the Plaintiff state that "*the application of a discount based upon the CCN Preferred Provider Agreements*" had been applied. Complaint at ¶ 49 (emphasis added). Furthermore, the EOB form attached to the Complaint as Exhibit 1 – which the Plaintiff admits is an example of the EOBs Florida Farm Bureau sent to him – plainly shows the discount on its face in the column

---

[4] The Plaintiff premises his RICO claim on four alleged racketeering activities: (1) 18 U.S.C. § 1341 (mail fraud); (2) 18 U.S.C. § 1343 (wire fraud); (3) 18 U.S.C. § 1951 (Hobbs Act Extortion); and (4) 18 U.S.C. § 1952 (interstate travel in aid of racketeering). Two other alleged violations, 18 U.S.C. § 1954 (unlawful employee welfare fund payments); and 18 U.S.C. § 961 (Strengthening Armed Vessel of Foreign Nation) are on their face inapplicable here. The Plaintiff, after mentioning these latter two acts in the introduction to Count III, does not allege any facts relating to them. And he does not even address our arguments as to these two acts in his Response. For those reasons, the Court should disregard and/or strike these latter two purported predicate acts.

headed "*PPO Reduction*." Exhibit 1 also states that "[t]hese PPO . . . reductions are according to your contract with Medview Services, Inc." Exhibit 1 to the Complaint.

The essence of a fraud claim is a knowing *misstatement, omission, or concealment* of a material fact. Yet the Complaint itself acknowledges there was no misstatement, omission, or concealment. The Complaint and its exhibit plainly show that Florida Farm Bureau *told* the Plaintiff it was discounting its bills based on his preferred provider contracts. Thus, he has not met even the most basic of RICO pleading requirements – alleging fraud. *See Silverman v. United States*, 213 F.2d 405, 407 (5th Cir. 1954) (the scheme required to plead a mail fraud claim must be "reasonably calculated to deceive persons of ordinary prudence and comprehension"). No person of "ordinary prudence and comprehension" could have been deceived by the EOB forms. Thus, the Complaint does not allege mail or wire *fraud*.[5]

The Plaintiff's Response to our Motion only reinforces this point. He acknowledges in the Response that *all* the EOB forms, not just the example, *on their face* state that Florida Farm Bureau took a preferred provider reduction based on the Plaintiff's contract with Medview Services, and the amount of the reduction. Response at 14 (citing the Complaint at ¶¶ 49, 50, 61-65, 68, 69, and 107). Given this admission that Florida Farm Bureau did not misstate, conceal or omit anything from the Plaintiff, but rather openly told him what it was doing, it is hard to fathom how the Plaintiff can continue to maintain in good faith that he has pleaded any *fraud*. As is evidenced by his own words, he has not. Consequently, the Plaintiff has not adequately pleaded mail or wire fraud as a predicate act.

---

[5] The Plaintiff alleges in Paragraph 50 of the Complaint that the EOB forms state that Florida Farm Bureau is entitled to take the preferred provider discounts. However, Exhibit 1 – an acknowledged example of the EOB forms – contains no such statement. Where an exhibit to the Complaint contradicts the facts alleged in the Complaint, the exhibit controls, and dismissal may be appropriate. *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

### B. The Complaint Does Not Allege Extortion

The Hobbs Act extortion claim fails at the very same fundamental level: the Complaint fails to allege any facts showing the Plaintiff had anything to fear from Florida Farm Bureau. The Complaint, merely tracking the language of the Hobbs Act, states in conclusory terms that Florida Farm Bureau "exploited a fear of economic loss and/or loss of business." Complaint at ¶¶ 134-136. But it is devoid of *any* facts describing in *any* detail how Florida Farm Bureau supposedly exploited this alleged fear, or how the Plaintiff was subject to "economic loss and/or loss of business" *at the hands of Florida Farm Bureau*.

In direct response to our raising this pleading deficiency in our Motion, the Plaintiff claims in his Response his fear of economic loss was that he was afraid of angering *his preferred provider organization* (Medview) and/or *his patients* if he billed patients for the portions of bills that Florida Farm Bureau did not pay. Response at 18. These allegations are not in the Complaint. As we discussed earlier, a Plaintiff may not attempt to amend his Complaint by making additional factual allegations in a response to a motion to dismiss. Therefore, the Court should disregard these new claims, which are nothing more than a failed attempt to respond to the flagrant deficiencies in the Complaint we outlined in our Motion.

Just as importantly, however, these new allegations do not overcome those deficiencies. The Plaintiff *still* has not identified how he was subject to any economic loss *from Florida Farm Bureau*. The fact that that the preferred provider organization or the Plaintiff's patients might be mad at him does nothing to show how *Florida Farm Bureau* was capable of costing him any business. Again, on its face, the Complaint contradicts any potential claim that Florida Farm Bureau was capable of harming the Plaintiff economically – a point the Response reinforces.

