UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6061-CIV-FERGUSON/SNOW
(Consolidated Case)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CNN,

     Defendants.

_____/

MOTE WELLNESS & REHAB, INC.,
on behalf of itself and all others similarly
situated,

     Plaintiff,

vs.

AMERICAN INTERNATIONAL
INSURANCE COMPANY and
AMERICAN INTERNATIONAL
SOUTH INSURANCE COMPANY,

     Defendants.

_____/

CASE NO. 01-8549-CIV-FERGUSON

## PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION OF CLAIMS AGAINST AMERICAN INTERNATIONAL INSURANCE COMPANY AND AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY

PLEASE TAKE NOTICE that Plaintiff MOTE WELLNESS & REHAB, INC. ("MOTE"),

on behalf of itself and all others similarly situated, by its undersigned counsel, shall move this Court

for the entry of an Order granting class certification. For all the reasons set forth herein, MOTE

respectfully submits that the instant Motion should be granted in all respects.

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

## INTRODUCTION

In its Class Action Complaint, MOTE alleges five federal and state causes of action against Defendants AMERICAN INTERNATIONAL INSURANCE COMPANY and AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY (collectively, "AIG"). The claims asserted relate to AIG's systematic practice of discounting automobile Personal Injury Protection ("PIP") medical expense claims based on the operation of a "Silent PPO," or "silent preferred provider organization". "Silent PPOs" have been the subject of a number of lawsuits across the country and the resulting body of case law establishes that their existence is actionable under various federal and state laws. In conjunction with Focus Healthcare Management, Inc. ("Focus") and Chiro Alliance Corporation ("Chiro Alliance"), AIG has misappropriated MOTE's preferred provider organization discounts and applied them to Florida automobile insurance PIP claims. Through the systematic operation of this Silent PPO, AIG has been paying automobile PIP medical expense claims at a reduced rate without authority or consideration contrary to MOTE's preferred provider contract, the standard Florida AIG Automobile Policy, and the Florida statute pertaining to PIP benefits. MOTE has also alleged that, by their conduct, AIG has violated the Federal RICO Act.

## FACTUAL BACKGROUND

MOTE is a Florida corporation with its principal place of business in Boynton Beach, Florida. (Complaint ¶1). MOTE entered into a written contract with Chiro Alliance which subsequently entered into an agreement with Focus to join Chiro Alliance's "preferred provider organization" ("Focus/Chiro Alliance PPO"). Under the terms of the Focus/Chiro Alliance Agreement, Focus and Chiro Alliance acted as brokers. (Complaint ¶15). Focus/Chiro Alliance

2



contracted with healthcare providers such as MOTE, who agreed to discount their normal medical fees in return for increased patient volume. (Complaint ¶19). For patients who were not part of the Focus/Chiro Alliance PPO network, MOTE charged its normal fee without any discount.

AIG are insurance companies offering Florida residents an automobile insurance policy providing PIP benefits. Under AIG's standard Florida automobile PIP policy, 80% of "all reasonable and necessary treatment expenses" are paid up to a defined limit. (Complaint ¶8). In exchange, an AIG insured has the unrestricted right to choose his or her medical providers. (Complaint ¶10).

The State of Florida, however, has enacted a statute setting forth specific requirements for establishing an automobile insurance preferred provider network that financially encourages an insured to use a pre-defined group of preferred medical providers. (Complaint ¶13); see Fla. Stat. § 627.736(10) ("Section 627.736"). Under Section 627.736(10), if an insurance company offers a preferred provider auto policy, it must provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy. AIG has not offered its insureds a "preferred provider policy." (Complaint ¶14).

Despite the fact that AIG did not offer an automobile preferred provider policy to its insureds, AIG obtained access to Focus/Chiro Alliance's database that contained the identities of all of Focus/Chiro Alliance preferred providers and the discounted rates that they were willing to accept under the Focus/Chiro Alliance contract. (Complaint ¶¶24-25, 37-38, 40-41). Subsequently, AIG began to systematically apply the Focus/Chiro Alliance discounted medical rates to PIP medical expense claims submitted to it by MOTE and the class. (Complaint ¶ 51). When AIG received a medical bill for payment under the PIP portion of its automobile insurance policy, AIG would



discount the bill at the Focus/Chiro Alliance preferred provider rate, print out a form explanation or benefits ("EOB") indicating the application of the discount, and then make payment at that rate. (Complaint ¶¶51-54). At no time prior to MOTE's and the class members' treatment of patients entitled to PIP benefits did AIG market their medical services to their insureds or even comply with the requirements of Section 627.736(10) pertaining to an automobile preferred provider policy. (Complaint ¶¶57-59).

