UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, and COMMUNITY CARE NETWORK, INC., d/b/a CCN,

Defendants.
_______________________________________/

SALVATORE D. LARUSSO, D.C. d/b/a FAMILY CHIROPRACTIC CENTER, on behalf of himself and all others similarly situated,

Plaintiff,

01-8111

vs.

HARTFORD INSURANCE COMPANY OF THE MIDWEST,

Defendant.
_______________________________________/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HARTFORD INSURANCE COMPANY OF THE MIDWEST'S MOTION TO COMPEL ARBITRATION (D.E. #402)**

Plaintiff SALVATORE D. LARUSSO, D.C., on behalf of himself and all others similarly situated ("LARUSSO"), by his undersigned counsel, hereby submits his Memorandum of Law in Opposition to Defendant HARTFORD INSURANCE COMPANY OF THE MIDWEST's ("HARTFORD") Motion to Compel Arbitration, Dismiss the Amended Complaint and to Stay





Discovery ("Motion to Compel Arbitration") (D.E. #402). For all the reasons set forth herein, LARUSSO respectfully submits that HARTFORD's Motion to Compel Arbitration should be denied in all respects.

## INTRODUCTION

This is one of 15 pending PPO reduction class actions consolidated by this Court. On September 28, 2001, this Court entered its Omnibus Order ("Omnibus Order") which denied the various Motions to Dismiss, with the exception of the Lanham Act claims. LARUSSO has asserted against HARTFORD the same claims which this Court has already sustained. In May, 2001, LARUSSO instituted this action against ITT Hartford Life and Annuity Insurance Company. HARTFORD indicated that the improper HARTFORD entity was sued. In light of this Court's oral ruling at that the May 14, 2001 Status Conference that the pending Motions to Dismiss would be denied, counsel for LARUSSO, with the agreement of counsel for HARTFORD, agreed to wait until the written Order was entered for LARUSSO to substitute the proper HARTFORD entity. On October 10, 2001, LARUSSO amended the Complaint replacing HARTFORD for ITT Hartford Life and Annuity Insurance Company as the Defendant in this action.

On October 16, 2001, HARTFORD filed its Motion for Reconsideration seeking reconsideration of the Omnibus Order which consolidated these proceedings. On October 22, 2001, HARTFORD served its Motion to Stay Discovery and to Stay the Time to Respond to Plaintiff's Motion for Class Certification (D.E. #213).[1] On October 22, 2001, HARTFORD served its Motion

---

[1]HARTFORD's Motion to Compel Arbitration also seeks to stay discovery. Rather than restate arguments previously asserted by LARUSSO in opposition to HARTFORD's Motion to Stay Discovery, LARUSSO incorporates his Memorandum of Law in Opposition to HARTFORD's Motion to Stay Discovery (D.E. #270).

to Dismiss the Amended Complaint (D.E. #210). On November 13, 2001, HARTFORD filed its Motion for Protective Order (D.E. #315). LARUSSO timely responded to each of these Motions and these Motions remain outstanding. Thereafter, on December 10, 2001, HARTFORD served its Motion to Compel Arbitration.

**ARGUMENT**

When considering a motion to compel arbitration, a district court must determine "(1) whether there is an agreement to arbitrate, (2) whether there are arbitrable claims, and (3) whether there has been a waiver of the right to arbitration." Janmort Leasing, Inc. v. Econo-Car Int'l, Inc., 475 F. Supp. 1282 (E.D.N.Y. 1979). "Although federal policy strongly favors consensual arbitration, it is axiomatic that '(a) written agreement for arbitration is the sine qua non of an enforceable arbitration agreement' under the Arbitration Act." Id. (quoting Garnac Grain Co. v. Nimpex Int'l, Inc., 249 F. Supp. 986 (S.D.N.Y. 1966) (citations omitted)). Thus, the threshold question presented by a motion to compel arbitration is whether the contract between the parties to the controversy embodies a clause providing for arbitration. Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136 (9th Cir. 1991); Camping Constr. Co. v. District Counsel of Ironworkers Local 378, 915 F.2d 1333, 1340 (9th Cir. 1990) ("The court must determine whether a contract ever existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator.") As the Third Circuit has stated:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district

> court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3rd Cir. 1980).

## I. THE FLORIDA SUPREME COURT INVALIDATED CONTRACTUAL AGREEMENTS TO ARBITRATE LIKE THOSE CONTAINED IN HARTFORD's PIP CONTRACT.

