UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

THE CHIROPRACTIC CENTRE, INC.,         01-6783
on behalf of itself and all others
similarly situated,

     Plaintiff,

vs.

METROPOLITAN CASUALTY INSURANCE
COMPANY,

     Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT METROPOLITAN CASUALTY
INSURANCE COMPANY'S OBJECTIONS TO MAGISTRATE'S
REPORT AND RECOMMENDATION (D.E. #507)**

    Plaintiff THE CHIROPRACTIC CENTRE, INC., on behalf of itself and all others similarly

situated ("TCCI"), hereby submits its Response to Defendant METROPOLITAN CASUALTY

INSURANCE COMPANY's ("METROPOLITAN") Objections to Magistrate's Report and

Recommendation ("R&R") Denying Motion to Compel Arbitration (D.E. # 507). For all the



ATLAS PEARLMAN
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

reasons set forth herein, TCCI respectfully submits that METROPOLITAN's Motion to Compel

Arbitration should be denied in all respects.

## ARGUMENT

**I.    THE FLORIDA SUPREME COURT INVALIDATED CONTRACTUAL AGREEMENTS TO ARBITRATE LIKE THOSE CONTAINED IN METROPOLITAN'S BUREAU'S PIP CONTRACT.**

As further set forth in TCCI's Objections to the R &R, the R&R correctly concludes that

Nationwide Mutual Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000) invalidated

arbitration clauses contained in PIP contracts.  METROPOLITAN asserts that although Pinnacle

invalidated Section 627.736(5), Florida Statutes, the PIP contract provides an independent basis to

compel arbitration.  This precise issue was raised and rejected by the Florida Supreme Court in

Pinnacle, 753 So. 2d 55.  In appellants' initial brief in Pinnacle, the appellant insurance companies

specifically argued as follows:

> **REGARDLESS OF THE CONSTITUTIONALITY OF THE STATUTE, APPELLEES WERE BOUND TO ARBITRATE AS THIRD PARTY BENEFICIARIES OF THE INSURANCE CONTRACTS.**
>
> The Fifth District should not even have reached the constitutionality issue in this case, because there is a wholly independent reason that these providers should have been compelled to arbitrate.  As discussed in detail above, section 627.736(5) statutorily implies such a binding arbitration provision in every PIP policy issued in this state.  In this case, there is no question that each of the insurance contracts contained such a provision.  The contracts themselves are sufficient to bind the providers to arbitrate regardless of the effect or validity of the statute.
>
> It is well established that health care providers are third party beneficiaries of insurance contracts proving coverage for health care.  See United States v. Automobile Club Insurance Company, 522 F.2d 1 (5th Cir. 1975); Vencor Hospitals South, Inc. v. Blue Cross and Blue Shield of Rhode Island, 929 F. Supp. 420 (S.D. Fla. 1996); Orion Insurance Company v. Magnetic Imaging Systems I, 696 So. 2d

2



CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

475 (Fla. 3d DCA 1997); Pasteur Health Plan, Inc. v. Salazar, 658 So. 2d 543 (Fla. 3d DCA 1995).

It is likewise clear that third party beneficiaries are subject to the terms of the relevant contracts, including arbitration clauses. See Orion, 696 So. 2d at 478; Terminix International Co. v. Ponzio, 693 So. 2d 104, 109 (Fla. 1st DCA 1997); Zac Smith & Co. v. Moonspier Condominium Assoc., 472 So. 2d 1324 (Fla. 1st DCA 1985). See also Scobee Combs Funeral Home Inc. v. E.F. Hutton & Co., 771 F. Supp. 605 (S.D. Fla. 1989) (holding that parties were bound by an arbitration provision in National Association of Securities Dealers manual, regardless of the fact that no contract between them contained such a provision); Desiderio v. National Association of Securities Dealers, Inc., 2 F. Supp. 516 (S.D.N.Y. 1998) (execution of a U-4 SEC form "inherently represents an agreement to arbitrate" as mandated by the relevant statute, even if the form does not so state).

