IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 00-CIV-6061-FERGUSON/SNOW (Consolidated)
Referred to Magistrate Judge Snow

DR. PAUL ZIDEL, and all others similarly
situated,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant/Third Party Plaintiff,

v.

COMMUNITY CARE NETWORK,

    Third Party Defendant.

_____/



**DEFENDANT, ALLSTATE'S OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION REGARDING CCN'S PARTIALLY
UNOPPOSED MOTION TO COMPEL ARBITRATION (JOINED BY ALLSTATE)**

Defendant, Allstate Insurance Company, pursuant to Rule 72 of the Federal Rules of Civil Procedure, hereby objects to the Magistrate Judge's Report and Recommendation dated January 18, 2002 (DE #550) which denied CCN's Partially Unopposed Motion to Compel Arbitration (DE #174). For the following reasons, the District Court should set aside the Report and compel arbitration in this matter.

Factual Background

Plaintiff, Paul Zidel, M.D. ("Dr. Zidel"), is an orthopedic surgeon practicing in the State of Florida. (Second Amended Complaint, ¶ 1.) (DE #98) Dr. Zidel entered into an agreement with Community Care Network, Inc. ("CCN") to accept certain negotiated rates for his services

when rendered to individuals insured by certain insurance companies. (Id., ¶¶ 15, 22.) Dr. Zidel alleges that he became a "CCN Preferred Provider" (Id., ¶ 36) and signed a Professional Care Provider Agreement with CCN. (Id., ¶ 37 and Exhibit A thereto.) Dr. Zidel agreed to become a provider for CCN "payor organizations." (Id., ¶ 37.)

Dr. Zidel asserts that his agreement "does not allow CCN to allow automobile insurers ... access to Dr. Zidel's preferred provider rates." (Id., ¶ 37.) Further, he alleges that his agreement "with CCN did not authorize the application of his discounts by automobile insurers." (Id., ¶ 39.)

Dr. Zidel alleges that Allstate began to apply the CCN contractual rates to his medical bills when he treated patients covered by an Allstate automobile insurance policy. (Id., ¶ 22.) Dr. Zidel asserts that Allstate has no right to apply such rates since Allstate never became a "legitimate participant" in his PPO with CCN. (Id., ¶ 24.) Dr. Zidel alleges that Allstate applied the rates "as if it were a legitimate participant" in the CCN PPO, and he describes this conduct as a "Silent PPO." (Id., ¶¶ 25, 26.) Dr. Zidel asserts that Allstate engaged in this "Silent PPO" with CCN. (Id., ¶ 27.) Dr. Zidel specifically asserts that Allstate is not entitled to apply the CCN rates "under the terms and conditions of ... the CCN PPO contract with Dr. Zidel." (Id., ¶ 29.) Dr. Zidel complains that CCN allowed Allstate access to its rates even though Allstate was not a "proper payor" under the agreement. (Id., ¶ 40.)[1]

Dr. Zidel alleges that CCN and/or Allstate have mailed explanation of benefit forms (EOBs) which indicate the application of the CCN rates. (Id., ¶ 46.) The EOBs state that Allstate is entitled to the CCN rates. (Id., ¶ 47.)

---

[1] In its Answer to the Second Amended Complaint, Allstate denied all material allegations including that it is not a "legitimate participant" and that it is not entitled to take advantage of the CCN rates. Answer at pages 7-8.

Plaintiff's claims in this action were originally brought against both Allstate and CCN. (DE #47) When CCN responded with a motion to compel arbitration under the agreement between Dr. Zidel and CCN (DE #86), Dr. Zidel voluntarily dismissed CCN. (DE #96) After the filing of the Second Amended Complaint solely against Allstate (DE #98), Allstate filed a third party claim against CCN. (DE #115) Thereafter, CCN reasserted its motion to compel arbitration. (DE #174) Allstate expressly joined in the motion to compel arbitration. (DE #332)

<u>Arbitration Should Be Granted Since The Interpretation Of Dr. Zidel's Agreement With CCN Is Central To The Resolution Of His Claims Against Allstate.</u>

