# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and other similarly
situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

      Defendant/Third-Party Plaintiff,

v.

CCN MANAGED CARE, INC.,

      Third-Party Defendant.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

NIGHT BOX
FILED

JAN 3 1 2002

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

---

### CCN'S Objections To Magistrate's Report And Recommendation Concerning Partially Unopposed Motion To Compel Arbitration

Third-Party Defendant, CCN Managed Care, Inc. ("CCN"), pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 4(a)(1) of this Court's Magistrate Judge Rules, hereby objects to the Magistrate Judge's Report and Recommendation dated January 18, 2002, on CCN's partially unopposed motion to compel arbitration (docket entry 550). CCN's underlying motion has been designated as docket entry 174.

CCN objects to the Magistrate's Report and Recommendation (the "Report") in several respects. First, the Report misconstrues the nature of Plaintiff's claims against defendant Allstate, each of which either asserts or is precluded by rights and obligations derived from Plaintiff's contract with CCN.

Second, the Report overlooks the broad scope of the arbitration clause in the contract at issue, and fails to afford it the presumption of arbitrability.

Third, the Report overlooks the fact that defendant Allstate joined in CCN's motion via a record filing (docket entry 332), and should thus be considered a movant in its own right.

Fourth, the Report misconstrues the law as it pertains to the enforcement of arbitration clauses in circumstances such as those at bar, in which claims against a non-signatory defendant nevertheless involve rights and expectations flowing from the contract.

Finally, the Report overlooks legal authority requiring arbitration of claims involving alleged inter-dependent, concerted misconduct by both a signatory entity (i.e. CCN) and a non-signatory entity (i.e. Allstate).

The Report also states, without recitation of authority or reasoning, that "Allstate . . . cannot use the PPO contract as a defense." Report at 8. It is presumed that the reference to "the PPO contract" means the Provider Agreement between Plaintiff and CCN. It is not clear whether the phrase "defense" refers to the ability to compel arbitration or to a substantive defense to the underlying causes of action. It is also not clear whether and/or how this assertion forms part of the Report's legal reasoning. Nevertheless, the statement is erroneous and CCN objects to it.

### Standard of Review

With respect to any findings of fact, the district court is to afford a *de novo* review as to all portions of the Report to which an objection is filed. 28 U.S.C. § 636(b)(1)(C). See LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988)(holding that the district court is obliged to conduct a *de novo* review of factual findings to which an objection is filed). All conclusions of law contained in the Report, whether objected to or not, are subject to *de novo* review. See Barilla v.

Ervin, 886 F.2d 1514, 1518 (9th Cir. 1989)(holding that the district court is obliged to conduct a *de novo* review of all conclusions of law, whether or not an objection is filed).

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiff Zidel was a member of CCN's healthcare provider network. In his contract with CCN, he agreed to allow CCN's insurance company clients to discount his invoices. Allstate was a CCN client, and openly applied the standard CCN discount to Plaintiff's invoices. Plaintiff contends, however, that his agreement with CCN did not allow CCN to do business with Allstate, or to authorize Allstate to apply the agreed discount. Therefore, Plaintiff seeks to recover the discount amounts from Allstate notwithstanding his agreement with CCN.

The issue at bar is quite simple. Plaintiff seeks to vindicate rights and expectations he claims to have under his "provider agreement" with CCN -- i.e. the right to limit the kinds of insurance company clients that CCN can allow to access its network. The question presented is whether, in so doing, Plaintiff can avoid the arbitration clause contained in that agreement by suing CCN's client rather than CCN itself. The answer, as shown below, is clearly not. The Magistrate's recommendation to the contrary is simply wrong.

### 1.    The factual context.

CCN operates a "preferred provider organization" made up of healthcare providers who, pursuant to "provider agreements" with CCN, have agreed to discount their fees to CCN's clients.[1] CCN's clients (whom the provider agreements call "payors") are entities such as insurance companies whose insureds are eligible for medical benefits under their policies.[2] The phrase "accessing the network" -- what Plaintiff also calls "stealing" or "unauthorized taking" of

---

[1] See e.g. Provider Agreement, attached as Exh. A to 2d Am. Compl., at ¶¶ 1.07 and 2.01.

[2] See Provider Agreement at ¶ 1.06.

discounts -- simply denotes the application by CCN's clients of the standard CCN discount to invoices from healthcare providers who, in their provider agreements with CCN, have agreed to discount their rates for those clients.

