UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of himself
and others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

     Defendant/Third-Party Plaintiff,

v.

COMMUNITY CARE NETWORK, INC.
doing business as CCN,

     Third-Party Defendant.



_____

ULTRA OPEN MRI CORPORATION, et al., on behalf          01-6778
of itself and others similarly situated,

     Plaintiffs,

v.

PRUDENTIAL PROPERTY AND CASUALTY
INSURANCE COMPANY,

     Defendant.

_____

### DEFENDANT PRUPAC'S MOTION TO COMPEL ARBITRATION AS TO PLAINTIFF AFIELD AND MEMORANDUM IN SUPPORT THEREOF

Pursuant to 9 U.S.C. §§ 3 and 4, Defendant Prudential Property and Casualty Insurance

Company ("PruPAC") hereby moves for an order under the Federal Arbitration Act, 9 U.S.C. § 1





et seq. (the "FAA"), compelling plaintiff Walter E. Afield ("Afield") to arbitrate this dispute.

Because all of Afield's claims are subject to arbitration, PruPAC further requests that the

Amended Complaint be dismissed.  In the alternative, PruPAC requests that this action be stayed

in its entirety, as required under 9 U.S.C. § 3.

United States Magistrate Judge Snow has already issued a Report and Recommendation

that the original plaintiff in this action, Ultra Open MRI Corp. ("UOMC"), be compelled to

arbitrate this dispute and the Complaint be dismissed.  The complaint has now been amended to

add Afield.  Afield, like UOMC, must arbitrate this dispute as well.

In support of this Motion, PruPAC submits the following Memorandum:

## MEMORANDUM

A.    Procedural Background.

1. *The Original Complaint.*  The original plaintiff in this action, Ultra Open MRI Corp.

("UOMC"), filed its original Class Action Complaint (the "Original Complaint") against PruPAC

on May 8, 2001, but did not serve PruPAC until June 6, 2001.  The parties then agreed to

postpone PruPAC's deadline to respond to the Original Complaint.

2. *The Original Arbitration Motion.*  On August 6, 2001, prior to answering or otherwise

responding to UOMC's complaint, PruPAC filed its Motion to Compel Arbitration (D.E. # 10 in

Case No. 01-6778) (the "Original Arbitration Motion").  In its Original Arbitration Motion,

PruPAC requested that UOMC be compelled to arbitrate its dispute rather than litigate the case in

this Court.

On September 28, 2001, the Court referred PruPAC's Original Arbitration Motion to

United States Magistrate Judge Lurana Snow.  On November 13, 2001, Judge Snow issued her

Report and Recommendation (D.E. # 318 in Case No. 00-6061) (the "R&R"). Judge Snow recommended that PruPAC's Motion be granted and UOMC be compelled to arbitrate its dispute. On November 28, 2001, UOMC filed its "Plaintiff's Objections to Report and Recommendation (D.E. #318)" (D.E. # 363 in Case No. 00-6061) (the "Objections"). PruPAC filed its response to UOMC's Objections on December 17, 2001 (D.E. # 435 in Case No. 00-6061). The R&R is currently before the Court for consideration.

3. *The Stay Motion.* On October 12, 2001, PruPAC filed a Motion for Stay and for Expedited Consideration of Defendant's Motion to Compel Arbitration (D.E. # 17 in Case No. 01-6778) (the "Stay Motion"). The Stay Motion is fully briefed and ripe for decision by the Court.

4. *The Amended Complaint.* On January 23, 2002, UOMC filed an Amended Class Action Complaint (D.E. # 561 in Case No. 6061) (the "Amended Complaint") that added an additional plaintiff, Walter A. Afield ("Afield"). PruPAC has not yet answered or otherwise responded to the Amended Complaint.

B.    The Arbitration Provision.

The Amended Complaint asserts that UOMC and Afield, both of which are providers of medical services, are entitled to direct payment of benefits under automobile insurance policies issued by PruPAC that otherwise would have been payable to the policyholders. Complaint ¶¶ 7-11, 72-76, 105-09. The Amended Complaint attaches an Explanation of Reimbursement sent by PruPAC for services rendered to PruPAC policyholder Thelma W. Anderson by Afield under an automobile insurance policy issued by PruPAC.

The automobile insurance policies issued in Florida by PruPAC, however, contain a clause that expressly requires arbitration of any disputes between PruPAC and providers who furnish services to PruPAC policyholders. For example, Ms. Anderson's policy (hereinafter, the "PIP Contract") contains a section entitled "Arbitration" that reads as follows (Exhibit 1 attached hereto, PAC 226 FL [Ed. 5/98], at 28):

> "Any claims dispute between us and a medical service or supplies provider who has agreed to accept an assignment of benefits shall be decided by arbitration upon written request of either party. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on each party.
>
> The prevailing party is entitled to attorney's fees and costs.
>
> The arbitration shall take place in the county in which the provider is located. If they are located out-of-state, arbitration shall take place in the county in which the insured resides, unless the parties agree to another place. Arbitration is subject to the provisions of the Florida Arbitration Code, Chapter 682 of the Florida Statutes."

The policy at issue in connection with co-plaintiff UOMC's claims had a substantially similar arbitration provision.

## ARGUMENT

The PIP Contract's arbitration provision is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), and requires Afield to arbitrate the claims asserted in the Amended Complaint. First, the FAA governs the arbitration clause at issue here, and all of Afield's claims in this case fall within the terms of the arbitration clause. Next, the arbitration clause is enforceable against Afield as assignee and third-party beneficiary of the PIP contract because Afield freely agreed to accept the assignment. Finally, the Florida Supreme Court's

decision in *Nationwide Mut. Fire Ins. Co.* v. *Pinnacle Med., Inc.*, 753 So. 2d 55 (Fla. 2000) does not affect the enforceability of the arbitration provision.

## I.    THE FEDERAL ARBITRATION ACT GOVERNS THE ARBITRATION PROVISION AT ISSUE.

The FAA applies to the arbitration provision at issue here.  Section 2 of the FAA, 9 U.S.C. § 2, provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ."  This language "extend[s] the Act's reach to the limits of Congress' Commerce Clause power," *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 268 (1995), and is "applicable to *any* arbitration agreement within the coverage of the Act." *Perry* v. *Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (emphasis added).  There is no question that Afield's insurance policy comes within the commerce power, and thus is subject to the FAA, since it (a) is a contract between a Florida resident and a New Jersey company and (b) involves a subject (automobile insurance) that has an impact on interstate commerce.

Next, it is plain that the dispute at issue in this case falls within the terms of the arbitration provision.  As quoted above, the arbitration provision specifically covers "[a]ny claims dispute between [PruPAC] and a medical service or supplies provider who has agreed to accept an assignment of benefits" under the policy.  That is exactly the dispute at issue here.  Afield contends he is entitled to direct payment from PruPAC of the benefits that otherwise would be due to those policyholders, and disputes the amount of those payments.  As such,

Afield's claims are *precisely* the kind of claims that are squarely covered by the arbitration clause.[1]

## II.    THE FEDERAL ARBITRATION ACT CREATES A PRESUMPTION IN FAVOR OF ENFORCING ARBITRATION PROVISIONS.

As the United States Supreme Court has explained, "the basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 270 (1995). The Federal Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.* v. *Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Therefore, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc.* v. *Board of Trustees*, 489 U.S. 468, 475-76 (1989) (citations omitted).

---

[1] And even if there were any doubt as to that conclusion, arbitration still would be required under the Supreme Court's holding that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Moreover, each of Afield's claims are subject to arbitration so long as they "touch matters" covered by the contract containing the arbitration clause. *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). That test is abundantly satisfied here, since the Amended Complaint repeatedly both refers to and relies upon the insurance policies issued by PruPAC.

### III.   THE FEDERAL ARBITRATION ACT MANDATES THAT DISTRICT COURTS *SHALL* DIRECT PARTIES TO PROCEED TO ARBITRATION.

Once it is determined that an arbitration provision governed by the FAA applies, the Court must compel arbitration.  Section 3 of the FAA, 9 U.S.C. § 3, provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." (Emphasis added.)  Thus, "[b]y its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds Inc.,* v. *Byrd*, 470 U.S. 213, 218 (1985); accord *Creative Tile Mktg., Inc.* v. *Sicis Int'l*, 922 F. Supp. 1534, 1538 (S.D. Fla. 1996).

### IV.   AFIELD'S RICO CLAIMS ARE FULLY SUBJECT TO THE ARBITRATION PROVISION.

The strong congressional policy in favor of arbitration applies with full force to statutory claims.  See *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985).  If claims alleging statutory violations "touch matters" covered by an agreement containing an arbitration clause, then those claims must be arbitrated.  *Id.* at 624-25 & n.13; *Pennzoil Exploration & Prod. Co.* v. *Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998). This rule includes RICO claims, such as those asserted by Afield.  See *Shearson/American Express Inc.* v. *McMahon*, 482 U.S. 220, 242 (1987) (RICO claims are subject to arbitration

7

under FAA). As Judge Snow found with respect to co-plaintiff UOMC's claims, "[t]he associated RICO claim also is subject to arbitration." R&R at 10.

## V.    THE PIP CONTRACT DOES NOT AND CANNOT "OPT OUT" OF THE FEDERAL ARBITRATION ACT.

The fact that the arbitration provision at issue states that the "[a]rbitration is subject to the provisions of the Florida Arbitration Code" in no way dictates a different result. Rather, "[t]he [FAA] and federal law will govern a contract if the transaction evidences commerce, despite the inclusion of a choice of law clause in the contract." *Garney Cos.* v. *Southwest Water Wells, Inc.*, 1992 U.S. Dist. LEXIS 21319, at *8 (M.D. Fla. Sept. 15, 1992) (emphasis omitted), *adopted* 1993 U.S. Dist. LEXIS 5068 (M.D. Fla. Apr. 14, 1993). In fact, "[t]he courts have consistently held that the Federal Arbitration Act controls, despite the choice of law provisions." *Smith* v. *Pay-Fone Sys., Inc.*, 627 F. Supp. 121, 124 (N.D. Ga. 1985); see also, *e.g.*, *Dean Witter Reynolds, Inc.* v. *Daily*, 12 F. Supp. 2d 1319, 1321-22 & n.2 (S.D. Fla. 1998) (holding that the FAA applied even though agreement provided that arbitration clause "shall be governed by the laws of the State of New York"); *Singer* v. *E.F. Hutton & Co.*, 699 F. Supp. 276, 278-79 (S.D. Fla. 1988) (FAA applies even though arbitration clause itself provided that agreement was governed by New York law).

Instead, a choice of law provision in a contract evidencing commerce specifies the rules and/or substantive law by which arbitration will be conducted, but the contract is still subject to the dictates of the FAA. As the Third Circuit recently explained:

> "[I]f parties contract to arbitrate pursuant to arbitration rules or procedures borrowed from state law, the federal policy is satisfied so long as their agreement is enforced. . . . [But] the foregoing does not mean that agreements specifying that arbitration will be conducted pursuant to state rules or procedures cease being subject to the FAA; it means simply that

8

the FAA permits parties to 'specify by contract the rules under which . . . arbitration will be conducted.'  When a court enforces the terms of an arbitration agreement that incorporates state law rules, it does so not because the parties have chosen to be governed by state rather than federal law.  Rather, it does so because *federal law* requires that the court enforce the terms of the agreement."  *Roadway Package Sys., Inc.* v. *Kayser*, 257 F.3d 287, 292 (3d Cir. 2001) (citations omitted); see also *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) (applying FAA to analyze contract with a choice of law provision).

As Judge Snow found when considering a similar issue concerning the arbitration provision for co-plaintiff UOMC, "[t]he contract may be enforced under the FAA, and under the [Florida Arbitration Code] to the extent that it does not conflict with the FAA."  R&R at 10.

## VI.   THE ARBITRATION PROVISION IS FULLY ENFORCEABLE AGAINST AFIELD AS ASSIGNEE AND THIRD-PARTY BENEFICIARY OF THE PIP CONTRACT.

Although Afield was not originally a party to the PIP Contract, he freely agreed to accept, as a third-party beneficiary, the insured's assignment of that Contract.  As the arbitration provision makes clear, it applies only to "[a]ny claims dispute between us and a medical service or supplies provider [such as Afield] who has *agreed to accept* an assignment of benefits" from the insured.  Having agreed to accept that assignment, Afield cannot legitimately contend that he has not agreed to the PIP Contract's provisions.  If Afield did not wish to agree to those provisions, he was free not to accept the assignment in the first place.

As an earlier case in this District makes clear, third-party beneficiaries of a contract are bound by the terms of any arbitration provision in that contract.  *Interpool Ltd.* v. *Through Transport Mut. Ins. Ass'n*, 635 F. Supp. 1503, 1505 (S.D. Fla. 1985).  The Court explained:

"The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke.  The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract.  Ordinary principles of contract law are used to determine if a non-signatory is to be bound by the contract and a party may be bound by

an agreement to arbitrate even in the absence of a signature." *Id.* at 1505 (citations and internal punctuation omitted).

The situation here is the same. Afield seeks the benefits of the PIP Contract as a third-party beneficiary, while simultaneously seeking to avoid the obligation to arbitrate. This he cannot do.[2]

## VII.  THE FLORIDA SUPREME COURT'S DECISION IN *NATIONWIDE MUT. FIRE INS. CO.* v. *PINNACLE MEDICAL, INC.*, DOES NOT AFFECT THE ENFORCEABILITY OF THE ARBITRATION PROVISION.

The Florida Supreme Court's decision in *Nationwide Mut. Fire Ins. Co.* v. *Pinnacle Med., Inc.*, 753 So. 2d 55 (Fla. 2000) does not dictate a different result.[3] First, the Florida Supreme Court struck down a Florida statute, but did not hold that the arbitration provision at issue is

_____

[2] UOMC, Afield's co-plaintiff, has earlier cited to two Florida court of appeals cases, *Federated Title Insurers, Inc.* v. *Ward*, 538 So. 2d 890 (Fla. Dist. Ct. App. 1989) and *Karlen* v. *Gulf & Western Indus., Inc.*, 336 So. 2d 461 (Fla. Dist. Ct. App. 1976), for the proposition that "[a]rbitration agreements are personal covenants *usually* binding only upon parties to the covenant," and not, apparently, on assignees like UOMC. Objections at 8. UOMC misreads these cases. The courts in *Ward* and in *Karlen* do not hold that an arbitration provision can *never* bind an assignee, but rather leave open the possibility that an arbitration provision may do so in some circumstances. And, as Judge Snow explained, neither case "involve[s] a contract which specifically states that the assignee is required to engage in arbitration." R&R at 10 n.3. In contrast, the PIP Contract at issue here, like the PIP contract that Judge Snow has found enforceable against plaintiff UOMC, *expressly requires the assignee to arbitrate* any dispute with PruPAC. Moreover, any holding that arbitration provisions should not, unlike other contractual provisions, apply to an assignee would clearly contravene the FAA. *Perry* v. *Thomas*, 482 U.S. 483, 493 n.9 (1987) ("A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with" the FAA.).

