IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 00-CIV-6061-FERGUSON/SNOW
(Consolidated)

DR. PAUL ZIDEL, and all others similarly )
  Situated Plaintiffs,                    )
                                          )
v.                                        )
                                          )
ALLSTATE INSURANCE COMPANY,               )
Defendant / Third-Party Plaintiff,        )
                                          )
v.                                        )
                                          )
COMMUNITY CARE NETWORK, INC.,             )
d/b/a CCN,                                )
Third-Party Defendant.                    )
_____)



ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY,
DEERBROOK INSURANCE COMPANY, FIDELITY AND CASUALTY COMPANY
OF NEW YORK, AND CONTINENTAL INSURANCE COMPANY'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS'
RESPECTIVE RICO CLAIMS

In support of their Motion to Dismiss the Plaintiffs' respective RICO claims brought against them, Defendants, Allstate Insurance Company (Case No. 00-6061-CIV-FERGUSON), Allstate Indemnity Company (Case No. 00-7163-CIV-FERGUSON), Deerbrook Insurance Company (Case No. 01-6777-CIV-FERGUSON), Fidelity and Casualty Company of New York (Case No. 01-6779-CIV-FERGUSON) and Continental Insurance Company (Case No. 01-6779-CIV-FERGUSON) (collectively "Defendants"), by and through their undersigned counsel, respectfully state as follows:

I.  There Has Been No Waiver Of The Reverse Preemption Argument

Defendants' Motion to Dismiss states that because of the operation of reverse preemption, Plaintiffs have failed to state a claim. Failure to state a claim is a defense that is



never waived.[1]  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  Not only is it never waived, but the argument for waiver advanced by the Plaintiffs is utterly without merit.

Plaintiffs begin with the presumptive premise that preemption is an affirmative defense that must be raised or it is waived, as opposed to a legal defense which forms the basis for a Rule 12(b)(6) motion that can **never** be waived.  Plaintiffs, however, do not point to a single case where reverse preemption, let alone reverse preemption based on the McCarran-Ferguson Act, was classified in this way.  While ERISA preemption has generally been found to be an affirmative defense in Florida, "[f]ederal preemption is not, by its nature, an affirmative defense to a state law claim."  Saks v. Franklin Covey Co., 117 F. Supp. 2d 318, 330 (S.D.N.Y. 2000).

Furthermore, even if this Court were to decide that the reverse preemption issue in this case is an affirmative defense, Defendants' failure to raise it in their respective answers and the Allstate defendants' failure to include the issue in their original motions to dismiss cannot support a finding of waiver.  "The decision to allow a party to use an affirmative defense that was not pled in the answer is soundly within the district court's discretion."  Stamm v. Provident Life and Accident Ins. Co., 1998 WL 596700, *4 (N.D.Ill., Sept. 2, 1998).  Indeed, "[b]ecause waiver of defense is a harsh sanction, it is not automatically applied whenever an affirmative defense is not raised in the answer."  Duncan v. Consolidated Freightways Corp. of Delaware,

---

[1]  The defense of failure to state a claim is ordinarily raised by a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  The fact that dispositive Florida federal law came into being after the Allstate defendants' initial motions to dismiss had been denied without prejudice and after all Defendants had filed answers should not prevent the filing of this Rule 12(b)(6) motion. That being said, and as Plaintiffs concede, this Motion can be treated as a Fed. R. Civ. P. Rule 12(c) motion for judgment on the pleadings.  It makes little difference since "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Id.

1995 WL 530652, *5 (N.D. Ill., Sept. 7, 1995). Thus, if "a party can show that its opponent would not be prejudiced by the Court's hearing evidence on the issue at trial, the Court should permit the party to amend its pleadings," Kennan v. Dow Chemical Company, 717 F. Supp. 799, 808 (M.D. Fla. 1989), even as late as summary judgment proceedings conducted shortly before trial.[2]

Here, there is no possibility of prejudice. First, the parties are only recently at issue and have not even touched discovery on the merits, having merely begun to scratch the surface of class discovery. Second, and more importantly, the courts that have looked at this issue have by and large found that there are no factual issues relevant to the issue of preemption and that any claim to the contrary borders on the frivolous. This position was strongly stated in Kennan:

> The Court finds that the availability of the preemption defense in this case is a question of law, and that there are no factual issues on which plaintiff could conduct discovery that would alter the Court's finding of preemption. Plaintiff has had adequate opportunity to conduct legal research, file legal memoranda, and present the Court with oral argument on the issue. The Court finds, therefore, that the defendants have not waived the preemption defense and have properly asserted the defense on this motion [for summary judgment]. The Court will, therefore, on this date file a pretrial order recognizing the defendants' right to assert the preemption defense. It is, therefore, unnecessary for the defendants to file amended answers.

