UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

| | |
|---|---|
| DR. PAUL ZIDEL, on behalf of himself and other similarly situated, §§§§<br><br>    Plaintiff, §<br>v. §<br>ALLSTATE INSURANCE COMPANY, §<br>    Defendant/Third-Party Plaintiff, §<br>v. §<br>COMMUNITY CARE NETWORK, INC., §<br>doing business as CCN, §<br>    Third-Party Defendant. § | |
| SALVATORE D. LARUSSO, D.C., §<br>d/b/a Family Chiropractic Center, §<br>on behalf of himself and others similarly §<br>situated §<br>    Plaintiff, §<br>v. §<br>LIBERTY MUTUAL INSURANCE §<br>COMPANY and COMMUNITY §<br>CARE NETWORK, INC., §<br>    Defendants. § | 00-07692 |

**Notice of Filing Declaration in Support of
CCN's Motion to Compel Arbitration**

Defendant, CCN Managed Care, Inc., files the attached Declaration of Susan Deal

in support of its motion to compel arbitration and to stay or dismiss litigation (docket entry 698).



MCGUIRE WOODS LLP

By: _____
William W. Deem
Florida Bar No. 0512834
50 North Laura Street, Suite 3300
Jacksonville, FL 32202
Telephone:   (904) 798-3200
Facsimile:    (904) 798-3207
E-Mail:        wdeem@mcguirewoods.com

Attorneys For CCN Managed Care, Inc.

### Certificate of Service

I certify that a copy of the foregoing was furnished to the counsel listed on the attached service list by U.S. Mail on this __12__ day of June, 2002.

_____
Attorney

\\COM\143387.1

**MASTER SERVICE LIST**
(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Amended 5/6/02)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
elee@leeamlaw.com
350 N.W. 12th Avenue, Suite 150
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 (Facsimile)

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 (Facsimile)

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphilips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 (Facsimile)

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 (Facsimile)

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786 (Facsimile)

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 (Facsimile)

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 (Facsimile)

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, FL 32802-1873
(407) 872-7300
(407) 841-2133 (Facsimile)

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 (Facsimile)

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, FL 33131-4336
(305) 539-2495
(305) 536-1116 (Facsimile)

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, FL 33131
(305) 373-4900
(305) 373-6914 (Facsimile)

**Counsel for CCN**

MCGUIRE WOODS LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 N. Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 (Facsimile)

**Counsel for Nationwide**

FOWLER, WHITE
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 (Facsimile)

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street, 34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 (Facsimile)

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 (Facsimile)

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 (Facsimile)

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 (Facsimile)

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934 (Facsimile)

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 (Facsimile)

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 (Facsimile)

SHEA & GARDNER
John D. Aldock, Esq.
jaldock@sheagardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Avenue, N.W.
Washington, DC 20036
(202) 828-2000
(202) 828-2195 (Facsimile)

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Blvd., 2nd Floor
Holly wood, FL 33021
(954) 961-1400
(954) 967-8577 (Facsimile)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

| | | |
|---|---|---|
| DR. PAUL ZIDEL, on behalf of himself and other similarly situated, <br><br> Plaintiff, <br> v. <br><br> ALLSTATE INSURANCE COMPANY, <br><br> Defendant/Third-Party Plaintiff, <br> v. <br><br> COMMUNITY CARE NETWORK, INC., doing business as CCN, <br><br> Third-Party Defendant. | § § § § § § § § § § § § § § § § § § § | |
| SALVATORE D. LARUSSO, D.C., d/b/a Family Chiropractic Center, on behalf of himself and others similarly situated <br><br> Plaintiff, <br> v. <br><br> LIBERTY MUTUAL INSURANCE COMPANY and COMMUNITY CARE NETWORK, INC., <br><br> Defendants. | § § § § § § § § § § § § § § § § | 00-07692 |

**Declaration of Susan Deal**

I, Susan Deal, hereby declare and state as follows:

1.      My name is Susan Deal. I am over the age of eighteen and am fully competent to make this declaration. I have personal knowledge of all facts stated herein and state that they are true and correct.

2. I am a Network Specialist for CCN Managed Care, Inc. ("CCN").

3. CCN develops and markets healthcare service provider networks. In so doing, CCN executes written agreements known as "Provider Agreements" with healthcare professionals.

4. CCN's files contain a Provider Agreement executed by Doctor Salvatore Larusso under date of February 8, 2001. A true and correct copy of that agreement is attached as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 10, 2002.

