UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-CIV-6061-FERGUSON/SNOW

SALVATORE D. LARUSSO, D.C.,
d/b/a FAMILY CHIROPRACTIC
CENTER, on behalf of himself and
all others similarly situated,
        Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY and COMMUNITY
CARE NETWORK, INC.,
        Defendants.
_____/



## DEFENDANT LIBERTY MUTUAL'S JOINDER IN DEFENDANT CCN'S MOTION TO COMPEL ARBITRATION

Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), by and through its undersigned attorneys and in response to Defendant CCN Managed Care, Inc.'s ("CCN") Motion to Compel Arbitration and to Stay or Dismiss Litigation, hereby joins CCN in its motion to compel arbitration. Given Plaintiff's necessary reliance and reference to his contract with CCN, containing an expansive arbitration clause, in asserting his claims against Liberty Mutual and his allegation of a concert of action between CCN and Liberty Mutual, Plaintiff should be compelled to arbitrate his claims against Liberty Mutual on equitable estoppel grounds. In support thereof, Liberty Mutual states:

### INTRODUCTION

In this action, Plaintiff, Dr. Salvatore D. Larusso, a licensed chiropractor (*Compl.* at ¶1), raises claims for breach of contract, unjust enrichment, third-party beneficiary breach of contract, RICO violations, declaratory relief, and violations of section 627.736, Fla. Stat., arising out of

{MI809205;1}

the alleged breach of a provider agreement ("provider agreement") between Plaintiff and CCN with respect to Personal Injury Protection ("PIP") benefits. Under the provider agreement, CCN was to act as a "broker", uniting Plaintiff with payors, defined under the provider agreement to include, *inter alia*, insurance carriers such as Liberty Mutual, under the provider agreement. *Id.* at ¶¶14-15. Under this arrangement, termed a Preferred Provider Organization ("PPO"), providers like Plaintiff are marketed by payors to their subscribers thereby increasing the provider's volume of business and, in exchange, providers agree to discount their normal fees. *Id.* at ¶¶18-21.

The provider agreement Plaintiff entered with CCN provided that Plaintiff would discount his normal fees to CCN PPO Subscribers. *Id.* at ¶21. The provider agreement contains a broad arbitration clause which states that "[t]he sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration as the parties do not want the delay or expense of lawsuits." *Provider Agreement* at ¶12.02, attached to CCN's Motion to Compel Arbitration as Exhibit A.

With respect to Liberty Mutual, Plaintiff alleges that Liberty Mutual and CCN "collectively engaged" in a "Silent PPO' scheme" whereby Liberty Mutual "obtained access to PPO networks of preferred providers and their discounts," including Plaintiff's, applying the discounts to medical bills incurred by insureds covered under Liberty Mutual PIP policies. *Compl.* at ¶¶21-27. Not surprisingly, the root of Plaintiff's claims against Liberty Mutual is the provider agreement between Plaintiff and CCN, and Plaintiff's claim that Liberty Mutual was "not . . . entitled to take advantage of . . . PPO discounts under the terms and conditions of . . . the CCN PPO contract. . . ." *Id.* at ¶28.

Given the fact that Plaintiff's claims against Liberty Mutual rely largely, if not exclusively, on the provider agreement containing the aforementioned arbitration clause, Plaintiff's claims against Liberty Mutual are subject to arbitration as Plaintiff is estopped from claiming that Liberty Mutual as non-signatory to the provider agreement cannot compel Plaintiff to arbitrate his claims against it. Arbitration of Plaintiff's claims against Liberty Mutual is further warranted as Plaintiff's allegations of concerted misconduct by CCN and Liberty Mutual present an additional ground to estop Plaintiff from denying the applicability of the provider agreement's arbitration clause with respect to Plaintiff's claims against Liberty Mutual.

I. **Arbitration of Plaintiff's Claims Against Liberty Mutual Should be Compelled as Plaintiff is Equitably Estopped From Denying the Arbitrability of His Claims Against Liberty Mutual**

Although generally a party can not be compelled to arbitrate absent an agreement to do so, *Employers Ins. of Wasau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001), there are numerous circumstances under which a non-signatory is allowed to compel arbitration. *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756 (11th Cir. 1993). Among the circumstances under which a non-signatory will be allowed to compel arbitration is equitable estoppel. *See id.* A signatory will be deemed to be equitably estopped from avoiding arbitration on the grounds that the party seeking arbitration is a non-signatory in two circumstances: (1) where the plaintiff signatory relies on the terms of the written agreement in asserting its claims against the nonsignatory defendant, *Id.*; and (2) where the plaintiff signatory "raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (quoting *Boyd v. Homes of Legend, Inc.*, 981 F.

