UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of himself
and others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

     Defendant/Third-Party Plaintiff,

v.

COMMUNITY CARE NETWORK, INC.
doing business as CCN,

     Third-Party Defendant.

_____

ULTRA OPEN MRI CORPORATION, et al., on behalf       01-6778
of itself and others similarly situated,

     Plaintiffs,

v.

PRUDENTIAL PROPERTY AND CASUALTY
INSURANCE COMPANY,

     Defendant.

_____

**RESPONSE OF DEFENDANT PRUPAC TO
PLAINTIFFS' OBJECTIONS TO
<u>REPORT AND RECOMMENDATION (D.E. # 721)</u>**



FILED by _____ D.C.
INTAKE
JUL 1 2 2002
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

Pursuant to Fed. R. Civ. P. 72(b), Defendant Prudential Property and Casualty Insurance Company ("PruPAC") hereby respectfully submits its response to Plaintiffs' Objections to United States Magistrate Judge Lurana S. Snow's Report and Recommendation (D.E. 721). As explained below, Judge Snow correctly concluded (1) that arbitration provisions contained in PIP contracts entered into after *Nationwide Mutual Fire Insurance Co.* v. *Pinnacle Medical, Inc.*, 753 So. 2d 55 (Fla. 2000) are valid and enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*; and (2) that if the arbitration provision against plaintiff Afield is valid, it binds Afield as assignee and third-party beneficiary. Accordingly Afield's objections to Judge Snow's recommendations are meritless and should be overruled.[1]

## STATEMENT

A.    Procedural History.

1.    *The Original Complaint.*    The original plaintiff in this action, Ultra Open MRI Corp. ("UOMC"), filed its original Class Action Complaint (the "Original Complaint") against PruPAC on May 8, 2001 and served PruPAC on June 6, 2001. The parties then agreed to postpone PruPAC's deadline to respond to the Original Complaint.

2.    *The First Arbitration Motion.*    On August 6, 2001, prior to answering or otherwise responding to UOMC's complaint, PruPAC filed its Motion to Compel Arbitration (D.E. 10 in Case

---

[1] Effective May 28, 2002, PruPAC filed a notice of appeal (D.E. 684 in Case No. 00-6061) to the United States Court of Appeals for the Eleventh Circuit. That appeal "divest[ed] the district court of its control over those aspects of the case involved in the appeal." *Baron* v. *Best Buy Co.*, 79 F. Supp. 2d 1350, 1353 (S.D. Fla. 1999) (citation omitted). This response is filed as a protective measure without prejudice to PruPAC's appeal and without waiving any rights to a stay PruPAC has pending that appeal.

No. 01-6778) ("the First Arbitration Motion"). In its First Arbitration Motion, PruPAC requested that UOMC be compelled to arbitrate its dispute rather than litigate the case in this Court.

On November 13, 2001, Judge Snow issued her *first* Report and Recommendation (D.E. 318 in Case No. 00-6061) (the "UOMC R&R"). Judge Snow recommended that PruPAC's Motion be granted and UOMC be compelled to arbitrate its dispute. The UOMC R&R is currently before the Court for consideration.

3. *The First Stay Motion.* On October 12, 2001, PruPAC filed a Motion for a Stay and for Expedited Consideration of Defendant's Motion to Compel Arbitration (D.E. 17 in Case No. 01-6778) (the "First Stay Motion"). The First Stay Motion was filed pursuant to 9 U.S.C. § 3.

4. *The Amended Complaint.* On January 23, 2002, UOMC filed an Amended Class Action Complaint (D.E. 561 in Case No. 00-6061) (the "Amended Complaint") that added an additional plaintiff, Walter E. Afield ("Afield").

5. *The Second Arbitration and Stay Motion.* PruPAC has not yet answered the Amended Complaint. Instead, on February 22, 2002, PruPAC filed another motion to compel arbitration (D.E. 610 in No. 00-6061) with respect to plaintiff Afield. The motion asked that the Amended Complaint be dismissed outright or, in the alternative, expressly asked that all proceedings be stayed pursuant to 9 U.S.C. § 3 (the "Second Arbitration and Stay Motion") (see B. *infra).*

6. *The May 13 and May 21 Orders.* In orders dated May 13 and May 21, 2002 (D.E. 670 and 686 respectively in Case No. 00-6061), the Court denied in part both (i) the First Stay Motion and (ii) the Second Arbitration and Stay Motion. The May 13 and May 21 Orders instead require PruPAC to "take part [in] class certification discovery." May 21 Order at 5. Accordingly, effective

3

May 28, 2002, PruPAC filed its Notice of Appeal of the Court's May 13 and May 21 Orders pursuant to 9 U.S.C. § 16(a)(1)(A).

7. *The Stipulation to Stay Cases.* On June 24, 2002, PruPAC, UOMC, and Afield – that is, all of the parties in this case (No. 01-6778) – along with all of the parties in Case Nos. 01-6780, 01-6783, 01-8108, 01-8110, 01-8111, and 01-8549, filed a Stipulation, subject to the Court's approval, to stay all proceedings in those cases until the pending arbitration motions are resolved. Although PruPAC contends that its currently-filed appeal to the Eleventh Circuit divests this Court of jurisdiction (see *supra* note 1), the Stipulation provides further that any party to the Stipulation may file objections to a Report and Recommendation addressing an arbitration motion, and file a response to another party's objections to such Report and Recommendation.

B.    PruPAC's Motion to Compel Arbitration as to Plaintiff Afield.

The Second Arbitration and Stay Motion sought to compel arbitration as to plaintiff Afield. As PruPAC explained in that motion (at 3-4), the Amended Complaint asserts that UOMC and Afield, both of which are providers of medical services, are entitled to direct payment of benefits under automobile insurance policies issued by PruPAC that otherwise would have been payable to the policyholders. Amended Complaint ¶¶ 7-11, 72-76, 105-09. The Amended Complaint attaches an Explanation of Reimbursement sent by PruPAC for services rendered to PruPAC policyholder Thelma W. Anderson by Afield under an automobile insurance policy issued by PruPAC.

The automobile insurance policies issued in Florida by PruPAC, however, contain a clause that expressly requires arbitration of any dispute between PruPAC and providers who furnish services to

PruPAC policyholders. For example, Ms. Anderson's policy (hereinafter, the "PIP Contract") contains a section entitled "Arbitration" that reads in part as follows:

> "Any claims dispute between us and a medical service or supplies provider who has agreed to accept an assignment of benefits shall be decided by arbitration upon written request of either party."

Exhibit 1 to the Second Arbitration and Stay Motion, PAC 226 FL [Ed. 5/98], at 28. The policy at issue in connection with co-plaintiff UOMC's claims has a substantially similar arbitration provision.

In the Second Arbitration and Stay Motion, PruPAC explained that:

- The PIP Contract's arbitration provision is subject to the Federal Arbitration Act.

- The Federal Arbitration "Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 218 (1985).

- As an assignee and third-party beneficiary, Afield is subject to the arbitration provision.

- The Florida Supreme Court's decision in *Nationwide Mutual Fire Insurance Co.* v. *Pinnacle Medical, Inc.*, 753 So. 2d 55 (Fla. 2000), does not dictate any different result and, if it did, it would be preempted by the Federal Arbitration Act.

- In sum, as the voluntary assignee of a PIP contract issued by PruPAC, Afield is bound by the arbitration provision included in the PIP contract, and that arbitration provision is enforceable under the Federal Arbitration Act. Accordingly, the claims Afield alleges in the Amended Complaint are subject to arbitration.

C.    The Report and Recommendation.

On June 12, 2002, Judge Snow issued the *second* Report and Recommendation, which is at issue here, in response to the Second Arbitration and Stay Motion. Judge Snow correctly concluded that:

- Arbitration clauses contained in PIP contracts entered into after *Pinnacle* was decided are valid and enforceable. R&R at 4-5 & n.3.

- "The FAA requires the Court to enforce written arbitration agreements which are included in contracts which evidence a transaction involving interstate commerce." R&R at 8.

- Parties may not "opt out" of the provisions of the FAA. R&R at 9.

- The McCarran-Ferguson Act does not restrict any preemptive effect the FAA has on the Florida Supreme Court's decision in *Pinnacle*. R&R at 10-12.

- If the arbitration provision is valid, it binds the plaintiff (Afield) as assignee and third-party beneficiary. R&R at 12-13.

The R&R incorrectly concludes, however, that the arbitration provision is void under Florida law because it was entered into before *Pinnacle* was decided and that as a result, there is no arbitration provision to enforce under the Federal Arbitration Act. Accordingly, PruPAC filed its Objections to the R&R (D.E. 777 in Case No. 00-6061) and requested that the Court reject the R&R to the extent that it holds that the arbitration clause is not enforceable against Afield.

Afield, however, has also objected to the R&R. As we now explain, Afield's objections are meritless and should be overruled.

## ARGUMENT

PruPAC premised its motion to compel arbitration against Afield on the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* As the United States Supreme Court has explained, "the basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995).[2] "By its terms, the [Federal Arbitration]

---

[2] The Federal Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S.

Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds Inc.*, v. *Byrd*, 470 U.S. 213, 218 (1985); *Creative Tile Mktg., Inc.* v. *Sicis Int'l*, 922 F. Supp. 1534, 1538-39 (S.D. Fla. 1996).

In its objections, Afield cannot and does not challenge Judge Snow's conclusion that the arbitration provision, if valid, is subject to and enforceable under the Federal Arbitration Act.[3] Thus, if the PIP contract includes a valid arbitration provision that binds Afield, then Afield's complaint against PruPAC must be arbitrated and cannot go forward in this Court.

Instead, Afield makes two objections to Judge Snow's Report and Recommendation: first, that "[t]he R&R incorrectly concludes that the arbitration provision . . . is invalid solely because it was entered into before the *Pinnacle* decision" and second, that "[t]he R&R incorrectly finds that the arbitration provision can bind an assignee." Obj. at 3, 9. Neither of these objections has any merit, as we now explain.

---

1, 24-25 (1983). Therefore, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc.* v. *Board of Trustees*, 489 U.S. 468, 475-76 (1989) (citation omitted).

[3] In fact, Afield implicitly acknowledges that the Federal Arbitration Act controls by citing to case law decided under the Act. See Obj. at 2-3. The cases he cites, however, are from other jurisdictions and predate the United States Supreme Court's extensive jurisprudence on the Act. Thus, his citations are of questionable validity and were never precedent in this Court in the first place. In contrast, this Response cites solely to cases from the U.S. Supreme Court, the Eleventh Circuit, the U.S. District Court for the Southern District of Florida, and Florida state courts.

## I.  Judge Snow Correctly Concluded That
## Arbitration Provisions Entered Into After *Pinnacle* are Valid.

Afield argues that Judge Snow erred in holding that arbitration provisions in PIP contracts

entered into after *Pinnacle* are valid.  Afield argues that the Florida Supreme Court's holding in

*Nationwide Mut. Fire Ins. Co.* v. *Pinnacle Med., Inc.*, 753 So. 2d 55 (Fla. 2000) voids all PIP

contract arbitration provisions – like the one at issue here – that make disputes involving third-party

beneficiaries such as Afield subject to arbitration.  Afield's argument is wrong.

### A.    Afield Misconstrues the Holding in *Pinnacle.*

Afield completely misconstrues the Florida state court's decision in *Pinnacle*.  In *Pinnacle*, the

Florida state court held that "the mandatory arbitration provision in section 627.736(5), Florida Statutes

(1997), denies medical providers access to courts in violation" of the Florida constitution.  753 So. 2d

at 59.  This violation occurred, according to the court, because parties had a right of access to the

courts that pre-existed adoption of the Florida constitution, and "the Legislature cannot abolish that right

without providing a reasonable alternative" except under certain conditions.  *Id.* at 57.  In other words,

in *Pinnacle*, the state court concluded that it was unconstitutional for the Florida *legislature* to *require*

medical providers to arbitrate their disputes with insurance companies.

The Florida state court in *Pinnacle* did not and could not hold, however, that *private parties*

were prohibited from making agreements among themselves to arbitrate disputes arising from those

agreements.  As another Florida court has noted, *Pinnacle* simply does not address "whether a health

care provider may agree to arbitration when it accepts an assignment" of a PIP claim.  *Livingston* v.

*State Farm Mut. Auto. Ins. Co.*, 774 So. 2d 716, 717 (Fla. Dist. Ct. App. 2000).  As PruPAC

8

explained in its Objections, *Pinnacle* does not void arbitration provisions in PIP contracts, regardless of whether those contracts were entered into before or after *Pinnacle*, because *Pinnacle* does not address the enforceability of contractual arbitration clauses.

Certainly therefore, as Judge Snow correctly found in this R&R and in the UOMC R&R, *Pinnacle* does not void arbitration provisions entered into after *Pinnacle* was decided. After *Pinnacle* struck down the Florida statutory mandate to include an arbitration provision, private parties were then free to voluntarily enter into arbitration agreements as they saw fit.

Afield cites to *Harris* v. *Gonzalez*, 789 So. 2d 405 (Fla. Dist. Ct. App. 2001) – a case having nothing to do with PIP contracts or arbitration – for the general proposition that "'[a] contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our Courts.'" Obj. at 8 (quoting *Harris*, 789 So. 2d at 409). *Harris*, however, is inapposite because *Pinnacle* did not hold that PIP contracts violate the constitution or a statute. Rather, *Pinnacle* only held that a particular statutory provision (Fla. Stat. § 627.736(5)) – not the contract here – violated the Florida constitution.

B.    The Federal Arbitration Act Would Preempt any State Law Purporting to
       Invalidate Arbitration Provisions Entered Into by Private Parties.

The Florida Supreme Court's decision in *Pinnacle* could not, as Afield erroneously argues, void any PIP contract provision that requires Afield to arbitrate. Any state law – whether statutory or judicially-created – holding arbitration provisions in a PIP contract unenforceable would be preempted by the Federal Arbitration Act. As the United States Supreme Court has repeatedly made clear, the Federal Arbitration Act "pre-empts state laws which require a judicial forum for the resolution of claims

which the contracting parties agreed to resolve by arbitration." *Volt Info. Scis., Inc.* v. *Board of Trs.*, 489 U.S. 468, 478 (1989) (citation and internal punctuation omitted). In the current case, the parties to the PIP contract indisputably agreed to resolve by arbitration any claims asserted by an assignee like Afield that arose under the contract.

In *Southland Corp.* v. *Keating*, 465 U.S. 1 (1984), the United States Supreme Court considered and rejected Afield's argument that state law can void a contractual arbitration provision. *Southland* addressed a California statute that purported to void arbitration provisions in franchising agreements. The Supreme Court held that the Federal Arbitration Act preempted any such state law. That Act, the Supreme Court explained, "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 10; accord *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 55-56 (1995).

In sum, if, as Afield erroneously argues, the *Pinnacle* decision somehow invalidated all arbitration provisions in PIP contracts applicable to third-party medical providers, the *Pinnacle* decision would be preempted by the Federal Arbitration Act. As a Court in this District has held, "[t]o allow state law to preempt the [F]ederal Arbitration Act, in a case where that Act applies, would be violative of the Supremacy Clause of the United States Constitution." *Singer* v. *E.F. Hutton & Co.*, 699 F. Supp. 276, 279 (S.D. Fla. 1988). Notwithstanding Afield's erroneous contentions, *Pinnacle* did nothing more than invalidate the Florida *legislature*'s attempt to compel parties to arbitrate, while leaving intact private parties' power to voluntarily include arbitration provisions in their contracts.[4]

---

[4] Afield also offhandedly argues that the arbitration provision "impermissibly provides for prevailing party attorney fees," again citing to the *Pinnacle* decision. Obj. at 9. As explained above,

## II. Judge Snow Correctly Concluded That Afield, as a Voluntary Assignee, Is Bound by the Arbitration Provision.

Afield's second objection to Judge Snow's Report and Recommendation is that even if the arbitration provision is valid, it cannot bind Afield, a voluntary assignee and third-party beneficiary of the PIP contact. Again, Afield's objection is meritless.

### A.    Afield Voluntarily Agreed to Accept Assignment of the PIP Contract.

At the outset, Afield's argument rests upon a faulty premise. Afield contends that it did not agree to the arbitration provision in the PIP contract. Afield is mistaken. Although Afield was not originally a party to the contract, it freely agreed to accept, as a third-party beneficiary, the insured's assignment of the contract. As the arbitration provision makes clear, it applies only to "[a]ny claims dispute between us and a medical service or supplies provider [such as Afield] who has *agreed to accept* an assignment of benefits" from the insured. Exhibit 1 to the Second Arbitration and Stay Motion at 28. Having agreed to accept that assignment, Afield cannot legitimately contend that it has not agreed to the contract's provisions. If Afield did not wish to agree to those provisions, he was free not to accept the contractual assignment in the first place.

---

*Pinnacle* did not prohibit parties from entering into contracts as they saw fit. Rather, it only prevented the state legislature from compelling parties to do so. Notwithstanding Afield's incorrect argument, "[a] court is not empowered to rewrite a clear and unambiguous provision, nor should it attempt to make an otherwise valid contract more reasonable for one of the parties." *North Am. Van Lines* v. *Collyer*, 616 So. 2d 177, 179 (Fla. Dist. Ct. App. 1993).

B.    The Arbitration Provision Binds any Third-Party Beneficiary
      That Accepts Assignment of a Contract Including That Provision.

Leaving aside that as a factual matter, Afield accepted assignment of the PIP contract, Afield's

argument is also wrong on the law. A previous case in this District rejected the very objection Afield

now raises and held that third-party beneficiaries of a contract are bound by the terms of any arbitration

provision in that contract. *Interpool Ltd.* v. *Through Transp. Mut. Ins. Ass'n*, 635 F. Supp. 1503,

1505 (S.D. Fla. 1985). The Court explained:

> "The law is clear that a third party beneficiary is bound by the terms and
> conditions of the contract that it attempts to invoke. The beneficiary
> cannot accept the benefits and avoid the burdens or limitations of a
> contract. * * * Ordinary principles of contract law are used to
> determine if a non-signatory is to be bound by the contract and a party
> may be bound by an agreement to arbitrate even in the absence of a
> signature." *Id.* at 1505 (citations and internal punctuation omitted).

Despite Judge Snow's citation to this case and to this very passage (R&R at 13), Afield does not even

mention the case in its Objections, let alone attempt to explain or distinguish it.

C.    Afield Misreads Florida Law on the Effect of Arbitration Provisions on Assignees.

Although it ignores the *Interpool* decision, Afield does cite to two Florida court of appeals

cases, *Federated Title Insurers, Inc.* v. *Ward*, 538 So. 2d 890 (Fla. Dist. Ct. App. 1989) and

*Karlen* v. *Gold & W. Indus., Inc.*, 336 So. 2d 461 (Fla. Dist. Ct. App. 1976), for the proposition that

"[a]rbitration agreements are personal covenants *usually* binding only upon parties to the covenant,"

and not, apparently, on assignees like Afield. Obj. at 9 (emphasis added). Afield misreads these

cases. The courts in *Ward* and in *Karlen* do not hold that an arbitration provision can *never* bind an

assignee, but rather leave open the possibility that an arbitration provision may do so in some

12

circumstances. And, as Judge Snow explained, neither case "involve[s] a contract which states that the assignee is required to engage in arbitration." R&R at 13 n.7. In contrast, the PIP contract at issue here *expressly requires the assignee to arbitrate* any dispute with PruPAC.

D.    The Federal Arbitration Act Preempts Any State Law that Purports to Treat Arbitration Provisions Differently From Other Contractual Provisions.

Leaving aside Afield's misreading of *Ward* and *Karlen*, in citing to those cases Afield argues in effect that Florida law treats arbitration provisions differently from other types of contractual provisions. Although contractual provisions generally transfer to an assignee under basic principles of contract law, Afield contends that arbitration provisions do *not* transfer to an assignee under Florida law.

The United States Supreme Court has repeatedly and unequivocally rejected Afield's argument. Simply stated, "[c]ourts may not * * * invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Assocs., Inc.* v. *Casarotto*, 517 U.S. 681, 687 (1996) (emphasis omitted). The Supreme Court has made it crystal clear that "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with" the Federal Arbitration Act. *Perry* v. *Thomas*, 482 U.S. 483, 493 n.9 (1987). For that reason, "[a] court may not, * * * in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Id.*

Put another way, Afield asks to be paid under the terms of the PIP contract, but to be free from the contract's arbitration provision. See Complaint, Count II and ¶¶ 104-111 (alleging a cause of action for "Third-Party Beneficiary Breach of Contract). But, "[w]hat States may *not* do is decide that

13

a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Allied-Bruce*, 513 U.S. at 281 (emphasis added). The Federal Arbitration "Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent." *Id.*

Consistent with this clear, unequivocal rule enunciated by the U.S. Supreme Court, a Court in this District concluded that any state law that treats arbitration provisions differently from other types of contract provisions is preempted by the Federal Arbitration Act. *Securities Indus. Ass'n v. Lewis*, 751 F. Supp. 205 (S.D. Fla. 1990). Quoting *Perry*, the Court explained:

> "'[S]tate law, *whether of legislative or judicial origin*, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of [the Federal Arbitration Act].'" *Id.* at 206 (quoting *Perry*, 482 U.S. at 493 n.9) (first emphasis added).

Likewise, to the extent the *Ward* and *Karlen* cases on which Afield relies hold that arbitration provisions are to be treated differently from other contractual provisions, those cases are preempted by the Federal Arbitration Act. Accordingly, the PIP contract's arbitration provision binds Afield as the assignee and third-party beneficiary of the contract.

### CONCLUSION

For the foregoing reasons, PruPAC respectfully requests that the Court overrule Afield's Objections to the R&R and that the Court sustain PruPAC's Objections to the R&R. PruPAC further respectfully requests that (1) the Court reject the R&R to the extent that it holds that the arbitration clause is not enforceable against Afield; (2) the Court grant PruPAC's motion to compel arbitration as

to Afield, and (3) that the Court dismiss the Amended Complaint or, in the alternative, stay this action until arbitration has been had.

A proposed order is attached.

Respectfully submitted,


John D. Aldock
Michael K. Isenman
Lisa M. Harrison
SHEA & GARDNER
1800 Massachusetts Ave., N.W.
Washington, DC 20036
(202) 828-2000
Fax (202) 828-2195

Kathy J. Maus (Bar No. 896330)
Lauren D. Levy (Bar No. 0116490)
BUTLER BURNETTE PAPPAS
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
Fax (850) 894-4999


Dated: July 11, 2002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of himself
and others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

      Defendant/Third-Party Plaintiff,

v.

COMMUNITY CARE NETWORK, INC.
doing business as CCN,

      Third-Party Defendant.

————————————————————

ULTRA OPEN MRI CORPORATION, et al., on behalf        01-6778
of themselves and others similarly situated,

      Plaintiffs,

v.

PRUDENTIAL PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Defendant.

————————————————————————

**ORDER**

This **CAUSE** is before the Court on United States Magistrate Judge Lurana S. Snow's Report

and Recommendation (Docket Entry 721 in Case No. 00-6061-Civ-Ferguson) that the Motion of

Defendant Prudential Property and Casualty Insurance Company to Compel Arbitration as to Plaintiff Afield (Docket Entry 610) be denied.

After due consideration of the Magistrate Judge's Report and Recommendation (Docket Entry 721), each party's Objections thereto, and each party's Response, and the pertinent portions of the record, it is

**ORDERED AND ADJUDGED** that:

1.    Defendant's Objections (Docket Entry 777) are **SUSTAINED**;

2.    Plaintiffs' Objections (Docket Entry 784) are **OVERRULED**;

3.    The Report and Recommendation of United States Magistrate Judge Lurana S. Snow (Docket Entry 721) is **REJECTED** as the opinion of the Court to the extent that the Report and Recommendation holds that the arbitration clause is not enforceable against Plaintiff Afield;

4.    Defendant's Motion to Compel Arbitration as to Plaintiff Afield (Docket Entry 610) is **GRANTED**; and

5.    Plaintiff's Amended Complaint (Docket Entry 561) is **DISMISSED**.

**DONE AND ORDERED** in Chambers in Ft. Lauderdale, Florida, this _____ day of

_____, 2002.


_____
WILKIE D. FERGUSON, JR.
UNITED STATES DISTRICT JUDGE

copies to:
Lurana Snow, United States Magistrate Judge
Eric Lee, Esq.

2

Kathleen Maus, Esq.
Lauren Levy, Esq.
John Aldock, Esq.
Michael Isenman, Esq.
Lisa Harrison, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that I caused copies of the foregoing Defendant Prudential Property and

Casualty Insurance Company's ("PruPAC's") Response to Plaintiffs' Objections to Report and

Recommendation (D.E. 721) and accompanying proposed order to be served upon the counsel in the

accompanying service list by U.S. Mail, postage prepaid, on July 11, 2002.

Lisa M. Harrison, Esq.

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 6/25/02)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
elee@leeamlaw.com
Suite 150
350 N.W. 12th Ave.
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL  32202
(904) 798-3200
(904) 798-3207 Facsimile

2

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL, DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
Rebecca Sack, Esq.
rasack@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH &
ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
Lisa M. Harrison, Esq.
lharrison@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile