UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-CIV-6061-FERGUSON/SNOW

SALVATORE D. LARUSSO, D.C.,
d/b/a FAMILY CHIROPRACTIC
CENTER, on behalf of himself and
all others similarly situated,
                    Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY and COMMUNITY
CARE NETWORK, INC.,
                    Defendants.
_____/

## DEFENDANT LIBERTY MUTUAL'S MOTION TO COMPEL
## ARBITRATION ON ADDITIONAL GROUNDS

Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), by and through its

undersigned counsel, hereby files its Motion to Compel Arbitration on Additional Grounds. On

June 21, 2002, Liberty Mutual served its original motion to compel arbitration, entitled "Liberty

Mutual's Joinder in CCN's Motion to Compel Arbitration" (D.E. 757 in consolidated case

number 00-6061). In its original motion/joinder, Liberty Mutual argued that Plaintiff should be

required to arbitrate his claims against Liberty Mutual because Plaintiff had agreed to have such

claims arbitrated in its PPO agreement with co-defendant CCN. As explained below, in addition

to such a basis to compel arbitration, Plaintiff should also be required to submit his claims to

arbitration because the automobile insurance policy issued by Liberty Mutual requires that

Plaintiff's claims be arbitrated rather than litigated in this forum. In further support thereof,

Liberty Mutual states as follows:

{MI816459;1}
                                    1

## INTRODUCTION

As explained in more detail in its original motion, in this action, Plaintiff, Dr. Salvatore D. Larusso, a licensed chiropractor, raises claims for breach of contract, unjust enrichment, third-party beneficiary breach of contract, RICO violations, declaratory relief, and violations of Fla. Stat. § 627.736. Plaintiff's claims arise out of the method in which Liberty Mutual paid Personal Injury Protection ("PIP") benefits to Plaintiff under Liberty Mutual's automobile insurance policies and in accordance with the preferred provider agreement between Plaintiff and CCN Managed Care, Inc. As explained in its original motion, the agreement between Plaintiff and CCN requires that Plaintiff arbitrate his claims against <u>both</u> CCN and Liberty Mutual, even though Liberty Mutual is not a signatory to that agreement.

In addition to this basis for arbitration, Plaintiff should also be required to arbitrate his claims because the Liberty Mutual policy requires him to do so. The Liberty Mutual policy at issue was issued to Noelle Zulli. A copy of the policy is attached hereto as Exhibit 1. The policy contains the following arbitration provision:

> **ARBITRATION**    If a provider of medical services or supplies has agreed to accept assignment of extended personal injury protection benefits: (1) Any claims dispute, involving medical expenses, between that provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code . . . . .

Policy at Extended Personal Injury Protection Coverage – Florida, § IV(D). As explained below, this provision requires Plaintiff to arbitrate his claims against Liberty Mutual.

## ARGUMENT

**I. PLAINTIFF IS BOUND BY THE ARBITRATION PROVISION CONTAINED IN THE LIBERTY MUTUAL POLICY**

Florida law is clear that where one party claims the status of a third-party beneficiary of a contract that includes an arbitration provision, the third party is bound by that arbitration provision even though the third party is not a signatory to the contract containing the arbitration provision. See Scobee Combs Funeral Home, Inc. v. E.F. Hutton & Co., 711 F. Supp. 605, 607 (S.D. Fla. 1989); Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd., 635 F. Supp. 1503, 1504-05 (S.D. Fla. 1985); Orion Ins. Co. v. Magnetic Imaging Sys., Inc., 696 So. 2d 475, 478 (Fla. 3d DCA 1997) Terminix Int'l Co. v. Ponzio, 693 So. 2d 104, 109 (Fla. 1st DCA 1997); see also Livingston v. State Farm Mut. Auto. Ins. Co., 774 So. 2d 716, 718 (Fla. 2d DCA 2000) (assignee takes all of the interests of the assignor). In this case, Plaintiff claims that he is a third-party beneficiary of the insurance contract between Liberty Mutual and its insureds. Complaint at ¶ 96. In addition, although it is not specifically pleaded, Plaintiff apparently took an assignment of the insured's rights under the policy so that Plaintiff would bill Liberty Mutual directly and Liberty Mutual would pay the insurance benefits directly to Plaintiff. Id. at ¶¶ 49, 55, 86, 87, Exhibit A. Under Florida law, Plaintiff's status as an alleged third-party beneficiary of the policy, as well as an assignee of the policy, not only provides him with the insurance benefits at issue, but also subjects him to all of the contractual terms and conditions, including the arbitration provision. See Interpool, 635 F. Supp. at 1504-05. Accordingly, Plaintiff is bound by the arbitration provision contained in the Liberty Mutual policy, and must therefore arbitrate his claims against Liberty Mutual.

{MI816459;1}

3

## II.    THE ARBITRATION PROVISION IS ENFORCEABLE

In responding to arguments from other carriers concerning the arbitrability of his claims, Plaintiff has argued that any arbitration agreements between carriers and their insureds, such as the arbitration provision contained in the Liberty Mutual policy, are unenforceable due to the ruling in Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000). In Pinnacle, the Florida Supreme Court held that certain portions of Florida's PIP statute, which required insurers to include arbitration provisions with respect to claims made by medical providers for PIP benefits, were unconstitutional. In an earlier Report and Recommendation, the Magistrate Judge recommended that this Court find that any arbitration provisions included in insurance policies that were issued before Pinnacle was decided are unenforceable. Liberty Mutual, however, respectfully disagrees that such provisions are unenforceable. Contrary to the Magistrate's finding, Liberty Mutual believes that the effect of Pinnacle is not to render contractual arbitration provisions unenforceable, as such an effect would be contrary to existing federal and state law.

In Pinnacle, the Supreme Court addressed the constitutionality of Fla. Stat. § 627.736(5), which required automobile insurers to include in all automobile insurance policies a provision that required medical providers who accepted an assignment of insurance benefits from their patients to submit any disputes to arbitration, and included a prevailing party attorney fee award. The Court held that this statute violated the Florida Constitution's access to courts clause. The Court, however, never addressed the validity of the contractual arbitration provisions themselves, but rather, only addressed the validity of the statute that required insurers to include these provisions in their policies. In Livingston v. State Farm Mut. Auto. Ins. Co., 774 So. 2d 716, 718 (Fla. 2d DCA 2000), the court noted that Pinnacle did not address the issue of whether such

{MI816459;1}

4

contractual arbitration agreements are valid. Moreover, in <u>Orion Ins. Co. v. Magnetic Imaging Sys., Inc.</u>, 696 So. 2d 475 (Fla. 3d DCA 1997) and <u>Fortune Ins. Co. v. USA Diagnostics, Inc.</u>, 684 So. 2d 208 (Fla. 4th DCA 1996), the court held that contractual arbitration agreements contained in insurance policies are a separate and independent basis for compelling arbitration outside of the statutorily-mandated arbitration requirement. Accordingly, even though <u>Pinnacle</u> struck down the Florida statute requiring insurers to include arbitration provisions in their policies, the case did not render the contractual agreements themselves unenforceable.

In addition, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 <u>et seq.</u>, preempts any state laws concerning arbitration provisions, such that the Florida Supreme Court is without power to invalidate the arbitration agreements in question. The FAA provides that a "written provision in any contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," and establishes a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). Moreover, in passing the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims" subject to a contractual arbitration agreement, and preempted the states' ability to "undercut the enforceability of arbitration agreements." <u>Southland v. Keating</u>, 465 U.S. 1, 10, 16 (1984).

In sum, as long as there is a written contract evidencing a transaction involving commerce, then the only state law limitation to the enforcement of the arbitration provision is

{MI816459:1}

5

where the contract may be invalidated on general grounds that exist in law or equity for revoking contracts. Southland, 465 U.S. at 10-11. Such an exception does not apply to this case. First, there is no doubt that the transactions in this case involve interstate commerce – Plaintiff admits this fact in his Complaint. See Complaint at ¶¶ 103, 106, 115, 125, 131, 138, 154. Second, the Pinnacle decision was based on a finding that the statute in question violated the Florida Constitution's access to courts clause, not on any fraudulent inducement, adhesion contract or other similar theory for voiding the arbitration provisions. See Pinnacle, 753 So. 2d at 57. Accordingly, even if the Pinnacle decision were to be construed as attempting to invalidate the contractual arbitration agreement contained in the Liberty Mutual insurance policy (which it cannot), such an attempted invalidation is not effective in this case, as the FAA's preemptive force prohibits any state law attempt to do so. See Southland, 465 U.S. at 10-11, 16; see also Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (FAA preempts state law concerning arbitration agreements); S+L+H S.p.A. v. Miller-St. Naziarz, Inc., 988 F.2d 1518, 1525-26 (7th Cir. 1993) (same); Osterneck v. Merrill Lynch, 841 F.2d 508, 510-12 (3d Cir. 1988) (same); Haluska v. RAF Fin. Corp., 875 F. Supp. 825, 827-28 (N.D. Ga. 1994) (same); Securities Indus. Ass'n v. Lewis, 751 F. Supp. 205, 206-08 (S.D. Fla. 1990) (same). As a result, notwithstanding the holding in Pinnacle, the arbitration agreement contained in the Liberty Mutual policy in enforceable.

Furthermore, in her earlier Report and Recommendation, the Magistrate Judge differentiated between policies issued before Pinnacle was decided and those that were issued after Pinnacle was decided. The Magistrate recommended that the arbitration provisions contained in policies issued after Pinnacle was decided should be held enforceable, but those that were issued before should be held unenforceable. Even assuming such a distinction, however,

{MI816459;1}

6

Plaintiff should still be required to submit his claims to arbitration, as Plaintiff has brought this case as a class action. Although the particular claim that was attached to the complaint in this case was for a policy that was issued prior to <u>Pinnacle</u>, the class that Plaintiff purports to represent includes individuals with policies that were issued after <u>Pinnacle</u> was decided. Accordingly, under the Magistrate's reasoning, at least a portion of the class Plaintiff seeks to represent falls into the post-<u>Pinnacle</u> category, and their claims would be subject to arbitration. Therefore, even if the Court were to adopt the Magistrate's reasoning with respect to the distinction between pre-<u>Pinnacle</u> and post-<u>Pinnacle</u> policies, Plaintiff is still required to submit at least a portion of his claims to arbitration.

## III.    LIBERTY MUTUAL HAS NOT WAIVED ITS RIGHT TO SEEK ARBITRATION

In another attempt to avoid enforcement of the arbitration agreements at issue, Plaintiff has argued in several of the other consolidated cases that insurance carriers have waived their right to arbitrate. Such an assertion is simply incorrect.

A party will be deemed to have waived its right to arbitrate only where: (1) it substantially participates in litigation; (2) to a point that its inconsistent with an intent to arbitrate; and (3) the opposing party is prejudiced as a result. <u>See, e.g.</u>, <u>Brown v. ITT Consumer Fin. Corp.</u>, 211 F.3d 1217, 1222 (11th Cir. 2000). A party's filing of a motion to dismiss, filing of an answer, and participation in discovery will not, individually or collectively, be considered "substantial participation" in litigation. <u>Rush v. Oppenheimer & Co.</u>, 779 F.2d 885, 888-89 (2d Cir. 1985).

A finding of a party's waiver of its right to arbitrate is disfavored and should not be inferred lightly. <u>Id.</u> at 887; <u>Wilson v. Par Builders II, Inc.</u>, 879 F. Supp. 1187, 1189 (M.D. Fla. 1995). <u>Accord</u> <u>Adams v. Merrill Lynch Pierce Fenner & Smith, Inc.</u>, 888 F.2d 696, 701 (10th

{MI816459;1}

7

Cir. 1989) ("Parties seeking to prove waiver of arbitration obligations bear a heavy burden; they must show substantial prejudice"). The mere fact that a party delays before seeking arbitration does not mechanically result in a finding of waiver, in the absence of prejudice to the opposing party. See, e.g., Brown, 211 F.3d at 1222-23; Adams, 888 F.2d at 701-02; Rush, 779 F.2d at 887.

In this matter, Liberty Mutual has not substantially participated in the litigation. It initially filed a motion to dismiss, and once that motion was denied, Liberty Mutual filed an answer to the complaint. The only other litigation activities in which Liberty Mutual has engaged is to oppose consolidation of this case with others, seek a stay pending the resolution of the arbitration proceedings, file objections to Plaintiff's discovery (discovery which Liberty Mutual argued was improper and premature), and seeking protective orders to prevent discovery of Liberty Mutual. Liberty Mutual has not propounded any discovery requests, has not taken any depositions, and has not in any way attempted to litigate this case towards its conclusion, particularly in light of all of the pending motions for arbitration and to stay discovery. In fact, Liberty Mutual's actions in this case are no more substantial than than the activities in cases where a party was found not to have waived its right to arbitrate. See Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656 (5th Cir. 1995) (no substantial participation where defendant removed action to federal court, filed motion to dismiss, filed answer, filed counterclaim, filed motion to stay, and exchanged Rule 26 discovery); Walker v. J.C. Bradford & Co., 938 F.2d 575 (5th Cir. 1991) (no substantial participation where it removed case to federal court, answered complaint, served request for production and served interrogatories); Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985) (no substantial participation where defendant filed motion to dismiss, filed answer and affirmative defenses, and engaged in extensive discovery). Indeed, this

{MI816459;1}

8

participation is significantly less than in those cases in which a waiver has been found.    See

Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574 (2d Cir. 1991) (substantial

participation occurred where party filed two answers, conducted extensive deposition discovery,

filed motion for judgment on the pleadings and motion for partial summary judgment, and did

not seek arbitration until four months before trial).

Moreover, Plaintiff has not suffered any prejudice as a result of Liberty Mutual's actions.

As explained above, all of Liberty Mutual's actions have been defensive pleadings taken in

response to Plaintiff's actions, or motions filed in an attempt to stop this litigation from

proceeding so that no party, including Plaintiff, would be forced to participate in unnecessary

litigation.    Plaintiff has not been required to respond to discovery, produce documents, produce

witnesses for deposition, or take any other action as a result of Liberty Mutual's actions.    Any

time or expenses incurred by Plaintiff have been caused solely by Plaintiff's own actions, not

those of Liberty Mutual.    Moreover, the grounds that Liberty Mutual raises to compel arbitration

have been litigated by numerous insurers in this consolidated case and are not new to Plaintiff.

Plaintiff has therefore suffered no prejudice as a result of Liberty Mutual's actions.    See Rush,

779 F.2d at 888-90 (even though plaintiff incurred some expense for discovery and motion

practice during period before defendant sought arbitration, plaintiff was not sufficiently

prejudiced by such expenses or delay to warrant finding of waiver).    Accordingly, because

Liberty Mutual has not substantially participated in this litigation and because Plaintiff has not

been prejudiced by Liberty Mutual's actions, Liberty Mutual has not waived its right to

arbitration.

{MI816459;1}

## CONCLUSION

Plaintiff should be required to arbitrate its claims against Liberty Mutual because the insurance policy at issue requires such arbitration. Although Plaintiff is not a party to the insurance policy, under Florida law, Plaintiff is bound to the arbitration agreement contained therein. Moreover, the arbitration agreement is enforceable despite the Supreme Court's holding in Pinnacle. Finally, Liberty Mutual has not waived its right to seek arbitration, as it has not substantially participated in the litigation and Plaintiff has not suffered any prejudice.

**WHEREFORE,** Defendant Liberty Mutual Insurance Company respectfully requests that the Court compel Plaintiff to arbitrate all claims against Liberty Mutual.

Respectfully submitted,

**AKERMAN, SENTERFITT & EIDSON, P.A.**
SunTrust International Center, 28th Floor
One Southeast Third Avenue
Miami, Florida 33131-1704
Phone: (305) 374-5600
Fax: (305) 374-5095

By:_____
MARK S. SHAPIRO
Florida Bar No.: 894631
mshapiro@akerman.com
GARY J. GUZZI
Florida Bar No.: 159440
gguzzi@akerman.com

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was sent by U.S. Mail to counsel listed below on this ___18___ day of July, 2002.

_____
Attorney

{MI816459;1}

10

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 5/21/02)

**Co-Lead Counsel for Class Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
elee@leeamlaw.com

Suite 150
350 N.W. 12th Ave.
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty, Continental, Deerbrook**
RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

{MI816459;1}

11

SWARTZ CAMPBELL
DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm
Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMANSENTERFITT
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for: Hartford,
Metropolitan, Integon**

AKERMAN, SENTERFITT
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH &
ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE
PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell
Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road,
Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American
International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

{MI816459;1}

12

# EXHIBIT 1



**Liberty Mutual Group**

**P.O. Box 897**
**Gainesville, GA 30503**

July 10, 2002

# 518 Ft Lauderdale FL
Claims
Att: Tracy Hall

Re: Noelle Zulli
    AO2-251-970013-00 9

Per your request, enclosed is a copy of the Policy Declarations for the above-named policyholder.

I certify that the enclosed is a true representation of the policy as it exists.

Sincerely,

Cheryle A Livingston
Sr Business Analyst

cc:  file

CAL/mm
Enclosures

REWRITE
PAGE 1 OF 2

U

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**
**LIBERTYGUARD AUTO POLICY DECLARATIONS**
**BOSTON, MASSACHUSETTS**

POLICY NUMBER

+ AO2-251-970013-005 9    THESE DECLARATIONS EFFECTIVE    03/16/95

NAME INSURED AND MAILING ADDRESS

NOELLE ZULLI
12055 REGAL CT N
WEST PALM BEACH FL  33414-5747

FOR SERVICE CALL OR WRITE:

6363 NW 6TH WAY SUITE 500
FORT LAUDERDALE FL  33309
305-771-4010/800-542-0055
CLAIMS: 800-542-0055

POLICY PERIOD: 03/16/95 TO 03/16/96  12:01AM STANDARD TIME AT THE ADDRESS OF THE
NAMED INSURED AS STATED IN THE POLICY.  THIS POLICY SHALL EXPIRE ON THE DATE
SHOWN EXCEPT THAT IT MAY BE CONTINUED IN FORCE FOR SUCCESSIVE POLICY PERIODS BY
THE PAYMENT OF THE REQUIRED RENEWAL PREMIUM.  EACH SUCH POLICY PERIOD SHALL BE
FOR THE PERIOD SPECIFIED IN THE RENEWAL DECLARATIONS.

COVERAGES AND LIMITS UNDER YOUR AUTO POLICY:    COVERAGE IS PROVIDED WHERE A
                                                PREMIUM IS SHOWN FOR THE COVERAGE
PART                                            VEH1
A.LIABILITY                                     $   382
  BODILY INJURY          $  100,000 EACH PERSON
                         $  300,000 EACH ACCIDENT
  PROPERTY DAMAGE        $   50,000 EACH ACCIDENT
B.MEDICAL PAYMENTS       $    5,000 EACH PERSON  $    12
C.UNINSURED MOTORISTS                            $    49
  BODILY INJURY          $   10,000 EACH PERSON
                         $   20,000 EACH ACCIDENT

EXTENDED PERSONAL INJURY PROTECTION (PIP)       $   111

D.COVERAGE FOR DAMAGE TO YOUR AUTO
  OTHER THAN COLLISION                           $    42
  ACTUAL CASH VALUE LESS DEDUCTIBLE SHOWN:
      VEH 1 $ 250
  COLLISION                                      $    97
  ACTUAL CASH VALUE LESS DEDUCTIBLE SHOWN:
      VEH 1 $ 500

OPTIONAL COVERAGE
  TOWING AND LABOR COST - $50 EACH DISABLEMENT   $     4
  EXTENDED TRANSPORTATION EXPENSES $15/$450      $    12

ANNUAL PREMIUM PER VEHICLE:                      $   709

TOTAL ANNUAL POLICY PREMIUM:                     $   709.00

ENDORSEMENTS ATTACHED TO YOUR POLICY:
2330              CHANGE OF FACSIMILE SIGNATURE
PP 05 66 02 93    EXTENDED PERSONAL INJURY PROTECTION COVERAGE - FLORIDA
PP 04 07 01 88    SPLIT UNINSURED MOTORISTS LIMITS (STACKED) - FLORIDA
AS2029 05 94      UNINSURED MOTORIST COVERAGE - FLORIDA*(STACKED)
PP 01 84 06 92    AMENDMENT OF POLICY PROVISIONS - FLORIDA
PP 03 03 04 86    TOWING AND LABOR COST COVERAGE
PP 03 09 04 86    SPLIT LIABILITY LIMITS
PP 03 26 08 86    LIABILITY COVERAGE EXCLUSION ENDORSEMENT
AS1046 12 89      AUTOMATIC TERMINATION ENDORSEMENT

CONTINUED NEXT PAGE

AUTO 3079 (Ed.4-93)OFFICE

| 507 | 0000 | 3 | 87 | 10 | | 0 | 03/28/95 | 00 | 00 | | RY | 1 | 01 | 5013 | 050 | | 8 | N00 | 8 | 00 | 1 | 04 | N |

JACKET 3075 1289      REWRITE
570X570B92MARTIN

RESTRAINT 3000

U

REWRITE
PAGE 2 OF 2

**LIBERTY MUTUAL FIRE INSURANCE COMPANY**
**LIBERTYGUARD AUTO POLICY DECLARATIONS**
**BOSTON, MASSACHUSETTS**

POLICY NUMBER

+ AO2-251-970013-005 9     THESE DECLARATIONS EFFECTIVE   03/16/95

NAME INSURED AND MAILING ADDRESS
NOELLE ZULLI
12055 REGAL CT N
WEST PALM BEACH FL  33414-5747

---

ENDORSEMENTS ATTACHED TO YOUR POLICY CONTINUED

PP 03 25 08 86  FULL WINDSHIELD COVERAGE
PP 03 02 12 89  EXTENDED TRANSPORTATION EXPENSES COVERAGE

VEHICLES COVERED BY YOUR POLICY:

| VEH | YR | MAKE | MODEL | IDENTIFICATION # | CLASS | STATE | RATING TERRITORY | RATING SYMBOL |
|-----|-----|------|-------|------------------|-------|-------|------------------|---------------|
| 1   | 88  | TOYO | CAMRY | JT2SV21E9J3283085 | 12   | FL 09 | 035              | 08            |

YOUR PREMIUM REFLECTS THE FOLLOWING.  IF INCORRECT, CONTACT YOUR SERVICE OFFICE.

CLASS  12 NO YOUTHFUL OPERATORS - COMMUTING 3 OR MORE BUT LESS THAN 10 MILES
        ONE WAY - NO PRINCIPAL OPERATOR AGE 65 OR OVER.

VEH 1 GARAGED AT NAMED INSURED'S ADDRESS

SAFE DRIVER INSURANCE PLAN:
  NO CHARGES APPLY-SC0

THE FOLLOWING DISCOUNTS DISPLAYED WITH "YES" HAVE BEEN APPLIED TO YOUR
POLICY.  THE DISCOUNTS INDICATED AS "NO" HAVE NOT BEEN APPLIED TO YOUR
POLICY.  IF YOU BELIEVE THAT YOU MAY BE ELIGIBLE FOR ANY DISCOUNT(S)
LISTED AS "NO", PLEASE CONTACT YOUR LOCAL SALES OR SERVICE REPRESENTATIVE
SHOWN ON THE FIRST PAGE OF YOUR POLICY DECLARATIONS.

| DISCOUNTS: | VEH #1 |
|------------|--------|
| PREFERRED DRIVER A | YES |
| ACCOUNT DISCOUNT | YES |
| MULTI-CAR | NO |
| GOOD STUDENT | NO |
| DEFENSIVE DRIVER COURSE | NO |
| DRIVER TRAINING | NO |
| ANTI-THEFT DEVICE | NO |
| PASSIVE RESTRAINT | YES |
| (MOTORIZED SEAT BELT AND/OR AIR BAGS) | |
| ANTI-LOCK BRAKES | NO |

OPERATOR INFORMATION:
| NO. | NAME | DATE OF BIRTH |
|-----|------|---------------|
| 1 | NOEL ZULLI | 03/10/68 |

PRE-INSPECTION
  VEH 1       INSPECTION WAIVED (4)

AUTO 3079 (Ed 4-93)OFFICE

| 507 | 0000 | 3 | 87 | 10 | | 0 | 03/28/95 | 00 | 00 | | RY | 1 | 01 | 5013 | 050 | | 8 | N00 | 8 | 00 | 1 | 04 | N |
|-----|------|---|----|----|--|---|----------|----|----|--|----|---|----|------|-----|--|---|-----|---|----|---|----|---|
| JACKET 3075 1289 | | | | | | | REWRITE | | | | | | | | | | | | | | | | |

570X570B92MARTIN

RESTRAINT 3000

**STACKING/ELECTION OF NON-STACKED COVERAGE** (Do not complete if you have rejected Uninsured Motorists or have only one vehicle on your policy).

The Uninsured Motorists Coverage Limits on motor vehicles you insure under this policy will be added together ("stacked") for all covered injuries to increase the total Uninsured Motorists Coverage Limits available to an injured insured.

However you have the option to purchase, at a reduced premium, a "non-stacked" (limited) type of Uninsured Motorists Coverage. Under this option the Uninsured Motorists Coverage Limits on the vehicle you insure will not be added together to increase the limit of Uninsured Motorists Coverage available to an injured person for any one accident.

Under "non-stacked" Uninsured Motorists Coverage if a covered injury occurs in a vehicle owned by you and any resident family member, this policy will apply only to the extent of the Uninsured Motorists Coverage Limit (if any) which applies to the vehicle you or your resident family member(s) were occupying at the time of the accident.

If you or your resident family member are occupying a vehicle that is not owned by you or a resident family member, the injured insured will be entitled to the highest limit of Uninsured Motorists Coverage afforded on any one vehicle as to which the injured insured is a named insured or family member. In this latter event, such coverage will only cover those damages over and above the coverage on the vehicle you were occupying when injured.

If, at any time of the accident the injured person is not occupying a motor vehicle, the injured person is entitled to the highest limit of Uninsured Motorists Coverage on any one vehicle afforded by this policy if the injured person is a named insured or a resident family member of the named insured's household.

If you or a resident family member is injured while occupying any vehicle owned by you or a resident family member for which Uninsured Motorists Coverage was not purchased, the Uninsured Motorists Coverage provided by this policy will not apply to you or the resident family member.

☐ I select the stacked form of Uninsured Motorists Coverage.

☐ I select the non-stacked form of Uninsured Motorists Coverage.

Please refer to your local Sales Representative for information regarding the current Charge Per Vehicle for the above.

I understand that my selection of the above options applies to my new liability insurance policy and future renewals or replacements of such policy. If I decide to select another option at some future time, I must let the Company know in writing. I also understand that any rejection or selection of lower limits of Uninsured Motorists Coverage I make is on behalf of all persons insured under this policy.

Signature Named Insured _Noelle Zulli_    Date _3-7-95_

Name (Print Please) _NOELLE   ZULLI_    Policy Number _A02-251-_____-00-9_  _990013_

Address _12055 Regal CT. N WEST PALM BEACH FL_    _33414_

REC'D
MAR 1 3 1995
FL.

PMKT 79 R2 (Ed. 10/90)

# IMPORTANT NOTICE —
# FLORIDA UNINSURED MOTORISTS INSURANCE



**LIBERTY MUTUAL.**

**YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORISTS LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.**

Florida law requires that we provide you with Uninsured Motorists Coverage up to your policy's bodily injury liability limits unless you request lower limits or reject this coverage altogether.

These pages describe the benefits provided and your options. Please study them and your policy carefully because you are the best person to decide what coverage you require to meet your insurance needs.

**UNINSURED MOTORISTS COVERAGE**

APPLIES TO:     Motor Vehicles

COVERS:     You
Resident Family Members
You and family members as pedestrians    *AO-13*
Other people in your car

BENEFITS:     Uninsured Motorists Coverage provides benefits for damages of bodily injury, sickness or disease, including death, that you are legally entitled to recover from:
- the owner or operator of a uninsured motor vehicle
- a hit and run motor vehicle whose operator or owner cannot be identified.
- an operator whose bodily injury liability insurance or bond limits are less than the amount of bodily injury losses incurred.
- the owner or operator whose insurance or bond company denies coverage or is insolvent.

Uninsured Motorists Coverage may pay damages for pain, suffering, mental anguish and inconvenience that you are legally entitled to recover if the injury of disease consists in whole or part of:

    a. significant and permanent loss of an important bodily function, or,
    b. permanent injury, or,
    c. significant and permanent scarring or disfigurement, or,
    d. death

LIMITS:     Your Uninsured Motorists Coverage Limits will equal the Bodily Injury Liability Limits, unless you select or have selected in writing lower limits of Uninsured Motorists Coverage or have rejected Uninsured Motorists Coverage entirely. Uninsured Motorists Coverage will pay over and above, but will not duplicate, benefits available from other sources. Uninsured Motorists Coverage will pay the difference between such benefits, if any, and the damages sustained up to your coverage limits.

I wish to purchase the limit of Uninsured Motorists Coverage checked below (Note: this limit may not exceed your bodily injury liability limit):

| | | |
|---|---|---|
| ☒ $10,000/20,000 | ☐ $ 35,000/35,000 | ☐ $ 100,000/300,000 |
| ☐ $25,000/25,000 | ☐ $ 50,000/50,000 | ☐ $ 250,000/500,000 |
| ☐ $25,000/50,000 | ☐ $ 50,000/100,000 | ☐ $ 300,000/300,000 |
| ☐ $30,000/30,000 | ☐ $100,000/100,000 | ☐ $ 500,000/500,000 |
| | | ☐ $1,000,000/1,000,000 |

☐ I reject Uninsured Motorists Coverage entirely.



# LibertyGuard

# Auto Policy

**Please read your policy and each endorsement carefully.**

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**

Liberty Mutual
Fire Insurance Company Boston

**LIBERTYGUARD AUTO POLICY**
**QUICK REFERENCE**
**DECLARATIONS PAGE**
Your Name and Address
Your Auto or Trailer
Policy Period
Coverage and Amounts of Insurance

Beginning
On Page

Agreement ......................................................................................................................... 1
Definitions ........................................................................................................................ 1
**PART A - LIABILITY COVERAGE**
Insuring Agreement ...................................................................................................... 2
Supplementary Payments ........................................................................................... 2
Exclusions ...................................................................................................................... 2
Limit of Liability ........................................................................................................... 3
Out of State Coverage .................................................................................................. 3
Financial Responsibility ............................................................................................... 3
Other Insurance ............................................................................................................ 3
**PART B - MEDICAL PAYMENTS**
    **COVERAGE**
Insuring Agreement ...................................................................................................... 3
Exclusions ...................................................................................................................... 3
Limit of Liability ........................................................................................................... 4
Other Insurance ............................................................................................................ 4
**PART C - UNINSURED MOTORISTS**
    **COVERAGE**
Insuring Agreement ...................................................................................................... 4
Exclusions ...................................................................................................................... 5
Limit of Liability ........................................................................................................... 5
Other Insurance ............................................................................................................ 5
Arbitration ..................................................................................................................... 5
**PART D - COVERAGE FOR DAMAGE**
    **TO YOUR AUTO**
Insuring Agreement ...................................................................................................... 6
Transportation Expenses ............................................................................................. 6
Exclusions ...................................................................................................................... 6
Limit of Liability ........................................................................................................... 7
Payment of Loss ............................................................................................................ 8
No Benefit to Bailee ...................................................................................................... 8
Other Sources of Recovery .......................................................................................... 8
Appraisal ........................................................................................................................ 8
**PART E - DUTIES AFTER AN**
    **ACCIDENT OR LOSS**
General Duties ............................................................................................................... 8
Additional Duties for Uninsured Motorists
Coverage ........................................................................................................................ 8
Additional Duties for Coverage for Damage to
Your Auto ...................................................................................................................... 8
**PART F - GENERAL PROVISIONS**
Bankruptcy .................................................................................................................... 8
Changes .......................................................................................................................... 8
Fraud .............................................................................................................................. 9
Legal Action Against Us .............................................................................................. 9
Our Right To Recover Payment .................................................................................. 9
Policy Period and Territory ......................................................................................... 9
Termination ................................................................................................................... 9
Transfer Of Your Interest In This Policy ................................................................. 10
Two Or More Auto Policies ....................................................................................... 10
**\*MUTUAL POLICY CONDITIONS**

\* These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as
the insurer.

# AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:
  1. The "named insured" shown in the Declarations and:
  2. The spouse if a resident of the same household.

B. "We," "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:
  1. Under a written agreement to that person; and
  2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks or boldfaced when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:
  1. Private passenger auto; or
  2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:
  1. Any vehicle shown in the Declarations.
  2. Any of the following types of vehicles on the date you become the owner:
    a. a private passenger auto; or

b. a pickup or van that:
  (1) has a Gross Vehicle Weight of less than 10,000 lbs.; and
  (2) is not used for the delivery or transportation of goods and materials unless such use is:
    (a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or
    (b) for farming or ranching.

This provision (J.2.) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

  3. Any "trailer" you own.
  4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
    a. breakdown;            d. loss; or
    b. repair;               e. destruction.
    c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgement interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

    **1.** You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

    **2.** Any person using "your covered auto."

    **3.** For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

    **4.** For any auto or "trailer." other than "your covered auto." any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability. we will pay on behalf of an "insured:"

    **1.** Up to $250 for the cost of bail bonds required because of an accident. including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

    **2.** Premiums on appeal bonds and bonds to release attachments in any suit we defend.

    **3.** Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

    **4.** Up to $50 a day for loss of earnings. but not other income. because of attendance at hearings or trials at our request.

    **5.** Other reasonable expenses incurred at our request.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any person:

    **1.** Who intentionally causes "bodily injury" or "property damage."

    **2.** For "property damage" to property owned or being transported by that person.

    **3.** For "property damage" to property:

        a.  rented to;

        b.  used by; or

        c.  in the care of;

    that person.

    This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

    **4.** For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

    **5.** For that person's liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

    **6.** While employed or otherwise engaged in the "business" of:

        a.  selling;        d.  storing; or

        b.  repairing;     e.  parking;

        c.  servicing;

    vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership. maintenance or use of "your covered auto" by:

        a.  you;

        b.  any "family member;" or

        c.  any partner, agent or employee of you or any "family member."

    **7.** Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

        a.  private passenger auto;

        b.  pickup or van that you own; or

        c.  "trailer" used with a vehicle described in a. or b. above

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:

   a. is an insured under a nuclear energy liability policy; or

   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. American Nuclear Insurers;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than "your covered auto," which is:

   a. owned by you; or

   b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:

   a. owned by any "family member;" or

   b. furnished or available for the regular use of any "family member."

   However, this exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

   a. owned by a "family member;" or

   b. furnished or available for the regular use of a "family member."

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured."

   We will pay only those expenses incurred within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member:"

   a. while "occupying;" or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

### EXCLUSIONS

We do not provide Medical Payments Coverage for any person for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" our covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by you; or
   b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by any "family member;" or
   b. furnished or available for the regular use of any "family member."

   However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:
   a. private passenger auto;
   b. pickup or van that you own; or
   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:
   a. discharge of a nuclear weapon (even if accidental);
   b. war (declared or undeclared);
   c. civil w.
   d. insurrection; or
   e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
   a. nuclear reaction;
   b. radiation; or
   c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:
   1. "Insureds;"
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Part A or Part C.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or Part C.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"
   1. Sustained by an "insured;" and
   2. Caused by an accident.

   The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

   Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:
   1. You or any "family member."
   2. Any other person "occupying" "your covered auto."
   3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
   1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any "family member;"

   b. a vehicle which you or any "family member" are "occupying;" or

   c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" claim without our consent.

3. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (A.3.) does not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

C. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

   a. workers' compensation law; or

   b. disability benefits law.

C. Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this Part; or

2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amou.. of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

| | |
|---|---|
| 1. Missiles or falling objects; | 7. Malicious mischief or vandalism; |
| 2. Fire; | 8. Riot or Civil commotion; |
| 3. Theft or larceny; | |
| 4. Explosion or earthquake; | 9. Contact with bird or animal; or |
| 5. Windstorm; | 10. Breakage of glass. |
| 6. Hail, water or flood; | |

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. breakdown;   d. loss; or
b. repair;   e. destruction.
c. servicing;

### TRANSPORTATION EXPENSES

In addition we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto." This applies only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. Loss of use expenses for which you become legally responsible in the event of the total theft of a "non-owned auto." This applies only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto."

We will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

### EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

a. wear and tear;

b. freezing;

c. mechanical or electrical breakdown or failure; or

d. road damage to tires.

This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:

a. radioactive contamination;

b. discharge of any nuclear weapon (even if accidental);

    c.  war (declared or undecla. .d);

    d.  civil war;

    e.  insurrection; or

    f.  rebellion or revolution.

**4.**  Loss to:

    a.  any electronic equipment designed for the reproduction of sound, including, but not limited to:

      (1)  radios and stereos;

      (2)  tape decks; or

      (3)  compact disc players;

    b.  any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

      (1)  citizens band radios;

      (2)  telephones;

      (3)  two-way mobile radios;

      (4)  scanning monitor receivers;

      (5)  television monitor receivers;

      (6)  video cassette recorders;

      (7)  audio cassette recorders; or

      (8)  personal computers;

    c.  tapes, records, discs, or other media used with equipment described in a. or b.; or

    d.  any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

    a.  equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in "your covered auto" or any "non-owned auto;" or

    b.  any other electronic equipment that is:

      (1)  necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

      (2)  an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

**5.**  Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities because you or any "family member:"

    a.  engaged in illegal activities; or

    b.  failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

**6.**  Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

    a.  acquire during the policy period; and

    b.  ask us to insure within 30 days after you become the owner.

**7.**  Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**8.**  Loss to:

    a.  awnings or cabanas; or

    b.  equipment designed to create additional living facilities.

**9.**  Loss to equipment designed or used for the detection or location of radar.

**10.**  Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

    a.  special carpeting and insulation, furniture or bars;

    b.  facilities for cooking and sleeping;

    c.  height-extending roofs; or

    d.  custom murals, paintings or other decals or graphics.

**11.**  Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

    a.  selling;        d.  storing; or

    b.  repairing;     e.  parking;

    c.  servicing;

vehicles designed for use on public highways. This includes road testing and delivery.

**12.**  Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

**LIMIT OF LIABILITY**

**A.** Our limit of liability for loss will be the lesser of the:

    **1.** Actual cash value of the stolen or damaged property; or

    **2.** Amount necessary to repair or replace the property.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or
2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any cover _ provided by the owner of the "non-owned auto;"
2. Any other applicable physical damage insurance;
3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

---

# PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
   a. to physical exams by physicians we select. We will pay for these exams.
   b. to examination under oath and subscribe the same.
4. Authorize us to obtain:
   a. medical reports; and

b. other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.
2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.
2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.
3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

# PART F - GENERAL PROVISIONS

## BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

## CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured veh...es;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIC_ AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. returning this policy to us; or

b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. at least 10 days notice:

(1) if cancellation is for nonpayment of premium; or

(2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

a. for nonpayment of premium; or

b. if your driver's license or that of:

(1) any driver who lives with you; or

(2) any driver who customarily uses "your covered auto:"

has been suspended or revoked. This must have occurred:

(1) during the policy period; or

(2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

c. if the policy was obtained through material misrepresentation.

**B. Nonrenewal.** If we decide not .enew or continue this policy, we will mail notice to the named insured shown in the declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period is other than 1 year, we will have the right not to renew or continue it only at each anniversary of its original effective date.

**C. Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1. If the law in effect in your state at the time this policy is issued, renewed or continued:

   a. requires a longer notice period;

   b. requires a special form of or procedure for given notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this poli.  .s cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."

**B.** Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## *MUTUAL POLICY CONDITIONS

You are a member of the Liberty Mutual Fire Insurance company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

PRESIDENT

SECRETARY

Includes Copyrighted material of Insurance Services Office, Inc.,
with its permission.
Copyright, Insurance Services Office, Inc., 1988

## CHANGE OF FACSIMILE SIGNATURE

The facsimile signature of Dexter R. Legg is hereby substituted for the facsimile signature of Barry S. Gilvar wherever it may appear in this policy or in any endorsement issued to form a part hereof.

> Liberty Mutual Insurance Company
> Liberty Mutual Fire Insurance Company
> Liberty Insurance Corporation
> The First Liberty Insurance Corporation
> LM Insurance Corporation

*Dexter R. Legg*
SECRETARY

*Edmund F. Kelly*
PRESIDENT

2330 R1

POLICY NUMBER:                                                    **PERSONAL AUTO**
                                                                 **PP 05 66 02 93**

# EXTENDED PERSONAL INJURY PROTECTION COVERAGE - FLORIDA

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by this endorsement.

### SCHEDULE

| Benefits | Limit Of Liability |
|---|---|
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Replacement Services | No specific dollar amount |
| Accidental Death | $ 5,000 |
| Maximum Limit For The Total Of All Extended Personal Injury Protection Benefits | $10,000 |

**EXCLUSION OF WORK LOSS**

☐ If indicated to the left or in the Declarations, work loss will not be provided for the "named insured" and any dependent "family member".

## I. DEFINITIONS

The Definitions section is amended as follows:

A. For the purposes of this endorsement, a "motor vehicle" shall be deemed to be owned by a person if that person:

  1. Holds the legal title to such vehicle.

  2. Is a debtor having the right to possession, if such vehicle is the subject of a security agreement.

  3. Is a lessee having the right to possession, if such vehicle is the subject of a lease which:

     a. Has an option to purchase; and

     b. Is for a period of at least 6 months.

  4. Is a lessee having the right to possession, if such vehicle is the subject of a lease which:

     a. Does not have an option to purchase;

     b. Is for a period of at least 6 months; and

     c. Requires the lessee to secure insurance.

B. The following definitions are replaced:

  1. "Family member" means a person related to the "named insured" by blood, marriage or adoption who is usually a resident of the "named insured's" household. This includes a ward or foster child.

  2. "Occupying" means:

     a. In or upon;

     b. Entering into; or

     c. Alighting from.

  3. "Your covered auto" means a "motor vehicle" owned by the "named insured" and for which security is required to be maintained under the Florida Motor Vehicle No-Fault Law, and either:

     a. A premium is charged; or

     b. It is a trailer, other than a mobile home, designed for use with a "motor vehicle".

C. The following definitions are added:

  1. "Motor vehicle" means:

     a. Any self-propelled vehicle with 4 or more wheels which is:

        (1) Designed; and

        (2) Required to be licensed;

        for use on Florida highways.

     b. Any trailer or semi-trailer designed for use with such vehicle.

     However, "motor vehicle" does not include:

     a. Any "motor vehicle" which is:

        (1) Used in mass transit or public school transportation;

        (2) Designed to transport more than 5 passengers (excluding the operator); and

**PP 05 66 02 93**          Copyright, Insurance Services Office, Inc., 1992          **Page 1 of 5**

(3) Owned by a:

    (a) Municipality;

    (b) Transit or public school transportation authority; or

    (c) Political subdivision of the state.

b. A mobile home.

2. "Named insured" means:

    a. The person named in the Declarations; or

    b. That person's spouse, if a resident of the same household.

3. "Pedestrian" means a person who is not "occupying" a self-propelled vehicle.

D. "Insured" as used in this endorsement means:

1. The "named insured" or any "family member" while:

    a. "Occupying"; or

    b. A "pedestrian" struck by;

    a "motor vehicle".

2. Any other person while:

    a. "Occupying"; or

    b. A "pedestrian" struck by;

    "your covered auto".

## II. EXTENDED PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT

A. We will pay, in accordance with the Florida Motor Vehicle No-Fault Law, extended personal injury protection benefits to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the ownership, maintenance or use of a "motor vehicle".

B. Subject to the limits shown in the Schedule or Declarations, extended personal injury protection benefits consist of the following:

1. Medical expenses. Reasonable expenses for:

    a. Necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services; and

    b. Prosthetic devices.

This includes necessary remedial treatment and services, recognized and permitted under state law, for an "insured" who relies on spiritual means through prayer alone for healing in accordance with that "insured's" religious beliefs.

We will pay:

    a. All medical expenses incurred by the "named insured" or any "family member"; and

    b. 80% of medical expenses incurred by any other "insured";

due to "bodily injury".

2. Work loss. With respect to the period of disability of an "insured", any loss of income and earning capacity from that "insured's" inability to work due to "bodily injury". However, work loss does not include any loss after an "insured's" death.

We will pay:

    a. 80% of work loss to or for the "named insured" or any "family member"; and

    b. 60% of work loss to or for any other "insured".

3. Replacement services. With respect to the period of disability of an "insured", all expenses reasonably incurred in obtaining ordinary and necessary services from others instead of those that the "insured" would have performed, without income, for the benefit of his household had he not sustained "bodily injury".

4. Accidental death. A death benefit.

### EXCLUSIONS

A. We do not provide Extended Personal Injury Protection Coverage for any person:

1. While operating "your covered auto" without the "named insured's" express or implied consent.

2. If that person's conduct contributed to his "bodily injury" under any of the following circumstances:

    a. Intentionally causing "bodily injury" to himself; or

    b. While committing a felony.

3. Other than the "named insured", if that person owns a "motor vehicle" for which security is required under the Florida Motor Vehicle No-Fault Law.

4. Other than the "named insured" or any "family member", who is entitled to personal injury protection benefits from a person who owns a "motor vehicle" which is not a "your covered auto" under this policy, or from that vehicle owner's policy.

5. Who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

 Copyright, Insurance Services Office, Inc., 1992 **PP 05 66 02 93**

B. We do not provide Extended Personal Injury Protection Coverage for:

1. The "named insured" or any "family member" while "occupying" a "motor vehicle" which is:

   a. Owned by the "named insured"; and

   b. Not a "your covered auto" under this policy.

2. Any "pedestrian", other than the "named insured" or any "family member", who is not a legal resident of Florida.

## LIMIT OF LIABILITY

A. The limits of liability shown in the Schedule or Declarations for Extended Personal Injury Protection Coverage are the most we will pay to or for each "insured" injured in any one accident, regardless of the number of:

1. "Insureds";

2. Policies or bonds applicable;

3. Vehicles involved; or

4. Claims made.

The maximum limit of liability for the total of all extended personal injury protection benefits shown in the Schedule or Declarations is the total aggregate limit for extended personal injury protection benefits available, to or for each "insured" injured in any one accident, from all sources combined, including this policy.

B. Any amounts payable under this coverage shall be reduced by any amounts paid or payable for the same elements of loss under any of the following:

1. Workers' compensation laws; or

2. Medicaid.

## OTHER INSURANCE

A. No one will be entitled to receive duplicate payments for the same elements of loss under this or any other insurance. If an "insured" receives personal injury protection benefits from another insurer, that insurer shall be entitled to recover from us its equitable pro rata share of the benefits paid and expenses of processing the claim.

B. If an "insured" sustains "bodily injury" while:

1. "Occupying"; or

2. Struck by a "motor vehicle" rented or leased under a rental or lease agreement;

the personal injury protection benefits afforded under the lessor's policy shall be primary.

This provision (B.) does not apply if the rental or lease agreement states otherwise in bold type on the face of the agreement.

III. PART E - DUTIES AFTER AN ACCIDENT OR LOSS

Part E is replaced by the following:

## DUTIES AFTER AN ACCIDENT OR LOSS

A person seeking Extended Personal Injury Protection Coverage must:

A. In the event of an accident, provide prompt written notice of loss to us or our authorized agent.

B. Promptly forward to us a copy of the:

1. Summons and complaint; or

2. Other process;

served in connection with any legal action that person takes against a third party to recover damages for "bodily injury".

C. Promptly give us written proof of claim, under oath if required. Such proof shall include:

1. Full details of the nature and extent of the injuries and treatment received and contemplated; and

2. Any other information which may assist us in determining the amount due and payable.

D. Submit as often as we reasonably require to mental or physical exams. We will:

1. Pay for these exams; and

2. Forward a copy of the medical report to that person if requested.

If that person unreasonably refuses to submit to an exam, we will not be liable for subsequent extended personal injury protection benefits.

IV. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. Paragraph A. of the Legal Action Against Us provision is replaced by the following:

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, no legal action may be brought against us until 30 days after the required notice of loss and reasonable proof of claim has been filed with us.

**B.** Paragraph **B.** of the Policy Period And Territory provision is replaced by the following:

**POLICY PERIOD AND TERRITORY**

**B.** The policy territory is:

1. Florida.

2. The United States of America, its territories or possessions or Canada.

   This provision (**B.2.**) applies only to:

   a. The "named insured" or any "family member" while "occupying" "your covered auto"; or

   b. The "named insured" while "occupying" a "motor vehicle":

      (1) Owned by any "family member"; and

      (2) For which security is maintained as required by the Florida Motor Vehicle No-Fault Law.

**C.** The Our Right To Recover Payment provision is replaced by the following:

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another we shall, to the extent of our payment, be subrogated to that right. That person shall:

1. Execute and deliver instruments and papers and do whatever else is necessary to secure these rights.

2. Do nothing after loss to prejudice such rights.

**B.** If we make a payment under this coverage and the person to or for whom payment was made sustained "bodily injury" while:

1. "Occupying"; or

2. A "pedestrian" struck by:

a commercial motor vehicle, as defined in the Florida Motor Vehicle No-Fault Law, we shall, to the extent of our payment, be entitled to reimbursement from the person who owns such motor vehicle, or that person's insurer.

**D.** The following provisions are added:

**ARBITRATION**

If a provider of medical services or supplies has agreed to accept assignment of extended personal injury protection benefits:

1. Any claims dispute, involving medical expenses, between that provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code.

2. The prevailing party shall be entitled to attorney's fees and costs.

**PAYMENT OF CLAIMS**

If a person seeking Extended Personal Injury Protection Coverage is charged with committing a felony, we shall withhold benefits until at the trial level:

1. The prosecution makes a formal entry on the record that it will not prosecute the case against that person;

2. The charge is dismissed; or

3. That person is acquitted.

**MODIFICATION OF POLICY COVERAGES**

1. Any coverage provided under Part **B** or Part **C** of this policy shall be excess over any extended personal injury protection benefits paid or payable.

2. Regardless of whether the limits for extended personal injury protection benefits have been exhausted, any coverage provided under Part **B** shall pay for the amount of any claim for medical expenses payable under this coverage which exceeds the 80% limitation for medical expenses.

3. No coverage is provided under Part **B** or Part **C** for the amount of any applicable deductible under this coverage.

    Copyright, Insurance Services Office, Inc., 1992    PP 05 66 02 93

**PROVISIONAL PREMIUM**

1. In the event of any change in the:

   **a.** Rules;

   **b.** Rates;

   **c.** Rating plan;

   **d.** Premiums; or

   **e.** Minimum premiums;

   applicable to this coverage, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-Fault Law which provide for the exemption of persons from tort liability, the premium shown in the Declarations for any coverage under:

   **a.** Part **A**;

   **b.** Part **B**; or

   **c.** Part **C**;

   of this policy shall be deemed to be provisional and subject to recomputation.

2. If this policy is a renewal policy, such recomputation shall include the amount of any return premium previously credited or refunded to the "named insured", in accordance with the Florida Motor Vehicle No-Fault Law, with respect to insurance provided under a previous policy.

3. If the final recomputed premium exceeds the premium shown in the Schedule or Declarations, the "named insured" shall pay us the:

   **a.** Excess amount; and

   **b.** Amount of any return premium previously credited or refunded.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1992

PERSONAL AUTO
PP 04 07 01 88

## SPLIT UNINSURED MOTORISTS LIMITS (STACKED)

### SCHEDULE

| Auto | Premium | Limit of Liability | |
|---|---|---|---|
| 1 | $_____ | $_____ each person | $_____ each accident |
| 2 | $_____ | $_____ each person | $_____ each accident |
| 3 | $_____ | $_____ each person | $_____ each accident |

The first paragraph of the Limit of Liability provision for Uninsured Motorists Coverage is replaced by the following:

**LIMIT OF LIABILITY**

Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person. Subject to this limit for each person, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident.

This is the most we will pay regardless of the number of:

1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

However, no one will be entitled to receive duplicate payments for the same elements of loss as a result of the application of this provision.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1987, 1992

UNINSURE    MOTORISTS COVERAGE — FLORID    STACKED)

AS 2029 05 94
(PP 04 43 03 93)

---

I. **PART C — UNINSURED MOTORISTS COVERAGE**

Part **C** is replaced by the following:

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.** "Insured" as used in this Part means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:

   **a.** You or any "family member";

   **b.** A vehicle which you or any "family member" are "occupying"; or

   **c.** "Your covered auto".

   If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   **a.** Denies coverage; or

   **b.** Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member" unless it is a "your covered auto" to which Part **A** of the policy applies and liability coverage is excluded for any person other than you or any "family member" for damages sustained in the accident by you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

**EXCLUSIONS**

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. If that person or the legal representative settles the "bodily injury" claim without our consent. However, this exclusion **(A.1)** does not apply:

   **a.** If such settlement does not prejudice our right to recover payment; or

   **b.** To a settlement made with the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle".

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion **(A.2.)** does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that person is entitled to do so.

**B.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

**C.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A.** The maximum limit of liability for Uninsured Motorists Coverage in any accident involving "you" or any "family member" is the sum of the Uninsured Motorists Coverage limits shown in the Declarations applicable to each vehicle in the Declarations.

The maximum limit of our liability for Uninsured Motorists Coverage in any one accident involving an "insured" other than "you" or any "family member" is the limit shown on the Declarations applicable to the vehicle that "insured" was occupying at the time of the accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

**B.** Any coverage afforded under this endorsement shall apply over and above any amounts available to an "insured" because of the "bodily injury":

1. From or on behalf of persons or organizations who may be legally responsible.

   This includes all sums paid under Part **A.**

2. Under any of the following:

   **a.** Workers' compensation law;
   **b.** Disability benefits law or similar law;
   **c.** No-fault coverage; or
   **d.** Automobile medical payments coverage.

**C.** Any payment under this coverage will reduce any amount that person is entitled to recover for the same element of loss under Part A of the policy.

**D.** In no event will an "insured" be entitled to receive duplicate payment for the same element of loss.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

**A.** If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this endorsement; or
2. As to the amount of damages;

then the matter may be:

1. Mediated, in accordance with the Mediation provision contained in Part **F** of the policy, if the damages resulting from "bodily injury" are for $10,000 or less; or
2. Arbitrated.

If either party demands mediation, the mediation must be completed before arbitration can occur.

**B.** Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**C.** Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

**D.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and
2. The amount of damages.

## FLORIDA ARBITRATION ACT

If we and an "insured" agree to arbitration, the Florida Arbitration Act will not apply.

## ADDITIONAL DUTY

A person seeking Uninsured Motorists Coverage under Section **2.** of the definition of "uninsured motor vehicle" must also promptly:

1. Send us copies of the legal papers if a suit is brought; and
2. Notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an

amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

## II. PART F — GENERAL PROVISIONS

Part **F** is amended as follows:

A. The following is added to the Our Right To Recover Payment provision:

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under Paragraph **A.** with respect to coverage under Section **2.** of the definition of "uninsured motor vehicle" if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "uninsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement

within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

2. We also have a right to recover advance payment.

B. The following is added to the Two Or More Auto Policies provision:

**TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Uninsured Motorists Coverage.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

PERSONAL AUTO
PP 01 84 06 92

## AMENDMENT OF POLICY PROVISIONS - FLORIDA

### I. PART A - LIABILITY COVERAGE

The Other Insurance provision of Part A is replaced by the following:

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. However, we will provide primary insurance for a vehicle you do not own if the vehicle is leased by you under a written lease agreement and you have agreed to provide coverage for your operation of the vehicle.

### II. PART D - COVERAGE FOR DAMAGE TO YOUR COVERED AUTO

The Appraisal provision of Part D is replaced by the following:

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in Part F of the policy. The mediation must be completed before a demand for appraisal can be made.

B. In the event of a demand for appraisal, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

C. We do not waive any of our rights under this policy by agreeing to an appraisal.

### III. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. The Termination provision is replaced by the following:

**TERMINATION**

**Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. The named insured:

   a. May not cancel this policy, if this policy provides Personal Injury Protection and Liability Coverage, during the first 60 days immediately following the date of issuance or renewal unless:

      (1) "Your covered auto" has been totally destroyed so that it is no longer operable on the roads of Florida; or

      (2) The named insured transfers ownership of "your covered auto"; or

      (3) The named insured obtains other insurance on "your covered auto"; or

      (4) The named insured is a member of the United States Armed Forces and is called to or on active duty outside the United States in an emergency situation.

   b. May cancel for any reason after this policy is in effect for 60 days.

3. If this is a new policy, we will not cancel for nonpayment of premium during the first 60 days following the date of issuance. However, we may cancel if a check used to pay us is dishonored for any reason.

4. After this policy is in effect for 60 days, we will cancel only:

   a. For nonpayment of premium; or

   b. If your driver's license or that of:

      (1) Any driver who lives with you; or

      (2) Any driver who customarily uses "your covered auto";

      has been suspended or revoked. This must have occurred during:

      (1) The policy period; or

(2) The 180 days immediately preceding the original effective date of the policy; or

c. If the policy was obtained through material misrepresentation or fraud.

5. Except as provided in Section 6., we may cancel by mailing by registered or certified mail or United States Post Office proof of mailing to the named insured shown in the Declarations at the address shown in the policy:

a. At least 10 days notice if cancellation is for nonpayment of premium; or

b. At least 45 days notice in all other cases.

6. In the event we determine that you have been charged an incorrect premium for coverage requested in your application for insurance, we shall immediately mail you notice of any additional premium due us. If within 15 days of the notice of additional premium due (or a longer time period as specified in the notice), you fail to either:

a. Pay the additional premium and maintain this policy in full force under its original terms; or

b. Cancel this policy and demand a refund of any unearned premium;

then this policy shall be cancelled effective 15 days from the date of the notice (or a longer time period as specified in the notice).

**Nonrenewal.** If we decide not to renew or continue this policy we will mail advance notice to the named insured shown in the Declarations at the address shown in this policy at least 45 days before the end of the policy period. Notice will be mailed by registered or certified mail or United States Post Office proof of mailing. If the policy period is other than 1 year, we will have the right not to renew or continue it only at each anniversary of its original effective date.

We will not refuse to renew or continue this policy solely because:

1. You were convicted of one or more traffic violations which did not involve an accident or cause revocation or suspension of your driving privilege unless you have been convicted of, or plead guilty to:

a. Two such traffic violations within an 18 month period;

b. Three or more such traffic violations within a 36 month period; or

c. Exceeding the lawful speed limit by more than 15 miles per hour; or

2. You have had only one accident if we have insured "your covered auto" for a period of at least 5 years immediately preceding the renewal date.

**Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto" any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

B. The following provision is added:

**MEDIATION**

In any claim filed with us for:

1. Loss resulting from "bodily injury" in an amount of $10,000 or less;

2. "Property damage"; or

3. Loss to "your covered auto" or any "non-owned auto";

either party may demand mediation of the claim, prior to taking legal action, by filing a written request with the Department of Insurance on a form which may be obtained from the Department. The request must state:

1. Why mediation is being requested; and

2. The issues in dispute which are to be mediated.

Only one mediation may be requested for each claim, unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

The Department shall randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference, which will be held within 45 days of the request for mediation. The conference may be held by telephone, if feasible.

The mediation shall be conducted as an informal process and formal rules of evidence and procedure need not be observed. Participants must:

1. Have authority to make a binding decision; and

2. Mediate in good faith.

Costs of the mediation shall be shared equally by both parties unless the mediator determines that one party has not mediated in good faith.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

    Copyright, Insurance Services Office, Inc., 1992

# TOWING AND LABOR COSTS COVERAGE

PP 03 03 04 86

**SCHEDULE**

| Description of Your Covered Auto | Limit of Towing and Labor Costs Coverage | Premium |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |

We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the amount shown in the Schedule or in the Declarations as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Schedule or in the Declarations. We will only pay for labor performed at the place of disablement.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 03 04 86            Copyright, Insurance Services Office, Inc., 1985

# SPLIT LIABILITY LIMITS

PP 03 09 04 86

## SCHEDULE

| | | |
|---|---|---|
| **Bodily Injury Liability** | $ _____ | **each person** |
| | $ _____ | **each accident** |
| **Property Damage Liability** | $ _____ | **each accident** |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

    Copyright, Insurance Services Office, Inc., 1985

# LIABILITY COVERAGE EXCLUSION ENDORSEMENT

**PP 03 26 08 86**

**LIABILITY COVERAGE**

The following exclusion is added to Part A, Section A:

We do not provide Liability Coverage for any person for **bodily injury** to you or any **family member**.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1986

AS 1046 (Ed. 12-89)

AUTOMATIC
TERMINATION
ENDORSEMENT

The AUTOMATIC TERMINATION Provision in Part F of the policy is replaced with the following:

> AUTOMATIC TERMINATION.  If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

PERSONAL AUTO
PP 03 25 08 86

## FULL WINDSHIELD COVERAGE

### COVERAGE FOR DAMAGE TO YOUR AUTO

The provisions and exclusions that apply to Part D also apply to this endorsement except as modified by this endorsement.

The first paragraph of the Insuring Agreement in Part D is amended by the addition of the following:

We will pay under Other Than Collision Coverage for the cost of repairing or replacing the damaged windshield on "your covered auto" without a deductible. We will pay only if the Declarations indicates that Other Than Collision Coverage applies.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 02 12 89

## EXTENDED TRANSPORTATION EXPENSES COVERAGE

| Description of Your Covered Auto(s) | Extended Transportation Expenses Coverage Premium | Increased Limits Transportation Expenses Coverage Premium |
|---|---|---|
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |

The provisions and exclusions that apply to Part D - Coverage for Damage to Your Auto also apply to this endorsement except as changed by this endorsement.

### A. EXTENDED TRANSPORTATION EXPENSES COVERAGE

When there is a loss to a "your covered auto" described in the Schedule or in the Declarations for which a specific premium charge indicates that Extended Transportation Expenses Coverage is afforded, or to a "non-owned auto," we will pay, without application of a deductible, up to $15 per day to a maximum of $450 for:

1. Transportation expenses incurred by you.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto."

This coverage applies only if:

1. "Your covered auto" or the "non-owned auto" is withdrawn from use for more than 24 hours; and

2. The loss is caused by "collision" or is otherwise covered under Part D of this policy.

However, this coverage does not apply when there is a total theft of "your covered auto" or a "non-owned auto." Such coverage is provided under Part D of this policy.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto."

### B. INCREASED LIMITS TRANSPORTATION EXPENSES COVERAGE

When there is a loss to a "your covered auto" described in the Schedule or in the Declarations for which a specific premium charge indicates that Increased Limits Transportation Expenses Coverage is afforded, or to a "non-owned auto:"

1. Coverage for Extended Transportation Expenses Coverage provided under this endorsement is increased to $30 per day up to a maximum of $900. All other provisions of Extended Transportation Expenses Coverage apply.

2. Coverage for Transportation Expenses Coverage provided under Part D of this policy is increased to $30 per day up to a maximum of $900.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1988     PP 03 02 12 89