IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW**

DR. PAUL ZIDEL, on behalf of
himself and others similarly
situated,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant/Third-Party Plaintiff,

v.

COMMUNITY CARE NETWORK, INC.,
doing business as CNN,

    Third Party Defendant.

_____

THE CHIROPRACTIC CENTRE, INC.,
On behalf of itself and all others                                                  01-6782
similarly situated,

    Plaintiffs,

v.

SUPERIOR INSURANCE COMPANY,

    Defendant.

_____

**SUPERIOR'S OBJECTIONS TO THE REPORT AND RECOMMENDATION
REGARDING SUPERIOR'S MOTION TO DISMISS**



Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. 636(b)(1), Superior Insurance Company ("Superior") hereby respectfully objects to the September 10, 2002 Report and Recommendation ("report") of United States Magistrate Judge Lurana S. Snow that Superior's Motion to Dismiss in case number 01-6782 be denied.

Superior objects to the conclusion that the motion be denied and specifically objects as laid out in the argument below.

## STANDARD OF REVIEW

Upon written objection of a party, the report and recommendation of a magistrate is reviewed *de novo* by the district judge. Fed.R.Civ.P. 72(b); *Lynch v. Silcox*, 2001 WL 1200656 (S.D. Fla. 2001).

### I.  THE REPORT AND RECOMMENDATION FAILED TO CONSIDER THE INDIVIDUAL MERITS OF PLAINTIFF'S COMPLAINT

Superior's motion to dismiss and supporting memoranda noted the distinctive nature of the Plaintiff's Complaint and requested individual consideration of the motion to dismiss that Complaint. The report does not reflect any individual consideration, but rather, deference to prior decisions in the consolidated cases. However, consolidation does not destroy the independent status of a case nor deprive the litigants of the right to consideration of their individual claims. *U.S. v. Altman*, 750 F.2d 684 (8th Cir. 1984) citing *DeGraffenreid v. General Motors Assembly Division*, 558 F.2d 480 (8th Cir. 1977). While interpretation of the law may transcend all of the consolidated cases, the application of that law to facts does not. Therefore, this court must consider the specific allegations made by Plaintiff against Superior to determine whether a valid cause of action has been stated.

II. **PLAINTIFF'S COMPLAINT FAILS TO ESTABLISH A CAUSE OF ACTION FOR CIVIL RICO**

Despite the magistrate's contention, the complaints are not substantially the same. As the report pointed out, attachments to a complaint are part of the pleadings. Plaintiff's complaint attached an explanation of benefits (EOB) which it alleged formed the basis of the mail fraud allegations. The EOB attached to Plaintiff's complaint could not support a mail fraud claim. Mail fraud requires an intent to defraud, meaning that the perpetrator of a scheme must anticipate reliance by the intended victim on misrepresentations by the tortfeasor committing mail fraud. *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001), citing *Pelletier v. Zweifel*, 921 F. 2d 1465 (11th Cir. 1991). While generally in criminal prosecutions for mail fraud actual reliance or injury is not required, private plaintiffs must show that they were injured as a proximate result of the violation. *Byrne*, 261 F.3d at 1110. Essentially, this means that a plaintiff must have been the target of the scheme to defraud and relied to its detriment on the misrepresentations made in furtherance of the scheme. *Id*. The EOB attached to the Complaint could not have induced reliance on the part of <u>anyone</u>. It clearly identifies the amount that was billed, the amount that was being paid, and the reason that the amounts differ. Even assuming *arguendo* that there was no basis for taking the reduction, Plaintiff could not have relied on the EOB because Plaintiff would have been in an equal position to know whether the cited contract allowed the reductions. Beyond the references to the EOB, no other fraudulent conduct is specified in the Complaint. Federal Rule of Civil Procedure 9(b) requires fraud pleadings to be made with particularity. Plaintiffs must allege: 1) the precise statements, documents or

misrepresentations made; 2) the time, place, and person responsible for the statement; 3) the content and manner in which the statements mislead the Plaintiff(s); and 4) what the defendants gained by the alleged fraud. *In Re: Managed Care Litigation*, 135 F.Supp.2d 1253 (S.D. 2001), citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.* 116 F.3d 1364 (11th Cir. 1997); see also *Greenberg v. Howtek, Inc.*, 790 F.Supp. 1181 (D.N.H. 1992). (Allegations of fraud in the form of mere conclusions, accusations, or speculation are not sufficient to meet particularity requirement of civil rule without supporting facts surrounding scheme to defraud or basis for believing that such a scheme existed.) Though wire fraud is also alleged, there are no allegations of the substance of the misrepresentations made by use of the wires nor any allegations of the time of such misrepresentations, the person(s) to whom the representations were made, nor the reliance of Plaintiffs upon misrepresentations. Plaintiff's Complaint does not identify any other statements or documents as being fraudulent. Further, there is no mention of the time, place or person who made fraudulent statements. While the report cites cases indicating that the mailed item need not contain misrepresentations if it is part of a scheme to defraud, those cases do not absolve Plaintiff of its requirement to plead fraud particularly. The report incorrectly assumes that a scheme to defraud was sufficiently alleged. Regardless of whether it appears in a mailed item or elsewhere, mail fraud or wire fraud still requires a misrepresentation of fact, otherwise there is no fraud involved. *See Baker v. United States Automobile Association*, 661 So. 2d 128 (Fla. 1st DCA 1995), citing *Thorbear, Inc. v. Cracker Misner Park, Inc.*, 648 So. 2d 168 (Fla. 4th DCA 1994.

Further, while the report is quick to rely on prior decisions in the consolidated cases, it ignores the Court's findings regarding those cases and expressed in the omnibus order of September 28, 2001. The court found that the EOB's did not contain false statements. Taken together with the lack of any other statements being alleged, the finding that no false statements were made in the EOB demonstrates that Plaintiff's Complaint fails to allege mail and/or wire fraud. Further, there is no allegation of how Plaintiff was harmed by the alleged scheme. Presumably, based on the discussion on page 9 of the report regarding the alleged benefit gained by Superior, the magistrate's view is that the failure to receive full payment is a detriment to Plaintiff. However, such a detriment could not be caused by fraudulent conduct. If Superior paid nothing or if it simply sent checks for a lesser amount than charged, Plaintiff would still have the same detriment, which while possibly breaching a contract, does not amount to fraud. Neither situation is caused by fraud. Therefore, to the extent that Plaintiff's RICO claim derives from fraud, that claim does not establish any set of facts that would allow Plaintiff to prevail.

The report fails to hold Plaintiff's Complaint to the higher standard of scrutiny that is required for RICO claims due to their susceptibility to abuse. *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001); *Bill Buck Chevrolet v. GTE Florida, Inc.*, 54 F.Supp.2d 1147 (M.D. Fla. 1999). In *Byrne v. Nezhart*, the Eleventh Circuit affirmed a dismissal of RICO allegations where the plaintiff had turned a common medical malpractice case into a baseless RICO action. Here, allowing Plaintiff's Complaint to stand, allows Plaintiff to transform a contract and statutory interpretation dispute into scandalous allegations of racketeering.

5

The report maintains that Superior's argument that the Complaint does not establish extortion has already been ruled upon. That contention is misleading. While the defendant in the *Brickell* case had argued a failure to allege extortion, Superior's motion to dismiss went further and showed why Plaintiff could not prevail under any set of facts. Specifically, Superior showed that Plaintiffs complaint alleges Superior violated the statute by threatening "the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy." *Complaint,* ¶ 137. However, the statute defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right." *18 U.S.C. § 1951(b)(2).* The alleged property interests of (1) freedom from fraud, and (2) protecting patient privacy rights are simply not property as envisioned by the statute. While intangible rights have been held to be property, there is still an element of wealth that must be shown. See *United States v. Tropiano,* 418 F.2d 1069 (2nd Cir. 1969) (holding that [property] includes, in a broad sense, any valuable right considered as a source or element of wealth). Providing patients with privacy is an obligation, not property. Fulfilling a legal obligation to provide patients with privacy is not a source of wealth. Similarly, the alleged right to be free from fraud is in no way a property right or element of wealth.

While money could be property, Plaintiff's Complaint clearly shows that no money was obtained by the alleged threats of economic loss. Plaintiffs never gave Superior any money. Neither did they part with any claim of entitlement to money. While the complaint adds a lot of inflammatory language about "schemes," Plaintiffs' allegations are simply that

6

Superior paid less than the amount billed by Plaintiff. There are no allegations that the alleged underpayment caused Plaintiffs to <u>consent</u> to depart with any property or property interest. The possession of property never changed hands and Plaintiffs never signed any legal releases to any property.

In this case, Plaintiff has not alleged facts showing that property was obtained with <u>consent</u> and induced by wrongful <u>threats</u>. The following elements must be established: 1) whether the victim was fearful; 2) whether the fear was reasonable; and 3) whether the defendant made use of that fear. *Callanan v. U.S.*, 223 F.2d 171 (8th Cir. 1955), cert. denied, 350 U.S. 802. In the present case, the complaint does not establish that Plaintiff was reasonably fearful or that Superior exploited that fear to obtain property The magistrate's citation to and apparent reliance on *U.S. v. Haimowitz*, 725 F.2d 1561 (11th Cir. 1984) is inapplicable. *Haimowitz* only establishes that fear of economic loss can be sufficient to meet the fear element. In the present case, it is the <u>type</u> of fear of economic loss that is not recoverable. Even if Plaintiff were to claim that it had a "fear" of not being paid the sums they billed, the simple fear of non-performance on a contract is not a fear of economic loss as contemplated in the extortion statute. See *In re Managed Care Litigation*, 135 F.Supp.2d 1253 (S.D. Fla. 2001), citing *Robert Suris General Contractor Corp. v. New Metropolitan Federal Savings and Loan Ass'n*, 873 F.2d 1401,1405 ( "[A] successful extortion theory requires that "the fear of economic loss is separate and distinct from performance on the contract" and the claim cannot be maintained when the "only fear of economic loss is that which accompanies any party to a contract when he suspects that compliance and compensation may not be forthcoming."). Even assuming all allegations

are true, at best, Plaintiff's only "fear" is that payment for the full amount of its bill would not be forthcoming. Plaintiff cannot transform a breach of contract case into an extortion case simply by "fearing" the breach. As a matter of law that is insufficient. Therefore, the Complaint fails to state a cause of action for Extortion.

Similarly, the report ignores Superior's substantive argument regarding the travel act and instead relies on the Court's denial of *Progressive's* motion to dismiss the *Brickell* Complaint that had alleged travel act violations. The travel act allegations were made as part of the RICO allegations, making them subject to the additional scrutiny applicable to RICO claims. Beyond comment upon the lack of specificity, Superior pointed out that the allegations themselves could not amount to a travel act violation. The travel act prohibits travel in interstate or foreign commerce or use of the mail or any facility in interstate or foreign commerce to: (1) distribute the proceeds of any unlawful activity; or (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry-on, or facilitate the promotion, and establishment, or carrying on, of any unlawful activity. 18 U.S.C. § 1952(a). The complaint alleges interstate travel in an attempt to commit mail fraud. See Complaint ¶143. At first blush, this may seem to fit into the third category under the travel act cited above. However, the travel act specifically defines "unlawful activity." Mail fraud is not included in that definition. See 18 U.S.C. § 1952(b). And, the statutory remedy must be strictly construed because it is in derogation of the common law. *Insurance Co. of North America v. Lexow*, 937 F.2d 569 (11th Cir. Fla. 1991); Zweibon v. Mitchell, 516 F.2d 594 (D.C. Cir. 1975). Therefore, interstate travel in furtherance of "mail fraud" cannot be a predicate act for RICO liability.

Because the RICO allegations, including all alleged predicate acts, are insufficiently plead <u>and</u> fail to demonstrate any set of circumstances that would allow Plaintiff to prevail, Plaintiff's RICO Count must be dismissed. Further, because jurisdiction is based on the federal RICO count, the entire complaint must be dismissed. See *Hardy v. Birmingham Board of Education*, 954 F.2d 1546 (11th Cir. 1992) (holding that it was error to exercise pendant jurisdiction of state law claims where federal law issues were dismissed before trial.)

### III. THE REPORT AND RECOMMENDATION FAILED TO RECOGNIZE THE REVERSE PREEMPTION OF THE MCCARRAN-FERGUSON ACT

The report argues that the McCarran-Ferguson Act does not bar a civil RICO action in this case because private causes of action have been allowed under Florida Statutes 627.736(4). However, the report incorrectly leaps to the conclusion that those cases establish a private cause of action under Florida Statutes 627.736(10). Without giving any private cause of action for violations of that provision, subpart (10) of the statute regulates the insurer-insured relationship by specifying the type of policies an insurer can issue. Subpart (4) addresses when and how payment is to be made to insureds. It does not logically follow that, because one court allowed a private cause of action under one subpart, that a cause of action exists under an unrelated subpart. Neither section specifically enumerates a cause of action. In that situation, Florida law applies a three part test for determining if there was legislative intent to allow a private cause of action. See *Murthy v. N. Sinha Corp.*, 644 So.2d 983 (Fla. 1994); *Fisher v. Metcalf*, 542 So.2d 785 (Fla. 3d DCA 1989). (The report alleges that *Fisher v. Metcalf* is inconsistent with Florida

law, but fails to cite any authority for that proposition or identify what rule of law creates the inconsistency). Because there must be legislative intent to allow a private cause of action, the reasoning of the report and recommendation is wrong. In concluding that Plaintiff can bring a private claim under subpart (10), the magistrate relied on the absence of authority rejecting a private right of action under subpart (10) along with a case allowing a private right under subpart (4). That assumption improperly ignores the issue of legislative intent. The absence of authority on the issue does not establish legislative intent. Similarly, the allowance of a private right under a different provision does not establish a private right under a provision regulating different behavior and different parties. In the unpublished order *May v. Allstate Insurance Co.*, Case No. 00-6269-CIV-DIMITROULEAS (S.D. Fla. April 13, 2000)(attached as Exhibit "A" to the memorandum in support of the motion to dismiss), this court correctly applied the three part test and concluded that medical providers were not entitled to bring a private cause of action under subpart(10).

Because there is no private right of action, this case is squarely within the holding of *In re Managed Care Litigation*, 185 F.Supp.2d 1310 (S.D. Fla. 2002). A RICO claim premised upon conduct regulated by Florida Statutes 627.736(10) would be inconsistent with the state regulatory scheme and allow a remedy not contemplated by the legislature.

IV.  **THE BEHAVIOR ALLEGED BY PLAINTIFF DOES NOT AMOUNT TO A VIOLATION OF THE PIP STATUTE**

On the basis of a single state trial court opinion, *Shebovky v. Peachtree Casualty Insurance Co.*, 8 Fla. L. Weekly Supp. 246(b), the report recommends allowing Plaintiff's Complaint to proceed. The report avoids addressing Plaintiff's strained construction of the

PIP statute, upon which Plaintiff's claim is based. Citing Florida Statutes 627.736(10), Plaintiff's Complaint assumes that the PIP statute is the exclusive method for determining whether PPO rates apply where services are rendered to PIP patients. That assumption is not supported by the language of the PIP statute. Florida Statutes 627.736(10) does not prohibit insurers from paying preferred provider rates to medical providers. That section governs the relationship between insurers and insureds when an insurer offers a "preferred provider" policy of insurance. Specifically, the statute provides options to <u>insureds</u> when an insurance company offers incentives to use preferred providers.

Plaintiffs' Complaint alleges that Superior engaged in a "silent PPO" and incorrectly asserts that a so-called "silent PPO" violates the statute. There is nothing in the statute prohibiting valid preferred provider agreements from being enforced. *See Mitzan v. Med View Services, Inc.*, 1999 Mass. Super. LEXIS 279 (Mass. 1999). The *Mitzan* court dealt with a similar argument regarding "silent PPO" allegations in conjunction with the Massachusetts no-fault statute. The court stated "the absence of express authorization in the statute for cost containment programs does not lead inevitably to the conclusion that the use of such programs violates the statute." *Mitzan* at p.30. The Massachusetts statute provided PIP benefits for similar purposes as the Florida statute.

In Florida, the PIP statute expressly permits cost containment agreements as shown in the first sentence of subsection (10). The word "may" is used in expressing that insurers are permitted to enter into contracts with healthcare providers. The word "may" generally is permissive and does not make a statute exclusive. *Joshua v. City of Gainesville*, 768 So. 2d 432 (Fla. 2000); *In Re: TACP,* 609 So. 2d 588 (Fla. 1992). Looking further at the

language, the latter sentences of subsection (10) clearly show that the statute regulates the insured – insurer relationship and <u>not</u> the insurer – medical provider or insured – medical provider relationships.

Viewing the statute in light of the concerns raised in *Mitzan* is helpful. In *Mitzan*, none of the defendants steered the insureds to preferred providers, but rather applied retroactive discounts in cases where the insureds chose preferred providers. *Mitzan*, 1999 Mass. Super. LEXIS 279 at 30. The court stated that:

> [N]either Medview, Concentra and IntraCorp or the automobile insurers in any way restricted PIP insureds' choice of provider or course of medical treatment or even attempted to influence it through steerage to certain providers; rather, they applied discounts retroactively in cases where PIP insureds fortuitously chose to seek treatment from the chiropractors.

The preceding quote shows that the *Mitzan* court rejected the precise interpretation of the law raised by Plaintiffs' Complaint, namely that the PIP statute prevents an insurer from being entitled to contractual preferred rates where an insured on his/her own choose a preferred provider but did not purchase a preferred provider insurance policy.

The *Mitzan* court also discussed the issue of preferred provider policies. The court noted that endorsements offering lower premiums in exchange for restrictive provider options was not prohibited as it would not interfere with an insured's choice of medical provider because the insured was given an option at the outset of the policy. *Mitzan*, 1999 Mass. Super. LEXIS 279, at 31.

The Florida PIP statute addresses both issues as well. First, insureds cannot be steered to preferred providers because the statute prevents insurance companies from forcing insureds to use preferred providers. Secondly, the PIP statute does not interfere

with choice. The Florida statute has codified the concerns of choice raised by the Massachusetts Court in *Mitzan*. Specifically, the statute regulates the insured-insurer relationship, by preventing the insurer from offering only preferred provider policies. (Policies that, in exchange for using preferred providers, offer deductible waivers or higher percentage limits). The statute accomplishes that goal by requiring the insurer to give a choice to the insured at the outset of the policy. The class that is intended to be protected by the statute (i.e. insureds) are well protected. Nothing about an insured's voluntary decision to seek treatment from preferred providers alters these protections. Review of the Complaint demonstrates that it is precisely the steering and lack of choice that Plaintiff wants. Its description of the silent PPO declares the lack of steering to be the problem for which its seeks redress. Complaint ¶ 30. Reviewing *Mitzan* in conjunction with the Florida statute clearly shows that PIP was not intended to benefit medical providers nor protect them from payors who fail to steer potential patients.

A preferred provider agreement cannot by itself violate § 627.736(10). An insurer is not required by statute to have preferred provider policies. The statute only says that, if an insurer does offer the preferred provider policy, a second option of non-preferred provider policies must be offered also. *See May v. Allstate Insurance Co.*, Case No. 00-6269-CIV-DIMITROULEAS (S.D. Fla. April 13, 2000)(unpublished order)(attached as Exhibit "A" to the memorandum in support of the motion to dismiss).

Additionally, enforcement of preferred provider contracts is consistent with the purpose of the PIP statute. The purpose of the PIP statute is to benefit the insured motorist and not medical providers. *See Florida Statutes § 627.731*. Nowhere in this

section does the Legislature indicate that financial well being of medical providers is a purpose of the statute.

## V.   THE COMPLAINT FAILS TO ESTABLISH STANDING TO BRING A CLAIM AGAINST SUPERIOR

The Complaint fails to allege or attach an assignment of benefits on behalf of TCCI or any other members of the proposed class. Without an assignment of benefits from Superior's insureds, TCCI lacks standing to bring this suit because TCCI is not the real party in interest. See *Oglesby v. State Farm Mutual Auto Insurance Co.*, 781 So.2d 469 (Fla. 5th DCA 2001); *State Farm Mutual Auto Insurance Co. v. Ray*, 556 So.2d 811 (Fla. 5th DCA 1990). The magistrate's report fails to explain how Plaintiff can bring a contractual action against Superior without establishing an assignment of the rights of a party to that contract.

## CONCLUSION

For the foregoing reasons, Superior requests that this court sustain Superior's objections to the report and recommendation and grant its motion to dismiss.

BUTLER BURNETTE PAPPAS LLP

_____
ALAN J. NISBERG, ESQ.
Florida Bar No.: 0961639
Bayport Plaza, Suite 1100
6200 Courtney Campbell Causeway
Tampa, Florida 33607-5946
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
Attorneys for Defendant
Superior Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U. S. Mail to all parties on the Master Service List on September ___, 2002.

_____
Alan J. Nisberg, Esq.

**MASTER SERVICE LIST**
(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 5/6/02)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
elee@leeamlaw.com
Suite 150
350 N.W. 12th Ave.
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty, Continental,**
**Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile