UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and others similarly
situated,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant/Third-Party Plaintiff,

v.

COMMUNITY CARE NETWORK, INC.,
doing business as CCN,

    Third-Party Defendant.
_____/



FILED by _____ D.C.

SEP 27 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD

DR. ANDREW ELLOWITZ, on behalf        01-8549
of himself and others similarly situated,

    Plaintiffs,

v.

AMERICAN INTERNATIONAL INSURANCE COMPANY,

    Defendant.
_____/

### REPORT AND RECOMMENDATION

    THIS CAUSE is before the Court on American International's Emergency Motion to Compel Arbitration (Docket Entry 745), which was referred to United States Magistrate Judge Lurana S. Snow for report and recommendation.

### I. PROCEDURAL HISTORY

    On June 14, 2001, Mote Wellness & Rehab, Inc., ("Mote") filed a class action complaint against American International



Insurance Company and American International South Insurance Company, alleging that the defendants improperly reduced payment of the plaintiff's bills to the rates charged by the plaintiff's preferred provider organization ("PPO") even though the defendants did not belong to the PPO. The case was consolidated with 14 similar cases for discovery purposes. The Court granted the defendants' motion to stay a response to the complaint.

On January 28, 2002, the defendants filed a motion to dismiss the complaint, or alternatively for summary judgment, asserting (1) that the plaintiff never submitted any bills related to any policy issued by American International South Insurance Company ("American South") and (2) that payments made by American International Insurance Company ("American International") were not reduced to the PPO rates.[1]

In response, Dr. Andrew Ellowitz, as plaintiff, filed an amended class action complaint against American International alone, then argued that the motion to dismiss or for summary judgment was moot in light of the amended complaint.

The defendants to the original complaint filed a motion to strike the amended complaint as an improper attempt at

---

[1] The defendant's affidavit in support of its motion for summary judgment suggests that another American International insurance company, American Home Assurance Company, may have discounted payments to Mote based on PPO rates. Mote argues that the benefits forms used by American International and American Home do not identify the insurer, so Mote was unable to determine which bills were reimbursed improperly  at PPO rates.

amendment, and a motion to impose sanctions on Mote for failing to investigate the facts before filing the class action complaint. The Court denied both motions.

The defendants filed the instant motion to compel arbitration pursuant to the terms of its PIP policy, or as a third party beneficiary of the Provider Agreement between the plaintiff and the organizer of the PPO network, Community Care Network, Inc. ("CCN").    The motion is fully briefed and is ripe for consideration.

## II.  RECOMMENDATIONS OF LAW

<u>A.</u>        <u>American International's PIP Policy</u>

The amended complaint includes Explanation of Review forms for "AIGCS FL(FL)" for the treatment of (1) Ms. Jennifer Winters on August 20, 1999, and September 1, 1999; Ms. Mandy Marcy on August 19 and 23, 1999, and (3) Mr. Jonathan Marcy on August 18, 1999).  (DE 593, Exhibits 1-5).

The defendant asserts that it cannot produce the policies for these individuals because the plaintiff has not provided Rule 26 disclosures, citing the stay on merits discovery.[*]

---

[*] The defendant states that it is reviewing claims submitted under Dr. Ellowitz' tax identification number as well as those submitted under the tax identification number for Park Place Therapeutic Center (the claimant of record in plaintiff's exhibits 1-5). However, to insure that the right to arbitration is not waived, the defendant did not wait for these results before filing the instant motion.

Instead, the defendant states that all PIP policies issued prior to July 1, 2000, contained a mandatory arbitration clause, and provides an example of the clause. (DE 745, Exhibit B). Accordingly, the 1999 claims for Mr. and Ms. Marcy and Ms. Winters would be related to policies containing this standard arbitration clause.[3]    The arbitration clause provides:

ARBITRATION

1.    Disputes with a provider of medical services. If a provider of medical services or supplies has agreed to accept assignment of personal injury protection benefits, direction to pay, power of attorney or any instrument allowing direct payment of the provider:

a.    Any claims dispute, involving medical expenses, between that provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code.

(DE 745, Exhibit B). The defendant asserts that the decision in Nationwide Mutual Fire Insurance Co. v. Pinnacle Medical, Inc., 753 So.2d 55 (Fla. 2000)[4] voided only the statute mandating arbitration

---

[3] The defendant states that after July 1, 2000, the insured was offered a choice of voluntary or mandatory arbitration, starting July 1, 2000, for new policies and starting August 30, 2000, for renewals. (Id., Exhibit C).

[4] The Pinnacle court found that a 1991 statute, requiring PIP policies to mandate arbitration for claims asserted by medical care providers as assignee of the insured, was unconstitutional because the statute legislatively deprived the providers of access to the courts.

4

of claims by medical providers who are assignees under the PIP policies.    The defendant contends that its pre-July 2000 arbitration clause is a contractual agreement which is not affected by the Pinnacle decision.

The plaintiff asserts that when the Pinnacle court struck down the statute as unconstitutional, it voided all arbitration provisions which were mandated by the statute. Harris v. Gonzalez, 789 So.2d 405, 407 (Fla. 4th DCA 2000)("A contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our Courts.")

The undersigned is more persuaded by Union American Insurance Co. v. U.S.A. Diagnostics, Inc., 765 So.2d 227 (Fla. 4th DCA 2000) in which the court cited Pinnacle to invalidate a PIP arbitration clause in a policy issued while the voided arbitration requirement was in effect. Since all of the claims in the amended compaint are based on policies issued while the statute was in effect, the Court cannot enforce the arbitration clauses in these policies.

B.    Arbitration Under the Federal Arbitration Act

The defendant urges the Court to enforce the arbitration clause under the "liberal federal policy favoring arbitration agreements." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, et seq., requires the Court to enforce written arbitration agreements

5

which are included in contracts which evidence a transaction involving interstate commerce.  Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983).  If the plaintiff attempts to litigate claims, including statutory claims, which fall within the terms of the arbitration agreement, the Court must compel the parties to attend arbitration.  Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 242, 107 S.Ct. 2332, 2345 (1987)(RICO claims are subject to arbitration under the FAA).  Courts must resolve ambiguities in favor of arbitration.  Volt Information Services, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 475-76 (1989).  The purpose of the FAA is to enforce written arbitration provisions.  Roadway Package System, Inc. v. Kayser, 257 F.3d 287 (3rd Cir. 2001).

In the instant case, operation of state law has voided the PIP arbitration clause.  There is no other written arbitration agreement between the plaintiff and the defendant.  Accordingly, for those policies identified in the amended complaint, the Court cannot compel PIP mandated arbitration under the FAA.

B.      CCN's Provider Agreement

The plaintiff's contract to participate in the PPO, CCN's Provider Agreement, provides:

> The sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration as the parties do not want the delay or expense of lawsuits.  The parties shall mutually agree to

the appointment of an impartial arbitrator within 30 days of the written request for appointment of an arbitrator by any party.

(DE 745, Exhibit A, ¶ 12.02)

The defendant is not a party to this contract, but asserts that it is a "payor" as defined in ¶ 1.06 of the CCN Provider Agreement:

1.06 PAYOR - is an employer, insurance carrier, claims adjuster, health care service plan, trust, nonprofit facility service plan, any governmental unit or any other entity which has an obligation to provide Health Care Services or Benefits to a Beneficiary or Claimant

1.07 PAYOR AGREEMENT - is an instrument between a payor and CCN or its authorized representative which provides for CCN providers, including Provider pursuant to this Agreement, to render Health Care Services or Benefits at Reimbursement Amounts determined and established by CCN and such Payor.

(DE 745, Exhibit A)[5]

---

[5]  The plaintiff points that this is not a copy of its contract with CNN, since the contract clearly states that the signatory health care provider is Salvatore D. LaRusso. The defendant's motion and reply state that since it is not a signatory to the CCN's Provider Agreement with Ellowitz, it does not have a copy of that agreement. The plaintiff has refused to provide a copy, citing the stay on discovery. Accordingly, the defendant provided a copy of a CCN Provider Agreement already in the Court file. The defendant points out that the plaintiff has not alleged that his CCN Provider Agreement is different.

While the plaintiff argues that the Court must deny the motion to compel arbitration because it cannot consider this "similar" agreement, the undersigned finds that even if it were to consider the "similar" agreement, the defendant cannot compel arbitration under its terms.

The defendant contends that as a payor, it is a third party beneficiary to the agreement, including the right to require arbitration under ¶ 12.02.

The plaintiff's response asserts that the PPO contract is irrelevant to the issue of arbitration, since the claim is based on the plaintiff's status as assignee of the defendant's PIP contract with its insured, which does not include a valid arbitration clause. Moreover, the defendant has not shown that it is a payor under the PPO contract, since it has provided no evidence that it has entered into a Payor Agreement with CCN.

The Court finds unpersuasive the defendant's argument that it is a payor entitled to compel arbitration under the PPO contract attached to the motion. Paragraph 2.01 states that the health care provider agrees to provide services to beneficiaries or claimants at the reimbursement rates "established by CCN through Payor Agreements with Payors, which Payor Agreements are incorporated herein by reference."

The complaint does not allege that there was any written agreement between CCN and the defendant. The defendant has not demonstrated, or even suggested, that there is a written payor agreement between itself and CCN. Accordingly, the defendant cannot be a payor within the meaning of the PPO agreement proffered.

Moreover, even if the defendant were a payor under the PPO agreement, the right to compel arbitration under ¶ 12.02 is

8

limited specifically to the parties to the PPO contract.  The PPO contract does not give a payor the right to compel arbitration.

Alternatively, the defendant asserts an equitable right, through the doctrine of equitable estoppel, to enforce the CCN arbitration clause, even though the defendant is not a signatory to the CCN Provider Agreement.  A signatory will be equitably estopped from avoiding arbitration on the grounds that the party seeking arbitration is a non-signatory in two circumstances.  First, when the plaintiff signatory relies on the terms of the written agreement in asserting its claims against the non-signatory defendant.  Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756 (11th Cir. 1993).  Second, when the plaintiff signatory "raises allegations of substantially independent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract."  MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999).

The defendant argues that the plaintiff's claims against it presume the existence of the CCN Provider Agreement, and require reference to the Provider Agreement.  Moreover, the complaint alleges that CCN and the defendant formed "an association in fact" and "collectively engaged" in  a scheme to "reduce payments made to CCN preferred providers on all Florida PIP medical expense claims submitted to AMERICAN INTERNATIONAL."  (Amended Complaint, DE 593, ¶¶ 25, 115 et seq.)  Thus the plaintiff is estopped from arguing

that the defendant cannot enforce the arbitration clause in the CCN Provider Agreement.

The Court finds that the defendant has not established an equitable right to enforce the terms of the CCN Provider Agreement against the plaintiff.  _Sunkist_ analyzes two situations where a non-signatory may be bound by an arbitration agreement.  First, when the non-signatory is repeatedly mentioned in the contract containing the arbitration agreement.  _Sunkist_, 10 F.3d at 757. Second, when the signatory and non-signatory are a parent company and a subsidiary company with claims and liabilities arising out of the same contract.  _Id._ at 757-58.  Neither situation applies to the instant case.

The _MS Dealer_ analysis also fails to support the defendant's position.  Although the case discusses concerted action between the signatory and non-signatory defendants, the Court stressed the importance of the fact that the conspiring defendants worked in concert to cause the plaintiff to enter into the challenged contract.  _MS Dealer_, 177 F.3d at 948, _citing_, _Roberson v. Money Tree of Ala. Inc._, 954 F.Supp. 1519, 1529 (M.D.Ala. 1997)(the defendants acted in concert to cause the plaintiff to enter into the loan agreement which required arbitration).  In the instant case, there are no allegations that Liberty Mutual acted in concert with CCN to induce the plaintiff to enter into the CCN Provider Agreement.  Indeed, the plaintiff's claim against Liberty

Mutual alleges improper payments under Liberty Mutual's PIP policies.

The defendant has failed to demonstrate a contractual right to compel arbitration under the CCN Provider Agreement, first because it did not provide a copy of that agreement, and second, because it did not demonstrate a contractual right under the "similar" CCN contract attached to the motion. Nor has the defendant established that the doctrine of equitable estoppel permits it to enforce an arbitration clause in a contract to which it is not a signatory.

C.    Summary

The defendant has not shown that it is entitled to arbitration either (1) under its PIP contracts for the insureds named in the amended complaint, or (2) under the CCN Provider Agreement between the plaintiff and CCN. The Court must deny the motion to compel arbitration.

### III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the motion to compel arbitration be DENIED.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable Wilkie D. Ferguson, Jr., United States District Judge.

11

Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. <u>LoConte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1988), <u>cert. denied</u>, 488 U.S. 958 (1988); <u>RTC v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 27th day of September, 2002.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to: The Attached 01-8549-Civ-Ferguson Service List

12

## SERVICE LIST

### CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

---

**Dr. Andrew Ellowitz, et al. v. American Int'l Ins., et al.**   01-8549

Eric Lee, Esq. (P)
Douglas Blackman, Esq. (P and Local Counsel for Phillips, Gold &
                                        Lawson)
Carlin Phillips, Esq. (P)
Arthur Gold, Esq. (P)
Susan Lawson, Esq. (P)
Dale Friedman, Esq. (D)