UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY and
COMMUNITY CARE NETWORK, INC.,
d/b/a CCN,

    Defendants.
_____/

ULTRA OPEN MRI CORPORATION,
on behalf of itself and all others similarly situated      00-6776

    Plaintiff,

v.

PROGRESSIVE AMERICAN INSURANCE COMPANY,

    Defendant.
_____/

**NOTICE OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION**

PLEASE TAKE NOTICE that Plaintiff ULTRA OPEN MRI CORPORATION, on behalf of itself and all others similarly situated, by its undersigned counsel, hereby notifies this Court of the following supplemental authority in support of its Amended Motion for Class Certification [D.E. 409]:

    1.    <u>In re: Managed Care Litigation</u>, 2002 WL 31154945 (S.D.Fla. September 26, 2002).

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

The foregoing decision directly addresses issues pending in the present case. A copy of this decision is attached hereto.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail on October 7, 2002 upon parties listed on the attached service list.

Respectfully submitted,

LEE & AMTZIS, P.L.
Co-Counsel for Class Plaintiffs
350 N.W. 12th Ave., Suite 150
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 Fax

By: _____
ERIC LEE
Florida Bar No. 961299

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 2510
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

Susan Lawson, Esq.
230 East Davis Boulevard
Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786 Facsimile

Richard Bokor, Esq.
230 E. Davis Boulevard
Tampa, FL 33606
(813) 254-1000
(813) 254-6327 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

2002 WL 31154945                                                                                                    Page 1
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. Florida,
Miami Division.

In re: MANAGED CARE LITIGATION
This Document Relates to All Tracks

No. MDL 1334.

Sept. 26, 2002.

ORDER GRANTING PROVIDER TRACK CLASS
CERTIFICATION AND DENYING SUBSCRIBER
TRACK
CLASS CERTIFICATION

MORENO, District J.

Introduction

*1 Patients ("Subscribers") and physicians ("Providers") have brought lawsuits against health maintenance organizations ("HMOs") alleging violations of the Racketerring Influenced and Corrupt Organizations Act ("RICO") and the Employee Retirement Income Security Act ("ERISA"). Pending before the Court are the Motions for Class Certification filed by both Provider and Subscriber Plaintiffs. Having considered the motions, submissions and applicable law, together with the evidence obtained after "class action discovery" and arguments of counsel presented at two class certification hearings, the Court DENIES Subscriber Plaintiffs' Motions for Class Certification and GRANTS Provider Plaintiffs' Motion for Class Certification.

Background
Subscriber Track

The Class and Subclass seeking certification include approximately 145 million individuals across the United States, who were allegedly defrauded by misrepresentations and material omissions of Defendants Cigna, [FN1] Aetna, [FN2] Humana, Foundation Health Systems, United Healthcare [FN3] and Prudential.

> FN1. Cigna Corporation, Connecticut General Life Insurance Company, and Cigna Health Corporation are collectively referred to as "Cigna ."
>
> FN2. Aetna, Inc. and Aetna U.S. Healthcare, Inc. are collectively referred to as "Aetna."
>
> FN3. United Healthcare, United Health Group, and United Healthcare Corporation are collectively referred to as "United."

The following proposed classes are set forth in each of the Plaintiffs' proposed class certification motions:
  RICO Class: All persons in the United States (not including persons insured by Medicare or Medicaid) who purchased or participated in health maintenance organizations, preferred provider organizations, and/or point of service plans, operated by [the respective insurance company] at any time during the period from October 4, 1995 through and the date hereof until [the company's] continuing illegal and wrongful conduct has ceased.
  The ERISA Class: All persons in the United States who participated in ERISA- governed health maintenance organizations, preferred provider organizations, and/or point of service plans operated by [the respective insurance company] at any time during the period from October 4, 1993 through and after the date hereof until [the company's] continuing illegal and wrongful conduct has ceased.

Provider Track

Approximately 600,000 doctors across the United States comprise the Class and Subclass of the Provider Track. They claim they were allegedly defrauded by misrepresentations and material omissions of Defendants Aetna, CIGNA, Humana, Foundation Health, Pacificare Health, Prudential, United and Wellpoint.

The following proposed classes are set forth in Plaintiffs' Amended Motion for Class Certification:
  The Global Class: All medical doctors who provided services to any person insured by any Defendant from August 4, 1990 to September 30, 2002.
  National Subclass: Medical doctors who provided services to any person insured by a Defendant, when the doctor has a claim against such Defendant and is not bound to arbitrate the claim.
  California Subclass: Medical doctors who provided services to any person insured in California by any Defendant when the doctor was not bound to arbitrate the claim being asserted.

The Global Class is seeking certification for its claims of conspiracy to violate RICO, and for aiding and abetting violations of RICO. The National Subclass is seeking certification for its claims of breach of contract, quantum meruit, RICO violations, unjust enrichment and state prompt pay claims. Finally, the California Subclass seeks certification for its claims under the California Business and Professions Code § 17200.

Legal Analysis

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31154945                                                                                                      Page 2
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

Class Certification Standard

*2 Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements that a moving party must satisfy before a court may certify a class. The Supreme Court has made it clear the prerequisites of Rule 23(a) to class certification cannot be presumed. Rather, a court may certify a class action only if it determines "after a rigorous analysis" that the plaintiff has satisfied all of the requirements of Rule 23(a). *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The requirements are commonly referred to as the prerequisites of numerosity, commonality, typicality and adequacy of the representatives.

In addition to the Rule 23(a) requirements, a Court must find that the class satisfies as least one of the requirements of Rule 23(b). Rule 23(b) provides three possibilities for certification, however Plaintiffs here are only proceeding under the latter two options, 23(b)(2) and 23(b)(3).

1. Fed.R.Civ.P. 23(a)

Rule 23(a) requires a plaintiff to establish:
1. Numerosity. The class is so numerous that joinder of all members is impracticable.
2. Commonality. There are questions of law or fact common to the class.
3. Typicality. The claims of the representative parties are typical of the claims or defenses of the class.
4. Adequacy. The representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 613 (1997). In order for a class to be certified, all four prerequisites must be met.

a. Numerosity

"Numerosity" under Rule 23(a) is satisfied where joinder of all members of the class is impracticable. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D.Fla.1996). The standard for impracticability does not require impossibility, but only that "joinder would be extremely difficult or inconvenient." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D.Fla.1992).

The Eleventh Circuit has held that "while there is no fixed numerosity rule 'generally less than twenty-one is inadequate, more than forty adequate,' with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986).

b. Commonality

The next inquiry under rule 23(a) is whether "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Rule 23(a) "does not require that all questions raised by the litigation be common." *Cox*, 784 F.2d at 1557. Rather, as Rule 23(a) explicitly states, a court need only find a *single* common issue of law or fact to satisfy the commonality requirement. *Kreuzfeld A.G. v. Carenhammar*, 138 F.R.D. 594, 599 (S.D.Fla.1991).

c. Typicality

The third inquiry of Rule 23(a) looks to the "typicality" of the named Plaintiff's claims. The typicality requirement "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985). Thus, if "the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims." *Davis v. Southern Bell Tel. & Tel. Co.*, 1993 U.S. Dis. LEXIS 20033, *12 (S.D.Fla. Dec. 23, 1993).

*3 "To meet the typicality requirement, the named representatives must be able to establish the bulk of the elements of each class member's claims when they prove their own claims....If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." *Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D.Fla.1990). However, any atypicality or conflict between the named Plaintiffs' claims and those of the Class "must be clear and must be such that the interests of the class are placed in significant jeopardy." *Walco*, 168 F.R.D. at 326 (citing *Sley v. Jamaica Water & Utilities, Inc.*, 77 F.R.D. 391, 394-95 (E.D.Pa.1977).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A nexus must be found between the class representative's claims or defenses and the common questions of fact or law which unify the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir.1984). This nexus is established if the claims or defenses arise from the same scheme or pattern and are based on the same legal theory. *Id.* at 1337.

d. Adequacy

A two-part test is used to determine adequacy under Rule 23(a)(4). Consideration is given to: (i) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (ii) whether the named plaintiff has interests antagonistic to those of the rest of the class. *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985).

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31154945
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

Page 3

2. Fed.R.Civ.P. 23(b)

Even if the court finds, after rigorous scrutiny, that the prerequisites of Rule 23(a) have been met, the certifying party still must establish that class certification is appropriate under Rule 23(b). Rule 23(b) provides three possibilities for certification, however Plaintiffs here are only proceeding under the latter two options.

a. Rule 23(b)(2) [FN4]

> FN4. Unlike Rule 23(b)(3), this Rule carries no notice obligations or opt-out rights.

A class warrants certification under Rule 23(b)(2) when:
> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

Rule 23(b)(2) actions encompass claims for equitable relief, usually injunctive or declaratory. In essence, the class members will allege that the defendant or defendants have either done something unlawful or refused to fulfill a legal obligation, and that injunctive relief would be appropriate with respect to the class as a whole. *Campos v. Immigration & Naturalization Service*, 188 F.R.D. 656, 661 (S.D.Fla.1999). These cases recognize injunctive relief has a direct, practical effect on all potential class members and to deny class treatment in these situations might result in unfairness to the plaintiffs or the defendants. *See, e.g., Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D.Ill.1999); *Day v. NLO*, 851 F.Supp. 869 (S.D.Ohio 1994).

b. Rule 23(b)(3)

*4 Rule 23(b)(3) requires that common issues of law and fact predominate over individual issues. Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) includes a non-exhaustive list of factors for the court to consider in making its predominance and superiority determination:
> A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and
> D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3)(A)-(D). In making this determination, the district court must consider variations in state law and problems of manageability. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996); *Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1024 (11th Cir.1996). Under Rule 23(b)(3), the plaintiff bears the burden of establishing that damages could be measured on a class-wide basis.

*Subscriber Track*
A. Rule 23(a)

1. Numerosity

There is no real dispute that the RICO Class and ERISA Subclass meet the standard for numerosity. [FN5] Members of the RICO Class are those persons who purchased or received coverage, while members of the ERISA Subclass consist of those persons who received coverage through an employee welfare plan. The proposed classes, based on information found in Defendants' 10-K/405 forms, will likely have millions of members each.

> FN5. In fact, only Defendant United Healthcare disputes whether Plaintiffs have met the numerosity requirement of Rule 23(a). United argues that only those Plaintiffs who have exhausted their administrative remedies are able to bring these claims forward and no Named Plaintiff has alleged he exhausted his administrative remedies.

Given the size and geographical dispersion of the members of the RICO Class and ERISA Subclass, there is no doubt the potential Class members are so numerous as to make joinder impracticable. Thus, the first requirement of Rule 23(a) is satisfied.

2. Commonality

Defendants Aetna and Foundation argue that commonality does not exist. Aetna submits that the Plaintiffs cannot establish the existence of a uniform, nationwide "safety net," for there is no uniform nationwide definition of "medical necessity," as it is a concept defined by numerous state laws and thousands of different self-funded and insured plans.

However, this argument fails at the "commonality" stage. To satisfy the commonality element, there need not be a uniform, nationwide scheme or definition, but merely *some* common facts or issues of law. *See Kreuzfeld A.G.*, 138 F.R.D. at 599. Plaintiffs have met that minimal burden here. Namely, Plaintiffs have demonstrated:

> common questions of fact and law which concern both RICO and ERISA:
> # Whether the Defendant knowingly misrepresented that claims for coverage of medical services specified in the health plan policies would be paid and services provided if the services met the company's medical necessity

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31154945  
--- F.R.D. ---  
(Cite as: 2002 WL 31154945 (S.D.Fla.))

Page 4

definition;
# Whether the Defendant based coverage determinations on undisclosed cost-based criteria that are different from or more restrictive than the factors included in the medical necessity definition;
*5 # Whether the Defendant concealed from class members its use of capitation arrangements with physicians, and the nature and purpose of those arrangements;
# Whether the value of the Defendant's policies as represented was more than the value of the policies as implemented.

common questions of law and fact common to the RICO class:
# Whether the Defendant conducted the affairs of an enterprise through a pattern of racketeering activity;
# Whether the Defendant engaged in an open-ended pattern of racketeering activity involving multiple acts of mail fraud, wire fraud, extortion and Travel Act violations.

common questions of law and fact common to the ERISA class:
# Whether the Defendant's misrepresentations respecting the medical necessity definition also violated its fiduciary duty to refrain from misrepresentations in communication with ERISA class members;
# Whether "gag clauses" found in the Defendant's contracts with providers constitute improper interference with physician-patient communication in violation of the Defendant's fiduciary duties.

3. Typicality

Plaintiffs claim the standard for typicality is met here because the class representative's claims arise from the same operative facts as those of the RICO Class and ERISA Subclass they seek to represent. The named Plaintiffs were victims of uniform misrepresentations and omissions by Defendants as were all Class and Subclass members, and they were injured in the same way as all Class and Subclass members. The named Plaintiffs do not assert any unique legal claims or theories.

Defendants, however, attempt to demonstrate that Plaintiffs' position has no factual foundation. They claim disclosures made directly to members about the challenged practices have been numerous and varied; the disclosures to employers equally so; and the information available in the public domain has been voluminous. In such circumstances, they claim, there can be no "typical" plaintiff. See, e.g., Sprague v. General Motors Corp., 133 F.3d 388, 398-99 (6th Cir.1998) (finding no typicality where representations about health care benefits varied among putative class members and "[e]ach claim...depended on each individual's particular interactions" with employer, which "varied from person to person"); Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 275-76 (D.Mass.2000) (holding no typicality where means of obtaining information and content of information varied among class members).

The Plaintiffs focus on the Defendants' treatment of the class members, arguing that the legal claims are identical and that the Defendants have each implemented a common scheme. See Moore's Federal Practice § 23.24[8][d] ("In actions under the Racketeer Influenced and Corrupt Organizations Act (RICO), the typicality requirement is satisfied if the claims of the class representative and the class arise from the same scheme by the defendant to defraud the class members."). The Plaintiffs respond to the factual differences between the class representatives' claims and those of some class members by noting that factual differences do not defeat typicality where the claims arise out of the same legal theory. See, e.g., In re Central States Bakery Antitrust Litigation, 86 F.R.D. 407, 415 (M.D.La.1980); Walco, 168 F.R.D. at 326 (holding "minor factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.").

*6 Additionally, courts have found similar ERISA claims satisfy the typicality requirement of Rule 23(a). For example, in Alday v. Container Corp. of America, 1998 WL 236038 (M.D.Fla.1998), the court considered whether plaintiffs' claims that defendants had breached their fiduciary duties under ERISA were sufficient to fulfill the typicality requirement of Rule 23(a). Looking at both commonality and typicality, the court held that "the Plaintiffs' claims that Defendants' action was in violation of ERISA and breached their fiduciary duties are claims which are typical of all potential class members." Id. at *8. Indeed, in certifying an ERISA class, the Alday court noted, "[t]he injury flowing from Defendants' act is the same as to all potential class members and their claims for relief are similar." Id. The same is true for the ERISA Subclass here, as the Plaintiffs' claims for relief are similar.

Because Plaintiffs have properly plead typicality, and Defendants have not shown the differences or "conflict" among the Plaintiffs would place the interests of the class in significant jeopardy, the Court finds that the named Plaintiffs have met their burden of establishing that their claims are typical of the claims of the class.

4. Adequacy

a. Counsel

The Defendants argued Plaintiffs' counsel, specifically the firm of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

& Perwin, P.A., is inadequate because it represents the conflicting interests of the Provider Plaintiffs and Subscriber Plaintiffs.

In this action, this court has already determined the proposed class counsel are knowledgeable and posses extensive experience in complex class action litigation including federal RICO and ERISA claims. Plaintiffs' counsel are committed to the vigorous prosecution of this action and possess both the skills and competence necessary for such efforts. Additionally, each named Plaintiff has filed a Consent regarding the representation. This Court has already visited this issue and Defendants have not presented any evidence to contradict its determination that Plaintiffs counsel are adequate.

b. Named Representatives

Several of the Defendants argue that the named Plaintiffs are inadequate representatives because they lack sufficient knowledge of the facts alleged in the Complaints and major developments in their case. Specifically, Defendants note several of the named Plaintiffs have testified that they have no knowledge of the names of the judges presiding over their case or of the majority of lawyers prosecuting the case on their behalf, deadlines in the case, and the fact that the case had been moved to Florida, until shortly before their depositions.

The Court notes that such a lack of knowledge by some of the named Plaintiffs is understandable given the complexity and size of this case. Thus, the Court finds that such a common and expected lack of knowledge by some of the named Plaintiffs does not render them inadequate representatives. *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir.1982) (finding class representatives not required to have detailed knowledge of the litigation). Additionally, where the class, as it is here, is "represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Krikpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir.1987). Based on the evidence before it, the Court cannot find that Plaintiffs have virtually abdicated to their attorneys the conduct of the case.

B. Rule 23(b)(2)

*7 Under Rule 23(b)(2), this Court must determine whether the Defendants have acted on grounds "generally applicable to the class as a whole," and if so, whether injunctive relief is the appropriate and primary remedy for the ERISA claims.

1. "Generally Applicable"

The term "generally applicable" has been interpreted to mean that the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to all members." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 673 (S.D.Fla.1997).

The Advisory Committee Notes illustrate that Rule 23(b)(2) applies only where class treatment is "clearly called for," for example, in situations where a court, through a single injunction or declaration, can redress "group, as opposed to individual, injuries..." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 (11th Cir.1983). A Rule 23(b)(2) action cannot resolve individualized issues of fact, nor provide different types of relief required to redress individual injuries. 5 James Wm. Moore, et al., *Moore's Fed. Prac.* § 23.43(2)(b) at 23-195 (3d ed.2000).

The majority of courts involving Rule 23(b)(2) certification found defendants engaged in uniform conduct as to all members of the proposed class. *Clay*, 188 F.R.D. at 494 (finding allegations of concerted advertising aimed at minors made clear that the marketing was conducted uniformly as to all members of the proposed class); *Leszczynski*, 176 F.R.D. at 673 (finding defendant's uniform refusal to pay claims to persons injured while occupants of leased vehicles constitutes the type of pattern or practice envisioned by rule 23(b)(2)); *Davis*, 1993 WL 593999, at *6 (finding that because defendant charged all members the same, allegedly monopolistic prices, it injured all class members in the same way); *In re Consolidated "Non-Filing Insurance" Fee Litigation*, 195 F.R.D. 684, 694-95 (M.D.Ala.2000)(finding defendant acted on grounds generally applicable to the class when it imposed a uniform fee on all members of the putative class); *Campos*, 188 F.R.D. at 661 (finding that because all the plaintiffs were denied waivers based on the same policies and practices, defendant acted on grounds generally applicable to the entire class); *Bolin*, 231 F.3d at 975 (finding the plaintiff alleged a uniform policy of fraud promulgated by a central authority and applied across the board).

The Court agrees that Plaintiffs satisfied the typicality element of Rule 23(a) based on the fact that there were similar factual issues, and Plaintiffs all proceeded under the same legal theory. However, the Court did not determine that there was a uniform policy or scheme. At the 23(b)(2) certification stage, the Court cannot agree that Plaintiffs have satisfied the burden of proving that Defendants acted on grounds "generally applicable to the class as a whole" as the caselaw has interpreted that phrase.

*8 Plaintiffs have alleged that Defendants engaged in a "common scheme" or "pattern or practice" of uniform

2002 WL 31154945  
--- F.R.D. ---  
(Cite as: 2002 WL 31154945 (S.D.Fla.))

Page 6

activity. The "scheme," however, if there is one at all, is not promulgated by centralized authority, or uniform in all respects, but rather controlled on an individual level through subsidiaries and employers, thus differing amongst them. The Defendants have demonstrated the material differences in the documents upon which Plaintiffs rely to support their claim of uniformity. Because this Court can find no uniform scheme, the merits of the Plaintiffs claims turn on the Defendants individualized dealings with each Plaintiff. This renders the ERISA class unsuitable for class treatment under Rule 23(b)(2).

2. Injunctive Relief

Defendants also assert the claim for "predominantly" injunctive relief is absurd because many of the named representatives are not even members of Defendants health care plans. They have no stake in the future price or shape of Defendants' coverage policies. This argument holds true for the remaining claims of the former subscribers only.

The Court need not reach this issue because of lack of evidence that the Defendants engaged in behavior generally applicable to the class as a whole. Even if it did, the Court holds that Subscriber Plaintiffs have met their burden of showing their claim was primarily based on injunctive relief where they have submitted a voluminous record detailing the damages incurred by the Plaintiffs and how those damages would be calculated. Additionally, the Court is not convinced that one injunction would redress the entire class' injuries.

C. Rule 23(b)(3) RICO Class

The Subscriber Plaintiffs seek certification of the RICO Class, which is predicated on the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. A violation of the mail or wire fraud statutes requires proof that a person "(1) intentionally participate[d] in a scheme to defraud another of money or property and (2) use[d] the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir.1991). In the Eleventh Circuit, when a civil RICO claim is predicated upon mail or wire fraud, the plaintiff must additionally show that "he was injured by reason of the defendant's acts of deception." *Id.* at 1499. Thus, when a plaintiff brings a civil RICO action predicated upon mail or wire fraud, he must prove that he was "a target of the scheme to defraud" and that he "relied to his detriment on misrepresentations made in furtherance of that scheme." *Id.* at 1499-1500.

The plaintiff has the burden of proving the following elements of a civil RICO claim predicated upon mail or wire fraud: (1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages. *Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir.2002).

1. Predominance

*9 The Court must find that common issues of law or fact predominate over individual issues. Several of the Defendants argue that the Rule 23(b)(3) requirement is not met here because individual issues will predominate over issues common to the class. Specifically, Defendants claim that individual questions of reliance predominate as to Plaintiffs' RICO and fraud claims.

The crux of plaintiffs' allegations is that each Defendant made material misrepresentations to the entire class that were uniform in all respects and that Defendants have engaged in a common scheme of misrepresenting to the subscribers the amount of coverage they receive.

Defendants point out that the action is against holding companies, whose locally operated subsidiaries contract with thousands of employers nationwide to provide health care services. The subsidiaries and employers are the entities that make various types of disclosures to participants. Further, the subsidiaries and employers often modify such disclosures over time as a result of state regulations, changes in policy and medical practices, and the specific needs of the subsidiaries. As a result, the disclosures members receive regarding their medical coverage vary both temporally and geographically.

For example, certain Defendants have modified the definition of the terms "medically necessary" and "experimental, investigational or unproven procedures" in certificates throughout the years, and have added disclosures regarding the use of physician incentives. Additionally, because the Defendants do not require their subsidiaries to follow the generic language of their certificates, or adopt the language contained therein, the certificates actually issued by the subsidiaries often vary. The Defendants also provide information to members in various other ways, such as information provided orally to employees at informal meetings, marketing materials, enrollment materials, member materials and other documents. The subsidiaries make their own decisions with respect to advertising and marketing without the involvement or approval of Defendants, and thus the local subsidiaries vary in the quantity, nature and content of their marketing. Further, the content of these types of materials and whether they actually reach the member or potential member vary based on whether the individual employer allows such materials to be

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31154945                                                                                                                  Page 7
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

provided to its employees and based on what the state insurance agency has approved for distribution to individuals. Thus, because of these vast differences and variations in plan documents, Plaintiffs' allegation of a common scheme is not supported by the evidence.

Plaintiffs allege that "where a number of plaintiffs claim injury from a single fraudulent scheme allegedly constituting racketeering activity on the part of defendants, each of the plaintiffs' claims will focus on defendants' conduct to establish a violation of section 1962. The issues of law and fact involved in making out a violation of section 1962 will generally be common to all plaintiffs' claims," and will predominate over potential individual issues such as the nature and extent of injuries suffered by plaintiffs and each class member. *McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32, 39 (E.D.Pa.1985).

*10 However, the Advisory Committee Notes under Revised Rule 23 state: "[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they are addressed." See *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir.1973).

Because this Court finds there is no proof of a common scheme and the disclosures the putative class members have received regarding their medical benefits are not uniform, and indeed materially vary from year to year and plan to plan, class treatment of Plaintiffs' claims predicated on fraud is inappropriate. Where there are variances in the alleged representations supporting claims based on fraud, courts routinely refuse to certify class actions because of the individualized proof involved in order to sustain the claims. See *Andrews*, 95 F.3d at 1024-25 (finding certification of class alleging RICO violations based on fraud was an abuse of discretion because "[t]he 900-number programs at issue...differ widely in terms of the advertising and solicitation used, the extent to which disclosures were made, and the existence and promotion of free means of participation, so each program must be assessed individually to determine whether fraudulent tactics were employed by the appellants ."); *Spencer v. Central States, Southwest Areas Pension Fund*, 778 F.Supp. 985 (N.D.Ill.1991) (denying class certification alleging breach of fiduciary duty under ERISA where representations made were not uniformly communicated to each member of the class).

Plaintiffs claim predominance has been found even where the presentations in question have some degree of individualization. However, the cases cited by Plaintiffs do not compel a contrary result. *See, e.g., Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 79-81 (S.D.N.Y.1997); *Walco*, 168 F.R.D. at 336; *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 64 (D.Mass.1997).

In *Walco*, this Court found that because there were no substantial material differences in the misrepresentations to the plaintiff class, individual issues did not predominate. *Walco*, 168 F.R.D. at 336. There, the plaintiffs alleged a common scheme of fraud, and the defendants argued that common questions could not predominate because plaintiffs could not demonstrate the existence of a single standardized sales pitch. *Id.* This Court found that although the sales pitches may not have been identical, they were "substantially identical," and that all the sales pitches misrepresented or omitted the same material information. *Id.* In the instant case, the record does not reflect that all plan documents and oral representations omitted the same material information. On the contrary, the record reflects how the plan documents vary widely and contain great divergences in the information provided. Thus, the Court is unable to accept that the plan documents are "substantially identical" as it was able to do in *Walco*.

*11 In *Dornberger*, the plaintiffs alleged defendants engaged in the illegal sale of life insurance based on a common set of facts and course of consistent conduct. 182 F.R.D. at 79. The court found individual issues did not predominate. *Id.* However, the plaintiffs alleged and proved the existence of uniform, written misrepresentations. *Id.* at 81. The court found this enough to meet the tests of commonality and predominance. *Id.* Here, the Plaintiffs have merely alleged, but not *proven* the existence of uniform, written documents. Thus, the Court is unable to conclude, as the *Dornberger* court did, that individual issues do not predominate.

At issue in *Duhaime* was a district court's certification of a class for settlement purposes. 177 F.R.D. at 57. The claims involved misleading and deceptive sales practices. *Id.* at 58. The court found that common issues predominated even though a large part of the scheme was implemented through oral misrepresentations. *Id.* at 64. However, the court also noted the allegations in the complaint described a nationwide course of conduct with a nationwide training program where differences in oral presentations would not defeat predominance. *Id.* Here, Plaintiffs have not shown a nationwide course of conduct. Not only were there variations in the oral representations, but there was also variations among the written plan documents and no nationwide training program.

In *Peterson v. H & R Block Tax Services, Inc.*, plaintiffs sought certification of a class of taxpayers who were allegedly deceived by misrepresentations from a tax preparer on the availability of its refund anticipation loan

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31154945                                                                                    Page 8
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

service. 174 F.R.D. 78, 80-81 (N.D.Ill.1997). The defendant attempted to differentiate the class members' experiences by showing differences among: 1) the specific advertising and marketing promotions the class members might have seen or received; 2) other information to which they might have been exposed through discussions with friends and encounters with defendant's personnel; and 3) the extent to which the class members may have read and understood the disclosure documents. *Id.* at 82. For these reasons, the defendant argued, individual and not common issues predominated. The district court disagreed. *Id.* at 83.

First, the court noted that defendants presented no evidence of any theoretical differences among class members with regard to the advertising and oral representations. Although Defendants asserted this argument, they failed to point to any documentation or evidence to support it. *Id.*

Second, the court stated, "assuming the class members were presented various ads, promotions and oral statements, none of these materials or statements form the basis of the alleged fraud" at issue. *Id.* Rather, the claims in that case were premised on written misrepresentations contained in standard documents furnished to every class member--a situation that the court found presents a "classic case for treatment as a class action." *Id.* (quoting *Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill.1988)) Consequently, the court determined any oral representations the class members received personally "may have supplemented the written documents that [the class] received, but they do not replace those written statements as the focus of the fraud alleged." *Id.* (quoting *Arenson v. Whitehall Convalescent & Nursing Home, Inc.,* 164 F.R.D. 659, 665 (N.D.Ill.1996)). Courts will find predominance despite the existence of oral representations that vary among class members if those representations are not integral to the alleged fraud. *Id; see also Scholes v. Moore,* 150 F.R.D. 133, 13 (N.D.Ill.1993). In *Peterson,* the allegations were predicated on standard written documents presented by the defendant. Thus, the court could not characterize individualized representations outside those documents as "integral." However, here, this Court can. Additionally, individual reliance is not an element of a RICO claim in the Seventh Circuit as it is in the Eleventh. The court made clear the sole factors in the class members' decisions to purchase the service were the standard documents provided by defendants. Plaintiffs have not proven that to be the case here.

*12 On the other hand, the Defendants' cases are compelling.

In *Peoples v. American Fid. Life Ins. Co.,* the district court refused to certify the class because plaintiffs did not properly allege common issues of fact and law predominated. 176 F.R.D. 673, 646 (N.D.Fla.1998). There, the court found that although at the heart of plaintiffs case was the assertion that the fraudulent marketing and sales scheme of certain life insurance was monolithic and universal, plaintiffs fail to address differences in the sales pitches heard by each named plaintiff. *Id.* at 644. The plaintiffs attempted to argue that a canned presentation was designed to be delivered word-for-word, and that the salespeople were admonished not to change a word. The court found, however, this was not the case. Instead, defendants showed that changes were made in each presentation. The court stated these differences in the presentations and documents demonstrated a lack of commonality. *Id.* The court found that the many factual differences were determinative and that if each purchase of a policy has to be examined as to the content of the presentation, the questions asked by the purchaser, the parts of the offer which were attractive to the purchaser, and the reliance by the purchaser on both the oral and written presentations, there will have to be a mini-trial involving each of those issues for each of the millions of purchasers plaintiffs purport to represent. *Id.* at 645. The court determined that "it is abundantly clear from the foregoing analysis that the case contains a factual minefield," just like the instant case. *Id.*

Finally, *Sikes* is controlling. The district court in *Sikes* certified a nationwide class of individuals who claimed to have been defrauded by an automated "900-number" telemarketing program entitled "Let's Make a Deal." *Sikes v. American Telephone & Telegraph Co.,* 179 F.R.D. 342, 345 (S.D.Ga.1998). Specifically, the plaintiffs claimed the "Let's Make a Deal" program fraudulently induced customers to incur long-distance charges and asserted RICO claims predicated on mail fraud, wire fraud, and illegal gambling against AT & T, the telecommunications carrier for the "Let's Make a Deal" program. *Id.* Although the fraud allegations were similar to claims that the Eleventh Circuit found unsuitable for certification in *Andrews,* the district court determined the facts specific to *Sikes* did not compel the same result as *Andrews. Id.* at 347; *see also Andrews,* 95 F.3d 1014. The district court found *Andrews* not to be controlling because the alleged fraud surrounding the lone "900-number" program at issue in *Sikes* was such that reliance, injury or damages could virtually be presumed. *Sikes,* 179 F.R.D. at 346-47. The court reached this result because it found the plaintiffs basically alleged that the defendant committed the same unlawful acts in the same method against the entire class. *Id.* at 347.

*13 The Eleventh Circuit reversed and decertified the class based upon a lack of predominance. *Sikes,* 281 F.3d at 1352. It found plaintiffs always bear the burden of proving, rather than merely alleging, all factual predicates for class certification. *Id.* at 1362. The Eleventh Circuit rejected the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

propriety of allowing a presumption that would relieve plaintiffs of their burden of having to prove every element of a claim. *Id.* The Court of Appeals noted that a presumption is generally employed to benefit a party who does not have control of the evidence on an issue. *Id.* On the facts as presented in *Sikes*, plaintiffs, and not the defendant, were in control of information regarding reliance, the content of the alleged fraudulent advertisements, injury and damages. *Id.*

The Eleventh Circuit clarified that the only cases in which a presumption has been permitted involve the reliance element of "fraud-on-the-market" securities claims, based on the theory that investors necessarily rely on the integrity of the securities market and on the prices set by that efficient market when making securities trades. *Id.* at 1363. The Court made clear that such rules may only be invoked in the securities fraud cases: "the securities market presents a wholly different context than a consumer fraud case, and neither this circuit nor the Supreme Court has extended a presumption of reliance outside the context of securities cases." *Id.* In other cases, including those founded on RICO, the plaintiffs bear the burden of proving that the advertisements upon which each class member relied were fraudulent and misleading. *See id.* at 1363-64.

The Eleventh Circuit noted a district court cannot simply presume that all advertisements or communications were uniformly "misleading, because each individual plaintiff bears the burden of proving the ad upon which he relied was misleading." *Id.* at 1364. Because a factfinder cannot determine whether an advertisement was misleading or fraudulent without knowing its content, each plaintiff will have to provide evidence of the particular advertisement that he heard or saw--an exercise that would necessarily cause individual issues to predominate over common issues. *Id.*

The *Sikes* Court did note, however, in rejecting the use of a presumption of reliance on the facts of the *Sikes* case, that the plaintiff class may still prove reliance by circumstantial evidence. "We do not say herein that reliance must be proved by direct (as opposed to circumstantial) evidence. We merely hold that reliance may not be *presumed* such that a plaintiff does not have to come forward to prove an element of the claim." *Id.* at 1362, n. 32.

Alternatively, Subscriber Plaintiffs claim that if a presumption of reliance cannot be made, then reliance in a fraud action may be *proven* by circumstantial evidence. [FN6] Plaintiffs assert they have demonstrated, through circumstantial evidence, that the class members relied on the uniform, written misrepresentations prepared by Defendants.

> FN6. Plaintiffs refer to the uniform, written disclosure documents prepared by each of the defendants and the analysis of Professor John Gruber as the circumstantial evidence which proves reliance by the Plaintiffs.

*14 Subscriber Plaintiffs assert that because they have submitted to the court evidence of uniform, written disclosure documents prepared by each of the defendants, their case is distinguishable from *Sikes*. Subscriber Plaintiffs claim their documents do not vary considerably in terms of content and language, as the advertisements did in *Sikes*. Subscriber Plaintiffs assert this is enough to distinguish their case. However, Subscriber Plaintiffs failed to recognize that the Defendants have presented evidence of numerous, non-uniform, oral representations. In light of these representations, this case appears more similar to *Sikes*.

Subscriber Plaintiffs additionally claim individual reliance issues do not predominate here because the fraud was perpetrated in a uniform manner against every member of the class. They assert cases in which individual issues of reliance predominated involved nonuniform, oral misrepresentations. *See, e.g., Id.; Andrews,* 95 F.3d at 1024-25.

Defendants, on the other hand, assert the RICO analysis undertaken by the Eleventh Circuit in *Sikes*, after the motion for class certification was filed, demonstrates that the law of this circuit completely precludes class certification in the subscriber cases. *Sikes* demonstrates that any attempt to prove the defendants engaged in a "scheme to defraud" will require individualized evidence entirely inconsistent with the class action device. They contend that where 119 television commercials, print advertisements, and direct mail solicitations to 10,000 AT & T subscribers rendered class treatment of the "scheme to defraud" element impossible in Sikes, it follows that class treatment of the "scheme to defraud" element is impossible for the tens of millions of subscribers in this case who received information about thousands of different health coverage options for a multiplicity of sources. Each plaintiff will have to provide evidence of the particular disclosure he heard or saw, and that the disclosure was misleading.

*Sikes* held presumption of reliance is an inappropriate tool where each individual plaintiff is the only one with information about the content of the information upon which he relied. Here, obviously, Defendants and employers may have information about the content of the information upon which the Plaintiffs relied. But similar to *Sikes*, Defendants have shown that some documents may no longer be in existence, were never in their control, certain statements were made orally and unrecorded, and there is variance among the disclosure documents Defendants have in their control.

Plaintiffs are asking this court to *presume* that the only

relevant information to each Plaintiff's health care decision was the written, uniform documents. However, the non-uniform oral representations may have had an impact on each Plaintiff's decision. As in *Sikes*, each individual plaintiff is the only one with all of the information upon which he relied in making his health care coverage determination. The oral, non-uniform communications may have been part of what the Plaintiffs relied upon when making their health care coverage decisions. The only way to determine what each plaintiff relied upon is to ask each individual plaintiff--something which, if done, precludes class certification because individual issues will predominate over the class issues.

**\*15** The Plaintiffs' claims will require distinctly case-specific inquiries into the facts surrounding each incident of fraud. The issues that must be addressed include not only which representations each individual Plaintiff relied upon, but also what information was available to each Plaintiff, what knowledge about the industry each Plaintiff had, and so on. Even more varied issues would certainly be present in the claims of millions of members of an improperly certified class. Furthermore, even factual issues that are common to many of the Plaintiffs will require highly case-specific determinations at trial. These issues are clearly predominant over the only issue arguably common to the class--whether Defendants have a policy or practice of misrepresentation and concealing certain procedures.

2. Superiority

Even if this Court found Plaintiffs met the predominance requirement of Rule 23(b)(3), Plaintiffs have not shown that class action is a superior method of adjudicating the dispute.

The superiority factor requires the Court to determine whether there is a better method of handling the controversy other than through the class action mechanism. *Singer v. AT & T Corp.*, 185 F.R.D. 681, 692 (S.D.Fla.1998). The relevant question, therefore, is whether class certification manageability issues create a situation that is less fair and efficient than other available techniques for resolving the claims of all the class members--not whether litigation of these claims should go forward at all. *Sikes*, 179 F.R.D. at 351.

Courts are generally reluctant to deny class certification based on speculative problems with case management. *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 363 (S.D.Ga.1996) (finding of unmanagability requires more than the case will be difficult to try or that the case involves novel legal challenges). Plaintiffs claim there are no difficulties likely to be encountered in the management of *145 million subscribers* that cannot be resolved or that outweigh the clear benefits of maintaining this case as a class action. *See In re Disposable Contact Lens Antitrust Litigation*, 170 F.R.D. 524, 529 (M.D.Fla.1996) (certifying class of contact lens purchasers with 15 million members).

The Defendants propose the Court consider whether certification is appropriate in the "interests of justice," asserting that certification of a class action of this magnitude would result in a single jury determining the fate of a predominant portion of the health insurance industry. *See, e.g., Walco*, 168 F.R.D. at 337 (a court has discretion to consider factors other than those specified in Rule 23(b)(3) when making a superiority determination); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir.1995) (holding class treatment is inappropriate where "[o]ne jury ... will hold the fate of an industry in the palm of its hand.").

It may be true that, at a general level, the issue here is whether the Defendants engaged in a common course of fraudulent conduct denying the Plaintiffs the benefit of their health insurance coverage. But as a practical matter, the resolution of this overarching common issue breaks down into an unmanageable variety of individual legal and factual issues. *See Amchem Products, Inc.*, 83 F.3d at 626 (stating that beyond broad common issues surrounding harmfulness of asbestos exposure, class members' claims against asbestos manufacturers varied widely in character and could not be tried on a class basis). The class' mail and wire fraud allegations, for example, are not wholly subject to class-wide resolution. *See Pelletier*, 921 F.2d at 1499-1500 (stating that each plaintiff must demonstrate reliance on deceptive conduct in furtherance of the alleged RICO scheme).

**\*16** Litigating the Plaintiffs' claims as a class action comprising *145 million members*, no matter what the cost in terms of judicial economy, efficiency and fairness, runs counter to the policies underlying Rule 23(b)(3). *See* Fed.R.Civ.P. 23 advisory committee's note (1966 amendment) (stating that subdivision (b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense"). While this Court recognizes Rule 23 is to be applied flexibly, the manageability problems discussed above defeat the Rule's underlying purposes and render these claims inappropriate for class treatment. Finally, the Court notes that Plaintiffs' assertion that the small size of each member's claims makes class treatment appear to be the only feasible method of adjudication, does not hold true. Even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs. *Andrews*, 95 F.3d at 1025.

C. Rule 23(b)(3) ERISA Subclass

The remaining ERISA claims are the former subscribers' claims for misrepresentation of the "medical necessity"

2002 WL 31154945                                                                                                  Page 11
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

definition and for all subscribers, the "gag clause" claims.

1. Predominance

Individual issues will predominate over common ones in the ERISA Class as well because the Court has determined that there is no common scheme or course of conduct by the Defendants.

Reliance is an issue for the ERISA claims as well. The Defendants direct this Court's attention to *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 457 (11th Cir.1996). In that case, former Delta employees brought ERISA and contract claim against the airline alleging that they chose their retirement dates in reliance on promises that they would receive the same level of medical coverage throughout their retirement and that no improved retirement package was planned, when in fact a more favorable package was in the works. The court upheld a denial of class certification of the breach of fiduciary duty claim, concluding that "[e]ven if the plaintiffs are able to prove that Delta disseminated a false and uniform message to all potential retirees that no such plan was in the works at the time they made their decision to retire, they would also have to show that all members of the class would have deferred their retirement" in reliance on Delta's alleged misrepresentations. *Id.* at 457. Thus, individualized issues will predominate over common ones, making class certification inappropriate.

2. Superiority

Even if this Court finds the ERISA Subclass meets the predominance requirement of Rule 23(b)(3), Plaintiffs have not shown that class action is a superior method of adjudicating the dispute.

The superiority factor requires the Court to determine whether there is a better method of handling the controversy other than through the class action mechanism. *Singer,* 185 F.R.D. at 692. The relevant question, therefore, is whether class certification manageability issues create a situation that is less fair and efficient than other available techniques for resolving the claims of all the class members--not whether litigation of these claims should go forward at all. *Sikes,* 179 F.R.D. at 351.

*17 Just as in the RICO Class, while it may be true that at a general level, the issue here is whether the Defendants engaged in a common course of fraudulent conduct denying the Plaintiffs of the benefit of their health insurance coverage, as a practical matter, the resolution of this overarching common issue breaks down into an unmanageable variety of individual legal and factual issues. *See Amchem Products, Inc.,* 83 F.3d at 626 (stating that beyond broad common issues surrounding harmfulness of asbestos exposure, class members' claims against asbestos manufacturers varied widely in character and could not be tried on a class basis).

Litigating the Plaintiffs' claims as a class action no matter what the cost in terms of judicial economy, efficiency and fairness runs counter to the policies underlying Rule 23(b)(3). *See* Fed.R.Civ.P. 23 advisory committee's note (1966 amendment) (stating that subdivision (b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense"). While this Court recognizes Rule 23 is to be applied flexibly, the manageability problems discussed above defeat the Rule's underlying purposes and render these claims inappropriate for class treatment.

*Provider Track*

A. Rule 23(a)

1. Numerosity

Defendants do not dispute that the Provider Plaintiffs have met this element. The proposed global class here would include all doctors who treated a patient who is a member of a Defendant from 1990 through to the present. The Plaintiffs contend this class will exceed approximately 600,000 members. The two subclasses, although smaller in number, still clearly meet the numerosity requirement.

Once again, given the size and geographical dispersion of the members of the Provider Track classes, the potential class members are so numerous that joinder of them all is impracticable.

2. Commonality

Where, as here, Plaintiffs' detailed allegations and other evidence set forth a common scheme of deceptive conduct, the "commonality" element is satisfied. The evidence of such a uniform, common fraudulent scheme naturally lends itself to class-wide proof. *Walco,* 168 F.R.D. at 335.

Here, the Provider Plaintiffs have done more than just allege a common scheme, they have demonstrated facts which support its existence.

The Plaintiffs' allege Defendants engaged in a pattern of collective behavior which has inflicted and continues to inflict, substantial harm on the Plaintiffs. Plaintiffs claim Defendants have engaged in a conspiracy and have also aided and abetted each other in implementing and continuing a common fraudulent scheme designed to systematically obstruct, reduce, delay and deny payments and reimbursements to health care providers.

Plaintiffs point to deposition testimony confirming that Defendants meet via trade associations, joint health plan

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31154945                                                                                       Page 12
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

provider organizations and a corporation established and financed by managed care entities, specifically to discuss and develop common plans regarding the processing of provider claims.

*18 Additionally, the depositions demonstrate that the Defendants uniformly require physicians to use an HCFA-1500 form in submitting claims. This is the threshold information required for processing a claim. The HCFA-1500 form requires a CPT code procedure code and an ICD 9 diagnosis code. The CPT code indicates to the insurer the services provided by the physician. CPT codes are standard descriptors for the terminology produced by the AMA, and the use of CPT-4 codes for claims processing is a common, industry-wide practice. This uniform coding practices is what allows for automated logic to be applied across the board to physicians. The data contained on an HCFA-1500 form are simply code numbers that do not contain anything that would allow a benefit analyst or claims processor to make a distinction between the different codes. Thus, this "medical review" based on the HCFA-1500 form is illusory.

Defendants have implemented systematic claims processes whereby Defendants have the ability to manipulate CPT codes, downcode and bundle claims, delay and wrongfully deny payments. Most Defendants use software sold and licensed by McKesson HBOC [FN7] or comparable software which is capable of modifying CPT codes and, accordingly, reimbursement rates. Plaintiffs have demonstrated Defendants' extensive use of these programs.

> FN7. CodeReview, ClaimCheck, and Patterns Review are auditing and compliance software systems sold and licensed by McKesson HBOC.

The Provider Plaintiffs are unlike the Subscriber Plaintiffs in that they have established a common scheme or course of conduct on behalf of the Defendants. The Subscriber Plaintiffs were unable to overcome the Defendants evidence of the material variations in the plan documents and oral representations made to Subscribers. These differences make it impossible for this court to conclude that there was a common scheme.

However, the Provider Track is different. All Defendants utilize computer software programs to process claims. Although there may be variations among the software used, Defendants have not demonstrated that these variations were material. The Provider Track also differs because individual subsidiaries and employers do not control the claims process, and the Providers are not given various representations upon which they rely, instead, they claim the entire *process* is fraudulent.

Additionally, even if they had not proven the existence of a common scheme, the Providers, just like the Subscribers, are all proceeding under common issues of law and fact:

Common issues of fact as proposed by the Plaintiffs include allegations concerning the Defendants'
  # common automated bundling practices
  # common automated downcoding practices
  # common systematic practice of making medical necessity determinations based on non-medical criteria
  # automated systems to identify physicians as "outliers"
  # the payment of bonuses or other incentives to claims employees
  # the failure to pay claims within the applicable contract and statutory time periods, and
  # the common failure to place patients on physicians' capitation rolls until treatment is sought, depriving a physician of a portion of capitation payment.

*19 Common questions of law, as proposed by the Plaintiffs, include:
  # whether making payments on a basis other than the medical necessity definition contained in the Provider Agreements constitutes a pattern of racketeering activity because the literature and representations to the physician is contrary to actual practice
  # whether the failure to pay a claim, or the downcoding of a claim according to a new standard other than medical necessity is a breach of contract, and
  # whether the Defendants have agreed to lower reimbursement rates and/or slow payment schedules in a conspiracy to keep reimbursements low.

3. Typicality

Because the Provider Plaintiffs have demonstrated a common scheme or course of conduct, they also have shown typicality. See Moore's Federal Practice § 23.24 [8][d] ("In actions under the Racketeer Influenced and Corrupt Organizations Act (RICO), the typicality requirement is satisfied if the claims of the class representative and the class arise from the same scheme by the defendant to defraud the class members.").

Additionally, even if the Providers have not demonstrated a common scheme or course of conduct, they have still satisfied the typicality requirement because they have demonstrated that their claims, even if factually different, arise out of the same legal theories as detailed in the Consolidated Amended Complaint. See, e.g., In re Central States Bakery Antitrust Litigation, 86 F.R.D. at 415; Walco, 168 F.R.D. at 326 (holding "minor factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.").

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 31154945    Page 13
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

4. Adequacy

a. Counsel

The Defendants argues again that some of Plaintiffs' counsel, specifically the lawyers in the firm of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., are inadequate because they represent the conflicting interests of the Provider Plaintiffs and Subscriber Plaintiffs.

As previously mentioned, this court has already determined that the proposed class counsel are knowledgeable and posses extensive experience in complex class action litigation including federal RICO and ERISA claims. Plaintiffs' counsel are committed to the vigorous prosecution of this action and possess both the skills and competence necessary for such efforts. Additionally, each named Plaintiff has filed a Consent regarding the representation. Thus, this Court is in no position to find Plaintiffs' counsel inadequate in this representation.

b. Named Representatives

The Defendants argue the representative Plaintiffs' interests are antagonistic to those of the absent class members. First, contrary to the relief requested in the complaint, Plaintiffs Porth and Kelly both testified they are bringing the lawsuit for policy reasons, rather than monetary damages. Second, the Defendants proffer an equal treatment versus equal impact dichotomy: Even if all providers treated the same by identical computer program, this evidence "would still fall far short of establishing that all providers in the class were impacted or harmed in the same manner and to the same extent by such treatment." (Aetna Brief at 47.) Plaintiffs Porth and Burgess have not provided evidence that providers in the class are roughly comparable in terms of number, dollar amount, or type of claims submitted. Downcoding, bundling, slow payment, denial and restriction of capitation payments would seem to affect doctors differently. Therefore, the Plaintiffs' "attempt to substitute for [an] individualized analysis a contrived damages model that simply shoehorns those varying claims into a uniform model ... necessarily disadvantag[es] those class members with the best claims ." (Aetna Brief at 48.)

*20 The Plaintiffs do not respond to these arguments. However these arguments address the typicality and commonality prongs of Rule 23(a), and not the adequacy of the named Plaintiffs. The Defendants have not demonstrated that the named Plaintiffs' interests are antagonistic, but merely that their claims may differ. This is not enough to defeat adequacy. Griffin. 755 F.2d at 1533.

B. Rule 23(b)(2)

Plaintiffs seek certification pursuant to 23(b)(2) for injunctive relief, in the event the Court should decline 23(b)(3) certification. Because the Court grants certification pursuant to 23(b)(3), it does not address the issue of 23(b)(2) certification at this time.

C. Rule 23(b)(3)

1. Predominance

The Court must find common issues of law or fact predominate over individual issues. The Defendants argue the Rule 23(b)(3) requirement is not met here because individual issues will predominate over issues common to the class. Specifically, Defendants claim that individual questions of reliance predominate as to Plaintiffs' RICO and fraud claims.

Where the alleged wrong involves a conspiracy and joint efforts to monopolize and restrain trade, however, courts have found that common questions of law and fact predominate. In re Infant Formula, 1992 WL 503465 at *6 (N.D.Fla.1992) ("Courts have consistently found the conspiracy issue the overriding, predominant question").

Numerous issues are common to all claims and, in fact, predominate in this action including Defendants' medical necessity requirements, Defendants' use of actuarial guidelines, Defendants' use of automated claims system and comparable software capable of adjusting CPT codes and reimbursement rates and automatically delaying and denying claims as well as other uniform activities designed to deny, delay or decrease reimbursement or payments to physicians. In addition, the global class issue of whether a conspiracy exists and, if so, the extent of its impact is necessarily a common question which predominates in this action. Likewise, the Defendants have aided and abetted each other in violation of RICO and in furtherance of a common scheme which predominates in this action.

Because is a common scheme is alleged and demonstrated by the evidence here, there are no individual issues of reliance. Thus, the common issues and common scheme predominate.

2. Superiority

Plaintiffs have also shown that class action is a superior method of adjudicating the dispute. The issue here is whether the Defendants engaged in a conspiracy and common course of fraudulent conduct to automatically delay, deny and downcode payments to the Plaintiffs. In light of the number of potential claimants and the common scheme, this Court finds it is desirable to concentrate this action in this forum in order to prevent duplication of effort and possible inconsistent results. There are no unsurmountable difficulties with managing this case as a

2002 WL 31154945                                                                                         Page 14
--- F.R.D. ---
(Cite as: 2002 WL 31154945 (S.D.Fla.))

class action. Reliance, causation and damages *may* create complications during the course of this litigation, however, the potential difficulties are nowhere near the magnitude of problems that could arise from 600,000 separate actions. Therefore, this Court concludes that a class action is a superior method for the adjudication of this controversy.

3. Damages

**\*21** Although not certain damages will be proven on a class wide basis, the Plaintiffs have shown that they *could* be proven class wide. At this stage of the litigation, that is all that is necessary. *See Morris v. Transouth Financial Corp.,* 175 F.R.D. 694, 700-01 (M.D.Ala.1997) ("The plaintiffs at this stage of the litigation have convinced the Court that the computation of class damages would be mechanical and without the necessity of individualized hearing. However, even if individualized facts specific inquiries involved, the issues common to the class still predominate."). If, at a later date, and further discovery, it is shown that damages cannot be proven on a class wide basis, this Court can revisit whether class certification is still appropriate.

IV. Conclusion
*Subscriber Track*

To the extent that there are common issues of law and fact present in this case, they do not predominate, and this case, if treated as a class action, would not be manageable, as it includes 145 million members. It is neither convenient nor desirable to accord class status to this case given its factual and legal complexities. Thus, class certification is DENIED.

*Provider Track*

This Court finds that Provider Plaintiffs have met the necessary elements of rule 23. Thus, class certification is GRANTED. The Court also notes this conditional class is subject to decertification if, at a later stage in the litigation, Plaintiffs have failed to prove reliance, even by circumstantial evidence.

2002 WL 31154945, 2002 WL 31154945 (S.D.Fla.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**
(Updated 5/6/02)

### Co-Lead Counsel for Plaintiffs

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
Suite 150
350 N.W. 12th Ave.
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

### Co-Counsel for Plaintiffs

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

### Counsel for Beech Street and ADP

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305)539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

### Counsel for Progressive

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

### Counsel for CCN

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL  32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

Counsel for:
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile