UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CNN,

      Defendants.

_____/

DR. ANDREW ELLOWITZ,                    01-8549
on behalf of himself and all others similarly
situated,

      Plaintiff,

vs.

AMERICAN INTERNATIONAL
INSURANCE COMPANY,

      Defendants.

_____/

## PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION
## RE: AMERICAN INTERNATIONAL [D.E. 852]

Plaintiff DR. ANDREW ELLOWITZ ("ELLOWITZ"), on behalf of himself and all others

similarly situated, by his undersigned counsel, hereby submits his Objections to Magistrate Judge

Snow's September 27, 2002 Report and Recommendation ("R&R"). For all the reasons set forth

herein, ELLOWITZ respectfully submits that Defendant AMERICAN INTERNATIONAL

INSURANCE COMPANY's ("AMERICAN INTERNATIONAL") Emergency Motion to Compel





Arbitration [D.E. 745] should be denied in all respects.

## BACKGROUND

On June 14, 2001, Plaintiff MOTE WELLNESS & REHAB, INC. ("MOTE") filed a class

action Complaint against AMERICAN INTERNATIONAL and AMERICAN SOUTH (collectively,

"AIG"). The Complaint asserted causes of action against AIG for unjust enrichment, third-party

beneficiary breach of contract, RICO violations, declaratory judgment, and for violations of Section

627.736, Florida Statutes. Thereafter, pursuant to an agreement among the parties, MOTE provided

AIG with an enlargement of time to respond to the Complaint until such time as this Court ruled on

the pending motions to consolidate and the motions to dismiss filed in the other PPO reduction class

actions. On September 28, 2001, this Court entered its Omnibus Order which consolidated this

action with the other pending PPO reduction class actions and denied various motions to dismiss.

On November 7, 2001, despite the fact that most Defendants refused to make disclosures

under Federal Rule of Civil Procedure 26, MOTE and the other Class Plaintiffs served their Rule 26

disclosures. On November 7, 2001, AIG served its Rule 26 disclosures limiting its disclosures to

documents.

On January 25, 2002, almost four months after it was required to respond to the Complaint in

this action, AIG filed its Motion to Dismiss or Alternative Motion for Summary Judgment. On

February 12, 2002, an Amended Complaint was filed in these proceedings in which ELLOWITZ

asserted identical claims against AMERICAN INTERNATIONAL and the claims asserted by MOTE

are no longer asserted. On February 25, 2002, AIG served its Motion to Strike Amended Class

Action Complaint. On May 17, 2002, Magistrate Judge Snow issued the Report and

Recommendation which correctly concluded that the Motion to Strike should be denied.

Subsequently, on June 17, 2002, nine months after it was supposed to respond to the Complaint and

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

four months after the Amended Complaint was filed, AIG served its Motion to Compel Arbitration

## REPORT AND RECOMMENDATION

The R&R entered by the Magistrate Judge in this matter denies AMERICAN INTERNATIONAL's Motion to Compel Arbitration. The R&R finds that since the personal injury protection benefits contract ("PIP Contract") between AMERICAN INTERNATIONAL and its insureds was issued before Section 627.736(5), Florida Statutes was declared unconstitutional, the arbitration clause in the PIP Contract is not binding on ELLOWITZ.

## SEPTEMBER 30, 2002 ORDER ADOPTING REPORT AND RECOMMENDATION

On September 30, 2002, this Court entered its Order Adopting Report and Recommendation and Administratively Closing Cases ("9/30/02 Order"). This Court indicated that the 9/30/02 Order impacted the fifteen consolidated cases. The 9/30/02 Order adopts the Magistrate Judge's basis for recommending denial of arbitration, finding that the arbitration clauses in the insurance policies are unconstitutional. The 9/30/02 Order also sustained Plaintiff's objections to the Report and Recommendation on the issue of whether insurance policies entered into after Section 627.736(5), Florida Statutes, was declared unconstitutional could compel a healthcare provider, who receives an assignment of benefits from an insured, to arbitration.

The 9/30/02 Order holds:

> This Court agrees with the plaintiffs that the motion to compel arbitration should be denied for the additional reason that a contractual provision entered into between an insured and an insurance company cannot require arbitration of claims that are assigned to a healthcare provider where the insured is not required to arbitrate the same claims.

The R&R denying AMERICAN INTERNATIONAL's Motion to Compel Arbitration incorrectly limited its effect to policies entered into before Section 627.736(5) was declared unconstitutional. Since this Court, in the 9/30/02 Order already sustained objections to prior R&Rs

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

3

based on this issue, the R&R entered in this matter should be adopted and AMERICAN INTERNATIONAL's Motion to Compel arbitration should be denied for the additional reason that it seeks to require arbitration of claims assigned to a healthcare provider where the insured is not required to arbitrate the same claim.

## **ARGUMENT**

When considering a motion to compel arbitration, a district court must determine "(1) whether there is an agreement to arbitrate, (2) whether there are arbitrable claims, and (3) whether there has been a waiver of the right to arbitration." Janmort Leasing, Inc. v. Econo-Car Int'l, Inc., 475 F. Supp. 1282 (E.D.N.Y. 1979). "Although federal policy strongly favors consensual arbitration, it is axiomatic that (a) written agreement for arbitration is the sine qua non of an enforceable arbitration agreement under the Arbitration Act." Id. (quoting Garnac Grain Co. v. Nimpex Int'l, Inc., 249 F. Supp. 986 (S.D.N.Y. 1966) (citations omitted)). Thus, the threshold question presented by a motion to compel arbitration is whether the contract between the parties to the controversy embodies a clause providing for arbitration. Three Valleys Municipal Water District v. E.F. Hutton & Co., 925 F.2d 1136 (9th Cir. 1991); Camping Constr. Co. v. District Counsel of Ironworkers Local 378, 915 F.2d 1333, 1340 (9th Cir. 1990) ("The court must determine whether a contract ever existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator.") As the Third Circuit has stated:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3rd Cir. 1980).

**I.     THIS COURT'S 9/30/02 ORDER FINDS THAT THE CLAIMS ASSERTED BY ELLOWITZ ARE NOT SUBJECT TO ARBITRATION BECAUSE ELLOWITZ IS ASSERTING CLAIMS AS THE ASSIGNEE OF RIGHTS FROM AN AMERICAN INTERNATIONAL INSURED.**

The claims asserted by ELLOWITZ are not subject to arbitration because ELLOWITZ is asserting claims as the assignee of claims assigned to him by an AMERICAN INTERNATIONAL insured.    There is no arbitration agreement between ELLOWITZ and AMERICAN INTERNATIONAL.  There is no arbitration agreement between AMERICAN INTERNATIONAL's insured and AMERICAN INTERNATIONAL.  Since ELLOWITZ is asserting claims as an assignee, there is no basis to compel arbitration.  This Court's 9/30/02 Order sustained the Plaintiff's objections on this issue and specifically found:

> This Court agrees with the plaintiffs that the motion to compel arbitration should be denied for the additional reason that a contractual provision entered into between an insured and an insurance company cannot require arbitration of claims that are assigned to a healthcare provider where the insured is not required to arbitrate the same claims.

ELLOWITZ's Complaint asserts causes of action against AMERICAN INTERNATIONAL due to its improper and fraudulent reduction of PIP claims under Section 627.736, Florida Statutes. In order for a health care provider to assert claims against an automobile insurance company for PIP benefits, the insured must assign the claim for PIP benefits to the health care provider. "Courts have recognized that medical service providers can assert claims for a PIP benefit against insurers when an insured has assigned them the right to the benefits." Hartford Ins. Co. of the Southeast v. St. Mary's Hosp., Inc., 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000) (citations omitted).  The right to pursue a claim for PIP benefits belongs to the insured unless the insured assigns the right to a health care provider.  As recently stated:

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

> As a general rule, if an insured has assigned her right to receive personal injury protection (PIP) benefits to a health care provider, the insured may not file a lawsuit to collect the assigned benefits. The insured would only have a claim to pursue against the insurance company if the health care provider were permitted to rescind the assignment.

Livingston v. State Farm Mut. Auto. Ins. Co., 774 So. 2d 716, 717 (Fla. 2d DCA 2000). "In any event, only the insured or the medical provider 'owns' the cause of action against the insurer at any one time. And the one that owns the claim must bring the action if an action is to be brought." Oglesby v. State Farm Mut. Auto. Ins. Co., 781 So. 2d 469, 470 (Fla. 5th DCA 2001) (citing Garcia v. State Farm Mut. Auto. Ins. Co., 766 So. 2d 430 (Fla. 5th DCA 2000); Livingston, 774 So. 2d 716).

The claims ELLOWITZ has asserted against AMERICAN INTERNATIONAL are claims that were assigned to ELLOWITZ by an AMERICAN INTERNATIONAL insured. In order for ELLOWITZ to assert claims for PIP benefits, he was required to obtain an assignment of benefits from the AMERICAN INTERNATIONAL insured. There is no arbitration agreement between AMERICAN INTERNATIONAL and its insured. There is no arbitration agreement between ELLOWITZ and the AMERICAN INTERNATIONAL insured. ELLOWITZ, as the insured's assignee "surely is in no worse position than its assignor would be in if the assignor were the plaintiff here." Foreign Credit Corp. v. Aetna Cas. & Surety Co., 276 F. Supp. 791, 793 (S.D. N.Y. 1967). As the assignee, ELLOWITZ stands in the shoes of the AMERICAN INTERNATIONAL insured. Since the AMERICAN INTERNATIONAL insured cannot be compelled to arbitrate the claims asserted in this action, ELLOWITZ cannot be compelled to arbitrate the same claims. The Court's 9/30/02 Order already determined this issue. Accordingly, AMERICAN INTERNATIONAL has no basis to compel arbitration of the claims ELLOWITZ is asserting as an assignee.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

## II.    THE ARBITRATION PROVISION IN THE PIP CONTRACT AT ISSUE IN THIS CASE IS INVALID.

The R&R correctly concluded that <u>Nationwide Mutual Fire Ins. Co. v. Pinnacle Medical, Inc.</u>,

753 So. 2d 55 (Fla. 2000) invalidated arbitration clauses contained in PIP Contracts. However, the

R&R incorrectly limited the effect of <u>Pinnacle</u> to contracts entered into before the <u>Pinnacle</u> decision.

However, based on the clear language in <u>Pinnacle</u>, the Florida Supreme Court struck down all

arbitration provisions which restrict a healthcare provider's rights. In addition, as this Court already

ruled in the 9/30/02 Order, "an insurance company cannot require arbitration of claims that are

assigned to a healthcare provider where the insured is not required to arbitrate the same claim."

This precise issue was raised and rejected by the Florida Supreme Court. In appellants'

initial brief in <u>Pinnacle</u>, the appellant insurance companies specifically argued as follows:

> ### REGARDLESS OF THE CONSTITUTIONALITY OF THE STATUTE, APPELLEES WERE BOUND TO ARBITRATE AS THIRD PARTY BENEFICIARIES OF THE INSURANCE CONTRACTS.
>
> The Fifth District should not even have reached the constitutionality issue in this case, because there is a wholly independent reason that these providers should have been compelled to arbitrate. As discussed in detail above, section 627.736(5) statutorily implies such a binding arbitration provision in every PIP policy issued in this state. In this case, there is no question that each of the insurance contracts contained such a provision. The contracts themselves are sufficient to bind the providers to arbitrate regardless of the effect or validity of the statute.
>
> It is well established that healthcare providers are third party beneficiaries of insurance contracts proving coverage for healthcare. See <u>United States v. Automobile Club Insurance Company</u>, 522 F.2d 1 (5th Cir. 1975); <u>Vencor Hospitals South, Inc. v. Blue Cross and Blue Shield of Rhode Island</u>, 929 F. Supp. 420 (S.D. Fla. 1996); <u>Orion Insurance Company v. Magnetic Imaging Systems I</u>, 696 So. 2d 475 (Fla. 3d DCA 1997); <u>Pasteur Health Plan, Inc. v. Salazar</u>, 658 So. 2d 543 (Fla. 3d DCA 1995).
>
> It is likewise clear that third party beneficiaries are subject to the terms of the relevant contracts, including arbitration clauses. See <u>Orion</u>, 696 So. 2d at 478; <u>Terminix International Co. v. Ponzio</u>, 693 So. 2d 104, 109 (Fla. 1st DCA 1997); <u>Zac Smith &</u>

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

Co. v. Moonspier Condominium Assoc., 472 So. 2d 1324 (Fla. 1st DCA 1985). See also Scobee Combs Funeral Home Inc. v. E.F. Hutton & Co., 771 F. Supp. 605 (S.D. Fla. 1989) (holding that parties were bound by an arbitration provision in National Association of Securities Dealers manual, regardless of the fact that no contract between them contained such a provision); Desiderio v. National Association of Securities Dealers, Inc., 2 F. Supp. 516 (S.D.N.Y. 1998) (execution of a U-4 SEC form "inherently represents an agreement to arbitrate" as mandated by the relevant statute, even if the form does not so state).

No argument has been raised that an insurer cannot include an arbitration clause in its policy. Thus, regardless of the validity or effect of the statutory arbitration provision in section 627.736(5), these Appellees should have been compelled to arbitration. The Fifth District's decision should be quashed as improperly holding a statute unconstitutional when the case could have resolved without reaching that issue.

Brief for Appellants at 28-30, Pinnacle, 753 So. 2d 55. The Nationwide policy at issue in Pinnacle contained the following provision requiring arbitration:

**ARBITRATION/ASSIGNMENT OF BENEFITS**

If a dispute arises between **us** and any person who, as a provider of medical services and supplies, has agreed to accept assignment of Personal Injury Protection benefits, the dispute shall be settled by binding arbitration. The provisions of Chapter 682 relating to arbitration shall apply.

When an assignment of Personal Injury Protection benefits is made by any **insured**, any and all claims to such benefits by the **insured** belong to the healthcare provider who has received the assignment. Priority of payment of this coverage shall be given to the assigned claims of which **the company** has written notice.

The Florida Supreme Court rejected Nationwide's assertion that the contractual provision in its insurance policy required medical providers to arbitrate their claims. The Florida Supreme Court affirmed the decision of the Fifth District Court of Appeal which had affirmed a county court order denying motions to dismiss and to compel arbitration.

The Florida Supreme Court found Section 627.736(5), Florida Statutes ("Section 627.736(5)") unconstitutional. Section 627.736(5) did not, by itself, require arbitration. Section 627.736(5) required insurers to include an arbitration provision in all contracts binding any person

providing medical services if that person has agreed to accept an assignment of personal injury protection benefits. Thus, arbitration had been mandated pursuant to policy provisions. As mandated by Section 627.736(5)[1], AMERICAN INTERNATIONAL's policy contains an arbitration provision. An arbitration provision was also included in the insurance policy at issue in <u>Pinnacle</u>. The Florida Supreme Court rejected the argument that the contractual language provides a basis to compel arbitration. If the contractual provision provided a basis to compel arbitration, the Florida Supreme Court would have used the provision to require arbitration notwithstanding the unconstitutionality of Section 627.736(5).

In <u>Pinnacle</u>, the healthcare provider brought its claim as the assignee of benefits from an insured. The PIP Contract between the insured and the insurance company contained an arbitration clause which required arbitration of disputes in the event that the claims were assigned to a healthcare provider. The policy did not require the same claims to be arbitrated if they were brought by the insured. The insurance company asserted that notwithstanding the provisions of Section 627.736(5), Florida Statutes, there is an agreed contractual provision which provides for arbitration. The Florida Supreme Court rejected this position. As the court stated:

> In the instant case, <u>there is no voluntary agreement to arbitrate</u> between medical providers and PIP insurers. <u>Medical providers are forced to arbitrate</u> by terms in an agreement entered into between an insured and an insurer, to which the assignor-insured is not subject.

<u>Id</u>. at 58 n. 4 (emphasis added). Accordingly, as the Court squarely held in <u>Pinnacle</u>, a contractual provision entered into between an insured and an insurance company cannot require arbitration of claims that are assigned to a healthcare provider.

An objective of Florida's Motor Vehicle No-Fault Law was to provide persons injured in an action with prompt payment of benefits. Similarly, the

---

[1] It is important to note that even though Section 627.736 has been amended subsequent to <u>Pinnacle</u>, the mandatory arbitration provision in Section 627.736(5) has not been amended or removed.

legislative objective of section 627.428(1), Florida Statutes, which provides for an award of attorneys' fees against insurers who wrongfully deny benefits, was to discourage insurance companies from contesting valid claims and to reimburse successful insureds for their attorneys' fees when they are compelled to sue to enforce their insurance contracts.  Section 627.736(5) replaces section 627.428(1) attorney fees with an award of attorney fees based on who was the "prevailing party" at arbitration.  <u>Under section 627.736(5), medical provider - assignees are subject to attorney fees, while insureds suing to enforce the exact same contract enjoy the one-way imposition of attorneys' fees against insurers provided in Section 627.428(1)</u>.  This distinction does nothing to further the prompt payment of benefits or to discourage insurers' denial of valid claims.  The effect of the attorney-fee provision in Section 627.736(5) is to further delay insureds from receiving medical benefits by encouraging medical providers to require payment from insureds at the time the services are rendered rather than risk having to collect through arbitration.  Thus, <u>the prevailing party attorney-fee provision of Section 627.736(5) arbitrarily distinguishes between medical providers and insureds, violating medical providers' due process rights</u>, and is unconstitutional under article I, section 9 of Florida's Constitution.

<u>Id</u>. at 59 (citations omitted) (emphasis added).

A PIP Contract is entered into between an insured and an insurance company.  The healthcare provider is not a party to the PIP Contract.  Healthcare providers have no part in negotiating the terms of the PIP Contract.  Accordingly, if insurance companies are able to place onerous arbitration provisions in PIP Contract that are binding only when a healthcare provider seeks compensation for services provided, the entire holding in <u>Pinnacle</u> would be meaningless.  In this case, AMERICAN INTERNATIONAL's PIP Contract contains the following arbitration provision:

ARBITRATION

1.    **Disputes with a provider of medical services.**  If a provider of medical services or supplies has agreed to accept assignment of personal injury protection benefits, direction to pay, power of attorney or any instrument allowing direct payment to the provider:

　　　　　　　　a.    Any claims dispute, involving medical expenses, between that provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code.

　　　　　　　　b.    The prevailing party shall be entitled to attorney's fees and costs. The prevailing party is determined as follows:

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

(1) If the arbitration award is greater than the sum of the amount we offer at arbitration plus fifty percent of the difference between:

    (a)    The amount of the claim asserted by the provider at arbitration; and

    (b)    The amount we offer at arbitration;

then the provider is the prevailing party.

(2) If the arbitration award is less than the sum of the amount we offer at arbitration plus fifty percent of the difference between:

    (a)    The amount of the claim asserted by the provider at arbitration; and

    (b)    The amount we offer at arbitration;

Then we are the prevailing party.

(3) If neither (1) nor (2) above applies; there is no prevailing party and each side is responsible for its own attorney's fees and costs.

The amount of the offer or claim at arbitration is the amount of the last offer or claim made at least thirty days prior to arbitration.

2. **Other disputes**. Any dispute involving benefits under this part of the policy between the company and a person claiming benefits under this policy shall be decided by arbitration.

Upon the written request for arbitration, each party will select one arbitrator. The two arbitrators will attempt to select a third arbitrator. If they cannot agree with a third arbitrator within 30 days, either party may request a judge of the court of record in the county of jurisdiction where the arbitration is pending to appoint the third arbitrator. A written decision agreed upon by any two or more arbitrators will be binding upon each party.

Each party will bear the expenses it incurs, including all legal fees and costs, and parties shall bear the expenses of the third arbitrator equally.

The arbitration will take place in the county in which the person claiming benefits under this policy resides. If they are located out of state, arbitration will take place in the county in which the insured resides. Arbitration is

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

subject to the provisions of the Florida Arbitration Code Chapter 682 of the Florida statutes.

**Other disputes, 2.**, does not apply if your Declarations page indicates "Statutory Arbitration".

Clearly, this arbitration provision penalizes a healthcare provider who accepts an assignment of benefits. Section 627.736(5) did not, by itself, require arbitration. Section 627.736(5) required insurers to include an arbitration provision in all contracts binding any person providing medical services if that person has agreed to accept an assignment of personal injury protection benefits. The Florida Supreme Court found that the provisions of Section 627.736(5) violated the rights of medical providers. As the Court stated:

> We agree with the Fifth District that the mandatory arbitration provision of section 627.736(5) is unconstitutional. However, we reach this conclusion by finding that the provision <u>violates the right of medical providers to access to courts</u> provided under article I, section 21 of the Florida Constitution. We also find that the attorney-fee provision of section 627.736(5) <u>violates the due process rights of medical providers</u> in violation of article I, section 9 of the Florida Constitution.

<u>Pinnacle</u>, 753 So. 2d at 57 (emphasis added). Since the Florida Supreme Court found that the arbitration provision of Section 627.736(5) is unconstitutional because it violates the rights of medical providers, the contractual provision in the AMERICAN INTERNATIONAL policy is likewise unconstitutional whether it was entered into before or after <u>Pinnacle</u>. Contractual provisions can be found invalid if they violate constitutional rights. "A contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our Courts." <u>Harris v. Gonzalez</u>, 789 So. 2d 405, 407 (Fla. 4th DCA 2000). The arbitration provision in the AMERICAN INTERNATIONAL PIP Contract is unconstitutional and provides no basis to compel arbitration in these proceedings. <u>Pinnacle</u>.

The AMERICAN INTERNATIONAL arbitration provision impermissibly provides for

prevailing party attorney fees. This provision was found to be unconstitutional in <u>Pinnacle</u>. The arbitration provision violates the rights of healthcare providers to access to courts and is unconstitutional in that it requires arbitration in violation of article I, section 21 of the Florida Constitution. <u>Pinnacle</u>, 753 So. 2d 55. The AMERICAN INTERNATIONAL arbitration provision is further unconstitutional in violation of article I, section 9 of the Florida Constitution in that it impermissibly modifies the statutory fee-shifting provisions of Section 627.736. <u>Id</u>. The fact that the PIP Contract was entered into by an insured and AMERICAN INTERNATIONAL prior to the holding <u>Pinnacle</u> does not change the fact that the arbitration provision contained therein is unconstitutional and void.

AMERICAN INTERNATIONAL's citation to its July, 2000 Amendment to its PIP coverage is also unavailing. Section D(1) of the July, 2000 policy indicates that such disputes "may be decided by arbitration if the parties agree." Thus, this provision is not a mandatory arbitration provision. With regard to Section D(2) of the July, 2000 policy, for an insured that has "expanded arbitration" coverage, the AMERICAN INTERNATIONAL policy requires the medical service providers to arbitration, requires the parties to bear their own expenses, including legal fees and costs, and requires the parties to bear the expenses of the arbitrator equally. As discussed above, such as provision was rendered unconstitutional <u>Pinnacle</u>. This provision requires a healthcare provider, that was not a party to the insurance agreement, to arbitration and modifies the statutory fee-shifting provisions of Section 627.736. The July, 2000 policy provisions penalize healthcare providers for providing medical services to AMERICAN INTERNATIONAL's insureds based on a policy that healthcare providers had no part in negotiating.

As clearly set forth in the Amended Complaint, ELLOWITZ has instituted this action as the assignee of claims from an AMERICAN INTERNATIONAL insured whose claims arose prior to the

Pinnacle decision. Pinnacle held such policies to be unconstitutional. Accordingly, the claims asserted by ELLOWTIZ are not subject to arbitration. In addition, AMERICAN INTERNATIONAL's effort to limit the claims in this class action to those arising pre-Pinnacle, as set forth above, should be denied. All AMERICAN INTERNATIONAL policies containing arbitration provisions requiring healthcare providers to arbitrate disputes regarding PIP claims are unconstitutional.

## III.  THE CLAIMS ASSERTED BY ELLOWITZ ARE NOT SUBJECT TO ARBITRATION BASED ON A PURPORTED PPO AGREEMENT.

The claims asserted by ELLOWITZ are not subject to arbitration because ELLOWITZ is asserting claims as the assignee of claims assigned to him by an AMERICAN INTERNATIONAL insured. There is no arbitration agreement between ELLOWITZ and AMERICAN INTERNATIONAL. AMERICAN INTERNATIONAL seeks to compel arbitration as an alleged third-party beneficiary of a contract between ELLOWITZ and CCN Managed Care, Inc. ("CCN"). Since ELLOWITZ is asserting claims as an assignee, there is no basis to utilize the CCN agreement to compel arbitration.

ELLOWITZ's Amended Complaint asserts causes of action against AMERICAN INTERNATIONAL due to its improper and fraudulent reduction of PIP claims under Section 627.736, Florida Statutes. In order for a health care provider to assert claims against an automobile insurance company for PIP benefits, the insured must assign the claim for PIP benefits to the health care provider. "Courts have recognized that medical service providers can assert claims for a PIP benefit against insurers when an insured has assigned them the right to the benefits." Hartford Ins. Co. of the Southeast v. St. Mary's Hosp., Inc., 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000) (citations omitted). The right to pursue a claim for PIP benefits belongs to the insured unless the insured

assigns the right to a health care provider. As recently stated:

> As a general rule, if an insured has assigned her right to receive personal injury protection (PIP) benefits to a health care provider, the insured may not file a lawsuit to collect the assigned benefits. The insured would only have a claim to pursue against the insurance company if the health care provider were permitted to rescind the assignment.

Livingston v. State Farm Mut. Auto. Ins. Co., 774 So. 2d 716, 717 (Fla. 2d DCA 2000). "In any event, only the insured or the medical provider 'owns' the cause of action against the insurer at any one time. And the one that owns the claim must bring the action if an action is to be brought." Oglesby v. State Farm Mut. Auto. Ins. Co., 781 So. 2d 469, 470 (Fla. 5th DCA 2001) (citing Garcia v. State Farm Mut. Auto. Ins. Co., 766 So. 2d 430 (Fla. 5th DCA 2000); Livingston, 774 So. 2d 716).

The claims ELLOWITZ has asserted against AMERICAN INTERNATIONAL are claims that were assigned to ELLOWITZ by an AMERICAN INTERNATIONAL insured. In order for ELLOWITZ to assert claims for PIP benefits, he was required to obtain an assignment of benefits from the AMERICAN INTERNATIONAL insured. AMERICAN INTERNATIONAL recognizes that ELLOWITZ's claim is brought pursuant to an assignment of benefits. (Motion to Compel Arbitration at P. 16). ELLOWITZ would not have brought the action if he did not have standing to bring the claims asserted. There is no arbitration agreement between the AMERICAN INTERNATIONAL insured and ELLOWITZ. Also, the AMERICAN INTERNATIONAL insured is not a party to the CCN Agreement. AMERICAN INTERNATIONAL cannot use the CCN Agreement to compel arbitration of a dispute between AMERICAN INTERNATIONAL and its insured. Accordingly, AMERICAN INTERNATIONAL has no basis to compel arbitration of the claims ELLOWITZ is asserting as an assignee.

AMERICAN INTERNATIONAL also fails to affirmatively set forth a critical element of its claim as a third-party beneficiary. AMERICAN INTERNATIONAL asserts that it is a third-party

beneficiary of the ELLOWITZ contract with CCN because it is a defined "payor" under the CCN Agreement. In order to be a payor under the CCN Agreement, AMERICAN INTERNATIONAL was required to enter into an agreement with CCN to participate in its preferred provider program. (CCN Agreement at ¶ 1.07). Nowhere in AMERICAN INTERNATIONAL's Motion to Compel Arbitration does it assert that AMERICAN INTERNATIONAL entered into an agreement with CCN to participate in its preferred provider program. There is no agreement between AMERICAN INTERNATIONAL and CCN attached as an exhibit to the Motion to Compel Arbitration and there is no evidence presented to establish that AMERICAN INTERNATIONAL has entered into a contract with CCN. Since AMERICAN INTERNATIONAL has not established that it entered into an agreement with CCN, it is not a "payor" under the CCN Agreement and cannot be considered an intended third-party beneficiary to the CCN Agreement.[2]

Another reason why AMERICAN INTERNATIONAL's argument fails is because it failed to attach ELLOWITZ's purported agreement with CCN. Instead, AMERICAN INTERNATIONAL attached an agreement with CCN and Salvatore D. Larusso, D.C. AMERICAN INTERNATIONAL has not established that ELLOWITZ entered into an agreement similar to the CCN/LARUSSO agreement or that the terms of the agreements are the same. During the past four months since this action was filed, AMERICAN INTERNATIONAL surely has had the opportunity to obtain ELLOWITZ's purported agreement with CCN. Having failed to so, AMERICAN INTERNATIONAL asserts an agreement between another party and CCN to compel arbitration in these proceedings. This failure is fatal to AMERICAN INTERNATIONAL's Motion.

---

[2] Magistrate Judge Snow's recent Report and Recommendation in the Nationwide action denied Nationwide's Motion to Compel Arbitration due to its similar failure to establish that it was a payor that entered into a contract with the PPO.

## III. THE R&R DID NOT RULE ON WHETHER AMERICAN INTERNATIONAL HAS WAIVED ITS RIGHT TO COMPEL ARBITRATION.

Even if AMERICAN INTERNATIONAL had a basis to compel arbitration, it has waived its right by acting inconsistently with its purported right to compel arbitration. The right to arbitrate like any other contractual right is not absolute and may be waived. See S & H Contractors, Inc. v. A.J. Cole Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990). A waiver of arbitration can occur by participation in litigation or other actions inconsistent with the right to compel arbitration. Usher Syndicate Ltd., Inc. v. Figgie Int'l, 1987 WL 19840 (S.D. Fla. 1987). "Waiver results from a party's substantial participation in litigation to a point inconsistent with an intent to arbitrate which results in prejudice to the other party." Brown v. ITT Consumer Financial Corp., 211 F.3d 1217 (11th Cir. 2000) (quoting Morewitz v. West England Ship Owners Mut. Protection and Indem. Assoc., 62 F.3d 1356, 1366 (11th Cir. 1995)). Prejudice can be demonstrated by a party incurring the delay or expense associated with litigation. Morewitz, 62 F.3d at 1366.

AMERICAN INTERNATIONAL has waited a year to seek arbitration in these proceedings. The original Complaint in this action was filed on June 14, 2001. AMERICAN INTERNATIONAL has filed numerous motions since that time. AMERICAN INTERNATIONAL has also taken part in discovery by serving Rule 26 disclosures. In addition, MOTE disclosed its Rule 26 disclosures in these proceedings. On June 25, 2002, almost four months after it was required to respond to the Complaint in this action and seven months after the lawsuit was filed, AIG filed a Motion to Dismiss or Alternative Motion for Summary Judgment as to MOTE's claims. When the Complaint was filed, AMERICAN INTERNATIONAL did not seek arbitration. Instead, AMERICAN INTERNATIONAL served a Motion to Strike the Amended Class Action Complaint. The Motion to Strike was fully briefed and on May 17, 2002, Magistrate Judge Snow issued a Report and

Recommendation which correctly concluded that the Motion to Strike should be denied. Subsequently, on June 17, 2002, a year after the Complaint was filed and four months after the Amended Complaint was filed, AMERICAN INTERNATIONAL served its first Motion to Compel Arbitration.

Clearly, AMERICAN INTERNATIONAL has taken part in substantial litigation in these proceedings. AMERICAN INTERNATIONAL's participation is clearly inconsistent with an intent to arbitrate.    Rather than file a Motion to Arbitrate MOTE's claims, AMERICAN INTERNATIONAL filed a Motion to Dismiss or for Summary Judgment seeking a determination, on the merits, as to MOTE's claims.  If AMERICAN INTERNATIONAL believed that it had the right to arbitrate such claims, a Motion to Compel Arbitration should have been immediately filed. Once the Amended Complaint was filed, AMERICAN INTERNATIONAL did not seek to compel arbitration.  Instead, it sought to strike the Amended Complaint and continued to press its Motion to Dismiss or for Summary Judgment seeking a determination, on the merits, as to MOTE's claims. Subsequent to the Magistrate Judge's recommendation that the Amended Complaint be allowed and that the Motion to Strike be denied, AMERICAN INTERNATIONAL, for the first time, sought to compel arbitration.

Obviously, ELLOWITZ has been prejudiced by AMERICAN INTERNATIONAL's actions. AMERICAN INTERNATIONAL sought the benefits of litigating this matter in this Court until such time as it was determined that its position was unfounded.  AMERICAN INTERNATIONAL then determined that it would seek arbitration in an effort to divest this Court of jurisdiction. ELLOWITZ has been required to respond to the various Motions and AMERICAN INTERNATIONAL's tactic of seeking a determination on the merits from this Court and then seeking to compel arbitration when the determination was not favorable is entirely disingenuous.  If AMERICAN INTERNATIONAL

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

believed that the claims should have been arbitrated, it was required to immediately seek to compel arbitration. Having substantially participated in this litigation, inconsistent with its right to compel arbitration, AMERICAN INTERNATIONAL has clearly waived its right to seek arbitration of any claims in these proceedings. A ruling to the contrary would promote conduct such as AMERICAN INTERNATIONAL's wherein defendants would seek to dismiss claims on their merits, take part in litigation, and then when their efforts to dismiss the claims are denied, to seek arbitration as an effort to divest the Court of its jurisdiction. Defendants cannot take advantage of this Court's jurisdiction when it suits them and then seek to divest this Court of its jurisdiction when they receive unfavorable decisions. AMERICAN INTERNATIONAL has waived its right to seek arbitration in these proceedings.

## CONCLUSION

For all the reasons set forth herein, Plaintiff DR. ANDREW ELLOWITZ, on behalf of himself and all others similarly situated, respectfully requests that this Court enter an Order denying Defendant AMERICAN INTERNATIONAL INSURANCE COMPANY's Emergency Motion to Compel Arbitration, together with such other and further relief as this Court may deem just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail on October _7_, 2002 upon: all individuals on the attached service list.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-FERGUSON/SNOW

Respectfully submitted,

LEE & AMTZIS, P.L.
Co-Counsel for Class Plaintiffs
350 N.W. 12th Ave., Suite 150
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 Fax

By: _____
ERIC LEE
Florida Bar No. 961299

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 2510
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)**
(Updated 5/6/02)

CLERK OF COURT
299 East Broward Blvd., Room 108
Fort Lauderdale, FL 33301

GOLD & COULSON
Arthur S. Gold, Esq.
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603

PHILLIPS & GARCIA
Andrew Garcia, Esq.
Carlin Phillips, Esq.
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394

Susan L. Lawson, Esq.
230 East Davis Boulevard, Suite 200
Tampa, FL 33606

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
Post Office Box 1438
Tampa, FL 33601

SWARTZ CAMPBELL
DETWEILER
James C. Haggerty, Esq.
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
230 East Davis Boulevard
Tampa, FL 33606

Casey Fundaro, Esq.
P.O. Box 7420
Fort Lauderdale, FL 33338-7420

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873

ROSS & HARDIES
Peter J. Valeta, Esq.
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601

TEW, CARDENAS,et al.
John M. Quaranta, Esq.
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
Greg Baldwin, Esq.
701 Brickell Avenue, Suite 3000
Miami, FL 33131

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
Donald A. Blackwell, Esq.
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131

MCGUIRE WOODS, LLP
William W. Deem, Esq.
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131

SONNENSCHEIN, NATH &
ROSENTHAL
Jeffrey P. Lennard, Esq.
8000 Sears Tower
Chicago, IL 60606

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607


BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
Lauren D. Levy, Esq.
3520 Thomasville Road, Suite 102
Tallahassee, FL 32308

SHEA & GARDNER
John D. Aldock, Esq.
Michael Isenman, Esq.
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036


CONROY,   SIMBERG,   GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
Brian P. Knight, Esq.
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021