UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-CIV-6061-FERGUSON/SNOW

SALVATORE D. LARUSSO, D.C.,
d/b/a FAMILY CHIROPRACTIC
CENTER, on behalf of himself and
all others similarly situated,
        Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY and COMMUNITY
CARE NETWORK, INC.,
        Defendants.
_____/

### DEFENDANT LIBERTY MUTUAL'S OBJECTIONS TO SEPTEMBER 27, 2002 REPORT AND RECOMMENDATION

Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), by and through its undersigned counsel, hereby files its objections to the September 27, 2002 Report and Recommendation [D.E. 853], which recommended that Liberty Mutual's two motions to compel arbitration [D.E. 757 and D.E. 807] be denied.[1] In the Report and Recommendation ("R&R"), the Magistrate Judge found that the first motion should be denied for two reasons: (1) substantively, Liberty Mutual had not established that Plaintiff is estopped from denying the arbitrability of its claim; and (2) procedurally, Liberty Mutual's motion was moot because co-defendant CCN, upon whose arbitration provision the Liberty Mutual motion was based, had been dismissed as a defendant. With respect to the second motion, the Magistrate Judge found

---

1 On September 30, 2002, this Court entered an order that denied Hartford's motion to compel arbitration in one of the consolidated cases. Although Liberty Mutual's motion raises issues not raised by Hartford or addressed by the Magistrate Judge or this Court, Liberty Mutual reads the order to apply to all of the consolidated cases, including this one. Notwithstanding that the Court has administratively closed all of the consolidated cases, Liberty files these objections in an abundance of caution given that the applicable Report and Recommendation with regard to Liberty Mutual's case was just issued on September 27 and Liberty had not yet filed its objections.

{M1850735;1}

1



that it should be denied because the arbitration provision contained in the Liberty Mutual policy was unenforceable because the Florida Supreme Court had ruled that Fla. Stat. § 627.736(5), which required certain arbitration provisions to be included in insurance policies, was unconstitutional.

As explained below, the Magistrate Judge erred with respect to both of these motions. Plaintiff should be required to arbitrate his claims against Liberty Mutual because Plaintiff had agreed to have such claims arbitrated in its PPO agreement with co-defendant CCN, and its motion was not rendered moot by CCN's dismissal. In addition, Plaintiff should also be required to submit his claims to arbitration because the automobile insurance policy issued by Liberty Mutual requires that Plaintiff's claims be arbitrated rather than litigated in this forum, and such an arbitration provision is enforceable notwithstanding the Florida Supreme Court's ruling. Accordingly, this Court should not adopt the R&R, but instead, should grant both of Liberty Mutual's motions. In further support, Liberty Mutual states as follows:

## INTRODUCTION

In this action, Plaintiff, Dr. Salvatore D. Larusso, a licensed chiropractor, asserts causes of action for breach of contract, unjust enrichment, third-party beneficiary breach of contract, RICO violations, declaratory relief, and violations of Fla. Stat. § 627.736, arising from Plaintiff's claims for Personal Injury Protection ("PIP") benefits. Plaintiff had entered into a provider agreement with CCN (the "provider agreement"). Under the provider agreement, CCN was to act as a "broker," uniting Plaintiff with payors, defined under the provider agreement to include, inter alia, insurance carriers such as Liberty Mutual, with respect to the provision of medical services. Under this arrangement, termed a Preferred Provider Organization ("PPO"), providers

{MI850735;1}

2

like Plaintiff are marketed by payors to their subscribers thereby increasing the provider's volume of business and, in exchange, providers agree to discount their normal fees.

The provider agreement Plaintiff entered with CCN provided that Plaintiff would discount his normal fees to CCN PPO Subscribers. The provider agreement contains a broad arbitration clause which states that "[t]he sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration as the parties do not want the delay or expense of lawsuits."

With respect to Liberty Mutual, Plaintiff alleges that Liberty Mutual and CCN "collectively engaged" in a "Silent PPO' scheme" whereby Liberty Mutual "obtained access to PPO networks of preferred providers and their discounts," including Plaintiff's. Plaintiff alleges that Liberty Mutual then applied the discounts to medical bills incurred by insureds covered under Liberty Mutual PIP policies. Plaintiff's claims against Liberty Mutual are based on its belief that Liberty Mutual was "not . . . entitled to take advantage of . . . PPO discounts under the terms and conditions of" the provider agreement between CCN and Plaintiff.

The Liberty Mutual policy at issue was issued to Noelle Zulli. The policy contains the following arbitration provision:

> **ARBITRATION**  If a provider of medical services or supplies has agreed to accept assignment of extended personal injury protection benefits: (1) Any claims dispute, involving medical expenses, between that provider and us shall be subject to binding arbitration in accordance with the Florida Arbitration Code . . . . .

Plaintiff alleges that he provided medical services to Ms. Zulli, but that Liberty Mutual and CCN acted improperly with respect to the handling and payment of claims related to Plaintiff's provision of medical services to Ms. Zulli and other members of the purported class.

{MI850735;1}

3

## ARGUMENT

I.  **LIBERTY MUTUAL'S FIRST MOTION TO COMPEL ARBITRATION SHOULD BE GRANTED, AS PLAINTIFF IS ESTOPPED FROM DENYING THE ARBITRABILITY OF ITS CLAIMS AND THE MOTION WAS NOT RENDERED MOOT BY CCN'S DISMISSAL**

Liberty Mutual filed two separate motions to compel Plaintiff to arbitrate its claims against Liberty Mutual, each on an independent basis. The first motion, which was entitled "Joinder In Defendant CCN's Motion To Compel Arbitration" [D.E. 757], sought to compel arbitration based upon the agreement between Plaintiff and CCN. The Magistrate Judge recommended that this motion be denied both because Liberty Mutual is not substantively entitled to enforce the Plaintiff/CCN arbitration provision, and also because Liberty Mutual's motion became moot once CCN was dismissed from the case. The Magistrate Judge erred on both of these grounds.

    A.    **The Agreement Between CCN and Plaintiff Requires Plaintiff to Arbitrate Its Dispute With Liberty Mutual.**

With respect to the substantive portion of the R&R, the Magistrate Judge misapplied controlling law. In certain circumstances, a party that is not a signatory to an arbitration agreement can nonetheless compel arbitration under that agreement. See, e.g., MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756 (11th Cir. 1993). A signatory will be deemed to be equitably estopped from avoiding arbitration on the grounds that the party seeking arbitration is a non-signatory in two circumstances: (1) where the plaintiff signatory relies on the terms of the written agreement in asserting its claims against the non-signatory defendant, id.; and (2) where the plaintiff signatory "raises allegations of . . . substantially interdependent and concerted

misconduct by both the non-signatory and one or more of the signatories to the contract." MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999).

Sunkist illustrates the applicability of equitable estoppel to Plaintiff's claims. In that case, a non-signatory to a license agreement brought suit seeking a declaration that a controversy between it and Sunkist Growers, Inc., a signatory to the license agreement, regarding the plaintiff's performance under the license agreement was subject to arbitration. The plaintiff had acquired the stock of the original signatory to the agreement. The license agreement contained an arbitration clause requiring that any controversy or claim, except for any claim with respect to the ownership rights in licensed trademarks, arising out of or relating to the license agreement or its breach, would be settled by arbitration. In response to the plaintiff's declaratory action, the Defendant-signatory brought a counterclaim raising tort and contract claims arising out of the plaintiff's alleged interference with the license agreement. The Defendant claimed that it did not consent to or intend to arbitrate any claims with the plaintiff and that absent an agreement to do so, it could not be compelled to arbitrate its counterclaims. Id. at 756.

The Court rejected the Defendant's claims, holding the Defendant equitably estopped from denying the applicability of the arbitration clause as the Defendant's claims against the Plaintiff relied on and required reference to the licensing agreement containing the arbitration clause: "Each claim asserted by Sunkist makes reference to the license agreement. Although Sunkist does not rely exclusively on the license agreement to support its claims, each claim presumes the existence of such an agreement." Id. at 758. Accord MS Dealer, 177 F.3d at 947 (11th Cir. 1999) (compelling non-signatory plaintiff to arbitration on equitable estoppel grounds as plaintiff's claims made "reference to and presume[d] the existence" of the contract containing the arbitration clause); McBro Planning and Dev. Co. v. Electrical Constr. Co., 741 F.2d 342,

{MI850735;1}

5

344 (11th Cir. 1984) (compelling non-signatory to arbitration where non-signatories claims were "intimately founded in and intertwined with the underlying contract obligations" even though underlying contract disclaimed any relationship between non-signatory and party compelling arbitration); Cunningham Hamilton Quiter v. B.L. of Miami, 776 So. 2d 940, 942 (Fla. 3d DCA 2000) (enforcing arbitration clause against non-signatory plaintiff where non-signatory plaintiff's claims were "intertwined" with the underlying contract containing the arbitration clause). The same result should obtain here.

A review of the allegations in Plaintiff's complaint makes it readily apparent that Plaintiff's claims against Liberty Mutual "presume[] the existence" of the provider agreement between Plaintiff and CCN. Sunkist, 10 F.3d at 758. Indeed, Plaintiff's allegations are replete with references to the provider agreement between Plaintiff and CCN. See Complaint at ¶¶ 15, 21, 28, 35-37, 79-82, 106. These repeated references to the provider agreement are not surprising, as Plaintiff's claims that Liberty Mutual's access to the PPO network was unauthorized because Liberty Mutual was not "a legitimate payor under the agreement." Id. at ¶ 106(b). Accordingly, given the intimate relationship between Plaintiff's claims against Liberty Mutual and the provider agreement with CCN, Plaintiff should be compelled to arbitrate all the claims he has raised in his Complaint. See Sunkist, 10 F.3d at 758; MS Dealer, 177 F.3d at 947.

Moreover, application of equitable estoppel is further justified on the grounds that Plaintiff has asserted a concert of action between CCN and Liberty Mutual requiring all of Plaintiff's claims against both CCN and Liberty Mutual to be arbitrated. See MS Dealer, 177 F.3d at 947.

In MS Dealer, the Court applied the doctrine of equitable estoppel to compel a non-signatory plaintiff to arbitration after concluding that the plaintiff's claims against the defendants

{MI850735;1}

6

were "inherently inseparable." Id. at 948. The plaintiff in MS Dealer, executed a "buyers order" agreeing to purchase a vehicle from Burke. The "buyers order" included an arbitration clause and incorporated by reference a retail installment contract in which plaintiff was charged an excessive amount, according to the plaintiff, for a service contract with defendant MS Dealer. After discovering defects with the car, the plaintiff brought suit for breach of contract, breach of warranty, fraud and conspiracy against MS Dealer and Burke alleging that "MS Dealer improperly cooperated, conspired and otherwise colluded with Jim Burke and Chrysler Credit Corporation in a scheme to defraud her in connection with the purchase of the service contract." Id. at 945. MS Dealer petitioned to compel the plaintiff to arbitrate her claims against it but the District Court denied MS Dealer's petition "on the ground that MS Dealer was not a signatory to the Buyers Order." Id. at 946.

On appeal, the Eleventh Circuit reversed. The Court held that the plaintiff was equitably estopped from denying the arbitrability of her claims because her claims alleged "collusive behavior" between MS Dealer and Burke, the signatory to the "buyers order," such that her claims were "'intimately founded in and intertwined with the obligations imposed by the [Buyers Order].'" Id. at 948. This Court should reach a similar conclusion here given the concert of action alleged by Plaintiff as between Liberty Mutual and CCN with respect to the provider agreement.

Like the plaintiff in MS Dealer, Plaintiff's complaint is riddled with references to a conspiracy between Liberty Mutual and CCN to create a silent PPO in contravention of, inter alia, the provider agreement between Plaintiff and CCN: "Liberty Mutual and middleman CCN have collectively engaged in the . . . 'Silent PPO' scheme," Complaint at 26; "CCN was paid a percentage of Liberty Mutual's discount savings on each PIP medical expense claim," id. at ¶ 51;

"CCN breached its Preferred Provider Agreements . . . by disclosing and selling the volume discount rates of Dr. Larusso . . . to Liberty Mutual," id. at ¶ 82; "Liberty Mutual, acting with middleman CCN, formed an association-in-fact," id. at ¶ 101; "Liberty Mutual and CCN have engaged in a continuous scheme and artifice to defraud Dr. Larusso," id. at ¶ 106. Plaintiff's countless references to an alleged scheme between Liberty Mutual and CCN pay tribute to the fact that Plaintiff's claims against Liberty Mutual are "intimately founded in and intertwined" with the provider agreement between Plaintiff and CCN. See MS Dealer, 177 F.3d at 948.

In the R&R, the Magistrate Judge acknowledged that, in certain circumstances, a non-signatory is entitled to enforce an arbitration agreement. The Magistrate Judge, however, erred by taking a narrow view of the applicable case law, and thereby determining that Liberty Mutual was not entitled to enforce the Plaintiff/CCN arbitration agreement. Under the Magistrate Judge's reasoning, a non-signatory can enforce an arbitration provision only in the particular circumstances addressed in MS Dealer and Sunkist cases, i.e., where the non-signatory is repeatedly mentioned in the contract containing the arbitration agreement; where the signatory and non-signatory are a parent and subsidiary company with claims and liabilities arising out of the same contract; or where the conspiring defendants worked in concert to induce the plaintiff to enter into the arbitration agreement. See R&R at 4-5.

Contrary to the Magistrate Judge's interpretation, these cases do not involve such a narrow holding. Although the fact patterns in these cases did involve the circumstances described in the R&R, the cases do not limit their holdings strictly to the facts contained therein, as the Magistrate Judge did. The factors that the Magistrate Judge stressed in her R&R were simply the bases that the courts used to support those specific holdings. Nowhere in any of these cases did the courts specifically limit their holdings to such fact patterns. In fact, for example,

the Sunkist court enforced the arbitration provision in favor of the non-signatory even though the non-signatory was not repeatedly mentioned in the contract containing the arbitration provision, one of the factors that the Magistrate Judge focused on in her R&R. Sunkist, 10 F.3d at 757.

A correct interpretation and application of the controlling law clearly establishes that Plaintiff is required to arbitrate its claims against Liberty Mutual. As explained above and in more detail in Liberty Mutual's first motion to compel arbitration, a signatory will be deemed to be equitably estopped from avoiding arbitration on the grounds that the party seeking arbitration is a non-signatory in two circumstances: (1) where the plaintiff signatory relies on the terms of the written agreement in asserting its claims against the non-signatory defendant, id.; and (2) where the plaintiff signatory "raises allegations of . . . substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." MS Dealer, 177 F.3d at 947. Both of these circumstances apply to this matter. Accordingly, this Court should not adopt the Magistrate Judge's R&R.

**B.    The Dismissal of CCN Does Not Preclude Liberty Mutual from Seeking Arbitration Under the Arbitration Agreement Between CCN and Plaintiff.**

In the R&R, the Magistrate Judge also found that even if Liberty Mutual was substantively correct concerning its argument that Plaintiff is estopped from contesting the arbitrability of its claims, Liberty Mutual is not entitled to the relief it seeks in its first motion because the motion became moot once CCN was dismissed as a party to this lawsuit. The Magistrate also erred in reaching this conclusion.

The Magistrate Judge's conclusion is based on an erroneous understanding of the nature of Liberty Mutual's motion. Although Liberty Mutual's motion was entitled "Joinder In Defendant CCN's Motion To Compel Arbitration," the arguments contained in the motion and

{MI850735;1}

9

the relief sought therein did not simply seek to "join" in CCN's previously-filed motion to compel arbitration and seek whatever relief the Court may have granted to CCN. Rather, the document was a motion to compel arbitration based on the Plaintiff/CCN agreement, irrespective of any relief that CCN may also have been seeking based upon the Plaintiff/CCN agreement. For example, in the wherefore clause of its motion, Liberty Mutual states as follows:

> WHEREFORE, Defendant Liberty Mutual Insurance Company respectfully requests that the Court compel Plaintiff to arbitrate all claims against CCN and Liberty Mutual. Plaintiff should be equitably estopped from objecting to the arbitration of his claims against Liberty Mutual on the grounds that Liberty Mutual was not a signatory to the provider agreement containing the arbitration clause as Plaintiff's claims against Liberty Mutual clearly presume the existence of and require reference to the provider agreement. A finding of equitable estoppel is also appropriate given Plaintiff's allegations of a conspiracy between Liberty Mutual and CCN, which alleged conspiracy is necessarily intertwined with the provider agreement.

As this clause (and the arguments contained in the text of the motion) make clear, the relief sought in Liberty Mutual's motion is not solely to "join" in CCN's motion as a co-party to that motion, but rather, is an order from this Court compelling Plaintiff to arbitrate his claims against Liberty Mutual. The relief that Liberty Mutual seeks (and briefed in detail) is entirely independent from any relief that CCN sought in its motion to compel arbitration, and the viability of one does not depend on the viability of the other.

Under applicable law, the fact that CCN was dismissed from this lawsuit does not render Liberty Mutual's motion moot. Where a non-signatory to an arbitration agreement seeks to compel arbitration under that agreement, the signatories to the agreement are not required to be parties to the lawsuit. See, e.g., MS Dealer, 177 F.3d at 947-48; Roberson v. Money Tree of Ala., 951 F. Supp. 1519 (M.D. Ala. 1997). For example, in MS Dealer, an automobile purchaser

and automobile dealership entered into a contract containing an arbitration agreement. The contract provided for service to be provided by MS Dealer Service Corp. The purchaser subsequently filed a lawsuit against the seller, the finance company, and MS Dealer. MS Dealer then brought a separate action against the purchaser, seeking to compel the purchaser to arbitrate her claims against MS Dealer. The court held that MS Dealer was entitled to compel the purchaser to arbitrate her claims, even though MS Dealer was not a party to the arbitration agreement, and despite the fact that the automobile seller was not a party to the lawsuit. See MS Dealer, 177 F.3d at 947-48. Similarly, the court in Roberson held that a non-signatory was entitled to compel arbitration, even though one of the parties to the arbitration agreement had been dismissed from the lawsuit. See 951 F. Supp. at 1522, 1527-30.

The situation in this case is the same as in MS Dealer and Roberson. CCN, like the remaining signatories in MS Dealer and Roberson, is not currently a party to this lawsuit. Nevertheless, as in MS Dealer and Roberson, Plaintiff is required to arbitrate its claims against Liberty Mutual. The mere fact that CCN is not a party to the lawsuit has no bearing on the enforceability of the Plaintiff/CCN arbitration agreement as applied to Plaintiff's claims against Liberty Mutual, as Plaintiff is equitably estopped from contesting the arbitrability of its claims irrespective of CCN's status in this lawsuit.

## II. LIBERTY MUTUAL'S SECOND MOTION TO COMPEL SHOULD BE GRANTED, BECAUSE THE ARBITRATION PROVISION CONTAINED IN THE LIBERTY MUTUAL POLICY IS ENFORCEABLE

In addition to its first motion to compel arbitration, which seeks to compel arbitration of Plaintiff's claims against Liberty Mutual based on the Plaintiff/CCN contract, Liberty Mutual also filed a Motion to Compel Arbitration on Additional Grounds [D.E. 807]. This second

motion also seeks to compel Plaintiff to arbitrate its claims against Liberty Mutual, but does so based on the insurance policy that Liberty Mutual issued its insured, to whom Plaintiff provided the medical services that form the basis of this lawsuit. The Magistrate Judge's R&R recommended that this motion also be denied, because the Florida Supreme Court's decision in Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000), invalidated the arbitration clause contained in the Liberty Mutual policy. The Magistrate Judge erred in so holding.

In Pinnacle, the Florida Supreme Court held that certain portions of Florida's PIP statute, which required insurers to include arbitration provisions with respect to claims made by medical providers for PIP benefits, were unconstitutional. Contrary to the Magistrate's finding, Liberty Mutual believes that the effect of Pinnacle is not to render contractual arbitration provisions unenforceable, as such an effect would be contrary to existing federal and state law.

In Pinnacle, the Supreme Court addressed the constitutionality of Fla. Stat. § 627.736(5), which required automobile insurers to include in all automobile insurance policies a provision that required medical providers who accepted an assignment of insurance benefits from their patients to submit any disputes to arbitration, and included a prevailing party attorney fee award. The Court held that this statute violated the Florida Constitution's access to courts clause. The Court, however, never addressed the validity of the contractual arbitration provisions themselves, but rather, only addressed the validity of the statute that required insurers to include these provisions in their policies. In Livingston v. State Farm Mut. Auto. Ins. Co., 774 So. 2d 716, 718 (Fla. 2d DCA 2000), the court noted that Pinnacle did not address the issue of whether such contractual arbitration agreements are valid. Moreover, in Orion Ins. Co. v. Magnetic Imaging Sys., Inc., 696 So. 2d 475 (Fla. 3d DCA 1997) and Fortune Ins. Co. v. USA Diagnostics, Inc.,

{MI850735;1}

12

684 So. 2d 208 (Fla. 4th DCA 1996), the court held that contractual arbitration agreements contained in insurance policies are a separate and independent basis for compelling arbitration outside of the statutorily-mandated arbitration requirement. Accordingly, even though Pinnacle struck down the Florida statute requiring insurers to include arbitration provisions in their policies, the case did not render the contractual agreements themselves unenforceable.

In addition, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., preempts any state laws concerning arbitration provisions, such that the Florida Supreme Court is without power to invalidate the arbitration agreements in question. The FAA provides that a "written provision in any contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," and establishes a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Moreover, in passing the FAA, Congress "withdrew the power of the states to require a judicial forum for the resolution of claims" subject to a contractual arbitration agreement, and preempted the states' ability to "undercut the enforceability of arbitration agreements." Southland v. Keating, 465 U.S. 1, 10, 16 (1984).

In sum, as long as there is a written contract evidencing a transaction involving commerce, then the only state law limitation to the enforcement of the arbitration provision is where the contract may be invalidated on general grounds that exist in law or equity for revoking contracts. Southland, 465 U.S. at 10-11. Such an exception does not apply to this case. First,

{MI850735;1}

13

there is no doubt that the transactions in this case involve interstate commerce – Plaintiff admits this fact in his Complaint. See Complaint at ¶¶ 103, 106, 115, 125, 131, 138, 154. Second, the Pinnacle decision was based on a finding that the statute in question violated the Florida Constitution's access to courts clause, not on any fraudulent inducement, adhesion contract or other similar theory for voiding the arbitration provisions. See Pinnacle, 753 So. 2d at 57. Accordingly, even if the Pinnacle decision were to be construed as attempting to invalidate the contractual arbitration agreement contained in the Liberty Mutual insurance policy (which it cannot), such an attempted invalidation is not effective in this case, as the FAA's preemptive force prohibits any state law attempt to do so. See Southland, 465 U.S. at 10-11, 16; see also Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (FAA preempts state law concerning arbitration agreements); S+L+H S.p.A. v. Miller-St. Nazianz, Inc., 988 F.2d 1518, 1525-26 (7th Cir. 1993) (same); Osterneck v. Merrill Lynch, 841 F.2d 508, 510-12 (3d Cir. 1988) (same); Haluska v. RAF Fin. Corp., 875 F. Supp. 825, 827-28 (N.D. Ga. 1994) (same); Securities Indus. Ass'n v. Lewis, 751 F. Supp. 205, 206-08 (S.D. Fla. 1990) (same). As a result, notwithstanding the holding in Pinnacle, the arbitration agreement contained in the Liberty Mutual policy is enforceable.

Finally, the Magistrate Judge erred in finding that there is no Article III case or controversy with respect to those purported class members whose insurance policies were issued after Pinnacle was decided. In an earlier Report and Recommendation in one of the other consolidated cases, the Magistrate Judge differentiated between policies issued before Pinnacle was decided and those that were issued after Pinnacle was decided. The Magistrate recommended that the arbitration provisions contained in policies issued after Pinnacle was

decided should be held enforceable, but those that were issued before should be held unenforceable.

Even assuming this distinction, arbitration is still warranted in this matter. In the instant R&R, the Magistrate Judge found that the only arbitration provision that the Court could consider was for the Class Plaintiff's claim, which was issued pre-Pinnacle. According to the Magistrate Judge, any other arbitration provisions were not properly before the Court because there was no case or controversy with respect to those claims. This lawsuit, however, was brought on a class basis, with the purported class to include members who purchased policies that were issued after Pinnacle was decided. Accordingly, under the Magistrate's reasoning, at least a portion of the class Plaintiff seeks to represent falls into the post-Pinnacle category, and their claims would be subject to arbitration. Therefore, even if the Court were to adopt the Magistrate's reasoning with respect to the distinction between pre-Pinnacle and post-Pinnacle policies, Plaintiff is still required to submit at least a portion of its claims to arbitration.

## CONCLUSION

The Magistrate Judge erred in several respects concerning the September 27, 2002 report and Recommendation [D.E. 853], as follows:

(1)   With respect to the first motion to compel arbitration, the Magistrate misapplied the applicable law and facts to conclude that Plaintiff is not estopped from contesting the arbitrability of its claims against Liberty Mutual;

(2)   With respect to the first motion to compel arbitration, the Magistrate misapplied the applicable law and facts to conclude that Liberty Mutual's motion was rendered moot by the dismissal of CCN from this lawsuit;

{MI850735;1}

15

(3) With respect to the second motion to compel arbitration, the Magistrate Judge erroneously concluded that the <u>Pinnacle</u> decision invalidated the enforceability of the arbitration provision contained in the Liberty Mutual policy; and

(4) With respect to the second motion to compel arbitration, the Magistrate erroneously concluded that, assuming that only those arbitration provisions contained in policies that were issued after the <u>Pinnacle</u> decision are enforceable, there is no case or controversy with respect to those purported class members who purchased policies issued after the <u>Pinnacle</u> decision, and thus, the Court need not rule on the arbitrability of claims of such class members.

Respectfully submitted,

**AKERMAN, SENTERFITT & EIDSON, P.A.**
SunTrust International Center, 28th Floor
One Southeast Third Avenue
Miami, Florida 33131-1704
Phone: (305) 374-5600
Fax: (305) 374-5095

By: /s/ Jennifer Cohen Glasser
    MARK S. SHAPIRO
    Florida Bar No.: 894631
    mshapiro@akerman.com
    GARY J. GUZZI
    Florida Bar No.: 159440
    gguzzi@akerman.com
    JENNIFER COHEN GLASSER
    jlcohen@akerman.com

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing was sent by U.S. Mail to counsel listed below on this 11 day of October, 2002.

_____
Attorney

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
(Updated 5/21/02)

**Co-Lead Counsel for Class Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
elee@leeamlaw.com

Suite 150
350 N.W. 12th Ave.
Deerfield Beach, FL 33442
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
Bank of America Tower
One Financial Plaza
Suite 2510
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786 Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

Counsel for:
**Allstate, Fidelity and Casualty, Continental, Deerbrook**
RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue
(32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305) 539-2495
jmq@tewlaw.com
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.
wdeem@mcguirewoods.com
3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

{MI850735;1}

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN SENTERFITT
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile


**Counsel for: Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile


**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3520 Thomasville Road,
Suite 102
Tallahassee, FL 32308
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

{MI850735;1}

19