018365

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DR. PAUL ZIDEL, on behalf of
himself and others similarly situated,

    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
et al.

    Defendants.
_____

CASE NO. 00-6061-CIV-FERGUSON/SNOW

DR. ANDREW ELLOWITZ, on behalf
of itself and all others similarly situated,

    Plaintiff,

v.

AMERICAN INTERNATIONAL INSURANCE
COMPANY,

    Defendant.
_____/

CASE NO. 01-8549-CIV-FERGUSON/SNOW

### AMERICAN INTERNATIONAL'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION ON EMERGENCY MOTION TO COMPEL ARBITRATION, EMERGENCY MOTION TO STAY PROCEEDINGS, AND EMERGENCY MOTION FOR PROTECTIVE ORDER

Defendant AMERICAN INTERNATIONAL INSURANCE COMPANY ("AMERICAN INTERNATIONAL"), hereby files its Objections to the Magistrate's Report and Recommendation dated September 27, 2002, recommending denial of Defendant American International's Emergency Motion to Compel Arbitration, and states:

CASE NO. 00-6061-CIV-FERGUSON/SNOW
CASE NO. 01-8549-CIV-FERGUSON/SNOW

## INTRODUCTION

On September 27, 2002, the Magistrate issued its Report and Recommendation that AMERICAN INTERNATIONAL's Motion to Compel Arbitration be denied. AMERICAN INTERNATIONAL objects to the Report and Recommendation for the reasons set forth in its Motion to Compel Arbitration, incorporated ed by reference herein. AMERICAN INTERNATIONAL raised two entirely separate bases for compelling arbitration. The first is that the PPO agreement signed by ELLOWITZ, which forms the entire basis for this suit, requires arbitration of disputes regarding payments made for medical care.[1] The second is that the insurance policy over which ELLOWITZ is suing via an assignment contains a valid arbitration provision which is enforceable as to ELLOWITZ. As has been the case with prior recommendations, the Magistrate appears to have considered AMERICAN INTERNATIONAL's arguments as being identical to those of the other carriers in these consolidated cases and has failed to address the arguments that distinguish this case.

## I. *PINNACLE* DOES NOT PRECLUDE CONTRACTUAL ARBITRATION

The Report and Recommendation first finds that the Florida Supreme Court's decision in *Nationwide Mutual Fire Insurance Company v. Pinnacle Medical, Inc.*, 753 So.2d 55 (Fla. 2000), not only struck down the statute that mandated arbitration by providers, but also invalidated any contractually agreed upon arbitration provisions. As discussed in AMERICAN INTERNATIONAL's Motion to Compel

---

[1] This is a different basis for compelling arbitration from the insurance policy arbitration clause that was the subject of this Court's recent Order dated September 30, 2002, in which the Court adopted the Magistrate's Report to deny arbitration in the case involving Hartford.

2

CASE NO. 00-6061-CIV-FERGUSON/SNOW
CASE NO. 01-8549-CIV-FERGUSON/SNOW

Arbitration, adopted herein, the Magistrate's reading of the *Pinnacle* decision goes beyond the limited issue presented therein.

Furthermore, the Magistrate's Report and Recommendation has not addressed the two separate types of arbitration clauses found in AMERICAN INTERNATIONAL policies. The Report states that "[t]he defendant contends that its pre-July 2000 arbitration clause is a contractual agreement which is not affected by the Pinnacle decision," and finds that the Court cannot enforce the arbitration clauses in the policies. Even if this was a correct reading of *Pinnacle*, which AMERICAN INTERNATIONAL denies, it does not address the issue of the "expanded arbitration" provisions in the policy.

As set forth in AMERICAN INTERNATIONAL's motion and the Affidavit of Wendy Bowling filed in support thereof, a number of the insureds that have obtained medical treatment from ELLOWITZ have contracted for expanded arbitration which required the **insured** to participate in arbitration for any disputes involving payment of medical benefits. This Court has already indicated that arbitration provisions that require the insured to arbitrate are different from those that require arbitration only of the provider. In its recent Order dated September 30, 2002, the Court stated:

> "This Court agrees with the plaintiffs that the motion to compel arbitration should be denied for the additional reason that a contractual provision entered into between an insured and an insurance company cannot require arbitration of claims that are assigned to a healthcare provider where the insured is not required to arbitrate the same claim."

*See* Order Adopting Report and Recommendation and Administratively Closing Cases, p. 2 (DE 854).

Clearly, in order to preserve any consistency in the Court's rulings the issue of expanded arbitration in

3

CASE NO. 00-6061-CIV-FERGUSON/SNOW
CASE NO. 01-8549-CIV-FERGUSON/SNOW

AMERICAN INTERNATIONAL's policies should be reviewed by the Court prior to adopting the Report and Recommendation in this matter.[2]

As a final matter, if the Court determines there is insufficient evidence regarding which policies have expanded arbitration, it should be noted that the Plaintiff has been permitted to hide behind the Court's stay on discovery. The Plaintiff has refused to provide Rule 26 disclosures regarding ELLOWITZ and has failed to provide even an assignment of benefits from any insured by which the Court can determine whether ELLOWITZ has a legitimate cause of action. More importantly, although his entire cause of action depends on it, the Plaintiff has also refused to disclose the contract between ELLOWITZ and CCN obviously for the purpose of attempting to avoid arbitration. If the Report and Recommendation is adopted, AMERICAN INTERNATIONAL will have grounds to renew it once full information regarding the contracts and insured has been discovered.

In accordance with the foregoing, the Plaintiff should be required to arbitrate his claim pursuant to the arbitration provisions in AMERICAN INTERATIONAL's policies.

## II.  THE PPO AGREEMENT REQUIRES ARBITRATION

AMERICAN INTERNATIONAL's alternative argument for compelling arbitration is that it is a "payor" within the meaning of the Provider Agreement between CCN and ELLOWITZ. There is no question that the PPO agreement specifically contemplates CCN entering into the third party arrangements

---

[2]The fact that some insureds have expanded arbitration while others do not is also a reason why this claim cannot proceed as a class action.

4

CASE NO. 00-6061-CIV-FERGUSON/SNOW
CASE NO. 01-8549-CIV-FERGUSON/SNOW

with AMERICAN INTERNATIONAL to have access to physicians in CCN's network. The PPO agreement refers to these third parties as "payors" which are defined as entities, including insurance carriers, that have an obligation to provide health care benefits or services to a beneficiary or claimant. *See* CCN Managed Care, Inc. Professional Provider Agreement, attached as Exhibit A to Motion to Compel Arbitration. ELLOWITZ agreed to abide by the PPO reimbursement rates as follows:

> 2.01 Provider hereby agrees to provide Health Care Services or Benefits to Beneficiaries or Claimants as set forth in Insuring Agreements, at the Reimbursement Amounts determined and established by CCN through Payor Agreements with Payors, **which Payor Agreements are incorporated herein by reference**. Such Reimbursement Amounts are set forth in Exhibit A attached hereto and incorporated herein.
>
> 2.02 Provider agrees to accept the Reimbursement Amounts in Exhibit A as payment in full for Health Care Services or Benefits provided, to Beneficiaries or Claimants. Provider shall look solely to the Payor for payment of any and all compensation due for Health Care Services or Benefits and shall not bill or otherwise collect or attempt to collect from Beneficiaries or Claimants any charges except and unless required or permitted to do so by the applicable Insuring Agreement.
>
> . . .
>
> 4.01 Provider authorizes CCN to act on its behalf to contract for the provision of Health Care Services or Benefits, at Reimbursement Amounts as set forth on Exhibit A.

*See* Exhibit A to Motion to Compel Arbitration, pp. 2, 3 (emphasis added).

The CCN Provider Agreement requires that ELLOWITZ must pursue any "demands, disputes, claims or lawsuits" through arbitration rather than the judicial process:

> The sole and exclusive remedy for the resolution of any demands, disputes, claims or lawsuits shall be binding arbitration as the parties do not want the delay or expense of lawsuits . . . .

*See* Exhibit A to Motion to Compel Arbitration, p. 7, §12.02.

CASE NO. 00-6061-CIV-FERGUSON/SNOW
CASE NO. 01-8549-CIV-FERGUSON/SNOW

The Magistrate's Report states " the defendant cannot be a payor within the meaning of the PPO agreement proffered." *See* Report and Recommendation, p. 8. If that is the case, then AMERICAN INTERNATIONAL is entitled to summary judgment on the majority of the Plaintiff's claims. The entire point of the Plaintiff's lawsuit against AMERICAN INTERNATIONAL, especially the RICO claims which provide this Court with jurisdiction over the matter, is that AMERICAN INTERNATIONAL and CCN acted in concert to apply PPO reductions based on ELLOWITZ' Provider Agreement with CCN.

The Magistrate apparently also overlooked a number of the paragraphs in the Amended Class Action Complaint in which ELLOWITZ specifically alleges the existence of an agreement:

> 34. Under AIG's Silent PPO scheme, CCN licensed, leased or other wise provided their discount database to AIG.
>
> . . .
>
> 43. Despite these known facts, CCN entered into an agreement with AIG which allowed AIG to pay claims at PPO rates.
>
> 44. With CCN's consent, its database of preferred provider discounts was loaded into AIG's software and applied to bills submitted to AIG by providers such as ELLOWITZ.
>
> . . .
>
> 120. . . . (b) CCN then entered into a broker agreement (hereinafter referred to as a "Broker Agreement") with AIG which allowed for the disclosure and lease and/or license of the CCN preferred provider database to AIG.

*See* Amended Class Action Complaint.  Clearly, the Plaintiff has alleged AMERICAN INTERNATIONAL's status as a "payor."

The Magistrate goes on to say that AMERICAN INTERNATIONAL is not entitled to compel arbitration even if it is a "payor" because the PPO agreement does not give it that right. Paragraph 2.01 of the PPO agreement specifically incorporates payor agreements into that contract. Paragraph 2.02 states

6

CASE NO. 00-6061-CIV-FERGUSON/SNOW
CASE NO. 01-8549-CIV-FERGUSON/SNOW

that the provider agrees to accept reimbursement in the amounts set forth in the exhibit and "shall look solely to the Payor for payment of any and all compensation due." Pursuant to Paragraph 1.9, reimbursement amounts are determined solely by CCN and the Payors, and not by the providers. If there is any dispute as to the amounts paid, as ELLOWITZ claims here, or the applicability of the PPO agreement, the Payors clearly have the right to enforce the contract as a party incorporated into the contract.

Lastly, the Magistrate finds that ELLOWITZ is not equitably estopped from avoiding arbitration. The Magistrate distinguishes the Eleventh Circuit's opinion in *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc*, 10 F.3d 753 (11th Cir. 1993), by stating it permits a non-signatory to a contract to enforce arbitration only where the non-signatory is repeatedly mentioned in the contract. *See* Report and Recommendation, p. 10. As set forth above, ELLOWITZ, AMERICAN INTERNATIONAL, and CCN, all consider AMERICAN INTERNATIONAL to be a "payor" under the contract. There is no dispute that payors are continually referenced throughout the PPO agreement. Therefore, the Magistrate's distinction is not valid.

The Magistrate also attempts to distinguish *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), wherein the Eleventh Circuit reversed the denial of a motion to compel arbitration on the grounds that the plaintiff was equitably estopped from claiming a non-signatory could not seek arbitration. The Report finds that equitable estoppel, such as in *MS Dealer*, only applies when the signatory and non-signatory to a contract containing an arbitration provision have acted to induce the other party to the

CASE NO. 00-6061-CIV-FERGUSON/SNOW
CASE NO. 01-8549-CIV-FERGUSON/SNOW

contract to enter into it. *See* Report and Recommendation, p. 10. The *MS Dealer* case simply does not support this position.

In *MS Dealer*, the Eleventh Circuit found two situations where equitable estoppel applies to permit a non-signatory to a contract to compel arbitration. First, it applies where each of a signatory's claims make reference to, or presume the existence of, the written agreement to support the claims. Second, equitable estoppel applies where the signatory raises allegation of "interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer*, 177 F.3d at 947. As noted more fully in AMERICAN INTERNATIONAL's Motion to Compel Arbitration, both of these situations are involved in the present case. Nowhere does the Eleventh Circuit find that this applies only when the misconduct goes to the initial formation of the contract. In fact, the plaintiff's claims in *MS Dealer* did not even go to "inducement" of the plaintiff to enter into the purchase agreement as suggested by the Magistrate. The plaintiff was simply suing for fraud, stating that the amount charged for the service contract in her purchase agreement was excessive and caused her to incur unnecessary expense, not that she was somehow induced into entering into the contract because the overpriced service contract was present. *Id.* at 945.

In accordance with the foregoing, as well as the reasons set forth in the Motion to Compel Arbitration, ELLOWITZ should be required to submit to arbitration pursuant to the PPO agreement, and the Magistrate's Report and Recommendations should be declined.

CASE NO. 00-6061-CIV-FERGUSON/SNOW
CASE NO. 01-8549-CIV-FERGUSON/SNOW

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this __11th__ day of <u>October</u>, 2002, to: Eric Lee, Esq., Lee & Amtzis, P.L. Suite 150, 350 N.W. 12th Ave., Deerfield Beach, Florida 33442, and to counsel on the attached service list.

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Attorneys for AMERICAN INTERNATIONAL
3440 Hollywood Boulevard, Second Floor
Hollywood, Florida 33021
(954) 961-1400 Broward
(305) 940-4821 Dade

By: _____
Dale L. Friedman, Esquire
Florida Bar No.: 854646
Brian P. Knight, Esquire
Florida Bar No.: 993662

BPK
02.1009
10U3765.WPD