UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

      Defendants.

_____/

ULTRA OPEN MRI CORP., on behalf of          CASE NO. 01-6780
itself and all others similarly situated,

      Plaintiffs,

v.

INTEGON NATIONAL INSURANCE
COMPANY, INTEGON GENERAL
INSURANCE COMPANY, INTEGON
CASUALTY INSURANCE COMPANY,
INTEGON INDEMNITY CORPORATION,
INTEGON PREFERRED INSURANCE
COMPANY, NATIONAL GENERAL
INSURANCE COMPANY, NATIONAL
GENERAL ASSURANCE COMPANY, and
MIC GENERAL INSURANCE CORPORATION,

      Defendants.

_____/

## AMENDED CLASS ACTION COMPLAINT

    Plaintiff ULTRA OPEN MRI CORPORATION ("UOMC") on behalf of itself and all

others similarly situated, by its undersigned counsel, sues Defendants Integon General Insurance

Corporation, Integon National Insurance Company, Integon Preferred Insurance Company,

Integon Indemnity Corporation, National General Assurance Company, National General

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Insurance Company, Integon Casualty Insurance Company, and MIC General Insurance Corporation (collectively, "GMAC INSURANCE"), and alleges as follows:

## THE PARTIES

1.    UOMC is a corporation incorporated under the laws of the State of Florida with its principal place of business in Bradenton, Florida.

2.    INTEGON INDEMNITY CORPORATION, INTEGON GENERAL INSURANCE CORPORATION, INTEGON PREFERRED INSURANCE COMPANY, INTEGON NATIONAL INSURANCE COMPANY, and INTEGON CASUALTY INSURANCE COMPANY are insurance companies domiciled and incorporated in the State of North Carolina. NATIONAL GENERAL INSURANCE COMPANY and NATIONAL GENERAL ASSURANCE COMPANY are insurance companies domiciled and incorporated in the State of Missouri. MIC GENERAL INSURANCE CORPORATION is an insurance company domiciled and incorporated in the State of Michigan. GMAC INSURANCE provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

3.    Non-party Beech Street Corporation ("Beech Street") is a California corporation that established a preferred provider organization.  In 1999, Beech Street merged with non-party Capp Care, Inc.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq. (the "RICO Act").

5.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

GMAC INSURANCE is subject to personal jurisdiction in this District, GMAC INSURANCE insures numerous individuals in this District, and numerous class members are present in this District.

## BACKGROUND

6.     GMAC INSURANCE's Florida automobile insurance policies (hereinafter collectively referred to as the "Policy") provide personal injury protection benefits to its insureds. Certain policies also provide extended personal injury protection benefits and MPC coverage. All such coverage shall be referred to as ("PIP") coverage.

7.     With respect to payment of accident related medical expenses under PIP, GMAC INSURANCE's Policy of insurance states in pertinent part that GMAC INSURANCE must pay eighty (80%) percent of all reasonable and necessary accident related medical expenses.

8.     GMAC INSURANCE's Policy is a typical Florida indemnity insurance policy under which GMAC INSURANCE is required to indemnify claimants for eighty percent (80%) of the full cost of their reasonable and necessary medical bills up to a defined limit.

9.     Under the Policy, an insured has the absolute right and freedom to choose his or her medical providers.

10.     Within Policy limits, medical providers have the unrestricted right to be reimbursed eighty percent (80%) of their reasonable and necessary accident related medical expenses.

11.     The State of Florida's PIP statute directly addresses a healthcare provider's right to be paid for reasonable charges. Section 627.736(5), Florida Statutes ("Section 627.736") states:

> Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered ...

12.     Florida statutes permit an automobile insurance company to designate certain medical providers as preferred providers *if* the automobile insurer establishes a legitimate preferred

3

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

provider organization ("PPO") network by satisfying the strict requirements of Section 627.736(10) which provides as follows:

> (10) An insurer may negotiate and enter into contracts with licensed healthcare providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include healthcare providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policy-holder or applicant, it must also offer a non-preferred provider policy. The insurer shall provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

13.    GMAC INSURANCE has not offered its insureds preferred policies for PIP automobile insurance. As such, any medical provider who treated or treats a GMAC INSURANCE insured under a GMAC INSURANCE PIP auto insurance policy is not a "preferred provider." Therefore, in accordance with the above quoted statute, "the medical benefits provided by the insurer shall be as required by this section." (emphasis added). The medical benefits "required" are 80% of "all reasonable and necessary treatment, expenses..."

14.    Companies such as Beech Street are sometimes referred to as "brokers" or "managed care companies" in the healthcare industry. Beech Street contracts with healthcare providers, such as UOMC, for the purpose of uniting healthcare providers with commercial payors to coordinate and arrange for the delivery of healthcare services to the payors' legitimate subscribers. Beech Street may also administer healthcare claims submitted by healthcare providers to insurance companies. These contracts are typically referred to as Preferred Provider Agreements ("PPAs").

15.    The contracts entered into with healthcare providers by Beech Street require the

4

LEE & AMTZIS, P.L.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

healthcare providers to accept fees for services to subscribers at discounted rates from payors.

16.     Healthcare providers, by definition, include, but are not limited to, physicians, chiropractors, hospitals, pharmacies, and other healthcare facilities.

17.     Payors benefit by paying healthcare providers at discounted rates.

18.     Healthcare providers benefit by becoming part of the network of healthcare providers that are supposed to be marketed by payors to their subscribers and insureds through the use of directories and marketing tools, thus increasing the healthcare providers' volume of business referrals. Such healthcare providers are recognized as "preferred providers."

19.     The insurance policies sold or provided by the payors to their subscribers are recognized as "preferred provider policies."

20.     The combination of all parties to this endeavor is recognized  as a Preferred Provider Organization.

21.     At all times material herein, UOMC entered into a contract under which it agreed to provide services to Beech Street's PPO Subscribers.   Thereafter, GMAC INSURANCE began applying UOMC's Beech Street contractual discount to UOMC's medical bills for its patients who were injured in automobile accidents and covered by a Florida GMAC INSURANCE PIP Policy.  GMAC INSURANCE utilized the services of ADP Integrated Medical Solutions, Inc. ("ADP")  to process and discount UOMC's bills.

22.     Section 627.736(10), provides a means for GMAC INSURANCE to participate in such a PPO and offer a preferred provider policy for personal injury protection automobile insurance to its insureds after it enters into contracts with healthcare providers.

23.     GMAC INSURANCE never became a legitimate participant in UOMC's purported PPO and never complied with the requirements of the Section 627.736(10).

24.     Nevertheless, GMAC INSURANCE has taken discounts on healthcare providers' bills as

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

if it were a legitimate participant in UOMC's purported PPO and had complied with Section 627.736 by offering a preferred provider policy of personal injury protection automobile insurance to its insureds, none of which was done by GMAC INSURANCE.

25.    This unlawful practice (called a "Silent PPO") allows GMAC INSURANCE to enjoy substantial savings and profits by paying out less in benefits which in turn causes UOMC and those similarly situated to suffer financial loss, without any consideration from GMAC INSURANCE for these discounts.

26.    GMAC INSURANCE, Beech Street and ADP have collectively engaged in the previously described "Silent PPO" scheme to reduce benefits paid on auto injury claims.

27.    The "Silent PPO" scheme has emerged primarily in the context of indemnity plans. Indemnity insurers, such as GMAC INSURANCE, obtain access to PPO networks of preferred providers and their discounts.  GMAC INSURANCE takes advantage of these discounts.

28.    GMAC INSURANCE is not, however, entitled to take advantage of these legitimate PPO discounts under the terms and conditions of its Florida automobile insurance policies,  the Florida PIP statutes, and the Beech Street PPA contract with UOMC.

29.    GMAC INSURANCE has not established the statutory prerequisites to be entitled to these PPO discounts.

30.    This Silent PPO scheme contains none of the legitimate steerage mechanisms required by legitimate PPOs.  Legitimate steerage mechanisms include creating financial incentives for steering insureds to preferred providers such as lower premiums or lower co-payments, providing education and marketing information to insureds about preferred providers in the network, and printing and distributing preferred provider identification cards.

31.    By using the Silent PPO scheme, GMAC INSURANCE enjoys substantial savings by paying PIP benefits without the attendant expense of establishing a legitimate PPO network.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

32.    Legitimate managed care companies and insurers have knowledge of the illegality of such schemes.  The American Association of Preferred Providers has denounced such practices and the American Medical Association has issued an "Action Alert Kit" to its members educating them about Silent PPO schemes.

33.    GMAC INSURANCE all had knowledge of the illegal nature of this Silent PPO discounting scheme.  Silent PPO discounting schemes have been the subject of widespread discussion in the insurance and managed care industries with many major medical associations denouncing the practice.

34.    Beech Street had direct knowledge of the illegitimate nature of Silent PPOs. Beech Street purportedly drafted the PPA, executed the PPA with UOMC and had express knowledge of its provisions.

35.    Under GMAC INSURANCE's Silent PPO scheme, Beech Street licensed, leased or otherwise provided its discount database to GMAC INSURANCE.

36.    Armed with the Beech Street preferred provider database of discounts, GMAC INSURANCE systematically processed all Florida medical expense claims through ADP's automated PPO re-pricing product and applied discounts to bills where the medical provider's tax identification number on the bill matched a tax identification number in Beech Street's database. At no time did UOMC have a contract with GMAC INSURANCE authorizing discounts to be taken on its medical bills.

37.    GMAC INSURANCE routinely and systematically used Beech Street's preferred provider discounts to reduce millions of dollars of medical bills.  The discounts were routinely and systematically applied despite the fact that a preferred provider policy was not offered by GMAC INSURANCE and despite the fact that claimants were not referred steered or directed to preferred providers.

38.     As part of GMAC INSURANCE's Silent PPO scheme, upon information and belief, Beech Street was paid a percentage of GMAC INSURANCE's PPO discount savings and/or a per transaction fee for processing claims for GMAC INSURANCE.

39.     Without complying with the statutory prerequisites for the establishment of an automobile insurance PPO network, GMAC INSURANCE has systematically discounted medical providers' PIP medical expenses by utilizing PPO discounts.

40.     GMAC INSURANCE has illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any steerage or other meaningful consideration for such discounts.

## FACTS AS TO PLAINTIFF

41.     At all times material herein, UOMC was purportedly a party to a PPA with Beech Street to be a participating healthcare preferred medical provider (hereinafter referred to as a "Beech Street Preferred Provider").

42.     Pursuant to the purported PPA Agreement, UOMC agreed to become a member of Beech Street's Network (i.e. employer/employee based group or individual health plan related payors). UOMC's purported agreement does not allow Beech Street to allow automobile insurers or PPO discount brokers with automobile insurer clients access to UOMC's preferred provider rates.

43.     UOMC's purported agreement does not allow Beech Street to allow automobile insurers or PPO discount brokers with automobile insurer clients access to UOMC's rates.

44.     GMAC INSURANCE had not offered a PPO endorsement to its automobile insureds. Moreover, GMAC INSURANCE never offered its Florida automobile insureds premium reductions as an economic incentive to use preferred providers.

45.     UOMC's purported PPA with Beech Street did not authorize the application of discounts by automobile insurers or discount brokers who could not increase UOMC's patient volume.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Increased patient volume.

46.    Despite these known facts, Beech Street allowed GMAC INSURANCE access to all of Beech Street's preferred provider's confidential and proprietary discount rates knowing that GMAC INSURANCE was not a proper payor under the PPA and could not increase preferred provider patient volume as promised by Beech Street.

47.    With Beech Street's consent, its database of preferred provider discounts was loaded into GMAC INSURANCE's and/or ADP's software and applied to all bills submitted to the GMAC INSURANCE by Beech Street preferred providers such as UOMC.

48.    In exchange for Beech Street's anticipated effort to increase its patient volume, UOMC purportedly agreed with Beech Street to provide healthcare services to Subscribers of such Payors at a rate lower than UOMC would normally accept for the same healthcare services.

49.    GMAC INSURANCE obtained access to Beech Street's database that contained the identities of all of Beech Street's purported Preferred Providers, as well as the discounted fees that these healthcare providers were willing to accept for medical services.

50.    At no time did GMAC INSURANCE have a written contract with UOMC or other healthcare providers in Florida wherein healthcare providers agreed with GMAC INSURANCE to discount charges for their medical services to patients injured in automobile accidents who were insured for PIP coverage by GMAC INSURANCE.

51.    By virtue of GMAC INSURANCE's access to the discounted rates in the purported agreements between Beech Street, UOMC, and the class, GMAC INSURANCE began to systematically apply PPO discounts.

52.    ADP, Beech Street and/or GMAC INSURANCE  have mailed explanation of reduction forms ("EOBs") that indicated the application of a discount based upon the Beech Street Preferred Provider Agreements.

53.    These EOBs state that GMAC INSURANCE is entitled to such discounts.

54.    Under this scheme, GMAC INSURANCE has been reaping huge savings while violating Florida law and providing no consideration whatsoever to healthcare providers, including UOMC, for the right to apply such discounts.

55.    Under GMAC INSURANCE's Silent PPO scheme, it incorporated the purported Beech Street preferred provider discounts into its existing cost containment software product - a product specifically designed to "re-price" medical bills based on preferred provider rates for non-managed care lines of insurance such as property and casualty insurance.

56.    At all times material herein, in the course of its medical practice, UOMC provided medical care to patients who had been injured in automobile accidents and who were entitled to PIP benefits from GMAC INSURANCE.

57.    At no time prior to their treatment with UOMC did this class of patients receive any marketing materials, including, but not limited to, publications identifying UOMC's name, address and available services, from GMAC INSURANCE.

58.    At no time did GMAC INSURANCE comply with the requirements of Section 627.736(10).

59.    At no time prior to their treatment with UOMC did GMAC INSURANCE encourage these patients to use UOMC's medical services.

60.    After providing medical treatment to these patients, UOMC submitted medical bills for reasonable and necessary accident related medical expenses to GMAC INSURANCE for payment.

61.    Upon receipt of the medical bills submitted by UOMC for payment under the PIP portion of the GMAC INSURANCE Automobile Policy, GMAC INSURANCE discounted UOMC's and other class members' bills by using the Beech Street PPO discounted rates claiming that

LEE & AMTZIS, P.L.
Attorneys at Law

GMAC INSURANCE was entitled to said discount.

62.     Upon information and belief, ADP and/or Beech Street were paid a percentage of GMAC INSURANCE's discount savings on each PIP medical expense claim.

63.     UOMC and other class members have received no consideration from GMAC INSURANCE for the discounts taken.

64.     GMAC INSURANCE could not provide such consideration because GMAC INSURANCE failed to offer its insureds a PPO automobile insurance policy compliance with the Florida PIP statute.

65.     GMAC INSURANCE's illegal activity is demonstrated by Exhibit "1" attached hereto. Exhibit "1" represents a sample of an EOB received by UOMC illustrating the illegal discount.

66.     UOMC billed GMAC INSURANCE $899.00 for CPT Code 72141.    GMAC INSURANCE then paid less than the amount billed by UOMC.

67.     GMAC INSURANCE was supposed to pay eighty (80%) percent of the billed amount.

68.     GMAC INSURANCE paid only 80% of the reduced amount as its full obligation under the insured's automobile insurance policy.

69.     This example resulted in the misappropriation of $287.68 from UOMC.

70.     GMAC INSURANCE routinely and systematically applied the Beech Street PPO discounted rates to PIP medical expense claims.

71.     At the time GMAC INSURANCE implemented its PPO discounting scheme, it knew it was violating Florida law.

72.     After taking the illegal discounts on UOMC's and the class' bills, as described above, GMAC INSURANCE routinely printed out EOBs showing the discounts.  It then forwarded the EOBs and reduced payment checks to the healthcare providers in purported full satisfaction of the healthcare providers' medical charges.

LEE & AMTZIS, P.L.

73.    It was and is the custom and practice of GMAC INSURANCE to discount thousands of automobile medical expense claims in this manner in violation of its policies with its insureds and in violation of Florida's PIP statutes.

74.    UOMC and those similarly situated have been economically damaged and have suffered monetary losses as a result of the conduct of GMAC INSURANCE.

## CLASS ACTION ALLEGATIONS

75.    UOMC brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated.  The class is defined to include:

> Health care providers, as defined by the Florida Motor Vehicle No-Fault Act: (a) That rendered medical services to person(s) insured under a GMAC Insurance PIP policy;  (b) That received a valid assignment of benefits from the person(s) insured by GMAC Insurance as to such services; (c) That submitted bills for payment for such services to GMAC Insurance;  and (d) Which bills were reduced by GMAC Insurance based on the application of a ADP/Beech Street PPO reduction during the Class Period (January 1, 1996 though August 1, 2003).

76.    There are questions of law and fact that are common to all members of the class, which questions predominate over any question affecting only individual class members.

77.    The principal common issues include the following:

(a)    whether GMAC INSURANCE violated Section 627.736, Florida Statutes, by paying personal injury protection medical expense claims at discounted Preferred Provider rates;

(b)    whether GMAC INSURANCE's processing of the PPO discounts is permissible under state law or federal law;

(c)    whether UOMC and those similarly situated are entitled to compensatory, statutory, or punitive damages against GMAC INSURANCE because of its illegal conduct; and

(d)    whether UOMC and the class are entitled to an injunction preventing the continued disclosure and/or use of their discounts by GMAC INSURANCE and the application of these discounts to automobile personal injury protection medical expense claims.

78.    The class is comprised of all healthcare providers whose medical bills were discounted by GMAC INSURANCE based on Beech Street Preferred Provider discounts.

79.    The amounts of the discounts are contained in GMAC INSURANCE's computer systems and on the EOBs and checks mailed by GMAC INSURANCE to UOMC and the members of the class.

80.    UOMC's claims are typical of the claims of all members of the class because the claims are based on the same legal and remedial theories.

81.    UOMC will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

82.    UOMC is similarly situated with, and has suffered similar injuries as, the members of the class that he seeks to represent.

83.    UOMC has retained counsel experienced in class action cases and healthcare litigation.

84.    Neither UOMC, nor counsel, have any interest that may cause them to not vigorously pursue this action.

85.    A class action is GMAC INSURANCE to other available methods for the fair and efficient adjudication of the controversy, because:

(a)    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

(b)    concentration of the litigation concerning this matter in this Court is desirable;

(c)    the claims of the representative Plaintiff are typical of the claims of the members of the class;

(d)    a failure of justice will result from the absence of a class action; and

(e)    the class and the difficulties likely to be encountered in the management of this class



CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

action are not great.

86.    The class is so numerous as to make it impracticable to join all members of the class as plaintiffs.

87.    GMAC INSURANCE has discounted thousands of medical bills based on Beech Street Preferred Provider discounted rates. Many healthcare providers may not even be aware of GMAC INSURANCE's sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of pursuing individual litigation.

88.    In contrast, on a class-wide basis, GMAC INSURANCE has saved millions of dollars by accessing and utilizing the discounted rates of healthcare providers.

### AS AND FOR A FIRST
### CAUSE OF ACTION
#### (Unjust Enrichment)

89.    UOMC repeats and realleges each and every allegation contained in Paragraphs "1" through "88" above, with the same force and effect as if set forth fully herein.

90.    UOMC and the class conferred benefits upon GMAC INSURANCE by providing healthcare services to individuals insured by GMAC INSURANCE.

91.    UOMC and the class billed GMAC INSURANCE the reasonable value for these services.

92.    GMAC INSURANCE improperly paid these bills at reduced rates.

93.    GMAC INSURANCE has provided no consideration to UOMC and the class for the retention of the discounts by GMAC INSURANCE.

94.    GMAC INSURANCE has reaped the benefit of substantial monetary savings on PIP claims by wrongfully and illegally applying the Beech Street PPO discounted rates to Florida PIP medical expense claims.

95.    GMAC INSURANCE had knowledge that it reaped said financial benefits to the detriment of UOMC and the members of the class by voluntarily accepting and retaining said

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

benefits.

96.     Such savings constitute unjust enrichment for GMAC INSURANCE and it would be inequitable under the circumstances for GMAC INSURANCE to retain the benefits received from UOMC and the members of the class without paying the full value thereof to UOMC and the class members.

**AS AND FOR A SECOND**
**CAUSE OF ACTION**
**(Third-Party Beneficiary Breach of Contract)**

97.     UOMC repeats and realleges each and every allegation contained in Paragraphs "1" through "88" above, with the same force and effect as if set forth fully herein.

98.     GMAC INSURANCE and its insureds who purchased its Florida PIP automobile insurance policy entered into a contract of insurance.

99.     GMAC INSURANCE's contract provided that in the event an insured was involved in an automobile accident, GMAC INSURANCE would pay, on the insured's behalf, eighty (80%) percent of all reasonable and necessary medical expenses incurred.

100.    UOMC and the other members of the class provided medical services to GMAC INSURANCE insureds who were injured in automobile accidents.

101.    UOMC and the members of the class are intended third-party beneficiaries of GMAC INSURANCE's automobile insurance agreements.

102.    UOMC and the members of the class were to be paid eighty (80%) percent of all reasonable and necessary medical expenses incurred and billed.

103.    GMAC INSURANCE breached the agreement by improperly paying medical expenses at reduced rates.

104.    As a result, UOMC and the putative class members have suffered damages directly and proximately caused by GMAC INSURANCE's breach of its insurance agreements with its

15

insureds.

## AS AND FOR A THIRD
## CAUSE OF ACTION
### (RICO Act Violations)

105.    UOMC repeats and realleges each and every allegation contained in Paragraphs "1" through "88" above, with the same force and effect as if set forth fully herein.

106.    GMAC INSURANCE, acting with Beech Street formed an association-in-fact enterprise designed to reduce payments made to Beech Street preferred providers on all Florida PIP medical expense claims submitted to GMAC INSURANCE. The "association- in- fact" is known as a "Silent PPO."

107.    GMAC INSURANCE, with the knowing or grossly negligent cooperation of Beech Street participated, directly and indirectly, in the activities of this enterprise through a pattern of racketeering activity, as more fully set forth below.

108.    The activities of this enterprise affected commerce.

109.    The pattern of racketeering activity consisted of multiple acts of mail and wire fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

110.    The pattern of racketeering activity has been continuous for at least two years, and, on information and belief, will continue into the future.

111.    In furtherance of the pattern of racketeering activity, GMAC INSURANCE has engaged in a continuous scheme and artifice to defraud UOMC, and those similarly situated, of money as follows:

(a)    Beech Street solicited UOMC by mail to join its PPO network. Beech Street mailed its marketing and preferred provider agreements to potential preferred providers through use of the United States mails. Beech Street entered into a PPA with UOMC and class members which did not authorize the disclosure, sale, lease or license of preferred provider discounts to GMAC

INSURANCE;

(b)     Beech Street entered into a broker agreement (hereinafter referred to as a "Broker Agreement") with GMAC INSURANCE which allowed for the disclosure and lease and/or license of the Beech Street preferred provider database to GMAC INSURANCE;

(c)     GMAC INSURANCE applied Beech Street's preferred provider discounts to medical expense claims submitted to GMAC INSURANCE by Beech Street preferred providers;

(d)     Beech Street and GMAC INSURANCE transferred claim information, medical bills, EOBs, compensation information and documentation and other documentation and information necessary to carry out this scheme via the United States mails and/or by wire;

(e)     After computer application of the discounts, GMAC INSURANCE printed Explanation of Reimbursement forms ("EOBs") on its form EOBs which indicated the PPO discount and the reduced amount owed after application of the discount;

(f)     By use of the United States mail, Beech Street, ADP and/or GMAC INSURANCE thereafter transmitted or caused to be transmitted said EOBs and reduced claim checks to medical providers and persons insured by GMAC INSURANCE.  A sample of such an EOB is attached to the original Complaint as Exhibit "1."

(g)     Said EOBs falsely represented that GMAC INSURANCE was entitled to apply a Beech Street PPO discount to the claim;

(h)     Said EOBs falsely claimed the "ALLOWED AMOUNT" to be less than the amount actually owed and also falsely decreased a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount;

(i)     GMAC INSURANCE, ADP and/or Beech Street engaged in interstate telephone calls, computer communications, and/or wire communications and transactions to transmit information that was false and to exchange fees and compensation essential to the scheme.

LEE & AMTZIS, P.L.

112.    In the above described manner, GMAC INSURANCE was able to gain access to managed care contract rates for application to Florida PIP medical expense claims without providing any consideration to UOMC or members of the purported class, and without ever entering into a managed care agreement with any medical providers.

113.    This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars has directly caused monetary damages to UOMC and members of the class.

114.    GMAC INSURANCE's, ADP's and/or Beech Street's conduct gives rise to claims under 18 U.S.C. § 1964(a) of RICO and permits the recovery of treble damages against GMAC INSURANCE for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

115.    UOMC and the class members are "persons" within the meaning of 18 U.S.C. § 1964(c).

116.    At all times relevant hereto, UOMC and class members were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

117.    With respect to the activities alleged herein, GMAC INSURANCE, ADP and/or Beech Street acted at all times with malice toward the class, intent to engage in the conduct complained of for their own benefit and with knowledge that such conduct constituted unlawful activity. Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which GMAC INSURANCE, ADP and/or Beech Street are subject, the same amounting to actionable wantonness.

118.    With respect to the activities alleged herein, GMAC INSURANCE, ADP and/or Beech Street aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c).

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

119.    GMAC INSURANCE operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

120.    In furtherance of this scheme, GMAC INSURANCE, ADP and/or Beech Street interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests, to which GMAC INSURANCE and Beech Street are not entitled, through the exploitation of discount rates.

121.    With respect to the overt acts and activities alleged herein, GMAC INSURANCE communicated and conspired with ADP and/or Beech Street to violate 18 U.S.C. §§ 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).

122.    GMAC INSURANCE communicated with Beech Street and/or ADP so that it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

123.    GMAC INSURANCE communicated with ADP and/or Beech Street so that it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which GMAC INSURANCE was not entitled, through the exploitation of a proprietary discount rate.

124.    The numerous predicate acts of mail and wire fraud and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by GMAC INSURANCE, ADP and/or and Beech Street to defraud UOMC and the purported class of money and property interests under false pretenses; to deprive UOMC and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and to place GMAC INSURANCE's, ADP's and/or Beech Street's financial interests over the confidential records of UOMC and the class so that GMAC INSURANCE, ADP and/or Beech Street could make greater profits.

125.    UOMC, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

## A.    **RACKETEERING ACTIVITIES**.

126.    In carrying out the overt acts and fraudulent scheme described above, GMAC INSURANCE, ADP and/or Beech Street engaged in *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 961 et seq., as stated below.

127.    Section 1961(1) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

128.    The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§ 1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

### 1.  18 U.S.C. §§ 1341 and 1346, and 18 U.S.C. §§ 1343 and 1346

129.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, GMAC INSURANCE and Beech Street, in violation of 18 U.S.C. § 1341 and § 1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things

to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.

130.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, GMAC INSURANCE, ADP and/or Beech Street, in violation of 18 U.S.C. §§ 1343 and 1346, transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts.   In this manner, GMAC INSURANCE, was knowingly violating purported obligations of Beech Street to UOMC and others similarly situated to provide "honest services."

131.    GMAC INSURANCE knowingly induced ADP and/or Beech Street to deprive UOMC and others similarly situated of "honest services."

132.    In those matters and things sent or delivered by the United States Postal Service referred to above, GMAC INSURANCE, ADP and/or Beech Street falsely and fraudulently represented to UOMC and the class that:

(a)    GMAC INSURANCE's payments were for the amount "billed" for the reasonable value of the services, and

(b)    that GMAC INSURANCE was entitled to a PPO discount for UOMC and the class under a system that legitimately provides education, marketing and economic incentives intended to "steer" more patients  and to provide other benefits to healthcare providers.   GMAC INSURANCE failed, however, to disclose to UOMC and the class that its EOBs were based upon illegal discounts designed to maximize profits on discounts illegally obtained  through

UOMC's proprietary information. GMAC INSURANCE thus failed to disclose material facts regarding GMAC INSURANCE's internal policies and practices specifically designed to reduce or limit the level of payment discussed in detail above.

133.  With respect to its unlawful activities described above, GMAC INSURANCE also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§ 1341, 1343, and 1346.

134.  GMAC INSURANCE intentionally and knowingly deceived UOMC and the purported class referred to above for the purpose of financial gain. GMAC INSURANCE either knew, or recklessly disregarded, that the illegal discounts described above were material.

135.  UOMC and the class have been injured in their business or property by GMAC INSURANCE's overt acts and racketeering activities in amounts to be determined at trial.

## 2.  18 U.S.C. § 1951(b)(2)

136.  During the relevant times and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, GMAC INSURANCE, ADP and/or Beech Street, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. § 1951.

137.  GMAC INSURANCE unlawfully attempted to and/or did induce ADP and/or Beech Street to cause UOMC and numerous other healthcare providers to part with various property interests to which GMAC INSURANCE was and is not entitled, including the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy.

138.  GMAC INSURANCE's conduct induced ADP and/or Beech Street to provide it with the

names of healthcare providers and their discounts and exploited a fear of economic loss and/or loss of business by UOMC and others similarly situated in violation of 18 U.S.C. § 1951(b)(2).

139.    In furtherance of the scheme or artifice to defraud to obtain money by false pretenses from UOMC and the class, GMAC INSURANCE communicated with ADP and/or Beech Street to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which GMAC INSURANCE was not entitled through the exploitation of healthcare providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts.

140.    GMAC INSURANCE either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by UOMC and the class.

141.    GMAC INSURANCE's, ADP's and/or Beech Street's overt acts and fraudulent and extortionate racketeering activities has and continues to defraud UOMC and the members of the class, of money, has and continues to unlawfully influence and interfere with the purported relationship of Beech Street and UOMC and the purported class, as well as interfering with the fiduciary relationship between UOMC, and members of the purported class and their patients.

142.    UOMC and the purported class have, therefor, been injured in their business or property by GMAC INSURANCE's overt acts and racketeering activities in amounts to be determined at trial.

### 3. 18 U.S.C. § 1952(a).

143.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud UOMC and the purported class, GMAC INSURANCE, ADP and/or Beech Street and their respective employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. § 1952(a).

144.    GMAC INSURANCE's, ADP's and/or Beech Street's overt acts and fraudulent racketeering activity has and continues to defraud UOMC and the class of money.

## B.    PATTERN OF RACKETEERING ACTIVITY.

145.    GMAC INSURANCE, ADP and/or Beech Street have engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years.  Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including UOMC and the class.

146.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by GMAC INSURANCE, ADP and/or Beech Street, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

## C.    RICO VIOLATIONS OF 18 U.S.C. §§ 1962 (d).

147.    UOMC's claim for relief also arises under 18 U.S.C. § 1964 (c) of RICO and seeks to recover actual and treble damages for GMAC INSURANCE's and Beech Street's violations of 18 U.S.C. §§ 1962(c) and for its violations of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

### 1.    Section 1962(c) claim.

148.    UOMC repeats and realleges each and every allegation contained in Paragraphs "1" through "88" above, with the same force and effect as if set forth fully herein.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

149.   18 U.S.C. § 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

150.   18 U.S.C. § 1961(3) of RICO states that a "person" includes any individual or entity capable of holding a legal or beneficial interest in property.

151.   18 U.S.C. § 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

152.   For purposes of this 18 U.S.C. § 1962(c) claim, the persons consist of GMAC INSURANCE, ADP and/or Beech Street. The enterprise is an association-in-fact consisting of GMAC INSURANCE, ADP and/or Beech Street by virtue of its control over physicians, medical specialists, medical laboratories, hospitals, healthcare clinics, pharmacies, home healthcare agencies, and other miscellaneous healthcare providers, all of which have the purpose of providing healthcare services to GMAC INSURANCE's insureds making PIP claims under GMAC INSURANCE's automobile insurance policies.

153.   This 18 U.S.C. § 1962(c) enterprise is distinct from GMAC INSURANCE and includes many persons who are not employees of GMAC INSURANCE and many entities that are not owned by GMAC INSURANCE. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

154.   GMAC INSURANCE is associated with ADP and Beech Street in the 18 U.S.C. § 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described herein. UOMC and the purported class members are directly and proximately injured both by this pattern of activity and by

25


LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

GMAC INSURANCE's conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

### 2.    Section 1962(d) Claim.

155.    UOMC repeats and realleges each and every allegation contained in Paragraphs "1" through "88" above, with the same force and effect as if set forth fully herein.

156.    This claim for relief also arises under 18 U.S.C. § 1964(c) of RICO and seeks to recover actual and treble damages for GMAC INSURANCE's and Beech Street's violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

157.    18 U.S.C. § 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

158.    18 U.S.C. § 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

159.    For purposes of the claim of a conspiracy in violation of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a), the persons under the latter subsection consist of GMAC INSURANCE and Beech Street and the enterprise consists of GMAC INSURANCE and its investment division, which further profits from the ill-gotten gains.

160.    At all times relevant herein, Beech Street's, ADP's, and GMAC INSURANCE's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§

1961(4) and 1962(a).

161.    The GMAC INSURANCE investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud UOMC and the purported class of money and to deprive them of their intangible right of honest services from Beech Street.

162.    GMAC INSURANCE sells insurance. Assets generated from GMAC INSURANCE's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars.

163.    GMAC INSURANCE derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a).

164.    This use or investment injures UOMC and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect healthcare providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described herein.

165.    As demonstrated in detail above, GMAC INSURANCE has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require UOMC and the purported class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud UOMC and the class of money, and to unlawfully interfere with their physician-patient relationship.

166.    GMAC INSURANCE's pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by GMAC INSURANCE's inducement to ADP and Beech Street to allow GMAC INSURANCE to defraud UOMC and the purported class.

167.    The nature of the above described acts of GMAC INSURANCE constitutes material misrepresentations that give rise to an inference that GMAC INSURANCE knew it was violating the objective of 18 U.S.C. § 1962(d) by violating 18 U.S.C. §§ 1962(a) and (c), through its ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

168.    As a direct and proximate result of GMAC INSURANCE's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. §§ 1962(a) and (c), UOMC and the class have been and are continuing to be injured in their business or property.

169.    Pursuant to 18 U.S.C. § 1964(c), UOMC is entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

170.    GMAC INSURANCE has sought to and has engaged in the commission of and continues to commit overt acts and the aforesaid described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by GMAC INSURANCE from such pattern of racketeering activity, to-wit:

(a)    multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

(b)    multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

(c)    multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

(d)    multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

(e)    multiple instances of travel in interstate commerce to attempt to and to actually commit

mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and

(f)    multiple instances of violations of 18 U.S.C. § 1954.

171.    GMAC INSURANCE's violations of the above federal laws and the effects thereof

detailed above are continuing and will continue unless injunctive relief prohibiting GMAC

INSURANCE's illegal acts constituting a pattern of racketeering activity is fashioned and

imposed by this Court.

## AS AND FOR A FOURTH
## CAUSE OF ACTION
### (Declaratory Judgment)

172.    UOMC repeats and realleges each and every allegation contained in Paragraphs "1"

through "88" above, with the same force and effect as if set forth fully herein.

173.    As previously alleged, GMAC INSURANCE has improperly taken advantage of

discounts to which it is not entitled for all the reasons that have been set forth in the previous

paragraphs of this Complaint.

174.    GMAC INSURANCE has taken these discounts in breach of the terms and conditions of

their automobile insurance policies.  Said policies are indemnity policies that do not provide for

preferred provider benefits or the application of preferred provider rates.

175.    By using Beech Street's purported preferred provider rates to limit the payment of

UOMC's and class members' PIP medical bills, GMAC INSURANCE has imposed a limitation

on benefits that is not contained in their automobile insurance policies.  UOMC and the class

members are intended third-party beneficiaries of said insurance policies and are entitled to a

declaration that GMAC INSURANCE's payments of their PIP medical bills at preferred provider

rates is a breach of the applicable insurance contracts.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

## AS AND FOR A FIFTH
## CAUSE OF ACTION

### (Violation of Section 627.736, Florida Statutes)

176.    UOMC repeats and realleges each and every allegation contained in Paragraphs "1"

through "88" above, with the same force and effect as if set forth fully herein.

177.    At all times material herein, UOMC and the members of the class that he seeks to

represent presented or had presented on their behalf reasonable and necessary medical charges to

GMAC INSURANCE for treatment of patients entitled to PIP medical expense benefits pursuant

to a Florida automobile insurance policy issued by GMAC INSURANCE.

178.    Pursuant to Section 627.736, Florida Statutes:

> **(1)    Required benefits.**  Every insurance policy complying with the security
> requirements of s. 627.733 shall provide personal injury protection to the named
> insured, relatives residing in the same household, persons operating the insured
> motor vehicle, passengers in such motor vehicle, and other persons struck by such
> motor vehicle and suffering bodily injury while not an occupant of a self-
> propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(d),
> to a limit of $10,000 of loss sustained by any such person as a result of bodily
> injury, sickness, disease, or death arising out of the ownership, maintenance, or
> use of a motor vehicle as follows:

> > (a)    Medical benefits.  Eighty percent of all reasonable expenses for
> > necessary medical, surgical, X-ray, dental, and rehabilitative services, including
> > prosthetic devices, and necessary ambulance, hospital, and nursing services.  Such
> > benefits shall also include necessary remedial treatment and services recognized
> > and permitted under the laws of the state for an injured person who relies upon
> > spiritual means through a prayer alone for healing, in accordance with his
> > religious beliefs.

> > . . .

> **(4)    Benefits; when due.**

> > . . .

> > (g)    It is a violation of the insurance code for an insurer to fail to timely
> > provide benefits as required by this section with such frequency as to constitute a
> > general business practice.

30

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

179.    Effective October 1, 1991, as amended, effective October 1, 1992, Section

627.736(10), Florida Statutes provides:

> An insurer may negotiate and enter into contracts with licensed healthcare providers for the benefits described in this section referred to in this section as "preferred providers" which shall include healthcare providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a nonpreferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, it must also offer a nonpreferred provider policy. The insurer shall provide each policyholder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

180.    Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a

provider who is not a preferred provider, whether the insured purchased a preferred provider

policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as

required by this section." (Emphasis added).

181.    Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider

who is a preferred provider, the insurance may pay medical benefits in excess of the benefits

required by this section and may waive or lower the amount of any deductible that applies to

such medical benefits." (Emphasis added).

182.    In violation of the foregoing provisions of Section 627.736, GMAC INSURANCE has

implemented a policy and has conducted itself in a manner with such frequency as to constitute a

general business practice whereby GMAC INSURANCE has paid and continues to pay medical

benefits at a rate less than the reasonable and necessary rate.

183.    GMAC INSURANCE, as part of its general business practice, has been paying medical

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

benefits at eighty (80%) percent of preferred provider rates.

184.    At all times material hereto, GMAC INSURANCE did not offer preferred provider policies.

185.    Since GMAC INSURANCE did not offer a preferred provider policies, GMAC INSURANCE was required to pay eighty (80%) percent of all reasonable and necessary medical expenses.

186.    If GMAC INSURANCE issued and sold preferred provider policies, GMAC INSURANCE would then be entitled to pay medical benefits in excess of the benefits required and may waive or lower the amounts of any deductible that applies to such medical benefits.

187.    By paying PIP benefits at a preferred provider rate, GMAC INSURANCE has significantly reduced its payments and obligations under PIP policies throughout the State of Florida.

188.    GMAC INSURANCE's actions are in direct violation of Section 627.736, Florida Statutes.

189.    GMAC INSURANCE has wrongfully reduced UOMC's and the class members' PIP medical expense claims based on Beech Street preferred provider discounts.

190.    GMAC INSURANCE is not entitled to said Beech Street preferred provider discounts. GMAC INSURANCE has failed to offer insureds a PPO endorsement and also failed to otherwise comply with the requirements of Section 627.736(10), Florida Statutes.

191.    Despite this failure, GMAC INSURANCE has reduced and continues to reduce PIP automobile insurance medical expense claims of UOMC and the purported class members by accessing and applying Beech Street preferred provider discounts.

192.    Accordingly, an outstanding balance remains on all automobile insurance PIP medical expense claims that GMAC INSURANCE has reduced based on Beech Street preferred provider


LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

discounts.

193.    Pursuant to Section 627.736(4)(b): "Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."

194.    Pursuant to Section 627.736(c): "All overdue payments shall bear interest at the rate of 10 percent per year."

195.    GMAC INSURANCE has failed to pay the full amount of the reasonable and necessary medical expense billed by UOMC and the class members within 30 days after GMAC INSURANCE was furnished with written notice of the reasonable and necessary amount of the medical expense.

196.    GMAC INSURANCE has failed to pay interest on the remaining balances owed to UOMC and the class members.

197.    By reducing UOMC's and the purported class members' legitimate medical expenses by the application of Beech Street preferred provider discount rates, GMAC INSURANCE has violated Section 627.736, Florida Statutes.

198.    As a result of GMAC INSURANCE's failure to comply with Section 627.736, Florida Statutes, UOMC and the members of the purported class have suffered damages.

        WHEREFORE, UOMC and the class demand the following relief:

(a)     As to the First Cause of Action, compensatory damages;

(b)     As to the Second Cause of Action, compensatory damages;

(c)     As to the Third Cause of Action, compensatory damages, punitive damages, and injunctive relief;

(d)     As to the Fourth Cause of Action, a declaration that GMAC INSURANCE's insurance practices are improper;



(e)     As to the Fifth Cause of Action, compensatory damages;

(f)     Interest, Attorneys' fees and costs where applicable;

(g)     A trial by jury on all issues so triable; and

(h)     Such other and further relief as the Court may deem just and proper.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

mail on January __6__, 2004, upon: all individuals on the attached service list.

Respectfully submitted,

LEE & AMTZIS, P.L.
Counsel for Plaintiff
ULTRA OPEN MRI CORPORATION
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

By:_____
ERIC LEE
Florida Bar No. 961299

<u>**Counsel for Plaintiff**</u>

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporation
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiff**

Susan L. Lawson, Esq.
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Richard Bokor, Esq.
Richard Bokor, P.A.
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

# MASTER SERVICE LIST
## (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
### (Updated 11/7/03)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.

Suite 401
5550 Glades Road
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.

11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.

Carlin Phillips, Esq.
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.

350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.

230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786 Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.

230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.

Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS, et al.
John M. Quaranta, Esq.
(305) 539-2495
Miami Center, 26th Floor
201 S. Biscayne Boulevard
Miami, Florida 33131-4336
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.

Donald A. Blackwell, Esq.
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

MCGUIRE WOODS, LLP
William W. Deem, Esq.

3300 Bank of America Tower
50 North Laura Street
Jacksonville, FL 32202
(904) 798-3200
(904) 798-3207 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.

Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.

1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.

Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbptampa.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3600 Maclay Blvd., Ste. 101
Tallahassee, FL 32312
(850) 894-4111
(850) 894-4999 Facsimile

SHEA & GARDNER
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq
misenman@sheagardner.com
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
(202) 828-2000
(202) 828-2195 Facsimile

**Counsel for American International**

CONROY,    SIMBERG,    GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile