UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6061-CIV-ZLOCK/SNOW
(Consolidated)

DR. PAUL ZIDEL, on behalf of himself,
and all others similarly situated,

       Plaintiffs,

vs.

ALLSTATE INSURANCE COMPANY,
ET AL.,

       Defendants.

_____/

**OBJECTION TO SETTLEMENT AND
SWORN PETITION FOR ATTORNEY'S FEES**

Plaintiff, by and through his undersigned attorneys, hereby states as follows, that:

I.     INTRODUCTION AND NATURE OF OBJECTION AND PETITION FOR
       ATTORNEYS FEES

      1.     These matters were filed in January of 2000 and consolidated for

purposes of litigation. Petitioner became formally involved as part of the class action

team on or about April of 2000. On that date, separate matters were brought against the

Metropolitan family of insurance companies and Superior Insurance. Lead Counsel for

the consolidated classes recently reported in its Supplemental Joint Status Report served

on February 18, 2004 that several of the consolidated classes have settled. Formal

approval of each settlement is forthcoming.

      2.     To the best of petitioner's knowledge, the Metropolitan case is the

first settlement that this court will review. The nature of this Petition is for attorney's

fees earned by petitioner related to the Metropolitan case and all of the consolidated



cases which are presently settled or awaiting formal settlement as reported in the Supplemental Joint Status Report.

3.      Where Petitioner's efforts at the direction of the class substantially benefited each of the consolidated classes to his detriment, petitioner requests that this court determine that Petitioner is entitled to an equal share of attorney's fees on each of the cases which are settled or which are in the process of continuing settlement discussion as indicated in the Supplemental Joint Status Report served on February 18, 2004. Petitioner's position is that he is also entitled to a percentage of attorney's fees on those cases not settled or in the process of ongoing settlement discussions in the interest of justice.

4.      The proposed settlement states that attorneys fees will be paid to Lead Counsel. Where there is at present no communication with Lead Counsel, Petitioner objects to the settlement in that Petitioner anticipates that Lead Counsel either will not pay Petitioner his share, forcing him to litigate the issue, or Lead Counsel will otherwise use distribution of petitioner's share as an incentive to force him to settle the remainder of his claim for attorneys fees related to the remaining consolidated insurers.

5.      Petitioner requests an order awarding attorney's fees directly from each of the consolidated class insurers who have settled with Lead Counsel where a fee dispute has arisen. In the interest of judicial economy, petitioner requests a single evidentiary hearing to determine his right to attorney's fees on all cases. Petitioner further objects in that, contrary to the wishes of the class representative, petitioner is not listed in the settlement as a member of the Class Counsel team of attorneys.

II.      OVERVIEW OF PETITIONER'S INVOLVEMENT WITH THE
         CONSOLIDATED CLASS LITIGATION

6.      From July of 2000 up to the closing of petitioner's practice in
September of 2002, petitioner's role, at the direction of Lead Counsel, was to obtain
orders of summary judgment against any of the consolidated insurers, finding that the
insurer violated F.S. 627.736 (10).  Lead Counsel directed and supervised petitioner in
obtaining favorable summary judgment orders throughout Florida to benefit the class.
As evidenced by six (6) letters in August and September of 2000 attached as Exhibit
"A", both Carlin Philips and Larry Kopelman corresponded with petitioner as early as
August of 2000, exchanging information regarding Allstate CCN PPO contracts,
exchanging EOBs on Progressive cases and allowing Lead Counsel to proofread both the
petitioner's first summary judgment motion against Progressive served in late 2000 and
the response to Allstate's Motion to Dismiss.  The exchange of information continued
throughout their relationship.  *See*, correspondence referencing meetings and the sharing
of settled cases involving the PPO issue in preparation of class insurer's arbitration
motions attached as Exhibit "B".   Petitioner reported by telephone to Lead Counsel for a
total of over eighteen (18) hours regarding issues germane to the class action.  *See*, time
sheets related to cell and land calls attached as Exhibits "4" and "5".

7.      Once the summary judgment orders were obtained, petitioner was
directed by Lead Counsel to preserve and protect any favorable orders for as long as
possible during the pendency of the class action litigation.

8.      As explained to Petitioner by Lead Counsel, the cases of *United
States v. Mendoza*, 464 US 154 (1983) and *Parklane Hosiery Co., Inc., v. Shore* 439 US
322 (1979) would preclude the consolidated insurers in this action from re-litigating the

issue of their violation of F.S. 627.736 (10). Evidence that Lead Counsel's strategy was to use Orders in the class action for collateral estoppel effect is contained in Plaintiff's Motion for Summary Judgment served by Lead Counsel Larry Kopelman in the individual claim of *Ortho Associates v. Progressive*. There, Lead Counsel makes the *Mendoza* collateral estoppel argument in July of 2001, 3 months after petitioner's formal involvement. *See,* copy of *Ortho Associates v. Progressive* Motion for Summary Judgment attached as Exhibit "C".

         9.      In furtherance of the *Mendoza*/collateral estoppel strategy, Petitioner obtained the only order of summary judgment against Allstate and the only order of summary judgment against Progressive up until October of 2001.[1] Knowing the collateral estoppel effect of the Allstate orders, Allstate offered settlement in September of 2001 in exchange for vacating the favorable orders.

         10.    In a letter dated September 7, 2001 attached and annexed hereto as Exhibit "E", petitioner outlined the Allstate proposal to settle if petitioner would vacate the summary judgment orders. Petitioner proposed an advancement of attorney's fees by Class Counsel so that petitioner could continue to fight on behalf of the entire class. Petitioner outlines his position that the class' interests would be served first and foremost:

> ....I hope that class counsel understands that my proposal regarding advancement of attorney's fees was made only because of my desire to protect the best interest of the Allstate class, as well as the other classes. Litigation of these PPO claims is a significant financial burden for me as a solo practitioner, and I am sure that Allstate is aware that I am under financial pressure. That is why they are making any settlement contingent on vacating the Allstate Orders. If class counsel wishes to consider any options or wishes to speak to me directly, please contact me.

---

[1] The sole exception during this period is the Broward County case of *Ice v. Progressive* which was vacated by the 4th DCA. See, copy of *Ice v. Progressive* attached as Exhibit "D".

Petitioner was given an ultimatum by Class Counsel that if he vacated the Allstate orders, he would be terminated as a member of the class action team. With so much time and effort expended on behalf of the class and where petitioner faced losing a substantial stake in attorney's fees related to the class, petitioner forged on and defended two Motions to Vacate. Drafting and preparation for the Motion to Vacate was done under the strict supervision of Lead Counsel, including Eric Lee. After the Motion to Vacate, petitioner reported what occurred. In the letter, petitioner memorialized Lead Counsel's offer of office space and assistance in preparing an appeal if there was an adverse ruling in the Motion to Vacate:

> ... I am very proud to serve as a member of the class action team. I appreciate your firm's offer of office space in Naples, as well as its offer of assistance in preparing an appeal in this case in the event of an adverse ruling. See, letter of October 3, 2001 attached and annexed hereto as Exhibit "F"

From the letters of September 7, 2001 and October 3, 2001, it appears clear that Lead Counsel was complicit with petitioner on these and all of petitioner's cases for the substantial benefit of the consolidated class. In fact, petitioner's position is that, but for the Allstate orders and other orders that petitioner had obtained during the pendency of their relationship, he would not have been invited to join the class action team. Noteworthy is the fact that Lead Counsel never took issue with petitioner's description of his membership on the "class action team".

11.    Despite severe financial difficulties of petitioner, petitioner did not settle or vacate the orders. Ultimately, under the strict control and direction of Lead Counsel, petitioner successfully defended two motions to vacate the crucial Allstate orders, the only orders of summary judgment in the entire state on the central issue in

this class action, the consolidated insurer's collective violation of F.S. 627.736 (10).

12. In addition to successful defense of the Allstate motions to vacate, a significant amount of time was spent by petitioner in an effort to obtain discovery unavailable in the class action. Mr. Kopelman was allowed to enter a Notice of Appearance in the *St. Lucie/Cassanari v. Progressive* case for purposes of assisting in obtaining discovery not available in the class action as well as supervise the process. *See,* Exhibit "G". Numerous documents show complicity with Lead Counsel regarding obtaining the depositions of key Progressive employees, depositions not available in the class action. *See,* Exhibit "H". Ultimately, Progressive argued in open court that the depositions were to obtain discovery for the class, not the individual claimant. *See,* transcript attached as Exhibit "I".

13. The overwhelming benefit to the class is that petitioner was responsible for 40% of the Orders used in support of Lead Counsel's Motion for Summary Judgment against Progressive in September of 2002. *See,* Lead Counsel's Motion for Summary Judgment at page 10-11, n. 3 attached as Exhibit "J" identifying the following orders: 06/28/01 *Arcadia Chiropractic v. Allstate* 00-0165CC DeSoto County, Florida; 06/27/01 *Arcadia Chiropractic v. Allstate* 00-0168C DeSoto County, Florida;. 02/16/01 *Arcadia Chiropractic v. Allstate* 00-0166CC DeSoto County, Florida; 10/17/01 *Arcadia Chiropractic v. Allstate* 00-0169CC DeSoto County, Florida; 06/28/01 *Arcadia Chiropractic v. Progressive Express* 00-0167CC DeSoto County, Florida; 10/12/01 *Lanzisera v. Progressive Express,* 2001 SC 1636 Manatee County, Florida; 10/12/01 *Lanzisera v. Progressive Express,* 2001 SC 1594 Manatee County, Florida; 10/12/01 *Lanzisera v. Progressive Express,* 2001 SC 1605 Manatee County; 9/04/02,

*Harbers v. Progressive Express*, 2001-11131-CODL Volusia County, Florida.
Petitioner's successful efforts in the 2d DCA and 5th DCA, all of which were supervised
and directed by Lead Counsel, became the foundation of the conflicting DCA authority
on the only two DCA opinions on the subject, *Nationwide v. Jewell*, 862 So. 2d 79 (2nd
DCA 2003) and *Nationwide v. Central Florida Physiatrists, P.A.*, 851 So. 2d 762 (5th
DCA 2003).

14.    The totality of the evidence supports the conclusion that the
overriding purpose of Petitioner's efforts was to substantially benefit the class.
Petitioner's efforts throughout the State benefited the entire consolidated class where his
efforts saved Lead Counsel and the consolidated class substantial time.

15.    No one associated with Lead Counsel was required to travel
outside of their Commonwealth of Massachusetts, State of Illinois, Broward County or
Hillsborough County locale while Petitioner criss-crossed Florida, litigating in Volusia,
Martin, Lee, Manatee and other counties in an effort to test theories, obtain discovery
and create binding authority on behalf of the consolidated class. Petitioner saved Lead
Counsel and the consolidated class significant money. The Consolidated Class and Lead
Counsel was not required to hire, retain or otherwise devote an expert associate's time to
test theories, obtain discovery and create binding authority.

16.    At no time did Petitioner place the interest of his individual
claimants above those of the class. In fact, petitioner's herculean efforts and deference to
the interests of the class with the approval of his clients caused him to lose his practice.
Petitioner was forced to resolve the individual claims at a substantially reduced rate
where his employers after September of 2002 would not allow the substantial time and

travel commitment throughout the State of Florida to continue to litigate the individual claims.

17.    It is anticipated that Lead Counsel will argue that petitioner is entitled only to fees specifically related to the Metropolitan and Superior cases, or in the alternative, that he be entitled only to his share as defined in the Metropolitan and Superior fee agreements. *See,* copies of agreement and modification attached as Exhibit "K". They will argue that Petitioner is not entitled to fees not specifically related to the consolidated class action.

18.    What distinguishes petitioner's claim is that work on the individual claims, as directed by Lead Counsel, set precedent for the consolidated class action, kept pressure on the consolidated insurers throughout the State and was designed to force settlement. Whether the orders were the motivation to settle is irrelevant where Lead Counsel primarily pursued this strategy. Just as an appellate attorney who shares the proceeds of a lower court verdict with trial counsel is entitled to an equitable share of attorney's fees, Petitioner's efforts entitle him to an equitable share of the attorneys fees to be paid by the consolidated insurers, whether Lead Counsel wants to acknowledge Petitioner's efforts or not.

III.    MEMORANDUM OF LAW AND THE JOHNSON FACTORS

19.    When an attorney's fees dispute arises, the trial court has extremely broad discretion to allocate fees. *See Lucero v. Trinidad,* 815 F.2d 1384, 1386 (10th Cir. 1987); *see also, In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation,* 56 F.3d 295, 309 (5th Cir. 1995) (explaining that when reviewing a district court's allocation of fees among multiple counsel, the trial court's latitude is

"extremely broad"); *In re Horizon Healthcare Corporation Securities Litigation*, 3 F.

Supp. 2d 1208, 1211-15 (D.N.M. 1998); 2 Mary Francis Derfner & Arthur D. Wolf, *Court*

*Awarded Attorney Fees*, § 17.02 at 17-7 (1998). As stated in the definitive Conte

treatise:

> To the extent that such a stipulation is not possible in whole or in part, the court must make the allocation. An appropriate formula for the court to allocate an aggregate fee among multiple counsel should give emphasis to the responsibilities properly assumed and the court's observations of each counsel. The value of time expended with appropriate adjustments may provide a rough starting point for assessing the respective roles of counsel, *but it should not be used rigidly* as a precise measure *to the exclusion of other intangible factors*. (emphasis added).

See 1 Alba Conte, *Attorney Fee Awards* § 2.17 at 71-72 (2d ed. 1993)

20.    The district court is vested with broad discretion in determining the

amount and distribution of the fee award. *See, Manual for Complex Litigation Second* §

24.12 at 182-83 (1985); *In Re Agent Orange*, 818 F.2d 226, 237 (2d Cir.), *cert. denied*, 484

U.S. 926 (1987) (discretion exercised by district court in class action); *In Re San Juan*

*DuPont Plaza Hotel Fire Litigation*, 768 F. Supp. 912, 920 (D. P.R. 1991) ("The District Court

has broad equitable powers to supervise the collection of attorney fees and monitor

contingency fee agreements.") (citations omitted).

21.    That an attorney is not designated lead counsel does not preclude

an award of counsel fees if an attorney for a named class representative performs

valuable services for the class. *See, Aamco Automatic Transmissions, Inc. v. Harry M.*

*Tayloe* 82 F.R.D. 405, 418  (E.D. Pa. 1979); *see, also, In Re THC Financial*

*Corporation Litigation*, 86 F.R.D. 721, 740 (D.C. Hawaii 1980).

22.    District courts have the power to establish fee structures to

compensate attorneys for their work on behalf of all plaintiffs involved in consolidated

litigation. *See, In Re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1016 (5th Cir.

1977) (District Court ordered percentage of fee award earned by one group of attorneys to be paid by

another group of attorneys who performed services which benefited attorneys and their clients in other

cases). Those attorneys who accept the benefit of an attorney's work impliedly consent to

pay the attorney. *See Doherty v. Bress*, 104 U.S. App. D.C. 308, 262 F.2d 20 (D.C. Cir. 1958),

*cert. denied*, 359 U.S. 934, 79 S. Ct. 649, 3 L. Ed. 2d 636 (1959), *see, also, In Re Air*

*Crash Disaster at Florida Everglades*, 549 F. 2d at 1020.

        23.     The *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 716 (5th

DCA Cir. 1974) case defines several factors to be considered when reviewing a petition

for attorney's fees. When evaluating a petition for attorney's fees, the *Johnson* factors

apply in the 11th Circuit. *See, Dowdell v. City of Apopka*, 698 F.2d 1181, 1187 at n.8

*quoting Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The

Johnson factors are as follows:

    (1) the time and labor involved;

    (2) the novelty and difficulty of the questions;

    (3) the skill requisite to perform the legal service properly;

    (4) the preclusion of other employment by the attorney due to acceptance of the case;

    (5) the customary fee;

    (6) any prearranged fee--this is helpful but not determinative;

    (7) time limitations imposed by the client or the circumstances;

    (8) the amount involved and the results obtained;

    (9) the experience, reputation, and ability of the attorneys;

    (10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

A.    The Time And Labor Involved/The Skill Requisite To Perform The Legal Service Properly/The Preclusion Of Other Employment By The Attorney Due To Acceptance Of The Case/Time Limitations Imposed By The Circumstances/The Amount Involved And The Results Obtained.

24.    Petitioner in essence devoted his entire professional time from June of 2000 to September of 2002, creating 40% of the authority on the F.S. 627.736 (10) issue.    Petitioner expended approximately 585 hours substantially benefiting the consolidated class in obtaining authority, discovery and communicating with Lead Counsel and the class representative Frank Lanzisera.   See, time summary attached as Exhibit "L" and time sheets attached as Exhibits "K" to "Z" and Exhibits "1" to "5".

25.    The delay in payment caused by Lead Counsel's insistence in protecting the Orders of Summary Judgment as long as possible, see letter to Lead Counsel Eric Lee outlining Lead Counsel directive attached as Exhibit "F", caused Petitioner to lose his practice due to financial difficulties associated with devoting his professional time to the class action.

B.    The Novelty And Difficulty Of The Questions

26.    As it relates to the novelty and difficulty of the questions involved, Petitioner was the first to obtain an Order in the 2nd DCA on a case of first impression related to statutory interpretation of F.S. 627.736 (10). To have success on a case of first impression with no binding authority is the essence of novel and embodiment of difficult.  In each case in which summary judgment was granted, petitioner had to prevail with no actual binding authority as the orders were County Court opinions with precedential value *only in federal court, precisely the reason why so many orders were*

*sought and obtained.*

C.    The Customary Fee/Any Prearranged Fee

27.    As it relates to the hourly rate to be charged, recited in the fee agreement related to the Metropolitan and Superior cases in which the petitioner is a party is the rate of $350.00 an hour.  Considering the novelty and difficulty of the issues involved at the time Petitioner got involved with this case combined with the sacrifices Petitioner ultimately made, $350.00 an hour is reasonable.

D.    The Amount Involved  and The Results Obtained

28.    Petitioner's position is that his work was vital to the settlement results obtained by Lead Counsel.  Petitioner's constant pressure in areas of the state outside of the immediate area of Broward and Hillsborough County caused Lead Counsel for Allstate to get involved in cases in the city of Wauchula, and for PPO counsel for Progressive to become involved and supervise cases in St. Lucie, Volusia and Martin Counties.  Considering the huge undertaking of a solo practitioner litigating throughout Florida to obtain 40% of authority used by Lead Counsel in a lean 585 hours, petitioner's position is that the results obtained were extraordinary.

E.    The Experience, Reputation, And Ability Of The Attorney

29.    Petitioner became recognized as an authority on the F.S. 627.736 (10) issue after orders granting Summary Judgment in the *Arcadia Chiropractic Clinic* cases in February of 2001.  Petitioner throughout 2001 and 2002 gave advice and counsel to attorneys pursuing individual claims.  Ultimately, the advice given by Petitioner to other attorneys was to benefit the class in an effort to avoid negative authority on the PPO issue.  Petitioner has been practicing law since 1987 in New York and 1992 in

Florida. Petitioner practiced primarily in the PIP PPO area from 2000 to September of 2003.

F.    The Undesirability Of The Case

30.    In terms of undesirability of this case, the sheer number of cases in an effort to create binding authority and the distance that petitioner was required to travel in an effort to obtain this authority made petitioner's involvement with the class action highly undesirable. More importantly, petitioner's inability to settle the Allstate cases, combined with the fact that he had no time to work on either matters or obtain other clients, caused him to close and lose his solo practice.

G.    Awards In Similar Cases

31.    Concerning whether the request for attorney's fees in this instance is reasonable as compared to similar cases, petitioner's position is that the amount of time is more than reasonable as compared with other cases. Petitioner estimates that the time spent in efforts to benefit the class of each individual insurer consolidated for purposes of this class action is immeasurable. To suggest that Petitioner's waking hours between the months of June of 2000 and September of 2002 were occupied by how his efforts could benefit the class is not an understatement.

IV.    Time Summary (See, Exhibit "L")

1.    *Time Sheets in Progressive Cases*

a.    Mastellone/Barnett (Broward)        6.6        (*See* Exhibit "M ")

b.    Mastellone/Petkaitis    (Broward)    24.6    (*See* Exhibit "N")

c.    Mastellone/Tripp (Broward)        39.5        (*See* Exhibit "O ")

d.    Steiner/Chong (Broward)        7.2        (*See* Exhibit "P"

|     |     |                                          |       |                     |
|-----|-----|------------------------------------------|-------|---------------------|
|     | e.  | Steiner/Bharath (Broward)                | 4.2   | *(See Exhibit "Q")* |
|     | f.  | Steiner/Loff (Broward)                   | 29.0  | *(See Exhibit "R")* |
|     | g.  | Craft/Watkins (Lee)                      | 43.8  | *(See Exhibit "S")* |
|     | h.  | Lanzisera/Michael (Manatee)              | 7.1   | *(See Exhibit "T")* |
|     | i.  | Lanzisera/Hodo (Manatee)                 | 4.6   | *(See Exhibit "U")* |
|     | j.  | Lanzisera/Anderson    (Manatee)          | 52.2  | *(See Exhibit "V")* |
|     | k.  | Lanzisera/Martin (Manatee)               | 29.3  | *(See Exhibit "W")* |
|     | l.  | Lanzisera/Pierce (Manatee)               | 51.5  | *(See Exhibit "X")* |
|     | m.  | St. Lucie Rehab/ Cassinari (St. Lucie)   | 135.4 | *(See Exhibit "Y")* |
|     | n.  | Harbers/Brucker(Volusia)                 | 22.4  | *(See Exhibit "Z")* |
|     | o.  | Levine/Evans (Volusia)                   | 22.4  | *(See Exhibit "1")* |

2.    *Time Sheets in Allstate Cases*

|     |     |                                        |      |                     |
|-----|-----|----------------------------------------|------|---------------------|
|     | a.  | ACC/Brown, Canfield, Hamrick (DeSoto)  | 71.9 | *(See Exhibit "2")* |

3.    *Miscellaneous Time*                          15.5    *(See Exhibit "3")*

4.    *Cell Calls*                                  15.2    *(See Exhibit "4")*

5.    *Land Calls*                                  3.7     *(See Exhibit "5")*

Total    585.5 hrs

V.    LODESTAR AND ADJUSTMENT OF LODESTAR

      32.    The amount determined, i. e., the figure obtained by multiplying the number of hours spent by each attorney by the reasonable hourly rate of each attorney, is what has come to be known as the "lodestar." *Lindy Bros. Builders, Inc. of*

*Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973)

*(Lindy I)* The court in *Lindy I* emphasized that the lodestar was to be the basis for the

court's fee determination. To consider a multiplier or an adjustment of the lodestar,

whether, and under what circumstances the lodestar figure should be increased or

decreased was addressed by the Third Circuit in *Lindy Bros. Builders, Inc. of*

*Philadelphia v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir. 1975)

(*Lindy II*). The court in *Lindy II* noted:

> ...[u]nder the rubric of 'the contingent nature of success' the district court should
> appraise the professional burden undertaken that is, the probability or likelihood
> of success, viewed at the time of filing suit. The court may increase the amount
> established in the computation of the 'lodestar' as a reasonable fee on the basis of
> a careful evaluation of the following factors:
>
> 1.    Analysis of plaintiff's burden. Subsumed in this category are the following
> considerations: (a) the complexity of the case, legally and factually; (b) the
> probability of defendant's liability, whether it is clear or dubious; whether it has
> been previously suggested by other civil or criminal proceedings; whether it is
> asserted under existing case law or statutory interpretation, or is advanced as a
> novel theory; (c) an evaluation of damages, whether the claims would be difficult
> or easy to prove.
>
> 2.    Risks assumed in developing the case. This category subsumes
> consideration of: (a) the number of hours of labor risked without guarantee or
> remuneration; (b) the amount of out-of-pocket expenses advanced for processing
> motions, taking depositions, etc.; (c) the development of prior expertise in the
> particular type of litigation; recognizing that counsel sometimes develop, without
> compensation, special legal skills which may assist the court in efficient conduct
> of the litigation, or which may aid the court in articulating legal precepts and
> implementing sound public policy.
>
> 3.    The delay in receipt of payment for services rendered."

*Lindy II*, 540 F. 2d at 117.

33.    Analyzing the *Lindy II* factors, an upward adjustment of the

lodestar is warranted. The F.S. 627.736 (10) issue was complex in that it was a case of

first impression in an area of esoteric statutory interpretation. Petitioner devoted his

entire professional time, advanced 2 years of office expenses and waited 4 years with hopes of payment.

VI.    SUMMARY

34.    The work performed by petitioner in this case was done with skill, courage and pride. Petitioner was proud to be involved with such a worthy cause and with the extraordinarily skilled and ethical team of attorneys who comprise Lead Counsel. Petitioner was proud to litigate with excellent defense counsel from Allstate, Progressive and all of the consolidated insurers throughout Florida for over two years. It pains petitioner to be involved in a fee dispute in this matter as it cheapens for petitioner a successful conclusion for all concerned. This should be a time to congratulate each other, both plaintiff and defense, on a job well done on behalf of the consolidated insurers and affected classes. Unfortunately, court intervention is absolutely necessary to prevent a manifest injustice where petitioner sacrificed so much to be compensated at a fraction of what Lead Counsel and other Class Counsel shall receive by settlement from the consolidated insurers in this matter.

35.    Where the totality of the evidence shows that petitioner's efforts at the direction of class counsel substantially benefited each of the consolidated classes to his severe detriment, where the *Johnson* factors are present and where there is evidence to support upward adjustment of the lodestar, this court has the power and discretion to determine that Petitioner is entitled to an equal share of attorney's fees on each of the cases which are settled or which are in the process of continuing settlement discussion as indicated in the Supplemental Joint Status Report served on February 18, 2004. Petitioner's position is that he is also entitled to a percentage of attorney's fees on those

cases not settled or in the process of ongoing settlement discussions in the interest of

justice. Petitioner requests an order awarding an equal share of attorney's fees directly

from each of the consolidated class insurers who have settled with Lead Counsel. In the

interest of judicial economy, petitioner requests a single evidentiary hearing to determine

his right to attorney's fees on all cases.

STATE OF FLORIDA
COUNTY OF BROWARD

Sworn to before me this        day of June, 2004

Casey Fundaro

_____
NOTARY PUBLIC, STATE OF FLORIDA
My Commission Expires:

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been
furnished by U.S. Mail, this *22* day of *June* , 2004 upon all individuals on the
attached service list.

> TRIPP SCOTT, P.A
> Attorneys for Petitioner
> Post Office Box 14245
> Fort Lauderdale, Florida 33302
> Telephone: (954) 525-7500
> Facsimile: (954) 761-8475
>
> By_____
> Edward R. Curtis
> Florida Bar No. 236845

## SERVICE LIST

### DR. PAUL ZIDEL, et al., v. ALLSTATE INSURANCE COMPANY, et al
### Case No. 00-6061-CIV-Zlock/Snow
### (Consolidated)

Eric Lee, Esquire
Lee & Amtzis, P.L.
5550 Glades Road, Suite 401
Boca Raton, Florida 33431

Arthur S. Gold, Esquire
Gold & Coulson
11 S. LaSalle Street, Suite 2500
Chicago, Illinois 60603

Andrew Garcia, Esquire
Carlin Phillips, Esquire
Phillips & Garcia
13 Ventura Drive
North Darthmouth, MA 02747

Larry Kopelman, Esquire
Douglas Blankman, Esquire
Kopelman & Blankman, P.A.
350 E. Las Olas Blvd., Suite 980
Fort Lauderdale, Florida 33301

Susan L. Lawson, Esquire
230 East Davis Blvd., Suite 200
Tampa, Florida 33606

Richard Bokor, Esquire
Richard Bokor, P.A.
230 East Drive Blvd.
Tampa, Florida 33606

David B. Shelton, Esquire
Rumberger, Kirk & Caldwell
Signature Plaza, Suite 200
Post Office Box 1873
Orlando, Florida 32802

Peter J. Valeta, Esquire
Ross & Hardies
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601

John M. Quaranta, Esquire
Tew, Cardenas
Miami Center, 26th Floor
201 S. Biscayne Blvd.
Miami, Florida 33131

Francis A. Anania, Esquire
Anania, Bandklayder
NationsBank Tower, Suite 4300
100 SE 2nd Street
Miami, Florida 33131

Richard Critchlow, Esquire
Robert Landon, Esquire
The Kenny Nachwalter Law Firm
201 S. Biscayne Blvd., Suite 1100
Miami, Florida 33131

Katherine C. Lake, Esquire
Fowler, White
Post Office Box 1438
Tampa, Florida 33601

James C. Haggerty, Esquire
Swartz Campbell Detweiler
1601 Market Street, 34th Floor
Philadelphia, PA 19103

Robert K. Levenson, Esquire
Greg Baldwin, Esquire
Holland & Knight, LLP
701 Brickell Avenue, Suite 3000
Miami, Florida 33131

Mark Shapiro, Esquire
Akerman, Senterfit
SunTrust International Center,
28th Floor
One Southeast Third Avenue
Miami, Florida 33131

Marcy Levine Aldrich, Esquire
Akerman, Senterfit
SunTrust International Center,
28th Floor
One Southeast Third Avenue
Miami, Florida 33131

Jeffrey P. Lennard, Esquire
Sonnenschein, Nath & Rosenthal
8000 Sears Tower
Chicago, IL 60606

Alan J. Nisberg, Esquire
Butler Burnette Pappas
Bayport Plaza
6200 Courtney Campbell
Causeway, Suite 1100
Tampa, Florida 33607

Kathy J. Maus, Esquire
Lauren D. Levy, Esquire
Butler Burnette Pappas
3600 Maclay Blvd., Suite 101
Tallahassee, Florida 32312

John D. Aldock, Esquire
Michael Isenman, Esquire
Shea & Gardner
1800 Massachusetts Avenue,
NW
Washington, DC 20036

Dale L. Friedman, Esquire
Brian P. Knight, Esquire
Conroy, Simberg, Ganon,
Krevans & Abel, P.A.
3440 Hollywood Boulevard, 2nd
Floor
Hollywood, Florida 33021

# EXHIBITS

# NOT

# SCANNED

# PLEASE REFER TO COURT FILE