UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

THE CHIROPRACTIC CENTRE, INC., on
behalf of itself and all others similarly
situated,

     Plaintiffs,

v.

METROPOLITAN CASUALTY
INSURANCE COMPANY,

     Defendants.

_____/

CASE NO. 01-6783

## AMENDED CLASS ACTION COMPLAINT

Plaintiff THE CHIROPRACTIC CENTRE, INC. ("CCI") on behalf of itself and all

others similarly situated, by its undersigned counsel, sues Defendants Metropolitan Property and

Casualty Insurance Company, Metropolitan Casualty Insurance Company, Metropolitan Direct

Property and Casualty Insurance Company, Metropolitan General Insurance Company,

Metropolitan Group Property and Casualty Insurance Company, Economy Fire & Casualty

Company, Economy Preferred Insurance Company, Economy Premier Assurance Company, St.

Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, St. Paul

Guardian Insurance Company, Athena Assurance Company, Discover Property & Casualty Insurance Company, St. Paul Protective Insurance Company f/k/a Northbrook Property & Casualty Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., Victoria Fire & Casualty Insurance Company, and Victoria Select Insurance Company ("METROPOLITAN"), and alleges as follows:

## THE PARTIES

1.      CCI is a corporation incorporated under the laws of the State of Florida with its principal place of business in Bradenton, Florida.

2.      Metropolitan Property and Casualty Insurance Company is an insurance company incorporated under the laws of the State of Rhode Island has its principal place of business located in Rhode Island and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

3.      Metropolitan Casualty Insurance Company is an insurance company incorporated under the laws of the State of Rhode Island has its principal place of business located in Rhode Island and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

4.      Metropolitan General Insurance Company is an insurance company incorporated under the laws of the State of Rhode Island has its principal place of business located in Rhode Island and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

5.      Metropolitan Group Property and Casualty Insurance Company is an insurance company incorporated under the laws of the State of Rhode Island has its principal place of

business located in Rhode Island and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

6.     Economy Fire & Casualty Company is an insurance company incorporated under the laws of the State of Illinois has its principal place of business located in Illinois and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

7.     Economy Preferred Insurance Company is an insurance company incorporated under the laws of the State of Illinois has its principal place of business located in Illinois and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

8.     Economy Premier Assurance Company is an insurance company incorporated under the laws of the State of Illinois has its principal place of business located in Illinois and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

9.     St. Paul Fire and Marine Insurance Company is an insurance company incorporated under the laws of the State of Minnesota has its principal place of business located in Minnesota and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

10.     St. Paul Mercury Insurance Company is an insurance company incorporated under the laws of the State of Minnesota has its principal place of business located in Minnesota and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

11.     St. Paul Guardian Insurance Company is an insurance company incorporated under the laws of the State of Minnesota has its principal place of business located in Minnesota and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

12.     Athena Assurance Company is an insurance company incorporated under the laws of the State of Minnesota has its principal place of business located in Minnesota and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

13.     Discover Property & Casualty Insurance Company is an insurance company incorporated under the laws of the State of Illinois has its principal place of business located in Minnesota and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

14.     St. Paul Protective Insurance Company f/k/a Northbrook Property & Casualty Insurance Company is an insurance company incorporated under the laws of the State of Illinois has its principal place of business located in Minnesota and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

15.     United States Fidelity and Guaranty Company is an insurance company incorporated under the laws of the State of Maryland has its principal place of business located in Minnesota and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

16.     Fidelity and Guaranty Insurance Company is an insurance company incorporated under the laws of the State of Maryland has its principal place of business located in Minnesota

and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

17.    Fidelity and Guaranty Insurance Underwriters, Inc. is an insurance company incorporated under the laws of the State of Wisconsin has its principal place of business located in Minnesota and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

18.    Victoria Fire & Casualty Insurance Company is an insurance company incorporated under the laws of the State of Ohio has its principal place of business located in Ohio and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

19.    Victoria Select Insurance Company is an insurance company incorporated under the laws of the State of Ohio has its principal place of business located in Ohio and it provides automobile insurance throughout the State of Florida, is registered to do business in Florida, and transacts business in the Southern District of Florida.

20.    Non-Party Community Care Network, Inc. a/k/a CCN Managed Care, Inc. ("CCN") is a business entity incorporated under the laws of the State of California with its principal place of business in Nashville, Tennessee. CCN operates a national preferred provider organization, but is not registered to do business in Florida.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq. (the "RICO Act").

22.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 (b) and (c) because

a substantial part of the events or omissions giving rise to the claims occurred in this District. METROPOLITAN is subject to personal jurisdiction in this District, METROPOLITAN issues numerous individuals in this District, and numerous class members are present in this District

## BACKGROUND

23.    METROPOLITAN's standard Florida Automobile Insurance Policy (hereinafter the "Policy") provides personal injury protection benefits to its insureds.  Certain Policies also provide extended personal injury protection benefits and MPC coverage.  All such coverage shall be referred to as ("PIP") coverage.

24.    With respect to payment of accident related medical expenses under PIP, METROPOLITAN's policy of insurance states in pertinent part that METROPOLITAN must pay eighty percent (80%) of all reasonable and necessary accident related medical expenses.

25.    METROPOLITAN's Policy is a typical Florida indemnity insurance policy under which METROPOLITAN is required to indemnify claimants for eighty (80%) percent of the full cost of their reasonable and necessary medical bills up to a defined limit.

26.    Under the Policy, an insured has the absolute right and freedom to choose his or her medical providers.

27.    Within Policy limits, medical providers have the unrestricted right to be reimbursed eighty percent (80%) of their reasonable and necessary accident related medical expenses.

28.    The State of Florida's PIP statute directly addresses a healthcare provider's right to be paid for reasonable charges.  Section 627.736(5), Florida Statutes ("Section 627.736") states:

> Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered ...

29.    Florida statutes permit an automobile insurance company to designate certain medical

providers as preferred providers *if* the automobile insurer establishes a legitimate preferred

provider organization ("PPO") network by satisfying the strict requirements of Section

627.736(10) which provides as follows:

> (10) An insurer may negotiate and enter into contracts with licensed healthcare providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include Healthcare providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policy-holder or applicant, it must also offer a non-preferred provider policy. The insurer shall provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

30.    METROPOLITAN has not offered its insureds preferred policies for PIP automobile

insurance. As such, any medical provider who treated or treats a METROPOLITAN insured

under a METROPOLITAN PIP auto insurance policy is not a "preferred provider." Therefore, in

accordance with the above quoted statute, "the medical benefits provided by the insurer shall be

as required by this section." (emphasis added). The medical benefits "required" are 80% of "all

reasonable and necessary treatment, expenses..."

31.    Companies such as CCN are sometimes referred to as "brokers" or "managed care

companies" in the healthcare industry. CCN contracts with healthcare providers, such as CCI,

for the purpose of uniting healthcare providers with commercial payors to coordinate and arrange

for the delivery of healthcare services to the payors' legitimate subscribers. CCN may also

administer healthcare claims submitted by healthcare providers to insurance companies.

32.    The contracts entered into with healthcare providers by CCN require the healthcare providers to accept fees for services to subscribers at discounted rates from payors. These contracts are typically referred to as Preferred Provider Agreements ("PPA's").

33.    Healthcare providers, by definition, include, but are not limited to, physicians, chiropractors, hospitals, pharmacies, and other healthcare facilities.

34.    Payors benefit by paying healthcare providers at discounted rates.

35.    Healthcare providers benefit by becoming part of the network of healthcare providers that are supposed to be marketed by payors to their subscribers and insureds through the use of directories and marketing tools, thus increasing the healthcare providers' volume of business referrals. Such healthcare providers are recognized as "preferred providers."

36.    The insurance policies sold or provided by the payors to their subscribers are recognized as "preferred provider policies."

37.    The combination of all parties to this endeavor is recognized  as a Preferred Provider Organization.

38.    At all times material herein, CCI entered into a contract under which it agreed to provide services to CCN's PPO Subscribers.  As consideration for this increased volume, CCI agreed to discount its normal fees.  Thereafter, METROPOLITAN began applying CCI's CCN contractual discount to CCI's medical bills for its patients who were injured in automobile accidents and covered by a Florida METROPOLITAN PIP Policy.

39.    Section 627.736(10), provides a means for METROPOLITAN to participate in such a PPO and offer a preferred provider policy for personal injury protection automobile insurance to its insureds after it enters into contracts with healthcare providers.

40.    METROPOLITAN never became a legitimate participant in CCI's PPO and never

complied with the requirements of the Section 627.736(10).

41.    Nevertheless, METROPOLITAN has taken discounts on healthcare providers' bills as if it were a legitimate participant in CCI's PPO and had complied with Section 627.736 by offering a preferred provider policy of personal injury protection automobile insurance to its insureds, none of which was done by METROPOLITAN.

42.    This unlawful practice (called a "Silent PPO") allows METROPOLITAN to enjoy substantial savings and profits by paying out less in benefits which in turn causes CCI and those similarly situated to suffer financial loss, without any consideration from METROPOLITAN for these discounts.

43.    METROPOLITAN and CCN have collectively engaged in the previously described "Silent PPO" scheme to reduce benefits paid on auto injury claims.

44.    The "Silent PPO" scheme has emerged primarily in the context of indemnity plans. Indemnity insurers, such as METROPOLITAN, obtain access to PPO networks of preferred providers and their discounts. METROPOLITAN takes advantage of these discounts.

45.    METROPOLITAN is not, however, entitled to take advantage of these legitimate PPO discounts under the terms and conditions of its Florida automobile insurance policies, the Florida PIP statutes, and the CCN PPA contract with CCI.

46.    METROPOLITAN has not established the statutory prerequisites to be entitled to these PPO discounts.

47.    This Silent PPO scheme contains none of the legitimate steerage mechanisms required by legitimate PPOs.  Legitimate steerage mechanisms include creating financial incentives for steering insureds to preferred providers such as lower premiums or lower co-payments, providing education and marketing information to insureds about preferred providers in the

network, and printing and distributing preferred provider identification cards.

48.    By using the Silent PPO scheme, METROPOLITAN enjoys substantial savings by paying PIP benefits without the attendant expense of establishing a legitimate PPO network.

49.    Legitimate managed care companies and insurers have knowledge of the illegality of such schemes. The American Association of Preferred Providers has denounced such practices and the American Medical Association has issued an "Action Alert Kit" to its members educating them about Silent PPO schemes.

50.    Metropolitan all had knowledge of the illegal nature of this Silent PPO discounting scheme. Silent PPO discounting schemes have been the subject of widespread discussion in the insurance and managed care industries with many major medical associations denouncing the practice.

51.    CCN had direct knowledge of the illegitimate nature of Silent PPOs. CCN drafted the PPA, executed the PPA with CCI and had express knowledge of its provisions.

52.    Under METROPOLITAN's Silent PPO scheme, CCN licensed, leased or otherwise provided its discount database to METROPOLITAN.

53.    Armed with the CCN preferred provider database of discounts, METROPOLITAN systematically processed all Florida medical expense claims through its automated PPO re-pricing product and applied discounts to bills where the medical provider's tax identification number on the bill matched a tax identification number in CCN's database. At no time did CCI have a contract with METROPOLITAN authorizing discounts to be taken on its medical bills.

54.    METROPOLITAN routinely and systematically used CCN's preferred provider discounts to reduce millions of dollars of medical bills. The discounts were routinely and systematically applied despite the fact that a preferred provider policy was not offered by METROPOLITAN

and despite the fact that claimants were not referred steered or directed to preferred providers.

55.    As part of METROPOLITAN's Silent PPO scheme, CCN was paid a percentage of METROPOLITAN's PPO discount savings and/or a per transaction fee for processing claims for METROPOLITAN.

56.    Without complying with the statutory prerequisites for the establishment of an automobile insurance PPO network, METROPOLITAN has systematically discounted medical providers' PIP medical expenses by utilizing PPO discounts.

57.    METROPOLITAN has illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any steerage or other meaningful consideration for such discounts.

### FACTS AS TO PLAINTIFF

58.    At all times material herein, CCI was a party to a PPA with CCN to be a participating healthcare preferred medical provider (hereinafter referred to as a "CCN Preferred Provider").

59.    Pursuant to the PPA Agreement, CCI agreed to become a member of CCN's Network (i.e. employer/employee based group or individual health plan related payors).  CCI's agreement does not allow CCN to allow automobile insurers or PPO discount brokers with automobile insurer clients access to CCI's preferred provider rates.

60.    CCI's agreement does not allow CCN to allow automobile insurers or PPO discount brokers with automobile insurer clients access to CCI's rates.

61.    METROPOLITAN had not offered a PPO endorsement to its automobile insureds. Moreover, METROPOLITAN never offered its Florida automobile insureds premium reductions as an economic incentive to use preferred providers.

62.    CCI's PPA with CCN did not authorize the application of his discounts by automobile

insurers or discount brokers who could not increase CCI's patient volume. Increased patient volume was the consideration for CCI's discounts under the PPA.

63.    Despite these known facts, CCN allowed METROPOLITAN access to all of CCN's preferred provider's confidential and proprietary discount rates knowing that METROPOLITAN was not a proper payor under the PPA and could not increase preferred provider patient volume as promised by CCN.

64.    With CCN's consent, its database of preferred provider discounts was loaded into METROPOLITAN's software and applied to all bills submitted to the METROPOLITAN by CCN preferred providers such as CCI.

65.    In exchange for CCN's anticipated effort to increase its patient volume, CCI agreed with CCN to provide healthcare services to Subscribers of such Payors at a rate lower than CCI would normally accept for the same healthcare services.

66.    METROPOLITAN obtained access to CCN's database that contained the identities of all of CCN's Preferred Providers, as well as the discounted fees that these healthcare providers were willing to accept for medical services.

67.    At no time did METROPOLITAN have a written contract with CCI or other healthcare providers in Florida wherein healthcare providers agreed with METROPOLITAN to discount charges for their medical services to patients injured in automobile accidents who were insured for PIP coverage by METROPOLITAN.

68.    By virtue of METROPOLITAN's access to the discounted rates in the agreements between CCN, CCI, and the class, METROPOLITAN began to systematically apply PPO discounts.

69.    CCN and/or METROPOLITAN  have mailed explanation of reimbursement forms

("EOBs") that indicated the application of a discount based upon the CCN Preferred Provider Agreements.

70.    These EOBs state that METROPOLITAN is entitled to such discounts.

71.    Under this scheme, METROPOLITAN has been reaping huge savings while violating Florida law and providing no consideration whatsoever to healthcare providers, including CCI, for the right to apply such discounts.

72.    Under METROPOLITAN's Silent PPO scheme, it incorporated the CCN preferred provider discounts into its existing cost containment software product - a product specifically designed to "re-price" medical bills based on preferred provider rates for non-managed care lines of insurance such as property and casualty insurance.

73.    At all times material herein, in the course of its medical practice, CCI provided medical care to patients who had been injured in automobile accidents and who were entitled to PIP benefits from METROPOLITAN.

74.    At no time prior to their treatment with CCI did this class of patients receive any marketing materials, including, but not limited to, publications identifying CCI's name, address and available services, from METROPOLITAN.

75.    At no time did METROPOLITAN comply with the requirements of Section 627.736(10).

76.    At no time prior to their treatment with CCI did METROPOLITAN encourage these patients to use CCI's medical services.

77.    After providing medical treatment to these patients, CCI submitted medical bills for reasonable and necessary accident related medical expenses to METROPOLITAN for payment.

78.    Upon receipt of the medical bills submitted by CCI for payment under the PIP portion of the METROPOLITAN, METROPOLITAN discounted CCI's and other class members' bills by

using the CCN PPO discounted rates claiming that METROPOLITAN was entitled to said discount.

79.    CCN was paid a percentage of METROPOLITAN's discount savings on each PIP medical expense claim.

80.    CCI and other class members have received no consideration from METROPOLITAN for the discounts taken.

81.    METROPOLITAN could not provide such consideration because METROPOLITAN failed to offer its insureds a PPO automobile insurance policy compliance with the Florida PIP statute.

82.    METROPOLITAN's illegal activity is demonstrated by Exhibit "1" attached to the original Complaint. Exhibit "1" represents a sample of an EOB received by CCI illustrating the illegal discount.

83.    CCI billed METROPOLITAN $35 and $60 for CPT Codes 97014 and 98942. METROPOLITAN then paid less than the amount billed by CCI.

84.    METROPOLITAN was supposed to pay eighty (80%) percent of the billed amount.

85.    METROPOLITAN paid only 80% of the reduced amount as its full obligation under the insured's automobile insurance policy.

86.    This example resulted in the misappropriation of $29.11 from CCI.

87.    METROPOLITAN routinely and systematically applied the CCN PPO discounted rates to PIP medical expense claims.

88.    At the time METROPOLITAN implemented its PPO discounting scheme, it knew it was violating Florida law.

89.    After taking the illegal discounts on CCI's and the class' bills, as described above,

METROPOLITAN routinely printed out EOBs showing the discounts. It then forwarded the EOBs and reduced payment checks to the healthcare providers in purported full satisfaction of the healthcare providers' medical charges.

90.     It was and is the custom and practice of METROPOLITAN to discount thousands of automobile medical expense claims in this manner in violation of its policies with its insureds and in violation of Florida's PIP statutes.

91.     CCI and those similarly situated have been economically damaged and have suffered monetary losses as a result of the conduct of METROPOLITAN.

## CLASS ACTION ALLEGATIONS

92.     CCI brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated. The class is defined to include:

> all Florida healthcare providers whose bills for medical services rendered to patients covered by METROPOLITAN's automobile insurance policies were discounted by METROPOLITAN based upon a purported CCN Preferred Provider Organization reduction.

93.     There are questions of law and fact that are common to all members of the class, which questions predominate over any question affecting only individual class members.

94.     The principal common issues include the following:

(a)     whether METROPOLITAN violated Section 627.736, Florida Statutes, by paying personal injury protection medical expense claims at discounted Preferred Provider rates;

(b)     whether METROPOLITAN's processing of the PPO discounts is permissible under state law or federal law;

(c)     whether CCI and those similarly situated are entitled to compensatory, statutory, or punitive damages against METROPOLITAN because of its illegal conduct; and

(d)     whether CCI and the class are entitled to an injunction preventing the continued

disclosure and/or use of their discounts by METROPOLITAN and the application of these discounts to automobile personal injury protection medical expense claims.

95.    The class is comprised of all healthcare providers whose medical bills were discounted by METROPOLITAN based on CCN Preferred Provider discounts.

96.    The amounts of the discounts are contained in METROPOLITAN's computer systems and on the EOBs and checks mailed by METROPOLITAN to CCI and the members of the class.

97.    CCI's claims are typical of the claims of all members of the class because the claims are based on the same legal and remedial theories.

98.    CCI will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

99.    CCI is similarly situated with, and has suffered similar injuries as, the members of the class that he seeks to represent.

100.    CCI has retained counsel experienced in class action cases and healthcare litigation.

101.    Neither CCI, nor counsel, have any interest that may cause them to not vigorously pursue this action.

102.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

(a)    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

(b)    concentration of the litigation concerning this matter in this Court is desirable;

(c)    the claims of the representative Plaintiff are typical of the claims of the members of the class;

(d)    a failure of justice will result from the absence of a class action; and

(e)    the class and the difficulties likely to be encountered in the management of this class action are not great.

103.    The class is so numerous as to make it impracticable to join all members of the class as plaintiffs.

104.    METROPOLITAN has discounted thousands of medical bills based on CCN Preferred Provider discounted rates.    Many healthcare providers may not even be aware of METROPOLITAN's sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of pursuing individual litigation.

105.    In contrast, on a class-wide basis, METROPOLITAN has saved millions of dollars by accessing and utilizing the discounted rates of healthcare providers.

**AS AND FOR A FIRST**
**CAUSE OF ACTION**
**(Unjust Enrichment)**

106.    CCI repeats and realleges each and every allegation contained in Paragraphs "1" through "105" above, with the same force and effect as if set forth fully herein.

107.    CCI and the class conferred benefits upon METROPOLITAN by providing healthcare services to individuals insured by METROPOLITAN.

108.    CCI and the class billed METROPOLITAN the reasonable value for these services.

109.    METROPOLITAN improperly paid these bills at reduced rates.

110.    METROPOLITAN has provided no consideration to CCI and the class for the retention of the discounts by METROPOLITAN.

111.    METROPOLITAN has reaped the benefit of substantial monetary savings on PIP claims by wrongfully and illegally applying the CCN PPO discounted rates to Florida PIP medical

expense claims.

112.    METROPOLITAN had knowledge that it reaped said financial benefits to the detriment of CCI and the members of the class by voluntarily accepting and retaining said benefits.

113.    Such savings constitute unjust enrichment for METROPOLITAN and it would be inequitable under the circumstances for METROPOLITAN to retain the benefits received from CCI and the members of the class without paying the full value thereof to CCI and the class members.

**AS AND FOR A SECOND
CAUSE OF ACTION**
**(Third-Party Beneficiary Breach of Contract)**

114.    CCI repeats and realleges each and every allegation contained in Paragraphs "1" through "105" above, with the same force and effect as if set forth fully herein.

115.    METROPOLITAN and its insureds that purchased its Florida PIP automobile insurance policy entered into a contract of insurance.

116.    METROPOLITAN's contract provided that in the event an insured was involved in an automobile accident, METROPOLITAN would pay, on the insured's behalf, eighty (80%) percent of all reasonable and necessary medical expenses incurred.

117.    CCI and the other members of the class provided medical services to METROPOLITAN insureds who were injured in automobile accidents.

118.    CCI and the members of the class are intended third-party beneficiaries of METROPOLITAN's automobile insurance agreements.

119.    CCI and the members of the class were to be paid eighty (80%) percent of all reasonable and necessary medical expenses incurred and billed.

120.    METROPOLITAN breached the agreement by improperly paying medical expenses at

reduced rates.

121.    As a result, CCI and the putative class members have suffered damages directly and proximately caused by METROPOLITAN's breach of its insurance agreements with its insureds.

### AS AND FOR A THIRD
### CAUSE OF ACTION
### (RICO Act Violations)

122.    CCI repeats and realleges each and every allegation contained in Paragraphs "1" through "105" above, with the same force and effect as if set forth fully herein.

123.    METROPOLITAN, acting with CCN formed an association-in-fact enterprise designed to reduce payments made to CCN preferred providers on all Florida PIP medical expense claims submitted to METROPOLITAN. The "association- in- fact" is known as a "Silent PPO."

124.    METROPOLITAN, with the knowing or grossly negligent cooperation of CCN participated, directly and indirectly, in the activities of this enterprise through a pattern of racketeering activity, as more fully set forth below.

125.    The activities of this enterprise affected commerce.

126.    The pattern of racketeering activity consisted of multiple acts of mail and wire fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

127.    The pattern of racketeering activity has been continuous for at least two years, and, on information and belief, will continue into the future.

128.    In furtherance of the pattern of racketeering activity, METROPOLITAN has engaged in a continuous scheme and artifice to defraud CCI, and those similarly situated, of money as follows:

(a)    CCN solicited CCI by mail to join its PPO network. CCN mailed its marketing and preferred provider agreements to potential preferred providers through use of the United States

mails.  CCN entered into a PPA with CCI and class members which did not authorize the disclosure, sale, lease or license of preferred provider discounts to METROPOLITAN;

(b)     CCN entered into a broker agreement (hereinafter referred to as a "Broker Agreement") with METROPOLITAN which allowed for the disclosure and lease and/or license of the CCN preferred provider database to METROPOLITAN;

(c)     METROPOLITAN applied CCN's preferred provider discounts to medical expense claims submitted to METROPOLITAN by CCN preferred providers;

(d)     CCN, which is based in Tennessee, and METROPOLITAN transferred claim information, medical bills, EOBs, compensation information and documentation and other documentation and information necessary to carry out this scheme via the United States mails and/or by wire;

(e)     After computer application of the discounts, METROPOLITAN printed Explanation of Benefit forms ("EOBs") on its form EOBs which indicated the PPO discount and the reduced amount owed after application of the discount;

(f)     By use of the United States mail, CCN and METROPOLITAN thereafter transmitted or caused to be transmitted said EOBs and reduced claim checks to medical providers and persons insured by METROPOLITAN.  A sample of such an EOB is attached hereto as Exhibit "1."

(g)     Said EOBs falsely represented that METROPOLITAN was entitled to apply a CCN PPO discount to the claim;

(h)     Said EOBs falsely claimed the "AMOUNT ALLOWED" to be less than the amount actually owed and also falsely decreased a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount;

(i)     METROPOLITAN and CCN engaged in interstate telephone calls, computer

communications, and/or wire communications and transactions to transmit information that was false and to exchange fees and compensation essential to the scheme.

129.    In the above described manner, METROPOLITAN was able to gain access to managed care contract rates for application to Florida PIP medical expense claims without providing any consideration to CCI or members of the purported class, and without ever entering into a managed care agreement with any medical providers.

130.    This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars has directly caused monetary damages to CCI and members of the class.

131.    METROPOLITAN's and CCN's conduct gives rise to claims under 18 U.S.C. § 1964(a) of RICO and permits the recovery of treble damages against METROPOLITAN for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

132.    CCI and the class members are "persons" within the meaning of 18 U.S.C. § 1964(c).

133.    At all times relevant hereto, CCI and class members were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

134.    With respect to the activities alleged herein, METROPOLITAN and CCN acted at all times with malice toward the class, intent to engage in the conduct complained of for their own benefit and with knowledge that such conduct constituted unlawful activity.  Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which METROPOLITAN and CCN are subject, the same amounting to actionable wantonness.

135.    With respect to the activities alleged herein, METROPOLITAN, CCN aided and abetted each other, and others not named in this Complaint, in committing those activities, within the

meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c).

136.    METROPOLITAN operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

137.    In furtherance of this scheme, METROPOLITAN and CCN interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests, to which METROPOLITAN and CCN are not entitled, through the exploitation of discount rates.

138.    With respect to the overt acts and activities alleged herein, METROPOLITAN communicated and conspired with CCN to violate 18 U.S.C. §§ 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).

139.    METROPOLITAN communicated with CCN so that it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

140.    METROPOLITAN communicated with CCN so that it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which METROPOLITAN and CCN  were not entitled, through the exploitation of a proprietary discount rate.

141.    The numerous predicate acts of mail and wire fraud and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by METROPOLITAN and CCN to defraud CCI and the purported class of money and property interests under false pretenses; to deprive CCI and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor

fiduciary relationship; and to place METROPOLITAN's and CCN's financial interests over the confidential records of CCI and the class so that METROPOLITAN and CCN could make greater profits.

142.    CCI, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

### A.    RACKETEERING ACTIVITIES.

143.    In carrying out the overt acts and fraudulent scheme described above, METROPOLITAN and CCN engaged in *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 961 et seq., as stated below.

144.    Section 1961(1) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

145.    The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§ 1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

### 1.  18 U.S.C. §§ 1341 and 1346, and 18 U.S.C. §§ 1343 and 1346

146.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to

execute its scheme or artifice to deprive another of the intangible right of honest services, METROPOLITAN and CCN, in violation of 18 U.S.C. § 1341 and § 1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.

147.   For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, METROPOLITAN and CCN , in violation of 18 U.S.C. §§ 1343 and 1346, transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts. In this manner, METROPOLITAN, was knowingly violating obligations of CCN to CCI and others similarly situated to provide "honest services."

148.   METROPOLITAN knowingly induced CCN to deprive CCI and others similarly situated of "honest services."

149.   In those matters and things sent or delivered by the United States Postal Service referred to above, METROPOLITAN and CCN falsely and fraudulently represented to CCI and the class that:

(a)    METROPOLITAN's payments were for the amount "billed" for the reasonable value of the services, and

(b)    that METROPOLITAN was entitled to a PPO discount for CCI and the class under a system that legitimately provides education, marketing and economic incentives intended to

"steer" more patients and to provide other benefits to healthcare providers. METROPOLITAN failed, however, to disclose to CCI and the class that its EOBs were based upon illegal discounts designed to maximize profits on discounts illegally obtained through CCI's proprietary information. METROPOLITAN thus failed to disclose material facts regarding METROPOLITAN's internal policies and practices specifically designed to reduce or limit the level of payment discussed in detail above.

150. With respect to its unlawful activities described above, METROPOLITAN also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§ 1341, 1343, and 1346.

151. METROPOLITAN intentionally and knowingly deceived CCI and the purported class referred to above for the purpose of financial gain. METROPOLITAN either knew, or recklessly disregarded, that the illegal discounts described above were material.

152. CCI and the class have been injured in their business or property by METROPOLITAN's overt acts and racketeering activities in amounts to be determined at trial.

### 2. 18 U.S.C. § 1951(b)(2)

153. During the relevant times and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, METROPOLITAN and CCN, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. § 1951.

154. METROPOLITAN unlawfully attempted to and/or did induce CCN to cause CCI and numerous other healthcare providers to part with various property interests to which

METROPOLITAN was and is not entitled, including the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy.

155.    METROPOLITAN's conduct induced CCN to provide it with the names of healthcare providers and their discounts and exploited a fear of economic loss and/or loss of business by CCI and others similarly situated in violation of 18 U.S.C. § 1951(b)(2).

156.    In furtherance of the scheme or artifice to defraud to obtain money by false pretenses from CCI and the class, METROPOLITAN communicated with CCN to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which METROPOLITAN was not entitled through the exploitation of healthcare providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts.

157.    METROPOLITAN either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by CCI and the class.

158.    METROPOLITAN's and CCN's overt acts and fraudulent and extortionate racketeering activities has and continues to defraud CCI and the members of the class, of money, has and continues to unlawfully influence and interfere with the relationship of CCN and CCI and the purported class, as well as interfering with the fiduciary relationship between CCI, and members of the purported class and their patients.

159.    CCI and the purported class have, therefor, been injured in their business or property by METROPOLITAN's overt acts and racketeering activities in amounts to be determined at trial.

### 3. 18 U.S.C. § 1952(a).

160.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud CCI and the purported class, METROPOLITAN and CCN and their respective employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. § 1952(a).

161.    METROPOLITAN's and CCN's overt acts and fraudulent racketeering activity has and continues to defraud CCI and the class of money.

### B.    **PATTERN OF RACKETEERING ACTIVITY**.

162.    METROPOLITAN and CCN have engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years.  Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including CCI and the class.

163.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by METROPOLITAN and CCN, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

### C.    **RICO VIOLATIONS OF 18 U.S.C. §§ 1962 (d)**.

164.    CCI's claim for relief also arises under 18 U.S.C. § 1964 (c) of RICO and seeks to recover actual and treble damages for METROPOLITAN's and CCN's violations of 18 U.S.C.

§§ 1962(c) and for its violations of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

### 1. Section 1962(c) claim.

165.    CCI repeats and realleges each and every allegation contained in Paragraphs "1" through "105" above, with the same force and effect as if set forth fully herein.

166.    18 U.S.C. § 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

167.    18 U.S.C. § 1961(3) of RICO states that a "person" includes any individual or entity capable of holding a legal or beneficial interest in property.

168.    18 U.S.C. § 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

169.    For purposes of this 18 U.S.C. § 1962(c) claim, the persons consist of METROPOLITAN and CCN. The enterprise is an association-in-fact consisting of METROPOLITAN and CCN by virtue of its control over physicians, medical specialists, medical laboratories, hospitals, healthcare clinics, pharmacies, home healthcare agencies, and other miscellaneous healthcare providers, all of which have the purpose of providing healthcare services to METROPOLITAN's insureds making PIP claims under METROPOLITAN's automobile insurance policies.

170.    This 18 U.S.C. § 1962(c) enterprise is distinct from METROPOLITAN and includes many persons who are not employees of METROPOLITAN and many entities that are not owned by METROPOLITAN. The Section 1962(c) enterprise is engaged in, and its activities

28

substantially affect, interstate commerce.

171.    METROPOLITAN is associated with CCN in the 18 U.S.C. § 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described herein. CCI and the purported class members are directly and proximately injured both by this pattern of activity and by METROPOLITAN's conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

### 2.    Section 1962(d) Claim.

172.    CCI repeats and realleges each and every allegation contained in Paragraphs "1" through "105" above, with the same force and effect as if set forth fully herein.

173.    This claim for relief also arises under 18 U.S.C. § 1964(c) of RICO and seeks to recover actual and treble damages for METROPOLITAN's and CCN's violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

174.    18 U.S.C. § 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

175.    18 U.S.C. § 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

176.    For purposes of the claim of a conspiracy in violation of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a), the persons under the latter subsection consist of METROPOLITAN and CCN and the enterprise consists of METROPOLITAN and its investment division, which further profits from the ill-gotten gains.

177.    At all times relevant herein, CCN and METROPOLITAN's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a).

178.    The METROPOLITAN investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud CCI and the purported class of money and to deprive them of their intangible right of honest services from CCN.

179.    METROPOLITAN    sells    insurance    nationwide.    Assets    generated    from METROPOLITAN's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars.

180.    METROPOLITAN derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a).

181.    This use or investment injures CCI and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect healthcare providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described herein.

182.   As demonstrated in detail above, METROPOLITAN has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require CCI and the purported class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud CCI and the class of money, and to unlawfully interfere with their physician-patient relationship.

183.   METROPOLITAN's pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by METROPOLITAN's inducement to CCN to allow METROPOLITAN to defraud CCI and the purported class.

184.   The nature of the above described acts of METROPOLITAN constitutes material misrepresentations that give rise to an inference that METROPOLITAN knew it was violating the objective of 18 U.S.C. § 1962(d) by violating 18 U.S.C. §§ 1962(a) and (c), through its ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

185.   As a direct and proximate result of METROPOLITAN's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. §§ 1962(a) and (c), CCI and the class have been and are continuing to be injured in their business or property.

186.   Pursuant to 18 U.S.C. § 1964(c), CCI is entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

187.   METROPOLITAN has sought to and has engaged in the commission of and continues to commit overt acts and the aforesaid described unlawful racketeering predicate acts that have and

continue to generate income or proceeds received by METROPOLITAN from such pattern of racketeering activity, to-wit:

(a)      multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

(b)      multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

(c)      multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

(d)      multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

(e)      multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and

(f)      multiple instances of violations of 18 U.S.C. § 1954.

188.    METROPOLITAN's violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting METROPOLITAN's illegal acts constituting a pattern of racketeering activity is fashioned and imposed by this Court.

**AS AND FOR A FOURTH**
**CAUSE OF ACTION**
**(Declaratory Judgment)**

189.    CCI repeats and realleges each and every allegation contained in Paragraphs "1" through "105" above, with the same force and effect as if set forth fully herein.

190.    As previously alleged, METROPOLITAN has improperly taken advantage of discounts to which it is not entitled for all the reasons that have been set forth in the previous paragraphs of this Complaint.

191.    METROPOLITAN has taken these discounts in breach of the terms and conditions of their automobile insurance policies.  Said policies are indemnity policies that do not provide for preferred provider benefits or the application of preferred provider rates.

192.    By using CCN's preferred provider rates to limit the payment of CCI's and class

members' PIP medical bills, METROPOLITAN has imposed a limitation on benefits that is not contained in their automobile insurance policies. CCI and the class members are intended third-party beneficiaries of said insurance policies and are entitled to a declaration that METROPOLITAN's payments of their PIP medical bills at preferred provider rates is a breach of the applicable insurance contracts.

## AS AND FOR A FIFTH
## CAUSE OF ACTION

### (Violation of Section 627.736, Florida Statutes)

193.    CCI repeats and realleges each and every allegation contained in Paragraphs "1" through "105" above, with the same force and effect as if set forth fully herein.

194.    At all times material herein, CCI and the members of the class that he seeks to represent presented or had presented on their behalf reasonable and necessary medical charges to METROPOLITAN for treatment of patients entitled to PIP medical expense benefits pursuant to a Florida automobile insurance policy issued by METROPOLITAN.

195.    Pursuant to Section 627.736, Florida Statutes:

(1)    **Required benefits.** Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(d), to a limit of $10,000 of loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:

(a)    Medical benefits. Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through a prayer alone for healing, in accordance with his religious beliefs.

33

. . .

**(4)    Benefits; when due.**

. . .

(g)    It is a violation of the insurance code for an insurer to fail to timely provide benefits as required by this section with such frequency as to constitute a general business practice.

196.    Effective October 1, 1991, as amended, effective October 1, 1992, Section 627.736(10), Florida Statutes provides:

An insurer may negotiate and enter into contracts with licensed healthcare providers for the benefits described in this section referred to in this section as "preferred providers" which shall include healthcare providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a nonpreferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, it must also offer a nonpreferred provider policy. The insurer shall provide each policyholder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

197.    Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section." (Emphasis added).

198.    Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider who is a preferred provider, the insurance may pay medical benefits in excess of the benefits

34

required by this section and may waive or lower the amount of any deductible that applies to such medical benefits." (Emphasis added).

199.    In violation of the foregoing provisions of Section 627.736, METROPOLITAN has implemented a policy and has conducted itself in a manner with such frequency as to constitute a general business practice whereby METROPOLITAN has paid and continues to pay medical benefits at a rate less than the reasonable and necessary rate.

200.    METROPOLITAN, as part of its general business practice, has been paying medical benefits at eighty (80%) percent of preferred provider rates.

201.    At all times material hereto, METROPOLITAN did not offer preferred provider policies.

202.    Since METROPOLITAN did not offer a preferred provider policies, METROPOLITAN was required to pay eighty (80%) percent of all reasonable and necessary medical expenses.

203.    If METROPOLITAN issued and sold preferred provider policies, METROPOLITAN would then be entitled to pay medical benefits in excess of the benefits required and may waive or lower the amounts of any deductible that applies to such medical benefits.

204.    By paying PIP benefits at a preferred provider rate, METROPOLITAN has significantly reduced its payments and obligations under PIP policies throughout the State of Florida.

205.    METROPOLITAN's actions are in direct violation of Section 627.736, Florida Statutes.

206.    METROPOLITAN has wrongfully reduced CCI's and the class members' PIP medical expense claims based on CCN preferred provider discounts.

207.    METROPOLITAN is not entitled to said CCN preferred provider discounts. METROPOLITAN has failed to offer insureds a PPO endorsement and also failed to otherwise comply with the requirements of Section 627.736(10), Florida Statutes.

208.    Despite this failure, METROPOLITAN has reduced and continues to reduce PIP

automobile insurance medical expense claims of CCI and the purported class members by accessing and applying CCN preferred provider discounts.

209.     Accordingly, an outstanding balance remains on all automobile insurance PIP medical expense claims that METROPOLITAN has reduced based on CCN preferred provider discounts.

210.     Pursuant to Section 627.736(4)(b): "Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."

211.     Pursuant to Section 627.736(c): "All overdue payments shall bear interest at the rate of 10 percent per year."

212.     METROPOLITAN has failed to pay the full amount of the reasonable and necessary medical expense billed by CCI and the class members within 30 days after METROPOLITAN was furnished with written notice of the reasonable and necessary amount of the medical expense.

213.     METROPOLITAN has failed to pay interest on the remaining balances owed to CCI and the class members.

214.     By reducing CCI's and the purported class members' legitimate medical expenses by the application of CCN preferred provider discount rates, METROPOLITAN has violated Section 627.736, Florida Statutes.

215.     As a result of METROPOLITAN's failure to comply with Section 627.736, Florida Statutes, CCI and the members of the purported class have suffered damages.

        WHEREFORE, CCI and the class demand the following relief:

(a)      As to the First Cause of Action, compensatory damages;

(b)      As to the Second Cause of Action, compensatory damages;

(c)     As to the Third Cause of Action, compensatory damages, punitive damages, and injunctive relief;

(d)     As to the Fourth Cause of Action, a declaration that METROPOLITAN's insurance practices are improper;

(e)     As to the Fifth Cause of Action, compensatory damages;

(f)     Interest, Attorneys' fees and costs where applicable;

(g)     A trial by jury on all issues so triable; and

(h)     Such other and further relief as the Court may deem just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail on December 13 , 2004, upon: all individuals on the attached service list.

Respectfully submitted,

LEE & AMTZIS, P.L.
Lead Counsel for Plaintiff
THE CHIROPRACTIC CENTRE, INC.
5550 Glades Road, Suite 401
Boca Raton, FL  33431
(561) 981-9988
(561) 981-9980 Facsimile

By: _____
     ERIC LEE
     Florida Bar No. 961299

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporation
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Suite 980
350 E. Las Olas Blvd.
Fort Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiff**

CASEY FUNDARO, ESQ.
1100 5th Avenue S., Suite 201
Naples, FL 34102-6407
(941) 435-7995

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-ZLOCH/SNOW)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
Suite 401
5550 Glades Road
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786 Facsimile
RICHARD BOKOR, P.A.

Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
P.O. Box 7420
Fort Lauderdale, FL 33338-7420
(954) 462-2833
(954) 462-2835 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS LLP
John M. Quaranta, Esq.
(305)536-1112
jmq@tewlaw.com
Four Seasons Tower, 15th Flr.
1441 Brickell Avenue
Miami, FL 33131-3407
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd.
Ste. 1100
Miami, FL 33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH &
ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3600 Maclay Blvd., Ste. 101
Tallahassee, FL 32312
(850) 894-4111
(850) 894-4999 Facsimile

GOODWIN PORCTER
John D. Aldock, Esq.
Jaldock@goodwinprocter.com
Michael Isenman, Esq.
misenman@goodwinprocter.com
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 346-4000
(202) 346-4444 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

**Counsel for Casey Fundaro, Esq.**

TRIPP SCOTT
Edward Royce Curtis, Esq.
erc@trippscott.com
110 S.E. 6th Street
Flr. 15
Ft. Lauderdale, FL 33301