UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of                    01-CIV-6780
itself and all others similarly situated,

Plaintiffs,

v.

INTEGON NATIONAL INSURANCE
COMPANY, INTEGON GENERAL
INSURANCE COMPANY, INTEGON
PREFERRED INSURANCE COMPANY,
INTEGON INDEMNITY CORPORATION,
NATIONAL GENERAL ASSURANCE
COMPANY, NATIONAL GENERAL
INSURANCE COMPANY, MIC GENERAL
INSURANCE CORPORATION and
INTEGON CASUALTY INSURANCE
COMPANY,

Defendants.
_____/

## MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S
## UNOPPOSED APPLICATION FOR AN AWARD OF
## <u>ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES</u>



## PRELIMINARY STATEMENT

Class Counsel in the above-captioned action respectfully submit this memorandum in support of their application for an award of attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this class action which has resulted in a settlement of approximately $2,000,000 in benefits to the Class. The class action Settlement, which is currently before the Court for final approval, involves Ultra Open MRI Corporation and the named Defendants all of which are direct or indirect subsidiaries of GMAC Insurance Holdings, Inc.[1] (collectively "GMAC Insurance") for total class relief of over $2,000,000 (the "Settlement").[2]

As described in detail in the accompanying Declaration of Class Counsel in Support of Final Approval of Class Action Settlement and an Award of Attorney's Fees and Costs ("Class Counsel's Declaration"), Class Counsel have devoted many hours to this case and have incurred out-of-pocket costs and expenses over the five years that this case has been pending in the District Court and the Eleventh Circuit Court of Appeals. Given the extraordinary results achieved, the complexity and amount of work involved, the skill and expertise of Class Counsel and the risks counsel undertook, Class Counsel strongly believe that this case warrants an award of attorneys fees of $500,000, which is equivalent to one-third of the reserved Class Fund – an amount GMAC

---

[1] The subsidiaries include Integon General Insurance Corporation, Integon National Insurance Company, Integon Preferred Insurance Company, Integon Indemnity Corporation, National General Assurance Company, National General Insurance Company, MIC General Insurance Corporation and Integon Casualty Insurance Company.

[2] The specific terms of the Settlement have been set forth in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court and preliminarily approved on August 20, 2004. The settlement provides for a reserved class fund of $1,500,000. GMAC Insurance has also agreed to pay the following monies separate from the reserved class fund: 1) up to $500,000 in attorneys' fees; 2) reasonable litigation costs and expenses; and, 3) the reasonable costs of settlement administration.

has agreed to pay separate and outside of the Class Fund. Class Counsel also request an award of $6,648.00 toward reasonable costs and expenses in prosecuting the action.

In similar cases, courts have not hesitated to award multiples of 3 and higher, even where settlements were reached before counsel had devoted anything close to the time and resources Class Counsel have devoted to this case. See, e.g., Behrens v. Wometco, 118 F.R.D. 534, 537-38 (S.D. Fla. 1998), aff'd, 899 F.2d 21 (11th Cir. 1990) (where the court characterized a multiplier of 3 as "average" for complex class actions); Spark v. MBNAA Corp., 157 F.Supp.2d 330, 345 (D. Del. 2001) ("A multiplier of 3 is a good starting point, as it rewards counsel with a substantial incentive to take on this type of case, an incentive that offsets the risks counsel face of taking on a case where there may be no recovery"); Kurzweil v. Philip Morris Cos., 1999 U.S. Dist. LEXIS 18378, at *7 (S.D.N.Y. 1999) (when cross-checking the common fund approach with lodestar method, court recognized that multiplier of between 3 and 4.5 is common in federal securities cases).

## I.  **BACKGROUND**

The procedural history and relevant facts about the initiation and prosecution of these consolidated cases, and the GMAC Insurance litigation in particular, since their inception almost five years ago is described in detail in Class Counsel's Declaration and in the Memorandum in Support of Proposed Settlement, both of which have been submitted to the Court for consideration. The GMAC Insurance settlement cannot be viewed in a vacuum because it was part of the massive litigation effort Class Counsel put forth in these consolidated cases. As indicated in Class Counsel's Declaration, the plaintiffs in the consolidated actions challenged an industry-wide practice undertaken by automobile insurers throughout the state of Florida. Class

Counsel brought novel allegations based on complex legal theories against fifteen different insurers, some of which are the nation's largest insurance companies. As the docket clearly indicates, the defendants poured legal firepower into the defense of these claims retaining some of the biggest and best defense firms in the country to defend these cases.[3]

Class Counsel efficiently and effectively managed and prosecuted these fifteen RICO class actions over a five year period enabling them to reach settlements with certain insurance company defendants, one of which is GMAC Insurance. As of the filing of this pleading, all of the defendant insurers, including GMAC Insurance, have stopped the practice of taking PPO discounts on automobile insurance medical expense claims in the State of Florida. While certain defendants, including GMAC Insurance, dispute whether these class actions caused the termination of their PPO discounting programs, an industry-wide practice that siphoned millions of dollars from medical providers throughout the State of Florida has been stopped and, through this settlement and others, millions of dollars of settlement benefits have been made available for medical providers to claim.

II.    **CLASS COUNSEL IS ENTITLED TO A FEE BASED ON A PERCENTAGE OF THE CLASS RECOVERY**

The award of counsel fees in this class action is governed by the common fund doctrine.

---

[3] The defendants retained the following firms to defend them: Rumberger, Kirk & Caldwell; Ross & Hardies; Tew Cardenas; Anania Bandklayder; Fowler White; Kenney Nach Symour Arnold Critchlow & Spector; Swartz Campbell Detweiler; Holland & Knight; Akerman Senterfitt; Sonnenschein, Nath & Rosenthal; Butler Burnette Pappas; Shea & Gardner; and, Conroy, Simberg, Ganon, Krevans & Abel.

The Supreme Court has consistently recognized that when a common fund is successfully established for the benefit of Class members, the cost of litigation, and specifically counsel's efforts, should be spread among the common fund's beneficiaries. As the Supreme Court noted in Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980):

> A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.

This was reiterated by the Eleventh Circuit in Camden I Condominium Association, Inc. v. Dunkle, 946 F.2d 768 (11th Cir. 1991) when the court reasoned that attorneys who create a common fund are entitled to be compensated for their efforts from a percentage of that fund. In Camden the Court held

> Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

946 F.2d at 774-75.

Furthermore, in the absence of any evidence of collusion or detriment to the class, a court should give substantial weight to a negotiated fee amount, assuming that it represents the parties' "best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney''s fees." Elkins v. Equitable Life Ins. Co, 1998 U.S. Dist. LEXIS 1557, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998) (quoting Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 720 (5th Cir. 1974), overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)). This weight is particularly appropriate when, as in the present case, no objections have been raised to the fee award and the amount of fees is entirely consistent with a

5

reasonable fee award under the circumstances of the case.  See e.g., Ingram v. Coca-Cola Co.,

200 F.R.D. 685, 695 (N.D. Ga. 2001).

### III.    THE REQUESTED FEES ARE APPROPRIATE GIVEN THE RESULTS ACHIEVED, THE RISKS INVOLVED AND THE EFFORT EXPENDED

#### A.    The Relevant Factors for Assessing Attorney's Fees in Class Actions

The Eleventh Circuit has established a benchmark of awarding attorney's fees of 25% of

the benefit achieved for the Class. Camden, 926 F.2d 775.  The Camden Court stated further:

> The majority of common fund fee awards fall between 20% to 30% of the fund ... [and] an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.

Camden, 946 F.2d at 774-75.  Courts have repeatedly emphasized, however, that the range is

merely a benchmark, not a hard and fast rule.  As a result, the Eleventh Circuit has developed a

number of non-exclusive factors that courts may consider in assessing what fees are reasonable in

a particular class action.

In Camden, the Court enumerated the following factors as ones a court may consider in

determining the percentage of a fund to be applied to each case: (1) the time and labor required;

(2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal

services properly; (4) the preclusion of other employment by the attorney due to acceptance of the

case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations

imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9)

the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases.

The Camden decision went on to state the following additional considerations:

Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration.

946 F.2d at 775. While each of the above factors may be an appropriate consideration, the factors that will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary. Id.

### B. The Relevant Factors For Assessing Attorney's Fees Weigh in Favor of the One-Third Fee Requested By Class Counsel

#### 1. The Results Obtained Support Class Counsel's Fee Request

There is no better indicator of the quality of counsel's representation than the result obtained. Behrens, 118 F. R. D. at 547. In the current action, Class Counsel achieved a monetary settlement of up to 100% of each Class Members' damages with a minimal claims process under which Class Members did not have to submit documentary evidence to establish their claims. To claim benefits, Class Members needed only to complete a simple, straightforward Proof of Claim form providing basic information to the Settlement Administrator; far less proof than they would be required at trial or even in the prosecution of an individual state court PIP case. Moreover, GMAC Insurance has agreed to Class Counsel fees and reasonable costs and litigation expenses separate and outside of the Class Member fund of $1,500,000 that has been reserved by GMAC Insurance to pay claims. In essence, the only monetary damage the Class does not receive in the Settlement is interest on their actual damages. Had this case gone to trial and the Plaintiff prevailed, the Class might not have achieved as good a result as they have under the Settlement.

7

2.    **The Substantial Time and Labor Required to Produce the Settlement and the Length of Time Required to Reach A Resolution of the Case Supports the Fee Request**

As discussed at length in Class Counsel's Declaration, this case was one of fifteen consolidated cases and a substantial amount of the effort expended in the consolidated cases benefitted the Class Members in the GMAC Insurance case. Class Counsel has expended over 8,716 total hours in the prosecution of the consolidated cases for a total loadstar to date of approximately $2,508,569. Class Counsel spent approximately 385 hours on the GMAC Insurance case for a base lodestar of $150,718.78.[4] The total hours expended in the GMAC Insurance case are set forth in the attached Compendium of Affidavits of Class Counsel.

The time expended by Class Counsel in this litigation is also described in detail in Class Counsel's Declaration. In summary, Class Counsel conducted an intensive pre-suit investigation, performed a great deal of research prior to filing and poured a tremendous amount of time and resources into drafting the initial class action complaint which served as the model for the GMAC Insurance filing. After suit was filed, Class Counsel filed a motion for class certification and aggressively pursued discovery. Additionally, Class Counsel opposed GMAC Insurance's numerous motions including the motion to compel arbitration. Class Counsel were able to defeat GMAC Insurance's motion to compel arbitration at which time GMAC Insurance appealed the case to the Eleventh Circuit. While the case was in the Eleventh Circuit, Class Counsel worked

---

[4] Due to the overlap of work and effort inherent in a consolidated case, the hours were calculated based on the individual time spent on GMAC Insurance without allocation of a percentage, such as 1/15, of the general time spent on the prosectution of the consolidate cases. With such an allocation, the lodestar of the GMAC Insurance case would increase substantially.

diligently, with the help of mediator Joseph Unger, to negotiate a settlement and, over a period of several months, was able to finalize a settlement with GMAC Insurance.

### 3. The Economics Involved in Prosecuting the Action, the Contingent Nature of the Representation and the Preclusion of Other Employment

This action was prosecuted by Class Counsel on a contingent fee basis. Class Counsel would be paid only if they achieved a successful result for the Class. Class Counsel have not been paid one penny for their services in the four years the GMAC Insurance case has been pending or in the five years of consolidated litigation. Courts have long recognized, particularly in this Circuit, that the attorneys' contingent fee risk is an important factor in determining the fee award. See Jones v. Central Soya Co., 748 F.2d 586, 591 (11th Cir. 1986). In Behrens, when discussing a securities class action, Judge King noted:

> A contingency fee arrangement often justifies an increase in the award of attorneys fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus methodology' did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing.

18 F. R. D. at 548.

The spectre of potential financial loss in this case loomed large. Class Counsel were confronted with pending state court appeals[5] and a federal appeal, a negative decision in either of which would have gutted the plaintiff's case and wasted years of work by Class Counsel. Moreover, Class Counsel was proceeding in part on a complex civil RICO claim which would be

---

[5] During the course of the litigation, there was a split between two Florida appellate districts, the Second and Fifth Districts, on whether an auto insurer may pay health care providers at reduced PPO contract rates without first offering a preferred provider PIP policy of insurance. See Nationwide Mut. Fire Ins. Co. v. Central Florida Physiatrists, P.A., 851 So.2d 762 (Fla. 5th DCA 2003) (holding that an insurer may not apply a PPO discount without first offering a PPO policy to its insureds under the Florida no-fault statutory scheme); compare, Nationwide Mut. Ins. Co. V. Dennis M. Jewell, D.C., P.A., 862 So.2d 79 (Fla. 2d DCA 2003) (holding that a Florida auto insurer may apply PPO discounts to no-fault PIP claims without first

subject to summary judgment in the trial court and if the Plaintiff succeeded in defeating GMAC

Insurance's appeal to the Eleventh Circuit.

The risks inherent in losing years of work, as well as, the monies spent funding this case

were further compounded by the effective preclusion of other employment by Class Counsel due

to their acceptance of this case and the consolidated cases.  The substantial amount of work at

times on the consolidated cases and this case bordered on overwhelming.  For example, as

discussed in Class Counsel's Declaration, in a two month period the defendants in these

consolidated cases filed 49 separate pleadings with the Court.  For long periods of time during the

pendency of the GMAC Insurance case and the consolidated cases, Class Counsel was required to

work almost exclusively on this litigation to aggressively represent the Class.

### 4.    The Novelty and Difficulty of the Questions Involved and the Skill Requisite to Perform the Legal Services Properly

In assessing the quality of work performed and the risk undertaken by Class Counsel, it is

also necessary to consider the complexity and magnitude of the litigation, as well as the difficulty

of the questions involved.  As discussed throughout this Petition, the GMAC Insurance case

cannot now be totally disassociated from the consolidated litigation simply because it has settled.

A civil RICO class action against an insurance company is complex in itself, but when combined

with fourteen other similar class actions, the complexity and magnitude of the litigation increases

exponentially.  The 800 plus docket entries alone speak volumes to the complexity and magnitude

of the litigation.

Moreover, the Plaintiff's claims were novel both from a factual and legal standpoint.

These cases are the first and only federal court class actions in the country to challenge the "silent

---

offering a PPO policy to its insureds).

10

PPO" discount scheme emerging in the automobile insurance industry. In addition to unique factual allegations, Class Counsel had to select legal theories that allowed the legitimately aggrieved parties, i.e., the Florida medical providers, to maintain standing to prosecute their claims against the automobile insurers.

Counsel's fee should also reflect the degree of experience, competence and effort necessary to achieve the proposed Settlement. Class Counsel are experienced in class action cases and trial work in general and worked together as a cohesive team to prosecute the GMAC Insurance case and the consolidated cases. Courts have recognized the importance of providing incentives to experienced counsel who take complex litigation cases on a contingent fee basis, so that those cases can be prosecuted effectively.

In assessing the quality of representation by Class Counsel, the Court should also consider the quality of the opposition, as well as the standing of Class Counsel. See Ressler v. Jacobson, 149 F.R.D. 651, 654 (M.D. Fla. 1992). As noted above, the law firm defending GMAC Insurance is well known for its defense work in Florida and the litany of law firms representing the other defendants in the consolidated litigation reads like a veritable "who's who" of the corporate civil defense bar.

**5.    The Requested Percentage Is Fair and Reasonable And Is Consistent With Fee Awards in Comparable Cases**

A decade ago, in Camden, the Eleventh Circuit recognized that a benchmark of 20%-30% of the relief obtained for the class is an appropriate starting point and decisions in this Circuit and others reveal a small upward departure from that benchmark is oftentimes appropriate in particular cases. See Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1294-95 (11th Cir. 1999). For the reasons set forth here, and in Class Counsel's Declaration, Class Counsel

11

respectfully submit that their performance in this litigation, and the superior results efficiently achieved, warrant more than a simple "benchmark" level of compensation. Given the work involved and the result achieved, Class Counsel believe that it is fair, reasonable and eminently appropriate for the Court to award counsel the one-third fee requested.

The requested one-third fee is consistent with fees awarded in other class action cases in this Circuit. See e.g., Waters, 190 F.3d at 1298 (finding no abuse of discretion in approving a 1/3 class counsel fee award of $13.33 million in case involving class fund of $40 million in scheme to defraud customers); Bakalor v. Integrated Communication Network Inc., 96-2021-Civ-King (S.D. Fla. 1997) (awarding 33.3%); Lopez v. Checkers Drive-In Restaurants, Inc., 1996 U.S. Dist. LEXIS 22668, *8 (M.D. Fla. 1996) (awarding 30%); Minnick v. Pages, Inc., 95-277-Civ-T-21C (M.D. Fla. 1996) (awarding 30%); Kaser v. Swann, 90-607-CivORL-3 A 18 (M. D. Fla. 1993) (awarding 30%; In re: Perfumania, Inc. Sec. Litig., 92-1490-Civ-Marcus (S.D. Fla. 1993) (awarding 30%); and Ressler v. Jacobson, 149 F.R.D. 651, 653 (M.D. Fla. 1992) (awarding 30% after extensive analysis of the Camden factors).

The fee is also consistent with awards in other jurisdictions in class action cases. See e.g., In re IKON Office Solutions, Inc., 194 F.R.D. 166, 192 (E.D. Pa. 2000)(awarding attorneys' fees of 33% on $111 million partial settlement, where plaintiffs later failed in claim against accountant); Kurzweil v. Philip Morris Cos., 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. 999)(awarding attorneys' fees of 30% on settlement fund of over $123 million); In re Combustion, Inc., 968 F. Supp. 1116 (W.D. La. 1997) (awarding attorneys' fees of 36% on settlement fund of over $127 million); City of New York v. Darlin-Delaware, 440 F.Supp. 1132 (S.D.N.Y. 1977) (awarding fee of 29.9%).

12

Moreover, the fee requested in this case represents a 3.3 multiplier on Class Counsel's lodestar. In relation to other class action settlements, a 3.3 multiplier is reasonable given the novelty of the subject matter, the ultimate benefits conferred on the class and the difficulty faced by Class Counsel in prosecuting the action. See e.g., Behrens v. Wometco Enter, Inc., 118 F. R.D. 534, 539 (S.D. Fla. 1998) affd, 899 F. 2d 21 (11th Cir. 1990); see also In re RJR Nabisco, Inc., Sec. Litig., [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,984 at 94,267 (S.D.N.Y. 1992) (using a lodestar multiplier of 6); Cosgrove v. Sullivan, 759 F. Supp. 166, 169 (S.D.N.Y. 1991) (applying a lodestar multiplier of 8.74).

### 6. The Requested Fees Are Consistent With Contingent Fee Arrangements Negotiated In Non-Class Litigation

The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. See also, Kirchoff v. Flynn, 786 F.2d 320, 324 (7th Cir. 1986)("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'"). In non-class litigation, 33 1/3% to 40% contingency fees are typical. As Justices Brennan and Marshall observed in their concurring opinion in Blum v. Stenson, 465 U.S. 886 (1984): "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." 465 U.S. at 904 n. 19; see also In re Prudential Bache Energy Income Partnerships Sec. Litig., 1994 U.S. Dist. LEXIS 662 1, at * 1 (E. D. La. 1994)("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); Phemister v. Harcourt Brace Jovanovich, Inc., 1984-2 Trade Cas. (CCH) ¶ 66,234, at 66,995 (N.D. 111. 1984) ("The

percentages agreed on [in non-class action damage lawsuits] vary, with one-third (1/3) being particularly common").

Class Counsel's efforts were performed, and the result was achieved, on a wholly contingent basis, despite the significant risks, time spent and expenses incurred. Therefore, their fee request of one-third is in keeping with the standard contingent fee agreement in non-class litigation.

In summary, based on the application of the relevant <u>Camden</u> factors to the circumstances of this case – and the fact that GMAC Insurance has agreed to pay Class Counsel's fee separate and distinct from the reserved Class Fund – Class Counsel's fee request is fair and reasonable and should be a approved.

**C.      <u>Reimbursement of Costs</u>.**

Class Counsel also seek reimbursement of $6,648.00 in expenses and costs incurred in prosecuting this action. The Declaration of Class Counsel, and Counsels' Compendium of Declarations, which are submitted herewith, describe the expenses and costs incurred for which reimbursement is sought. Plaintiffs respectfully request that the listed expenses and costs be awarded because they were necessary and appropriate in prosecuting this action.


**<u>CONCLUSION</u>**

For all of the foregoing reasons, and for the reasons set forth in Class Counsel's Declaration, the Court should grant Class Counsel's application for an award of attorneys' fees in the amount of $500,000 and reimbursement of expenses in the amount of $5,000.

Respectfully submitted,
Co-Lead Counsel for the Plaintiff:
**LEE & AMTZIS, P.L.**
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: (561) 981-9988
Facsimile: (561) 981-9980


By: _____
    ERIC LEE, Florida Bar No. 961299


Co-Lead Counsel for the Plaintiff:
**KOPELMAN & BLANKMAN, P.A.**
350 East Las Olas Blvd., Suite 980
Fort Lauderdale, FL 33301
Telephone: (954) 462-6855
Facsimile: (954) 462-6899

Co-Lead Counsel for the Plaintiff:
**GOLD & COULSON**
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
Telephone: (312) 372-0777
Facsimile: (312) 372-0778

Co-Lead Counsel for the Plaintiff:
**PHILLIPS & GARCIA, LLP**
13 Ventura Drive
N. Dartmouth, MA 02740
Telephone: (508) 998-0800
Facsimile: (508) 998-0919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 4th day

of January, 2005 to all persons on the attached service list.


_____
Douglas A. Blankman

15

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
#### (Updated 1/3/05)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
Suite 401
5550 Glades Road
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Lawrence Kopelman, Esq.
Douglas Blankman, Esq.
lmk@kopelblank.com
dab@kopelblank.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
richard@bokorlaw.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
5400 S. University Drive, Ste. 102
Davie, FL 33328
(954) 252-6666
(954) 252-0901 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK &
CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Post Office Box 1873
Orlando, Florida  32802-1873
(407) 872-7300
(407) 841-2133 (Facsimile)

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and AD**

TEW, CARDENAS LLP
John M. Quaranta, Esq.
(305)536-1112
jmq@tewlaw.com
Four Seasons Tower,15Floor
1441 Brickell Avenue
Miami, Florida 33131-3407
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

KENNY NACHWALTER, et al
Richard H. Critchlow, Esq.
Robert Landon, III, Esq.
Rlandon@knsacs.com
201 South Biscayne Blvd., #1100
Miami, Florida 33131
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

**Counsel for Nationwide**

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER PAPPAS WEIHMULLER
KATZ CRAIG
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3600 Maclay Boulevard, Suite 101
Tallahassee, FL 32312
(850) 894-4111
(850) 894-4999 Facsimile

GOODWIN PROCTER LLP
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
901 New York Avenue, Ste. 700
Washington, D.C. 20001
(202) 346-4000
(202) 346-4444 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GAN
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

Plaintiffs,
v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of                    01-CIV-6780
itself and all others similarly situated,

Plaintiffs,
v.

INTEGON NATIONAL INSURANCE
COMPANY, INTEGON GENERAL
INSURANCE COMPANY, INTEGON
PREFERRED INSURANCE COMPANY,
INTEGON INDEMNITY CORPORATION,
NATIONAL GENERAL ASSURANCE
COMPANY, NATIONAL GENERAL
INSURANCE COMPANY, MIC GENERAL
INSURANCE CORPORATION and
INTEGON CASUALTY INSURANCE
COMPANY,

Defendants.
_____/

## DECLARATION OF CLASS COUNSEL IN SUPPORT
## OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN
## AWARD OF ATTORNEY'S FEES AND COSTS

1.    My name is Arthur S. Gold and I am a partner in the law firm of Gold & Coulson, P.A of Chicago, IL.  I am one of the lead Class Counsel in the fifteen consolidated class action cases (Zidel v. Allstate Insurance Company, et al, Consolidated C.A. No. 00-6061) pending in this Court, one of which is the class action Ultra Open MRI Corp. v. Integon National Insurance Company, et al, C.A. No. 01-6780 (hereinafter "GMAC").  I am submitting this declaration in support of final approval of the GMAC class action settlement and plaintiff's Memorandum in Support of Class Counsel's Application for An Award of Attorney's Fees and Reimbursement of Expenses.

2.    I have been plaintiff's counsel in the GMAC case and all the consolidated cases since the first class action case was filed against Allstate Insurance Company approximately five years ago on January 12, 2000.  Although the GMAC case is before the Court for final approval of the class settlement, the historical background of the litigation in the consolidated cases is necessary to understand the tremendous effort of Class Counsel in prosecuting and managing the consolidated litigation which contributed substantially to the settlement of the GMAC case.

**Pre-Suit Investigation**

3.    Prior to filing any of the consolidated cases, Class Counsel conducted an intensive and thorough investigation of what they believed to be an industry-wide practice of Florida automobile insurers reducing medical expense claims based on managed care preferred provider organization ("PPO") discounts.  A practice Class Counsel has characterized throughout this litigation as a "silent PPO."

4.    The investigation had three facets: 1) obtaining and reviewing any state and national

2

decisions on the PPO issue; 2) obtaining discovery documentation and deposition and hearing testimony from Florida state cases, some of which Florida Class Counsel, Kopelman & Blankman and Eric Lee, Esq. were directly involved; and 3) acquiring documentation such as PPO contracts and explanation of benefit forms from as many sources as possible throughout the state of Florida.

5.    Also, prior to the filing of these consolidated cases, Class Counsel Eric Lee, Esq. and Larry Kopleman, Esq., had filed a state court class action seeking reimbursement for insureds whose medical providers balanced billed them after the insurer's application of PPO discounts to their medical expense claims. Information from the state court class action also served as part of the wealth of information reviewed by Class Counsel prior to filing the consolidated cases. Finally, documents and deposition transcripts from similar class actions in Massachusetts state court were accumulated and reviewed as the Massachusetts cases involved some of the same PPOs, PPO contracts and claim re-pricing companies working with the automobile insurers in Florida.

6.    Also as part of our investigation, Class Counsel met with their clients and their clients' billing personnel to gain information "on the ground" about how the PPOs, insurers and claims facilitators, such as ADP, were processing medical expense claims on a day-to-day basis.

7.    The majority of the documents obtained in Class Counsel's investigation, as well as documents gained after the litigation was filed, were organized into an electronic document depository which Class Counsel could access online from their offices for the purposes of prosecuting the litigation.

3

8.      Class Counsel's research at the time revealed that no similar federal or state class actions

challenging a "silent PPO" discounting scheme on automobile medical expense claims had

been filed anywhere in the country with the exception of two cases brought in

Massachusetts by Class Counsel team member Phillips & Garcia, LLP.  The filing of the

Florida federal court class actions based on the emerging "silent PPO" discounting

practice in the automobile industry was both novel in theory and scope.

9.      After this extensive pre-suit investigation of what amounted to the PPO discounting

practices of the entire Florida automobile insurance industry, Class Counsel spent an

enormous amount of time researching viable state and federal court causes of action

before filing the first case.  After completing their research and cognizant of the inherent

difficulties of a federal court civil RICO case, Class Counsel spent a great deal of time on

the drafting and re-drafting of the model class action complaint which was used as the

backbone for all of the complaints filed in these consolidated cases.  This time and effort

proved valuable as the plaintiffs' RICO claims survived the defendants' motions to

dismiss.

**The Allstate Filing and the Consolidated Litigation**

10.     On January 12, 2000, Class Counsel filed the first class action case against Allstate.  From

the start, the case was aggressively defended with defendants Allstate and Medview

Services, Inc. moving to dismiss.

11.     After the Allstate filing, Class Counsel filed the following cases:

a.      Brickell, et al v. Progressive Express Ins. Co., et al, C.A. No. 00-6649 (filed 5/12/00);

b.      Browner v. Allstate Indemnity Company, et al, C.A. No. 00-7163 (filed 8/16/00);

4

    c.        LaRusso, et al v. Liberty Mutual Ins. Co., C.A. No. 00-7692 (filed 11/15/00);

    d.        Larusso, et al v. Nationwide Ins. Co., C.A. No. 01-8108 (filed 2/7/01);

    e.        Larusso, et al v. Florida Farm Bureau Casualty Ins. Co., C.A. No. 01-8110 (filed 2/7/01);

    f.        Larusso ITT Hartford Life & Annuity Ins. Co., C.A. No. 01-8111 (filed 2/7/01);

    g.        Ultra Open MRI Corp., et al v. Progressive American Ins. Co., C.A. No. 01-6776 (filed 5/8/01);

    h.        Ultra Open MRI Corp., et al v. Deerbrook Ins. Co., C.A. No. .01-6777 (filed 5/8/01);

    i.        Ultra Open MRI Corp., et al v. Prudential Property & Casualty Ins. Co., C.A. No. 01-6778 (filed 5/8/01);

    j.        Ultra Open Mri Corporation, et al v. Fidelity & Casualty Co. of New York, et al, C.A. No. 01-6779 (filed 5/8/01);

    k.        Ultra Open MRI Corp. v. Integon National Ins. Co., et al, C.A. No. 01-6780 (filed 5/8/01);

    l.        The Chiropractic Centre, Inc., et al v. Superior Ins. Co., C.A. No. 01-6782 (filed 5/8/01);

    m.        The Chiropractic Centre, Inc., et al v. Metropolitan Ins. Co., C.A. No. 01-6783 (filed 5/8/01);

    n.        Mote Wellness & Rehab., Inc., et al v. American International Ins. Co., et al, C.A. No. 01-8549 (filed 6/14/01).

10.    The cases were consolidated by Judge Ferguson. Each filed case was aggressively defended. As evidenced by the individual and consolidated case dockets, prior to the ultimate appeal of the cases, the defendants filed scores of different motions to dismiss and/or to compel

arbitration.

11.    Class Counsel opposed all of the defendants' motions to dismiss and to compel arbitration and, with the exception of the dismissal of their Lanham Act counts, the plaintiffs prevailed on each and every motion. In the two circumstances where Magistrate Judge Snow partially ruled against the plaintiffs on the issue of arbitration presented in the GMAC and Prudential cases, Class Counsel challenged the Magistrate Judge's recommendation and was able to convince the District Court not to adopt the recommendation. All motions to dismiss and compel were successfully defeated. It almost goes without saying that it took Class Counsel a tremendous amount of time and effort to defeat the defendants' initial attempts to dismiss these consolidated cases.

12.    While opposing the defendants' attempts to dismiss the cases, Class Counsel also went on the offensive by propounding discovery to the defendants and subpoenaing non-party witnesses. Class Counsel served separate requests for production, interrogatories and admissions on all the defendants. Class Counsel also noticed over 40 depositions of various witnesses and sent document and deposition subpoenas to many non-party witnesses.

13.    The vast majority of the Class Counsel's discovery requests were opposed by the defendants. The defendants either objected to the discovery in its entirety or filed motions for protective orders seeking to limit or stop Class Counsel from taking discovery. Class Counsel opposed the defendants' motions and in some circumstances filed motions to compel and for sanctions due to the defendants' failures to respond to discovery. Despite these efforts, the defendants were for the most part successful in preventing Class Counsel

from conducting discovery as the District Court eventually stayed the cases.

14.    After not being able to obtain discovery from the defendants through the normal discovery process, Class Counsel entered into settlement discussions with defendants, ADP Medical Solutions, Inc ("ADP") and Beech Street Corporation ("Beech Street"), in an effort to discover information about the defendants' polices and practices. In the majority of the consolidated cases, Beech Street was the PPO whose discounts were applied to automobile insurance medical expense claims by ADP. ADP's business was to analyze and re-price claims for property and casualty insurers with its software programs.

15.    Class Counsel were able to negotiate a settlement with ADP and Beech Street whereby they would produce any and all documents pertaining to the PPO discounting policies and practices of the relevant defendant insurers. Accordingly, ADP and Beech Street produced numerous boxes of documents to Class Counsel.

16.    As part of the settlement, Class Counsel also propounded specific data requests to ADP whereby ADP produced data on CD ROM which listed class members by name, address, tax identification number and also included specific claim by claim information per insurer by year. Finally, pursuant to the settlement, ADP and Beech Street agreed to a continuing obligation to provide additional documents and information as the litigation proceeds.

17.    Based on Class Counsel's experience, it would have taken years to obtain the same discovery in the formal litigation process. Moreover, the documents and information obtained from ADP and Beech Street are confidential and therefore have not been disclosed to the defendants with the limited exception of data shared in settlement negotiations with the insurers.

7

18.    In addition to Class Counsel's efforts to obtain discovery from the vendor defendants, plaintiffs also briefed and filed motions for class certification in all of the cases and were ready to argue same had the Court set them for hearing.

19.    As an example of the intense nature of the litigation, after the District Court issued its Omnibus Order on September 28, 2001, in the two month period from October 3, 2001 through December 7, 2001, the defendants filed 49 motions, notices, requests and submissions seeking all manner of stays, modifications, reaffirmations, clarifications, vacations, re-considerations and dismissals, all of which Class Counsel had to respond to in one form or another.

20.    As of October 30, 2002, the time at which the District Court appears to have issued its last order prior to appeal, the consolidated docket had been consumed with some 886 entries over a two and a half year period.

21.    After losing their motions to compel arbitration in the trial court, the majority of the defendants, with the exception of the Progressive defendants, appealed Judge Ferguson's decision to the Eleventh Circuit where the appeals are currently pending.

22.    All of the defendant insurers in these consolidated cases have stopped taking discounts on automobile medical expense claims.

**The GMAC Case**

23.    The GMAC class action was filed on May 8, 2001, over one year after the initial filing of the Allstate case. The case was transferred and reassigned to Judge Ferguson.

24.    After filing, Class Counsel aggressively pursued the GMAC case. On May 21, 2001, the plaintiff filed a motion for class certification. Class Counsel also served requests for

8

production, admissions and interrogatories on GMAC and noticed depositions of GMAC personnel.

25.    GMAC aggressively defended the case from the beginning. On October 22, 2001, GMAC moved to compel arbitration and to stay the case, which Class Counsel opposed. On November 13, 2001, GMAC moved for a protective order on Class Counsel's discovery. Class Counsel opposed GMAC's attempts at obtaining a protective order and filed a motion to compel GMAC to attend depositions that had been scheduled by the plaintiff. GMAC opposed the Class Counsel's motion and also filed an opposition to the plaintiff's amended motion for class certification.

26.    After the Magistrate Judge recommended that the motion to compel arbitration be denied, GMAC filed its objections with Judge Ferguson. Judge Ferguson adopted the Magistrate Judge's recommendation and GMAC eventually filed its appeal with the Eleventh Circuit.

27.    After the appeal was filed, Class Counsel and GMAC agreed to participate in the Eleventh Circuit's mediation program. On April 15, 2003, Class Counsel, defense counsel and representatives from GMAC appeared in person for an all day mediation with Eleventh Circuit mediator, Joseph Unger, Esq.. With the help of Mr. Unger, the parties made considerable progress in the first mediation session.

28.    Thereafter, Class Counsel and defense counsel continued negotiations in person and over the telephone for over six months. There were times in the negotiation process where Class Counsel questioned whether the parties would be able to settle the case. Through hard work and perseverance, the parties were able to resolve their differences and enter into a detailed settlement agreement. Settlement discussions were always conducted at

arms-length, were very contentious at times and there was no collusion between counsel for the parties.

29.     During the pendency of these cases there have been two parallel state cases on the PPO discounting issue pending before the Fifth and Second Florida district courts of appeal. At the time the GMAC case was settled in principle, the Fifth District Court of Appeals had already issued its decision declaring that the insurer's PPO discounting practices violated the Florida statute. However, the Second District Court of Appeals had not yet rendered its decision.

30.     Accordingly, Class Counsel were able to negotiate benefits for the Class where claims would be paid at 100% of the PPO discounted amount and were also able to negotiate the payment of attorney's fees and costs and the costs of settlement administration outside and separate from the Class Fund of $1,500,000. Moreover, the settlement provided for direct mail notice to Class Members with a minimal proof of claim process where Class Members would not be required to submit any documentation besides the basic information requested on the claim form.

31.     Pursuant to the Settlement, Class Counsel communicated with defense counsel about the claims process and received and reviewed periodic reports from the independent Settlement Administrator and defense counsel regarding settlement administration.

32.     Class Counsel have not yet received a fee for prosecuting the GMAC case or the consolidated class action cases. Class Counsel have spent approximately 8,789 hours on the consolidated cases for a total lodestar of over $2,525,027. With respect to the GMAC case, Class Counsel have spent approximately 508.32 hours prosecuting the case for a

10

total lodestar of $150,718.78.

33.    Based on Class Counsel's experience, negotiating a class action settlement where class

members can receive approximately 100% of their actual damages without an evidentiary

proof of claim process is a tremendous benefit to the class, especially given the risks

associated with the age of the claims, the state and Eleventh Circuit appeals and the

difficulties in certifying and trying a complex RICO case.  At all times Class Counsel

maintained and advocated for the interests of the Class, and as a result, negotiated a

settlement that far exceeds the standard class benefits in typical class action cases.


Sworn to under the pains and penalties of perjury this ___4TH___ day of January 2005.


Arthur S. Gold, Esq.
Gold & Coulson
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 (fax)

11

# EXHIBIT "B"
# Compendium of Affidavits

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

Plaintiffs,
v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of                    01-6780
itself and all others similarly situated,

Plaintiffs,
v.

INTEGON NATIONAL INSURANCE
COMPANY, INTEGON GENERAL
INSURANCE COMPANY, INTEGON
PREFERRED INSURANCE COMPANY,
INTEGON INDEMNITY CORPORATION,
NATIONAL GENERAL ASSURANCE
COMPANY, NATIONAL GENERAL
INSURANCE COMPANY, MIC GENERAL
INSURANCE CORPORATION and
INTEGON CASUALTY INSURANCE
COMPANY,

Defendants.
_____/

**AFFIDAVIT OF ERIC LEE, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES AND
REIMBURSEMENT OF EXPENSES**

NOW COMES Eric Lee and after being duly sworn does under oath depose and state as follows:

1.      I am an attorney duly licensed in the State of Florida and am certified to practice in both federal and state courts.  I am a partner in the law firm of Lee & Amtzis, P.L., 5550 Glades Road, Suite 401, Boca Raton, FL 33431.  Prior to working at Lee & Amtzis, I was a partner at Atlas Pearlman, formerly of Ft. Lauderdale.  I have acted as Co-Lead Class Counsel in the present litigation while at my firm and Atlas Pearlman and have personal knowledge of the facts and circumstances contained herein.

2.      I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases.  I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Atlas Pearlman**

3.      While I was employed at Atlas Pearlman the firm expended approximately 3,313.20 hours in the prosecution of the consolidated litigation for a total lodestar of $815,197.71.  As for the GMAC case, Atlas Pearlman spent 7.3 hours on the case for a total lodestar of $2,606.35.  This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefited the Class in this case. If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.      Atlas Pearlman's hourly rates during the pendency of this case were between $350 and $175 an hour for attorneys and are reasonable based on hourly rates charged in similar litigation in this community.  The amount of hours expended is also reasonable given the

complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

**Time and Effort Expended by Lee & Amtzis**

5. Lee & Amtzis has expended approximately 860 hours in the prosecution of the consolidated litigation for a total lodestar of approximately $294,850.50. Based on my billing practices, time for GMAC was aggregated into the consolidated PPO billing file. The lodestar figure for the GMAC case would be further enhanced by the attribution of a percentage of the consolidated time Lee & Amtzis' has worked on these consolidated cases.

6. Lee & Amtzis's hourly rates during the pendency of this case were between $350 for partners and $195 for associates and are reasonable based on hourly rates charged in similar litigation in this community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

7. To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case. Accordingly, the prosecution of the GMAC case and the consolidated litigation in general has affected my firm's ability to prosecute other cases. As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Atlas Pearlman**

8.    In the prosecution of this action, Atlas Pearlman incurred approximately $3,148.92 in reasonable and necessary expenses. Expenses, which were attributable to the consolidated litigation, were divided by 1/15 and only 1/15 of those expenses were added to this case.

**Expenses of Lee & Amtzis**

9.    In the prosecution of this action, my firm has incurred approximately $1,500 in reasonable and necessary expenses. These expenses were generally related to the consolidated litigation and have been estimated as expenses attributable to the GMAC case.

Sworn to under the pains and penalties of perjury on January 4, 2005.

Eric Lee, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

Plaintiffs,
v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of          01-6780
itself and all others similarly situated,

Plaintiffs,
v.

INTEGON NATIONAL INSURANCE
COMPANY, INTEGON GENERAL
INSURANCE COMPANY, INTEGON
PREFERRED INSURANCE COMPANY,
INTEGON INDEMNITY CORPORATION,
NATIONAL GENERAL ASSURANCE
COMPANY, NATIONAL GENERAL
INSURANCE COMPANY, MIC GENERAL
INSURANCE CORPORATION and
INTEGON CASUALTY INSURANCE
COMPANY,

Defendants.
_____/

**AFFIDAVIT OF CARLIN J. PHILLIPS, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES**

NOW COMES Carlin J. Phillips and after being duly sworn does under oath depose and state as follows:

1. I am an attorney duly licensed in the Commonwealth of Massachusetts and am certified to practice in both federal and state courts. I am a partner in the law firm of PHILLIPS & GARCIA, LLP, 13 Ventura Drive, North Dartmouth, Massachusetts, 02747. This Court has previously granted my pro hac vice motion to appear in these consolidated cases. I have acted as Co-Lead Class Counsel in the present litigation and have personal knowledge of the facts and circumstances contained herein.

2. I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases. I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Phillips & Garcia, LLP**

3. Phillips & Garcia, LLP has expended approximately 1,847.11 hours in the prosecution of these consolidated cases for a total lodestar of $410,578.40. As for the GMAC case, my firm worked approximately 97.42 hours for a total lodestar of $22,093.68. This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case. If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4. Class Counsel's hourly rates during the pendency of this case were between $200 and $225 and are reasonable based on hourly rates charged in similar litigation in this

community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.    My firm primarily handles cases on a contingency basis. To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case. Accordingly, the prosecution of the GMAC case and the consolidated litigation in general has affected my firm's ability to prosecute other cases. As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Phillips & Garcia, LLP**

6.    In the prosecution of this action, my firm has incurred $989.39 in reasonable and necessary expenses. Expenses that were generally related to the consolidated litigation, such as certain travel and conference call expenses, were divided by 1/15 and only 1/15 of those expense were added to the expenses of this case so as to created a fair and equitable distribution of general expenses from the consolidated litigation.

Sworn to under the pains and penalties of perjury this ____ day of January ___, 2005.

_____
Carlin J. Phillips, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

Plaintiffs,
v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of                     01-6780
itself and all others similarly situated,

Plaintiffs,
v.

INTEGON NATIONAL INSURANCE
COMPANY, INTEGON GENERAL
INSURANCE COMPANY, INTEGON
PREFERRED INSURANCE COMPANY,
INTEGON INDEMNITY CORPORATION,
NATIONAL GENERAL ASSURANCE
COMPANY, NATIONAL GENERAL
INSURANCE COMPANY, MIC GENERAL
INSURANCE CORPORATION and
INTEGON CASUALTY INSURANCE
COMPANY,

Defendants.
_____/

**AFFIDAVIT OF ARTHUR S. GOLD, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES**

NOW COMES Arthur S. Gold and after being duly sworn does under oath depose and state as follows:

1.  I am an attorney duly licensed in the state of Illinois and am certified to practice in both federal and state courts. I am a partner in the law firm of Gold & Coulson, 11 S. LaSalle St., Suite 2500, Chicago, IL 60603. This Court has previously granted my pro hac vice motion to appear in these consolidated cases. I have acted as Co-Lead Class Counsel in the present litigation and have personal knowledge of the facts and circumstances contained herein.

2.  I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases. I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Gold & Coulson**

3.  Gold & Coulson has expended approximately 2,519.96 in hours in the prosecution of these consolidated cases for a total lodestar of approximately $867,045.60. As for the GMAC case, my firm worked approximately 132.60 hours for a total lodestar of $44,778.75. This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case. If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.  Gold & Coulson's hourly rates during the pendency of this case were between $300 and $350 per hour for attorneys and $75-$85 per hour for paralegal work.. These rates are reasonable based on hourly rates charged in similar litigation in this community. The

amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.   My firm primarily handles cases on a contingency basis.  To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case.  Accordingly, the prosecution of the GMAC case and the consolidated litigation in general has affected my firm's ability to prosecute other cases.  As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Gold & Coulson**

6.   In the prosecution of this action, my firm has incurred $605.66 in reasonable and necessary expenses.  These expenses were generally related to the consolidated litigation and were divided by 1/15 and only 1/15 of those expenses were added to the expenses of this case so as to create a fair and equitable distribution of general expenses from the consolidated litigation.

Sworn to under the pains and penalties of perjury this 4th day of January __, 2005.

Arthur S. Gold, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

Plaintiffs,
v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of                    01-6780
itself and all others similarly situated,

Plaintiffs,
v.

INTEGON NATIONAL INSURANCE
COMPANY, INTEGON GENERAL
INSURANCE COMPANY, INTEGON
PREFERRED INSURANCE COMPANY,
INTEGON INDEMNITY CORPORATION,
NATIONAL GENERAL ASSURANCE
COMPANY, NATIONAL GENERAL
INSURANCE COMPANY, MIC GENERAL
INSURANCE CORPORATION and
INTEGON CASUALTY INSURANCE
COMPANY,

Defendants.
_____/

**AFFIDAVIT OF DOUGLAS BLANKMAN, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES**

NOW COMES Douglas Blankman and after being duly sworn does under oath depose and state as follows:

1.  I am an attorney duly licensed in the State of Florida and am certified to practice in both federal and state courts. I am a partner in the law firm of Kopelman & Blankman, 350 E. Las Olas Blvd., Ft. Lauderdale, FL 33301. I have acted as Co-Lead Class Counsel in the present litigation and have personal knowledge of the facts and circumstances contained herein.

2.  I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases. I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Kopelman & Blankman**

3.  Kopelman & Blankman has expended approximately 270.80 hours in the prosecution of the GMAC case for a total lodestar of $81,240. This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case. If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.  Class Counsel's hourly rates during the pendency of this case were $300 per hour and and are reasonable based on hourly rates charged in similar litigation in this community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.  My firm primarily handles cases on a contingency basis. To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the

prosecution of this case. Accordingly, the prosecution of the GMAC case and the consolidated litigation in general has affected my firm's ability to prosecute other cases. As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Kopelman & Blankman**

6.      In the prosecution of this action, my firm has incurred $404.65 in reasonable and necessary expenses. These expenses were generally related to the consolidated litigation, such as certain travel and conference call expenses, and represent 1/15 of my firm's total general consolidated expenses. These expenses were divided in this manner to create a fair and equitable distribution of general expenses from the consolidated litigation.

Sworn to under the pains and penalties of perjury this _____ day of January __, 2005.

Douglas Blankman, Esq.