UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

ULTRA OPEN MRI CORP., on behalf of       01-CIV-6778
itself and all others similarly situated,

     Plaintiffs,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY

     Defendant.

_____/

## MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S UNOPPOSED APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES PRELIMINARY STATEMENT

     Class Counsel in the above-captioned action respectfully submit this memorandum in

support of their application for an award of attorneys' fees and reimbursement of costs and

expenses incurred in the prosecution of this class action which has resulted in a settlement of

approximately $562,000 in benefits to the Class. The class action Settlement, which is currently before the Court for final approval, involves Plaintiffs, Ultra Open MRI Corporation (hereinafter "UOMC") and Walter Afield, M.D. ("Dr. Afield"), and Defendant, Prudential Property and Casualty Insurance Company of Indiana, on behalf of itself and its affiliates, Prudential Property and Casualty Insurance Company of New Jersey, Merastar Insurance Company and Prudential General Insurance Company (hereinafter collectively, "PRUPAC").[1]

As described in detail in the accompanying Declaration of Class Counsel in Support of Final Approval of Class Action Settlement and an Award of Attorney's Fees and Costs ("Class Counsel's Declaration"), Class Counsel have devoted many hours to this case and have incurred out-of-pocket costs and expenses over the five years that this case has been pending in the District Court and the Eleventh Circuit Court of Appeals. Given the extraordinary results achieved, the complexity and amount of work involved, the skill and expertise of Class Counsel and the risks counsel undertook, Class Counsel strongly believe that this case warrants an award of attorneys' fees and expenses of $112,500, which is equivalent to twenty-five (25%) percent of the Class Fund – an amount that PRUPAC has agreed to pay separate and outside of the Class Fund.

In similar cases, courts have not hesitated to award multiples of 3 and higher, even where settlements were reached before counsel had devoted anything close to the time and resources Class Counsel have devoted to this case. See, e.g., <u>Behrens v. Wometco</u>, 118 F.R.D. 534, 537-38

---

[1] The specific terms of the Settlement have been set forth in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court and preliminarily approved on August 20, 2004. The settlement provides for a class fund of $450,000. PRUPAC has also agreed to pay the following monies separate from the reserved class fund: 1) up to $112,500 in attorneys' fees and reasonable litigation costs and expenses; and, 2) the reasonable costs of settlement administration.

(S.D. Fla. 1998), aff'd, 899 F.2d 21 (11th Cir. 1990) (where the court characterized a multiplier of

3 as "average" for complex class actions); Spark v. MBNAA Corp., 157 F.Supp.2d 330, 345 (D.

Del. 2001) ("A multiplier of 3 is a good starting point, as it rewards counsel with a substantial

incentive to take on this type of case, an incentive that offsets the risks counsel face of taking on a

case where there may be no recovery"); Kurzweil v. Philip Morris Cos., 1999 U.S. Dist. LEXIS

18378, at *7 (S.D.N.Y. 1999) (when cross-checking the common fund approach with lodestar

method, court recognized that multiplier of between 3 and 4.5 is common in federal securities

cases).

## I.  **BACKGROUND**

The procedural history and relevant facts about the initiation and prosecution of these

consolidated cases, and the PRUPAC litigation in particular, since their inception almost five

years ago is described in detail in Class Counsel's Declaration and in the Memorandum in

Support of Proposed Settlement, both of which have been submitted to the Court for

consideration.  The PRUPAC settlement cannot be viewed in a vacuum because it was part of the

massive litigation effort Class Counsel put forth in these consolidated cases.  As indicated in

Class Counsel's Declaration, the plaintiffs in the consolidated actions challenged an industry-

wide practice undertaken by automobile insurers throughout the state of Florida.  Class Counsel

brought novel allegations based on complex legal theories against fifteen different insurers, some

of which are the nation's largest insurance companies.  As the docket clearly indicates, the

defendants poured legal firepower into the defense of these claims retaining some of the biggest and best defense firms in the country to defend these cases.[2]

Class Counsel efficiently and effectively managed and prosecuted these fifteen RICO class actions over a five year period enabling them to reach settlements with certain insurance company defendants, one of which is PRUPAC. As of the filing of this pleading, all of the defendant insurers, including PRUPAC, have stopped the practice of taking PPO discounts on automobile insurance medical expense claims in the State of Florida. While certain defendants dispute whether these class actions caused the termination of their PPO discounting programs, an industry-wide practice that siphoned millions of dollars from medical providers throughout the State of Florida has been stopped and, through this settlement and others, millions of dollars of settlement benefits have been made available for medical providers to claim.

## II.    CLASS COUNSEL IS ENTITLED TO A FEE BASED ON A PERCENTAGE OF THE CLASS RECOVERY

The award of counsel fees in this class action is governed by the common fund doctrine. The Supreme Court has consistently recognized that when a common fund is successfully established for the benefit of Class members, the cost of litigation, and specifically counsel's

---

[2]    The defendants retained the following firms to defend them: Rumberger, Kirk & Caldwell; Ross & Hardies; Tew Cardenas; Anania Bandklayder; Fowler White; Kenney Nach Symour Arnold Critchlow & Spector; Swartz Campbell Detweiler; Holland & Knight; Akerman Senterfitt; Sonnenschein, Nath & Rosenthal; Butler Burnette Pappas; Shea & Gardner; and, Conroy, Simberg, Ganon, Krevans & Abel.

4

efforts, should be spread among the common fund's beneficiaries. As the Supreme Court noted in

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980):

> A litigant or a lawyer who recovers a common fund for the benefit of persons other
> than himself or his client is entitled to a reasonable attorney's fee from the fund as
> a whole.

This was reiterated by the Eleventh Circuit in Camden I Condominium Association, Inc.

v. Dunkle, 946 F.2d 768 (11th Cir. 1991) when the court reasoned that attorneys who create a

common fund are entitled to be compensated for their efforts from a percentage of that fund. In

Camden the Court held

> Henceforth in this circuit, attorneys' fees awarded from a common fund shall be
> based upon a reasonable percentage of the fund established for the benefit of the
> class.

946 F.2d at 774-75.

Furthermore, in the absence of any evidence of collusion or detriment to the class, a court

should give substantial weight to a negotiated fee amount, assuming that it represents the parties'

"best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to

attorney"'s fees." Elkins v. Equitable Life Ins. Co, 1998 U.S. Dist. LEXIS 1557, 1998 WL 133741

(M.D. Fla. Jan. 27, 1998) (quoting Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 720

(5th Cir. 1974), overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939,

103 L. Ed. 2d 67 (1989)). This weight is particularly appropriate when, as in the present case, no

objections have been raised to the fee award and the amount of fees is entirely consistent with a

reasonable fee award under the circumstances of the case. See e.g., Ingram v. Coca-Cola Co.,

200 F.R.D. 685, 695 (N.D. Ga. 2001).

III.    **THE REQUESTED FEES ARE APPROPRIATE GIVEN THE RESULTS ACHIEVED, THE RISKS INVOLVED AND THE EFFORT EXPENDED**

A.    **The Relevant Factors for Assessing Attorney's Fees in Class Actions**

The Eleventh Circuit has established a benchmark of awarding attorney's fees of 25% of the benefit achieved for the Class. Camden, 926 F.2d 775.  The Camden Court stated further:

> The majority of common fund fee awards fall between 20% to 30% of the fund ... [and] an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.

Camden, 946 F.2d at 774-75.  Courts have repeatedly emphasized, however, that the range is merely a benchmark, not a hard and fast rule.  As a result, the Eleventh Circuit has developed a number of non-exclusive factors that courts may consider in assessing what fees are reasonable in a particular class action.

In Camden, the Court enumerated the following factors as ones a court may consider in determining the percentage of a fund to be applied to each case: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The Camden decision went on to state the following additional considerations:

> Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class

6

action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration.

946 F.2d at 775. While each of the above factors may be an appropriate consideration, the factors that will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary. Id.

### B. The Relevant Factors For Assessing Attorney's Fees Weigh in Favor of the One-Third Fee Requested By Class Counsel

#### 1. The Results Obtained Support Class Counsel's Fee Request

There is no better indicator of the quality of counsel's representation than the result obtained. Behrens, 118 F. R. D. at 547. In the current action, Class Counsel achieved a monetary settlement of 60% of each Class Members' damages with a minimal claims process under which Class Members did not have to submit documentary evidence to establish their claims. To claim benefits, Class Members needed only to complete a simple, straightforward Proof of Claim form providing basic information to the Settlement Administrator; far less proof than they would be required at trial or even in the prosecution of an individual state court PIP case. Moreover, PRUPAC has agreed to Class Counsel fees and reasonable costs and litigation expenses separate and outside of the Class Member fund of $450,000 that has been reserved by PRUPAC to pay claims. Had this case gone to trial and the Plaintiff prevailed, the Class might not have achieved as good a result as they have under the Settlement.

#### 2. The Substantial Time and Labor Required to Produce the Settlement and the Length of Time Required to Reach A Resolution of the Case Supports the Fee Request

As discussed at length in Class Counsel's Declaration, this case was one of fifteen consolidated cases and a substantial amount of the effort expended in the consolidated cases

benefitted the Class Members in the PRUPAC case. Class Counsel has expended over 8,716 total hours in the prosecution of the consolidated cases for a total loadstar to date of approximately $2,508,569. Class Counsel spent approximately 238 hours on the PRUPAC case for a base lodestar of $67,264.26.[3] The total hours expended in the PRUPAC case are set forth in the attached Compendium of Affidavits of Class Counsel.

The time expended by Class Counsel in this litigation is also described in detail in Class Counsel's Declaration. In summary, Class Counsel conducted an intensive pre-suit investigation, performed a great deal of research prior to filing and poured a tremendous amount of time and resources into drafting the initial class action complaint which served as the model for the PRUPAC filing. After suit was filed, Class Counsel filed a motion for class certification and aggressively pursued discovery. Additionally, Class Counsel opposed PRUPAC's numerous motions including the motion to compel arbitration which the Magistrate Judge recommended be allowed by the Court. Ultimately, Class Counsel were able to defeat PRUPAC's motion to compel arbitration at which time PRUPAC appealed the case to the Eleventh Circuit. While the case was in the Eleventh Circuit, Class Counsel worked diligently, with the help of mediator Joseph Unger, to negotiate a settlement and, over a period of several months, was able to finalize a settlement with PRUPAC.

3.    **The Economics Involved in Prosecuting the Action, the Contingent Nature of the Representation and the Preclusion of Other Employment**

This action was prosecuted by Class Counsel on a contingent fee basis. Class Counsel

---

[3]   Due to the overlap of work and effort inherent in a consolidated case, the hours were calculated based on the individual time spent on PRUPAC without allocation of a percentage, such as 1/15, of the general time spent on the prosecution of the consolidate cases. With such an allocation, the lodestar of the PRUPAC case would increase substantially

would be paid only if they achieved a successful result for the Class.  Class Counsel

have not been paid one penny for their services in the four years the PRUPAC Insurance case has

been pending or in the five years of consolidated litigation.  Courts have long recognized,

particularly in this Circuit, that the attorneys' contingent fee risk is an important factor in

determining the fee award.  See <u>Jones v. Central Soya Co.</u>, 748 F.2d 586, 591 (11th Cir. 1986).

In <u>Behrens,</u> when discussing a securities class action, Judge King noted:

> A contingency fee arrangement often justifies an increase in the award of attorneys
> fees.  This rule helps assure that the contingency fee arrangement endures.  If this
> 'bonus methodology' did not exist, very few lawyers could take on the
> representation of a class client given the investment of substantial time, effort and
> money, especially in light of the risks of recovering nothing.

18 F. R. D. at 548.

The spectre of potential financial loss in this case loomed large.  Class Counsel were

confronted with pending state court appeals[4] and a federal appeal, a negative decision in either of

which would have gutted the plaintiff's case and wasted years of work by Class Counsel.

Moreover, Class Counsel was proceeding in part on a complex civil RICO claim which would be

subject to summary judgment in the trial court and if the Plaintiff succeeded in defeating

PRUPAC's appeal to the Eleventh Circuit.

The risks inherent in losing years of work, as well as, the monies spent funding this case

were further compounded by the effective preclusion of other employment by Class Counsel due

---

[4]  During the course of the litigation, there was a split between two Florida appellate districts, the Second
and Fifth Districts, on whether an auto insurer may pay health care providers at reduced PPO contract rates
without first offering a preferred provider PIP policy of insurance.  See <u>Nationwide Mut. Fire Ins. Co. v.
Central Florida Physiatrists, P.A.</u>, 851 So.2d 762 (Fla. 5th DCA 2003) (holding that an insurer may not
apply a PPO discount without first offering a PPO policy to its insureds under the Florida no-fault statutory
scheme); compare, <u>Nationwide Mut. Ins. Co. V. Dennis M. Jewell, D.C., P.A.</u>, 862 So.2d 79 (Fla. 2d DCA
2003) (holding that a Florida auto insurer may apply PPO discounts to no-fault PIP claims without first
offering a PPO policy to its insureds).

to their acceptance of this case and the consolidated cases. The substantial amount of work at times on the consolidated cases and this case bordered on overwhelming. For example, as discussed in Class Counsel's Declaration, in a two month period the defendants in these consolidated cases filed 49 separate pleadings with the Court. For long periods of time during the pendency of the PRUPAC case and the consolidated cases, Class Counsel were required to work almost exclusively on this litigation to aggressively represent the Class.

####     4.     The Novelty and Difficulty of the Questions Involved and the Skill Requisite to Perform the Legal Services Properly

In assessing the quality of work performed and the risk undertaken by Class Counsel, it is also necessary to consider the complexity and magnitude of the litigation, as well as the difficulty of the questions involved. As discussed throughout this Petition, the PRUPAC case cannot now be totally disassociated from the consolidated litigation simply because it has settled. A civil RICO class action against an insurance company is complex in itself, but when combined with fourteen other similar class actions, the complexity and magnitude of the litigation increases exponentially. The 800 plus docket entries alone speak volumes to the complexity and magnitude of the litigation.

Moreover, the Plaintiff's claims were novel both from a factual and legal standpoint. These cases are the first and only federal court class actions in the country to challenge the "silent PPO" discount scheme emerging in the automobile insurance industry. In addition to unique factual allegations, Class Counsel had to select legal theories that allowed the legitimately aggrieved parties, i.e., the Florida medical providers, to maintain standing to prosecute their claims against the automobile insurers.

Counsel's fee should also reflect the degree of experience, competence and effort necessary to achieve the proposed Settlement. Class Counsel are experienced in class action cases and trial work in general and worked together as a cohesive team to prosecute the PRUPAC case and the consolidated cases. Courts have recognized the importance of providing incentives to experienced counsel who take complex litigation cases on a contingent fee basis, so that those cases can be prosecuted effectively.

In assessing the quality of representation by Class Counsel, the Court should also consider the quality of the opposition, as well as the standing of Class Counsel. See Ressler v. Jacobson, 149 F.R.D. 651, 654 (M.D. Fla. 1992). As noted above, the law firm defending PRUPAC is well known for its defense work in Florida and the litany of law firms representing the other defendants in the consolidated litigation reads like a veritable "who's who" of the corporate civil defense bar.

### 5. The Requested Percentage Is Fair and Reasonable And Is Consistent With Fee Awards in Comparable Cases

A decade ago, in Camden, the Eleventh Circuit recognized that a benchmark of 20%-30% of the relief obtained for the class is an appropriate starting point and decisions in this Circuit and others reveal a small upward departure from that benchmark is oftentimes appropriate in particular cases. See Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1294-95 (11th Cir. 1999). For the reasons set forth here, and in Class Counsel's Declaration, Class Counsel respectfully submit that their performance in this litigation, and the superior results efficiently achieved, warrant more than a simple "benchmark" level of compensation. Given the work involved and the result achieved, Class Counsel believe that it is fair, reasonable and eminently appropriate for the Court to award counsel the one-third fee requested.

11

The requested 25% legal fee plus expenses is consistent with fees awarded in other class action cases in this Circuit. See e.g., <u>Waters</u>, 190 F.3d at 1298 (finding no abuse of discretion in approving a 1/3 class counsel fee award of $13.33 million in case involving class fund of $40 million in scheme to defraud customers); <u>Bakalor v. Integrated Communication Network Inc.</u>, 96-2021-Civ-King (S.D. Fla. 1997) (awarding 33.3%); <u>Lopez v. Checkers Drive-In Restaurants, Inc.</u>, 1996 U.S. Dist. LEXIS 22668, *8 (M.D. Fla. 1996) (awarding 30%); <u>Minnick v. Pages, Inc.</u>, 95-277-Civ-T-21C (M.D. Fla. 1996) (awarding 30%); <u>Kaser v. Swann</u>, 90-607-CivORL-3 A 18 (M.D. Fla. 1993) (awarding 30%); <u>In re: Perfumania, Inc. Sec. Litig.</u>, 92-1490-Civ-Marcus (S.D. Fla. 1993) (awarding 30%); and <u>Ressler v. Jacobson</u>, 149 F.R.D. 651, 653 (M.D. Fla. 1992) (awarding 30% after extensive analysis of the <u>Camden</u> factors).

The fee is also consistent with awards in other jurisdictions in class action cases. See e.g., <u>In re IKON Office Solutions, Inc.</u>, 194 F.R.D. 166, 192 (E.D. Pa. 2000)(awarding attorneys' fees of 33% on $111 million partial settlement, where plaintiffs later failed in claim against accountant); <u>Kurzweil v. Philip Morris Cos.</u>, 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. 999)(awarding attorneys' fees of 30% on settlement fund of over $123 million); <u>In re Combustion, Inc.</u>, 968 F. Supp. 1116 (W.D. La. 1997) (awarding attorneys' fees of 36% on settlement fund of over $127 million); <u>City of New York v. Darlin-Delaware</u>, 440 F.Supp. 1132 (S.D.N.Y. 1977) (awarding fee of 29.9%).

Moreover, the fee requested in this case represents only a 1.67 multiplier on Class Counsel's lodestar. In relation to other class action settlements, a 1.67 multiplier is more than reasonable given the novelty of the subject matter, the ultimate benefits conferred on the class and the difficulty faced by Class Counsel in prosecuting the action. See e.g., <u>Behrens v. Wometco</u>

12

Enter, Inc., 118 F. R.D. 534, 539 (S.D. Fla. 1998) affd, 899 F. 2d 21 (11th Cir. 1990); see also In re RJR Nabisco, Inc., Sec. Litig., [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,984 at 94,267 (S.D.N.Y. 1992) (using a lodestar multiplier of 6); Cosgrove v. Sullivan, 759 F. Supp. 166, 169 (S.D.N.Y. 1991) (applying a lodestar multiplier of 8.74).

### 6. The Requested Fees Are Consistent With Contingent Fee Arrangements Negotiated In Non-Class Litigation

The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. See also, Kirchoff v. Flynn, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'"). In non-class litigation, 33 1/3% to 40% contingency fees are typical. As Justices Brennan and Marshall observed in their concurring opinion in Blum v. Stenson, 465 U.S. 886 (1984): "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." 465 U.S. at 904 n. 19; see also In re Prudential Bache Energy Income Partnerships Sec. Litig., 1994 U.S. Dist. LEXIS 662 1, at * 1 (E. D. La. 1994)("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); Phemister v. Harcourt Brace Jovanovich, Inc., 1984-2 Trade Cas. (CCH) ¶ 66,234, at 66,995 (N.D. 111. 1984) ("The percentages agreed on [in non-class action damage lawsuits] vary, with one-third (1/3) being particularly common").

Class Counsel's efforts were performed, and the result was achieved, on a wholly contingent basis, despite the significant risks, time spent and expenses incurred. Therefore, their

fee request of 25% is in keeping with the standard contingent fee agreement in non-class litigation.

In summary, based on the application of the relevant <u>Camden</u> factors to the circumstances of this case – and the fact that PRUPAC has agreed to pay Class Counsel's fee separate and distinct from the reserved Class Fund – Class Counsel's fee request is fair and reasonable and should be a approved.

**C.    <u>Reimbursement of Costs</u>.**

Class Counsel also seek reimbursement of $6,648.62 in expenses and costs incurred in prosecuting this action. Ultimately, the amount of expenses awarded by the Court will be included in the total amount to be paid by PRUPAC in conjunction with attorneys' fees awarded not to exceed $112,500. The Declaration of Class Counsel, and Counsels' Compendium of Declarations, which are submitted herewith, describe the expenses and costs incurred for which reimbursement is sought. Plaintiffs respectfully request that the listed expenses and costs be awarded because they were necessary and appropriate in prosecuting this action.

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in Class Counsel's Declaration, the Court should grant Class Counsel's application for an award of attorneys' fees and expenses in the total amount of $112,500.

> Respectfully submitted,
> Co-Lead Counsel for the Plaintiff:
> **LEE & AMTZIS, P.L.**
> 5550 Glades Road, Suite 401
> Boca Raton, FL 33431
> Telephone: (561) 981-9988
> Facsimile: (561) 981-9980

By: _____
        ERIC LEE, Florida Bar No. 961299

Co-Lead Counsel for the Plaintiff:
**KOPELMAN & BLANKMAN, P.A.**
350 East Las Olas Blvd., Suite 980
Fort Lauderdale, FL 33301
Telephone: (954) 462-6855
Facsimile: (954) 462-6899

Co-Lead Counsel for the Plaintiff:
**GOLD & COULSON**
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
Telephone: (312) 372-0777
Facsimile: (312) 372-0778

Co-Lead Counsel for the Plaintiff:
**PHILLIPS & GARCIA, LLP**
13 Ventura Drive
N. Dartmouth, MA 02740
Telephone: (508) 998-0800
Facsimile: (508) 998-0919

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 4th day

of January, 2005 to all persons on the attached service list.

_____
Douglas A. Blankman

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-FERGUSON/SNOW)
### (Updated 1/3/05)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
Suite 401
5550 Glades Road
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Lawrence Kopelman, Esq.
Douglas Blankman, Esq.
lmk@kopelblank.com
dab@kopelblank.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
richard@bokorlaw.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

Casey Fundaro, Esq.
fundaro@aol.com
5400 S. University Drive, Ste. 102
Davie, FL 33328
(954) 252-6666
(954) 252-0901 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK &
CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Post Office Box 1873
Orlando,  Florida  32802-1873
(407) 872-7300
(407) 841-2133 (Facsimile)

ROSS & HARDIES
Peter J. Valeta, Esq.
peter.valeta@rosshardies.com
150 N. Michigan Avenue, Suite 2500
Chicago, IL 60601
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and AD**

TEW, CARDENAS LLP
John M. Quaranta, Esq.
(305)536-1112
jmq@tewlaw.com
Four Seasons Tower,15Floor
1441 Brickell Avenue
Miami, Florida 33131-3407
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

KENNY NACHWALTER, et al
Richard H. Critchlow, Esq.
Robert Landon, III, Esq.
Rlandon@knsacs.com
201 South Biscayne Blvd., #1100
Miami, Florida 33131
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

**Counsel for Nationwide**

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street
34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Robert K. Levenson, Esq.
rlevenson@hklaw.com
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
28th Floor
One Southeast Third Avenue
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH & ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER PAPPAS WEIHMULLER
KATZ CRAIG
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3600 Maclay Boulevard, Suite 101
Tallahassee, FL 32312
(850) 894-4111
(850) 894-4999 Facsimile

GOODWIN PROCTER LLP
John D. Aldock, Esq.
Jaldock@SheaGardner.com
Michael Isenman, Esq.
misenman@sheagardner.com
901 New York Avenue, Ste. 700
Washington, D.C. 20001
(202) 346-4000
(202) 346-4444 Facsimile

**Counsel for American Internation**

CONROY, SIMBERG, GAN
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of         01-CIV-6778
itself and all others similarly situated,

     Plaintiffs,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY

     Defendant.
_____/

**DECLARATION OF CLASS COUNSEL IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AN AWARD OF ATTORNEY'S FEES AND COSTS**

1.    My name is Arthur S. Gold and I am a partner in the law firm of Gold & Coulson, P.A of

Chicago, IL.  I am one of the lead Class Counsel in the fifteen consolidated class action

cases (Zidel v. Allstate Insurance Company, et al, Consolidated C.A. No. 00-6061)

pending in this Court, one of which is the class action Ultra Open MRI Corp. v. Prudential

1

Property and Casualty Insurance Company, et al, C.A. No. 01-6779 (hereinafter "Prudential"). I am submitting this declaration in support of final approval of the Prudential class action settlement and plaintiff's Memorandum in Support of Class Counsel's Application for An Award of Attorney's Fees and Reimbursement of Expenses.

2.    I have been plaintiff's counsel in the Prudential case and all the consolidated cases since the first class action case was filed against Allstate Insurance Company approximately five years ago on January 12, 2000. Although the Prudential case is before the Court for final approval of the class settlement, the historical background of the litigation in the consolidated cases is necessary to understand the tremendous effort of Class Counsel in prosecuting and managing the consolidated litigation which contributed substantially to the settlement of the Prudential case.

**Pre-Suit Investigation**

3.    Prior to filing any of the consolidated cases, Class Counsel conducted an intensive and thorough investigation of what they believed to be an industry-wide practice of Florida automobile insurers reducing medical expense claims based on managed care preferred provider organization ("PPO") discounts. A practice Class Counsel has characterized throughout this litigation as a "silent PPO."

4.    The investigation had three facets: 1) obtaining and reviewing any state and national decisions on the PPO issue; 2) obtaining discovery documentation and deposition and hearing testimony from Florida state cases, some of which Florida Class Counsel, Kopelman & Blankman and Eric Lee, Esq. were directly involved; and 3) acquiring documentation such as PPO contracts and explanation of benefit forms from as many

2

sources as possible throughout the state of Florida.

5. Also, prior to the filing of these consolidated cases, Class Counsel Eric Lee, Esq. and Larry Kopelman, Esq., had filed a state court class action seeking reimbursement for insureds whose medical providers balanced billed them after the insurer's application of PPO discounts to their medical expense claims. Information from the state court class action also served as part of the wealth of information reviewed by Class Counsel prior to filing the consolidated cases. Finally, documents and deposition transcripts from similar class actions in Massachusetts state court were accumulated and reviewed as the Massachusetts cases involved some of the same PPOs, PPO contracts and claim re-pricing companies working with the automobile insurers in Florida.

6. Also as part of our investigation, Class Counsel met with their clients and their clients' billing personnel to gain information "on the ground" about how the PPOs, insurers and claims facilitators, such as ADP, were processing medical expense claims on a day-to-day basis.

7. The majority of the documents obtained in Class Counsel's investigation, as well as documents gained after the litigation was filed, were organized into an electronic document depository which Class Counsel could access online from their offices for the purposes of prosecuting the litigation.

8. Class Counsel's research at the time revealed that no similar federal or state class actions challenging a "silent PPO" discounting scheme on automobile medical expense claims had been filed anywhere in the country with the exception of two cases brought in Massachusetts by Class Counsel team member Phillips & Garcia, LLP. The filing of the

3

Florida federal court class actions based on the emerging "silent PPO" discounting

practice in the automobile industry was both novel in theory and scope.

9.    After this extensive pre-suit investigation of what amounted to the PPO discounting

practices of the entire Florida automobile insurance industry, Class Counsel spent an

enormous amount of time researching viable state and federal court causes of action

before filing the first case. After completing their research and cognizant of the inherent

difficulties of a federal court civil RICO case, Class Counsel spent a great deal of time on

the drafting and re-drafting of the model class action complaint which was used as the

backbone for all of the complaints filed in these consolidated cases. This time and effort

proved valuable as the plaintiffs' RICO claims survived the defendants' motions to

dismiss.

**The Allstate Filing and the Consolidated Litigation**

10.    On January 12, 2000, Class Counsel filed the first class action case against Allstate. From

the start, the case was aggressively defended with defendants Allstate and Medview

Services, Inc. moving to dismiss.

11.    After the Allstate filing, Class Counsel filed the following cases:

a.    Brickell, et al v. Progressive Express Ins. Co., et al, C.A. No. 00-6649 (filed 5/12/00);

b.    Browner v. Allstate Indemnity Company, et al, C.A. No. 00-7163 (filed 8/16/00);

c.    LaRusso, et al v. Liberty Mutual Ins. Co., C.A. No. 00-7692 (filed 11/15/00);

d.    Larusso, et al v. Nationwide Ins. Co., C.A. No. 01-8108 (filed 2/7/01);

e.    Larusso, et al v. Florida Farm Bureau Casualty Ins. Co., C.A. No. 01-8110 (filed

2/7/01);

4

f.  Larusso ITT Hartford Life & Annuity Ins. Co., C.A. No. 01-8111 (filed 2/7/01);

g.  Ultra Open MRI Corp., et al v. Progressive American Ins. Co., C.A. No. 01-6776 (filed 5/8/01);

h.  Ultra Open MRI Corp., et al v. Deerbrook Ins. Co., C.A. No. .01-6777 (filed 5/8/01);

i.  Ultra Open MRI Corp., et al v. Prudential Property & Casualty Ins. Co., C.A. No. 01-6778 (filed 5/8/01);

j.  Ultra Open Mri Corporation, et al v. Fidelity & Casualty Co. of New York, et al, C.A. No. 01-6779 (filed 5/8/01);

k.  Ultra Open MRI Corp. v. Integon National Ins. Co., et al, C.A. No. 01-6780 (filed 5/8/01);

l.  The Chiropractic Centre, Inc., et al v. Superior Ins. Co., C.A. No. 01-6782 (filed 5/8/01);

m.  The Chiropractic Centre, Inc., et al v. Metropolitan Ins. Co., C.A. No. 01-6783 (filed 5/8/01);

n.  Mote Wellness & Rehab., Inc., et al v. American International Ins. Co., et al, C.A. No. 01-8549 (filed 6/14/01).

10. The cases were consolidated by Judge Ferguson. Each filed case was aggressively defended. As evidenced by the individual and consolidated case dockets, prior to the ultimate appeal of the cases, the defendants filed scores of different motions to dismiss and/or to compel arbitration.

11. Class Counsel opposed all of the defendants' motions to dismiss and to compel arbitration and, with the exception of the dismissal of their Lanham Act counts, the plaintiffs prevailed on each and every motion. In the two circumstances where Magistrate Judge

5

Snow partially ruled against the plaintiffs on the issue of arbitration presented in the

GMAC and Prudential cases, Class Counsel challenged the Magistrate Judge's

recommendation and was able to convince the District Court not to adopt the

recommendation. All motions to dismiss and compel were successfully defeated. It

almost goes without saying that it took Class Counsel a tremendous amount of time and

effort to defeat the defendants' initial attempts to dismiss these consolidated cases.

12. While opposing the defendants' attempts to dismiss the cases, Class Counsel also went on

the offensive by propounding discovery to the defendants and subpoenaing non-party

witnesses. Class Counsel  served separate requests for production, interrogatories and

admissions on all the defendants. Class Counsel also noticed over 40 depositions of

various defendants and sent document and deposition subpoenas to many non-party

witnesses.

13. The vast majority of the Class Counsel's discovery requests were opposed by the

defendants. The defendants either objected to the discovery in its entirety or filed motions

for protective orders seeking to limit or stop Class Counsel from taking discovery. Class

Counsel opposed the defendants' motions and in some circumstances filed motions to

compel and for sanctions due to the defendants' failures to respond to discovery. Despite

these efforts, the defendants were for the most part successful in preventing Class Counsel

from conducting discovery as the District Court eventually stayed the cases.

14. After not being able to obtain discovery from the defendants through the normal discovery

process, Class Counsel entered into settlement discussions with defendants, ADP Medical

Solutions, Inc ("ADP") and Beech Street Corporation ("Beech Street"), in an effort to

discover information about the defendants' polices and practices.  In the majority of the

consolidated cases, Beech Street was the PPO whose discounts were applied to

automobile insurance medical expense claims by ADP.  ADP's business was to analyze

and re-price claims for property and casualty insurers with its software programs.

15.   Class Counsel were able to negotiate a settlement with ADP and Beech Street whereby

they would produce any and all documents pertaining to the PPO discounting policies and

practices of the relevant defendant insurers.  Accordingly, ADP and Beech Street

produced numerous boxes of documents to Class Counsel.

16.   As part of the settlement, Class Counsel also propounded specific data requests to ADP

whereby ADP produced data on CD ROM which listed class members by name, address,

tax identification number and also included specific claim by claim information per insurer

by year.  Finally, pursuant to the settlement, ADP and Beech Street agreed to a continuing

obligation to provide additional documents and information as the litigation proceeds.

17.   Based on Class Counsel's experience, it would have taken years to obtain the same

discovery in the formal litigation process.  Moreover, the documents and information

obtained from ADP and Beech Street are confidential and therefore have not been

disclosed to the defendants with the limited exception of data shared in settlement

negotiations with the insurers.

18.   In addition to Class Counsel's efforts to obtain discovery from the vendor defendants,

plaintiffs also briefed and filed motions for class certification in all of the cases and were

ready to argue same had the Court set them for hearing.

19.   As an example of the intense nature of the litigation, after the District Court issued its

Omnibus Order on September 28, 2001, in the two month period from October 3, 2001

through December 7, 2001, the defendants filed 49 motions, notices, requests and

submissions seeking all manner of stays, modifications, reaffirmations, clarifications,

vacations, re-considerations and dismissals, all of which Class Counsel had to respond to

in one form or another.

20.    As of October 30, 2002, the time at which the District Court appears to have issued its

last order prior to appeal, the consolidated docket had been consumed with some 886

entries over a two and a half year period.

21.    After losing their motions to compel arbitration in the trial court, the majority of the

defendants, with the exception of the Progressive defendants, appealed Judge Ferguson's

decision to the Eleventh Circuit where the appeals are currently pending.

22.    All of the defendant insurers in these consolidated cases have stopped taking discounts on

automobile medical expense claims.

**The Prudential Case**

23.    The Prudential class action was filed on May 8, 2001, over one year after the initial filing

of the Allstate case.  The case was transferred and reassigned to Judge Ferguson.

24.    After filing, the Class Counsel aggressively pursued the Prudential case.  On May 25,

2001, the plaintiff filed a motion for class certification.  Class Counsel also served requests

for production, admissions and interrogatories on Prudential and noticed depositions of

Prudential personnel.

25.    Prudential aggressively defended the case from the beginning.  On August 6, 2001,

Prudential moved to compel arbitration, which Class Counsel opposed.  On October 12,

8

2001, Prudential moved to stay the case and requested expedited consideration of its motion to compel arbitration and moved on November 2, 2001 for an emergency motion for a protective order to prevent Class Counsel from conducting discovery. Class Counsel opposed Prudential's attempts at staying the case and obtaining a protective order.

26.     After the Magistrate Judge recommended that the motion to compel arbitration be allowed in part, the plaintiff filed an objection to the recommendation. Judge Ferguson did not adopt the Magistrate Judge's recommendation and denied Prudential's motion to compel on July 29, 2002. Prudential eventually filed its appeal with the Eleventh Circuit.

27.     After the appeal was filed, Class Counsel and Prudential agreed to participate in the Eleventh Circuit's mediation program. The Prudential case was the first case of all the consolidated cases that was mediated and where the parties discussed settlements. Class Counsel, defense counsel and representatives from Prudential appeared in person for an all day mediation with Eleventh Circuit mediator, Joseph Unger, Esq.. With the help of Mr. Unger, the parties made considerable progress in the first mediation session.

28.     Thereafter, Class Counsel and defense counsel continued negotiations in person and over the telephone for over several months. There were times in the negotiation process where Class Counsel questioned whether the parties would be able to settle the case. Through hard work and perseverance, the parties were able to resolve their differences and enter into a detailed settlement agreement. Settlement discussions were always conducted at arms-length, were very contentious at times and there was no collusion between counsel for the parties.

29.     During the pendency of these cases there have been two parallel state cases on the PPO

discounting issue pending before the Fifth and Second Florida district courts of appeal. At the time the Prudential case was being negotiated, the Fifth District Court of Appeals had not yet issued its decision declaring that the insurer's PPO discounting practices violated the Florida statute. Class Counsel were concerned in negotiations that the Fifth DCA would rule against the plaintiff and prevent a settlement. Moreover, none of the other defendants in the 14 other cases were even broaching the subject of settlement with Class Counsel at the time the Prudential settlement talks started. Additionally, Prudential's liability as determined from the data obtained from ADP was relatively small due to their low market share in Florida.

30.    Finally, Class Counsel were very concerned about whether the Prudential case could be settled given the amount of individual state court PPO PIP cases pending in various Florida state courts. There was no settlement model to follow when the parties negotiated the Prudential settlement. The parties were in essence "breaking new ground" as they advanced their settlement talks.

31.    Despite these issues and concerns, Class Counsel was able to negotiate benefits for the Class where claims would be paid at 60% of the PPO discounted amount and were also able to negotiate the payment of attorney's fees and costs and the costs of settlement administration outside and separate from the Class Fund. Moreover, the settlement provided for direct mail notice to Class Members with a minimal proof of claim process where Class Members would not be required to submit any documentation besides the basic information requested on the claim form.

32.    As part of the Settlement, Prudential also agreed to comply with the Florida statutes

10

concerning PPO discounts on medical expense claims and, since the filing of this case, has stopped the practice of taking PPO discounts in Florida. This is a substantial benefit to the class which will save them potentially hundreds of thousands of dollars on future medical expense claim payments.

33.    Pursuant to the Settlement, Class Counsel communicated with defense counsel about the claims process and received and reviewed periodic reports from the independent Settlement Administrator and defense counsel regarding settlement administration.

34.    Class Counsel have not yet received a fee for prosecuting the Prudential case or the consolidated class action cases. Class Counsel have spent 8,716 hours on the consolidated cases for a total lodestar of over $2,525,027. With respect to the Prudential case, Class Counsel have spent 237.90 hours prosecuting the case for a total lodestar of $67,264.26.

35.    Based on Class Counsel's experience, negotiating a class action settlement where class members can receive approximately 60% of their actual damages without an evidentiary proof of claim process is a tremendous benefit to the class, especially given the risks associated with the age of the claims, the state and Eleventh Circuit appeals and the difficulties in certifying and trying a complex RICO case. At all times Class Counsel maintained and advocated for the interests of the Class, and as a result, negotiated a settlement that far exceeds the standard class benefits in typical class action cases.

Sworn to under the pains and penalties of perjury this 4th day of January 2005.

Arthur S. Gold, Esq.
Gold & Coulson, P.A.
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 (fax)

11

# EXHIBIT "B"
# Compendium of Affidavits

01/04/2005  14:08   5089980919                      PHILLIPS & GARCIA                        PAGE  02

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

ULTRA OPEN MRI CORP., on behalf of          01-6778
itself and all others similarly situated,

     Plaintiffs,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY

     Defendant.

_____/

**AFFIDAVIT OF CARLIN J. PHILLIPS, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES**

NOW COMES Carlin J. Phillips and after being duly sworn does under oath depose and

state as follows:

1.     I am an attorney duly licensed in the Commonwealth of Massachusetts and am certified to

practice in both federal and state courts.  I am a partner in the law firm of PHILLIPS &

GARCIA, LLP, 13 Ventura Drive, North Dartmouth, Massachusetts, 02747.  This Court

has previously granted my pro hac vice motion to appear in these consolidated cases. I have acted as Co-Lead Class Counsel in the present litigation and have personal knowledge of the facts and circumstances contained herein.

2.    I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases. I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Phillips & Garcia, LLP**

3.    Phillips & Garcia, LLP has expended approximately 1,847.11 hours in the prosecution of these consolidated cases for a total lodestar of $410,578.40. As for the Prudential case, my firm worked approximately 83.80 hours for a total lodestar of $18,850.50. This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case. If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.    Class Counsel's hourly rates during the pendency of this case were between $200 and $225 and are reasonable based on hourly rates charged in similar litigation in this community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.    My firm primarily handles cases on a contingency basis. To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case. Accordingly, the prosecution of the Prudential case and the consolidated litigation in general has affected my firm's ability to prosecute other cases.

As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Phillips & Garcia, LLP**

6.  In the prosecution of this action, my firm has incurred $784.33 in reasonable and necessary expenses.  Expenses that were generally related to the consolidated litigation, such as certain travel and conference call expenses, were divided by 1/15 and only 1/15 of those expense were added to the expenses of this case so as to created a fair and equitable distribution of general expenses from the consolidated litigation.

Sworn to under the pains and penalties of perjury this _____ day of January __, 2005.

_____
Carlin J. Phillips, Esq.

ARTGOLD

PAGE    07

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of       01-6778
itself and all others similarly situated,

     Plaintiffs,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY

     Defendant.
_____/

### AFFIDAVIT OF ARTHUR S. GOLD, ESQ. IN SUPPORT OF
### CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES
### AND REIMBURSEMENT OF EXPENSES

NOW COMES Arthur S. Gold and after being duly sworn does under oath depose and
state as follows:

1.    I am an attorney duly licensed in the state of Illinois and am certified to practice in both
federal and state courts. I am a partner in the law firm of Gold & Coulson, 11 S. LaSalle
St, Suite 2500, Chicago, IL 60603. This Court has previously granted my pro hac vice
motion to appear in these consolidated cases. I have acted as Co-Lead Class Counsel in
the present litigation and have personal knowledge of the facts and circumstances
contained herein.

2.    I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases.  I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Gold & Coulson**

3.    Gold & Coulson has expended approximately 2,519.96 in hours in the prosecution of these consolidated cases for a total lodestar of approximately $867,045.60.  As for the Prudential case, my firm worked approximately 48.65 hours for a total lodestar of $16,821.25.  This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case.  If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.    Gold & Coulson's hourly rates during the pendency of this case were between $300 and $350 for attorneys and $75-$85 for paralegal work.  These rates are reasonable based on hourly rates charged in similar litigation in this community.  The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.    My firm primarily handles cases on a contingency basis.  To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case.  Accordingly, the prosecution of the Prudential case and the consolidated litigation in general has affected my firm's ability to prosecute other cases.  As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Gold & Coulson**

6.    In the prosecution of this action, my firm has incurred $605.66 in reasonable and necessary expenses.  These expenses were generally related to the consolidated litigation

01/04/2005  12:14    8472958868    ARTGOLD    PAGE  09

and were divided by 1/15 and only 1/15 of those expenses were added to the expenses of this case so as to create a fair and equitable distribution of general expenses from the consolidated litigation.

Sworn to under the pains and penalties of perjury this _____ day of January __, 2005.

Arthur S. Gold, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

      Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of        01-6778
itself and all others similarly situated,

      Plaintiffs,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY

      Defendant.
_____/

**AFFIDAVIT OF ERIC LEE, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES AND
REIMBURSEMENT OF EXPENSES**

      NOW COMES Eric Lee and after being duly sworn does under oath depose and state as

follows:

1.      I am an attorney duly licensed in the State of Florida and am certified to practice in both

federal and state courts.  I am the managing member of the law firm of Lee & Amtzis, P.L.

5550 Glades Road, Suite 401, Boca Raton, FL 33431. Prior to working at Lee & Amtzis, I was a partner at Atlas Pearlman, formerly of Ft. Lauderdale. I have acted as Co-Lead Class Counsel in the present litigation while at my firm and Atlas Pearlman and have personal knowledge of the facts and circumstances contained herein.

2.      I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases. I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Atlas Pearlman**

3.      While I was employed at Atlas Perlman the firm expended approximately 3,313.20 hours in the prosecution of the consolidated litigation for a total lodestar of $815,197.71. As for the Prudential case, Atlas Pearlman spent 22.1 hours on the case for a total lodestar of $6,587.51. This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefited the Class in this case. If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.      Atlas Pearlman's hourly rates during the pendency of this case were between $350 and $175 per hour for attorneys and are reasonable based on hourly rates charged in similar litigation in this community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

**Time and Effort Expended by Lee & Amtzis**

5.    Lee & Amtzis has expended approximately 860 hours in the prosecution of the consolidated litigation for a total lodestar of approximately $294,850.50. Based on my billing practices, time for Prudential was aggregated into the consolidated PPO billing file. The lodestar figure for the Prudential case would be further enhanced by the attribution of a percentage of the consolidated time Lee & Amtzis' has worked on these consolidated cases.

6.    Lee & Amtzis's hourly rates during the pendency of this case were between $350 and $195 and are reasonable based on hourly rates charged in similar litigation in this community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

7.    To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case. Accordingly, the prosecution of the Prudential case and the consolidated litigation in general has affected my firm's ability to prosecute other cases. As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Atlas Pearlman**

8.    In the prosecution of this action, Atlas Pearlman incurred approximately $2,761.07 in reasonable and necessary expenses. All of these expenses were attributable to the consolidated litigation and were divided by 1/15 and only 1/15 of those expenses were added to this case.

**Expenses of Lee & Amtzis**

9.  In the prosecution of this action, my firm has incurred approximately $1,500 in reasonable and necessary expenses.  These expenses were generally related to the consolidated litigation and have been estimated as expenses attributable to the Prudential case.

Sworn to under the pains and penalties of perjury  on January 4, 2005.

Eric Lee, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.
_____/

ULTRA OPEN MRI CORP., on behalf of         01-6778
itself and all others similarly situated,

     Plaintiffs,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY

     Defendant.
_____/

**AFFIDAVIT OF DOUGLAS BLANKMAN, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES**

NOW COMES Douglas Blankman and after being duly sworn does under oath depose

and state as follows:

1.     I am an attorney duly licensed in the State of Florida and am certified to practice in both

federal and state courts. I am a partner in the law firm of Kopelman & Blankman, 350 E.

Las Olas Blvd., Ft. Lauderdale, FL 33301. I have acted as Co-Lead Class Counsel in the

present litigation and have personal knowledge of the facts and circumstances contained herein.

2.  I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases. I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Kopelman & Blankman**

3.  Kopelman & Blankman has expended approximately 83.35 hours in the prosecution of the Prudential case for a total lodestar of $25,005. This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case. If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.  Class Counsel's hourly rates during the pendency of this case were $300 per hour and are reasonable based on hourly rates charged in similar litigation in this community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.  My firm primarily handles cases on a contingency basis. To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case. Accordingly, the prosecution of the Prudential case and the consolidated litigation in general has affected my firm's ability to prosecute other cases. As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Kopelman & Blankman**

6.  In the prosecution of this action, my firm has incurred $404.65 in reasonable and necessary expenses. These expenses were generally related to the consolidated litigation, such as certain travel and conference call expenses, and represent 1/15 of my firm's total general consolidated expenses. These expenses were divided in this manner to create a fair and equitable distribution of general expenses from the consolidated litigation. Sworn to under the pains and penalties of perjury this ____ day of January ___, 2005.

Douglas Blankman, Esq.