UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

SALVATORE D. LARUSSO, D.C. d/b/a FAMILY
CHIROPRACTIC CENTER, on behalf of himself
and all others similarly situated,

     Plaintiff,

                             01-8108

vs.

NATIONWIDE MUTUAL INSURANCE
COMPANY,

     Defendant.

_____/

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs SALVATORE D. LARUSSO, D.C. d/b/a FAMILY CHIROPRACTIC

CENTER ("LARUSSO"), JOEL D. STEIN, D.O., P.A. ("STEIN"), and AUGUSTINE V.

JOSEPH, M.D., P.A. ("JOSEPH"), on behalf of themselves and all others similarly situated, by

their undersigned counsel, sue Defendants NATIONWIDE MUTUAL INSURANCE

COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, NATIONWIDE

PROPERTY AND CASUALTY INSURANCE COMPANY, NATIONWIDE INSURANCE



COMPANY OF AMERICA, NATIONWIDE GENERAL INSURANCE COMPANY and NATIONWIDE ASSURANCE COMPANY F/K/A COLONIAL INSURANCE COMPANY and which issued and underwrote automobile liability insurance with PIP in the State of Florida pursuant to Florida Statutes from January 1, 1996 through November 30, 2004 (the "Class Period"). These Defendants are collectively referred to as "NATIONWIDE". Plaintiffs allege as follows:

## THE PARTIES

1.      LARUSSO is a Florida professional association that provides health care services to Florida residents who has its principal place of business at 13860 Wellington Trace, Suite 13, West Palm Beach, Florida.

2.      STEIN is a Florida professional association that provides health care services to Florida residents who have sustained personal injuries in motor vehicle collisions, and who have assigned to STEIN their personal injury protection benefits under policies issued in the State of Florida.

3.      JOSEPH is a Florida professional association that provides health care services to Florida residents doing business in Orange County, Florida.

4.      NATIONWIDE are insurance companies that provide automobile insurance throughout the State of Florida and transact business in the Southern District of Florida.

## JURISDICTION AND VENUE

5.      Non-Party Beech Street Corporation ("Beech Street") is a business entity incorporated under the laws of the State of California with its principal place of business in Irvine, California. Beech Street operates a national preferred provider organization, but is not registered to do business in Florida.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

6.     Non-party ADP Integrated Medical Solutions, Inc. ("ADP") is a business entity incorporated under the laws of the State of Maryland, with its principal place of business in Bethesda, Maryland.   ADP is in the business of developing software driven insurance cost containment products used in the claims review process by property and casualty insurers to reduce payments made on insurance medical expense claims.

7.     Non-Party Community Care Network, Inc. ("CCN") is a business entity incorporated under the laws of the State of California with its principal place of business in Irvine, California.  CCN operates a national preferred provider organization, but is not registered to do business in Florida.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.  § 1332 (a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different states.

9.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq. (the "RICO Act").

10.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendant is subject to personal jurisdiction in this District.

## BACKGROUND

11.    NATIONWIDE's standard Florida Automobile Insurance Policy (hereinafter the "Policy") provides Personal Injury Protection ("PIP") benefits to its insureds.

12.    With respect to payment of accident related medical expenses under PIP, NATIONWIDE's policy of insurance states in pertinent part that NATIONWIDE must pay

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

eighty (80%) percent of all reasonable and necessary accident related medical expenses.

13.    NATIONWIDE's Policy is a typical Florida indemnity insurance policy under which NATIONWIDE is required to indemnify claimants for eighty (80%) percent of the full cost of their reasonable and necessary medical bills up to a defined limit.

14.    Under the Policy, an insured has the absolute right and freedom to choose his or her medical providers.

15.    Within Policy limits, medical providers have the unrestricted right to be reimbursed eighty (80%) percent of their reasonable and necessary accident related medical expenses.

### Preferred Provider Organization ("PPO") Reductions

16.    The State of Florida's PIP statute directly addresses a health care provider's right to be paid for reasonable charges.  Section 627.736(5), Florida Statutes ("Section 627.736") states:

> Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered ...

17.    Florida statutes permit an automobile insurance company to designate certain medical providers as preferred providers *if* the automobile insurer establishes a legitimate preferred provider organization ("PPO") network by satisfying the strict requirements of Section 627.736(10) which provides as follows:

> (10) An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463.  The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the

4

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policy-holder or applicant, it must also offer a non-preferred provider policy. The insurer shall provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

18.     NATIONWIDE has not offered its insureds preferred policies for PIP automobile insurance. As such, any medical provider who treated or treats a NATIONWIDE insured under a NATIONWIDE PIP auto insurance policy is not a "preferred provider." Therefore, in accordance with the above quoted statute, "the medical benefits provided by the insurer <u>shall</u> be as <u>required</u> by this section." (emphasis added). The medical benefits "required" are 80% of "all reasonable and necessary treatment, expenses..."

19.     Companies such as Beech Street and CCN are sometimes referred to as "brokers" or "managed care companies" in the health care industry. Beech Street and CCN contract with health care providers, such as LARUSSO and JOSEPH for the purpose of uniting health care providers with commercial payors to coordinate and arrange for the delivery of health care services to the payors' legitimate subscribers. Beech Street and CCN may also administer health care claims submitted by health care providers to insurance companies.

20.     The contracts entered into with health care providers by Beech Street and CCN require the health care providers to accept fees for services to subscribers at discounted rates from payors.

21.     Health care providers, by definition, include, but are not limited to, physicians, chiropractors, hospitals, pharmacies, and other health care facilities.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

22.    Payors benefit by paying health care providers at discounted rates.

23.    Health care providers benefit by becoming part of the network of health care providers that are supposed to be marketed by payors to their subscribers and insureds through the use of directories and marketing tools, thus increasing the health care providers' volume of business referrals. Such health care providers are recognized as "preferred providers."

24.    The insurance policies sold or provided by the payors to their subscribers are recognized as "preferred provider policies."

25.    The combination of all parties to this endeavor is recognized as a Preferred Provider Organization.

26.    At all times material herein, LARUSSO entered into a contract under which he agreed to provide his services to Beech Street PPO Subscribers. As consideration for this increased volume, LARUSSO agreed to discount his normal fees. Thereafter, NATIONWIDE began applying LARUSSO's Beech Street contractual discount to LARUSSO's medical bills for his patients who were injured in automobile accidents and covered by a Florida NATIONWIDE PIP Policy.

27.    Upon treatment, JOSEPH timely submitted medical bills to NATIONWIDE on approved forms for these insureds and NATIONWIDE made payment to JOSEPH pursuant to the personal injury protection (PIP) benefits coverage of the insureds.

28.    Instead of making payment to JOSEPH based upon the amount of the submitted medical bills, NATIONWIDE made payment in reduced amounts pursuant to NATIONWIDE's claim of entitlement to JOSEPH's CCN preferred provider managed care network rates.

29.    No agreement exists, however, between NATIONWIDE and CCN entitling NATIONWIDE to CCN preferred provider managed care network rates. Rather, a document

entitled "Letter of Agreement between CCN Managed Care, Inc. and Nationwide Mutual Insurance Company" to be effective for 90 days beginning "as of March 1, 2000," exists which NATIONWIDE contends entitles it to the rate reduction.

30.     This letter of agreement" defined the term of the agreement as follows:

<u>Term and Termination</u>

This agreement is ***not intended to act as a definitive Agreement between the parties***, but rather an Agreement whereby Nationwide can commence operation of the CCN-Affiliated Health Plan Programs on the effective date listed above. ***It is expected that this Agreement will be replaced by a definitive contractual arrangement***, for example, a Payor Agreement, between the parties. All parties agree to work towards the execution of the contract Agreement. ***The term of this Agreement may be extended by the mutual written consent of Nationwide and CCN.***

(Emphasis added.)

31.     The affidavit of NATIONWIDE's Director of Casualty Claims for Florida, Peter Firmat, states that the "letter of agreement" was intended to apply to "all individuals insured by Nationwide Insurance Company."

32.     It is **undisputed** that Nationwide Mutual Fire Insurance Company is a ***separate entity*** from Nationwide Mutual Insurance Company. In fact, as Peter Firmat described in his December 6, 2002 deposition, the "Nationwide umbrella" can be described as follows:

A. [I]t's a group of companies. Each company issues its own contracts and has its employees.

33.     Secondly, the "letter of agreement" is only effective for 90 days following the execution date, here, March 1, 2000. The agreement also contains a provision, which states that, the "term of the agreement … may be extended by the mutual written consent of Nationwide and CCN." The agreement states that during the 90-day period, however, the parties shall "work towards the execution of the contract Agreement" and "[i]t is expected that this Agreement will

be **replaced by a definitive contractual arrangement**, for example, a **Payor Agreement**, between the parties."

34.     NATIONWIDE has not extended this agreement in writing to make it effective beyond 90 days from the "letter of agreement" effective date of March 1, 2000.  (Id. at p. 60, l. 16-23).

35.     NATIONWIDE has a general business practice of improperly reimbursing physicians by their reduced CCN rate amount pursuant to an invalid agreement between NATIONWIDE and CCN.

36.     Section 627.736(10), provides a means for NATIONWIDE to participate in such a PPO and offer a preferred provider policy for personal injury protection automobile insurance to its insureds after it enters into contracts with health care providers.

37.     NATIONWIDE never became a legitimate participant in LARUSSO's or JOSEPH'S respective PPOs and never complied with the requirements of the Section 627.736(10).

38.     Nevertheless, NATIONWIDE has taken discounts on health care providers' bills as if it were a legitimate participant in LARUSSO's and JOSEPH'S PPOs and had complied with Section 627.736 by offering a preferred provider policy of personal injury protection automobile insurance to its insureds, none of which was done by NATIONWIDE.

39.     This unlawful practice (called a "Silent PPO") allows NATIONWIDE to enjoy substantial savings and profits by paying out less in benefits which in turn causes LARUSSO, JOSEPH, and those similarly situated to suffer financial loss, without any consideration from NATIONWIDE for these discounts.

40.     NATIONWIDE, Beech Street, middleman ADP and CCN have collectively

engaged in the previously described "Silent PPO" scheme to reduce benefits paid on auto injury claims.

41.    The "Silent PPO" scheme has emerged primarily in the context of indemnity plans. Indemnity insurers, such as NATIONWIDE, obtain access to PPO networks of preferred providers and their discounts. NATIONWIDE takes advantage of these discounts.

42.    NATIONWIDE is not, however, entitled to take advantage of these legitimate PPO discounts under the terms and conditions of its Florida automobile insurance policies, the Florida PIP statutes, the Beech Street PPA contract and the CCN PPA contract.

43.    NATIONWIDE has not established the statutory prerequisites to be entitled to these PPO discounts.

44.    This Silent PPO scheme contains none of the legitimate steerage mechanisms required by legitimate PPOs. Legitimate steerage mechanisms include creating financial incentives for steering insureds to preferred providers such as lower premiums or lower co-payments, providing education and marketing information to insureds about preferred providers in the network, and printing and distributing preferred provider identification cards.

45.    By using the Silent PPO scheme, NATIONWIDE enjoys substantial savings by paying PIP benefits without the attendant expense of establishing a legitimate PPO network.

46.    Legitimate managed care companies and insurers have knowledge of the illegality of such schemes. The American Association of Preferred Providers has denounced such practices and the American Medical Association has issued an "Action Alert Kit" to its members educating them about Silent PPO schemes.

47.    The Defendants all had knowledge of the illegal nature of this Silent PPO discounting scheme. Silent PPO discounting schemes have been the subject of widespread

discussion in the insurance and managed care industries with many major medical associations denouncing the practice. NATIONWIDE knew of the purpose and requirements of Florida Statutes § 627.736 (10)(1992), as they had offered a PPO Endorsement, discontinued the endorsement but continued to take PPO discounts. Moreover, an adjuster and an expert witness working for NATIONWIDE have given testimony as to the suspect nature of taking PPO discounts where a PPO Endorsement was not sold to an insured.

48.    Beech Street and CCN had direct knowledge of the illegitimate nature of Silent PPOs. Beech Street and CCN drafted their respective PPA's executed the Papas, and had express knowledge of their provisions. Moreover, Beech Street has issued letters to providers discussing the Silent PPO issue, and Beech Street is a member of the American Association of Preferred Provider Organization, which prohibits Silent PPO practices.

49.    Under NATIONWIDE's Silent PPO scheme, Beech Street licensed, leased or otherwise provided its discount database to ADP. ADP incorporated the Beech Street preferred provider discounts into its existing cost containment software product - a product specifically designed to "re-price" medical bills based on preferred provider rates for non-managed care lines of insurance such as property and casualty insurance.

50.    Armed with the Beech Street preferred provider database of discounts, ADP licensed, leased or otherwise sold its PPO re-pricing, software to NATIONWIDE. NATIONWIDE, or ADP on their behalf, systematically processed all Florida medical expense claims through ADP's automated PPO re-pricing product and applied discounts to bills where the medical provider's tax identification number on the bill matched a tax identification number in ADP's database. At no time did LARUSSO have a contract with ADP or NATIONWIDE authorizing discounts to be taken on his medical bills.

51.    NATIONWIDE routinely and systematically used ADP's re-pricing product in conjunction with the Beech Street preferred provider discounts and CCN's re-pricing product to reduce millions of dollars of medical bills.  The discounts were routinely and systematically applied despite the fact that a preferred provider policy was not offered by NATIONWIDE and despite the fact that claimants were not referred steered or directed to preferred providers.

52.    As part of the Defendants' Silent PPO scheme, Beech Street and ADP were paid a percentage of NATIONWIDE's PPO discount savings and/or a per transaction fee for processing claims for NATIONWIDE.

53.    Without complying with the statutory prerequisites for the establishment of an automobile insurance PPO network, NATIONWIDE has systematically discounted medical providers' PIP medical expenses by utilizing PPO discounts.

54.    NATIONWIDE has illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any steerage or other meaningful consideration for such discounts.

## USUAL AND CUSTOMARY ("U&C") REDUCTIONS

55.    NATIONWIDE has provided PIP benefits in the State of Florida pursuant to their policies.

56.    Defendant's Amendatory Endorsement 2387A states that Defendants will pay 80% of usual, customary and reasonable charges incurred for medically necessary services."

57.    Defendant's Amendatory Endorsement 2387A defines "usual, customary and reasonable charges" as charges for services or supplies covered under the policy, which are:

a.  usual and customary in the place where provided; and

b.  not more than what would have been charged if the injured person had no

insurance; and

c. not Experimental Treatment.

58. The definition of the term "usual, customary and reasonable charges" within the aforementioned Amendatory Endorsement 2387A is ambiguous and susceptible of more than one interpretation.

59. Specifically, the word "place," as it is used to define the term "usual, customary and reasonable charges" within the aforementioned Amendatory Endorsement 2387A, is ambiguous and susceptible of more than one interpretation.

60. NATIONWIDE has failed to construe and apply the aforementioned ambiguity within Amendatory Endorsement 2387A strictly against themselves and liberally in favor of STEIN by disbursing PIP benefits to STEIN in amounts that are less than 80% of the charges for services or supplies that are usual and customary in STEIN's office, which is the place where said services and supplies are provided.

61. As a direct and proximate result of NATIONWIDE's aforementioned repeated and routine breach of its policies and Amendatory Endorsement 2387A, Plaintiff has and will continue to suffer damages in an unliquidated amount.

62. NATIONWIDE received timely notice of losses covered under the aforementioned Policies and STEIN made demand for PIP benefits under such policies for reasonable, necessary and related medical services, pursuant to an assignment of benefits.

63. NATIONWIDE has denied coverage for, withheld, and/or reduced the medical bills that were submitted by STEIN, which, along with interest, are due and payable. Specifically, NATIONWIDE has reduced the plaintiff's medical bills in excess of what is permissible under the Florida PIP Statute Sections 627.730 through 627.7405 and the policies of

insurance in question.

64. NATIONWIDE has failed and refused to pay the full amount due and payable to STEIN for reasonable, related and necessary medical, rehabilitative and remedial treatment rendered to insureds under the aforementioned Policies. STEIN and/or the insureds under the aforementioned Policies have complied with all of the conditions precedent to entitle STEIN to recover PIP benefits for said reasonable, related and necessary medical, rehabilitative and remedial treatment under the above-described policy.

### CLASS ACTION ALLEGATIONS

### CLASS

65. LARUSSO, JOSEPH and STEIN bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated. The class is defined to include:

> All Persons who have submitted claims for healthcare benefits under a personal injury protection insurance policy issued by Nationwide Insurance in Florida, either as an insured under a policy or pursuant to a valid assignment from an insured, whose claims were reduced, adjusted or otherwise paid, but not paid in full, during the Class Period.

### 627.736(10) SUB-CLASS

66. LARUSSO and JOSEPH further bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated. The class is defined to include:

> All Persons who have submitted claims for health care benefits under a personal injury protection insurance policy issued by Nationwide Insurance, either as an insured under a policy or pursuant to a valid assignment from an insured, whose claims were reduced, adjusted or otherwise not paid in full based on PPO reductions taken pursuant to Section 627.736(10), Florida Statutes during the Class Period.

67. There are questions of law and fact that are common to all members of the class,

which questions predominate over any question affecting only individual class members.

68.    The principal common issues include the following:

(a)    whether NATIONWIDE violated Section 627.736, Florida Statutes, by paying personal injury protection medical expense claims at discounted Preferred Provider rates;

(b)    whether NATIONWIDE's processing of the PPO discounts is permissible under state law or federal law;

(c)    whether LARUSSO, JOSEPH and those similarly situated are entitled to compensatory, statutory, or punitive damages against NATIONWIDE because of its illegal conduct; and

(d)    whether LARUSSO, JOSEPH and the class are entitled to an injunction preventing the continued disclosure and/or use of their discounts by NATIONWIDE and the application of these discounts to automobile personal injury protection medical expense claims.

69.    The class is comprised of all insureds and/or health care providers whose medical bills were discounted by NATIONWIDE as alleged herein.

70.    The amounts of the discounts are contained in NATIONWIDE's computer systems and on the EOBs and checks mailed by NATIONWIDE to LARUSSO, JOSEPH the members of the class.

71.    LARUSSO's and JOSEPH's claims are typical of the claims of all members of the class because the claims are based on the same legal and remedial theories.

72.    LARUSSO and JOSEPH will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

73.    LARUSSO and JOSEPH are similarly situated with, and have suffered similar

injuries as, the members of the class that he seeks to represent.

74.    LARUSSO and JOSEPH have retained counsel experienced in class action cases and health care litigation.

75.    Neither LARUSSO, JOSEPH, nor counsel, has any interest that may cause them to not vigorously pursue this action.

76.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

(a)    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

(b)    concentration of the litigation concerning this matter in this Court is desirable;

(c)    the claims of the representative Plaintiffs are typical of the claims of the members of the class;

(d)    a failure of justice will result from the absence of a class action; and

(e)    the class and the difficulties likely to be encountered in the management of this class action are not great.

77.    The class is so numerous as to make it impracticable to join all members of the class as plaintiffs.

78.    NATIONWIDE has discounted thousands of medical bills based on Beech Street and CCN Preferred Provider discounted rates.  Many health care providers may not even be aware of NATIONWIDE's sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of pursuing individual litigation.

79.    In contrast, on a class-wide basis, NATIONWIDE has saved millions of dollars

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

by accessing and utilizing the discounted rates of health care providers.

## 627.736(1) SUB-CLASS

80.    STEIN further brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated.   The class is defined to include:

> All Persons who have submitted claims for health care benefits under a personal injury protection insurance policy issued by Nationwide Insurance, either as an insured under a policy or pursuant to a valid assignment from an insured, whose claims were reduced, adjusted or otherwise not paid in full based on UCR reductions taken pursuant to Section 627.736 (1), Florida Statutes during the Class Period.

81.    STEIN is a a member of the 627.736(1) Sub-Class.

82.    The  members  of  the  627.736(1)  Sub-Class  are  currently  unaware  of NATIONWIDE's  underpayment  of  their  charges  for  medically  necessary  services,  as contemplated  in  NATIONWIDE's  Amendatory  Endorsement  2387A,  which  governs NATIONWIDE's obligations to the 627.736(1) Sub-Class.

83.    The  627.736(1)  Sub-Class  is  so  numerous  that  joinder  of  all  members  is impracticable.

84.    Common issues of law and fact exist between the 627.736(1) Sub-Class and NATIONWIDE.

85.    STEIN's claims are typical of the claims of the 627.736(1) Sub-Class.

86.    STEIN has retained counsel identified below who will adequately protect the interests of the 627.736(1) Sub-Class.

87.    A Class maintained under Federal Rule of Civil Procedure 23 is appropriate because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual members of the class, which

would establish incompatible standards of conduct for NATIONWIDE, as the parties opposing the 627.736(1) Sub-Class.

88.    A Class under Federal Rule of Civil Procedure 23 is appropriate because NATIONWIDE has acted on grounds generally applicable to the 627.736(1) Sub-Class, thereby making appropriate final declaratory relief with respect to the 627.736(1) Sub-Class as a whole.

89.    A Class under Federal Rule of Civil Procedure 23 is appropriate because questions of law or fact common to members of the 627.736(1) Sub-Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for this controversy's fair, efficient adjudication.

90.    A class action is superior to other available methods for this controversy's fair, efficient adjudication

### 627 SUB-CLASS

91.    LARUSSO and JOSEPH further bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated. The class is defined to include

> All Persons who have submitted claims for health care benefits under a personal injury protection insurance policy issued by Nationwide Insurance, either as an insured under a policy or pursuant to a valid assignment from an insured, whose claims were reduced, adjusted or otherwise not paid in full for reasons other than reductions taken pursuant to Sections 627.736(10) or 627.736(1), Florida Statutes during the Class Period.

92.    JOSEPH and LARUSSO are members of the aforementioned 627 Sub-Class.

93.    The members of the 627 Sub-Class are currently unaware of NATIONWIDE's underpayment of their charges for medically necessary services.

94.    The aforementioned 627 Sub-Class is so numerous that joinder of all members is

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

impracticable.

95.    Common issues of law and fact exist between the 627 Sub-Class and NATIONWIDE.

96.    JOSEPH's and LARUSSO's claims are typical of the claim of the 627 Sub-Class.

97.    JOSEPH and LARUSSO have retained counsel identified below who adequately protected the interests of the 627 Sub-Class.

98.    The class maintained under Federal Rule of Civil Procedure 23 is appropriate because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual members of the class, which would establish incompatible standards of conduct for NATIONWIDE, as the party opposing the 627 Sub-Class.

99.    The class and the Federal Rule of Civil Procedure 23 is appropriate because NATIONWIDE has acted on grounds generally applicable to the 627 Sub-Class, thereby making appropriate, declaratory relief with respect to the 627 Sub-Class as a whole.

100.    A class under Federal Rule of Civil Procedure 23 is appropriate because questions of law or facts common to the members of the 627 Sub-Class predominate over any questions affecting only individual members.

101.    A class action is superior to other available methods for this controversy's fair, efficient adjudication.


## AS AND FOR A FIRST
## CAUSE OF ACTION
### (Unjust Enrichment-627.736(10) Sub-Class)

102.    LARUSSO and JOSEPH repeat and reallege each and every allegation contained

in Paragraphs "1" through "101" above, with the same force and effect as if set forth fully herein.

103.    LARUSSO, JOSEPH and the class conferred benefits upon NATIONWIDE by providing health care services to individuals insured by NATIONWIDE.

104.    LARUSSO, JOSEPH and the class billed NATIONWIDE the reasonable value for these services.

105.    NATIONWIDE improperly paid these bills at reduced rates.

106.    NATIONWIDE has provided no consideration to LARUSSO, JOSEPH and the class for the retention of the discounts by NATIONWIDE.

107.    NATIONWIDE has reaped the benefit of  substantial monetary savings on PIP claims by wrongfully and illegally applying the PPO discounted rates to Florida PIP medical expense claims.

108.    NATIONWIDE had knowledge that it reaped said financial benefits to the detriment of LARUSSO, JOSEPH and the members of the class by voluntarily accepting and retaining said benefits.

109.    Such savings constitute unjust enrichment for NATIONWIDE and it would be inequitable under the circumstances for NATIONWIDE to retain the benefits received from LARUSSO, JOSEPH and the members of the class without paying the full value thereof to LARUSSO, JOSEPH and the class members.

**AS AND FOR A SECOND
CAUSE OF ACTION
(Third-Party Beneficiary Breach of Contract-627.736(10) Sub-Class)**

110.    LARUSSO and JOSEPH repeat and reallege each and every allegation contained in Paragraphs "1" through "101" above, with the same force and effect as if set forth fully herein.

111.    NATIONWIDE and its insureds who purchased its Florida PIP automobile

insurance policy entered into a contract of insurance.

112.    NATIONWIDE's contract provided that in the event an insured was involved in an automobile accident, NATIONWIDE would pay, on the insured's behalf, eighty (80%) percent of all reasonable and necessary medical expenses incurred.

113.    LARUSSO, JOSEPH and the other members of the class provided medical services to NATIONWIDE insureds who were injured in automobile accidents.

114.    LARUSSO, JOSEPH and the members of the class are intended third-party beneficiaries of NATIONWIDE's automobile insurance agreements.

115.    LARUSSO, JOSEPH and the members of the class were to be paid eighty (80%) percent of all reasonable and necessary medical expenses incurred and billed.

116.    NATIONWIDE breached the agreement by improperly paying medical expenses at reduced rates.

117.    As a result, LARUSSO, JOSEPH and the putative class members have suffered damages directly and proximately caused by NATIONWIDE's breach of its insurance agreements with its insureds.

### AS AND FOR A THIRD
### CAUSE OF ACTION
#### (RICO Act Violations-All Sub-Classes)

118.    LARUSSO, JOSEPH, and STEIN repeat and reallege each and every allegation contained in Paragraphs "1" through "101" above, with the same force and effect as if set forth fully herein.

119.    NATIONWIDE formed an association-in-fact enterprise designed to reduce payments made to Beech Street  and CCN preferred providers on all Florida PIP medical expense claims submitted to NATIONWIDE.  The "association- in- fact" is known as a "silent

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

PPO."

120.    NATIONWIDE also found an association-in-fact enterprise designed to reduce payments made to providers on all Florida PIP medical expense claims submitted to NATIONWIDE.

121.    NATIONWIDE, with the knowing or grossly negligent cooperation of Beech Street, CCN, and others participated, directly and indirectly, in the activities of this enterprise through a pattern of racketeering activity, as more fully set forth below.

122.    The activities of this enterprise affected commerce.

123.    The pattern of racketeering activity consisted of multiple acts of mail and wire fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

124.    The pattern of racketeering activity has been continuous for at least two years, and, on information and belief, will continue into the future.

125.    In furtherance of the pattern of racketeering activity, NATIONWIDE has engaged in a continuous scheme and artifice to defraud LARUSSO, JOSEPH, and STEIN and those similarly situated, of money as follows:

## BEECH STREET/ADP

126.    Beech Street solicited LARUSSO by mail to join its PPO network.  Beech Street mailed its marketing and preferred provider agreements to potential preferred providers through use of the United States Mails.  Beech Street entered into a PPA with LARUSSO and class members which did not authorize the disclosure, sale, lease or license of preferred provider discounts to NATIONWIDE or ADP.

127.    Beech Street entered into an agreement with ADP (hereinafter referred to as a "Lease Agreement") whereby its disclosed, leased and/or licensed the use of the confidential,

proprietary Beech Street preferred provider database to ADP in a secondary market transaction.

128.    In exchange for providing ADP access to said discounts, Beech Street agreed to receive a fee from ADP based on a percentage of anticipated insurance company savings and/or based on a flat fee structure each time a discount would be applied.

129.    As a PPO broker in the PPO discount secondary black market, ADP entered into a broker agreement (hereinafter referred to as a "Broker Agreement") with NATIONWIDE which allowed for the disclosure and lease and/or license of the Beech Street preferred provider database to NATIONWIDE.

130.    ADP incorporated the Beech Street database into its PPO re-pricing insurance cost containment software and thereafter applied, or allowed NATIONWIDE to apply, Beech Street preferred provider discounts to medical expense claims submitted to NATIONWIDE by Beech Street preferred providers.

131.    ADP, which is based in Maryland, NATIONWIDE and Beech Street transferred claim information, medical bills, EOBs, compensation information and documentation and other documentation and information necessary to carry out this scheme via the United States mails and/or by wire.

132.    After computer application of the discounts, ADP and NATIONWIDE printed Explanation of Benefit forms ("EOBs") on ADP's form EOBs which indicated the PPO discount and the reduced amount owed after application of the discount.

133.    Accompanying the EOB is often an additional form summarizing a claimant's insurance benefits (hereinafter "Summary Benefit Form") also indicating that a PPO discount was applied.

134.    By use of the United States mail, ADP and NATIONWIDE, with the consent and

knowledge of Beech Street, thereafter transmitted or caused to be transmitted said EOBs, Summary Benefit Forms, and reduced claim checks to medical providers and persons insured by NATIONWIDE.

135. Said EOBs and Summary Benefit Forms falsely represented that the NATIONWIDE and ADP were entitled to apply a Beech Street PPO discount to the claim.

136. Said EOBs and Summary Benefit Forms falsely claimed the "AMOUNT OWED" to be less than the amount actually owed and also falsely decreased a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount.

137. Said EOBs also falsely stated that the discounted amount is "considered payment in full" and that all "appeals" regarding the PPO reductions must be taken up with the PPO, not ADP or the insurer.

138. NATIONWIDE engaged in interstate telephone calls, computer communications, and/or wire communications and transactions to transmit information that was false and to exchange fees and compensation essential to the scheme.

139. In the above described manner, NATIONWIDE was able to gain access to managed care contract rates for application to Florida PIP medical expense claims without providing any consideration to LARUSSO or members of the purported class, and without ever entering into a managed care agreement with any medical providers.

140. This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars has directly caused monetary damages to LARUSSO and members of the class.

141. NATIONWIDE's, Beech Street's and ADP's conduct gives rise to claims under 18 U.S.C. § 1964(a) of RICO and permits the recovery of treble damages against

NATIONWIDE for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

142.    LARUSSO and the class members are "persons" within the meaning of 18 U.S.C. § 1964(c).

143.    At all times relevant hereto, LARUSSO and class members were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

144.    With respect to the activities alleged herein, NATIONWIDE, Beech Street and ADP acted at all times with malice toward the class, intent to engage in the conduct complained of for their own benefit and with knowledge that such conduct constituted unlawful activity. Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which NATIONWIDE, Beech Street and ADP are subject, the same amounting to actionable wantonness.

145.    With respect to the activities alleged herein, NATIONWIDE, Beech Street and ADP aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c).

146.    NATIONWIDE operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

147.    In furtherance of this scheme, NATIONWIDE, Beech Street and ADP interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests, to which NATIONWIDE and Beech Street are not entitled, through the exploitation of discount rates.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

148.    With respect to the overt acts and activities alleged herein, NATIONWIDE communicated and conspired with Beech Street and middleman ADP to violate 18 U.S.C. §§ 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).

149.    NATIONWIDE communicated with Beech Street and middleman ADP so that it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

150.    NATIONWIDE communicated with Beech Street and middleman ADP so that it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which NATIONWIDE, Beech Street and ADP were not entitled, through the exploitation of a proprietary discount rate.

151.    The numerous predicate acts of mail and wire fraud and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by NATIONWIDE, Beech Street and ADP to defraud LARUSSO and the purported class of money and property interests under false pretenses; to deprive LARUSSO and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and to place NATIONWIDE's, Beech Street's and ADP's financial interests over the confidential records of LARUSSO and the class so that NATIONWIDE, Beech Street and ADP could make greater profits.

152.    LARUSSO, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

## CCN

153.    CCN solicited JOSEPH by mail to join its PPO network.  CCN mailed its marketing and preferred provider agreements to potential preferred providers through use of the

United States Mails. CCN entered into a PPA with JOSEPH and class members which did not authorize the disclosure, sale, lease or license of preferred provider discounts to NATIONWIDE.

154.    NATIONWIDE incorporated the CCN database into its PPO re-pricing insurance cost containment software and thereafter applied CCN preferred provider discounts to medical expense claims submitted to NATIONWIDE by CCN preferred providers.

155.    CCN transferred claim information, medical bills, EOBs, compensation information and documentation and other documentation and information necessary to carry out this scheme via the United States mails and/or by wire.

156.    After computer application of the discounts NATIONWIDE printed Explanation of Benefit forms ("EOBs") which indicated the PPO discount and the reduced amount owed after application of the discount.

157.    Accompanying the EOB is often an additional form summarizing a claimant's insurance benefits (hereinafter "Summary Benefit Form") also indicating that a PPO discount was applied.

158.    By use of the United States mail, NATIONWIDE, with the consent and knowledge of CCN, thereafter transmitted or caused to be transmitted said EOBs, Summary Benefit Forms, and reduced claim checks to medical providers and persons insured by NATIONWIDE.

159.    Said EOBs and Summary Benefit Forms falsely represented that NATIONWIDE and was entitled to apply a CCN PPO discount to the claim.

160.    Said EOBs and Summary Benefit Forms falsely claimed the "AMOUNT OWED" to be less than the amount actually owed and also falsely decreased a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount.

161.    Said EOBs also falsely stated that the discounted amount is "considered payment in full" and that all "appeals" regarding the PPO reductions must be taken up with the PPO.

162.    NATIONWIDE engaged in interstate telephone calls, computer communications, and/or wire communications and transactions to transmit information that was false and to exchange fees and compensation essential to the scheme.

163.    In the above described manner, NATIONWIDE was able to gain access to managed care contract rates for application to Florida PIP medical expense claims without providing any consideration to JOSEPH or members of the purported class, and without ever entering into a managed care agreement with any medical providers.

164.    This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars has directly caused monetary damages to JOSEPH and members of the class.

165.    NATIONWIDE's and CCN's conduct gives rise to claims under 18 U.S.C. § 1964(a) of RICO and permits the recovery of treble damages against NATIONWIDE for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

166.    JOSEPH and the class members are "persons" within the meaning of 18 U.S.C. § 1964(c).

167.    At all times relevant hereto, JOSEPH and the class members were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

168.    With respect to the activities alleged herein, NATIONWIDE and CCN acted at all times with malice toward the class, intent to engage in the conduct complained of for their own benefit and with knowledge that such conduct constituted unlawful activity.  Such conduct

was done with reckless disregard for the rights of the class as well as the laws, to which NATIONWIDE and CCN are subject, the same amounting to actionable wantonness.

169.    With respect to the activities alleged herein, NATIONWIDE and CCN aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c*)*.

170.    NATIONWIDE operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

171.    In furtherance of this scheme, NATIONWIDE and CCN interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests, to which NATIONWIDE and CCN are not entitled, through the exploitation of discount rates.

172.    With respect to the overt acts and activities alleged herein, NATIONWIDE communicated and conspired with CCN to violate 18 U.S.C. §§ 1962(a) and (c), all in violation of 18 U.S.C. § 1962(d).

173.    NATIONWIDE communicated with CCN so that it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

174.    NATIONWIDE communicated with CCN so that it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which NATIONWIDE and CCN were not entitled, through the exploitation of a proprietary discount rate.

175.    The numerous predicate acts of mail and wire fraud and interference with the

operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by NATIONWIDE and CCN to defraud JOSEPH and the purported class of money and property interests under false pretenses; to deprive JOSEPH and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and to place NATIONWIDE's and CCN's financial interests over the confidential records of JOSEPH and the class so that NATIONWIDE and CCN could make greater profits.

176.    JOSEPH, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

### U&C CLASS

177.    NATIONWIDE incorporated into its software a replacing structure whereby it supplies usual and customary reductions and other reductions to medical expense claims submitted to NATIONWIDE by Florida medical providers. Such a computer application of the discounts, NATIONWIDE printed EOBs which indicated the discounts and reduced the amount owed after application of the discounts.

178.    By use of the United States mail, NATIONWIDE, with the consent and knowledge of its association-in-fact enterprise, thereafter transmitted a cost to be transmitted so that EOBs and reduced claim checks to medical providers and persons insureds by NATIONWIDE.

179.    Said EOBs falsely represented that NATIONWIDE was entitled to a reduce in the amount billed by providers.

180.    Said EOBS falsely claimed the amount owed to be less than the amount actually owed and also falsely decreased the claimants' deductible, thereby exposing claims to liability

for the fraudulently discounted amount.

181.    NATIONWIDE used interstate telephone calls, computer communications, and/or wire communications, and/or wire communications and transactions to transmit information that was false and to exchange fees and compensation essential to the scheme.

182.    This scheme to take unauthorized discounts with millions of dollars has directly caused monetary damages to STEIN and members of the class.

183.    NATIONWIDE conduct gives rise to claims under 18 U.S.C. § 1964(b) of RICO and permits the Treble damages against NATIONWIDE for violations under 18 U.S.C. § 1962(c), for a conspiracy to violate 18 U.S.C. § 1962(a) and violation of 18 U.S.C. § 1962(e) and for seeking to aide and abet and aiding and abetting violations of 18 U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

184.    STEIN and the Class Members are "persons" within the meaning of 18 U.S.C. § 1964(c).

185.    At all times relevant hereto, STEIN and the Class Members were and are "persons" within the meaning of 18 U.S.C. § 1961(b).

186.    With respect to the overt action activities alleged herein, NATIONWIDE communicated and conspired to violate 18 U.S.C. §§ 1962(a) and (b), all in violation of 11 U.S.C. 1962(b).

187.    The numerous predicate acts of mail and wire fraud and interference with the operations of legitimate provisions of medical services are part of the common, fraudulent and extortionist scheme by NATIONWIDE to defraud STEIN and the purported class of money and property interests under false pretenses; to deprive STEIN and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient's

doctor fiduciary relationship; and to place NATIONWIDE's financial interests over the confidential records of STEIN and the class so that NATIONWIDE can make greater profits.

188.    STEIN and the purported class, as victims of this unlawful activity, have and continue to suffer losses.

## A.    **RACKETEERING ACTIVITIES**.

189.    In carrying out the overt acts and fraudulent scheme described above, NATIONWIDE, Beech Street, and CCN engaged in *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 961 et seq., as stated below.

190.    Section 1961(l) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

191.    The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§ 1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

### 1.  **18 U.S.C. §§ 1341 and 1346, and 18 U.S.C. §§ 1343 and 1346**

192.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or

attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, NATIONWIDE, Beech Street and CCN, in violation of 18 U.S.C. § 1341 and § 1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.

193.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, NATIONWIDE, Beech Street and CCN, in violation of 18 U.S.C. §§ 1343 and 1346, transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts.    In this manner, NATIONWIDE, was knowingly violating obligations of Beech Street and CCN to LARUSSO, JOSEPH, and others similarly situated to provide "honest services."

194.    NATIONWIDE knowingly induced Beech Street and CCN to deprive LARUSSO, JOSEPH and others similarly situated of "honest services."

195.    In those matters and things sent or delivered by the United States Postal Service referred to above, NATIONWIDE, Beech Street and CCN falsely and fraudulently represented to LARUSSO, JOSEPH and the class that:

(a)    NATIONWIDE's payments were for the amount "billed" for the reasonable value of the services, and

(b)    that NATIONWIDE was entitled to a PPO discount for LARUSSO,

JOSEPH and the class under a system that legitimately provides education, marketing and economic incentives intended to "steer" more patients and to provide other benefits to health care providers. NATIONWIDE failed, however, to disclose to LARUSSO, JOSEPH and the class that its EOBs were based upon illegal discounts designed to maximize profits on discounts illegally obtained through LARUSSO's and JOSEPH's proprietary information. NATIONWIDE thus failed to disclose material facts regarding NATIONWIDE's internal policies and practices specifically designed to reduce or limit the level of payment discussed in detail above.

196.    With respect to its unlawful activities described above, NATIONWIDE also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§ 1341, 1343, and 1346.

197.    NATIONWIDE intentionally and knowingly deceived LARUSSO, JOSEPH and the purported class referred to above for the purpose of financial gain. NATIONWIDE either knew, or recklessly disregarded, that the illegal discounts described above were material.

198.    LARUSSO, JOSEPH and the class have been injured in their business or property by NATIONWIDE's overt acts and racketeering activities in amounts to be determined at trial.

### 2.  18 U.S.C. § 1951(b)(2)

199.    During the relevant times and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, NATIONWIDE, Beech Street and CCN, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. § 1951.

200.    NATIONWIDE unlawfully attempted to and/or did induce Beech Street and

middleman CCN to cause LARUSSO, JOSEPH and numerous other class members to part with various property interests to which NATIONWIDE was and is not entitled, including the intangible property right of health care providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy.

201.    NATIONWIDE's conduct induced Beech Street and CCN to provide it with the names of health care providers and their discounts and exploited a fear of economic loss and/or loss of business by LARUSSO, JOSEPH and others similarly situated in violation of 18 U.S.C. § 1951(b)(2).

202.    In furtherance of the scheme or artifice to defraud to obtain money by false pretenses from LARUSSO, JOSEPH and the class, NATIONWIDE communicated with Beech Street and CCN to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which NATIONWIDE was not entitled through the exploitation of health care providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts.

203.    NATIONWIDE either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by LARUSSO, JOSEPH and the class.

204.    NATIONWIDE's, Beech Street's and CCN's overt acts and fraudulent and extortionate racketeering activities has and continues to defraud LARUSSO, JOSEPH and the members of the class, of money, has and continues to unlawfully influence and interfere with the relationship of Beech Street and CCN and LARUSSO, JOSEPH and the purported class, as well as interfering with the fiduciary relationship between LARUSSO, JOSEPH and members of the purported class and their patients.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

205.    LARUSSO, JOSEPH and the purported class have, therefor, been injured in their business or property by NATIONWIDE's overt acts and racketeering activities in amounts to be determined at trial.

### 3. 18 U.S.C. § 1952(a).

206.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud LARUSSO, JOSEPH and the purported class, NATIONWIDE, Beech Street and CCN and their respective employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. § 1952(a).

207.    NATIONWIDE's, Beech Street's and CCN's overt acts and fraudulent racketeering activity has and continues to defraud LARUSSO, JOSEPH and the class of money.

### B.    PATTERN OF RACKETEERING ACTIVITY.

208.    NATIONWIDE, Beech Street and CCN have engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years.  Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including LARUSSO, JOSEPH and the class.

209.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by NATIONWIDE, Beech Street and CCN, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

## C.    RICO VIOLATIONS OF 18 U.S.C. §§ 1962 (d).

210.    LARUSSO's and JOSEPH's claim for relief also arises under 18 U.S.C. § 1964 (c) of RICO and seeks to recover actual and treble damages for NATIONWIDE's, Beech Street's and CCN's violations of 18 U.S.C. §§ 1962(c) and for its violations of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

### 1.    Section 1962(c) claim.

211.    LARUSSO, JOSEPH, and STEIN repeat and reallege each and every allegation contained in Paragraphs "1" through "101" above, with the same force and effect as if set forth fully herein.

212.    18 U.S.C. § 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

213.    18 U.S.C. § 1961(3) of RICO states that a "person" includes any individual or entity capable of holding a legal or beneficial interest in property.

214.    18 U.S.C. § 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

215.    For purposes of this 18 U.S.C. § 1962(c) claim, the persons consist of NATIONWIDE, Beech Street and CCN.  The enterprise is an association-in-fact consisting of NATIONWIDE, Beech Street and CCN by virtue of its control over physicians, medical specialists, medical laboratories, hospitals, health care clinics, pharmacies, home health care agencies, and other miscellaneous health care providers, all of which have the purpose of

providing health care services to NATIONWIDE's insureds making PIP claims under NATIONWIDE's automobile insurance policies.

216.    This 18 U.S.C. § 1962(c) enterprise is distinct from NATIONWIDE and includes many persons who are not employees of NATIONWIDE and many entities that are not owned by NATIONWIDE. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

217.    NATIONWIDE is associated with Beech Street and CCN in the 18 U.S.C. § 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described herein. LARUSSO, JOSEPH and the purported class members are directly and proximately injured both by this pattern of activity and by NATIONWIDE's conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

### 2.    Section 1962(d) Claim.

218.    LARUSSO, JOSEPH, and STEIN repeat and reallege each and every allegation contained in Paragraphs "1" through "101" above, with the same force and effect as if set forth fully herein.

219.    This claim for relief also arises under 18 U.S.C. § 1964(c) of RICO and seeks to recover actual and treble damages for NATIONWIDE's, Beech Street's and CCN's violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

220.    18 U.S.C. § 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

associated in fact although not a legal entity."

221.    18 U.S.C. § 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

222.    For purposes of the claim of a conspiracy in violation of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a), the persons under the latter subsection consist of NATIONWIDE, Beech Street, CCN and the enterprise consists of NATIONWIDE and its investment division, which further profits from the ill-gotten gains.

223.    At all times relevant herein, Beech Street, CCN and NATIONWIDE's investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a).

224.    The NATIONWIDE investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud LARUSSO, JOSEPH, and STEIN and the purported class of money and to deprive them of their intangible right of honest services from middleman Beech Street.

225.    NATIONWIDE sells insurance nationwide. Assets generated from NATIONWIDE's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars.

226.    NATIONWIDE derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest,

directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a).

227.    This use of investment injures LARUSSO, JOSEPH, STEIN and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect health care providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described herein.

228.    As demonstrated in detail above, NATIONWIDE has engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require LARUSSO, JOSEPH, STEIN and the purported class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud LARUSSO, JOSEPH, STEIN and the class of money, and to unlawfully interfere with their physician-patient relationship.

229.    NATIONWIDE's pattern of fraudulent and extortionate racketeering acts include, but are not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by NATIONWIDE's inducement to Beech Street and CCN to allow NATIONWIDE to defraud LARUSSO, JOSEPH, and STEIN and the purported class.

230.    The nature of the above described acts of NATIONWIDE constitutes material misrepresentations that give rise to an inference that NATIONWIDE knew it was violating the objective of 18 U.S.C. § 1962(d) by violating 18 U.S.C. §§ 1962(a) and (c), through its ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering

activity.

231.    As a direct and proximate result of NATIONWIDE's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate IS U.S.C. §§ 1962(a) and (c), LARUSSO, JOSEPH and the class have been and are continuing to be injured in their business or property.

232.    Pursuant to 18 U.S.C. § 1964(c), LARUSSO, JOSEPH, and STEIN are entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

233.    NATIONWIDE has sought to and has engaged in the commission of and continues to commit overt acts and the aforesaid described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by NATIONWIDE from such pattern of racketeering activity, to-wit:

(a)    multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

(b)    multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

(c)    multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

(d)    multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

(e)    multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and

(f)    multiple instances of violations of 18 U.S.C. § 1954.

234.    NATIONWIDE's violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting NATIONWIDE's illegal acts constituting a pattern of racketeering activity is fashioned and

imposed by this Court.

### AS AND FOR A FOURTH
### <u>CAUSE OF ACTION</u>
**(Declaratory Judgment-627.736(10) Sub-Class)**

235.    LARUSSO and JOSEPH repeat and reallege each and every allegation contained in Paragraphs "1" through "101" above, with the same force and effect as if set forth fully herein.

236.    As previously alleged, NATIONWIDE has improperly taken advantage of discounts to which it is not entitled for all the reasons that have been set forth in the previous paragraphs of this Complaint.

237.    NATIONWIDE has taken these discounts in breach of the terms and conditions of their automobile insurance policies.  Said policies are indemnity policies that do not provide for preferred provider benefits or the application of preferred provider rates.

238.    By using Beech Street's and CCN's preferred provider rates to limit the payment of LARUSSO's, JOSEPH's and class members' PIP medical bills, NATIONWIDE has imposed a limitation on benefits that is not contained in their automobile insurance policies.  LARUSSO, JOSEPH and the class members are intended third-party beneficiaries of said insurance policies and are entitled to a declaration that NATIONWIDE's payments of their PIP medical bills at preferred provider rates is a breach of the applicable insurance contracts.

### AS AND FOR A FIFTH
### <u>CAUSE OF ACTION</u>
**(Violation of Section 627.736, Florida Statutes-627.736(10) Sub-Class)**

239.    LARUSSO and JOSEPH repeat and reallege each and every allegation contained in Paragraphs "1" through "101" above, with the same force and effect as if set forth fully herein.

240.   At all times material herein, LARUSSO, JOSEPH and the members of the class that he seeks to represent presented or had presented on their behalf reasonable and necessary medical charges to NATIONWIDE for treatment of patients entitled to PIP medical expense benefits pursuant to a Florida automobile insurance policy issued by NATIONWIDE.

241.   Pursuant to Section 627.736, Florida Statutes:

**(1)     Required benefits.**  Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(d), to a limit of $10,000 of loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:

(a)     Medical benefits.  Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through a prayer alone for healing, in accordance with his religious beliefs.

. . .

**(4)     Benefits; when due.**

. . .

(g)     It is a violation of the insurance code for an insurer to fail to timely provide benefits as required by this section with such frequency as to constitute a general business practice.

242.   Effective October 1, 1991, as amended, effective October 1, 1992, Section 627.736(10), Florida Statutes provides:

An insurer may negotiate and enter into contracts with licensed health care providers for the benefits described in this section referred to in this section as "preferred providers" which shall include health care providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for

personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a nonpreferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, it must also offer a nonpreferred provider policy. The insurer shall provide each policyholder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

243.    Pursuant to Section 627.736(10), Florida Statutes:  "If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, <u>the medical benefits provided by the insurer shall be as required by this section</u>."  (Emphasis added).

244.    Pursuant to Section 627.736(10), Florida Statutes:  "If the insured elects to use a provider who is a preferred provider, the insurance may pay medical benefits <u>in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits</u>."  (Emphasis added).

245.    In violation of the foregoing provisions of Section 627.736, NATIONWIDE has implemented a policy and has conducted itself in a manner with such frequency as to constitute a general business practice whereby NATIONWIDE has paid and continues to pay medical benefits at a rate less than the reasonable and necessary rate.

246.    NATIONWIDE, as part of its general business practice, has been paying medical benefits at eighty (80%) percent of preferred provider rates.

247.    At all times material hereto, NATIONWIDE did not offer preferred provider policies.

248.    Since NATIONWIDE did not offer preferred provider policies, NATIONWIDE was required to pay eighty (80%) percent of all reasonable and necessary medical expenses.

249.    If NATIONWIDE issued and sold preferred provider policies, NATIONWIDE would then be entitled to pay medical benefits in excess of the benefits required and may waive or lower the amounts of any deductible that applies to such medical benefits.

250.    By paying PIP benefits at a preferred provider rate, NATIONWIDE has significantly reduced its payments and obligations under PIP policies throughout the State of Florida.

251.    NATIONWIDE's actions are in direct violation of Section 627.736, Florida Statutes.

252.    NATIONWIDE has wrongfully reduced LARUSSO's, JOSEPH's and the class members' PIP medical expense claims based on Beech Street preferred provider discounts.

253.    NATIONWIDE is not entitled to said Beech Street or CCN preferred provider discounts.    NATIONWIDE has failed to offer insureds a PPO endorsement and also failed to otherwise comply with the requirements of Section 627.736(10), Florida Statutes.

254.    Despite this failure, NATIONWIDE has reduced and continues to reduce PIP automobile insurance medical expense claims of LARUSSO, JOSEPH and the purported class members by accessing and applying Beech Street or CCN preferred provider discounts.

255.    Accordingly, an outstanding balance remains on all automobile insurance PIP medical expense claims that NATIONWIDE has reduced based on Beech Street or CCN preferred provider discounts.

256.    Pursuant to Section 627.736(4)(b): "Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is

furnished written notice of the fact of a covered loss and of the amount of same."

257.    Pursuant to Section 627.736(c): "All overdue payments shall bear interest at the rate of 10 percent per year."

258.    NATIONWIDE has failed to pay the full amount of the reasonable and necessary medical expense billed by LARUSSO, JOSEPH and the class members within 30 days after NATIONWIDE was furnished with written notice of the reasonable and necessary amount of the medical expense.

259.    NATIONWIDE has failed to pay interest on the remaining balances owed to LARUSSO, JOSEPH  and the class members.

260.    By reducing LARUSSO's, JOSEPH's and the purported class members' legitimate medical expenses by the application of Beech Street or CCN preferred provider discount rates, NATIONWIDE has violated Section 627.736, Florida Statutes.

261.    As a result of NATIONWIDE's failure to comply with Section 627.736, Florida Statutes, LARUSSO, JOSEPH and the members of the purported class have suffered damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract-627.736(1) Sub-Class)

262.    STEIN repeats and realleges each and every allegation contained in Paragraphs "1" through "101" above, with the same force and effect as if set forth fully herein.

263.    Since December 15, 1997, NATIONWIDE, has provided PIP benefits in the State of Florida pursuant to an amendatory endorsement (Endorsement 2387A) to their Policies.

264.    NATIONWIDE'S Amendatory Endorsement 2387A states that NATIONWIDE will pay 80% of usual, customary and reasonable charges incurred for medically necessary services."

265.    NATIONWIDE's Amendatory Endorsement 2387A defines "usual, customary

and reasonable charges" as charges for services or supplies covered under the policy, which are:

    (a)    usual and customary in the <u>place</u> where provided; and

    (b)    not more than what would have been charged if the injured person had no insurance; and

    (c)    not Experimental Treatment.

266.    The definition of the term "usual, customary and reasonable charges" within the aforementioned Amendatory Endorsement 2387A is ambiguous and susceptible of more than one interpretation.

267.    Specifically, the word "place," as it is used to define the term "usual, customary and reasonable charges" within the aforementioned Amendatory Endorsement 2387A, is ambiguous and susceptible of more than one interpretation.

268.    NATIONWIDE has failed to construe and apply the aforementioned ambiguity within Amendatory Endorsement 2387A strictly against themselves and liberally in favor of STEIN by disbursing PIP benefits to STEIN in amounts that are less than 80% of the charges for services or supplies that are usual and customary in the plaintiff's office, which is the place where said services and supplies are provided.

269.    As a direct and proximate result of NATIONWIDE's aforementioned repeated and routine breach of its Policies and Amendatory Endorsement 2387A, STEIN has and will continue to suffer damages in an unliquidated amount.

270.    NATIONWIDE received timely notice of losses covered under the aforementioned Policies and Plaintiff made demand for PIP benefits under such policies for reasonable, necessary and related medical services, pursuant to an assignment of benefits.

271.    NATIONWIDE has denied coverage for, withheld, and/or reduced the medical

bills that were submitted by the STEIN, which, along with interest, are due and payable. Specifically, NATIONWIDE has reduced the STEIN's medical bills in excess of what is permissible under the Florida PIP Statute Sections 627.730 through 627.7405 and the policies of insurance in question.

272.    NATIONWIDE has failed and refused to pay the full amount due and payable to STEIN for reasonable, related and necessary medical, rehabilitative and remedial treatment rendered to insureds under the aforementioned Policies.

273.    STEIN and/or the insureds under the aforementioned Policies have complied with all of the conditions precedent to entitle STEIN to recover PIP benefits for said reasonable, related and necessary medical, rehabilitative and remedial treatment under the above-described policy.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Declaratory Relief-627.736(1) Sub-Class)**

274.    STEIN repeats and realleges each and every allegation contained within paragraphs 1 through "101" above as if set forth fully herein.

275.    STEIN provided NATIONWIDE with reasonable proof of the losses described above. Instead of paying the PIP claims in accordance with the applicable policies and Amendatory Endorsement 2387A, NATIONWIDE paid PIP benefits in amounts less than 80% of charges for services or supplies that are usual and customary in said health care provider's office, which is the place where said services and supplies are provided.

276.    NATIONWIDE's Amendatory Endorsement 2387A states that Defendant will pay 80% of usual, customary and reasonable charges incurred for medically necessary services.

277.    NATIONWIDE's Amendatory Endorsement 2387A defines "usual, customary and reasonable charges" as charges for services or supplies covered under this policy, which are:

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

      (a)     usual and customary in the <u>place</u> where provided; and

      (b)     not more than what would have been charged if the injured person had no insurance; and

      (c)     not Experimental Treatment

278.    STEIN is uncertain as to its rights under the policies of insurance in question. Specifically, STEIN does not know whether the word "place," as used by NATIONWIDE within Amendatory Endorsement 2387A to define "usual, customary and reasonable charges," means the usual, customary and reasonable charges in STEIN's office, which is the place where said services and supplies are provided, or whether the word "place" has some other meaning that permits NATIONWIDE to pay PIP benefits in amounts less than 80% of charges for services or supplies that are usual and customary in said health care provider's office.

279.    By virtue of its failure to pay the aforementioned outstanding PIP benefits to STEIN, NATIONWIDE is asserting that the word "place," as used with Amendatory Endorsement 2387A, means something other than the exact physical place where said services and supplies are provided.

280.    NATIONWIDE specifically denies that the word "place," as used with Amendatory Endorsement 2387A, means the exact physical place where said services and supplies are provided.  Accordingly, justifiable controversies exist between the parties concerning what rights and responsibilities, if any, the parties have under the insurance policies in question.

281.    Because of the aforementioned bone fide dispute between the parties, STEIN has been placed in doubt as to its rights under the policy and is in need of immediate judicial determination of those rights.

## AS AND FOR AN EIGHTH
## CAUSE OF ACTION
### (Declaratory Relief – 627 Sub-Class)

282.    LARUSSO and JOSEPH repeat and reallege each and every allegation contained in Paragraphs "1" through "101" above as if set forth fully herein.

283.    LARUSSO and JOSEPH provided NATIONWIDE with reasonable proof of the losses described above.

284.    Instead of paying the PIP claims in accordance with the applicable policy, NATIONWIDE paid PIP benefits in amounts less than the 80% of charges for services or supplies that are reasonable and customary.

285.    LARUSSO and JOSEPH are uncertain as to their rights under the policies of insurance in question.    Specifically, LARUSSO and JOSEPH do not know whether NATIONWIDE's reduction of bills for reasons other than preferred provider organization discounts and its interpretation of the term "place."  By virtue of NATIONWIDE's failure to pay the outstanding PIP benefits to LARUSSO and STEIN, NATIONWIDE has asserted various defenses.

286.    Accordingly, controversies exist between the parties concerning what rights and responsibilities, if any, the parties have under the insurance policies in question.

287.    Because of the aforementioned bona fide dispute between the parties, LARUSSO and JOSEPH have been placed in doubt as to their rights under the policy and are in need of immediate judicial determination of those rights.

WHEREFORE, LARUSSO, JOSEPH, STEIN and the class demand the following relief:

(a)    As to the First Cause of Action, compensatory damages;

(b)    As to the Second Cause of Action, compensatory damages;

(c)    As to the Third Cause of Action, compensatory damages, punitive damages, and injunctive relief;

(d)    As to the Fourth Cause of Action, a declaration that NATIONWIDE's insurance practices are improper;

(e)    As to the Fifth Cause of Action, compensatory damages;

(f)    As to the Sixth Cause of Action, compensatory damages;

(g)    As to the Seventh Cause of Action, a declaration that that the word "place," as used in NATIONWIDE's Policies and Amendatory Endorsement 2387A to define "usual, customary and reasonable charges," means the usual, customary and reasonable charges in the plaintiff's office;

(h)    As to the eighth cause of action, a declaration that NATIONWIDE was required to pay 80% of the usual, customary and reasonable charges without reducing the charges for reasons other than PPO reductions and NATIONWIDE's interpretation of the word "place;"

(i)    Certification of the Sub-Classes set forth herein;

(j)    Attorneys' fees and costs where applicable;

(k)    A trial by jury on all issues so triable; and

(l)    Such other and further relief as the Court may deem just and proper.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

mail on March 10, 2005 upon: all individuals on the attached service list.

Respectfully submitted,

LEE & AMTZIS, P.L.
Co-Counsel for Class Plaintiffs
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Fax

By:_____
ERIC LEE
Florida Bar No. 961299

**Co-Counsel for Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporation
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

ZEBERSKY & PAYNE, LLP
Edward Herbert Zebersky, Esq.
4000 Hollywood Boulevard, Ste. 400N
Hollywood, FL  33021-6789
(954) 989-6333
(954) 989-7781 Facsimile

WATSON & LENTNER
Laura Marie Watson, Esq.
220 N.E. 51st Street
Ft. Lauderdale, FL  33334-1615
(954) 772-6690
(954) 351-9155 Facsimile

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-ZLOCH/SNOW)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786 Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MCGUIRE WOODS LLP
Peter J. Valeta, Esq.
pvaleta@mcguirewoods.com
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1815
(312) 750-3619
(312) 920-7241 Facsimile

**Counsel for Beech Street and ADP**

TEW, CARDENAS LLP
John M. Quaranta, Esq.
(305)536-1112
jmq@tewlaw.com
Four Seasons Tower, 15th Flr.
1441 Brickell Avenue
Miami, FL 33131-3407
(305) 536-1116 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd., Ste. 1100
Miami, FL 33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street, 34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

FOWLER, WHITE, ET AL.
John P. Marino, Esq.
janrino@fowlerwhite.com
50 North Laura Street, Suite 2200
Jacksonville, FL 32202
(904) 598-3120
(904) 598-3131 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for Liberty Mutual**

AKERMAN, SENTERFITT et al.
Mark Shapiro, Esq.
mshapiro@akerman.com
SunTrust International Center,
One Southeast Third Ave., 28th Flr.
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
One Southeast Third Ave., 28th Flr.
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH &
ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for Prudential**

BUTLER BURNETTE PAPPAS
Kathy J. Maus, Esq.
kmaus@bbplaw.com
Lauren D. Levy, Esq.
llevy@bbplaw.com
3600 Maclay Blvd., Ste. 101
Tallahassee, FL 32312
(850) 894-4111
(850) 894-4999 Facsimile

GOODWIN PROCTER
John D. Aldock, Esq.
Jaldock@goodwinprocter.com
Michael Isenman, Esq.
misenman@goodwinprocter.com
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 346-4000
(202) 346-4444 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Blvd., 2nd Flr.
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

**Counsel for Casey Fundaro, Esq.**

TRIPP SCOTT
Edward Royce Curtis, Esq.
erc@trippscott.com
110 S.E. 6th Street, Flr. 15
Ft. Lauderdale, FL 33301