FILED by _____ D.C.

ELECTRONIC

**Aug 9 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

      Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY and
COMMUNITY CARE NETWORK, INC.,
d/b/a CCN,

      Defendants.
_____/     01-8108

SALVATORE D. LARUSSO, D.C., d/b/a
FAMILY CHIROPRACTIC CENTER, on behalf of
himself and all others similarly situated,

      Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, et al.

      Defendants.
_____/

**DECLARATION OF CLASS COUNSEL IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN
AWARD OF ATTORNEY'S FEES AND COSTS**

    1.    My name is Eric Lee and I am the managing member of the law firm of Lee &

Amtzis, P.L of Boca Raton, Florida.  I am one of the lead Class Counsel in the fifteen consolidated

class action cases (Zidel v. Allstate Insurance Company, et al, Consolidated C.A. No. 00-6061)

pending in this Court, one of which is the class action LaRusso, et al. v. Nationwide Insurance

Co., C.A. No. 01-8108 (hereinafter "Nationwide Insurance").  I am submitting this Declaration in

1097/gz

support of final approval of the Nationwide Insurance class action Settlement Agreement and Plaintiffs' Memorandum in Support of Class Counsel's Application for An Award of Attorney's Fees and Reimbursement of Expenses.

2.    I have been Plaintiffs' counsel in the Nationwide Insurance case and all the consolidated cases since the first class action case was filed against Allstate Insurance Company approximately five years ago on January 12, 2000.  Although the Nationwide Insurance case is before the Court for final approval of the class settlement, the historical background of the litigation in the consolidated cases is necessary to understand the tremendous effort of Class Counsel in prosecuting and managing the consolidated litigation which contributed substantially to the final settlement of the Nationwide Insurance case.

**Pre-Suit Investigation**

3.    Prior to filing any of the consolidated cases, Class Counsel conducted an intensive and thorough investigation of what they believed to be an industry-wide practice of Florida automobile insurers reducing medical expense claims based on managed care preferred provider organization ("PPO") discounts.  A practice Class Counsel has characterized throughout this litigation as a "silent PPO."

4.    The investigation had three facets: 1) obtaining and reviewing any state and national decisions on the PPO issue; 2) obtaining discovery documentation and deposition and hearing testimony from Florida state cases, some of which Florida Class Counsel, Kopelman & Blankman and myself were directly involved in; and 3) acquiring documentation such as PPO contracts and explanation of benefit forms from as many sources as possible throughout the state of Florida.

5.    Also, prior to the filing of these consolidated cases, Class Counsel, Larry

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Kopelman, and myself had filed a state court class action seeking reimbu rsement for insureds whose medical providers "balanced billed" them after an insurer's application of PPO discounts to their medical expense claims. Information from the state court class action also served as part of the wealth of information reviewed by Class Counsel prior to filing the consolidated cases. Finally, documents and deposition transcripts from similar class actions in Massachusetts state court were accumulated and reviewed as the Massachusetts cases involved some of the same PPOs, PPO contracts and claim re -pricing companies working with the automobile insurers in Florida.

6.      Also as part of our investigation, Class Counsel met with their clients and their clients' billing personnel to gain information "on the ground" about how the PPOs, in surers and claims facilitators, such as ADP, were processing medical expense claims on a day  -to-day basis.

7.      The majority of the documents obtained in Class Counsel's investigation, as well as documents gained after the litigation was filed, were organiz ed into an electronic document depository which Class Counsel could access online from their offices for the purposes of prosecuting the litigation.

8.      Class Counsels' research at the time revealed that no similar federal or state class actions challengin g a "silent PPO" discounting scheme on automobile medical expense claims had been filed anywhere in the country with the exception of two cases brought in Massachusetts by Class Counsel team member Phillips & Garcia, LLP. The filing of the Florida federal   court class actions based on the emerging "silent PPO" discounting practice in the automobile industry was both novel in theory and scope.

9.      After this extensive pre -suit investigation of what amounted to the PPO discounting practices of the entire Flor ida automobile insurance industry, Class Counsel spent an enormous amount of time researching viable state and federal court causes of action before filing the first

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

case. After completing their research and cognizant of the inherent difficulties of a fed eral court civil RICO case, Class Counsel also spent a large amount of time on the drafting and re -drafting of the model class action complaint which was used as the backbone for all of the complaints filed in these consolidated cases. Class Counsel's tim e and effort proved valuable as the plaintiffs' RICO claims survived the defendants' motions to dismiss.

### The Allstate Filing and the Consolidated Litigation

10.     On January 12, 2000, Class Counsel filed the first class action case against Allstate Insurance Company. From the start, the case was aggressively defended with defendants Allstate and Medview Services, Inc. first moving to dismiss.

11.     After the Allstat e filing, Class Counsel then filed the following cases:

a.    <u>Brickell, et al v. Progressive Express Ins. Co., et al</u>, Case No. 00-6649 (filed 5/12/00);

b.    <u>Browner v. Allstate Indemnity Company, et al</u>, Case No. 00-7163 (filed 8/16/00);

c.    <u>LaRusso, et al v. Liberty Mutual Ins. Co.</u>, Case No. 00-7692 (filed 11/15/00);

d.    <u>Larusso, et al v. Nationwide Ins. Co.</u>, Case No. 01-8108 (filed 2/7/01);

e.    <u>Larusso, et al v. Florida Farm Bureau Casualty Ins. Co.</u>, Case No. 01-8110 (filed 2/7/01);

f.    <u>Larusso ITT Hartford Life & Annuity Ins. Co.</u>, Case No. 01-8111 (filed 2/7/01);

g.    <u>Ultra Open MRI Corp., et al v. Progressive American Ins. Co.</u>, Case No. 01-6776 (filed 5/8/01);

h.    <u>Ultra Open MRI Corp., et al v. Deerbrook Ins. Co.</u>, Case No. .01-6777 (filed 5/8/01);

i.    <u>Ultra Open MRI Corp., et al v. Prudential Property & Casualty Ins. Co.</u>, Case No. 01-6778 (filed 5/8/01);

j.    <u>Ultra Open MRI Corporation, et al v. Fidelity & Casualty Co. of New York, et al</u>, Case No. 01-6779 (filed 5/8/01);

k.    <u>Ultra Open MRI Corp. v. Integon National Ins. Co., et al</u>, Case No. 01-6780 (filed 5/8/01);

l.    <u>The Chiropractic Centre, Inc., et al v. Superior Ins. Co.</u>, Case No. 01-6782 (filed 5/8/01);

m.    <u>The Chiropractic Centre, Inc., et al v. Metropolitan Ins. Co.</u>, Case No. 01-6783 (filed 5/8/01);

n.    <u>Mote Wellness & Rehab., Inc., et al v. American International Ins. Co., et al</u>, Case No. 01-8549 (filed 6/14/01).

12.     The cases were consolidated by Judge Ferguson. Each filed case was aggressively

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

defended. As evidenced by the individual and consolidated case dockets, prior to the ultimate appeal of the cases, the defendants filed scores of different motions to dismiss and/or to compel arbitration.

13.     Class Counsel opposed all of the defendants' motions to dismi ss and to compel arbitration and, with the exception of the dismissal of their Lanham Act counts, the plaintiffs prevailed on each and every motion. In the circumstance where Magistrate Judge Snow partially ruled against the plaintiffs on the issue of arb itration, Class Counsel challenged the Magistrate Judge's recommendation and the District Court did not adopt the recommendation. All motions to dismiss and to compel arbitration were successfully defeated. It almost goes without saying that it took Class Counsel a tremendous amount of time and effort to defeat the defendants' initial attempts to dismiss these consolidated cases.

14.     While opposing the defendants' attempts to dismiss the cases, Class Counsel also went on the offensive by propounding disc overy to the defendants and subpoenaing non -party witnesses. Class Counsel served separate requests for production, interrogatories and admissions on all the defendants. Class Counsel also noticed over 40 depositions of various witnesses and sent document and deposition subpoenas to many non -party witnesses.

15.     The vast majority of Class Counsel's discovery requests were opposed by the defendants. The defendants either objected to the discovery in its entirety or filed motions for protective orders seeking to limit or stop Class Counsel from taking discovery. Class Counsel opposed the defendants' motions and in some circumstances filed motions to compel and for sanctions due to the defendants' failures to respond to discovery. Despite these efforts, the defendants were for the most part successful in preventing Class Counsel from conducting discovery as the District Court eventually stayed the cases.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

16.    After not being able to obtain discovery from the defendants through the normal discovery process, Class Counsel entered into settlement discussions with defendants, ADP Medical Solutions, Inc ("ADP") and Beech Street Corporation ("Beech Street"), in an effort to discover information about the defendants' polices and practices.    In the majority of th e consolidated cases, Beech Street was the PPO whose discounts were applied to automobile insurance medical expense claims by ADP.    ADP's business was to analyze and re -price claims for property and casualty insurers with its software programs.

17.    Class Counsel were able to negotiate a settlement with ADP and Beech Street whereby they would produce any and all documents pertaining to the PPO discounting policies and practices of the relevant defendant insurers.    Accordingly, ADP and Beech Street pro duced numerous boxes of documents to Class Counsel.

18.    As part of the settlement, Class Counsel also propounded specific data requests to ADP whereby ADP produced data on CD ROM which listed class members by name, address, tax identification number and  also included specific claim by claim information per insurer by year. Finally, pursuant to the settlement, ADP and Beech Street agreed to a continuing obligation to provide additional documents and information as the litigation proceeds.

19.    Based on Class Counsel's experience, it would have taken years to obtain the same discovery in the formal litigation process.    Moreover, the documents and information obtained from ADP and Beech Street are confidential and therefore have not been disclosed to the defendants with the limited exception of data shared in settlement negotiations with the insurers.

20.    In addition to Class Counsel's efforts to obtain discovery from the vendor defendants, Class Counsel also briefed and filed motions for class certificat ion in all of the cases and were ready to argue the same had the Court set them for hearing.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

21.    As an example of the intense nature of the litigation, after the District Court issued its Omnibus Order on September 28, 2001, in the two month period from October 3, 2001 through December 7, 2001, the defendants filed 49 motions, notices, requests and submissions seeking all manner of stays, modifications, reaffirmations, clarifications, vacations, re -considerations and dismissals, all of which Class Counsel  had to respond to in one form or another.

22.    As of October 30, 2002, at the time the District Court appears to have issued its last order prior to appeal, the consolidated docket had been consumed with some 886 entries over a two and a half year period.

23.    After losing their motions to compel arbitration in the trial court, the defendants, with the exception of the Progressive defendants, appealed Judge Ferguson's decision to the Eleventh Circuit where the appeals are currently pending.

24.    Since the filing of these cases, a ll of the defendant insurers in these consolidated cases have stopped taking discounts on automobile medical expense claims.

**The Nationwide Insurance Case and the UCR Issue**

25.    The Nationwide Insurance class action was filed on February 7, 2001, over one year after the initial filing of the Allstate case.  The case was transferred and reassigned to Judge Ferguson.

26.    After filing, Class Counsel aggressively pursued the Nation wide Insurance case. Class Counsel filed a motion for class certification the same day of the class action filing.  Class Counsel also served requests for production, admissions and interrogatories on Nationwide Insurance and noticed depositions of Nationwide Insurance personnel.

27.    Nationwide Insurance aggressively defended the case from the beginning.  On October 26, 2001, Nationwide Insurance moved to compel arbitration and to stay the case, which

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Class Counsel opposed.  On November 13, 2001, Nationwide Insurance moved for a protective order on Class Counsel's discovery.  Class Counsel opposed Nationwide Insurance's attempts at obtaining a protective order and filed a motion to compel Nationwide Insurance to attend depositions that had been scheduled by Class Counsel.  Nationwide Insurance opposed Class Counsel's motion and also filed an opposition to the plaintiff's amended motion for class certification.

28.     After the Magistrate Judge recommended that the motion to compel arbitration be denied in part and granted in part , Nationwide Insurance  and Class Counsel  filed their objections with Judge Ferguson.  Judge Ferguson adopted the Magistrate Judge's recommendation and sustained the plaintiffs' objections.   Nationwide Insurance thereafter filed its appeal with the Eleventh Circuit.

29.     In addition to this action, there was an action filed in the Florida state courts by Augustine Joseph, P.A. in which similar claims were asserted against Nationwide.

30.     Finally, a third class action was filed against  Nationwide Insurance in Ohio regarding the issue of "usual, customary and reasonable charges" ("UCR") as defined by Nationwide Insurance.  These three cases were combined as part of the Settlement Agreement herein.

31.     After the appeal was filed, Class C ounsel and Nationwide Insurance agreed to begin settlement negotiations.   The first Nationwide Insurance settlement session took place in September, 2004.

32.     Thereafter, Class Counsel and defense counsel continued negotiations in person and over the telephone for over four months.  There were times in the negotiation process where Class Counsel questioned whether the parties would be able to settle the case.  Through hard work and

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

perseverance, the parties were able to resolve their differences and ente r into a detailed settlement agreement.   Settlement discussions were always conducted at arms -length, were fairly and zealously advocated and there was no collusion between counsel for the parties.

33.    During the pendency of these cases there have been three appellate state cases on the PPO discounting issue pending before the Fifth , Second, and Fourth district courts of appeal. At the time the Nationwide Insurance case was settled in principle, the Fifth District Court of Appeal had already issued its de cision declaring that the insurer's PPO discounting practices violated the Florida statute.   However, the Second District Court of Appeal had ruled that their discounting practice did not violate the Florida Statute .   Thereafter, the Fourth District Court of Appeal followed the decision by the Second District Court of Appeal.

34.    Accordingly, Class Counsel were able to negotiate benefits for the Class where claims would be paid at 80% of the PPO discounted amount and were also able to negotiate the payment of attorney's fees and costs and the costs of settlement administration outside and separate from the Class Fund of $9,875,000.   For additional U&C and miscellaneous claims, the class members will receive up to 40% of the discounted amounts.   Moreover, the settlement provided for direct mail notice to Class Members with a minimal proof of claim process where Class Members would not be required to submit any documentation beside the basic information requested on the claim form.

35.    Pursuant to the Settlement, Class Counsel communicates with defense counsel about the claims process and receives and reviews periodic reports from the independent Settlement Administrator and defense counsel regarding the ongoing settlement administration.

36.    Class Counsel have not yet received a fee for prosecuting the Nationwide Insurance case.  Class Counsel have spent approximately 12,126.7 hours on the consolidated cases for a total

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

lodestar of over $472,107.97. The amount of fees being sought by class counsel represent fees incurred in this consolidated action, the pending Florida state court action, and the pending Ohio state court action. There are at least ten separate law firms involved in these various matt ers who have spent a considerable amount of time prosecuting these claims.

37.    Based on Class Counsel's experience, negotiating a class action settlement where class members can receive up to 80% of their actual damages without an evidentiary proof of cla im process is a tremendous benefit to the class, especially given the risks associated with the age of the claims, the state and Eleventh Circuit appeals and the difficulties in certifying and trying a complex RICO case. At all times , Class Counsel mainta ined and advocated for the interests of the Class, and as a result, negotiated a settlement that far exceeds the standard class benefits in typical class action cases.

Sworn to under the pains and penalties of perjury this  9th day of August 2005.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail on August 9, 2005 upon: all individuals on the attached service list.

Respectfully submitted,

LEE & AMTZIS, P.L.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Co-Counsel for Class Plaintiffs
5550 Glades Rd., Ste. 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Fax

By:_____
        ERIC LEE
        Florida Bar No. 961299

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 2510
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

Zebersky & Payne, LLP
Edward Herbert Zebersky, Esq.
4000 Hollywood Blvd., Ste. 400 N
Hollywood, FL  33021
(954) 989-6333
(954) 989-7781 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW