UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW ✓

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY and
COMMUNITY CARE NETWORK, INC.,
d/b/a CCN,

     Defendants.

_____/     01-8108

SALVATORE D. LARUSSO, D.C., d/b/a
FAMILY CHIROPRACTIC CENTER, on behalf of
himself and all others similarly situated,

     Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, et al.

     Defendant.

_____/

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE**
**SETTLEMENT WITH NATIONWIDE MUTUAL INSURANCE CO., ET AL.**

Plaintiffs Salvatore D. Larusso, D.C., d/b/a/ Family Chiropractic Center, Augustine

Joseph, P.A., and Joel D. Stein, D.O., P.A. ("Plaintiffs") respectfully submit this memorandum

pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of the proposed

settlement of this action as against the named Defendants which are direct or indirect subsidiaries

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

of Nationwide Mutual Insurance (collectively "Nationwide Insurance")[1] for total class relief of over $9,875,000 (the "Settlement").

## SUMMARY OF THE SETTLEMENT

The Specific terms of the Settlement have been set forth in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court and preliminarily approved on March 31, 2005. The settlement provides for a $9,875,000 class fund. Nationwide has also agreed to pay the following monies separate from the class fund: 1) up to $3,288,375 in attorneys' fees; 2) reasonable litigation costs and expenses, not to exceed $15,000; 3) $500,000 for the costs of settlement administration. The settlement administrator mailed 73,487 Notices and Proof of Claim forms. Out of all of these Notices, only 493 valid opt-outs were filed. This represents less than .7% of the class members who were sent notice. Additionally, and most importantly, there has not been a single objection filed to the class action settlement, the requested attorneys' fees, or the requested reimbursement of expenses. The lack of a single objection speaks volumes to the fairness and reasonableness of this settlement.

## I.    HISTORICAL BACKGROUND OF THE LITIGATION

### A.    The Consolidated Class Action Litigation

The consolidated class action litigation began five years ago on January 13, 2000, with the filing of Napoli v. Allstate Insurance Company, et al, later amended as Zidel v. Allstate Insurance Company, et al,. After filing the first case, Class Counsel filed fourteen additional cases, all of which were eventually consolidated into the current case. Each case alleged a similar pattern and practice by the various insurance defendants of reducing Florida automobile

---

[1] These companies issued and underwrote automobile insurance in Florida during the Class Period, specifically January 1, 1996 through November 30, 2004.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

insurance personal injury protection ("PIP") medical expense claims based on the wrongful application of preferred provider organization ("PPO") discounts, issues of first impression regarding that issue.[4]

The theories that predominated all the consolidated cases centered around allegations that the discounting practices of the defendant insurers: (1) violated Florida PIP insurance statutory law (specifically Fla. Stat. § 627.736(10)); (2) constituted a violation of the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. (the "RICO Act"); (3) were in direct breach of the specific language of the relevant automobile insurance policies; and, (4) constituted unjust enrichment to the defendant insurers.

Since the plaintiffs and Class Counsel took on the Florida auto insurance industry to stop the industry-wide practice of discounting PIP claims through the wrongful application of PPO discounts, the defendant insurers, and their vendors supplying the discounts, aggressively "circled the wagons" in defense of these class actions.[5]    As the Court's Docket Sheet demonstrates, a virtual legal war ensued with a first barrage of multiple motions to dismiss. The plaintiffs thwarted the initial flurry of defensive motions, most notably defeating the defendants' attempts to dismiss their RICO counts.[6]

The current action against Nationwide Insurance, along with a Motion for Class Certification, was filed on February 7, 2001. (See Docket Entries Nos. 1, 4). Nationwide Insurance subsequently filed its motion to compel arbitration on October 26, 2001 on the basis of

---

[4]  To Class Counsel's knowledge the Consolidated Cases are the first class action cases in the country to challenge the "silent PPO" discounting of automobile insurance medical expense claims, other than two similar actions brought in Massachusetts state court by Class Counsel, Phillips & Garcia, LLP.

[5]  The defendant insurers have all stopped the practice of applying PPO discounts to PIP medical expense claims.

[6]  The Plaintiffs' victory was not total.  In its main ruling on the motions to dismiss, the Court dismissed the Plaintiffs' Lanham Act claims.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

an arbitration clause contained in the insurance contract. (Consolidated Docket Entry No. 225).

After consideration, in a Report dated December 14, 2001, Magistrate Snow recommended

partially denying Nationwide Insurance's motion to compel arbitration on the basis that the

arbitration clause contained in the Nationwide Insurance auto policy was not an independent

contract between the parties and must be stricken as in violation of Florida's Constitution under

Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000). Later in

December, Nationwide Insurance then filed its Objections to the Report and Recommendation.

Ultimately, in an October 28, 2002, Supplemental Order, this Court denied the motions to

compel arbitration in the consolidated cases, including Nationwide Insurance's motion. The

defendants, including Nationwide Insurance, then appealed Judge Ferguson's decisions on the

arbitration issue to the Eleventh Circuit, where the cases were consolidated on appeal.[7]

While the cases were in the District Court, Class Counsel aggressively sought discovery

from all the defendants and other non-party witnesses. Class Counsel propounded written

discovery and noticed various depositions of the defendants and other witnesses. Almost all of

these discovery efforts were met with motions for protective orders or motions to stay discovery.

Class Counsel opposed such motions and countered in some cases by filing motions to compel

discovery, which were, in turn, opposed by the defendants. All discovery and litigation in the

District Court was eventually stayed as the cases were appealed to the Eleventh Circuit.[8]

Despite the defendants' successful efforts at preventing Class Counsel from conducting

full discovery prior to the appeal, Class Counsel were able to obtain a wealth of invaluable

---

[7]  The Progressive defendants did not appeal, however the District Court stayed the Progressive cases when the other cases were appealed.

[8]  As of October 28, 2002 when the cases were stayed, the consolidated docket had 882 entries.

information by negotiating a settlement with the vendor defendants, ADP Integrated Medical Solutions, Inc ("ADP") and Beech Street Corporation ("Beech Street").[9]  Under this agreement, ADP and Beech Street consented to a whole-scale production of documents, data and information relating to the defendant insurers' PPO reduction practices.  ADP and Beech Street provided Class Counsel with thousands of pages of documents detailing the defendant insurers' PPO discounting programs.  ADP and Beech Street also conducted a specific search of their respective databases that resulted in a CD ROM containing PPO discount information on a claim-by-claim basis for each insurer per year.  The information on the CD ROM provided Class Counsel, in the majority of cases, with the complete class list (names, addresses and tax identification numbers) and the amount of each class member's damages on a claim-by-claim basis – information that would have taken Class Counsel years to obtain in the normal discovery process.

**B.    The Nationwide Insurance Class Action.**

Plaintiff Salvatore D. Larusso, D.C. d/b/a Family Chiropractic Center ("Larusso") is a Florida healthcare provider that had entered into contracts with Beech Street, a PPO (such companies are also referred to as "brokers" or "managed care companies" in the health care industry).  Under the terms of its agreement with Beech Street, Larusso agreed to discount his normal "full-priced" medical charges for medical services rendered to patients who were subscribers in Beech Street's PPO.  Larusso also agreed to accept discounted fees for medical services in exchange for anticipated marketing of his services by Beech Street to its subscribers.

In the course of his practice, however, Larusso also treated patients covered by

---

[9]  ADP, a national claims re-pricing company servicing property and casualty insurers, applied the Beech Street PPO discounts to the class members' medical bills on behalf of certain defendant insurers via a software program designed to calculate the discount and produce an explanation of benefits form showing the PPO reductions.

automobile insurance policies issued by Nationwide Insurance. Nationwide Insurance's standard Florida automobile insurance policy provided insureds with PIP coverage that paid for 80% of all reasonable and necessary medical expenses. After Larusso treated patients insured by Nationwide Insurance, Larusso submitted his bills for payment to Nationwide Insurance. To process these PIP claims, however, Nationwide Insurance used the insurance claim processing services of ADP. In the course of processing these claims on behalf of Nationwide Insurance, ADP improperly applied the Beech Street PPO discounted rate to the Larusso's medical charges. Larusso alleges that Nationwide Insurance was not entitled to discount its medical fees based on the Beech Street PPO because Nationwide Insurance had not become a Beech Street PPO subscriber and had not complied with Fla. Stat. § 627.736(10).

The instant case is presently on appeal of the District Court's denial of Nationwide Insurance's motion to compel arbitration. If the proposed Settlement is ultimately approved by this Court, Nationwide Insurance will no longer actively participate in that appeal and its appeal will be voluntarily dismissed.

**C.    The Related State Court Actions In The Second Amended Complaint.**

**1.    Additional PPO Cases.**

The current case incorporates other action(s) pending in Florida regarding Nationwide Insurance's (or a related subsidiary's) treatment of PIP coverage. As part of the Settlement Agreement, the Complaint was amended to add Plaintiff Augustine Joseph, P.A. ("Joseph"), who was the plaintiff in a pending Florida state court class action against Nationwide Mutual Fire Insurance Company, and Joel D. Stein, D.O., P.A. ("Stein"), who was the Plaintiff in a pending Ohio state court class action also against Nationwide Mutual Fire Insurance Company. (See Consolidated Docket Entry No. 1030). The Second Amended Complaint also added a number

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

of Nationwide Insurance's direct or indirect subsidiaries to this action.

Plaintiff Joseph, like Larusso, is a professional association that provides health care services to Florida residents. Community Care Network ("CCN") is a PPO located in California. Nationwide claimed that all of its companies had a contract with CCN to reduce bills submitted by health care providers in the State of Florida that provided medical services to Nationwide Insureds. Upon treatment, Joseph submitted medical bills on approved forms for the insureds and Nationwide Insurance made payments to Joseph pursuant to the personal injury protection (PIP) benefits coverage of the insureds. Instead of making payments to Joseph based upon the amount of the submitted medical bills, Nationwide Insurance (like it also did with Larusso) made payment to Joseph in reduced amounts pursuant to Nationwide Insurance's claim of entitlement to Joseph's CCN preferred provider managed care network rates. Joseph claims this treatment of his claims is improper under the same theories presented by Larusso. Joseph also claimed that Nationwide Mutual Fire Insurance Company did not have an enforceable contract with CCN to reduce Personal Injury Protection benefits submitted by Florida health care providers.

## 2. **Usual and Customary Reductions.**

Another issue facing Nationwide Insurance, also related to automobile PIP insurance claims, involved an action that was pending in Ohio state court regarding the issue of "usual, customary and reasonable charges" ("UCR") as defined by Nationwide. Stein, the Plaintiff in that case, filed a complaint against Nationwide Mutual Fire Insurance Company, a subsidiary of Nationwide Insurance. Stein is a professional association that provides health care services to Florida residents who have sustained personal injuries in motor vehicle collisions, and who have assigned to Stein their personal injury protection benefits under Century II Auto Policies issued in Florida.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Since December 1997 Nationwide Insurance provided PIP benefits in Florida pursuant to an Endorsement 2387A, an amendatory endorsement to their Century II Auto Policies, which allowed policyholders, who have sustained personal injuries in motor vehicle collisions, to assign their PIP benefits. Nationwide Insurance's Amendatory Endorsement 2387A states that Nationwide will pay 80% of "usual, customary and reasonable charges" incurred for medically necessary services. (See Second Amended Complaint, paragraph 56). Amendatory Endorsement 2387A defines "usual, customary and reasonable charges" as charges for services or supplies covered under the policy, which are (1) usual and customary in the place where provided, (2) not more than what would have been charged if the injured person had no insurance; and (3) not Experimental Treatment. (Second Amended Complaint, paragraph 57).

Stein alleged in the Ohio action that the definition of "usual, customary and reasonable charges" contained in Endorsement 2387A is ambiguous and susceptible of more than one interpretation, and that Nationwide Insurance failed to construe and apply the ambiguity in Amendatory Endorsement 2378A strictly against itself and liberally towards providers like Stein. Specifically Stein alleged Nationwide Insurance took advantage of the ambiguity by disbursing PIP benefits to Stein in amounts that were less than the 80% of the charges for services and supplies that were usual and customary in Stein's office, the place where the services and supplies were provided. Nationwide Insurance moved to dismiss Stein's complaint, relying in part on the doctrine of forum non conveniens, arguing that the case belonged in Florida. The Ohio court granted Nationwide Insurance's motion to dismiss on the grounds of forum non conveniens, and Stein appealed. The appeal of Stein's dismissed Ohio state case was still pending while the parties were in settlement negotiations.

Clearly the Plaintiffs benefited from the Stein UCR issue being settled as the Plaintiffs

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

faced an uphill battle regarding the Ohio appeal of the underlying dismissal of that action. Stein was at risk of having his UCR theory being negated by the Ohio Court, and those particular Class Members could have recovered nothing from Nationwide Insurance. Nationwide Insurance did carry some risk regarding the UCR argument, and Plaintiffs' acceptance of a lower percentage of recovery for the UCR Sub-Class Members reflects the fair and measured attempts by counsel for both sides in negotiating the relevant terms. Therefore, overall settlement of the relevant cases regarding Nationwide Insurance's treatment of PIP claims through PPOs under one umbrella is a large incentive to Nationwide, tempered by the obstacles Plaintiffs faced in continuing forward in their individual cases. These are additional reasons why the settlement of this consolidated action is an important result for both sides of the negotiations, and why this settlement produces the best and most efficient results for the class members.

## II.    DISCOVERY AND NEGOTIATIONS LEADING TO SETTLEMENT

Attempts at settlement negotiations with Nationwide Insurance did not occur until after Nationwide's motions to dismiss and to compel arbitration were denied at the District Court level and the case was appealed to the Eleventh Circuit and after a Motion for Class Certification was filed and set for hearing in the Joseph state court matter. Counsel for the parties then conducted extensive settlement discussions. An initial day-long settlement session took place on September 8, 2004 in Orlando. The settlement session involved talks between counsel for Nationwide Insurance and Class Counsel. The parties agreed, if all parties could come to acceptable settlement terms, to file a Second Amended Complaint in this action joining both plaintiffs in the Joseph case and the Stein action, which was on appeal from dismissal in Ohio. Counsel for the parties also drafted the model for a global settlement agreement.

After the Orlando meeting, over the course of the next four months counsel for the parties

circulated various drafts of the proposed settlement agreement and conducted multiple phone conferences. The negotiations were difficult and protracted, involving such issues as the opt-out provisions and the sub-class members of the settlement. At times, it appeared that no settlement acceptable to the Plaintiffs would, or could, be achieved and that both sides would walk away from the opportunity to present a global settlement. An important breakthrough in the negotiations occurred with the agreement to create three separate payment sub-class members under the general Settlement Class, due to the somewhat higher risk exposure to the Stein settlement class regarding the UCR argument since that case had been dismissed and an appeal was pending.

Counsel for the parties then had two additional face-to-face meetings in late 2004 in Hollywood, Florida. A follow-up meeting held in Columbus, Ohio then occurred between counsel for the parties in January, 2005, wherein the final settlement terms were agreed to and eventually formalized. During this time period no less than ten very lengthy phone conferences took place between the parties to "iron out" the final settlement terms.

After much protracted discussions on both sides, through continued perseverance and hard work, the current $9,875,000 settlement was reached between the parties. Based on their extensive knowledge of the strengths and vulnerabilities of the claims against Nationwide Insurance and given the uncertainties of an appeal and/or ultimate trial of the action, Class Counsel believe that the Settlement represents an excellent result for the Class. Plaintiffs and Class Counsel heartily recommend that the proposed Settlement be approved as fair, reasonable, adequate and in the best interests of the Class.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

### III.    SUMMARY OF THE SETTLEMENT

#### A.    Class Members Receive a substantial percentage of Their Damages With No Reduction for Costs of Settlement Administration or Counsel Fees.

The Settlement provides for the distribution of a Settlement Fund of up to $9,875,000 to Class Members who timely file Proof of Claim forms with an independent Settlement Administrator paid for by Nationwide Insurance.[11] Each Class Member that timely files a properly completed Proof of Claim form is entitled to reimbursement of PPO reductions taken by Nationwide Insurance on bills submitted by that Class Member to Nationwide Insurance during the relevant Class Period.[12] If the total claim amounts submitted by Class Members is less than or equal to the $9,875,000.00 Settlement Fund established by Nationwide Insurance, then each properly submitted Class Member claim from the 627.736(10) Sub-Class will be paid 80% of the maximum claim amount.  Each properly submitted Class Member claim from the 627.736(1) Sub-Class and the Chapter 627 Sub-Class will be paid 40% of the maximum claim amount. In the event that total claims submitted by Class Members is greater than the  $9,875,000 Settlement Fund, then all properly filed claims will be paid on a *pro rata* basis to each Class Member.  Furthermore, all costs of settlement administration (up to $500,000),[14] including the costs of notification to the Class Members, are being borne by Nationwide Insurance separately

---

[11]   The precise terms of the Settlement involving payment to the three sub-class members, specifically 627.736(1) Payment Sub-Class Members, 627.736(1) Payment Sub-Class Members, and 627 Payment Sub-Class Members, are set forth in the Stipulation of Settlement filed with this Court and are also discussed in detail in the Declaration of Class Counsel. In summary, the Settlement created a $9,875,000 Settlement Fund from which Class Members are eligible to recover 80% of the difference between 80% of the amount billed and the amount paid by Nationwide Insurance to the Class Member, or 40% of the difference between the amount billed and the amount paid by Nationwide Insurance to the Class Member, depending upon the applicable sub-class.

[12]   The proof of claim process is simple and straightforward.  To file a valid proof of claim, Class Members need only to provide basic information identifying their business, the person signing the form, and the name of the relevant patient and/or the applicable Claim number.  *Class members do not have to provide any documentation, such as bills or explanation of benefit forms, to perfect a proof of claim.*

[14]   Nationwide Insurance has retained the independent class action settlement administration company of Heffler,

11

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

and in addition to the Settlement Fund.

The Settlement also provides for a claim dispute resolution process overseen by a Claims Dispute Facilitator should there be any disputes between a Class Member and Nationwide Insurance as to the amount of a settlement payment or the completeness of any Proof of Claim form. Under the dispute resolution function of the Settlement, the Class Member, Class Counsel and Nationwide Insurance are permitted to submit written presentations to the Claims Dispute Facilitator. In the event that the Claims Dispute Facilitator rules in favor of the Class Member, Nationwide Insurance will be required to reimburse the Class Member for any arbitration fee and the Class Member claim will be perfected and paid by Nationwide Insurance.

Finally, Nationwide Insurance has agreed to pay, in addition to and outside the Settlement Fund, any Class Counsel fees awarded by the Court up to thirty three and one-third percent (33 1/3%) of the Settlement Fund ($3,288,375), as well as reasonable costs and litigation expenses not to exceed $15,000.

**B.      Due Notice Of The Settlement Has Been Appropriately Given.**

The form of Notice utilized in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Notice, which was preliminarily approved by this Court, provided detailed information concerning the rights of Class Members, including the manner in which objections could be lodged; the nature, history and progress of the Litigation; the proposed Settlement terms; the process for filing Proofs of Claim; the fees and expenses to be sought by Class counsel; the necessary information for any Class Member to examine the Court records

---

Radetich & Saitta LLP, to serve as the independent settlement administrator.

should he or she desire to; and the time and procedure for exclusion from the Settlement or to object to the Settlement or Class Counsel's fee application.

All potential Class Members were identified using the most current records and electronic data provided by Nationwide Insurance. Notices were then prepared by an independent settlement administrator, Heffler, Radetich & Saitta LLP ("Heffler"), which was entirely paid for by Nationwide Insurance. Heffler then mailed first class, postage pre-paid, to all Class Members identified on the Class Member list, a copy of the Notice and the Proof of Claim approved by this Court. At the beginning of the settlement process on April 29, 2005, Heffler initially mailed 73,487 total Notices.

Over the course of the claims period, Heffler made efforts to ensure that Notices were received by Class Members. For example, during the claims period, Heffler received 9,279 Notices returned with current forwarding addresses provided by the U.S. Postal Service. As required under the terms of the Settlement, Heffler made efforts to identify and locate any Class Members in the case of any Notices being returned as "undeliverable" without valid forwarding addresses on file through the use of Equifax and the N.C.O.A. database. Heffler's efforts resulted in the re-mailing of 2,661 Notices to Class Members. Thus, the method of notice was the most reasonable method under the circumstances to apprise all potentially interested parties of the pending Settlement and amply satisfied the requirements of due process. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

## IV. THE STANDARDS FOR JUDICIAL APPROVAL OF SETTLEMENTS UNDER RULE 23(E).

There is an overriding public interest in favor of class action settlements which have the

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

well-deserved reputation as being most complex.[16] Ass'n for Disabled Americans, Inc. v. Amoco

Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th

Cir. 1977)); Warren v. City of Tampa, 693 F.Supp. 1051, 1054 (M.D. Fla. 1998), aff'd, 893 F.2d

347 (11th Cir. 1989). Accordingly, a class action settlement should be approved so long as it is

"fair, adequate and reasonable and is not the product of collusion between the parties." Bennett

v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984); Cotton, 559 F.2d at 1330; Behrens v.

Wometco Enters., Inc., 118 F.R.D. 534, 537 (S.D. Fla. 1988).

When determining whether a settlement is fair, adequate and reasonable, a court should

consider all relevant factors, including (1) an assessment of the likelihood of success at trial; (2)

the range of possible recovery at such trial; (3) the consideration provided to class members

under the Settlement, in comparison to the range of possible recovery discounted by the inherent

risks of litigation; (4) the complexity, expense and duration of the litigation in the absence of the

settlement; (5) the substance and amount of opposition to the settlement; and (6) the state of

proceedings at which the settlement was achieved. Bennett, 737 F.2d at 986; Cotton, 559 F.2d at

1330-31; see also Behrens, 118 F.R.D. at 538-39; ADA v. Aetna, Inc. (In re Managed Care

Litig.), 2004 U.S. Dist. LEXIS 14294, *3-4 (S.D. Fla. 2004).[17]

The application of the Bennett factors is left to the sound discretion of the trial judge and

appellate review of the Court's decision is based on an abuse of discretion standard. In re U.S.

---

[16] The Eleventh Circuit has noted that "public policy strongly favors the pretrial settlement of class action lawsuits." In re U.S. Oil & Gas Litig., 967 F. 2d 489, 493 (11th Cir. 1992). In that action, the court noted that "complex litigation like the instant [class action] case can occupy the court's docket for years on end, depleting the resources of the parties and rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules . . . authorize District Courts to facilitate settlements..." Id.

[17] Other factors relevant to a court's inquiry are the terms of the settlement, the procedure afforded to notify Class members of the proposed settlement, and the judgment of counsel. Cotton, 559 F.2d at 1330; Warren, 693 F.Supp. at 1055.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Oil & Gas Litig., 967 F.2d at 493; In re Broiler Chicken Antitrust Litig., 669 F.2d 228, 238 (5th

Cir. 1982). Great weight is accorded a trial judge's views in evaluating a class action settlement.

City of Detroit v. Grinnell Corp., 453 F.2d 448, 454 (2d Cir. 1974) (quoting Ace Heating &

Plumbing Co. V. Crane Co., 453 F.2d 30, 34 (3d Cir. 1971)). In making its determination, the

trial court is also entitled to rely on the judgment of experienced counsel for the parties. In re

Smith, 926 F.2d 1027, 1028 (11th Cir. 1991); Cotton, 559 F.2d at 1330.

In evaluating these considerations, a court must not try the case on the merits. Cotton, 559

F.2d at 1330; Diaz v. Hillsborough County Hosp. Auth., 2000 U.S. Dist. LEXIS 14061, *6 (M.D.

Fla. 2000). Instead, the court should rely on the judgment of experienced counsel and, absent

fraud, "should be hesitant to substitute its own judgment for that of counsel." Ass'n for Disabled

Americans, 211 F.R.D. at 467 (quoting Cotton, 559 F.2d at 1330); see also In re Sunbeam Sec.

Litig., 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). Rather than justifying each settlement term

against a hypothetical or speculative measure of what concessions might have been gained, a

court should focus on the negotiation process to ensure that the settlement was achieved through

arms-length negotiations by counsel and was not the product of collusion between the parties.

See Behrens, 118 F.R.D. at 538-39. Ultimately, in evaluating a settlement's fairness, the court

should remember that compromise is the essence of a settlement and that "inherent in

compromise is a yielding of absolutes and an abandoning of highest hopes." Cotton, 559 F.2d at

1330.

The application of these standards in the present case, warrants the approval of the

Settlement as fair, reasonable and adequate. Class Counsel and Nationwide Insurance have had

substantial opportunity to weigh the strengths and weaknesses of the parties' respective positions

in the event this action were to proceed to appeal and/or trial, and to reach an informed

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

compromise based on their respective analyses.

A.    **The Likelihood Of Success At Trial And Potential Recovery.**

When considering the likelihood of success at trial and any potential recovery, a court can limit its inquiry to determining "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." Ressler v. Jacobson, 822 F.Supp. 1551, 1553 (M.D. Fla. 1992); see also Elkins v. Equitable Life Ins. Co., 1998 U.S. Dist. LEXIS 1557, * 76 (M.D. Fla. 1998); Mashburn v. National Healthcare, Inc., 684 F.Supp. 660, 670 (M.D. Ala. 1988) (in the class action settlement context, courts do not decide the merits of the case or resolve unsettled legal questions). This inquiry is premised on "balancing the probabilities, not assuring that the plaintiff class receives every benefit that might have been won after a full trial." In re Chicken Antitrust Litig., 560 F.Supp. 957, 960 (N.D. Ga. 1980). The expense of achieving a more favorable result for the class at trial must be considered. Ressler, 822 F.Supp. at 1555; see also, Young v. Katz, 447 F.2d 431, 433 (5th Cir. 1971).

While the Settlement represents an extremely favorable result under any measure, it must be considered in light of the significant risks faced by the Class with continued litigation. Class Counsel believe that they have a "strong case" to be made against Nationwide Insurance. The potential for a substantial recovery at trial (assuming that Plaintiffs could get past the hurdle of Nationwide Insurance's appeal), however, was tempered by Class Counsel's analysis of certain major factors that favor the settlement of this action on the proposed terms. These factors include (1) the uncertain outcome of pending appeals to the Florida Supreme Court concerning the interpretation of Florida Statute section 627.736(10); (2) the uncertain outcome of a pending appeal to the 11th Circuit Court of Appeals concerning Nationwide Insurance's motion to compel arbitration or in the alternative to dismiss the action; (3) the uncertain outcome of a pending

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

appeal in Ohio regarding the UCR language argument; and (4) the inherent difficulties in proving the elements of a RICO action against Nationwide Insurance in a full trial on the merits.

1.    The Florida District Courts of Appeal Have Conflicting Rulings.

One of the most important considerations concerning the likelihood of success at trial concerns Plaintiffs' claims under Florida's PIP statute, Section 627.736(10). There is currently a split between three Florida appellate districts, the Second, Fourth, and Fifth Districts, on whether an auto insurer may pay health care providers at reduced PPO contract rates without first offering a preferred provider PIP policy of insurance.[18]   In Nationwide Mut. Fire Ins. Co. v. Central Florida Physiatrists, P.A., 851 So. 2d 762 (Fla. 5th DCA 2003), the Fifth District Court of Appeals reasoned that the clear and precise language of Section 627.736(10) demonstrates the Legislature's intent that the availability of PPO benefits under a PIP auto insurance policy is subject to strict compliance with the terms of subsection (10).  According to the Fifth District, Nationwide Mutual Fire Insurance was required to first comply with the provisions of subsection (10) in order to take advantage of paying reduced PPO rates for payment of PIP claims.  Id. at 766.  Nationwide Mutual Fire Insurances' failure to do so thus required it to pay the statutorily mandated 80% of the reasonable and necessary medical expenses incurred by its insured. Id.

In stark contrast to the Fifth District's decision, the Second District held that subsection (10) does not prohibit insurers that have not issued PPO auto policies from paying health care providers at discounted PPO rates.  See Nationwide Mut. Ins. Co. V. Dennis M. Jewell, D.C., P.A., 862 So. 2d 79 (Fla. 2d DCA 2003).  Recently in Allstate Ins. Co. v. Holy Cross Hosp., Inc., 895 So. 2d 1241 (Fla. 4th DCA 2005, the Fourth District Court of Appeal agreed with the

---

[18]   The Settlement was reached with Nationwide Insurance while the split existed and while the issue was on appeal to the Florida Supreme Court.

decision by the Second District Court of Appeal. All three cases have been appealed to the Florida Supreme Court and the issue is currently pending. In light of this current conflict, the outcome of the present action remains uncertain should the Class proceed to litigate the action. Given that the proposed Settlement now removes that uncertainty while offering to reimburse the Class Members up to 80% of their claimed losses, it is clear that potential litigation risks outweigh the rewards of the Settlement.

  2.  The 11th Circuit Appeal Creates a Substantial Risk.

  One of Plaintiffs' underlying causes of action against Nationwide Insurance is based on its status as an assignee of the PIP insurance contract of one of its patients. In its Motion to Dismiss or to Stay Litigation and Compel Arbitration, Nationwide Insurance presented a copy of the applicable insurance policy, which includes an arbitration clause providing that, "All disputes between [Nationwide Insurance] and any medical services provider involving medical benefits under this coverage shall be resolved through binding arbitration in accordance with Chapter 682 of the Florida Statutes." In seeking to compel Plaintiffs to arbitrate all of their claims against it, Nationwide Insurance asserted that as an assignee of the PIP insurance contract, the arbitration clause was binding against Plaintiffs.

  In opposing Nationwide Insurance's motion, Class Counsel relied on Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000) under which the Florida Supreme Court held that a mandatory arbitration requirement under Florida's PIP statute was unconstitutional since it denied medical provider assignees access to the courts in violation of Article I, Section 21 of the Florida Constitution.[23] Ultimately, a Report and Recommendation

---

[23]  According to the Court, medical providers lost their access to the courts because their rights to appeal were severely limited under the Florida Arbitration Code while they did not receive a commensurate benefit from the statute. Pinnacle, 753 So. 2d at 58.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

partially denying Nationwide Insurance's motion to dismiss and to compel arbitration was issued by Magistrate Judge Snow. The Report was partially adopted and partially overruled by this Court.[24] Immediately thereafter, Nationwide Insurance appealed the decision to the Eleventh Circuit Court of Appeals. The appeal is currently pending.

      3.    The Range of Possible Recovery and the Consideration Under the Settlement in Relation to That Range.

In Behrens, the Court combined the second and third factors of the Bennett test to determine the appropriateness of the settlement. 118 F.R.D. at 541. The factors considered are the range of possible recovery and the point within, or below, the range of possible recovery at which a settlement is fair, adequate and reasonable. Discounting multiple damages under RICO, the range of possible recovery under applicable law would be from zero to 100% of the discounted amount with interest and an award of attorney's fees and costs. Under the proposed Settlement, interest is the only monetary damage not included in the Settlement. If the Claim Fund is not exhausted 627.736(10) Sub-Class claimants will receive up to an 80% recovery. Additionally, Nationwide Insurance will pay Class Counsel fees and reasonable litigation costs and expenses, as well as, $500,000 in costs of settlement administration *separate* from the Claim Fund. The benefits provided by the Settlement are at the highest end of potential relief had the case been tried successfully by Class Counsel.

Moreover, based on the present state of the PIP statutory scheme in Florida, the terms of the Settlement actually provide Class Members with *significantly better* relief than they otherwise might expect should the settlement not be approved. Since the inception of this litigation in 2000, the Florida Legislature has amended the PIP statute by adding a complicated

---

[24] See Order Adopting Report and Recommendation and Administratively Closing Cases, (Sept. 30, 2002).

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

pre-suit demand procedure. Under the new statute, prior to filing a lawsuit a medical provider must send a demand letter to the insurer detailing: 1) the name of the insured upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the insured; 2) the claim number or policy number upon which such claim was originally submitted to the insurer; 3) to the extent applicable, the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim; and 4) an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. Fla. Stat. § 627.736(11).

Class Members who have not yet filed suit for illegal PPO discounts would have to first satisfy the pre-suit demand requirements of the new statute. The statute's evidentiary demand requirements are far more onerous than the proof of claim process negotiated by Class Counsel. Class Members need not provide any documentation or detailed claim information to participate in the Settlement, whereas under the new statute they are required to conduct a file-by- file review and provide documentary evidence just to meet the pre-suit demand requirements.

4.    The Complexity, Expense and Likely Duration of the Litigation.

Class Counsel believe that the claims asserted in this action have considerable merit. However, its inherent complexities combined with the uncertainties those complexities engender, are characteristic of RICO litigation and consolidated cases of this nature. The docket sheet tells the story best as there are over 880 entries prior to the defendants filing their appeals (currently there are over 1,000 docket entries), and the parties still have "a long way to go" in the litigation process. Those uncertainties militate strongly in favor of approving the Settlement.

The likely duration and associated expenses of continued litigation likewise favor

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

approval of the Settlement.  See Warren, 693 F.Supp. at 1059 ("The parties estimate that trial of this case would take three weeks of Court time, and would cost hundreds of thousands of dollars in attorneys' fees, expert witnesses fees and costs.  These factors militate in favor of a decision to accept the proposed settlement.").  In the present case, Class Counsel estimates that a trial of this action (assuming first that Nationwide Insurance fails on its Eleventh Circuit appeal) could take approximately two weeks and could cost the Class millions of dollars in attorneys' fees, expert fees and litigation costs.  Moreover, given that Nationwide Insurance has already filed one appeal in this action, it is very likely that it would appeal class certification and any final judgment in favor of the Plaintiffs.  The Class would be further subject to the many years of delay and additional costs associated with those appeals.

Here there is a great deal at stake for the parties and, but for the proposed Settlement, the case would continue to be strongly litigated by Plaintiffs and Nationwide Insurance.  As a result of the Settlement, the dispute between them will come to an end with the Class receiving a substantial recovery and there will also be substantial savings in Court resources by avoiding a lengthy trial of this case.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources.  Behrens, 118 F.R.D. at 538.

5.    The Substance and Amount of Opposition to the Settlement.

Even when a court becomes aware of one or more objecting parties, the court is not "required to open to question and debate every provision of the proposed compromise.  The growing rule is that the trial courts may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision." Cotton v. Hinton, 559 F.2d at 1331.

There were 73,487 Notices sent.  Not a single objection was filed by any Class Member.  Additionally, there have been only 493 valid opt-outs filed.  Less than .7% of the Class Members

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

opted out of the settlement. Clearly, the reaction of the Class to the Settlement is favorable and positive. Courts have looked at the absence of meaningful objections to a proposed settlement as further support for the approval of the settlement. See Bennett, 737 F.2d at 988.

6.    The Stage of Proceedings at Which the Settlement was Achieved.

The purpose of considering the stage of the proceedings and the discovery taken is to ensure that the plaintiff has had access to sufficient information to evaluate the case and to determine the adequacy of the proposed settlement. Behrens, 118 F.R.D. at 544. As discussed in greater detail in Class Counsel's Declaration, the Settlement was achieved after four years of intense litigation involving extensive motion practice and investigation.

The Plaintiffs and Class Counsel were very aware of the merits of their case based on their pre-suit investigation and the status of state case law on the issue of applying PPO discounts to automobile medical expense claims. Additionally, despite the District Court's stay of discovery, Class Counsel was able to obtain extensive discovery from ADP and Beech Street consisting of relevant documents, data and information about Nationwide Insurance's practices, without involvement by Nationwide Insurance. Absent this settlement with ADP and Beech Street, Class Counsel estimates that it would have taken years of post-appellate discovery to obtain the same information. Knowledge of the law, coupled with the discovery obtained from ADP and Beech Street, allowed Class Counsel to accurately assess its case for class-wide settlement negotiations.

7.    The Settlement is the Result of "Arms-Length" Negotiations Among Competent and Experienced Counsel.

In considering the fairness of a proposed settlement, the Court is entitled to rely heavily on the opinion of competent counsel. Behrens, 118 F.R.D. at 544. This is especially apt where, as here, the extensive amount of independent investigation, legal research, briefing and discovery

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

indicates that counsel are fully capable of evaluating the merits of the Plaintiffs' case and the probable course of future litigation. See Cotton, 559 F.2d at 1330. In analyzing a proposed settlement and the opinion of counsel, it is also appropriate for the Court to examine the negotiating process that took place between the parties to confirm that there was no collusion in reaching the Settlement. Behrens, 118 F.R.D. at 538.

In the present case, the Settlement was achieved only after years of hard-fought and contentious litigation that resulted in an appeal of the Consolidated Action to the Eleventh Circuit. Ultimately, the settlement negotiations were conducted by counsel for the parties over many months -- clear evidence that the negotiations were conducted at "arms length." After a full day settlement session with counsel for the parties, the intensive settlement negotiations continued for approximately many months, including two additional meetings in Hollywood, Florida, no less than ten very lengthy telephone conferences and a final settlement meeting in Columbus, Ohio that produced the current results. From the complex and thorough terms of the Settlement Agreement it is clear that the process by which this Settlement was accomplished was fairly and zealously advocated by counsel for all parties. Through their consistent and hard-pressed efforts, Class Counsel and Defense Counsel were eventually able to fashion a Settlement that is not only fair and reasonable, but is a truly extraordinary and an excellent result for the Class.

## CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel submit that the proposed Settlement is fair, reasonable and adequate and should be approved in its entirety, and respectfully request that the Court approve the Settlement.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

mail on August __9__, 2005 upon: all individuals on the attached service list.

Respectfully submitted,

LEE & AMTZIS, P.L.
Co-Counsel for Class Plaintiffs
5550 Glades Rd., Ste. 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Fax

By: _____
ERIC LEE
Florida Bar No. 961299

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
Bank of America Tower
Suite 2510
One Financial Plaza
Fort Lauderdale, FL 33394
(954) 462-6855
(954) 462-6899 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Zebersky & Payne, LLP
Edward Herbert Zebersky, Esq.
4000 Hollywood Blvd., Ste. 400 N
Hollywood, FL  33021
(954) 989-6333
(954) 989-7781 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-ZLOCH/SNOW)
(Updated 8/9/05)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty,**
**Continental, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MECKLER BULGER & TILSON
Peter J. Valeta, Esq.
peter.valeta@mbtlaw.com
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 474-7895
(312) 474-7898 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd., Ste. 1100
Miami, FL  33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Nationwide**

FOWLER, WHITE, et al.
Katherine C. Lake, Esq.
klake@fowlerwhite.com
Post Office Box 1438
Tampa, FL 33601
(813) 228-7411
(813) 229-8313 Facsimile

SWARTZ CAMPBELL DETWEILER
James C. Haggerty, Esq.
haggerty@scdlaw.com
1601 Market Street, 34th Floor
Philadelphia, PA 19103-2316
(215) 299-4314
(215) 299-4301 Facsimile

FOWLER, WHITE, ET AL.
John P. Marino, Esq.
jamrino@fowlerwhite.com
50 North Laura Street, Suite 2200
Jacksonville, FL  32202
(904) 598-3120
(904) 598-3131 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for:**
**Hartford, Metropolitan, Integon**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
One Southeast Third Ave., 28th Flr.
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Metropolitan**

SONNENSCHEIN, NATH &
ROSENTHAL
Jeffrey P. Lennard, Esq.
jpl@sonnenschein.com
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Blvd., 2nd Flr.
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile