FILED by _____ D.C.

ELECTRONIC

**Aug 16 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of
himself and all others similarly situated**,**

          Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK, INC.,
d/b/a CCN,

          Defendants.
_____/

THE CHIROPRACTIC CENTRE, INC., on          01-6783
behalf of itself and all others similarly  situated,

          Plaintiffs,

v.

METROPOLITAN CASUALTY INSURANCE
COMPANY,  et al.,

          Defendants.
_____/

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE PROPOSED SETTLEMENT WITH METROPOLITAN CASUALTY INSURANCE COMPANY

### PRELIMINARY STATEMENT

Plaintiff The Chiropractic Centre, Inc. ("CCI'), hereby submits this Memorandum of Law

in support of the class action settlement with Defendants Metropolitan Property and Casualty

Insurance Company, Metropolitan Casualty Insurance Company, Metropolitan Direct Property

and Casualty Insurance Company, Metropolitan General Insurance Company, Metropolitan

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

**1106/gz**

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Group Property and Casualty Insurance Company, Economy Fire & Casualty Company, Economy Preferred Insurance Company, Economy Premier Assurance Company, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, St. Paul Guardian Insurance Company, Athena Assurance Company, Discover Property & Casualty Insurance Company, St. Paul Protective Insurance Company f/k/a Northbrook Property and Casualty Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., Victoria Fire & Casualty Insurance Company, and Victoria Select Insurance Company (collectively hereinafter "Metropolitan") and respectfully submits this memorandum pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of the proposed settlement of this action as against the named Defendants[1] for total class relief of over $380,000.00 (the "Settlement").

I.    **SUMMARY OF THE SETTLEMENT.**

The specific terms of the Settlement have been set forth in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court and preliminarily approved on April 21, 2005. The settlement provides for a $380,000 class fund for Class Members to recover up to 100% of their individual damages. Metropolitan has also agreed to pay the following monies separate from the class fund: 1) up to $114,000 in attorneys' fees; 2) reasonable litigation costs and expenses, not to exceed $5,250; and 3) costs of settlement administration. The settlement also provides for a Claim Dispute Resolution process involving arbitration to resolve any individual Class Member claims disputes.

There were 1,042 notices sent to class members. There were 126 notices returned as

---

[1] These companies issued and underwrote automobile insurance in Florida during the Class Period, specifically January 1, 1998 through August 1, 2003.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

undeliverable.  Pursuant to the settlement, a search was done and 146 new notices were mailed (including where notices were re-mailed to the same Claimant).  There were only 5 opt-outs and **there were no objections to the settlement**.

## II.    HISTORICAL BACKGROUND OF THE LITIGATION[2]

### A.    The Consolidated Class Action Litigation.

The consolidated class action litigation began five years ago on January 13, 2000, with the filing of Napoli v. Allstate Insurance Company, et al, later amended as Zidel v. Allstate Insurance Company, et al,.  After filing the first case, Class Counsel filed fourteen additional cases, all of which were eventually consolidated into the current case.  Each case alleged a similar pattern and practice by the various insurance defendants of reducing Florida automobile insurance personal injury protection ("PIP") medical expense claims based on the wrongful application of preferred provider organization ("PPO") discounts, issues of first impression regarding that issue.[3]

The theories that predominated all the consolidated cases centered around allegations  that the discounting practices of the defendant insurers: (1) violated Florida PIP insurance statutory law  (specifically Fla. Stat. § 627.736(10)); (2) constituted a violation of the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. (the "RICO Act"); (3) were in direct breach of the specific language of the relevant automobile insurance policies; and, (4) constituted unjust enrichment to the defendant insurers.

Since the plaintiffs and Class Counsel took on the Florida auto insurance industry to stop

---

[2] The factual and procedural background of the case is described in more detail in the Declaration of Class Counsel in Support of the: (A) Proposed Settlement with Metropolitan; and (B) Class Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Lead Counsel's Declaration").  A brief summary is set forth herein for the Court's convenience.

[3] To Class Counsel's knowledge, the Consolidated Cases are the first class action cases in the county to challenge the "silent PPO" discounting of automobile insurance medical expense claims, other than two similar actions

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

the industry-wide practice of discounting PIP claims through the wrongful application of PPO discounts, the defendant insurers, and their vendors supplying the discounts, aggressively "circled the wagons" in defense of these class actions.[4]  As the Court's Docket Sheet demonstrates, a virtual legal war ensued with a first barrage of multiple motions to dismiss.  The plaintiffs thwarted the initial flurry of defensive motions, most notably defeating the defendants' attempts to dismiss their RICO counts.[5]

The current action against Metropolitan was filed on May 8, 2001.  CCI then filed a Motion for Class Certification on May 25, 2001. (See D.E. Nos. 1, 5). Metropolitan subsequently filed its motion to compel arbitration on October 22, 2001 on the basis of an arbitration clause contained in the insurance contract.  (See DE No. 16). After consideration, in a Report dated December 14, 2001, Magistrate Snow recommended partially denying Metropolitan's motion to compel arbitration on the basis that the arbitration clause contained in Metropolitan's auto policy was not an independent contract between the parties and must be stricken in violation of Florida's Constitution under Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000).  Later in December, Metropolitan then filed its Objections to the Report and Recommendation.  (See Consolidated D.E. No. 507).  Ultimately, in an October 28, 2002, Supplemental Order, this Court denied the motions to compel arbitration in the consolidated cases, including Metropolitan's motion.  With none of the cases subject to arbitration, the defendants, including Metropolitan, then appealed Judge Ferguson's decisions on the arbitration

---

brought in Massachusetts state court by Class Counsel, Phillips & Garcia, LLP.
[4] The defendant insurers have all stopped the practice of applying PPO discounts to PIP medical expense claims in Florida.
[5] The Plaintiffs' victory was not total.  In its main ruling on the motions to dismiss, the Court dismissed the Plaintiffs' Lanham Act claims.

issue to the Eleventh Circuit, where the cases were consolidated on appeal.[6]

While the cases were in the District Court, Class Counsel aggressively sought discovery from all the defendants and other non-party witnesses.  Class Counsel propounded written discovery and noticed various depositions of the defendants and other witnesses.  Almost all of these discovery efforts were Metropolitan with motions for protective orders or motions to stay discovery.  Class Counsel opposed such motions and countered in some cases by filing motions to compel discovery which were, in turn, opposed by the defendants.  All discovery and litigation in the District Court was eventually stayed as the cases were appealed to the Eleventh Circuit.[7]

Despite the defendants' successful efforts at preventing Class Counsel from conducting full discovery prior to the appeal, Class Counsel were able to obtain a wealth of invaluable information by negotiating a settlement with the vendor defendants, ADP Integrated Medical Solutions, Inc ("ADP") and Beech Street Corporation ("Beech Street").[8]  Under this agreement, ADP and Beech Street consented to a whole-scale production of documents, data and information relating to the defendant insurers' PPO reduction practices.  ADP and Beech Street provided class counsel with thousands of pages of documents detailing the defendant insurers' PPO discounting programs.  ADP and Beech Street also conducted a specific search of their respective databases that resulted in a CD ROM containing PPO discount information on a claim-by-claim basis for each insurer per year.  The information on the CD ROM provided Class Counsel, in the majority of cases, with the complete class list (names, addresses and tax identification numbers) and the

---

[6] The Progressive defendants did not appeal.  However, the District Court stayed the Progressive cases when the other cases were appealed.
[7] As of October 28, 2002 when the cases were stayed, the consolidated docket had 882 entries.
[8] 8  ADP, a national claims re-pricing company servicing property and casualty insurers, applied the Beech Street PPO discounts to the class members' medical bills on behalf of certain defendant insurers via a software program designed to calculate the discount and produce an explanation of benefits form showing the PPO reductions.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

amount of each class member's damages on a claim-by-claim basis – information that would have taken Class Counsel years to obtain in the normal discovery process.

> **B.    The Metropolitan Class Action.**

CCI is a Florida healthcare provider that entered into a Preferred Provider Agreement ("PPA") with Non-Party Community Care Network, Inc., a/k/a CCN Managed Care, Inc. ("CCN").    Companies such as CCN are also referred to as "brokers" or "managed care companies" in the health care industry, and CCN operates a national Preferred Provider Organization ("PPO").    Under the terms of its contract with CCN, Plaintiff CCI agreed to discount its normal "full-priced" medical charges for medical services rendered to patients who were subscribers in CCN's PPO.

In the course of its practice, however, CCI also treated patients covered by automobile insurance policies issued by Metropolitan.  Metropolitan's standard Florida automobile insurance policy provided insureds with PIP coverage that paid for 80% of all reasonable and necessary medical expenses.  After CCI treated patients insured by Metropolitan, CCI submitted its bills for payment to Metropolitan.  To process these PIP claims, however, Metropolitan began improperly applying CCI's CCN contractual discount under it's PPA to CCI's medical bills for patients injured in automobile accidents and covered by a Florida Metropolitan PIP Policy.  CCI alleges that Metropolitan was not entitled to discount its medical fees based on the CCN PPO because Metropolitan had not become a CCN PPO subscriber and had not complied with Fla. Stat. § 627.736(10).

The instant case is presently on appeal of the District Court's denial of Metropolitan's motion to compel arbitration.  If the proposed Settlement is ultimately approved by this Court,

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Metropolitan will no longer actively participate in that appeal and its appeal will be voluntarily dismissed.

## III.    DISCOVERY AND NEGOTIATIONS LEADING TO SETTLEMENT.

As detailed in Class Counsel's Declaration, this litigation has been conducted intensively and aggressively over the past five years.  The defendants in the consolidated cases, including Metropolitan, aggressively attempted to stop Class Counsel from conducting any discovery. Notwithstanding Class Counsel's extensive discovery requests, the defendants frustrated their efforts with motions to stay discovery, motions to compel arbitration and eventually with the filing of the Eleventh Circuit appeals.

Attempts at settlement negotiations with Metropolitan did not occur until after Metropolitan's motions to dismiss and to compel arbitration were denied at the District Court level and the case was appealed to the Eleventh Circuit.  Counsel for the parties then conducted extensive settlement discussions in accordance with the Eleventh Circuit's mediation program before Joseph Unger, a mediator with the United States Court of Appeals for the Eleventh Circuit.  The negotiations were difficult and protracted.  At times it appeared no settlement acceptable to the Plaintiff would be achieved.  The negotiations involved an initial day-long session with Mr. Unger, and then follow-up meetings and discussions between counsel for the parties over the course of approximately nine months.

After much protracted discussions on both sides, through continued perseverance and hard work, the current $380,000 settlement was reached between the parties.  Based on their extensive knowledge of the strengths and vulnerabilities of the claims against Metropolitan and given the uncertainties of an appeal and/or ultimate trial of the action, Class Counsel believe that the

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Settlement represents an excellent result for the Class. Plaintiffs and Class Counsel heartily recommend that the proposed Settlement be approved as fair, reasonable, adequate and in the best interests of the Class.

## IV.     SUMMARY OF THE SETTLEMENT.

### A.     Class Members Receive up to 100% of Their Damages With no Reduction for Costs of Settlement Administration or Counsel Fees.

The Settlement provides for the distribution of a Settlement Fund of up to $380,000 to Class Members who timely file Proof of Claim forms with an independent Settlement Administrator paid for by Metropolitan.[9] Each Class Member who timely files a properly completed Proof of Claim form is entitled to reimbursement of PPO reductions taken by Metropolitan on bills submitted by that Class Member to Metropolitan during the relevant Class Period.[10] If the total claim amounts submitted by Class Members is less than or equal to the $380,000 Settlement Fund established by Metropolitan, then each properly submitted Class Member claim will be paid in full (*i.e.* at one hundred (100 percent) of the maximum claim amount). In the event that total claims submitted by Class Members is greater than the $380,000 Settlement Fund, then all properly filed claims will be paid on a *pro rata* basis to each Class Member.[11] Furthermore, all costs of settlement administration,[12] including the costs of

---

[9] The precise terms of the Settlement involving payment to the Class Members are set forth in the Stipulation of Settlement filed with this Court and are also discussed in detail in the Declaration of Class Counsel.

[10] The proof of claim process is simple and straightforward. To file a valid proof of claim, Class Members only need to verify that they obtained "assignment of benefits" forms from Metropolitans insureds and provide basic information identifying their business and the person signing the form. *Class members do not have to provide any documentation, such as bills or explanation of benefit forms, to perfect a proof of claim.*

[11] The Settlement Agreement also provides that should the Net Opt-Outs exceed three percent (3%) of the Class Members, Metropolitan may terminate the Settlement Agreement and the parties would then return to their pre-settlement status regarding their rights and defenses. As of August 3, 2005, the independent settlement administrator had received only 5 opt outs.

[12] Metropolitan has retained the independent class action settlement administration company of Wachovia Information Consulting Group to serve as the independent settlement administrator.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

notification to the Class Members, are being borne by Metropolitan separately and in addition to the Settlement Fund.

The Settlement also provides for a claim dispute resolution process overseen by an independent arbitrator should there be any disputes between a Class Member and Metropolitan as to the amount of a settlement payment or the completeness of any Proof of Claim form. Under the claims dispute resolution portion of the Settlement, Class Counsel and Metropolitan shall designate in advance an independent arbitrator to oversee the dispute process, and shall also designate a uniform arbitration fee. The Class Member, Class Counsel and Metropolitan are permitted to submit written presentations to the independent arbitrator. In the event that the independent arbitrator rules in favor of the Class Member, Metropolitan will be required to reimburse the Class Member for any arbitration fee and the Class Member claim will be perfected and paid by Metropolitan. Finally, Metropolitan has agreed to pay, in addition to and outside the Settlement Fund, any Class Counsel fees awarded by the Court up to $114,000, as well as reasonable costs and litigation expenses not to exceed $5,250.

### B.    <u>Notice far Exceeded due Process Standards.</u>

As to notice of the Settlement, the Settlement Agreement provided that potential Class Members were to be identified (name, address, and tax identification number) based upon the current records and electronic data available from Metropolitan. The Settlement Agreement further provided that each Class Member be sent a Notice and Proof of Claim form by first class mail describing the terms of the Settlement no later than 30 days after the entry of the Order of Preliminary Approval. In an attempt to reach as many Class Members as possible, the Settlement also provided that the Settlement Administrator take reasonable steps to locate any Class

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Members whose Notices were returned via (1) Equifax or other similar services for those Class Members the Settlement Administrator is able to identify a Social Security Number based upon the current records and data reasonably available to Metropolitan, and via (2) the National Change of Address (N.C.O.A.) Database for those whose Social Security Numbers could not be identified in an effort to obtain valid addresses for all Class members.[13]  The individual Notices that were approved by the Court at the Hearing on Preliminary Approval, thoroughly described the terms of the proposed Settlement, apprised Class Members of their rights with respect to the Settlement, and informed them of the Court's schedule for consideration of the Settlement.

**V.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED.**

**A.    Due Notice of the Settlement has Been Appropriately Given.**

The form of Notice utilized in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  The Notice, which was preliminarily approved by this Court, provided detailed information concerning the rights of Class Members, including the manner in which objections could be lodged; the nature, history and progress of the Litigation; the proposed Settlement terms; the process for filing Proofs of Claim; the fees and expenses to be sought by Class counsel; the necessary information for any Class Member to examine the Court records should he or she desire to; and the time and procedure for exclusion from the Settlement or to object to the Settlement or Class Counsel's fee application.

---

[13] On May 17, 2005, the Settlement Administrator mailed 1,042 copies of the Notice and Proof of Claim forms based on the Metropolitan data. After the initial mailing, a total of 126 Class Member addresses were deemed to be addresses for which no forwarding information was available.  These addresses were then researched with the

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

All potential Class Members were identified using the most current records and electronic data provided by Metropolitan. Notices were then prepared by an independent settlement administrator, Wachovia Information Consulting Group ("Wachovia"), which was entirely paid for by Metropolitan. On May 17, 2005, Wachovia then mailed first class, postage pre-paid, to all Class Members identified on the Class Member list, a copy of the Notice and the Proof of Claim approved by this Court. At the beginning of the settlement process on May 17, 2005, Wachovia initially mailed 1,042 copies of Notice and Proof of Claims forms.

Over the course of the claims period, Wachovia made efforts to ensure that as many of the 1,042 Notices were received by Class Members. For example, during the claims period, Wachovia received 11 Notices returned with current forwarding addresses provided by the U.S. Postal Service. Wachovia then re-mailed the Notices to those new addresses. Further, as required under the terms of the Settlement, Wachovia also made efforts to identify and locate any Class Members in the case of any Notices being returned as "undeliverable" without valid forwarding addresses on file through the use of Equifax and the N.C.O.A. database. Wachovia's efforts resulted in the re-mailing of 146 Notices to Class Members. Thus, the method of notice was the most reasonable Metropolitanhod under the circumstances to apprise all potentially interested parties of the pending Settlement and amply satisfied the requirements of due process. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

**B.    The Standards For Judicial Approval Of Settlements Under Rule 23(e).**

There is an overriding public interest in favor of class action settlements which have the well-deserved reputation as being most complex.[14] Ass'n for Disabled Americans, Inc. v. Amoco

---

result being that a total of 146 Notices were re-mailed to Class Members.

[14] The Eleventh Circuit has noted that "public policy strongly favors the pretrial settlement of class action

11

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)); Warren v. City of Tampa, 693 F.Supp. 1051, 1054 (M.D. Fla. 1998), aff'd, 893 F.2d 347 (11th Cir. 1989). Accordingly, a class action settlement should be approved so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties." Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984); Cotton, 559 F.2d at 1330; Behrens v. WoMetropolitanco Enter., Inc., 118 F.R.D. 534, 537 (S.D. Fla. 1988).

When determining whether a settlement is fair, adequate and reasonable, a court should consider all relevant factors, including (1) an assessment of the likelihood of success at trial; (2) the range of possible recovery at such trial; (3) the consideration provided to class members under the Settlement, in comparison to the range of possible recovery discounted by the inherent risks of litigation; (4) the complexity, expense and duration of the litigation in the absence of the settlement; (5) the substance and amount of opposition to the settlement; and (6) the state of proceedings at which the settlement was achieved. Bennett, 737 F.2d at 986; Cotton v. Hinton, 559 F.2d at 1330-31; see also Behrens, 118 F.R.D. 534, 538-39 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990); ADA v. Aetna, Inc. (In re Managed Care Litig.), 2004 U.S. Dist. LEXIS 14294, *3-4 (S.D. Fla. 2004).[15]

The application of the Bennett factors is left to the sound discretion of the trial judge and appellate review of the Court's decision is based on an abuse of discretion standard. In re U.S. Oil & Gas Litig., 967 F.2d at 493; In re Broiler Chicken Antitrust Litig., 669 F.2d 228, 238 (5th

---

lawsuits." In re U.S. Oil & Gas Litig., 967 F. 2d 489, 493 (11th Cir. 1992). In that action, the court noted that "complex litigation like the instant [class action] case can occupy the court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules . . . authorize District Courts to facilitate settlements..." Id.

[15] Other factors relevant to a court's inquiry are the terms of the settlement, the procedure afforded to notify Class members of the proposed settlement, and the judgment of counsel. Cotton, 559 F.2d at 1330; Warren, 693 F.Supp.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Cir. 1982). Great weight is accorded a trial judge's views in evaluating a class action settlement. City of Detroit v. Grinnell Corp., 453 F.2d 448, 454 (2d Cir. 1974) (quoting Ace Heating & Plumbing Co. V. Crane Co., 453 F.2d 30, 34 (3d Cir. 1971)). In making its determination, the trial court is also entitled to rely on the judgment of experienced counsel for the parties. In re Smith, 926 F.2d 1027, 1028 (11th Cir. 1991); Cotton, 559 F.2d at 1330.

In evaluating these considerations, a court must not try the case on the merits. Cotton, 559 F.2d at 1330. Instead, the court should rely on the judgment of experienced counsel and, absent fraud, "should be hesitant to substitute its own judgment for that of counsel." Ass'n for Disabled Americans, 211 F.R.D. at 467 (quoting Cotton, 559 F.2d at 1330); see also In re Sunbeam Sec. Litig., 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). Rather than justifying each settlement term against a hypothetical or speculative measure of what concessions might have been gained, a court should focus on the negotiation process to ensure that the settlement was achieved through arms-length negotiations by counsel and was not the product of collusion between the parties. See Behrens, 118 F.R.D. at 538-39. Ultimately, in evaluating a settlement's fairness, the court should remember that compromise is the essence of a settlement and that "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." Cotton, 559 F.2d at 1330.

The application of these standards in the present case, warrants the approval of the Settlement as fair, reasonable and adequate. Class Counsel and Metropolitan have had substantial opportunity to weigh the strengths and weaknesses of the parties' respective positions in the event this action were to proceed to appeal and/or trial, and to reach an informed compromise based on their respective analyses.

at 1055.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

13

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

1.    __The Likelihood Of Success At Trial And Potential Recovery__.

When considering the likelihood of success at trial and any potential recovery, a court can limit its inquiry to determining "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement."  <u>Ressler</u>, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992); <u>see also</u> <u>Elkins v. Equitable Life Ins. Co.</u>, 1998 U.S. Dist. LEXIS 1557, * 76 (M.D. Fla. 1998); <u>Mashburn v. National Healthcare, Inc</u>., 684 F. Supp. 660, 670 (M.D. Ala. 1988) (in the class action settlement context, courts do not decide the merits of the case or resolve unsettled legal questions).  This inquiry is premised on "balancing  the probabilities, not assuring that the plaintiff class receives every benefit that might have been won after a full trial." <u>In re Chicken Antitrust Litig</u>., 560 F. Supp. 957, 960 (N.D. Ga. 1980).  The expense of achieving a more favorable result for the class at trial must be considered.  <u>Ressler v. Jacobson</u>, 822 F. Supp. at 1555; see also, <u>Young v. Katz</u>, 447 F.2d 431, 433 (5th Cir. 1971).

While the Settlement represents an extremely favorable result under any measure, it must be considered in light of the significant risks faced by the Class with continued litigation.  Class Counsel believe that they have a "strong case" to be made against Metropolitan.  The potential for a substantial recovery at trial (assuming that Plaintiffs could get past the hurdle of Metropolitan's appeal), however, was tempered by Class Counsel's analysis of certain major factors that favor the settlement of this action on the proposed terms.  These factors include (1) the uncertain outcome of pending appeals to the Florida Supreme Court concerning the interpretation of Section 627.736(10), Florida Statutes; (2) the uncertain outcome of a pending appeal to the Eleventh Circuit Court of Appeals concerning Metropolitan's motion to compel arbitration or in the alternative to dismiss the action; and (3) the inherent difficulties in proving the elements of a

<u>LEE & AMTZIS, P.L.</u>
ATTORNEYS AT LAW

14

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

RICO action against Metropolitan in a full trial on the merits.

      **a.**      **The Florida District Courts Of Appeal Have Conflicting Rulings.**

One of the most important considerations concerning the likelihood of success at trial concerns Plaintiffs' claims under Florida's PIP statute, Section 627.736(10). There is currently a split between three Florida appellate districts, the Second, Fourth, and Fifth Districts, on whether an auto insurer may pay health care providers at reduced PPO contract rates without first offering a preferred provider PIP policy of insurance.[16]  In Nationwide Mut. Fire Ins. Co. v. Central Florida Physiatrists, P.A., 851 So. 2d 762 (Fla. 5th DCA 2003), the Fifth District Court of Appeals reasoned that the clear and precise language of Section 627.736(10) demonstrates the Legislature's intent that the availability of PPO benefits under a PIP auto insurance policy is subject to strict compliance with the terms of subsection (10).  According to the Fifth District, Nationwide Mutual Fire Insurance was required to first comply with the provisions of subsection (10) in order to take advantage of paying reduced PPO rates for payment of PIP claims.  Id. at 766.  Nationwide Mutual Fire Insurances' failure to do so thus required it to pay the statutorily mandated 80% of the reasonable and necessary medical expenses incurred by its insured. Id.

In stark contrast to the Fifth District's decision, the Second District held that subsection (10) does not prohibit insurers that have not issued PPO auto policies from paying health care providers at discounted PPO rates.  See Nationwide Mut. Ins. Co. V. Dennis M. Jewell, D.C., P.A., 862 So. 2d 79 (Fla. 2d DCA 2003).  Recently, in Allstate Ins. Co. v. Holy Cross Hosp., Inc., 895 So. 2d 1241 (Fla. 4th DCA 2005), the Fourth District Court of Appeal agreed with the decision by the Second District Court of Appeal.  All three cases have been appealed to the

---

[16]  The Settlement was reached with Metropolitan while the split existed and while the issue was on appeal to the Florida Supreme Court.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

15

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Florida Supreme Court and the issue is currently pending. In light of this current conflict, the outcome of the present action remains uncertain should the Class proceed to litigate the action. Given that the proposed Settlement now removes that uncertainty while offering to reimburse the Class Members up to 80% of their claimed losses, it is clear that potential litigation risks outweigh the rewards of the Settlement.

**b.    Metropolitan's Appeal of the Denial of its Motion Dismiss or to Stay Litigation and Compel Arbitration Casts a Shadow of Uncertainty as to the Plaintiff's Likelihood of Success.**

One of Plaintiff's underlying causes of action against Metropolitan is based on its status as an assignee of the PIP insurance contract of one of its patients. In its Motion to Dismiss or to Stay Litigation and Compel Arbitration, Metropolitan presented a copy of the applicable insurance policy which included an arbitration clause providing that there shall be binding arbitration of any claims dispute involving medical benefits arising between Metropolitan and any person providing medical services or supplies if that person has accepted an assignment of PIP benefits. In seeking to compel Plaintiff to arbitrate all of their claims against it, Metropolitan asserted that as an assignee of the PIP insurance contract, the arbitration clause was binding against Plaintiff.

In opposing Metropolitan's motion, Class Counsel relied on Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000) under which the Florida Supreme Court held that a mandatory arbitration requirement under Florida's PIP statute[17] was unconstitutional since it denied medical provider assignees access to the courts in violation of Article I, Section 21 of the Florida Constitution.[18]

---

[17] Fla. Stat. §627.736(5).

[18] According to the Court, medical providers lost their access to the courts because their rights to appeal were

16

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Ultimately, a Report and Recommendation partially denying Metropolitan's motion to dismiss and to compel arbitration was issued by Magistrate Judge Snow.    The Report and Recommendation, however, was objected to by *both* the Plaintiff and Metropolitan.    The Plaintiff's objection challenged the Magistrate's reasoning that the arbitration provision in the PIP contract was invalid *solely* because it was entered into before the <u>Pinnacle</u> decision and thus limited the effect of <u>Pinnacle</u> case.    Ultimately, this Court adopted the Report and Recommendation denying the motion to compel arbitration in its entirety.[19]    The Court later issued a Supplemental Order to further clarify the reasons for denying the various motions to compel arbitration.[20]    Immediately thereafter, Metropolitan appealed the decision to the Eleventh Circuit Court of Appeals.    The appeal is currently pending.

### 2.    The Range of Possible Recovery and the Consideration Under the Settlement in Relation to That Range.

In <u>Behrens</u>, the Court combined the second and third factors of the <u>Bennett</u> test to determine the appropriateness of the settlement.  118 F.R.D. at 541.  The factors considered are the range of possible recovery and the point within, or below, the range of possible recovery at which a settlement is fair, adequate and reasonable.  Discounting multiple damages under RICO, the range of possible recovery under applicable law would be from zero to 100% of the discounted amount with interest and an award of attorney's fees and costs.  Under the proposed Settlement, interest is the only monetary damage not included in the Settlement.  If the Claim Fund is not exhausted all claimants will receive up to a 100% recovery.  Additionally, Metropolitan will pay Class Counsel fees and reasonable litigation costs and expenses, as well as

---

severely limited under the Florida Arbitration Code while they did not receive a commensurate benefit from the statute.  <u>Pinnacle</u>, 753 So. 2d at 58.

[19] <u>See</u> <u>Order Adopting Report and Recommendation and Administratively Closing Cases</u>, (Sept. 30, 2002).

17

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

costs of settlement administration *separate* from the Claim Fund.  The benefits provided by the Settlement are at the highest end of potential relief had the case been tried successfully by Class Counsel.

Moreover, based on the present state of the PIP statutory scheme in Florida, the terms of the Settlement actually provide Class Members with *significantly better* relief than they otherwise might expect should the settlement not be approved.  Since the inception of this litigation in 2000, the Florida Legislature has amended the PIP statute by adding a complicated pre-suit demand procedure.  Under the new statute, prior to filing a lawsuit a medical provider must send a demand letter to the insurer detailing: 1) the name of the insured upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the insured; 2) the claim number or policy number upon which such claim was originally submitted to the insurer; 3) to the extent applicable, the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim; and 4) an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. Fla. Stat. § 627.736(11).

Class Members who have not yet filed suit for illegal PPO discounts would have to first satisfy the pre-suit demand requirements of the new statute.  The statute's evidentiary demand requirements are far more onerous than the proof of claim process negotiated by Class Counsel. Class Members need not provide any documentation or detailed claim information to participate in the Settlement, whereas under the new statute they are required to conduct a file-by-file review and provide documentary evidence just to meet the pre-suit demand requirements.

---

[20] See Supplemental Order on Motion to Compel Arbitration., (Oct. 28, 2002).

18

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

     **3.**     <u>**The Complexity, Expense and Likely Duration of the Litigation.**</u>

Class Counsel believe that the claims asserted in this action have considerable merit. However, its inherent complexities combined with the uncertainties those complexities engender, are characteristic of RICO litigation and consolidated cases of this nature. The docket sheet tells the story best as there are over 880 entries prior to the defendants filing their appeals (currently there are over 1,000 docket entries), and the parties still have "a long way to go" in the litigation process. Those uncertainties militate strongly in favor of approving the Settlement.

The likely duration and associated expenses of continued litigation likewise favor approval of the Settlement. <u>See</u> <u>Warren</u>, 693 F.Supp. at 1059 ("The parties estimate that trial of this case would take three weeks of Court time, and would cost hundreds of thousands of dollars in attorneys' fees, expert witnesses fees and costs. These factors militate in favor of a decision to accept the proposed settlement."). In the present case, Class Counsel estimates that a trial of this action (assuming first that Metropolitan fails on its Eleventh Circuit appeal) could take approximately two weeks and could cost the Class thousands of dollars in attorneys' fees, expert fees and litigation costs. Moreover, given that Metropolitan has already filed one appeal in this action, it is very likely that it would appeal class certification and any trial judgment in favor of the Plaintiffs. The Class would be further subject to the many years of delay and additional costs associated with those appeals.

Here there is a great deal at stake for the parties and, but for the proposed Settlement, the case would continue to be strongly litigated by Plaintiffs and Metropolitan. As a result of the Settlement, the dispute between them will come to an end with the Class receiving a substantial recovery and there will also be substantial savings in Court resources by avoiding a lengthy trial of

<u>LEE & AMTZIS, P.L.</u>
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

this case.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources.  Behrens, 118 F.R.D. at 538.

### 4.   The Substance and Amount of Opposition to the Settlement.

Even when a court becomes aware of one or more objecting parties, the court is not "required to open to question and debate every provision of the proposed compromise.  The growing rule is that the trial courts may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision."  Cotton, 559 F.2d at 1331.  In the present case, the deadline for filing objections to the Settlement was July 20, 2005.  Not a single objection was filed by any Class Member.  Additionally, out of a class  consisting of over 1,000 Class Members, there have been only 5 valid opt-outs filed.  Clearly, the reaction of the Class to the Settlement is favorable and positive.  Courts have looked at the absence of meaningful objections to a proposed settlement as further support for the approval of the settlement.  See Bennett, 737 F.2d at 988.

### 5.   The Stage of Proceedings at Which the Settlement was Achieved.

The purpose of considering the stage of the proceedings and the discovery taken is to ensure that the plaintiff has had access to sufficient information to evaluate the case and to determine the adequacy of the proposed settlement.  Behrens, 118 F.R.D. at 544.  As discussed in greater detail in Class Counsel's Declaration, the Settlement was achieved after four years of intense litigation involving extensive motion practice and investigation.  The Plaintiff and Class Counsel were very aware of the merits of their case based on their pre-suit investigation and the status of state case law on the issue of applying PPO discounts to automobile medical expense claims.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**6.    The Settlement is the Result of "Arms-Length" Negotiations Among
Competent and Experienced Counsel.**

In considering the fairness of a proposed settlement, the Court is entitled to rely heavily on
the opinion of competent counsel.  Behrens, 118 F.R.D. at 544.  This is especially apt where, as
here, the extensive amount of independent investigation, legal research, briefing and discovery
indicates that counsel are fully capable of evaluating the merits of the Plaintiffs' case and the
probable course of future litigation.  See Cotton, 559 F.2d at 1330.  In analyzing a proposed
settlement and the opinion of counsel, it is also appropriate for the Court to examine the
negotiating process that took place between the parties to confirm that there was no collusion in
reaching the Settlement.  Behrens, 118 F.R.D. at 538.   In the present case, the Settlement was
achieved only after years of hard-fought and contentious litigation that resulted in an appeal of the
Consolidated Action to the Eleventh Circuit.   Ultimately, the settlement negotiations were
overseen by an independent mediator of the Eleventh Circuit -- clear evidence that the
negotiations were conducted at "arms length."   After a full day settlement mediation session with
Mr. Unger in July 2003, the parties continued to negotiate the details of the settlement, ultimately
crafting the current settlement.   From the complex and thorough terms of the Settlement
Agreement it is clear that the process by which the Settlement was accomplished was fairly and
zealously advocated.   Through the efforts of Mr. Unger, Class Counsel and Defense Counsel
fashioned a Settlement that is not only fair and reasonable, but is a truly extraordinary and an
excellent result for the Class.

## CONCLUSION

For the foregoing reasons, Plaintiff and Class Counsel submit that the proposed Settlement
is fair, reasonable and adequate and should be approved in its entirety, and respectfully request

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

that the Court approve the Settlement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by U.S.

Mail, to the counsel listed the attached Service List on August 16, 2005.

Respectfully submitted,

Co-Lead Counsel for Plaintiff
LEE & AMTZIS, P.L.
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Telephone: (561) 981-9988
Facsimile: (561) 981-9980

By:_____
ERIC LEE
Florida Bar No. 961299

**Co-Counsel for Class Plaintiff**

GOLD & COULSON, A Partnership of
Professional and Limited Liability Corps.
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 (Facsimile)

PHILLIPS & GARCIA, LLP
13 Ventura Drive
Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 (Facsimile)

KOPELMAN & BLANKMAN, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301 (954) 462-6855
(954) 462-6899 (Facsimile)

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW