FILED by _____ D.C.
ELECTRONIC

**Nov 23 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

                    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

                    Defendants.

_____/

SALVATORE D. LARUS SO, D.C., d/b/a      CASE NO. 01-8111
FAMILY CHIROPRACTIC CENTER, on
behalf of himself and others similarly situated,

                    Plaintiff,

v.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, HARTFORD
CASUALTY INSURANCE COMPANY,
HARTFORD ACCIDENT AND
INDEMNITY COMPANY, HARTFORD
UNDERWRITERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE
SOUTHEAST, and HARTFORD FIRE
INSURANCE COMPANY,

                    Defendants.

_____/

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

**1123/gz**

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S UNOPPOSED[1] APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### PRELIMINARY STATEMENT

Class Counsel in the above-captioned action respectfully submit this memorandum in support of their application for an award of attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this class action which has resulted in a settlement of approximately $540,000 in benefits to the Class. The class action Settlement, which is currently before the Court for final approval, involves the named defendants Hartford Insurance Company of the Midwest, Hartford Casualty insurance Company, Hartford Accident and Indemnity Company, Hartford underwriters Insurance Company, Twin City Fire Company, Hartford insurance Company of the Southeast, and Hartford Fire Insurance Company, all of which are direct or indirect subsidiaries of Hartford Insurance Company of the Midwest (collectively "Hartford Insurance") for total class relief of over $540,000 (the "Settlement").[2]

As described in detail in the accompanying Declaration of Class Counsel in Support of Final Approval of Class Action Settlement and An Award Of Attorney's Fees and Costs ("Class Counsel's Declaration"), Class Counsel have devoted many hours to this case and have incurred

---

[1] Pursuant to the Settlement Agreement, Hartford Insurance does not oppose Class Counsel's Application for an Award of Attorney's Fees and Reimbursement of Expenses. In addition, pursuant to this Court's Order of Preliminary Approval, class members were provided notice of the attorney's fees and expenses being sought by Class Counsel. Over 1,350 total Notices were sent. To date, there have been no objections to the attorney's fees or reimbursement of expenses sought by Class Counsel.

[2] The specific terms of the Settlement have been set forth in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court and preliminarily approved on July 28, 2005. The settlement provides for a $540,000 class fund. Hartford Insurance has also agreed to pay the following monies separate from the class fund: 1) up to $189,000 in attorneys' fees; 2) reasonable litigation costs and expenses up to $5,500; and 3) the costs of settlement administration.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

2

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

out-of-pocket costs and expenses over the five years that this case has been pending in the District Court and the Eleventh Circuit Court of Appeals. Given the extraordinary results achieved, the complexity and amount of work involved, the skill and expertise of Class Counsel and the risks counsel undertook, Class Counsel strongly believe that this case warrants an award of fees totaling $189,000 which is equivalent to thirty-five percent of the reserved Class Fund – an amount Hartford Insurance has agreed to pay separate and outside of the Class Fund. Class Counsel have spent more than 12,200 hours in prosecuting these cases with a lodestar of more than $3.4 million. Class Counsel have also spent more than 264 hours devoted specifically to the Hartford case with a lodestar of $76,387.75. The fee amount sought represents only a 2.4 multiplier. Class Counsel also request an award of $5,500 towards reasonable costs and expenses in prosecuting the action. The Notice sent to class members notified class members that Class Counsel would be seeking these fees and expenses. **Hartford Insurance has agreed to pay these amounts and there were no objections to the settlement or Class Counsel's requests for fees and expenses.**

## I.    <u>BACKGROUND</u>

The procedural history and relevant facts about the initiation and prosecution of these consolidated cases, and the Hartford Insurance litigation in particular, since their inception almost five years ago is described in detail in Co-Lead Counsel's Declaration and in the Memorandum in Support of Proposed Settlement, both of which are submitted concurrently herewith. The Hartford Insurance settlement cannot be viewed in a vacuum because it was part of the massive litigation effort Class Counsel put forth in these consolidated cases. As indicated in Class Counsel's Declaration, the plaintiffs in the consolidated actions challenged an industry-wide

L<span>EE</span> & A<span>MTZIS</span>, P.L.<br>ATTORNEYS AT LAW

Case 0:00-cv-06061-WJZ    Document 1123    Entered on FLSD Docket 11/23/2005    Page 4 of 41

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

practice undertaken by automobile insurers throughout the state of Florida. Class Counsel brought novel allegations based on complex legal theories against fifteen different insurers, some of which are the nation's largest insurance companies. As the docket clearly indicates, the defendants poured legal firepower into the defense of these claims retaining some of the biggest and best defense firms in the country to defend these cases.[3]

Class Counsel efficiently and effectively managed and prosecuted these fifteen RICO class actions over a five year period enabling them to reach settlements with certain insurance company defendants, one of which is Hartford Insurance. As of the filing of this pleading, all of the defendant insurers, including Hartford Insurance, have stopped the practice of taking P.P.O. discounts on automobile insurance medical expense claims in the State of Florida. While certain defendants, including Hartford Insurance, dispute whether these class actions caused the termination of their P.P.O. discounting programs, an industry-wide practice that siphoned millions of dollars from medical providers throughout the State of Florida has been stopped and, through this settlement and others, millions of dollars of settlement benefits have been made available for medical providers to claim.

## II.    CLASS COUNSEL ARE ENTITLED TO A FEE BASED ON A PERCENTAGE OF THE CLASS RECOVERY

The award of counsel fees in this class action is governed by the common fund doctrine. The Supreme Court has consistently recognized that when a common fund is successfully established for the benefit of Class members, the cost of litigation, and specifically counsel's

---

[3] Defendants retained the following defense firms: Rumberger, Kirk & Cladwell; Ross & Hardies; Tew Cardenas; Anania Bandklayder; Fowler White; Kenney Nachwalter Seymour Arnold Critchlow & Spector; Swartz Campbell Detweiler; Holland & Knight; Ackerman Senterfitt; Sonnenschein, Nath & Rosenthal; Butler Burnette Pappas; Shea & Gardner; and Conroy, Simberg, Ganon, Krevans & Abel.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

4

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

efforts, should be spread among the common fund's beneficiaries. As the Supreme Court noted in Boeing Co. v. Van Geert, 444 U.S. 472, 478 (1980): "A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." This was reiterated by the Eleventh Circuit in Camden I Condominium Association, Inc. v. Dunkel, 946 F.2d 768 (11th Cir. 1991) when the court reasoned that attorneys who create a common fund are entitled to be compensated for their efforts from a percentage of that fund. In Camden the Court held: "Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."

946 F.2d at 774-75.

Furthermore, in the absence of any evidence of collusion or detriment to the class, a court should give substantial weight to a negotiated fee amount, assuming that it represents the parties' "best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." Alkanes v. Equitable Life Ins. Co., 1998 U.S. Dist. LEXIS 1557, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998)(quoting Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 720 (5th Cir. 1974), overruled on other grounds, Blanchard v. Berteroa, 489 U.S. 87, 109 S.C. 939, 103 L. Ed. 2d 67 (1989)). This weight is particularly appropriate when, as in the present case, no objections have been raised to the fee award and the amount of fees is entirely consistent with a reasonable fee award under the circumstances of the cases. See e.g., Ingham v. Coca-Cola Co., 200 FRAT 685, 695 (N.D. Ga. 2001).

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

### III.  THE REQUESTED FEES ARE APPROPRIATE GIVEN THE RESULTS ACHIEVED, THE RISKS INVOLVED AND THE EFFORT EXPENDED

#### A.  The Relevant Factors for Assessing Attorney's Fees in Class Actions

In the Eleventh Circuit "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." Camden, 946 F.2d 774-75.  Courts have repeatedly emphasized however that the range is merely a benchmark, not a hard and fast rule.  As a result, the Eleventh Circuit has developed a number of non-exclusive factor that courts may consider in assessing what fees are reasonable in a particular class action.

In Camden, the Court enumerated the following factors as ones the Court may consider in determining the percentage of a fund to be applied to each case: (1) the time and labor required; (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  The Camden decision went on to state the following additional considerations:

> Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action.  In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration.

946 F.2d at 775.  While each of the above factors may be an appropriate consideration, the factors which will impact upon the appropriate percentage to be awarded as a fee in any particular

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

case will undoubtedly vary.  Id.

B.      **The Relevant Factors For Assessing Attorney's Fees Weigh in Favor of the Thirty-Five Percent Fee Requested By Class Counsel**

1.      **The Results Obtained Support Class Counsel's Fee Request**

There is no better indicator of the quality of Class Counsel's representation than the result obtained.  Bahrainis, 118 F. R. D. at 547.  Class Counsel achieved a monetary settlement of approximately 80% of the Class Members' damages with a minimal claims process where Class Members do not have to submit documentary evidence to establish their claims.[4]  To claim benefits Class Members need only complete a simple, straightforward claim form providing basic information to the Settlement Administrator, far less proof than they would be required at trial or even in the prosecution of an individual state court PIP case.  Moreover, Hartford Insurance has agreed to pay Class Counsel fees and reasonable costs and litigation expenses separate and outside of the Class Member fund of $540,000 that has been reserved by Hartford Insurance to pay the Class their claims. In essence, the only monetary damage the Class does not receive in the Settlement is interest on their actual damages.  Had this case gone to trial and the plaintiffs prevailed, the Class might not have achieved as good a result as they have under the Settlement.

2.      **The Substantial Time and Labor Required to Produce the Settlement and the Length of Time Required to Reach A Resolution of the Case Supports the Fee Request**

As discussed at length in Class Counsel's Declaration, this case was one of fifteen consolidated cases and a substantial amount of the effort expended in the consolidated cases

---

[4]The precise terms of the Settlement are set forth in the Settlement Agreement and Stipulation and the Declaration of Class Counsel filed concurrently with the Court.  In summary, the Settlement created a $540,000 Settlement Fund from which Class Members are eligible to recover 80% of the total PPO reduction taken by Hartford Insurance with regard to bills submitted by the class member during the relevant class period.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

benefitted the Class Members in the Hartford Insurance case.  More than ten law firms have worked on these three cases during the past five years and this settlement was the result of protracted negotiations and substantial cooperation among the various firms involved.

The substantial efforts by these law firms, in addition to the results obtained is demonstrated by the numbers of hours spent on these matters.  Class Counsel has expended over 12,200 total hours in the prosecution of the consolidated cases for a total loadstar to date of approximately $3,453,498.00 [5]  The hours expended in the Hartford Insurance case are set forth in the Compendium of Affidavits of Class Counsel, attached hereto.  In the Hartford case, in excess of 264 hours were expended with a lodestar (excluding general time) of $76,387.75.

The time expended by Class Counsel in this litigation is described in detail in the Declaration of Class Counsel.   In summary, Class Counsel conducted an intensive pre-suit investigation, performed a great deal of research prior to filing and poured a tremendous amount of time and resources into drafting the initial class action complaint which served as the model for the Hartford Insurance filing.  At the same time suit was filed, Class Counsel filed a motion for class certification and aggressively pursued discovery.   Additionally, Class Counsel opposed Hartford Insurance's numerous motions including the  motion to compel arbitration.  Class Counsel were able to defeat Hartford Insurance's motion to compel arbitration at which time Hartford Insurance appealed the case to the Eleventh Circuit.

While the case was in the Eleventh Circuit, Class Counsel worked diligently to negotiate a settlement and, as part of that settlement, agreed to amend the Complaint to add additional

---

[5] Due to the overlap of work and effort inherent in a consolidated case, the hours were calculated based on the time spent on all of the cases, without allocation of a percentage, such as 1/15, of the general time spent on the prosecution of the consolidated cases.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

defendants. After a February 11, 2003 session with Joseph Unger, a mediator with the United States Court of Appeals for the Eleventh Circuit, and after several intensive settlement attempts occurring over the next two years, Class Counsel and defense counsel were able to finalize the Settlement Agreement with Hartford Insurance.

> 3. **The Economics Involved in Prosecuting the Action, the Contingent Nature of the Representation and the Preclusion of Other Employment**

This action was prosecuted by Class Counsel on a contingent fee basis. Class Counsel would be paid only if they achieved a successful result for the Class. Class Counsel have not been paid one penny for their services in the four years the Hartford Insurance case has been pending or in the five years of consolidated litigation. Courts have long recognized, particularly in this Circuit, that the attorneys' contingent fee risk is an important factor in determining the fee award. See Jones v. Central Soya Co., 748 F.2d 586, 591 (11th Cir. 1986), In Bahrainis, when discussing a securities class action Judge King noted:

> A contingency fee arrangement often justifies an increase in the award of attorneys fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus methodology' did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing.

118 F.R.D. at 548.

The specter of potential financial loss in this case loomed large. Class Counsel were confronted with a number of major factors that affected their case: (1) the uncertain outcome of pending appeals to the Florida Supreme Court concerning the interpretation of Florida Statute section 627.736(1)); (2) the uncertain outcome of a pending appeal to the 11th Circuit Court of Appeals concerning Hartford Insurance's motion to compel arbitration or in the alternative to

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

dismiss the action; and (3) the inherent difficulties in proving the elements of a RICO action against Hartford Insurance in a full trial on the merits. Class Counsel recognized that a negative decision in any of the pending state or federal appeals would have essentially stripped the plaintiff's case theory and wasted years of work by Class Counsel. Moreover, Class Counsel was proceeding in part on a complex civil RICO claim which would be subject to summary judgment in the trial court and, if the Plaintiff succeeded, further subject to Hartford Insurance's appeal to the Eleventh Circuit.

The risks inherent in losing years of work, as well as the monies spent funding this case were further compounded by the effective preclusion of other employment by Class Counsel due to their acceptance of this case and the consolidated cases. The substantial amount of work at times on the consolidated cases and this case bordered on overwhelming. For example, as discussed in Class Counsel's Declaration, in one two month period the defendants in these consolidated cases filed 49 separate pleadings with the Court. For long periods of time during the pendency of the Hartford Insurance case and the consolidated cases, Class Counsel were required to worked almost exclusively on this litigation to aggressively represent the Class.

4.    **The Novelty and Difficulty of the Questions Involved and the Skill Requisite to Perform the Legal Services Properly**

In assessing the quality of work performed and the risk undertaken by Class Counsel, it is also necessary to consider the complexity and magnitude of the litigation, as well as the difficulty of the questions involved. As discussed throughout this petition, the Hartford Insurance case cannot now be totally disassociated from the consolidated litigation because it has settled. A civil RICO class action against an insurance company is complex enough in itself, but when combined with fourteen other similar class actions, the complexity and magnitude of the litigation increases

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

exponentially. The current 1,000 plus docket entries alone speak volumes to the complexity and magnitude of the litigation.

Moreover, the Plaintiffs' claims were novel both factually and legally. These cases are the first and only federal court class actions in the country to challenge the "silent P.P.O." discount scheme emerging in the automobile insurance industry, cases of first impression on this issue. Class Counsel in the Hartford Insurance case challenge the direct practice of utilizing "silent P.P.O." discounts by insurers. In addition to having unique factual allegations, Class Counsel had to select legal theories that allowed for the real aggrieved parties, i.e., the Florida medical providers, to maintain standing to prosecute their claims against the automobile insurers.

Counsel's fee should also reflect the degree of experience, competence and effort necessary to achieve the proposed Settlement. Class Counsel are experienced in class action cases and trial work in general and worked together as a cohesive team to prosecute the Hartford Insurance case and the consolidated cases. Courts have long recognized the importance of providing incentives to experienced counsel who take complex litigation cases on a contingent fee basis, so that those cases can be prosecuted effectively.

In assessing the quality of representation by Class Counsel, the Court should also consider the quality of the opposition, as well as the standing of Class Counsel. See Kessler, 149 F.R.D. at 654. As noted above, the law firm defending Hartford Insurance is well known for its defense work in Florida and the litany of law firms representing the other defendants in the consolidated litigation reads like a veritable "Who's Who" of the corporate civil defense bar.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**5.    The Requested Percentage Is Fair and Reasonable And Is Consistent With Fee Awards in Comparable Cases**

For the reasons set forth here, and in Class Counsel's Declaration, Class Counsel respectfully submit that their performance in this litigation, and the superior results efficiently achieved, warrant more than a simple "benchmark" level of compensation.  Given the work involved and the result achieved, Class Counsel believe that it is fair, reasonable and eminently appropriate for the Court to award counsel the requested fee.  Additionally, the requested thirty-five percent fee is consistent with fees awarded in similar cases in this Circuit. See e.g. Waters, 190 F.3d at 1298 (finding no abuse of discretion in approving a 1/3 class counsel fee award of $13.33 million in case involving class fund of $40 million on scheme to defraud customers); Baccilar v. Integrated Communication Network Inc., 96-2021-Civ-King (S.D. Fla. 1997) (awarding 33.3%).

Class Counsel's requested thirty-five percent fee is also consistent with awards in other jurisdictions in similar class action cases.  See e.g., In re IKON Office Solutions, Inc., 194 FRAT 166, 192 (E.D. Pa. 2000)(awarding attorney's fees of 33% on $111 million partial settlement, where plaintiffs later failed in claim against accountant); Kurzweil v. Philip Morris Cos., 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. 999)(awarding attorney's fees of 30% on settlement fund of over $123 million); In re Combustion, Inc., 968 F. Supp. 1116 (W.D. La. 1997)(awarding attorney's fees of 36% on settlement fund of over $127 million).

Moreover, the fee requested by Class Counsel in this case represents a 2.47 multiplier to Class Counsel's lodestar.  In relation to other class action settlements, a 2.47 multiplier is reasonable given the novelty of the subject matter, the ultimate benefits conferred on the class and the difficulty faced by Class Counsel in prosecuting the action.  See e.g., Bahrainis v. Wometco

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Enter, Inc., 118 FRAT 534, 539 (S.D. Fla. 1998), a'ffd, 899 F. 2d 21(11th Cir. 1990); See also In re RJR Nabisco, Inc., Sec. Litig., [1992 Transfer Bidber] Fed. Sec. L. Rep. (CCH) ¶96, 984 at 94, 267 (S.D.N.Y. 1991)(applying a lodestar multiplier of 8.74).

6.    **The Requested Fees Are Consistent With Contingent Fee Arrangements Negotiated In Non-Class Litigation**

The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements.  See Kirchoff v. Flynn, 786 F.2d 320, 324 (7th Cir. 1986)("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'").  In non-class litigation, 33 1/3% to 40% contingency fees are typical.  As Justices Brennan and Marshall observed in their concurring opinion in Blum v. Stenson, 465 U.S. 886 (1984): "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery." 465 U.S. at 904 n. 19; see also In re Prudential Bache Energy Income Partnerships Sec. Litig., MDL 888, 1994 U.S. Dist. LEXIS 662 1, at * 1 (E. D. La, May 18, 1994)("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.); Phemister v. Harcourt Brace Jovanovich, Inc., 1984-2 Trade Cas. (CCH) ¶ 66,234, at 66,995 (N.D. 111. 1984) ("The percentages agreed on [in non-class action damage lawsuits] vary, with one-third (1/3) being particularly common").

Class Counsel's efforts were performed, and the result was achieved, on a wholly contingent basis, despite the significant risks, time and expenses.  Therefore, their fee request of thirty-five percent is in keeping with the standard contingent fee agreement in non-class litigation.  In summary, based the application of the relevant Camden factors to the circumstances of this

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

case – and the fact that Hartford Insurance has agreed to pay Class Counsel's fee separate and distinct from the reserved Class Fund – Class Counsel's fee request is fair and reasonable and should be approved by the Court.

C.    **Reimbursement of Costs**.

Plaintiff's counsel also seek reimbursement of $5,500 in expenses and costs incurred in prosecuting this action. The Declaration of Class Counsel, and Counsels' Compendium of Declarations (attached hereto, which are submitted herewith, describe the expenses and costs incurred for which reimbursement is sought. Plaintiff respectfully request that the listed expenses and costs be awarded because they were necessary and appropriate in prosecuting this action.

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in Class Counsel's Declaration, the Court should grant Class Counsel's application for an award of attorneys' fees in the amount of $189,000 and reimbursement of expenses in the amount of $5,500.

## CERTIFICATE OF SERVICE

The 23rd day of November, 2005 on: See attached Service List.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Respectfully submitted,

Lee & Amtzis, P.L.
Counsel for Plaintiff
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Phone: 561-981-9988
Fax: 561-981-9980
E-Mail: lee@leeamlaw.com

By: _____
　　　ERIC LEE
　　　Fla. Bar No. 961299

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
(954) 462-6855
(954) 462-6899 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**MASTER SERVICE LIST**
**(Consolidated Case No. 00-6061-Civ-ZLOCH/SNOW)**
(Updated 11/23/05)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MECKLER BULGER & TILSON
Peter J. Valeta, Esq.
peter.valeta@mbtlaw.com
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 474-7895
(312) 474-7898 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd., Ste. 1100
Miami, FL  33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for:**
**Hartford**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
One Southeast Third Ave., 28th Flr.
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS &
ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Blvd., 2nd Flr.
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

SALVATORE D. LARUSSO, D.C., d/b/a         CASE NO. 01-8111
FAMILY CHIROPRACTIC CENTER, on
behalf of himself and others similarly situated,

     Plaintiff,

v.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, HARTFORD
CASUALTY INSURANCE COMPANY,
HARTFORD ACCIDENT AND
INDEMNITY COMPANY, HARTFORD
UNDERWRITERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE
SOUTHEAST, and HARTFORD FIRE
INSURANCE COMPANY,

     Defendants.

_____/

**AFFIDAVIT OF ARTHUR S. GOLD, ESQ. IN SUPPORT OF**
**CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES <u>AND</u>**
**<u>REIMBURSEMENT OF EXPENSES</u>**

1

NOW COMES Arthur S. Gold and after being duly sworn does under oath depose and state as follows:

1.      I am an attorney duly licensed in the state of Illinois and am certified to practice in both federal and state courts. I am a partner in the law firm of Gold & Coulson, 11 S. LaSalle Street, Suite 2500, Chicago, IL 60603. This Court has previously granted my pro hac vice motion to appear in these consolidated cases. I have acted as Co-Lead Class Counsel in the present litigation and have personal knowledge of the facts and circumstances contained herein.

2.      I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases. I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Gold & Coulson**

3.      Gold & Coulson has expended approximately 3,053.41 in hours in the prosecution of these consolidated cases for a total lodestar of approximately $1,026,253.10. As for the Hartford Insurance case, my firm worked approximately 67.35 hours for a total lodestar of $22,473.75. This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case. If a percentage of the general consolidated time were allocated to this case, the lodestar would in0crease significantly.

2

4.    Gold & Coulson's hourly rates during the pendency of this case were between $300 and $350 an hour for attorneys and $75-$85 per hour for paralegal work.. These rates are reasonable based on hourly rates charged in similar litigation in this community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.    My firm primarily handles cases on a contingency basis. To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case. Accordingly, the prosecution of the Hartford Insurance case and the consolidated litigation in general has affected my firm's ability to prosecute other cases. As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

**Expenses of Gold & Coulson**

6.    In the prosecution of this action, my firm has incurred $3,940.67 in reasonable and necessary expenses. These expenses were generally related to the consolidated litigation and were divided by 1/15 and only 1/15 of those expenses were added to the expenses of this case so as to create a fair and equitable distribution of general expenses from the consolidated litigation.

Sworn to under the pains and penalties of perjury this 22 day of November, 2005.

Arthur S. Gold, Esq.

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

                    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

                    Defendants.
_____/

SALVATORE D. LARUS SO, D.C., d/b/a          CASE NO. 01-8111
FAMILY CHIROPRACTIC CENTER, on
behalf of himself and others similarly situated,

                    Plaintiff,

v.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, HARTFORD
CASUALTY INSURANCE COMPANY,
HARTFORD ACCIDENT AND
INDEMNITY COMPANY, HARTFORD
UNDERWRITERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE
SOUTHEAST, and HARTFORD FIRE
INSURANCE COMPANY,

                    Defendants.
_____/

**DECLARATION OF CLASS COUNSEL IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AN AWARD OF ATTORNEY'S FEES AND COSTS**

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

1.      My name is Eric Lee and I am a partner in the law firm of Lee & Amtzis, P.L of Boca Raton, Florida.  I am one of the lead Class Counsel in the fifteen consolidated class action cases (Zidel v. Allstate Insurance Company, et al, Consolidated C.A. No. 00-6061) pending in this Court, one of which is the class action LaRusso. v. Hartford Insurance Co., C.A. No. 01-8111 (hereinafter "Hartford Insurance").  I am submitting this Declaration in support of final approval of the Hartford Insurance class action Settlement Agreement and Plaintiffs' Memorandum in Support of Class Counsel's Application for An Award of Attorney's Fees and Reimbursement of Expenses.

2.      I have been Plaintiffs' counsel in the Hartford Insurance case and all the consolidated cases since the first class action case was filed against Allstate Insurance Company approximately five years ago on January 12, 2000.  Although the Hartford Insurance case is before the Court for final approval of the class settlement, the historical background of the litigation in the consolidated cases is necessary to understand the tremendous effort of Class Counsel in prosecuting and managing the consolidated litigation which contributed substantially to the final settlement of the Hartford Insurance case.

**Pre-Suit Investigation**

3.      Prior to filing any of the consolidated cases, Class Counsel conducted an intensive and thorough investigation of what they believed to be an industry-wide practice of Florida automobile insurers reducing medical expense claims based on managed care preferred provider organization ("PPO") discounts.  A practice Class Counsel has characterized throughout this litigation as a "silent PPO."

4.      The investigation had three facets: 1) obtaining and reviewing any state and

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

2

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

national decisions on the PPO issue; 2) obtaining discovery documentation and deposition and hearing testimony from Florida state cases, some of which Florida Class Counsel, Kopelman & Blankman and myself were directly involved in; and 3) acquiring documentation such as PPO contracts and explanation of benefit forms from as many sources as possible throughout the state of Florida.

5.    Also, prior to the filing of these consolidated cases, Class Counsel, Larry Kopleman, and myself had filed a state court class action seeking reimbursement for insureds whose medical providers "balanced billed" them after an insurer's application of PPO discounts to their medical expense claims.  Information from the state court class action also served as part of the wealth of information reviewed by Class Counsel prior to filing the consolidated cases. Finally, documents and deposition transcripts from similar class actions in Massachusetts state court were accumulated and reviewed as the Massachusetts cases involved some of the same PPOs, PPO contracts and claim re-pricing companies working with the automobile insurers in Florida.

6.    Also as part of our investigation, Class Counsel met with their clients and their clients' billing personnel to gain information "on the ground" about how the PPOs, insurers and claims facilitators, such as ADP, were processing medical expense claims on a day-to-day basis.

7.    The majority of the documents obtained in Class Counsel's investigation, as well as documents gained after the litigation was filed, were organized into an electronic document depository which Class Counsel could access online from their offices for the purposes of prosecuting the litigation.

8.    Class Counsel's research at the time revealed that no similar federal or state class

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

3

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

actions challenging a "silent PPO" discounting scheme on automobile medical expense claims had been filed anywhere in the country with the exception of two cases brought in Massachusetts by Class Counsel team member Phillips & Garcia, LLP. The filing of the Florida federal court class actions based on the emerging "silent PPO" discounting practice in the automobile industry was both novel in theory and scope.

9.    After this extensive pre-suit investigation of what amounted to the PPO discounting practices of the entire Florida automobile insurance industry, Class Counsel spent an enormous amount of time researching viable state and federal court causes of action before filing the first case. After completing their research and cognizant of the inherent difficulties of a federal court civil RICO case, Class Counsel also spent a large amount of time on the drafting and re-drafting of the model class action complaint which was used as the backbone for all of the complaints filed in these consolidated cases. Class Counsel's time and effort proved valuable as the plaintiffs' RICO claims survived the defendants' motions to dismiss.

**The Allstate Filing and the Consolidated Litigation**

10.    On January 12, 2000, Class Counsel filed the first class action case against Allstate Insurance Company. From the start, the case was aggressively defended with defendants Allstate and Medview Services, Inc. first moving to dismiss.

11.    After the Allstate filing, Class Counsel then filed the following cases:

a.    Brickell, et al v. Progressive Express Ins. Co., et al, C.A. No. 00-6649 (filed 5/12/00);

b.    Browner v. Allstate Indemnity Company, et al, C.A. No. 00-7163 (filed 8/16/00);

c.    LaRusso, et al v. Liberty Mutual Ins. Co., C.A. No. 00-7692 (filed 11/15/00);

d.    Larusso, et al v. Nationwide Ins. Co., C.A. No. 01-8108 (filed 2/7/01);

e.    Larusso, et al v. Florida Farm Bureau Casualty Ins. Co., C.A. No. 01-8110

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

4

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

(filed 2/7/01);

    f.    <u>Larusso ITT Hartford Life & Annuity Ins. Co.</u>, C.A. No. 01-8111 (filed 2/7/01);

    g.    <u>Ultra Open MRI Corp., et al v. Progressive American Ins. Co.</u>, C.A. No. 01-6776 (filed 5/8/01);

    h.    <u>Ultra Open MRI Corp., et al v. Deerbrook Ins. Co.</u>, C.A. No. .01-6777 (filed 5/8/01);

    i.    <u>Ultra Open MRI Corp., et al v. Prudential Property & Casualty Ins. Co.</u>, C.A. No. 01-6778 (filed 5/8/01);

    j.    <u>Ultra Open Mri Corporation, et al v. Fidelity & Casualty Co. of New York, et al</u>, C.A. No. 01-6779 (filed 5/8/01);

    k.    <u>Ultra Open MRI Corp. v. Integon National Ins. Co., et al</u>, C.A. No. 01-6780 (filed 5/8/01);

    l.    <u>The Chiropractic Centre, Inc., et al v. Superior Ins. Co.</u>, C.A. No. 01-6782 (filed 5/8/01);

    m.    <u>The Chiropractic Centre, Inc., et al v. Metropolitan Ins. Co.</u>, C.A. No. 01-6783 (filed 5/8/01);

    n.    Mote Wellness & Rehab., Inc., et al v. American International Ins. Co., et al, C.A. No. 01-8549 (filed 6/14/01).

12.    The cases were consolidated by Judge Ferguson. Each filed case was aggressively defended. As evidenced by the individual and consolidated case dockets, prior to the ultimate appeal of the cases, the defendants filed scores of different motions to dismiss and/or to compel arbitration.

13.    Class Counsel opposed all of the defendants' motions to dismiss and to compel arbitration and, with the exception of the dismissal of their Lanham Act counts, the plaintiffs prevailed on each and every motion. In the two circumstances where Magistrate Judge Snow partially ruled against the plaintiffs on the issue of arbitration, Class Counsel challenged the Magistrate Judge's recommendation and the District Court did not adopt the recommendation. All motions to dismiss and to compel arbitration were successfully defeated. It almost goes without saying that it took Class Counsel a tremendous amount of time and effort to defeat the defendants' initial attempts to dismiss these consolidated cases.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

5

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

14.    While opposing the defendants' attempts to dismiss the cases, Class Counsel also went on the offensive by propounding discovery to the defendants and subpoenaing non-party witnesses.  Class Counsel served separate requests for production, interrogatories and admissions on all the defendants.  Class Counsel also noticed over 40 depositions of various witnesses and sent document and deposition subpoenas to many non-party witnesses.

15.    The vast majority of Class Counsel's discovery requests were opposed by the defendants.  The defendants either objected to the discovery in its entirety or filed motions for protective orders seeking to limit or stop Class Counsel from taking discovery.  Class Counsel opposed the defendants' motions and in some circumstances filed motions to compel and for sanctions due to the defendants' failures to respond to discovery.  Despite these efforts, the defendants were for the most part successful in preventing Class Counsel from conducting discovery as the District Court eventually stayed the cases.

16.    After not being able to obtain discovery from the defendants through the normal discovery process, Class Counsel entered into settlement discussions with defendants, ADP Medical Solutions, Inc ("ADP") and Beech Street Corporation ("Beech Street"), in an effort to discover information about the defendants' polices and practices.  In the majority of the consolidated cases, Beech Street was the PPO whose discounts were applied to automobile insurance medical expense claims by ADP.  ADP's business was to analyze and re-price claims for property and casualty insurers with its software programs.

17.    Class Counsel were able to negotiate a settlement with ADP and Beech Street whereby they would produce any and all documents pertaining to the PPO discounting policies and practices of the relevant defendant insurers.  Accordingly, ADP and Beech Street produced

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

6

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

numerous boxes of documents to Class Counsel.

18.     As part of the settlement, Class Counsel also propounded specific data requests to ADP whereby ADP produced data on CD ROM which listed class members by name, address, tax identification number and also included specific claim by claim information per insurer by year. Finally, pursuant to the settlement, ADP and Beech Street agreed to a continuing obligation to provide additional documents and information as the litigation proceeds.

19.     Based on Class Counsel's experience, it would have taken years to obtain the same discovery in the formal litigation process.  Moreover, the documents and information obtained from ADP and Beech Street are confidential and therefore have not been disclosed to the defendants with the limited exception of data shared in settlement negotiations with the insurers.

20.     In addition to Class Counsel's efforts to obtain discovery from the vendor defendants, Class Counsel also briefed and filed motions for class certification in all of the cases and were ready to argue the same had the Court set them for hearing.

21.     As an example of the intense nature of the litigation, after the District Court issued its Omnibus Order on September 28, 2001, in the two month period from October 3, 2001 through December 7, 2001, the defendants filed 49 motions, notices, requests and submissions seeking all manner of stays, modifications, reaffirmations, clarifications, vacations, re-considerations and dismissals, all of which Class Counsel had to respond to in one form or another.

22.     As of October 30, 2002, the time at which the District Court appears to have issued its last order prior to appeal, the consolidated docket had been consumed with some 886 entries over a two and a half year period.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

7

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

23.    After losing their motions to compel arbitration in the trial court, the majority of the defendants, with the exception of the Progressive defendants, appealed Judge Ferguson's decision to the Eleventh Circuit where the appeals are currently pending.

24.    All of the defendant insurers in these consolidated cases have stopped taking discounts on automobile medical expense claims.

**The Hartford Insurance Case**

25.    The Hartford Insurance class action was filed on February 7, 2001, over one year after the initial filing of the Allstate case.  The case was transferred and reassigned to Judge Ferguson.

26.    After filing, Class Counsel aggressively pursued the Hartford Insurance case. Class Counsel filed a motion for class certification the same day of the class action filing.  Class Counsel also served requests for production, admissions and interrogatories on Hartford Insurance and noticed depositions of Hartford Insurance personnel.

27.    Hartford Insurance aggressively defended the case from the beginning.  On December 10, 2001, Hartford Insurance moved to compel arbitration and to stay the case, which Class Counsel opposed.  Hartford Insurance subsequently moved for a protective order on Class Counsel's discovery.  Class Counsel opposed Hartford Insurance's attempts at obtaining a protective order and filed a motion to compel Hartford Insurance to attend depositions that had been scheduled by Class Counsel.  Hartford Insurance opposed Class Counsel's motion and also filed an opposition to the plaintiff's amended motion for class certification.

28.    After the Magistrate Judge recommended that the motion to compel arbitration be denied in part and granted in part, Hartford Insurance and Class Counsel filed their objections

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

8

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

with Judge Ferguson. Judge Ferguson adopted the Magistrate Judge's recommendation and sustained the plaintiff's objections. Hartford Insurance thereafter filed its appeal with the Eleventh Circuit.

29. After the appeal was filed, Class Counsel and Hartford Insurance agreed to begin settlement negotiations. The first Hartford Insurance settlement session took place on February 11, 2003 before Joseph Unger, a Mediator with the United States Court of Appeals for the Eleventh Circuit. At that settlement session, Class Counsel agreed to amend the original Hartford Class Action Complaint to add additional Hartford Defendants, and a Second Amended Complaint was filed.

30. Thereafter, Class Counsel and defense counsel continued negotiations in person and over the telephone for an additional two years. There were times in the negotiation process where Class Counsel questioned whether the parties would be able to settle the case. There were serious issues regarding Hartford's supplying complete data related to this case. Through hard work and perseverance, the parties were able to resolve their differences and enter into a detailed settlement agreement. Settlement discussions were always conducted at arms-length, were fairly and zealously advocated and there was no collusion between counsel for the parties.

31. During the pendency of these cases there have been three appellate state cases on the PPO discounting issue pending before the Fifth, Second and Fourth Florida district courts of appeal. At the time the Hartford Insurance's case was settled in principle, the Fifth District Court of Appeals had already issued its decision declaring that the insurer's PPO discounting practices violated the Florida statute. However, the Second District Court of Appeals had ruled that their discounting practice did not violate the Florida Statute. Thereafter, the Fourth District Court of

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

9

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Appeal followed the decision by the Second District Court of Appeal.

32.    Accordingly, Class Counsel were able to negotiate benefits for the Class where claims would be paid at 80% of the PPO discounted amount and were also able to negotiate the payment of attorney's fees and costs and the costs of settlement administration outside and separate from the Class Fund of $540,000.  Moreover, the settlement provided for direct mail notice to Class Members with a minimal proof of claim process where Class Members would not be required to submit any documentation besides the basic information requested on the claim form.

33.    Pursuant to the Settlement, Class Counsel communicates with defense counsel about the claims process and receives and reviews periodic reports from the independent Settlement Administrator and defense counsel regarding the ongoing settlement administration.

34.    Class Counsel have not yet received a fee for prosecuting the Hartford Insurance case.  Class Counsel have spent approximately 12,200 hours on the consolidated cases for a total lodestar of over $3,453,498.00.  With respect to the Hartford Insurance case, Class Counsel have spent approximately 264 hours prosecuting the case for a total lodestar of $76,387.75.

35.    Based on Class Counsel's experience, negotiating a class action settlement where class members will receive approximately 80% of their actual damages without an evidentiary proof of claim process is a tremendous benefit to the class, especially given the risks associated with the age of the claims, the state and Eleventh Circuit appeals and the difficulties in certifying and trying a complex RICO case.  At all times Class Counsel maintained and advocated for the interests of the Class, and as a result, negotiated a settlement that far exceeds the standard class benefits in typical class action cases.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

10

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Sworn to under the pains and penalties of perjury this 23rd day of November 2005.

Respectfully submitted,

Lee & Amtzis, P.L.
Counsel for Plaintiffs
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Phone: 561-981-9988
Fax: 561-981-9980
E-Mail: lee@leeamlaw.com.


By: _____
ERIC LEE
Fla. Bar No. 961299

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
(954) 462-6855
(954) 462-6899 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

              Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

              Defendants.

_____/

SALVATORE D. LARUS SO, D.C., d/b/a      CASE NO. 01-8111
FAMILY CHIROPRACTIC CENTER, on
behalf of himself and others similarly situated,

              Plaintiff,

v.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, HARTFORD
CASUALTY INSURANCE COMPANY,
HARTFORD ACCIDENT AND
INDEMNITY COMPANY, HARTFORD
UNDERWRITERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE
SOUTHEAST, and HARTFORD FIRE
INSURANCE COMPANY,

              Defendants.

_____/

**AFFIDAVIT OF ERIC LEE, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF
ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES**

Eric Lee, being duly sworn does under oath depose and state as follows:

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

1.       I am an attorney duly licensed in the State of Florida and am certified to practice in both federal and state courts.  I am the managing member of the law firm of Lee & Amtzis, P.L., 5550 Glades Road, Suite 401, Boca Raton, FL 33431.  Prior to working at Lee & Amtzis, I was a partner at Atlas Pearlman, formerly of Ft. Lauderdale.  I have acted as Co-Lead Class Counsel in the present litigation while at my firm and Atlas Pearlman and have personal knowledge of the facts and circumstances contained herein.

2.       I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases.  I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Atlas Pearlman**

3.       While I was employed at Atlas Pearlman the firm expended approximately 3,313.20 hours in the prosecution of the consolidated litigation for a total lodestar of $815,197.71.  This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case.  If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.       Atlas Pearlman's hourly rates during the pendency of this case were between $350 and $175 an hour for attorneys and are reasonable based on hourly rates charged in similar litigation in this community.   The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**Time and Effort Expended by Lee & Amtzis**

5.      Lee & Amtzis has expended 25.3 hours in the Hartford Insurance case for a lodestar of $8,855.00. The lodestar figure for the Hartford case would be further enhanced by the attribution of a percentage of the consolidated time Lee & Amtzis' has worked on these consolidated cases.

6.      Lee & Amtzis's hourly rates during the pendency of this case were between $350 for partners and $195 for associates and are reasonable based on hourly rates charged in similar litigation in this community.   The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

7.      To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case.   Accordingly, the prosecution of the Hartford case and the consolidated litigation in general has affected my firm's ability to prosecute other cases.   As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

8.      Class Counsel has expended over $5,500.00 in litigation cost advances in the prosecution of the Hartford Insurance case.  These expenses include such reasonable expenses as court filing fees, on-line legal research expenses, copy and courier charges, and reasonable airfare, lodging costs and ground transportation for out-of-state counsel traveling to further the prosecution of the litigation.  As part of the Settlement Agreement Class Counsel has agreed to accept $5,500.00 as reimbursement in full of these cost advances subject to the Court's approval

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

of same.

Sworn to under the pains and penalties of perjury this 23rd day of November, 2005.

Eric Lee, Esq.

4

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH
(Magistrate Snow)

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

     Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

     Defendants.

_____/

SALVATORE D. LARUSSO, D.C., d/b/a      CASE NO. 01-8111
FAMILY CHIROPRACTIC CENTER, on
behalf of himself and others similarly situated,

     Plaintiff,

v.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, HARTFORD
CASUALTY INSURANCE COMPANY,
HARTFORD ACCIDENT AND
INDEMNITY COMPANY, HARTFORD
UNDERWRITERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE
SOUTHEAST, and HARTFORD FIRE
INSURANCE COMPANY,

     Defendants.

_____/

**AFFIDAVIT OF CARLIN J. PHILLIPS, ESQ. IN SUPPORT OF
CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES <u>AND
REIMBURSEMENT OF EXPENSES</u>**

1

NOW COMES Carlin J. Phillips and after being duly sworn does under oath depose and state as follows:

1.    I am an attorney duly licensed in the Commonwealth of Massachusetts and am certified to practice in both federal and state courts.  I am a partner in the law firm of PHILLIPS & GARCIA, LLP, 13 Ventura Drive, North Dartmouth, Massachusetts, 02747.  This Court has previously granted my pro hac vice motion to appear in these consolidated cases.  I have acted as Co-Lead Class Counsel in the present litigation and have personal knowledge of the facts and circumstances contained herein.

2.    I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases.  I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Phillips & Garcia, LLP**

3.    Phillips & Garcia, LLP has expended approximately 1,985.3 hours in the prosecution of these consolidated cases for a total lodestar of $442,845.40.   As for the Hartford Insurance case, my firm worked approximately 83.60  hours for a total lodestar of $18,809.00.  This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case.  If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.    Class Counsel's hourly rates during the pendency of this case were between $225 and $275 and are reasonable based on hourly rates charged in similar litigation in this

2

community. The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.      My firm primarily handles cases on a contingency basis. To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case. Accordingly, the prosecution of the Hartford Insurance case and the consolidated litigation in general has affected my firm's ability to prosecute other cases. As with all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for years worth of effort and have to account for missed opportunities in the legal marketplace.

Sworn to under the pains and penalties of perjury this 23 day of November, 2005

_____
Carlin J. Phillips, Esq.

COMMONWEALTH OF MASSACHUSETTS

Bristol, ss

On this ___ day of November 2005, before me, the undersigned notary public, personally appeared the above-named Carlin J. Phillips, who proved to me through satisfactory evidence of identification which was/were a valid Massachusetts drivers license(s) to be the person(s) whose name is/are signed on the preceding or attached document, and acknowledged the foregoing instrument to be his/her/their free act and deed, and that he/she/they signed it voluntarily for its stated purpose.

_____
Notary Public  Andrew J. Garcia
My Commission Expires: 03/20/2009

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

                Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

                Defendants.
_____/

SALVATORE D. LARUS SO, D.C., d/b/a      CASE NO. 01-8111
FAMILY CHIROPRACTIC CENTER, on
behalf of himself and others similarly situated,

                Plaintiff,

v.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, HARTFORD
CASUALTY INSURANCE COMPANY,
HARTFORD ACCIDENT AND
INDEMNITY COMPANY, HARTFORD
UNDERWRITERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE
SOUTHEAST, and HARTFORD FIRE
INSURANCE COMPANY,

                Defendants.
_____/

**AFFIDAVIT OF DOUGLAS BLANKMAN, ESQ. IN SUPPORT
OF CLASS COUNSEL'S APPLICATION FOR AN AWARD OF
ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES**

Douglas Blankman, being duly sworn does under oath depose and state as follows:

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

1.      I am an attorney duly licensed in the State of Florida and am certified to practice in both federal and state courts.  I am a partner in the law firm of Kopelman & Blankman, 350 E. Las Olas Blvd., Ft. Lauderdale, FL 33301.  I have acted as Co-Lead Class Counsel in the present litigation and have personal knowledge of the facts and circumstances contained herein.

2.      I have been involved in all aspects of the litigation from the pre-suit investigation through the Eleventh Circuit appeal and the eventual settlement negotiations in several of the cases.  I have direct knowledge of the work my firm has done in these cases and, this settled case in particular, and the expenses we have incurred in prosecuting these cases.

**Time and Effort Expended by Kopelman & Blankman**

3.      Kopelman & Blankman has expended approximately 87.5 hours in the prosecution of the Hartford Insurance case for a total lodestar of $26,250.00.  This lodestar figure does not account for general time from the consolidated litigation where work performed in the consolidated cases benefitted the Class in this case.  If a percentage of the general consolidated time were allocated to this case, the lodestar would increase significantly.

4.      Class Counsel's hourly rates during the pendency of this case were $300 per hour and are reasonable based on hourly rates charged in similar litigation in this community.  The amount of hours expended is also reasonable given the complexity of this case, the size of the class, the statewide aspect of the case, and the results obtained.

5.      My firm primarily handles cases on a contingency basis.  To achieve this Settlement for Class Members, my firm had to devote considerable time, effort and resources to the prosecution of this case.  Accordingly, the prosecution of the Hartford Insurance case and the consolidated litigation in general has affected my firm's ability to prosecute other cases.  As with

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

all firms with a contingent fee caseload, fees from larger cases typically represent remuneration for

years worth of effort and have to account for missed opportunities in the legal marketplace.

Sworn to under the pains and penalties of perjury this 23rd day of November, 2005.

　　s/Douglas Blankman

Douglas Blankman, Esq.
