FILED by _____ D.C.
ELECTRONIC

**Nov 23 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

                    Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

                    Defendants.
_____/

SALVATORE D. LARUSSO, D.C., d/b/a          CASE NO. 01-8111
FAMILY CHIROPRACTIC CENTER, on
behalf of himself and others similarly situated,

                    Plaintiff,

v.

HARTFORD INSURANCE COMPANY
OF THE MIDWEST, HARTFORD
CASUALTY INSURANCE COMPANY,
HARTFORD ACCIDENT AND
INDEMNITY COMPANY, HARTFORD
UNDERWRITERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, HARTFORD
INSURANCE COMPANY OF THE
SOUTHEAST, and HARTFORD FIRE
INSURANCE COMPANY,

                    Defendants.
_____/

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE PROPOSED
### SETTLEMENT WITH HARTFORD INSURANCE COMPANY, ET AL.

Plaintiff Salvatore D. Larusso, D.C., d/b/a/ Family Chiropractic Center ("hereinafter

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

**1124/gz**

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Larusso" or "Plaintiff") and Defendants Hartford Insurance Company of the Midwest, Hartford Casualty Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Insurance Company of the Southeast, and Hartford Fire Insurance Company respectfully submit this memorandum pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of the proposed settlement of this action as against the named Defendants which are direct or indirect subsidiaries of Hartford Insurance Company of the Midwest (collectively "Hartford")[1] for total class relief of over $540,000 (the "Settlement").

## SUMMARY OF THE SETTLEMENT

The specific terms of the Settlement have been set forth in the Settlement Agreement and Stipulation (the "Stipulation") filed with the Court and preliminarily approved on July 28, 2005. The settlement provides for a $540,000 class fund. Hartford has also agreed to pay the following monies separate from the class fund: 1) up to $189,000 in attorney's fees; 2) reasonable litigation costs and expenses, not to exceed $5,500; and 3) the costs of settlement administration. In accordance with the Stipulation, the settlement administrator mailed a total of 1,350 Notices and Proof of Claim forms. Out of all of these Notices, only 1 valid Opt-Out was filed. This represents less than .01% of the class members who were sent notice. Additionally, and most importantly, there has not been a single objection filed to the class action settlement, the requested attorney's fees, or the requested reimbursement of expense. The lack of a single objection speaks volumes to the fairness and reasonableness of this settlement.

---

[1]These companies issued and underwrote automobile insurance in Florida during the Class Period, specifically October 1, 1996 through September 30, 2000.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

2

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## I.    HISTORICAL BACKGROUND OF THE LITIGATION

### A.    The Consolidated Class Action Litigation

The consolidated class action litigation began five years ago on January 13, 2000, with the filing of Napoli v. Allstate Insurance Company, et al, later amended as Zidel v. Allstate Insurance Company, et al,. After filing the first case, Class Counsel filed fourteen additional cases, all of which were eventually consolidated into the current case. Each case alleged a similar pattern and practice by the various insurance defendants of reducing Florida automobile insurance personal injury protection ("PIP") medical expense claims based on the wrongful application of preferred provider organization ("PPO") discounts, issues of first impression regarding that issue.[2]

The theories that predominated all the consolidated cases centered around allegations that the discounting practices of the defendant insurers: (1) violated Florida PIP insurance statutory law (specifically Fla. Stat. § 627.736(10)); (2) constituted a violation of the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. (the "RICO Act"); (3) were in direct breach of the specific language of the relevant automobile insurance policies; and, (4) constituted unjust enrichment to the defendant insurers.

Since the Plaintiff and Class Counsel took on the Florida auto insurance industry to stop the industry-wide practice of discounting PIP claims through the alleged wrongful application of PPO discounts, the defendant insurers, and their vendors supplying the discounts, aggressively "circled the wagons" in defense of these class actions.[3]    As the Court's Docket Sheet

---

[2] To Class Counsel's knowledge the Consolidated Cases were the first class action cases in the country to challenge the "silent PPO" discounting of automobile insurance medical expense claims, other than two similar actions brought in Massachusetts state court by Class Counsel, Phillips & Garcia, LLP.

[3] The defendant insurers have all stopped the practice of applying PPO discounts to PIP medical expense claims.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

demonstrates, a virtual legal war ensued with a first barrage of multiple motions to dismiss. The plaintiffs thwarted the initial flurry of defensive motions, most notably defeating the defendants' attempts to dismiss their RICO counts.[4]

The current action against Hartford, along with a Motion for Class Certification, was filed on February 7, 2001. (See Hartford Docket Entries Nos. 1, 3). Hartford subsequently filed its motion to compel arbitration on December 10, 2001 on the basis of an arbitration clause contained in the insurance contract. (Consolidated Docket Entry No. 402). After consideration, in a Report dated December 14, 2001, Magistrate Snow recommended denying Hartford's motion to compel arbitration on the basis that the arbitration clause contained in the Hartford auto policy was not an independent contract between the parties and must be stricken as in violation of Florida's Constitution under Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000). Hartford then filed its Objections to the Report and Recommendation. Ultimately, in an October 28, 2002, Supplemental Order, this Court denied the motions to compel arbitration in the consolidated cases, including Hartford's motion. The defendants, including Hartford, then appealed Judge Ferguson's decisions on the arbitration issue to the Eleventh Circuit, where the cases were consolidated on appeal.[5]

While the cases were in the District Court, Class Counsel aggressively sought discovery from all the defendants and other non-party witnesses. Class Counsel propounded written discovery and noticed various depositions of the defendants and other witnesses. Almost all of these discovery efforts were met with motions for protective orders or motions to stay discovery.

---

[4] The Plaintiffs' victory was not total. In its main ruling on the motions to dismiss, the Court dismissed the Plaintiffs' Lanham Act claims.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Class Counsel opposed such motions and countered in some cases by filing motions to compel discovery which were, in turn, opposed by the defendants. All discovery and litigation in the District Court was eventually stayed as the cases were appealed to the Eleventh Circuit.[6]

### B.      The Hartford Class Action

Larusso is a Florida healthcare provider that had entered into a Preferred Provider Agreement ("PPA") contract with Non-Party Medview Services, Inc. ("Medview"). Community Care Network, Inc.("CCN") subsequently acquired Medview and Medview's participating provider contracts. Companies such as CCN are also referred to as "brokers" or "managed care companies" in the health care industry, and CCN operates a national Preferred Provider Organization ("PPO"). Under the terms of his contract with CCN, as successor by merger with Medview, Larusso agreed to discount his normal "full-priced" medical charges for medical services rendered to CCN's subscribers.

In the course of his practice, however, Larusso also treated patients covered by automobile insurance policies issued by Hartford. Hartford's standard Florida automobile insurance policy provided insureds with PIP coverage that paid for 80% of all reasonable and necessary medical expenses. After Larusso treated patients insured by Hartford, Larusso submitted his bills for payment to Hartford . To process these PIP claims, however, Larusso alleges that Hartford began improperly applying Larusso's CCN discounted rate to Larusso's

---

[5] The Progressive defendants did not appeal, however the District Court stayed the Progressive cases when the other cases were appealed.

[6] As of October 28, 2002 when the cases were stayed, the consolidated docket had 882 entries.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

medical charges.[8]  Larusso alleges that Hartford was not entitled to discount its medical fees based on the CCN PPO because Hartford had not become a CCN PPO subscriber and had not complied with Fla. Stat. § 627.736(10).

Since the inception of the Hartford litigation, Hartford has denied all of Larusso's allegations and disputes that its conduct was in any way wrongful or improper.  For purposes of this Settlement, the parties have agreed that Hartford has made no admission of liability.

The instant case is presently on appeal of the District Court's denial of Hartford's motion to compel arbitration.  If the proposed Settlement is ultimately approved by this Court, Hartford will no longer actively participate in that appeal and its appeal will be voluntarily dismissed.

## II.    DISCOVERY AND NEGOTIATIONS LEADING TO SETTLEMENT

Attempts at settlement negotiations with Hartford did not occur until after Hartford's motions to dismiss and to compel arbitration were denied at the District Court level and the case was appealed to the Eleventh Circuit.  Counsel for the parties then conducted extensive settlement discussions in accordance with the Eleventh Circuit's mediation program before Joseph Unger, a mediator with the United States Court of Appeals for the Eleventh Circuit.  An initial day-long settlement session took place before Unger on February 11, 2003.  The parties agreed, if all parties could come to acceptable settlement terms, to file a Second Amended Class Action Complaint in this case adding a number of the named defendants.  After the initial day-long session with Mr. Unger, follow-up meetings and discussions between counsel for the parties then took place over the course of approximately two more years.

---

[8]  It should be noted for the record that Hartford objects to Larusso's allegations and any characterization of its conduct as being improper or wrongful.  The parties have expressly agreed to no admissions by Hartford as part of the proposed Settlement.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

After much protracted discussions on both sides, through continued perseverance and hard work, the current $540,000 settlement was finally reached between the parties this summer. Based on their extensive knowledge of the strengths and vulnerabilities of the claims against Hartford and given the uncertainties of an appeal and/or ultimate trial of the action, Class Counsel believe that the Settlement represents an excellent result for the Class. Plaintiff and Class Counsel heartily recommend that the proposed Settlement be approved as fair, reasonable, adequate and in the best interests of the Class.

III.    **SUMMARY OF THE SETTLEMENT**

A.    **Class Members Receive 80% of Their Damages With No Reduction for Costs of Settlement Administration or Counsel Fees**

The Settlement provides for the distribution of a Settlement Fund of up to $540,000 to Class Members who timely file Proof of Claim forms with an independent Settlement Administrator paid for by Hartford Insurance.[9] Each Class Member that timely files a properly completed Proof of Claim form is entitled to reimbursement of 80% of PPO reductions taken by Hartford on bills submitted by that Class Member to Hartford during the relevant Class Period.[10] The Settlement Agreement also provides that should the Net Opt-Outs exceed three percent (3%) of the Gross Settlement Class Membership, Hartford may terminate the Settlement Agreement and the parties would then return to their pre-settlement status regarding their rights and defenses. As of November 10, 2005 the settlement administrator had received only 1 valid Opt-Out. Furthermore, all costs of

---

[9]  The precise terms of the Settlement involving payment to the class members, are set forth in the Stipulation of Settlement filed with this Court and are also discussed in detail in the Declaration of Class Counsel.

[10]  The proof of claim process is simple and straightforward. To file a valid proof of claim, Class Members only need to verify that they provided medical services to Hartford insureds during the class period, and that they obtained "assignment of benefits" forms from Hartford insureds during the class period. *Class members do not have to provide any documentation, such as bills or explanation of benefits forms, to perfect a proof of claim.*

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

7

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

settlement administration,[12] including the costs of notification to the Class Members, are being borne by Hartford separately and in addition to the Settlement Fund.

The Settlement also provides for a claim dispute resolution process overseen by an independent arbitrator should there be any disputes between a Class Member and Hartford as to the amount of a settlement payment or the completeness of any Proof of Claim form. Under the dispute resolution function of the Settlement, Class Counsel and Hartford shall designate in advance an independent arbitrator to oversee the dispute process, and shall also establish a uniform arbitration fee. Hartford, Class Counsel, and the Class Member shall be permitted to submit written presentations regarding their respective positions regarding the disputed claim. In the event that the independent arbitrator rules in favor of the Class Member, Hartford will be required to reimburse the Class Member for any arbitration fee and the Class Member claim will be perfected and paid by Hartford.

Finally, Hartford has agreed to pay, in addition to and outside the Settlement Fund, any Class Counsel fees awarded by the Court up to thirty five (35%) of the Settlement Fund ($189,000), as well as reasonable costs and litigation expenses not to exceed $5,500.

## B.    Due Notice Of The Settlement Has Been Appropriately Given

The form of Notice utilized in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Notice, which was preliminarily approved by this Court, provided detailed information concerning the rights of Class Members, including the manner in which

---

[12]  Hartford has retained the independent class action settlement administration company of Wachovia Information Consulting Group ("Wachovia"), to serve as the independent settlement administrator.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

objections could be lodged; the nature, history and progress of the Litigation; the proposed Settlement terms; the process for filing Proofs of Claim; the fees and expenses to be sought by Class counsel; the necessary information for any Class Member to examine the Court records should he or she desire to; and the time and procedure for exclusion from the Settlement or to object to the Settlement or Class Counsel's fee application.

All potential Class Members were identified using the most current records and electronic data provided by Hartford.  Notices were then prepared by an independent settlement administrator, Wachovia, which was entirely paid for by Hartford.  Wachovia then mailed first class, postage pre-paid, to all Class Members identified on the Class Member list, a copy of the Notice and the Proof of Claim approved by this Court.  At the beginning of the settlement process Wachovia  initially mailed 1,190 total Notices.

Over the course of the claims period, Wachovia made efforts to ensure that as many of the Notices were received by Class Members.  For example, during the claims period, Wachovia received 18 Notices returned with current forwarding addresses provided by the U.S. Postal Service.  As required under the terms of the Settlement, Wachovia also made efforts to identify and locate any Class Members in the case of any Notices being returned as "undeliverable" without valid forwarding addresses on file through the use of Equifax and the N.C.O.A. database and to use the Department of State website. Wachovia's efforts resulted in the re-mailing of an additional 160 Notices to Class Members, therefore resulting in a total mailing of 1,350 Notices. Thus, the method of notice was the most reasonable method under the circumstances to apprise all potentially interested parties of the pending Settlement and amply satisfied the requirements of due process.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## IV.    THE STANDARDS FOR JUDICIAL APPROVAL OF SETTLEMENTS UNDER RULE 23(E).

There is an overriding public interest in favor of class action settlements which have the well-deserved reputation as being most complex.[13] Ass'n for Disabled Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)); Warren v. City of Tampa, 693 F.Supp. 1051, 1054 (M.D. Fla. 1998), aff'd, 893 F.2d 347 (11th Cir. 1989).  Accordingly, a class action settlement should be approved so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties."  Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984); Cotton v. Hinton, 559 F.2d at 1330; Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 537 (S.D. Fla. 1988).

When determining whether a settlement is fair, adequate and reasonable, a court should consider all relevant factors, including (1) an assessment of the likelihood of success at trial; (2) the range of possible recovery at such trial; (3) the consideration provided to class members under the Settlement, in comparison to the range of possible recovery discounted by the inherent risks of litigation; (4) the complexity, expense and duration of the litigation in the absence of the settlement; (5) the substance and amount of opposition to the settlement; and (6) the state of proceedings at which the settlement was achieved.  Bennett v. Behring Corp., 737 F.2d at 986; Cotton v. Hinton, 559 F.2d at 1330-31; see also Behrens v. Wometco Enter., Inc., 118 F.R.D. 534, 538-39 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990); ADA v. Aetna, Inc. (In re

---

[13]  The Eleventh Circuit has noted that "public policy strongly favors the pretrial settlement of class action lawsuits."  In re U.S. Oil & Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992).  In that action, the court noted that "complex litigation like the instant [class action] case can occupy the court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive.  Accordingly, the Federal Rules . . . authorize District Courts to facilitate settlements..."  Id.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Managed Care Litig.), 2004 U.S. Dist. LEXIS 14294, *3-4 (S.D. Fla. 2004).[14]

The application of the Bennett factors is left to the sound discretion of the trial judge and appellate review of the Court's decision is based on an abuse of discretion standard.  In re U.S. Oil & Gas Litig., 967 F.2d at 493; In re Broiler Chicken Antitrust Litig., 669 F.2d 228, 238 (5th Cir. 1982).  Great weight is accorded a trial judge's views in evaluating a class action settlement. City of Detroit v. Grinnell Corp., 453 F.2d 448, 454 (2d Cir. 1974) (quoting Ace Heating & Plumbing Co. V. Crane Co., 453 F.2d 30, 34 (3d Cir. 1971)).  In making its determination, the trial court is also entitled to rely on the judgment of experienced counsel for the parties.  In re Smith, 926 F.2d 1027, 1028 (11th Cir. 1991); Cotton v. Hinton, 559 F.2d at 1330.

In evaluating these considerations, a court must not try the case on the merits. Cotton v. Hinton, 559 F.2d at 1330; Diaz v. Hillsborough County Hosp. Auth., 2000 U.S. Dist. LEXIS 14061, *6 (M.D. Fla. 2000).  Instead, the court should rely on the judgment of experienced counsel and, absent fraud, "should be hesitant to substitute its own judgment for that of counsel." Ass'n for Disabled Americans v. Amoco Oil, 211 F.R.D. at 467 (quoting Cotton v. Hinton, 559 F.2d at 1330); see also In re Sunbeam Sec. Litig., 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). Rather than justifying each settlement term against a hypothetical or speculative measure of what concessions might have been gained, a court should focus on the negotiation process to ensure that the settlement was achieved through arms-length negotiations by counsel and was not the product of collusion between the parties.  See Behrens v. Wometco Enter., Inc., 118 F.R.D. at 538-39.  Ultimately, in evaluating a settlement's fairness, the court should remember that

---

[14] Other factors relevant to a court's inquiry are the terms of the settlement, the procedure afforded to notify Class members of the proposed settlement, and the judgment of counsel. Cotton v. Hinton, 559 F.2d at 1330; Warren v. City of Tampa, 693 F.Supp. At 1055.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

compromise is the essence of a settlement and that "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." Cotton v. Hinton, 559 F.2d at 1330.

The application of these standards in the present case, warrants the approval of the Settlement as fair, reasonable and adequate. Class Counsel and Hartford have had substantial opportunity to weigh the strengths and weaknesses of the parties' respective positions in the event this action were to proceed to appeal and/or trial, and to reach an informed compromise based on their respective analyses.

### A.    The Likelihood Of Success At Trial And Potential Recovery.

When considering the likelihood of success at trial and any potential recovery, a court can limit its inquiry to determining "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." Ressler v. Jacobson, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992); see also Elkins v. Equitable Life Ins. Co., 1998 U.S. Dist. LEXIS 1557, * 76 (M.D. Fla. 1998); Mashburn v. National Healthcare, Inc., 684 F. Supp. 660, 670 (M.D. Ala. 1988) (in the class action settlement context, courts do not decide the merits of the case or resolve unsettled legal questions). This inquiry is premised on "balancing the probabilities, not assuring that the plaintiff class receives every benefit that might have been won after a full trial." In re Chicken Antitrust Litig., 560 F. Supp. 957, 960 (N.D. Ga. 1980). The expense of achieving a more favorable result for the class at trial must be considered. Ressler v. Jacobson, 822 F. Supp. at 1555; see also, Young v. Katz, 447 F.2d 431, 433 (5th Cir. 1971).

While the Settlement represents an extremely favorable result under any measure, it must be considered in light of the significant risks faced by the Class with continued litigation. Class Counsel believe that they have a "strong case" to be made against Hartford. The potential for a

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

substantial recovery at trial (assuming that Plaintiffs could get past the hurdle of Hartford's appeal), however, was tempered by Class Counsel's analysis of certain major factors that favor the settlement of this action on the proposed terms.  These factors include (1) the uncertain outcome of pending appeals to the Florida Supreme Court concerning the interpretation of Florida Statute section 627.736(10); (2) the uncertain outcome of a pending appeal to the 11th Circuit Court of Appeals concerning Hartford's motion to compel arbitration or in the alternative to dismiss the action; and (3) the inherent difficulties in proving the elements of a RICO action against Hartford in a full trial on the merits.

### 1.    The Florida District Courts of Appeal Have Conflicting Rulings.

One of the most important considerations concerning the likelihood of success at trial concerns Plaintiff's claims under Florida's PIP statute, Section 627.736(10).  There is currently a split between two Florida appellate districts, the Second and Fifth Districts, on whether an auto insurer may pay health care providers at reduced PPO contract rates without first offering a preferred provider PIP policy of insurance.[15]  In Nationwide Mut. Fire Ins. Co. v. Central Florida Physiatrists, P.A., 851 So. 2d 762 (Fla. 5th DCA 2003), the Fifth District Court of Appeal reasoned that the clear and precise language of Section 627.736(10) demonstrates the Legislature's intent that the availability of PPO benefits under a PIP auto insurance policy is subject to strict compliance with the terms of subsection (10).  According to the Fifth District, Nationwide Mutual Fire Insurance was required to first comply with the provisions of subsection (10) in order to take advantage of paying reduced PPO rates for payment of PIP claims.  Id. at 766.  Nationwide Mutual Fire Insurances' failure to do so thus required it to pay the statutorily

---

[15]    The Settlement was reached with Hartford while the split existed and while the issue was on appeal to the Florida Supreme Court.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

mandated 80% of the reasonable and necessary medical expenses incurred by its insured. Id.

In stark contrast to the Fifth District's decision, the Second District held that subsection (10) does not prohibit insurers that have not issued PPO auto policies from paying health care providers at discounted PPO rates. See Nationwide Mut. Ins. Co. V. Dennis M. Jewell, D.C., P.A., 862 So. 2d 79 (Fla. 2d DCA 2003). Recently, in Allstate Ins. Co. v. Holy Cross Hosp., Inc., 895 So. 2d 1241 (Fla. 4th DCA 2005), the Fourth District Court of Appeal agreed with the decision by the Second District Court of Appeal. All three cases have been appealed to the Florida Supreme Court and the issue is currently pending. In light of this current conflict, the outcome of the present action remains uncertain should the Class proceed to litigate the action. Given that the proposed Settlement now removes that uncertainty while offering to reimburse the Class Members 80% of their claimed losses, it is clear that potential litigation risks outweigh the rewards of the Settlement.

**2.    The 11th Circuit Appeal Creates a Substantial Risk.**

One of Larusso's underlying causes of action against Hartford is based on its status as an assignee of the PIP insurance contract of one of its patients. In its Motion to Dismiss or to Stay Litigation and Compel Arbitration, Hartford presented a copy of the applicable insurance policy which includes an arbitration clause providing that, "All disputes between [Hartford] and any medical services provider involving medical benefits under this coverage shall be resolved through binding arbitration in accordance with Chapter 682 of the Florida Statutes." In seeking to compel Larusso to arbitrate all of his claims against it, Hartford asserted that as an assignee of the PIP insurance contract, the arbitration clause was binding against Plaintiff.

In opposing Hartford's motion, Class Counsel relied on Nationwide Mut. Fire Ins. Co. v.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000) under which the Florida Supreme Court held

that a mandatory arbitration requirement under Florida's PIP statute[16] was unconstitutional since

it denied medical provider assignees access to the courts in violation of Article I, Section 21 of the

Florida Constitution.[17]   Ultimately, a Report and Recommendation partially denying Hartford's

motion to dismiss and to compel arbitration was issued by Magistrate Judge Snow.  The Report

was partially adopted and partially overruled by this Court.[18]  Immediately thereafter, Hartford

appealed the decision to the Eleventh Circuit Court of Appeals. The appeal is currently pending.

### 3.   The Range Of Possible Recovery And The Consideration Under The Settlement In Relation To That Range.

In Behrens, the Court combined the second and third factors of the Bennett test to

determine the appropriateness of the settlement. Behrens v. Wometco Enter., Inc., 118 F.R.D. at

541.  The factors considered are the range of possible recovery and the point within, or below, the

range of possible recovery at which a settlement is fair, adequate and reasonable.  Discounting

multiple damages under RICO, the range of possible recovery under applicable law would be from

zero to 100% of the discounted amount with interest and an award of attorney's fees and costs.

Under the proposed Settlement, interest is the only monetary damage not included in the

Settlement.  If the Claim Fund is not exhausted all claimants will receive up to a 80% recovery.

Additionally, Hartford will pay Class Counsel fees and reasonable litigation costs and expenses, as

well as costs of settlement administration *separate* from the Claim Fund.  The benefits provided

---

[16] Fla. Stat. §627.736(5).

[17]  According to the Court, medical providers lost their access to the courts because their rights to appeal were severely limited under the Florida Arbitration Code while they did not receive a commensurate benefit from the statute.  Pinnacle, 753 So. 2d at 58.

[18] See Order Adopting Report and Recommendation and Administratively Closing Cases, (Sept. 30, 2002).

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

by the Settlement are at the highest end of potential relief had the case been tried successfully by Class Counsel.

Moreover, based on the present state of the PIP statutory scheme in Florida, the terms of the Settlement actually provide Class Members with *significantly better* relief than they otherwise might expect should the Settlement not be approved. Since the inception of this litigation in 2000, the Florida Legislature has amended the PIP statute by adding a complicated pre-suit demand procedure. Under the new statute, prior to filing a lawsuit a medical provider must send a demand letter to the insurer detailing: 1) the name of the insured upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the insured; 2) the claim number or policy number upon which such claim was originally submitted to the insurer; 3) to the extent applicable, the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim; and 4) an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. Fla. Stat. § 627.736(11).

Class Members who have not yet filed suit for the alleged improper PPO discounts would have to first satisfy the pre-suit demand requirements of the new statute. The statute's evidentiary demand requirements are far more onerous than the proof of claim process negotiated by Class Counsel. Class Members need not provide any documentation or detailed claim information to participate in the Settlement, whereas under the new statute they are required to conduct a file-by-file review and provide documentary evidence just to meet the pre-suit demand requirements.

**4.     The Complexity, Expense And Likely Duration Of The Litigation.**

Class Counsel believe that the claims asserted in this action have considerable merit. However, its inherent complexities combined with the uncertainties those complexities engender,

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

are characteristic of RICO litigation and consolidated cases of this nature. The docket sheet tells the story best as there are over 880 entries prior to the defendants filing their appeals (currently there are over 1,000 docket entries), and the parties still have "a long way to go" in the litigation process. Those uncertainties militate strongly in favor of approving the Settlement.

The likely duration and associated expenses of continued litigation likewise favor approval of the Settlement. See Warren v. City of Tampa, 693 F. Supp. At 1059 ("The parties estimate that trial of this case would take three weeks of Court time, and would cost hundreds of thousands of dollars in attorneys' fees, expert witnesses fees and costs. These factors militate in favor of a decision to accept the proposed settlement."). In the present case, Class Counsel estimates that a trial of this action (assuming first that Hartford fails on its Eleventh Circuit appeal) could take approximately two weeks and could cost the Class hundreds of thousands of dollars in attorneys' fees, expert fees and litigation costs. Moreover, given that Hartford has already filed one appeal in this action, it is very likely that it would appeal class certification and any trial judgment in favor of the Plaintiff. The Class would be further subject to the many years of delay and additional costs associated with those appeals.

Here there is a great deal at stake for the parties and, but for the proposed Settlement, the case would continue to be strongly litigated by Larusso and Hartford. As a result of the Settlement, the dispute between them will come to an end with the Class receiving a substantial recovery and there will also be substantial savings in Court resources by avoiding a lengthy trial of this case. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources. Behrens, 118 F.R.D. at 538.

5.    **The Substance And Amount Of Opposition To The Settlement.**

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Even when a court becomes aware of one or more objecting parties, the court is not "required to open to question and debate every provision of the proposed compromise. The growing rule is that the trial courts may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision." Cotton v. Hinton, 559 F.2d at 1331.

There were 1,350 total Notices sent out in this action. Not a single objection was filed by any Class Member. Additionally, there has been only 1 valid Opt-Out filed. Less then .01% of the Class Members opted out of the Settlement. Clearly, the reaction of the Class to the Settlement is favorable and positive. Courts have looked at the absence of meaningful objections to a proposed settlement as further support for the approval of the settlement. See Bennett, 737 F.2d at 988.

6.    **The Stage Of Proceedings At Which The Settlement Was Achieved.**

The purpose of considering the stage of the proceedings and the discovery taken is to ensure that the plaintiff has had access to sufficient information to evaluate the case and to determine the adequacy of the proposed settlement. Behrens, 118 F.R.D. at 544. As discussed in greater detail in Class Counsel's Declaration, the Settlement was achieved after four years of intense litigation involving extensive motion practice and investigation.

Larusso and Class Counsel were very aware of the merits of their case based on their pre-suit investigation and the status of state case law on the issue of applying PPO discounts to automobile medical expense claims. Additionally, despite the District Court's stay of discovery, Class Counsel was able to obtain extensive discovery from ADP and Beech Street consisting of relevant documents, data and information about the industry's PPO discounting practices and had already deposed Medview/CCN in relation to a Massachusetts class action with nearly identical

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

allegations involving the same Medview form PPO agreement. Absent this settlement with ADP and Beech Street, Class Counsel estimates that it would have taken years of post-appellate discovery to obtain the same information. Knowledge of the law, coupled with the discovery obtained formally and informally from ADP and Beech Street, allowed Class Counsel to accurately assess its case for class-wide settlement negotiations.

7.    **The Settlement Is The Result Of "Arms-Length" Negotiations Among Competent And Experienced Counsel.**

In considering the fairness of a proposed settlement, the Court is entitled to rely heavily on the opinion of competent counsel. Behrens, 118 F.R.D. at 544. This is especially apt where, as here, the extensive amount of independent investigation, legal research, briefing and discovery indicates that counsel are fully capable of evaluating the merits of Larusso's case and the probable course of future litigation. See Cotton, 559 F.2d at 1330. In analyzing a proposed settlement and the opinion of counsel, it is also appropriate for the Court to examine the negotiating process that took place between the parties to confirm that there was no collusion in reaching the Settlement. Behrens, 118 F.R.D. at 538. In the present case, the Settlement was achieved only after years of hard-fought and contentious litigation that resulted in an appeal of the Consolidated Action to the Eleventh Circuit. Ultimately, the settlement negotiations were conducted by counsel for the parties and overseen by an independent mediator of the Eleventh Circuit - clear evidence that the negotiations were conducted at "arms length." After a full day settlement mediation session with Mr. Unger on February 11, 2003 the parties continued to negotiate the details of the settlement for an additional two years, ultimately crafting the current settlement. From the complex and thorough terms of the Settlement Agreement it is clear that the process by which this Settlement was accomplished was fairly and zealously advocated by counsel for all parties. Through their

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

19

consistent and hard-pressed efforts, Class Counsel and Defense Counsel were eventually able to fashion a Settlement that is not only fair and reasonable, but is a truly extraordinary and an excellent result for the Class.

## CONCLUSION

For the foregoing reasons, Larusso and Class Counsel submit that the proposed Settlement is fair, reasonable and adequate and should be approved in its entirety, and respectfully request that the Court approve the Settlement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of November, 2005 the foregoing was served on:  See attached Service List.

Respectfully submitted,

Lee & Amtzis, P.L.
Counsel for Plaintiff
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Phone: 561-981-9988
Fax: 561-981-9980
E-Mail: lee@leeamlaw.com


By: _____
     ERIC LEE
     Fla. Bar No. 961299

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
(954) 462-6855
(954) 462-6899 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

# MASTER SERVICE LIST
## (Consolidated Case No. 00-6061-Civ-ZLOCH/SNOW)
(Updated 11/23/05)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
rabokor1@tampabay.rr.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MECKLER BULGER & TILSON
Peter J. Valeta, Esq.
peter.valeta@mbtlaw.com
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 474-7895
(312) 474-7898 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd., Ste. 1100
Miami, FL  33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for:**
**Hartford**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
One Southeast Third Ave., 28th Flr.
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS &
ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Blvd., 2nd Flr.
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile