UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of itself and
all others similarly situated,

        Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY
and COMMUNITY NETWORK , INC.,
d/b/a CCN,

        Defendants.

_____/

DR. ANDREW ELLOWITZ, on behalf of himself     CASE NO. 01-8549
And others similarly situated,

        Plaintiffs,

v.

AMERICAN INTERNATIONAL INSURANCE
COMPANY, AIU INSURANCE COMPANY,
AMERICAN HOME ASSURANCE COMPANY,
and AMERICAN INTERNATIONAL SOUTH
INSURANCE COMPANY,

        Defendants.

_____/

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE PROPOSED SETTLEMENT WITH AMERICAN INTERNATIONAL INSURANCE COMPANY, ET AL.

Plaintiff Dr. Andrew Ellowitz ("hereinafter Plaintiff") and Defendants American

International Insurance Company, AIU Insurance Company, American Home Assurance

Company, and American International South Insurance Company (collectively, "American



LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

International") respectfully submit this memorandum pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of the proposed settlement of this action as against the named Defendants which are affiliates of American International Insurance Company[1] for total class relief of over $755,000 (the "Settlement").

## SUMMARY OF THE SETTLEMENT

The specific terms of the Settlement have been set forth in the Settlement Agreement and Stipulation (the "Stipulation") filed with the Court and preliminarily approved on August 24, 2005. The settlement provides for a $755,000 class fund. AMERICAN INTERNATIONAL has also agreed to pay the following monies separate from the class fund: 1) up to $225,000 in attorney's fees; 2) reasonable litigation costs and expenses, not to exceed $5,000; and 3) the costs of settlement administration. In accordance with the Stipulation, the settlement administrator mailed a total of 3,854 Notices and Proof of Claim forms. Out of all of these Notices, only 7 valid Opt-Outs were filed. This represents less than .2% of the class members who were sent notice. Additionally, and most importantly, there has not been a single objection filed to the class action settlement, the requested attorney's fees, or the requested reimbursement of expense. The lack of a single objection speaks volumes to the fairness and reasonableness of this settlement.

## I.    HISTORICAL BACKGROUND OF THE LITIGATION

### A.    The Consolidated Class Action Litigation

The consolidated class action litigation began almost six years ago on January 12, 2000, with the filing of Napoli v. Allstate Insurance Company, et al, later amended as Zidel v. Allstate

---

[1] These companies issued and underwrote automobile insurance in Florida during the class period, specifically January 1, 1996 through January 1, 2005.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Insurance Company, et al,. After filing the first case, Class Counsel filed fourteen additional cases, all of which were eventually consolidated into the current case. Each case alleged a similar pattern and practice by the various insurance defendants of reducing Florida automobile insurance personal injury protection ("PIP") medical expense claims based on the wrongful application of preferred provider organization ("PPO") discounts, issues of first impression regarding that issue.[2]

The theories that predominated all the consolidated cases centered around allegations that the discounting practices of the defendant insurers: (1) violated Florida PIP insurance statutory law (specifically Fla. Stat. § 627.736(10)); (2) constituted a violation of the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. (the "RICO Act"); (3) were in direct breach of the specific language of the relevant automobile insurance policies; and, (4) constituted unjust enrichment to the defendant insurers.

Since the Plaintiff and Class Counsel took on the Florida auto insurance industry to stop the industry-wide practice of discounting PIP claims through the wrongful application of PPO discounts, the defendant insurers, and their vendors supplying the discounts, aggressively "circled the wagons" in defense of these class actions.[3] As the Court's Docket Sheet demonstrates, a virtual legal war ensued with a first barrage of multiple motions to dismiss. The plaintiffs thwarted the initial flurry of defensive motions, most notably defeating the defendants'

---

[2] To Class Counsel's knowledge the Consolidated Cases were the first class action cases in the country to challenge the "silent PPO" discounting of automobile insurance medical expense claims, other than two similar actions brought in Massachusetts state court by Class Counsel, Phillips & Garcia, LLP.

[3] The defendant insurers have all stopped the practice of applying PPO discounts to PIP medical expense claims.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

attempts to dismiss their RICO counts.[4]

The current action against AMERICAN INTERNATIONAL, along with a Motion for Class Certification, was filed on June 14, 2001 (See AMERICAN INTERNATIONAL Docket Entries Nos. 1, 3).[5] AMERICAN INTERNATIONAL subsequently filed its motion to compel arbitration on June 19, 2002 on the basis of an arbitration clause contained in the insurance contract. (Consolidated Docket Entry No.745). After consideration, in a Report dated September 27, 2002, Magistrate Snow recommended denying AMERICAN INTERNATIONAL's motion to compel arbitration on the basis that the arbitration clause contained in the AMERICAN INTERNATIONAL auto policy was not an independent contract between the parties and must be stricken as in violation of Florida's Constitution under Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000). On October 11, 2002 AMERICAN INTERNATIONAL filed its Objections to the Report and Recommendations (Consolidated Docket Entry No. 872). Ultimately, in an October 28, 2002 Supplemental Order, this Court denied the motions to compel arbitration in the consolidated cases, including AMERICAN INTERNATIONAL's motion. The defendants, including AMERICAN INTERNATIONAL, then appealed Judge Ferguson's decisions on the arbitration issue to the Eleventh Circuit, where the cases were consolidated on appeal.[6]

---

[4] The Plaintiffs' victory was not total. In its main ruling on the motions to dismiss, the Court dismissed the Plaintiffs' Lanham Act claims.

[5] The AMERICAN INTERNATIONAL Class Action Complaint was originally filed with Mote Wellness & Rehabilitation, Inc. as the class plaintiff. Ellowitz was subsequently added to replace Mote Wellness as the class plaintiff by an Amended Complaint and a Motion for Class Certification (Consolidated Docket Entries Nos. 593, 594).

[6] The Progressive defendants did not appeal, however the District Court stayed the Progressive cases when the other cases were appealed.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

While the cases were in the District Court, Class Counsel aggressively sought discovery from all the defendants and other non-party witnesses. Class Counsel propounded written discovery and noticed various depositions of the defendants and other witnesses. Almost all of these discovery efforts were met with motions for protective orders or motions to stay discovery. Class Counsel opposed such motions and countered in some cases by filing motions to compel discovery which were, in turn, opposed by the defendants. All discovery and litigation in the District Court was eventually stayed as the cases were appealed to the Eleventh Circuit.[7]

Despite the defendants' successful efforts at preventing Class Counsel from conducting full discovery prior to the appeal, Class Counsel were able to obtain a wealth of invaluable information by negotiating a settlement with the vendor defendants, ADP Integrated Medical Solutions, Inc ("ADP") and Beech Street Corporation ("Beech Street").[8] Under this agreement, ADP and Beech Street consented to a whole-scale production of documents, data and information relating to the defendant insurers' PPO reduction practices. ADP and Beech Street provided class counsel with thousands of pages of documents detailing the defendant insurers' PPO discounting programs. ADP and Beech Street also conducted a specific search of their respective databases that resulted in a CD ROM containing PPO discount information on a claim-by-claim basis for each insurer per year. The information on the CD ROM provided Class Counsel, in the majority of cases, with the complete class list (names, addresses and tax identification numbers) and the amount of each class member's damages on a claim-by-claim basis – information that would have taken Class Counsel years to obtain in the normal discovery

---

[7] As of October 28, 2002 when the cases were stayed, the consolidated docket had 882 entries.

[8] ADP, a national claims re-pricing company servicing property and casualty insurers, applied the Beech Street PPO discounts to the class members' medical bills on behalf of certain defendant insurers via a software program designed to calculate the discount and produce an explanation of benefits form showing the PPO reductions.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

process.

## B.    The AMERICAN INTERNATIONAL Class Action

Plaintiff Dr. Andrew Ellowitz ("Ellowitz") is a Florida healthcare provider. In the course of his practice, Ellowitz treated patients covered by automobile insurance policies issued by AMERICAN INTERNATIONAL.    AMERICAN INTERNATIONAL standard Florida automobile insurance policy provided insureds with PIP coverage that paid for 80% of all reasonable and necessary medical expenses.    After Ellowitz treated patients insured by AMERICAN INTERNATIONAL, Ellowitz submitted his bills for payment to AMERICAN INTERNATIONAL . To process these PIP claims, however, Ellowitz alleges that AMERICAN INTERNATIONAL began improperly applying discounted rates to Ellowitz's medical charges.[9] Ellowitz also alleges that AMERICAN INTERNATIONAL was not entitled to discount his medical fees because AMERICAN INTERNATIONAL had not complied with Fla. Stat. § 627.736(10).

The instant case is presently on appeal of the District Court's denial of AMERICAN INTERNATIONAL's motion to compel arbitration.    If the proposed Settlement is ultimately approved by this Court, AMERICAN INTERNATIONAL will no longer actively participate in that appeal and its appeal will be voluntarily dismissed.

## II.    DISCOVERY AND NEGOTIATIONS LEADING TO SETTLEMENT

Attempts at settlement negotiations with AMERICAN INTERNATIONAL did not occur until after AMERICAN INTERNATIONAL's motions to dismiss and to compel arbitration were

---

[9] It should be noted for the record that AMERICAN INTERNATIONAL objects to Ellowitz's allegations and any characterization of its conduct as being improper or wrongful. The parties have expressly agreed to no admission of wrongdoing or liability by AMERICAN INTERNATIONAL as part of the proposed Settlement.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

denied at the District Court level and the case was appealed to the Eleventh Circuit. Counsel for the parties then conducted extensive settlement discussions in accordance with the Eleventh Circuit's mediation program before Joseph Unger, a mediator with the United States Court of Appeals for the Eleventh Circuit. An initial day-long settlement session took place before Unger on April 14, 2003. The parties agreed, if all parties could come to acceptable settlement terms, to file a Second Amended Class Action Complaint in this case adding a number of the named defendants. After the initial day-long session with Mr. Unger, follow-up meetings and discussions between counsel for the parties then took place over the course of approximately two more years.

After much protracted discussions on both sides, through continued perseverance and hard work, the current $755,000 settlement was finally reached between the parties this summer. Based on their extensive knowledge of the strengths and vulnerabilities of the claims against AMERICAN INTERNATIONAL and given the uncertainties of an appeal and/or ultimate trial of the action, Class Counsel believe that the Settlement represents an excellent result for the Class. Plaintiff and Class Counsel heartily recommend that the proposed Settlement be approved as fair, reasonable, adequate and in the best interests of the Class.

I.    **SUMMARY OF THE SETTLEMENT**

   A.    **Class Members Receive 75% of Their Damages With No Reduction for Costs of Settlement Administration or Counsel Fees**

The Settlement provides for the distribution of a Settlement Fund of up to $755,000 to Class Members who timely file Proof of Claim forms with an independent Settlement

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Administrator paid for by AMERICAN INTERNATIONAL.[10] Each Class Member that timely files a properly completed Proof of Claim form is entitled to reimbursement of 75% of the total PPO discounts attributable to PIP as identified in AMERICAN INTERNATIONAL's own records for the period December 1, 1997 through March 30, 2001.[11] Additionally, if the bills subjected to PPO discounts also included a discount based on usual and customary rates ("UCR discounts"), the Class Member will also be entitled to 75% of the UCR discounts attributable to PIP coverage as applied to those same bills as identified in AMERICAN INTERNATIONAL's own records for the same period, December 1, 1997 through March 30, 2001.[12] If the total claim amounts submitted by Class Members is less than or equal to the $755,000 Settlement Fund established by AMERICAN INTERNATIONAL, then each properly submitted Class Member claim will be paid in full (*i.e.* at one hundred (100 percent) of the Maximum Claim Amount as defined in the Settlement Agreement).[13] Furthermore, all costs of settlement administration,[14] including the costs of notification to the Class Members, are being borne by AMERICAN

---

[10]  The precise terms of the Settlement involving payment to the class members are set forth in the Stipulation of Settlement filed with this Court and are also discussed in detail in the Declaration of Class Counsel.

[11]  The proof of claim process is simple and straight forward. To file a valid proof of claim, Class Members only need to verify that they provided medical services to American International insureds during the class period of January 1, 1996 through January 1, 2005, and that they obtained "assignment of benefits" forms from American International insureds during the class period. *Class members do not have to provide any documentation, such as bills or explanation of benefits forms, to perfect a proof of claim.*

[12]  The reimbursements of UCR discounts shall only be in connection with bills that were also subject to PPO discounts; bills subject to UCR discounts alone are not covered by this Settlement.

[13]  The Settlement Agreement also provides that should the Net Opt-Outs exceed three percent (3%) of the Class Membership, or if the combined Maximum Claim Amounts of those Class Members who opt out represent more than three percent (3%) of the total Settlement Consideration, American International may terminate the Settlement Agreement and the parties would then return to their pre-settlement status regarding their rights and defenses. As of January 4, 2006 the settlement administrator had received only 7 valid Opt-Outs.

[14]  AMERICAN INTERNATIONAL has retained the independent class action settlement administration company of Wachovia Information Consulting Group ("Wachovia") to serve as the independent settlement administrator.

INTERNATIONAL separately and in addition to the Settlement Fund.

The Settlement also provides for a claim dispute resolution process overseen by an independent arbitrator should there be any disputes between a Class Member and AMERICAN INTERNATIONAL as to the amount of a settlement payment or the completeness of any Proof of Claim form. Under the dispute resolution function of the Settlement, Class Counsel and AMERICAN INTERNATIONAL shall designate in advance an independent arbitrator to oversee the dispute process, and shall also establish a uniform arbitration fee. AMERICAN INTERNATIONAL, Class Counsel, and the Class member shall be permitted to submit written presentations regarding their respective positions regarding the disputed claim. In the event that the independent arbitrator rules in favor of the Class Member, AMERICAN INTERNATIONAL will be required to reimburse the Class Member for any arbitration fee and the Class Member claim will be perfected and paid by AMERICAN INTERNATIONAL.

Finally, AMERICAN INTERNATIONAL has agreed to pay, in addition to and outside the Settlement Fund, any Class Counsel fees awarded by the Court up to 29.8% of the Settlement Fund ($225,000), as well as reasonable costs and litigation expenses not to exceed $5,000.

**B.      Due Notice Of The Settlement Has Been Appropriately Given.**

The form of Notice utilized in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Notice, which was preliminarily approved by this Court, provided detailed information concerning the rights of Class Members, including the manner in which objections could be lodged; the nature, history and progress of the Litigation; the proposed

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Settlement terms; the process for filing Proofs of Claim; the fees and expenses to be sought by Class counsel; the necessary information for any Class Member to examine the Court records should he or she desire to; and the time and procedure for exclusion from the Settlement or to object to the Settlement or Class Counsel's fee application.

All potential Class Members were identified using the most current records and electronic data provided by AMERICAN INTERNATIONAL. Notices were then prepared by an independent settlement administrator, Wachovia, which was entirely paid for by AMERICAN INTERNATIONAL. Wachovia then mailed first class, postage pre-paid, to all Class Members identified on the Class Member list, a copy of the Notice and the Proof of Claim approved by this Court. At the beginning of the settlement process Wachovia initially mailed 3,854 total Notices.

Over the course of the claims period, Wachovia made efforts to ensure that as many of the Notices as reasonably possible were received by Class Members. For example, during the claims period, Wachovia re-mailed any Notices returned with current forwarding addresses provided by the U.S. Postal Service. As required under the terms of the Settlement, Wachovia also made efforts to identify and locate any Class Members in the case of any Notices being returned as "undeliverable" without valid forwarding addresses on file through the use of Equifax and the N.C.O.A. database. Thus, the method of notice was the most reasonable method under the circumstances to apprise all potentially interested parties of the pending Settlement and amply satisfied the requirements of due process. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

## IV.    THE STANDARDS FOR JUDICIAL APPROVAL OF SETTLEMENTS UNDER RULE 23(E).

There is an overriding public interest in favor of class action settlements which have the

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

well-deserved reputation as being most complex.[15] Ass'n for Disabled Americans, Inc. v.

Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing Cotton v. Hinton, 559 F.2d 1326,

1331 (5th Cir. 1977)); Warren v. City of Tampa, 693 F.Supp. 1051, 1054 (M.D. Fla. 1998), aff'd,

893 F.2d 347 (11th Cir. 1989). Accordingly, a class action settlement should be approved so

long as it is "fair, adequate and reasonable and is not the product of collusion between the

parties." Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984); Cotton v. Hinton, 559

F.2d at 1330; Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 537 (S.D. Fla. 1988).

When determining whether a settlement is fair, adequate and reasonable, a court should

consider all relevant factors, including (1) an assessment of the likelihood of success at trial; (2)

the range of possible recovery at such trial; (3) the consideration provided to class members

under the Settlement, in comparison to the range of possible recovery discounted by the inherent

risks of litigation; (4) the complexity, expense and duration of the litigation in the absence of the

settlement; (5) the substance and amount of opposition to the settlement; and (6) the state of

proceedings at which the settlement was achieved. Bennett v. Behring Corp., 737 F.2d at 986;

Cotton v. Hinton, 559 F.2d at 1330-31; see also Behrens v. Wometco Enter., Inc., 118 F.R.D.

534, 538-39 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990); ADA v. Aetna, Inc. (In re

Managed Care Litig.), 2004 U.S. Dist. LEXIS 14294, *3-4 (S.D. Fla. 2004).[16]

The application of the Bennett factors is left to the sound discretion of the trial judge and

---

[15]  The Eleventh Circuit has noted that "public policy strongly favors the pretrial settlement of class action lawsuits."
In re U.S. Oil & Gas Litig., 967 F. 2d 489, 493 (11th Cir. 1992). In that action, the court noted that "complex
litigation like the instant [class action] case can occupy the court's docket for years on end, depleting the resources
of the parties and taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules .
. . authorize District Courts to facilitate settlements..." Id.

[16]  Other factors relevant to a court's inquiry are the terms of the settlement, the procedure afforded to notify Class
members of the proposed settlement, and the judgment of counsel. Cotton v. Hinton, 559 F.2d at 1330; Warren v.
City of Tampa, 693 F.Supp. At 1055.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

appellate review of the Court's decision is based on an abuse of discretion standard. In re U.S. Oil & Gas Litig., 967 F.2d at 493; In re Broiler Chicken Antitrust Litig., 669 F.2d 228, 238 (5th Cir. 1982). Great weight is accorded a trial judge's views in evaluating a class action settlement. City of Detroit v. Grinnell Corp., 453 F.2d 448, 454 (2d Cir. 1974) (quoting Ace Heating & Plumbing Co. V. Crane Co., 453 F.2d 30, 34 (3d Cir. 1971)). In making its determination, the trial court is also entitled to rely on the judgment of experienced counsel for the parties. In re Smith, 926 F.2d 1027, 1028 (11th Cir. 1991); Cotton v. Hinton, 559 F.2d at 1330.

In evaluating these considerations, a court must not try the case on the merits. Cotton v. Hinton, 559 F.2d at 1330; Diaz v. Hillsborough County Hosp. Auth., 2000 U.S. Dist. LEXIS 14061, *6 (M.D. Fla. 2000). Instead, the court should rely on the judgment of experienced counsel and, absent fraud, "should be hesitant to substitute its own judgment for that of counsel." Ass'n for Disabled Americans v. Amoco Oil, 211 F.R.D. at 467 (quoting Cotton v. Hinton, 559 F.2d at 1330); see also In re Sunbeam Sec. Litig., 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). Rather than justifying each settlement term against a hypothetical or speculative measure of what concessions might have been gained, a court should focus on the negotiation process to ensure that the settlement was achieved through arms-length negotiations by counsel and was not the product of collusion between the parties. See Behrens v. Wometco Enter., Inc., 118 F.R.D. at 538-39. Ultimately, in evaluating a settlement's fairness, the court should remember that compromise is the essence of a settlement and that "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." Cotton v. Hinton, 559 F.2d at 1330.

The application of these standards in the present case, warrants the approval of the Settlement as fair, reasonable and adequate. Class Counsel and AMERICAN INTERNATIONAL have had substantial opportunity to weigh the strengths and weaknesses of

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

the parties' respective positions in the event this action were to proceed to appeal and/or trial, and to reach an informed compromise based on their respective analyses.

### A.    The Likelihood Of Success At Trial And Potential Recovery.

When considering the likelihood of success at trial and any potential recovery, a court can limit its inquiry to determining "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." Ressler v. Jacobson, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992); see also Elkins v. Equitable Life Ins. Co., 1998 U.S. Dist. LEXIS 1557, * 76 (M.D. Fla. 1998); Mashburn v. National Healthcare, Inc., 684 F. Supp. 660, 670 (M.D. Ala. 1988) (in the class action settlement context, courts do not decide the merits of the case or resolve unsettled legal questions). This inquiry is premised on "balancing the probabilities, not assuring that the plaintiff class receives every benefit that might have been won after a full trial." In re Chicken Antitrust Litig., 560 F. Supp. 957, 960 (N.D. Ga. 1980). The expense of achieving a more favorable result for the class at trial must be considered. Ressler v. Jacobson, 822 F. Supp. at 1555; see also, Young v. Katz, 447 F.2d 431, 433 (5th Cir. 1971).

While the Settlement represents an extremely favorable result under any measure, it must be considered in light of the significant risks faced by the Class with continued litigation. Class Counsel believe that they have a "strong case" to be made against AMERICAN INTERNATIONAL. The potential for a substantial recovery at trial (assuming that Plaintiff could get past the hurdle of American International's appeal), however, was tempered by Class Counsel's analysis of certain major factors that favor the settlement of this action on the proposed terms. These factors include (1) the uncertain outcome of pending appeals to the Florida Supreme Court concerning the interpretation of Florida Statute section 627.736(10); (2) the uncertain outcome of a pending appeal to the 11th Circuit Court of Appeals concerning

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

AMERICAN INTERNATIONAL's motion to compel arbitration or in the alternative to dismiss the action; and (3) the inherent difficulties in proving the elements of a RICO action against American International in a full trial on the merits.

**1.     The Florida District Courts of Appeal Have Conflicting Rulings.**

One of the most important considerations concerning the likelihood of success at trial concerns Plaintiff's claims under Florida's PIP statute, Section 627.736(10). There is currently a split between two Florida appellate districts, the Second and Fifth Districts, on whether an auto insurer may pay health care providers at reduced PPO contract rates without first offering a preferred provider PIP policy of insurance.[17] In <u>Nationwide Mut. Fire Ins. Co. v. Central Florida Physiatrists, P.A.</u>, 851 So.2d 762 (Fla. 5th DCA 2003), the Fifth District Court of Appeals reasoned that the clear and precise language of Section 627.736(10) demonstrates the Legislature's intent that the availability of PPO benefits under a PIP auto insurance policy is subject to strict compliance with the terms of subsection (10). According to the Fifth District, Nationwide Mutual Fire Insurance was required to first comply with the provisions of subsection (10) in order to take advantage of paying reduced PPO rates for payment of PIP claims. <u>Id.</u> at 766. Nationwide Mutual Fire Insurances' failure to do so thus required it to pay the statutorily mandated 80% of the reasonable and necessary medical expenses incurred by its insured. <u>Id.</u>

In stark contrast to the Fifth District's decision, the Second District held that subsection (10) does not prohibit insurers that have not issued PPO auto policies from paying health care providers at discounted PPO rates. See <u>Nationwide Mut. Ins. Co. V. Dennis M. Jewell, D.C., P.A.</u>, 862 So.2d 79 (Fla. 2d DCA 2003). Recently in <u>Allstate Ins. Co. v. Holy Cross Hosp., Inc.,</u>

---

[17]    The Settlement was reached with AMERICAN INTERNATIONAL while the split existed and while the issue was on appeal to the Florida Supreme Court.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

895 So. 2d 1241 (Fla. 4th DCA 2005), the Fourth District Court of Appeal agreed with the decision by the Second District Court of Appeal.    All three cases have been appealed to the Florida Supreme Court and the issue is currently pending.  In light of this current conflict, the outcome of the present action remains uncertain should the Class proceed to litigate the action. Given that the proposed Settlement now removes that uncertainty while offering to reimburse the Class Members 75% of their claimed losses, it is clear that potential litigation risks outweigh the rewards of the Settlement.

### 2.    The 11th Circuit Appeal Creates a Substantial Risk.

One of Plaintiffs' underlying causes of action against AMERICAN INTERNATIONAL is based on its status as an assignee of the PIP insurance contract of one of its patients.  In its Motion to Dismiss or to Stay Litigation and Compel Arbitration, AMERICAN INTERNATIONAL presented a copy of the applicable insurance policy which includes an arbitration clause providing that, "All disputes between [AMERICAN INTERNATIONAL] and any medical services provider involving medical benefits under this coverage shall be resolved through binding arbitration in accordance with Chapter 682 of the Florida Statutes."  In seeking to compel Plaintiff to arbitrate all of his claims against it, AMERICAN INTERNATIONAL asserted that as an assignee of the PIP insurance contract, the arbitration clause was binding against Plaintiff.

In opposing AMERICAN INTERNATIONAL's motion, Class Counsel relied on Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000) under which the Florida Supreme Court held that a mandatory arbitration requirement under Florida's PIP

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

statute[18] was unconstitutional since it denied medical provider assignees access to the courts in violation of Article I, Section 21 of the Florida Constitution.[19]    Ultimately, a Report and Recommendation partially denying AMERICAN INTERNATIONAL's motion to dismiss and to compel arbitration was issued by Magistrate Judge Snow.  The Report was partially adopted and partially overruled by this Court.[20]    Immediately thereafter, AMERICAN INTERNATIONAL appealed the decision to the Eleventh Circuit Court of Appeals. The appeal is currently pending.

### 3.    The Range of Possible Recovery and the Consideration Under the Settlement in Relation to That Range

In <u>Behrens</u>, the Court combined the second and third factors of the <u>Bennett</u> test to determine the appropriateness of the settlement. <u>Behrens v. Wometco Enter., Inc.</u>, 118 F.R.D. at 541.  The factors considered are the range of possible recovery and the point within, or below, the range of possible recovery at which a settlement is fair, adequate and reasonable. Discounting multiple damages under RICO, the range of possible recovery under applicable law would be from zero to 100% of the discounted amount with interest and an award of attorney's fees and costs.   Under the proposed Settlement, interest is the only monetary damage not included in the Settlement.  If the Claim Fund is not exhausted all claimants will receive up to a 75% recovery.  Additionally, AMERICAN INTERNATIONAL will pay Class Counsel fees and reasonable litigation costs and expenses, as well as costs of settlement administration *separate* from the Claim Fund.  The benefits provided by the Settlement are at the highest end of potential

---

[18]  Fla. Stat. §627.736(5).

[19]   According to the Court, medical providers lost their access to the courts because their rights to appeal were severely limited under the Florida Arbitration Code while they did not receive a commensurate benefit from the statute.  <u>Pinnacle</u>, 753 So. 2d at 58.

[20]  See <u>Order Adopting Report and Recommendation and Administratively Closing Cases</u>, (Sept. 30, 2002).

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

relief had the case been tried successfully by Class Counsel.

Moreover, based on the present state of the PIP statutory scheme in Florida, the terms of the Settlement actually provide Class Members with *significantly better* relief than they otherwise might expect should the settlement not be approved. Since the inception of this litigation in 2000, the Florida Legislature has amended the PIP statute by adding a complicated pre-suit demand procedure. Under the new statute, prior to filing a lawsuit a medical provider must send a demand letter to the insurer detailing: 1) the name of the insured upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the insured; 2) the claim number or policy number upon which such claim was originally submitted to the insurer; 3) to the extent applicable, the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim; and 4) an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. Fla. Stat. § 627.736(11). Class Members who have not yet filed suit for illegal PPO discounts would have to first satisfy the pre-suit demand requirements of the new statute. The statute's evidentiary demand requirements are far more onerous than the proof of claim process negotiated by Class Counsel. Class Members need not provide any documentation or detailed claim information to participate in the Settlement, whereas under the new statute they are required to conduct a file-by-file review and provide documentary evidence just to meet the pre-suit demand requirements.

**4.      The Complexity, Expense and Likely Duration of the Litigation**

Class Counsel believe that the claims asserted in this action have considerable merit. However, its inherent complexities combined with the uncertainties those complexities engender, are characteristic of RICO litigation and consolidated cases of this nature. The docket sheet tells

LEE & AMTZIS, P.L.
Attorneys at Law

the story best as there are over 880 entries prior to the defendants filing their appeals (currently there are over 1,200 docket entries), and the parties still have "a long way to go" in the litigation process. Those uncertainties militate strongly in favor of approving the Settlement.

The likely duration and associated expenses of continued litigation likewise favor approval of the Settlement. See Warren v. City of Tampa, 693 F.Supp. At 1059 ("The parties estimate that trial of this case would take three weeks of Court time, and would cost hundreds of thousands of dollars in attorneys' fees, expert witnesses fees and costs. These factors militate in favor of a decision to accept the proposed settlement."). In the present case, Class Counsel estimates that a trial of this action (assuming first that AMERICAN INTERNATIONAL fails on its Eleventh Circuit appeal) could take approximately two weeks and could cost the Class hundreds of thousands of dollars in attorneys' fees, expert fees and litigation costs. Moreover, given that AMERICAN INTERNATIONAL has already filed one appeal in this action, it is very likely that it would appeal class certification and any trial judgment in favor of the Plaintiff. The Class would be further subject to the many years of delay and additional costs associated with those appeals.

Here there is a great deal at stake for the parties and, but for the proposed Settlement, the case would continue to be strongly litigated by Plaintiff and AMERICAN INTERNATIONAL. As a result of the Settlement, the dispute between them will come to an end with the Class receiving a substantial recovery and there will also be substantial savings in Court resources by avoiding a lengthy trial of this case. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources. Behrens v. Wometco Enter., Inc., 118 F.R.D. at 538.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

5.    **The Substance and Amount of Opposition to the Settlement**

Even when a court becomes aware of one or more objecting parties, the court is not "required to open to question and debate every provision of the proposed compromise. The growing rule is that the trial courts may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision." Cotton v. Hinton, 559 F.2d at 1331.

There were over 3,800 Notices sent out in this action. Not a single objection was filed by any Class Member. Additionally, there have been only 7 valid Opt-outs filed. Less than .2% of the Class Members opted out of the settlement. Clearly, the reaction of the Class to the Settlement is favorable and positive. Courts have looked at the absence of meaningful objections to a proposed settlement as further support for the approval of the settlement. See Bennett, 737 F.2d at 988.

6.    **The Stage of Proceedings at Which the Settlement was Achieved**

The purpose of considering the stage of the proceedings and the discovery taken is to ensure that the plaintiff has had access to sufficient information to evaluate the case and to determine the adequacy of the proposed settlement. Behrens, 118 F.R.D. at 544. As discussed in greater detail in Class Counsel's Declaration, the Settlement was achieved after four years of intense litigation involving extensive motion practice and investigation.

Ellowitz and Class Counsel were very aware of the merits of their case based on their pre-suit investigation and the status of state case law on the issue of applying PPO discounts to automobile medical expense claims. Additionally, despite the District Court's stay of discovery, Class Counsel was able to obtain extensive discovery from ADP and Beech Street consisting of relevant documents, data and information about the industry's PPO discounting practices.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Absent this settlement with ADP and Beech Street, Class Counsel estimates that it would have taken years of post-appellate discovery to obtain the same information. Knowledge of the law, coupled with the discovery obtained formally and informally from ADP and Beech Street, allowed Class Counsel to accurately assess its case for class-wide settlement negotiations.

### 7. The Settlement is the Result of "Arms-Length" Negotiations Among Competent and Experienced Counsel.

In considering the fairness of a proposed settlement, the Court is entitled to rely heavily on the opinion of competent counsel. Behrens, 118 F.R.D. at 544. This is especially apt where, as here, the extensive amount of independent investigation, legal research, briefing and discovery indicates that counsel are fully capable of evaluating the merits of the Plaintiff's case and the probable course of future litigation. See Cotton, 559 F.2d at 1330. In analyzing a proposed settlement and the opinion of counsel, it is also appropriate for the Court to examine the negotiating process that took place between the parties to confirm that there was no collusion in reaching the Settlement. Behrens, 118 F.R.D. at 538. In the present case, the Settlement was achieved only after years of hard-fought and contentious litigation that resulted in an appeal of the Consolidated Action to the Eleventh Circuit. Ultimately, the settlement negotiations were conducted by counsel for the parties and overseen by an independent mediator of the Eleventh Circuit - clear evidence that the negotiations were conducted at "arms length." After a full day settlement mediation session with Mr. Unger on April 14, 2003 the parties continued to negotiate the details of the settlement for an additional two years, ultimately crafting the current settlement. From the complex and thorough terms of the Settlement Agreement it is clear that the process by which this Settlement was accomplished was fairly and zealously advocated by counsel for all parties. Through their consistent and hard-pressed efforts, Class Counsel and Defense Counsel

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

were eventually able to fashion a Settlement that is not only fair and reasonable, but is a truly

extraordinary and an excellent result for the Class.

## CONCLUSION

For the foregoing reasons, Ellowitz and Class Counsel submit that the proposed

Settlement is fair, reasonable and adequate and should be approved in its entirety, and

respectfully request that the Court approve the Settlement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of January, 2006 the foregoing was served on:

See attached Service List.

Respectfully submitted,

Lee & Amtzis, P.L.
Counsel for Plaintiff
5550 Glades Road, Suite 401
Boca Raton, FL 33431
Phone: 561-981-9988
Fax: 561-981-9980
E-Mail: lee@leeamlaw.com

By: _____
ERIC LEE
Fla. Bar No. 961299

**Co-Counsel for Class Plaintiffs**

GOLD & COULSON
A Partnership of Professional and
Limited Liability Corporations
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

PHILLIPS & GARCIA, LLP
13 Ventura Drive
North Dartmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
(954) 462-6855
(954) 462-6899 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## MASTER SERVICE LIST
### (Consolidated Case No. 00-6061-Civ-ZLOCH/SNOW)
(Updated 1/10/06)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
richard@bokorlaw.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Counsel for:**
**Allstate, Fidelity and Casualty, Deerbrook**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Signature Plaza, Suite 300
201 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MECKLER BULGER & TILSON
Peter J. Valeta, Esq.
peter.valeta@mbtlaw.com
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 474-7895
(312) 474-7898 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd., Ste. 1100
Miami, FL 33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

**Counsel for:**
**American International**

AKERMAN, SENTERFITT et al.
Marcy Levine Aldrich, Esq.
maldrich@akerman.com
SunTrust International Center
One Southeast Third Ave., 28th Flr.
Miami, FL 33131
(305) 374-5600
(305) 374-5095 Facsimile

**Counsel for Superior**

BUTLER BURNETTE PAPPAS
Alan J. Nisberg, Esq.
anisberg@bbplaw.com
Bayport Plaza
6200 Courtney Campbell Causeway
Suite 1100
Tampa, FL 33607
(813) 281-1900
(813) 281-0900 Facsimile

**Counsel for American International**

CONROY, SIMBERG, GANON, KREVANS &
ABEL, P.A.
Dale L. Friedman, Esq.
dfriedman@csglaw.com
Brian P. Knight, Esq.
bknight@csglaw.com
3440 Hollywood Blvd., 2nd Flr.
Hollywood, FL 33021
(954) 961-1400
(954) 967-8577 Facsimile