UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

        Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

        Defendants.
_____/
MARC J. BROWNER, D.C., individually and on behalf of
all others similarly situated,

    Plaintiffs,

v.                                        00-7163

ALLSTATE INDEMNITY COMPANY, et al.

    Defendants.
_____/
ULTRA OPEN MRI CORPORATION, and on behalf of
Itself and all others similarly situated,

    Plaintiff,

v.                                        00-6777

DEERBROOK INSURANCE COMPANY,

    Defendant.
_____/



LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

ULTRA OPEN MRI CORPORATION, and on behalf of
Itself and all others similarly situated,

     Plaintiff,

v.                                         01-6779

FIDELITY AND CASUALTY COMPANY OF
NEW YORK and THE CONTINENTAL
INSURANCE COMPANY,

     Defendants.

_____/

## THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs PAUL ZIDEL ("ZIDEL"), DR. MARC BROWNER ("BROWNER"), AND ULTRA OPEN MRI CORP. ("UOMC") ("Plaintiffs") on behalf of themselves and all others similarly situated, by their undersigned counsel, sue Defendants ALLSTATE INSURANCE COMPANY, COMMUNITY CARE NETWORK, INC., d/b/a CCN, ALLSTATE INDEMNITY COMPANY, DEERBROOK INSURANCE COMPANY, THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, NATIONAL-BEN FRANKLIN INSURANCE COMPANY OF ILLINOIS, THE BUCKEYE UNION INSURANCE COMPANY, THE GLENS FALLS INSURANCE COMPANY, KANSAS CITY FIRE & MARINE INSURANCE COMPANY, FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, PACIFIC INSURANCE COMPANY, NIAGARA FIRE INSURANCE COMPANY, BOSTON OLD COLONY INSURANCE COMPANY, COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, CONTINENTAL REINSURANCE CORPORATION, CONTINENTAL CASUALTY COMPANY OF READING, PENNSYLVANIA, TRANSCONTINENTAL INSURANCE COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, VALLEY FORGE INSURANCE COMPANY, ENCOMPASS

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

2

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

FLORIDIAN INSURANCE COMPANY, ENCOMPASS FLORIDIAN INDEMNITY COMPANY and THE CONTINENTAL INSURANCE COMPANY (collectively, "Defendants"), and alleges as follows:

## THE PARTIES

1.    ZIDEL is a physician licensed in the state of Florida with his principal place of business in Broward County, Florida.

2.    BROWNER is a physician licensed in the state of Florida with his principal place of business in Broward County, Florida.

3.    UOMC is a Florida corporation with its principal place of business in Hillsborough County, Florida.

4.    ALLSTATE INSURANCE COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois.  ALLSTATE INDEMNITY COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois.  DEERBROOK INSURANCE COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois.  THE FIDELITY AND CASUALTY COMPANY OF NEW YORK is incorporated under the laws of the State of South Carolina with its principal place of business located in Illinois.  NATIONAL-BEN FRANKLIN INSURANCE COMPANY OF ILLINOIS is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois.  THE BUCKEYE UNION INSURANCE COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois.  THE GLENS FALLS INSURANCE COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois.  KANSAS CITY FIRE & MARINE INSURANCE

COMPANY is incorporated under the laws of the State of South Carolina with its principal place of business located in South Carolina. FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois. PACIFIC INSURANCE COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois. NIAGARA FIRE INSURANCE COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois. BOSTON OLD COLONY INSURANCE COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois. COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY is incorporated under the laws of the State of South Carolina with its principal place of business located in Illinois. CONTINENTAL REINSURANCE CORPORATION is incorporated under the laws of the State of South Carolina with its principal place of business located in Illinois. CONTINENTAL CASUALTY COMPANY OF READING, PENNSYLVANIA is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois. TRANSCONTINENTAL INSURANCE COMPANY is incorporated under the laws of the State of New York with its principal place of business located in Illinois. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD is incorporated under the laws of the State of Illinois with its principal place of business located in Illinois. VALLEY FORGE INSURANCE COMPANY is incorporated under the laws of the State of Pennsylvania with its principal place of business located in Illinois. ENCOMPASS FLORIDIAN INSURANCE COMPANY is incorporated under the laws of the State of Illinois with its principal place of business located in Florida. ENCOMPASS FLORIDIAN INDEMNITY COMPANY is incorporated under the laws of the State of Illinois with its

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

principal place of business located in Florida.   THE CONTINENTAL INSURANCE COMPANY is incorporated under the laws of the State of South Carolina with its principal place of business located in Illinois.  Defendants provide automobile insurance throughout the State of Florida, are registered to do business in Florida, and transact business in the Southern District of Florida.

5.    Non-Party Community Care Network ("CCN") established a provider organization.

6.    Non-Party Beech Street Corporation ("Beechstreet") established a preferred provider organization.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq. (the "RICO Act").

8.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District.   Defendants are subject to personal jurisdiction in this District, Defendants insure numerous individuals in this District, and numerous class members are present in this District.

## BACKGROUND

9.    Defendants' standard Florida Automobile Insurance Policy (hereinafter the "Policy") provides personal injury protection benefits to its insureds.   Certain policies also provide extended personal injury protection benefits and MPC coverage.  All such coverage shall be referred to as ("PIP") coverage.

10.    With respect to payment of accident related medical expenses under PIP,

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

5

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Defendants' policy of insurance states in pertinent part that Defendants must pay eighty (80%) percent of all reasonable and necessary accident related medical expenses.

11.    Defendants' Policy is a typical Florida indemnity insurance policy under which Defendants are required to indemnify claimants for eighty percent (80%) of the full cost of their reasonable and necessary medical bills up to a defined limit.

12.    Under the Policy, an insured has the absolute right and freedom to choose his or her medical providers.

13.    Within Policy limits, medical providers have the unrestricted right to be reimbursed eighty percent (80%) of their reasonable and necessary accident related medical expenses.

14.    The State of Florida's PIP statute directly addresses a healthcare provider's right to be paid for reasonable charges.   Section 627.736(5), Florida Statutes ("Section 627.736") states:

> Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered ...

15.    Florida statutes permit an automobile insurance company to designate certain medical providers as preferred providers *if* the automobile insurer establishes a legitimate preferred provider organization ("PPO") network by satisfying the strict requirements of Section 627.736(10) which provides as follows:

> (10) An insurer may negotiate and enter into contracts with licensed healthcare providers for the benefits described in this section, referred to in this section as "preferred providers," which shall include healthcare providers licensed under chapters 458, 459, 460, 461, and 463.  The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

6

insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policy-holder or applicant, it must also offer a non-preferred provider policy. The insurer shall provide each policy-holder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

16.    Defendants have not offered its insureds preferred policies for PIP automobile insurance. As such, any medical provider who treated or treats insureds under Defendants' PIP auto insurance policy is not a "preferred provider." Therefore, in accordance with the above quoted statute, "the medical benefits provided by the insurer <u>shall</u> be as <u>required</u> by this section." (emphasis added). The medical benefits "required" are 80% of "all reasonable and necessary treatment, expenses..."

17.    Companies such as CCN and Beech Street are sometimes referred to as "brokers" or "managed care companies" in the healthcare industry. CCN and Beech Street contract with healthcare providers, or associations for the purpose of uniting healthcare providers with commercial payors to coordinate and arrange for the delivery of healthcare services to the payors' legitimate subscribers. CCN and Beechstreet may also administer healthcare claims submitted by healthcare providers to insurance companies. These contracts are typically referred to as Preferred Provider Agreements ("PPAs").

18.    The contracts entered into with healthcare providers by CCN and Beech Street require the healthcare providers to accept fees for services to subscribers at discounted rates from payors.

19.    Healthcare providers, by definition, include, but are not limited to, physicians,

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

chiropractors, hospitals, pharmacies, and other healthcare facilities.

20.     Payors benefit by paying healthcare providers at discounted rates.

21.     Healthcare providers benefit by becoming part of the network of healthcare providers that are supposed to be marketed by payors to their subscribers and insureds through the use of directories and marketing tools, thus increasing the healthcare providers' volume of business referrals. Such healthcare providers are recognized as "preferred providers."

22.     The insurance policies sold or provided by the payors to their subscribers are recognized as "preferred provider policies."

23.     The combination of all parties to this endeavor is recognized as a Preferred Provider Organization.

24.     At all times material herein, the Plaintiffs entered into contracts with CCN and Beech Street.  Thereafter, Defendants began applying the Plaintiffs' contractual discounts to Plaintiffs' medical bills for its patients who were injured in automobile accidents and covered by a Florida Defendants PIP Policy.  Defendants processed and discounted Plaintiffs' bills based on the CCN or Beech Street contractual discount.

25.     Section 627.736(10), provides a means for Defendants to participate in such a PPO and offer a preferred provider policy for personal injury protection automobile insurance to its insureds after it enters into contracts with healthcare providers.

26.     Defendants never became a legitimate participant in Plaintiffs' purported PPO and never complied with the requirements of the Section 627.736(10).

27.     Nevertheless, Defendants have taken discounts on healthcare providers' bills as if it were a legitimate participant in Plaintiffs' purported PPO and had complied with Section 627.736 by offering a preferred provider policy of personal injury protection automobile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

8

insurance to its insureds, none of which was done by Defendants.

28.    This unlawful practice (called a "Silent PPO") allows Defendants to enjoy substantial savings and profits by paying out less in benefits which in turn causes Plaintiffs and those similarly situated to suffer financial loss, without any consideration from Defendants for these discounts.

29.    Defendants, CCN and Beech Street have collectively engaged in the previously described Silent PPO scheme to reduce benefits paid on PIP claims.

30.    The Silent PPO scheme has emerged primarily in the context of indemnity plans. Indemnity insurers, such as Defendants, obtain access to PPO networks of preferred providers and their discounts. Defendants take advantage of these discounts.

31.    Defendants are not, however, entitled to take advantage of these legitimate PPO discounts under the terms and conditions of its Florida automobile insurance policies and the Florida PIP statutes.

32.    Defendants have not established the statutory prerequisites to be entitled to these PPO discounts.

33.    This Silent PPO scheme contains none of the legitimate steerage mechanisms required by legitimate PPOs. Legitimate steerage mechanisms include creating financial incentives for steering insureds to preferred providers such as lower premiums or lower co-payments, providing education and marketing information including directories and lists to insureds about preferred providers in the network, and printing and distributing preferred provider identification cards.

34.    By using the Silent PPO scheme, Defendants enjoy substantial savings by paying PIP benefits without the attendant expense of establishing a legitimate PPO network.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

35.    Legitimate managed care companies and insurers have knowledge of the illegality of such schemes.    The American Association of Preferred Providers has denounced such practices and the American Medical Association has issued an "Action Alert Kit" to its members educating them about Silent PPO schemes.

36.    Defendants had knowledge of the illegal nature of this Silent PPO discounting scheme.  Silent PPO discounting schemes have been the subject of widespread discussion in the insurance and managed care industries with many major medical associations denouncing the practice.

37.    CCN and Beech Street had direct knowledge of the illegitimate nature of Silent PPOs.

38.    Under Defendants' Silent PPO scheme, CCN and Beech Street licensed, leased or otherwise provided their discount database to Defendants.

39.    Armed with the CCN and Beech Street preferred provider database of discounts, Defendants systematically processed Florida medical expense claims through its automated PPO re-pricing product and applied discounts to bills where the medical provider's tax identification number on the bill matched a tax identification number in the CCN/Beech Street database. At no time did Plaintiffs have a contract with Defendants authorizing discounts to be taken on its medical bills.

40.    Defendants routinely and systematically used the CCN and Beech Street preferred provider discounts to reduce millions of dollars of medical bills.  The discounts were routinely and systematically applied despite the fact that a preferred provider policy was not offered by Defendants and despite the fact that claimants were not referred steered or directed to preferred providers.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

41.    As part of Defendants' Silent PPO scheme, upon information and belief, CCN and Beech Street were paid a percentage of Defendants' PPO discount savings and/or a per transaction fee for processing claims for Defendants.

42.    Without complying with the statutory prerequisites for the establishment of an automobile insurance PPO network, Defendants have systematically discounted medical providers' PIP medical expenses by utilizing PPO discounts.

43.    Defendants have illegitimately discounted hundreds of thousands of PIP medical expense claims in this manner without providing any steerage or other meaningful consideration for such discounts.

## FACTS AS TO PLAINTIFF

44.    Plaintiffs were parties to an agreement with CCN and Beech Street which purportedly established an independent physician association.

45.    Plaintiffs' agreements with CCN and Beech Street could not allow automobile insurers or PPO discount brokers with automobile insurer clients the right to pay PPO rates to Plaintiffs.

46.    Defendants had not offered a PPO endorsement to its automobile insureds. Moreover, Defendants never offered its Florida automobile insureds premium reductions as an economic incentive to use preferred providers.

47.    Plaintiffs never agreed to provide healthcare services to subscribers of Defendants at a rate lower than Plaintiffs would normally accept for the same healthcare services.

48.    Defendants obtained access to the databases that contained the identities of all purported preferred providers, as well as the discounted fee rates that were applied.

49.    At no time did Defendants have a written contract with Plaintiffs or other

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

healthcare providers in Florida wherein healthcare providers agreed with Defendants to accept PPO rates for their medical services to patients injured in automobile accidents who were insured for PIP coverage by Defendants.

50.     By virtue of Defendants' access to the discounted rates in the purported agreements between CCN, Beech Street, Plaintiffs, and the class, Defendants began to systematically apply PPO discounts.

51.     Defendants have mailed explanation of review forms ("EOBs") that indicated the application of a discount based upon the CCN/Beech Street Alliance PPO.

52.     These EOBs state that Defendants are entitled to such discounts.

53.     Under this scheme, Defendants have been reaping huge savings while violating Florida law and providing no consideration whatsoever to healthcare providers, including Plaintiffs, for the right to apply such discounts.

54.     Under Defendants' Silent PPO scheme, it incorporated the purported CCN/Beech Street preferred provider discounts into its existing cost containment software product - a product specifically designed to "re-price" medical bills based on preferred provider rates for non-managed care lines of insurance such as property and casualty insurance.

55.     At all times material herein, in the course of its medical practice, Plaintiffs provided medical care to patients who had been injured in automobile accidents and who were entitled to PIP benefits from Defendants.

56.     At no time prior to their treatment with Plaintiffs did this class of patients receive any marketing materials, including, but not limited to, publications identifying Plaintiffs name, address and available services, from Defendants.

57.     At no time did Defendants comply with the requirements of Section 627.736(10).

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

58.    At no time prior to their treatment with Plaintiffs did Defendants encourage patients to use Plaintiffs' medical services.

59.    After providing medical treatment to patients, Plaintiffs submitted medical bills for reasonable and necessary accident related medical expenses to Defendants for payment.

60.    Upon receipt of the medical bills submitted by Plaintiffs for payment under the PIP portion of the Defendants Automobile Policy, Defendants discounted Plaintiffs' and other class members' bills by using the CCN/Beech Street PPO discounted rates claiming that Defendants was entitled to said discounts.

61.    Upon information and belief, CCNs and/or Beech Street were paid a percentage of Defendants' discount savings on each PIP medical expense claim.

62.    Plaintiffs and other class members have received no consideration from Defendants for the discounts taken.

63.    Defendants could not provide such consideration because Defendants failed to offer its insureds a PPO automobile insurance policy in compliance with the Florida PIP statute.

64.    Defendants' illegal activity was demonstrated in the Exhibits attached to the prior Complaints filed in these actions.

65.    Defendants were supposed to pay eighty (80%) percent of the billed amount.

66.    Defendants paid only 80% of the reduced amount as its full obligation under the insured's automobile insurance policy.

67.    Defendants routinely and systematically applied the CCN/Beech Street  PPO discounted rates to PIP medical expense claims.

68.    At the time Defendants implemented its PPO discounting scheme, it knew it was violating Florida law.

LEE & AMTZIS, P.L.
Attorneys at Law

13

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

69.    After taking the illegal discounts on Plaintiffs' and the class' bills, as described above, Defendants routinely printed out EOBs showing the discounts.  It then forwarded the EOBs and reduced payment checks to the healthcare providers in purported full satisfaction of the healthcare providers' medical charges.

70.    It was and is the custom and practice of Defendants to discount thousands of automobile medical expense claims in this manner in violation of its policies with its insureds and in violation of Florida's PIP statutes.

71.    Plaintiffs and those similarly situated have been economically damaged and have suffered monetary losses as a result of the conduct of Defendants.

## CLASS ACTION ALLEGATIONS

72.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of all other persons and entities similarly situated.  The class is defined to include:

> Health care providers, as defined by the Florida Motor Vehicle No-Fault Act: (a) That rendered medical services to person(s) insured under a motor vehicle insurance policy issued by one of the Defendants in the state of Florida that provided PIP coverage; (b) That received a valid assignment of benefits from the person(s) insured by such Defendants as to such services; (c) That submitted bills for payment for such services to Defendants, and; (d) Whose bills were paid at a reduced rate by Defendants based on the application of a PPO reduction during the Class Period (January 1, 1998 through May 15, 2006).

73.    There are questions of law and fact that are common to all members of the class, which questions predominate over any question affecting only individual class members.

74.    The principal common issues include the following:

(a)    whether Defendants violated Section 627.736, Florida Statutes, by paying personal injury protection medical expense claims at discounted Preferred Provider rates;

(b)    whether Defendants' processing of the PPO discounts is permissible under

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

state law or federal law;

(c)    whether Plaintiffs and those similarly situated are entitled to compensatory, statutory, or punitive damages against Defendants because of its illegal conduct; and

(d)    whether Plaintiffs and the class are entitled to an injunction preventing the continued disclosure and/or use of their discounts by Defendants and the application of these discounts to automobile personal injury protection medical expense claims.

75.    The class is comprised of all healthcare providers whose medical bills were discounted by Defendants based upon a purported Preferred Provider Organization reduction.

76.    The amounts of the discounts are contained in Defendants' computer systems and on the EOBs and checks mailed by Defendants to Plaintiffs and the members of the class.

77.    Plaintiffs' claims are typical of the claims of all members of the class because the claims are based on the same legal and remedial theories.

78.    Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.

79.    Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the class that he seeks to represent.

80.    Plaintiffs have retained counsel experienced in class action cases and healthcare litigation.

81.    Neither Plaintiffs, nor counsel, have any interest that may cause them to not vigorously pursue this action.

82.    A class action is superior to other available methods for the fair and efficient

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

adjudication of the controversy, because:

(a)    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

(b)    concentration of the litigation concerning this matter in this Court is desirable;

(c)    the claims of the representative Plaintiff are typical of the claims of the members of the class;

(d)    a failure of justice will result from the absence of a class action; and

(e)    the class and the difficulties likely to be encountered in the management of this class action are not great.

83.    The class is so numerous as to make it impracticable to join all members of the class as plaintiffs.

84.    Defendants have discounted thousands of medical bills based on the CCN/Beech Street discounted rates. Many healthcare providers may not even be aware of Defendants' sophisticated scheme, and if they were, for many providers, the amount in controversy would be too small to justify the expense of pursuing individual litigation.

85.    In contrast, on a class-wide basis, Defendants have saved millions of dollars by accessing and utilizing the discounted rates of healthcare providers.

## AS AND FOR A FIRST
## CAUSE OF ACTION
### (Unjust Enrichment)

86.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "85" above, with the same force and effect as if set forth fully herein.

87.    Plaintiffs and the class conferred benefits upon Defendants by providing

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

healthcare services to individuals insured by Defendants.

88.    Plaintiffs and the class billed Defendants the reasonable value for these services.

89.    Defendants improperly paid these bills at reduced rates.

90.    Defendants have provided no consideration to Plaintiffs and the class for the retention of the discounts by Defendants.

91.    Defendants has reaped the benefit of substantial monetary savings on PIP claims by wrongfully and illegally applying the CCN/Beech Street PPO discounted rates to Florida PIP medical expense claims.

92.    Defendants had knowledge that it reaped said financial benefits to the detriment of Plaintiffs and the members of the class by voluntarily accepting and retaining said benefits.

93.    Such savings constitute unjust enrichment for Defendants and it would be inequitable under the circumstances for Defendants to retain the benefits received from Plaintiffs and the members of the class without paying the full value thereof to Plaintiffs and the class members.

## AS AND FOR A SECOND
## CAUSE OF ACTION
### (Third-Party Beneficiary Breach of Contract)

94.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "85" above, with the same force and effect as if set forth fully herein.

95.    Defendants and its insureds who purchased its Florida PIP automobile insurance policy entered into a contract of insurance.

96.    Defendants ' contract provided that in the event an insured was involved in an automobile accident, Defendants would pay, on the insured's behalf, eighty (80%) percent of all reasonable and necessary medical expenses incurred.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

97.     Plaintiffs and the other members of the class provided medical services to Defendants' insureds who were injured in automobile accidents.

98.     Plaintiffs and the members of the class are intended third-party beneficiaries of Defendants' automobile insurance agreements.

99.     Plaintiffs and the members of the class were to be paid eighty (80%) percent of all reasonable and necessary medical expenses incurred and billed.

100.    Defendants breached the agreement by improperly paying medical expenses at reduced rates.

101.    As a result, Plaintiffs and the putative class members have suffered damages directly and proximately caused by Defendants' breach of its insurance agreements with its insureds.

## AS AND FOR A THIRD
## CAUSE OF ACTION
### (RICO Act Violations)

102.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "85" above, with the same force and effect as if set forth fully herein.

103.    Defendants, acting with CCN and Beech Street formed an association-in-fact enterprise designed to reduce payments made to CCN and Beech Street preferred providers on all Florida PIP medical expense claims submitted to Defendants. The "association- in- fact" is known as a "Silent PPO."

104.    Defendants, with the knowing or grossly negligent cooperation of CCN and Beech Street  participated, directly and indirectly, in the activities of this enterprise through a pattern of racketeering activity, as more fully set forth below.

105.    The activities of this enterprise affected commerce.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

106.    The pattern of racketeering activity consisted of multiple acts of mail and wire fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

107.    The pattern of racketeering activity has been continuous for at least two years, and, on information and belief, will continue into the future.

108.    In furtherance of the pattern of racketeering activity, Defendants have engaged in a continuous scheme and artifice to defraud Plaintiffs, and those similarly situated, of money as follows:

(a)    CCN and Beech Street solicited Plaintiffs by mail to join its independent physician association. CCN and Beech Street mailed their marketing and agreements to potential providers through use of the United States mails. CCN and Beech Street entered into an agreement with Plaintiffs and class members which could not authorize the disclosure, sale, lease or license of preferred provider discounts to Defendants;

(b)    CCN and/or Beech Street then entered into a broker agreement (hereinafter referred to as a "Broker Agreement") with Defendants which allowed for the disclosure and lease and/or license of the CCN/Beech Street preferred provider databases to Defendants;

(c)    Defendants applied the CCN and Beech Street preferred provider discounts to medical expense claims submitted to Defendants by CCN and Beech Street preferred providers;

(d)    CCN, Beech Street and Defendants transferred claim information, medical bills, EOBs, compensation information and documentation and other documentation and information necessary to carry out this scheme via the United States mails and/or by wire;

(e)    After computer application of the discounts, Defendants printed EOBs

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

which indicated the PPO discount and the reduced amount owed after application of the discount;

(f)     By use of the United States mail, CCN, Beech Street and/or Defendants thereafter transmitted or caused to be transmitted said EOBs and reduced claim checks to medical providers and persons insured by Defendants.

(g)     Said EOBs falsely represented that Defendants was entitled to apply a CCN/Beech Street PPO discounts to the claim;

(h)     Said EOBs falsely claimed the "Recommended Allowance" to be less than the amount actually owed and also falsely decreased a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount;

(i)     Defendants, CCN and/or Beech Street engaged in interstate telephone calls, computer communications, and/or wire communications and transactions to transmit information that was false and to exchange fees and compensation essential to the scheme.

109.    In the above described manner, Defendants was able to gain access to managed care contract rates for application to Florida PIP medical expense claims without providing any consideration to Plaintiffs or members of the purported class, and without ever entering into a managed care agreement with any medical providers.

110.    This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars has directly caused monetary damages to Plaintiffs and members of the class.

111.    Defendants', CCN's and/or Beech Street's conduct gives rise to claims under 18 U.S.C. § 1964(a) of RICO and permits the recovery of treble damages against Defendants for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. § 1962(a) in violation of 18 U.S.C. § 1962(d) and for seeking to aid and abet and aiding and abetting violations of 18

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

U.S.C. § 1962(a) within the meaning of 18 U.S.C. § 2.

112.    Plaintiffs and the class members are "persons" within the meaning of 18 U.S.C. § 1964(c).

113.    At all times relevant hereto, Plaintiffs and class members were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

114.    With respect to the activities alleged herein, Defendants, CCN and/or Beech Street acted at all times with malice toward the class, intent to engage in the conduct complained of for their own benefit and with knowledge that such conduct constituted unlawful activity. Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which Defendants, CCN and/or Beech Street are subject, the same amounting to actionable wantonness.

115.    With respect to the activities alleged herein, Defendants, CCN and/or Beech Street aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§ 1962(a) and (c).

116.    Defendants operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

117.    In furtherance of this scheme, Defendants, CCN and/or Beech Street interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests, to which Defendants, CCN and Beech Street are not entitled, through the exploitation of discount rates.

118.    With respect to the overt acts and activities alleged herein, Defendants communicated and conspired with Focus and/or Chiro Alliance to violate 18 U.S.C. §§ 1962(a)

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

and (c), all in violation of 18 U.S.C. § 1962(d).

119.    Defendants communicated with CCN and/or Beech Street so that it could participate directly in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses and to deprive class members of the intangible right of honest payment.

120.    Defendants communicated with CCN and/or Beech Street so that it could participate directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which Defendants was not entitled, through the exploitation of a proprietary discount rate.

121.    The numerous predicate acts of mail and wire fraud and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by Defendants, CCN and/or Beech Street to defraud Plaintiffs and the purported class of money and property interests under false pretenses; to deprive Plaintiffs and the purported class of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and to place Defendants', CCN's and/or Beech Street's financial interests over the confidential records of Plaintiffs and the class so that Defendants, CCN and/or Beech Street could make greater profits.

122.    Plaintiffs, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

### A.    RACKETEERING ACTIVITIES.

123.    In carrying out the overt acts and fraudulent scheme described above, Defendants, CCN and/or Beech Street engaged in *inter alia*, conduct in violation of federal laws, including 18 U.S.C. §§ 1341 and 1343, 18 U.S.C. §§ 1341 and 1346, 18 U.S.C. §§ 1343 and 1346, 18 U.S.C. § 1951(b)(2), 18 U.S.C. § 1952(a), 18 U.S.C. § 1954, and 18 U.S.C. § 961 et seq., as stated

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

below.

124.    Section 1961(l) of RICO provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

125.    The United States Congress amended the mail and wire fraud statutes in 1988 by codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§ 1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

### 1.    18 U.S.C. §§ 1341 and 1346, and 18 U.S.C. §§ 1343 and 1346

126.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, Defendants, CCN and Beech Street, in violation of 18 U.S.C. § 1341 and § 1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.

127.    For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, Defendants, CCN and/or Beech Street, in violation of 18 U.S.C. §§ 1343 and 1346, transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts. In this manner, Defendants, was knowingly violating purported obligations of CNN and Beech Street to Plaintiffs and others similarly situated to provide "honest services."

128.    Defendants knowingly induced CCN and/or Beech Street to deprive Plaintiffs and others similarly situated of "honest services."

129.    In those matters and things sent or delivered by the United States Postal Service referred to above, Defendants, CCN and/or Beech Street falsely and fraudulently represented to Plaintiffs and the class that Defendants was entitled to a PPO discount from Plaintiffs and the class under a system that legitimately provides education, marketing and economic incentives intended to "steer" more patients and to provide other benefits to healthcare providers. Defendants failed, however, to disclose to Plaintiffs and the class that its EOBs were based upon illegal discounts designed to maximize profits on discounts illegally obtained through Plaintiffs' proprietary information. Defendants thus failed to disclose material facts regarding Defendants' internal policies and practices specifically designed to reduce or limit the level of payment discussed in detail above.

130.    With respect to its unlawful activities described above, Defendants also transmitted funds, contracts, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§ 1341, 1343, and 1346.

131.    Defendants intentionally and knowingly deceived Plaintiffs and the purported

class referred to above for the purpose of financial gain. Defendants either knew, or recklessly disregarded, that the illegal discounts described above were material.

132.    Plaintiffs and the class have been injured in their business or property by Defendants' overt acts and racketeering activities in amounts to be determined at trial.

## 2.  18 U.S.C. § 1951(b)(2)

133.    During the relevant times and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, Defendants, CCN and/or Beech Street, on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. § 1951.

134.    Defendants unlawfully attempted to and/or did induce CCN and/or Beech Street to cause Plaintiffs and numerous other healthcare providers to part with various property interests to which Defendants was and is not entitled, including the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy.

135.    Defendants' conduct induced CCN and/or Beech Street to provide it with the names of healthcare providers and their discounts and exploited a fear of economic loss and/or loss of business by Plaintiffs and others similarly situated in violation of 18 U.S.C. § 1951(b)(2).

136.    In furtherance of the scheme or artifice to defraud to obtain money by false pretenses from Plaintiffs and the class, Defendants communicated with CCN and/or Beech Street to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which Defendants was not entitled through the exploitation of healthcare providers' fear of economic

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

loss and/or loss of business by refusing to contest the aforesaid illegal discounts.

137.    Defendants either knew, or recklessly disregarded, that the natural consequences of its acts would exploit and continue to exploit fear of economic loss or loss of business by Plaintiffs and the class.

138.    Defendants', CCN's and/or Beech Street's overt acts and fraudulent and extortionate racketeering activities has and continues to defraud Plaintiffs and the members of the class, of money, has and continues to unlawfully influence and interfere with the purported relationship of Focus and Plaintiffs and the purported class, as well as interfering with the fiduciary relationship between Plaintiffs, and members of the purported class and their patients.

139.    Plaintiffs and the purported class have, therefor, been injured in their business or property by Defendants' overt acts and racketeering activities in amounts to be determined at trial.

### 3. 18 U.S.C. § 1952(a).

140.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud Plaintiffs and the purported class, Defendants, CCN and/or Beech Street and their respective employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. § 1952(a).

141.    Defendants', CCN's and/or Beech Street's overt acts and fraudulent racketeering activity has and continues to defraud Plaintiffs and the class of money.

### B.    PATTERN OF RACKETEERING ACTIVITY.

142.    Defendants, CCN and/or Beech Street have engaged in a "pattern of racketeering

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

activity" as defined in 18 U.S.C. 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including Plaintiffs and the class.

143.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, CCN and/or Beech Street, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefor, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

### C.    RICO VIOLATIONS OF 18 U.S.C. §§ 1962 (d).

144.    Plaintiffs' claim for relief also arises under 18 U.S.C. § 1964 (c) of RICO and seeks to recover actual and treble damages for Defendants', CCN's and Beech Street's violations of 18 U.S.C. §§ 1962(c) and for its violations of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

### 1.    Section 1962(c) claim.

145.    Plaintiffs repeats and realleges each and every allegation contained in Paragraphs "1" through "87" above, with the same force and effect as if set forth fully herein.

146.    18 U.S.C. § 1962(c) of RICO provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

147.    18 U.S.C. § 1961(3) of RICO states that a "person" includes any individual or entity capable of holding a legal or beneficial interest in property.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

27

148.    18 U.S.C. § 1961(4) of RICO defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

149.    For purposes of this 18 U.S.C. § 1962(c) claim, the persons consist of Defendants, CCN and/or Beech Street.  The enterprise is an association-in-fact consisting of Defendants, CCN and/or Beech Street by virtue of its control over physicians, medical specialists, medical laboratories, hospitals, healthcare clinics, pharmacies, home healthcare agencies, and other miscellaneous healthcare providers, all of which have the purpose of providing healthcare services to Defendants' insureds making PIP claims under Defendants' automobile insurance policies.

150.    This 18 U.S.C. § 1962(c) enterprise is distinct from Defendants and includes many persons who are not employees of Defendants and many entities that are not owned by Defendants.  The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

151.    Defendants is associated with CCN and Beech Street in the 18 U.S.C. § 1962(c) enterprise as described above and conducts and participates in the affairs of that enterprise through the pattern of racketeering activity described herein. Plaintiffs and the purported class members are directly and proximately injured both by this pattern of activity and by Defendants' conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. § 1964(c).

### 2.    Section 1962(d) Claim.

152.    Plaintiffs repeats and realleges each and every allegation contained in Paragraphs "1" through "87" above, with the same force and effect as if set forth fully herein.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

153.    This claim for relief also arises under 18 U.S.C. § 1964(c) of RICO and seeks to recover actual and treble damages for Defendants', CCN's and Beech Street's violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c). Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

154.    18 U.S.C. § 1961(4) of RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

155.    18 U.S.C. § 1962 (a) of RICO provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

156.    For purposes of the claim of a conspiracy in violation of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a), the persons under the latter subsection consist of Defendants, CCN and Beech Street and the enterprise consists of Defendants and its investment division, which further profits from the ill-gotten gains.

157.    At all times relevant herein, CCN's, Beech Street's and Defendants' investment division together constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a).

158.    The Defendants investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud Plaintiffs and the purported class of money and to

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Plaintiffs and the purported class.

164.     The nature of the above described acts of Defendants constitutes material misrepresentations that give rise to an inference that Defendants knew it was violating the objective of 18 U.S.C. § 1962(d) by violating 18 U.S.C. §§ 1962(a) and (c), through its ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

165.     As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. §§ 1962(a) and (c), Plaintiffs and the class have been and are continuing to be injured in their business or property.

166.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

167.     Defendants have sought to and have engaged in the commission of and continue to commit overt acts and the aforesaid described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by Defendants from such pattern of racketeering activity, to-wit:

(a)     multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343;

(b)     multiple instances of mail fraud violations of 18 U.S.C. §§ 1341 and 1346;

(c)     multiple instances of wire fraud violations of 18 U.S.C. §§ 1343 and 1346;

(d)     multiple instances of extortion violations of 18 U.S.C. § 1951(b)(2);

(e)     multiple instances of travel in interstate commerce to attempt to and to

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. § 1952(a); and

 (f) multiple instances of violations of 18 U.S.C. § 1954.

168. Defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting Defendants' illegal acts constituting a pattern of racketeering activity is fashioned and imposed by this Court.

**AS AND FOR A FOURTH**
**<u>CAUSE OF ACTION</u>**
**(Declaratory Judgment)**

169. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs "1" through "85" above, with the same force and effect as if set forth fully herein.

170. As previously alleged, Defendants have improperly taken advantage of discounts to which it is not entitled for all the reasons that have been set forth in the previous paragraphs of this Complaint.

171. Defendants have taken these discounts in breach of the terms and conditions of their automobile insurance policies.  Said policies are indemnity policies that do not provide for preferred provider benefits or the application of preferred provider rates.

172. By using the CCN/Beech Street purported preferred provider rates to limit the payment of Plaintiffs' and class members' PIP medical bills, Defendants have imposed a limitation on benefits that is not contained in their automobile insurance policies.  Plaintiffs and the class members are intended third-party beneficiaries of said insurance policies and are entitled to a declaration that Defendants' payments of their PIP medical bills at preferred provider rates is a breach of the applicable insurance contracts.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

### AS AND FOR A FIFTH
### CAUSE OF ACTION
#### (Violation of Section 627.736, Florida Statutes)

173.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs

"1" through "85" above, with the same force and effect as if set forth fully herein.

174.    At all times material herein, Plaintiffs and the members of the class that they seek

to represent presented or had presented on their behalf reasonable and necessary medical charges

to Defendants for treatment of patients entitled to PIP medical expense benefits pursuant to a

Florida automobile insurance policy issued by Defendants.

175.    Pursuant to Section 627.736, Florida Statutes:

**(1)    Required benefits.**  Every insurance policy complying with the security
requirements of s. 627.733 shall provide personal injury protection to the named
insured, relatives residing in the same household, persons operating the insured
motor vehicle, passengers in such motor vehicle, and other persons struck by such
motor vehicle and suffering bodily injury while not an occupant of a self-
propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(d),
to a limit of $10,000 of loss sustained by any such person as a result of bodily
injury, sickness, disease, or death arising out of the ownership, maintenance, or
use of a motor vehicle as follows:

      (a)    Medical benefits.  Eighty percent of all reasonable expenses for
necessary medical, surgical, X-ray, dental, and rehabilitative services, including
prosthetic devices, and necessary ambulance, hospital, and nursing services.  Such
benefits shall also include necessary remedial treatment and services recognized
and permitted under the laws of the state for an injured person who relies upon
spiritual means through a prayer alone for healing, in accordance with his
religious beliefs.

. . .

**(4)    Benefits; when due.**

. . .

      (g)    It is a violation of the insurance code for an insurer to fail to timely provide

benefits as required by this section with such frequency as to constitute a general business

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

practice.

176.    Effective October 1, 1991, as amended, effective October 1, 1992, Section

627.736(10), Florida Statutes provides:

> An insurer may negotiate and enter into contracts with licensed healthcare providers for the benefits described in this section referred to in this section as "preferred providers" which shall include healthcare providers licensed under chapters 458, 459, 460, 461, and 463. The insurer may provide an option to an insured to use a preferred provider at the time of purchase of the policy for personal injury protection benefits, if the requirements of this subsection are met. If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a nonpreferred provider policy, the medical benefits provided by the insurer shall be as required by this section. If the insured elects to use a provider who is a preferred provider, the insurer may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits. If the insurer offers a preferred provider policy to a policyholder or applicant, it must also offer a nonpreferred provider policy. The insurer shall provide each policyholder with a current roster of preferred providers in the county in which the insured resides at the time of purchase of such policy, and shall make such list available for public inspection during regular business hours at the principal office of the insurer within the state.

177.    Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider who is not a preferred provider, whether the insured purchased a preferred provider policy or a non-preferred provider policy, the medical benefits provided by the insurer shall be as required by this section." (Emphasis added).

178.    Pursuant to Section 627.736(10), Florida Statutes: "If the insured elects to use a provider who is a preferred provider, the insurance may pay medical benefits in excess of the benefits required by this section and may waive or lower the amount of any deductible that applies to such medical benefits." (Emphasis added).

179.    In violation of the foregoing provisions of Section 627.736, Defendants have implemented a policy and have conducted themselves in a manner with such frequency as to constitute a general business practice whereby Defendants have paid and continue to pay medical

LEE & AMTZIS, P.L.
Attorneys at Law

34

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

benefits at a rate less than the reasonable and necessary rate.

180.    Defendants, as part of their general business practice, have been paying medical benefits at eighty (80%) percent of preferred provider rates.

181.    At all times material hereto, Defendants did not offer preferred provider policies.

182.    Since Defendants did not offer a preferred provider policies, Defendants were required to pay eighty (80%) percent of all reasonable and necessary medical expenses.

183.    If Defendants issued and sold preferred provider policies, Defendants would then be entitled to pay medical benefits in excess of the benefits required and may waive or lower the amounts of any deductible that applies to such medical benefits.

184.    By paying PIP benefits at a preferred provider rate, Defendants have significantly reduced its payments and obligations under PIP policies throughout the State of Florida.

185.    Defendants ' actions are in direct violation of Section 627.736, Florida Statutes.

186.    Defendants have wrongfully reduced Plaintiffs' and the class members' PIP medical expense claims based on CCN/Beech Street preferred provider discounts.

187.    Defendants are not entitled to said CCN and Beech Street preferred provider discounts.  Defendants have failed to offer insureds a PPO endorsement and also failed to otherwise comply with the requirements of Section 627.736(10), Florida Statutes.

188.    Despite this failure, Defendants have reduced and continues to reduce PIP automobile insurance medical expense claims of Plaintiffs and the purported class members by accessing and applying Focus preferred provider discounts.

189.    Accordingly, an outstanding balance remains on all automobile insurance PIP medical expense claims that Defendants have reduced based on CCN and Beech Street purported preferred provider discounts.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

190.    Pursuant to Section 627.736(4)(b): "Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."

191.    Pursuant to Section 627.736(c): "All overdue payments shall bear interest at the rate of 10 percent per year."

192.    Defendants have failed to pay the full amount of the reasonable and necessary medical expense billed by Plaintiffs and the class members within 30 days after Defendants were furnished with written notice of the reasonable and necessary amount of the medical expense.

193.    Defendants have failed to pay interest on the remaining balances owed to Plaintiffs and the class members.

194.    By reducing Plaintiffs' and the purported class members' legitimate medical expenses by the application of CCN and Beech Street purported preferred provider discount rates, Defendants have violated Section 627.736, Florida Statutes.

195.    As a result of Defendants' failure to comply with Section 627.736, Florida Statutes, Plaintiffs and the members of the purported class have suffered damages.

WHEREFORE, Plaintiffs and the class demand the following relief:

(a)    As to the First Cause of Action, compensatory damages;

(b)    As to the Second Cause of Action, compensatory damages;

(c)    As to the Third Cause of Action, compensatory damages, punitive damages, and injunctive relief;

(d)    As to the Fourth Cause of Action, a declaration that Defendants' insurance practices are improper;

(e)    As to the Fifth Cause of Action, compensatory damages;

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

(f)    Interest, Attorneys' fees and costs where applicable;

(g)    A trial by jury on all issues so triable; and

(h)    Such other and further relief as the Court may deem just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S.

Mail on this date on all counsel or parties of record on the attached service list.

Dated: May 18, 2006
            Boca Raton, FL  33431

Respectfully submitted,

Eric Lee (961299)
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Ste. 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988
Facsimile:  (561) 981-9980
**Attorneys for Plaintiffs Paul Zidel,
Dr. Marc Browner, and Ultra
Open MRI Corp.**

## Co-Counsel Counsel for Plaintiffs

Art Gold, Esq.
asg@gcjustice.com
Gold & Coulson
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
Telephone:  (312) 372-0777
Facsimile:  (312) 372-0778

Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA 02747
Telephone:  (508) 998-0800
Facsimile:  (508) 998-0919

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Larry Kopelman, Esq.
lmk@kopelman.com
Kopelman & Blankman, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
Telephone: (954) 462-6855
Facsimile: (954) 462-6899

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## MASTER SERVICE LIST
(Updated 5/18/06)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile
RICHARD BOKOR, P.A.

Richard Bokor, Esq.
richard@bokorlaw.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Counsel for:**
**Allstate Defendants**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MECKLER BULGER & TILSON
Peter J. Valeta, Esq.
peter.valeta@mbtlaw.com
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 474-7895
(312) 474-7898 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd., Ste. 1100
Miami, FL  33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW