UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

       Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

Defendant/Third Party Plaintiff,

_____/

KEITH BRICKELL, D.C., individually and on behalf of
all others similarly situated,

       Plaintiff,

v.                                        Case No. 00-6649

PROGRESSIVE EXPRESS INSURANCE
COMPANY, et al.

       Defendants,

_____/

ULTRA OPEN MRI CORP., on behalf of
itself and all others similarly situated,

       Plaintiff,

v.                                        Case No. 01-6776

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

       Defendant.

_____/



CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

### THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs KEITH BRICKELL, D.C. ("Brickell") and ULTRA OPEN MRI CORP. ("ULTRA") on behalf of themselves and all others similarly situated ("Plaintiffs"), by their undersigned counsel, sue Defendants PROGRESSIVE CASUALTY INSURANCE COMPANY, PROGRESSIVE EXPRESS INSURANCE COMPANY, PROGRESSIVE CONSUMERS INSURANCE COMPANY, PROGRESSIVE BAYSIDE INSURANCE COMPANY, PROGRESSIVE AUTO PRO INSURANCE COMPANY, NATIONAL CONTINENTAL INSURANCE COMPANY, PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY, and PROGRESSIVE AMERICAN INSURANCE COMPANY (collectively, "defendants" or "PROGRESSIVE AUTOMOBILE INSURERS"), and alleges as follows:

### THE PARTIES

1.    BRICKELL is a licensed chiropractor who resides in the Southern District of Florida and has his principal place of business at 5975 N. Federal Highway, #121, Fort Lauderdale, FL 33308.

2.    ULTRA is a corporation incorporated in Florida with its principal place of business in Florida.

3.    The following insurance company Defendants are part of the Progressive Insurance Group of insurance companies and are named individually but will be referred to collectively as the "PROGRESSIVE AUTOMOBILE INSURERS":

4.    PROGRESSIVE CASUALTY INSURANCE COMPANY is an insurance company licensed to sell insurance in this District with a principle place of business of 6300 Wilson Mills Road, Mayfield Village, OH 44143.

5.    PROGRESSIVE EXPRESS INSURANCE COMPANY is an insurance company licensed to sell insurance in this District with a principal place of business of 6300 Wilson Mills

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Road, Mayfield, Ohio, 44143.

6.     PROGRESSIVE CONSUMERS INSURANCE COMPANY is an insurance company licensed to sell insurance in this District with a principal place of business of 4030 Crescent Park Drive, Riverview, Florida 33569.

7.     PROGRESSIVE BAYSIDE INSURANCE COMPANY is an insurance company licensed to sell insurance in this District with a principal place of business of 4030 Crescent Park Drive, Riverview, Florida 33569. Defendants provide automobile insurance throughout the State of Florida, are registered to do business in Florida, and transact business in the Southern District of Florida.

8.     PROGRESSIVE AUTO PRO INSURANCE COMPANY is an insurance company licensed to sell insurance in this District.

9.     NATIONAL CONTINENTAL INSURANCE COMPANY is an insurance company licensed to sell insurance in this District with a principle place of business of 1200 Veteran's Memorial Highway, Suite 100, Hauppauge, NY 11788.

10.    PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY is an insurance company licensed to sell insurance in this District with a principle place of business of 251 East Ohio Street, Suite 1100, Indianapolis, Indiana 46204.

11.    PROGRESSIVE AMERICAN INSURANCE COMPANY is an insurance company licensed to sell insurance in this District with a principle place of business of 4030 Crescent Park Drive, Building B, Riverview, FL 33569.

## **JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

13.    This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it arises under the laws of the United States, specifically 18 U.S.C. § 1961 et seq. ("RICO"); and 18 U.S.C. §§1341, 1343,1346, 1951, 1952 and 1953.

14.    Venue is proper in this District pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### The Payment of Medical Expenses Under Florida Automobile Insurance Policies and Florida Statutes § 627.736 (5)

15.    With respect to the payment of accident related medical expenses, the standard and uniform language in the PROGRESSIVE AUTOMOBILE INSURERS' Florida automobile policies ("Policy") states in pertinent part that the PROGRESSIVE AUTOMOBILE INSURERS' must pay 80% of all reasonable and necessary accident related medical expenses.

16.    The PROGRESSIVE AUTOMOBILE INSURERS' automobile Policy is a typical indemnity insurance policy under which the PROGRESSIVE AUTOMOBILE INSURERS' are required to indemnify claimants for eighty (80%) percent of the full cost of their reasonable and necessary medical bills up to a defined limit.  Under the Policy, a claimant has the absolute right and freedom to choose his or her medical providers.  Within Policy limits, medical providers have the unrestricted right to be reimbursed 80% of their reasonable and necessary accident related medical expenses.

17.    The State of Florida's PIP statute directly addresses a health care provider's right to be paid for reasonable charges.  Florida Statutes § 627.736 (5) states:

> Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for bodily injury covered by personal injury protection insurance may charge only a reasonable amount for the products, services, and accommodations rendered,...

Fla. Stat. § 627.736 (5)(1992).

**The Florida Automobile Managed Care PPO Endorsement and
the PROGRESSIVE AUTOMOBILE INSURERS' Offer and
Subsequent Discontinuance of a PPO Endorsement**

18.    Florida statutes permit an automobile insurance company to designate certain

medical providers (preferred providers) *if* the automobile insurer establishes a legitimate

preferred provider organization ("PPO") network by satisfying the strict requirements of Florida

Statutes § 627.736 (10)(1992) which states as follows:

> (10) An insurer may negotiate and enter into contracts with licensed health care providers
> for the benefits described in this section, referred to in this section as "preferred
> providers," which shall include health care providers licensed under chapters 458, 459,
> 460, 461, and 463. *The insurer may provide an option to an insured to use a preferred
> provider at the time of purchase of the policy for personal injury protection benefits, if
> the requirements of this subsection are met. If the insured elects to use a provider who is
> not a preferred provider, whether the insured purchased a preferred provider policy or a
> non-preferred provider policy, the medical benefits provided by the insurer shall be as
> required by this section. If the insured elects to use a provider who is a preferred
> provider, the insurer may pay medical benefits in excess of the benefits required by this
> section and may waive or lower the amount of any deductible that applies to such
> medical benefits. If the insurer offers a preferred provider policy to a policy-holder or
> applicant, it must also offer a non-preferred provider policy. The insurer shall provide
> each policy-holder with a current roster of preferred providers in the county in which the
> insured resides at the time of purchase of such policy, and shall make such list available
> for public inspection during regular business hours at the principal office of the insurer
> within the state.* (emphasis added)

19.    From 1992 through 1996, the PROGRESSIVE AUTOMOBILE INSURERS'

offered their insureds a preferred provider policy endorsement ("PPO Endorsement").    If

insureds purchased the PPO Endorsement, the insureds received a fifteen percent (15%)

reduction on their personal injury protection premium.    From 1992 through 1996, the

PROGRESSIVE AUTOMOBILE INSURERS' discounted accident related medical expense

claims based on preferred provider rates.

20.    In 1996, the PROGRESSIVE AUTOMOBILE INSURERS' stopped offering the

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

PPO Endorsement but continued to take PPO discounts on accident related medical expense claims. Florida medical providers' bills were still being discounted based on preferred provider discounts when insureds never chose or never knew of the existence of any PPO.

### BRICKELL'S Preferred Provider Agreement with BEECH STREET

21.     On January 12, 1996, BRICKELL executed a "Preferred Provider Agreement" ("PPA") with BEECH STREET to become a BEECH STREET preferred provider. Pursuant to the PPA agreement, BRICKELL agreed to become a member of BEECH STREET's "Health Benefits Network" (i.e. employer/employee based group or individual health plan related payors) and "Worker' (sic) Compensation Network" (i.e. worker's compensation related payors). BRICKELL's agreement does not allow BEECH STREET to allow automobile insurers or PPO discount brokers with automobile insurer clients access to BRICKELL's preferred provider rates.

### The Illegitimate Discounting of BRICKELL's Accident Related Medical Bills Based on BEECH STREET PPO Discounts

22.     At the time BRICKELL executed the PPA, the PROGRESSIVE AUTOMOBILE INSURERS' had already stopped offering a PPO Endorsement to their insureds and had ceased notifying insureds of the identity of preferred providers in their alleged PPO network. Moreover, the PROGRESSIVE AUTOMOBILE INSURERS' were no longer offering insureds premium reductions as an economic incentive to use the preferred providers in their alleged PPO network.

23.     Additionally, BRICKELL's PPA did not authorize the application of his discounts by automobile insurers or discount brokers such as ADP who could not increase BRICKELL's patient volume. Increased patient volume was the consideration promised by BEECH STREET under the PPA.

24.     Despite these known facts, BEECH STREET allowed ADP and the PROGRESSIVE AUTOMOBILE INSURERS access to all of BEECH STREET's preferred

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

provider's confidential and proprietary discount rates knowing that the PROGRESSIVE

AUTOMOBILE INSURERS and ADP were not proper payors under the PPA and could not

increase preferred provider patient volume as promised by BEECH STREET.

25.     With BEECH STREET's consent, its database of preferred provider discounts

was loaded into ADP's software and applied to all bills submitted to the PROGRESSIVE

AUTOMOBILE INSURERS by BEECH STREET preferred providers such as DR. BRICKELL.

### The Defendants' Operation of a Silent PPO

26.     In the healthcare industry, the above described scheme designed to wrongfully

discount medical provider bills is called a "Silent PPO." A Silent PPO is the illegitimate sale of

PPO rates to indemnity insurers, such as automobile insurers, who do not offer a PPO policy,

whose insureds do not even know of the existence of the PPO, whose insureds do not select to

treat with a PPO preferred provider and where no legitimate mechanism (i.e. an in-network and

out-of-network plan design) exists to increase preferred provider patient volume.

27.     In essence, under the Silent PPO scheme, medical providers receive nothing for

steep discounts and the indemnity insurers, the PPO and the discount broker split millions in

savings shaved off of insurance medical expense claims.

28.     The Defendants all had knowledge of the illegal nature of this Silent PPO

discounting scheme. Silent PPO discounting schemes have been the subject of widespread

discussion in the insurance and managed care industries with many major medical associations

denouncing the practice. The PROGRESSIVE AUTOMOBILE INSURERS knew of the

purpose and requirements of Florida Statutes § 627.736 (10)(1992), as they had offered a PPO

Endorsement, discontinued the endorsement but continued to take PPO discounts. Moreover, an

adjuster and an expert witness working for the PROGRESSIVE AUTOMOBILE INSURERS

have given testimony as to the suspect nature of taking PPO discounts where a PPO

Endorsement was not sold to an insured.

29.    Defendant BEECH STREET had direct knowledge of the illegitimate nature of Silent PPOs. BEECH STREET drafted the PPA, executed the PPA with BRICKELL and had express knowledge of its provisions. Moreover, BEECH STREET has issued letters to providers discussing the Silent PPO issue, and BEECH STREET is a member of the American Association of Preferred Provider Organizations which prohibits Silent PPO practices.

30.    Under the PROGRESSIVE AUTOMOBILE INSURERS' Silent PPO scheme, BEECH STREET licensed, leased or otherwise provided its discount database to ADP. ADP incorporated the BEECH STREET preferred provider discounts into its existing cost containment software product – a product specifically designed to "re-price" medical bills based on preferred provider rates for non-managed care lines of insurance such as property and casualty insurance.

31.    Armed with the BEECH STREET preferred provider database of discounts, ADP licensed, leased or otherwise sold its PPO re-pricing software to the PROGRESSIVE AUTOMOBILE INSURERS. The PROGRESSIVE AUTOMOBILE INSURERS, or ADP on their behalf, systematically processed all Florida medical expense claims through ADP's automated PPO re-pricing product and applied discounts to bills where the medical provider's tax identification number on the bill matched a tax identification number in ADP's database. At no time did BRICKELL have a contract with ADP or the PROGRESSIVE AUTOMOBILE INSURERS authorizing discounts to be taken on his medical bills.

32.    The PROGRESSIVE AUTOMOBILE INSURERS routinely and systematically used ADP's re-pricing product in conjunction with the BEECH STREET preferred provider discounts to reduce millions of dollars of medical bills. The discounts were routinely and systematically applied despite the fact that a preferred provider policy was not offered by the

PROGRESSIVE AUTOMOBILE INSURERS and despite the fact that claimants were not referred, steered or directed to preferred providers.

33.    As part of the Defendants' Silent PPO scheme, BEECH STREET and ADP were paid a percentage of the PROGRESSIVE AUTOMOBILE INSURERS' PPO discount savings and/or a per transaction fee for processing claims for the PROGRESSIVE AUTOMOBILE INSURERS. From 1997 to the present, this Silent PPO scheme has saved the PROGRESSIVE AUTOMOBILE INSURERS millions of dollars.

34.    From 1997 to the present, Defendants have routinely and systematically applied BRICKELL's BEECH STREET preferred provider rates to numerous automobile medical expense claims and accordingly, the PROGRESSIVE AUTOMOBILE INSURERS have routinely and systematically issued BRICKELL, via the United States mail, Explanation of Benefit forms identifying the Beech Street discount with accompanying checks for the reduced amounts.

## CLASS ACTION ALLEGATIONS

35.    Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The purported class is defined to include:

> all Florida healthcare providers whose bills for medical services rendered to patients covered by the PROGRESSIVE AUTOMOBILE INSURERS' automobile insurance policies were discounted by the PROGRESSIVE AUTOMOBILE INSURERS based upon BEECH STREET preferred provider rates.

36.    There are questions of law and fact that are common to all members of the purported class, which questions predominate over any question affecting only individual class members. [Fed. R. Civ. P. 23 (a)(2)].

37.    The principal common issues include the following:

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

    a.    whether the PROGRESSIVE AUTOMOBILE INSURERS violated Fla Stat. § 627.736, et seq. by paying personal injury protection medical expense claims at preferred provider rates;

    b.    whether the PROGRESSIVE AUTOMOBILE INSURERS' payment of medical providers at preferred provider rates was a breach of their insurance policies;

    c.    whether Defendants' use and application of BEECH STREET preferred provider rates to automobile medical expense claims was allowed by the BEECH STREET PPA;

    d.    whether the PROGRESSIVE AUTOMOBILE INSURERS' application of preferred provider rates is a violation of the Lanham Act and the RICO Act;

    e.    whether Plaintiffs and those similarly situated are entitled to compensatory, statutory, or punitive damages against the Defendants because of their illegal conduct;

    f.    whether Plaintiffs and the purported class are entitled to an injunction preventing the continued disclosure and application of their BEECH STREET by the PROGRESSIVE AUTOMOBILE INSURERS and ADP.

    38.    In this case there is no question as to the identification of class members because the class is comprised of all healthcare providers whose medical bills were discounted by the PROGRESSIVE AUTOMOBILE INSURERS based on BEECH STREET preferred provider discounts. BEECH STREET and ADP have a database of BEECH STREET's preferred providers. There is also no issue as to the amount of the class members' damages because the amounts of the discounts are contained in the PROGRESSIVE AUTOMOBILE INSURERS' computer systems, and on the EOBs and checks mailed by the PROGRESSIVE AUTOMOBILE INSURERS to Plaintiffs and the members of the purported class. [Fed. R. Civ. P. 23 (a)(3)].

    39.    Plaintiffs' claims are typical of the claims of all the members of the purported

class because all claims are based on the same legal and remedial theories.

40.    Plaintiffs will fairly and adequately protect the interests of all purported class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein.  Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the purported class that they seek to represent.  Plaintiffs feel that they have been wronged, wish to obtain redress of the wrong and want the Defendants stopped from perpetrating their scheme and continuing to profit from the misapplication of PPO volume discounts.  To that end, Plaintiffs have retained counsel experienced in class action cases and health care litigation. Neither Plaintiffs, nor counsel, have any interest that may cause them to not vigorously pursue this action. [Fed. R. Civ. P. 23 (a) (4)].

41.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because:

a.    the individual class members are not all aware that they have been wronged and are thus unable to prosecute individual actions;

b.    concentration of the litigation concerning this matter in this Court is desirable;

c.    the claims of the representative Plaintiff, DR. BRICKELL, are typical of the claims of the members of the purported class;

d.    a failure of justice will result from the absence of a class action; and

e.    the purported class and the difficulties likely to be encountered in the management of this class action are not great.

42.    The purported class is so numerous as to make it impracticable to join all members of the class as plaintiffs.  The PROGRESSIVE AUTOMOBILE INSURERS have discounted thousands of medical bills based on preferred provider volume discounts.  Many

medical providers may not even be aware of the PROGRESSIVE AUTOMOBILE INSURERS'
sophisticated scheme, and if they were, for many providers, the amount in controversy would be
too small to justify the expense of individual litigation. In contrast, on a class-wide basis, the
PROGRESSIVE AUTOMOBILE INSURERS have saved millions of dollars by accessing
preferred providers discounts. [Fed. R. Civ. P. 23 (a)(1)].

### CAUSES OF ACTION
### COUNT I
### (Unjust Enrichment)

Plaintiffs re-allege the above paragraphs as if fully set forth herein and further state as
follows:

43.    No consideration has flowed from the PROGRESSIVE AUTOMOBILE
INSURERS to Plaintiffs and the putative class for the discounted payments made by the
PROGRESSIVE AUTOMOBILE INSURERS on medical bills of Plaintiffs and the putative
class.

44.    The PROGRESSIVE AUTOMOBILE INSURERS and ADP were not proper
payors under the BEECH STREET PPA or otherwise entitled to apply BEECH STREET
preferred provider rates to automobile medical expense claims because they provided no
consideration to BEECH STREET preferred providers for the discounts.

45.    The PROGRESSIVE AUTOMOBILE INSURERS have received and continue to
receive benefits in the form of savings, compensation and/or profits at the expense of Plaintiffs
and the putative class.

46.    Such savings, compensation and/or profits constitute unjust enrichment for the
PROGRESSIVE AUTOMOBILE INSURERS and must be disgorged.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## COUNT II
### (Third Party Beneficiary Breach of Contract)

Plaintiffs re-allege the above paragraphs as if fully set forth herein and further state as follows:

47.    The PROGRESSIVE AUTOMOBILE INSURERS and its insureds entered into a contract of insurance that provided for the payment of medical expenses up to a defined limit. That contract provided that in the event the insured was involved in an automobile accident, the PROGRESSIVE AUTOMOBILE INSURERS would pay to medical providers on the insured's behalf eighty (80%) percent of all reasonable and necessary medical expenses.

48.    Plaintiffs and the other members of the purported class are intended third party beneficiaries of their patients' insurance agreements. Plaintiffs and the members of the putative class were to receive 80% of their reasonable and necessary medical expenses under these policies and under the Florida personal injury protection statute -- not 80% of a discounted bill after application of BEECH STREET preferred provider discounts.

49.    As a result, Plaintiffs and the putative class members have suffered damages directly and proximately caused by the PROGRESSIVE AUTOMOBILE INSURERS' breach of its insurance agreements with its insureds.

## COUNT III
### (RICO Act Violations)

Plaintiffs re-allege the above paragraphs as if fully set forth herein and further state as follows:

50.    The PROGRESSIVE AUTOMOBILE INSURERS formed an association-in-fact enterprise designed to reduce payments made to preferred providers on medical expense claims. The "association in fact" is known as a "Silent PPO."

51.    The PROGRESSIVE AUTOMOBILE INSURERS participated, directly and

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

indirectly, in the activities of this enterprise through a pattern of racketeering activity, as more fully set forth below.

52.    The activities of this enterprise affected commerce.

53.    The pattern of racketeering activity consisted of multiple acts of mail and wire fraud, punishable under 18 U.S.C. § 1341 and § 1343, respectively.

54.    The pattern of racketeering activity has been continuous for at least two years, and, on information and belief, will continue into the future.

55.    In furtherance of the pattern of racketeering activity, the Defendants have engaged in a continuous scheme and artifice to defraud Plaintiffs, and those similarly situated, of money as follows:

    a.    PROGRESSIVE AUTOMOBILE INSURERS entered into a broker agreement which allowed for the disclosure and lease and/or license of the BEECH STREET preferred provider database to the PROGRESSIVE AUTOMOBILE INSURERS;

    b.    PROGRESSIVE AUTOMOBILE INSURERS transferred claim information, medical bills, EOBs, compensation information and documentation and other documentation and information necessary to carry out this scheme via the United States mails and/or by wire;

    c.    After computer application of the discounts, PROGRESSIVE AUTOMOBILE INSURERS printed Explanation of Benefit forms ("EOBs") on ADP's form EOBs which indicated the PPO discount and the reduced amount owed after application of the discount;

    d.    Accompanying the EOB is often an additional form summarizing a claimant's insurance benefits (hereinafter "Summary Benefit Form") also indicating that a PPO discount was applied;

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

e.    By use of the United States mail, PROGRESSIVE AUTOMOBILE INSURERS, thereafter transmitted or caused to be transmitted said *EOBs, Summary Benefit Forms, and reduced claim checks* to medical providers and persons insured by the PROGRESSIVE AUTOMOBILE INSURERS.

f.    Said EOBs and Summary Benefit Forms falsely represented that the PROGRESSIVE AUTOMOBILE INSURERS were entitled to apply a BEECH STREET PPO discount to the claim;

g.    Said EOBs and Summary Benefit Forms falsely claimed the "AMOUNT OWED" to be less than the amount actually owed and also falsely decreased a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount;

h.    Said EOBs also falsely stated that the discounted amount is "considered payment in full" and that all "appeals" regarding the PPO reductions must be taken up with the PPO, not ADP or the insurer;

i.    The Defendants engaged in interstate telephone calls, computer communications, and/or wire communications and transactions to transmit information that was false and to exchange fees and compensation essential to the scheme.

56.    In the above described manner, the Defendants were able to gain access to managed care contract rates without providing any consideration to medical providers and without ever entering into a managed care contract with any medical providers. This scheme to sell and grant access to unauthorized proprietary discounts worth millions of dollars in the secondary PPO discount black market has caused Plaintiffs and the class members money.

57.    The Defendant's conduct gives rise to claims under 18 U.S.C. §1964(a) of the RICO Act and permits the recovery of treble damages against the Defendants for violations of 18 U.S.C. § 1962 (c), for a conspiracy to violate 18 U.S.C. §1962(a) in violation of 18 U.S.C.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

§1962(d) and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. §1962(a) within the meaning of 18 U.S.C. §1962.

58.    Plaintiffs and the purported class members are "persons" within the meaning of 18 U.S.C. §1964(c).

59.    At all times relevant hereto, Plaintiffs and class members were and are "persons" within the meaning of 18 U.S.C. §1961(3).

60.    With respect to the activities alleged herein, Defendants acted at all times with malice toward the class, intent to engage in the conduct complained of for the benefit of their selves and with knowledge that such conduct constituted unlawfulness.  Such conduct was done with reckless disregard for the rights of the class as well as the laws, to which Defendants are subject, the same amounting to actionable wantonness.

61.    With respect to the activities alleged herein, Defendants, aided and abetted each other, and others not named in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. §§1962(a) and (c).  Defendants operated the scheme or artifice to defraud and to obtain money by false pretenses and to deprive class members of the intangible right of honest payment. In furtherance of this scheme, the Defendants interfered with, obstructed, delayed or affected commerce by attempting to obtain and/or actually obtaining property interests to which Defendants were not entitled through the exploitation of discount rates to which they were not entitled.

62.    With respect to the overt acts and activities alleged herein, Defendants communicated to violate 18 U.S.C. §§1962(a) and (c), all in violation of 18 U.S.C. §1962(d). Defendants, who individually operate legitimate businesses (an insurer, a PPO and a bill review company), joined forces so they could participate directly in the fraudulent scheme or artifice

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

alleged herein, to obtain money by false pretenses, and to deprive class members of the intangible right of honest payment. Defendants communicated and conspired with each other and participated directly in the interference with, obstructing of, delaying of, or effect upon commerce by actually obtaining property interests to which they were not entitled through the exploitation of a proprietary discount rate.

63.    The numerous predicate acts of mail and wire fraud, and interference with the operation of legitimate preferred provider discounts herein are part of a common fraudulent and extortionate scheme by Defendants to defraud Plaintiffs, and the purported class, of money and property interests under false pretenses; to deprive Plaintiffs, and the purported class, of receipt of reasonable and necessary compensation for medical services; to interfere with the patient-doctor fiduciary relationship; and, to place Defendants' financial interests over the confidential rates of Plaintiffs and the purported class so that Defendants could make greater profits. Plaintiffs, and the purported class, as victims of this unlawful pattern of illegal activity, have and continue to suffer losses.

**Racketeering Activities**

64.    In carrying out the overt acts and fraudulent scheme described above, the Defendants engaged in inter alia, conduct in violation of federal laws, including 18 U.S.C. §§1341 and 1343, 18 U.S.C. §§1341 and 1346, 18 U.S.C. §§1343 and 1346, 18 U.S.C. §1951(b)(2), 18 U.S.C. §1952(a), 18 U.S.C. § 1954, and 18 U.S.C. §1961 et seq., as stated below.

65.    Section 1961(l) of the RICO Act provides that "'racketeering activity' means. . . any act which is indictable under any of the following provisions of Title 18, United States Code ... Section 1341 (relating to mail fraud), Section 1343 (relating to wire fraud)."

66.    The United States Congress amended the mail and wire fraud statutes in 1988 by

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

codifying a partial definition of the central term "scheme or artifice to defraud." The newly created definition of a "scheme or artifice" for purposes of specifically recognizing by statute certain unlawful acts also constituting mail and wire fraud violations under 18 U.S.C. §§1341 and 1343, respectively, now reads in its entirety as follows: "For purposes of this chapter, the term 'scheme or artifice' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. §1346.

### 18 U.S.C. §§1341 and 1346, and 18 U.S.C. §§1343 and 1346

68.     For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, the Defendants, in violation of 18 U.S.C. §1341 and §1346, placed in United States Post Offices and/or in authorized repositories for mail, matter, matters and things to be sent or delivered by the United States Postal Service, and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.

69.     For the purpose of executing and/or attempting to execute its scheme to defraud and to obtain money by means of false or fraudulent pretenses, as well as to execute and/or attempt to execute its scheme or artifice to deprive another of the intangible right of honest services, the Defendants, in violation of 18 U.S.C. §§1343 and 1346, transmitted in interstate commerce by wire, telephone, or computer transmissions, information regarding illegal discounts. In this manner, the Defendants were knowingly depriving DR. BRICKELL and others similarly situated to provide "honest services." The Defendants knowingly worked in concert to deprive Plaintiffs and others similarly situated of "honest services."

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

70.    In those matters and things sent or delivered by the United States Postal Service referred to above, Defendants falsely and fraudulently represented to Plaintiffs and the purported class that:

a.    Said EOBs and Summary Benefit Forms represented that the PROGRESSIVE AUTOMOBILE INSURERS were entitled to apply a BEECH STREET PPO discount to the claim;

b.    Said EOBs and Summary Benefit Forms claimed the "AMOUNT OWED" to be less than the amount actually owed and also decreased a claimant's deductible, thereby exposing claimants to liability for the fraudulently discounted amount;

c.    Said EOBs also stated that the discounted amount is "considered payment in full" and that all "appeals" regarding the PPO reductions must be taken up with the PPO, not ADP or the insurer; payments to Plaintiffs were for the "amount allowed" were full and final payment for the reasonable value of his service;

71.    With respect to its unlawful activities described above, the Defendants also transmitted funds, contracts, claims checks, and other forms of business communications and transactions in a continuous and uninterrupted flow across state lines and employed the United States mails and interstate wires in violations of 18 U.S.C. §§1341, 1343, and 1346.

72.    The Defendants intentionally and knowingly deceived Plaintiffs and the purported class referred to above for the purpose of financial gain.  Defendants either knew or recklessly disregarded that the illegal discounts described above were material.

73.    Plaintiffs and the purported class have, therefore, been injured in their business or property by the Defendants' overt acts and racketeering activities in amounts to be determined at trial.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

*18 U.S.C. §1951(b)(2)*

74.    During the relevant times, and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud or deprive, the Defendants on numerous occasions aided and abetted and conspired to and attempted to and did interfere with, obstruct, delay or affect "commerce" as that term is defined in 18 U.S.C. §1951. The Defendants unlawfully caused Plaintiffs and numerous other healthcare providers to part with various property interests to which the Defendants were not entitled, including the intangible property right of healthcare providers to conduct their business free of fraud and their fiduciary obligation to provide their patients with privacy. The Defendants as part of their scheme exploited a fear of economic loss and/or loss of business by Plaintiffs and others similarly situated in violation of 18 U.S.C. §1951(b)(2). In furtherance of the scheme or artifice to defraud and obtain money by false pretenses from Plaintiffs and the purported class, the Defendants conspired and communicated amongst each other to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interests to which the Defendants were not entitled through the exploitation of healthcare providers' fear of economic loss and/or loss of business by refusing to contest the aforesaid illegal discounts. The Defendants either knew, or recklessly disregarded, that the natural consequences of their acts would exploit and continue to exploit fear of economic loss or loss of business by Plaintiffs and the purported class and yet secure tangible property rights to which they were not entitled.

75.    The Defendants' overt acts and fraudulent and extortionate racketeering activity has and continues to defraud Plaintiffs, and the members of the purported class, of money, as well as interfering with the fiduciary relationship between Plaintiffs and members of the purported class, and their patients.

76.    Plaintiffs and the purported class have, therefore, been injured in their business or property by the Defendant's overt acts and racketeering activities in amounts to be determined at trial.

### 18 U.S.C. §1952(a)

77.    During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme and artifice to defraud Plaintiffs and the purported class, the Defendants, their employees, agents and others, on numerous occasions did travel and caused others not named in this Complaint to travel in interstate commerce in order to attempt to and to commit mail fraud and wire fraud in violation of the Travel Act, 18 U.S.C. §1952(a).

78.    The PROGRESSIVE AUTOMOBILE INSURERS' overt acts and fraudulent racketeering activity has and continues to defraud Plaintiffs and the purported class of money.

### Pattern of Racketeering Activity

79.    The Defendants have engaged in a "pattern of racketeering activity" as defined in Section 1961(5) of the RICO Act by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years.  Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including Plaintiffs and the purported class.

80.    The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. §1961(5).

### Violations of the RICO Act, 18 U.S.C. §§1962(d), as to all Parties

81.    Plaintiffs' claim for relief also arises under 18 U.S.C. §1964 (c) of the RICO Act

and seeks to recover actual and treble damages for the Defendants' violations of 18 U.S.C. §§1962(c) and for its violations of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. § 1962(a) and (c).

### Section 1962(c) Claim

82.    Section 1962(c) of the RICO Act provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1961(3) of the RICO Act states that "person" includes any individual or entity capable of holding a legal or beneficial interest in property.  Section 1961(4) of the RICO Act defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18U.S.C. §1961(4).

83.    For purposes of this Section 1962(c) claim, the persons consist of the PROGRESSIVE AUTOMOBILE INSURERS, individually and collectively.  The enterprise is an association in fact consisting of the PROGRESSIVE AUTOMOBILE INSURERS.  The PROGRESSIVE AUTOMOBILE INSURERS by virtue of control by BEECH STREET over physicians, medical specialists, medical laboratories, hospitals, healthcare clinics, pharmacies, home healthcare agencies, and other miscellaneous healthcare providers; all of which have the purpose of providing healthcare services to the PROGRESSIVE AUTOMOBILE INSURERS' insureds under the PROGRESSIVE AUTOMOBILE INSURERS' personal injury protection policies, deprive DR. BRICKELL and the purported class of rightful compensation.  Thus, this illegal conduct provides Defendants increased profits from two sources.  The first source of increased profits comes from the savings and fees obtained by Defendants from the Silent PPO

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

when preferred policy discounts are illegally taken. The second source of increased profits realized by the PROGRESSIVE AUTOMOBILE INSURERS is from their insureds. Their insureds pay *full* premiums for an insurance policy that are not preferred provider policies, whereas lower premiums are charged for actual preferred polices of automobile insurance. This Section 1962(c) enterprise is distinct from the PROGRESSIVE AUTOMOBILE INSURERS and includes many persons who are not employees of the PROGRESSIVE AUTOMOBILE INSURERS and many entities that are not owned by The PROGRESSIVE AUTOMOBILE INSURERS. The Section 1962(c) enterprise is engaged in, and its activities substantially affect, interstate commerce.

84.    The PROGRESSIVE AUTOMOBILE INSURERS is associated with the Section 1962(c) enterprise as described above and conduct and participate in the affairs of that enterprise through the pattern of racketeering activity described herein. Plaintiffs and the purported class members are directly and proximately injured both by this pattern of activity and by The PROGRESSIVE AUTOMOBILE INSURERS' conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. §1964(c).

**Section 1962(d) Claim**

Plaintiffs re-allege the above paragraphs as if fully set forth herein and further state as follows:

85.    This claim for relief also arises under 18 U.S.C. §1964(c) of the RICO Act and seeks to recover actual and treble damages for the PROGRESSIVE AUTOMOBILE INSURERS' violation of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(a) and (c). Section 1962(d) of the RICO Act provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

86.    Section 1961(4) of the RICO Act defines "enterprise" to include "any individual,

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4).

87.     Section 1962 (a) of the RICO Act provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity... to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

88.     For purposes of the claim of a conspiracy in violation of Section 1962(d) to violate Section 1962(a), the persons under the latter subsection consist of the PROGRESSIVE AUTOMOBILE INSURERS, and the enterprise consists of the PROGRESSIVE AUTOMOBILE INSURERS and their investment division, which further profits from the ill-gotten gains.

89.     At all times relevant herein, The PROGRESSIVE AUTOMOBILE INSURERS's investment division constitutes an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(a). The PROGRESSIVE AUTOMOBILE INSURERS investment division was and continues to be the investment beneficiary of additional monies realized from the above overt acts and fraudulent and extortionate scheme or activities to defraud DR. BRICKELL and the purported class of money and to deprive them of their intangible right of honest services from BEECH STREET.

90.     The PROGRESSIVE AUTOMOBILE INSURERS sells insurance nationwide. Assets generated from the PROGRESSIVE AUTOMOBILE INSURERS's unlawful practices described herein are in the millions of dollars and the proceeds of such income amount to millions of dollars.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

91.    The PROGRESSIVE AUTOMOBILE INSURERS derived substantial income and proceeds through the above described pattern of racketeering activity, and conspired to use or invest, and did use or invest, directly or indirectly, a significant part of such income or proceeds in the operation of the enterprise described above, in violation of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(a). This use or investment injures DR. BRICKELL and the purported class members because it permits that enterprise to continue, expand, and increase its revenue and to affect healthcare providers that are attacked by the enterprise. This use and investment directly and proximately injures purported class members in a manner that is distinct from the injury caused by the pattern of racketeering activity described herein.

92.    As demonstrated in detail above, the PROGRESSIVE AUTOMOBILE INSURERS have engaged in numerous overt and predicate fraudulent and extortionate racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to fraudulently require Plaintiffs and the purported class to accept discounted payments, yet failing to disclose numerous internal systemic fraudulent and extortionate policies and practices designed to defraud Plaintiffs and the class of money, and to unlawfully interfere with their physician-patient relationship.

93.    The PROGRESSIVE AUTOMOBILE INSURERS' pattern of fraudulent and extortionate racketeering acts includes, but is not limited to, acts in furtherance of its efforts to not disclose conflicts of interest brought about by the PROGRESSIVE AUTOMOBILE INSURERS' inducement to BEECH STREET to allow the PROGRESSIVE AUTOMOBILE INSURERS to defraud Plaintiffs and the purported class.

94.    The nature of the above described acts of the PROGRESSIVE AUTOMOBILE INSURERS constitutes material misrepresentations that give rise to an inference that the PROGRESSIVE AUTOMOBILE INSURERS knew they were violating the objective of 18

U.S.C. §1962(d) by violating 18 U.S.C. §§1962(a) and (c), through ongoing fraudulent and extortionate acts that have been and are part of an overall pattern of racketeering activity.

95.     As a direct and proximate result of the PROGRESSIVE AUTOMOBILE INSURERS' overt acts and predicate acts in furtherance of violating 18 U.S.C. §1962(d) by conspiring to violate IS U.S.C. §§1962(a) and (c), Plaintiffs and the class have been and are continuing to be injured in their business or property.  Pursuant to 18 U.S.C. §1964(c), Plaintiff is entitled, therefore, to bring this action on behalf of the purported class and to recover actual and treble damages, as well as the costs of bringing this suit and attorneys' fees.

96.     The PROGRESSIVE AUTOMOBILE INSURERS have sought to and have engaged in the commission of and continue to commit overt fraudulent acts.  The aforesaid described unlawful racketeering predicate acts that have and continue to generate income or proceeds received by the PROGRESSIVE AUTOMOBILE INSURERS from such pattern of racketeering activity, are:

      a.     multiple instances of mail and wire fraud violations of 18 U.S.C. §§1341 and 1343;

      b.     multiple instances of mail fraud violations of 18 U.S.C. §§1341 and 1346;

      c.     multiple instances of wire fraud violations of IS U.S.C. §§1343 and 1346;

      d.     multiple instances of extortion violations of 18 U.S.C. §1951(b)(2);

      e.     multiple instances of travel in interstate commerce to attempt to and to actually commit mail fraud, wire fraud, and extortion, in violation of 18 U.S.C. §1952(a); and

      f.     multiple instances of violations of 18 U.S.C. §1954.

97.     The PROGRESSIVE AUTOMOBILE INSURERS' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting the PROGRESSIVE AUTOMOBILE INSURERS' illegal acts

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

constituting a pattern of racketeering activity is fashioned and imposed by this Court.

## COUNT V
### (Declaratory Judgment)

Plaintiffs incorporate the above paragraphs as if fully set forth herein and further state as follows:

98.    As previously alleged, the PROGRESSIVE AUTOMOBILE INSURERS have improperly taken advantage of discounts to which they are not entitled for all the reasons that have been set forth in the previous paragraphs of this Complaint.

99.    The PROGRESSIVE AUTOMOBILE INSURERS have taken these discounts in breach of the terms and conditions of their automobile insurance policies. Said policies are indemnity policies that do not provide for preferred provider benefits or the application of preferred provider rates.

100.    By using the BEECH STREET preferred provider rates to limit the payment of Plaintiffs' and class members' bills, the PROGRESSIVE AUTOMOBILE INSURERS have imposed a limitation on benefits that is not contained in their automobile insurance policies. Plaintiffs and the class members are intended third-party beneficiaries of said insurance policies and are entitled to a declaration that the PROGRESSIVE AUTOMOBILE INSURERS' payments of their medical bills at preferred provider rates is a breach of the applicable insurance contracts.

## COUNT VI
### (Violation of Florida Statute 627.736(10))

Plaintiffs incorporate the above paragraphs of this Complaint as if fully set forth herein and further state as follows:

101.    At all times material herein, Plaintiffs and the members of the class that he seeks to represent presented or had presented on their behalf reasonable and necessary medical charges

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

to the PROGRESSIVE AUTOMOBILE INSURERS for treatment of patients entitled to PIP medical expense benefits pursuant to a Florida automobile insurance policy issued by the PROGRESSIVE AUTOMOBILE INSURERS.

102. The PROGRESSIVE AUTOMOBILE INSURERS have wrongfully reduced Plaintiffs' and the class members' medical expense claims based on BEECH STREET preferred provider discounts.

103. The PROGRESSIVE AUTOMOBILE INSURERS are not entitled to said BEECH STREET preferred provider discounts. The PROGRESSIVE AUTOMOBILE INSURERS failed to offer insureds a PPO endorsement and also failed to otherwise comply with the requirements of Florida Statute 627.736(10).

104. Despite this failure, the PROGRESSIVE AUTOMOBILE INSURERS have reduced and continue to reduce the automobile insurance medical expense claims of Plaintiffs and the purported class members by accessing and applying BEECH STREET preferred provider volume discounts.

105. Accordingly, an outstanding balance remains on all automobile insurance medical expense claims that the PROGRESSIVE AUTOMOBILE INSURERS have reduced based on BEECH STREET preferred Provider volume discounts. By reducing Plaintiffs' and the purported class members' legitimate medical expenses by application of BEECH STREET preferred provider discounts rates, the PROGRESSIVE AUTOMOBILE INSURERS have violated Fla. Stat. § 627.736(10).

106. As a result of the PROGRESSIVE AUTOMOBILE INSURERS' failure to comply with Fla. Stat. § 627.736(10), Plaintiffs and the members of the purported class have suffered damages and irreparable harm.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## COUNT VII
### (Breach of Contract)

Plaintiffs incorporate the above paragraphs of this Complaint as if fully set forth herein and further state as follows:

107.    Plaintiffs and class members treated and billed claimants covered by automobile insurance policies written by the PROGRESSIVE AUTOMOBILE INSURERS.  Said Policies provided for the payment of 80% of reasonable and necessary accident related medical expense claims.

108.    Plaintiffs and class members executed "Assignment of Benefit" forms (hereinafter "Assignments") with claimants thereby assigning all rights and interests in their insurance benefits to Plaintiffs and the class members.

109.    Based on the PROGRESSIVE AUTOMOBILE INSURERS' representations, the PROGRESSIVE AUTOMOBILE INSURERS paid BEECH STREET preferred providers, who had accepted Assignments, at BEECH STREET preferred provider discount rates.

110.    The PROGRESSIVE AUTOMOBILE INSURERS' payment of medical expense claims based on BEECH STREET preferred provider discount rates is a beach of the terms and conditions of the PROGRESSIVE AUTOMOBILE INSURERS' insurance contracts.

111.    Plaintiffs and class members, as assignees of their patients' rights, have suffered damages as a result of the PROGRESSIVE AUTOMOBILE INSURERS breach of contract.

WHEREFORE, Plaintiffs and the members of the class that he seeks to represent demand the following relief:

a) that judgment against the PROGRESSIVE AUTOMOBILE INSURERS be entered in the amount of DR. BRICKELL and the purported class members' damages incurred, including an award of punitive damages, with interest, reasonable attorneys' fees pursuant to

29

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Florida Statutes § 627.428 and § 627.736(8) and costs; and

b) that the Court order such other relief as it deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS CONTAINED HEREIN**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S.

Mail on this date on all counsel or parties of record on the attached service list.

Dated: August 1, 2006                                  Respectfully submitted,
      Boca Raton, FL  33431

                                           Eric Lee (961299)
                                           lee@leeamlaw.com
                                         Lee & Amtzis, P.L.
                                         5550 Glades Road, Ste. 401
                                         Boca Raton, FL  33431
                                         Telephone:  (561) 981-9988
                                         Facsimile:  (561) 981-9980
                                       **Attorneys for Plaintiffs Keith**
                                       **Brickell and Ultra Open MRI**

**Corp.**

**<u>Co-Counsel Counsel for Plaintiffs</u>**

Art Gold, Esq.
asg@gcjustice.com
Gold & Coulson
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
Telephone:  (312) 372-0777
Facsimile:  (312) 372-0778

Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA 02747
Telephone:  (508) 998-0800
Facsimile:  (508) 998-0919

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Larry Kopelman, Esq.
lmk@kopelman.com
Kopelman & Blankman, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
Telephone:  (954) 462-6855
Facsimile:  (954) 462-6899

Richard Bokor, Esq.
richard@bokorlaw.com
230 E. Davis Boulevard
Tampa, FL  33606
Telephone:  (813) 251-1000
Facsimile:  (813) 254-6327

Susan Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Blvd., Ste. 200
Tampa, FL  33606
Telephone:  (813) 251-8879
Facsimile:  (813) 251-5786

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## MASTER SERVICE LIST
(Updated 5/18/06)

**Co-Lead Counsel for Plaintiffs**

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
(954) 462-6855
(954) 462-6899 Facsimile

**Co-Counsel for Plaintiffs**

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
richard@bokorlaw.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Counsel for:**
**Allstate Defendants**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MECKLER BULGER & TILSON
Peter J. Valeta, Esq.
peter.valeta@mbtlaw.com
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 474-7895
(312) 474-7898 Facsimile

**Counsel for Progressive**

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd., Ste. 1100
Miami, FL  33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile