UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

      Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

Defendant/Third Party Plaintiff,

_____ _____ /

KEITH BRICKELL, D.C., individually and on behalf of
all others similarly situated,

      Plaintiff,

v.                                          Case No. 00-6649

PROGRESSIVE EXPRESS INSURANCE
COMPANY, et al.

      Defendants,

_____ /

ULTRA OPEN MRI CORP., on behalf of
itself and all others similarly situated,

      Plaintiff,

v.                                          Case No. 01-6776

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

      Defendant.

_____ /



CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## PLAINTIFFS' MEMORANDUM IN SUPPORT
## OF THE PROPOSED SETTLEMENT WITH
## PROGRESSIVE AMERICAN INSURANCE COMPANY

Plaintiffs Keith Brickell, D.C. ("Brickell") and Ultra Open MRI Corporation ("Ultra Open") (collectively "Plaintiffs" or "Class Representatives"), suing on behalf of themselves and the class defined below, respectfully submit this memorandum pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in support of the proposed settlement of this action as against the named Defendants which are direct or indirect subsidiaries of Progressive Casualty Insurance Company (collectively "Progressive")[1] for total class relief of over $9,000,000 (the "Settlement").

## SUMMARY OF THE SETTLEMENT

The specific terms of the Settlement have been set forth in the Settlement Agreement and Stipulation (the "Stipulation") filed with the Court and preliminarily approved on March 21, 2006. The settlement provides for a $9,000,000 class fund. Progressive has also agreed to pay the following monies separate from the class fund: 1) up to $2,700,000 in attorney's fees; 2) reasonable litigation costs and expenses, not to exceed $15,000; and 3) $200,000 for the costs of settlement administration. In accordance with the Stipulation, the settlement administrator mailed a total of 7,473 Notices and Proof of Claim forms. Out of all of these Notices, only 18 valid Opt-Outs were filed. This represents less than .25% of the class members who were sent notice. Additionally, and most importantly, there has not been a single objection filed to the class action settlement, the requested attorney's fees, or the requested reimbursement of expense. The lack of a single objection speaks volumes to the fairness and reasonableness of this settlement.

---

[1] These companies issued and underwrote automobile insurance in Florida during the class period, specifically January 1, 1997 through January 1, 2005.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## I.    HISTORICAL BACKGROUND OF THE LITIGATION

### A.    The Consolidated Class Action Litigation

The consolidated class action litigation began over six years ago on January 13, 2000, with the filing of Napoli v. Allstate Insurance Company, et al, later amended as Zidel v. Allstate Insurance Company, et al,.  After filing the first case, Class Counsel filed fourteen additional cases, all of which were eventually consolidated into the current case.  Each case alleged a similar pattern and practice by the various insurance defendants of reducing Florida automobile insurance personal injury protection ("PIP") medical expense claims based on the wrongful application of preferred provider organization ("PPO") discounts, issues of first impression regarding that issue.[2]

The theories that predominated all the consolidated cases centered around allegations that the discounting practices of the defendant insurers: (1) violated Florida PIP insurance statutory law (specifically Fla. Stat. § 627.736(10)); (2) constituted a violation of the federal Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961, et seq. (the "RICO Act"); (3) were in direct breach of the specific language of the relevant automobile insurance policies; and, (4) constituted unjust enrichment to the defendant insurers.

Since the Plaintiffs and Class Counsel took on the Florida auto insurance industry to stop the industry-wide practice of discounting PIP claims through the wrongful application of PPO discounts, the defendant insurers, and their vendors supplying the discounts, aggressively "circled the wagons" in defense of these class actions.[3]  As the Court's Docket Sheet demonstrates, a virtual legal war ensued with a first barrage of multiple motions to dismiss.  The plaintiffs

---

[2]  To Class Counsel's knowledge the Consolidated Cases were the first class action cases in the country to challenge the "silent PPO" discounting of automobile insurance medical expense claims, other than two similar actions brought in Massachusetts state court by Class Counsel, Phillips & Garcia, LLP.

[3]  The defendant insurers have all stopped the practice of applying PPO discounts to PIP medical expense claims.

thwarted the initial flurry of defensive motions, most notably defeating the defendants' attempts to dismiss their RICO counts.[4]

The current actions against Progressive were filed as follows: (1) On May 12, 2000 Brickell filed suit against Progressive Express, et al., and on July 24, 2000 filed his Motion to Certify Class Action (See Brickell Case No. 00-CV-6649, Docket Entries Nos. 1, 35); (2)  On May 8, 2001 Ultra Open MRI filed suit against Progressive American Insurance, and on May 25, 2001 filed its Motion to Certify Class Action (See Ultra Open Case No. 00-CV-6776, Docket Entries Nos. 1,5).  Related PPO Defendants subsequently filed their motions to compel arbitration in pending cases on  the basis of an arbitration clause contained in their insurance contracts.  After consideration, in a Report dated September 27, 2002, Magistrate Snow recommended denying the parties' motions to compel arbitration on the basis that the arbitration clause contained in the related auto policies was not an independent contract between the parties and must be stricken as in violation of Florida's Constitution under Nationwide Mut. Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So. 2d 55 (Fla. 2000). (Consolidated Docket Entry No. 852). The parties subsequently filed their Objections to the Report and Recommendations (Consolidated Docket Entries Nos. 867-872). Ultimately, in an October 28, 2002 Supplemental Order, this Court denied the motions to compel arbitration in the consolidated cases.  The parties then appealed Judge Ferguson's decisions on the arbitration issue to the Eleventh Circuit, where the cases were consolidated on appeal.  Although the Progressive defendants did not appeal, the District Court stayed the Progressive cases while the other cases were on appeal.

While the cases were in the District Court, Class Counsel aggressively sought discovery

---

[4]  The Plaintiffs' victory was not total.  In its main ruling on the motions to dismiss, the Court dismissed the Plaintiffs' Lanham Act claims.

from all the defendants and other non-party witnesses. Class Counsel propounded written discovery and noticed various depositions of the defendants and other witnesses. Almost all of these discovery efforts were met with motions for protective orders or motions to stay discovery. Class Counsel opposed such motions and countered in some cases by filing motions to compel discovery which were, in turn, opposed by the defendants. All discovery and litigation in the District Court was eventually stayed as the cases were appealed to the Eleventh Circuit.[5]

Despite the defendants' successful efforts at preventing Class Counsel from conducting full discovery prior to the appeal, Class Counsel were able to obtain a wealth of invaluable information by negotiating a settlement with the vendor defendants, ADP Integrated Medical Solutions, Inc ("ADP") and Beech Street Corporation ("Beech Street").[6] Under this agreement, ADP and Beech Street consented to a whole-scale production of documents, data and information relating to the defendant insurers' PPO reduction practices. ADP and Beech Street provided class counsel with thousands of pages of documents detailing the defendant insurers' PPO discounting programs. ADP and Beech Street also conducted a specific search of their respective databases that resulted in a CD ROM containing PPO discount information on a claim-by-claim basis for each insurer per year. The information on the CD ROM provided Class Counsel, in the majority of cases, with the complete class list (names, addresses and tax identification numbers) and the amount of each class member's damages on a claim-by-claim basis – information that would have taken Class Counsel years to obtain in the normal discovery process.

---

[5] As of October 28, 2002 when the cases were stayed, the consolidated docket had 882 entries.

[6] ADP, a national claims re-pricing company servicing property and casualty insurers, applied the Beech Street PPO discounts to the class members' medical bills on behalf of certain defendant insurers via a software program designed to calculate the discount and produce an explanation of benefits form showing the PPO reductions.

## B.    The Progressive Class Actions

### 1. Brickell

Plaintiff Brickell is a Florida healthcare provider that had entered into a "Preferred Provider Agreement" ("PPA") with non-party Beech Street, which operated a national preferred provider organization. Companies such as Beech Street are sometimes referred to as "brokers" or "managed care companies" in the health care industry. Beech Street contracts with healthcare providers for the purpose of uniting healthcare providers with commercial payors to coordinate and arrange for the delivery of healthcare services to the payors' legitimate subscribers. Pursuant to the PPA Agreement, Brickell agreed to become a member of Beech Street's "Health Benefits Network" (i.e. employer/employee based group or individual health plan related payors) and "Workers Compensation Network"(i.e. worker's compensation related payors). Brickell's Agreement did not allow Beech Street to allow automobile insurers or PPO discount brokers with automobile insurer client access to Brickell's preferred provider rates.

At the time Brickell had executed the PPA, Progressive had already stopped offering a PPO Endorsement to their insureds and had ceased notifying insureds of the identity of preferred providers in their alleged PPO network. Progressive was also no longer offering insureds premium reductions as an economic incentive to use the preferred providers in their alleged PPO network. In addition to these facts, Brickell's PPA did not authorize the application of his discounts by automobile insurers or discount brokers such as non-party ADP who could not increase Brickell's patient volume. Such increased patient volume was the consideration promised by Beech Street under the PPA with Brickell.

Despite these facts, Beech Street subsequently allowed non-party ADP access to all of Beech Street's preferred provider's confidential and proprietary discount rates. ADP is a company

in the business of developing software driven cost containment products used in the claims review process by property and casualty insurers to reduce payments made on insurance medical expense claims. Beech Street also allowed Progressive access to the same proprietary information. ADP then loaded Beech Street's database of preferred provider discounts into ADP's software, and then applied those discounts to all bills submitted to Progressive by Beech Street providers such as Brickell.

### 2. Ultra Open

Plaintiff Ultra Open is a Florida healthcare provider that had also entered into a Preferred Provider Agreement ("PPA") contract with Non-Party Beech Street. Under the terms of the PPA contract Ultra Open agreed to become a member of Beech Street's network (i.e. employer/employee based group or individual health plan related payors). Ultra Open's PPA Agreement does not allow Beech Street to allow automobile insurers or PPO discount brokers with automobile insurer client access to Ultra Open's rates.

Progressive had not offered a PPO endorsement to its automobile insureds, and never offered its Florida automobile insureds premium reductions as an economic incentive to use preferred providers. Additionally Ultra Open's PPA with Beech Street did not authorize the application of discounts by automobile insurers or discount brokers who could not increase Ultra Open's patient volume.

Despite these facts, Beech Street subsequently allowed non-party ADP access to all of Beech Street's preferred provider's confidential and proprietary discount rates. Beech Street also allowed Progressive access to the same proprietary information. ADP then loaded Beech Street's database of preferred provider discounts into ADP's software, and then applied those discounts of all bills submitted to Progressive by Beech Street providers such as Ultra Open.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## II.    DISCOVERY AND NEGOTIATIONS LEADING TO SETTLEMENT

Attempts at settlement negotiations with Progressive did not occur until after Progressive's motions to dismiss and to amend its answer and add affirmative defenses were denied at the District Court level. Progressive's cases were then stayed while the other parties appealed denial of their Motions to Compel Arbitration to the Eleventh Circuit. Counsel for the related PPO parties then conducted extensive settlement discussions in accordance with the Eleventh Circuit's mediation program before Joseph Unger, a mediator with the United States Court of Appeals for the Eleventh Circuit. Separate and apart from the Unger negotiations, Progressive undertook its own settlement talks with the Plaintiffs which then took place over the course of approximately two years.

After much protracted discussions on both sides, through continued perseverance and hard work, the current $9,000,000 settlement was finally reached between Progressive and the Plaintiffs this past winter. Based on their extensive knowledge of the strengths and vulnerabilities of the claims against Progressive and given the uncertainties of an appeal and/or ultimate trial of the action, Class Counsel believe that the Settlement represents an excellent result for the Class. Plaintiffs and Class Counsel heartily recommend that the proposed Settlement be approved as fair, reasonable, adequate and in the best interests of the Class.

## III.    SUMMARY OF THE SETTLEMENT

### a.    Class Members Receive 60% of Their Damages With No Reduction for Costs of Settlement Administration or Counsel Fees

The Settlement provides for the distribution of a Settlement Fund of up to $9,000,000 to Class Members who timely file Proof of Claim forms with an independent Settlement

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Administrator paid for by Progressive.[7] Each Class Member that timely files a properly completed Proof of Claim form is entitled to reimbursement of 60% of the difference between the amount that the Class Member would have been paid if no PPO discount had been applied to their bills and the amount that the Class Member actually was paid with the PPO discount as identified in Progressive's own records for the period January 1, 1997 through January 1,2005.[8] If the total claim amounts submitted by Class Members is less than or equal to the $9,000,000 Settlement Fund established by Progressive, then each properly submitted Class Member claim will be paid in full (*i.e.* at one hundred (100 percent) of the maximum allowed claim amount ).[9] Additionally, all costs of the settlement administration, including the costs of notifying the Class Members, are being borne by Progressive.[10] Progressive has set aside an additional $200,000, separate from the Settlement Fund, to bear the costs of the settlement administration.[11]

The Settlement also provides for a claim dispute resolution process overseen by an independent arbitrator should there be any disputes between a Class Member and Progressive as to

---

[7] The precise terms of the Settlement involving payment to the class members are set forth in the Stipulation of Settlement filed with this Court and are also discussed in detail in the Declaration of Class Counsel.

[8] The proof of claim process is simple and straightforward. To file a valid proof of claim, Class Members only need to verify that they provided medical services to Progressive insureds during the class period of January 1, 1997 through January 1, 2005, and that they obtained "assignment of benefits" forms from Progressive insureds during the class period. *Class members do not have to provide any documentation, such as bills or explanation of benefits forms, to perfect a proof of claim.*

[9] The Settlement Agreement also provides that should the Net Opt-Outs exceed five percent (5%) of the Class Membership, or if the combined Maximum Claim Amounts of those Class Members who opt out represent more than five percent (5%) of the total Settlement Consideration, Progressive may terminate the Settlement Agreement and the parties would then return to their pre-settlement status regarding their rights and defenses. As of July 21, 2006 the settlement administrator had received only 18 valid Opt-Outs.

[10] Progressive has retained the independent class action settlement administration company of The Garden City Group, Inc. ("GCG") to serve as the independent settlement administrator.

[11] Should the administration costs and expenses for the settlement exceed $200,000, any excess expense will be paid out of the Settlement fund.

the amount of a settlement payment or the completeness of any Proof of Claim form. Under the dispute resolution function of the Settlement, the Class Member and Progressive shall designate in advance an independent arbitrator to oversee the dispute process, and shall also establish a arbitration fee of no more than $50.00. Progressive, Class Counsel, and the Class member shall be permitted to submit written presentations regarding their respective positions regarding the disputed claim. In the event that the independent arbitrator rules in favor of the Class Member, Progressive will be required to reimburse the Class Member for any arbitration fee and the Class Member claim will be perfected and paid by Progressive.

Finally, Progressive has agreed to pay, in addition to and outside the Settlement Fund, any Class Counsel fees awarded by the Court up to thirty percent (30%) of the Settlement Fund totaling $2,700,000, as well as reasonable costs and litigation expenses not to exceed $15,000.

### B.    Due Notice Of The Settlement Has Been Appropriately Given.

The form of Notice utilized in this case was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Notice, which was preliminarily approved by this Court, provided detailed information concerning the rights of Class Members, including the manner in which objections could be lodged; the nature, history and progress of the Litigation; the proposed Settlement terms; the process for filing Proofs of Claim; the fees and expenses to be sought by Class counsel; the necessary information for any Class Member to examine the Court records should he or she desire to; and the time and procedure for exclusion from the Settlement or to object to the Settlement or Class Counsel's fee application.

All potential Class Members were identified using the most current records and electronic

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

data provided by Progressive.    Notices were then prepared by an independent settlement administrator, GCG, which was entirely paid for by Progressive.    GCG then mailed first class, postage pre-paid, to all Class Members identified on the Class Member list, a copy of the Notice and the Proof of Claim approved by this Court.    At the beginning of the settlement process GCG initially mailed 7,473 total Notices.

Over the course of the claims period, GCG made efforts to ensure that as many of the Notices were received by Class Members.    For example, during the claims period, GCG re-mailed any Notices returned with current forwarding addresses provided by the U.S. Postal Service.    As required under the terms of the Settlement, GCG also made efforts to identify and locate any Class Members in the case of any Notices being returned as "undeliverable" without valid forwarding addresses on file through the use of Choice Point, a service similar to that of Equifax, and the National Change of Address database. Due to these efforts GCG was able to update the current mailing addresses and re-mail notices for well over half of the initial undeliverable addresses. Thus, the method of notice was the most reasonable method under the circumstances to apprise all potentially interested parties of the pending Settlement and amply satisfied the requirements of due process. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

## IV.    THE STANDARDS FOR JUDICIAL APPROVAL OF SETTLEMENTS UNDER RULE 23(E).

There is an overriding public interest in favor of class action settlements which have the well-deserved reputation as being most complex.[12] Ass'n for Disabled Americans, Inc. v. Amoco

---

[12]    The Eleventh Circuit has noted that "public policy strongly favors the pretrial settlement of class action lawsuits." In re U.S. Oil & Gas Litig., 967 F. 2d 489, 493 (11th Cir. 1992).    In that action, the court noted that "complex litigation like the instant [class action] case can occupy the court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive.    Accordingly, the Federal Rules . . . authorize District Courts to facilitate settlements..." Id.

Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)); Warren v. City of Tampa, 693 F.Supp. 1051, 1054 (M.D. Fla. 1998), aff'd, 893 F.2d 347 (11th Cir. 1989). Accordingly, a class action settlement should be approved so long as it is "fair, adequate and reasonable and is not the product of collusion between the parties." Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984); Cotton v. Hinton, 559 F.2d at 1330; Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 537 (S.D. Fla. 1988).

When determining whether a settlement is fair, adequate and reasonable, a court should consider all relevant factors, including (1) an assessment of the likelihood of success at trial; (2) the range of possible recovery at such trial; (3) the consideration provided to class members under the Settlement, in comparison to the range of possible recovery discounted by the inherent risks of litigation; (4) the complexity, expense and duration of the litigation in the absence of the settlement; (5) the substance and amount of opposition to the settlement; and (6) the state of proceedings at which the settlement was achieved. Bennett v. Behring Corp., 737 F.2d at 986; Cotton v. Hinton, 559 F.2d at 1330-31; see also Behrens v. Wometco Enter., Inc., 118 F.R.D. 534, 538-39 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990); ADA v. Aetna, Inc. (In re Managed Care Litig.), 2004 U.S. Dist. LEXIS 14294, *3-4 (S.D. Fla. 2004).[13]

The application of the Bennett factors is left to the sound discretion of the trial judge and appellate review of the Court's decision is based on an abuse of discretion standard. In re U.S. Oil & Gas Litig., 967 F.2d at 493; In re Broiler Chicken Antitrust Litig., 669 F.2d 228, 238 (5th Cir. 1982). Great weight is accorded a trial judge's views in evaluating a class action settlement. City of Detroit v. Grinnell Corp., 453 F.2d 448, 454 (2d Cir. 1974) (quoting Ace Heating & Plumbing

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Co. V. Crane Co., 453 F.2d 30, 34 (3d Cir. 1971)). In making its determination, the trial court is also entitled to rely on the judgment of experienced counsel for the parties. In re Smith, 926 F.2d 1027, 1028 (11th Cir. 1991); Cotton v. Hinton, 559 F.2d at 1330.

In evaluating these considerations, a court must not try the case on the merits. Cotton v. Hinton, 559 F.2d at 1330; Diaz v. Hillsborough County Hosp. Auth., 2000 U.S. Dist. LEXIS 14061, *6 (M.D. Fla. 2000). Instead, the court should rely on the judgment of experienced counsel and, absent fraud, "should be hesitant to substitute its own judgment for that of counsel." Ass'n for Disabled Americans v. Amoco Oil, 211 F.R.D. at 467 (quoting Cotton v. Hinton, 559 F.2d at 1330); see also In re Sunbeam Sec. Litig., 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). Rather than justifying each settlement term against a hypothetical or speculative measure of what concessions might have been gained, a court should focus on the negotiation process to ensure that the settlement was achieved through arms-length negotiations by counsel and was not the product of collusion between the parties. See Behrens v. Wometco Enter., Inc., 118 F.R.D. at 538-39. Ultimately, in evaluating a settlement's fairness, the court should remember that compromise is the essence of a settlement and that "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." Cotton v. Hinton, 559 F.2d at 1330.

The application of these standards in the present case, warrants the approval of the Settlement as fair, reasonable and adequate. Class Counsel and Progressive have had substantial opportunity to weigh the strengths and weaknesses of the parties' respective positions in the event this action were to proceed to appeal and/or trial, and to reach an informed compromise based on their respective analyses.

---

[13] Other factors relevant to a court's inquiry are the terms of the settlement, the procedure afforded to notify Class members of the proposed settlement, and the judgment of counsel. Cotton v. Hinton, 559 F.2d at 1330; Warren v. City

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

### A.    The Likelihood Of Success At Trial And Potential Recovery.

When considering the likelihood of success at trial and any potential recovery, a court can limit its inquiry to determining "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." Ressler v. Jacobson, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992); see also Elkins v. Equitable Life Ins. Co., 1998 U.S. Dist. LEXIS 1557, * 76 (M.D. Fla. 1998); Mashburn v. National Healthcare, Inc., 684 F. Supp. 660, 670 (M.D. Ala. 1988) (in the class action settlement context, courts do not decide the merits of the case or resolve unsettled legal questions). This inquiry is premised on "balancing the probabilities, not assuring that the plaintiff class receives every benefit that might have been won after a full trial." In re Chicken Antitrust Litig., 560 F. Supp. 957, 960 (N.D. Ga. 1980). The expense of achieving a more favorable result for the class at trial must be considered. Ressler v. Jacobson, 822 F. Supp. at 1555; see also, Young v. Katz, 447 F.2d 431, 433 (5th Cir. 1971).

While the Settlement represents an extremely favorable result under any measure, it must be considered in light of the significant risks faced by the Class with continued litigation. Class Counsel believe that they have a "strong case" to be made against Progressive. The potential for a substantial recovery at trial, however, was tempered by Class Counsel's analysis of certain major factors that favor the settlement of this action on the proposed terms. These factors include (1) the uncertain outcome of pending appeals to the Florida Supreme Court concerning the interpretation of Florida Statute section 627.736(10); (2) the uncertain outcome of pending appeals to the 11th Circuit Court of Appeals concerning related parties' motions to compel arbitration or in the alternative to dismiss similar actions; and (3) the inherent difficulties in proving the elements of a

---

of Tampa, 693 F.Supp. At 1055.

RICO action against Progressive in a full trial on the merits.

### 1.  The Florida District Courts of Appeal Have Conflicting Rulings.

One of the most important considerations concerning the likelihood of success at trial concerns Plaintiffs' claims under Florida's PIP statute, Section 627.736(10). There is currently a split between two Florida appellate districts, the Second and Fifth Districts, on whether an auto insurer may pay health care providers at reduced PPO contract rates without first offering a preferred provider PIP policy of insurance.[14]  In Nationwide Mut. Fire Ins. Co. v. Central Florida Physiatrists, P.A., 851 So.2d 762 (Fla. 5th DCA 2003), the Fifth District Court of Appeals reasoned that the clear and precise language of Section 627.736(10) demonstrates the Legislature's intent that the availability of PPO benefits under a PIP auto insurance policy is subject to strict compliance with the terms of subsection (10).  According to the Fifth District, Nationwide Mutual Fire Insurance was required to first comply with the provisions of subsection (10) in order to take advantage of paying reduced PPO rates for payment of PIP claims.  Id. at 766.  Nationwide Mutual Fire Insurances' failure to do so thus required it to pay the statutorily mandated 80% of the reasonable and necessary medical expenses incurred by its insured.  Id.

In stark contrast to the Fifth District's decision, the Second District held that subsection (10) does not prohibit insurers that have not issued PPO auto policies from paying health care providers at discounted PPO rates.  See Nationwide Mut. Ins. Co. V. Dennis M. Jewell, D.C., P.A., 862 So.2d 79 (Fla. 2d DCA 2003).  Recently in Allstate Ins. Co. v. Holy Cross Hop., Inc., 895 So. 2d 1241 (Fla. 4th DCA 2005), the Fourth District Court of Appeals agreed with the decision by the Second District Court of Appeal.   All three cases have been appealed to the

---

[14]  The Settlement was reached with Progressive while the split existed and while the issue was on appeal to the Florida Supreme Court.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Florida Supreme Court and the issue is currently pending. In light of this current conflict, the outcome of the present action remains uncertain should the Class proceed to litigate the action. Given that the proposed Settlement now removes that uncertainty while offering to reimburse the Class Members 60% of their claimed losses, it is clear that potential litigation risks outweigh the rewards of the Settlement.

### 2.    The Range Of Possible Recovery And The Consideration Under The Settlement In Relation To That Range

In Behrens, the Court combined the second and third factors of the Bennett test to determine the appropriateness of the settlement. Behrens v. Wometco Enter., Inc., 118 F.R.D. at 541. The factors considered are the range of possible recovery and the point within, or below, the range of possible recovery at which a settlement is fair, adequate and reasonable. Discounting multiple damages under RICO, the range of possible recovery under applicable law would be from zero to 60% of the discounted amount with interest and an award of attorney's fees and costs. Under the proposed Settlement, interest is the only monetary damage not included in the Settlement. If the Claim Fund is not exhausted all claimants will receive up to a 100% recovery of their allowed claims  Additionally, Progressive will pay Class Counsel fees and reasonable litigation costs and expenses, as well as costs of settlement administration *separate* from the Claim Fund. The benefits provided by the Settlement are at the highest end of potential relief had the case been tried successfully by Class Counsel.

Moreover, based on the present state of the PIP statutory scheme in Florida, the terms of the Settlement actually provides Class Members with *significantly better* relief than they otherwise might expect should the settlement not be approved. Since the inception of this litigation in 2000, the Florida Legislature has amended the PIP statute by adding a complicated pre-suit demand

procedure. Under the new statute, prior to filing a lawsuit a medical provider must send a demand letter to the insurer detailing: 1) the name of the insured upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the insured; 2) the claim number or policy number upon which such claim was originally submitted to the insurer; 3) to the extent applicable, the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim; and 4) an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. Fla. Stat. § 627.736(11).

Class Members who have not yet filed suit for illegal PPO discounts would have to first satisfy the pre-suit demand requirements of the new statute. The statute's evidentiary demand requirements are far more onerous than the proof of claim process negotiated by Class Counsel. Class Members need not provide any documentation or detailed claim information to participate in the Settlement, whereas under the new statute they are required to conduct a file-by-file review and provide documentary evidence just to meet the pre-suit demand requirements.

### 3.    The Complexity, Expense And Likely Duration Of The Litigation

Class Counsel believe that the claims asserted in these actions have considerable merit. However, its inherent complexities combined with the uncertainties those complexities engender, are characteristic of RICO litigation and consolidated cases of this nature. The docket sheet tells the story best as there are over 880 entries prior to the related defendants filing their appeals (currently there are over 1,150 docket entries), and the parties still have "a long way to go" in the litigation process. Those uncertainties militate strongly in favor of approving the Settlement.

The likely duration and associated expenses of continued litigation likewise favor approval of the Settlement. See Warren v. City of Tampa, 693 F.Supp. At 1059 ("The parties estimate that

trial of this case would take three weeks of Court time, and would cost hundreds of thousands of dollars in attorneys' fees, expert witnesses fees and costs.   These factors militate in favor of a decision to accept the proposed settlement.").   In the present case, Class Counsel estimates that a trial of this action could take approximately two weeks and could cost the Class hundreds of thousands of dollars in attorneys' fees, expert fees and litigation costs.   Moreover, given that related Defendants have already filed appeals in this action, it is very likely that Progressive would appeal class certification and any trial judgment in favor of the Plaintiff.   The Class would be further subject to the many years of delay and additional costs associated with those appeals.

Here there is a great deal at stake for the parties and, but for the proposed Settlement, the case would continue to be strongly litigated by Plaintiff and Progressive.   As a result of the Settlement, the dispute between them will come to an end with the Class receiving a substantial recovery and there will also be substantial savings in Court resources by avoiding a lengthy trial of this case.   Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources.   Behrens v. Wometco Enter., Inc., 118 F.R.D. at 538.

### 4.    The Substance And Amount Of Opposition To The Settlement

Even when a court becomes aware of one or more objecting parties, the court is not "required to open to question and debate every provision of the proposed compromise.   The growing rule is that the trial courts may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision."   Cotton v. Hinton, 559 F.2d at 1331.

There were over 7,473 Notices sent out in this action.   Not a single objection was filed by any Class Member.   Additionally, there have been only 18 valid Opt-outs filed.   Less than .1% of the Class Members opted out of the settlement.   Clearly, the reaction of the Class to the Settlement is favorable and positive.   Courts have looked at the absence of meaningful objections to a

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

proposed settlement as further support for the approval of the settlement. See Bennett v. Behring, Corp., 737 F.2d at 988.

### 5.   The Stage Of Proceedings At Which The Settlement Was Achieved

The purpose of considering the stage of the proceedings and the discovery taken is to ensure that the plaintiff has had access to sufficient information to evaluate the case and to determine the adequacy of the proposed settlement. Behrens v. Wometco Enter., Inc., 118 F.R.D. at 544. As discussed in greater detail in Class Counsel's Declaration, the Settlement was achieved after nearly six years of intense litigation involving extensive motion practice and investigation.

Plaintiffs and Class Counsel were very aware of the merits of their case based on their pre-suit investigation and the status of state case law on the issue of applying PPO discounts to automobile medical expense claims. Additionally, despite the District Court's stay of discovery, Class Counsel was able to obtain extensive discovery from ADP and Beech Street consisting of relevant documents, data and information about the industry's PPO discounting practices. Absent this settlement with ADP and Beech Street, Class Counsel estimates that it would have taken years of post-appellate discovery to obtain the same information. Knowledge of the law, coupled with the discovery obtained formally and informally from ADP and Beech Street, allowed Class Counsel to accurately assess its case for class-wide settlement negotiations.

### 6.   The Settlement Is The Result Of "Arms-Length" Negotiations Among Competent And Experienced Counsel.

In considering the fairness of a proposed settlement, the Court is entitled to rely heavily on the opinion of competent counsel. Behrens v. Wometco Enter., Inc., 118 F.R.D. at 544. This is especially apt where, as here, the extensive amount of independent investigation, legal research, briefing and discovery indicates that counsel are fully capable of evaluating the merits of the

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Plaintiff's case and the probable course of future litigation. See Cotton v. Hinton, 559 F.2d at 1330. In analyzing a proposed settlement and the opinion of counsel, it is also appropriate for the Court to examine the negotiating process that took place between the parties to confirm that there was no collusion in reaching the Settlement. Behrens v. Wometco Enter., Inc., 118 F.R.D. at 538. In the present case, the Settlement was achieved only after years of hard-fought and contentious litigation. Ultimately, the settlement negotiations were conducted by counsel for the parties over the course of more than two years - clear evidence that the negotiations were conducted at "arms length." From the complex and thorough terms of the Settlement Agreement it is clear that the process by which this Settlement was accomplished was fairly and zealously advocated by counsel for all parties. Through their consistent and hard-pressed efforts, Class Counsel and Defense Counsel were eventually able to fashion a Settlement that is not only fair and reasonable, but is a truly extraordinary and an excellent result for the Class.

## CONCLUSION

For the foregoing reasons, Plaintiffs submit that the proposed Settlement is fair, reasonable and adequate and should be approved in its entirety, and respectfully request that the Court approve the Settlement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail on this date on all counsel or parties of record on the attached service list.

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Dated: August 1, 2006
      Boca Raton, FL  33431

Respectfully submitted,

_____
Eric Lee (961299)
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Ste. 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988
Facsimile:  (561) 981-9980
**Attorneys for Plaintiffs Keith
Brickell and Ultra Open MRI
Corp.**

**Co-Counsel Counsel for Plaintiffs**

Art Gold, Esq.
asg@gcjustice.com
Gold & Coulson
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
Telephone:  (312) 372-0777
Facsimile:  (312) 372-0778

Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA 02747
Telephone:  (508) 998-0800
Facsimile:  (508) 998-0919

Larry Kopelman, Esq.
lmk@kopelman.com
Kopelman & Blankman, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
Telephone:  (954) 462-6855
Facsimile:  (954) 462-6899

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Richard Bokor, Esq.
richard@bokorlaw.com
230 E. Davis Boulevard
Tampa, FL  33606
Telephone:  (813) 251-1000
Facsimile:  (813) 254-6327

Susan Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Blvd., Ste. 200
Tampa, FL  33606
Telephone:  (813) 251-8879
Facsimile:  (813) 251-5786

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**MASTER SERVICE LIST**
(Updated 5/18/06)

### Co-Lead Counsel for Plaintiffs

LEE & AMTZIS, P.L.
Eric Lee, Esq.
lee@leeamlaw.com
5550 Glades Road, Suite 401
Boca Raton, FL 33431
(561) 981-9988
(561) 981-9980 Facsimile

GOLD & COULSON
Arthur S. Gold, Esq.
asg@gcjustice.com
11 S. LaSalle Street, Suite 2500
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 Facsimile

PHILLIPS & GARCIA
Andrew Garcia, Esq.
agarcia@phillipsgarcia.com
Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Attorneys at Law
13 Ventura Drive
North Darthmouth, MA 02747
(508) 998-0800
(508) 998-0919 Facsimile

KOPELMAN & BLANKMAN, P.A
Larry Kopelman, Esq.
Douglas Blankman, Esq.
dblan2155@aol.com
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL 33301
(954) 462-6855
(954) 462-6899 Facsimile

### Co-Counsel for Plaintiffs

Susan L. Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Boulevard, Suite 200
Tampa, FL 33606
(813) 251-8879
(813) 251-5786  Facsimile

RICHARD BOKOR, P.A.
Richard Bokor, Esq.
richard@bokorlaw.com
230 East Davis Boulevard
Tampa, FL 33606
(813) 251-1000
(813) 254-6327 Facsimile

**Counsel for:**
**Allstate Defendants**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MECKLER BULGER & TILSON
Peter J. Valeta, Esq.
peter.valeta@mbtlaw.com
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 474-7895
(312) 474-7898 Facsimile

### Counsel for Progressive

ANANIA, BANDKLAYDER, et al.
Francis Anania, Esq.
fanania@anania-law.com
Donald A. Blackwell, Esq.
dblackwell@Anania-law.com
NationsBank Tower, Suite 4300
100 Southeast Second Street
Miami, Florida 33131
(305) 373-4900
(305) 373-6914 Facsimile

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

**Counsel for CCN**

The Kenny Nachwalter Law Firm
Richard Critchlow, Esq.
rcritchlow@knsacs.com
Robert Landon, Esq.
rlandon@knsacs.com
201 S. Biscayne Blvd., Ste. 1100
Miami, FL 33131-4327
(305) 373-1000
(305) 372-1861 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile