**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

DR. PAUL ZIDEL, on behalf of himself and
all others similarly situated,

       Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
and COMMUNITY CARE NETWORK,
INC., d/b/a CCN,

       Defendants.
_____/
MARC J. BROWNER, D.C., individually and on behalf of
all others similarly situated,

       Plaintiffs,

v.                                                                                                                                                           00-7163

ALLSTATE INDEMNITY COMPANY, et al.

       Defendants.
_____/
ULTRA OPEN MRI CORPORATION, and on behalf of
Itself and all others similarly situated,

       Plaintiff,

v.                                                                                                                                                         00-6777

DEERBROOK INSURANCE COMPANY,

       Defendant.
_____/

ULTRA OPEN MRI CORPORATION, on behalf

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

of itself and all others similarly situated,

  Plaintiff,

v.                       01-6779

FIDELITY AND CASUALTY COMPANY OF
NEW YORK and THE CONTINENTAL
INSURANCE COMPANY,

  Defendants.
_____/

**MEMORANDUM OF LAW IN SUPPORT OF**
**CLASS COUNSEL'S UNOPPOSED APPLICATION FOR**
**AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF EXPENSES**

**PRELIMINARY STATEMENT**

  Class Counsel in the above-captioned action respectfully submit this memorandum of law in support of their application for an award of attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this class action which has resulted in a settlement of approximately $8,900,000.00 in benefits to the Class. The class action Settlement, which is currently before the Court for final approval, involves the named Defendants Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, The Fidelity and Casualty Company of New York, National-Ben Franklin Insurance Company of Illinois, The Buckeye Union Insurance Company, The Glens Falls Insurance Company, Kansas City Fire & Marine Insurance Company, Fireman's Insurance Company of Newark, New Jersey, Pacific Insurance Company, Niagara Fire Insurance Company, Boston Old Colony Insurance Company, Commercial Insurance Company of Newark, New Jersey, Continental Reinsurance Corporation, Continental Casualty Company of Reading, Pennsylvania, Transcontinental Insurance Company, Transportation Insurance Company, American Casualty Company of Reading, Pennsylvania,

2

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

National Fire Insurance Company of Hartford, Valley Forge Insurance Company, Encompass Floridian Insurance Company, Encompass Floridian Indemnity Company and the Continental Insurance Company, which are direct or indirect subsidiaries of Allstate Insurance Company (collectively "Allstate") for total class relief of over $8,900,000.00 (the "Settlement").[1]

As described in detail in the accompanying Declaration of Class Counsel in Support of Final Approval of Class Action Settlement and An Award Of Attorney's Fees and Costs ("Class Counsel's Declaration"),[2] Class Counsel have devoted many hours to this case and have incurred out-of-pocket costs and expenses over the seven years that this case has been pending in the District Court and the related PPO cases in the Eleventh Circuit Court of Appeals. Given the extraordinary results achieved, the complexity and amount of work involved, the skill and expertise of Class Counsel and the risks counsel undertook, Class Counsel strongly believe that this case warrants an award of fees totaling $2,966,667.00 which is equivalent to thirty three and one-third (33.3%) percent of the reserved Class Fund - an amount Allstate has agreed to pay separate and outside of the Class Fund. Class Counsel also requests an award of $15,000 towards reasonable costs and expenses in prosecuting the action. The Notice of Settlement sent to Class Members notified Class Members that Class Counsel would be seeking these fees and expenses. Allstate has agreed to pay these amounts and there were no objections to the Settlement or Class Counsel's request for fees and expenses.

I.    **LITIGATION AND SETTLEMENT BACKGROUND**

---

[1] The specific terms of the Settlement have been set forth in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court and preliminarily approved on June 19, 2006. The settlement provides for a $8,900,000.00 class fund. Allstate has also agreed to pay the following monies separate from the class fund: 1) up to $2,966,667.00 in attorneys' fees; 2) reasonable litigation costs and expenses up to $15,000.00; and 3) the costs of settlement administration.
[2] Attached as Exhibit 1.

3

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

The procedural history and relevant facts about the initiation and prosecution of these consolidated cases, and the Allstate litigation in particular, since their inception seven years ago is described in detail in the Memorandum in Support of Proposed Settlement. The Allstate Settlement cannot be viewed in a vacuum because it was part of the massive litigation effort Class Counsel put forth in these consolidated cases. As indicated in Co-Lead Counsels' Declaration, the Plaintiffs in the consolidated actions challenged an industry-wide practice undertaken by automobile insurers throughout the State of Florida. Class Counsel brought novel allegations based on complex legal theories against fifteen different insurers, some of which are the nation's largest insurance companies. As the Docket clearly indicates, the Defendants poured "legal firepower" into the defense of these claims retaining some of the biggest and best defense firms in the country to defend these cases.[3]

Class Counsel efficiently and effectively managed and prosecuted these fifteen RICO class actions over a seven year period enabling them to reach settlements with certain insurance company defendants, one of which is Allstate. As of the filing of this pleading, all of the defendant insurers, including Allstate, have stopped the practice of taking P.P.O. discounts on automobile insurance medical expense claims in the State of Florida. While certain defendants, including Allstate, dispute whether these class actions caused the termination of their P.P.O. discounting programs, an industry-wide practice that siphoned millions of dollars from medical providers throughout the State of Florida has been stopped and, through this settlement and others, millions of dollars of settlement benefits have been made available for medical providers to claim.

---

[3] Defendants retained the following defense firms: Rumberger, Kirk & Cladwell; Ross & Hardies; Tew Cardenas; Anania Bandklayder; Fowler White; Kenney Nachwalter Seymour Arnold Critchlow & Spector; Swartz Campbell Detweiler; Holland & Knight; Ackerman Senterfitt; Sonnenschein, Nath & Rosenthal; Butler Burnette Pappas; Shea

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

## II. CLASS COUNSEL ARE ENTITLED TO A FEE BASED ON A PERCENTAGE OF THE CLASS RECOVERY.

The award of counsel fees in this class action is governed by the common fund doctrine. The Supreme Court has consistently recognized that when a common fund is successfully established for the benefit of class members, the cost of litigation, and specifically counsel's efforts, should be spread among the common fund's beneficiaries. As the Supreme Court noted in Boeing Co. v. Van Geert, 444 U.S. 472 (1980), "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Id. at 478. This was reiterated by the Eleventh Circuit in Camden I Condominium Association, Inc. v. Dunkel, 946 F.2d 768 (11th Cir. 1991) where the Court reasoned that attorneys who create a common fund are entitled to be compensated for their efforts as a percentage of that fund. In Camden the Court held that, "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." Id. 946 F.2d at 774-75.

Furthermore, in the absence of any evidence of collusion or detriment to the class, a court should give substantial weight to a negotiated fee amount, assuming that it represents the parties' "best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." Elkins v. Equitable Life Ins. Co., 1998 U.S. Dist. LEXIS 1557 *99, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998) (quoting Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 720 (5th Cir. 1974), overruled on other grounds, Blanchard v. Berteroa, 489 U.S. 87, 109 S.C. 939, 103 L. Ed. 2d 67 (1989)). This weight is particularly appropriate when, as in the present case, no objections have been raised to the fee award and the amount of fees is entirely

---

& Gardner; and Conroy, Simberg, Ganon, Krevans & Abel.

consistent with a reasonable fee award under the circumstances of the cases. See e.g., Ingram v. Coca-Cola Co., 200 F.R.D. 685, 695 (N.D. Ga. 2001).

### A. The Requested Fees are Appropriate Given the Results Achieved, the Risks Involved and the Effort Expended.

In the Eleventh Circuit "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." Camden, 946 F.2d 774-75. Courts have repeatedly emphasized however that the range is merely a benchmark, not a hard and fast rule. As a result, the Eleventh Circuit has developed a number of non-exclusive factors that courts may consider in assessing what fees are reasonable in a particular class action. In Camden, the Court enumerated the following factors that the Court may consider in determining the percentage of a fund to be applied to each case: (1) the time and labor required; (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

"Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration." Camden, 946 F.2d at 775. While each of the above factors may be an

appropriate consideration, the factors that will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary. Id.

**B.    The Relevant Factors for Assessing Attorneys' Fees Weigh in Favor of Awarding Class Counsel's Requested Fees.**

**1.    The Results Obtained Support Class Counsel's fee.**

There is no better indicator of the quality of Class Counsel's representation than the result obtained. Behrens v. Wometco Enter, Inc., 118 F.R.D. 534, 547 (S.D. Fla. 1998), aff'd, 899 F.2d 21(11th Cir. 1990). Class Counsel achieved a monetary settlement of approximately 80% of the Class Members' damages with a minimal claims process under which Class Members do not have to submit documentary evidence to establish their claims.[4] To claim benefits Class Members need only complete a simple, straightforward claim form providing basic information to the Settlement Administrator, far less proof than they would be required at trial or even in the prosecution of an individual Florida state court PIP case. Moreover, Allstate has agreed to pay Class Counsel fees and reasonable costs and litigation expenses ***separate and outside*** of the Class Member fund of $8,900,000 that has been reserved by Allstate to pay the Class their claims. In essence, the only monetary damage the Class does not receive in the Settlement is interest on their actual damages. Had this case gone to trial and the Plaintiffs prevailed, the Class might not have achieved as good a result as they have under the Settlement.

**2.    The Substantial Time and Labor Required to Produce the Settlement and the Length of Time Required to Reach a Resolution of the Case Supports the Fee Request**

As discussed at length in Class Counsel's Declaration, this case was one of fifteen

---

[4] The precise terms of the Settlement are set forth in the Settlement Agreement and Stipulation and the Declaration of Class Counsel filed concurrently with the Court. In summary, the Settlement created a $8,900,000.00 Settlement Fund from which Class Members are eligible to recover approximately 65% of the total PPO reduction in accordance with the Maximum Claim Amount calculation in the Settlement Agreement as taken by Allstate with regard to bills submitted by the Class Member during the relevant class period.

consolidated cases and a substantial amount of the effort expended in the consolidated cases benefited the Class Members in the Allstate case. More than ten law firms have worked on these three cases during the past seven years and this settlement was the result of protracted negotiations and substantial cooperation among the various firms involved. The substantial efforts by these law firms, in addition to the results obtained is demonstrated by the numbers of hours spent on these matters. Based on the substantial hours dedicated to the prosecution of the consolidated cases, Class Counsel have a total lodestar to date of approximately ($3,453,498.00).[5] The hours expended in the Allstate case total 2,872.6 resulting in a lodestar of $924,503.50 and which are set forth in the Compendium of Affidavits of Class Counsel, attached hereto as Exhibit 2.

The time expended by Class Counsel in this litigation is described in detail in the Declaration of Co-Lead Counsel attached hereto as Exhibit 1. In summary, Class Counsel conducted an intensive pre-suit investigation, performed a great deal of research prior to filing and poured a tremendous amount of time and resources into drafting the initial class action complaint which became the original Allstate filing. Shortly after suit was filed in each of the Zidel, Browner and UOMC cases, Class Counsel filed motions for class certification and aggressively pursued discovery. Additionally, Class Counsel opposed Allstate's numerous motions, and its Motion to Compel Arbitration. Allstate filed an appeal that went to the Eleventh Circuit. While Allstate and the related PPO cases were in the Eleventh Circuit, Counsel and Defendants attempted to negotiate their own settlements with at least two meetings in Chicago, Illinois and by conducting negotiation sessions with Joseph Unger, a mediator with the United

---

[5] Due to the overlap of work and effort inherent in a consolidated case, the hours were calculated based on time spent on all of the cases, without allocation of a fraction, such as 1/15, of the overall general time spent on the prosecution of the consolidated cases.

States Court of Appeals for the Eleventh Circuit. Class Counsel and Allstate also spent several years separately conducting intensive settlement attempts in their own cases, resulting with Class Counsel and defense counsel being able to finalize the Settlement Agreement with Allstate.

### 3. The Economics in Prosecuting the Action, the Contingent Nature of the Representation and the Preclusion of Other Employment.

This action was prosecuted by Class Counsel on a contingent fee basis. As this Court knows, with a contingent fee agreement, Class Counsel would be paid only if they achieved a successful result for the Class. Courts have long recognized, particularly in this Circuit, that the attorneys' contingent fee risk is an important factor in determining the fee award. See Jones v. Central Soya Co., 748 F.2d 586, 591 (11th Cir. 1986). In Behress v. Wometco, when discussing a securities class action, Judge King noted:

> A contingency fee arrangement often justifies an increase in the award of attorneys fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus methodology' did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing.

Id. at 548.

History is replete with cases in which plaintiffs prevailed at trial on issues of liability, but recovered little or nothing by way of damages. See, In re Lupron Mktg. & Sales Practices Litig., 2005 U.S. Dist.LEXIS 17456, *16 (D. Mass. 2005) (citing, MCI Communications Corp. v. AT&T, 708 F.2d 1081, 1166-67 (7th Cir. 1983) (remanding antitrust judgment for a new trial on damages); Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2nd Cir. 1973), vacated on other grounds, 417 U.S. 156, (1974) (following two trips to Court of Appeals and one to Supreme Court, plaintiffs, the putative class, and their counsel received nothing); United States Football League v. Nat'l Football League, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("The jury chose to

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages.")).

The specter of potential financial loss in this case loomed large. Class Counsel were confronted with a number of major factors that affected their case: (1) the uncertain outcome of pending appeals to the Florida Supreme Court concerning the interpretation of Florida Statute section 627.736(1)); (2) the uncertain outcome of the related PPO Defendant's pending appeals to the 11th Circuit Court of Appeals concerning their motions to compel arbitration or in the alternative to dismiss the actions; and (3) the inherent difficulties in proving the elements of a RICO action against Allstate in a full trial on the merits. Class Counsel recognized that a negative decision in any of the pending state or federal appeals would have essentially stripped the Plaintiffs' case theory and wasted years of work by Class Counsel. Moreover, Class Counsel was proceeding in part on a complex civil RICO claim which would be subject to summary judgment in the trial court and, if the Plaintiffs succeeded, further subject to an appeal to the Eleventh Circuit.

The risks inherent in losing years of work, as well as the monies spent funding this case were further compounded by the effective preclusion of other employment by Class Counsel due to their acceptance of this case and the consolidated cases. The substantial amount of work at times on the consolidated cases and this case bordered on overwhelming. For example, as discussed in Class Counsel's Declaration, in one two month period the Defendants in these consolidated cases filed 49 separate pleadings with the Court. For long periods of time during the pendency of the Allstate case and the consolidated cases, Class Counsel were required to work almost exclusively on this litigation to aggressively represent the Class.

### 4. The Novelty and the Difficulty Involved and the Skill Requisite to Perform the Legal Services Properly.

In assessing the quality of work performed and the risk undertaken by Class Counsel, it is also necessary to consider the complexity and magnitude of the litigation, as well as the difficulty of the questions involved.  As discussed throughout this Petition, the Allstate case cannot now be totally disassociated from the consolidated litigation because it has settled.  A civil RICO class action against an insurance company is complex enough in itself, but when combined with fourteen other similar class actions, the complexity and magnitude of the litigation increases exponentially.  The current 1,179 plus docket entries alone speak volumes to the complexity and magnitude of the litigation.

Moreover, the Plaintiffs' claims were novel both factually and legally.  These cases are the first and only federal court class actions in the country to challenge the "Silent P.P.O." discount scheme emerging in the automobile insurance industry, cases of first impression on this issue.  Class Counsel in the Allstate cases challenged the direct practice of utilizing "Silent P.P.O." discounts by insurers.  In addition to having unique factual allegations, Class Counsel had to select legal theories that allowed for the real aggrieved parties, i.e., the Florida medical providers, to maintain standing to prosecute their claims against the automobile insurers.

Counsel's fee should also reflect the degree of experience, competence and effort necessary to achieve the proposed Settlement.  Class Counsel are experienced in class action cases and trial work in general and worked together as a cohesive team to prosecute the Allstate case and the consolidated cases.  Courts have long recognized the importance of providing incentives to experienced counsel who take complex litigation cases on a contingent fee basis, so that those cases can be prosecuted effectively.

In assessing the quality of representation by Class Counsel, the Court should also consider the quality of the opposition, as well as the standing of Class Counsel.  See Ressler v.

Jacobson, 149 F.R.D. 651, 654 (M.D. Fla. 1992). As noted above, the law firm defending Allstate is well known for its defense work in Florida and the litany of law firms representing the other defendants in the consolidated litigation reads like a veritable "Who's Who" of the corporate civil defense bar.

### 5. The Requested Percentage of the Fund is Fair, Reasonable and Consistent with Fee Awards in Other Comparable Class Actions.

For the reasons set forth here, and in Co-Lead Counsel's Declaration, Class Counsel respectfully submit that their performance in this litigation, and the superior results efficiently achieved, warrant more than a simple "benchmark" level of compensation. Given the work involved and the result achieved, Class Counsel believe that it is fair, reasonable and eminently appropriate for the Court to award counsel the requested fee. Additionally, the requested thirty three and one-third (33.3) percent fee is consistent with fees awarded in similar cases in this Circuit. See e.g., Waters v. International Precious Metals Corp., 190 F.3d 1291, 1298 (11th Cir. 1999) (finding no abuse of discretion in approving a 1/3 class counsel fee award of $13.33 million in case involving class fund of $40 million on scheme to defraud customers); Baccilar v. Integrated Communication Network Inc., 96-2021-Civ-King (S.D. Fla. 1997)(awarding 33.3%) Class Counsels' requested 33.3% fee is also consistent with awards in other jurisdictions in similar class action cases. See e.g., In re IKON Office Solutions, Inc., 194 F.R.D. 166, 192 (E.D. Pa. 2000) (awarding attorney's fees of 33% on $111 million partial settlement, where plaintiffs later failed in claim against accountant); Kurzweil v. Philip Morris Cos., 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. 1999) (awarding attorney's fees of 30% on settlement fund of over $123 million); In re Combustion, Inc., 968 F. Supp. 1116 (W.D. La. 1997)(awarding attorney's fees of 36% on settlement fund of over $127 million); Gaskill v. Gordon, 160 F.3d 361, 362-363 (7th Cir. 1998) (affirming a fee award of 38 percent of the settlement fund);

Principe v. Ukropina (In re Pacific Enters. Sec. Litig.), 47 F.3d 373, 379 (9th Cir. 1995) (approving a 33 percent award of a $ 12 million common settlement fund); In re Rite Aid Corp. Secs. Litig., 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (noting expert testimony that the average fee is 28.1 percent in settlements between $ 100 and $ 200 million in awarding 25 percent of a $ 193 million common fund).

Moreover, the fee requested by Class Counsel in this case represents a minimal multiplier to Class Counsel's lodestar. Based on a fee request of $2,966,667.00 and Class Counsel's total lodestar of $924,503.50 for the Allstate litigation, the multiplier is 3.1. In relation to other class action settlements, a 3.1 multiplier is reasonable given the novelty of the subject matter, the ultimate benefits conferred on the class and the difficulty faced by Class Counsel in prosecuting the action. See e.g., Behrens, 118 F.R.D. at 539; see also In re RJR Nabisco, Inc., Sec. Litig., [1992 Transfer Bibder] Fed. Sec. L. Rep. (CCH) ¶96, 984 at 94, 267 (S.D.N.Y. 1991) (applying a lodestar multiplier of 8.74).

### 6. The Requested Fees are Consistent With Contingent fee Arrangements in Non-Class Action Litigation.

The percentage method is also consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. See Kirchoff v. Flynn, 786 F.2d 320, 324 (7th Cir. 1986)("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'"). In non-class litigation, 33 1/3% to 40% contingency fees are typical. As Justices Brennan and Marshall observed in their concurring opinion in Blum v. Stenson, 465 U.S. 886 (1984), "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." Id. at 904 n. 19; see also In re Prudential Bache Energy

Income Partnerships Sec. Litig., MDL 888, 1994 U.S. Dist. LEXIS 662 1, at * 1 (E. D. La, May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); Phemister v. Harcourt Brace Jovanovich, Inc., 1984-2 Trade Cas. (CCH) & 66,234, at 66,995 (N.D. 111. 1984) ("The percentages agreed on [in non-class action damage lawsuits] vary, with one-third (1/3) being particularly common").

Class Counsel's efforts were performed, and the result was achieved, on a wholly contingent basis, despite the significant risks, time and expenses. Therefore, their fee request of thirty three and one-third (33.3%) percent is in keeping with the standard contingent fee agreement in non-class litigation. In summary, based the application of the relevant Camden factors to the circumstances of this case - and the fact that Allstate has agreed to pay Class Counsel's fee separate and distinct from the reserved Class Fund - Class Counsel's fee request is fair and reasonable and should be approved by the Court.

### C. **REIMBURSEMENT OF COSTS**

Class Counsel also seek reimbursement of $15,000 in expenses and costs incurred in prosecuting this action. The Declaration of Co-Lead Counsel, and Counsels' Compendium of Affidavits (attached hereto as Exhibit 1), describes the expenses and costs incurred for which reimbursement is sought. Plaintiffs respectfully request that the listed expenses and costs be awarded because they were necessary and appropriate in prosecuting these difficult and protracted actions.

### **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Dated: January 18, 2007
      Boca Raton, FL  33431

Respectfully submitted,

_____
Eric Lee (961299)
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Ste. 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988
Facsimile:  (561) 981-9980
**Attorneys for Plaintiffs**

**Co-Counsel for Plaintiffs**

Art Gold, Esq.
asg@gcjustice.com
Gold & Coulson
11 S. LaSalle Street
Suite 2500
Chicago, IL 60603
Telephone: (312) 372-0777
Facsimile: (312) 372-0778

Carlin Phillips, Esq.
cphillips@phillipsgarcia.com
Phillips & Garcia, LLP
13 Ventura Drive
North Dartmouth, MA 02747
Telephone: (508) 998-0800
Facsimile: (508) 998-0919

Larry Kopelman, Esq.
lmk@kopelman.com
Kopelman & Blankman, P.A.
350 E. Las Olas Blvd., Ste. 980
Ft. Lauderdale, FL  33301
Telephone: (954) 462-6855
Facsimile: (954) 462-6899

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

Richard Bokor, Esq.
richard@bokorlaw.com
230 E. Davis Boulevard
Tampa, FL  33606
Telephone:  (813) 251-1000
Facsimile:  (813) 254-6327

Susan Lawson, Esq.
personalinjurylawyer@earthlink.net
230 East Davis Blvd., Ste. 200
Tampa, FL  33606
Telephone:  (813) 251-8879
Facsimile:  (813) 251-5786

CONSOLIDATED CASE NO. 00-6061-CIV-ZLOCH/SNOW

# **SERVICE LIST**

**Counsel for**
**Allstate Defendants**

RUMBERGER, KIRK & CALDWELL
David B. Shelton, Esq.
dshelton@rumberger.com
Post Office Box 1873
Orlando, Florida 32802-1873
(407) 872-7300
(407) 841-2133 Facsimile

MECKLER BULGER & TILSON
Peter J. Valeta, Esq.
peter.valeta@mbtlaw.com
123 N. Wacker Dr., Ste. 1800
Chicago, IL 60606
(312) 474-7895
(312) 474-7898 Facsimile

**Counsel for Florida Farm Bureau**

HOLLAND & KNIGHT, LLP
Greg Baldwin, Esq.
gbaldwin@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL 33131
(305) 374-8500
(305) 789-7799 Facsimile