Both the Complaint and the Response extensively discuss preferred provider organizations, and their supposed hallmark of "steerage" – the medical provider agrees to discount his fees in return for participants such as insurance companies "steering" more patients to the provider. Complaint at ¶¶ 14-35; Response at 7-8. Both the Complaint and the Response also discuss at length how Florida Farm Bureau is supposedly engaging in a fraudulent scheme by taking the discounts *without doing anything in return for the provider such as directing patients to him*. See, e.g., Complaint at ¶ 31, Response at 8. In other words, *Florida Farm Bureau wasn't providing any business to the Plaintiff.*

If, as the Complaint and the Response go out of their way to acknowledge, Florida Farm Bureau wasn't providing business to the Plaintiff, then the only logical conclusion the Court can draw is that the Plaintiff could have no reasonable fear of economic loss *from Florida Farm Bureau* because Florida Farm Bureau had no business to take away from him. *See United States v. Flynt*, 15 F.3d 1002 (11th Cir. 1994) (victim's fear of economic loss must be *reasonable*). Accordingly, even the Plaintiff's last-minute attempt to add new facts to the Complaint through his Response does not work to save the Hobbs Act allegations. The Plaintiff has not properly pleaded extortion as a predicate activity.

The Response does not even address the interstate travel allegations that we demonstrated in the Motion were insufficient. The Plaintiff apparently concedes this point. Accordingly, because the Plaintiff has not adequately pleaded any predicate activities, and cannot do so, the Court should dismiss Count III alleging violations of the RICO Act with prejudice.

### V. The Plaintiff's Cases

One final issue bears mentioning – the cases the Plaintiff cites in his Response. With great fanfare, he cites an Eleventh Circuit case, *HCA Health Servs. of Ga., Inc. v. Employers*

*Health Ins. Co.*, 240 F.3d 982 (11th Cir. 2001), as well as twelve unpublished Florida state court decisions purportedly trumpeting the evils of the "Silent PPOs" in which he which he accuses Florida Farm Bureau of participating. But stripping the cases of the Plaintiff's inflammatory and misleading descriptions shows they have nothing to do with the issues presented in our Motion.

*HCA* involved a claim under the federal ERISA statute in which the Eleventh Circuit held that an insurance plan administrator's interpretation of policy language allowing the insurance company to discount a medical provider's bills was not reasonable under ERISA standards. The decision involved a *factual* inquiry into specific policy language and interpretation of ERISA standards, as opposed to this case, which involves a *legal* determination of whether the Plaintiff has alleged any *fraud*. Thus, there is nothing relevant about the holding of *HCA* to this Motion. The *HCA* Court at the very end of its 27-page opinion discussed problems with so-called "Silent PPOs," but did so in *dicta* that had nothing to do with the central holding of the case. *HCA* has no precedential value in determining whether he has adequately pleaded fraud.

Likewise, the twelve Florida cases interpreting Florida Statute Section 627.736(10) do not go to the central issue the Court has to decide in this Motion – whether the Plaintiff has alleged any kind of fraud or extortion sufficient to maintain a RICO claim and thus allow the Court to maintain jurisdiction of this case. In addition, none of the twelve cases address the grounds we argued as to why the Court should dismiss the count of the Complaint alleging a violation of Section 627.736(10) – there is no private right of action allowed under the statute. *See* Motion at 27-28. In fact, none of the decisions discuss any of the facts of the underlying cases, or any of the legal grounds for or against dismissal or summary judgment. Given the lack of factual or legal discussion, it is impossible to determine whether the facts and issues presented in those cases have anything to do with the facts and claims alleged here.

In contrast, in *Autrey v. Hartford Ins. Co. of the Midwest*, 8 Fla. L. Weekly Supp. 802 (Fla. 19th Jud'l Cir. July 16, 2001) (attached as Exhibit A), the Court specifically held that a contract such as Larusso's with a managed care agency is not a preferred provider agreement subject to regulation under Section 627.736(10). That section regulates the relationship between insurance companies and insureds, not what insurance companies pay doctors, the Court held. In that case, the Court granted summary judgment in favor of an insurance company on an insured's claim that the company took an improper preferred provider discount in paying her physician – exactly the claim Larusso makes here.

## CONCLUSION

For all the foregoing reasons as well as the reasons we cited in our Motion to Dismiss, the Court should dismiss the Complaint with prejudice.

Respectfully submitted,

HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
(305) 374-8500
(305) 789-7799 (fax)
Attorneys for the Defendant

By: _____
Gregory Baldwin
Florida Bar No. 527394
Robert K. Levenson
Florida Bar No. 0089771

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing memorandum was served by U.S. Mail on all counsel on the attached service list, this ___ day of December, 2001.

_____
HOLLAND & KNIGHT LLP

MIA1 #1094167 v1

**MASTER SERVICE LIST**
(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 12/6/01)

### Co-Lead Counsel for Plaintiffs

ATLAS PEARLMAN, P.A.
Eric Lee, Esq.
lee@atlaslaw.com
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
Suite 1700
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Lawrence M. Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

### Co-Counsel for Plaintiffs

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
Suite 200
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995
(941) 435-1269

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue
Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

### Counsel for Beech Street and ADP

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
jmq@tewlaw.com
(305)539-2495
Thomas C. Tew, Esq.
tt@tewlaw.com
(305) 539-2106
Joseph A. DeMaria, Esq.
jad@tewlaw.com
(305) 539-2440
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

### Counsel for Progressive

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

### Counsel for CCN

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL  32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

Counsel for:
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934-Facsimile

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934-Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

BUTLER BURNETTE PAPPAS
Lauren D. Levy, Esq.
llevy@bbplaw.com
Alfred I. DuPont Building
169 East Flagler Street, Suite 1300
Miami, Florida 33131
(305) 416-9998
(305-416-6848-Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Jeffrey M. Klein, Esq.
Jklein@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

MIA1 #1090605 v1

8 Fla. L. Weekly Supp. 802a

Insurance -- Plaintiff/insured was not party to contractual agreement between medical provider and insurer and was not third-party beneficiary of contract -- Agreement between provider and insurer was not a preferred provider agreement, but simply a negotiated fee schedule to be used if an insured of the defendant uses the provider's services -- Insurer entitled to summary judgment on issue of whether agreement entered into by provider is valid agreement -- Ruling does not decide ramifications if provider is making demands on plaintiff for payment in excess of the contract rate

GLENDA AUTREY, Plaintiff, vs. HARTFORD INSURANCE COMPANY OF THE MIDWEST, Defendant. County Court, 19th Judicial Circuit in and for Indian River County. Case No. 2000-0724 CC 10. July 16, 2001. Joe Wild, Judge. Counsel: Joseph Shaughnessy. Norman Monroe.

## SUMMARY JUDGMENT ORDER

The plaintiff and defendant have both filed motions for summary judgment dealing with the issue of a contract between the defendant and Dr. Clark, the plaintiff's medical provider. The facts of the case pertinent to the issue in question are set out in Plaintiff's Response to Defendant's Motion for Summary Judgment; Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment.

The Court grants the Defendant's Motion for Summary Judgment and denies the Plaintiff's Motion for Summary Judgment. The reasons are as follows:

(1) The plaintiff is not a party to the contractual agreement between Dr. Clark and Community Care Network (CCN), nor is the plaintiff a legal third-party beneficiary of the contract.[1]

(2) The agreement between Dr. Clark and CCN is not a preferred provider agreement contemplated by Section 627.736(10), Florida Statutes. The agreement is a negotiated fee schedule to be used if an insured of the defendent uses Dr. Clark's services. This is no different than an insurance company negotiating a fee to pay *after* the service has been rendered. The goal is to reduce the money disbursed by the insurance company and preserve the benefits available to the insured. The fact that the negotiations are done beforehand, as opposed to after-the-fact should not render the agreement void. The insured is not required to use any particular provider, and is not penalized by using a provider that is not one in the position of Dr. Clark. The fact that the plaintiff chose to use Dr. Clark was a fortuitous choice that worked to her benefit.

(3) The statutory scheme in Section 627.736(10), Florida Statutes, provides a means for an insurance company to give an insured the option of buying a PPO policy. This Court agrees with other court decisions which assert that the only way to provide a PPO policy in Florida is to follow the requirements of that section. However, the statute certainly doesn't dictate what providers must charge for medical services and what insurers must pay for medical services. The section does allow the insurance company the flexibility to offer reduced premiums and altered coverages to insureds in return for their use of a preferred provider. In this case, however, the defendant did not intend to restrict the plaintiff in her choice of providers, and agreed to cover her in the manner indicated in the policy, which complied with Florida law. The facts are undisputed that the plaintiff chose her provider and the defendant paid benefits at a rate agreed to by Dr. Clark.

(4) This ruling applies only to the issue of whether the agreement entered into by Dr. Clark is a valid

**EXHIBIT A**

Case 0:00-cv-06061-WJZ   Document 398   Entered on FLSD Docket 12/10/2001   Page 14 of 14

jLENDA AUTREY, Plainti., vs. HARTFORD INSURANCE COM. .NY OF THE MII... Page 2 of 2

agreement. This ruling does not decide the ramifications if Dr. Clark is making demands on the plaintiff for payment in excess of the contract rate.

---

[1] The plaintiff does, however, *benefit* from the contract to the extent that the plaintiff's insurance benefits are dissipated at a reduced rate based on the contract between CCN and Dr. Clark.

\* \* \*