It was and still is the custom of AIG to discount thousands of Florida PIP medical expense claims in violation of its automobile insurance policy and the Florida PIP and preferred provider statute. (Complaint ¶73). At no time did MOTE or the members of the putative class have contracts with AIG allowing AIG to apply Focus/Chiro Alliance discounts to PIP medical expenses. (Complaint ¶61). AIG now seeks to certify a class of Florida Focus/Chiro Alliance preferred healthcare providers whose PIP medical expense claims were discounted by AIG through the application of Focus/Chiro Alliance PPO discount rates.

## ARGUMENT

The party seeking class certification bears the burden of proof in satisfying the four requirements of Rule 23(a)[1] and Rule 23(b)(3)[2] of the Federal Rules of Civil Procedure. Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1038 (5th Cir. 1981). Generally, Rule 23 is

---

[1] Under Rule 23(a) a plaintiff must establish that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

[2] Rule 23(b)(3) requires that the Court find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3).

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

liberally construed and thus a district court is left with broad discretion in deciding whether to certify a purported class. See Montelong v. Meese, 803 F.2d 1341, 1351 (5th Cir. 1986). In determining whether a plaintiff has met his burden, the court's inquiry is limited only to whether the requirements of Rule 23 have been satisfied, not the underlying merits of a plaintiff's claim.[3] D.W. v. Poundstone, 165 F.R.D. 661, 669 (M.D. Ala. 1996) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). Thus, "in determining the propriety of a class action, the question is not whether the ... plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Id. MOTE has satisfied the prerequisites of Rule 23(a) and Rule 23(b)(3) thereby justifying certification of the proposed class.

## I.    MOTE'S MOTION FOR CLASS CERTIFICATION IS TIMELY AT THIS STAGE OF THE LITIGATION.

Federal Rule of Civil Procedure 23 mandates that class action determinations be made at the earliest stage of the proceedings and "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." "In order to give clear definition to the action, this provision requires the court to determine, as early in the proceedings as may be practicable, whether an action brought as a class action is to be so maintained." Notes of Advisory Committee on Federal Rule of Civil Procedure 23(c)(1).

---

[3] This principle, however, is not to be construed so rigidly as to prevent the court from looking beyond the pleadings in order to make a reasoned determination as to whether the prerequisites of Rule 23 have been satisfied. Love v. Turlington, 733 F.2d 1562, 1564 (11th Cir. 1984); Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 722 n. 2 (11th Cir. 1987).

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

II.    **MOTE HAS SATISFIED THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23.**

A.    **Rule 23(a)(1) Merely Requires That the Class be so Numerous That Joinder of all Class Members is Impracticable.**

"No specific number and no precise count is needed to sustain the numerosity requirement" for class actions. Pottinger v. City of Miami, 720 F. Supp. 955 (S.D. Fla. 1989). Additionally, "[w]here the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement [of Rule 23] is satisfied." Orantes-Hernandez v. Smith, 541 F. Supp. 351 (C.D. Cal. 1982). And finally, the "[p]laintiff's lack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action, when defendants have the means to identify those persons at will." Ventura v. New York City Health and Hospitals Corp., 125 F.R.D. 595 (S.D.N.Y. 1989).

AIG, Focus and Chiro Alliance have knowledge as to the number of Florida healthcare providers affected by their activities. There is no question that AIG provides automobile insurance to thousands of individuals in Florida. General knowledge and common sense indicate that the numerosity requirement of Rule 23 is satisfied. Orantes-Hernandez, 541 F. Supp. 351; Bohannon v. Allstate Ins. Co., 118 F.R.D. 151 (S.D. Ga. 1986).

Rule 23(a)(1) necessitates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The term "impracticability" does not mean impossibility, but only difficulty or inconvenience in joining all members of a class. Walco Investments, Inc. v. Thenen, 168 F.R.D. 315, 324 (S.D. Fla. 1996). Impracticability of joinder depends on the size of the proposed class, geographic diversity of the class members, nature of the action, size of each

ATLAS PEARLMAN
ATTORNEYS AT LAW

individual claim, judicial economy, and inconvenience of trying individual lawsuits, and ability of individual class members to institute individual lawsuits. Id. To satisfy the numerosity requirement, a plaintiff must proffer some evidence of the number of class members, or at least a reasonable estimate of that number. Israel v. Avis Rent-a-Car Systems, Inc., 185 F.R.D. 372, 377 (S.D. Fla. 1999). A precise number of class members is not necessary to demonstrate numerosity.

In the present case, joinder of all members of the proposed class would be impracticable. First, Focus and Chiro Alliance constitute a national preferred provider organization and independent physician association, respectively, with numerous preferred providers in Florida. Second, the exact number of Florida healthcare providers affected by AIG's activities, although not presently known, is estimated to be in the thousands. MOTE's estimate with regard to Focus/Chiro Alliance's preferred provider list is based on the fact that Focus and Chiro Alliance constitute national preferred provider organization and an independent physician association, respectively, that provides managed healthcare services through a panel of preferred providers consisting of highly qualified and credentialed healthcare professionals. Focus and Chiro Alliance have contracted with insurance companies, third party administrators and self-insured employers (known as "payors"). Although the exact number of Focus preferred providers is not known at this time, it is reasonable to conclude that the preferred provider membership was large enough to provide a variety of medical specialists in order to entice a sufficient number of payors to be able to provide the "significant source of patient volume" to its providers. In assessing numerosity, a court may make common sense assumptions such as these. Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983).

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

Ultimately, the exact number of class members may easily be determined by an examination of Focus' and Chiro Alliance's preferred provider records.

Coupled with the estimate concerning Focus' and Chiro Alliance's preferred provider membership, AIG constitutes a significant automobile insurance underwriter in Florida and has issued thousands of policies in Florida providing PIP coverage. Based on its sheer market size in Florida, one can rationally assume that thousands of individuals have been involved in motor vehicle accidents resulting in personal injuries who have received medical care. Given the fact that AIG has been systematically applying Focus/Chiro Alliance's discounts to PIP medical expense claims for a number of years, it is reasonable to infer that thousands of healthcare providers dispersed throughout Florida have been affected by AIG's conduct and thus the numerosity requirement is satisfied.

## III.    COMMON QUESTIONS OF LAW AND FACT EXIST IN THE PRESENT CASE.

Rule 23(a)(2) requires that a plaintiff demonstrate that there are common questions of law or fact among the members of the class. Fed. R. Civ. P. 23(a)(2). The so-called "commonality" prerequisite does not require that all of the questions of law or fact raised in the case be common to all class members. Haitian Refugee Center, Inc. v. Nelson, 694 F. Supp. 864, 877 (S.D. Fla. 1988), aff'd, 872 F.2d 1555 (11th Cir. 1989). A common question has been defined as "one which arises from a 'nucleus of operative facts' regardless of whether 'the underlying facts fluctuate over a class period and vary as to individual claimants.'" Hill v. Butterworth, 170 F.R.D. 509, 514 (N.D. Fla. 1997). Generally, where a common scheme is alleged, common questions of law or fact will exist. Israel, 185 F.R.D. The claims actually litigated in this action must simply be those fairly represented

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

by the named plaintiff. Cox v. American Cast Iron Pipe Co., 784 F.2d 1546 (11th Cir. 1986) cert.

denied, 479 U.S. 883. An alleged common course of conduct is sufficient to satisfy the common

question requirement for class certification. Garfinkel v. Memory Medals, Inc., 695 F. Supp. 1397

(D. Conn. 1988). Additionally, a plaintiff's claim is typical if it arises from the same event or

practice or course of conduct that gives rise to the claims of other class members and his claims are

based on the same legal theory. De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225 (7th Cir.

1983).

In the present action, MOTE has satisfied the commonality requirement of Rule 23(a)(2).

MOTE has identified a common set of operative facts by complaining about AIG's uniform and

standardized course of conduct of improperly using Focus/Chiro Alliance's discount rates and

applying them to PIP medical bills in violation of Florida statutory law, in breach of AIG's standard

Florida automobile insurance policy, and in breach of the Focus/Chiro Alliance preferred provider

agreement. Claims arising from the interpretation of a standard form contract, such as in the case

at hand, present a classic case for class action treatment. Indianer v. Franklin Life Ins. Co., 113

F.R.D. 595, 607 (S.D. Fla. 1986).

There are no differences in the common operative facts between any of the purported class

members. All proposed class members have submitted medical bills to AIG pursuant to its Florida

automobile insurance policy, and they have all had these medical bills improperly paid by AIG using

the Focus/Chiro Alliance discounted rates. These questions of fact link the purported class members

in such a manner that they all have the same common interest in the subject matter and an interest

to ask for the same relief against AIG.

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

Additionally, the principal common issues of law to be decided in this action include whether

AIG violated Section 627.736 by paying PIP benefits at the Focus/Chiro Alliance preferred provider

discount rates, whether AIG's processing of PIP medical bills in this fashion are violative of state

and federal law, whether MOTE and the members of the putative class are entitled to compensatory,

statutory and punitive damages, and whether MOTE and the putative class are entitled to injunctive

relief. The only factual question that may differ from class member to class member is the total

amount of discounts wrongfully taken by AIG. However, individual factual differences concerning

the amounts of damages suffered does not defeat a finding of commonality. CV Reit, Inc. v. Levy,

144 F.R.D. 690, 696 (S.D. Fla. 1992). Indeed, the issue concerning the amount of individual

damages can be easily rectified through a review of AIG's files or computer records, which will

clearly indicate the number of medical bills wrongfully discounted.

## IV.    PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLAIMS OF THE CLASS.

A plaintiff seeking class certification must also demonstrate that "the claims or defenses of

the parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In order to

be "typical," there must be a nexus between the class representative's claims and the common

questions of law or fact that unite the class. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332,

1337 (11th Cir. 1984), cert. denied, 470 U.S. 1004 (1985). A sufficient nexus is established if a

named plaintiff's claims stem from the same event, practice, or course of conduct that forms the

basis of the class claims and are based upon the same legal or remedial theory. Id.; Walco

Investments, Inc. v. Thenen, 168 F.R.D. at 326. When considering typicality, a court should "focus

on whether the named representative's claims have the same essential characteristics as the claims



of the class at large." <u>Campos v. Immigration and Naturalization Service</u>, 188 F.R.D. 656, 661 (S.D. Fla. 1999). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct if it gives rise to the claims of the other class members and the claims are based on the same legal theory. <u>De La Fuenta</u>, 713 F.2d 225. When the interests of the named class member and unnamed class member coincide, there is no question but that, insofar as the claims are concerned, the typicality requirement of Rule 23(a)(3) is satisfied. Factual variations as to each individual plaintiff are not fatal to a proposed class when the claims arise out of the same remedial and legal theory. <u>Sullivan v. Chase Inv. Serv., Inc.</u>, 79 F.R.D. 246 (N.D. Cal. 1978). Variations in damages suffered similarly do not affect the appropriateness of class action treatment. <u>Affiliated Ute Citizens v. United States</u>, 406 U.S. 128 (1972).

MOTE's claims arise from the same course of conduct that gave rise to the claims of all other purported class members. The process followed by AIG to apply the Focus/Chiro Alliance discounts is rather simple and consistent. First, a healthcare provider provides medical treatment to an automobile accident victim. Second, the medical provider then submits the medical charge to AIG for payment under the applicable PIP coverage. Third, AIG then utilizes Focus/Chiro Alliance's discounted rates automatically and the provider's bill is repriced by applying the Focus/Chiro Alliance discount rate. Fourth, an explanation of benefits ("EOB") form is then generated showing the provider's original charge and the Focus/Chiro Alliance discounted charge. Finally, the EOB is then forwarded to the medical provider and the provider is paid at the improperly discounted rate by AIG. Accordingly, any healthcare provider who has presented a bill to AIG for medical services



CASE NO. 00-6061-CIV-FERGUSON/SNOW

resulting from an automobile accident whose bill was reduced pursuant to the Focus/Chiro Alliance discounted rates, has been subjected to this standard course of conduct.

## V.    THE PROPOSED CLASS REPRESENTATIVES WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS.

The "adequacy" prerequisite under Rule 23(a)(4) encompasses both the adequacy of the proposed class representative and class counsel. North American Acceptance Corp. v. Arnall, Golden & Gregory, 593 F.2d 642, 644 n.4 (5th Cir. 1979). Adequacy of representation depends on the named plaintiff's ability to prosecute the action vigorously through qualified, experienced and competent counsel, and the named plaintiff must not have interests antagonistic to those of the class. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987). An adequate class representative must be part of the class and possess the same interests and suffer the same injuries as the class members whom he seeks to represent. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997).

In the instant action, MOTE's interests are aligned with the general interests of the putative class. The harm suffered by MOTE is the same as the harm suffered by all members of the class and the harm has arisen from a common course of conduct by AIG and/or Focus and Chiro Alliance. Thus, MOTE will not have interests that conflict with or impair its ability to protect the interests of the putative class. In re New England Mutual Life Ins. Co. Sales Practice Litig., 183 F.R.D. 33, 40 (D. Mass. 1998). Given the commonality between MOTE's claims in the present case and those of the proposed class members, there is no potential for conflicting interests in this action. Accordingly, there is no antagonism between the interests of MOTE and those of the class.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

In order to satisfy the second prong of the adequacy requirement, a plaintiff's attorney must be "qualified, experienced and generally able to conduct the proposed litigation. . ." <u>Griffin v. Carlin</u>, 755 F.2d 1516, 1533 (11th Cir. 1985). In the present matter, MOTE has retained counsel experienced in handling class actions and actions involving unlawful business practices, including insurance cases. Plaintiff's counsel are able and accomplished, and have and will serve as competent, thorough and rigorous advocates for the interests of the class. The four law firms presented as proposed class counsel are qualified and experienced, and have the resources and ability to conduct the proposed litigation.

## VI. <u>THE REQUIREMENTS OF RULE 23(B)(3) ARE ALSO SATISFIED.</u>

### A. **Common Questions of Law or Fact Predominate Over any Questions Affecting Only Individual Class Members.**

Once the Court is satisfied that the prerequisites of Rule 23(a) have been met, it must then make a determination that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R.Civ. P. 23(b)(3). Generally "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23 (b)(3) even though other important matters will have to be tried separately." <u>Israel v. Avis Rent-A-Car Systems, Inc.</u>, 185 F.R.D. at 377. Furthermore, the existence of some individual issues will not destroy predominance. <u>See Walco Investments, Inc.</u>, 168 F.R.D. at 334 finding that the existence of a few questions of individual reliance in a case alleging a fraudulent investment scheme does not negate predominance of common issues of fact and law). In this way, the predominance requirement is similar to the typicality requirement of Rule 23(a)(3) which states that "claims or defenses" of the named

13

ATLAS PEARLMAN
P.A.
ATTORNEYS AT LAW

representatives be "typical of the claims or defenses of the class." <u>Amchem Prods.</u>, 521 U.S. at 623 n.18.

Plaintiff has already demonstrated the existence of common questions of law and fact above. These common issues need only predominate; they need not be dispositive of the entire litigation. <u>Contract Buyers League v. F&F Inv.</u>, 48 F.R.D. 7 (N.D. Ill. 1969). Herein, there are no significant, let alone predominant, individual issues. As discussed above, the issue common to all class members is whether or not AIG, as a general business practice, improperly paid PIP claims at preferred provider rates rather than the contractually mandated and statutorily required reasonable and necessary rates. These common issues of act and injury are common class-wide.

AIG's consistent practice of illegally and improperly accessing the Focus/Chiro Alliance PPO database to discount PIP medical expense claims in violation of its policy of insurance and Section 627.736 clearly predominates because it affects every single member of the putative class. In <u>Humana, Inc. v. Forsyth</u>, 525 U.S. 299 (1999), a case involving similar RICO claims relating to insurance fraud that arose in the medical benefits context, the United States Supreme Court affirmed the Ninth Circuit which held that the McCarran-Ferguson Act did not bar suit under RICO by Humana insurance policy beneficiaries. Specifically, Humana was alleged to have defrauded its insureds by paying providers less than 80% of their billings while the insureds continued to be responsible for a 20% co-pay. <u>Id</u>. Similarly, the standard application of Focus/Chiro Alliance discounted rates by AIG has produced identical results for all class members — a reduction in their PIP medical bills. Likewise, the illegality of AIG's conduct and its violation of Florida statutory law is common to the entire class.



CASE NO. 00-6061-CIV-FERGUSON/SNOW

In Colonial Penn Ins. Co. v. Magnetic Imaging Systems I, Ltd., 694 So. 2d 852 (Fla. 3d DCA 1997), the Court found that a class action can be maintained for the systematic violation of Section 627.736. Recently, in Allstate Indem. Co.v. De La Rosa, 2001 WL 1040929 (Fla. 3d DCA Sept. 12, 2001), the Court affirmed a class action certification in an action alleging the systematic violation of Section 627.736. Thus, the claims asserted herein should be afforded class action treatment.

### B. MOTE's RICO Act Claim Does Not Undermine Certification Of The Proposed Class.

To succeed with a civil RICO claim based on mail fraud, MOTE must demonstrate: (1) an enterprise; (2) engaged in a pattern; (3) of racketeering activity; (4) which constituted a scheme to defraud; (5) involving use of the mails in furtherance of the scheme; and (6) the scheme proximately caused injury to the plaintiff. See e.g., McDonald v. Schencker, 18 F.3d 491, 494 (7th Cir. 1994); see also, Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992) (requiring proximate cause with respect to injury). In certifying a class action involving RICO claims, the two issues that generally arise are the manner in which AIG made misrepresentations to the class, i.e., oral versus written, and the extent to which each class member relied on the misrepresentations.

In the present action, MOTE's fraud claims are based on identical written misrepresentations contained in the computer generated EOBs indicating the application of the Focus/Chiro Alliance discount and the right by AIG to access the discount. Any fraudulent misrepresentations made to MOTE were also made to all other members of the putative class on the form EOBs issued by the AIG. The existence of the standardized form EOBs distinguish this case from others that rely heavily on oral misrepresentations. See e.g., Arenson v. Whitehall Convalescent & Nursing Home, Inc., 164 F.R.D. 659, 665 (N.D. Ill. 1996) (finding that common questions predominated in RICO

7090-00100 339309.1                                   15

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

action where written misrepresentations made in standard form contract rather than oral misrepresentations were alleged); In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig., 122 F.R.D. 251, 256 (C.D. Cal. 1988) (granting class certification to RICO class where complaint focused solely on disclosures and admissions contained in standardized letters despite existence of some oral misrepresentations); compare Coe v. Nat'l Safety Assocs., 137 F.R.D. 252, 254-55 (N.D. Ill. 1991) (finding RICO claim that relies heavily on oral misrepresentations inappropriate for class certification).

With respect to the reliance issue, plaintiffs presenting a RICO claim must prove that they relied upon the defendants' fraudulent misrepresentations. See e.g., Caviness v. Derand Res. Corp., 983 F.2d 1295, 1305 (4th Cir. 1993); In re EDC, Inc., 930 F.2d 1275, 1280 (7th Cir. 1991) (requiring reasonable reliance in a civil RICO case). In the class action context, courts have adopted two different approaches to the reliance requirement. When the allegations consist of fraud that was committed in a standard and uniform manner among the members of the class, as is the case here where the class members received virtually identical computer generated EOBs, courts have typically held that individual reliance questions do not predominate. See e.g., Heastie v. Community Bank, 125 F.R.D. 669, 675 (N.D. Ill. 1989); Smith v. MCI Telecomm. Corp., 124 F.R.D. 665, 679 (D. Kan. 1989); McMahon Books, Inc. v. Willow Grove Assocs., 108 F.R.D. 32, 38 (E.D. Pa. 1985). When the fraudulent conduct, however, was not uniform with respect to all class members, such as when plaintiffs allege numerous oral misrepresentations that may likely differ from class member to class member, courts treat individual reliance questions as predominating over the common RICO issues. See e.g., Martin v. Dahlberg, Inc., 156 F.R.D. 207, 215-16 (N.D. Cal. 1994); Elliott v. ITT Corp.,



CASE NO. 00-6061-CIV-FERGUSON/SNOW

150 F.R.D. 569, 584-85 (N.D. Ill. 1992); Strain v. Nutri/System, Inc., 1990 U.S. Dist. LEXIS 17031 (E.D. Pa. 1990).

The members of the class received virtually identical written misrepresentations contained in the computer generated EOBs indicating the application of the Focus/Chiro Alliance discount and the purported right by AIG to access the discount. Thus, MOTE's Complaint falls squarely into the "standard and uniform" document category of cases in which reliance questions would not predominate. In such an instance where each class member receives essentially equivalent EOBs that accompany PIP payments, it is reasonable to conclude that common questions concerning reliance would predominate with respect to the RICO claim.

## VII.    A CLASS ACTION IS SUPERIOR TO ANY OTHER AVAILABLE METHOD FOR THE FAIR AND EFFICIENT ADJUDICATION OF THE PRESENT CONTROVERSY.

Finally, in order to certify a class, the Court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Factors that are pertinent to the superiority requirement are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R.Civ.P. 23(b)(3)(A)-(D). Superiority is found by comparing the efficiency and fairness of all available methods of adjudicating the matter. Coleman v. Cannon Oil Co., 141 F.R.D. 516, 529 (M.D. Ala. 1991). When deciding whether a class action is superior to other available methods to

ATLAS PEARLMAN
ATTORNEYS AT LAW

adjudicate a controversy, the court may consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1165 (7th Cir. 1974).

As Judge Weinfeld pointed out in DuPont Glore Forgan, Inc. v. Am. Tel. & Tel. Co., 69 F.R.D. 481 (S.D.N.Y. 1975), in which one class representative, Monsanto Co., had a claim of $130,000:

> [T]he time-cost factor of legal fees in view of the vigor of defendants' opposition [make] it uneconomical to proceed with the suit on an individual basis even assuming an ultimate recovery – in fact, Monsanto would, if required to proceed on an individual basis, forego its claim. Recent experience with legal charges and their computation suggests that counsel's statement was not exaggerated. Thus, the assertion that this action will not go forward at all if class action status is denied is plausible. The hard fact is that economic reality indicates the likelihood that unless this action is permitted to proceed as a class suit, it is the end of this litigation.
>
> . . .
>
> The sheer disparity of economic forces suggests the death knell of those claims if individual actions are required.

Id. at 487 (footnote omitted).

In the present action, superiority is satisfied because there is no better method available for the adjudication of the claims that might be brought by each individual class member than a class action. See Walco Investments, Inc., 168 F.R.D. at 337 (reasoning that the fact that few putative class members filed individual lawsuits suggested lack of interest in controlling their own litigation). It would be extremely costly and judicially duplicative for class members to bring all of their actions separately. First, although some of the larger healthcare provider class members may have larger claims, each class member is still faced with the obstacle of establishing AIG's violation of the

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

Florida PIP statute coupled with demonstrating the existence of AIG's fraudulent scheme in violation of RICO. Second, concentrating this action in one forum would be desirable because it will negate the threat of inconsistent adjudications and prevent duplication of effort. Finally, the difficulties likely to be encountered in the management of this class action are minimal. Despite what AIG may argue, there are no individual issues of fact or law that would disrupt the litigation of the matter. In fact, the difficulty, if any, of managing any individual differences in fact or law pale in comparison to the magnitude of problems that would likely arise if this case were to be litigated in several hundred or thousand separate matters. Moreover, there is a strong presumption against denying class certification for management reasons. Israel v. Avis Rent-a-Car Systems, Inc., 185 F.R.D. at 387 (citing In re South Central States Bakery Prod. Antitrust Litig., 86 F.R.D. 407, 423 (M.D. La. 1980)).

## CONCLUSION

For all the reasons set forth herein, Plaintiff MOTE WELLNESS & REHAB, INC. on behalf of itself and all other similarly situated, respectfully requests that this Court grant class certification and such other and further relief as this Court may deem just and proper.

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

ATLAS PEARLMAN, P.A.
Co-Counsel for Class Plaintiffs
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

By: _____
JAN DOUGLAS ATLAS
Florida Bar No. 226246

By: _____
ERIC LEE
Florida Bar No. 961299

By: _____
ROBIN CORWIN CAMPBELL
Florida Bar No. 327931

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

7090-00100 339309.1

20

ATLAS PEARLMAN
ATTORNEYS AT LAW

CASE NO. 00-6061-CIV-FERGUSON/SNOW

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 2510
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

mail this __6th__ day of December, 2001 upon: all individuals on the attached service list.

ERIC LEE

ATLAS PEARLMAN
ATTORNEYS AT LAW

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 10/26/01)

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Eric Lee, Esq.
lee@atlaslaw.com
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
Suite 1700
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
Suite 200
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK &
CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS,et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL  32202
(904) 798-3200
(904) 798-3207 Facsimile

7090-00100 318823.1

ATLAS PEARLMAN
P.A.
ATTORNEYS AT LAW

## Counsel for Nationwide

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

## Counsel for Florida Farm Bureau

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

## Counsel for Liberty Mutual

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

## Counsel for:
## Hartford, Metropolitan, Integon

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

## Counsel for Metropolitan

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

## Counsel for Hartford

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

## Counsel for Superior

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

## Counsel for Prudential

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Jeffrey M. Klein, Esq.
Jklein@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

## Counsel for American International

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