HARTFORD asserts that although Pinnacle invalidated Section 627.736(5), Florida Statutes, the PIP contract provides an independent basis to compel arbitration. This precise issue was raised and rejected by the Florida Supreme Court in Nationwide Mutual Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000). In appellants' initial brief in Pinnacle, the appellant insurance companies specifically argued as follows:

> **REGARDLESS OF THE CONSTITUTIONALITY OF THE STATUTE, APPELLEES WERE BOUND TO ARBITRATE AS THIRD PARTY BENEFICIARIES OF THE INSURANCE CONTRACTS.**
>
> The Fifth District should not even have reached the constitutionality issue in this case, because there is a wholly independent reason that these providers should have been compelled to arbitrate. As discussed in detail above, section 627.736(5) statutorily implies such a binding arbitration provision in every PIP policy issued in this state. In this case, there is no question that each of the insurance contracts contained such a provision. The contracts themselves are sufficient to bind the providers to arbitrate regardless of the effect or validity of the statute.
>
> It is well established that healthcare providers are third party beneficiaries of insurance contracts proving coverage for healthcare. See United States v. Automobile Club Insurance Company, 522 F.2d 1 (5th Cir. 1975); Vencor Hospitals South, Inc. v. Blue Cross and Blue Shield of Rhode Island, 929 F. Supp. 420 (S.D. Fla. 1996); Orion Insurance Company v. Magnetic Imaging Systems I, 696 So. 2d 475 (Fla. 3d DCA 1997); Pasteur Health Plan, Inc. v. Salazar, 658 So. 2d 543 (Fla. 3d DCA 1995).

It is likewise clear that third party beneficiaries are subject to the terms of the relevant contracts, including arbitration clauses. See Orion, 696 So. 2d at 478; Terminix International Co. v. Ponzio, 693 So. 2d 104, 109 (Fla. 1st DCA 1997); Zac Smith & Co. v. Moonspier Condominium Assoc., 472 So. 2d 1324 (Fla. 1st DCA 1985). See also Scobee Combs Funeral Home Inc. v. E.F. Hutton & Co., 771 F. Supp. 605 (S.D. Fla. 1989) (holding that parties were bound by an arbitration provision in National Association of Securities Dealers manual, regardless of the fact that no contract between them contained such a provision); Desiderio v. National Association of Securities Dealers, Inc., 2 F. Supp. 516 (S.D.N.Y. 1998) (execution of a U-4 SEC form "inherently represents an agreement to arbitrate" as mandated by the relevant statute, even if the form does not so state).

No argument has been raised that an insurer cannot include an arbitration clause in its policy. Thus, regardless of the validity or effect of the statutory arbitration provision in section 627.736(5), these Appellees should have been compelled to arbitration. The Fifth District's decision should be quashed as improperly holding a statute unconstitutional when the case could have resolved without reaching that issue.

Brief for Appellants at 28-30, Pinnacle, 753 So. 2d 55.[2] The Nationwide policy at issue in Pinnacle contained the following provision requiring arbitration:

**ARBITRATION/ASSIGNMENT OF BENEFITS**

If a dispute arises between **us** and any person who, as a provider of medical services and supplies, has agreed to accept assignment of Personal Injury Protection benefits, the dispute shall be settled by binding arbitration. The provisions of Chapter 682 relating to arbitration shall apply.

When an assignment of Personal Injury Protection benefits is made by any **insured**, any and all claims to such benefits by the **insured** belong to the healthcare provider who has received the assignment. Priority of payment of this coverage shall be given to the assigned claims of which **the company** has written notice.[3]

The Florida Supreme Court rejected Nationwide's assertion that the contractual provision in its insurance policy required medical providers to arbitrate their claims. The Florida Supreme

[2]A true and correct copy of the relevant portions of the Initial Brief are attached hereto as Exhibit "1."

[3]A true and correct copy of the Nationwide policy provision is attached hereto as Exhibit "2."

Court affirmed the decision of the Fifth District Court of Appeal which had affirmed a county court order denying motions to dismiss and to compel arbitration.

The Florida Supreme Court found Section 627.736(5), Florida Statutes ("Section 627.736(5)") unconstitutional. Section 627.736(5) did not, by itself, require arbitration. Section 627.736(5) required insurers to include an arbitration provision in all contracts binding any person providing medical services if that person has agreed to accept an assignment of personal injury protection benefits. Thus, arbitration had been mandated pursuant to policy provisions. As mandated by Section 627.736(5), HARTFORD's policy contains an arbitration provision. An arbitration provision was also included in the insurance policy at issue in Pinnacle. The Florida Supreme Court rejected the argument that the contractual language provides a basis to compel arbitration. If the contractual provision provided a basis to compel arbitration, the Florida Supreme Court would have used the provision to require arbitration notwithstanding the unconstitutionality of Section 627.736(5).

In Pinnacle, the healthcare provider brought its claim as the assignee of benefits from an insured. The PIP Contract between the insured and the insurance company contained an arbitration clause which required arbitration of disputes in the event that the claims were assigned to a healthcare provider. The policy did not require the same claims to be arbitrated if they were brought by the insured. The insurance company asserted that notwithstanding the provisions of Section 627.736(5), Florida Statutes, there is an agreed contractual provision which provides for arbitration. The Florida Supreme Court rejected this position. As the court stated:

> In the instant case, there is no voluntary agreement to arbitrate between medical providers and PIP insurers. Medical providers are forced to arbitrate by terms in an

> agreement entered into between an insured and an insurer, to which the assignor-insured is not subject.

Id. at 58 n. 4 (emphasis added). Accordingly, as the Court squarely held in Pinnacle, a contractual provision entered into between an insured and an insurance company cannot require arbitration of claims that are assigned to a healthcare provider where the insured is not required to arbitrate the same claims.

The Florida Supreme Court found that the provisions of Section 627.736(5) violated the rights of medical providers. As the Court stated:

> We agree with the Fifth District that the mandatory arbitration provision of section 627.736(5) is unconstitutional. However, we reach this conclusion by finding that the provision violates the right of medical providers to access to courts provided under article I, section 21 of the Florida Constitution. We also find that the attorney-fee provision of section 627.736(5) violates the due process rights of medical providers in violation of article I, section 9 of the Florida Constitution.

Pinnacle, 753 So. 2d at 57 (emphasis added). Since the Florida Supreme Court found that the arbitration provision of Section 627.736(5) is unconstitutional because it violates the rights of medical providers, the contractual provision in the HARTFORD policy is likewise unconstitutional. Contractual provisions can be found invalid if they violate constitutional rights. "A contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our Courts." Harris v. Gonzalez, 789 So. 2d 405, 407 (Fla. 4th DCA 2000). The arbitration provision in the HARTFORD PIP Contract is unconstitutional and provides no basis to compel arbitration in these proceedings. Pinnacle, 753 So. 2d at 57. Since the contractual provision is unconstitutional and void, there is no contract or agreement that can provide a basis to compel arbitration.

There is no contract between LARUSSO and his patient to arbitrate claims. There is no contract between LARUSSO and HARTFORD to arbitrate claims. There is no contract between HARTFORD's insured and HARTFORD to arbitrate claims. LARUSSO cannot be forced to arbitrate based on the terms of an agreement entered into between a HARTFORD insured and HARTFORD, to which the assignor-insured is not subject. Id. Accordingly, the arbitration provision contained in the HARTFORD PIP Contract provides no basis to compel arbitration against LARUSSO.

## II. THE FAA DOES NOT PROVIDE A BASIS TO COMPEL ARBITRATION.

HARTFORD's assertion that the strong policy favoring arbitration under the FAA provides a basis to compel arbitration in the proceedings is misplaced. As the United States Supreme Court has stated:

> The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration.
>
> * * *
>
> Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which the arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward.

Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 477-479 (1989).



ATLAS PEARLMAN P.A.
ATTORNEYS AT LAW

The first determination is whether a valid arbitration agreement exists. In Eassa Properties v. Shearson Lehman Bros., Inc., 851 F.2d 1301, 1304 n. 7 (11th Cir. 1988), the Court stated:

> [Appellee] claims that the [state uniform partnership act] is preempted by the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. However, as the Supreme Court recently reiterated, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" While federal law may govern the interpretation and enforcement of a valid arbitration agreement, state law governs the question of whether such an agreement exists in the first instance.

(emphasis added) (citations omitted).

The purported arbitration clause asserted by HARTFORD specifically opts out of the use of the FAA. Courts must enforce the specific terms of arbitration agreements and parties may opt out of the FAA's standards. Roadway Package Systems, Inc. v. Kayser, 2001 WL 629276 (3rd Cir. June 7, 2001) (citations omitted). A clause in an agreement which "states that arbitration of any claim must be settled 'in accordance with the Texas General Arbitration Act'" is specific enough to opt out of the FAA and to establish "that the parties intended Texas law and the TGAA to govern the scope of arbitration clause." Ford v. Nylcare Health Plans of the Gulf Coast, Inc., 141 F.2d 243, 249 (5th Cir. 1998); see also ASW Allstate Painting & Constr. Co., Inc. v. Lexington Ins. Co., 188 F.3d 307 (5th Cir. 1999).

The alleged arbitration provision cited by HARTFORD specifically states: "Any claims dispute, involving medical expenses, between the provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code." (emphasis added). It is also well established that: "in the case of an insurance contract, the parties enter into the contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's

laws are incorporated by implication into the agreement." Strochak v. Federal Ins. Co., 717 So. 2d 453, 455 (Fla. 1998) (citing Sturiano v. Brooks, 523 So. 2d 1126, 1129-30 (Fla. 1988)). Based on the clear language of the clause HARTFORD cites to seek arbitration, there is a specific agreement to opt out of the provisions of the FAA. Since HARTFORD agreed to abide by Florida's rules of arbitration, enforcing those rules according to the terms of the HARTFORD agreement "is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." Volt Information Sciences, Inc., 489 U.S. at 479. As fully demonstrated above, the arbitration provisions struck down by the Florida Supreme Court provide no basis for HARTFORD to compel arbitration. HARTFORD's effort to utilize the FAA is unavailing. The FAA is inapplicable since the purported arbitration agreement specifically opts out of the FAA .

## III. THE CLAIMS ASSERTED BY LARUSSO ARE NOT SUBJECT TO ARBITRATION BECAUSE LARUSSO IS ASSERTING CLAIMS AS THE ASSIGNEE OF RIGHTS FROM A HARTFORD INSURED.

The claims asserted by LARUSSO are not subject to arbitration because LARUSSO is asserting claims as the assignee of claims assigned to him by a HARTFORD insured. There is no arbitration agreement between LARUSSO and HARTFORD. There is no arbitration agreement between HARTFORD's insured and HARTFORD.

LARUSSO's Complaint asserts causes of action against HARTFORD due to its improper and fraudulent reduction of PIP claims under Section 627.736, Florida Statutes. In order for a healthcare provider to assert claims against an automobile insurance company for PIP benefits, the insured must assign the claim for PIP benefits to the healthcare provider. "Courts have recognized that medical

service providers can assert claims for a PIP benefit against insurers when an insured has assigned them the right to the benefits." Hartford Ins. Co. of the Southeast v. St. Mary's Hosp., Inc., 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000) (citations omitted). The right to pursue a claim for PIP benefits belongs to the insured unless the insured assigns the right to a healthcare provider. As recently stated:

> As a general rule, if an insured has assigned her right to receive personal injury protection (PIP) benefits to a healthcare provider, the insured may not file a lawsuit to collect the assigned benefits. The insured would only have a claim to pursue against the insurance company if the healthcare provider were permitted to rescind the assignment.

Livingston v. State Farm Mut. Auto. Ins. Co., 774 So. 2d 716, 717 (Fla. 2d DCA 2000). "In any event, only the insured or the medical provider 'owns' the cause of action against the insurer at any one time. And the one that owns the claim must bring the action if an action is to be brought." Oglesby v. State Farm Mut. Auto. Ins. Co., 781 So. 2d 469, 470 (Fla. 5th DCA 2001) (citing Garcia v. State Farm Mut. Auto. Ins. Co., 766 So. 2d 430 (Fla. 5th DCA 2000); Livingston, 774 So. 2d 716).

The claims LARUSSO has asserted against HARTFORD are claims that were assigned to LARUSSO by a HARTFORD insured.[4] In order for LARUSSO to assert claims for PIP benefits, he was required to obtain an assignment of benefits from the HARTFORD insured. There is no arbitration agreement between HARTFORD and its insured. There is no arbitration agreement between LARUSSO and the HARTFORD insured. LARUSSO, as the insured's assignee "surely is in no worse position than its assignor would be in if the assignor were the plaintiff here." Foreign Credit Corp. v. Aetna Cas. & Surety Co., 276 F. Supp. 791, 793 (S.D. N.Y. 1967). As the assignee,

---

[4]A true and correct copy of the assignment is attached hereto as Exhibit "3."

LARUSSO stands in the shoes of the HARTFORD insured. Since the HARTFORD insured cannot be compelled to arbitrate the claims asserted in this action, LARUSSO cannot be compelled to arbitrate the same claims.

## IV. HARTFORD HAS WAIVED ITS RIGHT TO COMPEL ARBITRATION.

Even if HARTFORD had a basis to compel arbitration, it has waived its right by acting inconsistently with its purported right to compel arbitration. The right to arbitrate like any other contractual right is not absolute and may be waived. See S & H Contractors, Inc. v. A.J. Cole Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990). A waiver of arbitration can occur by participation in litigation or other actions inconsistent with the right to compel arbitration. Usher Syndicate Ltd., Inc. v. Figgie Int'l, 1987 WL 19840 (S.D. Fla. 1987). "Waiver results from a party's 'substantial participation in litigation to a point inconsistent with an intent to arbitrate' which results in prejudice to the other party." Brown v. ITT Consumer Financial Corp., 211 F.3d 1217 (11th Cir. 2000) (quoting Morewitz v. West England Ship Owners Mut. Protection and Indem. Assoc., 62 F.3d 1356, 1366 (11th Cir. 1995)). Prejudice can be demonstrated by a party incurring the delay or expense associated with litigation. Morewitz, 62 F.3d at 1366.

### A. Hartford has Waived its Right to Compel Arbitration by Actively Participating in these Proceedings.

Prior to filing its Motion to Compel Arbitration, HARTFORD actively took part in these proceedings. On October 16, 2001, HARTFORD filed it Motion for Reconsideration. On October 22, 2001, HARTFORD filed its Motion to Stay Discovery and to Stay the Time for Responding to Plaintiffs' Motion for Class Certification (D.E. #213). On October 22, 2001, HARTFORD filed its Motion to Dismiss the Amended Complaint (D.E. #210). On November 13, 2001, HARTFORD





filed its Motion for Protective Order (D.E. #315). LARUSSO timely responded to each of the foregoing Motions. The foregoing Motions remain outstanding.

This action was originally filed in May, 2001. For six months, rather than assert its purported right to compel arbitration, HARTFORD instead chose to take part in these proceedings. Having filed various Motions that, if granted, would have benefitted HARTFORD, now that there has been no ruling on these Motions, HARTFORD seeks to compel arbitration. HARTFORD's actions have prejudiced LARUSSO since LARUSSO has had to respond to each of HARTFORD's Motions. In addition, HARTFORD's six month delay in seeking to compel arbitration has clearly caused an unnecessary delay in these proceedings.

Despite the fact that the waiver issue has been raised in the responses to the Motions to Compel Arbitration in other consolidated cases and has been addressed in the Magistrate Judge's Reports and Recommendations, HARTFORD chose to ignore this issue in its Motion to Compel Arbitration. Having failed to address this issue in its Motion to Compel Arbitration, HARTFORD cannot address the issue for the first time in its Reply Memorandum. Since the record clearly demonstrates HARTFORD's waiver of its right to compel arbitration, its Motion to Compel Arbitration must be denied.

**B. HARTFORD has Waived its Right to Compel Arbitration by Litigating the Same Issues in State Court Proceedings.**

In determining whether a party has waived its right to compel arbitration, it is appropriate for a court to consider a party's conduct in other litigation. See PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103 (2d Cir. 1997). As the Court stated :

> We have previously stated that the "prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." Doctor's Assocs., 107 F.3d at 133. It is irrelevant that the prior litigation





> occurred as a part of a separate action or in a different court. See id. at 132-33; see also Kramer, 943 F.2d at 178 (reversing district court's grant of motion to compel arbitration where defendant waived right to arbitrate by engaging in extensive litigation in state courts).

In Morewitz, 62 F.3d 1356, the Court found that a party involved in various litigation regarding similar disputes cannot pursue litigation and then subsequently demand to arbitrate those same disputes in a subsequent litigation. Finally,

> [t]he "prejudice" that supports a finding of waiver can be "substantive" prejudice to the legal position of the party opposing arbitration, such as when the party seeking arbitration "loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration," or obtains information through discovery procedures not available in arbitration.

Doctor's Associates, Inc. v. Distajo, 107 F.3d 126, 131 (2d Cir. 1997).

Counsel for LARUSSO is aware of numerous county court cases against the various HARTFORD entities in which the issue regarding PPO reductions has been litigated by HARTFORD without HARTFORD asserting that the actions should be arbitrated. HARTFORD cannot litigate these issues in the county courts of Florida hoping for a favorable judicial ruling and then attempt to invoke its purported right to compel arbitration when a class action lawsuit is brought against it on the same issues. LARUSSO challenges HARTFORD to advise this Court as to how many lawsuits have been filed against HARTFORD in which the issue of PPO reductions was raised. LARUSSO further challenges HARTFORD to advise this Court how many times it has sought arbitration in those cases filed against it in which the PPO reduction issue was asserted.[5] If HARTFORD provides this Court with this information, it will be clear that HARTFORD has waived

[5]It should be noted that prior to Nationwide Mutual Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000), insurance companies routinely sought arbitration pursuant to Section 627.736(5) which statutorily imposed a binding arbitration provision in every PIP insurance policy issued in the state. In Pinnacle, the Florida Supreme Court found such a provision to be unconstitutional. Thus, HARTFORD should advise this Court as to how many times, subsequent to Pinnacle, it has sought to compel arbitration.





its right to compel arbitration of these issues by litigating these issues in the county courts throughout the state. If HARTFORD fails or refuses to provide this information, it will be because HARTFORD is attempting to conceal its efforts to litigate these issues in the county courts, while now attempting to invoke arbitration in this class action.[6]

## CONCLUSION

For all the reasons set forth herein, Plaintiff SALVATORE D. LARUSSO, D.C., on behalf of himself and all others similarly situated respectfully requests that this Court enter an Order denying Defendant HARTFORD INSURANCE COMPANY OF THE MIDWEST's Motion to Compel Arbitration, Dismiss the Amended Complaint and to Stay Discovery, together with such other and further relief as this Court may deem just and proper.

[6]LARUSSO believes that there is no basis for HARTFORD to compel arbitration. However, in the event that the issue of arbitration turns on whether HARTFORD has litigated these issues in the county courts, LARUSSO would request that this Court allow specific discovery directed to HARTFORD's activities in litigating these issues in the county courts.

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

Respectfully submitted,

ATLAS PEARLMAN, P.A.
Co-Counsel for Class Plaintiffs
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

By: ______________________
JAN DOUGLAS ATLAS
Florida Bar No. 226246

By: ______________________
ERIC LEE
Florida Bar No. 961299

By: ______________________
ROBIN CORWIN CAMPBELL
Florida Bar No. 327931

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 2510
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail this 21st day of December, 2001 upon: all individuals on the attached service list.

ERIC LEE

**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**
(Updated 10/26/01)


**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Eric Lee, Esq.
lee@atlaslaw.com
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
Suite 1700
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
Suite 200
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-8879
(813) 251-5786 Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS,et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Jeffrey M. Klein, Esq.
Jklein@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

FILED
SID J. WHITE
FEB 3 1999
CLERK, SUPREME COURT
By ____________
Chief Deputy Clerk

IN THE SUPREME COURT
STATE OF FLORIDA
TALLAHASSEE, FLORIDA

DELTA CASUALTY COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY AND BANKERS INSURANCE COMPANY,

Appellants,

v.

PINNACLE MEDICAL, INC., etc., and M&M DIAGNOSTICS, INC., et al.,

Appellees.

CASE NOS.: 94,494
94,539

---

**INITIAL BRIEF OF APPELLANTS**

**JOINTLY FILED BY DELTA CASUALTY COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, AND BANKERS INSURANCE COMPANY**

---

CLAY W. SCHACHT, ESQUIRE
Florida Bar No.: 0043834
Jack, Wyatt, Tolbert & Turner, P.A.
Post Office Box 948600
Maitland, Florida 32794-8600
Attorneys for Delta Casualty Company

TRACY RAFFLES GUNN, ESQUIRE
Florida Bar No.: 984371
Fowler, White, Gillen, Boggs, Villareal and Banker, P.A.
Post Office Box 1438
Tampa, Florida 33601
Attorneys for Nationwide Mutual Fire Insurance Company

BRIAN D. DEGAILLER, ESQUIRE
Florida Bar No.: 283703
Litchford & Christopher, P.A.
Post Office Box 1549
Orlando, Florida 32802
Attorneys for Bankers Insurance Company

CHRISTOPHER S. REED, Esquire
Jack, Wyatt, Tolbert & Turner, P.A.
Post Office Box 948600
Maitland, Florida 32794-8600
Co-Counsel for Nationwide Mutual Fire Insurance Company

Exhibit "1"

construction contracts and labor regulations that impact employment contracts to FCC regulations that impact broadcasting contracts.

The Fifth District apparently recognized this fact, because the majority opinion discounts this voluntary bargain analysis by assuming that certain health care providers are economically forced to take assignments of benefits to stay in business. As discussed in detail above, this assumption was not only unsupported by any record facts but was a wholly improper expansion of a court's proper role in evaluating the validity of a statute. The Legislature is given the authority to make policy and to generalize that policy to apply to all similarly situated persons. The courts cannot invalidate a statute by surmising some exceptional and unproven facts that may or may not apply to an individual affected by the statute. Of course, this is particularly true in addressing a facial challenge.

The fact that these providers are only subject to the arbitration clause as a result of their voluntary acceptance of assignments of benefits applies equally to dispel all constitutional challenges raised herein. To the extent that their rights have been impaired, that impairment resulted from their decision to accept an assignment, not from the statute.

## II. REGARDLESS OF THE CONSTITUTIONALITY OF THE STATUTE, APPELLEES WERE BOUND TO ARBITRATE AS THIRD PARTY BENEFICIARIES OF THE INSURANCE CONTRACTS.

The Fifth District should not even have reached the constitutionality issue in this case, because there is a wholly independent reason that these providers should have been compelled

to arbitrate. As discussed in detail above, section 627.736(5) statutorily implies such a binding arbitration provision in every PIP policy issued in this state. In this case, there is no question that each of the insurance contracts contained such a provision. The contracts themselves are sufficient to bind the providers to arbitrate regardless of the effect or validity of the statute.

It is well established that health care providers are third party beneficiaries of insurance contracts providing coverage for health care. See United States v. Automobile Club Insurance Company, 522 F.2d 1 (5th Cir. 1975); Vencor Hospitals South, Inc. v. Blue Cross and Blue Shield of Rhode Island, 929 F.Supp. 420 (S.D. Fla. 1996); Orion Insurance Company v. Magnetic Imaging Systems I, 696 So. 2d 475 (Fla. 3d DCA 1997); Pasteur Health Plan, Inc. v. Salazar, 658 So. 2d 543 (Fla. 3d DCA 1995).

It is likewise clear that third party beneficiaries are subject to the terms of the relevant contracts, including arbitration clauses. See Orion, 696 So. 2d at 478; Terminix International Co. v. Ponzio, 693 So. 2d 104, 109 (Fla. 1st DCA 1997); Zac Smith & Co. v. Moonspier Condominium Assoc., 472 So. 2d 1324 (Fla. 1st DCA 1985). See also Scobee Combs Funeral Home Inc. v. E.F. Hutton & Co., 711 F.Supp. 605 (S.D. Fla. 1989) (holding that parties were bound by an arbitration provision in National Association of Securities Dealers manual, regardless of the fact that no contract between them contained such a provision); Desiderio v. National Association of Securities Dealers, Inc., 2

F.Supp.2d 516 (S.D.N.Y. 1998) (execution of a U-4 SEC form "inherently represents an agreement to arbitrate" as mandated by the relevant statute, even if the form does not so state).

No argument has been raised that an insurer cannot include an arbitration clause in its policy. Thus, regardless of the validity or effect of the statutory arbitration provision in section 627.736(5), these Appellees should have been compelled to arbitration. The Fifth District's decision should be quashed as improperly holding a statute unconstitutional when the case could have resolved without reaching that issue.

## III. THE PREVAILING PARTY ATTORNEYS' FEE PROVISION IN SECTION 627.736 IS CONSTITUTIONAL.

In addition to invalidating the arbitration requirement of the PIP statute, the Fifth District also held that the prevailing party attorneys' fee provision was unconstitutional. Although the court's discussion of the attorneys' fee issue is somewhat sparse, the primary basis for the holding is the fact that medical providers who accept an assignment of benefits are subject to a prevailing party fees provision, while insureds' direct claims are governed by Florida Statutes section 627.428, which allows the insured to recover fees from the insurer but provides no right of recovery for a prevailing insurance carrier in disputes directly with an insured or beneficiary. Like the analysis applied to the arbitration provision, the majority opinion in the Fifth District concludes that such a distinction between providers and insureds is "discriminatory."




# Nationwide's Century II Auto Policy

## Auto insurance protection you can count on in a policy you can understand

This is an insurance policy that is readable, easy to understand and straightforward. You have purchased the best auto insurance—backed by the best in policyholder service. Our commitment to you is to keep it the best.

Please take a few minutes to read and see what's inside your Century II policy.

Should you have an accident or loss—and we hope you don't—just call us at once. Our claims service starts then. The telephone number to call is listed on your Nationwide identification card, or you may get in touch with any local claims office.

If you have any questions about this policy, or any part of your insurance program, your sales representative will welcome your call any time.

Thank you for letting Nationwide be on your side.

## YOUR GUIDE TO PROTECTION

INSURING AGREEMENT . . . . 2
DEFINITIONS—Key Policy Words . . . . 2
TERRITORY—Where Your Protection Applies . . . . 3
COVERAGES
- Physical Damage (Comprehensive, Collision, Towing and Labor) . . . . 3
- Auto Liability (for Property Damage and Bodily Injury) . . . . 6
- Personal Injury Protection . . . . 10
- Medical Payments . . . . 12
- Uninsured Motorists (Stacked) . . . . 15

GENERAL CONDITIONS
- Insured's Duties After an Accident or Loss . . . . 19
- Unauthorized Use . . . . 19
- How Your Policy May Be Changed . . . . 19
- If You Become Bankrupt . . . . 19
- Our Right to Recover from Others (Subrogation) . . . . 20
- Policy Renewal . . . . 20
- Non-Renewal . . . . 20
- Your Right and Our Right to Cancel . . . . 20
- Legal Action Limitations . . . . 21
- Mediation . . . . 21
- Fraud . . . . 22
- Our Installment Premium Plan . . . . 22

MUTUAL POLICY CONDITIONS—Nationwide Mutual Insurance Company—Nationwide Mutual Fire Insurance Company . . . . 22

Nationwide Mutual Insurance Company . Nationwide Property and Casualty Insurance Company
Nationwide Mutual Fire Insurance Company/Home Office: Columbus, Ohio 43215-2220

F4-6169-B (3-00)

Exhibit "9"

personal injury protection (continued)

## INSURED PERSONS' DUTIES

1. The **insured** or someone on the **insured's** behalf will report any accident to **us** in writing as soon as practical.
2. As soon as practicable, the **insured** will submit written proof of claim to **us**, under oath if **we** request. This proof must include details of:
   a) the nature and extent of injuries;
   b) treatment received and contemplated; and
   c) any other facts which could affect the types and amounts of benefits payable.
3. The **insured** must submit to examinations by physicians **we** select, as often as **we** reasonably require. If the **insured** unreasonably refuses to submit to a physical examination **we** request, **we** will not be liable for subsequent benefits which would be payable under this coverage.

## SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

This coverage provides, subject to its terms, Personal Injury Protection for accidental **bodily injury** of an **insured** that arises out of the use, ownership or maintenance of a rented or leased **motor vehicle**. This special provision applies only to losses occurring within the state of Florida. However, unless otherwise stated in bold type on the face of the rental or lease agreement, the Personal Injury Protection coverage afforded under the renter's or lessor's policy will be primary.

## ARBITRATION/ASSIGNMENT OF BENEFITS

If a dispute arises between **us** and any person who, as a provider of medical services and supplies, has agreed to accept assignment of Personal Injury Protection benefits, the dispute shall be settled by binding arbitration. The provisions of Chapter 682 relating to arbitration shall apply.

When an assignment of Personal Injury Protection benefits is made by any **insured**, any and all claims to such benefits by the **insured** belong to the health care provider who has received the assignment. Priority of payment of this coverage shall be given to the assigned claims of which **the company** has written notice.

## ASSIGNABILITY

No interest in this coverage can be transferred without **our** written consent. However, if the policyholder dies, this coverage will stay in force for the rest of the policy period for those persons who were entitled to coverage at the time of death.

# medical payments

**(medical expenses payable regardless of fault)**

## COVERAGE AGREEMENT

This coverage provides benefits over and above any available Personal Injury Protection benefits. **We** will pay:

1. Reasonable expenses incurred for necessary medical and funeral services for:
   a) **you**; or
   b) any **relative**;

   for accidental **bodily injury** suffered while **occupying your auto**. The expenses must be incurred within one year following the accident. However, when Personal Injury Protection benefits apply to the same accident, the one-year time limit will begin when Personal Injury Protection benefits are exhausted.
2. The portion of any claim for Personal Injury Protection medical benefits which is otherwise covered but is not payable due to the coinsurance provision for Medical Expenses benefits. This applies regardless of whether the full amount of Personal Injury Protection coverage has been exhausted. This does not include the amount of any Personal Injury Protection **deductible** which has been selected.
3. Up to the limits stated in the policy Declarations.
4. Regardless of who is at fault in the accident.

Sent 1/15/01




or
Salvatore D. LaRusso, D.C., P.A.

iates
Kenneth M. Ruesch, D.C.
Jose L. Llorens, D.C.

0 Wellington Trace, Suite 13
ngton, FL 33414
) 793 4700

ir

of Florida
d of Chiropractic
8-2000)

la Chiropractic Society
-present)

y, International Chiropractic
ciation (Honorary 1992)

lend Circle
hiropractic College

ll on Roentgenology of
merican Chiropractic
ciation (1984-1990)

man of the Board
Beach County
ractic Society (1982-1985)

ent, Florida
ractic Society (1983-1995)

man of the Board
Chiropractic Society
-1998)

## ASSIGNMENT OF BENEFITS

I DESMOND MAHON hereby IRREVOCABLY ASSIGN to the below named medical provider, any rights or benefits under any policy of insurance, indemnity agreement, or any other collateral source as defined in Florida Statues for any service and or charges provided by the below named medical provider. You are hereby directed to mail any and all checks payable to the below named medical provider at the address listed on the HCFA-1500 form in box 33. The payment will not exceed my debtedness to the above-mentioned assignee of said Professional Service charges over and above this insurance payment.

Family Chiropractic Center
13860 Wellington Trace, Suite 13
Wellington, FL 33414

A photocopy of this Assignment shall be considered as effective and valid as the original.

I also authorize Family Chiropractic Center to release any information pertinent to my case to any insurance company, adjustor, and attorney involved in this case and hereby release him of any consequence thereof.

Dated at Family Chiropractic Center this 24th day of Jan 1997

X Desmond Mahon
Signature of POLICYHOLDER

Desmond Mahon
PATIENT'S NAME (Please Print)

Signature of Claimant if other than Policy Holder