No argument has been raised that an insurer cannot include an arbitration clause in its policy. Thus, regardless of the validity or effect of the statutory arbitration provision in section 627.736(5), these Appellees should have been compelled to arbitration. The Fifth District's decision should be quashed as improperly holding a statute unconstitutional when the case could have resolved without reaching that issue.

Brief for Appellants at 28-30, Pinnacle, 753 So. 2d 55.[1] The Nationwide policy at issue in Pinnacle

contained the following provision requiring arbitration:

## ARBITRATION/ASSIGNMENT OF BENEFITS

If a dispute arises between **us** and any person who, as a provider of medical services and supplies, has agreed to accept assignment of Personal Injury Protection benefits, the dispute shall be settled by binding arbitration. The provisions of Chapter 682 relating to arbitration shall apply.

When an assignment of Personal Injury Protection benefits is made by any **insured**, any and all claims to such benefits by the **insured** belong to the health care provider

---

[1]A true and correct copy of the relevant portions of their Initial Brief are attached hereto as Exhibit "1."



who has received the assignment. Priority of payment of this coverage shall be given to the assigned claims of which **the company** has written notice.[2]

The Florida Supreme Court rejected Nationwide's assertion that the contractual provision in its insurance policy required medical providers to arbitrate their claims. The Florida Supreme Court affirmed the decision of the Fifth District Court of Appeal which had affirmed a county court order denying motions to dismiss and to compel arbitration.

The Florida Supreme Court found Section 627.736(5), Florida Statutes ("Section 627.736(5)") unconstitutional. Section 627.736(5) did not, by itself, require arbitration. Section 627.736(5) required insurers to include an arbitration provision in all contracts binding any person providing medical services if that person has agreed to accept an assignment of personal injury protection benefits. Thus, arbitration had been mandated pursuant to policy provisions. As mandated by Section 627.736(5), METROPOLITAN's policy contains an arbitration provision. An arbitration provision was also included in the insurance policy at issue in Pinnacle. The Florida Supreme Court rejected the argument that the contractual language provides a basis to compel arbitration. If the contractual provision provided a basis to compel arbitration, the Florida Supreme Court would have used the provision to require arbitration notwithstanding the unconstitutionality of Section 627.736(5).

In Pinnacle, the healthcare provider brought its claim as the assignee of benefits from an insured. The PIP Contract between the insured and the insurance company contained an arbitration clause which required arbitration of disputes in the event that the claims were assigned to a

---

[2]A true and correct copy of the Nationwide policy provision is attached hereto as Exhibit "2."

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

healthcare provider. The policy did not require the same claims to be arbitrated if they were brought

by the insured. The insurance company asserted that notwithstanding the provisions of Section

627.736(5), Florida Statutes, there is an agreed contractual provision which provides for arbitration.

The Florida Supreme Court rejected this position. As the court stated:

> In the instant case, there is no voluntary agreement to arbitrate between medical
> providers and PIP insurers. Medical providers are forced to arbitrate by terms in an
> agreement entered into between an insured and an insurer, to which the assignor-
> insured is not subject.

Id. at 58 n. 4 (emphasis added). Accordingly, as the Court squarely held in Pinnacle, a contractual

provision entered into between an insured and an insurance company cannot require arbitration of

claims that are assigned to a healthcare provider where the insured is not required to arbitrate the

same claims.

There is no contract between TCCI and its patient to arbitrate claims. There is no contract

between TCCI and METROPOLITAN to arbitrate claims. There is no contract between

METROPOLITAN's insured and METROPOLITAN to arbitrate claims. TCCI cannot be forced to

arbitrate based on the terms of an agreement entered into between a METROPOLITAN insured and

METROPOLITAN, to which the assignor-insured is not subject. Id. Accordingly, the arbitration

provision contained in the METROPOLITAN PIP Contract provides no basis to compel arbitration

against TCCI.

ATLAS PEARLMAN

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

## II.    THE FEDERAL ARBITRATION ACT DOES NOT PREEMPT STATE INSURANCE LAW.

### A.    The FAA Does not Preempt the Florida Supreme Court's Determination that a Provision in a PIP Contract Requiring Assignees to Arbitrate Claims is Unconstitutional.

METROPOLITAN's assertion that the FAA somehow preempts the Florida Supreme Court's ruling in Pinnacle is entirely baseless. As the United States Supreme Court has stated:

> The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration.

> * * *

> Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which the arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward.

Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 477-479 (1989).

The Eleventh Circuit has similarly rejected METROPOLITAN's preemption argument. In Eassa Properties v. Shearson Lehman Bros., Inc., 851 F.2d 1301, 1304 n. 7 (11th Cir. 1988), the Court stated:

> [Appellee] claims that the [state uniform partnership act] is preempted by the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. However, as the Supreme Court recently reiterated, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" While federal law may govern the interpretation and enforcement of a valid arbitration agreement, state law governs the question of whether such an agreement exists in the first instance.

ATLAS PEARLMAN
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

(emphasis added) (citations omitted).

The purported arbitration clause asserted by METROPOLITAN specifically opts out of the use of the FAA. Courts must enforce the specific terms of arbitration agreements and parties may opt out of the FAA's standards. <u>Roadway Package Systems, Inc. v. Kayser</u>, 2001 WL 629276 (3rd Cir. June 7, 2001) (citations omitted). A clause in an agreement which "states that arbitration of any claim must be settled 'in accordance with the Texas General Arbitration Act'" is specific enough to opt out of the FAA and to establish "that the parties intended Texas law and the TGAA to govern the scope of arbitration clause." <u>Ford v. Nylcare Health Plans of the Gulf Coast, Inc.</u>, 141 F.2d 243, 249 (5th Cir. 1998); <u>see also</u> <u>ASW Allstate Painting & Constr. Co., Inc. v. Lexington Ins. Co.</u>, 188 F.3d 307 (5th Cir. 1999).

The alleged arbitration provision cited by METROPOLITAN specifically states:

> 6.    Arbitration.  There shall be binding arbitration of any claims dispute including medical benefits arising between us and any person providing medical services or supplies if that person has agreed to accept assignment of personal injury protection benefits.  The provisions of Chapter 682 of the Florida Arbitration Code relating to arbitration shall apply.  The prevailing party shall be entitled to attorney's fees and costs.

It is also well established that: "in the case of an insurance contract, the parties enter into the contract with the acknowledgment that the laws of that jurisdiction control their actions.  In essence, that jurisdiction's laws are incorporated by implication into the agreement." <u>Strochak v. Federal Ins. Co.</u>, 717 So. 2d 453, 455 (Fla. 1998) (citing <u>Sturiano v. Brooks</u>, 523 So. 2d 1126, 1129-30 (Fla. 1988)).

Based on the clear language of the clause METROPOLITAN cites to seek arbitration, there is a specific agreement to opt out of the provisions of the FAA. Since METROPOLITAN agreed to abide by Florida's rules of arbitration, enforcing those rules according to the terms of the



CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

METROPOLITAN agreement "is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." Volt Information Sciences, Inc., 489 U.S. at 479. As fully demonstrated above, the arbitration provisions struck down by the Florida Supreme Court provide no basis for METROPOLITAN to compel arbitration. METROPOLITAN's effort to utilize the FAA is unavailing. The FAA does not preempt the Florida Supreme Court's ruling and is inapplicable since the purported arbitration agreement specifically opts out of the FAA.

The Florida Supreme Court found that the provisions of Section 627.736(5) violated the rights of medical providers. As the Court stated:

> We agree with the Fifth District that the mandatory arbitration provision of section 627.736(5) is unconstitutional. However, we reach this conclusion by finding that the provision violates the right of medical providers to access to courts provided under article I, section 21 of the Florida Constitution. We also find that the attorney-fee provision of section 627.736(5) violates the due process rights of medical providers in violation of article I, section 9 of the Florida Constitution.

Pinnacle, 753 So. 2d at 57 (emphasis added). Since the Florida Supreme Court found that the arbitration provision of Section 627.736(5) is unconstitutional because it violates the rights of medical providers, the contractual provision in the METROPOLITAN policy is likewise unconstitutional. Contractual provisions can be found invalid if they violate constitutional rights. "A contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our Courts." Harris v. Gonzalez, 789 So. 2d 405, 407 (Fla. 4th DCA 2000). The arbitration provision in the METROPOLITAN PIP Contract is unconstitutional and provides no basis to compel arbitration in these proceedings. Pinnacle. Since the contractual provision is unconstitutional and void, there is no contract or agreement that can provide a basis to compel

ATLAS PEARLMAN

arbitration. If there is no valid contract, utilization of the FAA cannot create an agreement to arbitrate.

### B.    The McCarran-Ferguson Act Precludes Preemption of State Insurance Laws by the Federal Arbitration Act.[3]

METROPOLITAN asserts that "state laws purporting to restrict the enforceability of arbitration agreements are violative of the Supremacy Clause of the U.S. Constitution." METROPOLITAN asserts that any contractual arbitration provision invalidated by state law directly contravenes the FAA. METROPOLITAN asserts that: "This holding extends to judicial opinions as well as statutes." Based on these arguments, METROPOLITAN asserts that <u>Pinnacle</u> is preempted by the FAA.

Since the <u>Pinnacle</u> decision relates to the regulation of the business of insurance, the McCarran-Ferguson Act precludes utilization of the FAA to preempt state law. Generally, an arbitration clause contained in a contract will be enforced under the FAA even if there are state laws restricting the enforceability of an arbitration agreement.

> One exception to this general rule of preemption is contained in the McCarran-Ferguson Act. Congress passed the McCarran-Ferguson Act to insure that the states can regulate the business of insurance "free from the inadvertent preemption by federal statutes of general applicability."

<u>Standard Security Life Ins. Co. v. West</u>, 127 F. Supp. 2d 1064, 1067 (W.D. Miss. 2000); (quoting,

<u>Autry v. Northwest Premium Services</u>, 144 F.3d 1037, 1040 (7th Cir. 1998)). To determine whether

---

[3]TCCI recognizes that the issue of the applicability of the McCarran-Ferguson Act was not raised before the Magistrate Judge. However, the recent decision in <u>Smith v. Pacificare Behavioral Health of California</u>, 93 Cal. App. 4th 139, 113 Cal.Rptr.2d 140 (2001) and METROPOLITAN's argument that the FAA preempts state insurance laws constitute a compelling reason for this Court to consider the effect of the McCarran-Ferguson Act. <u>See Cupit v. Whitley</u>, 28 F.3d 532, 535 (5th Cir. 1994). To the extent METROPOLITAN believes it is prejudiced by this new argument, TCCI has no objection to METROPOLITAN filing a response to this issue to avoid any prejudice. <u>United States v. Malgar</u>, 327 F.3d 1038 (7th Cir. 2000).

ATLAS PEARLMAN
ATTORNEYS AT LAW

the McCarran-Ferguson Act precludes utilization of the FAA to preempt the Pinnacle decision, the following three factors must be considered:

>   (1)    whether the federal statute specifically relates to the business of insurance;

>   (2)    whether the state law at issue was enacted for the purpose of regulating the business of insurance; and

>   (3)    whether the application of the federal law invalidates, supercedes or impairs the state law.

Id. (citing United States Dep't of Treasury v. Fabe, 508 U.S. 491 (1993).

There is no question "that the FAA is a statute of general application which does not specifically relate to the business of insurance." Smith, 93 Cal. App. 4th 139, 113 Cal. Rptr. 2d 140. Based on METROPOLITAN's argument, there is no question that METROPOLITAN is asserting that application of the FAA would invalidate, supercede or impair the Pinnacle decision. Accordingly, the only issue for this Court to determine is whether the state law at issue was enacted for the purpose of regulating the business of insurance. The two-part test is as follows:

>   The Supreme Court in UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 360, 119 S.Ct. 1380, 143 L. Ed. 2d 462 (1999), recently clarified the test for determining when a state law regulates the business of insurance. First, a court must ask whether common sense shows that the state law regulates insurance. Second, a court looks at three factors as "checking points" or "guide posts" to test its common sense conclusion. Those factors are: 1) Does the law have the effect of transferring or spreading a policy holder's risk? 2) Is the law an integral part of the policy relationship between the insurance company and the insured? 3) Is the law limited to the insurance industry? Id. at 367, 119 S.Ct. 1380. These three factors are relevant but not required. Hence, to find that the state law regulates business of insurance, all three factors need not be present. Id. at 374, 119 S.Ct. 1380.

Standard Security Life Ins. Co., 127 F. Supp. 2d at 1067. "In order to be within the common-sense definition of insurance regulation, 'a law must not just have an impact on the insurance industry, but

10

ATLAS PEARLMAN
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

must be specifically directed toward that industry.'" Smith, 93 Cal. App. 4th at 156 (citing Pilot Life

Ins. Co. v. Dedeaux. 481 U.S. 41 (1987)).

Applying the foregoing factors in this case clearly establishes that the Pinnacle decision

regulates the business of insurance. Pinnacle is based on a comprehensive interpretation of the

purposes of Florida's Motor Vehicle No-Fault Insurance Law. The Florida Supreme Court based

its decision on the fact that the no-fault laws were enacted "to provide persons injured in an accident

with prompt payment of benefits" and that the attorney fee provision against insurers "was to

discourage insurance companies from contesting valid claims and to reimburse successful insureds

for their attorney fees when they are compelled to sue to enforce their insurance contracts." Pinnacle,

753 So. 2d at 59. Based on the Florida Supreme Court's finding that an arbitration clause forcing

medical providers to arbitrate claims does nothing to further the prompt payment of benefits and that

the prevailing party attorney-fee provision arbitrarily distinguishing between medical providers and

insureds, arbitration provisions such as those at issue herein, have been invalidated. Clearly, there

can be no question that Pinnacle is specifically directed towards Florida's Motor Vehicle No-Fault

Insurance Law.

In fact, state laws restricting arbitration in the context of insurance are "state laws enacted

for the purpose of regulating the business of insurance." Mutual Reinsurance Bureau v. Great Plains

Mut., 969 F.2d 931 (10th Cir. 1992); Stevens v. American Intern. Ins. Co., 66 F. 3d 41 (2d Cir.1995);

Quackenbush v. Allstate Ins. Co., 121 F.3d 1372 (9th Cir. 1997). Applying the foregoing factors

establishes that Pinnacle relates to the business of insurance. Although, Pinnacle does not have an

effect of transferring or spreading a policyholder's risk, the striking down of arbitration provisions

11



CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

such as those contained in the policy at issue herein clearly relates to the policy relationship between the insurer and the insured. In addition, <u>Pinnacle</u> is clearly limited to entities within the automobile insurance industry since it only relates to arbitration clauses contained in automobile insurance policies. Thus, there is no question that <u>Pinnacle</u> relates to the business of insurance.

Since the FAA does not specifically relate to the business of insurance, <u>Pinnacle</u> regulates the business of insurance, and the application of the FAA would invalidate, supercede or impair the Florida Supreme Court's decision in <u>Pinnacle</u>, the McCarran-Ferguson Act precludes utilization of the FAA in this matter. <u>United States Dep't of Treasury</u>, 508 U.S. 491. The FAA does not preempt <u>Pinnacle</u>. Accordingly, the FAA provides no basis to compel arbitration in these proceedings.

## CONCLUSION

For all the reasons set forth herein, Plaintiff THE CHIROPRACTIC CENTRE, INC., on behalf of itself and all others similarly situated, respectfully requests that this Court enter an Order denying Defendant METROPOLITAN CASUALTY INSURANCE COMPANY's Motion to



CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

Compel Arbitration, together with such other and further relief as this Court may deem just and proper.

Respectfully submitted,

ATLAS PEARLMAN, P.A.
Co-Counsel for Class Plaintiffs
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

By: _____
    JAN DOUGLAS ATLAS
    Florida Bar No. 226246

By: _____
    ERIC LEE
    Florida Bar No. 961299

By: _____
    ROBIN CORWIN CAMPBELL
    Florida Bar No. 327931

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

7090-00100 344554.1

13

ATLAS PEARLMAN

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 2510
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

mail this 15th day of January, 2002 upon: all individuals on the attached service list.

ERIC LEE

ATLAS PEARLMAN
ATTORNEYS AT LAW

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 10/26/01)

### Co-Lead Counsel for Plaintiffs

ATLAS PEARLMAN, P.A.
Eric Lee, Esq.
lee@atlaslaw.com
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
Suite 1700
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

### Co-Counsel for Plaintiffs

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
Suite 200
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK &
CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

### Counsel for Beech Street and ADP

TEW, CARDENAS,et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

### Counsel for Progressive

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

### Counsel for CCN

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
William E. Adams, Esq.
badams@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL  32202
(904) 798-3200
(904) 798-3207 Facsimile

ATLAS PEARLMAN

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

Counsel for:
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

**Counsel for Superior**

BUTLER BURNETT PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETT PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Jeffrey M. Klein, Esq.
Jklein@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

ATLAS PEARLMAN

FILED

SID J. WHITE

FEB 3 1999

CLERK, SUPREME COURT
By_____
Chief Deputy Clerk

# IN THE SUPREME COURT
## STATE OF FLORIDA
### TALLAHASSEE, FLORIDA

DELTA CASUALTY COMPANY,          :
NATIONWIDE MUTUAL FIRE INSURANCE :
COMPANY AND BANKERS INSURANCE    :
COMPANY,                         :
                                 :
        Appellants,              :
                                 :
v.                               :    CASE NOS.:  94,494
                                 :               94,539
PINNACLE MEDICAL, INC., etc.,    :
and M&M DIAGNOSTICS, INC., et al.,:
                                 :
        Appellees.               :
                                 :

---

### INITIAL BRIEF OF APPELLANTS

**JOINTLY FILED BY DELTA CASUALTY COMPANY,
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,
AND BANKERS INSURANCE COMPANY**

---

CLAY W. SCHACHT, ESQUIRE          TRACY RAFFLES GUNN, ESQUIRE
Florida Bar No.:  0043834         Florida Bar No.:  984371
Jack, Wyatt, Tolbert &            Fowler, White, Gillen,
   Turner, P.A.                      Villareal and Banker, P.A.
Post Office Box 948600            Post Office Box 1438
Maitland, Florida  32794-8600     Tampa, Florida  33601
Attorneys for Delta Casualty      Attorneys for Nationwide
Company                           Mutual Fire Insurance Company


BRIAN D. DEGAILLER, ESQUIRE       CHRISTOPHER S. REED, Esquire
Florida Bar No.:  283703          Jack, Wyatt, Tolbert &
Litchford & Christopher, P.A.        Turner, P.A.
Post Office Box 1549              Post Office Box 948600
Orlando, Florida  32802           Maitland, Florida  32794-8600
Attorneys for Bankers             Co-Counsel for Nationwide
Insurance Company                 Mutual Fire Insurance Company

Exhibit "1"

construction contracts and labor regulations that impact employment contracts to FCC regulations that impact broadcasting contracts.

The Fifth District apparently recognized this fact, because the majority opinion discounts this voluntary bargain analysis by assuming that certain health care providers are economically forced to take assignments of benefits to stay in business. As discussed in detail above, this assumption was not only unsupported by any record facts but was a wholly improper expansion of a court's proper role in evaluating the validity of a statute. The Legislature is given the authority to make policy and to generalize that policy to apply to all similarly situated persons. The courts cannot invalidate a statute by surmising some exceptional and unproven facts that may or may not apply to an individual affected by the statute. Of course, this is particularly true in addressing a facial challenge.

The fact that these providers are only subject to the arbitration clause as a result of their voluntary acceptance of assignments of benefits applies equally to dispel all constitutional challenges raised herein. To the extent that their rights have been impaired, that impairment resulted from their decision to accept an assignment, not from the statute.

II. **REGARDLESS OF THE CONSTITUTIONALITY OF THE STATUTE, APPELLEES WERE BOUND TO ARBITRATE AS THIRD PARTY BENEFICIARIES OF THE INSURANCE CONTRACTS.**

The Fifth District should not even have reached the constitutionality issue in this case, because there is a wholly independent reason that these providers should have been compelled

28

to arbitrate.  As discussed in detail above, section 627.736(5) statutorily implies such a binding arbitration provision in every PIP policy issued in this state.   In this case, there is no question that each of the insurance contracts contained such a provision.  The contracts themselves are sufficient to bind the providers to arbitrate regardless of the effect or validity of the statute.

It is well established that health care providers are third party beneficiaries of insurance contracts providing coverage for health care.   See United States v. Automobile Club Insurance Company, 522 F.2d 1 (5th Cir. 1975); Vencor Hospitals South, Inc. v. Blue Cross and Blue Shield of Rhode Island, 929 F.Supp. 420 (S.D. Fla. 1996); Orion Insurance Company v. Magnetic Imaging Systems I, 696 So. 2d 475 (Fla. 3d DCA 1997); Pasteur Health Plan, Inc. v. Salazar, 658 So. 2d 543 (Fla. 3d DCA 1995).

It is likewise clear that third party beneficiaries are subject to the terms of the relevant contracts, including arbitration clauses.   See Orion, 696 So. 2d at 478; Terminix International Co. v. Ponzio, 693 So. 2d 104, 109 (Fla. 1st DCA 1997); Zac Smith & Co. v. Moonspier Condominium Assoc., 472 So. 2d 1324 (Fla. 1st DCA 1985).  See also Scobee Combs Funeral Home Inc. v. E.F. Hutton & Co., 711 F.Supp. 605 (S.D. Fla. 1989) (holding that parties were bound by an arbitration provision in National Association of Securities Dealers manual, regardless of the fact that no contract between them contained such a provision); Desiderio v. National Association of Securities Dealers, Inc., 2

F.Supp.2d 516 (S.D.N.Y. 1998) (execution of a U-4 SEC form "inherently represents an agreement to arbitrate" as mandated by the relevant statute, even if the form does not so state).

No argument has been raised that an insurer cannot include an arbitration clause in its policy. Thus, regardless of the validity or effect of the statutory arbitration provision in section 627.736(5), these Appellees should have been compelled to arbitration. The Fifth District's decision should be quashed as improperly holding a statute unconstitutional when the case could have resolved without reaching that issue.

### III. **THE PREVAILING PARTY ATTORNEYS' FEE PROVISION IN SECTION 627.736 IS CONSTITUTIONAL.**

In addition to invalidating the arbitration requirement of the PIP statute, the Fifth District also held that the prevailing party attorneys' fee provision was unconstitutional. Although the court's discussion of the attorneys' fee issue is somewhat sparse, the primary basis for the holding is the fact that medical providers who accept an assignment of benefits are subject to a prevailing party fees provision, while insureds' direct claims are governed by Florida Statutes section 627.428, which allows the insured to recover fees from the insurer but provides no right of recovery for a prevailing insurance carrier in disputes directly with an insured or beneficiary. Like the analysis applied to the arbitration provision, the majority opinion in the Fifth District concludes that such a distinction between providers and insureds is "discriminatory."

30



**Nationwide**

# Nationwide's Century II Auto Policy

## Auto insurance protection you can count on in a policy you can understand

This is an insurance policy that is readable, easy to understand and straightforward. You have purchased the best auto insurance—backed by the best in policyholder service. Our commitment to you is to keep it the best.

Please take a few minutes to read and see what's inside your Century II policy.

Should you have an accident or loss—and we hope you don't—just call us at once. Our claims service starts then. The telephone number to call is listed on your Nationwide identification card, or you may get in touch with any local claims office.

If you have any questions about this policy, or any part of your insurance program, your sales representative will welcome your call any time.

Thank you for letting Nationwide be on your side.

## YOUR GUIDE TO PROTECTION

INSURING AGREEMENT ........................................ 2
DEFINITIONS—Key Policy Words ............................... 2
TERRITORY—Where Your Protection Applies ................... 3
COVERAGES
    Physical Damage (Comprehensive, Collision, Towing and Labor) ........... 3
    Auto Liability (for Property Damage and Bodily Injury) ................... 6
    Personal Injury Protection ................................... 10
    Medical Payments ......................................... 12
    Uninsured Motorists (Stacked) ............................... 15
GENERAL CONDITIONS
    Insured's Duties After an Accident or Loss ...................... 19
    Unauthorized Use ......................................... 19
    How Your Policy May Be Changed ............................. 19
    If You Become Bankrupt .................................... 19
    Our Right to Recover from Others (Subrogation) ................. 20
    Policy Renewal ........................................... 20
    Non-Renewal ............................................. 20
    Your Right and Our Right to Cancel .......................... 20
    Legal Action Limitations ................................... 21
    Mediation ............................................... 21
    Fraud ................................................... 22
    Our Installment Premium Plan ............................... 22
MUTUAL POLICY CONDITIONS—Nationwide Mutual Insurance Company—
                                             Nationwide Mutual Fire Insurance Company ..... 22

Nationwide Mutual Insurance Company . Nationwide Property and Casualty Insurance Company
Nationwide Mutual Fire Insurance Company/Home Office: Columbus, Ohio 43215-2220

Fs-6169-B   (3-90)

*Exhibit "S"*

**personal injury protection**
(continued)

## INSURED PERSONS' DUTIES

1. The insured or someone on the insured's behalf will report any accident to us in writing as soon as practical.

2. As soon as practicable, the insured will submit written proof of claim to us, under oath if we request. This proof must include details of:

   a) the nature and extent of injuries;

   b) treatment received and contemplated; and

   c) any other facts which could affect the types and amounts of benefits payable.

3. The insured must submit to examinations by physicians we select, as often as we reasonably require. If the insured unreasonably refuses to submit to a physical examination we request, we will not be liable for subsequent benefits which would be payable under this coverage.

## SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES

This coverage provides, subject to its terms, Personal Injury Protection for accidental bodily injury of an insured that arises out of the use, ownership or maintenance of a rented or leased motor vehicle. This special provision applies only to losses occurring within the state of Florida. However, unless otherwise stated in bold type on the face of the rental or lease agreement, the Personal Injury Protection coverage afforded under the renter's or lessor's policy will be primary.

## ARBITRATION/ASSIGNMENT OF BENEFITS

If a dispute arises between us and any person who, as a provider of medical services and supplies, has agreed to accept assignment of Personal Injury Protection benefits, the dispute shall be settled by binding arbitration. The provisions of Chapter 682 relating to arbitration shall apply.

When an assignment of Personal Injury Protection benefits is made by any insured, any and all claims to such benefits by the insured belong to the health care provider who has received the assignment. Priority of payment of this coverage shall be given to the assigned claims of which the company has written notice.

## ASSIGNABILITY

No interest in this coverage can be transferred without our written consent. However, if the policyholder dies, this coverage will stay in force for the rest of the policy period for those persons who were entitled to coverage at the time of death.

**medical payments**
(medical expenses payable regardless of fault)



## COVERAGE AGREEMENT

This coverage provides benefits over and above any available Personal Injury Protection benefits. We will pay:

1. Reasonable expenses incurred for necessary medical and funeral services for:

   a) you; or

   b) any relative;

   for accidental bodily injury suffered while occupying your auto. The expenses must be incurred within one year following the accident. However, when Personal Injury Protection benefits apply to the same accident, the one-year time limit will begin when Personal Injury Protection benefits are exhausted.

2. The portion of any claim for Personal Injury Protection medical benefits which is otherwise covered but is not payable due to the coinsurance provision for Medical Expenses benefits. This applies regardless of whether the full amount of Personal Injury Protection coverage has been exhausted. This does not include the amount of any Personal Injury Protection deductible which has been selected.

3. Up to the limits stated in the policy Declarations.

4. Regardless of who is at fault in the accident.