The Magistrate Judge recognized that all doubts should be resolved in favor of arbitration. Report at page 5, <u>citing</u> <u>Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985). The Magistrate Judge further recognized that to determine whether the claim falls within the terms of the arbitration agreement, the court must evaluate the underlying factual allegations regardless of the legal label assigned to the claim. Report at page 5, <u>citing</u> <u>J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.</u>, 863 F. 2d 315, 319 (4th Cir. 1988). The Magistrate Judge nonetheless recommended that CCN's motion to compel arbitration be denied because she found that "the plaintiff has not asserted any claim against CCN or Allstate under the PPO contract." Report at page 8. This finding is clearly erroneous. As demonstrated above, the agreement between Dr. Zidel and CCN provides the underlying factual foundation for Dr. Zidel's claims against Allstate. The Second Amended Complaint is replete with allegations that raise issues which can only be resolved by an interpretation of the terms of the Dr. Zidel-CCN agreement:

    1.    Does the agreement allow automobile insurers access to the CCN rates? (Second Amended Complaint, ¶¶ 37, 39.)

    2.    Is Allstate a "legitimate participant" in Dr. Zidel's PPO with CCN? (<u>Id.</u>, ¶ 24.)

3. Is Allstate a "proper payor" under the terms of the agreement? (Id., ¶ 40.)

4. Is Allstate entitled to access the CCN rates? (Id., ¶¶ 46, 47.)

5. Is CCN allowed to grant Allstate access to the rates Dr. Zidel agreed to accept? (Id., ¶ 40.)

Based on the underlying factual allegations of the Second Amended Complaint, Dr. Zidel cannot argue, and the Magistrate Judge cannot find, that plaintiff has not asserted any claim against Allstate under the PPO contract.

Furthermore, the Magistrate Judge denied the motion to compel arbitration because she found that "Allstate is not claiming any benefits or defenses as a third party beneficiary of the plaintiff's contact with CCN" and that "Allstate does not claim to be a third-party beneficiary of the PPO contract between the plaintiff and CCN, and cannot use the PPO contract as a defense." Report at pages 7 and 8. These findings are also clearly erroneous. In its Answer, Allstate specifically raised the defense that it "falls within the definition of 'Payor' in Exhibit A to the Complaint." Answer at pages 19, 23. Moreover, Allstate raised the defense that Dr. Zidel knew, or should have known, that Allstate was entitled to apply the CCN rates based on its contractual agreement with CCN. Answer at pages 20, 23-24. Thus, Allstate has raised and is raising its third party status under Dr. Zidel's agreement with CCN as a defense.

The resolution of Plaintiff's claims against Allstate as well as Allstate's defenses necessarily requires an interpretation of Dr. Zidel's agreement with CCN. Among other things, the Court will be required to construe ¶1.06 of the agreement which defines the "Payor."

Moreover, because Dr. Zidel broadly asserts that Allstate has "illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any steerage or other meaningful consideration for such discounts" (Id., ¶ 29), the Court will be

required to interpret the agreement to determine whether steerage or other consideration is specifically required. Notwithstanding Dr. Zidel's protests, contracts by which medical care providers agree to accept reduced rates for their services are legitimate and lawful even in the absence of steerage. First Health Group Corp. v. United Payors & United Providers, Inc., 95 F. Supp. 2d 845, 846-47, 849-50 (N.D. Ill. 2000) (a "PPO does not have a fixed definition which includes a steering requirement"). As one commentator has stated:

> While many providers have expressed outrage against what they have variously characterized as unethical to fraudulent behavior on the part of network organizations, the reality is that all too often the provider has signed an agreement without the proper due diligence as to the value to be received. "Contracting provider beware" may well be the watchphrase for hospitals in the 1990s.

Dickerson, Preferred Provider Organizations vs. Non-Directed Networks: A Provider Dilemma, Federation of American Health Systems (1998). Consequently, this case concerns contractual rights applicable to Dr. Zidel and Allstate under the CCN agreement. Cf., HCA Health Serv. of Georgia v. Employers Health Ins. Co., 22 F. Supp. 2d 1390 (N.D. Ga. 1998)(decision whether discounts applied were appropriate is based on the terms of the applicable contract).

Based on the factual allegations of the pleadings, the terms of Dr. Zidel's agreement with CCN are fundamental to a resolution of this lawsuit. This conclusion cannot be escaped simply by noting that CCN is a only a third party defendant, as done by the Magistrate Judge. This case would require an interpretation of the Dr. Zidel-CCN agreement regardless of whether CCN was a party to this suit.[2] Here, CCN is a party and disputes Dr. Zidel's claims regarding

---

[2] In addition to its status as third party defendant, CCN is specifically alleged to be a participant in the alleged RICO conspiracy. Second Amended Complaint, at ¶¶118, 120-122, 124, 129, 131, 133-134, 140. Plaintiff specifically seeks "damages for Allstate's and CCN's violations of" 18 U.S.C. §§1962(c) and 1962(d). Id., ¶¶135, 144. Thus, Dr. Zidel's pleading places CCN's conduct at issue. To the extent he complains about CCN's conduct, his complaints should be arbitrated regardless of whether he formally seeks recoveries from CCN.

5

CCN's authority to allow Allstate access to the CCN rates. The dispute in this case is clearly between Dr. Zidel's interpretation of his agreement that it does not include automobile insurers as "payors" and the interpretation held by both Allstate and CCN that "payors" include automobile insurers. Under the terms of Dr. Zidel's agreement, this dispute must be resolved by arbitration.

The arbitration clause in the Dr. Zidel-CCN agreement provides: "The sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be by binding arbitration as the parties do not want the delay or expense of lawsuits." Second Amended Complaint, Exhibit A thereto at ¶12.02. CCN's right to contract with "payors" such as Allstate is a fundamental term of the agreement. Second Amended Complaint, Exhibit A thereto at ¶4.01. The core dispute in this case is whether CCN had the right to contract with Allstate and allow it access to the CCN rates. CCN's rights will be determined in the context of this matter regardless of whether it is a defendant or third party defendant. The core dispute over CCN's rights under the agreement is clearly subject to arbitration under the terms of the arbitration clause.[3]

The Magistrate Judge also ruled against arbitration because she erroneously believed that Allstate had not requested arbitration. Report at page 6 footnote 6. Prior to CCN filing its motion to compel arbitration, CCN's counsel conferred with counsel for Allstate. Allstate's counsel advised that it had no objection to the motion. In fact, since Dr. Zidel's claims against Allstate are expressly based upon and derived from his contract with CCN, Allstate believed that Dr. Zidel must comply with all aspects of the contract, including the arbitration clause. Thus,

---

[3] A failure to compel arbitration raises the risk of inconsistent adjudications. CCN's rights under the agreement are entitled to be adjudicated by arbitration. An arbitrator could review the agreement and rule that CCN has the right to allow automobile insurers, including Allstate, access to its rates, while a court could take an inconsistent view. For consistency purposes, all such matters should be decided by arbitration.

CCN filed its motion as a partially unopposed motion. Moreover, so there would be no confusion regarding Allstate's position, Allstate formally advised the Court that it joined in CCN's motion. (DE #332) Allstate adopted and incorporated by reference the arguments made by CCN in support of its motion. (DE #332)

Because Allstate joined in, adopted and incorporated by reference CCN's motion to compel arbitration, this case falls within MS Dealer Service Corp. v. Franklin, 177 F. 3d 942 (11th Cir. 1999). The Magistrate Judge erroneously read Franklin to allow an arbitration clause to be enforced against a non-signatory to the contract. Report at page 7. However, the Franklin decision actually allowed a non-signatory to the contract, such as Allstate here, to enforce an arbitration clause against a signatory, such as Dr. Zidel here.

In Franklin, Sharon Franklin executed a Buyers Order with Jim Burke Motors, Inc. with respect to the purchase of a vehicle. 177 F. 3d at 944. The Buyers Order contained an arbitration clause. Id. After taking possession of the vehicle, Ms. Franklin noted several defects and then brought suit against Jim Burke, MS Dealer and Chrysler Credit asserting breach of contract, breach of warranty, fraud and conspiracy. Id. at 944-945. MS Dealer filed a motion to compel arbitration which the district court denied because MS Dealer was not a signatory to the Buyers Order. Id. at 945. The Eleventh Circuit reversed, concluding that MS Dealer, although a non-signatory, could compel arbitration because plaintiff's claims against MS Dealer make reference to, presume the existence of, arise out of, and directly relate to the Buyers Order. Id. at 947. The same conclusion should be reached here since Dr. Zidel's claims against Allstate make reference to, presume the existence of, arise out of, and directly relate to his CCN agreement. See, e.g. Second Amended Complaint, ¶¶15, 22, 24-27, 29, 36-37, 39-40.

7

Finally, the Magistrate Judge erroneously found that there is no arbitration agreement in the automobile insurance policy under which Dr. Zidel is claiming to be a third party beneficiary. Report at page 6 footnote 6. This finding is without any record support since Dr. Zidel did not attach any insurance policy to his Second Amended Complaint. However, so the record is clear Allstate attaches hereto a copy of Allstate Florida Automobile Policy Amendment, Form AU2157, which is part of its standard policy in Florida. The Policy Amendment clearly contains an arbitration clause. See Policy Amendment at page 2. Although CCN's motion to compel arbitration was based on the terms of the Dr. Zidel-CCN agreement, Allstate's policy also requires arbitration and further supports the granting of CCN's motion. See Livingston v. State Farm Mutual Automobile Insurance Co., 774 So. 2d 716, 717 (Fla. 2nd DCA 2000).[4]

## CONCLUSION

WHEREFORE, Defendant, Allstate Insurance Company, respectfully requests that the District Court sustain its objections to the Magistrate Judge's Report and Recommendation (DE #550), that the District Court set aside the Report and Recommendation, and that the District Court grant CCN's motion to compel arbitration (DE #174) which Allstate joined (DE #332).

---

[4] In fact, the Magistrate Judge has already recommended that arbitration be compelled in one of the consolidated cases (Case No. 01-6778) based on a similar arbitration clause in an insurance policy. (DE #318) That recommendation applied to policies issued after February 3, 2000 when the Florida Supreme Court found unconstitutional portions of Section 627.736(5), Florida Statutes, in Nationwide Mutual Fire Insurance Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000). (DE #318) Based on the broad class claims sought to be certified here, which have no time limitations, Dr. Zidel's claims include Allstate policies issued to its insureds after such date. See Second Amended Complaint at ¶63.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to counsel on the attached service list this 28TH day of January, 2002.

*[Signature: David Shelton]*

| | |
|---|---|
| PETER J. VALETA | DAVID B. SHELTON |
| Florida Bar No. 327557 | Florida Bar No. 0710539 |
| ROSS & HARDIES | Rumberger, Kirk & Caldwell |
| 150 North Michigan Ave., Suite 2500 | P.O. Box 1873 |
| Chicago, Illinois 60601 | Orlando, Florida 32802 |
| Telephone: (312) 750-3619 | Telephone: (407) 839-4511 |
| Telecopier: (312) 750-8600 | Telecopier: (407) 841-2133 |
| Attorneys for Allstate Insurance Company | Attorneys for Allstate Insurance Company |

643388

## SERVICE LIST

**Co-Lead Counsel for Plaintiffs**

Jan Douglas Atlas, Esq.
Eric Lee, Esq.
Robin Corwin Campbell, Esq.
ATLAS PEARLMAN, P.A.
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301

Arthur S. Gold, Esq.
GOLD & COULSON
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603

Andrew Garcia, Esq.
Carlin Phillips, Esq.
PHILLIPS & GARCIA
13 Ventura Drive
North Darthmouth, MA 02747

Larry Kopelman, Esq.
Douglas Blankman, Esq.
KOPELMAN & BLANKMAN, P.A
Bank of America Tower
One Financial Plaza, Suite 1611
Fort Lauderdale, FL 33394

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
230 East Davis Boulevard
Tampa, FL 33606

Richard Bokor, Esq.
RICHARD BOKOR, P.A.
230 East Davis Boulevard
Tampa, FL 33606

Casey Fundaro, Esq.
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407

**Counsel for Allstate, Fidelity and Casualty, Continental, Deerbrook**

David B. Shelton, Esq.
RUMBERGER, KIRK & CALDWELL
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873

Peter J. Valeta, Esq.
ROSS & HARDIES
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601

**Counsel for Beech Street and ADP**

Thomas Tew, Esq.
Joseph A. DeMaria, Esq.
John M. Quaranta, Esquire
TEW, CARDENAS, et al.
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336

**Counsel for Progressive**

Francis Anania, Esq.
Donald A. Blackwell, Esq.
ANANIA, BANDKLAYDER, et al.
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131

**Counsel for CCN**

William W. Deem, Esq.
William E. Adams, Esq.
MCGUIRE WOODS, LLP
3300 Bank of America Center
Post Office Box 4099
Jacksonville, FL 32202-4099

**Counsel for Nationwide**

Katherine C. Lake, Esq.
FOWLER, WHITE, et al.
Post Office Box 1438
Tampa, FL 33601

James C. Haggerty, Esq.
SWARTZ CAMPBELL DETWEILER
1601 Market Street, 34th Floor
Philadelphia, PA 19103-2316

**Counsel for Florida Farm Bureau**

Gregory A. Baldwin, Esquire
Robert K. Levenson, Esquire
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3000
Miami, FL 33131

**Counsel for Liberty Mutual**

Mark Shapiro, Esq.
AKERMAN, SENTERFITT et al.
SunTrust International Center, 28th Floor
One Southeast Third Avenue
Miami, FL 33131

**Counsel for Hartford, Metropolitan, Integon**

Marcy Levine Aldrich, Esq.
AKERMAN, SENTERFITT et al.
SunTrust International Center, 28th Floor
One Southeast Third Avenue
Miami, FL 33131

**Counsel for Metropolitan**

Jeffrey P. Lennard, Esquire
SONNENSCHEIN, NATH & ROSENTHAL
8000 Sears Tower
Chicago, IL 60606

635937

**Counsel for Prudential**

John D. Adcock, Esquire
Richard M. Wyner, Esquire
Jeffrey M. Klein, Esquire
M. David Dobbins, Esquire
SHEA & GARDNER
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

Kathy Johnson Maus
Eric Zivitz
BUTLER BURNETTE PAPPAS
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308-3469

**Counsel for Superior**

Alan J. Nisberg, Esquire
BUTLER BURNETT PAPPAS
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607

**Counsel for American International**

Dale L. Friedman, Esquire
Brian P. Knight, Esquire
CONROY, SIMBERG, GANNON,
KREVANS & ABEL, P.A.
3440 Hollywood Blvd., 2nd Floor
Hollywood, FL 33021

THIS ENDORSEMENT CHANGES YOUR POLICY — KEEP IT WITH YOUR POLICY

# Allstate®

### Florida Automobile Policy Amendment

It is agreed that:

I.  Under the General Provision Section, the following provision is added:

**Mediation**
Both you and Allstate may request mediation of a claim for:

(a) bodily injury, sickness, disease, or death in the amount of $10,000 or less under Parts II, III, and IV of the policy; or

(b) property damage under Part V of the policy,

by filing a written request with the Florida Department of Insurance on a form which may be obtained from the Department. The request must state why mediation is being requested and the issue in dispute.

The Department of Insurance will appoint a mediator. Each party may reject one mediator. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation conference will be conducted informally and may be held by telephone if feasible. Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosures provided during mediation are not admissible in any subsequent action or proceeding relating to the claim. Costs of the mediation will be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts will not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation. Any suit regarding a mediated dispute must be filed as prescribed under the "Limitations of Actions" statutes or within 60 days after the conclusion of the mediation process, whichever is later.

AU2157

II. Under Part III, Personal Injury Protection (Coverage VA), the following provision is added:

**Arbitration**
Any claim dispute involving medical benefits under this part of the policy between us and a health care provider who has agreed to accept an assignment of personal injury protection benefits will be decided by arbitration upon the written request of either party. However, arbitration will not apply to disputes regarding the termination of personal injury protection benefits.

Upon the written request for arbitration, each party will select one arbitrator. The two arbitrators will attempt to select a third arbitrator. If they can't agree on a third arbitrator within 30 days, either party may request a judge of the court of record in the county of jurisdiction where the arbitration is pending to appoint the third arbitrator. A written decision agreed upon by any two or more arbitrators will be binding on each party.

As a condition of maintaining a claim in arbitration, the health care provider will make available to us for inspection and copying the entire file pertaining to the patient who is the subject of this proceeding.

The prevailing party to the arbitration will be entitled to attorney fees and costs. "Prevailing party" is defined as follows:

(a) The health care provider is the "prevailing party" if the arbitrator awards an amount more than 25% less than the health care provider's demand.

(b) We are the "prevailing party" if the arbitrator awards an amount less than 25% greater than the amount offered to be paid by us at arbitration.

If both the health care provider and us are prevailing parties under the above definition, then attorney fees and costs and all other expenses of arbitration will be paid by the party incurring them. However, the expenses and fees of the third arbitrator will be shared equally by both parties.

Attorney fees and costs will not be subject to any type of multiplier.

2

The arbitration will take place in the county in which the health care provider is located. If they are located out-of-state, arbitration will take place in the county in which the insured resides, unless the health care provider and we agree on another place. Arbitration is subject to the provisions of the Florida Arbitration Code, Chapter 682 of the Florida Statutes.

3