Plaintiff is an orthopedic surgeon who agreed, via his provider agreement with CCN (hereinafter the "Provider Agreement"), to discount his fees for CCN's payor clients.[3] In this case, however, Plaintiff claims that one of CCN's clients, defendant Allstate, was not authorized to discount his invoices. Instead, Plaintiff argues that Allstate is not the kind of "payor" envisioned by the Provider Agreement. Therefore, Plaintiff contends that notwithstanding his agreement to allow CCN's clients to discount his fees, and notwithstanding Allstate's status as a CCN client, Allstate engaged in actionable misconduct when, in "conspiracy" with CCN, it applied the standard CCN discount to Plaintiff's invoices.[4]

This is a crucial point. The second amended complaint alleges that Allstate did precisely what the Provider Agreement contemplated -- apply the standard CCN discount. Therefore, each count, whether dressed up as fraud, unjust enrichment etc., has to rely on the argument that Allstate was not a "proper payor" *under the terms of Plaintiff's Provider Agreement with CCN.* In other words, each count relies on and seeks to enforce Plaintiff's rights and expectations under his Provider Agreement with CCN, even though he has chosen to pursue CCN's client rather than CCN itself. Accordingly, the issue at bar is whether Plaintiff can seek to enforce rights

---

[3] See 2d Am. Compl. at ¶ 22.

[4] Plaintiff accomplishes this through a semantic sleight-of-hand, conjuring the terms "proper payor" and "legitimate payor" to in effect limit the kind of "payor" clients with which CCN can do business. See e.g. 2d Am. Compl. at ¶37 (Provider Agreement does not allow CCN to allow automobile insurance clients to "access" Plaintiff's discounted rates), ¶39 (Provider Agreement does not allow CCN to authorize the application of his agreed discounts by automobile insurers who could not increase Plaintiff's patient volume), ¶40 (CCN knew that Allstate was not a "proper payor" under the Provider Agreement because Allstate could not increase Plaintiff's patient volume), and ¶99b (Allstate was not a "legitimate" payor client under Plaintiff's Provider Agreement with CCN). These allegations are incorporated in, and central to, every count of the second amended complaint.

arising from the Provider Agreement and yet refuse to comply with that Agreement's arbitration clause.

**2.    The Magistrate's Report misconstrues the true nature of Plaintiff's claims against Defendant Allstate.**

The Magistrate's Report and Recommendation, at page seven, states that the Plaintiff has not asserted any claim against Allstate under the Provider Agreement, and further states that Allstate cannot use the Provider Agreement as a defense to Plaintiff's claims. At page three, the Report characterizes Plaintiff's claims as follows:

> The second amended complaint . . . alleges that Allstate unlawfully reduced its payments to the Plaintiff, a medical provider who treated persons making claims under Allstate's Personal Injury Protection . . . automobile insurance policies. The plaintiff participates in a preferred provider organization ("PPO") network, whereby he charges reduced fees to members of the PPO which CCN organized. The plaintiff alleges that *although the defendant never joined CCN's PPO*, as permitted by Florida law, CCN provided its software to Allstate which enabled Allstate to discount its payments for the plaintiff's services to the level of fees charged to members of CCN's PPO.

(emphasis added). This misconstrues the nature of Plaintiff's claims.

The issue presented by the second amended complaint is not whether Allstate is liable for discounting his invoices "although [it] never joined CCN's PPO". The Provider Agreement clearly requires Plaintiff to discount his fees for CCN's clients, and the complaint admits that Allstate and CCN had client relationship -- a business relationship pursuant to which CCN, for a fee, allowed Allstate to access its provider network. Instead, the issue is whether Allstate is a "proper payor" or a "legitimate payor", to use Plaintiff's terms, *under Plaintiff's Provider Agreement with CCN.*[5] Plaintiff cannot recover unless this question is answered in the negative,

_____

[5] See e.g. 2d Am. Compl. at ¶¶ 40 and 99(b). The term "payor" is defined in the Provider Agreement at ¶ 1.06. As far as CCN is aware, the terms "proper payor" and "legitimate payor" appear nowhere in the Agreement.

because otherwise he will have contractually authorized the taking of the discounts at issue. Therefore, Plaintiff's claims rely in the first instance on -- and essentially seek to enforce -- his alleged rights and expectations under the Provider Agreement.[6]

To elaborate, incorporated into each of Plaintiff's claims are the following allegations, most of which are re-phrased and repeated *seriatim* throughout the second amended complaint:

(a)     the benefit to healthcare providers of joining a network such as CCN's is that they are supposed to be "marketed" by the "payors" (i.e. CCN's clients) to their insureds, thereby increasing the providers' patient volume;[7]

(b)     In exchange for anticipated efforts to increase his patient volume, Plaintiff agreed, in his Provider Agreement, to discount his fees to CCN's clients;[8]

(c)     The Provider Agreement did not allow CCN to do business with automobile insurers like Allstate, such that they are allowed to "access" the discounted fees, because automobile insurers cannot increase patient volume;[9]

(d)     Allstate became a CCN client -- i.e. "obtained access to the CCN database" -- and applied CCN's standard discount to invoices received from the Plaintiff and other members of CCN's healthcare provider network;[10]

---

[6] See also second amended complaint at ¶ 29, alleging that Allstate was not entitled to take advantage of the standard CCN discount "under the terms and conditions of . . . the CCN PPO contract with Dr. Zidel [i.e. the Provider Agreement]".

[7] See e.g. 2d Am. Compl. at ¶19.

[8] See e.g. 2d Am. Compl. at ¶42.

[9] See e.g. 2d Am. Compl. at ¶¶ 37, 39.

[10] See e.g. 2d Am. Compl. at ¶¶ 43, 45 and 55.

(e)    Allstate was not a "proper payor" under Plaintiff's Provider Agreement with CCN because, as an automobile insurer, it could not increase Plaintiff's patient volume;[11] and

(f)    Therefore, Allstate's application of CCN's standard discount to Plaintiff's invoices was wrong and is actionable under a variety of theories.

Thus each of the claims asserts rights and expectations arising (if at all) from the Provider Agreement -- i.e. the right to limit the kinds of insurance company clients with whom CCN can do business, and the expectation that only certain kinds of payor clients would be allowed to access the network. Absent these rights and expectations, the Provider Agreement will afford a complete defense to the claims. Accordingly, each count of the second amended complaint will involve, and may be disposed by, the appropriate construction of the Provider Agreement.

The Magistrate clearly erred in concluding that Plaintiff's claims are not derived from the Provider Agreement, or that the Provider Agreement could not afford any defense to the claims. As shown in section four, *infra*, where the construction of rights and obligations under the Provider Agreement will be dispositive, the law will not allow Plaintiff to evade the Agreement's arbitration clause.

### 3.  The Report overlooks the broad scope of the Agreement's arbitration clause.

The Magistrate's Report states that the Provider Agreement contains a clause "requiring arbitration of any disputes between the plaintiff and CCN". Report and Recommendation at 3. That is not accurate. The clause at issue is not limited to "disputes", and it is not limited to matters between the plaintiff and CCN. Rather, the Agreement's arbitration clause extends about as broadly as it is possible to extend, to "any demands, disputes, claims or lawsuits", without any

---

[11] See e.g. 2d Am. Compl. at ¶40. Plaintiff recasts this allegation at paragraph 99(b) by claiming that Allstate is not a "legitimate payor".

limitation to only those between Plaintiff and CCN, and without any limitation to only those seeking enforcement of the Provider Agreement itself.

Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). This presumption of arbitrability stems from a strong federal policy favoring arbitration of disputes. See e.g. Southland Corp. v. Keating, 465 U.S. 1, 9 (1984) (enacting the FAA "Congress declared a national policy favoring arbitration"); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). While the intent of the parties remains paramount, "those intentions are generously construed as to the issues of arbitrability." Mitsubishi Motors Corp., 473 U.S. at 626 (emphasis added). See also AT&T Tech, 475 U.S. at 650; Moses, 460 U.S. at 24-5.

In analyzing this issue, the Court should focus on the claims themselves rather than the labels Plaintiff attaches to them. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 622 n.9 (1985); J. J. Ryan & Sons, Inc. v. Rhone Puelenc Textile, S.A., 863 F.2d 315 (4th Cir. 1988) ("To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim.") Thus a claim may assert tort or statutory liability, rather than breach of contract, and still fall within a contract's arbitration clause. The Courts have specifically held that the federal presumption in favor of arbitrability extends to statutory claims, such as (in this case) RICO claims. See In re Managed Care Litigation, 132 F. Supp. 2d 989, 993 (S. D. Fla. 2000)(presumption applies to statutory claims with equal force; if plaintiff's claims "touch matters" resolved by the agreement, then those claims are to be arbitrated irrespective of how the allegations are labeled).

In the case at bar, the Provider Agreement explicitly acknowledges that CCN will enter into relationships with insurance company clients, or "payors", that will allow those payors to discount Plaintiff's fees.[12]  Plaintiff seeks to impose an implied condition on CCN's ability to do that, by creating the fictional category of a "proper payor" or "legitimate payor" and arguing that Allstate does not meet that criterion.[13]  This issue, which will be dispositive if decided against the Plaintiff, will be resolved solely under the Provider Agreement.  Accordingly, employing this Court's logic from In re Managed Care Litigation, Plaintiff's claims touch upon matters that will be resolved by the Provider Agreement, and are therefore within the scope of that agreement.  Given the legal presumption in favor of arbitrability, the clause at issue is broad enough to encompass such claims notwithstanding Plaintiff's strategic decision to sue only CCN's client, and not CCN itself.

**4.    The Magistrate's Report overlooks the fact that defendant Allstate joined in CCN's motion via a record filing (docket entry 332), and should thus be considered a movant in its own right.**

The Magistrate's Report and Recommendation relies heavily on the assumption that, as stated in footnote three of the Report, "Allstate has not sought to compel the plaintiff to engage in arbitration with Allstate."  That is wrong.[14]

Allstate served "Defendant, Allstate's joinder in CCN's motion to compel arbitration" (docket entry 332) on November 14, 2001, adopting and incorporating by reference the arguments made by CCN in support of its motion.  Therefore, the instant motion must be analyzed as though filed by Allstate in its own right, in addition to CCN.  In this respect the case

---

[12] Provider Agreement at ¶¶ 1.06, 1.07 and 2.01.

[13] See e.g. 2d Am. Compl. at ¶¶ 40 and 99(b).

[14] CCN does not concede that it cannot compel arbitration on its own.  As shown in CCN's motion, it can do so. The issue is moot, however, in light of Allstate's joinder.

is similar to <u>Roberson v. The Money Tree of Alabama, Inc.</u>, 954 F. Supp. 1519 (M. D. Ala. 1997), in which a non-signatory defendant (i.e. Allstate) joined in a motion to compel arbitration which had been filed by a signatory defendant (i.e. CCN). Despite the fact that the plaintiffs subsequently dropped their claims against the signatory defendant -- just as Plaintiff did with respect to his claims against CCN -- the Court compelled arbitration as against the non-signatory defendants on grounds of equitable estoppel. <u>Id.</u> at 1522-23, 1529.

### 5. The Magistrate's Report misconstrues the law with respect to claims against a non-signatory defendant.

The Report contends that there is no basis for any defendant, including Allstate, to compel arbitration under Plaintiff's Provider Agreement with CCN because "Allstate is not claiming any benefits or defenses as a third party beneficiary" of that Agreement. That is wrong in several respects. First, as discussed above, Allstate explicitly joined in CCN's motion and asked that Plaintiff be required to arbitrate. Second, this misconstrues the law with respect to arbitration of claims against a non-signatory (i.e. one who is not a signatory party to the arbitration agreement) defendant.

This is a case by CCN's contractor (the Plaintiff) against CCN's client (Allstate). It emanates from the contractor's agreement with CCN, and directly challenges CCN's ability to do business with its client. It is clear that CCN could require its contractor, in the contract itself, to arbitrate any claims against CCN's client that arise from the PPO relationship. It is also clear that the contract at issue contains an arbitration clause that is as broad as it can possibly be. Therefore, while it may be arguable whether CCN could require Allstate to arbitrate, CCN can and has required Plaintiff, its contractor, to proceed in arbitration if Allstate is willing.

The Magistrate's Report references several cases in which arbitration was compelled despite the fact that one party or the other was not a signatory to the agreement containing the

arbitration clause. See MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 947-48 (11th Cir. 1999)(holding that a defendant who was not a signatory to the agreement containing the arbitration clause could nevertheless compel the signatory plaintiff to arbitrate); Int'l Paper Company v. Schwabedissen Maschinen & Anlagen, 206 F. 3d 411, 417-418 (4th Cir. 2000)(holding that a signatory defendant could compel the non-signatory plaintiff to arbitrate).[15] However, the Report fails to appropriately apply this and related case authority, concluding instead (i) that legal precedent does not allow Allstate to compel arbitration and, (ii) if Allstate cannot do so, neither can CCN. These conclusions are contrary to law.

Arbitration is a matter of contract, and parties usually cannot be required to arbitrate disputes in the absence of agreement to do so. See AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986). However, the Eleventh Circuit has recognized that the lack of a written arbitration agreement signed by all parties to a dispute does not necessarily preclude arbitration. See e.g. Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756-57 (11th Cir. 1993); McBro Planning and Development Co. v. Triangle Electrical Construction Co., Inc., 741 F.2d 342, 344 (11th Cir. 1984). Federal courts, including this District Court, have compelled arbitration in a variety of circumstances despite the lack of an arbitration agreement between plaintiff and defendant, including (i) cases in which a party is equitably estopped to assert the lack of a written agreement with the defendant, (ii) cases involving agency or related principles involving signatory and non-signatory defendants, and (iii) cases involving third party beneficiaries. In re Managed Care Litigation, 132 F. Supp. 2d at 994. Here, Plaintiff is require to submit to arbitration even though Allstate is not a signatory to the

---

[15] See generally, Roberson v. The Money Tree of Alabama, Inc., 954 F. Supp. 1519, 1527 (M.D. Ala. 1997)(discussing difference between cases in which non-signatories are compelled to arbitrate by signatories, and cases in which signatory parties are compelled to arbitrate by non-signatories).

contract containing Plaintiff's agreement to arbitrate for two reasons -- because the contract requires him to do so, and because he is equitably estopped from proceeding otherwise.

> **a.    Plaintiff's agreement requires him to arbitrate "any demands disputes claims or lawsuits" including those against CCN's clients**

As set forth above, the arbitration clause at issue in this case is about as broad as it could possibly be. The clause in <u>MS Dealer</u>, for example, was limited to disputes "between buyer and Jim Burke Motors, Inc." and was limited to only those disputes "arising out of or in connection with the purchase of this vehicle." <u>MS Dealer</u>, 177 F.3d at 944. Here, by contrast, section 12.02 of the Provider Agreement requires arbitration of "any demands disputes claims or lawsuits" without limitation to only those between Plaintiff and CCN, and without limitation to those arising out of or in connection with the Provider Agreement.[16]  <u>Cf.</u> <u>Boyd v. Homes of Legend, Inc.</u>, 981 F. Supp. 1423, 1429-31 (M. D. Ala. 1997)(holding that parties did not intend for arbitration clauses to encompass claims against non-signatories where clauses were expressly limited to disputes among the signatories which relate to the agreements).

Moreover, the Provider Agreement explicitly references CCN's payor clients, and requires Plaintiff to provide services for, and receive payment from, those clients.[17]  Indeed, the Agreement specifically authorizes CCN to act on behalf of the Plaintiff in contracting for the provision of healthcare services to the payors, it incorporates by reference the terms of CCN's contracts with the payors and requires Plaintiff to adhere to them, and it requires Plaintiff to

---

[16] It is telling that section 12.01 of the Provider Agreement, which imposes a good faith "meet and confer" obligation, applies by its explicit terms to the Plaintiff and CCN, and applies only to problems or disputes "under this Agreement". Under blackletter principles of contract construction, this demonstrates that the drafters knew how to limit a provision specifically to disputes between Plaintiff and CCN to enforce the terms of the Provider Agreement, and that they chose not to do so with respect to arbitration.

[17] Provider Agreement at ¶¶ 1.06 and 2.01.

cooperate with the payors.[18]    Accordingly, and particularly when viewed in light of the presumption of arbitrability, the arbitration clause clearly embodies an intent to include within its ambit claims against CCN's non-signatory payor clients.  See Cuningham Hamilton Quiter P.A. v. B. L. of Miami, Inc., 776 So.2d 940, 941 (Fla. 3d DCA 2000)(holding that arbitration clauses can be broad enough to require arbitration of disputes with non-signatories).  Plaintiff must therefore submit to arbitration, even if his claim is against one of CCN's clients rather than CCN itself, because he has agreed to do so.

> **b.    *Plaintiff is equitably estopped to resist arbitration by arguing that Allstate is not a party to the arbitration agreement.***

As set forth above, Plaintiff's claims against Allstate depend in the first instance on his alleged rights under the Provider Agreement.  In addition, while Plaintiff has abandoned his claims against CCN, the second amended complaint alleges a close, conspiratorial relationship between Allstate and CCN in connection with the alleged wrongdoing.  For each of these reasons, Plaintiff is equitably estopped to resist arbitration on grounds that Allstate is not signatory to the Agreement.

There are at least two different circumstances in which a party will be equitably estopped from arguing that he has no agreement to arbitrate with the opposing party.  First, where a plaintiff is signatory to an agreement containing an arbitration clause and relies on the terms of the agreement in asserting claims against the defendant, or where those claims presume the existence of the agreement and plaintiff's rights thereunder, the plaintiff may not avoid arbitration on grounds  that the defendant is a non-signatory.  See MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999).  Second, where a signatory plaintiff asserts substantially interdependent and concerted misconduct by both a non-signatory and signatory to

---

[18] See Provider Agreement at ¶¶ 2.01, 2.02, 4.01 and 5.11-.13.

the agreement, he may not resist arbitration by asserting the lack of an agreement with the non-signatory defendant. Id. Both of these circumstances are presented by Plaintiff's claims in this case.[19]

> **(i)    Plaintiff's claims presume the existence of the Provider Agreement and rely on his proffered construction of, and alleged rights under, that Agreement.**

"[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claim against the non-signatory." MS Dealer, 177 F.3d at 947. Moreover, when the claim "makes reference to or presumes the existing of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." Id. In this circumstance, the claims are said to be "intimately founded in and intertwined with the underlying contract obligations," and the arbitration clause in the underlying contract will be enforced despite the lack of a signed agreement between plaintiff and defendant. McBro Planning and Development, 741 F.2d at 343-44. See also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757-58 (11th Cir. 1993)(holding that estoppel applies where the parties, in asserting their claims, must rely even in part on the terms of the written agreement); Cuningham Hamilton Quiter P.A., 776 So2d at 942 n. 2 (holding that equitable estoppel will apply under Florida law where the non-signatory's claims are nevertheless grounded in the contract containing the arbitration clause). This principle applies here.

Allstate was one of CCN's payor clients. Under the explicit terms of the Provider Agreement, Plaintiff agreed to allow CCN's clients to discount his fees, i.e. to engage in the very conduct complained of in this case. Therefore, Plaintiff's claims allege, as they must if he is to

---

[19] This issue presents a question of law for the Court. See Sunkist Soft Drinks, 10 F.3d at 757 (enforcement of arbitration provision with respect to claims against a non-signatory presents a question of law).

prevail, that the Provider Agreement only allowed CCN to do business with certain *kinds* of clients (what the second amended complaint calls "proper payors" or "legitimate payors") and that Allstate fell outside those parameters. In this fashion, Plaintiff's claims presume the existence of the Provider Agreement and rely on an alleged obligation of CCN under that Agreement.

The fact that Plaintiff has chosen to pursue CCN's client rather than CCN itself is, therefore, of no consequence. The resolution of Plaintiff's argument -- that the Agreement limits network access only to what he calls "proper payors" or "legitimate payors" -- will be dispositive of his ability to pursue the claims against Allstate. Cf., In re Managed Care Litigation, 132 F. Supp. 2d at 993 (holding that if the claims "touch matters" addressed by the arbitration agreement, then those claims fall within the scope of the arbitration clause without regard to how Plaintiff chooses to characterize them); First Health Group Corp. v. United Payors & United Providers, Inc., 95 F. Supp. 2d 845, 849-50 (N. D. Ill. 2000)(holding that whether steerage is required, i.e. the gravamen of Plaintiff's "legitimate payor" argument, is a function of the parties' agreement). Accordingly, Plaintiff's claims are said to "arise out of and relate directly to" the Provider Agreement within the ambit of MS Dealer, and the claims are "intimately founded in and intertwined with" the Provider Agreement within the meaning of McBro Planning and Development.

It would be grossly inequitable to allow Plaintiff to rely on rights allegedly flowing from the Provider Agreement while avoiding its arbitration requirement. Cf. Int'l Paper Company v. Schwabedissen Maschinen & Anlagen, 206 F. 3d 411, 417-418 (4th Cir. 2000)(it would be inequitable to allow plaintiff to pursue the benefit of a contract and at the same time assert defenses to enforcement of its arbitration provision). The United States Court of Appeals for the

Fifth Circuit has characterized attempts to do this as making "an end-run around the arbitration clause". Grigson v. Creative Artists Agency, 210 F.3d 524, 530 (5th Cir. 2000). Plaintiff is, therefore, equitably estopped to argue that he did not agree to arbitrate with CCN's client, Allstate, simply because Allstate is not a signatory to the Provider Agreement.

### (ii)    The second amended complaint alleges interdependent and concerted misconduct by both CCN and Allstate.

Equitable estoppel also applies where a signatory plaintiff makes allegations of substantially interdependent, concerted misconduct by both a non-signatory entity (here, Allstate) and another signatory (here, CCN). Otherwise, the arbitration agreement between the two signatories "would be rendered meaningless and the federal policy in favor or arbitration effectively thwarted." MS Dealer, 177 F.3d at 947 (internal citations omitted).

The second amended complaint is replete with allegations that CCN and Allstate acted in concert. Plaintiff specifically accuses Allstate and CCN of having "collectively engaged" in the alleged "scheme to reduce benefits paid on auto injury claims".[20] This allegation is incorporated by reference in each count of the second amended complaint.[21] Plaintiff also names CCN as a RICO co-conspirator, accusing CCN and Allstate of forming an "association-in-fact", engaging in a conspiracy to commit RICO predicate acts and aiding and abetting the commission of those acts.[22] These allegations bring this case within the parameters of MS Dealer, and warrant an order compelling arbitration.

The fact that Plaintiff has dismissed his claims against CCN does not negate this analysis. This theory is particularly applicable where a plaintiff alleges concerted misconduct between a

---

[20] See e.g. 2d Am. Compl. at ¶ 27.

[21] See e.g. 2d Am. Compl. at ¶¶ 77, 85, 93, 160 and 165.

[22] See e.g. 2d Am. Compl. at ¶¶ 94-102, 105-112, 114, 117-122, 124-127, 131, 133-34, 142 and 148.

"signatory non-defendant" such as CCN and a "non-signatory defendant" such as Allstate. As recently noted in another appellate circuit:

> [I]t would be especially inequitable where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant. In such instances, that signatory, in essence, becomes a party, with resulting loss, *inter alia*, of time and money because of its required participation in the proceeding. Concomitantly, detrimental reliance by that signatory *cannot* be denied:  it and the signatory-plaintiff had agreed to arbitration in lieu of litigation (generally far more costly in terms of time and expense); but, the plaintiff is seeking to avoid that agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory.  Of course, detrimental reliance is one of the elements for the usual application of equitable estoppel.

Grigson, 210 F.3d at 528.[23]  A plaintiff should not be allowed to circumvent an agreement to arbitrate simply by foregoing suit against the other party to his agreement and suing an alleged co-conspirator instead.

The opinion in Roberson is also instructive.  There the plaintiff asserted claims of inter-related, conspiratorial misconduct by several defendants, only one of which was party to an agreement with the plaintiff calling for arbitration.  The signatory defendant filed a motion to compel arbitration in which the non-signatory defendant joined.  Plaintiff's claims against the signatory defendant were later dismissed.  Nevertheless, despite the fact that the plaintiff had never agreed to arbitrate disputes with the non-signatory defendant, the court granted the motion to compel arbitration, noting:

> [I]t is irrelevant whether or not claims are indeed raised against both [signatory and non-signatory] parties.  What is necessary is that the claim against the non-signatory be inextricably bound up with the terms and duties of the contract the plaintiff has signed with the other [since dismissed] defendant.  See McBro, 741 F.2d

---

[23]This quote is particularly pertinent here, where instead of arbitration, CCN is being forced to participate in expensive, time-consuming litigation via a third-party claim just as though it were still a named defendant.

> at 344. <u>The Robersons, alleging common breaches of duties by all defendants working hand-in-hand, are therefore equitably estopped</u> from asserting that the lack of a separate written arbitration agreement between themselves and American Bankers prevented American Bankers from compelling them to arbitrate according to the terms of the pre-dispute arbitration agreement in the loan contract.

<u>Roberson</u>, 954 F. Supp. at 1529 (emphasis added). That is precisely the situation at bar. While Plaintiff dismissed his claim against CCN, the remaining defendant, Allstate, joined in CCN's motion. The claims against Allstate rely in the first instance on the argument that CCN was not authorized to allow Allstate to access its network because, *under the terms of the Provider Agreement*, Allstate was not a "proper payor" or a "legitimate payor". The second amended complaint also alleges that CCN and Allstate engaged in a conspiratorial scheme to defraud the Plaintiff, working "hand-in-hand" as that phrase is used in the <u>Roberson</u> opinion. <u>Roberson</u> and the authority it applies are thus directly on point, and require that Plaintiff's claims be arbitrated.

**6.      The Report errs in concluding that Allstate cannot use the Provider Agreement as a defense.**

The Report makes an unsupported statement to the effect that "Allstate . . . cannot use the PPO contract as a defense." Report at 8. It is presumed that the reference to "the PPO contract" means the Provider Agreement between Plaintiff and CCN. It is not clear whether the phrase "defense" refers to the ability to compel arbitration or to a substantive defense to the Plaintiff's causes of action. It is also not clear whether and to what extent this assertion forms part of the Report's reasoning. Nevertheless, the statement is erroneous.

If this statement asserts that Allstate cannot enforce the Provider Agreement's arbitration clause against Plaintiff, it is erroneous for the reasons stated in sections 3, 4 and 5 above. Allstate (and CCN) can enforce the arbitration clause against Plaintiff in the circumstances of this case. If this statement refers to a defense on the merits of Plaintiff's causes of action, it is

also erroneous as set forth in section 2 above. The Provider Agreement is directly at issue in Plaintiff's claims, and can afford a substantive defense to them.

### 7.    Conclusion.

For the reasons stated above and in CCN's briefing on its underlying motion, which is incorporated herein by reference, CCN objects to the Magistrates Report and recommendation on the motion to compel arbitration, and requests that the motion be granted.

Respectfully submitted,

MCGUIRE WOODS LLP

By: _____
William W. Deem
Florida Bar No. 0512834
3300 Bank of America Center
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 (fax)

wdeem@mcquirewoods.com

ATTORNEYS AND TRIAL COUNSEL FOR CCN

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished by U.S. Mail on this _3/_ day of January, 2002, to all counsel listed on the attached service list.

_____
Attorney

\\COM\116373.1

**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**
(Amended 1/22/02)

## Co-Lead Counsel for Plaintiffs

ATLAS PEARLMAN, P.A.
Eric Lee, Esq.
lee@atlaslaw.com
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
350 East Las Olas Boulevard,
Suite 1700
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 (Facsimile)

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 (Facsimile)

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 (Facsimile)

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 (Facsimile)

## Co-Counsel for Plaintiffs

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786 (Facsimile)

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 (Facsimile)

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 (Facsimile)

## Counsel for:
## Allstate, Fidelity and Casualty,
## Continental, Deerbrook

RUMBERGER, KIRK &
CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, FL 32802-1873
(407) 872-7300
(407) 841-2133 (Facsimile)

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 (Facsimile)

## Counsel for Beech Street and ADP

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, FL 33131-4336
(305) 539-2495
(305) 536-1116 (Facsimile)

## Counsel for Progressive

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, FL 33131
(305) 373-4900
(305) 373-6914 (Facsimile)

## Counsel for CCN

MCGUIRE WOODS LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 N. Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 (Facsimile)

**Counsel for Nationwide**

FOWLER, WHITE
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 (Facsimile)

SWARTZ CAMPBELL
DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street, 34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 (Facsimile)

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 (Facsimile)

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 (Facsimile)

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 (Facsimile)

**Counsel for Metropolitan**

SONNENSCHEIN, NATH &
ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934 (Facsimile)

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL 60603-3441
(312) 782-0600
(312) 701-7711 (Facsimile)

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 (Facsimile)

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 (Facsimile)

SHEA & GARDNER
John D. Aldock, Esq.
jaldock@sheagardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Avenue, N.W.
Washington, DC 20036
(202) 828-2000
(202) 828-2195 (Facsimile)

**Counsel for American**
**International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Blvd., 2nd Floor
Holly wood, FL 33021
(954) 961-1400
(954) 967-8577 (Facsimile)