[3] Certain defendants in other cases that have been consolidated with No. 01-6778 (Ferguson/Snow) have also filed motions to compel arbitration. Although Judge Snow recommended that PruPAC's Original Arbitration Motion should be granted, Judge Snow also has recommended that the motions filed by defendants in the other consolidated cases be denied, based upon the holding in *Pinnacle*. PruPAC respectfully suggests for the reasons stated herein that federal law requires that the arbitration provision be enforced, notwithstanding *Pinnacle* and notwithstanding Judge Snow's recommendations as to other defendants in other consolidated cases.

unenforceable.  Second, the Florida Supreme Court *could not* hold that arbitration provisions are unenforceable, because the FAA would preempt such a holding.  Third, the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., would not save *Pinnacle* from preemption.  Fourth, given two possible constructions of *Pinnacle*, this Court should choose the construction that does not conflict with the FAA and thus avoids the preemption issue.

### A.    The Florida Supreme Court Did Not Void Existing Arbitration Provisions.

In *Pinnacle*, the Florida Supreme Court held that "the mandatory arbitration provision in section 627.736(5), Florida Statutes (1997), denies medical providers access to courts in violation" of the Florida constitution.  753 So. 2d at 59.  According to that court, this violation occurred because parties had a right of access to the courts that pre-existed adoption of the Florida constitution, and "the Legislature cannot abolish that right without providing a reasonable alternative" except under certain conditions.  *Id.* at 57.  In other words, in *Pinnacle*, the Florida Supreme Court concluded that it was unconstitutional for the Florida *legislature* to *require* medical providers to arbitrate their disputes with insurance companies.

The Florida Supreme Court did not hold in *Pinnacle*, however, that the arbitration provisions in existing PIP policies were invalid or unenforceable.  As another Florida court has noted, *Pinnacle* simply did not address "whether a health care provider may agree to arbitration when it accepts an assignment" of a PIP claim.  *Livingston* v. *State Farm Mut. Auto. Ins. Co.*, 774 So. 2d 716, 717 (Fla. 2d Dist. Ct. App. 2000).  In fact, the Florida Supreme Court never had the opportunity to address the validity of contractual arbitration clauses in *Pinnacle* because, as the lower court in *Pinnacle* observed, the insurance contracts were not in the record of the case.  See *Delta Casualty Co.* v. *Pinnacle Medical, Inc.*, 721 So. 2d 321, 325 n.3 (Fla. 5th Dist. Ct. App.

11

1998), *aff'd sub nom. Nationwide Mut. Fire Inc. Co.* v. *Pinnacle Med., Inc.*, 753 So. 2d 55 (Fla. 2000).

### B.    The Federal Arbitration Act Preempts Any Attempt to Void Arbitration Provisions.

The Florida Supreme Court lacked the very power to hold the arbitration provision at issue to be unenforceable. A ruling that an arbitration clause is invalid under Florida law would be preempted by the Federal Arbitration Act. As the United States Supreme Court has repeatedly made clear, the Federal Arbitration Act "preempts state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Volt Info. Sciences, Inc.* v. *Board of Trustees*, 489 U.S. 468, 478 (1989) (citations and internal punctuation omitted). Yet that is precisely what Afield would read *Pinnacle* to do -- require a judicial forum for resolution of the parties' disputes despite the PIP Contract's arbitration provision.

In *Southland Corp.* v. *Keating*, 465 U.S. 1 (1984), the United States Supreme Court considered and rejected the argument that state law can void a contractual arbitration provision. *Southland* addressed a California statute that purported to void arbitration provisions in franchising agreements. The Supreme Court held that the Federal Arbitration Act preempted any such state law. The FAA, the Supreme Court explained, "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 10; accord *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995).

What Afield seeks here is to be paid under the terms of the PIP Contract, but to be free from that Contract's arbitration provision. See Amended Complaint, Count II and ¶¶ 105-111 (alleging a cause of action for "Third-Party Beneficiary Breach of Contract"). But, "[w]hat States

12

may *not* do is decide that a contract is fair enough to enforce all its basic terms (price, service,

credit), but not fair enough to enforce its arbitration clause." *Allied-Bruce*, 513 U.S. at 281

(emphasis added). The Federal Arbitration Act "makes any such state policy unlawful, for that

kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the

Act's language and Congress' intent." *Id.* (citation omitted). Thus, *Pinnacle* cannot be read to

void the PIP Contract's arbitration provision.[4]

> **C.    The McCarran-Ferguson Act Does Not Save *Pinnacle*
> From Preemption by the Federal Arbitration Act.**

Afield may contend that the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., prevents

the Federal Arbitration Act from preempting *Pinnacle*. This is wrong because the McCarran-

Ferguson Act saves *statutes* – but not *case law* – that regulate the business of insurance from

preemption.

> **1.    The McCarran-Ferguson Act Saves Certain
> State *Statutes* from Preemption.**

Section 2(b) of the McCarran-Ferguson Act provides that "[n]o Act of Congress shall be

construed to invalidate, impair, or supersede any *law enacted*" – that is, any *statute* – "for the

purpose of regulating the business of insurance . . . unless such Act specifically relates to the

business of insurance." 15 U.S.C. § 1012(b) (emphasis added.). Thus, in limited circumstances,

---

[4] In *Union American Ins. Co.* v. *USA Diagnostics, Inc.*, 765 So. 2d 227 (Fla. 4th Dist. Ct. App. 2000), the court declined to review, on the basis of *Pinnacle*, an order denying a request for arbitration of a dispute covered in a PIP insurance contract. *Union American* did not address the FAA's requirement that arbitration provisions be enforced. To the extent *Union American* could be read to stand for the proposition that *Pinnacle* prohibits enforcement of a contractual arbitration clause in an automobile insurance policy subject to the FAA, PruPAC would respectfully suggest that *Union American* was incorrectly decided.

Section 2(b) saves certain state insurance *statutes* from preemption. This saving from preemption is known as "inverse preemption."

Applying the tripartite test for inverse preemption set out in *Moore* v. *Liberty National Life Ins. Co.*, 267 F.3d 1209, 1220 (11th Cir. 2001), to the Federal Arbitration Act in particular, a Court in this District has recently made clear that:

> "McCarran-Ferguson bars application of the [Federal Arbitration Act] . . . *only* if:
> (1) the FAA does not specifically relate to the business of insurance,
> (2) the *Florida legislature* . . . has *enacted* laws regulating the business of insurance; and
> (3) the FAA's application 'invalidates, impairs, or supersedes' the state *statute*."
> *Mayard-Paul* v. *Mega Life & Health Ins. Co.*, Case No. 01-3488-Civ-Moreno, 2001 U.S.
> Dist Lexis 22256, at *6 (S.D. Fla. Dec. 21, 2001) (emphasis added).

Thus, a necessary condition for inverse preemption under Section 2(b) in this case would be the Federal Arbitration Act's preemption of a *Florida statute* regulating the business of insurance that prohibits the arbitration of Afield's claim.

> 2.    *Pinnacle* Is Not a "Law Enacted ... to Regulate the Business of Insurance."

As explained above, the plain language of Section 2(b) of the McCarran-Ferguson Act makes clear that its saves from preemption *legislatively-enacted statutes*, not *judicial decisions*. *Pinnacle*, however, is a judicial decision. In Florida, state courts are "not vested with authority to *enact laws* but only to interpret them." *Copeland* v. *Copeland*, 53 So. 2d 637, 638 (Fla. 1951) (emphasis added).

As the U.S. Supreme Court has stated, "the starting point in a case involving construction of the McCarran-Ferguson Act, like the starting point in any case involving the meaning of a statute, is the language of the statute itself." *U.S. Dep't of Treasury* v. *Fabe*, 508 U.S. 491, 500 (1993) (citation omitted). Accordingly, the McCarran-Ferguson Act, which refers to "a law *enacted* for the purpose of regulating insurance," clearly applies to state statutes and excludes

14

judicial decisions, which are not enacted by a legislature. Thus, the Supreme Court has construed the McCarran-Ferguson Act to require that "*[s]tatutes* aimed at protecting or regulating [the relationship between insurer or insured], directly or indirectly, are laws regulating the 'business of insurance.'" *Fabe* at 501 (citing *SEC* v. *National Securities, Inc.*, 393 U.S. 453, 460 (1969)) (emphasis added). Numerous other decisions have also referred to the McCarran-Ferguson Act as applying to "state statutes" and "state legislation."[5] In short, the McCarran-Ferguson Act does not save from preemption judicial decisions such as *Pinnacle*.

> 3.    There Is No Conflict Between the Federal Arbitration Act and Any Other Florida "Law Enacted . . . to Regulate the Business of Insurance."

There is no Florida statute which regulates the business of insurance and which conflicts with the FAA. First, there is no provision of the Florida Insurance Code that prohibits arbitration. As the Court in *Mayard-Paul* recently made clear just two months ago, Florida has not "enacted a statute barring arbitration of insurance claims." *Mayard-Paul* at *8.

Thus, there is no Florida statute to save from preemption by the FAA. In a similar situation, the Ninth Circuit has concluded that if the enforcement of an arbitration clause "does not provoke a conflict" between the Federal Arbitration Act and a state statute, "the McCarran-Ferguson Act simply does not apply." *Quackenbush* v. *Allstate Ins. Co.*, 121 F.3d 1372, 1381-1382 (9th Cir. 1997); see also *Miller* v. *National Fidelity Life Ins. Co.*, 588 F.2d 185, 187 (5th

---

[5] See, *e.g.*, *Stephens* v. *American Int'l Ins. Co.*, 66 F.3d 41, 43 (2d Cir. 1995) ("McCarran-Ferguson preserves *state statutes*, enacted 'for the purpose of regulating the business of insurance,' from preemption . . .") (emphasis added); *Hamilton Life Ins. Co.* v. *Republic Nat'l Life Ins. Co.*, 408 F.2d 606, 611 (2d Cir. 1969) ("The plain and unambiguous statutory language is persuasive evidence that the McCarran-Ferguson Act was not intended to preclude the application of these federal statutes to insurance *unless* they invalidate, impair or supersede *applicable State legislation* regulating the business of insurance.") (emphasis added).

Cir. 1979) (rejecting McCarran-Ferguson Act inverse preemption argument where party did "not identify any *statute* which would be impaired, invalidated, or superseded by the [Federal] Arbitration Act.") (emphasis added).

### D.    The Court Should Construe *Pinnacle* to Avoid the Preemption Issue.

Because the FAA would preempt *Pinnacle* if that case voided the arbitration provision at issue here, the Court should not construe *Pinnacle* in this manner.  Whether the FAA preempts *Pinnacle* is a constitutional issue that the Court has a duty to avoid reaching unnecessarily.

Preemption under the FAA is a constitutional issue "[b]ecause federal preemption of a state . . . law is premised on the Supremacy Clause of the United States Constitution." *Bellsouth Telecomm.* v. *Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2001); see also *Singer* v. *E.F. Hutton*, 699 F.Supp. 276, 279 (S.D. Fla. 1988) ("To allow state law to preempt the federal Arbitration Act, in a case where that Act applies, would be violative of the Supremacy Clause of the United States Constitution.").

As the Eleventh Circuit has repeatedly held, "Courts have a duty to avoid deciding constitutional questions unless strictly necessary." *Thigpen* v. *Smith*, 792 F.2d 1507, 1514 n.12 (11th Cir. 1986).  Thus, "if there are other grounds upon which a case can be decided," the court should avoid reaching the constitutional issue.  *Bellsouth*, 252 F.3d at 1176.

In this case, the Court need not decide the constitutional question whether *Pinnacle* is preempted by the FAA because, as discussed above, *Pinnacle* does not prohibit the enforcement of the arbitration clause against Afield.  See *Livingston*, 774 So. 2d at 717 ("*Pinnacle* did not address whether a health care provider may agree to arbitration when it accepts an assignment.") Construing *Pinnacle* in this manner avoids this constitutional issue.

## VIII.   THE AMENDED COMPLAINT SHOULD BE DISMISSED.

Section 3 of the FAA, 9 U.S.C. § 3, requires courts to stay proceedings pending the completion of arbitration.  However, "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford* v. *Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original); see also *Fedmet Corp.* v. *M/V BUYALYK*, 194 F.3d 674, 679 (5th Cir. 1999) (dismissing case when all claims subject to arbitration).  Since all the issues raised by plaintiff involve a "claims dispute" with PruPAC, they all must be submitted to arbitration, and thus the Court should dismiss the Amended Complaint in its entirety, as Judge Snow recommended in response to the Original Arbitration Motion prior to amendment of the Complaint.[6]

In the alternative, however, PruPAC respectfully requests that this action be stayed, as required by section 3 of the FAA, if the Amended Complaint is not dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, PruPAC respectfully requests that Afield be compelled to arbitrate his dispute with PruPAC.  PruPAC further respectfully requests that the Court dismiss the Amended Complaint or, in the alternative, stay this action until arbitration has been had.

A proposed order is attached.

---

[6]  In filing this threshold motion to compel arbitration, PruPAC reserves its right to assert other grounds for moving to dismiss the case if that becomes procedurally appropriate.  A central purpose to an arbitration provision, of course, is to avoid briefing or otherwise litigating the merits of a case in court, and hence those other grounds are premature for consideration at this time.

Respectfully submitted,

John D. Aldock                    Kathy J. Maus (Bar No. 896330)
Michael K. Isenman                Lauren D. Levy (Bar No. 0116490)
SHEA & GARDNER                    BUTLER BURNETTE PAPPAS
1800 Massachusetts Ave., N.W.     3520 Thomasville Road, Suite 102
Washington, DC 20036             Tallahassee, FL 32308
(202) 828-2000                    (850) 894-4111
Fax (202) 828-2195                Fax (850) 894-4999


Dated:  February 22, 2002

## CERTIFICATE OF SERVICE

I hereby certify that I caused copies of the foregoing Defendant PruPAC's Motion to

Compel Arbitration as to Plaintiff Afield and Memorandum in Support Thereof, and

accompanying proposed order, to be served upon the counsel in the accompanying service list by

U.S. Mail, postage prepaid, on February 22, 2002.

Lauren D. Levy, Esq.

**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**
(Updated 1/22/02)

**Co-Lead Counsel for Plaintiffs**

ATLAS PEARLMAN, P.A.
Eric Lee, Esq.
lee@atlaslaw.com
Jan Douglas Atlas, Esq.
atlas@atlaslaw.com
Robin Corwin Campbell, Esq.
campbell@atlaslaw.com
Suite 1700
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301
(954) 763-1200
(954) 766-7800 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
Suite 200
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK &
CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS,et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 Facsimile

2

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Hartford**

MAYER, BROWN & PLATT
Howard J. Roin, Esq.
hroin@mayerbrown.com
190 South LaSalle Street
Chicago, IL, 60603-3441
(312) 782-0600
(312) 701-7711 Facsimile

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

# EXHIBIT 1

 **Prudential**

Prudential Property and Casualty Insurance Company

A Subsidiary of The Prudential Insurance Company of America

PAGE 1 of 4

PO Box 429
Hinsdale IL 60522

**Named Insured:** Anderson Thelma W
**Policy Number:** 39 4A085454
**Policy Period:** Dec. 10, 1998 to Jun. 10, 1999
12:01 a.m. at place of garaging

Anderson Thelma W
38131 Rolling Acres
Lady Lake FL 32159-4215

| | |
|---|---|
| **Customer Service Office:** | (800) 437-5556 |
| **To report a claim, please call:** | (800) 437-3535 |
| **Your local Prudential office:** | (352) 787-7895 |

S. MARCUS HAWKINS LUTCF

# Your Car Policy Renewal Declarations

**Cars Covered By Your Policy**

| Car | Year & Make | Model | Body Type | Identification Number |
|-----|-------------|-------|-----------|----------------------|
| 1 | 1991 Oldsmobile | 88 Ryl Br | Sedan 4D | 1G3HY54C4MH333628 |

The car(s) described above is principally kept (garaged) at the above address unless otherwise stated in Important Messages.

**Licensed Operator(s) Resident In Your Household**

| | Name | Surcharge Points | Date of Birth |
|---|------|------------------|---------------|
| 1 | Thelma W Anderson | 00 | 10/17/16 |

If any licensed driver in household is not listed, please call the Customer Service Office provided above.

PAC 681 ED. 1/98



Policy Number: 39 4A085454

---

**Discounts, Credits, And Surcharges Applied To Your Premium**

| Discounts & Credits | Applies to |
| --- | --- |
| Safety Device Discount | Car(s) 1 |
| Companion for Life Discount | Your policy |

---

**Important Message(s) That Apply To Your Policy**

Personal Injury Protection
Option H

Uninsured Motorists Bodily Injury Coverage Includes Underinsured Motorists Bodily Injury Coverage.

IMPORTANT: Your policy premium may have changed due to rating by make and model of your car. Please check the vehicle description shown.

Your policy is free of any accident, conviction or inexperienced driver surcharge

The "Stacking" referred to in PAC 4/FL, UNINSURED MOTORISTS, applies to all cars listed on the policy.

THE COMPANY MUST RECEIVE YOUR PREMIUM PAYMENT BY THE EFFECTIVE DATE OF YOUR RENEWAL FOR COVERAGE TO CONTINUE. YOUR CHECK OR MONEY-ORDER WILL NOT BE DEEMED PAYMENT UNLESS HONORED BY YOUR BANK

PAC 681 ED. 1/98                                           981210-981106

 **Prudential**

Listed below and within "Important Messages" are your policy coverages, limits, and premiums. If a premium charge does not appear, that coverage is not provided.

**Your Coverage And Limits**

| Coverage | Limits | Premiums Car 1 |
|---|---|---|
| Liability – Bodily Injury | | $  122 |
|    Each Person | $100,000 | |
|    Each Accident | $300,000 | |
| Liability – Property Damage | | $   60 |
|    Each Accident | $50,000 | |
| Uninsured Motorists – Bodily Injury | | $   93 |
|    Each Person | $100,000 | |
|    Each Accident | $300,000 | |
| Personal Injury Protection | | $   47 |
| Collision | | |
|    Deductible - Car 1   $ 250 | | $   66 |
| Comprehensive | | |
|    Deductible - Car 1   $ 250 | | $   25 |
| **Total Premium Per Car** | | $  413 |

**TOTAL POLICY PREMIUM\***          **$413**

\* Premium amount includes applicable discounts, credits, and surcharges.

PAC 681 ED. 1/98

**PAGE 4 of 4**

**Policy Number: 39 4A085454**

## Your Policy Forms & Endorsements

Your policy is made up of your most recent Declarations and the forms and endorsements listed below. Forms and endorsements being made part of your policy with this transaction are provided in separate booklets or are indexed and reproduced on pages which follow·

### Mandatory Policy Forms and Endorsements

Car Policy, Parts 1, 2, and 3                                          PAC 186 Ed. 4/86
Applicable policy parts are those for which a
premium charge is shown·in the Declarations.

Florida Special State Provisions                                       PAC 226 FL Ed. 05/98

Car Policy, Parts 4, 6, and 7                                          PAC 190/FL Ed. 4/87
Applicable policy parts are those for which a
premium charge is shown in the Declarations.

Changes to General Provisions                                         PAC-4020 Ed. 8/97

### Optional Endorsements

None

| Car | Lienholder/Loss Payee Information | Territory | Rating Symbol | Class Code |
|-----|-----------------------------------|-----------|---------------|------------|
| 1   | Not On File                       | 053       | 8             | 871110     |

## Signatures

S  HAWKINS LUTCF        AGENT

PAC 681 ED. 1/98

– 4 –

Prudential General Insurance Company
Prudential Commercial Insurance Company
Subsidiaries of The Prudential Insurance Company of America

Corporate Office/23 Main Street, Holmdel, N.J. 07733

The **Pru**dential



Car Policy Parts 1 2 & 3

PAC 186 Ed 4 86 NS



**TABLE OF CONTENTS**

|  | Page |
|---|---|
| **DEFINITIONS** | 2 |
| **GENERAL PROVISIONS** | 2 |
| *(These provisions are applicable to all parts of the policy)* | |
| THIS POLICY IS A CONTRACT | 2 |
| AGREEMENTS BETWEEN YOU AND US | 2 |
| DECLARATIONS | 2 |
| ENDORSEMENTS | 2 |
| POLICY AREA | 2 |
| POLICY PERIOD | 3 |
| LIFETIME RENEWAL AT AGE 65 | 3 |
| TERMINATION | 3 |
| PREMIUM PAYMENT | 4 |
| POLICY CHANGES | 4 |
| ADDITIONAL OPERATORS | 4 |
| LIMIT OF COVERAGE | 4 |
| ASSIGNMENT | 5 |
| BANKRUPTCY | 5 |
| OUT-OF-STATE COVERAGE | 5 |
| YOUR DUTIES AFTER AN ACCIDENT OR LOSS | 5 |
| **PART 1 LIABILITY -** | |
| **IF YOU INJURE OTHERS OR DAMAGE** | |
| **THEIR PROPERTY WITH A CAR** | **6** |
| OUR OBLIGATIONS TO YOU | 6 |
| YOUR OBLIGATIONS TO US | 7 |
| WHAT CARS ARE COVERED | 7 |
| WHO IS INSURED | 8 |
| LOSSES WE WILL NOT PAY FOR | 8 |
| HOW WE WILL SETTLE A CLAIM | 9 |
| **PART 2 MEDICAL PAYMENTS -** | |
| **IF YOU ARE INJURED IN A CAR ACCIDENT** | **9** |
| OUR OBLIGATIONS TO YOU | 9 |
| YOUR OBLIGATIONS TO US | 10 |
| WHAT CARS ARE COVERED | 10 |
| WHO IS INSURED | 10 |
| LOSSES WE WILL NOT PAY FOR | 11 |
| HOW WE WILL SETTLE A CLAIM | 11 |

|  | Page |
|---|---|
| **PART 3 COLLISION & COMPREHENSIVE -** | |
| **IF YOUR CAR IS DAMAGED OR STOLEN** | **12** |
| OUR OBLIGATIONS TO YOU | 12 |
| YOUR OBLIGATIONS TO US | 12 |
| WHAT CARS ARE COVERED | 12 |
| LOSSES WE WILL NOT PAY FOR | 13 |
| HOW WE WILL SETTLE A CLAIM | 14 |

**Prudential Property and Casualty Insurance Company**
**Prudential General Insurance Company**
**Prudential Commercial Insurance Company**
Subsidiaries of The Prudential Insurance Company of America

Corporate Office 23 Main Street Holmdel N J 07733

The words defined below are used throughout the policy. They are printed in bold type and the definitions shown next to them apply.

**BODILY INJURY**

**Bodily injury** means **bodily injury**, sickness, disease or death suffered by a person.

**CAR**

A **car** is a private passenger automobile, station wagon, jeep-type, or van with four wheels which is designed for use mainly on public roads. A pick-up truck with four or six wheels and a load capacity of one ton or less is also a **car.**

**HOUSEHOLD RESIDENT**

A **household resident** is someone who lives in your household. A **household resident** includes a **resident relative.**

**MOTOR VEHICLE**

A **motor vehicle** is a self-propelled land vehicle which is required to be registered and licensed by the laws of **your** state for use on public roads.

**NON-OWNED CAR**

A **non-owned car** is a **car** which is not owned by, registered in the name of or furnished or available for the regular or frequent use of **you** or a **household resident.**

**PROPERTY DAMAGE**

**Property damage** means damage to physical property, including loss of its use.

**RESIDENT RELATIVE**

A **resident relative** is someone who lives in **your** household and is related to **you** by blood, marriage, adoption or is a ward or foster child.

**YOU OR YOUR**

**You** or **your** means the person shown as the named insured on the Declarations of this policy, and **your** spouse, if he or she lives in **your** household.

2

... Insurance Company or any one of its subsidiaries as shown on **your** Declarations.

# GENERAL PROVISIONS

**THE POLICY IS A CONTRACT**

This policy is a contract between **you** and **us**. When **we** refer to the policy, **we** mean this Booklet, **your** Application, **your** most recent Declarations and **your** Endorsements.

**AGREEMENTS BETWEEN YOU AND US**

In exchange for premium paid, **we** agree to pay for losses as covered in this policy.

By accepting this policy, **you** agree that the statements on **your** Application are true and correct. This policy is issued relying on the accuracy of these statements. This policy contains all the agreements that exist between **you** and **us. You** will immediately notify **us** of any change of address.

**DECLARATIONS**

The Declarations is an important part of this policy. It lists the named insured and describes the **cars** this policy covers. Refer to the Declarations to see which parts of the policy apply and what amounts of insurance **you** have for each of **your cars. You** only have the coverage for which a specific premium charge is shown for the coverage. **You** will receive a Declarations when the policy is first issued, each time a change is made and at each renewal.

**ENDORSEMENTS**

Endorsements are a part of this policy. They add to, delete, or change parts of the policy. They may be necessary to conform to the laws of **your** state or to new programs **we** have implemented. Only those Endorsements whose numbers appear on the Declarations are a part of **your** policy.

**POLICY AREA**

**United States, Puerto Rico or Canada**

This policy covers accidents which occur in the United States of America, its territories or possessions, Puerto Rico or Canada, or while a **car** is being transported between these places.

## Mexico — WARNING: READ THIS CAREFULLY!

**Car** accidents in Mexico are subject to the laws of Mexico only — **NOT** the laws of the United States of America. Unlike the United States, the Republic of Mexico considers an auto accident a **CRIMINAL OFFENSE** as well as a civil matter.

**IN SOME CASES, THIS COVERAGE MAY NOT BE RECOGNIZED BY MEXICAN AUTHORITIES AND THE COMPANY MAY NOT BE ALLOWED TO IMPLEMENT THIS COVERAGE AT ALL IN MEXICO. YOU SHOULD CONSIDER PURCHASING CAR COVERAGE FROM A LICENSED MEXICAN INSURANCE COMPANY BEFORE DRIVING INTO MEXICO.**

The coverages for **your** insured **car** provided by this policy are extended to accidents occurring in Mexico within 25 miles of the United States border. This extension only applies for infrequent trips into Mexico that do not exceed ten days at any one time.

### Exclusions —

**We** do not provide any coverage:

1. If **your** insured **car** is not principally garaged and used in the United States; and

2. To any person insured under this policy who does not live in the United States

### Special Conditions —

1. **Other Insurance.** The **OTHER INSURANCE** provisions of this policy are replaced by the following: If there is other insurance which covers a loss under this part, **we** will pay only those damages that are excess over amounts payable under other insurance up to our limit of liability.

2. **Losses Payable If Your Car Is Damaged Or Stolen. We** will pay losses under **PART 3 COLLISION AND COMPREHENSIVE** in the United States, not in Mexico. If **your** insured **car** is damaged in Mexico **you** must return it to the United States to be repaired. If **your** insured **car** must be repaired in Mexico in order to be driven, **we** will not pay more than the amount it would cost to have repairs made at the nearest point in the United States.

## POLICY PERIOD

This policy covers accidents which occur during the policy period. This period is shown on the Declarations

## LIFETIME RENEWAL AT AGE 65

**We** will not refuse to renew or continue this policy if **you** have had **car** insurance with **us** continuously for at least 5 years on the first anniversary date of this policy (or any renewal or replacement of it) following your 65th birthday

But, this agreement does not apply if:

1. **You** fail to pay a premium when required.

2. **You** are not the principal driver of a **car** described on the Declarations.

3. **Your** driver's license or that of a **household resident** (or any person who regularly uses a **car** insured under this policy) has been suspended or revoked during the current policy period or within 12 months before the beginning of the current period.

4. The corrected vision of **your** better eye or that of a **household resident** (or any person who regularly uses a **car** insured under this policy) is less than 20/70. Nor does it apply if the visual form field of **you** or these persons is less than 110 degrees.

Also, this agreement does not apply if **you** or these persons have reached the age of 72 and do not give **us**, on request, a medical report from a licensed physician stating.

1. That **your** vision or that of these other drivers over age 72 meets the requirements given above; and

2. That, in the doctor's opinion, **you** or they are physically and mentally competent to drive safely.

**We** will not request these medical reports more than once every three years. But, after **you** or other drivers reach the age of 80, we can request these reports every year

This agreement applies only to **cars** described in this policy. This agreement stops as of the effective date of any other **car** insurance which applies to a **car** described on the Declarations but only for those coverages provided by the other insurance

## TERMINATION

**Cancellation By Insured** — If **you** want to cancel this policy, notify **us** in writing of the future date on which **you** want it cancelled or return **your** policy to **us.** If a refund

is due it will be based on o   standard short rate table.
The premium refund will be sent to **you** as soon as practical after **we** receive **your** notice of cancellation.

**Cancellation By Company** — If **we** want to cancel this policy and it has been in effect for less than 60 days, **we** will send a written notice before it is canceled.

After this policy has been in effect for 60 days, **we** will cancel it if:

* **You** do not pay a premium or premium installment by the date due.

2  **Your** driver's license is under suspension or revocation during the policy period. This applies to any driver living in **your** household or any driver regularly using **your car.**

3  The policy was obtained through fraud or material misrepresentation. (This does not waive **our** right to void the policy.)

**We** will mail the cancellation notice to the named insured at the last address shown on the policy. **We** and **you** agree that a proof of mailing of this notice is sufficient proof that **you** were properly notified. **We** will keep only the premium for the time the policy was in effect and **we** will refund any balance. Any refund due will be sent to **you** as soon as practical. Coverage ends on the date shown on the written notice, not on the date **you** get the premium refund.

**Nonrenewal By Company** — If **we** decide not to renew this policy, **we** will send written notice to the named insured. **We** will send the notice to the last address shown on the policy. **We** and **you** agree that the mailing of this notice is proof that **you** were properly notified.

**Nonrenewal By Insured** — When **we** offer to renew or continue this policy and **you** do not accept it, coverage will stop at the end of the current policy period. **Your** failure to pay the renewal premium by the date due indicates **your** rejection of **our** renewal offer.

**Automatic Termination** — If **you** insure any **car** covered by this policy with a policy issued by some other insurer, coverage on that **car** under this policy will stop as of the effective date and time of the other insurance.

**Other Termination Provisions** — **We** will comply with the laws in **your** state.

during a specific notice period.

2. Requiring a special type of mailing requirement.

3. Imposing restrictions on the reasons for cancellation or nonrenewal.

**PREMIUM PAYMENT**

**You** must pay the premium by the date due. Fail to pay the premium by the date shown in any premium notice sent to **you** will result in termination. If the premium is by check or other instrument, and it is not honored, it will be considered as a failure to pay the premium.

Changes made to **your** policy during the policy period may result in premium adjustment.

**POLICY CHANGES**

No changes can be made to any part of this policy except by Endorsement issued by **us.**

The terms of this policy are automatically changed to conform to the laws of the state in which **you** live.

**We** will automatically give **you** the benefits of any extension or broadening of this policy. This only applies if the change does not require additional premium.

**ADDITIONAL OPERATORS**

If during the policy term a person not listed on the policy begins to drive a **car** or stops driving a **car** shown on the Declarations, **you** are required to immediately inform us of this change. The appropriate premium adjustment will be made from the date the operator status changes during the policy period.

**LIMIT OF COVERAGE**

If **you** or any other person insured under this policy an accident.

1. In a **car** that is insured by this policy — **We** will pay more than the limit of coverages for that particular **car.**

2. In a **car** that is not insured by this policy or as a pedestrian — **We** will not pay more than the limit of coverages which **you** have on any one of **your cars**

This limit of coverage applies regardless of the number of policies insured, insured **cars**, claims made, or cars involved in the accident or loss. Coverages on other c

4

insured by **us** cannot be added to or stacked on the coverage of the particular **car** involved.

## ASSIGNMENT

This policy cannot be assigned to anyone without **our** written approval. But, if the named insured dies, this policy will provide the other persons insured by this policy and the legal representative of the estate (but only while acting as such) with the same coverages until the end of the policy period. Until a legal representative is appointed, anyone who has proper custody of the **car** is covered as if he or she was a **resident relative**.

## BANKRUPTCY

If an insured becomes bankrupt or insolvent during the policy term, it does not affect the **AGREEMENTS BE-TWEEN YOU AND US.**

## OUT-OF-STATE COVERAGE

The limits and coverages of this policy will change to meet the requirements of the laws while **you** are in:

1. Another state;
2. A territory or possession of the United States
3. Puerto Rico; or
4. Canada.

This applies if the laws require non-residents to carry higher limits or coverages than are provided by this policy. But, those limits and coverages will be reduced to the extent that there is any other valid and collectible insurance which applies to the loss. Under no circumstance will anyone receive duplicate payments for the same loss

## YOUR DUTIES AFTER AN ACCIDENT OR LOSS

**General Duties —** If any persons insured under this policy have a **car** accident or loss, they or someone acting for them must promptly contact **us. We** will want to know how the accident or loss happened, names and addresses of people involved, witnesses, and any injury or damage.

Persons making a claim under this policy must:

1. Inform **us** of the details of the accident or loss in writing, if requested.
2. Cooperate with **us** in investigating, settling, or defending any loss or suit. Cooperation includes attending hearings and trials, helping in suing others

who are responsible for the accident, giving evidence, and helping **us** get witnesses to attend a trial.

3. Immediately send **us** any notices or legal paper received by them or their legal representatives in connection with the accident or loss.

4. Be examined by **our** doctors for their injuries as often as **we** reasonably require.

5. Give **us** written permission to obtain their medical and other relevant records.

6. Give **us** written proof of their loss in a form containing any relevant information **we** request.

7. Give **us** a statement under oath within 30 days of **our** request.

8. Report a hit and run accident or loss to the police within 24 hours.

9. Allow **us** to inspect the **car** if **we** request it.

**We** will not pay for losses which are settled, without **our** written consent.

If anyone voluntarily makes any payments, assumes any obligations or incurs any expenses, except for first aid to others at the scene of the accident, **we** will not be responsible for reimbursement.

**Trust Agreement —** When **we** pay for a loss under this policy, **we** are entitled to the amount **we** paid from the proceeds of any settlement or judgment **you** recover from the responsible party. When allowed by law, **we** are also entitled to related collection expenses for any settlement or judgment.

At **our** request, **you** must take any necessary action to recover the payments **we** have made. **We** will select the attorney and pay all related costs and fees.

**Rights Of Recovery —** When **we** pay for a loss under this policy, **your** rights of recovery from anyone else become **ours** up to the amount **we** have paid. Anyone insured under this policy must:

1. Not interfere with **our** rights to recover; and

2. Do whatever is necessary to help **us** recover the amount **we** paid

**Additional Duties If Your Car Is Damaged Or Stolen**
— If **your** car is damaged and it is covered under Part 3, **you** must protect the **car** from further damage. **We** will pay any reasonable costs **you** incur doing this. **You** may be required to show **us** the damaged property before its repair and give **us** a statement under oath.

If the **car** is stolen, **you** must report it to the police and **us** within 24 hours after discovery of the theft.

This is not a complete and valid contract without an APPLICATION and DECLARATIONS properly filled out.

Prudential Property and Casualty Insurance Company

*Secretary*            *President*

Prudential General Insurance Company

*Secretary*            *President*

Prudential Commercial Insurance Company

*Secretary*            *President*

# PART 1 LIABILITY — IF YOU INJURE OTHERS OR DAMAGE THEIR PROPERTY WITH A CAR . . .

## OUR OBLIGATIONS TO YOU *(PART 1)*

### LIABILITY (BODILY INJURY COVERAGE/PROPERTY DAMAGE COVERAGE)

If **you** have these coverages (see the Declarations), **we** will pay up to **our** limit of liability for **bodily injury** to

others and **property damage** that an insured is legally obligated to pay. The **bodily injury** and **property damage** must:

1. Result from an accident involving a **car** insured under this part; and

2. Be covered under this part.

### INVESTIGATION, SETTLEMENT AND LEGAL DEFENSE

If persons claim an insured caused them **bodily injury** or **property damage** in the accident, **we** may investigate, and settle or defend any claim covered under this part in the way that **we** decide is appropriate.

If suit is brought on a claim covered under this part **we** will defend an insured, at **our** expense, with attorneys **we** choose.

**Our** obligation to defend a claim or suit ends when **we** have paid the applicable limit of liability for damages resulting from the accident.

### ADDITIONAL PAYMENTS

In addition to any amount in the **LIMIT OF LIABILITY** section, **we** will pay the costs listed below:

- **First Aid**

  **We** will reimburse anyone insured under this part for the cost of immediate and necessary first aid to others at the scene of the accident involving a **car** insured under this part

- **Bail Bonds**

  If anyone insured under this part is arrested as a result of an accident or a traffic violation arising out of an accident involving a **car** insured under this part, **we** will reimburse up to $250 for the cost of a bail bond. The insured must first get the bond

- **Release Of Attachment Bonds**

  If as a result of an accident an insured's property is attached by court order, **we** will reimburse the premium of a bond obtained to release the attachment. The amount of the bond **we** premium for cannot be more than **our** limit of liability.

6

- **Post Judgment Interest**

  If **we** are obligated to pay the amount of a judgment **we** will pay post judgment interest on that portion of the judgment that is within **our** limit of liability. **Our** duty to pay interest ends when **we** pay, offer to pay or deposit with the court the amount owed under this part.

- **Court Costs**

  If **we** provide a defense, **we** will pay an insured's court costs.

- **Expenses**

  **We** will pay reasonable costs connected with the defense of an insured incurred at **our** request. If **we** ask an insured to take time off from work, **we** will pay up to $50 per day for actual net wages lost.

- **Appeal Bonds**

  **We** will pay the cost of necessary appeal bonds if **we** decide to appeal the case to a higher court.

## YOUR OBLIGATIONS TO US *(PART 1)*

The following provisions apply in addition to any duties listed in the **GENERAL PROVISIONS** section.

### ACTION AGAINST US

No one insured under this part may take any legal action against **us** until all obligations under this policy have been fulfilled. Also, **you** must wait until the amount of the settlement has been determined.

A settlement is determined by a court or by agreement between **us** and the person making the claim. No person is entitled to include **us** in any legal action against **you**. No one insured under this part may assign his rights to another or involve **us** in a suit as a defendant.

## WHAT CARS ARE COVERED *(PART 1)*

### CARS DESCRIBED ON THE DECLARATIONS

This part covers **cars** for which a premium charge for these coverages is shown on the Declarations.

### REPLACEMENT CARS

If **you** acquire ownership of a **car** to replace a **car** covered under this part, the newly acquired **car** has the same

coverage as the old **car**. **You** must notify **us** of the replacement within 30 days after **you** acquire the **car**, for coverage to continue after 30 days.

### ADDITIONAL CARS

If **you** acquire ownership of another **car** in addition to those described as covered under this part, this part covers the new **car** for the first 30 days. The new **car** has the same coverage as any of **your** other **cars** insured with **us**. All **your** other **cars** must be insured with **us** for this part to cover the additional **car**.

**You** must let **us** know within 30 days after **you** acquire ownership of the new **car** that **you** want it insured under this part, for coverage to continue after 30 days.

### SUBSTITUTE CARS

If a **car** covered under this part breaks down, is being serviced or repaired, or is stolen or destroyed, **we** will cover a **car** you borrow temporarily (with the owner's permission) while **your car** is being repaired or replaced. This **car** cannot be owned by **you** or a **household resident**. The substitute **car** has the same coverage as the **car** that is out of service.

### OTHER NON-OWNED CARS

In addition to **SUBSTITUTE CARS**, **we** will cover a **non-owned car**. The owner must give permission to use it. The **non-owned car** must be used in the way intended by the owner. This includes a rented **car** for a period of up to 30 consecutive days. The **non-owned car** has the same coverage as any one of **your cars** insured with **us**.

### TRAILERS, CAMPER UNITS, CAPS OR SIMILAR TYPES OF COVER

**We** will cover all trailers designed to be pulled by a **car**. **We** will cover all camper units, caps or similar types of cover designed to be mounted on a **car** or trailer. When a trailer, camper unit, cap or similar type of cover is attached to a **car** it is considered to be one vehicle. There is no coverage for a trailer, camper unit, cap or similar type of cover while used with a **car** not insured under this part. Also, there is no **Property Damage** coverage for a non-owned trailer, camper unit, cap or similar type of cover.

– 12 –

# WHO IS INSURED *(PART 1)*

## IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)

**You** and a **resident relative** are insured while using **your car** or a substitute **car** covered under this part.

Other people are insured while using **your car** or a substitute **car** covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

**We** insure a person or organization who may be held responsible for an insured's use of a **car** this part covers.

## IN A NON-OWNED CAR

**You** and a **resident relative** are insured while using a **non-owned car**. The owner must give permission to use it. It must be used in the way intended by the owner.

# LOSSES WE WILL NOT PAY FOR *(PART 1)*

## CARS OWNED BY HOUSEHOLD RESIDENTS

**We** will not pay for **bodily injury** or **property damage** caused by anyone using a **car** not insured under this part, owned by **you** or a **household resident.**

## REGULARLY USED NON-OWNED CARS

**We** will not pay for **bodily injury** or **property damage** caused by **you** or a **household resident** using a **non-owned car** not insured under this part, regularly used by **you** or a **household resident.**

## CARS FOR HIRE

**We** will not pay for **bodily injury** or **property damage** caused by anyone using a **car** covered under this part to carry people or property for a fee. This does not include a **car** pool. But **you** and a **resident relative** are covered if either of **you** cause an accident while a passenger in a **non-owned car** for hire.

## RACING

**We** will not pay for **bodily injury** or **property damage** caused by anyone using a **car** covered under this part if the **car** was being used in any organized racing, speed, demolition or stunting contest or related activity.

## BUSINESS AND RESIDENCE

**We** will not pay for **bodily injury** or **property damage** arising out of the use of a **car**, trailer, camper unit, cap

or similar type of cover, being used or located for use as a place of business or as a place of residence

## HOUSEHOLD RESIDENTS

**We** will not pay for **bodily injury** to **you** or a **household resident** if caused by **you** or a **household resident. We** will not defend **you** or a **household resident** in any suits brought against each other directly or indirectly by a third party.

## YOUR EMPLOYEES

**We** will not pay for **bodily injury** to an employee of **yours** while in the course of employment. But **bodily injury** to a domestic employee is covered under this part if such employee is not covered and does not have to be covered under any worker's compensation law, disability law or similar law.

## FELLOW EMPLOYEE

**We** will not pay for **bodily injury** caused by an insured (other than **you**) to a fellow employee while the insured is using a **car** in his or her employer's business.

## AUTO BUSINESS

**We** will not pay for **bodily injury** or **property damage** caused by anyone using a **non-owned car** in any kind of auto business. Examples of auto business are: selling, repairing, servicing, storing or parking **cars** or other vehicles. But **you**, a **resident relative** and a business associate are insured while using any of **your cars** covered under this part.

## BUSINESS OR JOB

**We** will not pay for **bodily injury** or **property damage** caused by anyone (other than **you** or a **resident relative**) using a **non-owned car** in any business or job.

## WAR

**We** will not pay for **bodily injury** or **property damage** caused by any act of war, warlike act, insurrection, rebellion or revolution. Also **we** will not pay for a loss caused by discharge of any nuclear weapon even if accidental.

## NUCLEAR LIABILITY

**We** will not pay for **bodily injury** or **property damage** caused by anyone who

6

1. Is an insured under a nuclear energy liability policy; or

2. Would be an insured under a nuclear energy liability policy but for the exhaustion of its limit of liability

## CRIMINAL ACTS

**We** will not pay for **bodily injury** or **property damage** caused by anyone while attempting to commit a crime or to avoid arrest.

## INTENTIONAL INJURY OR DAMAGE

**We** will not pay for **bodily injury** or **property damage** which results from an act:

1. That is intended by an insured to cause harm; or

2. That an insured could reasonably expect would cause harm

This exclusion applies whether or not an insured intended or expected the results of their act, so long as the resulting injury or damage was a natural consequence of the act

## PUNITIVE DAMAGE

**We** will not pay for damages assessed as punitive, exemplary, or vindictive against an insured.

## YOUR PROPERTY

**We** will not pay for any damage to property owned by or being transported by an insured person. **We** will not pay for damage to property under the care of or rented to **you** or a **household resident**. But **we** will pay for damage to a residence or garage rented to **you** or a **resident relative**.

# HOW WE WILL SETTLE A CLAIM *(PART 1)*

## LIMIT OF LIABILITY — BODILY INJURY: EACH PERSON

The limit stated under **BODILY INJURY LIABILITY — EACH PERSON** on the Declarations is the limit of **our** liability for all damages, including damages for care or loss of services, arising out of **bodily injury** to one person as a result of any one accident.

## LIMIT OF LIABILITY — BODILY INJURY: EACH ACCIDENT

The limit stated under **BODILY INJURY — EACH ACCIDENT** on the Declarations is the limit of **our** liability for all damages, including damages for care or loss of services, arising out of **bodily injury** as a result of any one accident.

## LIMIT OF LIABILITY — DAMAGE TO PROPERTY

The limit stated under **PROPERTY DAMAGE LIABILITY — EACH ACCIDENT** on the Declarations is the limit of **our** liability for all property damaged including loss of use in any one accident

## OTHER INSURANCE — YOUR CAR

If there is other insurance which covers a loss under this part, we will pay **our** share of the loss. **Our** share is the proportion **our** limit bears to the total of all applicable limits. But **we** will not pay for a loss caused by anyone using a newly acquired (additional or replacement) **car** if **you** have another insurance policy that covers it.

## OTHER INSURANCE — NON-OWNED CAR (INCLUDES A SUBSTITUTE CAR)

In the case of a **non-owned car** covered under this part. **we** will pay only those damages that are excess over amounts payable under any other insurance up to **our** limit of liability.

## FINANCIAL RESPONSIBILITY LAWS

If **we** certify this policy as proof of future financial responsibility in keeping with the laws of **your** state, the coverage provided under this part will comply with all requirements of **your** state's law.

# PART 2 MEDICAL PAYMENTS — IF YOU ARE INJURED IN A CAR ACCIDENT . . .

## OUR OBLIGATIONS TO YOU *(PART 2)*

### MEDICAL PAYMENTS COVERAGE

If **you** have this coverage (see the Declarations), **we** will pay up to **our** limit of liability for an insured's reasonable expenses for necessary medical and funeral services which result from a **car** accident covered under this part. **We** will pay only those expenses incurred within three years from the accident

9

## YOUR OBLIGATIONS - - - -

The following provisions ___ ly in addition to any duties listed in the **GENERAL** ___ **VISIONS** section.

### ACTION AGAINST US

No one insured under this part may take any legal action against us until 30 days after notice of loss has been given to us and all obligations under this policy have been fulfilled

## WHAT CARS ARE COVERED (PART 2)

### CARS DESCRIBED ON THE DECLARATIONS

This part covers cars for which a premium charge for this coverage is shown on the Declarations

### REPLACEMENT CARS

If you acquire ownership of a car to replace a car covered under this part, the newly acquired car has the same coverage as the old car. You must notify us of the replacement within 30 days after you acquire the car, for coverage to continue after 30 days

### ADDITIONAL CARS

If you acquire ownership of another car in addition to those described as covered under this part, this part covers the new car for the first 30 days. The new car has the same coverage as any of your other cars insured with us. All your other cars must be insured with us for this part to cover the additional car.

You must let us know within 30 days after you acquire ownership of the new car that you want it insured under this part for coverage to continue after 30 days

### SUBSTITUTE CARS

If a car covered under this part breaks down, is being serviced or repaired, or is stolen or destroyed, we will cover a car you borrow temporarily with the owner's permission while your car is being repaired or replaced. This car cannot be owned by you or a household resident. The substitute car has the same coverage as the car that is out of service

In addition to **SUBSTITUTE CARS**, the ___ owned car. The ___ er must give permission to use it. the **non-owned** car ___ must be used in the way intended by the owner. This includes a rented car for a period of up to 30 consecutive days. The non-owned car has the same coverage as any one of your cars insured with us

### TRAILERS, CAMPER UNITS, CAPS OR SIMILAR TYPES OF COVER

We will cover all trailers designed to be pulled by a car. We will cover a camper unit, caps or similar types of cover designed to be mounted on a car or trailer. When a trailer, camper unit, cap or similar type of cover is attached to a car, it is considered to be one vehicle. There is no coverage for a trailer, camper unit, cap or similar type of cover while used with a car not insured under this part

## WHO IS INSURED (PART 2)

### IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)

You and a **resident relative** are insured while using your car or a substitute car covered under this part

Other people are insured while using your car or a substitute car covered under this part if you give them permission to use it. They must use the car in the way you intended.

### IN A NON-OWNED CAR

You and a **resident relative** are insured while using a **non-owned** car. The owner must give permission to use it. It must be used in the way intended by the owner

Other people are insured while using a **non-owned** car. But they are insured in this car only if the accident results from the actions of **you** or a **resident relative** as a driver or passenger. This includes actions of your private driver who is operating the car for you.

### HIT BY A MOTOR VEHICLE

You and a **resident relative** are insured if hit by a **motor vehicle** while a pedestrian

10

## LOSSES WE WILL NOT PAY FOR (PART 2)

### CARS OWNED BY HOUSEHOLD RESIDENTS

We will not pay for bodily injury to anyone using a car not insured under this part, owned by you or a household resident.

### REGULARLY USED NON-OWNED CARS

We will not pay for bodily injury to you or a household resident using a non-owned car not insured under this part regularly used by you or a household resident.

### CARS FOR HIRE

We will not pay for bodily injury to anyone using a car covered under this part to carry people or property for a fee. This does not include a car pool. But you and a resident relative are covered if injured in an accident while a passenger in a non-owned car being used to carry people or property for a fee.

### RACING

We will not pay for bodily injury to anyone using a car covered under this part if the car was being used in any organized racing, speed, demolition or stunting contest or related activity.

### BUSINESS AND RESIDENCE

We will not pay for bodily injury to anyone arising out of the use of a car, trailer, camper unit, or similar type of cover, being used or located for use as a place of business or as a place of residence.

### WORKER'S COMPENSATION OR SIMILAR LAWS

We will not pay for bodily injury to anyone when payment under this part duplicates benefits recovered under any worker's compensation law, disability law or any similar law.

### AUTO BUSINESS

We will not pay for bodily injury to anyone using a non-owned car in any kind of auto business. Examples of auto business are: selling, repairing, servicing, storing or parking cars or other vehicles. But you, a resident relative and a business associate are insured while using any of your cars covered under this part.

### BUSINESS OR JOB

We will not pay for bodily injury to anyone (other than you or a resident relative) using a non-owned car in any business or job.

### WAR

We will not pay for bodily injury caused by any act of war, warlike act, insurrection, rebellion or revolution. Also we will not pay for a loss caused by a discharge of any nuclear weapon, even if accidental.

### NUCLEAR CONTAMINATION

We will not pay for bodily injury from or as a consequence of the following, whether controlled or uncontrolled or however caused:

1. Nuclear reaction,
2. Nuclear radiation, or
3. Radioactive contamination.

### CRIMINAL ACTS

We will not pay for any bodily injury to anyone while attempting to commit a crime or to avoid arrest.

### INTENTIONAL INJURY

We will not pay for bodily injury which results from an act

1. That is intended by an insured to cause harm, or
2. That an insured could reasonably expect would cause harm.

This exclusion applies whether or not an insured intended or expected the results of their act so long as the resulting injury or damage was a natural consequence of the act.

## HOW WE WILL SETTLE A CLAIM (PART 2)

### LIMIT OF LIABILITY

The limit stated under MEDICAL PAYMENTS — EACH PERSON on the Declarations is the limit of our liability for all damages arising out of bodily injury to one person as a result of any one accident.

## TO WHOM PAYMENTS ARE MADE

**We** can make these payments either to the injured person, his or her legal representatives or heirs, or to those providing the services. By making these payments, **we** are not admitting that any person is responsible for the accident.

## OTHER INSURANCE — YOUR CAR

If there is other **car** medical payments insurance which covers a loss under this part, **we** will pay **our** share of the loss. **Our** share is the proportion **our** limit bears to the total of all applicable limits.

## OTHER INSURANCE — NON-OWNED CARS (INCLUDES A SUBSTITUTE CAR)

In the case of a **non-owned car** covered under this part, **we** will pay only those medical expenses that are excess over amounts payable under any other **car** medical payments insurance up to **our** limit of liability.

# PART 3 COLLISION AND COMPREHENSIVE — IF YOUR CAR IS DAMAGED OR STOLEN . . .

## OUR OBLIGATIONS TO YOU (PART 3)

### COLLISION COVERAGE

If **you** have this coverage (see the Declarations), **we** will pay for accidental damage to **your** insured **car** or trailer including its equipment, if it collides with another object or if it rolls over.

### COMPREHENSIVE COVERAGE

If **you** have this coverage (see the Declarations) **we** will pay for any direct and accidental loss of or damage to **your** insured **car** or trailer, including its equipment, caused by anything other than collision except as shown under **LOSSES WE WILL NOT PAY FOR (PART 3)**. Examples of comprehensive coverage losses are: glass breakage (even if the glass is broken in a collision), theft, fire, flood, hail, earthquake, vandalism and collision with a bird or animal.

12

---

- If the **car** is stolen, **we** will reimburse **you** for **your** transportation costs until the **car** is back in use or until **we** offer to pay for the loss. Transportation costs will be covered beginning 48 hours after the theft has been reported to the police and to **us**. **We** will pay up to $15 a day for these transportation costs up to a total of $450.

## TOWING AND LABOR COVERAGE

If **you** have this coverage (see the Declarations), **we** will pay for towing charges and the cost of labor done at the scene of a breakdown. The limit for this coverage is shown on the Declarations.

## RENTAL CAR COVERAGE

If **you** have this coverage (see the Declarations), **we** will reimburse **you** for the cost of renting a **car** if a **car you** own is out of use for more than 24 hours because of a Collision or Comprehensive loss. But this coverage does not apply when a **car** is stolen and Comprehensive Coverage applies.

**We** will only pay for actual rental costs for the time it would normally take to repair or replace the damaged **car** up to $15 a day and $450 per accident.

**You** must promptly notify **us** of the amount **you** spent for rental of the **car** in the manner and time **we** reasonably request.

## YOUR OBLIGATIONS TO US (PART 3)

The following provisions apply in addition to any duties listed in the **GENERAL PROVISIONS** section.

### ACTION AGAINST US

No one insured under this part may take any legal action against **us** until 30 days after they have given **us** notice of loss and only if all obligations under this policy have been fulfilled.

## WHAT CARS ARE COVERED (PART 3)

### CARS DESCRIBED ON THE DECLARATIONS

This part covers **cars** for which a premium charge for these coverages is shown on the Declarations.

## REPLACEMENT CARS

If **you** acquire ownership of a **car** to replace a **car** covered under this part, the newly acquired **car** has the same coverage as the old **car**. **You** must notify **us** of the replacement within 30 days after **you** acquire the **car**, for coverage to continue after 30 days.

## ADDITIONAL CARS

If **you** acquire ownership of another **car** in addition to those described as covered under this part, this part covers the new **car** for the first 30 days. The new **car** has the same coverage as any of **your** other **cars** insured with **us**. All **your** other **cars** must be insured with **us** for this part to cover the additional **car**.

**You** must let **us** know within 30 days after **you** acquire ownership of the new **car** that **you** want it insured under this part for coverage to continue after 30 days.

## SUBSTITUTE CARS

If a **car** covered under this part breaks down, is being serviced or repaired, or is stolen or destroyed, **we** will cover a **car you** borrow temporarily (with the owner's permission) while **your car** is being repaired or replaced. This **car** cannot be owned by **you** or a **household resident**. The substitute **car** has the same coverage as the **car** that is out of service.

## OTHER NON-OWNED CARS

In addition to **SUBSTITUTE CARS**, **we** will cover a **non-owned car**. The owner must give permission to use it. The **non-owned car** must be used in the way intended by the owner. This includes a rented **car** for a period of up to 30 consecutive days. The **non-owned car** has the same coverage as any one of **your cars** insured with **us**.

# LOSSES WE WILL NOT PAY FOR *(PART 3)*

## CARS OWNED BY HOUSEHOLD RESIDENTS

**We** will not pay for damage to or loss of a **car** not insured under this part, owned by **you** or a **household resident**.

## REGULARLY USED NON-OWNED CARS

**We** will not pay for damage to or loss of a **non-owned car** not insured under this part, regularly used by **you** or a **household resident**.

## CARS FOR HIRE

**We** will not pay for damage to or loss of a **car** used to carry people or property for a fee. This does not include a car pool.

## CAMPER UNITS, CAPS OR SIMILAR TYPES OF COVER

**We** will not pay for damage to or loss of a camper unit, cap or similar type of cover, including its equipment and accessories, unless the ownership or use of the camper unit, cap or similar type of cover has been reported to us and the required premium has been paid. A camper unit, cap or similar type of cover is designed to be mounted on a **car** or trailer.

## TRAILERS

**We** will not pay for damage to or loss of a trailer, unless the ownership or use of the trailer has been reported to **us** and the required premium has been paid. A trailer is designed to be pulled by a **car**.

## CUSTOMIZED VEHICLES

**We** will not pay for damage to or loss of any customized features unless the value of the customization has been reported to **us** and it is included in the premium which has been paid for this coverage. Customized features include any: furnishings, carpeting, custom installed height extending roofs, custom paint, custom painted windows, custom murals, graphics or other custom applied designs or equipment. This includes items installed at the time of the vehicle's manufacture or after.

## RACING

**We** will not pay for damage to or loss of a **car** covered under this part if the **car** was being used in any organized racing, speed, demolition or stunting contest or related activity.

## BUSINESS AND RESIDENCE

**We** will not pay for damage to or loss of a **car**, trailer, camper unit, cap or similar type of cover, being used or located for use as a place of business or as a place of residence.

13

## AUTO BUSINESS

**We** will not pay for damage to a **car** or trailer **you** do not own if **you** are using it in any kind of auto business. Examples of auto business are: selling, repairing, servicing, storing or parking **cars** or other vehicles.

## WAR

**We** will not pay for damage caused by any act of war, warlike act, insurrection, rebellion or revolution. Also, **we** will not pay for a loss caused by discharge of any nuclear weapon, even if accidental.

## NUCLEAR CONTAMINATION

**We** will not pay for damage from or as a consequence of the following, whether controlled or uncontrolled or however caused:

1. Nuclear reaction;
2. Nuclear radiation; or
3. Radioactive contamination.

## CRIMINAL ACTS

**We** will not pay for damage caused by anyone while attempting to commit a crime or to avoid arrest.

## INTENTIONAL DAMAGE

**We** will not pay for damage which results from an act:

1. That is intended by an insured to cause harm; or
2. That an insured could reasonably expect would cause harm.

This exclusion applies whether or not an insured intended or expected the results of their act, so long as the resulting injury or damage was a natural consequence of the act.

## SOUND (RECEIVING, RECORDING, REPRODUCING OR TRANSMITTING) EQUIPMENT

**We** will not pay for loss to sound equipment which is not permanently installed. Equipment must be installed in the dash or console opening specified by the manufacturer of the **car**, trailer, camper unit, cab or similar type of cover for such equipment to be considered permanently installed.

Loss to tapes, records, or other devices for use with equipment designed for the reproduction of sound will not be covered.

## WEAR AND TEAR

**We** will not pay for damage which is due and confined to wear and tear, freezing, or mechanical or electrical breakdown or failure. This does not apply to damage if **your car** is stolen.

## TIRES

**We** will not pay for loss to tires unless the loss is caused by fire, vandalism, malicious mischief, theft, or unless the loss is caused by an accident covered under this part.

## ADDITIONAL LIVING FACILITY EQUIPMENT

**We** will not pay for damage to or loss of radio or TV antennas, awnings, cabanas or any equipment designed to create extra living area while the vehicle is set up for living off the highway.

## PERSONAL PROPERTY

**We** will not pay for damage to or loss of personal property in a car.

# HOW WE WILL SETTLE A CLAIM *(PART 3)*

## LIMIT OF LIABILITY

**Our** limit of liability will be the least of the:

1. Actual cash value of the damaged or stolen property at the time of the loss;
2. Amount necessary to repair or replace the property with other of like kind and quality, or
3. Amount stated on the Declarations.

A theft loss to permanently installed sound (receiving, recording, reproducing or transmitting) equipment is covered up to $1,000.

Loss to a non-owned trailer when pulled by a **car** is covered up to $500. **We** will only pay the part of a loss caused by damage to or theft of a non-owned trailer that is excess over the amount payable under any other insurance which covers the loss.

14

**Our** payment will be reduced by any applicable deductible shown on the Declarations. But, the Comprehensive deductible will not apply to breakage of front windshield glass when GLASS COVERAGE is printed on the Declarations under the deductible amount for that **car.**

If **you** are in a collision with any other vehicle or trailer **we** insure (under another policy), the deductible does not apply. But if two or more vehicles owned by **you** and insured by **us** collide, the deductible applies separately to each vehicle.

## TRAILER, CAMPER UNIT, CAP OR SIMILAR TYPE OF COVER DEDUCTIBLES

A **car** with a trailer attached to it is considered to be two separate vehicles and separate deductibles apply.

A **car** with a camper unit, cap or similar type of cover mounted on it is considered to be one **car** and only the deductible on the **car** applies. If the camper unit, cap or similar type of cover is unmounted, separate deductibles apply to the **car** and the camper unit, cap or similar type of cover.

## CLAIM SETTLEMENT

**We** may pay for the loss, or repair or replace the damaged or stolen property with material of like kind and quality. If the stolen property is recovered before **we** have paid **you** for it or replaced it, **we** can return it to **you**, along with payment for any damage resulting from the theft. If **we** pay for any property or pay for its replacement, **we** may keep it. But **you** cannot require **us** to assume ownership of damaged property. **We** may settle the claim either with **you** or with the owner of the property.

## APPRAISAL

If there is disagreement over the amount of the loss, either of us may demand an appraisal within 60 days after **you** give **us** written proof of **your** loss. In that case, each of us will select a qualified appraiser. The two appraisers will select an umpire. Each appraiser will then state both the actual cash value and the amount of the loss. If they disagree, they will submit their differences to the umpire. A decision in writing of any two of these three persons will determine the amount of the loss. Each of us will pay **our** own appraiser. **We** will share equally the other costs of the appraisal and of the umpire.

## OTHER INSURANCE — YOUR CAR OR TRAILER

If there is other insurance which covers damage to or theft of a **car** or trailer covered under this part, **we** will pay **our** share of the loss. **Our** share is the proportion **our** limit bears to the total of all applicable limits.

## OTHER INSURANCE — NON-OWNED CAR OR TRAILER (INCLUDES A SUBSTITUTE CAR)

In the case of a **non-owned car** or trailer covered under this part, **we** will pay only that part of a loss caused by damage to or theft of the **car** or trailer that is excess over amounts payable under any other insurance up to **our** limit of liability.

## LOSS PAYEE CLAUSE

Payment for loss of or damage to a **car** covered under this part will be made to the person or organization shown in the Declarations as the loss payee. This payment will be made, up to the amount of the loss, to the extent that the loss payee has a financial interest in the **car.**

This insurance, covering the interest of any loss payee, will not be invalidated because of the insured's conversion, embezzlement or secretion of the **car.** But, **we** reserve the right to cancel or nonrenew the policy as permitted by its terms. The termination notice will end this agreement with all loss payees. Advance notice of termination will be sent to the loss payee at the time it is sent to the named insured.

If the insured fails to provide **us** with a proof of loss within a reasonable time period, the loss payee shall do so within 60 days of notice by **us.** Further, the loss payee shall be subject to all provisions of the policy relating to appraisals, time of payment, payment of premium and of bringing suit.

When **we** pay the loss payee, **we** acquire the loss payee's subrogation rights. When **we** make any payment under this policy, **we** can make separate payments to each party at interest, provided **we** protect the ownership interest of all parties.

15

PAC 226 FL (Ed. 5/98)

Florida Special State Provisions

## CHANGES TO GENERAL PROVISIONS

Under *"Agreements Between You and Us,"* the last sentence of the second paragraph is replaced by the following:

You will immediately notify us of any change of address. The policy will then be rerated based on the rates and coverages in use for the new address. If the change in address is from one state to another and you qualify for coverage with us in the new state, then we will replace this policy with the policy we use in the new state.

Under the provision titled *"Lifetime Renewal At Age 65,"* the first paragraph is replaced by the following paragraph only if the policy has an original effective date prior to 01/25/91:

At each renewal, we will either renew this policy or replace it with a policy of one of our affiliated companies if you have had car insurance with us continuously for at least 5 years on the first anniversary date of this policy (or any renewal or replacement of it) following your 65th birthday.

The provision titled *"Lifetime Renewal At Age 65"* is deleted only if the policy has an original effective date of 01/25/91 or later.

The sections titled *"Cancellation And Nonrenewal By Company"* are replaced as follows:

### Cancellation

This policy may be cancelled during the policy period as follows:

1. Except as provided in Sections 2, 3 or 4, during the first 60 days following the date of issuance or renewal, this policy may not be cancelled by:

   a. You; or

   b. Us;

   unless, the only car insured under this policy has been totally destroyed and is no longer operable on the roads of this state or its ownership has been transferred or another policy has been purchased replacing the policy being cancelled.

2. If we want to cancel this policy and it is not a renewal policy and has been in effect less than 60 days, we may cancel for reasons other than non-payment of premium or for non-payment of premium only if your premium check is dishonored. We will send written notice 10 days before the policy is cancelled for non-payment of premium and 45 days notice for all other reasons.

3. In the event we determine that you have been charged an incorrect premium for coverage requested in your application for insurance, we shall immediately mail you notice of your additional premium due us. If within 15 days of the notice of additional premium (or a longer time period as specified in the notice), you fail to either:

   a. pay the additional premium and maintain this policy in full force under its original terms; or

   b. cancel this policy and demand a refund of any unearned premium;

   then this policy shall be cancelled effective 15 days from the date of the notice.

4. Notwithstanding Sections 1, 2 or 3, we may cancel this policy at any time for:

   a. The issuance of a check which is dishonored for any reason; or

   b. the policy was obtained through fraud or material misrepresentation; or

– 21 –

c. any reason which would result in the policy being void from its inception.

5. After this policy has been in effect for 60 days or more:

a. You may cancel by:

1. returning this policy to us; or

2. giving us advance written notice of the date cancellation is to take effect.

b. We may cancel by mailing by Registered or Certified Mail or United States Post Office proof of mailing to you at the address shown in the policy.

1. at least 10 days notice is given if cancellation is for non-payment of premium; or

2. at least 45 days notice in all other cases.

6. After this policy is in effect for 60 days, or if this is a renewal policy or continuation policy, we will cancel only;

a. for non-payment of premium; or

b. if your drivers license or that of:

1. any driver who lives with you; or

2. any driver who regularly uses your car;

is under suspension or revocation during the policy period; or

c. The policy was obtained through fraud or material misrepresentation.

**ALL CANCELLATIONS:** Coverage ends on the date shown on the written notice, not the date you get the premium refund.

### Nonrenewal

If we decide not to renew this policy, we will send written notice to the named insured 45 days before it expires. We will send the notice to the last address shown on the policy. We and you agree that the mailing of this notice is proof that you were properly notified.

The section titled *"Trust Agreement"* is replaced by the following:

### Trust Agreement

When we pay any person for a loss under this policy, we are entitled to the amount we paid from the proceeds of any settlement or judgement that person recovers from the responsible party. When allowed by law, we are also entitled to related collection expenses for any settlement or judgment.

At our request, persons receiving payments from us must take any necessary action to recover the payment we have made. We will select the attorney and pay all related costs and fees.

The section titled *"Rights Of Recovery"* is replaced by the following:

### Rights of Recovery

When we pay for a loss under this policy, your rights of recovery from anyone else become ours up to the amount we have paid. Anyone insured under this policy must:

1. Not interfere with our rights to recover; and

2. Do whatever is necessary to help us recover the amount we paid.

But, our rights do not apply under Part 3 if you give other people permission to use your car covered under this part and they use the car in the way you intended.

A provision titled *"Mediation"* is added as follows:

### Mediation

In any claim filed with us for:

1. Loss resulting from "bodily injury" in an amount of $10,000 or less;

2. Property damage; or

3. Loss to your covered car or any non-owned car;

either party may demand mediation of the claim, prior to taking legal action, by filing a written request with the Department of Insurance on a form which may be obtained from the Department. The request must state:

1. Why mediation is being requested; and

2. The issues in dispute which are to be mediated.

Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

The Department shall randomly select mediators. Each party may reject one mediator. The mediator will notify the parties of the date and place of the mediation conference, which will be held within 45 days of the request for mediation. The conference may be held by telephone, if feasible.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed. Participants must:

1. Have authority to make a binding decision; and

2. Mediate in good faith.

Costs of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.


## CHANGES TO PARTS 1, 2, 3 AND 4

### Occasional Use Of A Household Resident's Car

Under Parts 1, 2, 3 and 4 of this policy, your use of a **resident relative's car** or a **household resident's car** is covered if it is not regularly used by you. But this provision will not apply under Part 4 of this policy, if you have selected the non-stacking option.


## CHANGES TO PARTS 1, 2 AND 3

### What Cars Are Covered

The section titled *"Additional Cars"* is replaced by the following:

#### Additional Cars

If you acquire ownership of another car in addition to those described as covered under this part, this part covers the new car for the first 30 days. The new car has the same coverage as any of your other cars insured with us.

You must let us know within 30 days after you acquire ownership of the new car that you want it insured under this part, for coverage to continue after 30 days.

### Losses We Will Not Pay For

The sections titled *"Intentional Injury Or Damage," "Intentional Injury,"* and *"Intentional Damage,"* are replaced by the following:

#### Intentional Injury Or Damage

**We** will not pay for bodily injury or property damage which results from an act that is intended by an insured to cause harm.

### Intentional Injury

We will not pay for bodily injury which results from an act that is intended by an insured to cause harm.

### Intentional Damage

We will not pay for damage which results from an act that is intended by an insured to cause harm.

## CHANGES TO PART 1

### Your Our Obligations To Us

The section titled *"Action Against Us"* is replaced by the following:

### Action Against Us

No one insured under this part may take any legal action against us until all obligations under this policy have been fulfilled. Also, you must wait until the amount of the settlement has been determined. A settlement is determined by a court or by agreement between us and the person making the claim. No one insured under this part may assign his rights to another or involve us in a suit as a defendant.

Under Section 627.7262 of the Florida Insurance Code, if a liability claim is made against an insured, persons who are not designated as insureds under this policy are precluded from bringing suit against us prior to first obtaining a judgment against the insured on a cause of action which is covered by the policy.

### What Cars Are Covered

The section titled *"Non-Owned Motor Vehicles"* is added as follows:

### Non-owned Motor Vehicles

We will cover a non-owned motor vehicle you and a resident relative borrow temporarily. The owner must give permission to use it. The non-owned motor vehicle must be used in the way intended by the owner. This includes a rented motor vehicle for a period of up to 30 consecutive days. The non-owned motor vehicle has the same coverage as any one of your cars insured with us.

The section titled *"Trailers, Camper Units, Caps, Or Similar Types Of Cover"* is replaced by the following:

### Trailers, Camper Units, Caps, Or Similar Types Of Cover

We will cover all trailers designed to be pulled by a car. We will cover all camper units, caps or similar types of cover designed to be mounted on a car or trailer. When a trailer, camper unit, cap or similar type of cover is attached to a car it is considered to be one vehicle. There is no Property Damage Coverage for a non-owned trailer, camper unit, cap, or similar type of cover.

### Who Is Insured

The section titled *"In A Non-Owned Car"* is replaced by the following:

### In A Non-owned Motor Vehicle

You and a resident relative are insured while using a non-owned motor vehicle. The owner must give permission to use it. It must be used in the way intended by the owner.

We insure a person or organization who may be held responsible for your use or a resident relative's use of a motor vehicle this part covers.

### Losses We Will Not Pay For

The section titled *"Household Residents"* is replaced by the following:

### Resident Relatives

We will not pay under this part for bodily injury to you or a resident relative. We will not defend you or a resident relative in any suits brought against each other directly or indirectly by a third party.

The section titled *"Auto Business"* is replaced by the following:

### Auto Business

We will not pay for bodily injury or property damage caused by anyone using a car in any automobile business (such as selling, repairing, servicing, storing or parking cars).

But you, a resident relative, or any business associates (for whose use of the car you may be held legally responsible) are insured while using any of your cars covered under this part.

### How We Will Settle A Claim

The section titled *"Payments Reduced"* is added as follows:

### Payments Reduced

Payments under this part will be reduced by any amounts payable to an injured person under other parts of this policy.

## CHANGES TO PART 2

### Our Obligations To You

The section titled *"Medical Payments Coverage"* is replaced by the following:

### Medical Payments Coverage

If you have this coverage (see the Declarations), we will pay up to our limit of liability for an insured's reasonable expenses for necessary medical and funeral services which result from a car accident covered under this part.

### Losses We Will Not Pay For

The section titled *"Auto Business"* is replaced by the following:

### Auto Business

We will not pay for bodily injury to anyone using a car in any automobile business (such as selling, repairing, servicing, storing or parking cars).

But you, a resident relative, or any business associates are insured while using any of your cars covered under this part.

## CHANGES TO PART 3

### Losses We Will Not Pay For

The section titled *"Auto Business"* is replaced by the following:

### Auto Business

We will not pay for damage to a car if it is being used in any automobile business (such as selling, repairing, servicing, storing or parking cars).

### How We Will Settle A Claim

The deductible paragraph of the section titled *"Limit Of Liability"* is replaced by the following:

Our payment will be reduced by any applicable deductible shown on the Declarations. But, the deductible does not apply to damage to a front windshield.

The section titled *"Loss Payee Clause"* is replaced by the following:

### Loss Payee And Additional Interest Clause

Payment for loss of or damage to a car covered under this part will be made to the person or organization shown in the Declarations as the loss payee or the additional interest. This payment will be made, up to the amount of the loss, to the extent that the loss payee or the additional interest has a financial interest in the car.

This insurance, covering the interest of any loss payee or the additional interest will not be invalidated because of the insured's conversion, embezzlement or secretion of the car. But, we reserve the right to cancel or nonrenew the policy as permitted by its terms. The termination notice will end this agreement with all loss payees or all additional interests. Advance notice of termination will be sent to the loss payee or the additional interest at the time it is sent to the named insured.

If the insured fails to provide us with a proof of loss within a reasonable time period, the loss payee or the additional interest shall do so within 60 days of notice by us. Further, the loss payee or the additional interest shall be subject to all provisions of the policy relating to appraisals, time of payment, payment of premium and of bringing suit.

When we pay the loss payee or the additional interest, we will, to the extent of payment, be Subrogated to the loss payee's or the additional interest's rights of recovery. When we make any payment under this policy, we can make separate payments to each party at interest, provided we protect the ownership interest of all parties.

## CHANGES TO PART 4

Under *"General Provisions,"* the section titled *"Limit Of Coverage"* is replaced by the following:

### Non-stacking Of Uninsured Motorists Coverage Limits

If you have selected this option (the Declarations will show *Non-stacking Applies*), then the *"Limit of Coverage"* under *"General Provisions"* applies to you and any other person insured under Part 4 of this policy. This means that if you or any other person insured under this policy is in an accident:

1. In a car that is insured by this policy: We will not pay more than the limit of coverage for that particular car.

2. In a car that is not owned by you or a resident relative or while a pedestrian: You are entitled to the highest limit of Uninsured Motorists Coverage available on any one car as to which you are a named insured or an insured resident relative. If you choose the coverage available to you as an insured under this policy part, then we will pay those damages that are excess over amounts payable on the car you occupy at the time of the accident. If you choose the coverage available to you as an insured under another policy, then we will not pay for damages under this policy part.

This limit of coverage applies regardless of the number of policies, insureds, insured cars, claims made, or cars involved in the accident or loss. Coverages on other cars insured by us cannot be added to or stacked on the coverage of the particular car involved.

If you or anyone insured under this policy is in an accident in a non-owned car or while a pedestrian, then you are entitled to the highest limit of Uninsured Motorists Coverage available on any one car as to which you are a named insured or an insured resident relative. If you choose the coverage available to you as an insured under this policy part, then we will pay those damages that are excess over amounts payable on the car you occupy at the time of the accident. If you choose the coverage available to you as an insured under another policy, then we will not pay for damages under this policy part.

### Exclusion - Cars Owned By You Or Resident Relatives

We will not pay for bodily injury to you or a resident relative while using a car not insured under this Part owned by you or a resident relative.

### Stacking of Uninsured Motorists Coverage Limits

If you have not selected the above option, then Stacking applies (the Declarations will show *"Stacking Applies"*) to you and a resident relative insured under Part 4 of this policy. This means that you or a resident relative can add or stack the Uninsured Motorists Coverage limits of other cars insured by us on the Uninsured Motorists Coverage limits of the cars involved in the accident or loss.

Any person other than you or a resident relative is not entitled to stack your Uninsured Motorists Coverage limits. This means that we will not pay more than the limit of coverage for the car involved in the accident or loss.

**Our Obligations To You**

The definition of Underinsured Motorists Coverage is revised as follows:

### The Owner Or Driver Is Underinsured

The owner or driver responsible for the accident has liability insurance or a liability bond in an amount that is less than the total damages the insured, who sustained bodily injury, is legally entitled to recover.

The section titled *"The Coverage Of The Owner Or Driver Is Denied,"* is replaced as follows:

### The Coverage Of The Owner Or Driver Is Denied Because Of Insolvency

The owner or driver responsible for the accident has liability coverage at the time of the accident, but, the company writing the insurance is or becomes insolvent.

**Losses We Will Not Pay For**

The section titled *"Auto Business"* is replaced by the following:

### Auto Business

We will not pay for bodily injury caused by anyone using a car in any automobile business (such as selling, repairing, storing or parking cars).

But you or a resident relative are insured while using any of your cars covered under this part.

A section titled *"Resident Relatives"* is added as follows:

We will not pay under this part for bodily injury to you or a resident relative if caused by you or a resident relative. We will not defend you or a resident relative in any suits brought against each other directly or indirectly by a third party.

**How We Will Settle A Claim**

The following paragraph is added under *"Limit Of Liability - Bodily Injury: Each Person"* and *"Limit Of Liability - Bodily Injury: Each Accident:"*

Our limit of liability will be the least of the:

1. Difference between the amount of your damages and the amount you received in damages from the owner or driver responsible for the accident;

2. Amount of your damages; or

3. Amount stated in the Declarations.

**How We Will Settle A Claim**

The section titled *"Payments Reduced"* is revised as follows:

**Payments Reduced**

The amount we agree to pay under this part is over and above, but shall not duplicate, benefits provided:

1. Under any workers' compensation law, disability benefits law or any similar laws;

2. Under personal injury protection benefits;

3. Under any automobile medical payments or liability insurance coverages; or

4. From the owner or operator of the uninsured motor vehicle or any other person or organization liable together with the owner or operator for the accident.

We will pay the difference between the sum of these benefits and the amount of the loss up to our limit of liability.

## CHANGES TO PART 6

### Part A

Item 4 under the section titled *"Personal Injury Protection"* is revised as follows:

4. death benefits.

The second sentence under the section titled *"Limit Of Liability; Application Of Deductible; Other Insurance"* is revised as follows:

A death benefit of up to $5,000 is included in this limit.

The first sentence under the deductible options is revised as follows:

Under these options, a deductible amount does not apply to death benefits.

Under "Definitions," the description of what a motor vehicle does not include is revised as follows:

A motor vehicle does not include a mobile home or any motor vehicle which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority, or a political subdivision of the state.

### Part B

The first paragraph of the provision titled *"Florida Coordination Of Personal Injury Protection Coverage"* is replaced with the following:

**Military Coordination Of Benefits**

If you select an option under this Part, the amount we agree to pay will be reduced by the amount of all other military benefits payable. The reduced amount applies to the Named Insured or the Named Insured and each relative depending on the option selected. If you have one of the following options, the option will be shown on your declarations.

The section titled *"Arbitration"* is added as follows:

**Arbitration**

Any claims dispute between us and a medical service or supplies provider who has agreed to accept an assignment of benefits shall be decided by arbitration upon written request of either party. Each party shall select a competent and impartial arbitrator. These two shall select a third one. If unable to agree on the third one within 30 days either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on each party.

The prevailing party is entitled to attorney's fees and costs.

The arbitration shall take place in the county in which the provider is located. If they are located out-of-state, arbitration shall take place in the county in which the insured resides, unless the parties agree to another place. Arbitration is subject to the provisions of the Florida Arbitration Code, Chapter 682 of the Florida Statutes.

Prudential Property and Casualty Insurance Company
Prudential General Insurance Company
Prudential Commercial Insurance Company
Subsidiaries of The Prudential Insurance Company of America

The **Prudential** 

Corporate Office/23 Main Street, Holmdel. N.J. 07733

PAC 190 FL Ed. 4 87





# Car Policy Parts 4 6 & 7

## TABLE OF CONTENTS

THIS BOOKLET CONTAINS MOST OF THE
ENDORSEMENTS AVAILABLE IN FLORIDA. YOU
ONLY HAVE COVERAGE FOR THE ENDORSE-
MENTS LISTED ON YOUR DECLARATIONS PAGE
BY PAC NUMBER. SEE LIST BELOW FOR LOCA-
TION WITHIN THIS BOOKLET.

**Page**

**PART 4 UNINSURED MOTORISTS
  (PAC 4)**                                         **3**
OUR OBLIGATIONS TO YOU                                3
YOUR OBLIGATIONS TO US                                3
WHAT CARS ARE COVERED                                 3
WHO IS INSURED                                        4
LOSSES WE WILL NOT PAY FOR                            4
HOW WE WILL SETTLE A CLAIM                            5

**PART 5 IS NOT AVAILABLE IN YOUR STATE**

**PART 6 PERSONAL INJURY PROTECTION
  (PAC 6)**                                         **6**

**PART 7 ADDITIONAL PERSONAL INJURY
  PROTECTION (PAC 7)**                              **9**

Prudential Property and Casualty Insurance Company
Prudential General Insurance Company
Prudential Commercial Insurance Company
Subsidiaries of The Prudential Insurance Company of America

Corporate Office/23 Main Street, Holmdel, N.J. 07733

# PART 4: UM INSURED MOTORISTS PAC 4/FL (ED. 4/87) IF YOU ARE HIT BY A MOTOR VEHICLE THAT IS UNINSURED OR UNDERINSURED

## OUR OBLIGATIONS TO YOU (PART 4)

### UNINSURED MOTORISTS COVERAGE

If **you** have this coverage (see the Declarations), **we** will pay up to **our** limit of liability for **bodily injury** that is covered under this part when an insured (whether or not occupying a **car**) is struck by an uninsured or underinsured **motor vehicle**. **Our** payment is based on the amount that an insured is legally entitled to recover for **bodily injury** but could not collect from the owner or driver of the uninsured or underinsured **motor vehicle** because:

— **THE OWNER OR DRIVER IS NOT INSURED**

The owner or driver responsible for the accident has no liability insurance or liability bond at the time of the accident

— **THE OWNER OR DRIVER IS UNDERINSURED**

The owner or driver responsible for the accident has liability insurance or a liability bond in an amount that is less than the damages the insured is legally entitled to recover

— **THE COVERAGE OF THE OWNER OR DRIVER IS DENIED**

The owner or driver responsible for the accident has liability coverage at the time of the accident, but for some reason, the company writing the insurance or bond denies coverage or is (or becomes) insolvent.

— **THE ACCIDENT IS A HIT AND RUN**

The owner and the driver of the **motor vehicle** which caused **bodily injury** by hitting a person insured under this part (or by hitting a **car** that

person was occupying at the time of the accident) cannot be identified.

## YOUR OBLIGATIONS TO US (PART 4)

The following provisions apply in addition to any duties listed in the **GENERAL PROVISIONS** section.

### ACTION AGAINST US

No one insured under this part may take any legal action against **us** until all obligations under this policy have been fulfilled.

### ACTION BY US

**We** have the right to take any legal action allowable by law in **our** own name or in the name of the owner or operator (or both) of the uninsured or underinsured **motor vehicle**.

## WHAT CARS ARE COVERED (PART 4)

### CARS DESCRIBED ON THE DECLARATIONS

This part covers **cars** for which a premium charge for this coverage is shown on the Declarations.

### REPLACEMENT CARS

If **you** acquire ownership of a **car** to replace a **car** covered under this part, the newly acquired **car** has the same coverage as the old **car**. **You** must notify **us** of the replacement within 30 days after **you** acquire the **car**, for coverage to continue after 30 days

### ADDITIONAL CARS

If **you** acquire ownership of another **car** in addition to those described as covered under this part, this part covers the new **car** for the first 30 days. The new **car** has the same coverage as any of **your** other **cars** insured with **us**

**You** must let **us** know within 30 days after **you** acquire ownership of the new **car** that **you** want insured under this part, for coverage to continue after 30 days.

### SUBSTITUTE CARS

If a **car** covered under this part breaks down, is being serviced or repaired, or is stolen or destroyed, **we** will cover a **car you** borrow temporarily (with the owner's permission) while **your car** is being repaired or replaced. This **car** cannot be owned by **you** or a

3

**household resident.** The substitute **car** has the same coverage as the **car** that is out of service.

### OTHER NON-OWNED CARS

In addition to **substitute cars, we** will cover a **non-owned car**. The owner must give permission to use it. The **non-owned car** must be used in the way intended by the owner. This includes a rented **car** for a period of up to 30 consecutive days. This **non-owned car** has the same coverage as any one of **your cars** insured with **us.**

## WHO IS INSURED *(PART 4)*

### IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)

**You** and a **resident relative** are insured while using **your car** or a substitute **car** covered under this part.

Other people are insured while using **your car** or a substitute **car** covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

### IN A NON-OWNED CAR

**You** and a **resident relative** are insured while using a **non-owned car**. The owner must give permission to use it. It must be used in the way intended by the owner.

### HIT BY A MOTOR VEHICLE

**You** and a **resident relative** are insured if hit by an uninsured or underinsured **motor vehicle** while a pedestrian.

## LOSSES WE WILL NOT PAY FOR *(PART 4)*

### LOSSES DENIED, EXCLUDED OR EXHAUSTED UNDER OTHER PARTS

**We** will not pay for **bodily injury** to anyone who claims a **car** involved in the accident and insured under this policy is uninsured or underinsured because coverage is denied, excluded or exhausted under another part of this policy.

### CARS FOR HIRE

**We** will not pay for **bodily injury** to anyone using a **car** covered under this part while used to carry people or property for a fee. This does not include a **car** pool. But **you** or a **resident relative** who does not own a **car** are covered if injured in an accident while a passenger in a **non-owned car** being used to carry people or property for a fee.

### LAND VEHICLES

**We** will not pay for **bodily injury** to anyone hit by the following land vehicles:

1. **motor vehicles** owned by a government agency in the United States of America or in Canada;

2. land vehicles operated on crawler-treads or rails;

3. **motor vehicles** or equipment designed for use mainly off public roads (unless the accident happens on a public road);

4. motorcycles or similar **motor vehicles** that are not required to be licensed and registered; or

5. **motor vehicles** owned by **you** or regularly used by **you** or any **household resident.**

### RACING

**We** will not pay for **bodily injury** to anyone using a **car** covered under this part if the **car** was being used in any organized racing, speed, demolition or stunting contest or related activity.

### BUSINESS AND RESIDENCE

**We** will not pay for **bodily injury** to anyone arising out of the use of a **car,** trailer, camper unit, cap or similar type of cover being used or located for use as a place of business or as a place of residence.

### AUTO BUSINESS

**We** will not pay for **bodily injury** to anyone using a **non-owned car** in any kind of auto business. Examples of auto business are: selling, repairing, servicing, storing or parking **cars** or other vehicles. But **you**, a **resident relative** and a business associate are insured while using any of **your cars** covered under this part.

## BUSINESS OR JOB

**We** will not pay for **bodily injury** to anyone (other than **you** or a **resident relative**) using a **non-owned car** in any business or job.

## WAR

**We** will not pay for **bodily injury** caused by any act of war, warlike act, insurrection, rebellion or revolution. Also, **we** will not pay for a loss caused by discharge of any nuclear weapon, even if accidental.

## NUCLEAR CONTAMINATION

**We** will not pay for **bodily injury** from or as a consequence of the following, whether controlled or uncontrolled or however caused:

1. Nuclear reaction;
2. Nuclear radiation; or
3. Radioactive contamination.

## CRIMINAL ACTS

**We** will not pay for **bodily injury** to anyone while attempting to commit a crime or to avoid arrest.

## INTENTIONAL INJURY

**We** will not pay for **bodily injury** which results from an act that is intended by an insured to cause harm.

## PUNITIVE DAMAGE

**We** will not pay for damages assessed as punitive, exemplary or vindictive.

# HOW WE WILL SETTLE A CLAIM (PART 4)

## LIMIT OF LIABILITY—BODILY INJURY: EACH PERSON

The limit stated under **UNINSURED MOTORISTS— EACH PERSON** on the Declarations is the limit of **our** liability for all damages, including damages for care or loss of services, arising out of **bodily injury** to one person as a result of any one accident.

## LIMIT OF LIABILITY—BODILY INJURY: EACH ACCIDENT

The limit stated under **UNINSURED MOTORISTS— EACH ACCIDENT** on the Declarations is the limit of **our** liability for all damages, including damages for care or loss of services, arising out of **bodily injury** to two or more persons as a result of any one accident.

## JUDGMENT

**We** will not be bound by any judgment against any person or organization which was obtained without **our** written consent.

## PAYMENTS REDUCED

The amount **we** agree to pay under this part is over and above, but shall but duplicate, benefits provided:

1. Under any workers' compensation law, disability benefits law or any similar laws.
2. Under personal injury protection benefits;
3. Under any automobile medical payments or liability insurance coverages; or
4. From the owner or operator of the uninsured **motor vehicle** or any other person or organization liable together with the owner or operator for the accident.

## OTHER INSURANCE—YOUR CAR

If there is other insurance which covers a loss under this part, **we** will pay **our** share of the loss. **Our** share is the proportion **our** limits bears to the total of all applicable limits.

## OTHER INSURANCE—NON-OWNED CAR (INCLUDES A SUBSTITUTE CAR)

In the case of a **non-owned car** covered under this part, **we** will pay those damages that are excess over amounts payable under any other insurance up to **our** limit of liability.

5

# PART 6 PERSONAL INJURY PROTECTION COVERAGE
# PAC 6 FL *(Ed. 4/87)*

## PART A

## PERSONAL INJURY PROTECTION

If **you** have paid for this coverage (see the Declarations) **we** will pay in accordance with the Florida Motor Vehicle No-Fault Law to or for the injured person.

1. 80% of **medical expenses**,
2. 60% of **work loss**,
3. **replacement services expenses**, and
4. funeral, burial or cremation expenses

The **bodily injury** must result from an accident arising out of the ownership, maintenance or use of a **motor vehicle**. The injury must be to:

1. **you** or a relative while in or on a **motor vehicle**, or while a **pedestrian** hit by a **motor vehicle**, or
2. any other person while in or on the **insured motor vehicle** or while a **pedestrian** hit by the **insured motor vehicle**.

## EXCLUSIONS

This part does not apply to:

1. **you** or a **relative** while in or on a **motor vehicle you** own that is not insured under this policy.
2. anyone using the **insured motor vehicle** without permission of the **Named Insured**.
3. anyone who intentionally injures himself.
4. anyone injured in an accident while committing a felony.
5. a **pedestrian** who is not a legal resident of Florida. This exclusion does not apply to **you** or a **relative**.
6. anyone other than **you** who is an owner of a

**motor vehicle** that is required to be insured in accordance with the Florida Motor Vehicle No-Fault Law.

7. anyone, other than **you** or a **relative**, who is eligible to receive benefits from the owner of a **motor vehicle** not insured under this policy.
8. anyone injured in a **motor vehicle** located for use as a place of business or as a place to live.

## LIMIT OF LIABILITY; APPLICATION OF DEDUCTIBLE; OTHER INSURANCE

**We** will pay up to $10,000 for each person injured in one accident. Funeral, burial or cremation expenses up to $1,750 are included in this limit. This limit applies regardless of the number of policies, insureds, insured cars, claims made or **motor vehicles** involved in the accident or loss. Coverages on other cars insured by us cannot be added to or stacked on the coverage of the particular car involved.

The amount **we** agree to pay will be reduced by any amount payable under workers' compensation laws of any state or the federal government or the Medicaid program.

If there is other car insurance that covers a loss under this Part, **we** will pay **our** proportionate share of the loss.

If **you** select a Deductible Option, the amount **we** agree to pay will be reduced by the amount of the deductible. It is applied to the total amount **we** will pay. The deductible amount applies to the **Named Insured** or the **Named Insured** and a **relative**. If **you** choose one of the following options, the option will be shown on **your** Declarations.

| Options | Deductible Amount | Named Insured Only | Named Insured and Each Relative |
|---------|-------------------|--------------------|----------------------------------|
| Option #I | $  250 | Yes | No |
| Option #J | $  250 | No | Yes |
| Option #K | $  500 | Yes | No |
| Option #L | $  500 | No | Yes |
| Option #M | $1,000 | Yes | No |
| Option #N | $1,000 | No | Yes |
| Option #O | $2,000 | Yes | No |
| Option #P | $2,000 | No | Yes |

Under these options. a deductible amount does not apply to funeral. burial or cremation expenses

## WORK LOSS EXCLUSION

Option #U-**Work loss** benefits payable to the **Named Insured** are excluded. This coverage will be shown on **your** Declarations as Option #U.

Option #V-**Work loss** benefits payable to the **Named Insured** and each **relative** are excluded. This coverage will be shown on **your** Declarations as Option #V

## DEFINITIONS

When used in reference to this Part:

**bodily injury** means **bodily injury** sickness. disease or death suffered by a person.

**insured motor vehicle** means a **motor vehicle** shown on your Declarations.

**medical expenses** means reasonable expenses for necessary medical, surgical x-ray. dental. and rehabilitative services. including prosthetic devices and necessary ambulance. hospital. and professional nursing services. Also, it means expenses for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs.

**motor vehicle** means a self-propelled vehicle with 4 or more wheels designed and required to be licensed for use on public roads. This includes a trailer or semi-trailer if designed for use with such **motor vehicle**

A **motor vehicle** does not include

1. a vehicle owned by a municipality. transit or public school transportation authority. or a political subdivision used in mass transit or public school transportation designed to transport more than 5 passengers; or

2. a mobile home

**Named Insured** means the person or organization named in the Declarations of the policy and if an individual shall include the spouse if a resident of the same household

**owner** means a person or organization who holds the legal title to a **motor vehicle** Also. **owner** includes a debtor or lessee having the right of possession. For a debtor to be an **owner**. a security agreement is necessary. For a lessee to be an **owner**. the lease must be for six months or more or the lease states the lessee must have insurance.

**pedestrian** means a person who is not in or on a self-propelled vehicle

**relative** means a person related to **you** by blood. marriage or adoption who is a household resident of **yours**. This includes a ward or foster child.

**replacement services expenses** means reasonable expenses incurred in obtaining ordinary and necessary household services to replace those **you** would normally perform without pay.

**you, your,** or **yours** means the person shown on the Declarations of this policy. and **your** spouse if he or she lives in **your** household.

**we, us,** or **our** means Prudential Property and Casualty Insurance Company or any of its subsidiaries as shown on **your** Declarations.

**work loss** means gross income **you** would have earned at **your** job if **you** had not been injured.

## POLICY PERIOD; TERRITORY

This Part covers only accidents which occur during the policy period

1. in the State of Florida. or

2. to **you** or a relative in or on the insured **motor vehicle** outside the state of Florida but within the United States of America. its territories or possessions. or Puerto Rico. or Canada. or

3. to **you** while in or on a **motor vehicle** which a relative owns and insures. in accordance with the Florida Motor Vehicle No-Fault Law outside the state of Florida but within the United States of America. its territories or possessions. or Puerto Rico. or Canada

## CONDITIONS

1. **NOTICE.** If any persons insured under this policy have a car accident or loss, they or someone acting for them must promptly contact **us**. The quickest way is to call **us** at the telephone number shown in your Claims Service Folder. **We** will want to know how the accident or loss happened, names and addresses of people involved, witnesses and any injury or damage.

   If any injured person or his legal representatives begins legal action to recover damages for **bodily injury** against a third party, any notices or legal papers must be sent to **us** immediately

2. **ACTION AGAINST THE COMPANY.** No one insured under this Part may take any legal action against **us** unless all obligations under this Policy have been fulfilled. No legal action may be taken against **us** until 30 days after **we** receive notice of the accident and proof of claim.

3. **PROOF OF CLAIM; MEDICAL REPORTS AND EXAMINATIONS.**

   Persons making a claim under this Part must

   a. Inform **us** of the details of the accident or loss in writing if requested.

   b. Cooperate with **us** in investigating, settling, or defending any loss or suit. Cooperation includes attending hearings and trials, helping in suing others who are responsible for the accident, giving evidence, and helping **us** get witnesses to attend the trial

   c. Immediately send **us** any notices or legal papers received by them or their legal representatives in connection with the accident or loss

   d. Be examined at our expense by **our** doctors for their injuries as often as **we** reasonably require. If a person refuses to submit to an exam **we** will not be liable for further benefits under this Part.

   e. Give **us** written permission to obtain their medical and other relevant records

   f. Give **us** written proof of their loss in a form containing any information **we** request

   g. Give **us** a statement under oath within 30 days of **our** request.

   h. Report a hit and run accident or loss to the police promptly. **You** must report this accident or loss to **us** within 60 days.

4. **PAYMENT OF CLAIM WITHHELD.**

   If a person making a claim is charged with committing a felony, **we** will withhold benefits until the charge is dismissed, the person is acquitted or the prosecutor makes a formal entry on the record that the case will not be prosecuted.

5. **RIGHTS OF RECOVERY.**

   When **we** pay for a loss under this part **your** rights of recovery from a responsible commercial **motor vehicle** third party become **ours** up to the amount **we** have paid. Anyone insured under this part must:

   1. not interfere with **our** rights to recover; and

   2. do whatever is necessary to help **us** get **our** money back.

6. **SPECIAL PROVISION FOR RENTED OR LEASED VEHICLES.**

   If a person is injured while in or on or hit by a **motor vehicle** rented or leased which does not specify otherwise in bold type on the face of the lease or rental agreement, coverage under the lessor's policy is primary.

## PART B

## FLORIDA COORDINATION OF PERSONAL INJURY PROTECTION COVERAGE

If **you** select an option under this Part, the amount **we** agree to pay will be reduced by the amount of all other benefits payable. The reduced amount applies to the **Named Insured** or the **Named Insured** and each **relative** depending on the option selected. If **you** have one of the following options, the option will be shown on **your** Declarations

Option #W - Applicable to the **Named Insured** only

8

Option #X - Applicable to the **Named** .. **sured** and each **relative**.

All benefits payable to active or retired military personnel shall be deducted from those benefits payable by **us** under Part A. If such benefits are not available at the time of the loss. **we** have the right to adjust and charge the proper premium.

Option #Y - Applicable to the **Named Insured** Only.

Option #Z - Applicable to the **Named Insured** and each **relative**.

All benefits payable to active or retired military personnel shall be deducted from those benefits payable by us under Part A coverages. But, coverage under Work Loss Benefits Part A is excluded. If such benefits are not available at the time of the loss. **we** have the right to adjust and charge the proper premium.

**PART C**

**MODIFICATION OF POLICY COVERAGES**

Any Medical Payments insurance and Uninsured Motorists insurance are excess over any Personal Injury Protection benefits paid. payable or available under this policy. But. Medical Payments and Uninsured Motorists do not pay the amount of any Personal Injury Protection deductible selected.

Also. Medical Payments insurance pays the 20% of **medical expenses** not covered under Part A Personal Injury Protection. But. Medical Payments does not pay the amount of any Personal Injury Protection deductible selected.

**PART D**

**PROVISIONAL PREMIUM**

If there is an adverse judicial finding as to the constitutionality of any parts of the Florida Motor Vehicle No-Fault Law providing for exemptions of persons from tort liability. the premium stated in the Declarations for any Liability and Uninsured Motorists insurance is subject to adjustment. If this policy is a renewal policy. such adjustment includes the amount of any return premium previously credited or refunded to **you** under a previous policy.

If the final pre.. um adjusted exceeds the premium shown on the Declarations. **you** must pay to **us** the excess as well as the amount of any return premium previously credited or refunded.

# PART 7 ADDITIONAL PERSONAL INJURY PROTECTION COVERAGE PAC 7/FL *(Ed. 4/87)*

If **you** have paid for this coverage (see the Declarations). **we** will pay additional Personal Injury Protection benefits to **you** or each **relative** injured in an accident.

All provisions and exclusions of your Personal Injury Protection Coverage (PAC 6) apply to this coverage except as follows.

Depending on the Option you choose. the amounts shown under **APIP Aggregate Limit After PIP Benefits Payments** applies after the $10,000 amount has been paid in accordance with the Limits of Liability section of the Personal Injury Protection Coverage (PAC 6). The Option you choose will be shown on your Declarations.

| Option | PIP Aggregate Limit | APIP Aggregate Limit After PIP Benefits Payments | Total Aggregate Limit PIP and APIP Limit |
|---|---|---|---|
| Option 2 | $10,000 | $15,000 | $25,000 |
| Option 3 | $10,000 | $40,000 | $50,000 |
| Option 4 | $10,000 | $65,000 | $75,000 |

Under these options. we will pay 100% of medical expenses of the **APIP Aggregate Limit After PIP Benefits Payments**.

Under Conditions. item 5 **Rights of Recovery** is replaced by the following for **APIP Aggregate Limit after PIP Benefits Payments**.

9

## TRUST AGREEMENT

When **we** pay for a loss under this part, **we** are entitled to the amount **we** paid and, when allowed, the related collection expenses from the proceeds of any settlement or judgment **you** recover from the responsible party.

At **our** request, **you** must take any necessary action to recover the payments **we** have made. **We** will select the attorney and pay all related costs and fees.

## RIGHTS OF RECOVERY

When **we** pay for a loss under this part, **your** rights of recovery from anyone else become **ours** up to the amount **we** have paid. Anyone insured under this part must

1. not interfere with **our** rights to recover; and

2. do whatever is necessary to help **us** get **our** money back.

10

**PAC 203** (Ed. 4/86)

Non-Owned Car Policy Coverage

---

If you have this coverage (see the Declarations), the following changes are made.

Under the *"What Cars Are Covered"* provision of Parts 1, 2, 3, 4 and 5, the first sentence of the section titled *"Other Non-Owned Cars"* is replaced by the following:

**We** will cover a non-owned car while it is being driven by **you.**

Under the *"Who Is Insured"* provision of Parts 1, 2, 4 and 5, the first sentence of the section titled *"In A Non-Owned Car"* is replaced by the following:

**You,** a resident relative and other people are insured while using a non-owned car driven by **you.**

Under the *"Losses We Will Not Pay For"* provision of Parts 1, 2, 3, 4 and 5, the section titled *"Regularly Used Non-Owned Car"* does not apply to **you.**

Under the *"Losses We Will Not Pay For"* provision of Part 1, the section titled *"Business Or Job"* is replaced by the following:

**We** will not pay for bodily injury or property damage caused by anyone (other than **you**) using a non-owned car in any business or job.

Under the *"Losses We Will Not Pay For"* provision of Parts 2, 4 and 5, the section titled *"Business Or Job"* is replaced by the following:

**We** will not pay for bodily injury suffered by anyone (other than **you**), using a non-owned car in any business or job.

---

**PAC 4020** (Ed. 8/97)

Changes to General Provisions

---

The paragraph under *"THE POLICY IS A CONTRACT"* is deleted and replaced by the following:

This policy is a contract between **you** and **us.** When **we** refer to the policy, **we** mean this Booklet, your most recent Declarations and your Endorsements.

The last sentence under *"Additional Duties If Your Car Is Damaged Or Stolen"* is deleted and replaced by the following:

This is not a complete and valid contract without a Declarations properly filled out.