---

[2] This explains why none of the cases cited by Plaintiffs on the waiver issue involve preemption claims raised at the trial level, period. In Jordan v. Clayton Brokerage Co. of St. Louis, Inc., 975 F.2d 539 (8th Cir. 1992), preemption was raised for the first time in plaintiffs' petition for a writ of certiorari to the United States Supreme Court. It had not been raised in the District Court or the United States Courts of Appeals for the Eighth Circuit. In Ventura v. Titan Sports, Inc., 65 F.3d 725 (8th Cir. 1995), the issue of preemption was not timely raised on appeal. Finally, in Alabama v. Shalala, 124 F. Supp. 2d 1250 (M.D. Ala. 2000), the issue was not raised in the original administrative proceeding before the Departmental Appeals Board prior to being raised in the reviewing court.

3

Id. at 810.³ See also Saks, *supra*, at 330 ("Plaintiff's contention that she would be entitled to discovery on the issue of presumption borders on the frivolous. This is not a fact-intensive issue, but a point of law that has been settled ... for many years. ... Were it necessary, however, this Court would, in an exercise of discretion, permit the defendants to amend their answer to assert ERISA preemption. Because the defense raises a pure question of law, it would neither work any prejudice to plaintiff nor delay dismissal of the action."). Cf. Stamms, *supra*, at *4 ("plaintiffs do not argue that further discovery would be needed as a result of the preemption issue. Thus, the old adage 'no harm, no foul' applies and the Court will not deem Provident to have waived the preemption issue.").

II.   The McCarran-Ferguson Act Bars Plaintiffs' RICO Claims

Ironically, in the same memorandum where they accuse the Defendants of attempting to mislead this Court, Plaintiffs state that "the Managed Care case provides no support for reverse preemption." (Plaintiffs' Memo., pp. 4-5). Plaintiffs continue by asserting that the case at bar "presents an almost identical factual scenario as that which occurred in" Humana, Inc. v. Forsyth, 525 U.S. 299 (1999). (Plaintiffs' Memo, p. 5). Apparently Plaintiffs have completely disregarded the discussion of Humana in Managed Care where the Southern District distinguished Humana based on the fact that Nevada specifically authorizes "private actions for victims of insurance fraud and provides remedies exceeding those available under RICO's civil provisions." Id. at 307, 310-14. Thus, the factual scenarios in the case at bar and in Humana, at least with regard to the dispositive facts regarding the differing laws of the states of Nevada and Florida, are totally inapposite.

---

³   If this Court finds that reverse preemption is an affirmative defense that should be raised in an answer, the Defendants seek leave to amend their respective Answers to add affirmative defenses based on reverse preemption.

Plaintiffs further contend that Managed Care provides no basis for the application of the McCarran-Ferguson Act in this case. They also contend that the Defendants improperly argue that there is no private right of action for violations of Section 627.736, Florida Statutes, and that Managed Care provides no basis for that assertion. (Plaintiffs' Memo., p. 5). These are multiple "straw man" arguments that the Defendants have never made. First, Plaintiffs are correct that Managed Care does not provide a direct basis for the application of McCarran-Ferguson here. Instead, as Defendants exhaustively set forth in their supporting Memorandum, Managed Care supports the proposition that RICO claims will be reverse preempted by application of the McCarran-Ferguson Act in cases where state laws do not provide private rights of action for insurance fraud. Second, Defendants have never contended that there is no private right of action for violations of Section 627.736, Florida Statutes.[4] Defendants have only contended, correctly, that there is no private right of action for medical providers under subsection (10) of Section 627.736, Florida Statutes. It is the lack of a private right of action under subsection (10) combined with the holding in Managed Care, which results in the bar of Plaintiff's respective RICO claims pursuant to the McCarran-Ferguson Act.

Finally, Plaintiffs attack the lack of a private right of action for medical providers under subsection (10), as decided by the Southern District in May v. Allstate Ins. Co., Case No. 00-06269-Civ-Dimitrouleas (S.D. Fla. April 4, 2000), on two fronts. First, they allude to "at least 26 count court decisions" in which healthcare providers prevailed on summary judgment and the

---

[4] Accordingly, Plaintiffs' reference to hundreds of cases in which claims were brought for violations of Section 627.736 and specific citation to Allstate Ins. Co. v. Schall, 778 So. 2d 317 (Fla. 4th DCA 2000), Colonial Penn Ins. Co. v. Magnetic Imaging Systems I, Ltd., 694 So. 2d 852 (Fla. 3rd DCA 1997), and Allstate Indemnity Co. v. De La Rosa, 800 So. 2d 245 (Fla. 3rd DCA 2001), are completely and utterly irrelevant to this motion. None of these cases has anything to do with private rights of action under subsection (10).

respective courts found that the utilization of PPO rates without complying with Section 627.736(10), Florida Statutes, is invalid and illegal. Unfortunately for Plaintiffs, this general summarization and the chart attached to Plaintiffs' Memo. as Exhibit 1, which gives the names and case numbers of 26 cases, are not helpful to these proceedings. There is no way of knowing whether the issue of the existence of a private right of action was raised in any of the cases. If it was not raised, then the cases are irrelevant to this discussion. Given the paucity of information provided, this Court should disregard any reference to such cases.

Second, Plaintiffs claim that May does not apply to them because "[a]s addressed on numerous occasions in these proceedings, the Class Plaintiffs have asserted claims as the assignees of rights from their insureds." (Plaintiffs' Memo., p. 7). The Defendants, prior to filing both the Motion to Dismiss and this Reply, have scoured the four complaints at issue. Nowhere in those four complaints, including the captions and exhibits, is there any allegation that even hints at the fact that these Class Plaintiffs are suing as assignees of rights from their insureds. In fact, the purported class definitions speak for themselves:

> all Florida healthcare providers whose bills for medical services rendered to patients covered by CNA's automobile insurance policies were discounted by CNA based upon a purported Beech Street Preferred Provider Organization reduction. (Ultra Open MRI Corp. v. Fidelity & Cas. Co. of NY and Continental Ins. Co.)
>
> all Florida healthcare providers whose bills for medical services rendered to patients covered by DEERBROOK's automobile insurance policies were discounted by DEERBROOK based upon a purported Beech Street Preferred Provider Organization reduction. (Ultra Open MRI Corp. v. Deerbrook Ins. Co.)
>
> all Florida healthcare providers whose bills for medical services rendered to patients covered by Allstate automobile insurance policies were discounted by Allstate allegedly pursuant to a Beech Street Preferred Provider Agreement dated April 1999 (or that defines "Eligible Person" and "Payors" as set out above) and

6

> whose patients began treatment with said healthcare providers prior to Allstate's agreement with Beech Street and/or ADP for access to the Beech Street preferred provider discounts. (Browner v. Allstate Indemnity Co., et al.)
>
> all Florida healthcare providers whose bills for medical services rendered to patients covered by ALLSTATE's personal injury protection automobile insurance policies were discounted by ALLSTATE based upon a purported CCN reduction pursuant to a signed CCN Agreement. (Zidel v. Allstate Ins. Co., et al.)

Accordingly, Plaintiffs' claim that the Defendants' "continued assertion that the Class Plaintiffs are pursuing these claims as anything other than assignees of rights from insureds is baseless" appears to be unsupported bluster. (Plaintiffs' Memo., p. 7). This Court must take Plaintiffs' allegations as pled for purposes of this Motion to Dismiss. The allegations clearly state that these claims are being brought by healthcare providers, and, therefore, through the interplay of May, Managed Care, and the McCarran-Ferguson Act, the healthcare provider Plaintiffs' respective RICO claims are barred.

Plaintiffs' stance regarding the May case raises an additional, and perhaps larger, issue. Plaintiffs assume, without analysis or support, that suing as assignees of the PIP claimants they treated somehow allows them to bring these RICO claims. In point of fact, however, if Plaintiffs are suing solely in the capacity of PIP claimants, their claims against the Defendants might be subject to dismissal for failure to state a claim based upon the Plaintiffs' newly asserted status and standing. A review of Plaintiffs' complaints discloses that they all seek to assert claims as providers, not claimants. For example, their claims for unjust enrichment (Count I of Ultra Open's Complaints; Count III of Browner's Complaint; Count II of Zidel's Second Amended Complaint) assert that Defendants were unjustly enriched by obtaining benefits from the providers in the form of reduced medical bill payments without paying consideration to the providers for the right to use such rates. This is not a claim possessed by a PIP claimant. Their

breach of contract claims (Count II of Ultra Open's Complaints; Count IX of Browner's Complaint; Count III of Zidel's Second Amended Complaint) and declaratory judgment claims (Count IV of Ultra Open's Complaints; Count VII of Browner's Complaint; Count VI of Zidel's Second Amended Complaint) are brought, not as assignees of the claimants, but under a third party beneficiary theory. Their RICO claims (Count III of Ultra Open's Complaints; Count V of Browner's Complaint; Count IV of Zidel's Second Amended Complaint) purport to allege a scheme, not to defraud PIP claimants, but to defraud health care providers. And their claims asserted under Fla. Stat., Section 627.736(10) (Count V of Ultra Open's Complaints; Count VIII of Browner's Complaint; Count VII of Zidel's Second Amended Complaint) are entirely alleged in their own behalf, as providers, not pursuant to any assignment. Plaintiffs cannot have it both ways; they cannot assert providers' claims as assignees of PIP claimants in order to gain standing they do not otherwise have to assert such claims.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by U.S. Mail to counsel on the attached service list this 24TH day of April, 2002.

_/s/ David Shelton_

| | |
|---|---|
| PETER J. VALETA | DAVID B. SHELTON |
| Florida Bar No. 327557 | Florida Bar No. 0710539 |
| ROSS & HARDIES | Rumberger, Kirk & Caldwell |
| 150 North Michigan Ave., Suite 2500 | P.O. Box 1873 |
| Chicago, Illinois 60601 | Orlando, Florida 32802 |
| Telephone: (312) 750-3619 | Telephone: (407) 839-4511 |
| Telecopier: (312) 750-8600 | Telecopier: (407) 841-2133 |
| Attorneys for Allstate, Allstate Indemnity, Fidelity and Casualty, Continental, Deerbrook | Attorneys for Allstate, , Allstate Indemnity, Fidelity and Casualty, Continental, Deerbrook |

6506373

## SERVICE LIST

**Co-Lead Counsel for Plaintiffs**

Jan Douglas Atlas, Esquire
Eric Lee, Esquire
Robin Corwin Campbell, Esquire
ATLAS PEARLMAN, P.A.
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, FL 33301

Arthur S. Gold, Esquire
GOLD & COULSON
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603

Andrew Garcia, Esquire
Carlin Phillips, Esquire
PHILLIPS & GARCIA
13 Ventura Drive
North Dartmouth, MA 02747

Larry Kopelman, Esquire
Douglas Blankman, Esquire
KOPELMAN & BLANKMAN, P.A
Bank of America Tower
One Financial Plaza, Suite 1611
Fort Lauderdale, FL 33394

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esquire
230 East Davis Boulevard, Suite 200
Tampa, FL 33606

Richard Bokor, Esquire
RICHARD BOKOR, P.A.
230 East Davis Boulevard
Tampa, FL 33606

Casey Fundaro, Esquire
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407

**Counsel for Beech Street and ADP**

John M. Quaranta, Esquire
TEW, CARDENAS, et al.
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336

**Counsel for Progressive**

Francis Anania, Esquire
Donald A. Blackwell, Esquire
ANANIA, BANDKLAYDER, et al.
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131

**Counsel for CCN**

William W. Deem, Esquire
William E. Adams, Esquire
MCGUIRE WOODS, LLP
3300 Bank of America Center
50 N. Laura Street
Jacksonville, FL 32202-4099

**Counsel for Nationwide**

Katherine C. Lake, Esquire
FOWLER, WHITE, et al.
Post Office Box 1438
Tampa, FL 33601

James C. Haggerty, Esquire
SWARTZ CAMPBELL DETWEILER
1601 Market Street, 34th Floor
Philadelphia, PA 19103-2316

**Counsel for Florida Farm Bureau**

Robert K. Levenson, Esquire
Greg Baldwin, Esquire
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3000
Miami, FL 33131

**Counsel for Liberty Mutual**

Mark Shapiro, Esquire
AKERMAN, SENTERFITT et al.
SunTrust International Center, 28th Floor
One Southeast Third Avenue
Miami, FL 33131

**Counsel for Hartford, Metropolitan, Integon**

Marcy Levine Aldrich, Esquire
AKERMAN, SENTERFITT et al.
SunTrust International Center, 28th Floor
One Southeast Third Avenue
Miami, FL 33131

**Counsel for Metropolitan**

Jeffrey P. Lennard, Esquire
SONNENSCHEIN, NATH & ROSENTHAL
8000 Sears Tower
Chicago, IL 60606

**Counsel for Hartford**

Howard J. Roin, Esquire
MAYER, BROWN & PLATT
190 South LaSalle Street
Chicago, IL 60603-3441

**Counsel for Superior**

Alan J. Nisberg, Esquire
BUTLER BURNETT PAPPAS
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607

**Counsel for Prudential**

John D. Aldock, Esquire
Jeffrey M. Klein, Esquire
Michael Isenman, Esquire
SHEA & GARDNER
1800 Massachusetts Avenue, N.W.
Washington, DC 20036

Kathy J. Maus, Esquire
Lauren D. Levy, Esquire
BUTLER BURNETTE PAPPAS
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308-3469

**Counsel for American International**

Dale L. Friedman, Esquire
Brian P. Knight, Esquire
CONROY, SIMBERG, GANNON, KREVANS & ABEL, P.A.
3440 Hollywood Blvd., 2nd Floor
Hollywood, FL 33021