## CCN MANAGED CARE, INC. PROFESSIONAL CARE PROVIDER AGREEMENT

This PROFESSIONAL CARE PROVIDER AGREEMENT ("Agreement") is made and entered into by and between CCN Managed Care, Inc. d.b.a. CCN, and ___Salvatore D. LaRusso Jr___, a _____ (hereinafter referred to as "Provider"):

### RECITALS

WHEREAS, CCN intends to execute contracts with Payor organizations which offer a preferred provider or exclusive provider health care coverage plan to Beneficiaries or Claimants; and

WHEREAS, Provider desires to make their services available to Beneficiaries or Claimants of Payors with whom CCN contracts; and

WHEREAS, CCN and Provider share the common goals of establishing a health care delivery system committed to the advancement of quality patient care, and developing innovative approaches to delivery of quality medical services in an efficient and cost-effective manner;

NOW THEREFORE, in consideration of the mutual covenants, terms and conditions herein contained, it is agreed by and between the parties hereto as follows:

### 1. DEFINITIONS

1.01 "**Beneficiary**" or "**Claimant**" is a person as defined in the applicable Insuring Agreement and who may be entitled to Health Care Services or Benefits.

1.02 "**CCN-Affiliated Health Plan**" is the health care plan offered, sponsored, administered or insured by Payor to provide coverage for Health Care Services or Benefits pursuant to the terms and conditions of this Agreement.

1.03 "**Claims Administrator**" is the Payor or the organization with the Payor has contracted to administer and process claims for the CCN-Affiliated Health Plan.

1.04 "**Health Care Services or Benefits**" shall be any and all covered medical services or benefits for such services rendered or provided to a Beneficiary or Claimant under an Insuring Agreement.

1.05 "**Insuring Agreement**" is the contract, certificate, policy, plan document, or any other legally enforceable instrument issued or sponsored by a Payor under which a Beneficiary or Claimant may be entitled to or receive Health Care Services or Benefits.

1.06 "**Payor**" is an employer, insurance carrier, claims administrator, health care service plan, trust, nonprofit facility service plan, any governmental unit or any other entity which has an obligation to provide Health Care Services or Benefits to a Beneficiary or Claimant.

1.07 "**Payor Agreement**" is an instrument between a Payor and CCN or its authorized representative which provides for CCN providers, including Provider pursuant to this Agreement, to render Health Care Services or Benefits at Reimbursement Amounts determined and established by CCN and such Payor.

1.08 "**Provider**" means the Provider who is duly licensed by the State of Florida to provide Health Care Services or Benefits.

1.09 "Reimbursement Amounts" are the amounts payable to Provider for Health Care Services or Benefits rendered or provided to a Beneficiary or Claimant pursuant to Payor Agreements between CCN and the respective Payors. Such Reimbursement Amounts shall be established by CCN and Payors as specified in Exhibit A attached hereto and incorporated herein or as established by any state regulatory agency, whichever is less. Providers shall not individually or collectively with other providers determine or establish such Reimbursement Amounts.

1.10 "Utilization Review" means the function performed by organization(s) or entity(ies) selected by Payors to review and recommend to Payors whether Health Care Services or Benefits provided, or to be provided, are Medically Necessary.

## 2. HEALTH CARE SERVICES OR BENEFITS

2.01 Provider hereby agrees to provide Health Care Services or Benefits to Beneficiaries or Claimants as set forth in Insuring Agreements, at the Reimbursement Amounts determined and established by CCN through Payor Agreements with Payors, which Payor Agreements are incorporated herein by reference. Such Reimbursement Amounts are set forth in Exhibit A attached hereto and incorporated herein.

2.02 Provider agrees to accept the Reimbursement Amounts in Exhibit A as payment in full for Health Care Services or Benefits provided, to Beneficiaries or Claimants. Provider shall look solely to the Payor for payment of any and all compensation due for Health Care Services or Benefits and shall not bill or otherwise collect or attempt to collect from Beneficiaries or Claimants any charges except and unless required or permitted to do so by the applicable Insuring Agreement. The foregoing restriction shall not apply to deductibles, co-payments or co-insurance which may be collected by Provider in accordance with the provisions of the applicable Insuring Agreement, nor to services or benefits rendered to Beneficiaries or Claimants which are not covered by the applicable Insuring Agreement. Provider expressly covenants and agrees that CCN shall not be responsible or liable for, nor does CCN guarantee any payments to Provider for, any services rendered by Provider to Beneficiary or Claimant.

2.03 Payor Agreements shall require Payors to make payments due from Payor to Provider within thirty (30) days of receipt by Payor of complete billings having sufficient information to reprice and/or adjudicate claim unless, within this thirty (30) day period, Provider is given written notice of Payor's inability to pay the claim because it is not complete, or there are issues related to coordination of benefits, subrogation, medical necessity or similar review. If a Payor fails to make timely payments, CCN shall review the applicable Payor Agreement and take appropriate action as specified in the CCN Administrative Manual for Participating Providers.

## 3. TERM; TERMINATION

3.01 Following the effective date set forth herein, this Agreement shall be continued for consecutive annual terms thereafter, unless otherwise terminated.

3.02 This Agreement may be terminated by either party upon ninety (90) days written notice to the other party.

3.03 Provider agrees that if the Agreement is terminated, Provider shall exercise best efforts to notify all Beneficiaries or Claimants who are under Provider's care or seek services from Provider that Provider is no longer a CCN preferred provider. For those Beneficiaries or Claimants under Provider's care who so desire, Provider shall transfer the Beneficiaries or Claimants to other appropriate CCN Provider(s).

3.04 Following termination of this Agreement, CCN shall notify Beneficiaries or Claimants of such termination through the regular periodic updating of CCN Provider listings for Beneficiaries or Claimants.

3.05    Notwithstanding Section 3.02, CCN may terminate or suspend this Agreement, at CCN's option, immediately upon the occurrence of any of the following events:

   A) Provider fails to meet or fulfill CCN credentialing criteria;

   B) Provider has made a material misrepresentation to CCN;

   C) Provider's DEA certificate is revoked, restricted, or suspended;

   D) Provider commits any act or engages in any conduct for which Provider's license may be revoked or suspended by the licensing authorities of the state in which the Provider is located (whether or not such licensing authorities revoke or suspend such license);

   E) Whenever Provider is prohibited from participation in any federal or state healthcare entitlement program;

   F) Provider's performance in providing Health Care Services or Benefits is unsatisfactory for reasons including but not limited to Provider disability and Provider inability to achieve CCN quality assurance standards. CCN shall make such determinations reasonably and in good faith. In such instances, Provider shall have the right to appeal CCN's determination;

   G) Provider fails to maintain insurance coverage as required by CCN hereunder;

   H) Provider fraudulently submits a claim for services; or

   I) Provider ceases to maintain unrestricted active or courtesy admitting privileges at participating hospitals as may be required by CCN.

3.06    Provider shall notify CCN immediately upon the occurrence of any circumstances, including those set forth above, which would render this Agreement terminable by CCN.

3.07    Termination to this Agreement shall not affect any rights or obligations hereunder which shall have previously accrued, or shall thereafter arise with respect to any occurrence prior to termination, and such rights and obligations shall continue to be governed by the terms of this Agreement.

3.08    Either party to this Agreement has the right to terminate upon at least thirty (30) days prior written notice of such termination to the other party if the party to whom such notice is given materially breaches any provision of this Agreement. The party claiming the right to terminate shall set forth in the notice of termination the facts underlying its claims of breach and cite the relevant sections of this Agreement that are claimed to have been breached. Remedy of such breach to the satisfaction of the other party within thirty (30) days of the receipt of such notice shall revive this Agreement for the remaining portion of its then-current term, subject to any other rights of termination contained in this Agreement.

## 4. AUTHORIZATION TO CONTRACT

4.01    Provider authorizes CCN to act on its behalf to contract for the provision of Health Care Services or Benefits, at Reimbursement Amounts as set forth on Exhibit A.

4.02    Provider further authorizes CCN or other Claims Administrator, to coordinate and transmit billings to Payors for payment, on behalf of Provider.

## 5. COVENANTS OF PROVIDER

Provider covenants and agrees to the following:

5.01 To make available and render as appropriate Health Care Services or Benefits to Beneficiaries or Claimants which Provider is qualified by law to provide, which are medically necessary and consistent with the prevailing standards of quality of care generally accepted in their respective medical communities;

5.02 To comply with the requirements of all laws and regulations applicable to Provider's business and profession and ensure that all licenses, permits, authorizations and approvals required for that business and profession be maintained in effect for Provider as well as personnel employed or supervised by Provider, or acting on Provider's behalf;

5.03 To participate in and remain compliant with but not limited to CCN's and/or Payor's credentialing and recredentialing, medical management, utilization review quality assurance program, and which may be amended from time to time. Provider agrees to provide any and all reasonable requested data and records in support of such programs;

5.04 To obtain and maintain throughout the term of this Agreement medical staff membership and active or courtesy privileges for the performance of Provider's duties hereunder at participating hospitals, if necessary for the rendition of Health Care Services or Benefits to Beneficiaries or Claimants;

5.05 To provide prompt availability and accessibility of Health Care Services or Benefits to Beneficiaries or Claimants in the same manner and quality as to all other patients;

5.06 To maximize the utilization of services that are alternatives to inpatient hospitalization and innovative delivery modes that promote more cost-efficient health care, which are consistent with Provider's professional judgment;

5.07 Except in an emergency and/or when medical necessity dictates, to admit Beneficiaries or Claimants, in each instance in which hospitalization is required, to a hospital contracting with CCN unless a Beneficiary or Claimant specifically requests otherwise after having been notified by Provider that the requested hospital is not a CCN hospital;

5.08 To obtain from each Beneficiary or Claimant a written assignment of benefits, an authorization to provide Health Care Services or Benefits to Beneficiary or Claimant and release of Beneficiary's or Claimant's medical records. If a Beneficiary or Claimant refuses to provide such evidence of assignment, Provider may seek payment from the Beneficiary or Claimant directly with such payment limited to the Reimbursement Amounts defined in this Agreement;

5.09 To refer Beneficiaries or Claimants, in each instance in which referral is required, to other CCN Providers, unless Provider, in his/her professional judgment, determines that the Beneficiary's or Claimant's needs require otherwise and Beneficiary or Claimant so agrees after having been notified by Provider that the proposed provider is not a CCN Provider;

5.10 To permit CCN's representatives, including but not limited to utilization review committee members, and Payor representatives, upon reasonable advance written notice, to inspect specific aspects of the Health Care Services or Benefits provided to Beneficiaries or Claimants by Provider in response to concerns related to a Beneficiary or Claimant, or Payor;

5.11 To coordinate and transmit billings to Payors for payment, if required, in a format commonly used in the community and approved by CCN;

5.12 To provide Health Care Services or Benefits pursuant to all Payor Agreements executed between CCN and Payors;

5.13 To cooperate with Payors in expediting the return to work of ill or injured employed Beneficiaries or Claimants, consistent with Provider's professional judgment; and

5.14 To establish and maintain a reasonable and fair procedure for resolving Beneficiary or Claimant grievances.

## 6. COVENANTS OF CCN

CCN covenants and agrees to the following:

6.01 To accept sole responsibility for filing reports, obtaining approvals and complying with applicable laws and regulations of state, federal and other regulatory agencies having jurisdiction over CCN, provided however, that Provider agrees to cooperate by providing CCN with any information and assistance reasonably required in connection therewith;

6.02 To abide by a policy of non-interference with the professional relationship between any Beneficiary or Claimant and Provider;

6.03 To provide Provider periodically with an up-to-date list of Payors who have executed Payor Agreements with CCN specifying the respective Insuring Agreements pertaining thereto; and

6.04 To establish and maintain a reasonable and fair procedure for resolving Beneficiary or Claimant or Provider grievances.

## 7. RECORDS

7.01 CCN and Provider shall maintain records and procedures, as shall reasonably be required to accurately account for all Health Care Services and Benefits provided pursuant to this Agreement. Such records shall be kept in accordance with generally accepted accounting principles and recognized standards of professional practice.

7.02 CCN and Provider shall have the mutual right, upon request, to inspect and copy, upon reasonable advance notice and during normal business hours or at such other times as may be agreed upon, relevant accounting and administrative books and records, as they pertain to this Agreement. Such information shall be provided to each party hereto pursuant to procedures designed to protect the confidentiality of patient medical records in accordance with applicable legal requirements and recognized standards of professional practice.

7.03 CCN and Provider shall each maintain records with respect to any matters necessary for the proper administration of this Agreement.

7.04 Upon termination of this Agreement, Provider agrees to cooperate with Beneficiaries or Claimants and subsequent Providers with respect to the orderly and prompt transfer of medical records of Beneficiaries or Claimants. This Agreement does not preclude Provider from assessing reasonable charges for the expense of transferring such records if appropriate.

7.05 CCN shall have access to provider records for four (4) years from the date on which Provider supplied or provided Health Care Services or Benefits documented in such records, regardless of when the Agreement has been terminated.

## 8. INSURANCE REQUIREMENTS

8.01 <u>Professional Liability Insurance.</u> Provider shall carry professional liability insurance or an equivalent program of self-insurance in minimum amounts as specified and amended from time to time in the CCN Administrative Manual for Participating Providers. Provider shall notify CCN of cancellation or material modification of the coverage under such professional liability insurance at least thirty (30) days prior to any cancellation or modification. Certificates of Insurance evidencing Provider's professional liability insurance coverage shall be provided to CCN no later than thirty (30) days following execution of this Agreement.

8.02 <u>General Liability Insurance.</u> Provider shall also maintain a policy or program of comprehensive general liability insurance, covering Provider's acts or failure to act, with minimum coverage as specified and amended from time to time in the CCN Administrative Manual for Participating Providers.

8.03 <u>Extended Insurance.</u> In the event Provider terminates this Agreement for any reason whatsoever, or if Provider changes insurance carriers, Provider agrees to maintain malpractice insurance coverage in the amount required under Section 8.01 of this Agreement for all Health Care Services or Benefits provided to Beneficiaries or Claimants until the statutes of limitation expire for the filing of malpractice claims pertaining to those Health Care Services or Benefits. Such insurance coverage may take the form of an "occurrence" policy covering claims made for services rendered no matter when the claims are filed, ongoing "claims made" insurance covering all claims filed during the period when the insurance is in force, or "tail insurance" coverage if the Provider cancels his/her "claims made" coverage.

## 9. ADMINISTRATIVE MANUAL

9.01 Provider agrees to comply with the requirements and procedures set forth in the Administrative Manual for Participating Providers ("Administrative Manual") which CCN shall provide for use by Provider, and the provisions of the Administrative Manual (as it may be amended by CCN in its sole discretion from time to time) are incorporated herein by this reference. CCN will distribute the Administrative Manual or any amendments to the Administrative Manual to Provider at least thirty (30) days prior to implementation or amendment. Notwithstanding Section 10.01 of this Agreement, any such amendment shall be effective thirty (30) days after such amendment has been distributed to Provider. The Administrative Manual shall cover administration of this Agreement, Utilization Review/Quality Assurance Program, minimum professional and general liability insurance requirements for Provider, billing and accounting requirements for services rendered hereunder, and other matters as deemed necessary by CCN.

## 10. AMENDMENT

10.01 This Agreement or any part hereof, may be amended only by CCN at any time during the term of this Agreement with thirty (30) days prior written notice to the provider by CCN. Provider shall have thirty (30) days after Provider receives written notice of such notice to provide CCN with written notice rejecting the amendment. Failure of Provider to provide such written notice to CCN shall constitute Provider's acceptance of said amendment. Except as provided above, any other amendment or modification of this Agreement shall be in writing and executed by each party hereto.

## 11. ASSIGNMENT

11.01 No assignment or delegation of the rights, duties or obligations hereunder shall be made without the mutual written consent of the parties hereto. Notwithstanding the foregoing, CCN retains the right to assign this Agreement or delegate its performance hereunder in whole or in part, without Provider's consent, to any entity with which CCN or its parent company or any of its subsidiaries is affiliated.

## 12. DISPUTE RESOLUTION AND ARBITRATION

12.01 CCN and Provider agree to meet and confer in good faith to resolve any problems or disputes that may arise under this Agreement.

12.02   The sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration as the parties do not want the delay or expense of lawsuits. The parties shall mutually agree to the appointment of an impartial arbitrator within 30 days of the written request for the appointment of an arbitrator by any party. The arbitrator must be familiar with the health care industry. In the event that mutual agreement cannot be obtained, then the American Arbitration Association shall appoint an arbitrator who is familiar with the health care industry if one can be located; and, if one cannot be located, then another arbitrator shall be appointed. All arbitration proceedings shall be conducted in accord with the rules of the American Arbitration Association and the award shall be binding, final and conclusive on the parties. Any party may enforce the award rendered by the arbitrator in any court of competent jurisdiction.

12.03   In the event of any dispute as to the interpretation of any provision in this Agreement, there shall not be any inference made for or against either party by reason of such party proposing or modifying any provision.

## 13. INDEPENDENT CONTRACTOR

13.01   Provider, in furnishing Health Care Services or Benefits pursuant to this Agreement, does so as an independent contractor. Neither Provider nor CCN shall be construed to be the agent, employee, or representative of the other, except as specified in this Agreement.

13.02   Nothing contained herein shall be construed to prevent Provider from independently operating or participating in any other agreement or in providing health care services independent of this Agreement.

## 14. WAIVER

14.01   The waiver by either party of any breach of any provision of this Agreement or warranty or representation herein set forth shall not be construed as a waiver of any subsequent breach of the same or any other provision.

## 15. SEVERABILITY

15.01   If any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions herein shall remain in full force and effect and shall in no way be affected, impaired, or invalidated as a result of such decision.

## 16. GOVERNING LAW

16.01   This Agreement shall be construed and enforced in accordance with the laws of the State of Florida as amended from time to time subject to any applicable federal law.

## 17. INDEMNIFICATION

17.01   Each party to this Agreement agrees to indemnify and hold harmless the other party and its directors, officers, employees and agents against any and all liability and expense, including defense costs and legal fees as they are incurred in connection with claims or demands for damages of any nature whatsoever including, but not limited to, bodily injury, death, personal injury or property damage arising from or caused by the indemnifying party's acts or failure to act or the acts or failure to act of its directors, officers, employees or agents.

## 18. NOTICES

18.01   Any notice required or permitted to be given pursuant to this Agreement shall be in writing and shall either be personally delivered or sent by registered or certified mail with the United States Postal Service, return receipt requested, postage prepaid, addressed to such party at its respective last known address.

## 19. CONFIDENTIALITY

19.01 The parties hereto shall maintain the confidentiality of any and all medical, financial and administrative records which shall be in their possession and control, and such information shall only be released or disseminated pursuant to the valid written authorization of the other party, Beneficiary or Claimant or as and when permitted under applicable law.

19.02 CCN and Provider shall hold any and all proprietary and confidential information in the strictest confidence and shall not voluntarily or involuntarily, sell, transfer, publish, display or otherwise make available to others any portion of the other party's proprietary and confidential information. Provider acknowledges that this Agreement, Amendments, and Exhibits hereto are deemed proprietary and confidential. Provider agrees that the terms of 19.02 shall survive this Agreement for a period of two (2) years.

IN WITNESS THEREOF, the parties hereto have executed this Agreement by their duly authorized officers, and it shall be effective as of the 1st day of March, 2001

**PROVIDER**                                **CCN**

FEDERAL TAX IDENTIFICATION #:

65-0430505

_____              _____
Signature                                   Signature

Dr. Salvatore D. LaRusso                    M. Cornelia Outten
Please print name                           Please print name

Director                                    Vice President, East Networks
Title                                       Title

2/8/01                                      3-1-01
Date                                        Date

AMENDMENT TO THE CCN MANAGED CARE, INC.
PROFESSIONAL CARE PROVIDER AGREEMENT/
PROFESSIONAL CARE PROVIDER AGREEMENT
(Provider Group)/
ANCILLARY PROVIDER AGREEMENT

Pursuant to Section 10 Amendment of the CCN Managed Care, Inc. Professional Care Provider Agreement/ Professional Care Provider Agreement (Provider Group)/Ancillary Provider Agreement, the Agreement is hereby amended as follows:

Amendment to Section 6.03: Delete in its entirety and replace with the following:

"To provide Provider access to an up-to-date list of Payors who have executed Payor Agreements with CCN."

Amendment to Section 18: Delete in its entirety and replace with the following:

"Any notice required under Section 3 Term; Termination and Section 8 Insurance Requirements of this Agreement shall be in writing and shall either be personally delivered or sent by registered or certified mail, return receipt requested, postage prepaid, addressed to such party at its respective last known address. All other notices required or permitted to be given pursuant to this Agreement shall be in writing and shall be either personally delivered or sent postage prepaid addressed to such party at its respective last known address."

The above referenced Agreement is hereby amended effective on date appearing on page 8 of the Agreement. All other terms and conditions of the Agreement and its Appendices shall remain in full force and effect.

<u>EXHIBIT A: CCN REIMBURSEMENT AMOUNTS</u>
**GREATER FLORIDA**

I.  Group Health, Auto Medical, and Property & Casualty Payors (other than Workers' Compensation): Except as otherwise specified below, payment to Provider shall be based on the lesser of Provider's usual billed charge or the CCN Fee Schedule. The ground rules as stated in St. Anthony Publishing, Inc. <u>Relative Values For Physicians</u> (RVP) shall apply.*

# SAMPLE CCN FEE SCHEDULE – GREATER FLORIDA

| CPT CODE | DESCRIPTION | | CPT CODE | DESCRIPTION | |
|---|---|---|---|---|---|
| **EVALUATION AND MANAGEMENT:** | | | 31575 | Diagnostic laryngoscopy | 145.15 |
| 99201 | Office visit, new, brief evaluation | 43.14 | 31622 | Bronchoscopy | 323.63 |
| 99202 | Office visit, new, limited initial history | 67.30 | 33200 | Insert permanent pacemaker | 1482.69 |
| 99203 | Office visit, new, intermed history | 93.34 | 33533 | CABG, arterial, single | 3249.23 |
| 99204 | Office visit, new, extended history | 136.22 | 33534 | CABG, arterial, two | 3624.36 |
| 99205 | Office visit, new, comprehensive history | 169.70 | 42821 | Tonsillectomy & adnoidectomy | 756.00 |
| 99211 | Office visit, estab, minimal service | 20.87 | 43239 | Upper GI endoscopy, biopsy | 327.90 |
| 99212 | Office visit, estab, brief exam | 37.06 | 44950 | Appendectomy | 627.54 |
| 99213 | Office visit, estab, intermediate exam | 51.11 | 45300 | Proctosigmoidoscopy | 67.79 |
| 99214 | Office visit, estab, extended exam | 77.93 | 45330 | Sigmoidoscopy, diagnostic | 116.60 |
| 99215 | Office visit, estab, comprehensive exam | 119.95 | 45380 | Colonoscopy and biopsy | 420.80 |
| 99221 | Initial hosp care, brief history & exam | 88.54 | 45385 | Colonoscopy | 619.86 |
| 99222 | Initial hosp care, intermediate hist&exam | 140.22 | 47600 | Cholecystemctomy | 1025.40 |
| 99223 | Initial hosp care, comprehensive exam | 181.39 | 49505 | Repair inguinal hernia | 607.36 |
| 99231 | Subsqt hosp care, limited exam | 44.45 | 52000 | Cystoscopy | 182.43 |
| 99232 | Subsqt hosp care, intermediate exam | 66.32 | 52647 | Laser surgery of prostate | 1166.19 |
| 99233 | Subsqt hosp care, extended exam | 92.81 | 55700 | Biopsy of prostate | 183.09 |
| 99238 | Hospital discharge day | 79.09 | 55845 | Extensive prostate surgery | 2832.50 |
| 99241 | Office consult, new, limited exam | 62.35 | 56308 | Laparoscopy w/ hysterectomy | 2705.00 |
| 99242 | Office consult, new, intermediate exam | 99.16 | 56340 | Laparoscopy w/ cholectystectomy | 1060.80 |
| 99244 | Office consult, new, extended exam | 176.96 | 57454 | Colposcopy and biopsy | 224.00 |
| 99245 | Office conslt, new, comprehensive exam | 234.89 | 58120 | Dilation and curettage (D&C) | 600.00 |
| 99251 | Initial hsp consult, new, brief exam | 60.89 | 58150 | Total hysterectomy | 1280.46 |
| 99252 | Initial hsp consult, new, limited exam | 94.00 | 59400 | Obstetrical care, routine, vag delivery | 1825.13 |
| 99253 | Initial hsp consult, new, intermed exam | 124.68 | 59409 | Vaginal delivery only | 1117.93 |
| 99255 | Initial hsp consult, new, comprehensive | 231.85 | 59410 | Vaginal delivery w/ PP care | 1192.96 |
| 99295 | Initial NICU care | 1200.00 | 59425 | Antepartum care only 4-6 visits | 394.34 |
| 99431 | Initial care, normal newborn | 114.37 | 59426 | Antepartum care only 7+ visits | 676.08 |
| | | | 59510 | Cesarean delivery | 2042.10 |
| 10060 | I & D abscess, simple/single | 74.39 | 61312 | Craniectomy or craniotomy | 2792.63 |
| 11100 | Biopsy of skin lesion | 68.33 | 63030 | Laminotomy | 1622.26 |
| 11101 | Biopsy, each added lesion | 36.15 | 66984 | Remove cataract, insert lens | 1440.00 |
| 11400 | Removal of skin lesion | 72.58 | 69436 | Tympanostomy | 254.09 |
| 11406 | Removal of skin lesion | 263.28 | 70450 | CAT scan of head or brain | 277.40 |
| 11440 | Removal of skin lesion | 93.11 | 71010 | Chest xray | 34.56 |
| 11602 | Removal of skin lesion | 203.35 | 71020 | Chest xray | 44.25 |
| 17000 | Destroy benign/repmal lesion | 55.01 | 71250 | CAT scan of chest | 353.48 |
| 19100 | Biopsy of breast | 98.94 | 71260 | Contrast CAT scan of chest | 412.46 |
| 20610 | Drain/inject joint/bursa | 55.90 | 72148 | Magnetic image, lumbar spine | 668.81 |
| 28285 | Repair of hammertoe | 477.10 | 74000 | Xray exam of abdomen | 36.78 |
| 28296 | Correction of bunion | 943.04 | 76092 | Mammogram, screening | 60.06 |
| 29819 | Arthroscopy shoulder | 1025.44 | 76805 | Echo exam of pregnant uterus | 168.23 |
| 29881 | Arthroscopy knee | 1054.55 | 76857 | Echo exam of pelvis | 75.73 |
| 30520 | Septoplasty | 849.38 | | | |
| 31231 | Nasal endoscopy, diagnostic | 108.70 | | | |

EXHIBIT A: CCN REIMBURSEMENT AMOUNTS
GREATER FLORIDA

SAMPLE CCN FEE SCHEDULE – GREATER FLORIDA (continued)

| CPT CODE | DESCRIPTION | | CPT CODE | DESCRIPTION | |
|---|---|---|---|---|---|
| 77413 | Radiation treatment delivery | 114.20 | 92511 | Nasopharynogoscopy | 102.40 |
| 77460 | Weekly radiation therapy mgt | 262.44 | 92980 | Transcatheter place, single | 1440.93 |
| 80061 | Lipid panel | 37.00 | 93000 | Electrocardiogram, routine | 35.65 |
| 81000 | Urinalysis | 6.00 | 93010 | Electrocardiogram report | 15.99 |
| 82270 | Blood occult, feces screen | 5.00 | 93015 | Cardiovascular stress test | 147.84 |
| 85025 | Automated hemogram | 16.00 | 93307 | Echo exam of heart | 285.76 |
| 85610 | Prothrombin time | 8.00 | 93510 | Left heart catheterization | 2429.05 |
| 85730 | Thromboplastin time, partial | 12.00 | 95004 | Allergy skin tests, per test | 4.63 |
| 86850 | TB intradermal test | 11.00 | 95117 | Immunotherapy injections | 24.99 |
| 86588 | Streptocollus, direct screen | 22.00 | 95165 | Antigen therapy services, per dose | 7.65 |
| 87060 | Nose/throat culture | 18.00 | 95819 | Electroencephalogram (EEG) | 132.64 |
| 88150 | Cytopathology, smears | 10.00 | 95860 | Electromyography, one extremity | 95.23 |
| 88305 | Tissue exam by pathologist, level IV | 132.00 | 95900 | Motor nerve conduction test | 48.65 |
| 90700 | DTAP immunization | 24.00 | 96408 | Chemotherapy, push technique | 47.38 |
| 90707 | MMR virus immunization | 35.00 | 96410 | Chemotherapy, infusion method | 71.14 |
| 90712 | Oral poliovirus immunization | 18.00 | 97010 | Hot or cold packs therapy | 15.30 |
| 90713 | Poliomyelitis immunization | 18.00 | 97014 | Electric stimulation therapy | 17.89 |
| 90716 | Chicken pox vaccine | 50.00 | 97035 | Ultrasound therapy | 14.55 |
| 90737 | Influenza B immunization | 25.00 | 97110 | Therapeutic exercises | 26.46 |
| 90780 | IV infusion therapy, 1 hr | 55.63 | 97250 | Myofascial release | 37.46 |
| 90801 | Diagnostic interview | 134.16 | 97265 | Joint mobilization | 37.46 |
| 90862 | Medication management | 54.18 | 97530 | Therapeutic activities | 29.78 |
| 92507 | Speech/hearing therapy | 38.20 | | | |

*Anesthesia services shall be paid according to the Relative Value Guide established by the American Society of Anesthesiologists (ASA) at $50.00 per unit.

For services without established unit values, the Reimbursement Amount shall be the lesser of 20% off Provider's usual billed charge, or 20% off the 80th percentile of usual and customary. Payment to Provider for the cost of drugs not included in the CPT procedure code description shall be reimbursed as a BR or at AWP (if applicable) allowable.

The Reimbursement Amounts for all physical medicine modalities and procedures provided to a patient in any one day shall not collectively exceed the applicable amounts allowed for three treatments (e.g., two modalities and one procedure).

II. **Workers' Compensation Payors:** For services with established unit values under the applicable governmental entity official medical fee schedule, Reimbursement Amounts shall be the lesser of ten percent (10%) off the Provider's usual billed charge, or ten percent (10%) off the 80th percentile of usual and customary, or ten percent (10%) below those rates established by the applicable governmental entity official medical fee schedule. Payment to Provider shall be based on the unit values, conversion factors and "ground rules" for the appropriate codes under the applicable governmental entity official medical fee schedule.

For services without established relative unit values under the governmental entity official medical fee schedule, the Reimbursement Amount shall be the lesser of ten percent (10%) off the provider's usual billed charge or ten percent (10%) off the 80th percentile of usual and customary. Payment to Provider for the cost of drugs not included in the CPT procedure code description shall be reimbursed as a BR or at AWP (if applicable) allowable.

The Reimbursement Amounts for all physical medicine modalities and procedures provided to a patient in any one day shall not collectively exceed the applicable amounts allowed for three treatments (e.g., two modalities and one procedure).

412_00_8

## EXHIBIT A: CCN PHYSICIAN REIMBURSEMENT AMOUNTS
## GREATER FLORIDA

*Anesthesia services shall be paid according to the Relative Value Guide established by the American Society of Anesthesiologists (ASA) at $37.00 for each 10 minute unit.

For services without established unit values, the Reimbursement Amount shall be the lesser of 20% off Provider's usual billed charge, or 20% off the 70th percentile of usual and customary. Payment to Provider for the cost of drugs not included in the CPT procedure code description shall be reimbursed as a BR or at AWP (if applicable) allowable.

The Reimbursement Amounts for all physical medicine modalities and procedures provided to a patient in any one day shall not collectively exceed the applicable amounts allowed for three treatments (e.g., two modalities and one procedure).

II.  Workers' Compensation Payors

Payment to Provider shall be the lesser of 10% off the Provider's usual billed charge, or 10% off the 70th percentile of usual and customary, or 10% below the Reimbursement Amounts established by the <u>Florida Division of Workers' Compensation Health Care Manual</u>. Payment to Provider for the cost of drugs not included in the CPT procedure code description shall be reimbursed as a BR or at AWP (if applicable) allowable.

Tlc/0198/flexhiA1

3