Supp. 1423, 1433 (M.D. Ala. 1997). Both circumstances are presented by Plaintiff's claims against Liberty Mutual.

### a. Plaintiff's claims against Liberty Mutual Presume the Existence of and Require Reference to the Provider Agreement between Plaintiff and CCN

*Sunkist Soft Drinks* illustrates the applicability of equitable estoppel to Plaintiff's claims. In *Sunkist Soft Drinks*, a non-signatory to a license agreement brought suit seeking a declaration that a controversy between it and Sunkist Growers, Inc., a signatory to the license agreement, regarding the plaintiff's performance under the license agreement was subject to arbitration. The plaintiff had acquired the stock of the original signatory to the agreement. The license agreement contained an arbitration clause requiring that any controversy or claim, except for any claim with respect to the ownership rights in licensed trademarks, arising out of or relating to the license agreement or its breach, would be settled by arbitration. In response to the plaintiff's declaratory action, the Defendant-signatory brought a counterclaim raising tort and contract claims arising out of the plaintiff's alleged interference with the license agreement. The Defendant claimed that it did not consent to or intend to arbitrate any claims with the plaintiff and that absent an agreement to do so, it could not be compelled to arbitrate its counterlcaims. *Id.* at 756.

The Court rejected the Defendant's claims, holding the Defendant equitably estopped from denying the applicability of the arbitration clause as the Defendant's claims against the Plaintiff relied on and required reference to the licensing agreement containing the arbitration clause: "Each claim asserted by Sunkist makes reference to the license agreement. Although Sunkist does not rely exclusively on the license agreement to support its claims, each claim presumes the existence of such an agreement." *Id.* at 758. *Accord MS Dealer Serv. Corp.*, 177 F.3d at 947 (11th Cir. 1999) (compelling non-signatory plaintiff to arbitration on equitable

{M1809205;1}

4

estoppel grounds as plaintiff's claims made "reference to and presume[d] the existence" of the contract containing the arbitration clause); *McBro Planning and Dev. Co. v. Electrical Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984) (compelling non-signatory to arbitration where non-signatories claims were "intimately founded in and intertwined with the underlying contract obligations" even though underlying contract disclaimed any relationship between non-signatory and party compelling arbitration); *Cunningham Hamilton Quiter v. B.L. of Miami*, 776 So. 2d 940, 942 (Fla. 3d DCA 2000) (enforcing arbitration clause against non-signatory plaintiff where non-signatory plaintiff's claims were "intertwined" with the underlying contract containing the arbitration clause).[1] The same result should obtain here.

A review of the allegations in Plaintiff's complaint makes it readily apparent that Plaintiff's claims against Liberty Mutual "presume[] the existence" of the provider agreement between Plaintiff and CCN. *Sunkist Soft Drinks, Inc.*, 10 F.3d at 758. Indeed, Plaintiff's allegations are replete with references to the provider agreement between Plaintiff and CCN. *See Compl.* at ¶¶ 15, 21, 28, 35-37, 79-82, 106. These repeated references to the provider agreement are not surprising, as Plaintiff's claims that Liberty Mutual's access to the PPO network was unauthorized because Liberty Mutual was not "a legitimate payor under the agreement." *Id.* at ¶106(b). Accordingly, given the intimate relationship between Plaintiff's claims against Liberty Mutual and the provider agreement with CCN, Plaintiff should be compelled to arbitrate all the

---

[1] It warrants mention that the Court in *Cunningham* observed that "[i]t is well established that the courts broadly construe arbitration provisions containing the language, 'arising out of or relating to,' such that in certain instances the clause will include non-signatories." *Id.* at 942. The arbitration clause at issue here is similarly broad, if not broader, as it provides that "[t]he sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration. . . ." *Provider Agreement* at ¶12.02, attached to CCN's Motion to Compel Arbitration as Exhibit A. In fact, the provider agreement between Plaintiff and CCN specifically references payors like Liberty Mutual, contemplating and incorporating by reference payor agreements between payors and CCN. *Id.* at ¶2.01.

{MI809205;1}

claims he has raised in his Complaint. *See Sunkist Soft Drinks, Inc.*, 10 F.3d at 758; *MS Dealer*, 177 F.3d at 947.

### b. Plaintiff's Allegations of a Conspiracy Between CCN and Liberty Mutual to Create a "Silent PPO" Demonstrate the Inseparability of Plaintiff's Claims Against Liberty Mutual and Those Based on the Provider Agreement

Application of equitable estoppel is further justified on the grounds that Plaintiff has asserted a concert of action between CCN and Liberty Mutual requiring all of Plaintiff's claims against both CCN and Liberty Mutual to be arbitrated. *See MS Dealer Serv. Corp.*, 177 F.3d at 947.

In *MS Dealer Serv. Corp.*, the Court applied the doctrine of equitable estoppel to compel a non-signatory plaintiff to arbitration after concluding that the plaintiff's claims against the defendants were "inherently inseperable." *Id.* at 948. The plaintiff in *MS Dealer*, executed a "buyers order" agreeing to purchase a vehicle from Burke. The "buyers order" included an arbitration clause and incorporated by reference a retail installment contract in which plaintiff was charged an excessive amount, according to the plaintiff, for a service contract with defendant MS Dealer. After discovering defects with the car, the plaintiff brought suit for breach of contract, breach of warranty, fraud and conspiracy against MS Dealer and Burke alleging that "MS Dealer improperly cooperated, conspired and otherwise colluded with Jim Burke and Chrysler Credit Corporation in a scheme to defraud her in connection with the purchase of the service contract." *Id.* at 945. MS Dealer petitioned to compel the plaintiff to arbitrate her claims against it but the District Court denied MS Dealer's petition "on the ground that MS Dealer was not a signatory to the Buyers Order." *Id.* at 946.

On appeal, the Eleventh Circuit reversed. The Court held that the plaintiff was equitably estopped from denying the arbitrability of her claims because her claims alleged "collusive

{MI809205;1}

behavior" between MS Dealer and Burke, the signatory to the "buyers order," such that her claims were "'intimately founded in and intertwined with the obligations imposed by the [Buyers Order].'" *Id.* at 948 (quoting *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1433 (M.D. Ala. 1997)). This Court should reach a similar conclusion here given the concert of action alleged by Plaintiff as between Liberty Mutual and CCN with respect to the provider agreement.

Like the plaintiff in *MS Dealer*, Plaintiff's complaint is riddled with references to a conspiracy between Liberty Mutual and CCN to create a silent PPO in contravention of, *inter alia*, the provider agreement between Plaintiff and CCN: "Liberty Mutual and middleman CCN have collectively engaged in the . . . 'Silent PPO' scheme" *Compl.* at 26; "CCN was paid a percentage of Liberty Mutual's discount savings on each PIP medical expense claim" *Id.* at ¶51; "CCN breached its Preferred Provider Agreements . . . by disclosing and selling the volume discount rates of Dr. Larusso . . . to Liberty Mutual" *Id.* at ¶82; "Liberty Mutual, acting with middleman CCN, formed an association-in-fact" *Id.* at ¶101; "Liberty Mutual and CCN have engaged in a continuous scheme and artifice to defraud Dr. Larusso" *Id.* at ¶106. Plaintiff's countless references to an alleged scheme between Liberty Mutual and CCN pay tribute to the fact that Plaintiff's claims against Liberty Mutual are "intimately founded in and intertwined" with the provider agreement between Plaintiff and CCN. *See MS Dealer*, 177 F.3d at 948.

## CONCLUSION

WHEREFORE, Defendant Liberty Mutual Insurance Company respectfully requests that the Court compel Plaintiff to arbitrate all claims against CCN and Liberty Mutual. Plaintiff should be equitably estopped from objecting to the arbitration of his claims against Liberty Mutual on the grounds that Liberty Mutual was not a signatory to the provider agreement containing the arbitration clause as Plaintiff's claims against Liberty Mutual clearly presume the

existence of and require reference to the provider agreement. A finding of equitable estoppel is also appropriate given Plaintiff's allegations of a conspiracy between Liberty Mutual and CCN, which alleged conspiracy is necessarily intertwined with the provider agreement.

          Respectfully submitted,

          **AKERMAN, SENTERFITT & EIDSON, P.A.**
          SunTrust International Center, 28th Floor
          One Southeast Third Avenue
          Miami, Florida 33131-1704
          Phone: (305) 374-5600
          Fax: (305) 374-5095

By: _/s/ Mark S. Shapiro_
          MARK S. SHAPIRO
          Florida Bar No.: 894631
          mshapiro@akerman.com
          ANTONIO D. MORIN
          Florida Bar No.: 0187860

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was sent by U.S. Mail to counsel listed below on this 21st day of June, 2002.

_/s/ Mark S. Shapiro_
Attorney

# MASTER SERVICE LIST
## (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
### (Updated 5/21/02)

**Co-Lead Counsel for Class Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
elee@leeamlaw.com

Suite 150
350 N.W. 12th Ave.
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty, Continental, Deerbrook**
RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue
(32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

{MI809205;1}

SWARTZ CAMPBELL
DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMANSENTERFITT
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for: Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road,
Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile